# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FATEMEH SANIEFAR,<br><br>Plaintiff,<br><br>v.<br><br>RONALD D. MOORE, TANYA E. MOORE, KENNETH RANDOLPH MOORE, MAREJKA SACKS, ELMER LEROY FALK, ZACHARY M. BEST, MOORE LAW FIRM, a California Professional Corporation, MISSION LAW FIRM, a California Professional Corporation, GEOSHUA LEVINSON, RICK D. MOORE, WEST COAST CASP AND ADA SERVICES, a California Corporation, RONNY LORETO, and DOES 1 THROUGH 100, inclusive,<br><br>Defendants. | 1:17-cv-00823-LJO-BAM<br><br>MEMORANDUM DECISION AND ORDER GRANTING WITH LEAVE TO AMEND DEEFENDANTS' MOTIONS TO DISMISS<br>(ECF Nos. 18, 19, 20, 22, 23) |

## I. INTRODUCTION

Plaintiff Fatemeh Saniefar ("Plaintiff" or "Saniefar") brings this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, against Defendants Ronald D. Moore, Tanya E. Moore, Kenneth Randolph ("Randy") Moore, Marejka Sacks, Elmer Leroy Falk, Zachary M. Best, Moore Law Firm, Mission Law Firm, Geoshua Levinson, Rick D. Moore, West Coast CASp and ADA Services ("West Coast CASp"), Ronny Loreto, and Does 1 to 100 (collectively, "Defendants"). Now before the Court are Defendants' motions to dismiss the complaint ("Complaint") under Federal Rule of Civil Procedure 12(b)(6). This matter is now ripe for review and is suitable for disposition without oral argument. *See* Local Rule 230(g).

1

## II. BACKGROUND

**A.    Prior Federal ADA Action**

Plaintiff and her late husband owned Zlfred's, a restaurant located in Fresno, California. In July 2014, Ronald Moore filed an action against Plaintiff and others in federal court, alleging violations of the Americans with Disabilities Act ("ADA") and related state law claims ("Federal ADA Action") stemming from a visit to Zlfred's. *Moore v. Saniefar*, No. 1:14-CV-01067-DAD-SKO (E.D. Cal.). Plaintiff filed a counter and crossclaim against Ronald Moore, Randy Moore, the Moore Law Firm, Geoshua Levinson, and West Coast CASp for RICO violations. (ECF No. 24, Request for Judicial Notice ("RJN"), Ex. A.) The counterclaim was dismissed without prejudice, but also without leave to amend until the underlying ADA litigation concluded.[1] *Moore v. Saniefar*, No. No. 1:14-CV-01067-DAD-SKO, 2016 WL 2764768 (E.D. Cal. May 12, 2016). In March 2017, the court granted summary judgment in favor of Plaintiff Saniefar on the ADA claim. (RJN, Ex. C.) The court declined to exercise jurisdiction over Ronald Moore's state law claims, and Ronald Moore filed a complaint in Fresno Superior Court against Plaintiff alleging a violation of the Unruh Act. That action is currently pending.

**B.    Factual Background[2]**

Plaintiff alleges that Defendants are each part of a criminal enterprise that uses fraudulent ADA actions, predicated on false allegations of disability, injury and standing, to collect quick settlements from California businesses and citizens. Plaintiff alleges that the scheme is accomplished through predicate acts of mail fraud and wire fraud.

Defendant Moore Law Firm is operated by Defendants Randy Moore and Tanya Moore, both of

---

[1] In so holding, the Court noted that the RICO counterclaim was not viable at that stage because the only damages it sought were in the form of attorney's fees for the ADA action. Although legal fees are available as RICO damages, the court noted that the "award is subject to one critical limitation: that the legal fees stem from prior legal disputes, and not the RICO lawsuit itself." *Moore v. Saniefar*, No. 1:14-CV-01067-DAD-SKO, 2016 WL 2764768, at *2 (E.D. Cal. May 12, 2016) (citing *Menjivar v. Trophy Props. IV DE, LLC*, No. 06-03086, 2006 WL 2884396, at *11-12 (N.D. Cal. Oct. 6, 2006)).

[2] Unless otherwise indicated, all factual allegations are drawn from the Complaint (ECF No. 1).

whom are attorneys licensed to practice in the State of California. Defendants Randy and Tanya Moore are married, or were in the past. In about 2009, the Moore Law Firm began suing California businesses and residents under the ADA and related state laws. In total, the Moore Law Firm has filed over 1,400 ADA lawsuits since 2009. Defendant Ronald Moore is Defendant Randy Moore's brother, and has served as an ADA plaintiff in over 250 cases brought by the Moore Law Firm in the Eastern District of California. Defendant Marejka Sacks is a paralegal employed by the Moore Law Firm and Mission Law Firm who conducts many of the day to day activities of the firm, including preparing pleadings, engaging in meet-and-confer sessions with opposing counsel, preparing and submitting discovery responses, and so forth. The Complaint identifies Tanya Moore, Randy Moore, and Marejka Sacks as the leaders of the criminal enterprise.

Beginning in late 2015 to early 2016, when the Moore Law Firm started to gain regional and national notoriety and was sued by certain ADA plaintiffs for fraud and breach of contract, the assets of the Moore Law Firm were transferred to Defendant Mission Law Firm. Defendant Tanya Moore is the Secretary of the Mission Law Firm, and its employees and operations are largely the same as the Moore Law Firm. The Mission Law Firm is owned by LeRoy Falk, a licensed California attorney. Defendant Zak Best is a California attorney employed by the Mission Law Firm. It is alleged that the Mission Law Firm took over the Federal ADA Action and continued to prosecute it based on the knowingly false representations about Defendant Ronald Moore's disability. It is further alleged that the Mission Law Firm continues to file ADA lawsuits based on fraudulent claims and misrepresentations, and to benefit financially for the sake of Defendants Falk and Best, among others.

Plaintiff alleges that Defendants' ADA cases were based primarily on two known falsities. First, Plaintiff alleges that frequent plaintiff Ronald Moore is not in fact disabled. Although Ronald Moore has averred in ADA lawsuits that he requires the use of a wheelchair for mobility, Plaintiff alleges that video surveillance of Ronald Moore from March 2015 to May 2015 shows him walking, kicking, hopping, and bending without any support and without a wheelchair. Second, Plaintiff alleges that the Moore Law

3

Firm and Mission Law Firm misrepresented that Ronald Moore and other ADA plaintiffs actually visited the entities that they sued and that they experienced barriers there which resulted in difficulty, discomfort, and embarrassment. For example, Plaintiff alleges that Moore never visited Zlfred's on April 14, 2014, contrary to Defendants' representation in the complaint in the Federal ADA Action. Plaintiff alleges that these misstatements were used to fabricate ADA plaintiffs' standing.

Defendant Ronny Loreto, Defendant Ronald Moore's grandson, is alleged to have visited many of the establishments sued by the Moore Law Firm and Mission Law Firm in lieu of his grandfather for the purpose of making purchases and collecting receipts to aid in the filing of ADA lawsuits on his grandfather's behalf. Plaintiff alleges that Ronny Loreto falsely testified about the facts and circumstances of Ronald Moore's visit to Zlfred's on April 14, 2014, which Plaintiff maintains never occurred. Plaintiff further alleges that Defendant Ronny Loreto falsely represented that he and his grandfather visited nine establishments on a single day, all of which were later sued by Defendants.

Geoshua Levinson, Tanya Moore's son, and Rick Moore, Randy Moore's nephew, are also alleged to have been involved in the fraudulent scheme through Defendant Levinson's corporation West Coast CASp. These Defendants are alleged to have conducted investigations of California establishments for the purpose of developing targets for the ADA lawsuits, then using the information collected to develop false allegations about the barriers encountered by ADA plaintiffs, even though Defendants knew that ADA plaintiffs had not visited the establishments and personally encountered such barriers.

**C.     The Instant Action**

Plaintiff filed the Complaint in this action on June 20, 2017. (ECF No. 1.) Defendants moved to dismiss the RICO action on two primary grounds: (1) they are immune from suit under the *Noerr-Pennington* doctrine, and (2) Plaintiff fails to state a claim under RICO. (ECF Nos. 18-23.) Plaintiff opposed the motion. (ECF No. 25.) Defendants submitted a joint reply. (ECF No. 26.) Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331, and venue is proper in this Court.

### III. STANDARD OF DECISION

Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).hanks In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting [the] fraud [.]" Fed. R. Civ. P. 9(b). This heightened pleading standard requires the party to do more than simply identify a transaction and allege in a conclusory manner that the transaction was fraudulent. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*. Rather, the party must set forth in detail "the who, what, when, where, and how" of the alleged fraudulent conduct. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The purpose of Rule 9(b) is to protect defendants from factually baseless claims of fraud inasmuch as it is meant to give defendants notice of the claims asserted against them. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). When a party averring fraud fails to meet the heightened pleading standard of Rule 9(b), dismissal of the claim is proper. *See Vess*, 317 F.3d at 1107 ("A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim.").

### IV. DISCUSSION

**A.** *Noerr-Pennington* **Immunity**

Defendants argue that they are immune from suit because the allegations in the Complaint

encompass petitioning activity that is protected by the First Amendment of the United States Constitution under the *Noerr-Pennington* doctrine.

### 1. **Legal Standard**

The *Noerr-Pennington* doctrine "immunizes petitions directed at any branch of government, including the executive, legislative, judicial and administrative agencies." *Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000). The doctrine derives from the First Amendment, which guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend I. It first arose in the antitrust context, and reflected an effort to reconcile the Sherman Act with the First Amendment's Petition Clause. As the court explained in the Federal ADA Action:

> The classic case included one company's petitioning a branch of government to influence legislation or law regulating that company. *Id.* In response, companies in the same market would bring suit against the petitioning company, alleging its efforts to influence legislation violated the Sherman Act. *Id*. When faced with these cases, the Supreme Court held "the Sherman Act d[id] not prohibit . . . persons from associating . . . in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.* (*Noerr*), 365 U.S. 127, 136 (1961). The Supreme Court later extended its holding to include companies engaged in lobbying activities directed toward executive branch officials, in *United Mine Workers v. Pennington* (*Pennington*), 381 U.S. 657, 670-72 (1965). The Court later further extended the doctrine to the "channels and procedures of state and federal . . . courts." *Cal. Motor Transp. Co. v. Trucking Unlimited* (*Trucking Unlimited*), 404 U.S. 508, 511 (1972). With each decision, the Supreme Court recognized that construing the Sherman Act to reach such petitioning conduct "would raise important constitutional questions" respecting the right of petition. *Noerr*, 365 U.S at 138; *see also Pennington*, 381 U.S. at 672; *Trucking Unlimited*, 404 U.S. at 510. As such, the Court concluded, it "cannot . . . lightly impute to Congress an intent to invade . . . freedoms" protected by the Bill of Rights. *Noerr*, 365 U.S at 138; *Trucking Unlimited*, 404 U.S. at 510.

*Moore*, 2016 WL 2764768, at *5. The doctrine was subsequently extended to bar other causes of action brought against a protected petitioner, including RICO actions. *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 648 (9th Cir. 2009). The doctrine encompasses and protects "communication[s] to the court,"

including "[a] complaint, and answer, a counterclaim, and other assorted documents and pleadings, in which plaintiffs or defendants make representation and present argument to support their request that the court do or not do something" as well as "conduct incident to the suit". *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933-35 (9th Cir. 2006).

However, the Ninth Circuit has held that there is a "sham litigation" exception to the *Noerr-Pennington* doctrine. In *Sosa*, the court held that the doctrine does not protect petitioning conduct that, although "ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Id.* at 938. The court further indicated that the doctrine "is not limited to the antitrust context, but applies equally in all contexts." *Id.* (internal quotation marks and citations omitted).

In *Kearney*, 590 F.3d 638, 648 (9th Cir. 2009), the court clarified that the sham exception also applies to RICO claims. In *Kearney*, a landowner brought suit against a law firm that represented school district in eminent domain proceeding under RICO, alleging that the firm suppressed results of percolation testing on the land at issue in an effort to affect its valuation. The court rejected defendant's argument that *Noerr-Pennington* barred suit based on defendant's petitioning conduct in the prior litigation. Rather, the court noted that the law firm's conduct consisted of "making intentional misrepresentations to the court" thereby "depriv[ing] the litigation of its legitimacy." *Id.* at 646. The court therefore applied the "sham litigation" exception, concluding that "[d]efendants' alleged misconduct here was precisely the sort the sham exception was created to address." *Id.*

The Ninth Circuit has identified three situations in which the sham litigation exception might apply: (1) "where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful"; (2) "where the conduct involves a series of lawsuits 'brought pursuant to a policy of starting legal proceedings without regard to the merits' and for an unlawful purpose"; and (3) "if the allegedly unlawful conduct 'consists of making intentional misrepresentations to the court, litigation can be deemed a sham if 'a party's knowing fraud upon, or its intentional misrepresentations to, the court

7

deprive the litigation of its legitimacy.'" *Sosa*, 437 F.3d at 938 (citations omitted).

### 2. **Collateral Estoppel**

As an initial matter, Plaintiff argues that certain Defendants are collaterally estopped from arguing that *Noerr-Pennington* immunity applies because the court in the Federal ADA Action concluded that *Noerr-Pennington* did not apply to block the RICO counterclaims.

Collateral estoppel, or issue preclusion, "prevents a party from relitigating an issue decided in a previous action if four requirements are met: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action." *Kendall v. VISA U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir.2008).

Here, Plaintiff fails to demonstrate, at a minimum, the third requirement for collateral estoppel. Defendants did not lose the issue as a result of a final judgment. Although the court reasoned that *Noerr-Pennington* did not bar Saniefar's RICO counterclaim, the claim was ultimately dismissed without prejudice because Plaintiffs did not allege damages sufficiently. In other words, there was no final judgment in favor of Saniefar as to the RICO claim, although the court agreed with her reasoning as to the single issue of *Noerr-Pennington* immunity. *Brandenfels v. Heckler*, 716 F.2d 553, 557 (9th Cir. 1983) ("dismissals without prejudice do not constitute a final determination to which collateral estoppel is applied"). Indeed, the Court's reasoning that the counterclaim was not barred by *Noerr-Pennington* was not necessary to its ultimate decision that Plaintiff failed to state a counterclaim for RICO. Collateral estoppel does not apply.

### 3. **Application of *Noerr-Pennington***

Plaintiff argues that the actions alleged in its RICO claim fall within the third prong of the sham litigation exception: "knowing fraud upon, or intentional misrepresentation to, the court which deprive[d] the litigation of its legitimacy." *Moore*, 2016 WL 2764768, at *7-8.

8

Plaintiff alleges that Defendants made misrepresentations in pleadings submitted to the court during the Federal ADA Action, as well as in other ADA lawsuits brought by Defendants' law firm. For example, Plaintiff alleges that Ronald Moore, in concert with other Defendants, filed numerous lawsuits that included "false claims about the extent of Defendant Ronald Moore's disability, his alleged visits to the business establishments being sued, false claims regarding encountering barriers, false claims regarding having suffered 'difficulty, discomfort, or embarrassment,' and false claims regarding his intent to return to the business establishment in an effort to establish standing." (Compl. ¶ 50.) Plaintiff further alleges that Ronald Moore does not require the assistance of a wheelchair, and that undercover surveillance performed from March 2015 to May 2015 shows him "walking, kicking, hopping, and bending . . . all for an extended period of time without any need for support or showing any signs of discomfort or hesitance in doing so." (*Id.* ¶ 58.)

To fall within the sham litigation exception, Plaintiff must allege that the misstatements were material and intentional (made with knowledge). Plaintiff's allegations that the sham litigation exception applies are also subject to a heightened pleading standard. *See Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir. 1998) ("when a plaintiff seeks damages . . . for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required. In such cases, we employ a heightened pleading standard" (internal citations and quotation marks omitted)). At this stage in the litigation, we accept Plaintiff's well pleaded allegations as true.[3]

### a. **Materiality**

---

[3] Defendants argue that the facts supporting application of the sham litigation exception must be uncontroverted at the time of pleading. This conclusion is contrary to Ninth Circuit case law and otherwise inconsistent with basic pleading standards. In *Kearney*, the court held that the plaintiff was not required to prove her position that defendants made intentional misrepresentations to the court to survive a motion to dismiss based on *Noerr-Pennington*. 590 F.3d at 647. Plaintiff is subject to heightened pleading standard, meaning she must plead with particularity, but is by no means required to plead the sham litigation exception on undisputed facts. As in all Rule 12(b)(6) motions, the Court assumes the truth of well pleaded factual allegations in the Complaint. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

To state a claim under Title III of the ADA, an individual must show that: "(1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004). An individual alleging discrimination under the ADA carries the burden of establishing that they are disabled as the term is defined by the ADA. *Fortyune*, 293 F.3d at 1082. Under the ADA, a disability is a condition that fits into one or more of these categories: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Botosan v. Paul McNally Realty*, 216 F.3d 827, 837 (9th Cir. 2000). Major life activities include walking, standing, and bending. 42 U.S.C. § 12102(2)(a).

However, Title III does not require "a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply" with the ADA. *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002). Rather, "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." *Id.*

Here, Plaintiff alleges that Defendants made false claims about ADA plaintiffs' visits to the business establishments being sued, about the barriers they encountered at those establishments, and about having suffered 'difficulty, discomfort, or embarrassment' while patronizing those establishment. Defendants counter that because an ADA plaintiff does not need to visit the establishment, encounter barriers, and suffer discomfort to state a claim, they are not material to the litigation, and the alleged falsehoods therefore do not undermine the legitimacy of the litigation.

Plaintiff counters that regardless of whether those false allegations were necessary to state a claim, they were necessary for Defendants to establish Moore's standing to sue. Without the allegations, the claims might have been dismissed for lack of jurisdiction. *See, e.g.*, *Brooke v. Capitol Regency LLC*, No. 2:16-cv-02070-JAM-EFB, 2017 WL 2165866, at *3 (E.D. Cal. May 17, 2017) (noting that generally ADA plaintiffs must have "actual knowledge of at least one of the non-complian[t] barriers" that comes through "their own percipient, personal encounters with the barriers and were not simply being reported by an independent agent" (internal citations and quotation marks omitted)). Therefore, Saniefar argues, the misrepresentations did undermine the legitimacy of the litigation by conferring Moore standing, and by extension, conferring jurisdiction on the courts handling those lawsuits. Defendant counters that the third prong of the sham litigation exception "contemplates the effect on the proceedings themselves, i.e., the *merits*, not *jurisdictional* issues." (ECF No. 26 at 4.)

The Court disagrees. If Moore's standing was fabricated in these ADA actions, so was the courts' jurisdiction. It is axiomatic that federal courts are courts of limited jurisdiction, and that their powers are defined by Article III of the Constitution. If the courts did not have jurisdiction to hear the ADA cases brought by Defendants, that undermines the legitimacy of the litigation. *See Feld Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 316 n.16 (denying motion to dismiss where allegations that attorneys paid plaintiff to fabricate standing were sufficient to support inference that attorneys were participants in RICO enterprise).

Moreover, Plaintiff's allegation that Defendants misrepresented Moore's disability is material and goes to the merits. If Moore is not disabled as that term is defined by the ADA, his misstatement in the Federal ADA Action and other cases would undermine the legitimacy of those actions because disability is an essential element of an ADA claim. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1090 (9th Cir. 2002).

Defendants counter that Plaintiff does not dispute *whether* Ronald Moore is disabled, but rather the *extent* of his disability. As long as Ronald Moore meets the ADA's definition for disability, any

misstatements about the extent of his disability are immaterial, and therefore would not undermine the legitimacy of the ADA litigations with which he was involved.[4]

The Complaint alleges that Ronald Moore is not a disabled person within the meaning of the ADA. Ronald Moore alleged in the Federal ADA Action that he is disabled because he requires the use of a wheelchair; in other words, that he has a physical impairment that substantially limits one or more major life activities. (Compl. ¶ 56); *see also* 42 U.S.C. § 12102(2) (major life activities include walking, standing, and bending). Plaintiff alleges that Ronald Moore does not require the use of a wheelchair, and that his physical impairment does not substantially limit major life activities such as walking, standing, and bending. (Compl. ¶ 58.) Plaintiff alleges that she has surveillance footage of Ronald Moore engaging in these activities, and more, without assistance. (*Id.*) If these allegations are true, Ronald Moore may not be disabled within the meaning of the ADA, and his statements to the contrary "would be a material misrepresentation such that Moore could not prove his ADA claim." *Moore*, 2016 WL 2764768, at *8. Taking the facts set forth in the Complaint as true and construing them in the light most favorable to Plaintiff, Plaintiff has adequately alleged that Defendants made material misstatements regarding Ronald Moore's disability that undermined the legitimacy of the Federal ADA Action and other actions brought by Defendants on Ronald Moore's behalf.

**b.     Knowledge**

To fall within the third prong of the sham litigation exception, the fraud or misrepresentations to the court must be "knowing" or "intentional." *Sosa*, 437 F.3d at 398. Plaintiff alleges that Ronald Moore made representations that he was disabled in court documents when he was not in fact disabled. (Compl. ¶¶ 50-58.) Likewise, Plaintiff alleges that Randy Moore (Ronald Moore's brother) and his former wife

---

[4] Defendants ask the Court to take judicial notice of several court opinions that conclude Moore was disabled after considering the same surveillance footage, although they concede that these opinions are "not necessarily admissible in this action for the truth of the finding." (ECF No. 18-1 at 9.) Defendants are correct that it would be entirely inappropriate for the Court to consider such evidence on a motion to dismiss. The Court may consider matters of public record, but must take well-pleaded factual allegations as true and construe facts alleged in the Complaint in the light most favorable to the non-moving party (i.e. Plaintiff).

12

Tanya Moore knew that Ronald Moore was not disabled, but falsely stated that he was disabled, or directed their employees to do so, in court filings. Given their relationship to Ronald Moore and their direct participation in misrepresentations to the Court, if the allegations in the Complaint at true, it is more than plausible that Tanya Moore and Randy Moore knew that the cases they were filing misrepresented Ronald Moore's disability. *Moore*, 2016 WL 2764768, at *9.

Likewise, Plaintiff alleges that Marejka Sacks, a paralegal at Moore Law Firm and subsequently Mission Law Firm, "performs the bulk of the legal work" for those entities, including preparing pleadings containing known falsities. (*Id.* ¶ 37.) For example, the Complaint alleges that Marejka Sacks has "full knowledge that the allegations referring to the ADA plaintiff's personally encountering barriers and experiencing 'difficulty, discomfort or embarrassment' are false." (*Id.* ¶ 43.) The Complaint further alleges that Sacks knew that the information about barriers encountered in these establishments was derived from undercover investigations, and was not actually experienced by ADA plaintiffs. (*Id.*) Accepting these allegations as true and drawing reasonable inferences in favor of Plaintiff, these allegations sufficiently plead knowledge on the part of Defendant Sacks. Given Defendant Sacks' alleged intimate involvement with the preparation of pleadings allegedly containing misstatements about ADA plaintiffs' disabilities and their personal encounter with barrier, one could infer that Sacks knew that the documents she submitted to the court contained material misstatements.

Plaintiff further alleges that LeRoy Falk, as an attorney and the President of Defendant Mission law firm, and a close friend of Defendants Randy Moore, Tanya Moore, and Ronald Moore, knew that Ronald Moore was not disabled within the meaning of the ADA, and that his employees at the Mission Law firm were making material misrepresentations of fact in submissions to courts. (Compl. ¶¶ 103-112.) Plaintiff further alleges that LeRoy Falk "in exchange for taking responsibility for the operations of Defendant Mission Law Firm and the risks of running a business based on the commission of fraudulent acts as alleged herein, Defendant LeRoy Falk receives a percentage of the earnings from the lucrative ADA litigation practice of Defendant Mission Law Firm." (*Id.* ¶ 108.) Plaintiff likewise alleges

13

that Zak Best, an attorney at Mission Law Firm "agreed to participate in the criminal enterprise in exchange for receiving compensation from the lucrative ADA litigation of Defendant Mission Law Firm," and that he "knows, or should know in the exercise of reasonable care as a practicing attorney . . . , that the ADA complaints filed by Defendant Mission Law Firm contain falsities regarding the ADA plaintiffs' alleged disability, visit to establishments, encounter with barriers, and intent to return." (*Id.* ¶ 115.) Plaintiff's allegations against Falk and Best are sufficient at this stage to infer that they had actual knowledge of the material misrepresentations allegedly made in court filings.

Plaintiff alleges that Ronny Loreto, Ronal Moore's grandson, provided false sworn testimony regarding the barriers encountered by ADA plaintiffs for financial gain. (*Id.* ¶ 59.) Plaintiff alleges that although Loreto averred that he visited establishments with his grandfather, Ronald Moore, in many cases he visited those locations without his grandfather for the purpose of using Ronald Moore's credit card to "to make purchases, collect receipts, and submit such receipts to Defendant Moore Law Firm to use in filing complaints under the ADA on behalf of Defendant Ronald Moore." (*Id.* ¶ 62.) Plaintiff alleges, for example that Loreto "falsely testified regarding his alleged visits to establishments with Defendant Ronald Moore on May 31, 2014 wherein Defendant Ronald Moore allegedly went to 9 facilities in the course of one day, suing a restaurant and a barbershop in Fresno and then another restaurant, an ice cream parlor, 4 mini marts/gas stations, and a cigar shop in Madera." (*Id.* ¶ 66.) Accepting the well-pleaded allegations in the Complaint as true, Plaintiff's allegations support a reasonable inference that Defendant Loreto made knowingly false representations to the court regarding Ronald Moore's visits to establishments later sued by the Moore Law Firm and Mission Law Firm.

Plaintiff alleges that Geoshua Levinson, Rick Moore, and West Coast CASp made covert visits to each establishment sued by Defendants for the purpose of developing allegations for the Complaint. Plaintiff does not allege that these Defendants submitted any false information about the barriers, or that they fabricated allegations of any business's non-compliance with the ADA. There is nothing fraudulent or illegal about Levinson and Rick Moore, through West Coast CASp, conducting an investigation,

14

whether covert or otherwise, of businesses for the purpose of determining whether they are compliant with the ADA. However, the allegations in the Complaint go further. Plaintiff alleges that Levinson (Tanya Moore's son) and Rick Moore (Randy and Ronald Moore's nephew) generated receipts and photographic evidence of barriers during these visits with the explicit understanding that such evidence will be used to generate false allegations about ADA plaintiffs' experience with having encountered barriers and experienced "difficulty, discomfort or embarrassment" for the purpose of falsely establishing standing. (*Id.* ¶ 59.) These allegations are sufficient to infer that these Defendants had knowledge of and participated in the making of fraudulent statements to various courts.

Geoshua Levinson, Rick Moore, and West Coast CASp contend that because they were only witnesses, and not parties, to the Federal ADA Action, they are immune from the allegations under the doctrine of witness immunity. As an initial matter, the Complaint alleges that Levinson and Rick Moore participated in the fraudulent scheme. (*Id.* ¶¶ 78-81, 83.) To the extent that they participated in such a scheme, they are not immune. *See Paine v. City of Lompoc*, 265 F.3d 975, 983 (9th Cir. 2001) (absolute witness immunity does not shield out-of-court conduct).

Defendants also assert that the sham litigation exception only applies to the parties to a litigation. *Noerr-Pennington* immunity applies to petitioning conduct, which generally includes the conduct of parties to a lawsuit, but could include other non-parties as well. *See OG Int'l, Ltd. v. Ubisoft Entm't*, No. C 11-04980 CRB, 2012 WL 4809174, at *3 (N.D. Cal. Oct. 9, 2012). It would be completely illogical to construe the immunity doctrine to apply broadly to non-parties while construing the exception only to apply narrowly to parties. The purpose of the sham litigation exception is to avoid immunizing fraudulent conduct. The logic of the exception therefore applies equally to parties and non-parties; Defendants cannot use their non-party status as both a sword and a shield. In other words, to the extent that these Defendants engaged in petitioning conduct, the sham litigation exception can apply to them as well.

Plaintiffs sufficiently allege that each named Defendant made knowing misrepresentations in the

15

Federal ADA Action and other ADA lawsuits brought by Defendants.

### 4. **Particularity**

Plaintiff alleges that Defendants devised a scheme to defraud local businesses and to generate attorney's fees by filing lawsuits under Title III of the ADA based on fraudulent representations about the disability of at least one frequent plaintiff, as well as fraudulent misrepresentations that ADA plaintiffs visited the establishments that they were suing and that they encountered barriers there. *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 195 (9th Cir. 1987). The Ninth Circuit imposes a heightened pleading standard on parties "seeking to invoke[] the sham or misrepresentation exception to the *Noerr-Pennington* doctrine." *Thomas v. Hous. Auth. of Cty. of L.A.*, No. 04-cv-6970-MMM (RCX), 2006 WL 5670938, at *10 (C.D. Cal. Feb. 28, 2006) (citing *Kottle*, 146 F.3d at 1063). Under this standard, the complaint will be dismissed unless it includes allegations of "specific activities which bring the defendant's conduct" into one of the *Noerr-Pennington* exceptions. *Meridian Project Sys. Inc. v. Hardin Const. Co., LLC*, 404 F. Supp. 2d 1214, 1221 (E.D. Cal. 2005) (internal citations omitted). At least one court has equated this heightened standard with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. *See Meridian Project Systems, Inc. v. Hardin Construction Co., LLC*, 404 F. Supp. 2d 1214, 1221 (E.D. Cal. 2005) (noting that allegations that a complaint was objectively baseless "implicate[d] both Rule 9(b) and *Noerr-Pennington* 's heightened pleading standard"). Whether or not the heightened pleading standard under *Noerr-Pennington* is equivalent to the strictures of Rule 9(b), Plaintiff must allege at least two predicate acts of wire fraud and/or mail fraud with the particularity required by Rule 9(b) to survive the motion to dismiss her RICO claim. Therefore, the Court will evaluate whether Plaintiff alleges either mail fraud or wire fraud under Rule 9(b) at this stage.

As an initial matter, Defendants contend that Plaintiff does not allege adequately interstate wire fraud, because the Complaint does not allege that any communications travelled outside of California. The wire fraud statute makes it illegal for any person "having devised or intending to devise any scheme

or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" to transmit communications "for the purpose of executing such scheme or artifice . . . by means of wire, radio, or television communication in interstate or foreign commerce." 18 U.S.C. § 1343. Defendants are correct that Plaintiff must allege an interstate communication or transmission under § 1343. *See First Pac. Bancorp, Inc.*, 847 F.2d 542, 546-47 (9th Cir. 1988) (granting summary judgment for plaintiff, concluding that "[t]he allegation of wire fraud is also unsupported, since there is no evidence of interstate wire communication."); *see also Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1029 (C.D. Cal. 2011) (declining to find interstate commerce element satisfied where allegedly fraudulent emails were between parties both based in Mexico City, noting that "[i]n some cases, 'it is possible for a wire communication whose origin and ultimate destination are within a single state to be routed through another state' but [plaintiff] does not so establish here.").

Here, Plaintiff alleges that Defendants used email and telephones regularly in furtherance of the fraudulent scheme, including in the submission of documents containing fraudulent statements to the courts. (Compl. ¶¶ 145-147.) However, Plaintiff does not allege any communications travelled in interstate or foreign commerce. *United States v. Garrido*, 713 F.3d 985, 998 (9th Cir. 2013) (reversing wire fraud conviction because form containing fraudulent statements was faxed from one location in California to another, and government otherwise failed to prove that the form traveled in interstate commerce). Plaintiff alleges that Defendants (all based in California) filed lawsuits against California businesses (including Plaintiff's) in courts in the state of California. While it is possible that Defendants made use of the interstate wires to further the alleged fraudulent scheme, Plaintiff does not allege that element in the Complaint. Plaintiff therefore fails to allege with sufficient particularity any predicate acts of wire fraud.

The Complaint also does not allege predicate acts of mail fraud[5] with the requisite specificity

---

[5] Unlike the federal wire fraud statute, mail fraud under 18 U.S.C. § 1341 does not require proof of an interstate

under Rule 9(b). Plaintiff does not allege the specific time and place, and identities of the parties as to any specific misrepresentation in particular.[6] *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988) ("The allegations of predicate acts in the complaint concerning those elements of RICO are entirely general; no specifics of time, place, or nature of the alleged communications are pleaded. This is a fatal defect under Fed. R. Civ. P. 9(b), which requires that circumstances constituting fraud be stated with particularity."); *Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.").

Plaintiff alleges that Defendants made misrepresentations in hundreds of pleadings from 2009 to the present, but Plaintiff does not allege sufficient specific details of the time and place of those misrepresentations, or who was party to them. Plaintiff also does not allege in any specific instance that the mails were used to facilitate the misrepresentations. *See Timberline Nw., Inc. v. Hill*, 141 F.3d 1179 (9th Cir. 1998) ("The rule of particularity requires the plaintiff to plead with specificity both the alleged fraudulent conduct and the use of the mails. . . . General allegations regarding use of the mails are too vague to satisfy the dictates of Rule 9(b)" (citations omitted).).

Plaintiff does allege that certain Defendants misrepresented Ronald Moore's residency in a declaration filed in an ADA case brought in the Northern District of California in 2011, but does not allege that Defendants used the mails in furtherance of the scheme. (Compl. ¶¶ 53-55). Likewise, Plaintiff alleges that Ronny Loreto provided false testimony about his visit to Zlfreds, but does not

---

communications. All that is required is that the communication is sent or delivered by the U.S. Postal Service or by any private or commercial interstate mail carrier.

[6] Significantly, in the Federal ADA Action, the Plaintiff asked the Court to take judicial notice of eight public court filings which she alleged contained material misstatements as described in the counter-complaint. *Moore*, 2016 WL 2764768, at *2. Some of the allegedly fraudulent statements were also made in Federal ADA Action itself, and were part of the record in that case. In determining that the sham litigation exception was adequately pleaded, the Court relied on the particulars of these fraudulent statements. Here, Plaintiff has not asked the Court to take judicial notice of such documents, nor has Plaintiff described the time, place and manner of these statements with the requisite particularity in the Complaint.

18

allege when and in what form those false statements were made, nor whether the mails were used in furtherance of that scheme. (Compl. ¶¶ 64-67.) The Complaint does not provide this level of specificity as to any of the other allegedly false statements. Although Plaintiff alleges that the pleadings in the Federal ADA Action contained these misrepresentations, the Complaint falls short of identifying the exact contents of those allegations, when they were made, and to whom. The Complaint provides ample allegations regarding how and why the statements were false, but insufficient detail regarding the context of the statements themselves. *See Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1264 (C.D. Cal. 2007) ("these alleged predicate acts are insufficiently pleaded because they fail to adequately describe the contents of the communications; specifically, they fail to detail time, place and manner of 'each act of fraud.'"). Plaintiff has not met her burden of pleading fraud with particularity under Rule 9(b).[7]

Although Plaintiff has alleged that Defendants made knowing, material misrepresentations to courts in ADA lawsuits that undermined the legitimacy of those cases, Plaintiff has not pleaded the time, place, and manner of those false statements as required to allege fraud with particularity. Even if the Court concluded that it was not necessary to allege the fraud underlying the third prong of the sham litigation exception with the particularity required by Rule 9(b), the absence of at least two predicate acts of mail and/or wire fraud pleaded with particularity is fatal to Plaintiff's RICO claim at this stage. Because the Complaint fails to allege fraud with the requisite specificity, the Complaint is DISMISSED. Plaintiff is GRANTED LEAVE TO AMEND the RICO claim based on this insufficiency. In any amended pleading, Plaintiff must allege with specificity the time, place, and manner of the alleged

---

[7] Defendants also argue that sending documents containing fraudulent statements in litigation cannot constitute RICO predicate acts of mail or wire fraud, citing authority from district courts in the Second Circuit. *See, e.g.*, *Gunn v. Palmieri*, No. 87-cv-1418, 1989 WL 119519, at *1 (E.D.N.Y. Sept. 29, 1989), *aff'd*, 904 F.2d 33 (2d Cir. 1990). However, Ninth Circuit precedent is to the contrary. In *Living Designs*, the court expressly rejected the notion that litigation conduct cannot constitute racketeering activity, noting that "the RICO statute, itself, provides that conduct relating to prior litigation may constitute racketeering activity." 431 F.3d at 365 (citing 18 U.S.C. § 1961(1)(B), which defines racketeering activity to include tampering with a witness, victim, or informant under 18 U.S.C. § 1512). Likewise, in *Kearney*, the court vacated dismissal of RICO claims predicated on defendants' conduct in a prior litigation, implicitly holding that it could form the basis of a RICO claim that fell within the sham litigation exception. 590 F.3d at 647-48. Plaintiff alleges that Defendants instituted numerous ADA actions that were based on fraudulent premises and statements. The Court sees no reason why such conduct cannot form basis for RICO predicate acts under the statute or the law of this Circuit.

19

fraudulent statements alleged as predicate acts in accordance with the requirements of Rule 9(b). *See Bryant*, 573 F. Supp. 2d at 1264 (requesting that allegedly fraudulent communications be attached to the amended pleading).

Defendants raise several other arguments in support of their position that Plaintiff fails to state a RICO claim. Because the Complaint fails to allege predicate acts of fraud with the requisite particularity to survive a motion to dismiss at this stage, the Court declines to address Defendants' remaining arguments at this time.

## V. **CONCLUSION AND ORDER**

For the reasons stated above, Defendants' motions to dismiss (ECF Nos. 18, 19, 20, 22, 23) the Complaint are GRANTED WITH LEAVE TO AMEND. Plaintiff shall have twenty (20) days from electronic service of this Order to file an amended complaint.

IT IS SO ORDERED.

Dated: **December 1, 2017**     /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE

20