MOJI SANIEFAR (SBN 233330)
SANIEFAR LAW
1220 Howard Avenue, Suite 200
Burlingame, CA 94010
Tel: (650) 581-0025
Email: moji@saniefarlaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| FATEMEH SANIEFAR,<br><br>            Plaintiff,<br><br>vs.<br><br>RONALD D. MOORE, TANYA E. MOORE, KENNETH RANDOLPH MOORE, MAREJKA SACKS, ELMER LEROY FALK, ZACHARY M. BEST, MOORE LAW FIRM, a California Professional Corporation, MISSION LAW FIRM, a California Professional Corporation, GEOSHUA LEVINSON, RICK D. MOORE, WEST COAST CASP AND ADA SERVICES, a California Corporation, RONNY LORETO, and DOES 1 THROUGH 100, inclusive<br><br>            Defendants. | Case No.: 1:17-cv-00823-LJO-BAM<br><br>FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES PURSUANT TO THE RACKETEER INFLUENCED AND CORRUPT PRACTICES ACT<br><br>18 U.S.C. §§ 1962 (c) and (d), 1964 (a) and (c), 1341 and 1343<br><br>Demand for Jury Trial |

1

**INTRODUCTION**

2    1.    Plaintiff Fatemeh Saniefar pleads as follows against Defendants Tanya Moore, Kenneth

3    Randolph Moore, Marejka Sacks, Leroy Falk, Zachary Best, Moore Law Firm, Mission Law

4    Firm, Geoshua Levinson, Rick D. Moore, West Coast CASp and ADA Services, Ronald Moore,

5    Ronny Loreto, and DOES 1 through 100, (collectively referred to herein as "Defendants")

6

**JURISDICTION AND VENUE**

7    2.    There are two claims for relief in the First Amended Complaint which both arise under the

8    Racketeer Influenced  and Corrupt Practices Act, 18 U.S.C. §§ 1961 (1) (B), 1962 (c) and (d),

9    1964 (a) and (c), 1341 and 1343.  This Court has original subject matter jurisdiction over these

10    claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338.

11    3.    The Court has personal jurisdiction over all Defendants because:  (a) Defendants Tanya

12    Moore, Kenneth Randolph Moore, Marejka Sacks, Leroy Falk, Zachary Best, Geoshua Levinson,

13    Rick D. Moore, Ronald Moore, and Ronny Loreto reside and work in California and (b)

14    Defendants Moore Law Firm and Mission Law Firm are registered California Professional

15    Corporations, and Defendant West Coast CASp and ADA Services is a registered California

16    Corporation.

17    4.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial

18    part of the events or omissions giving rise to the claims asserted herein occurred or had effects in

19    this District and because Defendants LeRoy Falk, Geoshua Levinson, Rick D. Moore, Ronald

20    Moore, Ronny Loreto, and West Coast CASp and ADA Services live and/or conduct business in

21    this District.

22

**THE DEFENDANTS**

23    5.    Plaintiff is informed and believes, and thereon alleges, that Defendant Ronald D. Moore is a

24    plaintiff in several cases prosecuted by Defendants Moore Law Firm and Mission Law Firm for

25    alleged violations of the ADA and related state law claims.  Plaintiff is informed and believes,

26    and thereon alleges, that Defendant Ronald Moore lives in Clovis, California and is the brother of

27    Defendant Kenneth Randolph Moore.

28    6.    Plaintiff is informed and believes, and thereon alleges, that Defendant Tanya E. Moore is a

licensed California attorney whose legal practice primarily, if not solely, includes filing complaints under the Americans with Disabilities Act (the "ADA") and related state law claims. Plaintiff is informed and believes, and thereon alleges, that Defendant Tanya Moore is the President of Defendant Moore Law Firm and Secretary of Defendant Mission Law Firm. Plaintiff is informed and believes, and thereon alleges, that Defendant Tanya Moore is or was married to Defendant Kenneth Randolph Moore and is the mother of Defendant Geoshua Levinson.

7.    Plaintiff is informed and believes, and thereon alleges, that Defendant Kenneth Randolph Moore (also known as "Randy Moore") is a licensed California attorney who was a principal and partner at Defendant Moore Law Firm and whose litigation practice from approximately 2010 primarily, if not solely, concerned alleged violations of the ADA and related state law claims. Plaintiff is informed and believes, and thereon alleges, that Defendant Randy Moore is or was married to Defendant Tanya Moore and is the brother of Defendant Ronald Moore. Plaintiff is informed and believes, and thereon alleges, that Defendant Randy Moore is the principal and leader of Defendant Moore Law Firm and its successor Defendant Mission Law Firm.

8.    Plaintiff is informed and believes, and thereon alleges, that Defendant Marejka Sacks is a paralegal at Defendants Moore Law Firm and Mission Law Firm and is engaged in providing paralegal and legal services in the filing and prosecution of complaints under the ADA and related state law.

9.    Plaintiff is informed and believes, and thereon alleges, that Defendant Elmer Leroy Falk (also known as "Leroy Falk") is a licensed California attorney who is the President of Defendant Mission Law Firm, which law firm is primarily, if not solely, involved in filing complaints alleging violations of the ADA and related state law.

10.    Plaintiff is informed and believes, and thereon alleges, that Defendant Zachary M. Best (also known as "Zak Best") is a licensed California attorney who practices at Defendant Mission Law Firm, which firm is primarily, if not solely, involved in filing complaints alleging violations of the ADA and related state law claims.

11.    Plaintiff is informed and believes, and thereon alleges that Defendant Moore Law Firm is a California Professional Corporation which does business in San Jose, California at 332 N. Second

Street and which primarily, if not solely, is involved in filing complaints alleging violations of the ADA and related state law claims. Plaintiff is informed and believes, and thereon alleges, that the majority of Defendant Moore Law Firm's ADA filings have taken place in this judicial district.

12.    Plaintiff is informed and believes, and thereon alleges that Defendant Mission Law Firm is a California Professional Corporation doing business in San Jose, California at 332 N. Second Street and which primarily, if not solely, is involved in filing complaints alleging violations of the ADA and related state law claims. Plaintiff is informed and believes, and thereon alleges, that the majority, approximately 1,400, of Defendant Mission Law Firm's ADA filings have taken place in this judicial district.

13.    Plaintiff is informed and believes, and thereon alleges, that Defendant Geoshua Levinson is a California licensed Certified Access Specialist ("CASp") who acts as a consultant, percipient witness, and expert in Defendant Ronald Moore's ADA cases and other cases prosecuted by Defendants Moore Law Firm and Mission Law Firm. Plaintiff is informed and believes, and thereon alleges, that Defendant Geoshua Levinson is the President of Defendant West Coast CASp and ADA Services ("West Coast CASp") which is listed on the California Secretary of State's office as doing business at 18463 E. Kings Canyon Road in Sanger, California. Plaintiff is informed and believes, and thereon alleges, that Defendant Levinson is the step-son of Defendant Randy Moore and son of Defendant Tanya Moore.

14.    Plaintiff is informed and believes, and thereon alleges, that Defendant Rick D. Moore is employed by Defendant West Coast CASp to perform covert and unauthorized inspections of facilities for Defendants Moore Law Firm and Mission Law Firm to assist in the filing of ADA complaints. Plaintiff is informed and believes, and thereon alleges, that Defendant Rick Moore resides in Fresno, California and is the nephew of Defendant Randy Moore.

15.    Plaintiff is informed and believes, and thereon alleges, that Defendant West Coast CASp and ADA Services is a California Corporation registered with the California Secretary of State with a business address of 18463 E. Kings Canyon Road in Sanger, California. Plaintiff is informed and believes, and thereon alleges, that Defendant West Coast CASp's primary function is to perform covert and unauthorized inspections of facilities for Defendants Moore Law Firm

1   and Mission Law Firm to assist in the filing of ADA complaints.

2   16.    Plaintiff is informed and believes, and thereon alleges, that Defendant Ronny Loreto is the

3   grandson of, and resides with, Defendant Ronald Moore.  Plaintiff is informed and believes, and

4   thereon alleges, that Defendant Loreto assists Defendants Moore Law Firm and Mission Law

5   Firm by providing false testimony regarding alleged visits with his grandfather, Defendant Ronald

6   Moore, to establishments that are sued by Defendants Moore Law Firm and Mission Legal on

7   behalf of Defendant Ronald Moore for supposed violations of the ADA and related state law.

8   17.    Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 100, inclusive,

9   have or are actively conspiring with one or all of the named Defendants in carrying out the acts

10  alleged herein.  Plaintiff is currently unaware of the identity of the persons and/or entities named

11  as DOES 1 through 100 and will amend this First Amended Complaint as the identity of these

12  unknown DOE Defendants is revealed.

13                           **GENERAL ALLEGATIONS**

14                             **The Conspiracy**

15  18.    Plaintiff is informed and believes, and thereon alleges, that all Defendants named herein,

16  including DOE Defendants working for or with Defendants Moore Law Firm and Mission Law

17  Firm have formed a criminal enterprise by using the Americans with Disabilities Act, Title III

18  ("ADA") to institute actions based on false allegations of disability, injury, and standing to collect

19  quick settlements from California businesses and citizens.

20  19.    Plaintiff is informed and believes, and thereon alleges that each member of the criminal

21  enterprise (as more fully described herein), helps to further the scheme to make money for all

22  involved in the conspiracy at the expense of California businesses and citizens, most of whom are

23  small business owners and immigrants to this country and cannot afford legal representation.

24  20.    Plaintiff is informed and believes, and thereon alleges that for most businesses and business

25  owners sued by Defendant Moore Law Firm and Mission Law Firm, it is cheaper to settle than to

26  litigate the merits of the action.

27  21.    Plaintiff is informed and believes, and thereon alleges that knowing the propensity of small

28  "mom-and-pop" establishments to settle cases early to avoid distraction to their business and

1    costly litigation, Defendants have perverted the purpose of the ADA and related state laws for

2    their own greed and financial gain.  Plaintiff further is informed and believes, and thereon alleges

3    that, in fact, the evidence will show that most of the businesses sued by Defendants have not

4    undertaken any improvements to their facilities to become ADA compliant.

5    22.   Plaintiff is informed and believes, and thereon alleges that the lawsuits initiated by the

6    criminal enterprise herein lack merit, are frivolous and vexatious because of false assertions

7    regarding allegations of disabilities, visits to establishments, encounter of barriers, and intent to

8    return.  Plaintiff is informed and believes, and thereon alleges, without such false statements,

9    Defendants would be unable to prosecute any of the ADA cases they file because they would fail

10   to plead standing sufficient to establish a right to a claim under the ADA and related state law.

11   23.   Directly as a result of the criminal enterprise, Defendants, and each of them, have caused

12   damages to Plaintiff.

13   24.   On April 14, 2014, Defendant Ronald Moore claims to have visited Zlfred's Restaurant

14   ("Zlfred's") and allegedly suffered "difficulty, discomfort or embarrassment" as a result of

15   encountering barriers based on his alleged disability.  In July 2014, Defendant Ronald Moore

16   sued Zlfred's, including Fatemeh Saniefar (the Plaintiff herein) as a defendant in that action, as a

17   result of alleged discrimination under the ADA.  That case was *Moore v. Saniefar, et al.*, case

18   number 1:14-cv-01067-SKO ("the Prior Litigation") and filed in the Eastern District of

19   California.  The Prior Litigation was terminated in April 2017 when the defendants in that matter,

20   including Fatemeh Saniefar (the Plaintiff herein), obtained summary judgment in their favor.

21   25.   Based on the discovery performed in the Prior Litigation, Plaintiff is informed and believes,

22   and thereon alleges, that Defendant Ronald Moore's allegations made in the Prior Litigation were

23   false and that each Defendant named herein was, and continues to be, involved in a criminal

24   enterprise through the use of interstate mail and wire channels to commit fraud on Plaintiff and

25   others similarly situated.

26   26.   For example, Plaintiff is informed and believes, and thereon alleges, that although

27   Defendant Ronald Moore has testified under oath in declarations and his deposition that he is

28   unable to stand and walk without assistance, this is entirely false.  Contrary to his sworn

testimony, Plaintiff is informed and believes, and thereon alleges, that Defendant Ronald Moore can indeed walk by himself, without the use of a cane, person or object on which to lean.  At various times from March to April 2015, Defendant Ronald Moore has been taped during surveillance walking by himself and without any aid which is inconsistent with statements he has made in verified pleadings, sworn declarations and testimony provided under oath as alleged further herein.

27.    Plaintiff is further informed and believes, and thereon alleges, that in the Prior Litigation, Defendant Ronald Moore also falsely testified about his encounter of barriers at Zlfred's on April 14, 2014.  For example, Defendant Ronald Moore testified in his deposition on May 18, 2015 that on two occasions on April 14, 2014, he got stuck in the bathroom at Zlfred's and had to "holler" so loudly for help, that his grandson was able to hear him all the way from where he was sitting in the dining room of the restaurant, and went to his rescue.  Plaintiff's witnesses, including Lynn Coffman and Reza Saniefar, have testified that this never happened.

28.    Plaintiff is informed and believes, and thereon allege that Defendants have actively conspired, participated and agreed to join in aiding and abetting a racketeering enterprise whose activities affect interstate commerce within the meaning of 18 U.S.C. §§ 1961 (1) (B), 1341 and 1343 (relating to mail and wire fraud) and by operating, managing or otherwise being actively involved by aiding and abetting in the enterprise through a pattern of racketeering activities in conspiring schemes designed to defraud the public, and principally to defraud Plaintiff, all in violation of 18 U.S.C. § 1962 (c) and (d).

## The Criminal Enterprise

**Defendants Randy Moore, Tanya Moore and Marejka Sacks Lead the Criminal Enterprise.**

29.    Beginning in or around 2009, Defendant Moore Law Firm, operated by Defendants Randy Moore and Tanya Moore, began suing California businesses and residents under the Americans with Disabilities Act and related state law.  Plaintiff is informed and believes, and thereon alleges, that the purpose of filing the ADA lawsuits is for the purpose of extracting quick settlements.

30.    Court records show that Defendant Moore Law Firm has been filing literally hundreds of disability related litigation (approximately 1,400) on behalf of Defendant Ronald Moore and

others since approximately 2009.

31.    Defendant Moore Law Firm has filed on behalf of Defendant Ronald Moore over 250 cases in the Eastern District of California and approximately 10 cases in the Northern District of California.

32.    Plaintiff is informed and believes, and thereon alleges that the criminal enterprise was initially masterminded by Defendant Randy Moore, who then recruited his wife Defendant Tanya Moore and employee, Defendant Marejka Sacks, to join the enterprise (collectively, "the Ringleaders").  Plaintiff is informed and believes, and thereon alleges that Defendants Sacks and Tanya Moore understood the nature of the enterprise and agreed to participate in the enterprise in return for the financial benefits they would receive.

33.    Plaintiff is informed and believes, and thereon alleges that since that time, and continuing until today, the enterprise is still masterminded by the trio of Defendants Randy Moore, Tanya Moore and Sacks and has grown to include other family members, friends and lackeys looking to profit in the money-raking enterprise, without regard to the fraudulent means used.

34.    Plaintiff is informed and believes, and thereon alleges, that the day-to-day activities to support the fraudulent enterprise complained of herein is conducted by Defendants Tanya Moore and Sacks who are the operators-in-fact of the activities of Defendants Moore Law Firm and Mission Law Firm.

35.    Plaintiff is informed and believes, and thereon alleges, that Defendant Randy Moore still directs the operations of Defendants Moore Law Firm and Mission Law firm.  Defendant Randy Moore is a lawyer licensed in the State of California and a member of the California State Bar, although his license is not currently active.

36.    Tanya Moore is a practicing lawyer licensed in the State of California and a member of the California State Bar.  Plaintiff is further informed and believes, and thereon alleges, that Defendant Tanya Moore prosecutes ADA litigation on behalf of Defendant Ronald Moore (and numerous other persons) and in the process, prepares, submits and signs (i) false pleadings and declarations filed with the court, (ii) false discovery responses that is submitted to defense counsel, and (iii) correspondence containing falsities to defense counsel and courts on behalf of

her ADA clients as alleged further herein.

37.    Plaintiff is informed and believes, and thereon alleges, that Defendant Sacks is a senior paralegal at Defendants Moore Law Firm and Mission Law Firm.  Plaintiff is further informed and believes, and thereon alleges, that Defendant Sacks performs the bulk of the legal work for Defendants Moore Law Firm and Mission Law Firm, although she is not a licensed attorney.

38.    Plaintiff is informed and believes, and thereon alleges, that Defendant Sacks prepares the majority of the pleadings (which contain falsities) to be filed in court, engages in telephonic and electronic meet-and-confer sessions with opposing counsel, prepares and submits false discovery responses, and prepares and submits correspondence containing falsities to defense counsel on behalf of the ADA clients of Defendants Moore Law Firm and Mission Law Firm.  Plaintiff is informed and believes, and thereon alleges, that Defendant Sacks is fully aware of the falsities contained in the documents that she prepares, produces, submits and files.

**The Fraudulent Scheme Involves the Filing of False ADA Claims**

39.    Plaintiff is informed and believes, and thereon alleges, that when the conspiracy first began in approximately 2009, Defendants Randy Moore and Tanya Moore held meetings in Fresno, California to recruit persons to act as ADA plaintiffs.  Plaintiff is informed and believes, and thereon alleges, that in these meetings, Defendants Randy Moore and Tanya Moore advise potential plaintiffs that they will be given a finder's fee for every complaint for which they agree to appear as named plaintiffs.

40.    Plaintiff is informed and believes, and thereon alleges, that Defendants Randy Moore and Tanya Moore advise would-be ADA plaintiffs that they need not worry about actually experiencing any difficulty, discomfort or embarrassment at the establishments to be sued. Plaintiff is informed and believes, and thereon alleges, that Defendants Randy Moore and Tanya Moore tell would-be ADA plaintiffs that investigators working for Defendants Moore Law Firm and Mission Law Firm will find violations at the business establishments to be sued and that Defendants Moore Law Firm and Mission Law Firm will supplement the complaint with these violations on behalf of the would-be plaintiff.

41.    Plaintiff is informed and believes, and thereon alleges, that one (or a combination) of the

following Defendants, including Defendants Randy Moore, Tanya Moore, Geoshua Levinson (of Defendant West Coast CASp), and/or Rick D. Moore (of Defendant West Coast CASp) visit the establishments to be sued prior to filing a complaint to covertly gather information to be used in supplementing the ADA complaint (to be filed on behalf of a would-be ADA plaintiff) to include violations of the ADA that allegedly caused the would-be ADA plaintiff to suffer difficulty, discomfort, or embarrassment, even though such "difficulty, discomfort, or embarrassment" never occurred and was never experienced by the named ADA plaintiff.

42.    Defendants Tanya Moore, Sacks and/or DOE Defendants receive the information from the undercover investigation contained in Paragraph 41 above and, based on such information, prepare the ADA complaints to be filed in federal court.

43.    Plaintiff is informed and believes, and thereon alleges, that Defendants Tanya Moore, Sacks and DOE Defendants have full knowledge that the allegations referring to the ADA plaintiff's personally encountering barriers and experiencing "difficulty, discomfort or embarrassment" are false and that the ADA complaint includes allegations that have been supplemented by information from representatives of Defendants Moore Law Firm and Mission Law Firm from an undercover investigation, and not actually experienced by the ADA plaintiff.

44.    For example, Defendants Levinson and Tanya Moore conducted a covert inspection of Zlfred's in or about June 2014.  Upon conducting the covert inspection and taking unauthorized pictures of the facility, Defendant Levinson provided his report, including pictures, to Defendants Tanya Moore and/or Sacks of Defendant Moore Law Firm.  Based on the list of alleged barriers identified by Defendant Levinson, Defendant Moore Law Firm prepared the complaint in *Moore v. Saniefar, et al.*, Case No. 1:14-cv-01067-SKO, filed on July 8, 2014 (Docket No. 1), which falsely listed numerous barriers that Defendant Ronald Moore allegedly personally encountered. In fact, Plaintiff is informed and believes and thereon alleges, that Defendant Ronald Moore never went to Zlfred's as alleged in the complaint and Plaintiff's witnesses have disputed Defendant Ronald Moore's account of the alleged visit.

**Defendants Randy Moore and Tanya Moore Enlist Family Member, Ronald Moore, to Join the Enterprise and Act as an ADA Plaintiff in Mass ADA Filings.**

45.    Plaintiff is informed and believes, and thereon alleges, that Defendants Randy Moore and Tanya Moore conspired with Defendant Ronald Moore, who is the brother of Defendant Randy Moore, to assist them in the filing of false complaints under the ADA for the purpose of extorting California businesses into quick settlements.

46.    Sometime in 2010, Defendants Randy Moore and Tanya Moore recruited Defendant Ronald Moore to begin mass-filing ADA litigation in the Northern and Eastern Federal Judicial Districts of California.

47.    Plaintiff is informed and believes, and thereon alleges, that at the time that Defendants Randy and Tanya Moore approached Defendant Ronald Moore with this offer, Defendant Ronald Moore had no job and was in desperate need of money.  Plaintiff is informed and believes, and thereon alleges, that Defendants Randy Moore and Tanya Moore took advantage of Defendant Ronald Moore's desperate emotional and financial condition.

48.    Defendants Randy Moore and Tanya Moore promised Defendant Ronald Moore that he would be given $1,000 for each ADA complaint for which he agreed to be the named plaintiff and which resulted in a settlement.  Plaintiff is informed and believes, and thereon alleges that Defendant Ronald Moore understood the nature of the enterprise and agreed to participate in the enterprise in return for the financial benefits he would receive.

49.    Plaintiff is informed and believes, and thereon alleges, that Defendants Randy Moore and Tanya Moore, never informed Defendant Ronald Moore that a legitimate ADA plaintiff was entitled to a minimum of $4,000 in statutory damages under California law.  Plaintiff is further informed and believes, and thereon alleges, that Defendants Randy Moore, Tanya Moore, and Moore Law Firm, pocketed the bulk of the statutory damages paid by settling defendants, in addition to pocketing legal fees and costs.

50.    Plaintiff is informed and believes, and thereon alleges, that Defendants Randy Moore and Tanya Moore also told Defendant Ronald Moore that he would not need to report any of the monies received from the ADA litigation to federal and state taxing authorities or to federal and state social services agencies.  Plaintiff is informed and believes, and thereon alleges, that as a result of this advice, Defendant Ronald Moore never reported any of the monies received from the

1    ADA litigation to the Internal Revenue Service or California Franchise Tax Board.  Plaintiff is

2    further informed and believes, and thereon alleges, that Defendant Ronald Moore, also never

3    reported any of the monies received from the ADA litigation to the Social Security

4    Administration or California Department of Health and Human Services and, in fact, continued to

5    receive federal and/or state assistance although he was earning at least $1,000 per ADA case he

6    settled, or approximately $260,000.

7    51.    Plaintiff is informed and believes, and thereon alleges, that after Defendant Ronald Moore

8    agreed to join the conspiracy, Defendants Tanya Moore, Randy Moore, and Sacks ("the

9    Ringleaders") began mass filing ADA complaints in the Eastern and Northern Judicial Districts of

10    California on behalf of Defendant Ronald Moore which included false claims about the extent of

11    Defendant Ronald Moore's disability, his alleged visits to the business establishments being sued,

12    false claims regarding encountering barriers, false claims regarding having suffered "difficulty,

13    discomfort, or embarrassment," and false claims regarding his intent to return to the business

14    establishment in an effort to establish standing.

15    52.    Plaintiff is informed and believes, and thereon alleges, that Defendants Tanya Moore,

16    Randy Moore, and Sacks also filed false verifications with the courts on behalf of Defendant

17    Ronald Moore.

18    53.    Plaintiff is further informed and believes, and thereon alleges, that Defendants Tanya

19    Moore, Randy Moore, and Sacks also filed false declarations on behalf of Defendant Ronald

20    Moore and submitted holographic and electronic signatures on behalf of Defendant Ronald Moore

21    that did not belong to him, nor were known, nor authorized, by him.

22    54.    For example, on January 25, 2011, Defendant Moore Law Firm using the PACER-CM/ECF

23    system filed a declaration purporting to be reviewed, approved and signed by Ronald Moore for

24    the purpose of opposing a motion to dismiss an ADA complaint filed in *Hernandez, et al. v.*

25    *Vallco International Shopping Center, LLC*, *et al.*, Case No. 3:10-cv-02848-LHK, Docket No.

26    203-1.  Plaintiff is informed and believes, and thereon alleges, that the declaration was prepared

27    by Defendant Sacks, filed with the Court by Defendant Tanya Moore, and reviewed and approved

28    for filing by Defendant Randy Moore of Defendant Moore Law Firm, whose name appears as

1    legal representative on the pleading.

2    55.    The declaration contained a false statement about Defendant Ronald Moore's residency to

3    support his standing to maintain the ADA litigation.  The declaration stated that Defendant

4    Ronald Moore had "lived in Los Gatos and San Jose[,] California with [his] wife Lynn Moore for

5    over six (6) years" in opposition to a motion to dismiss based on standing.  The court referred to

6    the false declaration in denying the request for a motion to dismiss the ADA lawsuit and

7    defendants in that case shortly thereafter settled with Defendant Ronald Moore.

8    56.    In a deposition taken on May 18, 2015 in the Prior Litigation, Defendant Ronald Moore

9    reviewed the declaration that was submitted containing the statement (as described in Paragraph

10    56 above) and testified that the information provided to the court in the declaration about his

11    residency was untrue.

12    57.    In numerous verified complaints, and in sworn testimony, Defendant Ronald Moore has

13    testified that he is disabled and requires the use of a wheelchair for mobility and that he is unable

14    to walk without the risk of falling unless he uses a cane, an object for support, or obtains the

15    assistance of another person.  Video surveillance performed on Defendant Ronald Moore from

16    March to May of 2015, shows that these statements by Defendant Ronald Moore are false.

17    Defendant Ronald Moore's alleged disability has been included in numerous complaints filed by

18    Defendant Moore Law Firm using the PACER-CM/ECF system wherein Defendant Ronald

19    Moore has verified nearly identical boilerplate allegations that he is disabled and requires a

20    wheelchair for mobility, including, for example:  (1) *Moore v. Saniefar, et al.*, Case No. 1:14-cv-

21    01067-SKO, complaint filed on July 8, 2014 (Docket No. 1); (2) *Moore v. Saniefar, et al.*, Case

22    No. 1:14-cv-01067-SKO, First Amended Complaint filed on January 23, 2015 (Docket No. 25);

23    (3) *Moore v. Saniefar, et al.*, Case No. 1:14-cv-01067-SKO, Second Amended Complaint filed on

24    June 4, 2015 (Docket No. 32); (4) *Moore v. Wong, et al.,* Case No. 1:14-cv-01997-SKO, filed on

25    December 15, 2014 (Docket No. 1); (5) *Moore v. Heim, et al.*, Case No. 1:14-cv-01870-BAM

26    (Docket No. 1) filed on November 24, 2014; (6) *Moore v. Hadjis, et al.,* Case No. 1:14-cv-01313-

27    MJS (Docket No. 1) filed on filed on August 21, 2014; and (7) *Moore v. Schiff, et al.*, Case No.

28    1:14-cv-01607-BAM (Docket No. 1) filed on filed on October 14, 2014.

58.    On May 18, 2015, Defendant Ronald Moore testified under oath that he does not use a wheelchair at his home and that his home has not been made handicap-accessible.  Defendant Ronald Moore has further stated that he achieves mobility at his home by leaning on walls, using his cane, or obtaining physical support from family members.

59.    Contrary to the representations regarding Defendant Ronald Moore's disability made under oath in verified complaints and through representations of his attorneys and attorneys' agents in filed complaints (as listed above), video surveillance directly contradicts Defendant Ronald Moore's testimony and the claims made in his various lawsuits regarding his alleged disability. Undercover surveillance performed from March 2015 to May 2015, shows Ronald Moore walking, kicking, hopping, and bending, and all for an extended period of time without any need for support or showing any signs of discomfort or hesitance in doing so.

**Defendant Ronald Moore's Grandson, Defendant Ronny Loreto, Agrees to Participate in the Conspiracy and Provides False Testimony to Support the Claims Made in His Grandfather's ADA Complaints.**

60.    Plaintiff is informed and believes, and thereon alleges, that Defendant Ronny Loreto, who is Defendant Ronald Moore's grandson, is further part of the criminal enterprise complained of herein and has also provided false information under sworn testimony to assist Defendants Ronald Moore, Tanya Moore, Randy Moore, Moore Law Firm and Mission Law Firm in prosecuting ADA cases for financial gain.

61.    Plaintiff is informed and believes, and thereon alleges, that Defendants Tanya Moore and Randy Moore have enlisted the assistance and agreement of Defendant Ronny Loreto in prosecuting false complaints on behalf of Defendant Ronald Moore.  Plaintiff is informed and believes, and thereon alleges that Defendant Ronny Loreto understood the nature of the enterprise and agreed to participate in the enterprise in return for the financial benefits he would receive.

62.    Plaintiff is informed and believes, and thereon alleges, that Defendant Ronny Loreto knows and has agreed to be named in numerous complaints which include false allegations of having accompanied his grandfather, Defendant Ronald Moore, on Defendant Ronald Moore's alleged visits to business establishments.  These include, for example, the following cases that have been

1    filed by Defendant Moore Law through the PACER-CM/ECF system on behalf Defendant Ronald

2    Moore and which list Defendant Loreto as a witness to the alleged events in the complaints:  (1)

3    *Moore v. Saniefar, et al*., Case No. 1:14-cv-01067-SKO, complaint filed on July 8, 2014 (Docket

4    No. 1); (2) *Moore v. Saniefar, et al*., Case No. 1:14-cv-01067-SKO, First Amended Complaint

5    filed on January 23, 2015 (Docket No. 25); (3) *Moore v. Saniefar, et al*., Case No. 1:14-cv-01067-

6    SKO, Second Amended Complaint filed on June 4, 2015 (Docket No. 32); (4) *Moore v. Wong, et*

7    *al.,* Case No. 1:14-cv-01997-SKO, filed on December 15, 2014 (Docket No. 1); (5) *Moore v.*

8    *Heim, et al.*, Case No. 1:14-cv-01870-BAM (Docket No. 1) filed on November 24, 2014; (6)

9    *Moore v. Hadjis, et al.,* Case No. 1:14-cv-01313-MJS (Docket No. 1) filed on filed on August 21,

10   2014; and (7) *Moore v. Schiff, et al.,* Case No. 1:14-cv-01607-BAM (Docket No. 1) filed on filed

11   on October 14, 2014.

12   63.    Plaintiff is informed and believes, and thereon alleges, that Defendant Ronny Loreto knows

13   that the allegations included in these complaints regarding Defendant Ronald Moore's disability,

14   visit to establishments, and personal encounter with barriers are false.

15   64.    Plaintiff is informed and believes, and thereon alleges, that in many instances, Defendant

16   Loreto visits establishments in lieu of his grandfather, Defendant Ronald Moore, for the purpose

17   of using Defendant Ronald Moore's credit card to make purchases, collect receipts, and submit

18   such receipts to Defendant Moore Law Firm to use in filing complaints under the ADA on behalf

19   of Defendant Ronald Moore.  For example, Defendant Loreto has admitted that he used

20   Defendant Ronald Moore's credit card in conducting purchases on May 31, 2014 in at least 4

21   separate cases, including the complaints filed in:  (1) *Moore v. Wong, et al.,* Case No. 1:14-cv-

22   01997-SKO, filed on December 15, 2014; (2) *Moore v. Heim, et al.*, Case No. 1:14-cv-01870-

23   BAM filed on November 24, 2014 ; (3) *Moore v. Hadjis, et al.,* Case No. 1:14-cv-01313-MJS

24   filed on August 21, 2014; and (4) *Moore v. Schiff, et al.* Case No. 1:14-cv-01607-BAM filed on

25   October 14, 2014.

26   65.    Plaintiff is informed and believes, and thereon alleges, that Defendant Loreto provides these

27   receipts to Defendants Sacks, Tanya Moore and Moore Law Firm, who use the receipts for

28   evidence to support the false allegations in future-filed ADA complaints on behalf of Defendant

Ronald Moore.

66.    Defendant Ronny Loreto has also falsely testified regarding Defendant Ronald Moore's alleged visit to Zlfred's Restaurant on April 14, 2014 as a basis to support a complaint filed and prosecuted by Defendants Moore Law Firm and Mission Law Firm on behalf of Defendant Ronald Moore.

67.    Defendant Ronny Loreto falsely testified about the following details (which Plaintiff's witnesses dispute) regarding Defendant Ronald Moore's alleged visit to Zlfred's on April 14, 2014 to assist Defendants Ronald Moore, Moore Law Firm and Mission Law Firm establish standing and damages in the Prior Litigation:

- that Defendant Ronald Moore got stuck in the bathroom of Zlfred's Restaurant causing him to yell loudly on two separate occasions from the bathroom for Defendant Ronny Loreto, who was in the main dining room of the restaurant, to hear him and come to his rescue;

- that Defendant Ronald Moore yelled so loudly that everyone in the restaurant heard it; and

- that Defendant Ronald Moore picked up the tab of another table on the night of his alleged April 14, 2014 visit to Zlfred's thereby making his bill unusually high and outside the realm of possibility for the items allegedly ordered by Defendant Ronald Moore's table at Zlfred's.

68.    Plaintiff is informed and believes, and thereon alleges, that Defendant Ronny Loreto also falsely testified regarding his alleged visits to establishments with Defendant Ronald Moore on May 31, 2014 wherein Defendant Ronald Moore allegedly went to 8 facilities in the course of one day, suing a restaurant and a barbershop in Fresno and then another restaurant, an ice cream parlor, 4 mini marts/gas stations, and a cigar shop in Madera. These include the following complaints filed by Defendant Moore Law Firm using the PACER-CM/ECF system:

(1) *Moore v. Wong, et al.,* Case No. 1:14-cv-01997-SKO (Docket No. 1), filed on December 15, 2014;

(2) *Moore v. Heim, et al.*, Case No. 1:14-cv-01870-BAM (Docket No. 1) filed on November 24, 2014;

(3) *Moore v. Hadjis*, *et al.* Case No. 1:14-cv-01313-MJS (Docket No. 1) filed on August 21, 2014;

1    (4) *Moore v. Schiff*, *et al.*, Case No. 1:14-cv-01607-BAM (Docket No. 1) filed on October

2    14, 2014;

3    (5) *Moore v. Kaur*, *et al.* Case No. 1:15-cv-00062-MCE-SKO (Docket No. 1) filed on

4    January 12,2015;

5    (6) *Moore v. Vituma Properties, LLC*, *et al.* Case No. 1:14-cv-1800-MJS (Docket No. 1)

6    filed on November 17, 2014;

7    (7) *Moore v. Horanian*, *et al.* et al. Case No. 1:14-cv-01278-AWI-GSA (Docket No.1), filed

8    on August 14, 2014; and

9    (8) *Moore v. CST California Stations, Inc., et al.,* Case No. 1:14-cv-01792-BAM (Docket

10   No. 1), filed on November 14, 2014.

11   Plaintiff is informed and believes, and thereon alleges, that each of these complaints include false

12   allegations regarding Defendant Ronald Moore's alleged disability, visits to the establishments

13   sued, encounter with barriers, and his intent to return to the establishment.  Plaintiff is further

14   informed and believes, and thereon alleges, that Defendant Loreto was aware and agreed to be

15   named in these complaints as a witness for the purpose of assisting the racketeering Enterprise

16   alleged herein.

17   69.   Plaintiff is informed and believes, and thereon alleges, that Defendant Ronny Loreto falsely

18   testified regarding Defendant Ronald Moore's standing for the visits described in Paragraph 69

19   above, by falsely claiming that he accompanied Defendant Ronald Moore to each of these

20   establishments because of an emergency substance abuse intervention meeting to be conducted by

21   Defendant Ronald Moore in Madera on that particular day.

22   70.   Plaintiff is informed and believes, and thereon alleges, that Ronald Moore is not, and has

23   never been, a substance abuse interventionist, nor counselor and that the false testimony provided

24   by Defendant Ronny Loreto was provided under sworn testimony for the purpose of assisting

25   Defendants Ronald Moore, Moore Law Firm and Mission Law Firm establish false claims in

26   Defendant Ronald Moore's ADA litigation for the purpose of extorting settlements from the

27   business establishments being sued.

28   **Defendants Geoshua Levinson (Defendant Tanya Moore's Son), West Coast CASp and**

**ADA Services and Rick D. Moore Agree to Join the Criminal Enterprise to Provide**

**Additional Support for False Claims in ADA Complaints Made by the Enterprise.**

71.    Defendant Geoshua Levinson, son of Defendant Tanya Moore, is a certified California Access Specialist ("CASp"), Certification #380, with the State of California, Division of State Architect.

72.    Defendant Levinson is the president and owner of West Coast CASp and ADA Services ("West Coast CASp"), a registered California corporation.  Defendant Levinson is the only CASp working for Defendant West Coast CASp.

73.    Defendant Rick Moore is employed by Defendant West Coast CASp, although he is not a licensed CASp.

74.    Defendant Rick Moore is the nephew of Defendant Randy Moore and was raised by Defendant Randy Moore in San Jose, California from adolescence until early adulthood.

75.    The California Secretary of State lists the agent for service of process for Defendant West Coast CASp as Geoshua Levinson with a service and entity address of 18463 E. Kings Canyon Road in Sanger, California.  Plaintiff is informed and believes, and thereon alleges, that this property is, in fact, a residential property that is owned by Defendants Randy Moore and Tanya Moore and does not operate any business activity.

76.    Plaintiff is informed and believes, and thereon alleges, that Defendant West Coast CASp, in fact, operates out of the same address as Defendants Moore Law Firm and Mission Law Firm, at 302 N. Second Street in San Jose, California.

77.    Plaintiff is informed and believes, and thereon alleges that Defendants Levinson, Rick Moore and West Coast CASp understood the nature of the enterprise and agreed to participate in the enterprise in return for the financial benefits they would receive. Plaintiff is informed and believes, and thereon alleges, that Defendants Levinson, West Coast CASp and Rick Moore play a crucial role in the enterprise and the functioning of the conspiracy alleged herein, and their participation is necessary to the scheme as they provide information to be included as false allegations in the ADA complaints filed by Defendants Moore Law Firm and Mission Law Firm.

78.    Plaintiff is informed and believes, and thereon alleges, that Defendant West Coast CASp

primarily provides services to Defendants Moore Law Firm and Mission Law Firm by conducting

undercover investigations unbeknownst to businesses to provide information to Defendants Sacks,

Tanya Moore, Moore Law Firm and Mission Law Firm to draft false allegations on behalf of

ADA plaintiffs to include in the complaints filed in federal courts.

79.    Defendants Levinson and Rick Moore assist in the criminal enterprise complained of herein

by receiving communication directly from Defendants Tanya Moore and/or Marejka Sacks of

Defendants Moore Law Firm and/or Mission Law Firm regarding business establishments that are

future targets of ADA lawsuits.

80.    Plaintiff is informed and believes, and thereon alleges, that based on the communication by

Defendants Tanya Moore and Sacks of Defendants Moore Law Firm and Mission Law Firm,

Defendants Levinson and Rick Moore go to the identified business establishments to generate

evidence for Defendants Moore Law Firm and Mission Law Firm for use in subsequent ADA

complaints.

81.    Plaintiff is informed and believes, and thereon alleges, that Defendants Levinson and Rick

Moore provide evidence for use by Defendant Moore Law Firm and Mission Law Firm in the

following ways:

- provide receipts for services or goods from business establishments that are then forwarded
  to Defendants Moore Law Firm and Mission Law Firm to use for subsequent ADA
  complaints on behalf of ADA plaintiffs for the purpose of falsely establishing standing;
  and

- provide photographic and testimonial evidence of alleged barriers at business establishments
  that are used by Defendants Moore Law Firm and Mission Law Firm as a basis to allege
  an ADA plaintiff having encountered barriers and experienced "difficulty, discomfort or
  embarrassment" for the purpose of falsely establishing standing.

82.    Plaintiff is informed and believes, and thereon alleges, that Defendants Levinson and Rick

Moore know that the evidence collected during their covert inspections of businesses that is

forwarded to Defendants Tanya Moore and Sacks of Defendants Moore Law Firm and Mission

Law Firm will be used to prepare false allegations to include in future ADA complaints filed in

1  federal courts on behalf of various ADA plaintiffs, including Defendant Ronald Moore.

2  83.   Plaintiff is informed and believes, and thereon alleges, that the information provided by

3  Defendants Levinson, Rick Moore and West Coast CASp, is used by Defendants Marjeka Sacks,

4  Tanya Moore, Zak Best, Moore Law Firm and Mission Law Firm and DOE Defendants to prepare

5  reports, declarations, letters, discovery responses and complaints containing false information in

6  support of subsequent ADA litigation on behalf of various ADA plaintiffs, including Defendant

7  Ronald Moore in the Prior Litigation.

8  84.   For example, Plaintiff is informed and believes, and thereon alleges, that in or about June

9  2015, after having received instructions from Defendants of Moore Law Firm and Defendant

10  Levinson, Defendant Rick Moore was instructed to conduct a covert inspection of El Campesina

11  Mexican Restaurant in Selma, California on behalf of Defendant Moore Law for the purpose of

12  finding issues of noncompliance with disability access law to include in a subsequent sham

13  complaint on behalf of Rachel Lobato, an ADA plaintiff used by Defendant Moore Law and

14  Mission Law in numerous ADA litigation.  Plaintiff is informed and believes, and thereon alleges,

15  that in June 2015, the information from the covert inspection was provided by Defendant Rick

16  Moore to Defendant Levinson who then provided the information to Defendants at Moore Law

17  Firm.  Based on the information provided by the covert inspection, an ADA complaint was filed

18  by Defendant Moore Law on June 29, 2015 entitled, *Lobato v. Lopez, et al.*, Case No. 1:15-cv-

19  00986-MCE-SKO.  Plaintiff is informed and believes, and thereon alleges, that the complaint

20  included false allegations of disability, encounter of barriers, and intent to return consistent with

21  the scheme of the racketeering Enterprise as alleged herein.

22  85.   Plaintiff is further informed and believes, and thereon alleges, that in or about June 2015,

23  after having received instructions from Defendants of Moore Law Firm and Defendant Levinson,

24  Defendant Rick Moore was instructed to conduct a covert inspection of Teazor World Tea Market

25  in Fresno, California on behalf of Defendant Moore Law for the purpose of filing a sham

26  complaint on behalf of Rachel Lobato.  Plaintiff is informed and believes, and thereon alleges,

27  that in June 2015, the information from the covert inspection was provided by Defendant Rick

28  Moore to Defendant Levinson, who then provided the information to Defendants at Moore Law

1   Firm.  Based on the information provided by the covert inspection, an ADA complaint was filed

2   by Defendant Moore Law on June 30, 2015 entitled, *Lobato v. Garcia, et al.*, Case No. 1:15-cv-

3   00995-SAB.  Plaintiff is informed and believes, and thereon alleges, that the complaint included

4   false allegations of disability, encounter of barriers, and intent to return consistent with the

5   scheme of the racketeering Enterprise as alleged herein.

6   86.    Plaintiff is further informed and believes, and thereon alleges, that Defendants Geoshua

7   Levinson and Rick Moore also provide false testimony in depositions and declarations on behalf

8   of the ADA plaintiffs of Defendants Moore Law Firm and Mission Law Firm regarding their

9   covert inspections of facilities and the reason for their visits to the facilities.

10  87.    For example, on May 27, 2015, Defendant Levinson provided a signed declaration that was

11  filed using the PACER-CM/ECF in *Shaw v. Siddiqi*, Case No. 5:14-cv-01756-DMG-KK, Docket

12  No. 49-5 and filed on June 5, 2015 by Defendant Moore Law Firm.  Plaintiff is informed and

13  believes, and thereon alleges, that Cecil Shaw is married to Defendants Randy Moore's and

14  Ronald Moore's sister. In the declaration, Defendant Levinson testified that he visited the facility

15  that is the subject of the complaint in that action on July 24, 2014.  Defendant Moore Law Firm

16  filed the complaint in that action on August 26, 2014.  Plaintiff is informed and believes and

17  thereon alleges that Defendant Levinson's covert inspection performed on July 24, 2014 was done

18  for the purpose of supplementing a sham ADA complaint with knowingly false allegations as to

19  the ADA plaintiff's disability, visit to the establishment and encounter with barriers consistent

20  with the scheme of the racketeering Enterprise as alleged herein.

21  88.    Defendant Levinson also submitted a declaration signed on October 24, 2014, in *Moore v.*

22  *Dollar Tree Stores, Inc.*, Case No. 1:13-cv-01336-LJO-BAM, Docket No. 45-4 and filed through

23  PACER-CM/ECF on November 4, 2014 by Defendant Moore Law Firm.  In the October 24, 2014

24  declaration, Defendant Levinson testified that he visited the facility that is the subject of the

25  complaint in that action on July 13, 2013.  Defendant Moore Law Firm filed the complaint in that

26  action on August 22, 2013.  Plaintiff is informed and believes and thereon alleges that Defendant

27  Levinson's covert inspection performed on July 13, 2014 was done for the purpose of

28  supplementing a sham ADA complaint with knowingly false allegations as to Ronald Moore's

1   disability, visit to the establishment and encounter with barriers consistent with the scheme of the

2   racketeering Enterprise as alleged herein.

3   89.    Defendants Levinson and Rick Moore receive compensation from their participation in the

4   enterprise, in that the more investigations they conduct, the more money they make from the

5   scheme.

6   90.    Plaintiff is informed and believes, and thereon alleges, that Defendants Tanya Moore,

7   Levinson and Rick Moore all visited Zlfred's restaurant prior to filing the complaint in the Prior

8   Litigation for the purpose of performing a covert inspection and generating information to include

9   as false allegations in the complaint in the Prior Litigation.

10  91.    Plaintiff is further informed and believes, and thereon alleges, that Defendants Geoshua

11  Levinson and Rick Moore also knew that the allegations in Ronald Moore's complaints regarding

12  his disability are false because growing up, they have seen Defendant Ronald Moore as a family

13  member and know the true state of Defendant Ronald Moore's physical condition.

14  92.    Defendant West Coast CASp falsely advertised on its website that it helps Californians

15  "comply with Access Standards for Federal ADA and the California Building Code," that its

16  inspectors have surveyed "thousands of facilities" and that they can help to "[p]revent drive-by

17  lawsuits."  *See* **Exhibit A**, attached hereto.

18  93.    In fact, Defendant West Coast CASp's representations on its website were false when made

19  because, as late as March 2016, Defendant Levinson testified under oath in a deposition that he

20  had never been hired independently by a third-party business to perform any CASp inspections.

21  94.    On September 23, 2015, Defendant Levinson provided a signed declaration in *Millenium*

22  *Acquisitions, LLC, et al. v. Levinson, et al.*, Case No. 15CECG01815, filed in Fresno Superior

23  Court, which contained testimony regarding his experience helping California businesses comply

24  with accessibility laws.  In that declaration, Defendant Levinson falsely stated that he had

25  performed CASp inspections for California businesses, when, in fact, his primary, if not sole,

26  operations consisted of working for Defendant Moore Law Firm and assisting it in the filing of

27  false ADA complaints.  *See* **Exhibit B**, attached hereto.

28  95.    Plaintiff is informed and believes, and thereon alleges, that sometime in or about March of

2016, Defendant Levinson was admonished by the California Department of State Architect, (which governs CASps), and was forced to remove the false advertising promoted on Defendant West Coast CASp's website.

96.    Plaintiff is informed and believes, and thereon alleges, that although Defendant Levinson has a legal and ethical responsibility to California businesses and residents based on his CASp certification with the State of California, (and indeed holds himself out in the public eye as a certified California CASp), his loyalty is to the criminal enterprise complained of herein.  By being a licensed CASp through the state of California, Plaintiff is informed and believes, and thereon alleges, that Defendant Levinson and Defendant West Coast CASp have sought and agreed to be listed on the State of California, Division of the State Architect website found at https://www.apps2.dgs.ca.gov/dsa/casp/casp_certified_list.aspx as a certified access specialist for consumers looking to hire an expert regarding disability access.  *See* **Exhibit C**, attached hereto.

97.    The false advertising included in Defendant West Coast CASp's website as described in Paragraph 92 above and the information offered to the public by on the State of California's website as described in Paragraph 96, has been made available through the internet to the public throughout the United States.  However, the public has no way of knowing that Defendants Levinson and West Coast CASP are affiliated with Defendants Ronald Moore, Tanya Moore, Best, Sacks, Randy Moore, Mission Law and Moore Law through viewing the information available on the internet, and, in fact, are led to believe that they are contacting a professional with integrity who will assist them in defending themselves from the racketeering Enterprise alleged herein.

98.    In fact, in the Prior ADA Litigation, on or about January 2015, Plaintiff's counsel came upon the westcoastcasp.com website and reviewed and relied on the information submitted therein when looking for a CASp inspector.  It was only later, upon further research, that Plaintiff learned that Defendants Levinson and West Coast CASp were actually affiliated with Defendants Ronald Moore, Tanya Moore, Randy Moore, Moore Law and Mission Law.

99.    Further, also on or about January 2015, Plaintiff's counsel came upon the resource listing by the Division of the State Architect and reviewed and relied on the information submitted therein

1  about Defendant Levinson when looking for a CASp inspector.  It was only later, upon further

2  research, that Plaintiff learned that Defendants Levinson and West Coast CASp were actually

3  affiliated with Defendants Ronald Moore, Tanya Moore, Randy Moore, Moore Law and Mission

4  Law.

5  100.  Defendant Levinson and West Coast CASp have caused confusion and have misled the

6  public through the false and misleading information made available on the internet as alleged in

7  Paragraphs 92 and 96 above.  For example, on September 12, 2016, Defendant Tanya Moore of

8  Defendant Moore Law, filed an ADA complaint on behalf of Jose Trujillo for an alleged visit to a

9  business operated and/or owned by Princess Superette in Visalia, California, entitled *Trujillo v.*

10  *Huda, et al.,* Case No. 1:16-cv-01344-DAD-BAM.

11  101.  Plaintiff is informed and believes, and thereon alleges that on or around September 30,

12  2016, after being served Jose Trujillo's ADA complaint, Princess Superette hired Defendant

13  Levinson of Defendant West Coast CASp to perform a CASp inspection on the defendant's

14  property.

15  102.   Plaintiff is informed and believes, and thereon alleges, that counsel for Princess Superette

16  was <u>unaware</u> that Defendants Levinson and West Coast CASp were, in fact, affiliated with the

17  adverse party in the matter, Jose Trujillo and Defendants Tanya Moore, Best (who also appeared

18  as counsel for the plaintiff in that matter), and Moore Law Firm.

19  103.  Plaintiff is further informed and believes, and thereon alleges, that Princess Superette did

20  not know that Defendant Levinson's company, Defendant West Coast CASp, had already

21  performed an undercover investigation on Princess Superette's facility on behalf of Jose Trujillo

22  at the request of Defendants Sacks and Tanya Moore of Defendant Moore Law Firm, who then

23  used the information generated by Defendant West Coast CASp to file an action against Princess

24  Superette containing false allegations.

25  104.  Plaintiff is informed and believes, and thereon alleges, that Defendant Levinson failed to

26  inform Princess Superette of these gross conflicts of interest, and, instead, intentionally, and in

27  violation of his business and ethical obligations, hid the fact that he was affiliated with

28  Defendants Tanya Moore and Moore Law Firm and that his company, Defendant West Coast

1   CASp had already performed a covert investigation on Princess Superette on behalf of Jose

2   Trujillo, the party suing Princess Superette.

3   **Upon Revelation of the Fraudulent Scheme, the Assets of Defendant Moore Law Firm are**

4   **Transferred to a New Entity, Defendant Mission Law Firm, Which Has Recruited**

5   **Defendants LeRoy Falk and Zachary Best in the Criminal Enterprise.**

6   105.  Beginning in late 2015 to early 2016, the fraudulent activities of Defendants Randy Moore,

7   Tanya Moore and Moore Law Firm became publicly known as their fraudulent operations were

8   broadcast in regional and national news media, including on ABC News in Fresno and 60

9   Minutes, nationally.

10   106.  Also in 2016, various ADA plaintiffs that were used by Defendants Randy Moore, Tanya

11   Moore and Moore Law Firm sued Defendants Randy Moore, Tanya Moore and Moore Law Firm

12   for fraud and breach of contract for filing ADA complaints and negotiating settlements without

13   their full knowledge and consent, among other things.

14   107.  Plaintiff is informed and believes, and thereon alleges, that as a result of the public

15   revelation of Defendants' fraudulent practices, on or about November 2016, the assets and

16   operations of Defendant Moore Law Firm were transferred to a new entity called Mission Law

17   Firm, PC.

18   108.  Defendant Mission Law Firm continues to work out of the same location as Defendant

19   Moore Law Firm and employs most, if not all, of Defendant Moore Law Firm's employees,

20   including Defendants Tanya Moore and Sacks and other DOE Defendants.

21   109.  Plaintiff is further informed and believes, and thereon alleges that the daily operations of

22   Defendant Mission Law Firm is still performed by Defendants Sacks and Tanya Moore.

23   110.  Defendant Tanya Moore is listed as the Secretary of Defendant Mission Law Firm and

24   Defendant Falk is listed as the President of Defendant Mission Law Firm.

25   111.  Defendant Falk is a practicing member of the California State Bar.

26   112.  Plaintiff is informed and believes, and thereon alleges, that Defendant Falk is a close friend

27   of Defendants Randy Moore, Tanya Moore and Ronald Moore.

28   113.  Plaintiff is informed and believes, and thereon alleges, that Defendants Randy Moore and

Tanya Moore approached Defendant Falk and recruited him to join the criminal enterprise complained of herein and that Defendant Falk, understanding the nature of the Enterprise, agreed to assist its goals in return for a financial benefit for himself and for Defendant Mission Law Firm.

114.  Plaintiff is informed and believes, and thereon alleges, that Defendants Randy Moore, Tanya Moore and Falk agreed that all assets of Defendant Moore Law Firm would be transferred to a new entity, Defendant Mission Law Firm, and Defendant Falk would be named as President of Defendant Mission Law Firm.

115.  Plaintiff is informed and believes, and thereon alleges, that in exchange for taking responsibility for the operations of Defendant Mission Law Firm and the risks of running a business based on the commission of fraudulent acts as alleged herein, Defendant Falk receives a percentage of the earnings from the lucrative ADA litigation practice of Defendant Mission Law Firm.

116.  Plaintiff is informed and believes, and thereon alleges, that Defendant Falk knows, or should know in the exercise of reasonable care as a licensed attorney and President of Defendant Mission Law Firm, that the ADA complaints filed by Defendant Mission Law Firm contain falsities regarding the ADA plaintiffs' alleged disability, visit to establishments, encounter with barriers, and intent to return so as to establish standing under the ADA and related state law.

117.  The California Secretary of State's website shows that Defendant Falk became President and Chief Executive Officer of Defendant Mission Law on or about November 7, 2016.

118.  Defendant Falk filed a declaration on September 11, 2017 in *Gutierrez v. Moore, et al.,* Case No. 16cv303334 in Superior Court of Santa Clara, wherein he testified that he purchased Defendant Moore Law Firm and created Mission Law in November 2016.  *See* **Exhibit D**, attached hereto.  Defendant Falk further testified that "[a]s the President of Mission [Law Firm], I am familiar with all work that Mission has performed in all relevant time periods."  *See* **Exhibit D**.

119.  In particular, Plaintiff is informed and believes, and thereon alleges, that Defendant Falk knew, or in the exercise of reasonable care as a practicing and licensed attorney and President of

1   Defendant Mission Law Firm, should have known, that the verified complaints and sworn

2   testimony of Defendant Ronald Moore that Defendant Mission Law Firm continued to offer and

3   argue in prosecution of Defendant Ronald Moore's ADA action against Plaintiff in the Prior

4   Litigation were false as a result of the evidence revealed in the discovery conducted in the Prior

5   Litigation.

6   120.  In fact, Plaintiff is informed and believes, and thereon alleges that Defendant Falk is a close

7   friend of Defendant Ronald Moore and knows that Defendant Ronald Moore's allegations and

8   testimony offered throughout litigation of ADA claims prosecuted by Defendant Mission Law

9   Firm on behalf of Defendant Ronald Moore regarding the extent of Defendant Ronald Moore's

10  alleged disabilities are false.

11  121.  For example, on April 21, 2017, Defendant Mission Law Firm filed another complaint on

12  behalf of Defendant Ronald Moore against Plaintiff herein in Fresno Superior Court, entitled

13  *Moore v. Saniefar, et al*., Case No. 17CECG01361 and also filed an amended complaint on June

14  12, 2017 containing the same false allegations as alleged in the complaint in the Prior Litigation

15  for violation of the Unruh Act.  *See* **Exhibit E** and **F**, respectively, attached hereto.  The

16  complaints contain the same false allegations regarding Defendant Ronald Moore's alleged

17  disability, visit to Zlfreds, and encounter with barriers as alleged herein.  Plaintiff is informed and

18  believes, and thereon alleges, that Defendant Falk is aware of the false allegations provided in

19  these complaints, but has consented to its filing as President of Defendant Mission Law for the

20  purpose of carrying out the goals of the racketeering Enterprise and benefiting financially.

21  122.  Plaintiff is informed and believes, and thereon alleges that Defendant Falk knowingly

22  disregards the falsities offered by Defendant Mission Law Firm in prosecuting false ADA claims

23  because he receives a portion of the monies received from the settling defendants in the ADA

24  litigation.

25  123.  Plaintiff is informed and believes, and thereon alleges, that Defendant Mission Law Firm

26  has employed the legal services of Defendant Zachary Best (also known as "Zak Best").

27  124.  Defendant Best is a licensed attorney and member of the California State Bar.

28  125.  Plaintiff is informed and believes, and thereon alleges, that Defendant Zak Best understands

the nature of the enterprise and has agreed to participate in the criminal enterprise in exchange for receiving compensation from the lucrative ADA litigation practice of Defendants Moore Law Firm and Mission Law Firm.

126.  Defendant Best has taken a significant role in filing Defendant Mission Law Firm's numerous ADA complaints and related state law claims since approximately November 2016 to the present day.  However, Plaintiff is informed and believes, and thereon alleges, that the Ringleaders (Defendants Randy Moore, Tanya Moore and Sacks) still direct and perform the majority of the daily activities of Defendant Mission Law Firm and that Defendant Best takes direction from the Ringleaders and performs any and all tasks ordered by the Ringleaders to accomplish the goals of the enterprise.

127.  Plaintiff is informed and believes, and thereon alleges, that Defendant Best knows, or should know in the exercise of reasonable care as a practicing attorney of Defendant Mission Law Firm and the lead attorney in many of Defendant Mission Law Firm's ADA cases, that the ADA complaints filed by Defendant Mission Law Firm contain falsities regarding the ADA plaintiffs' alleged disability, visit to establishments, encounter with barriers, and intent to return to establish standing under the ADA and related state law.

128.  In particular, Plaintiff is informed and believes, and thereon alleges, that Defendant Best knew, or in the exercise of reasonable care as a practicing and licensed attorney of Defendant Mission Law Firm and one of the lead attorneys in the Prior Litigation, should have known, that the verified complaint and sworn testimony of Defendant Ronald Moore that he continued to offer and argue in prosecution of Defendant Ronald Moore's ADA action against Plaintiff in the Prior Litigation were false as a result of the evidence revealed in the discovery conducted in the Prior Litigation.

129.  Plaintiff is informed and believes, and thereon alleges, that Defendant Best has ignored his duty of candor to the Court, and for his own financial gain, agreed to participate in the criminal enterprise without regard to his ethical responsibilities.

130.  As a result, Plaintiff is informed and believes and thereon alleges that Defendant Best knowingly continued to offer and argue in court pleadings, court filings, and correspondence with

1   opposing counsel, false statements regarding Defendant Ronald Moore's alleged disability, visit

2   to Zlfred's, encounter with barriers, and intent to return to establish standing under the ADA and

3   related state law for the purpose of benefitting from a portion of any money paid by defendants in

4   the Prior Litigation to Defendant Ronald Moore.

5   131.  For example, on May 25, 2017, Defendant Best submitted an e-mail to Plaintiff's counsel

6   herein regarding the filing of a new complaint in Fresno Superior Court, Case No.

7   17CECG01361, *Moore v. Saniefar, et al*., which complaint includes false statements regarding

8   Defendant Ronald Moore's alleged disability, visit to Zlfred's, and encounter with barriers for the

9   purpose of furthering the racketeering Enterprise.  *See* **Exhibit G**, for the e-mail referenced; and

10   **Exhibit E**, for the state court complaint filed in Fresno Superior Court.  The e-mail was sent by

11   Defendant Best to counsel for Plaintiff herein and copied Defendants Tanya Moore and Sacks and

12   was done for the purpose of advancing the racketeering Enterprise as alleged herein.

13   132.  Additionally, on October 25, 2016, Isaac Medrano of Defendant Moore Law submitted an e-

14   mail attaching correspondence on behalf of Defendant Zak Best to Plaintiff's counsel herein

15   which contained disputed facts in the Prior Litigation regarding Defendant Ronald Moore's false

16   statements about his alleged disability, visit to Zlfred's, and encounter with barriers as alleged

17   herein for the purpose of furthering the racketeering Enterprise.  *See* **Exhibit H**, attached hereto.

18   **FIRST CAUSE OF ACTION**

19   **Racketeer Influenced and Corrupt Practices Act**

20   **18 U.S.C. §§ 1961 (1) (B), 1962 (c), 1964 (a) and (c), 1341 and 1343**

21   **As to all Defendants**

22   133.  Plaintiff re-alleges and incorporates herein by this reference the allegations in Paragraphs 1

23   through 132 above as though fully set forth herein.

24   134.  Plaintiff is informed and believes, and thereon alleges, that all named and DOE Defendants

25   have engaged in a pattern of fraud and deception by participating in the preparation, drafting,

26   filing and prosecution of ADA lawsuits based on falsities in verified complaints in violation of

27   the Racketeer Influenced and Corrupt Practices Act ("RICO").

28   135.  Plaintiff is informed and believes, and thereon alleges, that all named and DOE Defendants

1    have participated, and continue to participate, in a racketeering enterprise (the "Enterprise"), as

2    defined in 18 U.S.C. § 1961 (4) by the forming of a "group of individuals associated-in-fact" to

3    create schemes to defraud the public, and specifically to defraud Plaintiff as alleged herein.

4    136.  Plaintiff is informed and believes, and thereon alleges, that the racketeering Enterprise

5    advanced and further promoted the Defendants' wrongful acts and unlawful activities by

6    unlawfully initiating, prosecuting and supporting false claims thereby deriving income directly or

7    indirectly from a closed end pattern of criminal acts, constituting a racketeering activity.

8    137.  Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 100 knew, or

9    should have known, of the closed end patterns of racketeering activities at the hands of those

10   individuals involved in the association-in-fact enterprise, and with said knowledge accepted and

11   received from the association-in-fact enterprise income derived from the closed-end criminal acts

12   that formed a pattern of racketeering activities.

13   138.  Plaintiff is informed and believes, and thereon alleges, that Defendants are operating and

14   benefiting with the income derived directly or indirectly from closed-end criminal acts that

15   formed a pattern of racketeering activities and continues in an open-ended pattern of carrying on

16   with the specified unlawful activities which affect interstate commerce.

17   139.  Plaintiff is informed and believes, and thereon alleges, that the unlawful activities promoted

18   and advanced by the group of individuals associated in fact constitute criminal acts or predicate

19   acts that advanced a pattern of racketeering activities as defined, and in violation of 18 U.S.C. §§

20   1341 and 1343 (relating to mail and wire fraud), as alleged herein, and by operating, managing or

21   otherwise being actively involved by aiding and abetting in the enterprise through open-ended

22   patterns of criminal acts which constitutes racketeering activities in conspiring schemes designed

23   to defraud the public, and principally to defraud Plaintiff, all in violation of 18 U.S.C. § 1962 (c)

24   and (d) as alleged herein.

25   140.  Plaintiff is informed and believes, and thereon alleges, that violation of 18 U.S.C. §§ 1961

26   (1) (B), 1962 (c) and (d), 1341 and 1343 continues to this day on an open-ended pattern of

27   criminal acts by the actions of the Enterprise in using the U.S. Mail, telephone and internet

28   services to transfer information that is fraudulent by means of a closed-end pattern of racketeering

1  by Defendants which constitutes an unlawful activity and an advancement of the racketeering

2  Enterprise.

3  141.  Plaintiff is informed and believes, and thereon alleges, that the racketeering Enterprise

4  deprived Plaintiff of monies entitling Plaintiff to damages pursuant to 18 U.S.C. § 1964 (c).

5  **Mail Fraud**

6  142.  Plaintiff is informed and believes, and thereon alleges, that commencing in approximately

7  2010 to the present, all named Defendants and Does 1 through 100 devised a scheme or artifice to

8  defraud the public, and principally, to defraud Plaintiff of money and property by means of false

9  or fraudulent pretenses and representations

10  143.  Plaintiff is informed and believes, and thereon alleges, that Defendants, in their roles and

11  involvement as alleged in this First Amended Complaint, periodically used the U.S. Mail to

12  submit receipts, reports, signatures, verifications, declarations, complaints, discovery,

13  correspondence, and other documents containing false information ("Sham Documents") related

14  to the litigation being prosecuted.  Plaintiff is informed and believes, and thereon alleges, that the

15  U.S. Mail was used to submit the Sham Documents by Defendants to each other, to Plaintiff and

16  Plaintiff's counsel, to the Court, and to other members of the public in the course of litigating and

17  prosecuting ADA cases.

18  144.  Plaintiff is informed and believes, and thereon alleges, that the contents of the Sham

19  Documents contained false statements in violation of law.  Plaintiff is informed and believes, and

20  thereon alleges, that the Sham Documents, at a minimum, included information that was used to

21  falsely establish Defendant Ronald Moore's disability, visits to the facilities being sued, the

22  existence and encounter of barriers, and intent to return in a sham effort to establish standing

23  under the ADA.

24  145.  Plaintiff is informed and believes, and thereon alleges, that the false or fraudulent pretenses

25  and representations were ultimately delivered to Plaintiff and the court through periodic

26  documents or correspondence.

27  146.  Plaintiff is informed and believes, and thereon alleges, that Defendants prepared the Sham

28  Documents that contained the false pretenses and representations and submitted and delivered

1    said Sham Documents to each other, Plaintiff, and the court by placing a true copy of the Sham

2    Document in a sealed envelope addressed to one or more of Defendants, Plaintiff's counsel, and

3    the court.

4    147.  Plaintiff is informed and believes, and thereon alleges, that Defendants then placed the

5    envelope(s) for collection and processing for mailing in their normal course of business in which

6    Defendants were familiar, the documents were then placed for collection and mailing and

7    deposited in the ordinary course of business with the United States Postal Services, with postage

8    fully prepaid.  Plaintiff is informed and believes, and thereon alleges, that Defendants and each of

9    them used the United States Postal Service to perpetrate their fraudulent schemes, all in violation

10   of Title 18 U.S.C. §§ 1961 (1) (B), 1962 (c) and (d), and 1341.

11   148.  For example, counsel for Plaintiff herein received through the United States Postal Service,

12   Defendant Ronald Moore's Initial Disclosures in the Prior ADA Litigation submitted by

13   Defendant Tanya Moore of Defendant Moore Law Firm signed and dated October 6, 2014 and

14   attached hereto as **Exhibit I**.  Plaintiff is informed and believes, and thereon alleges, that

15   Defendant Sacks prepared the Initial Disclosures containing the false statements as alleged herein.

16   The Initial Disclosures contained false statements regarding Ronald Moore's alleged

17   "disabilities", "barriers he personally encountered" and "the condition of the Subject Property

18   when he visited it."  *See* **Exhibit I** at 1.  According to the proof of service attached to the Initial

19   Disclosures, on October 7, 2014, Isaac Medrano of Defendant Moore Law Firm placed the Initial

20   Disclosures in a sealed envelope addressed to Plaintiff's counsel herein, with postage fully

21   prepaid for collection and deposit in the United States mail at Defendant Moore Law Firm, P.C.,

22   332 N. Second Street, San Jose, CA 95112.  *See* **Exhibit I** at 3.

23   149.  Defendant Ronald Moore also submitted Responses to First Set of Interrogatories

24   ("Responses") in the Prior ADA Litigation through the United States Postal Service and which

25   Responses were signed by Defendant Tanya Moore of Defendant Moore Law Firm on May 18,

26   2015.  *See* **Exhibit J** attached hereto at 14.  Plaintiff is informed and believes and thereon alleges

27   that Defendant Sacks assisted in preparing the Responses.  The Responses included a signed

28   verification from Defendant Ronald Moore dated May 4, 2015.  *See* **Exhibit J** at 15.  The

Responses contained false statements regarding Ronald Moore's alleged disabilities, encounter with barriers and visit to Zlfred's. *See* **Exhibit J** at 4-5. According to the proof of service attached to the Initial Disclosures, on May 18, 2015, Isaac Medrano of Defendant Moore Law Firm placed the Initial Disclosures in a sealed envelope addressed to Plaintiff's counsel herein, with postage fully prepaid for collection and deposit in the United States mail at Defendant Moore Law Firm, P.C., 332 N. Second Street, San Jose, CA 95112. *See* **Exhibit J** attached hereto at 16.

150. Additionally, Defendant Ronald Moore submitted First Supplemental Responses to First Set of Interrogatories ("Supplemental Responses") in the Prior ADA Litigation through the United States Postal Service that was signed by Defendant Tanya Moore of Defendant Moore Law Firm on June 10, 2015. *See* **Exhibit K** attached hereto at 19. Plaintiff is informed and believes, and thereon alleges, that Defendant Sacks assisted in preparing the Supplemental Responses. The Supplemental Responses included a signed verification from Defendant Ronald Moore dated June 10, 2015. *See* **Exhibit K** attached hereto at 20. The Responses contained false statements regarding Ronald Moore's alleged disabilities, encounter with barriers and visit to Zlfred's. *See* **Exhibit K** attached hereto at 11-12. According to the proof of service attached to the Initial Disclosures, on June 10, 2015, Isaac Medrano of Defendant Moore Law Firm placed the Initial Disclosures in a sealed envelope addressed to Plaintiff's counsel herein, with postage fully prepaid for collection and deposit in the United States mail at Defendant Moore Law Firm, P.C., 332 N. Second Street, San Jose, CA 95112. *See* **Exhibit K** attached hereto at 21.

151. Plaintiff is informed and believes, and thereon alleges, that all named and DOE Defendants had knowingly participated in providing and preparing the falsities contained in the Sham Documents as alleged herein, including **Exhibits I**, **J**, and **K** and that the Sham Documents were being used in supporting false ADA complaints in federal court, and in particular, in the Prior Litigation against Plaintiff.

152. In particular, Plaintiff is informed and believes, and thereon alleges, that Defendants Tanya Moore and Randy Moore are dully licensed to practice law, and had knowledge, or should have had knowledge, due to the profession that they are in, that the Sham Documents submitted in prosecution of the Prior Litigation to Plaintiff's counsel and the court were indeed fraudulent.

153.  Plaintiff is informed and believes, and thereon alleges, that violation of 18 U.S.C. § 1341 for mail fraud continues to this day on an open-ended pattern of criminal acts by the actions of the Enterprise in using the U.S. Mail to transfer information that is fraudulent by means of a closed-end pattern of racketeering by Defendants which constitutes an unlawful activity and an advancement of the racketeering Enterprise.

**Wire Fraud**

154.  Plaintiff is informed and believes, and thereon alleges, that all named and DOE Defendants in their roles and involvement as alleged in this First Amended Complaint, periodically used U.S. wire services to submit the Sham Documents related to the litigation being prosecuted.  Plaintiff is informed and believes, and thereon alleges, that U.S. wire services were used to submit the Sham Documents by Defendants to each other, to Plaintiff and Plaintiff's counsel, to the Court, and to other members of the public in the course of litigating and prosecuting ADA cases.

155.  Plaintiff is informed and believes, and thereon alleges, that Defendants also used U.S. wire services to conduct telephone calls with each other, opposing counsel (including Plaintiff's counsel), witnesses, and the court to communicate false information for the advancement of the conspiracy as alleged herein.

156.  Plaintiff is informed and believes, and thereon alleges, that Defendants also used U.S. wire services to submit electronic mail to each other, opposing counsel (including Plaintiff's counsel), witnesses and the court to communicate false information for the advancement of the conspiracy.

**Particularized Allegations of Wire Fraud Through Use of Interstate PACER-CM/ECF System.**

157.  Defendants Tanya Moore and Zachary Best on behalf of Defendants Moore Law Firm and Mission Law Firm have filed numerous documents using the PACER-CM/ECF ("PACER") filing system.  Plaintiff is informed and believes, and thereon alleges, that the PACER service center is located in San Antonio, Texas and is operated by the U.S. Party/Case Index server, also located in San Antonio, Texas where information about each case in each federal judicial district is maintained.  Therefore, Plaintiff is informed and believes, and thereon alleges, that all documents filed by Defendants Moore Law Firm and Mission Law Firm on behalf of Defendant Ronald

1  Moore and other ADA plaintiffs using the PACER-CM/ECF system were each individual acts of

2  wire fraud wherein, false statements were provided in interstate commerce through the use and

3  facilitation of the PACER-CM/ECF system and for the purpose of carrying out the goals of the

4  racketeering Enterprise as alleged herein.

5  158.  For example, Defendant Moore Law Firm filed:  (1) a complaint on July 8, 2014 (Docket

6  No. 1); (2) a First Amended Complaint on January 23, 2015 (Docket No. 25); and (3) a Second

7  Amended Complaint on June 4, 2015 (Docket No. 32) on behalf of Defendant Ronald Moore in

8  the Prior Litigation (Case No. 1:14-cv-01067-SKO, *Moore v. Saniefar, et al.*) using the PACER-

9  CM/ECF system.  Each of these filings contained false statements regarding Ronald Moore's

10  disability, visit to Zlfred's, personal encounter with barriers and intent to return as alleged herein.

11  Each of these filings also contained a verification signed by Defendant Ronald Moore.  Plaintiff is

12  informed and believes, and thereon alleges, that Defendants Sacks and Tanya Moore assisted in

13  the preparation and filing of these documents.  The PACER-CM/ECF system lists Defendant

14  Tanya Moore as the filer of the documents.  The PACER-CM/ECF system electronically mailed

15  notice of the filing of these documents to counsel for Plaintiff herein at moji@saniefarlaw.com,

16  Defendant Tanya Moore at tanya@moorelawfirm.com, and Defendant Sacks at

17  marejka@moorelawfirm.com (among others).

18  159.  Defendant Mission Law Firm also participated in the filing of Sham documents using the

19  PACER-CM/ECF system when it filed:  (1) a Memorandum of Points and Authorities in

20  Opposition to a motion for summary judgment by Plaintiff herein (the "Opposition") in the Prior

21  Litigation, (Case No. 1:14-cv-01067-SKO, *Moore v. Saniefar, et al*., Docket No. 91, filed on

22  December 16, 2016) and (2) Defendant Ronald Moore's Separate Statement of Undisputed Fact

23  in support of the Opposition in the Prior Litigation, (Case No. 1:14-cv-01067-SKO, *Moore v.*

24  *Saniefar, et al*., Docket No. 91-2, filed on December 16, 2016).  These filings continued to falsely

25  argue that Defendant Ronald Moore was entitled to relief from his alleged visit to Zlfred's

26  wherein he allegedly encountered barriers.  Defendant Best is listed as the filer of the documents

27  and the PACER-CM/ECF system electronically mailed notice of the filing to counsel for Plaintiff

28  herein at moji@saniefarlaw.com, Defendant Tanya Moore at tanya@mission.legal, Defendant

Sacks at marejka@mission.legal and Defendant Best at zak@mission.legal (among others).

160.  Defendant Falk is responsible for the wire fraud committed in Paragraph 159 above because he became President and Chief Executive Officer of Defendant Mission Law Firm on or about November 7, 2016.  Defendant Falk filed a declaration on September 11, 2017 in *Gutierrez v. Moore, et al.,* Case No. 16cv303334 in Superior Court of Santa Clara, wherein he testified that he purchased Defendant Moore Law Firm and created Defendant Mission Law Firm in November 2016.  *See* **Exhibit D**.  Defendant Falk further testified that "[a]s the President of Mission [Law Firm], I am familiar with all work that Mission has performed in all relevant time periods."  *See* **Exhibit D**, paragraph 2.

161.  Plaintiff is informed and believes, and thereon alleges, that Defendants Randy Moore and Moore Law Firm have further committed acts of wire fraud using the PACER-CM/ECF system when Defendant Randy Moore of Defendant Moore Law Firm prepared, signed and submitted a filing on behalf of Defendant Ronald Moore, entitled "Plaintiff's Trial Brief – Public Version Redacted" on January 17, 2012 in *Moore v. Robinson Oil Corporation*, Case No. 5:10-cv-01014-HRL, Docket No. 50, wherein false statements were submitted to the court regarding Defendant Ronald Moore's alleged disability, visits to the establishment being sued and encounter with barriers.  Through his preparation of this pleading, signature on the document and offering to the court, Plaintiff is informed and believes, and thereon alleges that Defendant Randy Moore caused the filing to occur by Defendant Moore Law Firm and on behalf of Defendant Ronald Moore.

162.  Defendants Randy Moore, Ronald Moore, Moore Law Firm, Tanya Moore and Sacks additionally used the PACER-CM/ECF system to commit wire fraud on January 25, 2011, when the Moore Law Firm filed a false declaration purporting to be reviewed, approved and signed by Ronald Moore for the purpose of opposing a motion to dismiss an ADA complaint filed in *Hernandez, et al. v. Vallco International Shopping Center, LLC, et al*, Case No. 3:10-cv-02848-LHK, Docket No. 203-1, wherein Defendant Ronald Moore was one of the plaintiffs in the action. In an effort to establish his standing to pursue the litigation in opposition to a motion to dismiss, the declaration contained a false statement that Defendant Ronald Moore had lived in "Los Gatos and San Jose[,] California with [his] wife Lynn Moore for over six (6) years."  However, in a

1    deposition taken on May 18, 2015, Defendant Ronald Moore admitted that this statement was

2    false.  Plaintiff is informed and believes, and thereon alleges, that the declaration was prepared by

3    Defendant Sacks, filed with the Court by Defendant Tanya Moore, and reviewed and approved

4    for filing by Defendant Randy Moore of Defendant Moore Law Firm, whose name appears as

5    legal representative on the pleading.

6    163.  Plaintiff is informed and believes, and thereon alleges, that Defendant Levinson of

7    Defendant West Coast CASp also committed acts of wire fraud using the PACER-CM/ECF

8    system when he submitted signed and sworn declarations to be filed by Defendant Moore Law

9    Firm to assist Defendant Moore Law Firm's prosecution of sham ADA litigation as follows.

10   164.  On May 27, 2015, Defendant Levinson signed a declaration in *Shaw v. Siddiqi*, Case No.

11   5:14-cv-01756-DMG-KK, Docket No. 49-5 and filed through PACER-CM/ECF on June 5, 2015

12   by Defendant Moore Law Firm.  Cecil Shaw is married to Defendants Ronald Moore's and Randy

13   Moore's sister.  Plaintiff is informed and believes, and thereon alleges, that Shaw files similar

14   ADA cases primarily in Southern California.  Plaintiff is informed and believes, and thereon

15   alleges, that Defendant Moore Law Firm used to represent Shaw until such time that a family

16   dispute caused a rift in the relationship.

17   165.  In the May 27, 2015 declaration of Defendant Levinson referenced in Paragraph 164 above,

18   Defendant Levinson testifies that he visited the facility that is the subject of the complaint in that

19   action on July 24, 2014.  Defendant Moore Law Firm filed the complaint in that action on August

20   26, 2014.  Plaintiff is informed and believes and thereon alleges that Defendant Levinson's covert

21   inspection performed on July 24, 2014 was done for the purpose of supplementing a sham ADA

22   complaint with knowingly false allegations as to Shaw's alleged disability, visit to the

23   establishment being sued and encounter with barriers consistent with the scheme of the

24   racketeering Enterprise as alleged herein in Paragraphs 78 to 84 above.

25   166.  Defendant Levinson also submitted a declaration signed on October 24, 2014, in *Moore v.*

26   *Dollar Tree Stores, Inc.*, Case No. 1:13-cv-01336-LJO-BAM, Docket No. 45-4 and filed through

27   PACER-CM/ECF on November 4, 2014 by Defendant Moore Law Firm.  In the October 24, 2014

28   declaration of Defendant Levinson, Defendant Levinson testified that he visited the facility that is

1   the subject of the complaint in that action on July 13, 2013.  Defendant Moore Law Firm filed the

2   complaint in that action on August 22, 2013.  Plaintiff is informed and believes and thereon

3   alleges that Defendant Levinson's covert inspection performed on July 13, 2014 was done for the

4   purpose of supplementing a sham ADA complaint with knowingly false allegations as to

5   Defendant Ronald Moore's disability, visit to the establishment and encounter with barriers

6   consistent with the scheme of the racketeering Enterprise as alleged herein in Paragraphs 78 to 84

7   above.

8              **Particularized Allegations of Wire Fraud Through Use of Interstate Electronic**

9                                                **Communications.**

10   167.  Plaintiff is further informed and believes, and thereon alleges, that Defendants Moore Law

11   Firm and Mission Law Firm have registered domain names, web hosting and e-mail services with

12   GoDaddy, a full service domain name, hosting, and internet service provider located in

13   Scottsdale, Arizona.  Plaintiff is informed and believes, and thereon alleges, that throughout

14   litigating the sham ADA lawsuits, all e-mail communications from Defendants Tanya Moore,

15   Sacks, Randy Moore, Falk and Best that were submitted on behalf of Defendants Mission Law

16   Firm and Moore Law Firm, and Ronald Moore and through the use of Defendant Moore Law

17   Firm's and Mission Law Firm's e-mail accounts, travelled through interstate commerce via

18   GoDaddy's servers and data centers located in Arizona before reaching their intended recipient(s).

19   168.  Furthermore, e-mails sent in the Prior ADA Litigation by Defendants Tanya Moore, Sacks,

20   Falk, Zachary Best, and DOE Defendants (and on behalf of Defendants Mission Law, Moore Law

21   and Ronald Moore) to counsel for Plaintiff herein, at moji@saniefarlaw.com, travelled through

22   interstate commerce via saniefarlaw.com's e-mail service provider's servers and data centers

23   which are located in Jacksonville, Florida.

24   169.  For example, on October 25, 2016, Isaac Medrano of Defendant Moore Law Firm submitted

25   an e-mail attaching correspondence on behalf of Defendant Best which contained disputed facts in

26   the Prior Litigation regarding Defendant Ronald Moore's false statements about his alleged

27   disability, visit to Zlfred's, and encounter with barriers as alleged herein for the purpose of

28   furthering the racketeering Enterprise.  *See* **Exhibit H**.  This e-mail was submitted by Medrano at

isaac@moorelawfirm.com to Plaintiff's counsel herein at moji@saniefarlaw.com, and copied Defendant Tanya Moore at tanya@moorelawfirm.com and Defendant Best at zak@moorelawfirm.com (among others).  Plaintiff is informed and believes, and thereon alleges, that Defendant Best directed and caused this e-mail containing correspondence from him to be sent to counsel for Plaintiff herein.  The e-mail travelled in interstate commerce through the use of Defendant Moore Law Firm's electronic service providers and Plaintiff's counsel's service provider as alleged in Paragraphs 167 and 168 above.

170.  Also in the Prior Litigation, on August 20, 2015, Defendant Sacks submitted an e-mail including a joint status report from Defendant Tanya Moore which included false statements regarding Defendant Ronald Moore's alleged disability, visit to Zlfred's and encounter with barriers as alleged herein.  *See* **Exhibit L**, attached hereto.  This e-mail was submitted by Defendant Sacks at marejka@moorelawfirm.com to Plaintiff's counsel herein at moji@saniefarlaw.com, and copied Defendant Tanya Moore at tanya@moorelawfirm.com (among others).  Plaintiff is informed and believes and thereon alleges that Defendant Tanya Moore directed and caused this e-mail containing correspondence from her to be sent to counsel for Plaintiff herein.  The e-mail travelled in interstate commerce through the use of Defendant Moore Law's electronic service providers and Plaintiff's counsel's service provider as alleged in Paragraphs 167 and 168 above.

171.  Also in the Prior Litigation, on February 11, 2016, Defendant Sacks submitted an e-mail to counsel for Plaintiff herein attaching a joint status report which included false statements regarding Defendant Ronald Moore's alleged disability, visit to Zlfred's and encounter with barriers as alleged herein for the purpose of furthering the activities of the racketeering Enterprise.  *See* **Exhibit M**, attached hereto.  This e-mail was submitted by Defendant Sacks at marejka@moorelawfirm.com to Plaintiff's counsel herein at moji@saniefarlaw.com, and copied Defendant Tanya Moore at tanya@moorelawfirm.com (among others).  Plaintiff is informed and believes, and thereon alleges, that the joint status report was prepared by Defendant Sacks and reviewed and approved by Defendant Tanya Moore as it contained a signature line for Defendant Tanya Moore.  Plaintiff is informed and believes and thereon alleges that Defendant Tanya Moore

1    directed and caused this e-mail containing a pleading with her signature line to be sent to counsel

2    for Plaintiff herein.  The e-mail travelled in interstate commerce through the use of Defendant

3    Moore Law's electronic service providers and Plaintiff's counsel's service provider as alleged in

4    Paragraphs 167 and 168 above.

5    172.  On May 25, 2017, Defendant Best submitted an e-mail to Plaintiff's counsel herein

6    regarding the filing of a new complaint in Fresno Superior Court, Case No. 17CECG01361,

7    *Moore v. Saniefar, et al*., which complaint includes false statements regarding Defendant Ronald

8    Moore's alleged disability, visit to Zlfred's, and encounter with barriers for the purpose of

9    furthering the racketeering Enterprise.  *See* **Exhibit G**, for the e-mail referenced; and **Exhibit E**,

10   for the state court complaint filed in Fresno Superior Court, Case No. 17CECG01361, *Moore v.*

11   *Saniefar, et al*.  This e-mail was sent by Defendant Best at zak@mission.legal to counsel for

12   Plaintiff herein at moji@saniefarlaw.com, and copied Defendant Tanya Moore at

13   tanya@mission.legal and Defendant Sacks at marejka@mission.legal (among others).  The e-mail

14   travelled in interstate commerce through the use of Defendant Mission Law's electronic service

15   providers and Plaintiff's counsel's service provider as alleged in Paragraphs 167 and 168 above.

16   173.  On June 20, 2017, Defendant Tanya Moore submitted an e-mail to Plaintiff's counsel herein

17   regarding the service of a new complaint in Fresno Superior Court, Case No. 17CECG01361,

18   *Moore v. Saniefar, et al*., which complaint includes false statements regarding Defendant Ronald

19   Moore's alleged disability, visit to Zlfred's, and encountering of barriers for the purpose of

20   furthering the racketeering Enterprise.  *See* **Exhibit N**, attached hereto, for the e-mail referenced;

21   and **Exhibit F**, for the state court amended complaint filed in Fresno Superior Court, Case No.

22   17CECG01361, *Moore v. Saniefar, et al*.  This e-mail was sent by Defendant Tanya Moore at

23   tanya@mission.legal to counsel for Plaintiff herein at moji@saniefarlaw.com, and copied

24   Defendant Sacks at marejka@mission.legal (among others).  The e-mail travelled in interstate

25   commerce through the use of Defendant Mission Law's electronic service providers and

26   Plaintiff's counsel's service provider as alleged in Paragraphs 167 and 168 above.

27              **Particularized Allegations of Wire Fraud Through Use of Internet Advertising.**

28   174.  Plaintiff is informed and believes, and thereon alleges that Defendants Levinson and West

1    Coast CASp have further engaged in acts of wire fraud to further the objectives of the

2    racketeering Enterprise as alleged herein.  Defendant Levinson operates Defendant West Coast

3    CASp.  Defendant is informed and believes, and thereon alleges, that in the years from

4    approximately 2012 to 2016, Defendant West Coast CASp registered its domain name

5    (westcoastcasp.com), web hosting and e-mail services with GoDaddy, an internet service provider

6    located in Scottsdale, Arizona with its data centers and servers that process information for its

7    websites and e-mails also located in Arizona.

8    175.  Defendant West Coast CASp falsely advertised on its website that it helps Californians

9    "comply with Access Standards for Federal ADA and the California Building Code," that its

10   inspectors have surveyed "thousands of facilities," and that they can help to "[p]revent drive-by

11   lawsuits."  *See* **Exhibit A**.

12   176.  On its website, Defendant West Coast CASp did not have a phone number, e-mail address,

13   nor a business address.  Defendant is informed and believes, and thereon alleges, that the only

14   way a California resident or business could reach anyone at Defendant West Coast CASp was to

15   provide their name, address, phone number and e-mail via an on-line form on Defendant West

16   Coast CASp's website.  Plaintiff is informed and believes, and thereon alleges, that Defendant

17   Levinson's and West Coast CASP's use of the westcoastcasp.com website and advertising, were

18   used for the purpose of identifying ADA targets for sham ADA litigation once a consumer

19   contacted Defendants West Coast CASp and Levinson through the westcoastcasp.com website

20   and effectively self-reported itself to the racketeering Enterprise.

21   177.  The false information included on Defendant West Coast CASp's website as contained in

22   Paragraph 175 above, was continuously communicated to users of the internet throughout the

23   country from at approximately 2012 until 2016.

24   178.  In fact, in the Prior ADA Litigation, on or about January 2015, Plaintiff's counsel came

25   upon the westcoastcasp.com website and reviewed and relied on the information submitted

26   therein when looking for a CASp inspector.  It was only later, upon further research, that Plaintiff

27   learned that Defendants Levinson and West Coast CASp were actually affiliated with Defendants

28   Ronald Moore, Tanya Moore, Randy Moore, Moore Law Firm and Mission Law Firm.

179.  By being a licensed CASp through the state of California, Plaintiff is informed and believes, and thereon alleges, that Defendant Levinson and Defendant West Coast CASp have sought and agreed to be listed on the State of California, Division of the State Architect website found at https://www.apps2.dgs.ca.gov/dsa/casp/casp_certified_list.aspx as a certified access specialist for consumers looking to hire an expert regarding disability access.  *See* **Exhibit C**. This resource listing by the Division of the State Architect is available to users of the internet throughout the United States.  Plaintiff is informed and believes, and thereon alleges, that this form of interstate advertising advances the goals of the racketeering Enterprise as alleged herein and assists the Enterprise in targeting future ADA defendants with sham litigation who initiate contact with Defendant Levinson unbeknownst to them that they are contacting a participant in the racketeering Enterprise as alleged herein.

180.  In fact, in the Prior ADA Litigation, on or about January 2015, Plaintiff's agent came upon the resource listing by the Division of the State Architect and reviewed and relied on the information submitted therein about Defendant Levinson when looking for a CASp inspector.  It was only later, upon further research, that Plaintiff learned that Defendants Levinson and West Coast CASp were actually affiliated with Defendants Ronald Moore, Tanya Moore, Randy Moore, Moore Law Firm and Mission Law Firm.

**Particularized Allegations of Wire Fraud Through Use of Interstate Data Transfer.**

181.  Plaintiff is informed and believes, and thereon alleges, that Defendants Rick Moore, Levinson and West Coast CASp further use interstate wire services to conduct the activities of the racketeering Enterprise by transferring data over the internet that is used for filing sham ADA litigation.  Plaintiff is informed and believes, and thereon alleges, that upon targeting a would-be ADA defendant, Defendants Sacks and/or Tanya Moore of Defendants Moore Law Firm and Mission Law Firm submit an e-mail to Defendant Levinson at glevinson@westcoastcasp.com containing "Barrier Memos" which includes information about business establishments which are future targets of ADA litigation.  Plaintiff is informed and believes, and thereon alleges, that Defendant Levinson forwards the Barrier Memos via email at glevinson@westcoastcasp.com to Defendant Rick Moore at rdmwiz@gmail.com.

182.  Plaintiff is informed and believes, and thereon alleges, that in the years from approximately 2012 to 2016, Defendant West Coast CASp registered its domain name (westcoastcasp.com), web hosting and e-mail services with GoDaddy, a full-service internet service provider located in Scottsdale, Arizona.  Plaintiff is informed and believes, and thereon alleges that GoDaddy's e-mail activity to or from westcoastcasp.com is routed through data centers located in Scottsdale, Arizona.

183.  Also, as alleged above, Plaintiff is informed and believes, and thereon alleges, that Defendants Moore Law and Mission Law also have registered their domain names, web hosting and e-mail services with GoDaddy, so that any e-mails sent to or from Defendants Moore Law Firm and Mission Law Firm are routed through data centers located in Scottsdale, Arizona.

184.  Plaintiff is informed and believes, and thereon alleges, that any e-mails sent to or from Defendant Rick Moore's email account at rdmwiz@gmail.com travels through interstate commerce as Gmail's servers and data centers to support such activity are located in either Oregon, Georgia, Tennessee, North Carolina, Oklahoma, South Carolina, Iowa or Alabama.

185.  Plaintiff is informed and believes, and thereon alleges, that based upon the information contained in the Barrier Memos, Defendants Levinson, West Coast CASp and Rick Moore conduct covert inspections of California businesses for the purpose of generating false allegations to include in future sham ADA complaints.

186.  Once the covert inspections are performed, notes are prepared by Defendants Levinson and Rick Moore which include a list of potential barriers that exist at the sites inspected.

187.  Defendant Levinson provides his findings back to Defendant Moore Law Firm and Mission Law Firm via e-mail using glevinson@westcoastcasp.com.  Plaintiff is informed and believes, and thereon alleges, that e-mails are sent to Defendant Sacks at marejka@moorelawfirm.com and marejka@mission.legal and/or to Defendant Tanya Moore at tanya@moorelawfirm.com and tanya@mission.legal.

188.  Defendant Rick Moore submits his notes from covert inspections by uploading the information from his e-mail account at rdmwiz@gmail.com to Dropbox, Google Drive or directly to servers of westcoastcasp.com and then e-mails Defendant Levinson at

1    glevinson@westcoastcasp.com to inform him about completion of his reports.

2    189.  Defendant Levinson e-mails the information from Defendant Rick Moore to Defendants

3    Moore Law and Mission Law as alleged in Paragraph 187 above.

4    190.  For example, Plaintiff is informed and believes, and thereon alleges, that in or about June

5    2015, after having received a Barrier Memo from Defendant Levinson via e-mail as described

6    above in Paragraph 181, Defendant Rick Moore conducted a covert inspection of El Campesina

7    Mexican Restaurant in Selma, California on behalf of Defendant Moore Law for the purpose of

8    filing a sham ADA complaint on behalf of Rachel Lobato, an ADA plaintiff used by Defendant

9    Moore Law and Mission Law in numerous sham ADA litigation.  Plaintiff is informed and

10   believes, and thereon alleges, that in June 2015, the information from the covert inspection was

11   provided by Defendant Rick Moore at rdmwiz@gmail.com to Defendant Geoshua Levinson at

12   glevinson@westcoastcasp.com, who then provided the information via e-mail to Defendant

13   Moore Law Firm using interstate wire services as alleged in Paragraph 187 above.  Based on the

14   information provided by the covert inspection, an ADA complaint was filed by Defendant Moore

15   Law Firm on June 29, 2015 entitled, *Lobato v. Lopez, et al.*, Case No. 1:15-cv-00986-MCE-SKO.

16   Plaintiff is informed and believes, and thereon alleges, that the complaint included false

17   allegations of disability, encounter of barriers, and intent to return consistent with the scheme of

18   the racketeering Enterprise as alleged herein in Paragraphs 78-84 above.

19   191.  Plaintiff is also informed and believes, and thereon alleges, that in or about June 2015, after

20   having received a Barrier Memo as alleged above in Paragraph 181, Defendant Rick Moore

21   conducted a covert inspection of Teazor World Tea Market in Fresno, California on behalf of

22   Defendant Moore Law Firm for the purpose of filing a sham complaint on behalf of Rachel

23   Lobato.  Plaintiff is informed and believes, and thereon alleges, that in June 2015, the information

24   from the covert inspection was provided by Defendant Rick Moore at rdmwiz@gmail.com to

25   Defendant Geoshua Levinson at glevinson@westcoastcasp.com, who then provided the

26   information via e-mail to Defendant Moore Law Firm using interstate wire services as alleged

27   above in Paragraph 187.  Based on the information provided by the covert inspection, an ADA

28   complaint was filed by Defendant Moore Law Firm on June 30, 2015 entitled, *Lobato v. Garcia,*

*et al.*, Case No. 1:15-cv-00995-SAB.  Plaintiff is informed and believes, and thereon alleges, that the complaint included false allegations of disability, encounter of barriers, and intent to return consistent with the scheme of the racketeering Enterprise as alleged herein as alleged herein in Paragraphs 78-84 above.

### Particularized Allegations of Wire Fraud Through Use of Interstate Credit Card Processing.

192.  Defendant Loreto also committed wire fraud in furtherance of the goals of the racketeering Enterprise.  Plaintiff is informed and believes, and thereon alleges, that Defendant Loreto has agreed to have his name used as a "witness" in numerous sham complaints filed on behalf of Defendant Ronald Moore as having allegedly accompanied his grandfather, Defendant Ronald Moore, on his visits to establishments that are sued for ADA violations.

193.  For example, in the complaint and amended complaints filed in the Prior Litigation by Defendant Ronald Moore against Plaintiff herein, *Moore v. Saniefar*, Case No. 1:14-cv-01067-SKO, Defendant Loreto is alleged as having accompanied his grandfather, Defendant Ronald Moore, to Zlfred's on April 15, 2014.  This allegation was included in the original complaint filed on July, 8, 2014 (Docket No. 1), the First Amended Complaint filed on January 23, 2015 (Docket No. 25), and the Second Amended Complaint filed on June 4, 2015 (Docket No. 32).

194.  Plaintiff is informed and believes, and thereon alleges, that Defendant Loreto knew and agreed to be included in these complaints which falsely stated that:  (1) Defendant Loreto witnessed his grandfather, Defendant Ronald Moore, calling him for help when allegedly becoming physically stuck in the men's restroom and (2) Defendant Loreto had to assist Defendant Ronald Moore in using the restroom at Zlfred's.

195.  Plaintiff is informed and believes, and thereon alleges, that Defendant Loreto has further participated in wire fraud in advancing the objectives of the racketeering Enterprise by using Defendant Ronald Moore's credit card for the purpose of conducting transactions at establishments and obtaining receipts that are forwarded to Defendant Moore Law firm to initiate sham ADA complaints.  As the Ninth Circuit has held in *Odom v. Microsoft Corp*., 486 F.3d 541, use of credit cards is sufficient to allege interstate wire fraud.

196.    For example, in Defendant Loreto's deposition taken on July 14, 2015, when shown complaints filed by Defendant Moore Law Firm on behalf of Ronald Moore wherein the complaints reference that Defendant Loreto signed for Defendant Ronald Moore's purchase transaction, Defendant Loreto admitted that he used Defendant Ronald Moore's credit card in conducting purchases on May 31, 2014 in at least 4 separate cases, including the complaints filed in:  (1) *Moore v. Wong, et al.,* Case No. 1:14-cv-01997-SKO, filed on December 15, 2014; (2) *Moore v. Heim, et al.*, Case No. 1:14-cv-01870-BAM filed on November 24, 2014 ; (3) *Moore v. Hadjis*, *et al.,* Case No. 1:14-cv-01313-MJS filed on August 21, 2014; and (4) *Moore v. Schiff*, *et al.,* Case No. 1:14-cv-01607-BAM filed on October 14, 2014.  Plaintiff is informed and believes, and thereon alleges, that each of these complaints include false statements regarding Defendant Ronald Moore's alleged disability, visits to the establishments sued, encounter with barriers, and his intent to return to the establishment.

197.  Plaintiff is informed and believes, and thereon alleges, that Defendant Loreto's use of Defendant Ronald Moore's credit card constitutes interstate wire fraud and was done for the purpose of generating evidence to establish standing for Defendant Ronald Moore's ADA litigation, in lieu of Defendant Ronald Moore actually and personally visiting the establishments, as alleged above in Paragraphs 64 to 66.

198.  Plaintiff is informed and believes, and thereon alleges, that the contents of the Sham Documents submitted via wire services as alleged above, as well as the phone calls and electronic mail used (the "Communications"), by the Defendants contained false statements in violation of law.  Plaintiff is informed and believes, and thereon alleges, that the Sham Documents and Communications, at a minimum, included information that was used to falsely establish Defendant Ronald Moore's disability, visits to the facility being sued, the existence and encounter of barriers, and intent to return to the facility in a sham effort to establish standing under the ADA.

199.  Plaintiff is informed and believes, and thereon alleges, that the false or fraudulent pretenses and representations were delivered and/or communicated to Plaintiff through periodic documents, correspondence and contacts.

1    200.  Plaintiff is informed and believes, and thereon alleges, that Defendants prepared the Sham

2    Documents, and engaged in the Communications, that contained false pretenses and

3    representations, and submitted and delivered said Sham Documents and Communications to each

4    other, Plaintiff's counsel, and the court, by e-mailing a true copy of the Sham Documents, or

5    using telephone or electronic services to engage in the Communications,  addressed to one or

6    more of the Defendants, Plaintiff's counsel, and the court.

7    201.  Plaintiff is informed and believes, and thereon alleges, that Defendants used electronic

8    services, such as e-mails, in the normal course of business in which Defendants were familiar.

9    Plaintiff is informed and believes, and thereon alleges, that Defendants, and each of them, used

10   the electronic services to perpetrate their fraudulent schemes, all in violation of Title 18 U.S.C. §§

11   1961 (1) (B), 1962 (c) and (d) and 1343.

12   202.  Plaintiff is informed and believes, and thereon alleges, that Defendants used wire services,

13   such as telephonic and cellular use, in the normal course of business in which Defendants were

14   familiar to make inquiries or respond to the Sham Documents and Communications with each

15   other, Plaintiff, and the court and that the fraud would be confirmed and upheld by Defendants

16   through use of wire services.

17   203.  Plaintiff is informed and believes, and thereon alleges, that all named and DOE Defendants

18   had knowledge of their participation in providing and preparing the falsities contained in the

19   Sham Documents and Communications as alleged herein, and that the Sham Documents and

20   Communications were being used in supporting false ADA complaints in federal court, and in

21   particular, in the Prior Litigation against Plaintiff.

22   204.  In particular, Plaintiff is informed and believes, and thereon alleges, that Defendants Tanya

23   Moore, Randy Moore, Falk and Zak Best are dully licensed to practice law, and had knowledge,

24   or should have had knowledge, due to the profession that they are in, that the Sham Documents

25   and Communications submitted in prosecution of the Prior Litigation to Plaintiff's counsel and

26   the court were indeed fraudulent.

27   205.  Plaintiff is informed and believes, and thereon alleges, that violation of 18 U.S.C. § 1343 for

28   wire fraud continues to this day on an open-ended pattern of criminal acts by the actions of the

Enterprise in using wire services to transfer information that is fraudulent by means of a closed-end pattern of racketeering by Defendants which constitutes an unlawful activity and an advancement of the racketeering Enterprise.

206. The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in its business or property.

207. The racketeering activities set forth herein caused damage to Plaintiff in that the racketeering Enterprise deprived Plaintiff of monies in violation of 18 U.S.C. §§ 1961 (1) (B), 1962 (c) and (d), 1964 (c), 1341, and 1343.

208. The named and DOE Defendants, and each of them, are each jointly and severally liable to Plaintiff for damages, costs and attorney's fees as alleged herein.

209. As a direct and proximate result of the actions of Defendants and each of them, Plaintiff has been damaged (including general and consequential damages) in an amount to be determined at trial, which includes, but is not limited to, financial losses and damages incurred as a result of Defendants' fraud uncovered throughout the course of the Prior Litigation, case number 1:14-cv-01067-SKO, filed in the Eastern District of California. Plaintiff's financial losses and damages as a result of Defendants' fraud includes, but is not limited to, amounts paid for investigative services to uncover the fraud of the enterprise, amounts paid to consultants, experts and contractors as a result of the false statements made by the enterprise, amounts paid for litigation costs and expenses incurred in defending against the false allegations made in the Prior Litigation, and attorney's fees incurred in defending against the false allegations made in the Prior Litigation.

210. As a further direct and proximate result of the actions of Defendants and each of them per law, Plaintiff is entitled to triple damages for all harm caused to them.

211. As a further direct and proximate result of the actions of Defendants and each of them, due to their willful, malicious, despicable, fraudulent and unlawful actions, Plaintiff requests exemplary damages in the form of punitive damages in an amount according to proof at the time of trial.

212. As a further direct and proximate result of the actions of Defendants' acts, Plaintiff is entitled to interest on all consequential and general damages at the legal rate of 10% per annum,

1    until judgment is collected, should Plaintiff prevail in this immediate action.

2    213.  As a further direct and proximate result of Defendants' acts, Plaintiff is entitled to costs and

3    reasonable attorney's fees according to proof at the time of trial for prosecuting this action.

4    214.  And for that other and further relief the Court may deem just and proper.

5                                    **SECOND CAUSE OF ACTION**

6            **Conspiracy to Violate Racketeer Influenced and Corrupt Practices Act**

7            **18 U.S.C. §§ 1961 (1) (B), 1962 (d), 1964 (a) and (c), 1341 and 1343**

8                                        **As to all Defendants**

9    215.  Plaintiff re-alleges and incorporates herein by this reference the allegations in Paragraphs 1

10    through 214 above as though fully set forth herein.

11    216.  In violation of 18 U.S.C. § 1962(d), Plaintiff is informed and believes, and thereon alleges,

12    that Defendants and DOE Defendants, and each of them, knowingly, willfully, and unlawfully

13    agreed to facilitate a scheme which included the, participation, agreement, operation and/or

14    management of a RICO enterprise through a pattern of racketeering activity as alleged in

15    Paragraphs 29 to 214 above.

16    217.  Plaintiff is informed and believes, and thereon alleges, that each named and DOE Defendant

17    was aware of the objectives of the Enterprise and agreed and intended to participate in it as

18    alleged in Paragraphs 29 to 132.

19    218.  The conspiracy commenced at least as early as 2009 and is ongoing.

20    219.  The conspiracy's purpose is to divert money from California businesses and residents to the

21    benefit of all named and DOE Defendants and to facilitate the racketeering Enterprise as alleged

22    in Paragraphs 29 to 214.

23    220.  Each named and DOE Defendant committed at least one overt act in furtherance of such

24    conspiracy as alleged in Paragraphs 132 to 214. These acts in furtherance of the conspiracy

25    include misleading federal courts in California, businesses and residents throughout California,

26    defendants in sham ADA litigation prosecuted by Defendants Moore Law Firm and Mission Law

27    Firm, and counsel for such defendants as to the true nature of Ronald Moore's alleged disability,

28    his visit to establishments sued, his encounter with barriers and his intent to return to

establishments sued in order to confer standing to prosecute the false ADA actions as alleged in Paragraphs 29 to 214.

221.  Plaintiff is informed and believes, and thereon alleges, that each named and DOE Defendant agreed to participate and, in fact, did participate in the racketeering Enterprise as alleged in Paragraphs 29 to 214 with full knowledge of the scheme of the Enterprise and with the intent to financially benefit from such scheme.

222.  Each named and DOE Defendant committed acts to further the conspiracy as alleged in Paragraphs 29 through 214.  Such assistance included supporting primary violations of mail and wire fraud which traveled in interstate commerce as alleged in Paragraphs 132 through 214.

223.  To the extent that any named or DOE Defendant is determined to have not committed a primary violation of 18 U.S.C. § 1962 (c) through commission of predicate acts of mail or wire fraud in furtherance of the purposes of the racketeering Enterprise as alleged in Paragraphs to 132 to 214, the Defendant(s) alternatively must be held liable for having provided assistance to other primary participants of the racketeering Enterprise as alleged in Paragraphs 132 through 214 above.

224.  Such assistance is a violation of 18 U.S.C. § 1962 (d) in that the assistance of the primary acts supported, facilitated, assisted, operated, and/or managed the functioning of the racketeering Enterprise to defraud Plaintiff herein, by each named and DOE Defendant by generating, providing, and advancing false information in the Sham Documents presented to courts, defendants and opposing counsel.

225.  Even if some of the Defendants did not agree to harm Plaintiff specifically, the purpose of the acts they engaged in was to advance the overall object of the conspiracy, and the harm to Plaintiff was a reasonably foreseeable consequence of Defendants' actions.

226.  Plaintiff is informed and believes, and thereon alleges, that violation of 18 U.S.C. §§ 1341 and 1343 for mail and wire fraud continues to this day in an open-ended pattern of criminal acts by the actions of the Enterprise in using mail and wire services to transfer information that is fraudulent by means of a closed-end pattern of racketeering by Defendants which constitutes an unlawful activity and an advancement of the racketeering Enterprise.

1    227.  The unlawful actions of Defendants, and each of them, have directly, illegally, and

2    proximately caused and continue to cause injuries to Plaintiff in her business or property.

3    228.  The racketeering activities and the conspiracy to commit such activities as set forth herein

4    caused damage to Plaintiff in that the racketeering Enterprise deprived Plaintiff of monies in

5    violation of 18 U.S.C. §§ 1961 (1) (B), 1962 (c) and (d), 1964 (c), 1341, and 1343.

6    229.  The named and DOE Defendants, and each of them, are each jointly and severally liable to

7    Plaintiff for damages, costs and attorney's fees as alleged herein.

8    230.  As a direct and proximate result of the actions of Defendants and each of them, Plaintiff has

9    been damaged (including general and consequential damages) in an amount to be determined at

10   trial, which includes, but is not limited to, financial losses and damages incurred as a result of

11   Defendants' fraud uncovered throughout the course of the Prior Litigation, case number 1:14-cv-

12   01067-SKO, filed in the Eastern District of California.  Plaintiff's financial losses and damages as

13   a result of Defendants' fraud includes, but is not limited to, amounts paid for investigative

14   services to uncover the fraud of the enterprise, amounts paid to consultants, experts and

15   contractors as a result of the false statements made by the enterprise, amounts paid for  litigation

16   costs and expenses incurred in defending against the false allegations made in the Prior Litigation,

17   and attorney's fees incurred in defending against the false allegations made in the Prior Litigation.

18   231.  As a further direct and proximate result of the actions of Defendants and each of them per

19   law, Plaintiff is entitled to triple damages for all harm caused to them.

20   232.  As a further direct and proximate result of the actions of Defendants and each of them, due

21   to their willful, malicious, despicable, fraudulent and unlawful actions, Plaintiff requests

22   exemplary damages in the form of punitive damages in an amount according to proof at the time

23   of trial.

24   233.  As a further direct and proximate result of the actions of Defendants' acts, Plaintiff is

25   entitled to interest on all consequential and general damages at the legal rate of 10% per annum,

26   until judgment is collected, should Plaintiff prevail in this immediate action.

27   234.  As a further direct and proximate result of Defendants' acts, Plaintiff is entitled to costs and

28   reasonable attorney's fees according to proof at the time of trial for prosecuting this action.

1    235.  And for that other and further relief the Court may deem just and proper

2    236.  Plaintiff has been injured and continues to be injured in its business and property by

3    Defendants' conspiracy in violation of 18 U.S.C. § 1962(d).

4                                                 **PRAYER**

5         WHEREFORE Plaintiff seeks judgment be entered in favor of Plaintiff and against

6     Defendants, and each of them, as follows:

7    1.    Declaration that the conspiracy, and the conduct in furtherance of the conspiracy, between

8          the Defendants violates 18 U.S.C., § 1962 (c);

9    2.    Declaration that the conspiracy, and the conduct in furtherance of the conspiracy, between

10         the Defendants violates 18 U.S.C., § 1962 (d);

11   3.    Declaration that the conspiracy, and the conduct in furtherance of the conspiracy, between

12         the Defendants violates 18 U.S.C., § 1341;

13   4.    Declaration that the conspiracy, and the conduct in furtherance of the conspiracy, between

14         the Defendants violates 18 U.S.C., § 1343;

15   5.    Enjoining Defendants, and each of them, pursuant to 18 U.S.C., § 1964 (a) from further

16         violations of 18 U.S.C., § 1962 by issuing appropriate orders, including, but not limited to:

17         (1) ordering divestment of any interest, direct or indirect, in any enterprise; (2) imposing

18         reasonable restrictions on the future activities or investments of any person, including, but

19         not limited to, prohibiting any person from engaging in the same type of endeavor as the

20         enterprise engaged in; and (3) ordering dissolution or reorganization of any enterprise;

21   6.    Plaintiff is entitled to general damages according to proof at trial;

22   7.    Plaintiff is entitled to consequential damages according to proof at the time of trial;

23   8.    Plaintiff is entitled to treble damages as provided in 18 U.S.C. § 1964 (c) in an amount to

24         be proved at time of trial;

25   9.    Plaintiff is entitled to damages in the form of interest at the legal rate of 10% interest per

26         annum on all general and consequential damages according to proof at time of trial;

27   10.   Plaintiff is entitled to costs and attorney's fees; and

28   11.   Plaintiff is entitled to any other amounts which the Court deems proper and just.

1

2    Dated: January 3, 2018                          SANIEFAR LAW

3                                                    /s/ Moji Saniefar

4                                                    Moji Saniefar
                                                     Attorneys for Plaintiff, Fatemeh Saniefar
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DEMAND FOR JURY TRIAL**

2          Plaintiff Fatemeh Saniefar hereby demands a jury trial as provided by Rule 38(a) of the

3    Federal Rules of Civil Procedure.

4

5    Dated:  January 3, 2018                    SANIEFAR LAW

6                                               /s/ Moji Saniefar

7                                               Moji Saniefar
                                                Attorneys for Plaintiff, Fatemeh Saniefar

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28