# EXHIBIT A

Home Page    Services    Contact

About    Appointment

# West Coast CASp & ADA Services Inc.

## ADA Consulting services for buildings and construction projects.

**Helping you comply with Access Standards for Federal ADA and the California Building**

**Our philosophy**
Each project is unique. One-size-fits-all approaches will never help you reach full compliance. Custom solutions take advantage of opportunities that your competitors can't. That's what we deliver to you.

**Our commitment to results**
When we work with you, we roll up our sleeves and become

## Code.

The accessibility standards change constantly. For property owners, managers, and contractors to remain in compliance, they need to be more proactive than ever. But identifying and repairing accessibility barriers is never easy. That's where

*your greatest defense. Our success is measured by the level of protection we provide to your facility.*

**Our experience**
*We know the threat businesses and property owners face today. Our consultants have worked for both sides of ADA lawsuits. They've inspected and surveyed thousands of facilities including large shopping malls and centers. We are well-suited to help you comply with the existing and new laws requiring compliance.*

*Fresno, San Jose, San Francisco, Los Angeles, San Fernando Valley, Sacramento, Mountain View, Sunnyvale*

*our team of*

*experts*

*comes in.*



*Prevent drive-by lawsuits*

*Get a C
Certifi
today,
settle
unde
quali
consult*

*Content copyright 2015. West Coast CASp. All rights
reserved.*

# EXHIBIT B

1  E. LeROY FALK, SBN 153459
2  2014 Tulare Street, Suite 300
   Fresno, California 93721
3  Telephone: (559) 441-0114
   Email: l_falk@hotmail.com
4
5  Attorney for Defendants
   GEOSHUA LEVINSON and
6  WEST COAST CASP AND ADA SERVICES, INC.

FILED

SEP 3 0 2015

FRESNO COUNTY SUPERIOR COURT
By
LP - DEPUTY

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               COUNTY OF FRESNO – CIVIL UNLIMITED

10

11 | MILLENNIUM ACQUISITIONS, LLC, a    ) No. 15CECG01815
12 | California limited liability company, et al.,  )
                                                   ) **DECLARATION OF DEFENDANT**
13 |            Plaintiffs,                         ) **GEOSHUA LEVINSON, individually and**
                                                   ) **on behalf of defendant WEST COAST**
14 |       vs.                                      ) **CASp and ADA Services, Inc., IN**
                                                   ) **SUPPORT OF PLAINTIFF'S SPECIAL**
15 | GEOSHUA LEVINSON, et al.,                      ) **ANTI-SLAPP MOTION TO STRIKE**
                                                   ) **PLAINTIFFS' FIRST AMENDED**
16 |            Defendants.                         ) **COMPLAINT**
                                                   )
17                                                  )
                                                   ) Date:        November 10, 2015
18                                                  ) Time:        3:30 p.m.
                                                   ) Department:  402
19                                                  ) Honorable Jeffrey Y. Hamilton, Jr.
20                                                  )

21

22

23

24

25

26

27

28

16cecg01815
DF
Declaration Filed
129117

DECLARATION OF GEOSHUA LEVINSON, individually and on behalf of
WEST COAST CASp AND ADA SERVICES, INC.

1       I, Geoshua Levinson, hereby declare as follows:

2       1.      I am a defendant in the above-entitled action. I am also the president of West

3   Coast CASp and ADA Services, Inc. ("West Coast"), who is also a named defendant in this

4   action. I am over the age of 18 years, and I make this declaration on behalf of myself and as the

5   president of West Coast. I have personal knowledge of the facts contained herein, and if called

6   as a witness, could and would testify competently thereto.

7       2.      West Coast is a corporation, and any work I have performed, or currently

8   perform, discussed herein, is done in my capacity as an employee of West Coast.

9       3.      I am certified by the State of California as a Certified Access Specialist

10  ("CASp"), Certificate Number 380. This Certificate establishes that I am qualified to inspect

11  public entities and private businesses to assess their compliance with state and federal

12  requirements for access by persons with disabilities.

13      4.      West Coast is sometimes hired by business owners/agents to conduct CASp

14  inspections of their businesses. I am the only CASp employed by West Coast, and therefore, I

15  personally perform all CASp inspections. As a CASp, I am required to perform my work in an

16  objective and neutral fashion. After such CASp inspection, I provide the business owner/agent

17  with a written report of my findings.

18      5.      In addition to providing written reports of my CASp inspections (as well as other

19  work), West Coast also provides services to persons with disabilities who have encountered

20  conditions which impede their full and equal access to a business. Such disabled persons,

21  through their attorneys, use West Coast to go to the business and observe the conditions which

22  the disabled person experienced. West Coast does not inspect the entire business, but instead is

23  performing an investigation limited only to those specific conditions complained of as

24  instructed by the contracting attorney. West Coast personnel will take measurements when

25  possible, make notes of observations, and take photographs.

26      6.      The investigation described in paragraph 5 is not a CASp inspection because

27  West Coast is retained not to inspect the entire business for compliance with state and federal

28  access regulations, but instead to investigate only specific concerns and document observations.

DECLARATION OF GEOSHUA LEVINSON, individually and on behalf of
WEST COAST CASp AND ADA SERVICES, INC.

Page 1

7. Although I have personally performed some of the investigations described in paragraph 5, such investigations have also been performed by another employee of West Coast who is not a certified CASp. This employee is, however, qualified to make observations, take measurements, and take photographs documenting the investigation into the disabled person's concerns.

8. After West Coast conducts the investigation described in paragraph 5, photographs that have been taken by West Coast are provided to the attorney for the disabled person.

9. At no time before, during, or after the investigations described in paragraph 5 do I, or West Coast, make any recommendations whatsoever to the attorney that has retained West Coast to perform the investigation with regards to whether a lawsuit should be filed. Nor in most instances do I or West Coast *ever* find out if a legal action was filed. Instead, my job and that of West Coast's is solely to provide information to the attorney so that it may be used in the attorney's determination as to the merits of legal action on behalf of persons with disabilities.

10. West Coast was retained at different times in 2014 by the Moore Law Firm, P.C. to investigate specific conditions at the following businesses: Zlfred's Restaurant, located at 4030 North Blackstone Avenue in Fresno ("Zlfred's"); Slater Shell, located at 1014 East Bullard Avenue in Fresno, California ("Shell"); and Arco AM/PM, located at 6725 North Golden State Boulevard in Fresno, California ("Arco"). The Moore Law Firm provided to West Coast a list of conditions it said were encountered by its client, to be investigated for each of the three businesses. After conducting those investigations, West Coast provided photographs and comments on what was observed.

11. Although I have, since the investigations, gained an understanding that lawsuits were filed against each of the three businesses, neither I nor West Coast made any recommendations regarding whether or not such lawsuits should be filed, nor did I or West Coast have any knowledge about the filing of the lawsuits until relatively recently.

12. I personally investigated the three businesses, Zlfred's, Shell, and Arco. The Moore Law Firm gave me a list of conditions to investigate, and that is all I investigated. Each

DECLARATION OF GEOSHUA LEVINSON, individually and on behalf of
WEST COAST CASp AND ADA SERVICES, INC.

Page 2

1    of my investigations took less than 30 minutes. During my investigations, I did not harm any of

2    the businesses' property, nor did I interfere with the businesses' operations.    I did not try to

3    hide, and remained in the public areas of the businesses at all times, easily viewable by

4    employees. The only time employees would not have been able to see me is when I entered the

5    restrooms at the Shell and Arco. I was never asked to leave the business by anyone at Zlfred's,

6    Shell or Arco. I do not believe that anyone even took special notice of my presence because I

7    was completely unobtrusive.

8        13.    After my investigation of the three businesses, I provided to the Moore Law Firm

9    my photographs of the conditions I was told to investigate. Again, I made no comment, either

10    individually or on behalf of West Coast, as to any future litigation against the three businesses.

11        14.    When I entered the three businesses, I believed I had their consent to do so. My

12    understanding is that the businesses were open to the public, and that as a member of the public,

13    I was therefore invited to come in. I had no knowledge that the consent to enter did not include

14    looking at the business, taking photographs, and making observations. In fact, after reviewing

15    the lawsuit filed against West Coast and me, I was shocked and could not believe that I was

16    somehow to have known that I did not have consent to conduct the investigations.

17        I declare under penalty of perjury under the laws of the State of California that the

18    foregoing is true and correct.

19

20    Dated: September 25, 2015           _____

21                                       Geoshua Levinson

22

23

24

25

26

27

28

DECLARATION OF GEOSHUA LEVINSON, individually and on behalf of
WEST COAST CASp AND ADA SERVICES, INC.

Page 3

# EXHIBIT C

WELCOME TO
# THE STATE OF CALIFORNIA

**Statement:** Notwithstanding any other provision of law, a state agency or employee of a state agency may not be held liable for any injury or damages resulting from any service provided by a cert on this list published pursuant to Government Code section 4459.7(a).

Certified Access Specialists (CASp) with a "Yes" in the "Do Inspections" column are available for hire.

Export to Excel

| Certified Access Specialist | Phone # | Email | Cert # | Exp Date | Do Inspections | Inspection County(s) |
|---|---|---|---|---|---|---|
| Kirsch, Jasper | 415-308-4984 | jkirsch@jensenhughes.com | CASp-661 | 11/30/2018 | Yes | Alameda,Alpine,Amador,Butte,Calaveras,Colusa,Contra Costa,Del Norte,El Dorado,Fresno,Glenn,Humboldt,Imperial,Inyo,Kern,Kings,Lake,Lassen,Los Angeles,Madera,Marin,Mariposa,Mendocino,Merced,Modoc,Mono,Monterey,Napa,Nevada,Ora Benito,San Bernardino,San Diego,San Francisco,San Joaquin,San Luis Obispo,San Mateo,San Cruz,Shasta,Sierra,Siskiyou,Solano,Sonoma,Stanislaus,Sutter,Tehama,Trinity,Tulare,Tuolumne |
| Kitay, Theresa | 910-250-1982 | | CASp-645 | 9/4/2018 | | |
| Klein, Paul | 530-870-3941 | pklein@calcasp.com | CASp-068 | 9/10/2018 | Yes | Serving all areas of California - www.calcasp.com |
| Ko, Davis | 415-960-9280 | daviskodesign@gmail.com | CASp-685 | 4/8/2019 | Yes | San Francisco, San Mateo, Contra Costa, Alameda, Santa Clara, Marin |
| Kohut, Timothy | 213-455-3311 | | CASp-483 | 3/20/2019 | | |
| Kong, Frank | 925-943-5828 | kong@walnut-creek.org | CASp-523 | 12/13/2019 | Yes | |
| Kozisek, Laurie | 510-747-7930 | | CASp-768 | 4/7/2020 | | |
| Kratz, Michael | 760-489-6039 | | CASp-599 | 12/2/2020 | | |
| Krause, Warren | 408-535-6858 | | CASp-602 | 12/3/2020 | | |
| Kung, Melanie | 415-305-5120 | kung.melanie@gmail.com | CASp-398 | 1/16/2021 | | San Francisco, San Mateo, Santa Clara, San Jose |
| Kuo, Jasmine | 415-715-5950 | kuoj@sfha.org | CASp-533 | 1/24/2020 | | |
| Kutzmann, Patricia | 510-796-3003 | kutz@pacbell.net | CASp-199 | 4/13/2019 | | |
| Kwak, Jason | 714-647-5866 | | CASp-737 | 9/2/2019 | | |
| Kwok, Stephen | 415-588-6254 | | CASp-623 | 5/28/2018 | | |
| L'Estrange, Gordon | 415-793-7543 | | CASp-057 | 4/24/2018 | | |
| Landry, Frank | 619-517-8607 | fal@carrierjohnson.com | CASp-674 | 4/1/2019 | Yes | San Diego, Orange, Imperial Valley, L.A., Ventura, San Bernardino, Northern Ca counties |
| Lang, Rachel | 707-823-8489 | | CASp-037 | 4/22/2018 | Yes | Sonoma County only |
| Langlois, Lee | 661-816-1111 | code.compliant@gmail.com | CASp-301 | 9/9/2019 | Yes | Small business advocate serving all of Southern California |
| Lankenau, Steve | 951-693-3946 | | CASp-274 | 7/13/2019 | | |
| Lapraik, Michael | 805-654-2771 | | CASp-239 | 6/25/2019 | | |
| Larsen, Daniel | 916-215-4607 | dan@dlarsenconsulting.com | CASp-012 | 9/29/2020 | Yes | All counties within northern and central California-Will travel upon request- ADA inspections out review, field inspections, Due diligence, Post ADA lawsuits |
| Latimer, Byron | 858-337-6952 | | CASp-719 | 8/16/2019 | | |
| Lau, Wai | 213-482-0094 | | CASp-535 | 2/12/2020 | | |
| Lavenant, Arturo Jr | 714-273-2757 | | CASp-517 | 12/9/2019 | | |
| Law, James | 408-535-6860 | | CASp-349 | 4/22/2020 | | |
| Layman, Gary | 530-520-0169 | | CASp-073 | 9/11/2018 | | |
| Le, Erick | 415-312-6494 | | CASp-756 | 3/22/2020 | | |
| Lee, Chi Wei | 626-708-1097 | | CASp-605 | 12/6/2020 | | |
| Lee, Clint | 213-973-7991 | Clintleeforcasp@gmail.com | CASp-734 | 8/18/2019 | Yes | Los Angeles,Orange,Riverside,San Bernardino |
| Lee, Jihee | 925-768-3938 | jiheelee@hotmail.com | CASp-444 | 8/10/2018 | Yes | Open to All Areas, based in Northern Cal. Bilingual - Korean |
| Lee, Brian | 909-203-0409 | blee@cityofwhittier.org | CASp-182 | 4/6/2019 | | Inspect, plan ck, consulting-CA/US. Lic. Architect, UC-level Instructor, former Building Official w Plans, Forensic Analysis & Expert Witness. Public ROW, Detention/Correctional & Healthcare S |
| Lee, Jaeyol | 626-284-8906 | | CASp-098 | 9/14/2018 | | |
| Lee, Kerwin | 925-283-9547 | | CASp-060 | 4/27/2018 | | |
| Lepori, Gary | 650-780-7356 | | CASp-407 | 1/24/2018 | | |
| Lerner, Arnie | 415-863-5475 | arnie@lernerarch.com | CASp-149 | 3/23/2018 | Yes | San Francisco, Marin, San Mateo,Contra Costa |
| Lescher, Matthew | 314-991-2633 | mattL@codeconsultants.com | CASp-656 | 11/30/2018 | Yes | Providing accessibility inspection, plan review, and expert witness services for all counties in Ca state and federal accessibility codes. http://www.codeconsultants.com |
| Lester, Jaimie | 760-955-5100 | jlester@victorvilleca.gov | CASp-799 | 11/29/2020 | Yes | City of Victorville,San Bernardino |
| Levinson, Geoshua | 559-875-CASP | | CASp-380 | 8/3/2020 | Yes | Alameda,Alpine,Amador,Butte,Calaveras,Colusa,Contra Costa,Del Norte,El Dorado,Fresno,Glenn,Humboldt,Imperial,Inyo,Kern,Kings,Lake,Lassen,Los Angeles,Madera,Marin,Mariposa,Mendocino,Merced,Modoc,Mono,Monterey,Napa,Nevada,Ora |

Case 1:17-cv-00823-NONE-BAM    Document 33-1    Filed 04/03/18    Page 12 of 101

| Name | Phone | Email | CASp | Cert Date | Inspect | Service Area |
|------|-------|-------|------|-----------|---------|--------------|
| Li, Peng | 408-868-8893 | | CASp-612 | 5/20/2018 | | Berard,San Bernardino,San Francisco,San Joaquin,San Luis Obispo,San Mateo,Santa Cruz,Shasta,Sierra,Siskiyou,Solano,Sonoma,Stanislaus,Sutter,Tehama,Trinity,Tulare,Tuolumne |
| Lin, Shine | 213-482-6737 | | CASp-675 | 4/1/2019 | | |
| Lindsey, Anthony | 530-519-2270 | anthonya3hl@aol.com | CASp-493 | 12/4/2019 | | |
| Little, David | 559-593-2274 | ADA.Inspections@yahoo.com | CASp-302 | 9/9/2019 | Yes | Serving Fresno, Madera, Merced, Mariposa, Kings & Tulare County - For more information see AccessInspector.com - DavidLittleCASp.com |
| Liu, Jing | 415-837-3575 | jill3000@yahoo.com | CASp-490 | 8/18/2019 | Yes | |
| Liu, Joyce Le | 408-535-7729 | joyce.liu@sanjoseca.gov | CASp-555 | 4/28/2020 | | |
| Lobao, Armand | 209-678-3718 | all.hilmar1@gmail.com | CASp-658 | 12/3/2018 | Yes | Stanislaus,Merced,San Joaquin,Calaveras,Mariposa |
| Lobnow, Craig | 833-PRO-CASP | Craig@ProCASp.com | CASp-634 | 8/31/2018 | Yes | CASp inspections and consulting throughout Southern and Central California. Visit us at ProCA |
| Lockaby, Mark | 510-387-5957 | | CASp-094 | 9/14/2018 | | |
| Lockman, Ronald | 760-519-4335 | ron@helpwithadacompliance.com | CASp-190 | 4/8/2019 | Yes | Crescent City to Calexico ron@helpwithadacompliance.com |
| Lombard, Leslie | 323-966-2610 | LeslieL@urban-concepts.com | CASp-528 | 12/20/2019 | Yes | I will provide inspections for the greater Southern California area. I also will do and have done i |
| Loomis, Michael | 650-522-2518 | | CASp-099 | 9/14/2018 | | |

1 2 3 4 5 6 7 8 9 10 ...

Copyright © 2007 State of California

# EXHIBIT D

1  ROGER M. MANSUKHANI (SBN: 164463)
   DAVID L. JONES (SBN: 112307)
2  STEVEN R. INOUYE (SBN: 245024)
   GORDON & REES LLP
3  633 West Fifth Street, 52nd Floor
   Los Angeles, CA 90071
4  Telephone: (213) 576-5000
   Facsimile: (213) 680-4470
5
   Attorneys for Defendants
6  TANYA MOORE, KENNETH RANDOLPH MOORE
   erroneously sued as RANDOLPH KENNETH MOORE,
7  and MOORE LAW FIRM, P.C.

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 FOR THE COUNTY OF SANTA CLARA

11

12

13  NATIVIDAD GUTIERREZ                )  CASE NO.  16CV303334
                                       )
14                        Plaintiff,   )  **DECLARATION OF E. LEROY**
                                       )  **FALK IN SUPPORT OF**
15       vs.                           )  **DEFENDANTS' OPPOSITION TO**
                                       )  **PLAINTIFF'S MOTION TO**
16  TANYA MOORE aka TANYA LEVINSON     )  **CHANGE OF VENUE AND**
    aka TANYA LEVINSON MOORE,          )  **REQUEST FOR SANCTIONS**
17  RANDOLPH KENNETH MOORE aka         )
    RANDY MOORE, MOORE LAW FIRM,       )
18  P.C. and Does 1 through 50, inclusive )  Date:    September 26, 2017
                                       )  Time:    9:00 a.m.
19                        Defendants.  )  Dept.:   08
                                       )
20                                     )  Complaint filed:    April 27, 2016
                                       )
21                                     )
                                       )
22                                     )
                                       )
23                                     )
                                       )
24                                     )

25

26

27

28

                                      -1-
       DECLARATION OF E. LEROY FALK IN SUPPORT OF DEFENDANTS' OPPOSITION TO
                   PLAINTIFF'S MOTION TO CHANGE OF VENUE

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

I, E. LeRoy Falk, declare:

1.     I am the president of the Mission Law Firm, P.C. ("Mission") and I am submitting this declaration in support of Defendants' Opposition to Plaintiff's Motion for Change of Venue and Request for Sanctions. I have personal knowledge of the matters set forth herein and, if called upon as a witness, I could and would competently testify thereto.

2.     As the president of Mission, I am familiar with all work which Mission has performed in all relevant time periods.

3.     I purchased the Moore Law Firm and created a new law firm Mission in November 2016.

4.     Mission's principal place of business is located in Santa Clara County, California, specifically 332 North Second Street, San Jose, California.

5.     Mission has not performed any legal work for Plaintiffs Natividad Gutierrez, Jesus Sosa, Daniel Delgado, or John Morales.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed in Fresno, California on this ___th day of September 2017.

_____
E. LeRoy Falk, Declarant

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1114881/34837500v.1

-2-

DECLARATION OF E. LEROY FALK IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO CHANGE OF VENUE

# EXHIBIT E

1  Zachary M. Best, SBN 166035
Tanya E. Moore, SBN 206683
2  MISSION LAW FIRM, A.P.C.
332 North Second Street
3  San Jose, California 95112
Telephone (408) 298-2000
4  Facsimile (408) 298-6046
E-mail: service@mission.legal
5
Attorneys for Plaintiff
6  Ronald Moore

E-FILED

4/21/2017 10:56:00 AM

FRESNO COUNTY SUPERIOR COURT

By: R Garcia, Deputy

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                         **COUNTY OF FRESNO**

10

11  RONALD MOORE,                          )  No.17CECG01361
                                           )
12              Plaintiff,                  )  **COMPLAINT FOR DECLARATORY**
                                           )  **RELIEF AND DAMAGES UNDER THE**
13      vs.                                 )  **UNRUH CIVIL RIGHTS ACT FOR**
                                           )  **VIOLATIONS ARISING UNDER THE**
14  ALIREZA SANIEFAR, Trustee of the BOST  )  **AMERICANS WITH DISABILITIES ACT**
15  TRUST; FATEMAH SANIEFAR dba            )
    ZLFRED'S; ESTATE OF GHOLAMREZA         )
16  SANIEFAR; ALI ABUBAKER dba YEM         )        *Unlimited Jurisdiction*
    KABOB; and DOES 1 through 10, inclusive,)
17                                          )
18              Defendants.                 )
                                           )
19  _____)

20      Plaintiff, RONALD MOORE (hereinafter referred to as "Plaintiff"), alleges as follows:

21                         **I.   INTRODUCTION**

22      1.      This is a civil rights action by Plaintiff for discrimination against persons with

23  disabilities, of which class Plaintiff is a member, for failure to remove architectural barriers at

24  the restaurant formerly known as Zlfred's, and subsequently Yem Kabob, located at 4030

25  North Blackstone Avenue in Fresno, California (the "Facility"), a place of public

26  accommodation, which is, and/or was owned and operated at the time of Plaintiff's visit to the

27  Facility, by Defendants, ALIREZA SANIEFAR, Trustee of the BOST TRUST, FATEMAH

28  SANIEFAR dba ZLFRED'S, ESTATE OF GHOLAMREZA SANIEFAR, ALI ABUBAKER

1  dba YEM KABOB, and DOES 1 through 10, inclusive (hereinafter collectively referred to as

2  "Defendants"); and for failure to modify practice and/or policies in order to accommodate

3  Plaintiff, thereby discriminatorily denying Plaintiff and the class of other similarly situated

4  persons with physical disabilities access to, the full and equal enjoyment of, opportunity to

5  participate in, and benefit from, the goods, facilities, services, and accommodations thereof.

6      2.    Plaintiff seeks damages, attorney fees and costs, against Defendants flowing

7  from such discrimination.

8  <center>**II.   JURISDICTION**</center>

9      3.    This is a civil rights action under the Unruh Civil Rights Act (Cal. Civ. Code

10  §§ 51 *et seq*.). This Court has jurisdiction over the claims alleged herein pursuant to California

11  Civil Code §§ 51, *et seq*.

12  <center>**III.   VENUE**</center>

13      4.    All actions complained of herein take place within the County of Fresno, in the

14  State of California, and the real property which is the subject of this action is located in the

15  County of Fresno.

16  <center>**IV.   PARTIES**</center>

17      5.    Plaintiff believes, and thereon alleges, that Defendant, ALIREZA SANIEFAR,

18  Trustee of the BOST TRUST, is an individual who owns, operates, and/or leases the real

19  property in and on which the Facility is located, and is a resident of the State of California.

20      6.    Plaintiff believes, and thereon alleges, that Defendant, FATEMAH SANIEFAR

21  dba ZLFRED'S, is an individual who at all times relevant owned, operated, and/or leased the

22  Facility, and is a resident of the State of California.

23      7.    Plaintiff believes, and thereon alleges, that GHOLAMREZA SANIEFAR dba

24  ZLFRED'S at all times relevant was an individual who owned, operated, and/or leased the

25  Facility and was a resident of the State of California. Plaintiff believes, and thereon alleges,

26  that GHOLAMREZA SANIEFAR is deceased, and therefore sues the ESTATE OF

27  GHOLAMREZA SANIEFAR.

28  ///

<center>*Moore v. Saniefar, et al.*
COMPLAINT

Page 2</center>

8.      Plaintiff believes, and thereon alleges, that Defendant, ALI ABUBAKER dba YEM KABOB, is an individual who at all times relevant owned, operated, and/or leased the Facility, and is a resident of the State of California.

9.      Defendants Does 1 through 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that each fictitiously named defendant is a resident of the State of California.

10.      Plaintiff is a California resident who is substantially limited in his ability to walk and requires a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.    FACTS

11.      At all times herein mentioned, the Facility was a business establishment engaged in the business of selling food and drinks to the public to be consumed both on and off the premises, formerly known as Zlfred's, and subsequently Yem Kabob, located at 4030 North Blackstone Avenue, Fresno, California in the County of Fresno.

12.      The Facility is, and/or was at the time of Plaintiff's visit, a public accommodation subject both to the requirements of Title III of the 1990 Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA") as well as California Code of Regulations, Title 24, Part 2, Chapter 11B (California Building Code or "CBC").

13.      Plaintiff visited the Facility when it was known as Zlfred's, on or about April 14, 2014, and again on or about April 30, 2015 when it had changed its name to Yem Kabob, with the intention and purpose of purchasing food and drink to be consumed at the Facility. During his visits, Plaintiff encountered barriers that both interfered with and denied his ability to fully and equally use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility which

1  violated the ADA by failing to meet the standards set forth in the 1991 Americans with
2  Disabilities Act Accessibility Guidelines ("ADAAG"), the 2010 Americans with Disabilities
3  Act Accessibility Standards ("ADAAS"), as well as the accessibility requirements set forth in
4  the CBC:

5      a)    During his visit to Zlfred's on April 14, 2014, Plaintiff parked in a
6            designated accessible parking space at the Facility, but found that his
7            parked vehicle itself obstructed the ramp that led to the sidewalk. This
8            caused Plaintiff difficulty, as he had to carefully maneuver his
9            wheelchair around his vehicle in order to go up and down the ramp.

10     b)    During Plaintiff's visit to Zlfred's on April 14, 2014, the entrance to the
11           restaurant was heavy and had a raised threshold. This caused Plaintiff
12           difficulty and embarrassment, as he had to struggle to open the heavy
13           door and the door closed on him while he was attempting to maneuver
14           his wheelchair over the raised threshold.

15     c)    During Plaintiff's visit to Zlfred's on April 14, 2014, Plaintiff needed to
16           use the restroom, but the door to the restroom was narrow and the stall
17           within the men's restroom did not have enough clear floor space inside
18           it. Plaintiff could not get his wheelchair into the stall due to the lack of
19           sufficient clearances. Plaintiff had to yell loudly to his grandson, who
20           was in the dining area, to come and help, which was very embarrassing.
21           Plaintiff's grandson had to hold Plaintiff's wheelchair while Plaintiff got
22           up and, using his cane, made his way into the stall with difficulty.
23           Because the interior of the stall was too small, it was also difficult for
24           Plaintiff to maneuver around inside it.

25     d)    During Plaintiff's visit to Zlfred's on April 14, 2014, the toilet inside of
26           the stall in the men's restroom lacked grab bars. This made it difficult
27           for Plaintiff to sit down on the toilet, and he risked falling down and
28           getting stuck between the wall and the toilet.

e)    During Plaintiff's visit to Zlfred's on April 14, 2014, the plumbing below the lavatory in the men's restroom was exposed, causing Plaintiff to fear that he would hurt his legs, because he has burned/and or scraped his knees in the past by uninsulated drainpipes and water lines.

f)    During Plaintiff's visit to Zlfred's on April 14, 2014, the counter in the men's restroom lacked sufficient clear space underneath it for Plaintiff to pull his wheelchair up with his knees under the counter, making it difficult for Plaintiff to reach the soap dispenser. Plaintiff had to back up from the counter, go to the soap dispenser to get the soap in his hands, then go back to the sink to wash them off. This caused Plaintiff pain to reach up to the dispenser, as well as difficulty in having to transit back and forth from the soap dispenser to the sink.

g)    During Plaintiff's visit to Zlfred's on April 14, 2014, the hand dryer in the men's restroom was out of reach for Plaintiff due to its height. He had to get up out of his wheelchair and use his cane for support to access the dryer, which caused him pain.

h)    During Plaintiff's visit to Zlfred's on April 14, 2014, the men's restroom doorway lacked proper maneuvering clearances on the inside of the restroom and Plaintiff became stuck in the doorway when trying to leave the restroom. Plaintiff had to yell loudly again for his grandson, who had by that time gone back to the dining room. Plaintiff's grandson had to come, reposition Plaintiff's wheelchair so it would fit through the door, and hold the second doorway in the short corridor leading to the bathroom open so Plaintiff could exit. This caused Plaintiff further embarrassment and difficulty.

i)    During his visit to Zlfred's on April 14, 2014, Plaintiff could not locate an accessible table and was forced to sit at a table that did not have sufficient clear space underneath it to accommodate his wheelchair, such

that he could not pull his wheelchair all the way up to the table. Plaintiff was forced to sit at an uncomfortable distance from the table, with the food far in front of him, which made it difficult to eat and he risked spilling food on himself. This was embarrassing to Plaintiff.

j)      During Plaintiff's April 30, 2015 visit to Yem Kabob, Plaintiff again parked in a parking space designated as accessible. Again, his parked vehicle obstructed the ramp that led to the sidewalk because the ramp was connected to the parking stall. It was difficult for Plaintiff to maneuver around his vehicle in order to go up and down the ramp.

14.     Plaintiff is informed and believes, and thereon alleges, that FATEMAH SANIEFAR and GHOLAMREZA SANIEFAR were the owners and operators of the Facility at the time of Plaintiff's April 14, 2014 visit, when it was known as Zlfred's. Plaintiff is also informed and believes, and thereon alleges, that the business operating at the Facility was thereafter sold to ALI ABUBAKER, who owned and operated it at the time of Plaintiff's April 30, 2015 visit, when it was known as Yem Kabob.

15.     Plaintiff is informed and believes, and thereon alleges, that following his April 30, 2015 visit, the business operating at the Facility was sold to a new tenant and has reopened under the name Hadramout Restaurant.

16.     Plaintiff is informed and believes, and thereon alleges, that Defendants have removed the barriers to his access at the Facility since his visit.

17.     Plaintiff is informed and believes, and thereon alleges, that Defendants, and each of them, denied to Plaintiff the services, advantages, accommodations, facilities, and privileges, provided to other persons, as alleged above, on account of his disability.

18.     As a result of the inaccessible facilities, Plaintiff experienced difficulty, discomfort and embarrassment, and was humiliated, embarrassed and frustrated.

19.     Defendants knew or should have known that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Defendants were required to remove the inaccessible conditions prior

1    to Plaintiff's visits. Moreover, Defendants had the financial resources to remove these barriers

2    from the Facility (without much difficulty or expense), and make the Facility accessible to the

3    physically disabled prior to Plaintiff's visits, but did not so do. Such conduct by Defendants is

4    despicable, and was carried on by Defendants with a willful and conscious disregard for the

5    rights of disabled persons, including Plaintiff.

6        20.    At all relevant times, Defendants possessed and enjoyed sufficient control and

7    authority to modify the Facility to remove impediments to wheelchair access and to comply

8    with the ADAAG, ADAAS and CBC. However, Defendants did not remove such impediments

9    and did not modify their Facility to conform to accessibility standards prior to Plaintiff's visits.

10   Defendants intentionally maintained the Facility in a non-compliant condition at the time of

11   Plaintiff's visits and intentionally refrained from altering the Facility so that it complied with

12   the accessibility standards prior to Plaintiff's visits.  Defendants only removed the barriers to

13   access after Plaintiff filed a lawsuit against them in federal court, evincing the fact that they

14   had sufficient control, authority, and financial resources to remove the barriers.

15                    **VI.    FIRST CAUSE OF ACTION**

16                  **Violation of the Unruh Civil Rights Act**

17       21.    Plaintiff incorporates the allegations contained in paragraphs 1 through 20 for

18   this cause of action.

19       22.    California Civil Code § 51 states, in part, that: All persons within the

20   jurisdiction of this state are entitled to the full and equal accommodations, advantages,

21   facilities, privileges, or services in all business establishments of every kind whatsoever.

22       23.    California Civil Code § 51.5 also states, in part that: No business establishment

23   of any kind whatsoever shall discriminate against any person in this state because of the

24   disability of the person. Defendants are a business establishment as that term is used in

25   California Civil Code § 51.5.

26       24.    California Civil Code § 51(f) specifically incorporates by reference an

27   individual's rights under the ADA into the Unruh Act.

28   ///

25. Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment because of their physical disability in violation of the ADA.

26. These acts and omissions (including those that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

27. Defendants violated the Unruh Act intentionally and/or with deliberate indifference to the likelihood that they were violating the rights of disabled persons who must travel about in public in a wheelchair and/or Defendants' violations were so intuitive or obvious that noncompliance could not be other than intentional.

28. As a result of Defendants' conduct, Plaintiff encountered barriers to his access at the Facility which caused him difficulty, discomfort and/or embarrassment, as set forth above, and was thereby damaged by Defendants' wrongful conduct. For this, Plaintiff seeks statutory minimum damages of eight thousand dollars ($8,000) for the two documented occasions on which he encountered barriers to his access, which are described above.

29. As a result of Defendants' conduct, Plaintiff is entitled to recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1. Declaratory relief that Defendants violated the ADA and the California Unruh Civil Rights Act;

2. Statutory minimum damages in the amount of $8,000 under the Unruh Civil Rights Act;

3. Attorneys' fees, litigation expense, and costs of suit.[1]

4. Interest at the legal rate from the date of the filing of this action.

///

///

---

[1] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Saniefar, et al.*
COMPLAINT

1     5.  For such other and further relief as the Court deems proper.

2

3    Dated: April 20, 2017             MISSION LAW FIRM, A.P.C.

4

5                              Tanya E. Moore

6                              Attorneys for Plaintiff,
Ronald Moore

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 4/20/17

Ronald Moore

*Verification*

# EXHIBIT F

1 | Zachary M. Best, SBN 166035
2 | Tanya E. Moore, SBN 206683
3 | MISSION LAW FIRM, A.P.C.
4 | 332 North Second Street
5 | San Jose, California 95112
6 | Telephone (408) 298-2000
7 | Facsimile (408) 298-6046
8 | E-mail: service@mission.legal

E-FILED

6/12/2017 2:24:40 PM

FRESNO COUNTY SUPERIOR COURT

By: R Garcia, Deputy

Attorneys for Plaintiff
Ronald Moore

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF FRESNO**

| | |
|---|---|
| RONALD MOORE, | ) No. 17CECG01361 |
| Plaintiff, | ) |
| | ) **FIRST AMENDED COMPLAINT FOR** |
| vs. | ) **DECLARATORY RELIEF AND** |
| | ) **DAMAGES UNDER THE UNRUH CIVIL** |
| ALIREZA SANIEFAR, Trustee of the BOST | ) **RIGHTS ACT FOR VIOLATIONS** |
| TRUST; FATEMAH SANIEFAR dba | ) **ARISING UNDER THE AMERICANS** |
| ZLFRED'S; ALI ABUBAKER dba YEM | ) **WITH DISABILITIES ACT** |
| KABOB; and DOES 1 through 10, inclusive, | ) |
| | ) *Unlimited Jurisdiction* |
| Defendants. | ) |
| | ) |
| | ) |

Plaintiff, RONALD MOORE (hereinafter referred to as "Plaintiff"), alleges as follows:

## I. INTRODUCTION

1.    This is a civil rights action by Plaintiff for discrimination against persons with disabilities, of which class Plaintiff is a member, for failure to remove architectural barriers at the restaurant formerly known as Zlfred's, and subsequently Yem Kabob, located at 4030 North Blackstone Avenue in Fresno, California (the "Facility"), a place of public accommodation, which is, and/or was owned and operated at the time of Plaintiff's visit to the Facility, by Defendants, ALIREZA SANIEFAR, Trustee of the BOST TRUST, FATEMAH SANIEFAR dba ZLFRED'S, ALI ABUBAKER dba YEM KABOB, and DOES 1 through 10,

1    inclusive (hereinafter collectively referred to as "Defendants"); and for failure to modify

2    practice and/or policies in order to accommodate Plaintiff, thereby discriminatorily denying

3    Plaintiff and the class of other similarly situated persons with physical disabilities access to, the

4    full and equal enjoyment of, opportunity to participate in, and benefit from, the goods,

5    facilities, services, and accommodations thereof.

6         2.    Plaintiff seeks damages, attorney fees and costs, against Defendants flowing

7    from such discrimination.

8                          **II.    JURISDICTION**

9         3.    This is a civil rights action under the Unruh Civil Rights Act (Cal. Civ. Code

10   §§ 51 *et seq.*). This Court has jurisdiction over the claims alleged herein pursuant to California

11   Civil Code §§ 51, *et seq.*

12                          **III.    VENUE**

13        4.    All actions complained of herein take place within the County of Fresno, in the

14   State of California, and the real property which is the subject of this action is located in the

15   County of Fresno.

16                          **IV.    PARTIES**

17        5.    Plaintiff believes, and thereon alleges, that Defendant, ALIREZA SANIEFAR,

18   Trustee of the BOST TRUST, is an individual who owns, operates, and/or leases the real

19   property in and on which the Facility is located, and is a resident of the State of California.

20        6.    Plaintiff believes, and thereon alleges, that Defendant, FATEMAH SANIEFAR

21   dba ZLFRED'S, is an individual who at all times relevant owned, operated, and/or leased the

22   Facility, and is a resident of the State of California.

23        7.    Plaintiff believes, and thereon alleges, that Defendant, ALI ABUBAKER dba

24   YEM KABOB, is an individual who at all times relevant owned, operated, and/or leased the

25   Facility, and is a resident of the State of California.

26        8.    Defendants Does 1 through 10, inclusive, are sued herein under fictitious

27   names. Their true names and capacities are unknown to Plaintiff. When their true names and

28   capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and

1  capacities. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously

2  named defendants is responsible in some manner for the occurrences herein alleged, and that

3  each fictitiously named defendant is a resident of the State of California.

4        9.     Plaintiff is a California resident who is substantially limited in his ability to

5  walk and requires a wheelchair for mobility. Consequently, Plaintiff is "physically disabled,"

6  as defined by all applicable California and United States laws, and a member of the public

7  whose rights are protected by these laws.

8                    **V.    FACTS**

9        10.    At all times herein mentioned, the Facility was a business establishment

10 engaged in the business of selling food and drinks to the public to be consumed both on and off

11 the premises, formerly known as Zlfred's, and subsequently Yem Kabob, located at 4030

12 North Blackstone Avenue, Fresno, California in the County of Fresno.

13       11.    The Facility is, and/or was at the time of Plaintiff's visit, a public

14 accommodation subject both to the requirements of Title III of the 1990 Americans with

15 Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA") as well as California Code of

16 Regulations, Title 24, Part 2, Chapter 11B (California Building Code or "CBC").

17       12.    Plaintiff visited the Facility when it was known as Zlfred's, on or about April

18 14, 2014, and again on or about April 30, 2015 when it had changed its name to Yem Kabob,

19 with the intention and purpose of purchasing food and drink to be consumed at the Facility.

20 During his visits, Plaintiff encountered barriers that both interfered with and denied his ability

21 to fully and equally use and enjoy the goods, services, privileges and accommodations offered

22 at the Facility. Plaintiff personally encountered the following barriers at the Facility which

23 violated the ADA by failing to meet the standards set forth in the 1991 Americans with

24 Disabilities Act Accessibility Guidelines ("ADAAG"), the 2010 Americans with Disabilities

25 Act Accessibility Standards ("ADAAS"), as well as the accessibility requirements set forth in

26 the CBC:

27             a)     During his visit to Zlfred's on April 14, 2014, Plaintiff parked in a

28                  designated accessible parking space at the Facility, but found that his

parked vehicle itself obstructed the ramp that led to the sidewalk. This caused Plaintiff difficulty, as he had to carefully maneuver his wheelchair around his vehicle in order to go up and down the ramp.

b)    During Plaintiff's visit to Zlfred's on April 14, 2014, the entrance to the restaurant was heavy and had a raised threshold. This caused Plaintiff difficulty and embarrassment, as he had to struggle to open the heavy door and the door closed on him while he was attempting to maneuver his wheelchair over the raised threshold.

c)    During Plaintiff's visit to Zlfred's on April 14, 2014, Plaintiff needed to use the restroom, but the door to the restroom was narrow and the stall within the men's restroom did not have enough clear floor space inside it. Plaintiff could not get his wheelchair into the stall due to the lack of sufficient clearances. Plaintiff had to yell loudly to his grandson, who was in the dining area, to come and help, which was very embarrassing. Plaintiff's grandson had to hold Plaintiff's wheelchair while Plaintiff got up and, using his cane, made his way into the stall with difficulty. Because the interior of the stall was too small, it was also difficult for Plaintiff to maneuver around inside it.

d)    During Plaintiff's visit to Zlfred's on April 14, 2014, the toilet inside of the stall in the men's restroom lacked grab bars. This made it difficult for Plaintiff to sit down on the toilet, and he risked falling down and getting stuck between the wall and the toilet.

e)    During Plaintiff's visit to Zlfred's on April 14, 2014, the plumbing below the lavatory in the men's restroom was exposed, causing Plaintiff to fear that he would hurt his legs, because he has burned/and or scraped his knees in the past by uninsulated drainpipes and water lines.

f)    During Plaintiff's visit to Zlfred's on April 14, 2014, the counter in the men's restroom lacked sufficient clear space underneath it for Plaintiff

1      to pull his wheelchair up with his knees under the counter, making it

2      difficult for Plaintiff to reach the soap dispenser. Plaintiff had to back up

3      from the counter, go to the soap dispenser to get the soap in his hands,

4      then go back to the sink to wash them off. This caused Plaintiff pain to

5      reach up to the dispenser, as well as difficulty in having to transit back

6      and forth from the soap dispenser to the sink.

7  g)   During Plaintiff's visit to Zlfred's on April 14, 2014, the hand dryer in

8      the men's restroom was out of reach for Plaintiff due to its height. He

9      had to get up out of his wheelchair and use his cane for support to access

10     the dryer, which caused him pain.

11 h)   During Plaintiff's visit to Zlfred's on April 14, 2014, the men's restroom

12     doorway lacked proper maneuvering clearances on the inside of the

13     restroom and Plaintiff became stuck in the doorway when trying to leave

14     the restroom. Plaintiff had to yell loudly again for his grandson, who had

15     by that time gone back to the dining room. Plaintiff's grandson had to

16     come, reposition Plaintiff's wheelchair so it would fit through the door,

17     and hold the second doorway in the short corridor leading to the

18     bathroom open so Plaintiff could exit. This caused Plaintiff further

19     embarrassment and difficulty.

20 i)   During his visit to Zlfred's on April 14, 2014, Plaintiff could not locate

21     an accessible table and was forced to sit at a table that did not have

22     sufficient clear space underneath it to accommodate his wheelchair, such

23     that he could not pull his wheelchair all the way up to the table. Plaintiff

24     was forced to sit at an uncomfortable distance from the table, with the

25     food far in front of him, which made it difficult to eat and he risked

26     spilling food on himself. This was embarrassing to Plaintiff.

27 j)   During Plaintiff's April 30, 2015 visit to Yem Kabob, Plaintiff again

28     parked in a parking space designated as accessible. Again, his parked

1  vehicle obstructed the ramp that led to the sidewalk because the ramp
2  was connected to the parking stall. It was difficult for Plaintiff to
3  maneuver around his vehicle in order to go up and down the ramp.

4      13.    Plaintiff is informed and believes, and thereon alleges, that FATEMAH
5  SANIEFAR and GHOLAMREZA SANIEFAR were the owners and operators of the Facility
6  at the time of Plaintiff's April 14, 2014 visit, when it was known as Zlfred's. Plaintiff is also
7  informed and believes, and thereon alleges, that the business operating at the Facility was
8  thereafter sold to ALI ABUBAKER, who owned and operated it at the time of Plaintiff's April
9  30, 2015 visit, when it was known as Yem Kabob.

10      14.    Plaintiff is informed and believes, and thereon alleges, that following his April
11  30, 2015 visit, the business operating at the Facility was sold to a new tenant and has reopened
12  under the name Hadramout Restaurant.

13      15.    Plaintiff is informed and believes, and thereon alleges, that Defendants have
14  removed the barriers to his access at the Facility since his visit.

15      16.    Plaintiff is informed and believes, and thereon alleges, that Defendants, and
16  each of them, denied to Plaintiff the services, advantages, accommodations, facilities, and
17  privileges, provided to other persons, as alleged above, on account of his disability.

18      17.    As a result of the inaccessible facilities, Plaintiff experienced difficulty,
19  discomfort and embarrassment, and was humiliated, embarrassed and frustrated.

20      18.    Defendants knew or should have known that these elements and areas of the
21  Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to
22  the physically disabled. Defendants were required to remove the inaccessible conditions prior
23  to Plaintiff's visits. Moreover, Defendants had the financial resources to remove these barriers
24  from the Facility (without much difficulty or expense), and make the Facility accessible to the
25  physically disabled prior to Plaintiff's visits, but did not so do. Such conduct by Defendants is
26  despicable, and was carried on by Defendants with a willful and conscious disregard for the
27  rights of disabled persons, including Plaintiff.

28

19.     At all relevant times, Defendants possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the ADAAG, ADAAS and CBC. However, Defendants did not remove such impediments and did not modify their Facility to conform to accessibility standards prior to Plaintiff's visits. Defendants intentionally maintained the Facility in a non-compliant condition at the time of Plaintiff's visits and intentionally refrained from altering the Facility so that it complied with the accessibility standards prior to Plaintiff's visits.  Defendants only removed the barriers to access after Plaintiff filed a lawsuit against them in federal court, evincing the fact that they had sufficient control, authority, and financial resources to remove the barriers.

## VI.     FIRST CAUSE OF ACTION

### Violation of the Unruh Civil Rights Act

20.     Plaintiff incorporates the allegations contained in paragraphs 1 through 19 for this cause of action.

21.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

22.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person. Defendants are a business establishment as that term is used in California Civil Code § 51.5.

23.     California Civil Code § 51(f) specifically incorporates by reference an individual's rights under the ADA into the Unruh Act.

24.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment because of their physical disability in violation of the ADA.

25.     These acts and omissions (including those that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

26.     Defendants violated the Unruh Act intentionally and/or with deliberate indifference to the likelihood that they were violating the rights of disabled persons who must travel about in public in a wheelchair and/or Defendants' violations were so intuitive or obvious that noncompliance could not be other than intentional.

27.     As a result of Defendants' conduct, Plaintiff encountered barriers to his access at the Facility which caused him difficulty, discomfort and/or embarrassment, as set forth above, and was thereby damaged by Defendants' wrongful conduct. For this, Plaintiff seeks statutory minimum damages of eight thousand dollars ($8,000) for the two documented occasions on which he encountered barriers to his access, which are described above.

28.     As a result of Defendants' conduct, Plaintiff is entitled to recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.   Statutory minimum damages in the amount of $8,000 under the Unruh Civil Rights Act;

2.   Attorneys' fees, litigation expense, and costs of suit.[1]

3.   Interest at the legal rate from the date of the filing of this action.

4.   For such other and further relief as the Court deems proper.

Dated: June 7, 2017                    MISSION LAW FIRM, A.P.C.


                                       /s/ Tanya E. Moore
                                       Tanya E. Moore
                                       Attorneys for Plaintiff,
                                       Ronald Moore

---

[1] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Saniefar, et al.*
FIRST AMENDED COMPLAINT

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing First Amended Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 6/7/17

_Ronald Moore_
Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

_/s/ Tanya E. Moore_
Tanya E. Moore, Attorney for
Plaintiff, Ronald Moore

# EXHIBIT G

**Zak Best <zak@mission.legal>** 5/25/2017 7:45 AM

# RE: Meet and Confer

To Moji Saniefar <moji@saniefarlaw.com>

---

Hi Moji,

Thanks for the info. Will we amend the complaint to delete the reference to declaratory relief and drop the estate from the suit.

Regarding CCC 55.56, let us know any specifics that you would like us to review.

We should be able to get an amended complaint on file next week. I am out of the office all day today, and have a very busy day tomorrow.

Thanks,

Zak

Zachary Best
Attorney
Mission Law Firm, A.P.C.
332 North Second Street
San Jose, CA 95112
Phone: 408.298.2000 ext. 2234


-----Original Message-----
From: Moji Saniefar [mailto:moji@saniefarlaw.com]
Sent: Thursday, May 25, 2017 12:27 AM
To: zak@mission.legal
Subject: Meet and Confer

Zak:

Pursuant to our conversation earlier today, I am providing the following bases for filing a motion to quash, demurrer, and/or motion to strike the Complaint.

1) An "estate" of a decedent is not a legal entity that can be sued. See Hill v. Estate of Westbrook (1950) 95 Cal.App.2d 599, 604. Therefore, the Court has no jurisdiction over the "Estate" named in the complaint and service of the subpoena and filing of the subsequent proof of service in this case with the Court was improper in that it has placed the burden on me to notify the Court of Plaintiff's improper filing and service of the summons to a nonexistent legal entity and nonexistent legal representative. If Plaintiff does not voluntarily correct this improper service of process filed with the court by dismissing the incorrectly named defendant, I will have to move to quash the service of the summons to the Estate and move the Court for sanctions and attorneys fees under CCP 128.

2) Although Plaintiff's Civil Cover Sheet indicates that it only seeks monetary relief, his Complaint includes a request for declaratory relief. Given the procedural history of this case, a request for declaratory relief based solely on a claim pursuant to the Unruh Act is improper. This is especially so since Plaintiff concedes on the face of his Complaint that there no longer any barriers at the site. See e.g., County of San Diego v.

State of California, 164 Cal. App. 4th 580, 607-608 (Cal. App. 4th Dist. July 1, 2008)

3) Defendants will also seek the protections offered be the recently enacted Cal. Civ. Code 55.56(g) to the extent applicable.


Sincerely,

Moji Saniefar

SANIEFAR LAW

1220 Howard Avenue, Suite 200

Burlingame, CA 94010

Telephone: (650) 581-0025

saniefarlaw.com

CONFIDENTIALITY NOTICE: The information contained in this e-mail may be privileged and is intended only for the personal and confidential use of the recipient(s) named above. If you are not the intended recipient, you have received this document in error and any review, dissemination, distribution, or copying of this message is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify us immediately by forwarding this email to moji@saniefarlaw.com or (650) 581-0025 and destroy the original transmission without reading or saving it in any manner.

--


The preceding email message (including any attachments) contains information that may be confidential, protected by attorney-client or other applicable privileges, or constitutes non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

# EXHIBIT H

**Isaac Medrano <isaac@moorelawfirm.com>**                                      10/25/2016 2:17 PM

# Moore v. Saniefar, et al. (Zlfred's)

To moji@saniefarlaw.com   Copy Tanya Moore <tanya@moorelawfirm.com> •
Zak Best <zak@moorelawfirm.com> • Whitney Law <whitney@moorelawfirm.com>

---

Dear Ms. Saniefar:

Please find correspondence from Mr. Best regarding the above-referenced matter. Thank you.

Sincerely,

Isaac Medrano
**Moore Law Firm, P.C.**
332 North Second Street
San Jose, California 95112
T: (408) 298-2000 ext. 2237
F: (408) 298-6046
E: isaac@moorelawfirm.com

---

The preceding email message (including any attachments) contains information that may be confidential, protected by attorney-client or other applicable privileges, or constitutes non-public information.  It is intended to be conveyed only to the designated recipient(s).  If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system.  Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

---

- 10-25-16 Letter to Moji re Meet and Confer.pdf (1004 KB)
- 10-25-16 Letter to Moji re Offer.pdf (562 KB)



# MOORE
## LAW FIRM, P.C.

October 25, 2016

<u>Via Email Only</u>

Moji Saniefar, Esq.
Saniefar Law
1220 Howard Avenue, Suite 200
Burlingame, CA 94010

     RE: *Moore v. Saniefar, et al.*
       <u>E.D. Cal. Case No. 1:14-cv-01067-SKO</u>

Dear Ms. Saniefar:

Thank you for speaking with Ms. Moore and me today regarding the court ordered Meet and Confer in connection with the upcoming Motion for Summary Judgment. The purpose of the call was to see if the parties can enter into stipulations regarding factual or legal issues that might narrow the issues prior to summary judgment.

As we discussed, you are not willing to stipulate that the Plaintiff is substantially limited in his ability to walk, nor will you stipulate that Plaintiff visited Defendants' restaurant, both alleged in the Second Amended Complaint.

You were willing to stipulate that a portion of the restaurant is a public accommodation. Specifically, you stated that the banquet room is not open to the public. However, the restaurant and parking lot portions of the facility are.

There were a number of issues that you stated you needed to sort out before you could confirm whether they are disputed or not. Specifically, you stated that you needed to check on the ownership of the property and business. You also stated that you needed to look into all of the barriers mentioned in the Second Amended Complaint to see if you were willing to enter any stipulations that pertain to them. Further, you are not yet willing to stipulate that Plaintiff encountered barriers or the past or present conditions of the property.

You confirmed that you would be able to continue the discussion regarding all outstanding possible stipulations on November 2, 2016.

---

332 North Second Street | San Jose, California 95112
T: 408.298.2000 | F: 408.298.6046 | W: www.moorelawfirm.com

Moji Saniefar, Esq.
October 25, 2016
Page 2

If anything in this letter does not comport with your understanding, please notify us immediately so that we can avoid any misunderstandings.

Sincerely,

*/s/ Zachary Best, Esq.*

Zachary Best, Esq.

# EXHIBIT I

1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  Email: tanya@moorelawfirm.com

5  Attorneys for Plaintiff
   Ronald Moore

6

7

8  # UNITED STATES DISTRICT COURT

9  ## EASTERN DISTRICT OF CALIFORNIA

10

11  RONALD MOORE,                          ) No. 1:14-cv-01067-SKO
                                           )
12          Plaintiff,                     ) **PLAINTIFF'S INITIAL DISCLOSURES**
                                           ) (Fed. R. Civ. P. 26)
13      vs.                                )
                                           )
14  FATEMAH SANIEFAR dba ZLFRED'S, et      )
    al.,                                   )
15                                         )
                                           )
16          Defendants.                    )
                                           )
17 ──────────────────────────────────────

18      Plaintiff, Ronald Moore ("Plaintiff"), hereby submits the following initial disclosures

19  pursuant to Federal Rule of Civil Procedure 26(a):

20  **A.    WITNESS INFORMATION**

21      Plaintiff anticipates calling the following witnesses:

22      1.    Plaintiff. Plaintiff is expected to testify as to his disabilities, his visit to Zlfred's,

23  located at 4030 North Blackstone Avenue in Fresno, California ("the Subject Property"), the

24  condition of the Subject Property when he visited it, the barriers he personally encountered, and

25  other barriers at the Subject Property which relate to his disabilities of which he may gain

26  knowledge. Plaintiff can be reached through Plaintiff's counsel.

27      2.    Geoshua Levinson. Mr. Levinson is expected to testify as to the condition of the

28  property when he visited it, and establish foundation for the photographs which were taken

1  during the pre-filing inspection of the Subject Property. Mr. Levinson can be reached through

2  Plaintiff's counsel.

3       3.     Defendants. Defendants are expected to testify regarding the construction,

4  alteration, and remodeling history of the premises. Defendants are expected to testify as to their

5  policies, practices and procedures for making the Subject Property accessible to persons with

6  disabilities. Defendants are expected to testify as to architectural barriers which have

7  existed/exist at the Subject Property. Defendants are expected to testify as to their affirmative

8  defenses.

9  **B.    DOCUMENTS**

10       1.     Receipts from Plaintiff's visits to the Subject Property.

11       2.     Photographs taken at Plaintiff's counsel's pre-filing inspection of the Subject

12  Property.

13  **C.    COMPUTATION OF DAMAGES**

14       Plaintiff, who is disabled, presently seeks $4,000 in minimum statutory damages under

15  the California Unruh Civil Rights Act resulting from Defendants' acts of discrimination against

16  him by preventing his full and equal access to the Subject Property which resulted in Plaintiff

17  experiencing difficulty, discomfort and/or embarrassment. Plaintiff also seeks the recovery of

18  his attorneys' fees, costs, and litigation expenses, plus the injunctive relief set forth in his

19  Complaint on file herein (and as the Complaint may be amended). The amount of attorneys'

20  fees and costs cannot be calculated until the matter reaches a resolution.

21       Plaintiff's counsel certifies to the best of her knowledge, information and belief that this

22  disclosure is complete and correct as of the time it was made. Plaintiff will amend this

23  document should additional information be learned.

24

25  Dated: October 6, 2014                MOORE LAW FIRM, P.C.

26

27                                  Tanya Moore

                                Tanya E. Moore

28                                  Attorneys for Plaintiff,

                                Ronald Moore

PLAINTIFF'S INITIAL DISCLOSURES

1                                  **PROOF OF SERVICE**

2         I am, and was at the time of service hereinafter mentioned, a citizen of the United States

3 and a resident of the County of Santa Clara. I am over the age of 18 years and not a party to the

4 within action; my business address is 332 North Second Street, San Jose, California, 95112.

5         On October 7, 2014, I served the foregoing document entitled **PLAINTIFF'S INITIAL**

6 **DISCLOSURES** for E.D. Cal. Case No. 1:14-cv-01067-SKO on the party(s) below as follows:

7

8

9

10

| Moji Saniefar, Esq.<br>SANIEFAR LAW<br>533 Airport Boulevard, Suite 400<br>Burlingame, CA 94010 | Attorneys for Defendants:<br>FATEMAH SANIEFAR dba ZLFRED'S;<br>GHOLAMREZA SANIEFAR dba<br>ZLFRED'S; ZLFRED'S, INC., a California<br>corporation; ALIREZA SANIEFAR, Trustee<br>of the BOST TRUST |
|---|---|

11         Following is the procedure in which service was effected:

12         **U.S. POSTAL SERVICE** – I placed a copy of said document in a sealed envelope

13 addressed to the party(s) at the address(es) listed above, with postage fully prepaid, for collection

14 and deposit in the United States mail at Moore Law Firm, P.C., 332 N. Second Street, San Jose,

15 CA 95112. I am familiar with the practice of Moore Law Firm, P.C., for the collection and

16 processing of correspondence for mailing with the United States Postal Service. In accordance

17 with the ordinary course of business, the above-mentioned document would have been picked up

18 from our offices by the U.S. Postal Service courier on the same day on which it was placed at

19 Moore Law Firm, P.C. for pickup.

20         I certify that I am employed in the office of a member of the bar of this Court at whose

21 direction the service was made.

22         I declare under penalty of perjury under the laws of the State of California that the

23 foregoing is true and correct.

24

25 Dated: October 7, 2014                          _____

26                                          Isaac Medrano

27

28

# EXHIBIT J

1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  Email: tanya@moorelawfirm.com

5  Attorneys for Plaintiff
   Ronald Moore
6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 RONALD MOORE,                    ) No. 1:14-cv-01067-SKO
                                    )
12        Plaintiff,                ) **PLAINTIFF'S RESPONSES TO**
                                    ) **DEFENDANTS' FIRST SET OF**
13     vs.                          ) **INTERROGATORIES**
                                    )
14 FATEMAH SANIEFAR dba ZLFRED'S, et )
15 al.,                             )
                                    )
16                                  )
          Defendants.               )
17                                  )
                                    )
18                                  )
19 _____ )

20 PROPOUNDING PARTY:  Defendants, Fatemeh Saniefar, Gholamreza, Zlfred's, Inc.,

21                     Alireza Saniefar, Trustee of Bost Trust

22 RESPONDING PARTY:   Plaintiff, Ronald Moore

23 SET NUMBER:         One (1)

24    **TO DEFENDANTS AND TO THEIR ATTORNEY OF RECORD:**

25     Plaintiff, Ronald Moore ("Plaintiff"), hereby responds to the First Set of Interrogatories

26 propounded by Defendants, Fatemeh Saniefar, Gholamreza, Zlfred's, Inc., and Alireza Saniefar,

27 Trustee of Bost Trust (collectively "Defendants"), served April 15, 2015, pursuant to Federal

28 Rule of Civil Procedure 33.

1    **PRELIMINARY STATEMENT**

2        The following responses are based upon the facts, documents, and information

3    presently known and available to Plaintiff. Plaintiff has not completed his investigation of the

4    facts relating to this case, discovery, or preparation for trial. As such, without obligating

5    himself to do so, Plaintiff reserves the right to change and/or supplement these responses as

6    additional facts are discovered, revealed, recalled, or otherwise ascertained, and as further

7    analysis and research disclose additional facts, contentions, and/or legal theories.

8        Plaintiff will respond to each particular interrogatory in Defendants' First Set of

9    Interrogatories as he understands and interprets it. If Defendants subsequently assert an

10    interpretation of an interrogatory that differs from that of Plaintiff, Plaintiff reserves the right

11    to change and/or supplement his objections and/or responses.

12        This Preliminary Statement is incorporated in full by this reference into each and every

13    response below.

14    **GENERAL OBJECTIONS AND QUALIFICATIONS**

15        The following General Objections and Qualifications are in addition to, and are

16    incorporated into, each of Plaintiff's Responses.

17        A.    Plaintiff objects to all individual interrogatories to the extent they call for

18    information protected by the attorney-client privilege, the attorney work product doctrine, or

19    any other applicable privilege or protection. The fact that Plaintiff has not specifically objected

20    to an individual interrogatory on the ground that it seeks such privileged or protected

21    information shall not be deemed a waiver of the protection afforded by the attorney-client

22    privilege, the work product doctrine, or other applicable privilege or protection.

23        B.    Plaintiff objects to all of the individual interrogatories to the extent they purport

24    to impose upon Plaintiff the burden of furnishing information that is not available to him or

25    that is equally or more readily available to Defendant.

26        C.    Plaintiff objects to the interrogatories as a whole, and in combination with other

27    written discovery requests served simultaneously on Plaintiff, in that they are repetitive,

28    overbroad, unduly burdensome and oppressive, and are intended to harass and annoy.

PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

1    Interrogatory No. 1:

2     Identify any lawsuits that YOU have filed or intend to file in California regarding the

3    lack of access to public accommodations (including docket number and filing date).

4    Response to Interrogatory No. 1:

5     Plaintiff objects to this interrogatory on the grounds that it seeks information protected

6    by the attorney-client privilege, specifically with regards to information about lawsuits which

7    may, but have not yet, been filed and about which Plaintiff has consulted his attorney.  Plaintiff

8    further objects to this interrogatory on the grounds that it seeks information irrelevant to the

9    claims and defenses in this matter, and that any probative value in the response is outweighed

10    by the burden in providing it.  Plaintiff further objects to this interrogatory on the grounds that

11    the information sought is equally available to Defendants through public records.

12    Interrogatory No. 2:

13     For all lawsuits identified in INTERROGATORY NO. 1, provide the outcome of the

14    litigation (i.e., verdict and dollar amount awarded to plaintiff or defendant, settlement,

15    dismissal, etc.).

16    Response to Interrogatory No. 2:

17     Plaintiff objects to this interrogatory on the grounds that it seeks information irrelevant

18    to the claims and defenses in this matter, and that any probative value in the response is

19    outweighed by the burden in providing it.  Plaintiff further objects to this interrogatory on the

20    grounds that it seeks confidential information, namely the nature of the resolution of cases

21    which were resolved by confidential settlement.

22    Interrogatory No. 3:

23     State all dates that YOU visited the PREMISES in the past five years and the goods or

24    service sought for each visit.

25    Response to Interrogatory No. 3:

26     Plaintiff responds that he has visited the restaurant which is the subject of this action at

27    least three times in the past five years, but does not know the exact dates other than the date

28    alleged in this action of April 14, 2014, and a recent visit on April 30, 2015 when the name of

1  the establishment had changed to Yem Kabob.  The purpose of Plaintiff's visits was to eat and

2  avail himself of the middle-eastern food, atmosphere and accommodations offered to the

3  public by the restaurant.

4  Interrogatory No. 4:

5       For each feature of the PREMISES YOU contend present unlawful barriers in violation

6  of DISABILITY ACCESS LAWS in paragraphs 10 and 11 of the COMPLAINT and their

7  subparts, state specific details about each barrier that makes it unlawful.

8  Response to Interrogatory No. 4:

9       Plaintiff objects to this interrogatory on the grounds it requests legal conclusions.

10 Plaintiff further objects to this interrogatory on the grounds that it prematurely seeks expert

11 opinion, namely the specific conditions of each barrier identified in paragraphs 10 and 11 of

12 the First Amended Complaint.  Without waiving the foregoing objections, and based upon his

13 current understanding of the barriers at the subject property, Plaintiff responds as follows.

14      Plaintiff responds as follows regarding the allegations contained in paragraph 10; the

15 allegation is contained in quotes, followed by Plaintiff's response:

16         a)   "Plaintiff parked in a designated accessible parking space at the Facility,

17              but found that his parked vehicle itself obstructed the ramp that led to

18              the sidewalk. It was difficult for Plaintiff to maneuver around his vehicle

19              to go up and down the ramp."   Defendants are required to provide and

20              maintain an accessible path of travel from the accessible parking to the

21              entrance of the restaurant and failed to do so.

22         b)   "The entrance to the restaurant was heavy and had a raised threshold.

23              This made it difficult for Plaintiff to open the door, and to keep it open

24              while he attempted to overcome the threshold."   The operational

25              pressure of the entrance to the Restaurant exceeded 5 pounds, and the

26              threshold was more than 1/4 inch without edge protection/beveling.

27         c)   "Plaintiff needed to the use the restroom while visiting the Facility, but

28              the stall within the men's restroom lacked necessary wheelchair

1   clearances, and Plaintiff could not get his wheelchair into it. Plaintiff
2   required his grandson's assistance to make his way into the stall and
3   onto the toilet." The required maneuvering clearances of the restroom
4   stall were not provided.

5   d)   "The toilet inside of the stall lacked grab bars, further making it difficult
6   for Plaintiff to use the toilet." Side and rear grab bars are required to be
7   provided and properly located.

8   e)   "The plumbing below the lavatory in the restroom was exposed, causing
9   Plaintiff to fear that he would burn his legs on the pipes." Plumbing is
10   required to be insulated or protected to prevent contact.

11   f)   "The counter in the men's restroom lacked proper knee clearances,
12   making it difficult for Plaintiff to reach the soap dispenser." Proper
13   knee and toe clearances, as well as reach ranges, were not provided at
14   the counter.

15   g)   "The hand dryer in the men's restroom was out of reach for Plaintiff due
16   to its height." The hand dryer was higher than permissible.

17   h)   "The men's restroom doorway lacked proper maneuvering clearances on
18   the inside of the restroom and Plaintiff became trapped when trying to
19   leave the restroom. Plaintiff had to call out his grandson to help him."
20   Proper maneuvering clearances at the restroom door were not provided.

21   i)   "Plaintiff could not locate an accessible table and was forced to sit at a
22   table that was improperly configured, such that he could not pull his
23   wheelchair all the way up to the table. He was forced to sit at an
24   uncomfortable distance from the table for the duration of his meal." No
25   accessible tables were provided, or able to be located by Plaintiff, that
26   had proper wheelchair, knee, and toe clearances (height, depth and
27   width).

28   Plaintiff responds as follows regarding the allegations contained in paragraph 11; the

PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

allegation is contained in quotes, followed by Plaintiff's response:

a) "A properly configured and identified accessible route of travel from the public way to the designated accessible building entrance is not provided." Defendants have not provided an accessible path of travel that is the correct width, has no excessive slopes or cross-slopes, has no impermissible changes in level, is smooth and level, and coincides with the path of travel for the general public. No accessible route of travel from the public way exists.

b) "The exterior routes of travel contain excessive cross slopes." There are cross-slopes in the exterior routes of travel that exceed 2.0 percent.

c) "The route of travel along the west entry walkway contains changes in level that exceed the maximum allowable height." The changes in height exceed 1/4 inch and 1/2 inch and have no edge protection/beveling.

d) "The route of travel from the designated accessible parking stall to the entry walkway is excessively sloped and does not comply with the requirements for a curb ramp." The path of travel exceeds 8.33 percent but does not comply with the requirements for a curb ramp.

e) "Proper tow-away signage is not provided." No tow-away warning signage is provided at the entrances to all off-street parking.

f) "The proper number of accessible parking stalls is not provided." At least three accessible parking spaces are required, but only one is provided. The single space provided is cracked and uneven, and not properly marked.

g) "No properly configured and identified van-accessible parking stall is provided." There is no parking space designated as van accessible, complying with all requirements of a van accessible parking space.

h) "The designated accessible parking stall and access aisle that are

PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

1    provided lack proper signage and pavement markings." The single
2    designated accessible parking space lacks proper signage and pavement
3    markings.

4    i)    "The designated accessible parking stall and access aisle that are
5    provided contain cracked and uneven surfaces." The designated
6    accessible parking space and access aisle are not smooth and level.

7    j)    "The main building entrance lacks a proper smooth surface on the
8    bottom of the push side of the doors." A 10 inch smooth, uninterrupted
9    surface on the push sides of the entrance door is not provided.

10    k)    "The main building entrance threshold exceeds the maximum allowable
11    height." The change in level exceeds 1/4 inch and the threshold is
12    greater than 1/2 inch in height.

13    l)    "The north building entrance door requires excessive force to operate
14    and its sweep speed is not properly adjusted." The entrance door
15    requires more than 5 pounds of pressure to operate, and the door closes
16    too quickly.

17    m)    "The north building entrance lacks proper maneuvering clearances at the
18    pull side of the door." There is not enough space for a wheelchair to
19    maneuver and open the door.

20    n)    "The bench seating waiting area does not have a proper clear floor space
21    for persons in wheelchairs located clear of the route of travel." There is
22    not a 30 inch by 48 inch clear floor space located clear of the route of
23    travel for a patron in a wheelchair to wait to be seated.

24    o)    "A properly configured accessible portion of the transaction counter is
25    not provided." The transaction counter does not have a portion that is
26    34/36 inches maximum in height and 36 inches minimum in length.

27    p)    "Items and accessories provided on the transaction counter are not
28    positioned within proper reach ranges." The toothpick dispenser and

PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

1    mints located on the transaction counter are not within proper reach

2    ranges for a parallel approach by a person in a wheelchair.

3    q)   "Properly configured accessible seating spaces are not provided in the

4    main dining area and are not properly distributed amongst the different

5    types of seating offered at the Facility."  Accessible dining tables that

6    are the proper height, depth, and width are not provided within the main

7    dining area and are not provided at each type of seating offered.

8    r)   "No properly configured accessible seating spaces are provided in the

9    exterior dining area."  The tables provided at the exterior seating areas

10    do not have the required knee clearances.

11    s)   "A properly configured accessible portion of the bar counter is not

12    provided and no accessible seating space is provided at the bar counter."

13    The bar counter exceeds 34 and 36 inches in height, and does not have a

14    portion that is 60 inches minimum in length with the top at 28 inches

15    minimum and 34 inches maximum above the floor with knee and toe

16    clearances.

17    t)   "Routes of travel through the north dining area lack proper clear width."

18    Clear width of the routes of travel were less than 32 inches in multiple

19    locations.

20    u)   "The raised platform within the bar/north dining area is not accessible

21    by way of platform lift or ramp."  There is no way a wheelchair can get

22    to the raised platform area without having to overcome a steep step.

23    v)   "The floor mats throughout the public areas of the Facility are

24    unsecured."  Multiple carpets and mats are provided that are not secured

25    to the walking surface.

26    w)   "The passageway and doorway leading to the men's restroom lack

27    proper clear width."   There is less than 32 inches in width in the

28    passageway and doorway leading to the men's restroom.

PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

1     x) "Proper signage is not provided at the entrance to the men's restroom."

2       The sign is not an equilateral triangle.

3     y) "The men's restroom lavatory lacks proper knee clearances."  The sink

4       is not located with the required knee clearance.

5     z) "The plumbing beneath the men's restroom lavatory is not properly

6       insulated."  The plumbing under the men's restroom sink is not insulated

7       or otherwise configured to protect against contact.

8     aa) "The men's restroom urinals are positioned with the urinal rims and

9       flush controls too high."  The urinals are installed with the rim higher

10      than 17 inches above the floor and the flush controls are located higher

11      than 44 inches above the finished floor.

12     bb) "The men's restroom designated accessible toilet compartment door is

13       not self-closing."  The door to the designated accessible toilet stall does

14       not close automatically.

15     cc) "The men's restroom designated accessible toilet compartment lacks

16       proper door pull hardware."   The hardware requires pinching and

17       twisting.

18     dd) "The men's restroom designated accessible toilet compartment lacks

19       proper turning clearances, maneuvering clearances, and clear floor

20       space."  The minimum maneuvering and turning clearances, as well as

21       clear floor space, inside the accessible toilet compartment are not

22       provided.

23     ee) "The toilet paper dispenser in the men's restroom designated accessible

24       toilet compartment is improperly positioned."  The location of the toilet

25       paper dispenser does not comply with applicable requirements.

26     ff) "The grab bars in the men's restroom designated accessible toilet

27       compartment are improperly configured and positioned."  The grab bars

28       are not the proper length, are not located the proper distance from the

1  side and rear walls, and do not extend as far as is required.

2  gg)  "The toilet seat cover dispenser in the men's restroom designated

3  accessible toilet compartment lacks proper clear floor space."  The toilet

4  seat dispenser is located such that a wheelchair cannot approach it.

5  hh)  "The coat hook in the men's restroom designated accessible toilet

6  compartment is positioned too high."  The coat hook is higher than 48

7  inches from the ground.

8  ii)  "The mirror, soap dispensers, and paper towel dispensers in the men's

9  restroom are positioned too high."  The bottom edge of the reflective

10  portion of the mirror is located more than 40 inches from the ground,

11  and the operable parts of all dispensers exceeds 40 inches from the

12  ground.

13  Interrogatory No. 5:

14  For each feature of the PREMISES YOU contend violates DISABILITY ACCESS

15  LAWS, specify each statute, regulation and/or standard that YOU contend that feature violates.

16  Response to Interrogatory No. 5:

17  Plaintiff objects to this request on the grounds that it calls for an improper legal

18  conclusion.

19  Interrogatory No. 6:

20  State all facts to support YOUR allegation in Paragraph 30 of the COMPLAINT that

21  "Defendants violated the ADA by failing to make reasonable modifications in policies,

22  practices, or procedures at the Facility."

23  Response to Interrogatory No. 6:

24  Plaintiff objects to this request on the grounds that it is a premature contention

25  interrogatory.  Discovery is still ongoing, and Plaintiff has not fully amassed information

26  which would be fully responsive to this request.  Without waiving the foregoing objection,

27  Plaintiff responds that at the time of his visit to the subject property and continuing to the

28  present, Defendants have failed to make their restaurant accessible to him.  Such accessibility

PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

1   may require the modification of policies, practices and procedures.  For example, Defendants

2   are required to provide accessible seating to Plaintiff.  Defendants must take every reasonable

3   step to ensure that the seating remains available for disabled persons until all other seats are

4   occupied.  Defendants must also take reasonable steps to ensure that accessible seating can be

5   identified by disabled individuals so that it can effectively be used by such patrons.  Further,

6   Defendants are required to maintain their restaurant in an accessible condition, such as

7   restriping accessible parking, updating signage, regularly adjusting the operating pressure of

8   doors, monitoring the accessible routes (both interior and exterior) to ensure the minimum

9   widths are maintained, repairing accessible elements that become damaged and unusable,

10  ensuring that all self-service items are located within appropriate reach ranges (including items

11  displayed for only limited periods of time), and the like.  Defendants have not undertaken any

12  such efforts to accommodate Plaintiff.

13  Interrogatory No. 7:

14          Provide the name, address and phone number of the PERSON identified by YOU as

15  YOUR grandson in Paragraph 10(c) and 10(h) of the COMPLAINT.

16  Response to Interrogatory No. 7:

17          Plaintiff objects to providing this information on the grounds that Plaintiff's grandson is

18  a minor and disclosure of any contact information herein is therefore inappropriate.  Plaintiff

19  objects to any effort to depose or otherwise conduct discovery with regards to the grandson on

20  the grounds that he is a minor, and any information which could be provided by the grandson

21  may be obtained through other less intrusive means than through the child's testimony.

22  Interrogatory No. 8:

23          State all facts to support YOUR allegation in Paragraph 44 of the COMPLAINT that

24  "the Facility is a public accommodation constructed, altered, or repaired in a manner that

25  violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both)."

26  Response to Interrogatory No. 8:

27          Plaintiff objects to this interrogatory on the grounds that it is a premature contention

28  interrogatory.  Specifically, Plaintiff has requested this information of Defendants.  Defendants

1 │ are in possession of the construction and alteration history of their property. To the extent any

2 │ alterations were done that do not comply with applicable California Building Code

3 │ requirements, Defendants violated Part 5.5 of the Health and Safety Code or Government Code

4 │ section 4450 (or both).

5 │ Interrogatory No. 9:

6 │ State all facts to support YOUR allegation in Paragraph 28 of the COMPLAINT that

7 │ "Defendants altered the Facility in a manner that violated the ADA and was not readily

8 │ accessible to the physically disabled – including Plaintiff – to the maximum extent feasible."

9 │ Response to Interrogatory No. 9:

10 │ Plaintiff objects to this interrogatory on the grounds that it is a premature contention

11 │ interrogatory. Specifically, Plaintiff has requested this information of Defendants. Defendants

12 │ are in possession of the construction and alteration history of their property. To the extent any

13 │ alterations were done that do not comply with the new construction/alteration standards set

14 │ forth in the 1991 ADAAG and/or 2010 ADA Standards for Accessible Design (depending

15 │ upon the date of the alteration), Defendants have violated the ADA. Plaintiff objects to this

16 │ interrogatory on the grounds this information is within the possession of Defendants.

17 │ Interrogatory No. 10:

18 │ State all facts to support YOUR allegation in Paragraph 33 of the COMPLAINT that

19 │ the "Facility was designed and constructed (or both) after January 26, 1992."

20 │ Response to Interrogatory No. 10:

21 │ Plaintiff objects to this interrogatory on the grounds that it is a premature contention

22 │ interrogatory. Plaintiff has requested this information from Defendants. Plaintiff objects to

23 │ this interrogatory on the grounds this information is within the possession of Defendants.

24 │ Interrogatory No. 11:

25 │ State all facts to support YOUR allegation in paragraph 21 of the COMPLAINT that

26 │ defendants "can easily remove the architectural barriers at the Facility without much difficulty

27 │ or expense."

28 │

1  Response to Interrogatory No. 11:

2      Plaintiff objects to this interrogatory on the grounds that it is a premature contention

3  interrogatory. Plaintiff further objects to this request on the grounds that it prematurely calls

4  for expert opinion, including the means for barrier removal, the estimated cost of barrier

5  removal, and an evaluation of Defendants' financial resources, all of which require expert

6  opinion. Without waiving the foregoing objection, and subject to supplementation when expert

7  witnesses and their reports are disclosed, Plaintiff responds that most of the barriers identified

8  fall within those barriers identified by the ADA and its implementing regulations that are

9  presumptively readily achievable to remove, and that Defendants have the financial resources

10  to remove those barriers without causing any appreciable financial burden. Plaintiff further

11  responds that Defendants were obligated to begin barrier removal from the time they took

12  ownership of, or begin operating, the subject restaurant, and therefore, the cost of barrier

13  removal must be evaluated in light of that continuing obligation. The total cost of barrier

14  removal will be divided by the number of years Defendants have owned/operated the

15  Restaurant to determine whether Defendants could have, prior to the time of Plaintiff's visit,

16  made the property fully accessible to him. In addition, there are IRS tax credits and deductions

17  which help offset the cost of barrier removal. Further, it appears that Defendants have already

18  removed some of the identified barriers, establishing that barrier removal was in fact readily

19  achievable. When viewed in light of these facts, barrier removal is easily accomplishable

20  without much difficulty or expense.

21  Interrogatory No. 12:

22      State all facts to support YOUR allegation in Paragraph 28 of the COMPLAINT that

23  defendants "altered the Facility in a manner that violated the ADA."

24  Response to Interrogatory No. 12:

25      Plaintiff objects to this interrogatory on the grounds that it is a premature contention

26  interrogatory. Specifically, Plaintiff has requested this information of Defendants. Defendants

27  are in possession of the construction and alteration history of their property. To the extent any

28  alterations were done that do not comply with the new construction/alteration standards set

1  forth in the 1991 ADAAG and/or 2010 ADA Standards for Accessible Design (depending

2  upon the date of the alteration), Defendants have violated the ADA. Plaintiff objects to this

3  interrogatory on the grounds this information is within the possession of Defendants.

4  Interrogatory No. 13:

5      State all facts to support YOUR allegation in Paragraph 30 of the COMPLAINT that

6  defendants failed to make reasonable accommodations in policies, practices and procedures in

7  violation of the ADA.

8  Response to Interrogatory No. 13:

9      Plaintiff objects to this interrogatory on the grounds it is an exact restatement of

10  Interrogatory No. 6 and is therefore duplicative. Plaintiff incorporates his response to

11  Interrogatory No. 6 as though fully set forth herein.

12

13  Dated: May 14, 2015                    MOORE LAW FIRM, P.C.

14

15                                          Tanya Moore

16                                          Tanya E. Moore
                                            Attorneys for Plaintiff
17                                          Ronald Moore

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Plaintiff's Responses to Defendants' First Set of Interrogatories, and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct, and that this Verification was signed in Clovis, California on the date set forth below.

Dated: 5/4/15

Ronald Moore

1

**PROOF OF SERVICE**

2   I am, and was at the time of service hereinafter mentioned, a citizen of the United States

3   and a resident of the County of Santa Clara.  I am over the age of 18 years and not a party to the

4   within action; my business address is 332 North Second Street, San Jose, California, 95112.

5   On May 18, 2015, I served the foregoing document entitled **PLAINTIFF'S**

6   **RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES** for E.D. Cal.

7   Case No. 1:14-cv-01067-SKO on the party(s) below as follows:

8   Moji Saniefar, Esq.                    Attorneys for Defendants:
9   SANIEFAR LAW                           FATEMAH SANIEFAR dba ZLFRED'S;
    533 Airport Boulevard, Suite 400       GHOLAMREZA SANIEFAR dba
10  Burlingame, CA 94010                   ZLFRED'S; ZLFRED'S, INC., a California
                                           corporation; ALIREZA SANIEFAR, Trustee
11                                         of the BOST TRUST

12   Following is the procedure in which service was effected:

13   **U.S. POSTAL SERVICE** – I placed a copy of said document in a sealed envelope

14   addressed to the party(s) at the address(es) listed above, with postage fully prepaid, for collection

15   and deposit in the United States mail at Moore Law Firm, P.C., 332 N. Second Street, San Jose,

16   CA  95112. I am familiar with the practice of Moore Law Firm, P.C., for the collection and

17   processing of correspondence for mailing with the United States Postal Service. In accordance

18   with the ordinary course of business, the above-mentioned document would have been picked up

19   from our offices by the U.S. Postal Service courier on the same day on which it was placed at

20   Moore Law Firm, P.C. for pickup.

21   I certify that I am employed in the office of a member of the bar of this Court at whose

22   direction the service was made.

23   I declare under penalty of perjury under the laws of the State of California that the

24   foregoing is true and correct.

25

26   Dated:  May 18, 2015                  _____

27                                         Isaac Medrano

28

# EXHIBIT K

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
Email: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>       Plaintiff,<br><br>    vs.<br><br>FATEMAH SANIEFAR dba ZLFRED'S, et al.,<br><br>       Defendants. | No. 1:14-cv-01067-SKO<br><br>**PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES** |

PROPOUNDING PARTY:    Defendants, Fatemeh Saniefar, Gholamreza, Zlfred's, Inc.,

Alireza Saniefar, Trustee of Bost Trust

RESPONDING PARTY:    Plaintiff, Ronald Moore

SET NUMBER:    One (1)

**TO DEFENDANTS AND TO THEIR ATTORNEY OF RECORD:**

Plaintiff, Ronald Moore ("Plaintiff"), hereby supplements his responses to the First Set

of Interrogatories propounded by Defendants, Fatemeh Saniefar, Gholamreza, Zlfred's, Inc.,

and Alireza Saniefar, Trustee of Bost Trust (collectively "Defendants"), served April 15, 2015,

pursuant to Federal Rule of Civil Procedure 33.

1

**PRELIMINARY STATEMENT**

2  The following responses are based upon the facts, documents, and information

3 presently known and available to Plaintiff. Plaintiff has not completed his investigation of the

4 facts relating to this case, discovery, or preparation for trial. As such, without obligating

5 himself to do so, Plaintiff reserves the right to change and/or supplement these responses as

6 additional facts are discovered, revealed, recalled, or otherwise ascertained, and as further

7 analysis and research disclose additional facts, contentions, and/or legal theories.

8  Plaintiff will respond to each particular interrogatory in Defendants' First Set of

9 Interrogatories as he understands and interprets it. If Defendants subsequently assert an

10 interpretation of an interrogatory that differs from that of Plaintiff, Plaintiff reserves the right

11 to change and/or supplement his objections and/or responses.

12  This Preliminary Statement is incorporated in full by this reference into each and every

13 response below.

14

**GENERAL OBJECTIONS AND QUALIFICATIONS**

15  The following General Objections and Qualifications are in addition to, and are

16 incorporated into, each of Plaintiff's Responses.

17  A. Plaintiff objects to all individual interrogatories to the extent they call for

18 information protected by the attorney-client privilege, the attorney work product doctrine, or

19 any other applicable privilege or protection. The fact that Plaintiff has not specifically objected

20 to an individual interrogatory on the ground that it seeks such privileged or protected

21 information shall not be deemed a waiver of the protection afforded by the attorney-client

22 privilege, the work product doctrine, or other applicable privilege or protection.

23  B. Plaintiff objects to all of the individual interrogatories to the extent they purport

24 to impose upon Plaintiff the burden of furnishing information that is not available to him or

25 that is equally or more readily available to Defendant.

26  C. Plaintiff objects to the interrogatories as a whole, and in combination with other

27 written discovery requests served simultaneously on Plaintiff, in that they are repetitive,

28 overbroad, unduly burdensome and oppressive, and are intended to harass and annoy.

1   Interrogatory No. 1:

2        Identify any lawsuits that YOU have filed or intend to file in California regarding the

3   lack of access to public accommodations (including docket number and filing date).

4   Response to Interrogatory No. 1:

5        Plaintiff objects to this interrogatory on the grounds that it seeks information protected

6   by the attorney-client privilege, specifically with regards to information about lawsuits which

7   may, but have not yet, been filed and about which Plaintiff has consulted his attorney.  Plaintiff

8   further objects to this interrogatory on the grounds that it seeks information irrelevant to the

9   claims and defenses in this matter, and that any probative value in the response is outweighed

10   by the burden in providing it.  Plaintiff further objects to this interrogatory on the grounds that

11   the information sought is equally available to Defendants through public records.

12   Interrogatory No. 2:

13        For all lawsuits identified in INTERROGATORY NO. 1, provide the outcome of the

14   litigation (i.e., verdict and dollar amount awarded to plaintiff or defendant, settlement,

15   dismissal, etc.).

16   Response to Interrogatory No. 2:

17        Plaintiff objects to this interrogatory on the grounds that it seeks information irrelevant

18   to the claims and defenses in this matter, and that any probative value in the response is

19   outweighed by the burden in providing it.  Plaintiff further objects to this interrogatory on the

20   grounds that it seeks confidential information, namely the nature of the resolution of cases

21   which were resolved by confidential settlement.

22   Interrogatory No. 3:

23        State all dates that YOU visited the PREMISES in the past five years and the goods or

24   service sought for each visit.

25   Response to Interrogatory No. 3:

26        Plaintiff responds that he has visited the restaurant which is the subject of this action at

27   least three times in the past five years, but does not know the exact dates other than the date

28   alleged in this action of April 14, 2014, and a recent visit on April 30, 2015 when the name of

PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF
INTERROGATORIES

1  the establishment had changed to Yem Kabob.  The purpose of Plaintiff's visits was to eat and

2  avail himself of the middle-eastern food, atmosphere and accommodations offered to the

3  public by the restaurant.

4  Interrogatory No. 4:

5        For each feature of the PREMISES YOU contend present unlawful barriers in violation

6  of DISABILITY ACCESS LAWS in paragraphs 10 and 11 of the COMPLAINT and their

7  subparts, state specific details about each barrier that makes it unlawful.

8  Response to Interrogatory No. 4:

9        Plaintiff objects to this interrogatory on the grounds it requests legal conclusions.

10 Plaintiff further objects to this interrogatory on the grounds that it prematurely seeks expert

11 opinion, namely the specific conditions of each barrier identified in paragraphs 10 and 11 of

12 the First Amended Complaint.  Without waiving the foregoing objections, and based upon his

13 current understanding of the barriers at the subject property, Plaintiff responds as follows.

14       Plaintiff responds as follows regarding the allegations contained in paragraph 10; the

15 allegation is contained in quotes, followed by Plaintiff's response:

16             a)    "Plaintiff parked in a designated accessible parking space at the Facility,

17                    but found that his parked vehicle itself obstructed the ramp that led to

18                    the sidewalk. It was difficult for Plaintiff to maneuver around his vehicle

19                    to go up and down the ramp."   Defendants are required to provide and

20                    maintain an accessible path of travel from the accessible parking to the

21                    entrance of the restaurant and failed to do so.

22             b)    "The entrance to the restaurant was heavy and had a raised threshold.

23                    This made it difficult for Plaintiff to open the door, and to keep it open

24                    while he attempted to overcome the threshold."   The operational

25                    pressure of the entrance to the Restaurant exceeded 5 pounds, and the

26                    threshold was more than 1/4 inch without edge protection/beveling.

27             c)    "Plaintiff needed to the use the restroom while visiting the Facility, but

28                    the stall within the men's restroom lacked necessary wheelchair

PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF
INTERROGATORIES

Page 4

1    clearances, and Plaintiff could not get his wheelchair into it. Plaintiff

2    required his grandson's assistance to make his way into the stall and

3    onto the toilet." The required maneuvering clearances of the restroom

4    stall were not provided.

5    d)    "The toilet inside of the stall lacked grab bars, further making it difficult

6    for Plaintiff to use the toilet." Side and rear grab bars are required to be

7    provided and properly located.

8    e)    "The plumbing below the lavatory in the restroom was exposed, causing

9    Plaintiff to fear that he would burn his legs on the pipes." Plumbing is

10    required to be insulated or protected to prevent contact.

11    f)    "The counter in the men's restroom lacked proper knee clearances,

12    making it difficult for Plaintiff to reach the soap dispenser." Proper

13    knee and toe clearances, as well as reach ranges, were not provided at

14    the counter.

15    g)    "The hand dryer in the men's restroom was out of reach for Plaintiff due

16    to its height." The hand dryer was higher than permissible.

17    h)    "The men's restroom doorway lacked proper maneuvering clearances on

18    the inside of the restroom and Plaintiff became trapped when trying to

19    leave the restroom. Plaintiff had to call out his grandson to help him."

20    Proper maneuvering clearances at the restroom door were not provided.

21    i)    "Plaintiff could not locate an accessible table and was forced to sit at a

22    table that was improperly configured, such that he could not pull his

23    wheelchair all the way up to the table. He was forced to sit at an

24    uncomfortable distance from the table for the duration of his meal." No

25    accessible tables were provided, or able to be located by Plaintiff, that

26    had proper wheelchair, knee, and toe clearances (height, depth and

27    width).

28    Plaintiff responds as follows regarding the allegations contained in paragraph 11; the

PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF
INTERROGATORIES

1    allegation is contained in quotes, followed by Plaintiff's response:

2          a)    "A properly configured and identified accessible route of travel from the
3                public way to the designated accessible building entrance is not
4                provided."  Defendants have not provided an accessible path of travel
5                that is the correct width, has no excessive slopes or cross-slopes, has no
6                impermissible changes in level, is smooth and level, and coincides with
7                the path of travel for the general public.  No accessible route of travel
8                from the public way exists.

9          b)    "The exterior routes of travel contain excessive cross slopes."  There are
10               cross-slopes in the exterior routes of travel that exceed 2.0 percent.

11         c)    "The route of travel along the west entry walkway contains changes in
12               level that exceed the maximum allowable height."   The changes in
13               height   exceed   1/4   inch   and   1/2   inch   and   have   no   edge
14               protection/beveling.

15         d)    "The route of travel from the designated accessible parking stall to the
16               entry walkway is excessively sloped and does not comply with the
17               requirements for a curb ramp."  The path of travel exceeds 8.33 percent
18               but does not comply with the requirements for a curb ramp.

19         e)    "Proper tow-away signage is not provided."  No tow-away warning
20               signage is provided at the entrances to all off-street parking.

21         f)    "The proper number of accessible parking stalls is not provided."  At
22               least three accessible parking spaces are required, but only one is
23               provided.  The single space provided is cracked and uneven, and not
24               properly marked.

25         g)    "No properly configured and identified van-accessible parking stall is
26               provided."   There is no parking space designated as van accessible,
27               complying with all requirements of a van accessible parking space.

28         h)    "The designated accessible parking stall and access aisle that are

1          provided lack proper signage and pavement markings." The single

2          designated accessible parking space lacks proper signage and pavement

3          markings.

4      i)    "The designated accessible parking stall and access aisle that are

5          provided contain cracked and uneven surfaces." The designated

6          accessible parking space and access aisle are not smooth and level.

7      j)    "The main building entrance lacks a proper smooth surface on the

8          bottom of the push side of the doors." A 10 inch smooth, uninterrupted

9          surface on the push sides of the entrance door is not provided.

10     k)    "The main building entrance threshold exceeds the maximum allowable

11          height." The change in level exceeds 1/4 inch and the threshold is

12          greater than 1/2 inch in height.

13     l)    "The north building entrance door requires excessive force to operate

14          and its sweep speed is not properly adjusted." The entrance door

15          requires more than 5 pounds of pressure to operate, and the door closes

16          too quickly.

17     m)    "The north building entrance lacks proper maneuvering clearances at the

18          pull side of the door." There is not enough space for a wheelchair to

19          maneuver and open the door.

20     n)    "The bench seating waiting area does not have a proper clear floor space

21          for persons in wheelchairs located clear of the route of travel." There is

22          not a 30 inch by 48 inch clear floor space located clear of the route of

23          travel for a patron in a wheelchair to wait to be seated.

24     o)    "A properly configured accessible portion of the transaction counter is

25          not provided." The transaction counter does not have a portion that is

26          34/36 inches maximum in height and 36 inches minimum in length.

27     p)    "Items and accessories provided on the transaction counter are not

28          positioned within proper reach ranges." The toothpick dispenser and

1    mints located on the transaction counter are not within proper reach
2    ranges for a parallel approach by a person in a wheelchair.

3    q)    "Properly configured accessible seating spaces are not provided in the
4    main dining area and are not properly distributed amongst the different
5    types of seating offered at the Facility."  Accessible dining tables that
6    are the proper height, depth, and width are not provided within the main
7    dining area and are not provided at each type of seating offered.

8    r)    "No properly configured accessible seating spaces are provided in the
9    exterior dining area."  The tables provided at the exterior seating areas
10    do not have the required knee clearances.

11    s)    "A properly configured accessible portion of the bar counter is not
12    provided and no accessible seating space is provided at the bar counter."
13    The bar counter exceeds 34 and 36 inches in height, and does not have a
14    portion that is 60 inches minimum in length with the top at 28 inches
15    minimum and 34 inches maximum above the floor with knee and toe
16    clearances.

17    t)    "Routes of travel through the north dining area lack proper clear width."
18    Clear width of the routes of travel were less than 32 inches in multiple
19    locations.

20    u)    "The raised platform within the bar/north dining area is not accessible
21    by way of platform lift or ramp."  There is no way a wheelchair can get
22    to the raised platform area without having to overcome a steep step.

23    v)    "The floor mats throughout the public areas of the Facility are
24    unsecured."  Multiple carpets and mats are provided that are not secured
25    to the walking surface.

26    w)    "The passageway and doorway leading to the men's restroom lack
27    proper clear width."   There is less than 32 inches in width in the
28    passageway and doorway leading to the men's restroom.

1       x)  "Proper signage is not provided at the entrance to the men's restroom."

2          The sign is not an equilateral triangle.

3       y)  "The men's restroom lavatory lacks proper knee clearances."  The sink

4          is not located with the required knee clearance.

5       z)  "The plumbing beneath the men's restroom lavatory is not properly

6          insulated."  The plumbing under the men's restroom sink is not insulated

7          or otherwise configured to protect against contact.

8       aa)  "The men's restroom urinals are positioned with the urinal rims and

9          flush controls too high."  The urinals are installed with the rim higher

10          than 17 inches above the floor and the flush controls are located higher

11          than 44 inches above the finished floor.

12       bb)  "The men's restroom designated accessible toilet compartment door is

13          not self-closing."  The door to the designated accessible toilet stall does

14          not close automatically.

15       cc)  "The men's restroom designated accessible toilet compartment lacks

16          proper door pull hardware."   The hardware requires pinching and

17          twisting.

18       dd)  "The men's restroom designated accessible toilet compartment lacks

19          proper turning clearances, maneuvering clearances, and clear floor

20          space."  The minimum maneuvering and turning clearances, as well as

21          clear floor space, inside the accessible toilet compartment are not

22          provided.

23       ee)  "The toilet paper dispenser in the men's restroom designated accessible

24          toilet compartment is improperly positioned."  The location of the toilet

25          paper dispenser does not comply with applicable requirements.

26       ff)  "The grab bars in the men's restroom designated accessible toilet

27          compartment are improperly configured and positioned."  The grab bars

28          are not the proper length, are not located the proper distance from the

1        side and rear walls, and do not extend as far as is required.

2    gg)    "The toilet seat cover dispenser in the men's restroom designated

3        accessible toilet compartment lacks proper clear floor space." The toilet

4        seat dispenser is located such that a wheelchair cannot approach it.

5    hh)    "The coat hook in the men's restroom designated accessible toilet

6        compartment is positioned too high." The coat hook is higher than 48

7        inches from the ground.

8    ii)    "The mirror, soap dispensers, and paper towel dispensers in the men's

9        restroom are positioned too high." The bottom edge of the reflective

10        portion of the mirror is located more than 40 inches from the ground,

11        and the operable parts of all dispensers exceeds 40 inches from the

12        ground.

13    Interrogatory No. 5:

14        For each feature of the PREMISES YOU contend violates DISABILITY ACCESS

15    LAWS, specify each statute, regulation and/or standard that YOU contend that feature violates.

16    Response to Interrogatory No. 5:

17        Plaintiff objects to this request on the grounds that it calls for an improper legal

18    conclusion. Without waiving the foregoing objection, Plaintiff responds that each and every

19    feature identified by him in paragraphs 10 and 11 violated Title III of the Americans with

20    Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA") as well as the California Unruh Civil

21    Rights Act, Cal. Civ. Code § 51, et seq. Plaintiff further responds that the following ADA

22    Accessibility Guidelines ("ADAAG") have been violated. Plaintiff notes that at this time, he

23    has not been able to re-inspect the property since alterations were allegedly made after his

24    consultant's December 2, 2014 inspection. Any alterations must comply with the 2010 ADA

25    Standards for Accessible Design ("2010 Standards") as well as the 2013 California Building

26    Code, but Plaintiff has no knowledge as to whether such alterations do, in fact, comply.

27    Likewise, any further changes must comply with the 2010 Standards and the applicable

28    California Building Code. Accordingly, Plaintiff will only identify the ADAAG violations

1  and, as appropriate, the California Building Code ("CBC") sections violated, that his
2  consultant identified during the December 2, 2014 inspection.  If Plaintiff is able to conduct a
3  further inspection of the subject property, he will supplement these responses either here or
4  through expert disclosures.

5       Plaintiff responds as follows regarding the allegations contained in paragraph 10; the
6  allegation is contained in quotes, followed by the regulation(s) violated:

7          a)    "Plaintiff parked in a designated accessible parking space at the Facility,
8  but found that his parked vehicle itself obstructed the ramp that led to
9  the sidewalk. It was difficult for Plaintiff to maneuver around his vehicle
10  to go up and down the ramp."  ADAAG §§ 4.3; 4.3.1; 4.3.2; 4.3.3; 4.3.4;
11  4.6; 4.6.2; 4.6.3.

12          b)    "The entrance to the restaurant was heavy and had a raised threshold.
13  This made it difficult for Plaintiff to open the door, and to keep it open
14  while he attempted to overcome the threshold."   ADAAG §§ 4.13.8;
15  4.5.2; CBC § 1133B.2.5.

16          c)    "Plaintiff needed to the use the restroom while visiting the Facility, but
17  the stall within the men's restroom lacked necessary wheelchair
18  clearances, and Plaintiff could not get his wheelchair into it. Plaintiff
19  required his grandson's assistance to make his way into the stall and
20  onto the toilet."  ADAAG §§ 4.22; 4.22.1; 4.22.2; 4.22.3; 4.22.4; 4.23.3.

21          d)    "The toilet inside of the stall lacked grab bars, further making it difficult
22  for Plaintiff to use the toilet."  ADAAG §§ 4.16.4; 4.26.2; 4.26.3.

23          e)    "The plumbing below the lavatory in the restroom was exposed, causing
24  Plaintiff to fear that he would burn his legs on the pipes." ADAAG §
25  4.24; 4.24.6.

26          f)    "The counter in the men's restroom lacked proper knee clearances,
27  making it difficult for Plaintiff to reach the soap dispenser."  ADAAG §
28  4.19.2; 4.24.3.

1        g)     "The hand dryer in the men's restroom was out of reach for Plaintiff due

2                to its height."  ADAAG §§ 4.2.5; 4.2.6; CBC § 1115B.8.3.

3        h)     "The men's restroom doorway lacked proper maneuvering clearances on

4                the inside of the restroom and Plaintiff became trapped when trying to

5                leave the restroom. Plaintiff had to call out his grandson to help him."

6                ADAAG § 4.13; 4.13.5; 4.13.6; 4.22; 4.22.1; 4.22.2; 4.22.3; 4.22.4;

7                4.23.3.

8        i)     "Plaintiff could not locate an accessible table and was forced to sit at a

9                table that was improperly configured, such that he could not pull his

10              wheelchair all the way up to the table. He was forced to sit at an

11              uncomfortable distance from the table for the duration of his meal."

12              ADAAG §§ 4.32; 4.32.1; 4.32.2; 4.32.3; 4.32.4.

13     Plaintiff responds as follows regarding the allegations contained in paragraph 11; the

14 allegation is contained in quotes, followed by the regulation violated:

15        a)    "A properly configured and identified accessible route of travel from the

16              public way to the designated accessible building entrance is not

17              provided."  ADAAG §§ 4.3; 4.3.2.

18        b)    "The exterior routes of travel contain excessive cross slopes."  ADAAG

19              §§ 4.3; 4.3.7.

20        c)    "The route of travel along the west entry walkway contains changes in

21              level that exceed the maximum allowable height." ADAAG §§ 4.3.8;

22              4.5.2; 4.5.4.

23        d)    "The route of travel from the designated accessible parking stall to the

24              entry walkway is excessively sloped and does not comply with the

25              requirements for a curb ramp."  ADAAG §§ 4.3.7; 4.3.8; 4.7.

26        e)    "Proper tow-away signage is not provided." CBC § 1129B.4.

27        f)    "The proper number of accessible parking stalls is not provided."

28              ADAAG §§ 4.1.2(5)(a)-(b); 4.6.1; 4.6.2.

g)  "No properly configured and identified van-accessible parking stall is provided." ADAAG §§ 4.1.2(5)(a)-(b); 4.3.6; 4.5; 4.6.1; 4.6.2.

h)  "The designated accessible parking stall and access aisle that are provided lack proper signage and pavement markings." ADAAG §§ 4.6.3; CBC § 1129B.4.

i)  "The designated accessible parking stall and access aisle that are provided contain cracked and uneven surfaces." ADAAG §§ 4.6.3; 4.3.6; 4.5

j)  "The main building entrance lacks a proper smooth surface on the bottom of the push side of the doors." CBC § 1133B.2.6.

k)  "The main building entrance threshold exceeds the maximum allowable height." ADAAG §§ 4.5.2; 4.13.8.

l)  "The north building entrance door requires excessive force to operate and its sweep speed is not properly adjusted." ADAAG 4.13.10; 4.13.11; CBC § 1133B.2.5.

m)  "The north building entrance lacks proper maneuvering clearances at the pull side of the door." ADAAG § 4.13.6.

n)  "The bench seating waiting area does not have a proper clear floor space for persons in wheelchairs located clear of the route of travel." ADAAG §§ 4.2.4.1; 4.2.4.2; 4.32.2.

o)  "A properly configured accessible portion of the transaction counter is not provided." ADAAG § 7.2(1)-(2).

p)  "Items and accessories provided on the transaction counter are not positioned within proper reach ranges." ADAAG §§ 4.2.5; 4.2.6.

q)  "Properly configured accessible seating spaces are not provided in the main dining area and are not properly distributed amongst the different types of seating offered at the Facility." ADAAG §§ 5.1-5.4.

r)  "No properly configured accessible seating spaces are provided in the

1    exterior dining area." ADAAG §§ 5.1-5.4; 4.32.1-4.32.4.

2    s)    "A properly configured accessible portion of the bar counter is not

3    provided and no accessible seating space is provided at the bar counter."

4    ADAAG §§ 4.1.3(18); 4.32.1-4.32.4; 5.2.

5    t)    "Routes of travel through the north dining area lack proper clear width."

6    ADAAG §§ 4.3.3; 5.3.

7    u)    "The raised platform within the bar/north dining area is not accessible

8    by way of platform lift or ramp." ADAAG §§ 5.7; 4.8; 4.11.

9    v)    "The floor mats throughout the public areas of the Facility are

10    unsecured." ADAAG § 4.5.3.

11    w)    "The passageway and doorway leading to the men's restroom lack

12    proper clear width." ADAAG § 4.13.5.

13    x)    "Proper signage is not provided at the entrance to the men's restroom."

14    CBC §§ 1115B.6-1115B.6.3.

15    y)    "The men's restroom lavatory lacks proper knee clearances." ADAAG

16    § 4.19.2.

17    z)    "The plumbing beneath the men's restroom lavatory is not properly

18    insulated." ADAAG § 4.24.6.

19    aa)    "The men's restroom urinals are positioned with the urinal rims and

20    flush controls too high." ADAAG §§ 4.18.2; 4.18.4.

21    bb)    "The men's restroom designated accessible toilet compartment door is

22    not self-closing." ADAAG § 4.22.4; CBC § 1115B.3.1(4.4).

23    cc)    "The men's restroom designated accessible toilet compartment lacks

24    proper door pull hardware." ADAAG §§ 4.13.9; 4.22.2.

25    dd)    "The men's restroom designated accessible toilet compartment lacks

26    proper turning clearances, maneuvering clearances, and clear floor

27    space." ADAAG §§ 4.2.3; 4.16.2; 4.17.3; 4.22.3;

28    ee)    "The toilet paper dispenser in the men's restroom designated accessible

1                        toilet compartment is improperly positioned." ADAAG § 4.16.6.

2         ff)    "The grab bars in the men's restroom designated accessible toilet

3               compartment are improperly configured and positioned." ADAAG §

4               4.16.4; 4.26; 4.17.6.

5         gg)   "The toilet seat cover dispenser in the men's restroom designated

6               accessible toilet compartment lacks proper clear floor space." ADAAG

7               §§ 4.22.3.

8         hh)   "The coat hook in the men's restroom designated accessible toilet

9               compartment is positioned too high." ADAAG §§ 4.22.3; 4.27; 4.2.5;

10              4.2.6.

11         ii)    "The mirror, soap dispensers, and paper towel dispensers in the men's

12              restroom are positioned too high." ADAAG §§ 4.22.3; 4.26; 4.2.5;

13              4.2.6; 4.19.6; CBC § 1115B.8.3.

14 Interrogatory No. 6:

15      State all facts to support YOUR allegation in Paragraph 30 of the COMPLAINT that

16 "Defendants violated the ADA by failing to make reasonable modifications in policies,

17 practices, or procedures at the Facility."

18 Response to Interrogatory No. 6:

19      Plaintiff objects to this request on the grounds that it is a premature contention

20 interrogatory. Discovery is still ongoing, and Plaintiff has not fully amassed information

21 which would be fully responsive to this request. Without waiving the foregoing objection,

22 Plaintiff responds that at the time of his visit to the subject property and continuing to the

23 present, Defendants have failed to make their restaurant accessible to him. Such accessibility

24 may require the modification of policies, practices and procedures. For example, Defendants

25 are required to provide accessible seating to Plaintiff. Defendants must take every reasonable

26 step to ensure that the seating remains available for disabled persons until all other seats are

27 occupied. Defendants must also take reasonable steps to ensure that accessible seating can be

28 identified by disabled individuals so that it can effectively be used by such patrons. Further,

1   Defendants are required to maintain their restaurant in an accessible condition, such as

2   restriping accessible parking, updating signage, regularly adjusting the operating pressure of

3   doors, monitoring the accessible routes (both interior and exterior) to ensure the minimum

4   widths are maintained, repairing accessible elements that become damaged and unusable,

5   ensuring that all self-service items are located within appropriate reach ranges (including items

6   displayed for only limited periods of time), and the like.  Defendants have not undertaken any

7   such efforts to accommodate Plaintiff.

8   Interrogatory No. 7:

9       Provide the name, address and phone number of the PERSON identified by YOU as

10  YOUR grandson in Paragraph 10(c) and 10(h) of the COMPLAINT.

11  Response to Interrogatory No. 7:

12      Plaintiff objects to providing this information on the grounds that Plaintiff's grandson is

13  a minor and disclosure of any contact information herein is therefore inappropriate.  Plaintiff

14  objects to any effort to depose or otherwise conduct discovery with regards to the grandson on

15  the grounds that he is a minor, and any information which could be provided by the grandson

16  may be obtained through other less intrusive means than through the child's testimony.

17  Interrogatory No. 8:

18      State all facts to support YOUR allegation in Paragraph 44 of the COMPLAINT that

19  "the Facility is a public accommodation constructed, altered, or repaired in a manner that

20  violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both)."

21  Response to Interrogatory No. 8:

22      Plaintiff objects to this interrogatory on the grounds that it is a premature contention

23  interrogatory.  Specifically, Plaintiff has requested this information of Defendants.  Defendants

24  are in possession of the construction and alteration history of their property.  To the extent any

25  alterations were done that do not comply with applicable California Building Code

26  requirements, Defendants violated Part 5.5 of the Health and Safety Code or Government Code

27  section 4450 (or both).

28

PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF
INTERROGATORIES

1  Interrogatory No. 9:

2      State all facts to support YOUR allegation in Paragraph 28 of the COMPLAINT that

3  "Defendants altered the Facility in a manner that violated the ADA and was not readily

4  accessible to the physically disabled – including Plaintiff – to the maximum extent feasible."

5  Response to Interrogatory No. 9:

6      Plaintiff objects to this interrogatory on the grounds that it is a premature contention

7  interrogatory.  Specifically, Plaintiff has requested this information of Defendants.  Defendants

8  are in possession of the construction and alteration history of their property.  To the extent any

9  alterations were done that do not comply with the new construction/alteration standards set

10  forth in the 1991 ADAAG and/or 2010 ADA Standards for Accessible Design (depending

11  upon the date of the alteration), Defendants have violated the ADA. Plaintiff objects to this

12  interrogatory on the grounds this information is within the possession of Defendants.

13  Interrogatory No. 10:

14      State all facts to support YOUR allegation in Paragraph 33 of the COMPLAINT that

15  the "Facility was designed and constructed (or both) after January 26, 1992."

16  Response to Interrogatory No. 10:

17      Plaintiff objects to this interrogatory on the grounds that it is a premature contention

18  interrogatory.  Plaintiff has requested this information from Defendants.  Plaintiff objects to

19  this interrogatory on the grounds this information is within the possession of Defendants.

20  Interrogatory No. 11:

21      State all facts to support YOUR allegation in paragraph 21 of the COMPLAINT that

22  defendants "can easily remove the architectural barriers at the Facility without much difficulty

23  or expense."

24  Response to Interrogatory No. 11:

25      Plaintiff objects to this interrogatory on the grounds that it is a premature contention

26  interrogatory.  Plaintiff further objects to this request on the grounds that it prematurely calls

27  for expert opinion, including the means for barrier removal, the estimated cost of barrier

28  removal, and an evaluation of Defendants' financial resources, all of which require expert

1  opinion.  Without waiving the foregoing objection, and subject to supplementation when expert

2  witnesses and their reports are disclosed, Plaintiff responds that most of the barriers identified

3  fall within those barriers identified by the ADA and its implementing regulations that are

4  presumptively readily achievable to remove, and that Defendants have the financial resources

5  to remove those barriers without causing any appreciable financial burden.  Plaintiff further

6  responds that Defendants were obligated to begin barrier removal from the time they took

7  ownership of, or begin operating, the subject restaurant, and therefore, the cost of barrier

8  removal must be evaluated in light of that continuing obligation.  The total cost of barrier

9  removal will be divided by the number of years Defendants have owned/operated the

10  Restaurant to determine whether Defendants could have, prior to the time of Plaintiff's visit,

11  made the property fully accessible to him.  In addition, there are IRS tax credits and deductions

12  which help offset the cost of barrier removal.  Further, it appears that Defendants have already

13  removed some of the identified barriers, establishing that barrier removal was in fact readily

14  achievable.  When viewed in light of these facts, barrier removal is easily accomplishable

15  without much difficulty or expense.

16  Interrogatory No. 12:

17       State all facts to support YOUR allegation in Paragraph 28 of the COMPLAINT that

18  defendants "altered the Facility in a manner that violated the ADA."

19  Response to Interrogatory No. 12:

20       Plaintiff objects to this interrogatory on the grounds that it is a premature contention

21  interrogatory.  Specifically, Plaintiff has requested this information of Defendants.  Defendants

22  are in possession of the construction and alteration history of their property.  To the extent any

23  alterations were done that do not comply with the new construction/alteration standards set

24  forth in the 1991 ADAAG and/or 2010 ADA Standards for Accessible Design (depending

25  upon the date of the alteration), Defendants have violated the ADA. Plaintiff objects to this

26  interrogatory on the grounds this information is within the possession of Defendants.

27  Interrogatory No. 13:

28       State all facts to support YOUR allegation in Paragraph 30 of the COMPLAINT that

1  defendants failed to make reasonable accommodations in policies, practices and procedures in

2  violation of the ADA.

3  Response to Interrogatory No. 13:

4       Plaintiff objects to this interrogatory on the grounds it is an exact restatement of

5  Interrogatory No. 6 and is therefore duplicative. Plaintiff incorporates his response to

6  Interrogatory No. 6 as though fully set forth herein.

7

8  Dated: June 10 , 2015                          MOORE LAW FIRM, P.C.

9

10                                               Tanya Moore
                                                 _____
11                                               Tanya E. Moore
                                                 Attorneys for Plaintiff
12                                               Ronald Moore

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES, and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct, and that this Verification was signed in Clovis, California on the date set forth below.

Dated: 6/10/15                    _Ronald Moore_

Ronald Moore

1          **PROOF OF SERVICE**

2          I am, and was at the time of service hereinafter mentioned, a citizen of the United States

3   and a resident of the County of Santa Clara.  I am over the age of 18 years and not a party to the

4   within action; my business address is 332 North Second Street, San Jose, California, 95112.

5          On June 10, 2015, I served the foregoing document entitled **PLAINTIFF'S FIRST**

6   **SUPPLEMENTAL      RESPONSES     TO     DEFENDANTS'     FIRST     SET     OF**

7   **INTERROGATORIES** for E.D. Cal. Case No. 1:14-cv-01067-SKO on the party(s) below as

8   follows:

9   Moji Saniefar, Esq.                          Attorneys for Defendants:
    SANIEFAR LAW                                 FATEMAH SANIEFAR dba ZLFRED'S;
10  533 Airport Boulevard, Suite 400             GHOLAMREZA SANIEFAR dba
    Burlingame, CA 94010                         ZLFRED'S; ZLFRED'S, INC., a California
11                                               corporation; ALIREZA SANIEFAR, Trustee
12                                               of the BOST TRUST

13         Following is the procedure in which service was effected:

14         **U.S. POSTAL SERVICE** – I placed a copy of said document in a sealed envelope

15  addressed to the party(s) at the address(es) listed above, with postage fully prepaid, for collection

16  and deposit in the United States mail at Moore Law Firm, P.C., 332 N. Second Street, San Jose,

17  CA  95112. I am familiar with the practice of Moore Law Firm, P.C., for the collection and

18  processing of correspondence for mailing with the United States Postal Service. In accordance

19  with the ordinary course of business, the above-mentioned document would have been picked up

20  from our offices by the U.S. Postal Service courier on the same day on which it was placed at

21  Moore Law Firm, P.C. for pickup.

22         I certify that I am employed in the office of a member of the bar of this Court at whose

23  direction the service was made.

24         I declare under penalty of perjury under the laws of the State of California that the

25  foregoing is true and correct.

26

27  Dated:  June 10, 2015                          _____

28                                                        Isaac Medrano

# EXHIBIT L

**Marejka Sacks <marejka@moorelawfirm.com>**                    8/20/2015 7:55 AM

# Moore v. Saniefar

To moji@saniefarlaw.com   Copy Tanya Moore <tanya@moorelawfirm.com> •
Whitney Law <whitney@moorelawfirm.com>

---

Dear Ms. Saniefar:

Attached please find Plaintiff's proposed Joint Report re Settlement.  Please redline any requested changes.
Once a final is agreed upon, we will format and file with the Court.  We look forward to your comments.  Thank
you.

Marejka

Marejka Sacks
Paralegal
Moore Law Firm, P.C.
332 North Second Street
San Jose, CA 95112
408.298.2000 x 2234
www.moorelawfirm.com

---

The preceding email message (including any attachments) contains information that may be confidential, protected
by attorney-client or other applicable privileges, or constitutes non-public information.  It is intended to be conveyed
only to the designated recipient(s).  If you are not an intended recipient of this message, please notify the sender by
replying to this message and then delete it from your system.  Use, dissemination, or reproduction of this message
by unintended recipients is not authorized and may be unlawful.

---

- Joint Status Report re Settlement v.1.docx (56 KB)

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone: (408) 298-2000
Facsimile: (408) 298-6046
Email: Tanya@moorelawfirm.com

Attorney for Plaintiff and Counter-Defendant,
Ronald Moore, and Counter-Defendants Kenneth Randolph Moore,
Geoshua Levinson, and West Coast CASp, a California corporation

MOJI SANEIFAR (SBN 233330)
SANIEFAR LAW
533 Airport Boulevard, Suite 400
Burlingame, CA 94010
Tel: (650) 401-2222
Fax: (650) 373-2002
Email: moji@saniefarlaw.com

Attorneys for Defendants and Counter-Claimants,
Fatemah Saniefar; Gholamreza Saniefar; Zlfred's, Inc., a California corporation; and
Alireza Saniefar, Trustee of the Bost Trust

## THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD MOORE,                              )    Case No.: 1:14-cv-01067-SKO-KJM
                                           )
            Plaintiff,                     )    **JOINT REPORT RE SETTLEMENT**
                                           )
       vs.                                 )
                                           )
FATEMAH SANIEFAR dba ZLFRED'S, et          )
al.                                        )
                                           )
            Defendants.                    )
                                           )
                                           )
_____        )
                                           )
AND RELATED COUNTER-CLAIM                  )
                                           )

1    Pursuant to the Court's July 24, 2015 Minute Order vacating all dates and requiring the

2    parties to engage in settlement discussions (Dkt. 48), Plaintiff and Counter-Defendant Ronald

3    Moore ("Plaintiff"), Counter-Defendants Kenneth Randolph Moore,  Geoshua Levinson and

4    West Coast CASp, a California corporation ("Counter-Defendants"), and Defendants and

5    Counter-Claimants Fatemah Saniefar; Gholamreza Saniefar; Zlfred's, Inc., a California

6    corporation; and Alireza Saniefar, Trustee of the Bost Trust ("Defendants," and together with

7    Plaintiff and Counter-Defendants, "the Parties") hereby file this Joint Report regarding the

8    outcome of settlement discussions.

9    **I.    Background**

10    This action was initiated by Plaintiff for alleged discrimination at a restaurant formerly

11    known as Zlfred's, and now known as Yem Kabob, located at 4030 North Blackstone Avenue

12    in Fresno, California (hereinafter referred to as the "Facility"). Plaintiff alleges that Defendants

13    violated Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189 ("ADA")

14    and related California law, and seeks damages, injunctive and declaratory relief, attorneys' fees,

15    and costs against Defendants. Plaintiff, who alleges that he uses a wheelchair for mobility,

16    alleges that he encountered barriers to his full and equal access to the Facility owned and

17    operated by Defendants. Plaintiff alleges that Defendants own and/or operate the Facility.

18    Defendants deny the above allegations regarding Plaintiff's disability, entitlement to

19    damages, injunctive and declaratory relief, attorneys' fees, and costs under the alleged causes of

20    action.  Defendants have also filed a counter-claim against Plaintiff and Counter-Defendants

21    alleging that Plaintiff and Counter-Defendants violated the Racketeer Influenced and Corrupt

22    Organizations Act ("RICO").

23    Plaintiff and Counter-Defendants filed a motion to dismiss the Counter-claim, which

24    hearing was set for August 26, 2015. Counter-Defendants also filed a declination to the

25    magistrate judge's jurisdiction, and the matter was therefore transferred to this Court.  The

26    hearing on Plaintiff's and Counter-Defendants' motion was vacated by the Court's order staying

27    the action and ordering the Parties to engage in settlement discussions.  Similarly, the discovery

28    cut-off in this action was July 15, 2015, and the last outstanding discovery – the deposition of

1  Geoshua Levinson – was scheduled for July 27, 2015 by agreement of the Parties. However, as

2  the matter was stayed by the Court on July 24, 2015, that deposition has not taken place.

3  **II.      Settlement Discussions**

4         On July 28, 2015, Plaintiff and Counter-Defendants sent a settlement letter containing

5  their detailed position on settlement, and outlining all the relief (both monetary and equitable)

6  sought by Plaintiff; the communication also included a proposed form of settlement agreement.

7  As part of the terms of settlement, Plaintiff and Counter-Defendants required that the counter-

8  claim be dismissed.

9         On August 19, 2015, Defendants responded that they would agree to no monetary or

10  equitable relief to Plaintiff, and would only dismiss the Counter-claim if Plaintiff and Counter-

11  Defendants agreed to a significant monetary settlement.

12         Unfortunately, the Parties wholly dispute liability. Defendants dispute that they have any

13  liability to Plaintiff, and are confident they will prevail under their RICO claim, entitling them

14  to a substantial monetary award. Likewise, Plaintiff and Counter-Defendants believe that

15  Defendants' RICO claim will fail as a matter of law, and that Plaintiff will prevail on his claims

16  under the ADA and related California law.

17         Accordingly, the Parties cannot make any further progress on settlement at this time.

18  **III.     Conclusion**

19         For the reasons set forth above, the Parties respectfully request that the Court vacate the

20  stay, and re-set a hearing date on Plaintiff's and Counter-Defendants' Motion to Dismiss. The

21  Parties also request that they be permitted to file an updated Joint Scheduling Report to propose

22  dates for 1) the last date to complete the deposition of Geoshua Levinson, 2) expert witness

23  disclosures and discovery deadlines, 3) dispositive motion filing deadlines, 4) the date of the

24  Settlement Conference; and 5) pre-trial and trial dates.

25

26  Dated: August ___, 2015                    MOORE LAW FIRM, P.C.

27

28  _____

JOINT REPORT RE SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tanya E. Moore
Attorneys for Plaintiff and Counter-Defendant
Ronald Moore, and Counter-Defendants
Kenneth Randolph Moore,  Geoshua Levinson,
and West Coast CASp, a  California corporation

SANIEFAR LAW


_____

Moji Saniefar
Attorneys for Defendants and Counter-
Claimants Fatemah Saniefar; Gholamreza
Saniefar; Zlfred's, Inc., a California
corporation; and Alireza Saniefar, Trustee of the
Bost Trust

# EXHIBIT M

**Marejka Sacks <marejka@moorelawfirm.com>**                                    2/11/2016 1:48 PM

# Moore v. Saniefar, et al.

To moji@saniefarlaw.com   Copy Tanya Moore <tanya@moorelawfirm.com> •
Whitney Law <whitney@moorelawfirm.com> • Isaac Medrano <isaac@moorelawfirm.com>

---

Dear Ms. Saniefar:

Attached please find Plaintiff's proposed Joint Status Report which must be filed no later than February 25.
Please redline any proposed changes and get them back to us sufficiently in advance of the deadline to allow us
to try to reach an agreement on any disputed issues.

Thank you.

Marejka


Marejka Sacks
Paralegal
Moore Law Firm, P.C.
332 North Second Street
San Jose, CA 95112
408.298.2000 x 2234
www.moorelawfirm.com

---

The preceding email message (including any attachments) contains information that may be confidential, protected
by attorney-client or other applicable privileges, or constitutes non-public information.  It is intended to be conveyed
only to the designated recipient(s).  If you are not an intended recipient of this message, please notify the sender by
replying to this message and then delete it from your system.  Use, dissemination, or reproduction of this message
by unintended recipients is not authorized and may be unlawful.

---

- Joint State Report.docx (58 KB)

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone: (408) 298-2000
Facsimile: (408) 298-6046
Email: Tanya@moorelawfirm.com

Attorney for Plaintiff and Counter-Defendant,
Ronald Moore, and Counter-Defendants Kenneth Randolph Moore,
Geoshua Levinson, and West Coast CASp, a California corporation

MOJI SANEIFAR (SBN 233330)
SANIEFAR LAW
533 Airport Boulevard, Suite 400
Burlingame, CA 94010
Tel: (650) 401-2222
Fax: (650) 373-2002
Email: moji@saniefarlaw.com

Attorneys for Defendants and Counter-Claimants,
Fatemah Saniefar; Gholamreza Saniefar; Zlfred's, Inc., a California corporation; and
Alireza Saniefar, Trustee of the Bost Trust

## THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>        Plaintiff,<br><br>    vs.<br><br>FATEMAH SANIEFAR dba ZLFRED'S, et al.<br><br>        Defendants.<br><br>―――――――――――――――――――<br>AND RELATED COUNTER-CLAIM | Case No.: 1:14-cv-01067-SKO-KJM<br><br>**JOINT STATUS REPORT**<br><br>Date:        March 3, 2016<br>Time:        2:30 p.m.<br>Courtroom:   3<br>Honorable Kimberly J. Mueller |

1    Plaintiff and Counter-Defendant Ronald Moore ("Plaintiff"), Counter-Defendants

2    Kenneth Randolph Moore, Geoshua Levinson and West Coast CASp, a California corporation

3    ("Counter-Defendants"), and Defendants and Counter-Claimants Fatemah Saniefar;

4    Gholamreza Saniefar; Zlfred's, Inc., a California corporation; and Alireza Saniefar, Trustee of

5    the Bost Trust ("Defendants," and together with Plaintiff and Counter-Defendants, "the

6    Parties") hereby file this Joint Status Report.

7    **A.    Background**

8    This action was initiated in July 2014 by Plaintiff for alleged discrimination at a

9    restaurant formerly known as Zlfred's, and now known as Yem Kabob, located at 4030 North

10   Blackstone Avenue in Fresno, California (hereinafter referred to as the "Facility"). Plaintiff

11   alleges that Defendants violated Title III of the Americans with Disabilities Act, 42 U.S.C. §§

12   12181-12189 ("ADA") and related California law, and seeks damages, injunctive and

13   declaratory relief, attorneys' fees, and costs against Defendants. Plaintiff, who alleges that he

14   uses a wheelchair for mobility, alleges that he encountered barriers to his full and equal access

15   to the Facility owned and operated by Defendants. Plaintiff alleges that Defendants own and/or

16   operate the Facility.

17   Defendants deny the above allegations regarding Plaintiff's disability, entitlement to

18   damages, injunctive and declaratory relief, attorneys' fees, and costs under the alleged causes of

19   action. In June 2015, Defendants filed a counter-claim against Plaintiff and Counter-Defendants

20   alleging that Plaintiff and Counter-Defendants violated the Racketeer Influenced and Corrupt

21   Organizations Act ("RICO").

22   Plaintiff and Counter-Defendants filed a motion to dismiss the Counter-claim in July

23   2015, and certain Counter-Defendants (who became parties as a result of the Counter-claim)

24   simultaneously filed a declination to proceed under the magistrate judge's jurisdiction. The

25   matter was therefore transferred from Magistrate Judge Sheila K. Oberto to this Court. Shortly

26   thereafter, this Court stayed the action, vacated all dates, and ordered that the parties engage in

27   settlement discussions (Dkt. 48).  After such discussions proved unproductive, the Court re-set

28

1   the motion to dismiss, which motion was heard on December 4, 2015. The Court's decision on

2   the motion to dismiss is pending.

3          Prior to the transfer of this action to this Court, the Parties had been operating under a

4   Scheduling Order, issued by Judge Oberto in November 2014 (Dkt. 22). As required by that

5   Scheduling Order, the Parties have completed all fact discovery save for one deposition, and

6   that deposition is currently set for March 4, 2016. The only remaining discovery to be

7   completed with regards to Plaintiff's complaint is expert discovery. And if Plaintiff's motion to

8   dismiss is not granted, then Defendants will seek additional fact discovery regarding their RICO

9   claim.

10  **B.     STATUS OF SERVICE DEFENDANTS**

11         All Defendants and Counter-Defendants have been served and have appeared (Counter-

12  Defendants have made a special appearance through their motion to dismiss).

13  **C.     JOINDER**

14         The Parties do not presently anticipate joining any other parties in this Action, but have

15  not yet commenced discovery and will reserve the issue in the event additional proper parties

16  are discovered.

17  **D.     AMENDMENT OF PLEADINGS**

18         The Parties do not anticipate any further amendments.

19  **E.     JURISDICTION AND VENUE.**

20         Original jurisdiction in this Court is appropriate pursuant to 28 U.S.C. §§ 1331 and 1343

21  for violations of the ADA.

22         Supplemental jurisdiction in this Court is appropriate under 28 U.S.C. § 1367.

23  Defendants note that supplemental jurisdiction is discretionary and need not be exercised if

24  Plaintiff's federal claim is dismissed.

25         Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b) and (c).

26  **F.     ANTICIPATED DISCOVERY AND DISCOVERY SCHEDULE**

27         As set forth above, all fact discovery with regards to Plaintiff's complaint has been

28  completed saved for one deposition set for March 4, 2016. The Parties are, however, still under

an ongoing obligation to supplement their discovery responses as required under the Federal Rules of Civil Procedure. The only remaining discovery is expert discovery. However, if Plaintiff's motion to dismiss the counter-claim is denied, Defendants request that fact discovery on the counter-claim only be extended for three months.  Accordingly, the Parties propose the following schedule:

Fact discovery cut-off on counter-claim only[1]:        June 3, 2016

Expert disclosures:                                     April 8, 2016

Rebuttal expert disclosures:                            April 15, 2016

Expert discovery:                                       May 31, 2016

**G.    ANTICIPATED MOTIONS**

Plaintiff anticipates that after expert discovery is completed, disposition of part or all of Plaintiff's claims will be appropriate via a motion for summary judgment/partial adjudication. Plaintiff requests that the last date for filing dispositive motions be August 5, 2016, such motion(s) to be heard on the first available Court date allowing for proper  notice under Local Rules.

**H.    PRE-TRIAL CONFERENCE AND TRIAL DATES**

The Parties propose a pre-trial conference be set in late November 2016 and that the trial be set for January 2017.

**I.    TRIAL**

Plaintiff estimates that a bench trial will take five (5) days. Defendants estimate two (2) days for a bench trial.

**J.    SPECIAL PROCEDURES**

The Parties do not believe that this matter is appropriate for any special references or procedures.

**K.    MODIFICATION OF PRETRIAL PROCEDURES**

The Parties do not request any such modification.

---

[1] In the event the Counter-claim is not dismissed.

**L.    RELATIONSHIP TO OTHER CASES**

This matter is not related to any other case.

**M.    SETTLEMENT PROCEDURES**

All settlement procedures have been exhausted. The Parties do not believe at this time that any further referrals for settlement purposes will be productive.  The Parties will continue to evaluate settlement opportunities as the litigation continues and will request the Court's assistance as appropriate.

**N.    ANY OTHER MATTERS**

The Parties are unaware of any other matters or actions which would result in the just, efficient and economical determination of the action. The Parties do not consent to the trial judge acting as the settlement judge.


Dated: February____, 2016                    MOORE LAW FIRM, P.C.


                                             _____
                                             Tanya E. Moore
                                             Attorney for Plaintiff and Counter-Defendant
                                             Ronald Moore, and Counter-Defendants
                                             Kenneth Randolph Moore,  Geoshua Levinson,
                                             and West Coast CASp, a  California corporation

                                             SANIEFAR LAW


                                             _____
                                             Moji Saniefar
                                             Attorney for Defendants and Counter-
                                             Claimants Fatemah Saniefar; Gholamreza
                                             Saniefar; Zlfred's, Inc., a California
                                             corporation; and Alireza Saniefar, Trustee of the
                                             Bost Trust

# EXHIBIT N

**Tanya Moore <tanya@mission.legal>**                                    6/20/2017 2:46 PM

# Moore v. Saniefar

To moji@saniefarlaw.com   Copy Marejka Sacks <marejka@mission.legal> •
Whitney Law <whitney@mission.legal> • David Guthrie <david@mission.legal>

---

Ms. Saniefar,

Our office is going to request an extension of time to serve the First Amended Complaint and Summons on
Alireza Saniefar, Trustee of the Bost Trust.  The court requires us to advise you of this action and to obtain your
response.  We are requesting the Court for an additional 45 days, until August 4, 2017 to effect service, or to
seek other means of service.  Will you stipulate to this extension of time to serve Alireza Saniefar?

Tanya Moore

The preceding email message (including any attachments) contains information that may be confidential, protected
by attorney-client or other applicable privileges, or constitutes non-public information.  It is intended to be conveyed
only to the designated recipient(s).  If you are not an intended recipient of this message, please notify the sender by
replying to this message and then delete it from your system.  Use, dissemination, or reproduction of this message
by unintended recipients is not authorized and may be unlawful.