| | |
|---|---|
| FATEMEH SANIEFAR, | 1:17-cv-00823-LJO-BAM |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER DENYING DEEFENDANTS' MOTION TO DISMISS** |
| v. | |
| RONALD D. MOORE, TANYA E. MOORE, KENNETH RANDOLPH MOORE, MAREJKA SACKS, ELMER LEROY FALK, ZACHARY M. BEST, MOORE LAW FIRM, a California Professional Corporation, MISSION LAW FIRM, a California Professional Corporation, GEOSHUA LEVINSON, RICK D. MOORE, WEST COAST CASP AND ADA SERVICES, a California Corporation, RONNY LORETO, and DOES 1 THROUGH 100, inclusive, | (ECF No. 42) |
| Defendants. | |

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

## I. INTRODUCTION

Plaintiff Fatemeh Saniefar ("Plaintiff" or "Saniefar") brings this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, against Defendants Ronald D. Moore, Tanya E. Moore, Kenneth Randolph ("Randy") Moore, Marejka Sacks, Elmer Leroy Falk, Zachary M. Best, Moore Law Firm, Mission Law Firm, Geoshua Levinson, Rick D. Moore, West Coast CASp and ADA Services ("West Coast CASp"), Ronny Loreto, and Does 1 to 100 (collectively, "Defendants"). Now before the Court is Defendants' joint motion to dismiss the First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6). This matter is now ripe for review and is suitable for disposition without oral argument. *See* Local Rule 230(g).

1

## II. BACKGROUND

**A.    Prior Federal ADA Action**

Plaintiff and her late husband owned Zlfred's, a restaurant located in Fresno, California. In July 2014, Ronald Moore filed an action against Plaintiff and others in federal court, alleging violations of the Americans with Disabilities Act ("ADA") and related state law claims ("Federal ADA Action") stemming from an alleged visit to Zlfred's. *Moore v. Saniefar*, No. 1:14-CV-01067-DAD-SKO (E.D. Cal.). Plaintiff filed a counter- and crossclaim against Ronald Moore, Randy Moore, the Moore Law Firm, Geoshua Levinson, and West Coast CASp for RICO violations. (ECF No. 42-3, Request for Judicial Notice ("RJN"), Ex. 1.) The counterclaim was dismissed without prejudice, but also without leave to amend until the Federal ADA Action concluded.[1] *Moore v. Saniefar*, No. 1:14-CV-01067-DAD-SKO, 2016 WL 2764768 (E.D. Cal. May 12, 2016). In March 2017, the court granted summary judgment in favor of Plaintiff Saniefar on the ADA claim. (RJN, Ex. 9.) The court declined to exercise jurisdiction over Ronald Moore's state law claims, and Ronald Moore filed a complaint in Fresno Superior Court against Plaintiff alleging a violation of the Unruh Act. That action is currently pending.

**B.    Factual Background[2]**

Plaintiff alleges that Defendants are each part of a criminal enterprise that uses fraudulent ADA actions, predicated on false allegations of disability, injury and standing, to collect quick settlements from California businesses and citizens. Plaintiff alleges that the scheme is accomplished through predicate acts of mail fraud and wire fraud.

Defendant Moore Law Firm is operated by Defendants Randy Moore and Tanya Moore, both of

---

[1] In so holding, the Court noted that the RICO counterclaim was not viable at that stage because the only damages it sought were in the form of attorney's fees for the ADA action. Although legal fees are available as RICO damages, the court noted that the "award is subject to one critical limitation: that the legal fees stem from prior legal disputes, and not the RICO lawsuit itself." *Moore v. Saniefar*, No. 1:14-CV-01067-DAD-SKO, 2016 WL 2764768, at *2 (E.D. Cal. May 12, 2016) (citing *Menjivar v. Trophy Props. IV DE, LLC*, No. 06-03086, 2006 WL 2884396, at *11-12 (N.D. Cal. Oct. 6, 2006)).

[2] Unless otherwise indicated, all factual allegations are drawn from the FAC (ECF No. 33).

2

whom are attorneys licensed to practice in the State of California. Defendants Randy and Tanya Moore are married, or were in the past. In about 2009, the Moore Law Firm began suing California businesses and residents under the ADA and related state laws. In total, the Moore Law Firm has filed over 1,400 ADA lawsuits since 2009. Defendant Ronald Moore is Defendant Randy Moore's brother, and has served as an ADA plaintiff in over 250 cases brought by the Moore Law Firm in the Eastern District of California. Defendant Marejka Sacks is a paralegal employed by the Moore Law Firm and Mission Law Firm who conducts many of the day to day activities of the firm, including preparing pleadings, engaging in meet-and-confer sessions with opposing counsel, preparing and submitting discovery responses, and so forth. The Complaint identifies Tanya Moore, Randy Moore, and Marejka Sacks as the leaders of the criminal enterprise.

Beginning in late 2015 to early 2016, when the Moore Law Firm started to gain regional and national notoriety and was sued by certain ADA plaintiffs for fraud and breach of contract, the assets of the Moore Law Firm were transferred to Defendant Mission Law Firm. Defendant Tanya Moore is the Secretary of the Mission Law Firm, and its employees and operations are largely the same as the Moore Law Firm. The Mission Law Firm is owned by LeRoy Falk, a licensed California attorney. Defendant Zak Best is a California attorney employed by the Mission Law Firm. It is alleged that the Mission Law Firm took over the Federal ADA Action and continued to prosecute it based on the knowingly false representations about Defendant Ronald Moore's disability and the barriers he allegedly faced at Zlfred's. It is further alleged that the Mission Law Firm continues to file ADA lawsuits based on fraudulent claims and misrepresentations, and to benefit financially for the sake of Defendants Falk and Best, among others.

Plaintiff alleges that Defendants' ADA cases were based primarily on two known falsities. First, Plaintiff alleges that frequent plaintiff Ronald Moore is not in fact disabled. Although Ronald Moore has averred in ADA lawsuits that he requires the use of a wheelchair for mobility, Plaintiff alleges that video surveillance of Ronald Moore from March 2015 to May 2015 shows him walking, kicking, hopping, and

3

bending without any support and without a wheelchair. Second, Plaintiff alleges that the Moore Law Firm and Mission Law Firm misrepresented that Ronald Moore and other ADA plaintiffs actually visited the entities that they sued and that they experienced barriers at those locations, which resulted in difficulty, discomfort, and embarrassment. For example, Plaintiff alleges that Moore never visited Zlfred's on April 14, 2014, contrary to Defendants' representation in the complaint in the Federal ADA Action. Plaintiff alleges that these misstatements were used to fabricate ADA plaintiffs' standing.

Defendant Ronny Loreto, Defendant Ronald Moore's grandson, is alleged to have visited many of the establishments sued by the Moore Law Firm and Mission Law Firm in lieu of his grandfather for the purpose of making purchases and collecting receipts to aid in the filing of ADA lawsuits on his grandfather's behalf. Plaintiff alleges that Ronny Loreto falsely testified about the facts and circumstances of Ronald Moore's visit to Zlfred's on April 14, 2014, which Plaintiff maintains never occurred. Plaintiff further alleges that Defendant Ronny Loreto falsely represented that he and his grandfather visited nine establishments on a single day, all of which were later sued by Defendants.

Geoshua Levinson, Tanya Moore's son, and Rick Moore, Randy Moore's nephew, are also alleged to have been involved in the fraudulent scheme through Defendant Levinson's corporation West Coast CASp. These Defendants are alleged to have conducted investigations of California establishments for the purpose of developing targets for the ADA lawsuits, then using the information collected to develop false allegations about the barriers encountered by ADA plaintiffs, even though Defendants knew that ADA plaintiffs had not visited the establishments and personally encountered such barriers.

**C.**     **The Instant Action**

Plaintiff filed this action on June 20, 2017. (ECF No. 1.) Defendants filed a motion to dismiss the original complaint on two grounds: (1) the suit was barred by the *Noerr-Pennington* doctrine, and (2) Plaintiff failed to state a claim under RICO. The Court dismissed the complaint with leave to amend, concluding that Plaintiff did not allege fraud with particularity sufficient to fall within the sham

4

litigation exception to *Noerr-Pennington* immunity. (ECF No. 29 ("December 1 Order").) The Court also concluded, in the alternative, that the RICO claim failed because Plaintiff did not sufficiently allege predicate acts of racketeering with the requisite particularity under Rule 9(b). (*Id.* at 16-18.) The Court declined to address the remainder of Defendants' arguments regarding the RICO claim. Plaintiff filed the FAC on January 3, 2018. Defendants move to dismiss the RICO claim in the FAC on three grounds: (1) the suit is barred by collateral estoppel; (2) the suit is barred because Defendants are immune from suit under the *Noerr-Pennington* doctrine; and (3) Plaintiff fails to state a claim under RICO. (ECF No. 42-1.) Plaintiff opposed the motion. (ECF No. 43.) Defendants submitted a reply. (ECF No. 44.) Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331, and venue is proper in this Court.

### III. **STANDARD OF DECISION**

Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting [the] fraud [.]" Fed. R. Civ. P. 9(b). This heightened pleading standard requires the party to do more than simply identify a transaction and allege in a conclusory manner that the transaction was fraudulent. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*. Rather, the party must set forth in detail "the who, what, when, where, and how" of the alleged fraudulent conduct. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The purpose of Rule 9(b) is to protect defendants

5

from factually baseless claims of fraud inasmuch as it is meant to give defendants notice of the claims asserted against them. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). When a party averring fraud fails to meet the heightened pleading standard of Rule 9(b), dismissal of the claim is proper. *See Vess*, 317 F.3d at 1107 ("A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim.").

## IV. DISCUSSION

### A. Allegations Regarding Ronald Moore's Personal Encounter With Barriers

Defendants contend that this Court held that "the *sole* bar to Defendants' *Noerr-Pennington* immunity is Saniefar's claim that Ronald Moore misrepresented his disability in the [Federal ADA] Action." (ECF No. 41 at 4.). As an initial matter, the Court did not conclude that the only viable allegation of misstatements that would bar the application of *Noerr-Pennington* immunity was Ronald Moore's alleged misstatement about his disability. On the contrary, the Court concluded that Plaintiff's allegations that Ronald Moore falsely averred that he visited the establishments that he sued and faced barriers there were sufficient to fall within the sham litigation exception to *Noerr-Pennington* immunity.

> If Moore's standing was fabricated in these ADA actions, so was the courts' jurisdiction. It is axiomatic that federal courts are courts of limited jurisdiction, and that their powers are defined by Article III of the Constitution. If the courts did not have jurisdiction to hear the ADA cases brought by Defendants, that undermines the legitimacy of the litigation. *See Feld Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 316 n.16 [D.D.C. 2012] (denying motion to dismiss where allegations that attorneys paid plaintiff to fabricate standing were sufficient to support inference that attorneys were participants in RICO enterprise).

(December 1 Order at 11.)

In their reply brief, apparently recognizing that they had misunderstood the Court's prior order, Defendants contend the Ninth Circuit declined to "create a bright-line predicate of a 'personal encounter' with a barrier to access as a requirement for standing under ADA Title III." (ECF No. 44 at

6

9-10 (citing *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Trust*, 867 F.3d 1093, 1099-1100 (9th Cir. 2017).) Therefore, Defendants argue, any misstatements by Ronald Moore about his visits to these establishments were immaterial. However, the *Hospitality Properties Trust* decision does not alter the crux of this Court's reasoning in the December 1 Order. The Ninth Circuit did not conclude in *Hospitality Properties Trust* that personal encounters with barriers are *not* relevant to the district court's analysis of standing. Rather, the Court concluded that the absence of personal encounters did not automatically deprive plaintiffs of standing. Plaintiffs must always demonstrate "(1) an 'injury in fact' suffered by the plaintiff; (2) a causal connection between that injury and the defendant's conduct; and (3) a likelihood that the injury will be 'redressed by a favorable decision.'" *Id.* at 1098 (citations omitted) (describing these three requirements as the "irreducible constitutional minimum of standing" (quotation marks omitted)). In the ADA context, injury can be demonstrated through a personal encounter with barriers. It can also be demonstrated, for example, if plaintiff makes concrete plans to visit an establishment and then discovers that they would be unable to accommodate his disability. *See id.* at 1098-1100.

Here, Plaintiff alleges that Defendants made fraudulent allegations of Ronald Moore's personal encounters with barriers in an effort to fabricate standing. If those allegations are true, they are certainly material, because if Ronald Moore did not have standing through his personal encounters with barriers he would have had to demonstrate injury and causation in some other way. *Id.* at 1099-100 ("The Named Plaintiffs have alleged in the First Amended Complaint that they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' noncompliance with the ADA . . . . Without such averments, they would lack standing"). In the December 1 Order, the Court did not conclude that Ronald Moore needed necessarily to have actually faced barriers to have standing to sue. Rather, the Court determined that making knowingly false allegations about having visited these establishments and encountered barriers would have been material to any determination of standing by the district court, and therefore would have undermined the legitimacy of the litigation. Because the misstatements were

7

material, the alleged false allegations fall within the sham litigation exception to the *Noerr-Pennington* doctrine.

**B.     Collateral Estoppel**

Defendants contend that the Ninth Circuit's affirmance of a district court order finding that there is no dispute of fact that Ronald Moore is disabled precludes Plaintiff's argument that Ronald Moore misstated his disability in the Federal ADA Action. *See Moore v. Millennium Acquisitions, LLC*, 708 F. App'x 485 (9th Cir. 2018) ("*Millennium* Action").

Collateral estoppel, or issue preclusion, "prevents a party from relitigating an issue decided in a previous action if four requirements are met: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action." *Kendall v. VISA U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008).

Here, the question is whether Saniefar is in privity with defendants in the *Millennium* Action. In *Taylor v. Sturgell*, 553 U.S. 880 (2008), the Supreme Court embraced a narrow concept of privity. The Court rejected the notion that claim preclusion could attach to similarly situated parties through "virtual representation." Instead, the Court held that for nonparty preclusion to attach, the parties must be same, unless the nonparty relationship falls within one of the six recognized exceptions:

1. The nonparty agrees to be bound by a prior judicial determination between other parties;

2. A substantive legal relationship exists that binds the nonparty;

3. The nonparty was adequately represented in the prior litigation by someone with the same interests who was a party;

4. The nonparty assumed control of the prior litigation;

5. The nonparty is the proxy or agent of a party to the prior litigation;

6. A special statutory scheme expressly forecloses subsequent litigation by the nonparty.

8

*Id.* at 893-95.[3] According to Defendants, Saniefar is in privity with the *Millennium* defendants because: 1) *Millennium* defendants used identical surveillance video obtained by Saniefar in connection with the Federal ADA Action in the *Millennium* Action; 2) *Millennium* defendants' counsel represented that the *Millennium* Action and the Federal ADA Action were "coordinated"; 3) counsel for the *Millennium* defendants co-represented Saniefar (along with Saniefar's counsel in this action) in the Federal ADA Action; and 4) Saniefar's use of evidence obtained in the *Millennium* Action in the Federal ADA Action. (ECF No. 42-1 at 4-5.) Defendants also assert that Saniefar's counsel does not deny her involvement in the *Millennium* Action as Saniefar's agent, and that counsel for the *Millennium* defendants has assisted Plaintiff's counsel in this action. (*Id.*) Plaintiff denies that the parties were coordinated as described by Defendants. (ECF No. 43 at 11-12.) However, even accepting Defendants assertions as true, none of those alleged links is sufficient for the application of nonparty preclusion.

In *Sturgell*, plaintiff, an antique airplane enthusiast, filed a lawsuit under the Freedom of Information Act ("FOIA") seeking certain documents from the Federal Aviation Administration. *Id.* at 885. Plaintiff's friend and "close associate" had previously brought an unsuccessful suit under FOIA seeking the same records and represented by the same attorney. *Id.* The Supreme Court concluded the judgment against plaintiff's friend did not bar plaintiff from maintaining his suit, where the men shared no legal relationship and where plaintiff did not finance or participate in his friend's lawsuit. *Id. at* 892-

---

[3]In their opening brief, Defendants analyze whether *Millennium* defendants and Saniefar were in privity using the framework set forth in *In re Schimmels*, 127 F.3d 875, 885 (9th Cir. 1997). In *Schimmels*, the Ninth Circuit held that privity should be determined on a case-by-case basis by analyzing the following factors:

> [1] participation by the precluded party in the prior proceeding through intervention, combined discovery, *amicus* submissions, presence of counsel at hearings, testifying as a witness, advising previous parties;
> [2] the extent of congruence between the legal interests and positions of the party to the earlier suit and those of the precluded party;
> [3] the quality of representation of the precluded party's interests;
> [4] the burdens relitigation poses on the judicial system; and
> [5] the cost and harassment that relitigation poses to the parties.

*Id.* (citations omitted). Although the *Schimmel* factors are relevant to the determination of whether preclusion can attach to a nonparty, the narrow exceptions to the rule against nonparty preclusion laid out by the Supreme Court in *Sturgell*, 553 U.S. at 893-95, are determinative here, and therefore the Court need not address the *Schimmels* factors.

93 ("The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" (internal citations omitted)).

Defendants contend that Plaintiff did participate in the *Millennium* Action such that preclusion should attach, arguing that the first, third, and fourth exceptions outlined in *Sturgell* apply here. First, Plaintiff argues that "Saniefar implicitly agreed to be bound by the determination of Ronald Moore's disability in the *Millennium* action." (ECF No. 44 at 5.) In support of that argument, Defendants offer an email from *Millenium* defendants counsel indicating that the parties had "coordinated." As Defendants, concede, this document is hearsay. (ECF No. 44-1.) Therefore, the Court will not consider it in connection with this motion. However, even if Saniefar and *Millennium* defendants did coordinate in the presentation of evidence on Ronald Moore's disability, that is not evidence that Saniefar agreed to be bound by the outcome of the *Millennium* Action. The first exception, by its very terms, applies to situations where the nonparty has *agreed* to be bound by the determination against the party. The examples offered in *Sturgell* involve situations where the parties openly stipulated to being bound by the outcome, such as a "test case" where the parties agree that the question of the defendant's liability will be definitively determined. *Id.* at 893-94. There is nothing in the record to suggest that Saniefar ever agreed to be bound by the determinations in the *Millennium* Action. The first exception to the general bar on nonparty preclusion outlined in *Sturgell* does not apply to this case.

Second, Defendants argue that Saniefar was adequately represented by the *Millennium* defendants and thus fall within the third exception laid out in *Sturgell*. This exception, however, is narrowly construed. *Id.* at 894 (noting that nonparties may be bound "in certain limited circumstances" where the nonparty was "adequately represented by someone with the same interests who was a party" (quotation marks and citation omitted)). The Court explained that preclusive effects could attach to nonparties in "properly conducted class actions" and suits "brought by trustees, guardians, and other fiduciaries." *Id.* The Court further indicated that representation is adequate "*only if, at a minimum* (1) The interests of the nonparty and her representative are aligned; and (2) either the party understood

10

herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Id.* (citations omitted) (emphasis added). Defendants argue that "[t]he *Millennium* defendants used video surveillance evidence Saniefar gave to them, and when they used it to contest Ronald Moore's disability, knew they were acting in a representative capacity on that issue." *Id.* Plaintiff's sharing of discovery with the *Millennium* defendants does not in any way suggest that she understood *Millennium* defendants represented her in that action. The Supreme Court determined that adequate representation allowed nonparty preclusion to attach only under much more narrow circumstances. Plaintiff and *Millennium* defendants were not part of the same class, nor were *Millennium* defendants acting as a fiduciary or trustee for her interests. *See Henry E. & Nancy Horton Bartels Tr. ex rel. Cornell Univ. v. United States*, 88 Fed. Cl. 105, 114 (2009) (plaintiff trust was not bound by judgment against similarly situated trust despite overlap in trustees and shares interests), *aff'd sub nom. Bartels Tr. ex rel. Cornell Univ. ex rel. Bartels v. United States*, 617 F.3d 1357 (Fed. Cir. 2010). There is no evidence that the *Millennium* court was acting to protect Plaintiff's interests in the way it would if she were the member of a class of plaintiffs. The third *Sturgell* exception does not apply to this case.

      Lastly, Defendants argue that Saniefar assumed control over the issue of Ronald Moore's disability in the *Millennium* Action. In *Sturgell*, the Court noted that a nonparty can be bound by the judgment of a party if the nonparty "assumed control" over the litigation and had "the opportunity to present proofs and arguments" such that the party has already "had his day in court." *Id.* at 895. Defendants assert that because the parties acknowledged that they coordinated on the issue of disputing Ronald Moore's disability, and that Saniefar provided *Millennium* defendants with the sole evidence used to dispute Ronald Moore's disability, Saniefar assumed control over that issue in the *Millennium* Action and should be barred by issue preclusion from raising it again here. Mere coordinated action between the parties, however, does not imply that Saniefar assumed control over the *Millennium* defendants' litigation. *See United States v. Bhatia*, 545 F.3d 757, 761 (9th Cir. 2008) ("To invoke

11

'control' as the basis for privity requires something beyond the cooperation and sharing of witness interviews"); *Benson and Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir. 1987) (concluding that it was not sufficient that the nonparty supplied an attorney or was represented by the same law firm, appeared as an amicus curiae, testified as a witness, participated in consolidated pretrial proceedings, undertook some limited presentations to the court, or otherwise participated in a limited way); *Haskell v. Whitaker for Estate of Vesta Ins. Grp., Inc.*, No. CV 09-G-0414-S, 2010 WL 11566502, at *7 (N.D. Ala. Nov. 4, 2010) ("coordinated actions" by defendants in separate suits was not sufficient to allege that one party had "assumed control over the . . . litigation to the degree required under the fourth *Taylor* category" (quotation marks omitted)). There is no evidence that Saniefar had the opportunity to present proofs and arguments on the issue of Ronald Moore's disability. At most, Defendants suggest that Saniefar provided relevant discovery to defendants in the *Millennium* Action. This is inadequate to demonstrate that Saniefar took control over the issue in that litigation. *See Sturgell*, 553 U.S. at 906 (noting that "[a] mere whiff of 'tactical maneuvering' will not suffice" and suggesting that a principal-agent relationship is generally required to show that the nonparty is bound by the prior adjudication). There is simply no evidence in the record to suggest that Saniefar has had her day in court on this on the issue of Ronald Moore's disability, and she is not precluded from arguing it in this case.[4]

**C.     *Noerr-Pennington* Immunity**

Defendants argue that they are immune from suit because the allegations in the FAC encompass petitioning activity that is protected by the First Amendment of the United States Constitution under the

---

[4] Although Plaintiff is not *precluded* from arguing that Ronald Moore is not disabled within the meaning of the ADA in this case, the Court notes that the district court's ruling in the *Millennium* Action that Ronald Moore is a disabled person within the meaning of the ADA is persuasive authority. Furthermore, in an unpublished memorandum, the Ninth Circuit affirmed the district court's finding regarding Moore's disability, concluding that there was "no material factual dispute that Moore is disabled within the meaning of the ADA." *Moore v. Millennium Acquisitions, LLC*, 708 F. App'x 485, 486 (9th Cir. 2018); *see also* Ninth Cir. Fed. R. App. P. 36-3(a) (explaining that unpublished dispositions are not precedent). If Plaintiff offers the same evidence at summary judgment to demonstrate that Ronald Moore is not disabled as did the defendants in the *Millennium* Action, the Court would be inclined to reach the same conclusion. *See Nat'l Coal Ass'n v. Hodel*, 675 F. Supp. 1231, 1243 & n.14 (D. Mont. 1987) (although issue preclusion did not attach because prior court's reasoning was not necessary to its finding, reasoning was persuasive and adopted), *aff'd sub nom. N. Plains Res. Council v. Lujan*, 874 F.2d 661 (9th Cir. 1989).

12

*Noerr-Pennington* doctrine. In the December 1 Order, the Court considered whether the allegations in the Complaint fell within the "sham litigation" exception to immunity for petitioning activity. (December 1 Order at 7.) Specifically, the Court considered whether Defendants' conduct in the Federal ADA Action "consist[ed] of making intentional misrepresentations to the court," such that their "knowing fraud upon, or [their] intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006) (internal citations and quotation marks omitted). Accepting well-pleaded allegations in the original complaint as true, the Court determined that Saniefar alleged that Defendants made knowing, material misrepresentations about Ronald Moore's disability and the barriers that he allegedly faced. However, the Court concluded that Saniefar did not allege mail fraud or wire fraud with particularity as required by Rule 9(b), and therefore that the activities as alleged did not fall within the sham litigation exception. (*Id.* at 16-17.) Implicitly, the Court also concluded that Plaintiff failed to allege adequately any predicate acts of RICO.

In the FAC, Plaintiff alleges mail fraud and wire fraud with greater specificity by detailing when, to whom, and in what manner the fraudulent statements were made. In their moving papers, Defendants do not argue that Plaintiffs fail to plead wire fraud and mail fraud with particularity in the FAC (i.e. that they fail to allege the time, place, or nature of the false statements as required to allege fraud with particularity). *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988). Defendants instead argue that the FAC does not adequately allege that Ronald Moore did in fact misrepresent his disability. They argue that Plaintiff only alleges that Ronald Moore misrepresented the *extent* of his disability. Defendants therefore contend that the allegations of fraud based on Ronald Moore's disability are not pleaded with sufficient particularity to fall within the sham litigation exception to the *Noerr-Pennington* immunity doctrine.

This argument was rejected by this Court in the December 1 Order, where the Court held that "[t]he Complaint provides ample allegations regarding how and why the statements were false, but insufficient detail regarding the context of the statements themselves." (December 1 Order at 19.) The

13

Court went on to note that "[a]lthough Plaintiff has alleged that Defendants made knowing, material misrepresentations to courts in ADA lawsuits that undermined the legitimacy of those cases, Plaintiff has not pleaded the time, place, and manner of those false statements as required to allege fraud with particularity." (*Id.*) By alleging predicate acts of wire and mail fraud with the particularity required by Rule 9(b), Plaintiff overcame the sole obstacle identified in the December 1 Order to pleading fraudulent litigation activity within the exception to *Noerr-Pennington* immunity. (*See, e.g.*, FAC ¶¶ 148-50, 158-66.) Defendants' contention that Plaintiff has not met that obligation is inconsistent with the Court's reasoning in the December 1 Order.

**D.     RICO Claim**

Defendants argue that Plaintiff's RICO claim fails because it does not allege the existence of an enterprise that is distinct from the individual Defendants, or "RICO persons."

Plaintiff alleges an associated-in-fact enterprise, which is defined as "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). "To establish the existence of such an enterprise, a plaintiff must provide both evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (internal quotation marks and citations omitted). RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact though not a legal entity." 18 U.S.C. § 1961(4). "[T]o establish liability under [RICO] one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Because corporations act only through their agents and employees, an enterprise consisting only of a corporation and its employees generally "would fail for lack of distinctiveness." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

However, in *King*, the Court concluded that an individual who was the president and sole shareholder of a corporation could be sued under RICO for conducting the affairs of his corporation, which was identified as the enterprise. As the Supreme Court explained, "[l]inguistically speaking, an employee who conducts the affairs of a corporation through illegal acts comes within the terms of a statute that forbids any 'person' unlawfully to conduct an 'enterprise,' particularly when the statute explicitly defines 'person' to include 'any individual . . . capable of holding a legal or beneficial interest in property,' and defines 'enterprise' to include a 'corporation.'" *Id.* at 163 (citations omitted). The Court therefore concluded that "the need for two distinct entities is satisfied . . . when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner – whether he conducts those affairs within the scope, or beyond the scope, of corporate authority." *Id.* at 166; *see also id.* at 163 ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that.").

Defendants contend that Plaintiff fails to allege an enterprise that is legally distinct from the RICO persons. According to Defendants, because the "Moore/Mission law firms are named as RICO Defendants (i.e. RICO persons), but the enterprise is simply these law firms plus its employees and agents," the distinctness requirement is not met. (ECF No. 42-1 at 22.)

Defendants' argument misconstrues the distinctness requirement. The Ninth Circuit has held that the association of separate corporations, or of individuals and law firms or corporations, for a common purpose of engaging in a course of conduct can constitute an enterprise. *See Odom*, 486 F.3d at 551-53 (holding the association of two separate corporations for a common purpose constituted an association-in-fact enterprise); *Living Designs, Inc.*, 431 F.3d at 361-62 (holding that a corporation, law firms retained by the corporation, and individual actors constituted an association-in-fact). The Ninth Circuit has also concluded that a corporate officer "is sufficiently distinct from the corporation for which he works such that a plaintiff can allege the officer as the RICO person and the corporation as the RICO

15

enterprise." *Moran v. Bromma*, 675 F. App'x 641, 645 (9th Cir. 2017) (citing *Cedric Kushner Promotions*, 533 U.S. at 163; *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992)).

Plaintiff alleges that the Moore Law Firm, Mission Law Firm, and West Coast CASp and various employees (and *non-employees*, such as RICO Defendant Ronald Moore) formed an enterprise that engaged in racketeering activity. The enterprise as alleged in the FAC is an amalgamation of these corporations and individuals – some of whom were employees or officers and some of whom were not. (*See* FAC ¶ 33.) As the December 1 Order explained, Plaintiff adequately alleges that each of these individuals – either acting through a corporation or individually – participated in the enterprise and engaged in racketeering activity. There is no doubt that an enterprise composed of individual Defendants and several corporations, associated for a common purpose in an enterprise, meets the distinctness requirement under the statute. *Living Designs, Inc.*, 431 F.3d at 361-62. Plaintiff has therefore alleged the existence of an associated-in-fact enterprise distinct from any individual RICO defendant.

## V. CONCLUSION AND ORDER

For the reasons stated above, Defendants' motion to dismiss the FAC (ECF No. 42) is DENIED.

IT IS SO ORDERED.

Dated: __**March 13, 2018**__  /s/ Lawrence J. O'Neill  
UNITED STATES CHIEF DISTRICT JUDGE

16