UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FATEMEH SANIEFAR,<br><br>Plaintiff,<br><br>v.<br><br>RONALD D. MOORE, TANYA E. MOORE, KENNETH RANDOLPH MOORE, MAREJKA SACKS, ELMER LEROY FALK, ZACHARY M. BEST, MOORE LAW FIRM, a California Professional Corporation, MISSION LAW FIRM, a California Professional Corporation, GEOSHUA LEVINSON, RICK D. MOORE, WEST COAST CASP AND ADA SERVICES, a California Corporation, RONNY LORETO, and DOES 1 THROUGH 100, inclusive,<br><br>Defendants. | 1:17-cv-00823-LJO-BAM<br><br>MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES AND GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO DEFENDANTS' COUNTERCLAIMS<br><br>(ECF Nos. 56, 57) |

## I. INTRODUCTION

Plaintiff Fatemeh Saniefar ("Plaintiff" or "Saniefar") brings this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, against Defendants Ronald D. Moore, Tanya E. Moore, Kenneth Randolph ("Randy") Moore, Marejka Sacks, Elmer Leroy Falk, Zachary M. Best, Moore Law Firm, Mission Law Firm, Geoshua Levinson, Rick D. Moore, West Coast CASp and ADA Services ("West Coast CASp"), Ronny Loreto, and Does 1 to 100 (collectively, "Defendants"). The First Amended Complaint ("FAC") alleges that Defendants participated in a RICO conspiracy to extort ADA settlements from small businesses. Defendants' motion to dismiss the FAC was denied. Plaintiffs filed an answer identifying certain affirmative defenses, and alleging counterclaims for retaliation under the ADA and the Unruh Act. Now before the Court are Plaintiff's

1

motion strike certain affirmative defenses, and motion for judgment on the pleadings with respect to the same counterclaims. This matter is now ripe for review and is suitable for disposition without oral argument. *See* Local Rule 230(g).

## II. BACKGROUND

### A. Prior Federal ADA Action

Plaintiff and her late husband owned Zlfred's, a restaurant located in Fresno, California. In July 2014, Ronald Moore filed an action against Plaintiff and others in federal court, alleging violations of the Americans with Disabilities Act ("ADA") and related state law claims ("Federal ADA Action") stemming from an alleged visit to Zlfred's. *Moore v. Saniefar*, No. 1:14-CV-01067-DAD-SKO (E.D. Cal.). The restaurant subsequently closed, and the court granted Plaintiff's motion for judgment on the pleadings as to the ADA claim on June 2, 2015, noting that "the fact that the Restaurant is no longer in operation extinguishes Plaintiff's claim for prospective injunctive relief against the owners and operators of the Restaurant under Title III of the ADA." *Moore v. Saniefar*, No. 1:14-CV-01067-SKO, 2015 WL 3487066, at *3 (E.D. Cal. June 2, 2015). The case proceeded on the state law claims. *Id.* Ultimately, the court declined to exercise jurisdiction over the state law claims, and Ronald Moore filed a complaint in Fresno Superior Court against Plaintiff alleging a violation of the Unruh Act. That action is currently pending.

### B. The Instant Action

Plaintiff filed this action on June 20, 2017, alleging that Defendants violated RICO by filing lawsuits based on false allegations against Zlfred's and other small businesses for the purpose of extorting settlements. (ECF Nos. 1, 33.) The crux of Plaintiff's allegations are that 1) ADA plaintiff Ronald Moore is not a disabled person, and that Defendants here made false statements about his disability in the underlying Federal ADA Action, and 2) that Ronald Moore and others falsely claimed that he actually visited Zlfred's and experienced barriers there when in fact he did not. The Court dismissed the original complaint with leave to amend (ECF No. 29), and Plaintiff filed the FAC on

2

January 3, 2018. Defendants moved to dismiss the RICO claim in the FAC on three grounds: (1) the suit is barred by collateral estoppel; (2) the suit is barred because Defendants are immune from suit under the *Noerr-Pennington* doctrine; and (3) Plaintiff fails to state a claim under RICO. (ECF No. 42-1.) The Court denied the motion. (ECF No. 46.) Defendants filed an answer asserting various affirmative defenses including failure to state a claim, statute of limitations, estoppel, laches, unclean hands, failure to mitigate, immunity, and waiver. (ECF No. 53.) Defendants also filed counterclaims alleging retaliation under the ADA and Unruh Act. Plaintiff now moves to strike three of Defendants' affirmative defenses (ECF No. 56) and moves for judgment on the pleadings as to Defendants' counterclaims for retaliation under the ADA and the Unruh Act (ECF No. 57).

**C.      Factual Basis for Counterclaims**

In their counterclaims, Defendants allege that Plaintiff "brought a RICO action with the intention of intimidating, threating, and interfering with [their] efforts enjoy the benefits conferred upon them by the ADA, and/or on account of [them] having aided or encouraged Ronald Moore (and other persons with disabilities) in the exercise and enjoyment of the rights granted by the ADA." ECF No. at 50-64 ("Counterclaim") ¶ 27. Defendants further allege that Plaintiff knew when she filed his RICO lawsuit that it was meritless, and that the entire action is merely an effort to "damage [Defendants] reputation within their communities and professional associations, as well as cost them significant amounts of money to defend" the lawsuit. *Id.* ¶ 28. According to the Counterclaims, despite extensive investigation and effort, Plaintiff has no evidence to support her claim that Ronald Moore is not disabled or that he did not visit Zlfred's as alleged in the FAC. *Id.* ¶¶ 35-36.

Defendants also allege that Plaintiff and her counsel worked with Fresno attorney Ty Kharazi to put the Moore Law Firm and attorney Tanya E. Moore "out of business." *Id.* ¶ 29. Their joint efforts allegedly include Saniefar paying for Mr. Kharazi to represent Ronald Moore's wife in divorce proceedings against Ronald Moore in an effort to sway her testimony, among other schemes. Pointing to statements that counsel for Plaintiff has made to the press, Defendants allege that Plaintiff and

3

Plaintiff's counsel are motivated not by a legitimate claim, but by a desire to punish, intimidate, coerce, and interfere with Defendants in an effort to prevent them from pursuing the rights promised by the ADA. *Id.* ¶¶ 44-46.

## III. STANDARD OF DECISION

### A. Motion To Strike

Federal Rule of Civil Procedure 12(f) provides that a court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded . . . . Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citing 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d, § 1382, pp. 706–07, 711 (1990)), *rev'd. on other grounds*, 510 U.S. 517 (1994). "Redundant" allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action. *Gilbert v. Eli Lilly Co., Inc.*, 56 F.R.D. 116, 121, n.4 (D.P.R.1972). Immaterial matter "is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *California Dep't of Toxic Substance Control v. ALCO Pacific, Inc.,* 217 F. Supp. 2d 1028, 1032 (C.D.Cal.2002) (internal citations and quotations omitted). The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial. *See Fogerty*, 984 F.2d at 1527; *Sidney–Vinstein v. A .H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

### B. Motion For Judgment On The Pleadings

Federal Rule of Civil Procedure 12(c) permits a party to seek judgment on the pleadings "[a]fter the pleadings are closed-but early enough not to delay trial." "A motion for judgment on the pleadings should be granted where it appears the moving party is entitled to judgment as a matter of law." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003). A "judgment on the pleadings is appropriate when, even if all allegations in the complaint are true, the moving party is entitled to judgment as a

4

matter of law." *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

"A judgment on the pleadings is a decision on the merits." *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1356 (9th Cir. 1990). A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam). "[T]he central issue is whether, in light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). "[A]ll allegations of fact of the opposing party are accepted as true." *Austad v. United States*, 386 F.2d 147, 149 (9th Cir. 1967). Thus, a motion for judgment on the pleadings under Rule 12(c) is "functionally identical" to a motion to dismiss under Rule 12(b)(6). *Dworkin v. Hustler Magazine*, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). Although Rule 12(c) does not mention leave to amend, courts have discretion to grant a Rule 12(c) motion with leave to amend. *See Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997).

## IV. DISCUSSION

**A.     Motion To Strike Affirmative Defenses**

Plaintiff moves to strike Defendants' first affirmative defense for failure to state a claim, fourth affirmative defense for res judicata/collateral estoppel, and tenth affirmative defense for *Noerr-Pennington* immunity on the grounds that the Court already rejected each of these arguments on legal grounds in its Order denying Defendants motion to dismiss.

**1.     First Affirmative Defense (Failure To State A Claim)**

Plaintiff argues that this defense should be stricken because the Court already determined that the Complaint states a claim, and because "failure to state a claim" is not an affirmative defense. Defendants concede that failure to state a claim is "technically" not an affirmative defense, but point out that district courts in this circuit have declined to strike an affirmative defense for failure to state a claim. (ECF No. 62 at 6 (citing *Hernandez v. Balakian*, No. CV-F-06-1383 OWW/DLB, 2007 WL

5

1649911 (E.D. Cal. 2007).)

In *Hernandez*, the court recognized that Federal Rule of Civil Procedure 12(h)(2) provides that a the defense of failure to state a claim may be made in any pleading permitted under Rule 7(a), which includes the answer setting out affirmative defenses. Therefore, under the plain interpretation of the rules, failure to state a claim can logically be pled in an answer. *Id.* at *2.

On the other hand, several courts have held that failure to state a claim is not an affirmative defense. *See Frazier v. City of Rancho Cordova*, No. 2:15-cv-00873-TLN-KJN, 2016 WL 374567 (E.D. Cal. Feb. 1, 2016) (collecting cases). Those courts have reasoned that failure to state a claim is more properly characterized as a defect in plaintiff's claim, not an affirmative defense. *See Vogel v. Huntington Oaks Del. Partners, LLC*, 291 F.R.D. 438, 442 (C.D. Cal. 2013); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("that [a] plaintiff has not met its burden of proof as to an element plaintiff is required to prove is not an affirmative defense").

The Court agrees with the reasoning in *Hernandez*, and concludes that failure to state a claim can be raised as an affirmative defense under a plain interpretation of the Federal Rules of Civil Procedure. More importantly, as the *Hernandez* court recognized, "'even when technically appropriate and well-founded, Rule 12(f) motions often are not granted in the absence of a showing of prejudice to the moving party.'" *Id.* at *1 (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1381 (3d ed.)); *see also Weddle v. Bayer AG Corp.,* No. 11-CV-817JLS (NLS), 2012 WL 1019824, at *4 (S.D. Cal. 2012) ("Denials that are improperly pled as defenses should not be stricken on that basis alone."). The Court not persuaded that Defendants' assertion of an affirmative defense for failure to state a claim prejudices Plaintiff. Therefore, even if the Court had concluded that the defense was improper, it would not have stricken it.

As to Plaintiff's contention that failure to state a claim was raised and rejected by this Court in its motion to dismiss order, the Court concludes that this is not an appropriate basis for striking the affirmative defense. As Defendants point out, in denying its motion to dismiss, the Court considered the

facts in the light most favorable to Plaintiff. The Court does not consider the facts in the light most favorable to Plaintiff in considering the instant motion to strike Defendants' affirmative defenses. Moreover, the Defendants' argument for dismissing the FAC for failure to state a claim was narrow, and did not encompass every possible deficiency in the FAC. It is inappropriate to strike an affirmative defense if any facts could be proved to support it. The defense of failure to state a claim is broad enough to encompass arguments that may rest on disputed facts.

Accordingly, the motion to strike the first affirmative defense for failure to state a claim is DENIED.

### 2. Fourth Affirmative Defense (Res Judicata/Collateral Estoppel)

Plaintiff moves to strike the fourth affirmative defense for res judicata/collateral estoppel on the grounds that the Court already rejected this defense in denying Defendants' motion to dismiss. As Defendants point out, the Court considered the facts in the light most favorable to Plaintiff and determined that the record was insufficient to establish the elements of collateral estoppel. The Court did not determine that Defendants' collateral estoppel argument was legally insufficient under any set of facts. Therefore, the motion to strike is DENIED.

### 3. Tenth Affirmative Defense (*Noerr-Pennington*)

Plaintiff moves to strike the fourth affirmative defense for *Noerr-Pennington* on the grounds that the Court already rejected this defense in denying Defendants' motion to dismiss. As with the affirmative defense for collateral estoppel, the Court's rejection of Defendants' *Noerr-Pennington* defense assumed the truth of Saniefar's allegations. The Court does not make that assumption in connection with this motion to strike. As noted, it is inappropriate to strike an affirmative defense if facts could be proved to support it. Defendants contend, and are entitled to try to establish, that they are entitled to *Noerr-Pennington* immunity. Accordingly, the motion to strike is DENIED.

**B.    Motion For Judgment On The Pleadings**

Plaintiff moves for judgment on the pleadings as to Defendants' two counterclaims for retaliation

7

under the ADA and the Unruh Act. Plaintiff makes five arguments for why judgment should be granted in their favor: 1) the ADA does not apply to Saniefar and therefore she cannot be subject to a retaliation claim under it; 2) even if the ADA does apply to Saniefar, Defendants do not adequately allege that Plaintiff acted to "coerce, intimidate, threaten, or interfere" under 42 U.S.C. § 12203(b); 3) Defendants' counterclaims are barred by statute of limitations; 4) the alleged retaliatory acts are protected First Amendment activity under the *Noerr-Pennington* doctrine; and 5) the California Anti-SLAPP statute protects the underlying conduct with respect to the conduct complained of in Defendants' Unruh Act counterclaim. (ECF No. 57.)

### 1. Liability for Retaliation/Coercion Under The ADA, 42 U.S.C. § 12203(b)

Defendants bring their retaliation claim pursuant to Subchapter IV of the ADA, 42 U.S.C. § 12203(b). Counterclaim ¶ 46. Plaintiff argues that she is entitled to judgment on the pleadings with respect to this counterclaim because she is not a covered person under Subchapter III[1] of the ADA since she no longer owns or operates a place of public accommodation. Therefore, Plaintiff argues, she is not subject to the retaliation provision of the ADA, which draws its remedies directly from that Subchapter. Defendants argue that Plaintiff's reading of the retaliation provision of the ADA is too narrow, and that it applies broadly to any person who retaliates in connection with an ADA claim, regardless of whether they are otherwise subject to the statute.

The ADA prohibits discrimination in three areas: employment (Subchapter I); public services (Subchapter II); and public accommodations (Subchapter III). Subchapter IV sets forth miscellaneous provisions. *See, e.g.*, 42 U.S.C. §§ 12202, 12205, 12203. The retaliation and coercion provisions appear in this "miscellaneous" subchapter and provide, in relevant part, that "[i]t shall be unlawful to

---

[1] The Court refers to the various sections of the ADA, sometimes referred to as "Titles," as "Subchapters." *See Van Hulle v. Pacific Telesis Corp.*, 124 F. Supp. 2d 642, 643 n.2 (N.D. Cal. 2000) ("The ADA initially was enacted as Public Law 101–336 and was organized into Titles I through V. When the ADA was codified as 42 U.S.C. § 12101, et seq., the 'Titles' were re-labeled as 'Subchapters.'").

8

coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b) (*emphasis added*).) The retaliation provision also outlines the remedies available to a claimant alleging retaliation or coercion by referring the claimant to the remedial sections of the appropriate subchapter. *See Stern v. Cal. State Archives*, 982 F. Supp. 690, 693 (E.D. Cal. 1997). "An aggrieved party who complains that a 'person' retaliated against him or her in the context of public accommodation is referred to Section 12188, the remedial provision for Subchapter III." *Id.* Under Subchapter III, the available remedy is injunctive relief. *See* 42 U.S.C. § 12188.

Plaintiff points out that Subchapter III applies only to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Plaintiff argues that because Plaintiff no longer operates a place of public accommodation, and is therefore no longer covered by Subchapter III, she cannot be liable for retaliation under the ADA.

In support of her argument, Plaintiff relies primarily on the analysis in *Van Hulle v. Pacific Telesis Corp.*, 124 F. Supp. 2d 642 (N.D. Cal. 2000). *Van Hulle* concluded that plaintiff could not maintain a retaliation claim against his group health plan insurance company, because the health plan was not a good or service offered by a place of public accommodation, and therefore the company was not covered by Subchapter III (or any other subchapter) of the ADA. *See id.* (noting that the alleged retaliation "did not occur with respect to employment, public services, or public accommodations, (as set forth in Subchapters I, II, and III of the ADA, respectively)."). Plaintiff argues based on that decision that Saniefar, who no longer operates a place of public accommodation, is not covered by Subchapter III and therefore cannot be the subject of a retaliation claim under 42 U.S.C. § 12203(b).

*Van Hulle* draws its reasoning from a line of cases concluding that a retaliation claim related to employment (Subchapter I) cannot be brought against individual defendants because there is no remedy against individuals under Subchapter I. *See Stern v. California State Archives*, 982 F. Supp. 690 (E.D.

9

Cal. 1997) (concluding that the only remedies available under the retaliation provision are those available in the Subchapter referred to because "[w]hen Congress has explicitly provided remedies, there is no need to imply remedies"); *Baird v. Rose,* 192 F.3d 462, 472 (4th Cir. 1999) ("Because Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions, the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA."); *Hiler v. Brown*, 177 F.3d 542, 545-46 (6th Cir. 1999) (plaintiff's argument that individuals could be sued for retaliation in employment context did not "account for the statutory framework of the Rehabilitation Act, which expressly provides that persons alleging retaliation under the Rehabilitation Act must look to the enforcement provisions of Title VII"); *see also Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1168-69 (11th Cir. 2003) ("That a statutory provision imposes such a duty . . . does not compel the further conclusion that individual[s] . . . are amenable to private suit or otherwise liable for a breach of that duty. For that, we must also examine the remedies created by the statute.").

This Court is only aware of one case to the contrary. In *Ostrach v. Regents of the Univ. of Cal.*, the court interpreted subsection (a) of the retaliation provision applying to "any person" to allow for suit of individual defendants in connection with Subchapter I, even though there is no remedy against individuals under Subchapter I. 957 F. Supp. 196 (E.D. Cal. 1997). The court reasoned that the "plain meaning" of the retaliation provision was to provide a remedy against individuals. In *Van Hulle*, the court noted that "virtually all other courts have disagreed with *Ostrach*, holding that the retaliation provision does not create individual liability in the employment context." 124 F. Supp. 2d at 645. In *Stern*, the court likewise concluded that *Ostrach* failed to take into account the full statutory structure, which "expressly provides . . . remedies for workplace retaliation claims." 982 F. Supp. at 694. The court agrees with the reasoning in *Stern*, *Van Hulle*, and other cases concluding that the retaliation and coercion provisions of § 12203 are curtailed by the remedies that would otherwise be available under the relevant provision of the ADA identified in the statute.

The Court is not aware of any case that has addressed the precise circumstance here – namely, whether an individual not amenable to suit under Subchapter III (public accommodations) of the ADA can still be subject to suit for retaliation. However, the reasoning drawn from the cases outlined above compels the conclusion that an individual not covered by the subchapter dictating the available remedies cannot be sued for retaliation or coercion under the ADA. Here, the remedies available for retaliation are those outlined under § 12188. Section 12188 in turn refers to the remedies available under 42 U.S.C. § 2000a-3. That statute provides for "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order." 42 U.S.C. § 2000e–3(a). However, those remedies are not available against persons not subject to Subchapter III of the ADA. *See Van Hulle*, 124 F. Supp. 2d at 646 ("a plaintiff cannot maintain an ADA retaliation claim against entities which are not otherwise subject to Subchapters I, II, and III of the ADA"). Subchapter III applies to persons who "own[], lease[] (or lease[] to), or operate[] a place of public accommodation." Plaintiff is not covered by or subject to Subchapter III, since it is undisputed that she no longer owns or operates Zlfred's. *See Moore v. Saniefar*, No. 1:14-CV-01067-SKO, 2015 WL 3487066, at *3 (E.D. Cal. June 2, 2015) ("the fact that the Restaurant is no longer in operation extinguishes [Moore's] claim for prospective injunctive relief against the owners and operators of the Restaurant under Title III of the ADA"). The alleged retaliation in this case is the filing of the instant lawsuit alleging a cause of action under RICO. This lawsuit was filed on June 20, 2017. At that point, Saniefar was not a covered person under Subchapter III of the ADA. Therefore, she cannot be sued for retaliation or coercion under the ADA.

To be clear, the Court does not conclude, as other courts have in connection with retaliation claims related to employment, that Plaintiff cannot be held liable for retaliation because she is an *individual*. *See Stern,* 982 F. Supp. at 692-93; *Albra v. Advan, Inc.*, 490 F.3d 826, 833-34 (11th Cir. 2007). Subchapter III does not expressly limit liability for individuals, and the Court would not conclude that Saniefar could not be subject to individual liability under § 12203 here if she were still

otherwise subject to the ADA. The problem here is that Saniefar cannot be an ADA defendant because she does not own or operate a place of public accommodation. Although the *reason* that remedies are inapplicable to Saniefar is different from the cases outlined above, the *reasoning* is the same. Defendants who are not otherwise subject to ADA remedies cannot be sued for retaliation under the ADA. *See Van Hulle*, 124 F. Supp. 2d at 646.

Defendants argue that interpreting the statute not to apply broadly to *any person* who retaliates in connection with an ADA claim regardless of whether they are otherwise subject to the ADA would produce an "absurd result." (ECF No. 65 at 8.) Defendants offer a hypothetical by way of illustration:

> What if, because of ADA litigation, restaurant owners were forced to close? If the now former restaurant owners decided to vandalize the ADA claimant's car in retaliation and to intimidate him (ignoring other criminal penalties), could they escape 12203(b) liability, because at the time they vandalized the car, they were no longer restaurant owners?

(ECF No. 65 at 8.) Plaintiff contends, in response to the questions posed by this hypothetical, that "the statute and common sense say no." (*Id.*) The Court disagrees. Although the Court is sympathetic to Defendants' point that the remedies available under the statute seem to undermine the broad language of the retaliation and coercion provisions themselves in this case, the Court cannot expand the scope of the remedies expressly outlined by Congress to solve the apparent puzzle. It may seem unfair to Defendants that the claimants whose cars were vandalized in this hypothetical situation could not file a retaliation claim under the ADA in connection with that activity. However, that apparent unfairness does not render the result absurd. As the court noted *Van Hulle*, "[t]he most reasonable inference to be drawn from the absence of a remedial provision is that Congress never intended to create a cause of action in such cases." 124 F. Supp. 2d at 646. The Court infers here that Congress did not intend to create a remedy for retaliation allegedly perpetrated by individuals not covered by Subchapter III.

Moreover, allowing individuals not covered by the statute to be subject to liability for retaliation under the ADA is a proposition without a logical endpoint. Could *anyone* – even someone with no connection to Plaintiff, Zlfred's, or any of the disputes between the parties to this lawsuit – be liable for

12

retaliation or coercive conduct taken against Defendants in connection with their claim? For example, what if someone with no connection to the action read about the lawsuit in the newspaper and decided to retaliate. Could that person be liable under the ADA? The answer to that question, under a reasonable reading of the statute, is no. The statute expressly offers remedies drawn from the respective subchapters of the ADA dealing with employment, public services, and public accommodations. Courts have interpreted those remedies to be limited by the scope of the subchapter to which the alleged retaliatory action is related. *See, e.g.*, *Van Hulle*, 124 F. Supp. 2d at 646; *Albra v. Advan, Inc.*, 490 F.3d at 833; *Stern*, 982 F. Supp. at 694. As an individual no longer covered by any of the subchapters of the ADA, there is no principled distinction under the statute between Plaintiff and a person reading about Defendants' ADA claims in the newspaper.[2] The remedies provided by Congress under 12203(b) are defined by statute, and Plaintiff falls outside the scope of individuals subject to those remedies. *See Stern*, 982 F. Supp. at 693-94.

For the reasons set forth above, the Court GRANTS judgment on the pleadings for Plaintiff as to the first counterclaim for retaliation under the ADA.

Defendants' counterclaim under the Unruh Act is predicated on the Unruh Act's incorporation of the ADA. Cal. Civ. Code § 51(f). The retaliation provision under the Unruh Act is coextensive with the retaliation provision under the ADA as it relates to public accommodations. Therefore, because Plaintiff is entitled to judgment on the ADA retaliation counterclaim, Defendants' counterclaim for retaliation under the Unruh Act also fails, and Plaintiff's motion for judgment on the pleadings as to the second counterclaim under the Unruh Act is likewise GRANTED.

Because the Court concludes that Plaintiff is entitled to judgment on the pleadings as to both counterclaims, it need not address the remaining arguments in favor of judgment on the pleadings.

---

[2] It is also worth noting that in the hypothetical situation posed by Defendants, the former restaurant owner would be subject to civil tort, and potentially criminal, liability for their outrageous activity. Retaliation under the ADA is certainly not the exclusive remedy available to address tortious or criminal conduct motivated by a desire to coerce or intimidate individuals bringing ADA claims.

13

# V. CONCLUSION AND ORDER

For the reasons stated above,

1. Plaintiff's motion to strike Defendants' affirmative defenses (ECF No. 56) is DENIED.
2. Plaintiff's motion for judgment on the pleadings as to Defendants' counterclaims (ECF No. 57) is GRANTED.

IT IS SO ORDERED.

Dated: **June 15, 2018**        /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE