1  MOJI SANIEFAR, Cal. Bar No. 233330
   SANIEFAR LAW
2  7469 Mission Street, 2nd Fl.
   Daly City, California 94014
3  Telephone: 650.581.0025
   moji@saniefarlaw.com
4
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
5  RAYMOND C. MARSHALL, Cal. Bar No. 83717
   GREGORY F. HURLEY, Cal. Bar No. 126791
6  WHITNEY A. HODGES, Cal Bar No. 273080
   650 Town Center Drive, 4th Floor
7  Costa Mesa, California 92626-1993
   Telephone: 714.513.5100
8  rmarshall@sheppardmullin.com
   ghurley@sheppardmullin.com
9  whodges@sheppardmullin.com

10 Attorneys for Plaintiff
   FATEMEH SANIEFAR

11
                    UNITED STATES DISTRICT COURT
12
                    EASTERN DISTRICT OF CALIFORNIA
13
   FATEMEH SANIEFAR,                    Case No. 1:17-cv-00823-LJO-BAM
14
                  Plaintiff,            Honorable Lawrence J. O'Neill
15
          v.
16                                      PLAINTIFF FATEMEH SANIEFAR'S
   RONALD D. MOORE, TANYA E. MOORE,     MEMORANDUM OF POINTS AND
17 KENNETH RANDOLPH MOORE,              AUTHORITIES IN SUPPORT OF MOTION
   MAREJKA SACKS, ELMER LEROY FALK,     FOR SANCTIONS AGAINST
18 ZACHARY M. BEST, MOORE LAW FIRM,     DEFENDANTS KENNETH RANDOLPH
   a California Professional Corporation, MOORE AND GEOSHUA LEVINSON FOR
19 MISSION LAW FIRM, a California       WITNESS TAMPERING AND CRIMINAL
   Professional Corporation, GEOSHUA    EAVESDROPPING
20 LEVINSON, RICK D. MOORE, WEST
   COAST CASP AND ADA SERVICES, a       Date:      May 21, 2019
21 California Corporation, RONNY LORETO, Time:      8:30 a.m.
   and DOES 1 THROUGH 100, inclusive,   Crtrm.:    4, 7th Fl.
22                                      Action Filed:   June 20, 2017
                  Defendants.          Trial Date:     May 5, 2020
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II.   STATEMENT OF RELEVANT FACTS .................................................................... 2

 A.  Statements Made Under Penalty of Perjury By Defendant Geoshua Levinson. ......................................................................................................... 2

 B.  Third Party Depositions Taken in This Case Where Defendants and Their Counsel Have Interfered With the Deponent. ............................................ 3

  1.  Deposition of Timothy McAdams. ............................................. 3

   a.  Obstruction of Justice, Witness Tampering and Criminal Eavesdropping. ................................................................ 3

   b.  Gordon Rees' Interference With the Testimony of a Percipient Witnesses. .......................................................... 5

  2.  Deposition of Celina Phillipson .................................................. 6

III.  LEGAL STANDARDS GOVERNING THIS MOTION .................................................. 7

IV.   ARGUMENT ............................................................................................................ 8

 A.  The Court Must Exercise Its Inherent Power to Administer Its Docket and the Parties Before It and Ensure That a Fraud is Not Perpetuated on the Court. .......................................................................................................... 8

  1.  Defendants Randy Moore and Geoshua Levinson Committed Federal and State Crimes When They Violated Witness Tampering Statutes ............................................................... 9

   a.  Defendants Randy Moore and Levinson Committed Criminal Violations of 18 U.S.C. 1512(b) and Cal. Penal Code § 136.1. .................................................... 9

   b.  Defendant Randy Moore Committed Criminal Eavesdropping in Violation of 18 U.S.C. § 2511 and Cal. Penal Code § 630, *et seq.* ................................................ 13

 B.  Plaintiff Requests the Court Grant Severe Sanctions Against Defendants Randy Moore and Geoshua Levinson. ............................................................ 16

  1.  If the Court Does Not Grant Terminating Sanctions at This Juncture, Then It Must Grant Preclusive or Issue Sanctions For Defendants Randy Moore's and Geoshua Levinson's Willfulness and Bad Faith. ........ 20

  2.  Monetary Sanctions are Further Required For the Costs in Bringing This Motion to Notify the Court of Defendant Randy Moore's and Geoshua Levinson's Conduct. .................................................. 20

C.  The Court has the Power and Must Refer Violations of Criminal Statutes to the Proper Authorities For Investigation and Prosecution ...................................... 21

D.  The Court Must Enjoin Defendants' Future Willful and Oppressive Conduct Against Saniefar and Her Counsel........................................................................ 22

E.  Plaintiff Is Entitled to an Adverse Inference. .......................................................... 22

F.  Defendant Randy Moore, a Licensed Attorney, Has Violated Rules of Professional Conduct and the Court Must Report Him to the California Bar.......... 23

G.  Defendants' Counsel's Conduct Implicates Adherence to California's Newly Enacted Rules of Professional Conduct Requiring Remedial Efforts. ......... 24

V.  CONCLUSION ............................................................................................................ 25

SMRH:490143242.4                    MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SANCTIONS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Cases</u>

4

*Adams v. Sumner*
    39 F.3d 933 (9th Cir. 1994) ................................................................................................ 14

5

*Aguirre v. Home Depot U.S.A., Inc.*
6
    2012 U.S. Dist. LEXIS 119984 ......................................................................................... 16

7

*Anheuser-Bush v. Natural Beverage Distributor<u>s</u>*
    69 F.3d 337 (9th Cir. 1995) ........................................................................................ 7, 16
8

9

*B.K.B. v. Maui Police Dep't*
    276 F.3d 1091 (9th Cir. 2002) .......................................................................................... 16

10

*Bonds v. District of Columbia*
11
    93 F.3d 801 (D.C. Cir. 1996) ............................................................................................ 16

12

*Burke v. Vose*
    847 F. Supp. 256 (D. R.I. 1993) ...................................................................................... 17
13

14

*Carlson v. Monaco Coach Corp.*
    2006 U.S. Dist. LEXIS 21464 (E.D. Cal. Apr. 20, 2006) ................................................. 16

15

*Chambers v. NASCO, Inc.*
16
    501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) ............................................ 7, 8, 16, 17

17

*Commodity Futures Trading Comm'n v. Noble Metals Int'l*
    67 F.3d 766 (9th Cir. 1995) .............................................................................................. 16
18

19

*E & J Gallo Winery v. EnCana Energy Servs.*
    2005 U.S. Dist. LEXIS 40143 (E.D. Cal. July 5, 2005) .................................................. 7, 9, 21

20

*Erickson v. Newmar Corp.*
21
    87 F.3d at 303 ............................................................................................................. 7, 21

22

*Fair Housing of Marin v. Combs*
    285 F.3d 899 (9th Cir. 2002) ........................................................................................... 16
23

24

*Fink v. Gomez*
    239 F.3d 989 (9th Cir. 2001) ............................................................................................. 7

25

*Flanagan v. Flanagan*
26
    27 Cal. 4th 766 (2002) ..................................................................................................... 15

27

*Gas-A-Tron of Ariz. v. Union Oil Co.*
    534 F.2d 1322 (9th Cir. 1976) ........................................................................................... 7

28

*Greenburg v. Roberts Props., Ltd.*
   2006 U.S. Dist. LEXIS 6776 (D. Arizona Feb. 16, 2006) ................................................ 9, 17

*Halaco Eng'g Co. v. Costle*
   843 F.2d 376 (9th Cir. 1988) ............................................................................................... 8

*HomeDirect, Inc. v. H.E.P. Direct, Inc.*
   2013 U.S. Dist. LEXIS 60450 (N.D. Ill. Apr. 29, 2013)..................................................... 18

*Ingenuity 13 LLC v. Doe*
   2013 U.S. Dist. LEXIS 64564 (C.D. Cal. May 6, 2013)...................................................... 21

*Innospan Corp. v. Intuit Inc.*
   2011 U.S. Dist. LEXIS 72848 (N.D. Cal. July 7, 2011) ...................................................... 20

*Konop v. Hawaiian Airlines, Inc.*
   302 F.3d 868 (9th Cir. 2002) ............................................................................................. 14

*Millenium Acquisitions, LLC, et al. v. Levinson, et al.*
   Case No. 15CECG01815.......................................................................................................... 3

*Moore v. Dollar Tree*
   Case No. 1:13-cv-01336-LJO-BAM .................................................................................. 19

*Moore v. Dollar Tree*
   Case No. Case No. 1:13-cv-01336-LJO-BAM ..............................................................12, 22

*In re Napster Inc. Copyright Litig.*
   462 F. Supp. 2d 1060 (N.D. Cal. 2006) ............................................................................. 16

*Negrete v. AMTRAK*
   547 F.3d 721 (7th Cir. 2008) ............................................................................................. 17

*Paul E. Iacono Structural Engineer, Inc. v. Humphrey*
   722 F.2d 435 (9th Cir. 1983) ............................................................................................. 23

*People v. Drennan*
   84 Cal. App. 4th 1349 (2000) ............................................................................................ 15

*People v. Pettie*
   16 Cal. App. 5th 23 (2017).................................................................................................. 10

*People* v. *Suite*
   101 Cal. App. 3d 680 (1980) .............................................................................................. 14

*People v. Wahidi* (2013)
   222 Cal. App. 4th 802 ......................................................................................................... 10

*Primus Auto Fin. Services v. Batarse*
   115 F.3d 644 (9th Cir. 1997) ............................................................................................... 8

*Quela v. Payco-Gen. Am. Credits, Inc.*
    2000 U.S. Dist. LEXIS 6932, 2000 WL 656681 (N.D. Ill. May 18, 2000) ............................ 17

*Ramirez v. T&H Lemont, Inc.*
    845 F.3d 772 (7th Cir. 2016) ...................................................................................7, 17, 18

*Ribas v. Clark* (1985)
    38 Cal. 3d 355 ............................................................................................................... 14

*Richmark Corp. v. Timber Falling Consultants, Inc.*
    730 F. Supp. 1525 (1990) ................................................................................................. 9

*Roadway Express, Inc. v. Piper*
    447 U.S. 752, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980) ..................................................... 7, 8

*Rogers* v. *Ulrich*
    52 Cal. App. 3d 894 (1975) ............................................................................................. 14

*Shepherd v. American Broadcasting Co.*
    62 F.3d 1469 (D.C. Cir. 1995) ...................................................................................... 8, 16

*Synergetics, Inc. v. Hurst*
    2007 U.S. Dist. LEXIS 61286 (E.D. Mo. Aug. 21, 2007) .........................................18, 22, 23

*Tavernetti* v. *Superior Court*
    22 Cal. 3d 187 (1978)...................................................................................................... 14

*Trone v. Smith*
    621 F.2d 994 (9th Cir. 1980) ............................................................................................ 7

*Ty Inc. v. Softbelly's Inc.*
    517 F.3d 494 (7th Cir. 2008) ......................................................................................18, 20

*United States v. Carona*
    660 F.3d 360 (9th Cir. 2011) ............................................................................................ 9

*United States v. Salazar*
    542 F.3d 139 (5th Cir. 2008) ............................................................................................ 9

*United States v. Wunsch*
    84 F.3d 1110 (9th Cir. 1996) .......................................................................................... 23

*Valley Engineers Inc. v. Electric Eng'g Co.*
    158 F.3d 1051 (9th Cir. 1998) ........................................................................................ 16

*Webb v. District of Columbia*
    146 F.3d 964 (D.C. Cir. 1998).......................................................................................... 16

*Young v. Office of the United States Senate Sergeant at Arms*
    217 F.R.D. 61 (D.D.C. 2003) .......................................................................................... 17

-iii-

*Youngevity Int'l v. Smith*
  2018 U.S. Dist. LEXIS 20373 (S.D. Cal. Feb. 6, 2018) ...............................21, 22, 23

<u>Statutes</u>

18 U.S.C.
  § 401 ........................................................................................................... 8
  § 1511 ....................................................................................................... 15
  § 1512(b) ...............................................................................9, 13, 15, 21
  § 1512(c) ..................................................................................................... 1
  § 2510(4) .................................................................................................. 13
  § 2511 ................................................................................................... 1, 13

ADA .............................................................................................3, 9, 12, 19, 20

Bus. & Prof. Code,
  §§ 6068, subd. (d), 6128 ...................................................................... 24
  § 6068, subd. (e) ..................................................................................... 24

Cal. Penal Code
  § 136.1 .....................................................................1, 9, 10, 15, 21
  § 136.1(a)(2) ...................................................................................9, 13
  § 630 .......................................................................................................... 14
  § 630, *et seq.* ....................................................................................13, 14
  § 631 .......................................................................................................... 14
  §§ 631 and 632 ................................................................................... 1, 15
  § 632 ..................................................................................................14, 15
  § 632(c) ..................................................................................................... 15

CIPA ..................................................................................................................... 14

Privacy Act ........................................................................................................ 14

RICO ....................................................................... 1, 2, 3, 9, 12, 13, 19

State Bar Act ...............................................................................................23, 24

<u>Other Authorities</u>

California Rule of Professional Conduct 3.3 .................................. 2, 24

California Rule of Professional Conduct 3.4 .................................. 2, 23

Fed. R. Civ. P. 37 ....................................................... 2, 7, 13, 16, 17, 18

Fed. R. Civ. P. 37(b)(2) ............................................................................ 16

Fed. R. Civ. P. 37(b)(2)(A)(v) ............................................................... 17

Fed. R. Civ. P. 37(b)(2)(A) (v) and (vi) ............................................. 18

Fed. R. Crim. P. 42 ..................................................................................................... 8

https://www.apps2.dgs.ca.gov/dsa/casp/casp_certified_list.aspx ..................................... 3

Local Rule 110.............................................................................................................. 8

Local Rule 184(a) ................................................................................................... 8, 23

1  **I.       INTRODUCTION AND SUMMARY OF ARGUMENT**

2          By way of this motion, Plaintiff seeks relief from the Court for Defendants' ongoing criminal

3  conduct —the same conduct in fact which gives rise to the instant RICO lawsuit —and which is

4  established by a recent series of unlawful acts committed by Defendants Kenneth Randolph Moore

5  ("Randy Moore") and Geoshua Levinson ("Levinson") which has prejudiced Plaintiff in prosecuting

6  this action and must be addressed with swift action by the Court.

7          On March 29, 2018, during the deposition of a witness, Timothy McAdams ("McAdams"),

8  Plaintiff learned that Defendants Randy Moore and Levinson engaged in criminal conduct by

9  tampering with McAdams' testimony and that Defendant Randy Moore further engaged in illegal

10 eavesdropping.  McAdams testified at deposition that Defendants Randy Moore and Levinson

11 attempted to influence his testimony by instructing him to make certain patently false statements to

12 Plaintiff's counsel during his deposition so as to avoid implicating them in the criminal enterprise

13 which forms the basis of the instant RICO case.  This is a crime under 18 U.S.C. § 1512(c) and Cal.

14 Penal Code § 136.1.   McAdams also testified that Defendant Randy Moore used interstate wire

15 services to intercept and eavesdrop on a phone call between McAdams and Plaintiff's counsel

16 without Plaintiff's counsel's knowledge or consent.  This too is a crime under 18 U.S.C. § 2511 and

17 Cal. Penal Code §§ 631 and 632.  McAdams testified that Defendant Randy Moore directed

18 McAdams to call Plaintiff's counsel and simultaneously transmit the call to him without Plaintiff's

19 counsel's knowledge or consent so he could prompt McAdams to ask Plaintiff's counsel's why she

20 was interested in his testimony and also to instruct McAdams on how to answer Plaintiff's counsel's

21 questions, if any, during the call.

22          Defendants' conduct is not only egregious and an attempt to influence the outcome of the

23 instant case, but it is unlawful.  Plaintiff seeks to have this Court issue appropriate and just sanctions

24 for the illegal, willful and bad faith conduct of Defendants Randy Moore and Levinson.  Plaintiff

25 further asks that the Court evaluate its jurisdiction to make a recommendation for investigation into

26 Defendants' conduct to the United States Attorney's Office and/or the Attorney General's Office.

27 Further, since Defendant Randy Moore is a licensed California attorney, Plaintiff also seeks to have

28 the Court evaluate its jurisdiction to refer his misconduct to the California State Bar for violations of

-1-

1   California Rule of Professional Conduct 3.4, Fairness to Opposing Party and Counsel, and Rule 8.4,

2   Misconduct since, unequivocally, he knew his actions were unlawful and violated his ethical

3   obligations as an attorney.  Finally and most critically, Plaintiff seeks to have the Court enjoin any

4   further obstruction of justice by Defendants.[1]

5        Due to a District Court's inherent authority to sanction misconduct in a proceeding before it

6   and pursuant to Federal Rule of Civil Procedure 37, this Court should sanction Defendants Randy

7   Moore and Levinson.  Their conduct was unequivocally sought to gain an unfair advantage in the

8   case and to prevent Plaintiff from proving her RICO case.  As discussed in detail below, Plaintiff has

9   been severely prejudiced, and will continue to suffer prejudice, if the Court does not grant the relief

10  Plaintiff respectfully requests including terminating sanctions as to Defendants Randy Moore and

11  Levinson, or, in the alternative, preclusive and monetary sanctions as a result of the criminal, willful

12  and bad faith conduct.

13  **II.     STATEMENT OF RELEVANT FACTS**

14  **A.     Statements Made Under Penalty of Perjury By Defendant Geoshua Levinson.**

15       On April 19, 2010, Defendant Levinson filed an application with the State of California,

16  Department of General Services, Division of State Architect ("DSA"), to obtain a license from the

17  State to become a Certified Access Specialist ("CASp").  (*See* Declaration of Moji Saniefar,

18  ("Saniefar Decl."), ¶ 4, Ex. A at 1).  One of the ways to fulfill the requirements for the CASp

19  application was to have at least four years of experience as a "superintendent with project

20  management oversight."  (*See id*, ¶ 5, Ex. B at 3).  On his application, Defendant Levinson stated he

21  was a "Superintendent/Project Manager" for Repair Wizards from April 2006 to April 2010.  (*See*

22  *id*).  Defendant Levinson made this certification under penalty of perjury:

23       I certify under penalty of perjury that I am the person indicated above, that I have
         read and understood this application form, and the information I have entered on this
24       application is true and complete to the best of my knowledge.

25

26  _____

27  [1]  Plaintiff believes it appropriate for the Court to issue a reminder to Defendants' counsel,
    Gordon Rees Scully Mansukhani ("Gordon Rees"), of its professional responsibility under the
    newly enacted California Rule of Professional Conduct 3.3, Candor Toward the Tribunal, which
28  requires Gordon Rees to take remedial measures for their client's illegal conduct, including, if
    necessary, withdrawal.

1   (*See id*. at 4).

2  In her RICO complaint ("FAC"), Plaintiff alleges, in part, the following:

3   94. On September 23, 2015, Defendant Levinson provided a signed declaration in
    *Millenium Acquisitions, LLC, et al. v. Levinson, et al*., Case No. 15CECG01815, filed
4   in Fresno Superior Court, which contained testimony regarding his experience
    helping California businesses comply with accessibility laws. In that declaration,
5   Defendant Levinson falsely stated that he had performed CASp inspections for
    California businesses, when, in fact, his primary, if not sole, operations consisted of
6   working for Defendant Moore Law Firm and assisting it in the filing of false ADA
    complaints. [...]

7
8   96. Plaintiff is informed and believes, and thereon alleges, that although Defendant
    Levinson has a legal and ethical responsibility to California businesses and residents
    based on his CASp certification with the State of California, (and indeed holds
9   himself out in the public eye as a certified California CASp), his loyalty is to the
    criminal enterprise complained of herein. By being a licensed CASp through the state
10  of California, Plaintiff is informed and believes, and thereon alleges, that Defendant
    Levinson and Defendant West Coast CASp have sought and agreed to be listed on the
11  State of California, Division of the State Architect website found at
    https://www.apps2.dgs.ca.gov/dsa/casp/casp_certified_list.aspx as a certified access
12  specialist for consumers looking to hire an expert regarding disability access. *See*
    **Exhibit C**, attached hereto.

13
14  97. The false advertising included in Defendant West Coast CASp's website as
    described in Paragraph 92 above and the information offered to the public by on the
15  State of California's website as described in Paragraph 96, has been made available
    through the internet to the public throughout the United States. However, the public
16  has no way of knowing that Defendants Levinson and West Coast CASP are affiliated
    with Defendants Ronald Moore, Tanya Moore, Best, Sacks, Randy Moore, Mission
17  Law and Moore Law through viewing the information available on the internet, and,
    in fact, are led to believe that they are contacting a professional with integrity who
    will assist them in defending themselves from the racketeering Enterprise alleged
18  herein.

19  *See* Docket. No. 33 at 121-122.

20  **B.** **Third Party Depositions Taken in This Case Where Defendants and Their Counsel**
       **Have Interfered With the Deponent.**

21
22    **1.**  **Deposition of Timothy McAdams.**

23      **a.**  **Obstruction of Justice, Witness Tampering and Criminal**
          **Eavesdropping.**

24    On March 29, 2019, Plaintiff's counsel took the deposition of Timothy McAdams in Tampa,

25  Florida, an individual who had been previously associated with Defendants Randy Moore and

26  Levinson.  (Saniefar Decl. ¶ 7, Ex. D)  Several years prior to the circumstances at issue in this RICO

27  litigation, McAdams was represented by Defendant Randy Moore in unrelated matters.  (*Id*. at 12:4-

28  13:13).  At his deposition on March 29, 2019, McAdams was represented by his own counsel, Zala

1    Forizs.  (*Id.* at 2).  Mr. Inouye appeared on behalf of Defendants.  (*Id.*)

2         McAdams testified that when he received a Federal subpoena on March 8, 2019 to appear

3    for a deposition he called Defendant Randy Moore.  (Saniefar Decl., Ex. D, 17:23-19:11; 41:7-9).

4    McAdams testified that Defendant Randy Moore told him that he "[did not] have to remember

5    things" at the deposition.  (*Id.* at 28:12-21).  McAdams also testified that both Defendants Randy

6    Moore and Levinson "encouraged [him] not to remember," when answering questions at deposition.

7    (*Id.* at 28:12-21; 30:9-15).  McAdams further testified that Defendant Randy Moore instructed

8    McAdams to call counsel for Plaintiff, Moji Saniefar, and to simultaneously place him on the call.

9    (*Id.* at 19:25-20:18).  Counsel for Plaintiff, who was in California, did not know Defendant Randy

10   Moore was also on the call between her and McAdams (who was in Florida).  (*Id.*, ¶ 9).  McAdams

11   testified that during this call on March 8, 2019, Defendant Randy Moore was simultaneously

12   texting McAdams providing instructions on what to say to Plaintiff's counsel.  (*Id.*, ¶ 7, Ex. D at

13   30:7-14; 32:7-14; 34:4-35:17).  Some of the responses suggested by Defendant Moore to McAdams

14   in the texts include:

15       • What do you want?
         • What's this about?
16       • Am I talking only with you now?
         • Stop talking
17       • Why are you asking?
         • Why are you calling?
18       • Stop answering
         • Stop
19       • I have nothing to tell you
         • I don't know anything.
20       • Yes project manager
         • I know nothing
21       • Prefer you to leave me alone
         • What are you trying to do?
22       • Why significant?
         • What do I have to do with anything?
23       • I don't want to
         • I don't have anything to give you
24       • You seem to be harassing me
         • You need to leave me alone
25       • Tell me what you are after

26   (*Id.*, ¶¶ 7-8, Ex. D at 34:13-35:17; Ex. E at 2-9).

27        McAdams further testified that Defendant Randy Moore texted him with Defendant

28   Levinson's phone number and soon after, McAdams called Defendant Levinson also on March 8,

-4-

1   2019 at or around the time of his call to Plaintiff's counsel. (*Id.*, ¶¶ 7-8; Ex. D at 21:16-23; 23:11-

2   13; 26:1-7; Ex. E at 1). McAdams asked Defendant Levinson, "What the hell is this about?" to

3   which Defendant Levinson stated "something about working for me" and sent a "picture of a piece

4   of document." (Saniefar Decl., ¶ 7; Ex. D at 22:4-23) ("It was only a snippet of a document – with

5   something circled."). The document Defendant Levinson texted was a picture of his CASp

6   application to the DSA in April 2010 under the penalty of perjury which stated he was a

7   "Superintendent/Project Manager" with "Repair Wizards" from "2006 to 2010." (*Id.*, ¶ 8, Ex. E at 1,

8   Ex. 2 to Deposition of McAdams; compare Saniefar Decl. ¶ 8, Ex. E at 1 with Ex. B at 3). One of

9   the text messages that Defendant Randy Moore sent to McAdams at the time of his March 8, 2019

10  call with Plaintiff's counsel also referred to the term "project manager." (*Id.*, ¶ 8; Ex. E at 5).

11  McAdams testified that there was nothing on the document that was submitted by Defendant

12  Levinson that he recognized. (*Id.*, ¶ 7; Ex. D at 24:15-16).

13      On March 10, 2019, McAdams called Defendant Randy Moore to ask again about what was

14  going on wherein Defendant Randy Moore was "encouraging" McAdams not to remember things.

15  (*Id.* at 27:23-24; 28:12-15). McAdams further testified that there were additional calls with

16  Defendant Levinson wherein he told McAdams, "You don't have to answer any questions at all.

17  You can just sit there and be stupid." (*Id.* at 27:3-16). McAdams further testified that Defendant

18  Levinson encouraged him not to remember. (*Id.* at 28:18-21). McAdams testified that the last call

19  he had with Defendant Levinson took place two nights before McAdams' deposition, wherein

20  Defendant Levinson stated "Oh, by the way you haven't talked to Randy since before January."

21  (*Id.* at 29:6-10). McAdams told Defendant Levinson he would not lie at the deposition and hung up

22  on him. (*Id.* at 29:18-24). Soon after, McAdams retained an attorney. (*Id.* at 30:15).

23      McAdams testified Defendant Levinson has never worked for him as a project manager for

24  Repaid Wizards. (*Id.* at 36:3-4; 36:20-22; 40:4-13; 44:9-13; 64:1-8). In fact, McAdams testified

25  Levinson was "just a kid" that would run small errands for him now and then and that he was never

26  employed by Repair Wizards. (*Id.* at 64:1-8) McAdams believed Defendant Levinson worked for

27  his parents, Defendants Randy and Tanya Moore. (*Id.* at 40:11-13).

28          **b.    Gordon Rees' Interference With the Testimony of a Percipient**

-5-

1    **Witnesses.**

2    At the deposition of Timothy McAdams, McAdams was represented by his own counsel,

3    Zala Forizs.  (Saniefar Decl., Exh. D, p. 2).  When McAdams was about to provide testimony

4    regarding his communications with Defendant Randy Moore that took place a couple of nights prior

5    to his deposition, Inouye objected and instructed the witness that he did not have to answer based

6    on attorney-client privilege.  (*Id.* at 13:23-14:1).  McAdams took a break with his attorney to

7    discuss the objection and, upon returning, McAdams was prepared to answer.  However, Inouye

8    again objected when McAdams was about to disclose his communications with Defendant Randy

9    Moore.  (*Id.* at 15:9; 16:13-17:9).  McAdams expressed confusion about Inouye's objection and

10   instruction.  (*Id.* at 17:17-20).  However, Forizs instructed his client to answer.  (*Id.* at 17:17-20).

11   McAdams, relying on the advice of his counsel, began to disclose the information described above.

12   In cross-examination, Inouye did not ask any questions regarding the conversations between

13   McAdams and Defendants Randy Moore and Levinson since he clearly believed this would hurt his

14   case.  (*Id.* at 45:1-66:23).  Instead, Inouye spent the bulk of his cross-examination attempting to

15   discredit McAdams by exploiting his medical conditions, memory of events dating back 15 years

16   and repeatedly asking the same question with different variations in an attempt to confuse the

17   witness (*Id.* at 59:3-10).  The witness remained steadfast in his testimony.  Inouye has

18   unequivocally been aware of his clients' illegal conduct since at least March 29, 2019, and yet, to

19   date, Inouye has failed to take a single action to remedy it including engaging in meet and confer

20   efforts with Plaintiff to ensure no prejudice and/or unfair advantage has been gained by his client's

21   illegal conduct and discussing what, if any, remedies Plaintiff sought necessary to ensure no such

22   future conduct occurs.  (*Id.* at ¶ 11).

23   **2.     Deposition of Celina Phillipson**

24   On November 27, 2018, Plaintiff's counsel took the deposition of third party witness Celina

25   Phillipson.  (Saniefar Decl. ¶ 6, Ex. C, Phillipson Deposition Transcript).  Phillipson testified she is

26   the ex-girlfriend and ex-business associate of Defendant Levinson and current business associate of

27   Defendants Tanya Moore and Mission Law Firm through her company Toxic Research Institute.

28   (*Id.* at 20:6-9; 21:9-14; 26:11-15; 29:6-19; 106:11-15; 107:24-108:17).  Through her company,

-6-

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SANCTIONS

1   Phillipson provides Proposition 65 consultation for litigation filed by Defendant Tanya Moore on

2   behalf of Defendant Tanya Moore's husband (or ex-husband), Defendant Randy Moore's company,

3   Safe Products for Californians LLC which serves as the plaintiff in Defendant Mission Law Firm's

4   Proposition 65 cases.  (Request for Judicial Notice filed herewith ("RJN"), Ex. A).

5       At the deposition of Celina Phillipson, Inouye instructed Phillipson not to answer certain

6   questions citing attorney-client privilege, although Inouye admitted he did not represent Phillipson,

7   nor the persons about whom questions were being asked.  (Saniefar Decl., ¶ 6, Ex. C at 88:8-89:24;

8   95:3-96:16).  In hindsight, it seems apparent that the sole basis of Inouye's objections was to

9   prevent her from giving similar testimony as McAdams – that, in fact, Defendants had instructed

10  her on what to say and when to say nothing at all.

11  **III.**     **LEGAL STANDARDS GOVERNING THIS MOTION**

12      The power of federal judges to impose sanctions for misconduct is broad.  *Gas-A-Tron of*

13  *Ariz. v. Union Oil Co.*, 534 F.2d 1322 (9th Cir. 1976).  District judges have an "arsenal of

14  sanctions" they can impose for unethical behavior, including monetary sanctions, contempt,

15  dismissal and disqualification of counsel.  *See id.; Erickson v. Newmar Corp.*, 87 F.3d at 303.

16  Under the court's inherent authority, sanctions may be imposed on an attorney or a party.  *See*

17  *Roadway Express*, 447 U.S. at 766.  Sanctions are derived from several sources: federal statutes

18  (including procedural rules), Local Rules, and the District Court's inherent power.  *See e.g., E & J*

19  *Gallo Winery v. EnCana Energy Servs.*, 2005 U.S. Dist. LEXIS 40143, *94 (E.D. Cal. July 5, 2005)

20      The district court has the primary responsibility for controlling the conduct of the attorneys

21  and parties appearing before it.  *See Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980).  A court has

22  the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing

23  before it, and may impose appropriate sanctions to penalize and discourage misconduct.  *See*

24  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-50, 111 S. Ct. 2123, 2134-36, 115 L. Ed. 2d 27 (1991);

25  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980); *Fink*

26  *v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).  This includes the power to impose sanctions for

27  discovery misconduct in addition to, and including, Rule 37 misconduct.  *See Anheuser-Bush v.*

28  *Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).  Such sanctions can include

1   terminating sanctions.  *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 775 (7th Cir. 2016).  A

2   sanction imposed under the court's inherent power requires a specific finding of bad faith. *Roadway*

3   *Express v. Piper*, 447 U.S. 752, 767 (1980) (superseded in part by statute on other grounds); *Primus*

4   *Auto Fin. Services v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997).

5         18 U.S.C. § 401 further provides a district court power to punish any person appearing

6   before it.  § 401 provides that:

7         A court of the United States shall have power to punish by fine or imprisonment, or
         both, at its discretion, such contempt of its authority, and none other, as—

8         (1) Misbehavior of any person in its presence or so near thereto as to obstruct the
         administration of justice;

9         (2) Misbehavior of any of its officers in their official transactions;

10        Further, the Eastern District has supplemental rules for the discipline of attorneys who

11   appear before it.  Local Rule 110 provides "[f]ailure of counsel or of a party to comply with these

12   Rules or with any order of the Court may be grounds for imposition by the Court of any and all

13   sanctions authorized by statute or Rule or within the inherent power of the Court."

14        Local Rule 184(a) also provides the court with the authority to discipline or sanction an

15   attorney that engages in such conduct and allows the initiation of proceedings for contempt under

16   18 U.S.C. § 401 or Fed. R. Crim. P. 42.  A court may also take any other appropriate disciplinary

17   action against the attorney and may refer the matter to the disciplinary body of any Court before

18   which the attorney has been admitted to practice.

19   **IV.**    **<u>ARGUMENT</u>**

20   **A.**    **<u>The Court Must Exercise Its Inherent Power to Administer Its Docket and the Parties</u>**
         **<u>Before It and Ensure That a Fraud is Not Perpetuated on the Court.</u>**

21

22        In the absence of Federal Rules, courts have the inherent power to impose sanctions for

23   abusive litigation practices undertaken in bad faith to protect the integrity, and prevent abuses, of

24   the judicial system.  *See Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988); *Shepherd*

25   *v. American Broadcasting Co.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995). "These powers are 'governed

26   not by rule or statute but by the control necessarily vested in courts to manage their own affairs so

27   as to achieve the orderly and expeditious disposition of cases.'"  *Chambers*, 501 U.S. at 43 (citing

28   *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31, 82 S. Ct. 1386, 8 L. Ed. 2d 734  (1962)). There are

several types of sanctions for improper conduct, including terminating, preclusion, and monetary sanctions. *See e.g., E & J Gallo Winery v. EnCana Energy Servs.*, 2005 U.S. Dist. LEXIS 40143, *96; *Greenburg v. Roberts Props., Ltd.*, 2006 U.S. Dist. LEXIS 6776, **19-20 (D. Arizona Feb. 16, 2006).  All of these sanctions are appropriate in this case where Defendants Randy Moore and Levinson violated several criminal statutes in an effort to suppress information regarding Defendant Levinson having committed perjury in obtaining a CASp license by the State of California for purposes of using his license to assist the criminal RICO enterprise in filing fraudulent ADA lawsuits as alleged in Plaintiff's FAC.  Given the severity of Defendant Randy Moore's and Levinson's criminal violations, Plaintiff requests the Court grant terminating sanctions.

> **1.     Defendants Randy Moore and Geoshua Levinson Committed Federal and State Crimes When They Violated Witness Tampering Statutes**
>
> > **a.     Defendants Randy Moore and Levinson Committed Criminal Violations of 18 U.S.C. 1512(b) and Cal. Penal Code § 136.1.**

18 USC § 1512(b) prohibits witness tampering.

> Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to –
>
> (1) influence, delay, or prevent the testimony of any person in an official proceeding;
>
> (2) cause or induce any person to
>
> (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
>
> […] shall be fined under this title or imprisoned not more than 20 years, or both.

A person intends to corruptly persuade the testimony of a witness by either attempting to influence the witness to withhold testimony, to modify the testimony, or to provide false testimony when that person knows the witness has been subpoenaed in an action.  *See United States v. Carona*, 660 F.3d 360, 367 (9th Cir. 2011) (upholding conviction for witness tampering under § 1512(b)(2)(A) when defendant encouraged witness to lie about items identified in subpoena); *see also United States v. Salazar*, 542 F.3d 139, 142-143 (5th Cir. 2008); *Richmark Corp. v. Timber Falling Consultants, Inc.*, 730 F. Supp. 1525, 1531 (1990).

1    Under state law, Cal. Penal Code § 136.1(a)(2) also makes it a crime when a person

2    "[k]nowingly and maliciously attempts to prevent or dissuade any witness or victim from

3    attending or giving testimony at any trial, proceeding, or inquiry authorized by law.  §136 defines

4    malice as "an intent to vex, annoy, harm, or injure in any way another person, or to thwart or

5    interfere in any manner with the orderly administration of justice."  "Section 136.1 punishes the

6    mere attempt to dissuade;" it does not matter whether the attempt to dissuade was successful.

7    *People v. Pettie*, 16 Cal. App. 5th 23, 54 (2017); *see also People v. Wahidi* (2013) 222 Cal. App.

8    4th 802, 807 (finding evidence of malice because defendant intended to "thwart or interfere in any

9    manner with the orderly administration of justice" by convincing witness not to testify at

10   preliminary hearing).

11    Defendants Randy Moore and Levinson each knew McAdams had been subpoenaed in this

12   matter because McAdams called Defendant Randy Moore when he received the subpoena for his

13   deposition on March 8, 2019 to ask him what it was about.  (*See* Saniefar Decl., ¶ 8, Ex. D at

14   17:23-19:11; 41:7-9).  McAdams further testified that Defendant Randy Moore texted him with

15   Defendant Levinson's phone number and soon after, McAdams called Defendant Levinson also on

16   March 8, 2019 asking him "[w]hat the hell is this about?"  (*See id.* at 21:16-23; 22:4-23; 23:11-13;

17   26:1-7).

18    Over the course of several conversations, McAdams testified that Defendants Randy

19   Moore and Levinson attempted to influence his deposition testimony and encouraged him to

20   withhold testimony and to lie.  (*See id.*, ¶ 8, Ex. D at 20:21-23:5; 24:11-25:18; 26:1-7; 27:3-18;

21   28:12-21; 29:1-24; 30:9-15; 32:4-14; 34:10-35:17; Ex. F at 1-9).

22        Q. Okay. And what did he [Levinson] say?
          A. I don't recall the context of that conversation. It was more, "What the hell is this
23        about?"
          Q. Okay. And what did he tell you?
24        A. He said something about working for me.
          Q. Okay.
25        A. I said, "What are you talking about?" So, then, I received a text message that's got
          a picture of a piece of a document on it.
26        Q. Okay. What was the document?
          A. I don't know what the document was. I've never seen the document before.
27        Q. Okay.
          A. And it wasn't a complete document. It was only a snippet of a document --
28        Q. All right.

-10-

1    A. -- with something circled.
     Q. What was -- do you know what it was or what was circled?
2    A. I don't. I mean, I don't know what it was. I mean, I can show it to you, so –
     […]
3    THE WITNESS: And this actually came in, I believe, during or real close to the
     conversation with Ms. Moji.  (*See* Saniefar Decl. ¶ 7, Ex. D at 22:2-23:2; 23:11-13).

4
     A.  And, again -- and he was encouraging me, you know, that, you know, essentially,
5    "I don't have to remember things." And I says, "Well, what am I not supposed to be
     remembering?"
6    Q. And did he tell you?
     A. No.
7    Q. Okay. And you say, "He was encouraging you not to remember," are you talking
     about Randy Moore or Geoshua Levinson?
8    A. They both. (*Id*. at 28:12-21).

9    Q. Okay. So, you did, though, talk to Geoshua Levinson again after that first phone
     call. Correct?
10   A. Yes.
     Q. Okay. And what did you speak about the next time you spoke to him, Mr.
11   Levinson?
     A. Well, the one that I recall the clearest was -- I think it was two nights ago.
12   Q. Okay.
     A. He calls me and he goes, "Oh, by the way, you haven't talked to Randy since
13   before January."
     Q. Okay.
14   A. And I said, "What the hell are you talking about?" Excuse my language but, you
     know, that's just the way I talk. And I said, "I was just on the phone with him two
15   nights ago."
     Q. Okay. And what did Geoshua say?
16   A. And I said -- and I says, "I'm not about to sit in a deposition and lie that I didn't
     talk to somebody that clearly I talked to." So, that ain't going to happen.
17   Q. Okay. And what did Geoshua say in response to that?
     A. I may have hung up on him.  (*Id*. at 29:1-24).
18
     Q. Understandable. Did you talk to him again after --
19   A. And I'm being told to not remember things that I don't even know, so that's kind
     of weird to me.
20   Q. Absolutely. Did you speak to Mr. Levinson again after that?
     A. No. I immediately contacted my attorney.  (*Id*. at 30:9-15).
21
     Q. Okay. Did Mr. Moore instruct you to say anything about that document that Mr.
22   Levinson had texted you??
     A. No. He basically -- I guess you could say he ignored the question about -- I said,
23   "What the hell is this," and he ignored the question. And, then, during my
     conversation with Ms. Moji -- and Mr. Moore was on the other line -- you know, he
24   was basically texting me how to respond to her and her questions, as a – I assumed
     that, just as an attorney, like -- I don't know what attorneys are allowed to do or not to
25   do.  (*Id*. at 32:4-14).

26       Additionally, Defendants Randy Moore and Levinson attempted to tamper with McAdams'

27   testimony because they did not want Plaintiff to learn that Defendant Levinson had lied on his

28   CASp application to the State of California.  Both Defendants Randy Moore and Levinson

-11-

1   attempted to influence McAdams to state that Defendant Levinson had worked for him as a
2   "project manager."

- McAdams asked Defendant Levinson, "What the hell is this about?" to which, in
  McAdams' words, Defendant Levinson stated "something about working for me"
  and sent a "picture of a piece of document." (Saniefar Decl, ¶ 7; Ex. D at 22:4-23)
  ("It was only a snippet of a document – with something circled.").

- The document Defendant Levinson texted was a picture of his CASp application
  that was submitted to the DSA in April 2010 under the penalty of perjury which
  stated he was a "Superintendent/Project Manager" with "Repair Wizards" from
  "2006 to 2010." (Saniefar Decl. ¶ 8, Ex. E at 1, Ex. 2 to Deposition of McAdams;
  compare Saniefar Decl. ¶ 8, Ex. F at 1 with Ex. B at 3).

- One of the text messages Defendant Randy Moore sent to McAdams at the time of
  his March 8, 2019 call with Plaintiff's counsel also referred to the term "project
  manager." (Saniefar Decl, ¶ 8; Ex. E at 5).

- McAdams testified there was nothing on the document that was submitted by
  Defendant Levinson that he recognized. (Saniefar Decl, ¶ 7; Ex. D at 24:15-16).

- McAdams testified Defendant Levinson has never worked for him as a project
  manager for Repaid Wizards. (*Id*. at 36:3-4; 36:20-22; 40:4-13; 44:9-13; 64:1-8).
  In fact, McAdams testified Levinson was "just a kid" that would run small errands
  for him now and then and he was never employed by Repair Wizards. (*Id*. at 64:1-
  8) McAdams believed Defendant Levinson worked for his parents. (*Id*. at 40:11-
  13).

23   Defendants Randy Moore and Levinson's reasons for interfering and attempting to
24  discourage McAdams from providing truthful testimony was for the purpose of concealing
25  Defendant Levinson's falsities and commission of perjury in getting a CASp license which was
26  used by Defendants in this matter in prosecuting false and fraudulent ADA cases as alleged in the
27  FAC. (*See* Docket No. 33, ¶¶ 94-97 at 121-122). Further, the RICO Defendants relied upon
28  Defendant Levinson's supposed CASp "expertise" in court filings wherein reference to his

certification was used to prosecute fraudulent ADA cases. *See e.g.,* RJN, Ex. B, Declaration of Levinson in *Moore v. Dollar Tree*, Case No. Case No. 1:13-cv-01336-LJO-BAM. Defendants Randy Moore and Levinson further knew that such revelations regarding the falsities presented by Defendant Levinson would bolster Plaintiff's RICO claims, and would likely lead to additional allegations of civil racketeering.

Based on McAdams' testimony, Defendants Randy Moore and Levinson unambiguously sought to influence and withhold McAdams' truthful testimony upon learning Plaintiff had subpoenaed his attendance at a deposition in this matter. Defendants Randy Moore's and Levinson's conduct constitutes a criminal violation of 18 U.S.C. 1512(b) and Cal. Penal Code § 136.1(a)(2) and is nothing less than obstruction of justice, which requires severe punishment.

>**b.   Defendant Randy Moore Committed Criminal Eavesdropping in Violation of 18 U.S.C. § 2511 and Cal. Penal Code § 630, *et seq*.**

18 U.S.C. § 2511 provides the following:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication;

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

(4)(a) Except as provided in paragraph (b) of this subsection or in subsection (5), whoever violates subsection (1) of this section shall be fined under this title or imprisoned not more than five years, or both.[2]

---

[2]   Although there is an exception in § 2511 (2)(d) of this section for instances where one party to the conversation has given consent, that exception does not apply to the facts of this case because if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State," the exception does not apply. Since Defendant Randy Moore sought to intercept the confidential communication between McAdams and Plaintiff's counsel for the purpose of tampering with McAdams' testimony at his upcoming deposition in violation of 18 U.S.C. § 1512(b), Cal. Penal Code § 136.1(a)(2), and Fed. R. Civ. P. 37, the exception in § 2511 (2)(d) does not apply.

"Intercept" is defined broadly as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). "Interception" must be willful and "acquisition" must be contemporaneous with the communication through use of the device. *See Adams v. Sumner*, 39 F.3d 933, 935-36 (9th Cir. 1994); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878-79 (9th Cir. 2002).

The California Invasion of Privacy Act ("CIPA") is found at Cal. Penal Code § 630, *et seq.* and was enacted "to protect the right of privacy of the people of this state." Cal. Penal Code § 630. CIPA makes it illegal to wiretap (Cal. Penal Code § 631) or to eavesdrop (monitor) and record telephonic communications (Cal. Penal Code § 632). CIPA requires the assent of all parties to a communication before another may listen. *See Ribas v. Clark* (1985) 38 Cal. 3d 355, 360-61.

Penal Code § 631 states:

a)  Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170 , or by both a fine and imprisonment in the county jail or pursuant to subdivision (h) of Section 1170 .

§ 631 was aimed at eavesdropping, or the secret monitoring of conversations by third parties. *See Rogers* v. *Ulrich*, 52 Cal. App. 3d 894, 899 (1975). § 631prohibits more than illicit wiretapping. *See Tavernetti* v. *Superior Court*, 22 Cal. 3d 187, 192-93 (1978). § 631 makes the following conduct illegal: (1) intentional wiretapping; (2) willful attempts to learn the contents of a communication in transit; and (3) attempts to use or publicize information obtained in either manner. *Id*. at 192; *see also People* v. *Suite*, 101 Cal. App. 3d 680, 686 (1980).

Cal. Penal Code § 632 makes it a crime to eavesdrop.

(a)  A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation, or imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

Penal Code § 632(c) defines "confidential communication" as including:

any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made . . . in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

The statute prohibits unconsented-to eavesdropping or recording of conversations.  *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002); *People v. Drennan*, 84 Cal. App. 4th 1349, 1357 (2000). § 632 makes it a crime if the violator listened to or recorded a confidential communication without the consent of all parties.  *See People v. Drennan*, 84 Cal. App. 4th at 1357-1358.

On March 8, 2019, Defendant Randy Moore committed criminal eavesdropping and wiretapping under both state and federal law when he manipulated McAdams, who was in Florida, to call Plaintiff's counsel in California, without Plaintiff's counsel's knowledge, to overhear why she was interested in obtaining McAdams' testimony.

A. He told me, basically -- he said, you know, "Call her back on your phone. Put her on speakerphone and put me on speakerphone and I will help you out."

(Saniefar Decl., ¶ 7, Ex. D at 20:2-4.)

[McAdams] And, then, during my conversation with Ms. Moji -- and Mr. Moore was on the other line -- you know, he was basically texting me how to respond to her and her questions, as a – I assumed that, just as an attorney, like -- I don't know what attorneys are allowed to do or not to do.

(*Id*. at 32:9-14).

As set forth in detail above, Defendant Randy Moore sent text messages to McAdams while he was contemporaneously eavesdropping on Plaintiff's counsel's communication with McAdams to try and get a preview of the possible topics that Plaintiff's counsel would cover in the deposition and in order to dictate to McAdams how he should answer the questions posed by Plaintiff's counsel. (Saniefar Decl., ¶ 7, Ex. D at 34:13-35:17; Ex. E at 2-9).

Defendant Randy Moore's willful violation of 18 U.S.C. § 1511 and Cal. Penal Code §§

-15-

1    631 and 632 were done for the purpose of tampering with McAdams' testimony (in violation of 18

2    U.S.C. § 1512(b) and Cal. Penal Code § 136.1), and to gain an unfair advantage in this litigation in

3    violation of Fed. R. Civ. P. 37.  As a result of Defendant Randy Moore's violation of criminal

4    laws and obstruction of justice, severe sanctions are warranted.  They are particularly egregious

5    given Defendant Randy Moore is an attorney who is licensed to practice law in the State of

6    California.

7    **B.**     **Plaintiff Requests the Court Grant Severe Sanctions Against Defendants Randy**
         **Moore and Geoshua Levinson.**

8

9         A court has the inherent power to fashion an appropriate sanction for conduct which abuses

10   the judicial process.  *See Chambers*, 501 U.S. at 44-45.  Sanctions amounting to dismissal of a

11   case or default judgment are authorized only in "extreme circumstances: for violations "due to

12   willfulness, bad faith, or fault of that party."  *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905

13   (9th Cir. 2002) (quoting *U.S. v. Kahaluu Const. Co.*, 857 F.2d 600, 603 (9th Cir. 1988)); *see*

14   *also Commodity Futures Trading Comm'n v. Noble Metals Int'l*, 67 F.3d 766, 770 (9th Cir.

15   1995) (affirming standard and upholding sanctions in egregious circumstances).

16        Default judgment may be granted against a defendant for misconduct, regardless of

17   whether the court bases its decision on the Federal Rules or its inherent power.  *See Anheuser-*

18   *Bush*, 69 F.3d at 348; *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998); Fed. R.

19   Civ. P. 37(b)(2); *Bonds v. District of Columbia*, 93 F.3d 801, 807-08 (D.C. Cir. 1996); *Shepherd*,

20   62 F.3d at 1474.  Bad faith does not require actual ill will; substantial and prejudicial obduracy

21   may constitute bad faith.  *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir.

22   2002).[3]

23        "Most critical for evaluating the risk of prejudice and whether less drastic sanctions would

24   suffice is whether the discovery violations 'so damage[] the integrity of the discovery process that

25

26   _____

27   [3]  The Ninth Circuit has yet to address what standard of proof is appropriate for default judgments
     under the Court's inherent powers to sanction a party for bad faith.  *See Aguirre v. Home Depot*
     *U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 119984, at *n.3 (E.D. Cal. Aug. 23, 2012), citing *Lewis v.*

28   *Ryan*, 261 F.R.D. 513, 519 n.2 (S.D.Cal. 2009); *In re Napster Inc. Copyright Litig.*, 462 F. Supp.
     2d 1060, 1072 (N.D. Cal. 2006).

1  there can never be assurance of proceeding on the true facts.'"  *Valley Engineers Inc. v. Electric*

2  *Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998);*Carlson v. Monaco Coach Corp.*, 2006 U.S. Dist.

3  LEXIS 21464 (E.D. Cal. Apr. 20, 2006).  "Witness tampering like perjured testimony tends to

4  subvert the entire judicial process and its principle function of ascertainment of the truth."  *Burke v.*

5  *Vose*, *847 F. Supp. 256, 263 n.33 (D. R.I. 1993).*  The "legal system is dependent upon the

6  willingness of the litigants to allow an honest and true airing of the real facts. . . . [the] court system

7  must have zero tolerance for parties who seek to intentionally distort the discovery and trial

8  process."  *Young*, 217 F.R.D. at 71 (quotations omitted).

9        Where a party's "entire course of conduct throughout the lawsuit evidences bad faith and

10  an attempt to perpetrate a fraud on the court," the conduct is sanctionable under the inherent power

11  of the court."[4]  *Chambers*, 501 U.S. at 50-51; *see also Young v. Office of the United States Senate*

12  *Sergeant at Arms*, 217 F.R.D. 61 (D.D.C. 2003) (finding plaintiff willfully failed to comply with

13  two separate court orders requiring production of medical records, failed to cooperate with

14  independent medical exam, and abused the litigation process by tampering with two witnesses.).

15        Terminating sanctions are available under Rule 37.  *See e.g.* Fed. R. Civ. P. 37(b)(2)(A)(v)

16  (authorizing dismissal of suit, for party's failure to comply with court's discovery orders).  Rule

17  37 has been extended to instances of a party hiding evidence and lying in his deposition.  *See e.g.*

18  *Negrete v. AMTRAK*, 547 F.3d 721, 723-24 (7th Cir. 2008).   There is "no reason why the power

19  would not also extend to a party soliciting a witness to lie at his court-ordered deposition."

20  *Ramirez*, 845 F.3d at 776; *see also Quela v. Payco-Gen. Am. Credits, Inc.*, 2000 U.S. Dist. LEXIS

21  6932, 2000 WL 656681 (N.D. Ill. May 18, 2000).

22        To determine whether terminating sanctions are appropriate under the Court's inherent

23  powers, a court must consider the following factors:

24        (1) the existence of certain extraordinary circumstances;
      (2) the presence of willfulness, bad faith, or fault by the offending party;
25        (3) the efficacy of lesser sanctions; and
      (4) the relationship or nexus between the misconduct drawing the dismissal sanction

26  _____

27  [4]   Reviewing the totality of Defendants' conduct thus far, in causing delays in discovery, and now
   with evidence of criminal witness tampering and eavesdropping, Plaintiff has been severely
28  prejudiced in her right to discovery to prosecute her case within the constraints and deadlines of
   the scheduling order issued in this action.  (*See* Saniefar Decl., ¶ 10).

1      and the matters in controversy in the case

2  Section 1.01. *Greenburg v. Roberts Props., Ltd.*, 2006 U.S. Dist. LEXIS 6776 at *21 (finding

3  terminating sanctions appropriate when plaintiff committed forgery, perjury and tampered with

4  evidence) citing *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988).

5      In a recent Seventh Circuit opinion, the appellate court affirmed the trial court's granting

6  of terminating sanctions in a case involving witness tampering.  *In Ramirez v. T&H Lemont, Inc.*,

7  845 F.3d 772, 775 (7th Cir. 2016), the plaintiff offered a witness money in exchange for favorable

8  testimony.  On appeal, the Seventh Circuit held that in "civil cases, the facts underlying a district

9  court's decision to dismiss the suit or enter a default judgment as a sanction under Rule 37 or the

10  court's inherent authority need only be established by a preponderance of the evidence."  The

11  Court stated "Rule 37(b)(2)(A) (v) and (vi) authorizes both the dismissal of the action and the

12  entry of a default judgment against the offending plaintiff or defendant; and the court's inherent

13  power to sanction misconduct is likewise symmetrical." *Id.* at 779.  "Like any other civil litigant,

14  Ramirez is obliged under Rule 37 to comply with the court's discovery orders and, more broadly,

15  to comport himself appropriately before the court and refrain from attempts to deceive his

16  opponent and to perpetrate a fraud on the court." *Id.*

17      In so doing, the court held "witness tampering is among the most grave abuses of the

18  judicial process, and as such it warrants a substantial sanction."  *Id.* at 782; *Ty Inc. v. Softbelly's*

19  *Inc.*, 517 F.3d 494, 498 (7th Cir. 2008)  ("[t]rying to improperly influence a witness is fraud on the

20  court and on the opposing party").  The court stated:

21          Crediting Villagrana's account, Ramirez made a calculated effort to bolster his
            floundering case by offering payment to a witness to support his allegations of
22          employment discrimination when the witness had, in fact, observed no such
            discrimination. Dismissing the case with prejudice is an entirely reasonable response
23          to such a deliberate attempt to deceive the court.

24  *Id.* at 782; *see also Synergetics, Inc. v. Hurst*, 2007 U.S. Dist. LEXIS 61286, at *7 (E.D. Mo. Aug.

25  21, 2007) ("Witness tampering is an extremely serious offense, and strikes at the heart of the

26  litigation process. Our system of justice relies on witnesses coming to court and telling the truth.

27  Interference with the process taints trials and threatens the integrity of the justice system.")

28  *HomeDirect, Inc. v. H.E.P. Direct, Inc.*, 2013 U.S. Dist. LEXIS 60450, at *2-3, 6 (N.D. Ill. Apr.

-18-

29, 2013) (where CEO of defendant agreed to forgive some of plaintiff's key witness' debt, in exchange for declaration refuting accusations in plaintiff's complaint, court held "[p]aying a crucial witness for the purpose to ensure they are useless to the opposing party is egregious" and because plaintiff's key witness "was effectively removed from the case by the improper actions of the defendant . . . the proper sanction is to declare that the complaint is true and that [defendant] is liable for damages.").

Here, Defendants Randy Moore and Levinson sought to stop McAdams from providing testimony by telling him that he did not "have to answer any questions at all," that he could "just sit there and be stupid," and that he did not have to "remember anything." (*See* Saniefar Decl., ¶ 7, Ex. D at 27:3-16; 28:12-21). They further sought to influence the substance of his testimony by telling him to testify that Defendant Levinson worked for him as a "project manager." (*See id.*, ¶¶ 7-8, Ex. D at 22:4-23; 36:3-4; 36:20-22; 40:4-13; 44:9-13; 64:1-8; Ex. E at 1, 5). Defendant Levinson further directed McAdams to lie about the witness tampering: "Oh, by the way you haven't talked to Randy since before January." (*See id.*, ¶ 7, Ex. D at 29:6-24).

Defendants Randy Moore's and Levinson's willful and bad faith conduct is even more egregious in this case when considering the criminal eavesdropping committed by Defendant Randy Moore. The conduct of Defendants Randy Moore and Levinson evidences a continuing pattern of deceit and fraud in litigation as alleged in Plaintiff's FAC. Defendant Levinson lied to the State of California in getting a CASp license which has been used by the RICO Defendants in prosecuting fraudulent ADA claims. (*See e.g.,* Docket No. 33, ¶¶ 94-97 at 121-122). Worried that the perjury and fraud committed on the State of California and the federal courts wherein Defendant Levinson has provided false declarations about being a validly "licensed CASp" in support of Defendants' ADA cases (*see e.g.*, RJN, Ex. B, Declaration of Levinson in *Moore v. Dollar Tree*, Case No. 1:13-cv-01336-LJO-BAM) (Hon. Lawrence J. O'Neil and Hon. Barbara A. McAuliffe), Defendants Randy Moore and Levinson engaged in further criminal conduct to suppress evidence helpful to Plaintiff. The Court cannot tolerate this conduct and must grant either a default judgment as to Defendants Randy Moore and Levinson, or alternatively strike their answers to the FAC, or establish they are racketeering enterprise as alleged in Plaintiff's FAC.

**1.** **If the Court Does Not Grant Terminating Sanctions at This Juncture, Then It Must Grant Preclusive or Issue Sanctions For Defendants Randy Moore's and Geoshua Levinson's Willfulness and Bad Faith.**

If the Court is not inclined to award default judgment as to Defendants Randy Moore and Levinson, it should grant preclusive or issue sanctions as a just punishment for the prejudice caused to Plaintiff. *See Innospan Corp. v. Intuit Inc.*, 2011 U.S. Dist. LEXIS 72848, *15-17 (N.D. Cal. July 7, 2011) (precluding use of witnesses as result of witness tampering); *Ty*, 2005 U.S. Dist. LEXIS 22060 (finding since there was no criminal conduct by Plaintiff in that case, but since plaintiff interfered with defendant's ability to present its defense and thereby impaired honest and true airing of real facts, appropriate sanction would be forfeiture of all damages to plaintiff; also holding terminating sanctions are within the court's inherent authority in an appropriate case.). *See also* 37(b)(2)(A)(i)-(iii) (providing court with power to establish certain facts as true, prohibiting violator from opposing certain claims or introducing evidence, or striking pleadings).

Due to the malicious and criminal conduct outlined above, Defendants Randy Moore and Levinson must be precluded from doing or offering the following in this action:

  a.  Presenting any evidence to show that Defendant Levinson is a qualified CASp;
  b.  Presenting any evidence to impeach the testimony of McAdams;
  c,  Having any opportunity to cross-examine McAdams or to allow introduction by Defendants of Inouye's cross-examination of McAdams at his deposition;
  d.  Presenting any evidence to rebut Plaintiff's evidence of Levinson committing perjury in his CASp application; and
  e.  Presenting any evidence to rebut Plaintiff's evidence that Defendants Randy Moore and Levinson were involved in a racketeering enterprise to assist in the prosecution of false ADA claims.

Throughout this case, Defendants and their counsel have stalled producing discovery (*see* Saniefar Decl., ¶ 10), have made blanket representations regarding privilege in an effort to withhold information from Plaintiff (*see id.*) and have tampered with the testimony of third parties, Phillipson and McAdams.  This has resulted in severe prejudice to Plaintiff as she is being hampered in obtaining the evidence needed for her claims.  Defendants Randy Moore and Levinson must be issued the sanctions requested in (a) to (e) above as a just remedy for their conduct in this litigation.

**2.** **Monetary Sanctions are Further Required For the Costs in Bringing This Motion to Notify the Court of Defendant Randy Moore's and Geoshua Levinson's Conduct.**

-20-

1   The Court must also award monetary sanctions for bringing this motion.  *See E & J Gallo*

2   *Winery v. EnCana Energy Servs.*, 2005 U.S. Dist. LEXIS 40143 (Hon. Judge Lawrence O'Neil)

3   (ordering, under court's inherent powers and upon review of 18 U.S.C. § 1512(b) and Cal. Penal

4   Code § 136.1, that $92,000 be paid to plaintiff and $10,000 be paid to clerk of court for defense

5   counsel's conduct related to tampering with scheduling of deposition of witness to obtain strategic

6   advantage); *Youngevity Int'l v. Smith*, 2018 U.S. Dist. LEXIS 20373, at *15 (S.D. Cal. Feb. 6,

7   2018) (granting monetary sanctions in the form of reasonable attorney's fees for the work

8   performed in bringing sanctions motion for conduct of defendant who intended to influence

9   testimony of a witness).  A district court has an obligation to respond to claims of witness

10  tampering.  *See Erickson v. Newmar Corp.*, 87 F.3d 298, 303-304 (9th Cir. 1996) (holding district

11  court "abdicated its duty to examine the charge of unethical behavior and impose the necessary

12  sanctions; trial court was duty-bound to fashion an appropriate sanction for the violation and

13  remedy the problem.)

14  Due to Defendants Randy Moore's and Levinson's criminal conduct, Plaintiff was duty-

15  bound to bring this motion to notify the Court.  At a minimum, monetary sanctions are required to

16  compensate Plaintiff and her counsel the full fees and costs of bringing this Motion, and any

17  further fees and costs related to this Motion.  Failure to punish Defendants Randy Moore and

18  Levinson will serve to set a bad precedent for this action, and for other cases, where parties

19  believe they can engage in bad faith litigation tactics without retribution.  It is especially egregious

20  in this case since the defendant are attorneys or work for attorneys.

21  **C.**      **The Court has the Power and Must Refer Violations of Criminal Statutes to the**
            **Proper Authorities For Investigation and Prosecution**

22

23  A district court may refer individuals appearing before it to proper authorities when it

24  learns of crimes having been committed in its court system.  *See Ingenuity 13 LLC v. Doe*, 2013

25  U.S. Dist. LEXIS 64564, **15-16 (C.D. Cal. May 6, 2013) (referring conduct of defendants that

26  filed frivolous litigation to United States Attorney for deceiving court in various case filings).

27  Here, Plaintiff requests the Court evaluate its jurisdiction to report Defendants Randy

28  Moore and Levinson to the United States Attorney's Office for the Eastern District and to the

-21-

1    State Attorney General or District Attorney's Office for violations of the criminal laws as outlined

2    above.  Additionally, Defendant Levinson should be referred for prosecution because he has filed

3    at least one declaration in the Eastern District listing his qualification and license as a CASp when

4    he knew this information was false due to his having committed perjury in his CASp application.

5    (*See e.g.,* RJN, Ex. B, Declaration of Levinson in *Moore v. Dollar Tree*, Case No. Case No. 1:13-

6    cv-01336-LJO-BAM; *See* Saniefar Decl., ¶ 7, Ex. D at 22:4-23; 36:3-4; 36:20-22; 40:4-13; 44:9-

7    13; 64:1-8; Ex. F at 1, 5).

8    **D.    The Court Must Enjoin Defendants' Future Willful and Oppressive Conduct Against**
     **Saniefar and Her Counsel.**
9

10          Upon learning of witness tampering, a court may enjoin the violators from such further

11   conduct.  *See Youngevity Int'l*, 2018 U.S. Dist. LEXIS 20373, at *15.

12          Todd Smith and Wakaya, and his and its agents, and employees, are enjoined and
            restrained from, directly or through others, harassing, threatening, intimidating or
13          influencing, or attempting to do so, any of Plaintiffs' and Counterclaim Defendants'
            witnesses. Todd Smith and Wakaya shall not communicate with any of Plaintiffs' and
14          Counterclaim Defendants' witnesses other than Wakaya employees, agents or
            representatives, except when counsel for Smith or Wakaya are participating in the
15          communication

16          Here, the Court must enjoin Defendants Randy Moore and Levinson from interfering with

17   Plaintiff's rightful prosecution of this case.  The Court must further enjoin Defendants Randy

18   Moore and Levinson, and the other Defendants and their counsel, from interfering with the

19   testimony of any witnesses or engaging in any further discovery violations.

20   **E.    Plaintiff Is Entitled to an Adverse Inference.**

21          An adverse inference is also proper based on Defendant Randy Moore's and Levinson's

22   egregious conduct in this case.  *See Youngevity Int'l*, 2018 U.S. Dist. LEXIS 20373, at *14

23   (holding a "properly tailored adverse inference instruction is appropriate and will not cause

24   unfairness.").  An attempt to convince a witness not to testify may be proof that the party seeking

25   to suppress the testimony has something to hide.  *See Synergetics*, 2007 U.S. Dist. LEXIS 6 1286,

26   at *4.

27          It is generally held that, in a civil case, evidence that a litigant, or his agent, has
            attempted to influence or suppress a witness is receivable as an admission or as an
28          indication of the litigant's consciousness that his case is weak or unfounded or that

-22-

his claim is false or fraudulent. Specifically, an attempt to persuade a witness not to testify is admissible against the party responsible for that attempt.

*Id.*

In *Youngevity,* the court gave the following instruction after finding witness tampering:

Youngevity has offered evidence that Todd Smith tried to suppress the Notice of Default written by LiveWell, L.L.C. and tried to influence Rick Anson's testimony. After considering all of the pertinent facts and circumstances, you may, but are not obligated to, infer that any evidence you find that Mr. Smith attempted to suppress or influence was favorable to Youngevity and unfavorable to him and Wakaya.

*Youngevity Int'l,* 2018 U.S. Dist. LEXIS 20373, at *14.

Plaintiff is entitled to an adverse inference in this case as a result of Defendant Randy Moore's and Levinson's egregious and bad faith conduct and the measures they took to interfere with the testimony of McAdams.

**F.    Defendant Randy Moore, a Licensed Attorney, Has Violated Rules of Professional Conduct and the Court Must Report Him to the California Bar.**

An attorney admitted to the Bar may be disciplined under the court's inherent power for conduct violating the Bar's rules of professional conduct, including conduct that occurs outside the course of litigation. *See United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996). Courts have the power to discipline attorneys appearing before them. *See Paul E. Iacono Structural Engineer, Inc. v. Humphrey,* 722 F.2d 435, 439 (9th Cir. 1983). In the Eastern District of California, Local Rule 184(a) states that attorneys may be disciplined and referred to the proper disciplinary agencies for violations.

The California Rules of Professional Conduct, Rule 3.4 governs Fairness to Opposing Party and Counsel. Rule 3.4 states:

"[a] lawyer shall not: (a) unlawfully obstruct another party's access to evidence, including a witness, or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act."

Additionally, Rule 8.4 provides the following "[i]t is professional misconduct for a lawyer to":

(a) violate these rules or the State Bar Act, knowingly* assist, solicit, or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud,* deceit, or reckless or intentional

-23-

misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice.

Defendant Randy Moore is an attorney licensed by the California Bar.  Accordingly, he is subject to the California Rules, which set forth the legal ethical and professional responsibilities of lawyers.  Defendant Randy Moore blatantly violated the above rules by eavesdropping on a private phone call between McAdams and Plaintiff's counsel, encouraging McAdams not to remember at his deposition, and telling him how to answer questions about Defendant Levinson's work experience.  Defendant Randy Moore's conduct was a violation of the Rules of Professional Conduct.

**G.    Defendants' Counsel's Conduct Implicates Adherence to California's Newly Enacted Rules of Professional Conduct Requiring Remedial Efforts.**

The California Rules of Professional Conduct were amended in January 2019, more closely aligning it to the ABA Model Rules.  In particular, new Rule 3.3, Candor Toward the Tribunal, was adopted.  This rule revises and imposes new obligations for attorneys and are applicable here to the criminal conduct of Defendants Randy Moore and Levinson and require Inouye take reasonable remedial measures, which may include withdrawal or disqualification.  Rule 3.3 requires the following.

> (b) A lawyer who represents a client in a proceeding before a tribunal* and who knows* that a person* intends to engage, is engaging or has engaged in criminal or fraudulent* conduct related to the proceeding shall take reasonable* remedial measures to the extent permitted by Business and Professions Code section 6068, subdivision (e) and rule 1.6.

The comments to Rule 3.3, include the following guidance for "remedial measures:"

> Reasonable* remedial measures under paragraphs (a)(3) and (b) refer to measures that are available under these rules and the State Bar Act, and which a reasonable* lawyer would consider appropriate under the circumstances to comply with the lawyer's duty of candor to the tribunal.* (See, e.g., rules 1.2.1, 1.4(a)(4), 1.16(a), 8.4; Bus. & Prof. Code, §§ 6068, subd. (d), 6128.) Remedial measures also include explaining to the client the lawyer's obligations under this rule and, where applicable, the reasons for the lawyer's decision to seek permission from the tribunal* to withdraw, and remonstrating further with the client to take corrective action that would eliminate the need for the lawyer to withdraw.

Unquestionably, on March 29, 2019, Inouye became aware of his clients' illegal conduct. (*See* Saniefar Decl., ¶ 7, Ex. D at 2; 45:1-66:23.)  To date, Inouye has failed to take any remedial measures with Plaintiff or the Court.  (*See id.*, ¶ 11.)

-24-

1   Instead, Inouye attempted to suppress McAdams' testimony by instructing him not to

2   answer questions citing attorney-client privilege (Saniefar Decl., ¶ 7, Ex. D at 13:23-14:1; 15:9;

3   16:13-17:9) even though:  (1) any purported privilege belonged to McAdams and he could chose to

4   waive it and (2) McAdams was represented by his own counsel who advised McAdams he could

5   answer Plaintiff's counsel's questions.  (*Id.* at 17:17-20).  Inouye's instructions are suspicious given

6   the revelations in McAdams' testimony that Defendants Randy Moore and Levinson engaged in

7   criminal witness tampering and eavesdropping.

8   This is also the same obstructive conduct that Inouye engaged in at the deposition of Celina

9   Phillipson, wherein he instructed her not to answer any questions on the basis of attorney-client

10  privilege even though Inouye admitted he did not represent Phillipson, nor the individuals about

11  whom the questions were referencing.  (*See id.*, ¶ 6, Ex. C at 88:8-89:24; 95:3-96:16).  In fact, based

12  on Inouye's instructions, Phillipson refused to answer questions.  (*See id.*).  Given the testimony of

13  McAdams and the witness tampering by Defendants Randy Moore and Levinson, Plaintiff cannot

14  help but be suspicious about what information would have been revealed by Phillipson if Inouye had

15  not chilled her testimony with speaking objections.

16  **V.   CONCLUSION**

17  For the foregoing reasons, Plaintiff respectfully requests that the Court issue appropriate

18  sanctions for Defendants Kenneth Randolph Moore's and Levinson's willful and bad faith criminal

19  conduct.

20  Dated:  April 23, 2019          SANIEFAR LAW
                                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

22                                  By   _____
                                              */s/ Moji Saniefar*
23                                         MOJI SANIEFAR
                                           RAYMOND C. MARSHALL
                                           GREGORY F. HURLEY
24                                         WHITNEY A. HODGES
                                           Attorneys for Plaintiff
25                                         FATEMEH SANIEFAR