ROGER M. MANSUKHANI (SBN: 164463)
DAVID L. JONES (SBN: 112307)
STEVEN R. INOUYE (SBN: 245024)
GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470

Attorneys for Defendants
Moore Law Firm, A.P.C., Tanya E. Moore,
Kenneth Randolph Moore, Ronald D. Moore,
Zachery M. Best, Marejka Sacks, Mission Law
Firm, A.P.C., Elmer Leroy Falk, Geoshua
Levinson, Rick D. Moore, West Coast Casp and
ADA Services, and Ronny Loreto

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FATEMEH SANIEFAR<br><br>Plaintiff,<br><br>vs.<br><br>RONALD D. MOORE, TANYA E. MOORE, KENNETH RANDOLPH MOORE, MAREJKA SACKS, ELMER LEROY FALK, ZACHARY M. BEST, MOORE LAW FIRM, a California Professional Corporation, MISSION LAW FIRM, a California Professional Corporation, GEOSHUA LEVINSON, RICK D. MOORE, WEST COAST CASP AND ADA SERVICES, a California Corporation, RONNY LORETO, and DOES 1 THROUGH 100, inclusive<br><br>Defendants. | CASE NO. 1:17-cv-00823-LJO-BAM<br><br>**DECLARATION OF KATHY POWELL IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ SUMMARY ADJUDICATION**<br><br>Date: November 14, 2019<br>Time: 8:30 a.m.<br>Dept: 4<br>Judge: The Hon. Lawrence J. O'Neill |

-1-
DECL. KATHY POWELL IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

I, Kathy Powell, declare as follows:

1. I am over the age of 18 years, and a resident of the State of California. I am not a party to this action. I have personal knowledge of the following facts and if called as a witness, could and would testify competently thereto.

2. I have worked as a legal secretary and/or paralegal for over 20 years, mostly for personal injury law firms.

3. I worked for the Moore Law Firm, P.C. as a paralegal for approximately five months from January 11, 2012 to May 16, 2012.

4. One of the reasons I wanted to work at the Moore Law Firm was that I had a nephew who was disabled and could not walk. I was very close to my nephew and spent a lot of time with him. I witnessed firsthand how hard it is for people in wheelchairs to get around businesses, and how little many businesses seem to care. I felt that the work the Moore Law Firm did for its clients was very worthwhile, and made businesses much more accessible to persons with disabilities and I felt good being a part of that.

5. My responsibilities at the Moore Law Firm involved receiving information sent in by clients relating to their visits to various businesses. Specifically, clients would send in receipts, questionnaires and notes of their visits. I would review the information, and contact the clients if we needed to obtain additional information to clarify their experience. After I obtained information about their visit, I would send an investigator out to the business to review the client's claims.

6. When I was first working at the Moore Law Firm, clients sometimes did not provide adequate notes of their visits. I would spend time talking to clients to get this information from them.

7. Specifically, I recall having problems obtaining information from some of the Moore Law Firm's clients about their visits, including Ronald Moore and others. He would send his receipts, but not always notes or complete notes of his visits. I spoke to attorney Tanya Moore about this problem, and she authorized me to explain to Ronald Moore that if he did not provide

-2-
DECL. KATHY POWELL IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

1 full written details of his visits, we would not file lawsuits on his behalf. I did that via phone with 2 both Ronald Moore and his wife, Lynn Moore on or about April 13, 2012.

8. After that April 13, 2012 conversation with Ronald and Lynn Moore, I wrote a confirming letter to Ronald and Lynn Moore explaining in writing what I had discussed with them on the phone. That letter makes very clear that I would be unable to send an investigator to the business Ronald Moore visited unless I had sufficient information about the problems he encountered. Even after the investigator went to the business, I explained that I still could have further questions of Ron Moore to clarify his experience so that I could properly prepare a complaint on his behalf. Attached to the Appendix as Exhibit 5 is a true and correct copy of the letter I wrote and had mailed to Ronald and Lynn Moore on April 13, 2012.

9. After my April 13, 2012 conversation and letter to Ronald and Lynn Moore, Ronald was much better about providing written information about his visits. Still, I would regularly have to talk to Ronald Moore to obtain further details of his visits.

10. After I obtained information from the clients about their encounters with barriers, including Ronald Moore, I would contact investigator Geoshua Levinson ("Josh"). I would give Josh instructions about visiting the businesses and taking photographs. After his investigation of the business, Josh would send the photographs he took to the firm. I would review those photographs, and if necessary, talk to Josh to clarify. I would also at times talk again to the client again to discuss Josh's findings. Once the client's claims were fully investigated, I would then draft a complaint for Tanya Moore to review, revise and approve. I would then file the complaint with the appropriate court.

11. If I could not verify a client's claims, or if Tanya Moore determined that filing a complaint was not warranted, I would prepare a letter on Ms. Moore's behalf to the client stating that their claim had been rejected and no complaint would be filed. I recall multiple such letters being sent to clients.

12. During my time at the law firm, I was responsible for all reviews of client information, client communications about their visits to businesses, investigator coordination, and

complaint drafting. Throughout this involvement, I never saw any evidence that the firm's clients did not visit the businesses they sued, or that anyone other than the client had gone to the business before the client had visited.

14. In my experience, the Moore Law Firm required a very thorough review of the clients' claims, and would refuse to pursue any action where the client was unable to provide sufficient information about their experiences, or where Tanya Moore did not believe a complaint was appropriate because of the nature of the alleged violations or the investigator's findings.

14. I do not recall ever meeting or communicating with an individual named Ronny Loreto in any fashion.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. This declaration was signed by me in Modesto, California on the date set forth below.

Dated: 9/24/19

_____
Kathy Powell

-4-
DECL. KATHY POWELL IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION