ROGER M. MANSUKHANI (SBN: 164463)
DAVID L. JONES (SBN: 112307)
STEVEN R. INOUYE (SBN: 245024)
GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470

Attorneys for Defendants
Moore Law Firm, A.P.C., Tanya E. Moore,
Kenneth Randolph Moore, Ronald D. Moore,
Zachery M. Best, Marejka Sacks, Mission Law
Firm, A.P.C., Elmer Leroy Falk, Geoshua
Levinson, Rick D. Moore, West Coast Casp and
ADA Services, and Ronny Loreto

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FATEMEH SANIEFAR<br><br>Plaintiff,<br><br>vs.<br><br>RONALD D. MOORE, TANYA E. MOORE, KENNETH RANDOLPH MOORE, MAREJKA SACKS, ELMER LEROY FALK, ZACHARY M. BEST, MOORE LAW FIRM, a California Professional Corporation, MISSION LAW FIRM, a California Professional Corporation, GEOSHUA LEVINSON, RICK D. MOORE, WEST COAST CASP AND ADA SERVICES, a California Corporation, RONNY LORETO, and DOES 1 THROUGH 100, inclusive<br><br>Defendants. | CASE NO. 1:17-cv-00823-LJO-BAM<br><br>**DECLARATION OF DEFENDANT RONALD D. MOORE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ SUMMARY ADJUDICATION**<br><br>Date: November 14, 2019<br>Time: 8:30 a.m.<br>Dept: 4<br>Judge: The Hon. Lawrence J. O'Neill |

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

I, Ronald D. Moore, declare as follows:

1. I am a defendant in this action. I am over the age of 18 years, and a resident of the State of Texas. I have personal knowledge of the following facts and if called as a witness, could and would testify competently thereto.

2. I have been diagnosed with degenerative disc disease and chronic pain syndrome. Since around 2003, I began experiencing pain in my neck, back and knees. I still continue to experience varying degrees of pain in these areas of my body to this date. That pain affects my ability to walk, as well as reach with my arms. Some days are better than others. While I always feel pain, some days it is barely tolerable, and others it is less. The pain is never gone. On what I consider "good days," I can go out and go shopping, go out to eat, visit with friends, and similar activities. On "bad days," I do not leave the home.

3. At first, I used to take pain medication for all the pain I experienced, but these were heavy narcotics and caused problems in my personal life. In 2014, I tried only to take over-the-counter medications to manage my pain. Over the past two years or so, I started taking non-addictive narcotics and muscle relaxers.

4. I began experiencing problems with instability and dizziness in the early to mid-2000's. I was diagnosed with hydrocephalus ("water on the brain") during this time period as well. I frequently felt and continue to feel unstable if I attempt to walk or stand. I can get dizzy very suddenly, and I feel wobbly. My doctors told me that I should have a device installed to drain the fluid, but I am not willing to take the risks of this surgery. So I was told by my doctors that my sense of instability would not get better with time. Attached to the Appendix as Exhibit 1-2 is a true and correct copy of a medical note from my doctor Patrick Yun Kee C. Kan, M.D., dated August 13, 2007.

5. Because of my pain and my feeling of instability, I first began using a wheelchair in around 2005. At all times relevant to this lawsuit, I used my wheelchair whenever I was out in public or in unfamiliar places. I also kept my cane with me, mostly to help me open doors while seated in the wheelchair. While I could walk at times, I risked falling whenever I tried to.

-2-
DECL. RONALD D. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

1  Occasionally, I tried to walk without any assistance at all, but I felt that put me at a greater risk for
2  falling. Therefore, it was very rare that I tried to walk without any assistance at all. When moving
3  around inside my home, I normally held onto furniture, walls, and other things.

4      6.    Even when I was able to walk, with or without assistance, I could not do so for very
5  long periods or distances because the pain caused me to get very tired and I needed to sit down.
6  And I felt very unstable most of the time anyway.

7      7.    At all times relevant to this litigation, I usually drove myself and I kept my
8  wheelchair in the back of my car. When I got to my destination, I used my cane and walked to the
9  back of the vehicle, took out my wheelchair, and then got into the wheelchair. When I got back to
10 my car, I used my cane to stand up, then I would put the wheelchair back into my car. Then I
11 would walk with my cane to the driver's door and get back in the car. Rarely, I would place my
12 hand on the car itself for stability as I went to and from the rear of the car, but I usually used my
13 cane.

14     8.    When I lived in California, the Department of Motor Vehicles issued a disability
15 placard to me that allowed me to park legally in parking spaces designated for use by persons with
16 disabilities.

17     9.    When I first began filing disability lawsuits in California, my attorneys Randy
18 Moore and Tanya Moore told me that I would need to get a receipt from my visit to the business
19 where I experienced problems in order to document exactly where I had been to. Shortly
20 afterwards, someone at the firm told me that I also needed to provide notes explaining the problems
21 I had encountered, who I had gone with, and other details to help them draft the complaint. As
22 time went on, the firm began asking for more detailed information and I gave them that information
23 to the best of my ability.

24     10.    On or around April 13, 2012, I had a telephone conversation with paralegal Kathy
25 Powell at the Moore Law Firm who reminded me that the firm would not accept my cases unless
26 I provided them with notes about my visits to businesses along with my receipts. After that
27 conversation, I received a letter from Kathy saying basically the same thing we talked about on
28

-3-
DECL. RONALD D. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

the phone. Attached to the Appendix as Exhibit 5-2 is a true and correct copy of the letter I received from Kathy dated April 13, 2012.

11. When I would send in a receipt to the Moore Law Firm to request that a lawsuit be filed, the firm would normally send me a letter confirming they had received my receipt and letting me know they would investigate my claim. If the Moore Law Firm agreed to represent me after its investigation, I would receive a letter with a fee agreement to sign as well as a complaint to review and a verification to sign. However, there were also many instances where the Moore Law Firm would not agree to represent me and would send me a letter rejecting my cases.

12. I have never asked the Moore Law Firm or Mission Law Firm, or anyone employed at the Moore Law Firm or Mission Law Firm, including employees, attorneys, or otherwise, to file a lawsuit on my behalf that I did not personally visit beforehand. For every lawsuit I have filed against businesses alleging violations of the Americans with Disabilities Act, I visited the subject business, then sent to the Moore Law Firm the receipts from my visit, and usually notes or questionnaires about what I experienced.

13. I have never given my credit card to anyone to use in my absence, including Geoshua Levinson, Rick Moore, or my grandson, Ronny Loreto. I have also never asked anyone to go to a business on my behalf, get a receipt, and so I could use the receipt to provide the basis for a lawsuit to be filed where I never actually visited the business.

14. Sometimes when I went to businesses with my grandson, Ronny Loreto, there were times I would hand Ronny my credit card and have him sign the receipt in my presence because it was too hard for me to do it myself or the counter was too high. However, I was always present with my grandson at the business whenever this happened.

15. Before filing a lawsuit on my behalf, the Moore Law Firm has made clear that I must honestly intend to return to the business. Tanya Moore has told me on numerous occasions that if I do not plan to go back to a business, she cannot file a lawsuit on my behalf against the business because I would get no benefit to the business becoming accessible. When I filed any lawsuit about ADA violations, it was my intention to return to that business once it fixed the access

DECL. RONALD D. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

problems.

16. I did not personally keep copies of the receipts or notes of my visits. I would send the Moore Law Firm my original receipt and my original notes. I am certain I sent proof of my visits to the Moore Law Firm for every business I visited (such as a receipt, business card, or estimate, or other similar type of document). It was the standard practice for me to send the firm my receipt, and in most instances, notes of my visit.

17. Attached to the Appendix as Exhibit 9-3 is a true and correct copy of a receipt I obtained when I visited Zlfred's restaurant in Fresno, California on April 14, 2014. The receipt shows a total of $85.57 without tip, and $98.000 with tip. The receipt shows the last four digits of my credit card – 7245 – and the receipt shows a date of April 14, 2014. Attached to the Appendix as Exhibit 9-5 is a true and correct redacted copy of my credit card statement for the credit card with the last four digits of 7245, also showing my purchase at Zlfred's which also confirms my visit.

18. Prior to April 14, 2014, I had eaten at Zlfred's two or three times. The restaurant is located only about eight miles from where I used to live in Clovis, California.

19. Shortly after visiting Zlfred's on April 14, 2014, I personally completed a handwritten questionnaire about my experience. Attached to the Appendix as Exhibit 9-6 and 9-7 is a true and correct copy of the questionnaire I completed and mailed to the Moore Law Firm soon after my visit to Zlfred's. The questionnaire accurately sets forth the problems I had at Zlfred's because of my disability. Because of these problems, I asked the Moore Law Firm to prepare a lawsuit on my behalf against Zlfred's to make the restaurant fix these problems and make the business fully accessible to me. The questionnaire also accurately states that I went to Zlfred's with my now ex-wife Lynn Moore, and two grandsons, Ronny and Jason Loreto.

20. As I said on my questionnaire, one of the biggest problems I had at Zlfred's was the bathroom. Because of the way it was configured, I could not get my wheelchair to the stall and my grandson, Ronny Loreto, had to help me. There were no grab bars, either which made it all that more difficult to use the toilet. My grandson helped me back into my wheelchair, and then left.

-5-
DECL. RONALD D. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

After I washed my hands, I ended up getting stuck in the restroom and I had to call for my grandson again to come and help me.

21. At the time I filed the complaint about my experience at Zlfred's, I fully intended to return to the restaurant after it fixed the problems and made the business accessible to disabled people like me. In fact, I returned about a year later in 2015, after Zlfred's had become a different restaurant, Yem Kabob. Attached to the Appendix as Exhibit 9-4 is a true and correct copy of my receipt from my visit to Yem Kabob in April 2015. Attached to the Appendix as Exhibit 9-36 is a redacted copy of my credit card statement showing my purchase at Yem Kabob as well.

22. I understand that plaintiff, Fatemeh Saniefar, is claiming I did not visit every business I sued, but instead other people went on my behalf, using my credit card. This is not true at all. I have visited every business that is the basis of all of my access lawsuits.

23. I have been a member of Alcoholics Anonymous for over 30 years and sober for 14 and a half years. During this period, I have acted as a mentor and counselor for other alcoholics and recovering alcoholics. While Ronny was living with me, I would sometimes have him accompany me on drives and wait in the car during my counselling sessions and interventions.

24. I have reviewed video surveillance of me that I am told was taken between March 2015 and May 2015 that shows me walking in my front yard without any assistance, as well as shows me in my neighbor's driveway. In the first instance of me walking in my yard, I was not anticipating going outside, but I had a knock at the door. I opened the door to find my neighbor, Danny, standing there. He was going to fix a water valve for me which had recently failed. He was doing me a favor, so I tried to just go out and discuss with him what needed to be done. So I didn't grab my cane or wheelchair. Even in this video, I was experiencing pain. I walked very slowly. I was risking falling by walking unassisted. On prior occasions when I have attempted to walk unassisted, I have fallen; it is always a risk. On the video where I am standing in my

///

///

///

DECL. RONALD D. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

neighbor's driveway, I am using my car for stability while my neighbor put air in my wheelchair tires.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was signed by me in Texas on the date set forth below.

Dated: Sep 25, 2019

Ronald moore (Sep 25, 2019)

Ronald D. Moore

-7-
DECL. RONALD D. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION