ROGER M. MANSUKHANI (SBN: 164463)
DAVID L. JONES (SBN: 112307)
STEVEN R. INOUYE (SBN: 245024)
GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470

Attorneys for Defendants
Moore Law Firm, A.P.C., Tanya E. Moore,
Kenneth Randolph Moore, Ronald D. Moore,
Zachery M. Best, Marejka Sacks, Mission Law
Firm, A.P.C., Elmer Leroy Falk, Geoshua
Levinson, Rick D. Moore, West Coast Casp and
ADA Services, and Ronny Loreto

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FATEMEH SANIEFAR<br><br>Plaintiff,<br><br>vs.<br><br>RONALD D. MOORE, TANYA E. MOORE, KENNETH RANDOLPH MOORE, MAREJKA SACKS, ELMER LEROY FALK, ZACHARY M. BEST, MOORE LAW FIRM, a California Professional Corporation, MISSION LAW FIRM, a California Professional Corporation, GEOSHUA LEVINSON, RICK D. MOORE, WEST COAST CASP AND ADA SERVICES, a California Corporation, RONNY LORETO, and DOES 1 THROUGH 100, inclusive<br><br>Defendants. | CASE NO. 1:17-cv-00823-LJO-BAM<br><br>**DECLARATION OF DEFENDANT RONNY LORETO IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ SUMMARY ADJUDICATION**<br><br>Date: November 14, 2019<br>Time: 8:30 a.m.<br>Dept: 4<br>Judge: The Hon. Lawrence J. O'Neill |

-1-
DECL. RONNY LORETO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

I, Ronny Loreto, declare as follows:

1. I am over the age of 18 years, and a resident of the State of California. I am a defendant in this action. I have personal knowledge of the following facts and if called as a witness, could and would testify competently thereto.

2. I was born on February 5, 1998 and am currently 21-years old.

3. I understand that Fatemeh Saniefar has claimed that I conspired with my grandfather, Ronald Moore ("my grandfather"), and other defendants in this action, to offer false testimony about my visits with my grandfather to hundreds of businesses since 2009 – when I was only 11-years old. I also understand that Fatemeh Saniefar has claimed that I visited businesses *without* my grandfather present during this same period, used his credit card, and collected receipts in order for my grandfather to file ADA lawsuits. I have not done any of these things.

4. Around sometime in 2012 or early 2013, I began living with my grandfather, Ronald Moore ("my grandfather"), when I was about 14 or 15 years old. While I am not certain of exactly when I moved in, I know I was living with him for all of 2014. When I first moved in, my grandmother, Lynn Moore ("my grandmother"), also lived there. But sometime after I moved in, she and my grandfather separated and my grandmother moved out. Once my grandmother moved out, I lived alone with my grandfather.

5. While living with my grandfather, my grandfather often complained about his pain and made facial expressions that indicated to me that he was in pain. I would also witness my grandfather struggle with moving, and use objects around the house to hold onto when he moved about the house.

6. Some days were better for my grandfather than others. On bad days, he didn't want to go out at all. On good days, we'd go out and do various things like eat, get our hair cut, shop, and just hang out. My grandfather would drive whenever we'd go out together.

7. During this period, my grandfather and I were constantly together. I helped take care of him and did household chores, like the cleaning dishes, yard work, cleaning floors, and things like that. My grandfather had trouble doing chores himself because he said it caused him

-2-
DECL. RONNY LORETO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

too much pain.

8. When my grandfather and I would go out, sometimes I would help him get his wheelchair out of the car and bring it to the driver's door so he could just get into it. Sometimes my grandfather wouldn't let me get the wheelchair because he wanted to do it himself. My grandfather has a lot of pride and wants to do things for himself. I would also help him open doors, and help him get his wheelchair into places that are hard for him to maneuver into.

9. Whenever I went out with my grandfather in public, he always used his wheelchair to get around. He'd also often bring his cane to help him open certain doors and get from the driver's seat of his car to the back of the car for his wheelchair and then back again once we returned to the car.

10. Before my grandmother moved out, she would often join my grandfather and me when we went to lunch or dinner.

11. My brother Jason Loreto would sometimes go out with my grandfather and me on various outings and to eat.

12. When I would go out to businesses with my grandfather, he would often hand me his credit card and have me give it to the cashier and then sign the receipt on his behalf in his presence. I understood that he did this because it was too hard or painful for him to do it himself, especially if the counter was too high. He would sit in his wheelchair while I took care of it.

13. I have never used my grandfather's credit card without him present. My grandfather kept his credit card with him in his wallet. Since I was so young, I doubt any business would have allowed me to use my grandfather's credit card on my own when I was a teenager.

14. My grandfather also had difficulty with handwriting due to his shaky hands. Sometimes he would ask me to complete disability questionnaires on his behalf while he orally dictated to me a summary of the obstacles he encountered at various businesses he visited.

15. I recall that I went to Zlfred's restaurant in Fresno, California with my grandfather, grandmother, and brother, Jason Loreto, in approximately April 2014, when I was 16-years old. I specifically recall my grandfather getting stuck in the Zlfred's bathroom and he couldn't get his

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

1 wheelchair into the stall. So I had to help him out of his wheelchair and onto the toilet and then back onto his wheelchair. I left to go sit back down at our table. Shortly thereafter, I had to then get back up and go help my grandfather because he could not get out of the bathroom because he was stuck between two doors. My brother, Jason Loreto, and I went back and helped my grandfather get out of the bathroom.

16. I also remember that when we were all at Zlfred's that my grandfather also had problems sitting at the table because it didn't let him pull his wheelchair underneath. It was also hard for him to get from the restaurant to the car because of the way a ramp was positioned.

17. My deposition was taken in July 2015 by an attorney named Moji Saniefar. She asked me a lot of questions about places I went with my grandfather. She also asked me about my visit to Zlfred's with my grandfather. I testified honestly about all of these issues during the deposition.

18. I have never provided anyone at the Moore Law Firm, P.C.; Mission Law Firm, A.P.C.; Geoshua Levinson; or Rick Moore, any receipts from purchases I have personally made or purchases that my grandfather has made at any business.

19. I have never provided anyone at the Moore Law Firm, P.C.; Mission Law Firm, A.P.C.; Geoshua Levinson; or Rick Moore any written information of any kind about my visits to any business.

20. I have not conspired with anyone to provide false testimony about my visits to any business with or without my grandfather.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. This declaration was signed by me in Clovis, California on the date set forth below.

Dated: Sep 24, 2019

_Ronald Anthony Loreto (Sep 24, 2019)_
Ronny Loreto

-4-
DECL. RONNY LORETO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION