ROGER M. MANSUKHANI (SBN: 164463)
DAVID L. JONES (SBN: 112307)
STEVEN R. INOUYE (SBN: 245024)
GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470

Attorneys for Defendants
Moore Law Firm, A.P.C., Tanya E. Moore,
Kenneth Randolph Moore, Ronald D. Moore,
Zachery M. Best, Marejka Sacks, Mission Law
Firm, A.P.C., Elmer Leroy Falk, Geoshua
Levinson, Rick D. Moore, West Coast Casp and
ADA Services, and Ronny Loreto

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FATEMEH SANIEFAR<br><br>                Plaintiff,<br><br>vs.<br><br>RONALD D. MOORE, TANYA E. MOORE, KENNETH RANDOLPH MOORE, MAREJKA SACKS, ELMER LEROY FALK, ZACHARY M. BEST, MOORE LAW FIRM, a California Professional Corporation, MISSION LAW FIRM, a California Professional Corporation, GEOSHUA LEVINSON, RICK D. MOORE, WEST COAST CASP AND ADA SERVICES, a California Corporation, RONNY LORETO, and DOES 1 THROUGH 100, inclusive<br><br>                Defendants. | CASE NO. 1:17-cv-00823-LJO-BAM<br><br>**DECLARATION OF DEFENDANT TANYA E. MOORE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ SUMMARY ADJUDICATION**<br><br>Date: November 14, 2019<br>Time: 8:30 a.m.<br>Dept: 4<br>Judge: The Hon. Lawrence J. O'Neill |

I, Tanya E. Moore, declare as follows:

1.     I am over the age of 18 years, and a defendant in this action. I am also an attorney duly licensed to practice law in the State of California. I have personal knowledge of the following facts and if called as a witness, could and would testify competently thereto. Further, I am one of the custodians of record of Moore Law Firm, P.C. and Mission Law Firm, A.P.C., and I am familiar with their document retention policies, filing system and know how documents are kept and maintained by the firms in the ordinary course of business.

2.     I began working as a legal assistant for Law Office of K. Randolph Moore dba Moore Law Firm in March of 1993. After that, I had worked for the firm first as a legal assistant/case manager, paralegal and ultimately as a law clerk/litigation paralegal. In 1996, while I was still employed by Moore Law Firm, I began attending Santa Clara University law school part-time, graduated in December of 1999 and passed the bar in 2000. I then worked as a Deputy City Attorney for the City of Santa Clara for approximately one to two years. I returned to work at Moore Law Firm again around 2001-2002 as an attorney.

3.     When I first worked at the firm, it mainly specialized in criminal defense and administrative hearings. In around 2009, I formed Moore Law Firm, P.C. and began representing persons with disabilities under the Americans with Disabilities Act ("ADA") while still practicing criminal defense.

4.     As I recall, our first client was my disabled brother-in-law, Ronald Moore ("Ron"). My ex-husband Kenneth Randolph Moore ("Randy") wanted to help Ron get access to local establishments.

5.     Randy later introduced me to another disabled individual, Mr. Daniel Delgado, who explained to both of us that the disabled community in Fresno desperately needed our help and that there were no attorneys in Fresno willing to help them to get access. The very first time I met Mr. Delgado was at the Rainbow Bread facility where Mr. Delgado showed us in person how he could not safely transfer from his vehicle to his wheelchair due to the extreme sloping of the parking space, how his wheelchair ran into the middle of the street and left him stranded in his car.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

Mr. Delgado wanted us to help him and other disabled individuals he knew in Fresno to make facilities accessible to them and he later on organized a meeting at the Hometown Buffet and invited us to explain to his disabled friends what rights they have under the ADA. At no time during that informational meeting or afterwards or in fact ever did I or have I promised any "potential plaintiff" a "finder's fee," and I did not witness Randy doing so either. Likewise, at no time during that meeting or afterwards did I or have I advised any "potential plaintiff" that he or she did not have to visit a business before filing a lawsuit.

6.    I first met Ron in around 1993 while working for Randy at the Moore Law Firm. I knew that Ron was Randy's brother, but otherwise did not know much about him or his family.

7.    I became aware of Ron being disabled when his wife Lynn Moore continuously called Randy's office. Lynn could not get hold of Randy and she would ask for my help to get Randy to call her back. Her calls were always about Ron and his medical condition, doctors, as Lynn was looking to Randy for help. At some point Randy started going to Fresno to help his brother. Randy would tell me that Ron was in a lot of pain, taking lots of medication for it and that because of pain Ron would stay in bed and not leave the house for months. I was told that Ron went out with Randy once or twice but he had a lot of difficulties walking and getting around. I heard that Ron was told by a doctor to use a wheelchair or, at least, walker, but that Ron was refusing to use either at that time. I also learned that he had poor balance, was falling and getting hurt all the time. I personally saw him fall at least once.

8.    Sometime in 2009, Randy said he was going to help his brother and explained to me that he learned about ADA laws that require restaurants and other business to make their facilities accessible to the disabled. At that point, I started figuring out the ADA requirements and my first question was if Ron was disabled. I then requested Ron to provide me with some type of medical documentation of his disability. I knew that Ron was on Social Security disability but wanted to know what his diagnosis was. Ron provided me with a letter from his doctor that explained his chronic pain, hydrocephalus, and degenerative disc disease. These conditions were consistent with what I had personally witnessed, and I therefore believed Ron had medical

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

1  conditions that supported his difficulty walking. Accordingly, I believed and understood that Ron

2  had proper grounds to file ADA lawsuits if he was ever denied full and equal accesses to any

3  businesses he had visited. Attached to the Appendix as Exhibit 1-2 is a true and correct copy of

4  the doctor's note that Ron provided to me from Patrick Yun Kee C. Kan, M.D in 2009.

5        9.     From approximately end of 2008 to this day, every time I saw Ron he was either in

6  his wheelchair and/or using a cane when we met in public. I recall a phone call from Ron around

7  2018 when Ron called to tell me that he was in the hospital and that he fell while walking inside

8  of his house. I also often observed Ron complaining of pain.

9        10.    In approximately 2011, a defendant in one of Ronald Moore's cases (*Moore v. CNC*

10  *Apex, et al.*, relating to a Foster's Freeze in Reedley, California) subpoenaed his medical records,

11  and I requested that I be given a copy. I reviewed that information, and saw many references

12  throughout medical records about Ron's pain, disc disease, hydrocephalus, instability dizziness,

13  falls, and use of a wheelchair. My review of Ron's medical records again supported my belief that

14  he had medical conditions that made walking very difficult and dangerous for him. Notably, after

15  the defendant in the *CNC Apex* lawsuit reviewed Ronald Moore's medical records, the case settled.

16  Attached to the Appendix as Exhibit 2 is a true and correct copy of the doctor's letter from Dr.

17  Brian H. Clauge, M.D.

18        11.    While representing Ronald Moore in the lawsuit he filed relating to Zlfred's

19  restaurant in Fresno, as well as two other actions he filed against other Fresno businesses, the issue

20  of Ronald Moore's disability was questioned again. The Zlfred's defendants had obtained

21  surveillance of Ron walking in his front yard and a neighbor's driveway, and argued that Ron was

22  not disabled. Based upon this attack, I sought an expert opinion about Ron's medical condition.

23  In around July 2015, I retained the services of the expert witness service American Medical Experts

24  ("AME"), an expert witness service I had never before worked with, to identify an expert capable

25  of evaluating Ronald's medical records and someone familiar with hydrocephalus.

26        12.    AME worked with the expert and acted as an intermediary between my office and

27  the expert. Ultimately, I was provided with an expert report from Dr. Mark Levin, an individual I

28

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY
ADJUDICATION

had never before known.  Attached to the Appendix as Exhibit 3 is a true and correct copy of the report I reviewed from Dr. Levin confirming that Ron's medical conditions support a conclusion that he is substantially limited in his ability to walk.  This report was entirely consistent with what I had believed about Ron throughout my representation of him in ADA actions.

13.     Further, my review of the surveillance video provided by the defendants in the Zlfred's lawsuit did not change my opinion about Ron. Ron had consistently testified that he can walk for short periods, but that he generally chooses not to both because of pain and the risk of falling. And that testimony was consistent with what I observed and knew about Ron. He had also testified that he has good days and bad days, a fluctuation that I have personally observed many people who experience chronic conditions.  Seeing Ron in his front yard, an area familiar to him, on potentially a "good day" did not change that opinion. And the video showing Ron in a driveway showed him using his vehicle as support when he moved. Again, this video did not change my opinion of Ron's disability after observing him for several years and reading his medical records.

14.     My perception of Ron was actually supported by the video surveillance and subsequent deposition testimony obtained by me of the private investigators hired by Ms. Saniefar. The videos never showed Ron out and about in public without his wheelchair. Whenever Ron was out in public, he was travelling in his wheelchairs. The private investigators confirmed this, testifying that in their over 77 hours of surveillance of Ron, they always saw him get out of his car with his cane, move along his vehicle to the rear, unload his wheelchair, get into his wheelchair, and wheel to his destination.  Attached to the Appendix as Exhibit 122 is a true and correct excerpt of the deposition of Raymond Franco regarding his experience watching Ron. Attached to the Appendix as Exhibit 121 is a true and correct copy of excerpts of the deposition of Nick Franco regarding his experience watching Ron.  I personally took both depositions.  Further, I totaled all the time Raymond and Nick Franco testified they were videoing Ron, and I determined that they were surveilling Ron for over 77 hours, and over nearly three months.  At no time has Fatemeh Saniefar disputed this calculation in the court documents that were filed with this calculation.

15.     From the very first ADA case I took and continuing to today, I require that a client

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

provide proof of his or her visit, usually in the form of a receipt. However, there are times when a client provides a business card along with the date of the visit when no purchase was made, or other documents like an estimate. Occasionally, some clients are not able to enter a business if the facility has a step or a high threshold. But I always require some sort of a reliable form of proof that the client visited the business.

16.     With regards to a client's disability, if the disability is obvious (i.e., a full and complete inability to walk due to paraplegia), then I do not feel the need to obtain medical records. However, where the disability is less apparent, such as when a client can walk for short periods, I initially required some type of independent medical confirmation of the disability from the client.

17.     My initial practice was that once a receipt was received from a client, I would talk to the client and later instruct the firm's paralegal Martha Alvizo or receptionist/office manager Meylin Solozobal to find out what problems he or she encountered at the business for which he or she had sent a receipt. I would then either visit the facility myself and/or ask my investigator son, Geoshua Levinson ("Josh"), to provide photographs and measurements. I would accept the case if the conditions complained of were confirmed by the pre-filing investigation or I rejected the case if the conditions were not confirmed or determined they did not constitute a violation.

18.     In or around August 2010, I began looking for a paralegal with experience in civil litigation to assist with my prosecution of ADA actions. I found Marejka Sacks in or around September 2010 by looking on Craigslist where I found her resume posted. During her interview, Ms. Sacks volunteered that her father was disabled, so she had some experience with persons with disabilities.

19.     Ms. Sacks's responsibilities throughout her employment mostly involved research and writing, as well as case strategy. Ms. Sacks did not generally get involved in client lawsuits until after it was already filed and a defendant appeared in the action. Occasionally, however, I would ask Ms. Sacks to research legal issues involved in a client's potential lawsuit where unique circumstances were presented. Ms. Sacks did not, however, interact with investigators Geoshua Levinson or Rick Moore regarding pre-filing investigations unless those investigations became

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

relevant after a lawsuit was filed (such as at summary judgment or defending a motion to dismiss). Ms. Sacks did not draft Barrier Memos. Ms. Sacks did not interact with clients on a daily basis about the contents of specific lawsuits, nor did she draft complaints with very few exceptions involving unique cases or new theories of liability outside Title III ADA actions.

20. Ms. Sacks did not operate the Moore Law Firm or the Mission Law Firm. Although she assisted me in supervising the other paralegals at the firm as our senior litigation paralegal, she was not the law firm's office manager. That role was always occupied by others.

21. Paralegals Martha Alvizo, Kathy Powell, Whitney Law, and David Guthrie were primarily responsible for receiving client information, client interviews, coordination with investigators, receiving investigator information, and drafting complaints. Other employees also interacted with clients regarding initiating lawsuits, including Elise Dvorochkin and Mary Gray.

22. In 2010, I was frequently receiving envelopes full of numerous receipts from clients with no other information. Sometime between 2010 and 2011, we implemented a new procedure requiring clients to provide notes about their visits to streamline the process and decrease the workload for my paralegals in getting this information. I then explained to all of my clients that going forward we would be expecting a detailed explanation of what barriers they encountered at the facility and how those barriers affected them. Some clients had a problem writing or typing their notes due to quadriplegia or other conditions. For those clients I, Meylin or Martha would take their information over the phone.

23. After implementing the new process of clients providing their notes, I still found that clients did not provide enough information in their notes and my office was still having to contact clients to obtain all the information needed about their visits. I discussed this problem with Ms. Sacks, who as I recall suggested that we draft a questionnaire to provide the clients that included all the information we needed. I agreed and Ms. Sacks drafted the questionnaire, as I recall. That questionnaire was modified over time, but as I recall, went into use around 2012. Attached to the Appendix as Exhibit 9-6 is a true and correct copy of the questionnaire used by the Moore Law Firm and completed by Ron in the Zlfred's action, which is substantially similar to

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

the questionnaire used in other cases.

24.    After paralegal Martha Alvizo left the firm, other paralegals followed.  Paralegal Kathy Powell joined the firm in January of 2012 and I worked closely with Ms. Powell who had substantial client contact and worked with the firm's investigators.  Ms. Powell would take the information she obtained from the clients' visits to businesses and the subsequent investigation and relay that to me.  I would decide whether or not a lawsuit would be filed by us. If a lawsuit was filed, I would have Ms. Powell let the client know. If not, a rejection letter would be sent to the client.  If I accepted representation, Ms. Powell would draft the complaint.

25.    In around April 2012, Ms. Powell and I discussed problems we were having with Ron not providing sufficiently detailed notes about his visits to businesses.  I talked to Ron myself about it and I also directed and authorized Ms. Powell to call him to go over the process and make sure he understood the reasons why we need it done this way.  I am aware that Ms. Powell did in fact discuss these issues with Ron, and that she sent a letter to Ron and his then wife, Lynn Moore, detailing their conversation on April 12, 2012.  Attached to the Appendix as Exhibit 5-2 is a true and correct copy of Ms. Powell's letter.

26.    Sometime around between 2012-2013, I also began having the firm's paralegals prepare a document called a "Barrier Memo." That document was first suggested and created by paralegal Marejka Sacks to my best recollection.  It takes the information provided by the client in the questionnaire and summarizes it.  The Barrier Memo is then provided to the firm's investigators who are instructed to observe and photograph the listed conditions, and indicate on the Barrier Memo whether it is a "valid" claim.  That Barrier Memo, along with the photographs the investigator takes, are then returned to the firm for review.  Attached to the Appendix as Exhibit 9-9 is a true and correct copy of the firm's Barrier Memo used in the Zlfred's action. While the Barrier Memo template may have been modified over time, it is substantially the same as the Barrier Memo that we first began using.

27.    After paralegal Kathy Powell left the firm, paralegals Whitney Law and David Guthrie joined.  Ms. Law began with the firm in January 2013, and Mr. Guthrie began in March

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

2013.  Both Ms. Law and Mr. Guthrie did the same work as Ms. Powell, but later, Mr. Guthrie focused more on filing complaints, effecting service of process, and speaking with prospective clients who contacted the firm to obtain information about their claims and relay that information to me.

28.     Shortly after Ms. Law joined the firm, she suggested further improvement of the procedures and created a checklist for how ADA cases should proceed for her use and for other paralegals that handle case initiation to use. Attached to the Appendix as Exhibit 4 is a true and correct copy of that checklist that I approved and which accurately sets forth our procedures for initiating cases and/or rejecting them.

29.     Ms. Law is still employed at the firm.  Her duties continue to include reviewing client receipts and questionnaires, coordinating with the investigators to go to the business and review the client claims, reviewing the information received from the investigators, and then drafting the complaints.

30.     Ms. Law also maintains databases with information about cases that have been filed, as well as an ongoing list of cases that are rejected.

31.     With regards to Ron, I rejected at least 200 of the cases he asked that our firm represent him in under the ADA.  I calculated this number based on all cases that were included in Ron's list of rejected cases, but the number is likely more.  Attached to the Appendix as Exhibit 8 is a true and correct copy of a list of Ron's rejected cases.  When a case was rejected I would instruct an office manager or paralegal to send a letter of rejection.  Attached to the Appendix as Exhibit 7 are true and correct copies of some of these letters acknowledging Ron's requests to file lawsuits along with his receipts, his notes, the firm's internal notes and letters of rejection.  Attached to the Appendix as Exhibit 6 is a true and correct copy of a list containing a contemporaneous update to Ron regarding his accepted and rejected cases which was located in his files.

32.     I first became aware that Ron had visited Zlfred's restaurant in Fresno, California, when we received his questionnaire and receipt.  I assigned a task to Elise Dvorochkin to send Ron

a "receipt letter" on April 21, 2014.  I also asked Whitney to prepare a barrier memo based on the information included in the questionnaire and to arrange a prefiling site inspection.  Attached to the Appendix as Exhibit 9-3 is a true and correct copies of the receipts Ron provided.  Attached to the Appendix as Exhibit 9-6 to Exhibit 9-7 is a true and correct copy of the questionnaire Ron completed.  Attached to the Appendix as Exhibit 9-8 is a true and correct copy of the letter acknowledging Ron's request to file a lawsuit regarding his experience at Zlfred's.  Attached to the Appendix as Exhibit 9-9 to 9-10 is a true and correct copy of the barrier memo Whitney created based upon Ron's questionnaire.

33.    I travelled to Fresno and visited the location with Geoshua Levinson.  However, Zlfred's was closed at the time.  While we were able to verify Ron's claims that related to the exterior conditions, I instructed Geoshua Levinson to return to look at the interior claims and take photographs before I would file a lawsuit.

34.    Once paralegal Whitney Law let me know that Geoshua Levinson had returned and investigated the interior conditions Ron had complained about on his Zlfred's questionnaire, I had her instruct a legal assistant to draft a complaint.  However, Geoshua Levinson could only verify nine out of ten conditions listed on the Barrier Memo. The tenth claim regarding the counter height being too high was not verified by Geoshua Levinson.  Therefore, I instructed Whitney Law not to include that claim in the complaint. Attached to the Appendix as Exhibit 9-10 to 9-11 is a true and correct copy of the barrier memo Geoshua Levinson completed and provided to the firm.

35.    After a client reported a potential claim and provided a receipt, my firm would have an investigator inspect the business (or I would inspect it myself) and I would determine whether the claims presented by the client were sufficiently supported to warrant the filing of a lawsuit.  If I was unable to obtain sufficient information to support lawsuit or if I otherwise did not want to file a lawsuit, I would have my staff sent the client a letter rejecting the case.  If I believed the client's claims warranted a lawsuit, I would instruct a paralegal to prepare the complaint for my review and then have it sent to the client for review. Once the complaint was approved by the client, I would have the complaint filed.  If additional post-filing conditions relating to a plaintiff's

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

disability are identified by investigators, I will amend the complaints to include these additionally discovered barriers. It has never been my practice, or the practice of anyone at the Moore Law Firm or Mission Law Firm, both of which I managed, to send anyone to a business to "discover" barriers for purposes of creating standing in a lawsuit. Nor did I ever drafted a complaint alleging that my clients encountered barriers I knew they never encountered. No one at the firm ever suggests to clients that they visit a specific business for purpose of filing a lawsuit. The first we learn of a client's visit to a business is when the client communicates with us about his or her visit. There is no shortage of cases and complaints we receive from our clients on a daily basis and we are doing our best to process our client's requests timely and avoid any backlog. It has never been my practice to include claims in a complaint that I was not able to verify by sending an investigator to the business or from evidence provided by any client, including Ronald Moore.

36. With the exception of the Zlfred's action, I have never communicated with Ronny Loreto about the subject of any lawsuit Ron has filed. I spoke to Ronny Loreto about the Zlfred's action because he was a witness in that case. I estimate that I have only had around 5 very brief in person interactions with Ronny Loreto in my life. Ronny Loreto later became my client when Ms. Saniefar filed this RICO lawsuit against him for accompanying his grandfather Ron on his visit to Zlfred's. Ronny Loreto has never obtained or provided receipts to the Moore Law Firm or Mission Law Firm on behalf of Ronald Moore for *any* reason, including any receipts for businesses.

37. I have always instructed my investigators Geoshua Levinson, Rick Moore and Robert Ferris to review, confirm and document claims already made to me by my clients. I have never sent my investigators to any businesses which were not previously visited by my clients.

38. In fact, there are many instances where an investigator visits a business to review the claims made by the client, and there is insufficient information to support one or more of the claims. If a specific claim cannot be confirmed, I do not include it in the client's complaint. Where I have concerns about the claims altogether, I will not file a complaint or agree to represent the client in that case, and will send the client a rejection letter.

39. Fatemeh Saniefar has alleged that I bring these lawsuits in order to extract quick settlements. She is wrong, and my track record shows that. If that were true, then I would abandon cases when there are no quick settlements. But I don't. In fact, my clients often visit Starbucks and Home Depot. Both Starbucks and Home Depot take a very aggressive defense position in ADA actions (often using Sheppard Mullen as defense counsel). Yet I continue to agree to represent any client who presents meritorious claims against Starbucks, Home Depot or any other company.

40. I agree to represent clients who are disabled, and who present meritorious claims against businesses that deny them full and equal access. My process in evaluating claims is very stringent, and I stand behind the lawsuits that are filed because I have verified the claims.

41. The verification of claims is clear in the Zlfred's lawsuit I filed on behalf of Ron because Saniefar never disputed that her restaurant was not accessible, and instead chose ultimately to fix all the access problems. Saniefar at least tacitly acknowledged she broke the law, but now argues it wasn't Ron's place to enforce it because she claims he is not disabled and did not visit her restaurant. She has no evidence to support this position. Instead, her actions and those of her attorneys have made clear this is yet another attempt to stop me (and similar firms) from representing clients in ADA lawsuits. It will not work.

42. I have made no intentional misrepresentations in any pleading or discovery response I signed in any action, including any lawsuit filed by me on behalf of Ron. I have at all times believed Ron is disabled, that he visited the businesses he asked us to bring a lawsuit against, that he encountered the conditions he said he encountered, and that those conditions caused him difficulty, discomfort or embarrassment. My belief is based upon the information obtained from Ron regarding his visits, as verified through detailed investigations. I have not proceeded with any lawsuit that I did not believe had sufficient merit, and as such, I have rejected hundreds of Ron's requests for representation.

43. My understanding is that Fatemeh Saniefar has limited the scope of her claims to be tried in this RICO action to approximately 100 of Ron's lawsuits which *Plaintiff specifically*

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

*selected* out of approximately 250 of Ron's cases which were litigated between 2009 and the present, together with several additional lawsuits she identified in her First Amended Complaint.

44.     The procedure followed in the Ron cases Saniefar has identified is the same for each case because that is the procedure that is followed in every case – a client sends in his or her information; we send a letter acknowledging receipt and saying we will investigate the claims; we prepare a Barrier Memo from the client's information and/or further communications with the client; the Barrier Memo is sent to an investigator with instructions to review the claims and take photographs; the investigator returns the Barrier Memo with his notes as well as photographs of the business; the client is notified either that we have accepted the case in which case a fee agreement is provided, or the client is advised that we have decided not to file a lawsuit on his or her behalf.

45.     Following is a discussion of each of the cases filed by **<u>Ron Moore</u>** that Saniefar has put at issue in this RICO action to date:

46.     **Moore v. Saniefar**.  On or around April 21, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Zlfred's.  Attached to the Appendix as Exhibit 9-3 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibits 9-6 and 9-7 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 9-8 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.  On or around May of 2015, my office received Ronald Moore's receipt from his visit to Yem Kabob.  Attached to the Appendix as Exhibit 9-4 is a true and correct copy of the receipt my office received from Ronald Moore.  Ronald Moore also provided my office with a copy of his credit card statements for his two visits which are attached to the Appendix as Exhibit 9-5 and 9-36.

47.     After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to visit the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached

1    to the Appendix as Exhibit 9-9 and 9-10 is a true and correct copy of the Barrier Memo that was

2    provided to the investigator and returned to my office with the right column completed with

3    investigator's findings. (See returned Barrier Memo attached as Exhibit 9-11 and 9-12).

4        48.    Based upon the information my office received from Ronald Moore, the

5    investigator and other sources, I believed that Ronald Moore had valid case and decided to file a

6    disability lawsuit on his behalf.  Ms. Law provided me with the complaint after it was drafted my

7    for final review and comment.  I then went over the complaint with Ronald, and then had sent it to

8    him for his review and verification. Attached to the Appendix as Exhibit 9-13 is a true and correct

9    copy of my letter accepting the case, Attached to the Appendix as Exhibit 9-14 through 9-23 is a

10   true and correct copy of the verified Complaint my office filed on his behalf.   In December 2014,

11   Ronald hired a California Certified Access Specialist ("CASp") expert, Michael Bluhm, to inspect

12   Zlfred's pursuant to a Rule 34 of the Federal Rules of Civil Procedure Demand for Inspection. Mr.

13   Bluhm identified other conditions at Zlfred's that would interfere with access to the restaurant by

14   individuals with mobility impairments, and he prepared a report of his findings for the Moore Law

15   Firm. After reviewing Mr. Bluhm's report, Tanya caused a First Amended Complaint ("FAC") to

16   be drafted and filed to include these additionally discovered conditions, which FAC was filed on

17   January 29, 2015. Attached to the Appendix as Exhibit 9-24 through 9-35 also is a true and correct

18   copy of the verified First Amended Complaint my office filed on his behalf.

19       49.    **Moore v. A & A Tarzana Plaza Limited Partnership, Big Lots Stores, Inc., an**

20   **Ohio Corporation; PNS Stores, Inc., A California Corporation; Surinder K. Dhanda, aka**

21   **Surinder Pal Kaur Dhanda, dba Clovis Fair Deal Liquor.**   On or around May of 2012, my

22   office received Ronald Moore's receipt and notes/questionnaire from his visits to Clovis Fair Deal

23   Liquor & Market and Big Lots.  Attached to the Appendix as Exhibits 10-2 and 10-3 are true and

24   correct copies of the receipts my office received from Ronald Moore.  Attached as Exhibit 10-2

25   and 10-3 are the notes and attached as Exhibits 10-4 through 10-7 are questionnaires we received

26   from Ronald Moore.   Attached as Exhibits 10-8, 10-9 and 10-10 through 10-15 are the

27   acknowledgment letters my office sent Ronald Moore after receiving documentation of his visit.

28

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY
ADJUDICATION

50.     After receiving this information from Ronald Moore, my office confirmed that barriers identified by Ronald Moore were legally valid.

51.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 10-16 is a true and correct copy of my letter accepting the case for both Big Lots and Clovis Fair Deal Liquor, Attached to the Appendix as Exhibit 10-17 to 10-19 is a true and correct copy of the cover letter and first page of the complaint and verification sent to Ronald Moore and signed by him, and Attached to the Appendix as Exhibit 10-20 through 10-31 is the transmittal letter to Ronald Moore along with a copy of the verified Complaint my office filed on his behalf.

52.     **Moore v. A & K Partnership, Mohsinhussein dba Primos Family Market; Rosalinda Morales dba Tacos La Piedad.** On or around February 18, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Primos Family Market and Tacos La Piedad.  Attached to the Appendix as Exhibits 11-3 and 11-4, are true and correct copies of the receipts my office received from Ronald Moore.  Attached as Exhibits 11-20 through 21, and 11-22 through 23 are questionnaires we received from Ronald Moore, and attached as Exhibit 11-2 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

53.     After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to visit the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 11-5 through 6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

54.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a

-15-

disability lawsuit on his behalf. Attached to the Appendix as Exhibit 11-7 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 11-8 through 11-19 is a true and correct copy of the verified Complaint my office filed on his behalf.

55. **Moore v. AJCA 0929, LLC; PEK CC, Inc. dba Taft Hwy Chevron; Chevron U.S.A. Inc. dba Chevron Station #209125; Ravinder Dhaliwal dba Subway 27425.** On or around February 24, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Subway and Taft Highway Chevron Facilities. Attached to the Appendix as Exhibits 12-2 and 12-5 are a true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibits 12-6 through 12-9 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 12-3 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

56. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to visit the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 12-10 and 12-11 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

57. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as 12-4 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 12-13 through 12-23 is a true and correct copy of the verified Complaint my office filed on his behalf.

58. **Moore v. Albashah dba 1 Start Mini Mart.** On or around February 18, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to 1 Star Mini Mart. Attached to the Appendix as Exhibit 13-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 13-3 and 13-4 are the notes/questionnaire we

received from Ronald Moore and attached as Exhibit 13-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

59. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to visit the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 13-6 and 13-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

60. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 13-8 and 13-19 through 13-26 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 13-9 through 13-18 is a true and correct copy of the verified Complaint my office filed on his behalf.

61. **Moore v. AMI LTD, A California Limited Partnership; Big 5 Corp. dba Big 5 Sporting Goods.** On or around July 31, 2013, my office received Ronald Moore's receipt from his visits to Big 5 of September 14 and September 26, 2012. Attached to the Appendix as Exhibit 14-2 is a true and correct copy of the receipt my office received from Ronald Moore. On or about April 21, 2014, my office received one more Ronald Moore's receipt from his visit to Big 5 of April 14, 2014 and his notes/questionnaire. Attached to the Appendix as Exhibit 14-3 is a true and correct copy of the receipt my office received from Ronald Moore. Attached as Exhibit 14-4 through 14-5 are the notes/questionnaire we received from Ronald Moore.

62. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to visit the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached

to the Appendix as Exhibit 14-6 and 14-7 are true and correct copies of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

63. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 14-8 through 14-17 is a true and correct copy of the verified Complaint my office filed on his behalf.

64. **Moore v. Singh dba Gas N Save.** On or around January 14, 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Gas N Save. Attached to the Appendix as Exhibit 15-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 15-3 through 15-4 are the notes/questionnaire sent to Ronald Moore and attached as Exhibit 15-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

65. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to visit the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 15-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

66. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 15-7 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 15-8 through 15-18 is a true and correct copy of the verified Complaint my office filed on his behalf.

67. **Moore v. Armey, Gill dba Arco.** On or around August 12, 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Arco. Attached to the

Appendix as Exhibit 16-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 16-3 through 16-4 are the notes/questionnaire we received from Ronald Moore.

68.     After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to visit the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 16-5 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

69.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 16-6 through 16-14 a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 16-15 through 16-24 is a true and correct copy of the verified Complaint my office filed on his behalf.

70.     **Moore v. B & S Fresh Investments (Bobby Salazar's).** On or around September of 2010, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Bobby Salazar's. Attached to the Appendix as Exhibit 17-2 is a true and correct copy of the receipt my office received from Ronald Moore.

71.     After receiving this information from Ronald Moore, I called him to obtain information regarding his claims about encountering barriers during his visit to the business. My office then conducted investigation to confirm whether or not the barriers identified by Ronald Moore were legally valid.

72.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 17-3 is a true and correct copy of my letter accepting the case. Attached to the Appendix as Exhibit 17-4 to 17-7 is a true

and correct copy of the fee agreement executed by Ronald Moore, and Attached to the Appendix as Exhibit 17-8 to 17-20 is a true and correct copy of the draft complaint sent to Ronald Moore for his review.

73. **Moore v. Jasvinder Singh Bhangu dba A-1 Liquor.** On or around February 28, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to A-1 Liquors. Attached to the Appendix as Exhibit 18-2 is a true and correct copy of the receipt(s) my office received from Ronald Moore, attached as Exhibit 18-3 through 18-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 18-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

74. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 18-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

75. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 18-7 through 18-15 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 18-16 through 18-25 is a true and correct copy of the verified Complaint my office filed on his behalf.

76. **Moore v. Beal Properties, Inc., A California Corporation, Chahal dba Johnny Quik #117.** Between April of 2012 and end of 2013, my office received several of Ronald Moore's receipts and notes/questionnaire from his visit to Johnny Quik 117. Attached to the Appendix as Exhibit 19-2 through 19-5 are true and correct copies of these receipt my office received from Ronald Moore, attached as Exhibit 19-6 through 19-7 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 19-8 is the acknowledgement email my office sent Ronald

Moore after receiving documentation of his visit.

77.     After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to visit the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 19-9 through 19-10, is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings as seen in Exhibit 19-11 through 19-12.

78.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 19-13 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 19-14 through 19-23 is a true and correct copy of the draft complaint sent to Ronald Moore for his review, and Attached to the Appendix as Exhibit 19-24 through 19-34 is the verified Complaint my office filed on his behalf.

79.     **Moore v. Beal Properties, Inc.; Singh dba Johnny Quik #155**.  On or around August 9, 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Johnny Quik #155.  Attached to the Appendix as Exhibit 20-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 20-3 through 20-4 are the notes/questionnaire we received from Ronald Moore.

80.     After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 20-5 is a true and correct copy of the Barrier Memo that was provided to the investigator and Exhibit 20-6 is a true and correct copy of the Barrier Memo as returned to my office with the right column completed with investigator's findings.

-21-

81. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 20-7 through 20-12 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 20-13 through 20-22 is a true and correct copy of the verified Complaint my office filed on his behalf.

82. **Moore v. Singh Bhaurla dba Elite Liquors & Van Ness Investment Company.** On or around August 12, 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Elite Liquors. Attached to the Appendix as Exhibit 21-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 21-3 through 21-4 are the notes/questionnaire we received from Ronald Moore.

83. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 21-5 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

84. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 21-6 through 21-15 is a true and correct copy of the verified Complaint my office filed on his behalf.

85. **Moore v. Borrelli; Rivera dba El Ranchito Bakery.** On or around June 10, 2014 my office received Ronald Moore's receipt and notes/questionnaire from his visit to El Ranchito Bakery. Attached to the Appendix as Exhibit 22-3 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 22-4 through 22-5 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 22-6 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

86.     After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 22-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

87.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 22-8 through 22-16 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 22-27 through 22-26 is a true and correct copy of the verified Complaint my office filed on his behalf.

88.     **Moore v. Hassan Chaibi, dba Sunrise Mini Mart.** On or around March 28, 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Sunrise Mini Mart. Attached to the Appendix as Exhibit 23-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 23-3 through 23-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 23-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

89.     After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 23-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and Exhibit 23-7 returned to my office with the right column completed with investigator's findings.

90.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a

disability lawsuit on his behalf. Attached to the Appendix as Exhibit 23-8 through 23-18 is a true and correct copy of the verified Complaint my office filed on his behalf.

91. **Moore v. Chan's Cedar Chinese Food, LLC**. On or around February 5, 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Chan's Cedar Chinese Food. Attached to the Appendix as Exhibit 24-2 is a true and correct copy of the receipt(s) my office received from Ronald Moore, attached as Exhibit 24-3 through 24-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 24-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

92. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 24-6 through 24-8 is a true and correct copy of the Barrier Memo that was provided to the investigator and Exhibit 24-9 through 24-11 is a true and correct copy of the Barrier Memo as returned to my office with the right column completed with investigator's findings and transmittal emails.

93. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 24-15 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 24-16 through 24-35 are true and correct copies of the drafts of the complaint sent to Ronald Moore for his review, and Attached to the Appendix as Exhibit 24-36 through 24-47 is the verified Complaint my office filed on his behalf.

94. **Moore v. Cisneros dba Serrano Chipotle Mexican Restaurant.** On or around February 2012, my office received Ronald Moore's receipts and notes/questionnaire from his visit to Serrano Chipotle. Attached to the Appendix as Exhibit 25-2 through 25-5 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 25-2 through

25-5 are the notes/questionnaire we received from Ronald Moore.

95. After receiving this information from Ronald Moore, my office investigated and confirmed the barriers Ronald Moore encountered as legally valid.

96. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 25-6 through 25-15 is a true and correct copy of the Complaint my office filed on his behalf.

97. **Moore v. Cloud, Rodas, dba K&C House of Donuts.** Between May of 2010 and end of 2012, my office received several Ronald Moore's receipts and notes/questionnaire from his visits to House of Donuts. Attached to the Appendix as Exhibit 26-2 through 26-3 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibits 26-4 through 26-6 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 26-7 and 26-8 are the acknowledgement letters my office sent Ronald Moore after receiving documentation of his visit.

98. After receiving this information from Ronald Moore, my office engaged an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.

99. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 26-9 through 26-19 is a true and correct copy of the draft complaint sent to Ronald Moore for his review, and Attached to the Appendix as Exhibit 26-20 through 26-30 is the verified Complaint my office filed on his behalf.

100. **Moore v. CST California Stations, Inc., dba Valero California Retail Company.** On or around July 1, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Valero Gas Station. Attached to the Appendix as Exhibit 27-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 27-3 through 27-4 are the notes/questionnaire we received from Ronald Moore and

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

attached as Exhibit 27-5 is the acknowledgement letter my office sent Ronald Moore after

receiving documentation of his visit.

101.    After receiving this information from Ronald Moore, my office created the attached

"Barrier Memo" which summarized his claims about encountering barriers during his visit to the

business.  My office then provided the Barrier Memo to an investigator in order to inspect the

business and confirm whether or not the barriers identified by Ronald Moore were legally

valid.  Attached to the Appendix as Exhibit 27-6 through 27-8 is a true and correct copy of the

Barrier Memo that was provided to the investigator and returned to my office completed with

investigator's findings.

102.    Based upon the information my office received from Ronald Moore, the

investigator and other sources, I believed that Ronald Moore had valid case and decided to file a

disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 27-9 is a true and correct

copy of my letter accepting the case, Attached to the Appendix as Exhibit 27-10 through 27-19 is

a true and correct copy of the verified Complaint my office filed on his behalf.

103.    **Moore v. DeSantis; Avonce dba M-N-M Shear & Clipper Cuts; Singh dba**

**Squire Liquor.**  On or around February 11, 2014, my office received Ronald Moore's receipts

and notes/questionnaire from his visit to MNM Shear & Clipper Cuts and Squire Liquor. Attached

to the Appendix as Exhibit 28-2 is a true and correct copy of the receipt my office received from

Ronald Moore, attached as Exhibit 28-3 through 28-6 are the notes/questionnaire we received from

Ronald Moore and attached as Exhibit 28-7 is the acknowledgement letter my office sent Ronald

Moore after receiving documentation of his visit.

104.    After receiving this information from Ronald Moore, my office created the attached

"Barrier Memo" which summarized his claims about encountering barriers during his visit to the

business.  My office then provided the Barrier Memo to an investigator in order to inspect the

business and confirm whether or not the barriers identified by Ronald Moore were legally

valid.  Attached to the Appendix as Exhibit 28-8 through 28-9 is a true and correct copy of the

Barrier Memo that was provided to the investigator and returned to my office with the right column

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY
ADJUDICATION

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

completed with investigator's findings.

105.  Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 28-10 through 28-20 is a true and correct copy of the verified Complaint my office filed on his behalf.

106.  **Moore v. Singh Dhaliwal dba Fresno Gas & Liquor**.  On or around July 1, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Fresno Gas & Liquor.  Attached to the Appendix as Exhibit 29-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 29-3 through 29-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 29-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

107.  After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 29-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and Exhibit 29-7 is a true and correct copy of the Barrier Memo returned to my office with the right column completed with investigator's findings.

108.  Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 29-8 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 29-9 through 29-18 is a true and correct copy of the verified Complaint my office filed on his behalf.

109.  **Moore v. Dhillon (Fig Tree Liquor, Baskin-Robbins).**  On or around March 11, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visits to Baskin-Robbins and Fig Tree Liquor.  Attached to the Appendix as Exhibit 30-2 and 30-3 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 30-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

4 through 30-8 are the notes/questionnaire we received from Ronald Moore.

110.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 30-9 through 30-11 are true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

111.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 30-12 are true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 30-13 through 30-24 is the verified Complaint my office filed on his behalf.

112.    **Moore v. Dhillon Brothers, No. 1, LLC, Rascon dba The Green Mile Smoke Shop; Wong dba Bamboo Garden Restaurant, Save Mart Supermarkets.**  On or around March 11, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Bamboo Garden Restaurant and The Green Mile Smokeshop.  Attached to the Appendix as Exhibit 31-2 is a true and correct copy of the receipt my office received from Ronald Moore of his visit to Bamboo Garden Restaurant.  Attached to the Appendix as Exhibit 31-3 is a true and correct copy of the receipt my office received form Ronald Moore of his visit to The Green Mile Smoke Shop. On or around 4/21/2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Save Mart.  Attached to the Appendix as Exhibit 31-4 is a true and correct copy of the receipt my office received from Ronald Moore of his visit to Save Mart.  Attached as Exhibits 31-5 through 31-10 are the notes/questionnaires we received from Ronald Moore regarding his visits to all three facilities and attached as Exhibit 31-11 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visits to all three facilities.

113.    After receiving this information from Ronald Moore, my office created the attached

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

**Gordon Rees Scully Mansukhani, LLP**
**633 West Fifth Street, 52nd floor**
**Los Angeles, CA 90071**

"Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 31-12 through 31-14 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

114. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 31-15 through 31-23 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 31-24 through 31-35 is the verified Complaint my office filed on his behalf.

115. **Moore v. Dollar Tree Stores, Inc.** On or around June of 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Dollar Tree Store. Attached to the Appendix as Exhibit 32-2 through 32-3 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 32-4 through 32-5 are the notes/questionnaire we received from Ronald Moore.

116. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 32-6 through 32-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

117. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 32-10 through 32-19 is a true and correct copy of the verified Complaint my office filed on his behalf.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

118. **Moore v. Karakashian dba Dollar Place.** On or around July 3, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Dollar Place. Attached to the Appendix as Exhibit 33-2 is a true and correct copy of the receipt(s) my office received from Ronald Moore, attached as Exhibit 33-3 through 33-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 33-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

119. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 33-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and Exhibit 33-7 is a true and correct copy of it returned to my office with the right column completed with investigator's findings.

120. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 33-8 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 33-9 through 33-18 is a true and correct copy of the verified Complaint my office filed on his behalf.

121. **Moore v. El Toro Partners, Inc. dba El Toro Café.** On or around May 29, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to El Toro Cafe. Attached to the Appendix as Exhibit 34-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 34-3 through 34-5 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 34-6 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

122. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the

-30-

business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 34-7 through 34-8 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

123. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 34-9 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 34-10 through 34-20 is a true and correct copy of the verified Complaint my office filed on his behalf.

124. **Moore v. Shop N Save**. On or around August 9, 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Shop N Save Liquor. Attached to the Appendix as Exhibit 35-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 35-3 through 35-4 are the notes/questionnaire we received from Ronald Moore.

125. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 35-5 through 35-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

126. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 35-7 through 35-15 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 35-16 through 35-25 is a true and correct copy of the verified Complaint my office filed on his behalf.

127. **Moore v. Elite Vapor Shop, Inc., Bullard Palm Investors.** On or around July 1,

-31-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Elite Vapor Shop. Attached to the Appendix as Exhibit 36-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 36-3 through 36-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 36-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

128. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 36-6 through 36-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

129. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 36-8 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 36-9 through 36-18 is a true and correct copy of the verified Complaint my office filed on his behalf.

130. **Moore v. E-Z-N Quick.** On or around March of 2012, my office received Ronald Moore's receipt and notes/questionnaire from his visit to EZ N Quick. Attached to the Appendix as Exhibit 37-2 and 37-3 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibits 37-2 and 37-4 are the notes/questionnaire we received from Ronald Moore.

131. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 37-5 is a true and correct copy of the Barrier Memo

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

132. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 37-6 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 37-7 through 37-16 is a true and correct copy of the verified Complaint my office filed on his behalf.

133. **Moore v. Fajita Fiesta Mexican Grill & Cantina.** On or around August of 2010, my office received Ronald Moore's receipt and notes/questionnaire from his visits to Fajita Fiesta. Attached to the Appendix as Exhibits 38-2 and 38-6 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 38-3 through 38-6 are the notes/questionnaire we received from Ronald Moore, and attached as Exhibit 38-7, and 38-8 are the acknowledgement letters my office sent Ronald Moore after receiving documentation of his visit.

134. After receiving this information from Ronald Moore, my office confirmed validity of his claims about encountering barriers during his visit to the business and filed a complaint.

135. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 38-9 is a true and correct copy of my letter accepting the case.

136. **Moore v. Fouy Chau dba Donut Nation.** On or around October of 2010 my office received Ronald Moore's receipts and notes/questionnaire from his visits to Donut Nation. Attached to the Appendix as Exhibits 39-2, 39-5 and 39-6 are true and correct copy of the receipts my office received from Ronald Moore, attached as Exhibit 39-2 through 39-6 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 39-8 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

137. After receiving this information from Ronald Moore, my office confirmed accuracy

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

of his claims about barriers he encountered during his visits to the business and filed a complaint on his behalf.

138.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 39-7 is a true and correct copy of my letter accepting the case.

139.    **Moore v. Fresno Shaw Blackstone, LLC, Bertao Family Industries, Inc. dba Papa Murphy's, Al Bawadi, Inc. dba Elbasha Mediterranean Grill, Dimas Manuel Inc., dba Ramos Furniture, Ali Abdullah, dba USA Furniture.**  On or around February 2013, my office received several Ronald Moore's receipt and notes/questionnaire from his visits to Papa Murphy's, El Basha, Ramos Furniture and USA Furniture.  Attached to the Appendix as Exhibit 40-2 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 40-3 through 40-17 are the notes/questionnaire we received from Ronald Moore.  A true and correct copy of the rejection letter is attached as Exhibit 40-43.

140.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 40-12 through is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

141.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 40-18 through 40-26 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 40-27 through 40-42 is a true and correct copy of the verified Complaint my office filed on his behalf.  Also attached as Exhibit 40-43 is a true and correct copy of my letter rejecting filing of a

-34-

lawsuit against Casual Male XL and Furniture One facilities.

142. **Moore v. Gharibeh dba Abe's Liquor & Food.** On or around July 1, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Abe's Liquor Food. Attached to the Appendix as Exhibit 41-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 41-3 through 41-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 41-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

143. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 41-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

144. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 41-7 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 41-8 through 41-17 is a true and correct copy of the verified Complaint my office filed on his behalf.

145. **Moore v. Ghuman, dba Johnny Quik #143.** On or around February 21, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Johnny Quik #143. Attached to the Appendix as Exhibit 42-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 42-3 through 43-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 42-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

146. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the

business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 42-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

147. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 42-7 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 42-8 through 42-18 is a true and correct copy of the verified Complaint my office filed on his behalf.

148. **Moore v. Gong & Young, Inc. Tshjian, Inc. dba Baskin-Robbins, Dhillon Holdings, LTD, dba Stop n Save Liquor**. Between 2010 and 2014, my office received Ronald Moore's receipts and notes/questionnaire from his visit to Stop-n-Save Liquor, Baskin-Robbins, Yellow Dog Signs and Graphics, Win Wah Chinese Restaurant. Attached to the Appendix as Exhibit 43-2 through 43-6 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 43-7 through 43-14 are the notes/questionnaire we received from Ronald Moore.

149. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 43-16 through 43-17 are true and correct copy of the Barrier Memo that was provided to the investigator and 43-15 as returned to my office with the right column completed with investigator's findings.

150. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 43-18 through 43-26 is a true

and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 43-27 through 43-48 is a true and correct copy of the verified Complaint my office filed on his behalf.

151. **Moore v. Gong's Market (Chapala).** On or around December 16, 2010, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Chapala. Attached to the Appendix as Exhibit 44-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 44-2 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 44-3 and 44-5 are the acknowledgement letters my office sent Ronald Moore after receiving documentation of his visit.

152. After receiving this information from Ronald Moore, my office confirmed accuracy of the claims about encountering barriers during his visit to the business.

153. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 44-4 is a true and correct copy of the draft of my letter accepting the case.

154. **Moore v. Gulamali (Kwik Korner Liquor).** On or around December of 2012, my office received Ronald Moore's receipts and notes/questionnaire from his visit to Kwik Korner. Attached to the Appendix as Exhibit 45-3 are true and correct copies of that receipt. We also received another receipt for Ronald Moore in 2013. Attached to the Appendix as Exhibit 45-2 is a true and correct copy of the receipt received from Ronald Moore, attached as Exhibits 45-3 through 45-5 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 45-6 through 45-8 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

155. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 45-9 is a true and correct copy of the Barrier Memo

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

that was provided to the investigator and Exhibit 45-10 is a true and correct copy of it as returned to my office with the right column completed with investigator's findings.

156. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 45-11 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 45-12 through 45-21 is a true and correct copy of the verified Complaint my office filed on his behalf.

157. **Moore v. Hadjis (Madera Mini Mart)** On or around June 30, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Madera Mini Mart. Attached to the Appendix as Exhibit 46-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 47-3 through 46-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 46-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

158. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 46-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

159. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 46-7 through 46-17 is a true and correct copy of is the verified Complaint my office filed on his behalf.

160. **Moore v. Hamid, dba California Market.** On or around 2012-2013, my office received Ronald Moore's receipts and notes/questionnaire from his visits to California Market. Attached to the Appendix as Exhibits 47-2 through 47-4 are true and correct copies of the

-38-

receipts my office received from Ronald Moore, attached as Exhibits 47-5 through 47-11 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 47-11 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

161.     After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 47-13 through 47-15 is a true and correct copy of the Barrier Memo and communications with the investigator regarding same which was provided to the investigator and Exhibit 47-16 through 47-17 is a true and correct copy of the Barrier Memo returned to my office with the right column completed with investigator's findings.

162.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 47-18 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 47-19 through 47-28 is a true and correct copy of the draft complaint sent to Ronald Moore for his review, and Attached to the Appendix as Exhibit 47-29 through 47-39 is the verified Complaint my office filed on his behalf.

163.     **Moore v. Heim (Shell aka Mexicali Market).**  On or around June 19, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Shell.   Attached to the Appendix as Exhibit 48-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 48-4 through 48-5 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 48-3 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

164.     After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the

business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 48-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

165. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 48-7 is the verification to the Complaint my office filed on his behalf.

166. **Moore v. Hernandez (Leonor's Barber shop).** On or around February 11, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Leonor's Barber Shop. Attached to the Appendix as Exhibit 49-2 through 49-3 is a true and correct copy of the business card my office received from Ronald Moore, attached as Exhibit 49-4 through 49-5 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 49-6 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

167. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 49-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

168. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 49-8 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 49-9 through 49-18 is a true and correct copy of the verified Complaint my office filed on his behalf.

169. **Moore v. Hinds Investments (Sierra Vista Shopping Center Pets Mart, CVS,**

**Big 5, Smart & Final).** In 2012 my office received multiple Ronald Moore's receipts and notes/questionnaire from his visits to Big 5, Banfield Pet Hospital, Leslie's Pool Supplies, O'Reilly's, CVS Pharmacy, Smart & Final, Petsmart, Marshalls, all located in Sierra Vista. Attached to the Appendix as Exhibit 50-1 through 50-20 are true and correct copy of the receipts my office received from Ronald Moore, attached as Exhibit 50-4, 50-6, 50-8, 50-10, 50-16, 50-20 are the notes/questionnaire we received from Ronald Moore.

170. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 50-21, 50-23 through 50-58 are true and correct copy of my letters accepting the case, Attached to the Appendix as Exhibit 50-59 through 50-69 is a true and correct copy of the draft complaint sent to Ronald Moore for his review, and Attached to the Appendix as Exhibit 50-70 through 50-83 is the verified Complaint my office filed on his behalf.

171. **Moore v. Hinds Investments (Tang Dynasty).** On or around March 22, 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Tang Dynasty and Office Max. Attached to the Appendix as 51-2 and 51-3 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 51-4 through 51-8 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 51-9 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

172. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 51-12 to 51-13 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

173. Based upon the information my office received from Ronald Moore, the

investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 51-10 is a true and correct copy of my letter accepting the Tang Dynasty case, Attached to the Appendix as Exhibit 51-11 is a true and correct copy of the letter sent to Ronald Moore rejecting representation in Office Max case.

174. **Moore v. Horanian (Clinton Street Clippers, Pizza Hut).** On or around June 10, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Clinton Street Clippers and Pizza Hut. Attached to the Appendix as Exhibit 52-2 through 52-4 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 52-5 through 52-8 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 52-9 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

175. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 52-10 through 52-11 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

176. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 52-12 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 52-13 through 52-23.

177. **Moore v. Jimenez (George's Dari-Snack)** On or around March 28, 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to George's Dari-Snack. Attached to the Appendix as Exhibit 53-2 and 53-3 are true and correct copies of the receipt my office received from Ronald Moore, attached as Exhibit 53-4 through 53-6 are the

-42-

notes/questionnaire we received from Ronald Moore.

178.    After receiving this information from Ronald Moore, my office contacted him and conducted an intake about encountering barriers during his visit to the business. Attached to the Appendix as Exhibit 53-7 through 53-8 is a memorandum prepared by paralegal regarding conversation with Mr. Moore.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 53-9 through 53-10 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

179.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 53-11 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 53-12 is a true and correct copy of the verification signed by Mr. Moore verifying the accuracy of the complaint filed in this case.

180.    **Moore v. Jouda (California Chevron).**  On or around February 21, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to California Chevron.  Attached to the Appendix as Exhibit 54-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 54-3 through 54-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 54-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

181.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 54-6 through 54-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right

-43-

column completed with investigator's findings.

182.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 54-8 through 54-16 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 54-17 through 54-26 is a true and correct copy of the verified Complaint my office filed on his behalf.

183.     **Moore v. Kaur (Harry's Liquor).**  On or around June 30, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Harry's Liquor.  Attached to the Appendix as Exhibit 55-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 55-3 through 55-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 55-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

184.     After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 55-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

185.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 55-7 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 55-8 through 55-17 is a true and correct copy of the verified Complaint my office filed on his behalf.

186.     **Moore v. Kaur (Parkway Mini Mart).** On or around 2013 and 2014, my office received Ronald Moore's several receipts and notes/questionnaire from his visits to Parkway Mini Mart.  Attached to the Appendix as Exhibit 56-2 through 56-4 are true and correct copies of the

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

receipts my office received from Ronald Moore, attached as Exhibit 56-5 through 56-6 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 56-7 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

187. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 56-8 through 56-9 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

188. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 56-10 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 56-11 through 56-20 is a true and correct copy of the verified Complaint my office filed on his behalf.

189. **Moore v. Kijima (Kijima Restaurant).** On or around 2011, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Kijima Restaurant. Attached to the Appendix as Exhibit 57-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 57-2 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 57-3 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

190. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 57-4 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed

with investigator's findings.

191.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 57-8 through 57-14 a true and correct copy of the verified Complaint my office filed on his behalf.

192.    **Moore v. Ky (Doughnuts to Go).**  On or around September 2010, my office received Ronald Moore's receipt from his visit to Doughnuts to Go.  Attached to the Appendix as Exhibit 58-2 is a true and correct copy of the receipt my office received from Ronald Moore.

193.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 58-3 is a true and correct copy of my letter accepting the case. Attached to the Appendix as Exhibit 58-4 through 58-7is a true and correct copy of the fee agreement Ronald Moore signed in this case.

194.    **Moore v. La Hacienda Market.**   On or around June 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to La Hacienda Market.  Attached to the Appendix as Exhibit 59-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 59-3 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 59-4 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

195.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 59-5 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

196.    Based upon the information my office received from Ronald Moore, the

investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.

197. **Moore v. Lambetecchio (Pho 2006).** On or around February 18, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Pho 2006. Attached to the Appendix as Exhibit 60-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 60-3 through 60-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 60-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

198. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 60-6 through 60-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

199. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 60-8 through 60-16 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 60-17 through 60-26 is a true and correct copy of the verified Complaint my office filed on his behalf.

200. **More v. Las Islitas Restaurant, Inc. (Mariscos Las Islitas).** On or around February 21, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Mariscos Las Islitas. Attached to the Appendix as Exhibit 61-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 61-3 through 61-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 61-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

201. After receiving this information from Ronald Moore, my office created the

attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 61-6 through 61-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

202. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 61-8 through 61-18 is a true and correct copy of the verified Complaint my office filed on his behalf.

203. **Moore v. Leingang (KFC).** On or around August 31, 2010, my office received Ronald Moore's receipts from his visits to KFC. Attached to the Appendix as Exhibit 62-2 through 62-3 are true and correct copy of the receipts my office received from Ronald Moore, and attached as Exhibit 62-4 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

204. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 62-4 is a true and correct copy of my letter accepting the case.

205. **Moore v. Lucido (Thai Chili).** On or around July 1, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Thai Chili. Attached to the Appendix as Exhibit 63-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 63-3 through 63-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 63-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

206. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the

-48-

business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 63-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and as Exhibit 63-7 is a true and correct copy of it as returned to my office with the right column completed with investigator's findings.

207. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 63-8 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 63-9 through 63-19 is a true and correct copy of the verified Complaint my office filed on his behalf.

208. **Moore v. Madanat Investments LLC (Las Cazuelas, A Quality Food Liquor).** On or around August 20, 2013 and February 18, 2014, my office received Ronald Moore's receipts and notes/questionnaire from his visit to Las Cazuelas Mexican Restaurant and A Quality Food Store. Attached to the Appendix as Exhibit 64-2 and 64-3 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 64-4 through 64-7 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 64-8 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

209. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 64-9 through 64-10 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

210. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 64-11 through 64-23 is a true

and correct copy of the verified Complaint my office filed on his behalf.

211. **Moore v. Manjal (Central Food).** On or around August 9, 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Central Food. Attached to the Appendix as Exhibit 65-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 65-3 through 65-4 are the notes/questionnaire we received from Ronald Moore.

212. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 65-5 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

213. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 65-6 through 65-14 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 65-15 through 65-25 is a true and correct copy of the verified Complaint my office filed on his behalf.

214. **Moore v. Mann (Johnny Quik #109).** On or around August 9, 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Johnny Quik #109. Attached to the Appendix as Exhibit 66-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 66-3 through 66-4 are the notes/questionnaire we received from Ronald Moore.

215. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally

-50-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

valid. Attached to the Appendix as Exhibit 66-5 through 66-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

216. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 66-7 through 66-15 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 66-16 through 66-25 is a true and correct copy of the verified Complaint my office filed on his behalf.

217. **Moore v. Millennium Acquisitions, LLC (Arco am/pm).** On or around April 21, 2014, my office received Ronald Moore's receipts and notes/questionnaire from his visits to Arco am/pm. Attached to the Appendix as Exhibit 67-2 through 67-3 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 67-4 through 67-5 are the notes/questionnaire we received from Ronald Moore.

218. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 67-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

219. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 67-8 through 67-19 is a true and correct copy of the verified Complaint my office filed on his behalf.

220. **Moore v. Mohamed (La Princesa Market).** On or around December 14, 2012, and then in March of 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to La Princesa Market. Attached to the Appendix as Exhibit 68-2 through 68-4 are

true and correct copy of the receipts my office received from Ronald Moore, attached as Exhibits 68-4 through 68-7 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 68-8 through 68-10 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

221.   After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 68-11 is a true and correct copy of the Barrier Memo that was provided to the investigator and as Exhibit 68-12 is a true and correct copy of it as returned to my office with the right column completed with investigator's findings.

222.   Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 68-13 through 68-22 is a true and correct copy of the verified Complaint my office filed on his behalf.

223.   **Moore v. Monetary management of California, Inc. (Leslie's Poolmart, Inc., Money Mart).**  On or around July 2, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Money Mart and Leslie's Pool Supplies.  Attached to the Appendix as Exhibit 69-2 and 69-3 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 69-4 through 69-7 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 69-8 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

224.   After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 69-9 through 69-10 are true and correct copies of the

Barrier Memos that were provided to the investigator and returned to my office with the right column completed with investigator's findings.

225.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case against Money Mart and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 69-11 is a true and correct copy of my letter accepting the case against Money Mart, Attached to the Appendix as Exhibit 69-12 through 69-21 is a true and correct copy of the verified Complaint my office filed on his behalf.

226.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore did not have a case against Leslie's Pool Supplies and sent him a letter rejecting Leslie's case. Attached to the Appendix as Exhibit 69-22 is a true and correct copy of the letter of rejection.

227.     **Moore v. Nagi (La Buena Market).** On or around December 17, 2012, my office received Ronald Moore's receipt and notes/questionnaire from his visit to La Buena Market.  Attached to the Appendix as Exhibit 70-2 is a true and correct copies of the receipt my office received from Ronald Moore, attached as Exhibit 70-3 through 70-4 are additional receipts received from Ronald Moore.  Attached as Exhibit 70-5 is a true and correct copy of the initial rejection letter which was sent by my office to Ronald Moore.

228.     After receiving additional information from Ronald Moore in 2013, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 70-6 through 70-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

229.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

disability lawsuit on his behalf. Attached to the Appendix as Exhibit 70-8 through 70-15 is a true and correct copy of the fee agreement mailed to Ronald Moore accepting the case, Attached to the Appendix as Exhibit 70-16 through 70-25 is a true and correct copy of the verified Complaint my office filed on his behalf.

230. **Moore v. Nimatex Co. (Arco).** On or around May 30, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Arco. Attached to the Appendix as Exhibit 71-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 71-3 through 71-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 71-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

231. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 71-6 through 71-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

232. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 71-8 through 71-16 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 71-17 through 71-27 is a true and correct copy of the verified Complaint my office filed on his behalf.

233. **Moore v. Park (Big Stop Food Mart).** On or around February 11, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Big Stop Food Mart. Attached to the Appendix as Exhibit 72-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 72-3 through 72-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 72-5 is the acknowledgement letter my

office sent Ronald Moore after receiving documentation of his visit.

234.　After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 72-6 through 72-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

235.　Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 72-8 through 72-16 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 72-17 through 72-27 is a true and correct copy of the verified Complaint my office filed on his behalf.

236.　**Moore v. Piccolos Pizza Inc. (Papa Murphy).** On or around November 2010, my office received Ronald Moore's receipt from his visit to Papa Murphy's. Attached to the Appendix as Exhibit 73-2 is a true and correct copy of the receipt my office received from Ronald Moore.

237.　After receiving this information from Ronald Moore, my office confirmed whether or not the barriers identified by Ronald Moore were legally valid.

238.　Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.

239.　**Moore v. Pondicherry (Johnny Quik #161).** On or around 2011, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Johnny Quik #161. Attached to the Appendix as Exhibit 74-2 and 74-3 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 74-2 through 74-3 are the notes/questionnaire we received from Ronald Moore.

240.　After receiving this information from Ronald Moore, my office confirmed whether

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

or not the barriers identified by Ronald Moore were legally valid.

241. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 74-4 through 74-12 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 74-13 through 74-21 is a true and correct copy of the Complaint my office filed on his behalf.

242. **Moore v. Prolo Family Clovis LLC (MGA Liquor).** On or around July of 2014, my office received Ronald Moore's receipts and notes/questionnaire from his visits to MGA Liquor. Attached to the Appendix as Exhibit 75-2 and 75-3 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 75-4 through 75-9 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 75-10 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

243. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 75-11 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

244. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 75-12 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 75-13 through 75-22 is a true and correct copy of the verified Complaint my office filed on his behalf.

245. **Moore v. QFS Incorporated (Shell).** On or around June 10, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Shell. Attached to the Appendix as Exhibit 76-2 through 76-4 are true and correct copies of the receipts my office

received from Ronald Moore, attached as Exhibit 76-5 through 76-6 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 76-7 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

246.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 76-8 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

247.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 76-9 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 76-10 through 76-19 is a true and correct copy of the verified Complaint my office filed on his behalf.

248.    **Moore v. Refai (USA Liquors).**  On or around May 29, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to USA Liquors.  Attached to the Appendix as Exhibit 77-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 77-3 through 77-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 77-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

249.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 77-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and as Exhibit 77-7 through 77-8 is a true and correct copy

-57-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

as it was returned to my office with the right column completed with investigator's findings.

250.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 77-9 is a true and correct copy of my letter accepting the case.

251.    **Moore v. Robinson Oil.**  In 2010, my office received Ronald Moore's receipts and notes/questionnaire from his visit to Rotten Robbie.  Attached to the Appendix as Exhibit 78-2 through 78-4 are true and correct copies of the receipts my office received from Ronald Moore.

252.    After receiving this information from Ronald Moore, my office investigated his claims and determined that the barriers identified by Ronald Moore were legally valid.

253.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 78-5 to 78-31 is a true and correct copy of the First Amended Complaint.

254.    **Moore v. Rose & Ybarra Restaurants, Inc.  (Dollar Fifty Store & Ryan's Place).**  On or around 2010, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Dollar Fifty and Ryan's Place.  Attached to the Appendix as Exhibit 79-2 through 79-4 is a true and correct copy of the receipts my office received from Ronald Moore, attached as Exhibit 79-2 through 79-4 are the notes/questionnaire we received from Ronald Moore.

255.    After receiving this information from Ronald Moore, my office confirmed that the barriers identified by Ronald Moore were legally valid.

256.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 79-5 through 79-27 is a true and correct copy of my letter accepting the case.

257.    **Moore v. Rowell Family LLC (Express Grill, Bingo Donuts).**  On or around July 1, 2014, my office received Ronald Moore's receipts and notes/questionnaire from his visits to

Express Grill and Bingo Donuts.  Attached to the Appendix as Exhibits 80-2 and 80-3 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 80-4 through 80-9 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 80-10 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

258.  After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 80-11 and 80-12 is a true and correct copy of the Barrier Memo that was provided to the investigator and Exhibit 80-13 through 80-14 as returned to my office with the right column completed with investigator's findings.

259.  Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 80-15 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 80-16 through 80-27 is a true and correct copy of the verified Complaint my office filed on his behalf.

260.  **Moore v. Ruiz (Chile My Corona).**  On or around December 15, 2011 and then in 2014 my office received Ronald Moore's receipts and notes/questionnaire from his visit to Chile My Corona.  Attached to the Appendix as Exhibit 81-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 81-3 through 81-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 81-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

261.  After receiving this information from Ronald Moore, my office confirmed that the barriers identified by Ronald Moore were legally valid.

262.  Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a

disability lawsuit on his behalf. Attached to the Appendix as Exhibit 81-6 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 81-7 through 81-15 is a true and correct copy of the Complaint my office filed on his behalf.

263. **Moore v. Sarantos (Clovis 500 Club).** On or around February 18, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Clovis 500 Club. Attached to the Appendix as Exhibit 82-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 82-3 through 82-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 82-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

264. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 82-6 through 82-9 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

265. Although I initially rejected the case, see attached as Exhibit 82-20 but based on the additional information my office received from Ronald Moore, the investigator and other sources, I came to believe that Ronald Moore had valid case and decided to accept representation and file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 82-10 through 82-19 is a true and correct copy of the verified Complaint my office filed on his behalf.

266. **Moore v. Schiff (Frosty Queen).** On or around July 1, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Frosty Queen. Attached to the Appendix as Exhibit 83-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 83-3 through 83-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 83-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

267.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 83-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

268.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 83-7 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 83-8 through 83-18 is a true and correct copy of the verified Complaint my office filed on his behalf.

269.    **Moore v. Sekhon (Cedar Market).**    On or around May 30, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Cedar Market.  Attached to the Appendix as Exhibit 84-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 84-3 through 84-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 84-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

270.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 84-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and Exhibit 84-6 as it was returned to my office with the right column completed with investigator's findings.

271.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

disability lawsuit on his behalf. Attached to the Appendix as Exhibit 84-8 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 84-9 through 84-18 is a true and correct copy of the verified Complaint my office filed on his behalf.

272. **Moore v. Shaw Blackstone Center LLC (Lamps Plus, Skechers, Port of Subs).** On or around March of 2013, my office received Ronald Moore's receipts and notes/questionnaire from his visits to Papa Murphy's, Skechers and Port of Subs. Attached to the Appendix as Exhibit 85-2 through 85-3, 85-5 through 85-9 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 85-4, 85-7 through 85-16 are the notes/questionnaire we received from Ronald Moore.

273. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 85-17 through 85-26 are true and correct copies of the Barrier Memos that were provided to the investigator and returned to my office with the right column completed with investigator's findings.

274. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 85-27 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 85-28 through 85-41 is a true and correct copy of the first draft complaint sent to Ronald Moore for his review, Attached to the Appendix as Exhibit 85-42 through 85-55 is a true and correct copy of the revised draft sent to Ronald Moore and, Attached to the Appendix as Exhibit 85-56 through 69 is a true and correct copy of the verified Complaint my office filed on his behalf.

275. **Moore v. Simone (Madera Family Mart).** On or around July 1, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Madera Family Mart. Attached to the Appendix as Exhibit 86-2 is a true and correct copy of the receipt my office

received from Ronald Moore, attached as Exhibit 86-3 through 86-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 86-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

276. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 86-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

277. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 86-7 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 86-8 through 86-18 is a true and correct copy of the verified Complaint my office filed on his behalf.

278. **Moore v. Singh (El Bajio & Buy Rite).** On or around 2012 and 2013, my office received Ronald Moore's receipts and notes/questionnaire from his visits to El Bajio and Buy Rite. Attached to the Appendix as Exhibit 87-2 through 87-9 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 87-7, 87-9 through 87-16 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 87-17 through 87-20 are the acknowledgement letters my office sent Ronald Moore after receiving documentation of his visit.

279. After receiving this information from Ronald Moore, my office confirmed that barriers identified by Ronald Moore were legally valid.

280. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 87-21 is a true and correct

copy of my letter accepting the case, Attached to the Appendix as Exhibit 87-22 through 87-33 is a true and correct copy of the draft complaint sent to Ronald Moore for his review, and Attached to the Appendix as 87-34 through 87- 46 is the verified Complaint my office filed on his behalf.

281. **Moore v. Singh (Ernie's Liquor).** On or around September 13, 2010, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Ernie's Liquor. Attached to the Appendix as Exhibit 88-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 88-3 through 88-4 are the notes/questionnaire we received from Ronald Moore.

282. After receiving this information from Ronald Moore, my office confirmed that the barriers encountered by Ronald Moore were legally valid.

283. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 88-5 is a true and correct copy of my letter accepting the case.

284. **Moore v. Singh (Handi Stop).** On or around June 11, 2014 my office received Ronald Moore's receipt and notes/questionnaire from his visit to Handi Stop. Attached to the Appendix as Exhibit 89-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 89-3 and 89-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 89-5 through 89-6 are the acknowledgement letters my office sent Ronald Moore after receiving documentation of his visit.

285. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 89-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

-64-

286. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 89-8 through 89-16 is a true and correct copy of my letter accepting the case. Attached to the Appendix as Exhibit 89-17 through 89-25 is the First Amended Complaint and the verification provided by Ronald Moore.

287. **Moore v. Singh (K&A Liquor).** On or around March 6, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to K & A Liquor. Attached to the Appendix as Exhibit 90-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 90-3 through 90-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 90-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

288. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 90-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

289. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 90-7 through 90-16 is a true and correct copy of the verified Complaint my office filed on his behalf.

290. **Moore v. Singh (PB Liquor Food).** On or around February 18, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to PB Liquor. Attached to the Appendix as Exhibit 91-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 91-3 through 91-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 91-5 is the acknowledgement letter my office sent Ronald

Moore after receiving documentation of his visit.

291.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 91-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and as Exhibit 91-7 is a true and correct copy of it as returned to my office with the right column completed with investigator's findings.

292.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 91-8 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 91-9 through 91-18 is a true and correct copy of the verified Complaint my office filed on his behalf.

293.    **Moore v. Singh (Quik Stop Mini Mart)**.  On or around July 1, 2014 my office received Ronald Moore's receipt and notes/questionnaire from his visit to Quik Stop Mini Mart.  Attached to the Appendix as Exhibit 92-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 92-3 through 92-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 92-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

294.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 92-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

295.    Based upon the information my office received from Ronald Moore, the

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

1   investigator and other sources, I believed that Ronald Moore had valid case and decided to file a

2   disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 92-7 is a true and correct

3   copy of my letter accepting the case, Attached to the Appendix as Exhibit 92-8 through 92-17 is a

4   true and correct copy of the verified Complaint my office filed on his behalf.

5       296.   **Moore v. Singh (Sukis Auto Shop Gas).**  On or around March 25, 2013, my office

6   received Ronald Moore's receipt and notes/questionnaire from his visit to Sukis Auto Shop

7   Gas.  Attached to the Appendix as Exhibit 93-2 is a true and correct copy of the receipt my office

8   received from Ronald Moore, attached as Exhibit 93-3 through 93-4 are the notes/questionnaire

9   we received from Ronald Moore and attached as Exhibit 93-5 is the acknowledgement letter my

10  office sent Ronald Moore after receiving documentation of his visit.

11      297.   After receiving this information from Ronald Moore, my office created the attached

12  "Barrier Memo" which summarized his claims about encountering barriers during his visit to the

13  business.  My office then provided the Barrier Memo to an investigator in order to inspect the

14  business and confirm whether or not the barriers identified by Ronald Moore were legally

15  valid.  Attached to the Appendix as Exhibit 93-6 is a true and correct copy of the Barrier Memo

16  that was provided to the investigator and returned to my office with the right column completed

17  with investigator's findings.

18      298.   Based upon the information my office received from Ronald Moore, the

19  investigator and other sources, I believed that Ronald Moore had valid case and decided to file a

20  disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 93-7 through 93-15 is a true

21  and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 93-16

22  through 93-25 is a true and correct copy of the verified Complaint my office filed on his behalf.

23      299.   **Moore v. SNL Corp. (Quickway Food Store).**  On or around February 11, 2014,

24  my office received Ronald Moore's receipt and notes/questionnaire from his visit to Quickway

25  Food Store.  Attached to the Appendix as Exhibit 94-2 is a true and correct copy of the receipt my

26  office received from Ronald Moore, attached as Exhibit 94-3 through 94-4 are the

27  notes/questionnaire we received from Ronald Moore and attached as Exhibit 94-5 is the

28

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

300.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 94-6 through 94-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

301.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 94-8 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 94-10 through 94-20 is a true and correct copy of the verified Complaint my office filed on his behalf.

302.    **Moore v. Songu (B & B Liquor).**  On or around July 1, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to B&B Liquor.  Attached to the Appendix as Exhibit 95-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 95-3 through 95-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 95-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

303.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 95-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

304.    Based upon the information my office received from Ronald Moore, the

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

1    investigator and other sources, I believed that Ronald Moore had valid case and decided to file a

2    disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 95-7 is a true and correct

3    copy of my letter accepting the case, Attached to the Appendix as Exhibit 95-8 through 95-17 is a

4    true and correct copy of the verified Complaint my office filed on his behalf.

5        305.    **Moore v. Soto (La Enchilada).**  On or around August 20, 2014, my office received

6    Ronald Moore's receipt and notes/questionnaire from his visit to La Enchilada.  Attached to the

7    Appendix as Exhibit 96-2 is a true and correct copy of the receipt my office received from Ronald

8    Moore, attached as Exhibit 96-3 through 96-6 are the notes/questionnaire we received from Ronald

9    Moore and attached as Exhibit 96-7 is the acknowledgement letter my office sent Ronald Moore

10   after receiving documentation of his visit.

11       306.    After receiving this information from Ronald Moore, my office created the attached

12   "Barrier Memo" which summarized his claims about encountering barriers during his visit to the

13   business.  My office then provided the Barrier Memo to an investigator in order to inspect the

14   business and confirm whether or not the barriers identified by Ronald Moore were legally

15   valid.  Attached to the Appendix as Exhibit 96-8 is a true and correct copy of the Barrier Memo

16   that was provided to the investigator and returned to my office with the right column completed

17   with investigator's findings.

18       307.    Based upon the information my office received from Ronald Moore, the

19   investigator and other sources, I believed that Ronald Moore had valid case and decided to file a

20   disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 96-9 is a true and correct

21   copy of my letter accepting the case, Attached to the Appendix as Exhibit 96-10 through 96-19 is

22   a true and correct copy of the verified Complaint my office filed on his behalf.

23       308.    **Moore v. Singh (Stop n Shop).**  On or around 2010, my office received Ronald

24   Moore's receipt and notes/questionnaire from his visit to Stop n Shop.  Attached to the Appendix

25   as Exhibit 97-2 through 97-3 is a true and correct copies of the receipts my office received from

26   Ronald Moore.

27       309.    After receiving this information from Ronald Moore, my office confirmed that the

28

-69-

barriers identified by Ronald Moore were legally valid.

310. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 97-4 is a true and correct copy of my letter accepting the case.

311. **Moore v. Sunflower Clovis Investors, LLC (Bobby Salazar's Taqueria).** On or around August 13, 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Bobby Salazar's. Attached to the Appendix as Exhibit 98-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 98-3 through 98-4 are the notes/questionnaire we received from Ronald Moore.

312. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 98-5 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

313. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 98-6 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 98-7 through 98-16 is a true and correct copy of the verified Complaint my office filed on his behalf.

314. **Moore v. Sunrise Square (Arsenio's).** On or around May 14, 2012, my office received Ronald Moore's receipts and notes/questionnaire from his visits to Liquor King, Tandoori Night, Arsenio's. Attached to the Appendix as Exhibits 99-2 through 99-3 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 99-2 through 99-3 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 99-4

through 99-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

315.     After receiving this information from Ronald Moore, my office confirmed his claims about encountering barriers during his visit to the business.

316.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 99-6 through 99-14 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 99-15 through 99-28 is a true and correct copy of the Complaint my office filed on his behalf.  Based upon the information my office received from Ronald Moore, the investigator and other sources, I rejected the case against Tandoori Night.  Attached to the Appendix as Exhibit 99-29 is a true and correct copy of my letter rejecting the case against that facility.

317.     **Moore v. Talwandi & Son Inc. (Bottle House Liquor).**  On or around May 30, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Bottle House Liquor.  Attached to the Appendix as Exhibit 100-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 100-3 through 100-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 100-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

318.     After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 100-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

319.     Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a

-71-

disability lawsuit on his behalf. Attached to the Appendix as Exhibit 100-7 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 100-8 through 100-18 is a true and correct copy of the verified Complaint my office filed on his behalf.

320. **Moore v. The Pep Boys Manny Moe & Jack of California, Inc. (3655 N. Blackstone, Fresno)** On or around May 2012, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Pep Boys. Attached to the Appendix as Exhibit 101-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 101-2 are the notes/questionnaire we received from Ronald Moore.

321. After receiving this information from Ronald Moore, my office confirmed that barriers identified by Ronald Moore were legally valid.

322. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 101-3 is a true and correct copy of my letter accepting the case.

323. **Moore v. The Pep Boys Manny Moe & Jack of California, Inc. (693 W. Shaw Ave, Clovis).** On or around May 29, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Pep Boys. Attached to the Appendix as Exhibit 102-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 102-3 and 102-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 102-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

324. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 102-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed

with investigator's findings.

325. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 102-7 through 102-15 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 102-16 through 102-25 is a true and correct copy of the verified Complaint my office filed on his behalf.

326. **Moore v. Times Square Holdings, LLC (Kar Wah Restaurant, JK Cigarettes, Big Lots, Plaza Ventana).** On or around March of 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Plaza Ventana, Kar Wah Restaurant, Big Lots, JK Cigarettes. Attached to the Appendix as Exhibit 103-2 through 103-6 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 103-7 through 103-18 are the notes/questionnaire we received from Ronald Moore.

327. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 103-19 through 103-20 is a true and correct copy of the Barrier Memo that was provided to the investigator and Exhibit 103-21 through 103-22 as it was returned to my office with the right column completed with investigator's findings.

328. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 103-23 through 103-40 is a true and correct copy of my letter accepting the case against Kar Wah Restaurant and JK Cigarettes, Attached to the Appendix as Exhibit 103-41 through 103-51 is a true and correct copy of the verified Complaint my office filed on his behalf.

329. **Moore v. Toledo (Toledito's Mexican Restaurant).** On or around August 12, 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

Toledito's Mexican Restaurant. Attached to the Appendix as Exhibit 104-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 104-3 through 104-4 are the notes/questionnaire we received from Ronald Moore.

330. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 104-5 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

331. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 104-6 through 104-14 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 104-15 through 104-23 is a true and correct copy of the verified Complaint my office filed on his behalf.

332. **Moore v. Topoozian (Kevin & Alex Liquor Deli).** On or around July 1, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Kevin & Alex Liquor Deli. Attached to the Appendix as Exhibit 105-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 105-3 through 105-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 105-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

333. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 105-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and as Exhibit 105-7 as it was returned to my office

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

with the right column completed with investigator's findings.

334.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 105-8 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 105-9 through 105-19 is a true and correct copy of the verified Complaint my office filed on his behalf.

335.    **Moore v. Torigian (Andre's Liquor).**  On or around 2012 and 2013, my office received Ronald Moore's receipts and notes/questionnaire from his visits to Andre's Liquor.  Attached to the Appendix as Exhibit 106-2 and 106-3 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 106-2 and 106-4 are the notes/questionnaire we received from Ronald Moore.

336.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 106-5 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

337.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 106-6 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 106-7 through 106-17 is a true and correct copy of the verified Complaint my office filed on his behalf.

338.    **Moore v. Trini's Oil, Inc. (Trinis Beacon).**  On or around August 15, 2013, and then again on or around 2014, my office received Ronald Moore's receipts and notes/questionnaire from his visit to Trinis Beacon.  Attached to the Appendix as Exhibit 107-2 and 107-3 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 107-4

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

and 107-5 are the notes/questionnaire we received from Ronald Moore.

339.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 107-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

340.    Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf.  Attached to the Appendix as Exhibit 107-8 through 107-15 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 107-16 through 107-25 is a true and correct copy of the verified Complaint my office filed on his behalf.

341.    **Moore v. Victoria Fresno Realty, LLC (King of Kabob).**  On or around 2010, my office received Ronald Moore's receipt and notes/questionnaire from his visit to King of Kabob.  Attached to the Appendix as Exhibit 108-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 108-3 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 108-4 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

342.    After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid.  Attached to the Appendix as Exhibit 108-5 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

343.    Based upon the information my office received from Ronald Moore, the

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 108-6 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 108-7 through 108-17 is a true and correct copy of the verified Complaint my office filed on his behalf.

344. **Moore v. Villa Mart, Inc.** On or around 2010 and also in 2013, my office received Ronald Moore's receipts and notes/questionnaire from his visits to Villa Food Mart. Attached to the Appendix as Exhibit 109-2 and 109-3 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 109-2 and 109-3 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 109-4 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

345. After receiving this information from Ronald Moore, my office confirmed his claims about encountering barriers during his visit to the business were legally valid.

346. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 109-7 through 109-17 is a true and correct copy of the fee agreement signed by Ronald Moore after I accepted the case, Attached to the Appendix as Exhibit 109-6 is a true and correct copy of the first page of the Complaint my office filed on his behalf.

347. **Moore v. Vituma Properties, LLC (KFC).** On or around June 19, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to KFC. Attached to the Appendix as Exhibit 110-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 110-3 through 110-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 110-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

348. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the

business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 110-6 through 110-7 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

349. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 110-8 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 110-9 through 110-19 is a true and correct copy of the verified Complaint my office filed on his behalf.

350. **Moore v. Vohra (Arco).** On or around June 11, 2014, my office received Ronald Moore's receipts and notes/questionnaire from his visits to Arco. Attached to the Appendix as Exhibit 111-2 and 111-3 are true and correct copies of the receipts my office received from Ronald Moore, attached as Exhibit 111-4 and 111-5 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 111-6 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

351. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 111-7 and 111-8 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

352. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 111-9 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 111-10 through 111-20 is a true and correct copy of the verified Complaint my office filed on his behalf.

353. **Moore v. Westfield Investment & Associates LLC (Robertito's Taco Shop).** On or around May 14, 2012 and again in late 2013, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Robertito's Taco Shop. Attached to the Appendix as Exhibit 112-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 112-3 through 112-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 112-5 and 112-6 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

354. After receiving this information from Ronald Moore, my office confirmed that the barriers identified by Ronald Moore were legally valid.

355. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 112-7 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 112-8 through 112-16 is a true and correct copy of the verified Complaint my office filed on his behalf.

356. **Moore v. Wong (Toby's Vapes and More).** On or around July 1, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to Toby's Vapes and More. Attached to the Appendix as Exhibit 113-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 113-3 through 113-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 113-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

357. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 113-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

358. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 113-7 through 113-17 is a true and correct copy of the verified Complaint my office filed on his behalf.

359. **Moore v. Zamzami (City Wide Market).** On or around May 30, 2014, my office received Ronald Moore's receipt and notes/questionnaire from his visit to City Wide Market. Attached to the Appendix as Exhibit 114-2 is a true and correct copy of the receipt my office received from Ronald Moore, attached as Exhibit 114-3 and 114-4 are the notes/questionnaire we received from Ronald Moore and attached as Exhibit 114-5 is the acknowledgement letter my office sent Ronald Moore after receiving documentation of his visit.

360. After receiving this information from Ronald Moore, my office created the attached "Barrier Memo" which summarized his claims about encountering barriers during his visit to the business. My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Ronald Moore were legally valid. Attached to the Appendix as Exhibit 114-6 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

361. Based upon the information my office received from Ronald Moore, the investigator and other sources, I believed that Ronald Moore had valid case and decided to file a disability lawsuit on his behalf. Attached to the Appendix as Exhibit 114-7 is a true and correct copy of my letter accepting the case, Attached to the Appendix as Exhibit 114-8 through 114-17 is a true and correct copy of the verified Complaint my office filed on his behalf.

362. Saniefar has also identified the following cases filed by one of my other clients **Rachel Lobato** as being at issue in this action.

363. **Lobato v. Garcia (Teazar World Tea Market).** On or around April 29, 2015, my office received Rachel Lobato's receipt and notes/questionnaire from her visit to Teazer World Tea Market. Attached to the Appendix as Exhibit 115-2 is a true and correct copy of the receipt

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

my office received from Rachel Lobato, attached as Exhibit 115-3 through 115-16 are the notes/questionnaire we received from Rachel Lobato and attached as Exhibit 115-17 is the acknowledgement letter my office sent Rachel Lobato receiving documentation of her visit.

364.    After receiving this information from Rachel Lobato, my office created the attached "Barrier Memo" which summarized her claims about encountering barriers during her visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Rachel Lobato were legally valid.  Attached to the Appendix as Exhibit 115-18 is a true and correct copy of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

365.    Based upon the information my office received from Rachel Lobato, the investigator and other sources, I believed that Rachel Lobato had valid case and decided to file a disability lawsuit on her behalf.  Attached to the Appendix as Exhibit 115-19 through 115-23 is a true and correct copy of the fee agreement signed by Rachel Lobato accepting the case, Attached to the Appendix as Exhibit 115-24 through 115-34 is a true and correct copy of the verified Complaint my office filed on her behalf.

366.    **Lobato v. Lopez (El Campesino Mexican Restaurant).**  On or around April 10, 2015, my office received Rachel Lobato's receipt and notes/questionnaire from her visit to El Campesino Mexican Restaurant.  Attached to the Appendix as Exhibit 116-2 is a true and correct copy of the receipt my office received from Rachel Lobato, attached as Exhibit 116-3 through 116-6 are the notes/questionnaire we received from Rachel Lobato and attached as Exhibit 116-7 is the acknowledgement letter my office sent Rachel Lobato after receiving documentation of her visit.

367.    After receiving this information from Rachel Lobato, my office created the attached "Barrier Memo" which summarized her claims about encountering barriers during her visit to the business.  My office then provided the Barrier Memo to an investigator in order to inspect the business and confirm whether or not the barriers identified by Rachel Lobato were legally valid.  Attached to the Appendix as Exhibit 116-8 through 116-9 is a true and correct copy

-81-

of the Barrier Memo that was provided to the investigator and returned to my office with the right column completed with investigator's findings.

368.    Based upon the information my office received from Rachel Lobato, the investigator and other sources, I believed that Rachel Lobato had valid case and decided to file a disability lawsuit on her behalf.  Attached to the Appendix as Exhibit 116-10 through 116-14 is a true and correct copy of the fee agreement signed by Rachel Lobato, Attached to the Appendix as Exhibit 116-15 through 116-25 is a true and correct copy of the verified Complaint my office filed on her behalf.

369.    Ronald Moore provided the law firm with receipts, notes and/or questionnaires for at least over 130 other businesses that he sued in California.  To the extent any of Ronald's other receipts, notes or questionnaires cannot be located at this time, they were likely misplaced given the lapse of time from 2009 to the present.  Attached hereto as Exhibits 117, 118, 119, and 120 are true and correct copies of receipts, notes and questionnaires Ron Moore provided to the Moore Law Firm for its review prior to its filing of against the following additional businesses:

a.  Moore v. Casa De Fruta

b.  Moore v. Stan Boyett & Son (City Heart 2)

c.  Moore v. Costco

d.  Moore v. El Pueblito Restaurant (Leo Garcia)

e.  Moore v. Oday

f.  Moore v. CNC Apex Corp.

g.  Moore v. Genuine Automotive Inc.

h.  Moore v. Gabelica

i.  Moore v. Thomas Jr. (Rooney's Liquor)

j.  Moore v. Robinson Oil (Rotten Robbie)

k.  Moore v. Hwan (Foster Freeze – Los Banos)

l.  Moore v. DW Investments (Weinerschnetzel)

m.  Moore v. Windecker Fuel Inc.

n.   Moore v. Jong Yul Park (Total Fashion)

o.   Moore v. Fahd G. Geham (Star One Mart)

p.   Moore v. Mendoza

q.   Moore v. Los Amigos Authentic Mexican Food

r.   Moore v. California Teriyaki Don LLC

s.   Moore v. Sidhu

t.   Moore v. Gill (Handi Stop)

u.   Moore v. Golden West Restaurant (Applebees)

v.   Moore v. Central Valley Group Inc.

w.  Moore v. Choy (Casa Quintero)

x.   Moore v. Copner (Country)

y.   Moore v. Nguyen (El Rodeo)

z.   Moore v. Limata (Hungry Howies)

aa. Moore v. Richard S. Smith (IHOP)

bb. Moore v. Anaya

cc. Moore v. The Desmond Family Real Estate Limited Partnership (KFC)

dd. Moore v. Torres (Lola's Ricos Tacos)

ee. Moore v. Ronnie's Midway

ff.  Moore v. Valero California Retail Company  (Valero Corner Store)

gg. Moore v. Campbell (Silver Dollar Hoffbrau)

hh. Moore v. Skywalk

ii.  Moore v. Sun et al (Me N Ed's Pizzerias)

jj.  Moore v. Valley Auto Maintenance Inc.

kk. Moore v. Vlhopouliotis

ll.  Moore v. JGB Properties

mm.    Moore v. J. Oberti

nn. Moore v. J-C Market

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

oo. Moore v. Arce

pp. Moore v. Charlie & Lee

qq. Moore v. Shannon (Lola and Ricos)

rr.  Moore v. Dnyanco

ss. Moore v. Zinkin

tt.  Moore v. Landon Investment Co. Inc. (Denny's #181)

uu. Moore v. Marie Callender's

vv. Moore v. Ross Dress for Less

ww.      Moore v. Jiffy Lube

xx. Moore v. Uhual

yy. Moore v. Dollar Tree Stores

zz. Moore v. Johnny Quik #175

aaa.      Moore v. Kelley

bbb.      Moore v. DSDS (Denny's)

ccc.      Moore v. Vukajlovic

ddd.      Moore v. Foristiere (Adrian's)

eee.      Moore v. Namround (Arco)

fff. Moore v. Bowie (Red Carpet Car Wash)

ggg.      Moore v. Solano (La Kedabra)

hhh.      Moore v. West Acres

iii.  Moore v. PNS Stores, Inc. (Big Lots 4061)

jjj.  Moore v. Pierce (Sandy's)

kkk.      Moore v. Bailey (Pinedale, Metro)

lll.  Moore v. Mazzei (Little Brown)

mmm.  Moore v. De La Mora (Colima)

nnn.      Moore v. Aulakh (Shell)

ooo.      Moore v. Solley (Belmont U Save)

**Gordon Rees Scully Mansukhani, LLP**
**633 West Fifth Street, 52nd floor**
**Los Angeles, CA 90071**

ppp.   Moore v. McKenney (BJ's Kountry)

qqq.   Moore v. Watkins (Kings Food)

rrr. Moore v. Omninent Properties Manchester Center, LLC (Manchester Mall)

sss. Moore v. 5561 Sultana (Home Town Buffett)

ttt.  Moore v. Hall (Jus Jo's Country)

uuu.   Moore v. M&J Hotel Investments, LLC (America's Best Value Inn)

vvv.   Moore v. Christou (Stop N Shop)

www.  Moore v. Thrifty Payless (Rite Aid)

xxx.   Moore v. Donghan (Golden Horse)

yyy.   Moore v. Dang (Save On Liquor)

zzz.   Moore v. Connelly

aaaa.   Moore v. Marquez (Punjab Auto Repair)

bbbb.   Moore v. Highlight Develop (Bullar U Save)

cccc.   Moore v. Marks Bullard Invest (Coast to Coast)

dddd.   Moore v. Zamboukos (Pacific Pizza, Cricket)

eeee.   Moore v. De La Luz (Raspados El Diablito)

ffff.   Moore v. Chase

gggg.   Moore v. Hieng (Sunshine Donuts)

hhhh.   Moore v. Alkhal (Bellevue Mini Mart)

iiii. Moore v. Denny's

jjjj. Moore v. Gill (Shell Subway)

kkkk.   Moore v. Chow (Caruthers Food Liquor)

llll. Moore v. Singh (Quick Stop Mini Mart)

mmmm.      Moore v. Barragan (Tacos El Gruellense Jal)

nnnn.   Moore v. RI Clovis (Kowloon Kitchen, Seven Seas)

oooo.   Moore v. Apple Mid Cal (Applebee's)

pppp.   Moore v. Watson (Academy Harware)

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY
ADJUDICATION

qqqq.   Moore v. Carrows (Campbell)

rrrr.   Moore v. Padda (Johnny Quik 151)

ssss.   Moore v. Sandoval (El Gallo)

tttt. Moore v. Food Maxx (Clovis II – Sierra Pavillion)

uuuu.   Moore v. Foster Freeze Sanger - Karl

vvvv.   Moore v. Taber Food Services (Hobee's Los Gatos)

wwww.       Moore v. Khalon Brothers (Johnny Quik –II Cedar)

xxxx.   Moore v. Sleep Fit (Mattress Land)

yyyy.   Moore v. Pet Extreme (Clovis II – Sierra Pavilion)

zzzz.   Moore v. Morrow (Red Robin)

aaaaa.  Moore v. Rite Aid

bbbbb.  Moore v. RMP Properties (S21 Sushi and Sake Bar)

ccccc.  Moore v. Horanian (Clinton Street Clippers & Pizza Hut)

ddddd.  Moore v. Abby Arco

eeeee.  Moore v. Almari (Gateway Market)

fffff.   Moore v. Blackhorse LLC, Liquor Max & Arsenio's Mexican Food

ggggg.  Moore v. Kong Bamboo Chopsticks

hhhhh.  Moore v. King of Central Valley (Burger King 7705)

iiiii.   Moore v. Cal Skate Clovis

jjjjj.   Moore v. Carrillo (Mercado y Tacqueria a la Mexicana / La Michoacana)

kkkkk.  Moore v. Cooper (DaVinci's Pizza)

lllll.   Moore v. BSP Cupertino Union LLC (Cupertino Union 76)

mmmmm.       Moore v. California-Fresno Investment Co. (Cal Fresno Union 76)

nnnnn.  Moore v. Gurcharan Rakkar (Kerman Carnitas)

ooooo.  Moore v. Ngo (Valley Hyddroponics)

ppppp.  Moore v. Wendy's of Fresno, Inc.

qqqqq.  Moore v. Patel (Cherry Valero)

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY
ADJUDICATION

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

rrrrr.   Moore v. Taylor (Taylor Reptiles)

sssss.   Moore v. RCSH Operations (Ruth Chris)

ttttt.   Moore v. SVP Partners (Quick N Ez)

uuuuu. Moore v. Andros (Old Spaghetti Factory)

vvvvv. Moore v. Meza (Fresno Cigarette)

wwwww.      Moore v. Vietty (Pete's Teriyaki House)

xxxxx. Moore v. West Acres LLC (Gifts and More, Hones Chinese, Little Cesaers)

yyyyy. Moore v. Bassan (41 Gas & Liquor)

zzzzz. Moore v. Peppertree Plaza (Outback)

aaaaaa. Moore v. Hallanian (Ole Frejole White)

370.   I deposed Saniefar's private investigators Raymond Franco and Nick Franco in the underlying action *Moore v. Saniefar,* E.D. Cal. Case No. 1:14-cv-01067-SKO-KJM who conducted surveillance of Ronald over a period of three months and over 77 hours. The investigators testified that to their knowledge, Ronald had no idea he was being watched, and yet every time he left his house to go out in public, he brought his wheelchair. The investigators testified that Ronald would arrive at a location and park, get out of his vehicle using his cane, go to the back of his vehicle, retrieve the wheelchair, then use the wheelchair to travel to his destination. In fact, the investigators testified that this was always the case when Ronald travelled to a public place.

371.   Attached hereto as Exhibit 121 is a true and correct copy of excerpts from the deposition transcript of Nick Franco dated July 15, 2015 which I attended and participated in in the underlying case filed in the Federal Action.

372.   Attached hereto as Exhibit 122 is a true and correct copy of excerpts from the deposition transcript of Raymond Franco dated July 15, 2015 which I attended and participated in in the underlying case filed in the Federal Action.

373.   I reviewed the deposition transcript of private investigator, Raymond Franco, to determine how many hours were spent on surveillance of Ronald. The testimony revealed that

the investigators spent a total of over 77 hours on surveillance between March 19, 2015 and May 18, 2015. I took all the time identified in Raymond Franco's deposition regarding when the surveillance took place, and totaled up the time and reached the conclusion that it was over 77 hours. Mr. Franco was able to provide the hours for all but one day, so I do not know the amount of time Plaintiff was watched on that day, and thus that time is not accounted for in the 77 hours. Nor did I add the 7 minutes spent on April 7, 2017. I calculated the time based upon the transcript excerpts which state the date of the surveillance, and the amount of time of the surveillance. Following is a summary of my calculations:

| Date of Surveillance | Duration | Transcript Reference |
|---|---|---|
| March 19, 2015 | 5.0 hours | 17:17-25; 22:1-6 |
| March 23, 2015 | 2.5 hours | 21:1-7 |
| March 25, 2015 | 3.5 hours | 24:5-12 |
| March 26, 2015 | 3.5 hours | 24:19-21 |
| April 3, 2015 | 3.0 hours | 25:1-12 |
| April 4, 2015 | 4.5 hours | 25:15-21 |
| April 7, 2015 | 7.0 minutes | 26:2-5 |
| April 20, 2015 | 10 hours | 26:10-16 |
| April 21, 2015 | 9.5 hours | 27:16-22 |
| April 22, 2015 | 9.0 hours | 28:16-23 |
| April 23, 2015 | 9.5 hours | 28:24-29:4 |
| April 24, 2015 | 6.75 hours | 29:11-20 |
| May 3, 2015 | 8.25 hours | 30:6-11 |
| May 4, 2015 | Unknown (did not document) | 30:23-31:8 |
| May 18, 2015 | 2.0 hours | 31:9-15 |

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

374.    Out of the 77 hours of surveillance, the video surveillance clips provided by Saniefar's investigators show Ronald walking in his own yard without a cane or wheelchair for approximately two minutes (which I calculated by using the time stamps on the videos) on May 4, 2015.  On May 17, 2015 Ronald is shown first standing in his driveway near his vehicle talking to his neighbor for less than 30 seconds, then driving to the neighbor's driveway where he walked for only a few steps to the rear of his vehicle, where he had support, and then walked along his vehicle to the driver's door where he also had support.

375.    Attached hereto as Exhibit 123 is a true and correct copy of excerpts from the deposition transcript of Lynn Moore dated June 19, 2015 which I attended and asked questions in the underlying case filed in the U.S. Eastern District of California, *Moore v. Saniefar,* Case No. 1:14-cv-01067-SKO ("the Federal Action").

376.    Attached hereto as Exhibit 124 is a true and correct copy of excerpts from the deposition transcript of Rhonda Moore dated June 19, 2015 which I attended and participated in the Federal Action.

377.    Attached hereto as Exhibit 125 is a true and correct copy of excerpts from the deposition transcript of Ronny Loreto dated July 14, 2015 which I attended and participated in the Federal Action.

378.    Ronald Moore's lawsuit against Saniefar alleged that he encountered the following inaccessible conditions at Zlfred's:

a) Plaintiff parked in a designated accessible parking space at the Facility, but found that his parked vehicle itself obstructed the ramp that led to the sidewalk. It was difficult for Plaintiff to maneuver around his vehicle to go up and down the ramp.

b) The entrance to the restaurant was heavy and had a raised threshold. This made it difficult for Plaintiff to open the door, and to keep it open while he attempted to overcome the threshold.

c) Plaintiff needed to the use the restroom while visiting the Facility, but the stall within the men's restroom lacked necessary wheelchair clearances, and

Plaintiff could not get his wheelchair into it. Plaintiff required his grandson's assistance to make his way into the stall and onto the toilet.

d) The toilet inside of the stall lacked grab bars, further making it difficult for Plaintiff to use the toilet.

e) The plumbing below the lavatory in the restroom was exposed, causing Plaintiff to fear that he would burn his legs on the pipes.

f) The counter in the men's restroom lacked proper knee clearances, making it difficult for Plaintiff to reach the soap dispenser.

g) The hand dryer in the men's restroom was out of reach for Plaintiff due to its height.

h) The men's restroom doorway lacked proper maneuvering clearances on the inside of the restroom and Plaintiff became trapped when trying to leave the restroom. Plaintiff had to call out his grandson to help him.

i) Plaintiff could not locate an accessible table and was forced to sit at a table that was improperly configured, such that he could not pull his wheelchair all the way up to the table. He was forced to sit at an uncomfortable distance from the table for the duration of his meal.

379.    Subsequent to the filing of the First Amended Complaint ("FAC") in the Federal Action, Saniefar undertook remedial work at Zlfred's to address all the Barriers in the FAC. Saniefar stipulated that most of the conditions identified above existed. Attached hereto as Exhibit 126 is a true and correct copy of the Joint Statement of Stipulated Facts in Support of the Parties Cross Motions for Summary Judgement.

380.    Ronald Moore's CASp expert inspected Zlfred's and confirmed the existence of the conditions Ronald Moore encountered during his April 14, 2014 visit to Zlfred's as alleged in his complaint. Attached hereto as Exhibit 127 is a true and correct copy of Michael Bluhm's expert report.

381.    Saniefar's expert never contested the existence of the conditions Ronald Moore encountered during his April 14, 2014 visit to Zlfred's.

382.    In November 2016 – nearly two years after the FAC was filed – Saniefar filed a Motion for Summary Judgment on the basis that all the ADA violations identified in the FAC had been voluntarily repaired and the federal claims had become moot.  Attached hereto as Exhibit 128

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

is a true and correct copy of Saniefar's Memorandum filed in support of her Motion for Summary Judgement in the underlying case filed in the Federal Action.

383.    In March 2017, the district court granted Saniefar's motion for summary judgment on the ground the federal claim had been rendered moot by Saniefar's remedial efforts and new policies.  The district court refused to continue to exercise supplemental jurisdiction over Ronald's remaining state law claims, but dismissed those claims without prejudice to Ronald's ability to re-file them in state court. Attached hereto as Exhibit 129 is a true and correct copy of the district court's order granting Saniefar's Motion for Summary Judgement in the underlying case filed in the Federal Action.

384.    On April 21, 2017, Ronald filed a complaint against Saniefar in the Fresno County Superior Court, case number 17CECG01361, for damages under the Unruh Civil Rights Act arising from his encounter with the inaccessible conditions he identified in the Federal Action (the "State Action").

385.    On May 10, 2018, Saniefar filed a Motion for Summary Judgment on the basis that Ronald had failed to serve them with certain notices pursuant to legislation enacted in October 2015, well after the Federal Action, but before the State Action.

386.    The state court granted Saniefar's Motion for Summary Judgment on this procedural basis and dismissed the State Action on or about July 26, 2018.

387.    The merits of Ronald's claims were never reached in the Federal Action or the State Action.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. This declaration was signed by me in San Jose, California on the date set forth below.

Dated: ___Oct 8, 2019___

*Tanya Moore*
Tanya Moore (Oct 8, 2019)

Tanya E. Moore

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

DECL. TANYA E. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION