ROGER M. MANSUKHANI (SBN: 164463)
DAVID L. JONES (SBN: 112307)
STEVEN R. INOUYE (SBN: 245024)
GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470

Attorneys for Defendants
Moore Law Firm, A.P.C., Tanya E. Moore,
Kenneth Randolph Moore, Ronald D. Moore,
Zachery M. Best, Marejka Sacks, Mission Law
Firm, A.P.C., Elmer Leroy Falk, Geoshua
Levinson, Rick D. Moore, West Coast Casp and
ADA Services, and Ronny Loreto

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FATEMEH SANIEFAR<br><br>Plaintiff,<br><br>vs.<br><br>RONALD D. MOORE, TANYA E. MOORE, KENNETH RANDOLPH MOORE, MAREJKA SACKS, ELMER LEROY FALK, ZACHARY M. BEST, MOORE LAW FIRM, a California Professional Corporation, MISSION LAW FIRM, a California Professional Corporation, GEOSHUA LEVINSON, RICK D. MOORE, WEST COAST CASP AND ADA SERVICES, a California Corporation, RONNY LORETO, and DOES 1 THROUGH 100, inclusive<br><br>Defendants. | CASE NO. 1:17-cv-00823-LJO-BAM<br><br>**DECLARATION OF WHITNEY LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ SUMMARY ADJUDICATION**<br><br>Date: November 14, 2019<br>Time: 8:30 a.m.<br>Dept: 4<br>Judge: The Hon. Lawrence J. O'Neill |

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

I, Whitney Law, declare as follows:

1. I am over the age of 18 years, and a resident of the State of North Carolina. I am not a party to this action. I have personal knowledge of the following facts and if called as a witness, could and would testify competently thereto.

2. From January 2013 to the present, I have worked for the Moore Law Firm, P.C. (as well as when it became Mission Law Firm, A.P.C.) as a paralegal. I worked in the firm's office in San Jose, California until July 2016 when I moved to North Carolina. I have since worked remotely for the firm from my home in North Carolina.

3. Prior to working for the Moore Law Firm, I worked as a paralegal for approximately four years doing primarily employment law.

4. Since early in my employment with the Moore Law Firm, I have been responsible for receiving and reviewing information sent to the law firm (via mail, email, or sometimes facsimile) from clients about their visits to businesses, including their receipts, questionnaires and/or notes about their visits. I would also send clients a letter stating that their claims would be investigated.

5. If any clients did not provide very clear or detailed notes, I would contact the clients by telephone to find out what problems they had experienced. I would also take notes of the barriers mentioned by the clients in our conversations.

6. There were also times when our office manager, Meylin Solozobal, would interview the clients on the phone about their visits to a business and provide me notes of her conversations with them. There were also some clients with whom I would exchange emails about their experiences at the business rather than speaking to them on the phone.

7. From the information obtained from a client, I would prepare a "Barrier Memo" which included a summary of the conditions the client complained about having encountered at a business that interfered with his or her access because of the client's disability.

8. After I completed a "Barrier Memo", I would send it to one of the law firm's investigators, and request that they visit the business to observe and photograph the conditions on

-2-
DECL. WHITNEY LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

the Barrier Memo, and indicate whether or not the barriers identified by the client were valid. The firm's investigators included Geoshua Levinson, Rick Moore, and Robert Ferris Investigations.

9. Specifically, from January 2013 to July 2014, I would set a task using the firm's Clio legal management software ("Clio") for Geoshua Levinson ("Josh") to visit a business after I had reviewed the client's receipt, questionnaire and/or notes of their visit to a business. I would then upload the Barrier Memo to a Dropbox folder for Josh to download. Sometimes I would also email Josh or talk to him about the project. In general, it would take Josh about a month or two to complete each investigation given the volume of investigations he was tasked to do.

10. From July 2014 on, I would notify Josh by email (instead of using Clio) for each case needing investigation. Josh would generally upload his photos to Dropbox after he conducted his investigations. In addition, Josh would upload a completed Barrier Memo with his findings to Dropbox or give it to me personally when he would be at the law firm office. There were also times I would also discuss Josh's completed Barrier Memos with him in person after I had received and reviewed them.

11. I began working with another investigator Rick Moore ("Rick") in approximately December 2014. As with Josh, I would normally email Rick a list of the prefiling investigations that were needed after my review of client receipts and questionnaires/notes. Generally, I would also email Rick a copy of my Barrier Memo for him to complete after his investigation. Other times, I would put the Barrier Memos into a Dropbox folder where he could download them. After Rick completed his investigation, he would upload the completed Barrier Memos and his photographs to Dropbox.

12. From January 2013 to May 2013, shortly after joining the Moore Law Firm, I created a checklist for client intakes. This checklist explains the process of receiving receipts and notes/questionnaires from clients, opening files, drafting letters to clients advising that their information had been received, how to contact the client if needed for more information, drafting the Barrier Memo from the client's information, arranging for an investigation of the business, evaluating the information provided, rejecting cases if appropriate and how to process rejections,

-3-
DECL. WHITNEY LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

1    drafting complaints if the case was accepted, and similar tasks. I later provided this same checklist
2    to other staff in the firm who were hired and whose responsibilities included client intake. Attached
3    to the Appendix as Exhibits 4-2, 4-3, 4-25 to 4-51 is a true and correct copy of the checklist. This
4    checklist accurately represents the process I go through when client information is received, and
5    how I have trained other staff at the Moore Law Firm to do the same, with the exception of the
6    items that refer to printing or making hard copies of documents as the firm now maintains mostly
7    paperless files

8        13.    From January 2013 on, I also maintained a database of cases clients sent in in order
9    to track the progression of cases through investigation, rejection or filing, and resolution, and to
10   generate reports regarding the same. I first began using the database around the time I started
11   working for the Moore Law Firm in January 2013, and have continued to update it ever since.
12   Attached to the Appendix as Exhibit 8 is a true and correct copy of the database I have created,
13   with a filter applied and redactions showing Ron Moore's rejected cases through today's date. The
14   Exhibit 8 correctly sets forth my itemization of the rejected cases from Ronald Moore. Other than
15   the redactions, the Exhibit 8 is a true and correct copy of the relevant portion of the database that
16   I maintain and continually update.

17       14.    Based upon my review of relevant documents, and consistent with my memory, on
18   or around April 21, 2014, I received and reviewed Ronald Moore's completed questionnaire and
19   receipt from his visit to Zlfred's on April 14, 2014, the date shown both on the receipt and reflected
20   in Ronald Moore's questionnaire. Attached to the Appendix as Exhibit 9-3 and Exhibit 9-6 to 9-7
21   are true and correct copies of the documents I received and reviewed, namely the receipt and
22   questionnaire.

23       15.    After receiving and reviewing the documents provided by Ronald Moore, I opened
24   the matter for the firm. I also prepared the Barrier Memo for Zlfred's by summarizing the barriers
25   Ronald Moore noted on his questionnaire. Thereafter, I tasked Josh to do the prefiling investigation
26   of Zlfred's and saved the Barrier Memo in Dropbox for him to download. Attached to the
27   Appendix as Exhibit 9-9 to 9-10 is a true and correct copy of the Barrier Memo I created for

Zlfred's.

16. After I received the completed Barrier Memo and photographs from Josh's visit to Zlfred's, I instructed a legal assistant to draft the complaint, which I reviewed and sent it to Tanya Moore for her final review. Appendix as Exhibit 9-11 to 9-12 is a true and correct copy of the completed Barrier Memo I received from Josh.

17. After I received Tanya Moore's approval of the Zlfred's complaint, I asked paralegal David Guthrie to send the complaint to Ronald Moore for his review, obtain Ronald Moore's verification, prepare the cover sheet and summons, file the complaint, and have it served along with the required documents.

18. In my nearly seven years of working at the Moore Law Firm and Mission Law Firm, all cases were initiated *after* the firm receives a request to file a lawsuit from a client and the client provides a receipt or other information about his or her visit. I have never requested that anyone investigate any business for ADA violations or barriers unless a client has already provided the firm with information confirming his or her prior visit. I would never send an investigator to a business to evaluate ADA violations without a client first having gone there, and I have never received any direction or instructions from anyone at the Moore Law Firm, Mission Law Firm, or anyone else to do so.

19. In my nearly seven years of working at the Moore Law Firm and Mission Law Firm, I have never seen or heard anything that would lead me to believe that our clients have not personally visited the businesses which they sued. In fact, the practice of the firm has always been to thoroughly investigate a client's claims, and to be sure that his or her visit was well documented, and that his or her claims warranted filing a lawsuit. The rejection letters that are sent fully validate this procedure since there are many cases the law firm does not accept.

20. I have always understood my responsibilities to include ensuring that only fully meritorious claims are pursued on behalf of our clients. From fully documenting the client's visit, to verifying his or her claims, to satisfying ourselves that the client will return to the business, the firm has always insisted on very thorough investigation and verification of client's claims.

DECL. WHITNEY LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

21. I have never met or communicated with Ronny Loreto in any fashion.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. This declaration was signed by me in Hillsborough, North Carolina, on the date set forth below.

Dated: Oct 8, 2019

*Whitney Law*
Whitney Law (Oct 8, 2019)
Whitney Law

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

-6-
DECL. WHITNEY LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION