# Exhibit 14

BIG 5 SPORTING GOODS - #143
3022 West Shaw Avenue
Fresno, CA93711
559-277-8135

1385379      11    8308    143    001

1841527   FRKLN PVS VOLLEYBALL SET
          79.99    -1       -79.99T
Reason: Defective

        SubTotal          -79.99
        Sales Tax         $-6.38
        TOTAL             $-86.37

        Credit Card       -86.37

Type:    Visa
Acct#:   ***********1022
Auth#
        TAX   100143   7.9750%   6.38
        **RETURN RECEIPT**
========================================
    THANK YOU FOR SHOPPING AT BIG 5!
========================================
9/26/12    6:38PM

========================================
    JOIN OUR E-TEAM TODAY & SAVE 10%
        off your next purchase!
    www.big5sportinggoods.com/eteam
========================================

---

BIG 5 SPORTING GOODS - #143
3022 West Shaw Avenue
Fresno, CA93711
559-277-8135

1779263      1    6139    143    002

3768629   KING SIZE M&M PEANUT
          2.39    1           2.39N
3768629   KING SIZE M&M PEANUT
          2.39    1           2.39N
4507299   FRKLN BALL CARE KIT
          9.99    1           9.99T
3094125   HARBINGER PRO GLOVES
          14.99   1          14.99T
2406049   WLSN AVP REPLICA VOLLEYBL
          14.99   1          14.99
Original Price:  19.99
2088342   WLSN SOFTPLAY VLLBALL ACT
          14.99   1          14
1841527   FRKLN PVS VOLLEYBALL SET      79

        SubTotal          139.
        Sales Tax         $10.
        TOTAL             $150.

        Credit Card       150

Type:    Visa
Acct#:   ***********1022
Auth#    013440
        TAX   100143   7.9750%   10.76
9/14/12    4:30PM

========================================
    THANK YOU FOR SHOPPING AT BIG 5!
========================================

========================================
    JOIN OUR E-TEAM TODAY & SAVE 10%
        off your next purchase!
    www.big5sportinggoods.com/eteam
========================================
            Join us on:
    www.Facebook.com/big5sportinggoods
    www.Twitter.com/big5since55
========================================

MLF0032187

EX. 14-2

BIG 5 SPORTING GOODS - #143
3022 West Shaw Avenue
Fresno, CA93711
559-277-8135

| CASHIER# | TYPE | TRAN# | STORE# | REG# |
|----------|------|-------|--------|------|
| 1428033  | 1    | 421   | 143    | 2    |

```
4807947  UA 595 OFFICIAL FOOTBALL
         19.99        1            19.99T
Original Price:    34.99

            SubTotal              19.99
            Sales Tax             $1.64
         TOTAL                   $21.63

            Credit Card          21.63

Type:  Visa
Acct#: ************4008
Auth#  04159B

        TAX   100143   8.2250%    1.64

4/06/14        5:30PM
```

THANK YOU FOR SHOPPING AT BIG 5!

JOIN OUR E-TEAM TODAY & SAVE 10%
off your next purchase!
www.big5sportinggoods.com/eteam

TELL US WHAT YOU THINK
Complete our survey within 7 days
and receive a discount coupon!
www.big5sportinggoods.com/survey
Restrictions may apply

MLF0032149

EX. 14-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _Big 5_

2. When did you visit the Facility? _4/14/14_ (Date) _530pm_ (Time)

3. What is the address of the Facility? _3022 W Shaw Ave Fresno_

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _?_ If more than one visit, please list the date and time if you know it. _?_

6. What was the purpose of your visit? _Birthday present_

7. Who accompanied you to the Facility? _My Grandson_

8. What car did you drive to the Facility? ~~Ford Explorer 2004~~ _Mine_

9. Did you drive yourself of did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In D/P parking spo.l_

11. Was it difficult for you to park there? _Yes_

12. Why? _Because its Rised and you go off of it try to get around car and open the car_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _My Grandson_

16. What problems did you encounter transferring onto your wheelchair?

_D/P parking is Rised And you Roll off of it into Street_

17. Which way did you go from the parking to the entrance of the Facility? _Up Ramp_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

_____

19. Did you encounter any problems opening the door? Describe why. _Door Closed on me no Trishold_

20. Did you have any problems inside the Facility? Describe. _Issle every where_

MLF0032152

EX. 14-4

*in the store Are way to small to narrow for me to get thur*

21. What did you purchase (or what meal did you have there). Describe: *Foot Ball*

22. Have you used the restroom at the Facility? *No*

23. Why did you need to use the restroom? _____

24. Did you use the sink? _____

25. Any problems? _____

26. Did you use the urinal? _____

27. Did you use the toilet? _____

28. Did you use the toilet paper? _____

29. Did you use paper towels? _____

30. Did you use the soap dispenser? _____

31. Did you have any problem maneuvering inside the restroom? _____

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _____

34. Was it wheelchair accessible? *No*

35. Where you comfortable at the table? _____

36. Did you use the counter to pay for purchase? *Yes my grandson gave her the card he ran it for she did I dont know I could not Reach*

37. Which counter did you use? *the one on the Right side*

38. Was the counter accessible? *No could not Reach grandson did it.*

39. Which way did you go after you left the Facility? *out Door to Left*

40. Any problems getting back to your vehicle? *There is A Access Issle that has No Ramp I Almost went off got my grandson grabbed me.*

41. Any problems transferring from your wheelchair to your vehicle? *my grand son Had to get Chair in Car No way I could without falling into Road Behind me.*

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0032153

EX. 14-5

**BARRIER MEMO**

ADAI No. :     01706

Case Name:     Moore v. Big 5 (Fresno)

Address:     3022 W. Shaw Avenue, Fresno, CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---------|-------------|------------------------------|
| Raised Parking Spot | The handicapped parking spot in which the client parked was raised up slightly. This caused the client immense difficulty getting into his chair safely without rolling off into the parking lot. He was unable to load his wheelchair back into his vehicle due to the slope and had to have his grandson do it. | Do not include |
| Heavy Front Door | The entrance had a raised threshold and the door to the facility was so heavy that the client did not have enough time to get inside before the door closed on him. | Yes |
| Narrow Aisles | Once inside the facility, the client could not maneuver down most of the aisles because they were too small and tight. When the client tried to go down one aisle, he kept bumping into and knocking over items on the shelves. | Yes |
| Inaccessible Counter | The client approached, but could not use, the counter on the right side. It was too high for him to make the transaction he needed to, but his grandson helped him. | Yes |
| No safe accessible route provided between the designated parking space and the entrance | On the way out Plaintiff almost wheeled himself off the high curb because the walkway in front of the entrance was sloped toward the curb but was held back by his grandson. | Yes |

MLF0032150

EX. 14-6

**BARRIER MEMO**

**ADAI No. :**     01706

**Case Name:**     Moore v. Big 5 (Fresno)

**Address:**     3022 W. Shaw Avenue, Fresno, CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Raised Parking Spot | The handicapped parking spot in which the client parked was raised up slightly. This caused the client immense difficulty getting into his chair safely without rolling off into the parking lot. He was unable to load his wheelchair back into his vehicle due to the slope and had to have his grandson do it. | Do not include |
| Heavy Front Door | The entrance had a raised threshold and the door to the facility was so heavy that the client did not have enough time to get inside before the door closed on him. | Yes |
| Narrow Aisles | Once inside the facility, the client could not maneuver down most of the aisles because they were too small and tight. When the client tried to go down one aisle, he kept bumping into and knocking over items on the shelves. | Yes |
| Inaccessible Counter | The client approached, but could not use, the counter on the right side. It was too high for him to make the transaction he needed to, but his grandson helped him. | Yes |
| No Ramp on Access Aisle | The access aisle right outside of the store had no ramp. When the client saw the white paint of the aisle, he assumed that there was a ramp and almost wheeled himself off of the high curb, but was held back by his grandson. | Yes, but not sure if that would be a violation |

1

MLF0032151

EX. 14-7

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>AMI, LTD., A CALIFORNIA LIMITED PARTNERSHIP; BIG 5 CORP. dba BIG 5 SPORTING GOODS #143;<br><br>　　　　Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.　　This is a civil rights action by plaintiff Moore ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Big 5 Sporting Goods #143
> 3022 W. Shaw Avenue
> Fresno, CA 93711
> (hereafter "the Facility")

2.　　Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against AMI, LTD., A CALIFORNIA LIMITED PARTNERSHIP; and BIG 5 CORP. dba BIG 5 SPORTING GOODS #143 (hereinafter collectively referred to as "Defendants"),

*Moore v. AMI, Ltd., et al.*
Complaint

MLF0032154

EX. 14-8

pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.   JURISDICTION

3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.   Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

6.   All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.   PARTIES

7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.   Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

9.   The Facility is a public accommodation facility, open to the public, which is intended for nonresidential use and whose operation affects commerce.

10.   Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visits to the Facility on or about September 14, 2012, September 26, 2012, and April 14, 2014:

  a)   The entrance to the Facility had both a raised threshold and a heavy door, making it difficult for Plaintiff to open the door and hold it open

MLF0032155

EX. 14-9

1    long enough to maneuver over the threshold.

2    b)    Once inside the Facility, Plaintiff could not maneuver down many of the

3          aisles because they lacked necessary wheelchair clearances. He kept

4          bumping and knocking over items on the shelves due to the lack of

5          clearance, which was embarrassing.

6    c)    Plaintiff could not find an open accessible checkout counter and was

7          forced to use one that was too high for Plaintiff to reach, so he had his

8          grandson help him complete the transaction.

9    d)    On the way out of the Facility, Plaintiff almost wheeled himself off of

10         the high curb because the walkway in front of the entrance to the

11         Facility was sloped towards the curb; his grandson had to hold him back.

12   11.    The barriers identified in paragraph 10 herein are only those that Plaintiff

13   personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist

14   at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once

15   such additional barriers are identified as it is Plaintiff's intention to have all barriers which

16   exist at the Facility and relate to his disabilities removed to afford him full and equal access.

17   12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

18   Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

19   accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

20   Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

21   once the barriers are removed.

22   13.    Defendants knew, or should have known, that these elements and areas of the

23   Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

24   the physically disabled. Moreover, Defendants have the financial resources to remove these

25   barriers from the Facility (without much difficulty or expense), and make the Facility

26   accessible to the physically disabled. To date, however, Defendants refuse to either remove

27   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

28   14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

*Moore v. AMI, Ltd., et al.*
Complaint

MLF0032156

EX. 14-10

1  and authority to modify the Facility to remove impediments to wheelchair access and to

2  comply with the 2010 Standards for Accessible Design and the California Code of Regulations

3  Title 24. Defendants have not removed such impediments and have not modified the Facility to

4  conform to accessibility standards. Defendants have intentionally maintained the Facility in its

5  current condition and have intentionally refrained from altering the Facility so that it complies

6  with the accessibility standards.

7       15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

8  so obvious as to establish Defendants' discriminatory intent. On information and belief,

9  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

10  to relevant building standards; disregard for the building plans and permits issued for the

11  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

12  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

13  property continues to exist in its non-compliant state. Plaintiff further alleges, on information

14  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

15  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

16                    **VI.    FIRST CLAIM**

17              **Americans with Disabilities Act of 1990**

18              <u>Denial of "Full and Equal" Enjoyment and Use</u>

19       16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

20  this claim.

21       17.    Title III of the ADA holds as a "general rule" that no individual shall be

22  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

23  goods, services, facilities, privileges, and accommodations offered by any person who owns,

24  operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

25       18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

26  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

27  Facility during each visit and each incident of deterrence.

28             <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

MLF0032157

19.     The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.     When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.     Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.     In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.     Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.     The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.     Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. AMI, Ltd., et al.*
Complaint

MLF0032158

1    27.    The ADA also requires that facilities altered in a manner that affects (or could

2 affect) its usability must be made readily accessible to individuals with disabilities to the

3 maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

4 primary function also requires making the paths of travel, bathrooms, telephones, and drinking

5 fountains serving that area accessible to the maximum extent feasible. Id.

6    28.    Here, Defendants altered the Facility in a manner that violated the ADA and

7 was not readily accessible to the physically disabled public – including Plaintiff – to the

8 maximum extent feasible.

9                    Failure to Modify Existing Policies and Procedures

10    29.    The ADA also requires reasonable modifications in policies, practices, or

11 procedures, when necessary to afford such goods, services, facilities, or accommodations to

12 individuals with disabilities, unless the entity can demonstrate that making such modifications

13 would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

14    30.    Here, Defendants violated the ADA by failing to make reasonable modifications

15 in policies, practices, or procedures at the Facility, when these modifications were necessary to

16 afford (and would not fundamentally alter the nature of) these goods, services, facilities, or

17 accommodations.

18    31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney

19 fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

20    32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants

21 violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

22            **VII.    SECOND CLAIM**

23                        **Unruh Act**

24    33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

25 this claim.

26    34.    California Civil Code § 51 states, in part, that: All persons within the

27 jurisdiction of this state are entitled to the full and equal accommodations, advantages,

28 facilities, privileges, or services in all business establishments of every kind whatsoever.

MLF0032159

EX. 14-13

35.    California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.    California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.    Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.    These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

### VIII. THIRD CLAIM

#### Denial of Full and Equal Access to Public Facilities

41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.    Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

MLF0032160

EX. 14-14

45.     Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.      Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.      Attorneys' fees, litigation expense, and costs of suit.[2]

5.      Interest at the legal rate from the date of the filing of this action.

6.      For such other and further relief as the Court deems proper.

Dated: July 10, 2014                    MOORE LAW FIRM, P.C.


                                        _/s/ Tanya E. Moore_
                                        Tanya E. Moore
                                        Attorneys for Plaintiff
                                        Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

_Moore v. AMI, Ltd., et al._
Complaint                           Page 8

**MLF0032161**

EX. 14-15

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated: July 10, 2014                         /s/ Ronald Moore
                                              Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                              /s/ Tanya E. Moore
                                              Tanya E. Moore, Attorney for
                                              Plaintiff, Ronald Moore


*Moore v. AMI, Ltd., et al.*
*Verification*

MLF0032162

# VERIFICATION

.I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: ___7/10/14___                    _Ronald Moore_
                                         Ronald Moore

*Ronald Moore v. AMI, LTD (Big 5)*

MLF0032189

EX. 14-17

**Exhibit 15**



GAS N SAVE
514 S GATEWAY DR
MADERA, CA 936374719

01/08/2013                17:52:40
Merchant ID:       0000000001802938
Terminal ID:              02700464
345303848880

CREDIT CARD
MC SALE

CARD #         XXXXXXXXXXX4370
INVOICE                      0012
Batch #:                   000794
Approval Code:             R6935Z
Entry Method:              Swiped
Mode:                      Online

SALE AMOUNT             $20.00


CUSTOMER COPY

MLF0049102

EX. 15-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
*ADAI No. 1522*
*Gas N Save (Facility) 514 S. Gateway Drive, Madera, CA*

1. What is the name of the Facility? _____

2. When did you visit the Facility? _____(Date) _____(Time)

3. What is the address of the Facility?_____

4. Was this your first visit to the Facility? _____

5. How many times have you visited the Facility? _____ If more than one visit, please list the date and time if you

   know it. _____

6. What was the purpose of your visit? _____

7. Who accompanied you to the Facility? _____

8. What car did you drive to the Facility?_____

9. Did you drive yourself of did you get a ride from someone else? _____

10. Where did you park when you arrived at the Facility?  Describe a specific location where you parked your

    vehicle. _____

11. Was it difficult for you to park there? _____

12. Why? _____

13. How did you unload from your vehicle? _____

14. What side of the vehicle did you unload from? Driver or passenger? _____

15. Did anyone help you to transfer onto your wheelchair? _____

16. What problems did you encounter transferring onto your wheelchair?

    _____

17. Which way did you go from the parking to the entrance of the Facility? _____

18. Did you encounter any problems on your way to the entrance, for example a ramp?  Describe.

    _____

19. Did you encounter any problems opening the door? Describe why. _____

20. Did you have any problems inside the Facility? Describe. _____

MLF0030675

EX. 15-3

_____

_____

21. What did you purchase (or what meal did you have there).  Describe: _____

_____

22. Have you used the restroom at the Facility?_____

23. Why did you need to use the restroom? _____

24. Did you use the sink? _____

25. Any problems? _____

26. Did you use the urinal? _____

27. Did you use the toilet? _____

28. Did you use the toilet paper?_____

29. Did you use paper towels?_____

30. Did you use the soap dispenser?_____

31. Did you have any problem maneuvering inside the restroom? _____

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _____

34. Was it wheelchair accessible? _____

35. Where you comfortable at the table?_____

36. Did you use the counter to pay for purchase? _____

37. Which counter did you use? _____

38. Was the counter accessible? _____

39. Which way did you go after you left the Facility? _____

40. Any problems getting back to your vehicle? _____

41. Any problems transferring from your wheelchair to your vehicle? _____

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0030676

EX. 15-4

January 14, 2013

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

      RE:    ADAI No. 1552
            *Gas N Save* (Facility) 514 S. Gateway Drive, Madera, CA

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt of purchase you provided.

In order for us to evaluate the inquiry and determine if you have a cause of action under the ADA and applicable California statutes we must first obtain information from you regarding the barriers you encountered at the time of your visit to the Facility. Please complete the questionnaire provided with this letter. Please provide specific details. This information will assist us in documenting the existence of the barriers at the Facility.

Your complete and prompt response to this questionnaire is crucial. Please be advised that we will not be able to proceed with this case until we receive the completely filled out questionnaire.

Kindest regards,

*Dictated but not read,*
*Sent in my absence to avoid delay*

Tanya Moore
Attorney at Law

TM/mb

Enclosure:    Public Accommodation Visit Questionnaire

MLF0030677

**BARRIER MEMO**

| ADAI No. : | 01552-Moore | |
|---|---|---|
| Case Name: | Moore v Gas N Save | |
| Address: | 514 S Gateway Dr, Madera, CA | |
| Barrier | Description | Is it a valid barrier? Y / N |
| Aisles too narrow | Plaintiff could not move through either aisle | Yes |
| Register counter very high | Plaintiff had trouble reaching up and paying at counter | Yes |

1

MLF0030679

EX. 15-6



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

May 21, 2013

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Ron Moore
80 N. Hughes Ave.
Clovis, CA 93612

RE:  ADAI No. 01552
     Gas N Save (Facility) 514 S. Gateway Dr, Madera CA

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Tanya Moore*

Tanya Moore
Attorney at Law

TM/ms

Enclosure:  Fee Agreement

MLF0049103

EX. 15-7

1    Tanya E. Moore, SBN 206683
     MOORE LAW FIRM, P.C.
2    332 North Second Street
     San Jose, California 95112
3    Telephone (408) 298-2000
     Facsimile (408) 298-6046
4    E-mail: tanya@moorelawfirm.com

5    Attorneys for Plaintiff
     Ronald Moore
6

7

8                   UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   RONALD MOORE,                    )  No.
                                      )
12             Plaintiff,             )  COMPLAINT ASSERTING DENIAL OF
                                      )  RIGHT OF ACCESS UNDER
13       vs.                          )  AMERICANS WITH DISABILITIES ACT
                                      )  FOR INJUNCTIVE RELIEF,
14   JASPAL SINGH AMROKE; TARLOCHAN   )  DECLARATORY RELIEF, DAMAGES,
     SINGH dba GAS N SAVE aka GAS N SAVE )  ATTORNEYS' FEES AND COSTS (ADA)
15   MINI MART; JASPAL SINGH AMROKE   )
     dba GAS N SAVE aka GAS N SAVE MINI )
16   MART,                            )
                                      )
17                                    )
               Defendants.            )
18   ─────────────────────────────────)

19

20                        I. SUMMARY

21       1.      This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

22   discrimination at the building, structure, facility, complex, property, land, development,

23   and/or surrounding business complex known as:

24             Gas N Save
               514 S. Gateway Drive
25             Madera, CA  93637
               (hereafter "the Facility")
26

27       2.      Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

28   costs, against JASPAL SINGH AMROKE; TARLOCHAN SINGH dba GAS N SAVE aka

     GAS N SAVE MINI MART; and JASPAL SINGH AMROKE dba GAS N SAVE aka GAS

     *Moore v. Amroke, et al.*
     Complaint

                              Page 1

MLF0030680

1   N SAVE MINI MART  (hereinafter collectively referred to as "Defendants"), pursuant to the

2   Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related

3   California statutes.

**II.    JURISDICTION**

5   3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

6   ADA claims.

7   4.    Supplemental jurisdiction for claims brought under parallel California law –

8   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

9   5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

**III.    VENUE**

11   6.    All actions complained of herein take place within the jurisdiction of the

12   United States District Court, Eastern District of California, and venue is invoked pursuant to

13   28 U.S.C. § 1391(b), (c).

**IV.    PARTIES**

15   7.    Defendants own, operate, and/or lease the Facility, and consist of a person (or

16   persons), firm, and/or corporation.

17   8.    Plaintiff requires the use of a wheelchair when traveling about in public.

18   Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

19   United States laws, and a member of the public whose rights are protected by these laws.

**V.    FACTS**

21   9.    The Facility is a public accommodation facility, open to the public, which is

22   intended for nonresidential use and whose operation affects commerce.

23   10.    Plaintiff visited the Facility and encountered barriers (both physical and

24   intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

25   goods, services, privileges and accommodations offered at the Facility.  Plaintiff personally

26   encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

27   about January 8, 2013:

28   a)    Plaintiff had difficulty maneuvering his wheelchair within the aisles of

*Moore v. Amroke, et al.*
Complaint

Page 2

MLF0030681

EX. 15-9

    the Facility because they were narrow and blocked by merchandise stored and/or displayed within the aisles. Plaintiff was unable to complete his shopping in the Facility.

  b) Plaintiff had difficulty completing his transaction because the service counter was too high for Plaintiff to comfortably reach up and pay the Facility employee. Plaintiff was able to complete the transaction by lifting himself out of his wheelchair and extending his arm toward the Facility employee.

11. The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12. Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13. Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14. At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 2010 Standards for Accessible Design and the California Code of

*Moore v. Amroke, et al.*
Complaint

MLF0030682

EX. 15-10

1   Regulations Title 24.   Defendants have not removed such impediments and have not

2   modified the Facility to conform to accessibility standards.   Defendants have intentionally

3   maintained the Facility in its current condition and have intentionally refrained from altering

4   the Facility so that it complies with the accessibility standards.

5        15.   Plaintiff further alleges that the (continued) presence of barriers at the Facility

6   is so obvious as to establish Defendants discriminatory intent.   On information and belief,

7   Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to

8   adhere to relevant building standards; disregard for the building plans and permits issued for

9   the Facility; conscientious decision to maintain the architectural layout (as it currently exists)

10  at the Facility; decision not to remove barriers from the Facility; and allowance that

11  Defendants' property continues to exist in its non-compliance state.   Plaintiff further alleges,

12  on information and belief, that the Facility is not in the midst of a remodel, and that the

13  barriers present at the Facility are not isolated (or temporary) interruptions in access due to

14  maintenance or repairs.

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

### Denial of "Full and Equal" Enjoyment and Use

18       16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

19  this claim.

20       17.   Title III of the ADA holds as a "general rule" that no individual shall be

21  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

22  goods, services, facilities, privileges, and accommodations offered by any person who owns,

23  operates, or leases a place of public accommodation.   42 U.S.C. § 12182(a).

24       18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

25  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

26  Facility during each visit and each incident of deterrence.

### Failure to Remove Architectural Barriers in an Existing Facility

28       19.   The ADA specifically prohibits failing to remove architectural barriers, which

*Moore v. Amroke, et al.*
Complaint

Page 4

MLF0030683

EX. 15-11

1 | are structural in nature, in existing facilities where such removal is readily achievable.  42

2 | U.S.C. § 12182(b)(2)(A)(iv).

3 |      20.    When an entity can demonstrate that removal of a barrier is not readily

4 | achievable, a failure to make goods, services, facilities, or accommodations available through

5 | alternative methods is also specifically prohibited if these methods are readily achievable.

6 | Id. § 12182(b)(2)(A)(v).

7 |      21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

8 | barriers at the Facility without much difficulty or expense, and that Defendants violated the

9 | ADA by failing to remove those barriers, when it was readily achievable to do so.

10 |      22.    In the alternative, if it was not "readily achievable" for Defendants to remove

11 | the Facility's barriers, then Defendants violated the ADA by failing to make the required

12 | services available through alternative methods, which are readily achievable.

13 | Failure to Design and Construct an Accessible Facility

14 |      23.    Plaintiff alleges on information and belief that the Facility was designed and

15 | constructed (or both) after January 26, 1992 – independently triggering access requirements

16 | under Title III of the ADA.

17 |      24.    The ADA also prohibits designing and constructing facilities for first

18 | occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

19 | with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

20 |      25.    Here, Defendants violated the ADA by designing and constructing (or both)

21 | the Facility in a manner that was not readily accessible to the physically disabled public –

22 | including Plaintiff – when it was structurally practical to do so.[1]

23 | Failure to Make an Altered Facility Accessible

24 |      26.    Plaintiff alleges on information and belief that the Facility was modified after

25 | January 26, 1992, independently triggering access requirements under the ADA.

26 |      27.    The ADA also requires that facilities altered in a manner that affects (or could

27 | affect) its usability must be made readily accessible to individuals with disabilities to the

28 |

---

[1] General under either state or federal statutes

*Moore v. Amroke, et al.*
Complaint

Page 5

MLF0030684

EX. 15-12

1   maximum extent feasible.  42 U.S.C. § 12183(a)(2).  Altering an area that contains a

2   facility's primary function also requires making the paths of travel, bathrooms, telephones,

3   and drinking fountains serving that area accessible to the maximum extent feasible. Id.

4        28.    Here, Defendants altered the Facility in a manner that violated the ADA and

5   was not readily accessible to the physically disabled public – including Plaintiff – to the

6   maximum extent feasible.

7                    Failure to Modify Existing Policies and Procedures

8        29.    The ADA also requires reasonable modifications in policies, practices, or

9   procedures, when necessary to afford such goods, services, facilities, or accommodations to

10   individuals with disabilities, unless the entity can demonstrate that making such

11   modifications would fundamentally alter their nature.  42 U.S.C. § 12182(b)(2)(A)(ii).

12        30.    Here, Defendants violated the ADA by failing to make reasonable

13   modifications in policies, practices, or procedures at the Facility, when these modifications

14   were necessary to afford (and would not fundamentally alter the nature of) these goods,

15   services, facilities, or accommodations.

16        31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

17   attorney fees, costs, legal expense) for these aforementioned violations.  42 U.S.C. § 12205.

18        32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

19   Defendants violated the ADA in order to pursue damages under California's Unruh Civil

20   Rights Act or Disabled Persons Act.

21             VII.    SECOND CLAIM

22                    Unruh Act

23        33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

24   this claim.

25        34.    California Civil Code § 51 states, in part, that:  All persons within the

26   jurisdiction of this state are entitled to the full and equal accommodations, advantages,

27   facilities, privileges, or services in all business establishments of every kind whatsoever.

28        35.    California Civil Code § 51.5 also states, in part that:  No business

*Moore v. Amroke, et al.*
Complaint

MLF0030685

EX. 15-13

1   establishment of any kind whatsoever shall discriminate against any person in this state

2   because of the disability of the person.

3       36.    California Civil Code § 51(f) specifically incorporates (by reference) an

4   individual's rights under the ADA into the Unruh Act.

5       37.    Defendants' aforementioned acts and omissions denied the physically

6   disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

7   privileges and services in a business establishment (because of their physical disability).

8       38.    These acts and omissions (including the ones that violate the ADA) denied,

9   aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

10      39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

11  minimum damages of four thousand dollars ($4,000) for each offense.

12      40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

13  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

14  § 52(a).

15                        **VIII. THIRD CLAIM**

16            **Denial of Full and Equal Access to Public Facilities**

17      41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

18  this claim.

19      42.    Health and Safety Code § 19955(a) states, in part, that:  California public

20  accommodations or facilities (built with private funds) shall adhere to the provisions of

21  Government Code § 4450.

22      43.    Health and Safety Code § 19959 states, in part, that:  Every existing (non-

23  exempt) public accommodation constructed prior to July 1, 1970, which is altered or

24  structurally repaired, is required to comply with this chapter.

25      44.    Plaintiff alleges the Facility is a public accommodation constructed, altered,

26  or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

27  Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code

28  § 19956.

*Moore v. Amroke, et al.*
Complaint

MLF0030686

EX. 15-14

45.     Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.     Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.     Attorneys' fees, litigation expense, and costs of suit.[2]

5.     Interest at the legal rate from the date of the filing of this action.

6.     For such other and further relief as the Court deems proper.

Dated: June 17, 2013                     MOORE LAW FIRM, P.C.

                                         /s/ Tanya E. Moore
                                         Tanya E. Moore
                                         Attorneys for Plaintiff,
                                         Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Amroke, et al.*
Complaint

Page 8

MLF0030687

EX. 15-15

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:___June 17, 2013_____          _/s/ Ronald Moore_____
                                     Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                     _/s/ Tanya E. Moore_____
                                     Tanya E. Moore, Attorney for
                                     Plaintiff, Ronald Moore

*Ronald Moore v. Jaspal Singh Amroke, et al.*

MLF0030688

EX. 15-16

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the
foregoing Complaint and know the contents thereof. The same is true of my own knowledge,
except as to those matters which are therein alleged on information and belief, and as to those
matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:   June 17, 2013          /s/ Ronald Moore
                                Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is
maintained by me, and that his concurrence in the filing of this document and attribution of his
signature was obtained.

                                /s/ Tanya E. Moore
                                Tanya E. Moore, Attorney for
                                Plaintiff, Ronald Moore

*Ronald Moore v. Jaspal Singh Amroke, et al.*

MLF0030689

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 6/17/13

Ronald Moore

MLF0049128

# Exhibit 16

```
ARCO 54305
4591 E Belmont
Fresno
CA 93702
Tel : 5592522022
Site Number  12054305

PAID IN
Cash
Total                          100.00
                               100.00
Number 2790412            ORIGINAL
1 JIMMY           07/29/2013 17:15
         Thank you for shopping with us
```

MLF0033631

EX. 16-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _ARCO_

2. When did you visit the Facility? _9/29/13_ (Date) _5:15 pm_ (Time)

3. What is the address of the Facility? _4591 Belmont Ave_

4. Was this your first visit to the Facility? _no_

5. How many times have you visited the Facility? _Few_ If more than one visit, please list the date and time if you know it. _?_

6. What was the purpose of your visit? _Gas and Drink_

7. Who accompanied you to the Facility? _my wife Lynn_

8. What car did you drive to the Facility? _mine_

9. Did you drive yourself of did you get a ride from someone else? _I drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _pump #7_

11. Was it difficult for you to park there? _yes_

12. Why? _There was no Route of travel to Door_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _No_

16. What problems did you encounter transferring onto your wheelchair?
_No_

17. Which way did you go from the parking to the entrance of the Facility? _Between my car and Gas pumps_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
_The pavement And Also Had tank covers in ground on way_

19. Did you encounter any problems opening the door? Describe why. _Yes Inclined @ Door got stuck customer tried to hold Door for me thats when the guy_

20. Did you have any problems inside the Facility? Describe.
_came out and opened Door and Left it open till I Left Then he closed it when I was pulling out of lot to leave_

MLF0033522

EX. 16-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

_____

_____

21. What did you purchase (or what meal did you have there). Describe: _____

_____

22. Have you used the restroom at the Facility? *NO*

23. Why did you need to use the restroom? _____

24. Did you use the sink? _____

25. Any problems? *Fountain Drinks to High. So I did not just own.*

26. Did you use the urinal? _____

27. Did you use the toilet? _____

28. Did you use the toilet paper? _____

29. Did you use paper towels? _____

30. Did you use the soap dispenser? _____

31. Did you have any problem maneuvering inside the restroom? _____

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _____

34. Was it wheelchair accessible? _____

35. Where you comfortable at the table? _____

36. Did you use the counter to pay for purchase? *Yes*

37. Which counter did you use? _____

38. Was the counter accessible? *No credit card machine to High -*

39. Which way did you go after you left the Facility? *out Door to pump my Gas*

40. Any problems getting back to your vehicle? *Just the parment and the tank caps*

41. Any problems transferring from your wheelchair to your vehicle? *No Because I had the car that pulled Up Behind me Stop so I had Room*

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0033523

EX. 16-4

**BARRIER MEMO**

**ADAI No. :**   01738

**Case Name:**   Moore v. Arco #54305

**Address:**   4591 E. Belmont Ave, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Route from pump #7 to entrance uneven | Plaintiff parked at pump #7 and made his way to the store entrance. The surface of the route was uneven, including tank covers, making it difficult for Plaintiff to maneuver to the entrance. | Not req'd |
| Incline at door | The landing outside the store entrance was sloped, making it difficult for Plaintiff to open the door without rolling backwards. He struggled with the door until another customer came and opened it for him. | Y |
| Fountain drinks too high | Plaintiff wanted to buy a fountain soda, but was unable to reach the controls on the machine so he could not get one. | Yes |
| Credit card machine too high | The credit card reader on the transaction counter was too high, making it difficult for Plaintiff to swipe his card. | Yes |

1

MLF0033548

EX. 16-5



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 30, 2014

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:   **ADAI No.   01738**
      **Armey (Arco #54305)**
      *4591 E. Belmont, Fresno CA 93702*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure:  Fee Agreement

MLF0033549

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
### 332 N. Second Street
### San Jose, CA 95112
### (408) 298-2000

     I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Armey (Arco #54305).**

DATE:_____

         _____
         CLIENT'S SIGNATURE- RONALD MOORE

         _____
         ADDRESS

         _____
         CITY

         _____
         TELEPHONE

DATE:_____

         MOORE LAW FIRM, PC
         ATTORNEY FOR RONALD MOORE

MLF0033550

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

---

## MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

THIS AGREEMENT, made this _____ at **San Jose, CA**, by and between <u>Ronald</u>

<u>Moore</u>, hereinafter designated as "Client," and **the Moore Law Firm, PC**, hereinafter designated as

"Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to

represent him/her as his/her attorney at law in the case against ***<u>Armey (Arco #54305)</u>*** and whosoever

may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1.  ATTORNEY TAKES ALL STEPS NECESSARY:  Client empowers

Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and

resolve Client's claims.

PARAGRAPH 2.  COOPERATION: Client agrees to cooperate fully throughout litigation and

immediately notify Attorney of any changes in address, phone number, or employment.  If Client fails to

cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

### FEE ARRANGEMENTS

PARAGRAPH 3(a).  CONTINGENCY FEE ARRANGEMENTS:  If the Client doesn't recover,

or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee

agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is

subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where

the fee which in contingent upon court approval.)  In any event, any fee that requires court approval will

be the fee that controls this agreement.

MLF0033551

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION:  Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief.  Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed.  Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim.  As noted, some claims may include personal injury and statutory violations.  Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ).  NO GUARANTEES:  Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s).  The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees.  However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict.  Client understands the Attorney may receive nothing for services rendered and costs advanced.  Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0033552

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)    Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)    Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)    In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)    In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)    The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0033553

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, no fees will be charged to Client       .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0033554

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0033555

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

\_\_\_\_\_Initial                    \_\_\_\_\_Initial

MLF0033556

DATE:_____         _____
                              CLIENT'S SIGNATURE

DATE:_____         _____
                              CLIENT'S NAME

                              _____
                              ADDRESS

                              _____
                              CITY

                              _____
                              TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____         MOORE LAW FIRM, PC

                              _____
                              ATTORNEY FOR RONALD MOORE

MLF0033557

1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: tanya@moorelawfirm.com

5  Attorneys for Plaintiff
   Ronald Moore

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 RONALD MOORE,                    ) No.
                                    )
12        Plaintiff,                ) COMPLAINT ASSERTING DENIAL OF
                                    ) RIGHT OF ACCESS UNDER
13 vs.                              ) AMERICANS WITH DISABILITIES ACT
                                    ) FOR INJUNCTIVE RELIEF,
14 MELVIN C. ARMEY; CAROL L. GANO;  ) DECLARATORY RELIEF, DAMAGES,
   NIRMAL SINGH GILL dba ARCO #54305;) ATTORNEYS' FEES AND COSTS (ADA)
15 NAVDEEP SINGH dba ARCO #54305;   )
                                    )
16                                  )
          Defendants.               )
17                                  )
                                    )
18 _____ )

19                    I. SUMMARY

20    1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

21 discrimination at the building, structure, facility, complex, property, land, development, and/or

22 surrounding business complex known as:

23          Arco #54305
            4591 East Belmont Avenue
24          Fresno, CA 93702
            (hereafter "the Facility")
25

26    2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

27 costs, against MELVIN C. ARMEY; CAROL L. GANO; NIRMAL SINGH GILL dba ARCO

28 #54305; and NAVDEEP SINGH dba ARCO #54305 (hereinafter collectively referred to as

*Moore v. Armey, et al.*
Complaint
                         Page 1

MLF0033558

EX. 16-15

1   "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et

2   seq.) ("ADA") and related California statutes.

### II.   JURISDICTION

3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

claims.

4.    Supplemental jurisdiction for claims brought under parallel California law –

arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

### III.   VENUE

6.    All actions complained of herein take place within the jurisdiction of the United

States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

§ 1391(b), (c).

### IV.   PARTIES

7.    Defendants own, operate, and/or lease the Facility, and consist of a person (or

persons), firm, and/or corporation.

8.    Plaintiff requires the use of a wheelchair when traveling about in public.

Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

United States laws, and a member of the public whose rights are protected by these laws.

### V.   FACTS

9.    The Facility is a public accommodation facility, open to the public, which is

intended for nonresidential use and whose operation affects commerce.

10.   Plaintiff visited the Facility and encountered barriers (both physical and

intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

about July 29, 2013:

　　　　a)    The landing outside the Facility entrance was sloped, making it difficult

　　　　　　　for Plaintiff to open the door without rolling backwards. Plaintiff

*Moore v. Armey, et al.*
Complaint

MLF0033559

EX. 16-16

1    struggled with the door until another customer came by and opened it for

2    him.

3         b)    Plaintiff wanted to purchase a fountain soda, but could not get one

4                because he was unable to reach the controls on the machine.

5         c)    The credit card reader on the transaction counter was positioned out of

6                Plaintiff's reach, making it difficult for him to swipe his card.

7        11.    The barriers identified in paragraph 10 herein are only those that Plaintiff

8    personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist

9    at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once

10    such additional barriers are identified as it is Plaintiff's intention to have all barriers which

11    exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12        12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

13    Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

14    accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

15    Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

16    once the barriers are removed.

17        13.    Defendants knew, or should have known, that these elements and areas of the

18    Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

19    the physically disabled. Moreover, Defendants have the financial resources to remove these

20    barriers from the Facility (without much difficulty or expense), and make the Facility

21    accessible to the physically disabled. To date, however, Defendants refuse to either remove

22    those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

23        14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

24    and authority to modify the Facility to remove impediments to wheelchair access and to

25    comply with the 2010 Standards for Accessible Design and the California Code of Regulations

26    Title 24. Defendants have not removed such impediments and have not modified the Facility to

27    conform to accessibility standards. Defendants have intentionally maintained the Facility in its

28    current condition and have intentionally refrained from altering the Facility so that it complies

MLF0033560

1 | with the accessibility standards.

2 | 15. Plaintiff further alleges that the (continued) presence of barriers at the Facility is

3 | so obvious as to establish Defendants' discriminatory intent. On information and belief,

4 | Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

5 | to relevant building standards; disregard for the building plans and permits issued for the

6 | Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

7 | the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

8 | property continues to exist in its non-compliant state. Plaintiff further alleges, on information

9 | and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

10 | Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

11 | **VI.   FIRST CLAIM**

12 | **Americans with Disabilities Act of 1990**

13 | Denial of "Full and Equal" Enjoyment and Use

14 | 16. Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

15 | this claim.

16 | 17. Title III of the ADA holds as a "general rule" that no individual shall be

17 | discriminated against on the basis of disability in the full and equal enjoyment (or use) of

18 | goods, services, facilities, privileges, and accommodations offered by any person who owns,

19 | operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

20 | 18. Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

21 | enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

22 | Facility during each visit and each incident of deterrence.

23 | Failure to Remove Architectural Barriers in an Existing Facility

24 | 19. The ADA specifically prohibits failing to remove architectural barriers, which

25 | are structural in nature, in existing facilities where such removal is readily achievable. 42

26 | U.S.C. § 12182(b)(2)(A)(iv).

27 | 20. When an entity can demonstrate that removal of a barrier is not readily

28 | achievable, a failure to make goods, services, facilities, or accommodations available through

*Moore v. Armey, et al.*
Complaint

Page 4

MLF0033561

EX. 16-18

alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.   Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.   In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### Failure to Design and Construct an Accessible Facility

23.   Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.   The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.   Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

26.   Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Armey, et al.*
Complaint

MLF0033562

EX. 16-19

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

**VII.     SECOND CLAIM**

**Unruh Act**

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

MLF0033563

EX. 16-20

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

*Moore v. Armey, et al.*
Complaint

MLF0033564

EX. 16-21

1.  Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.  Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.  Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.  Attorneys' fees, litigation expense, and costs of suit.[2]

5.  Interest at the legal rate from the date of the filing of this action.

6.  For such other and further relief as the Court deems proper.

Dated: July 28, 2014                    MOORE LAW FIRM, P.C.

                                        /s/ Tanya E. Moore
                                        Tanya E. Moore
                                        Attorneys for Plaintiff
                                        Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Armey, et al.*
Complaint
                                Page 8

MLF0033565

EX. 16-22

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated: July 28, 2014              /s/ Ronald Moore
                                  Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                  /s/ Tanya E. Moore
                                  Tanya E. Moore, Attorney for
                                  Plaintiff, Ronald Moore




*Moore v. Armey, et al.*
*Verification*

MLF0033566

EX. 16-23

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: _7/28/14_                    *Ronald Moore*
                                    Ronald Moore

*Ronald Moore v. Melvin C. Armey, et al. (Arco #54305)*

MLF0033632

EX. 16-24

# Exhibit 17

*More*

*new*

*Bobby salazars*

BOBBY SALAZARS
MEXICAN FOOD
603 N REED
REEDLEY, CA 93654
559-643-0294

DATE 06/16/2010 WED   TIME 02:38
1 REG DRINK LG        $1.49
  TAX1 AM1            $0.14
  TOTAL              $1.63
  CASH               $2.00
  CHANGE             $0.37
# ORDER# 0234
EMPLOYEE: N

PH    711

MLF0053773

EX. 17-2



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

September 28, 2010

Tanya E. Moore
*Attorney at Law*

Martha H. Alvizo
*Paralegal*

Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

Re: *Foster Freeze in Reedley, Ernie's Liquor, Bobby Salazar's and Doughnuts to Go*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review this document and keep it for your records. Please sign the signature page where indicated and return to our office in the enclosed envelope. In addition to your signature page, please send the return receipts from the letters sent via certified mail to the defendants in this case, if any.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated, not read.*
*Sent in Mrs. Moore's absence*
*to avoid delay.*

Tanya Moore
Attorney at Law

MLF0053774

EX. 17-3

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
332 N. Second Street
San Jose, CA 95112
(408) 298-2000


I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against _Bobby Salazars_

DATE: _10/6/10_

_Ronald Moore_
CLIENT'S SIGNATURE

_80 N Hughes_
ADDRESS

_Clovis CA 93612_
CITY

_559 298 3228_
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR

MLF056442

EX. 17-4

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
332 N. Second Street
San Jose, CA  95112
(408) 298-2000

THIS AGREEMENT, made this                    at **San Jose, CA,** by and between **Ronald Moore**

hereinafter designated as "Client," and **the Moore Law Firm, PC,** hereinafter designated as "Attorney,"

witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to

represent him/her as his/her attorney at law in the case again̶*Bobby Salazor* and whosoever

may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1.  ATTORNEY TAKES ALL STEPS NECESSARY:  Client empowers

Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and

resolve Client's claims.

PARAGRAPH 2.  COOPERATION: Client agrees to cooperate fully throughout litigation and

immediately notify Attorney of any changes in address, phone number, or employment.  If Client fails to

cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## FEE ARRANGEMENTS

PARAGRAPH 3(a).  CONTINGENCY FEE ARRANGEMENTS:  If the Client doesn't recover,

or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee

agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is

subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where

the fee which in contingent upon court approval.)  In any event, any fee that requires court approval will

be the fee that controls this agreement.

MLF056443

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial          _____Initial

MLF056444

DATE: _10/6/10_

_Ronald Moore_
CLIENT'S SIGNATURE

DATE: _10/6/10_

_Ronald Moore_
CLIENT'S SIGNATURE

_80 N Hughes_
ADDRESS

_Clovis CA 93612_
CITY

_559 298 3228_
TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____

MOORE LAW FIRM, PC

_____
ATTORNEY FOR

MLF056445

EX. 17-7

Tanya Moore, Esq. 206683
MOORE LAW FIRM, P.C.
332 N. Second Street
San Jose, CA 95112
Telephone (408) 271-6600
Facsimile (408) 298-6046

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | ) No. |
| Plaintiff, | ) |
| vs. | ) **Plaintiff's Complaint** |
| B & S FRESH INVESTMENTS, dba BOBBY SALAZARS MEXICAN RESTAURANT, WJD, L P, A CALIFORNIA LIMITED PARTNERSHIP, | ) |
| Defendants. | ) |

## I.    SUMMARY

1.     This is a civil rights action by plaintiff Ronald Moore ("Moore") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

Bobby Salazars Mexican Restaurant
603 N. Reed Ave.
Reedley, CA
(hereinafter "Restaurant")

MLF056446

EX. 17-8

2. Moore seeks damages, injunctive and declaratory relief, attorney fees and costs, against B & S FRESH INVESTMENTS, dba BOBBY SALAZARS MEXICAN RESTAURANT, WJD, L P, A CALIFORNIA LIMITED PARTNERSHIP, (hereinafter referred to collectively as Defendants), owners and operators of Bobby Salazars Mexican Restaurant ("Restaurant"), pursuant to the Americans with Disabilities Act of 1990, (42 U.S.C. §§ 12101 et seq.) and related California statutes.

## II. JURISDICTION

3. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4. Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5. Moore's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III. VENUE

6. All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b),(c).

## IV. PARTIES

7. Defendants own, operate, and/or lease the Restaurant, and consist of a person (or persons), firm, and/or corporation.

8. Moore was diagnosed with hydrocephalus, degenerative disc disease of the lower back, cervical radiculopathy, B knee arthritis and chronic pain syndrome since 2002 and requires the use of wheelchair when traveling about in public. Consequently, Moore is physically disabled, as defined by all

MLF056447

EX. 17-9

applicable California and United States laws and the member of the public whose rights are protected by these laws.

## V.    FACTS

9.      The Restaurant is a public accommodation facility/restaurant, open to the public, which is intended for nonresidential use and whose operation affects commerce.

10.     Moore visited the Restaurant and encountered barriers (both physical and intangible) that interfered with – if not outright denied – his ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility.   To the extent known by Moore, the barriers at the Restaurant included, but are not limited to, the following:

1)  A warning sign regarding the penalty for unauthorized use of designated disabled parking spaces is not posted conspicuously at EACH entrance to the off-street parking facilities;

2) Each warning sign does not state: "UNAUTHORIZED VEHICLES PARKED IN DESIGNATED ACCESSIBLE SPACES NOT DISPLAYING DISTINGUISHING PLACARDS OR SPECIAL LICENSE PLATES ISSUED FOR PERSONS WITH DISABILITIES WILL BE TOWED AWAY AT OWNER'S EXPENSE.  TOWED VEHICLES MAY BE RECLAIMED AT (Address) OR BY TELEPHONING (Phone Number); Sign must be black on white;

3) The correct number of standard accessible and van-accessible parking stalls is not provided on the site;

4) Each parking space reserved for persons with disabilities is not identified by a reflectorized sign permanently posted immediately adjacent to and visible from each stall or space, consisting of a profile

MLF056448

EX. 17-10

view of the International Symbol of Accessibility in white on a dark blue background;

5) The surface of each accessible parking pace does not have a surface identification duplicating either of the following schemes:

    a. By outlining or painting the stall or space in blue and outlining on the ground in the stall or space in white or suitable contrasting color a profile view depicting a wheelchair with occupant;

    b. By outlining a profile view of a wheelchair with occupant in white on blue background. The profile view shall be located so that it is visible to a traffic enforcement officer when a vehicle is properly parked in the space and shall be 36" high by 36" wide;

6) The loading and unloading access aisle is not marked by a border that is painted blue;

7) There is no accessible route provided within the boundary of the site to an accessible building entrances from:

    a. Public transportation stops;

    b. Accessible parking spaces;

    c. Accessible passenger loading zones;

    d. Public streets and sidewalks;

8) Signage containing the International Symbol of Accessibility is not located at every primary public entrance and at every major exterior junction where the accessible route of travel diverges from the regular circulation path along or leading to an accessible route of travel;

9) The entrance door to a single accommodation toilet room does not contain an accessible privacy latch (push button-lever release recommended);

10) The minimum clear width of the accessible route is less than 36";

*Moore v. B & S Fresh Investment, et al.*

Plaintiff's Complaint

MLF056449

EX. 17-11

11) Handles, pulls latches, locks and other operating devices on accessible doors shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching or twisting of the wrist to operate;

12) The minimum 28" wide clear floor space is not provided from the side of the water closet to the adjacent lavatory;

13) The rear grab bar does not extend from the centerline of the water closet 12" minimum on one side and 24" minimum on the other side;

14) The incorrectly placed toilet paper dispenser is not located on the side wall below the grab bar no more than 12" away of the front edge of the toilet seat;

15) The more correctly placed toilet paper dispenser is mounted less than a minimum height of 19" from the floor to the centerline of the dispenser;

16) Hot water piping is not insulated or configured to prevent contact;

17) Sanitary facilities are not displaying signs in a minimum of two locations; one type located on the doorway to the facility, and another type mounted on the wall adjacent to the latch side of the door.

18) No detectable warning surface is provided along the accessible route;

19) Directional signage to restrooms is not properly posted;

20) Seating area is not configured for wheelchair accessibility;

These barriers prevented Moore from enjoying full and equal access.

11. Moore was also deterred from visiting the Restaurant because he knew that the Restaurant's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as

MLF056450

EX. 17-12

himself). He continues to be deterred from visiting the Restaurant because of the future threats of injury created by these barriers.

12. Moore also encountered barriers at the Restaurant, which violate state and federal law, but were unrelated to his disability. Nothing within this complaint, however, should be construed as an allegation that Moore is seeking to remove barriers unrelated to his disability.

13. Defendants knew that these elements and areas of the Restaurant were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Restaurant (without much difficulty or expense), and make the Restaurant accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14. At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Restaurant to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. Defendants have not removed such impediments and have not modified the Restaurant to conform to accessibility standards. Defendants have intentionally maintained the Restaurant in its current condition and haves intentionally refrained from altering the Restaurant so that it complies with the accessibility standards.

15. Moore further alleges that the (continued) presence of barriers at the Restaurant is so obvious as to establish Defendants discriminatory intent.[1] On information and belief, Moore avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Restaurant;

---

[1] E.g., <u>Gunther v. Lin</u>, 144 Cal.App.4[th] 223, fn.6

*Moore v. B & S Fresh Investment, et al.*

Plaintiff's Complaint

Page 6

MLF056451

EX. 17-13

1  conscientious decision to the architectural layout (as it currently exists) at the
2  Restaurant; decision not to remove barriers from the Restaurant; and allowance
3  that Defendants' property continues to exist in its non-compliance state. Moore
4  further alleges, on information and belief, that the Restaurant is not in the midst
5  of a remodel, and that the barriers present at the Restaurant are not isolated (or
6  temporary) interruptions in access due to maintenance or repairs.[2]

## VI.  FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

10  16.  Moore incorporates the allegations contained in paragraphs 1
11  through 15 for this claim.

12  17.  Title III of the ADA holds as a "general rule" that no individual
13  shall be discriminated against on the basis of disability in the full and equal
14  enjoyment (or use) of goods, services, facilities, privileges, and
15  accommodations offered by any person who owns, operates, or leases a place of
16  public accommodation.  42 U.S.C. § 12182(a).

17  18.  Defendants discriminated against Moore by denying "full and
18  equal enjoyment" and use of the goods, services, facilities, privileges and
19  accommodations of the Restaurant during each visit and each incident of
20  deterrence.

21  <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

22  19.  The ADA specifically prohibits failing to remove architectural
23  barriers, which are structural in nature, in existing facilities where such removal
24  is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv).  The term "readily
25  achievable" is defined as "easily accomplishable and able to be carried out
26  without much difficulty or expense." <u>Id</u>. § 12181(9).

---

[2] Id.; 28 C.F.R. § 36.211(b)

*Moore v. B & S Fresh Investment, et al.*

Plaintiff's Complaint

EX. 17-14

MLF056452

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable.  Id. § 12182(b)(2)(A)(v).

21.    Here, Moore alleges that Defendants can easily remove the architectural barriers at Restaurant without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.    In the alternative, if it was not "readily achievable" for Defendants to remove the Restaurant's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### Failure to Design and Construct and Accessible Facility

23.    On information and belief, the Restaurant was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III or the ADA.

24.    The ADA also prohibits designing and constructing facilities or first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.    Here, Defendants violated the ADA by designing and constructing (or both) the Restaurant in a manner that was not readily accessible to the physically disabled public – including Moore – when it was structurally practical to do so.[3]

### Failure to Make an Altered Facility Accessible

---

[3] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state of federal statutes.

*Moore v. B & S Fresh Investment, et al.*

Plaintiff's Complaint

EX. 17-15

MLF056453

26. On information and belief, the Restaurant was modified after January 26, 1992, independently triggering access requirements under the ADA.

27. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28. Here, Defendants altered the Restaurant in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Moore – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30. Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Restaurant, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31. Moore seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

EX. 17-16

MLF056454

32.     Moore also seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## VII.   SECOND CLAIM

### Disabled Persons Act

33.     Moore incorporates the allegations contained in paragraphs 1 through 30 for this claim.

34.     California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

35.     California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

36.     Both sections specifically incorporate (by reference) and individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

37.     Here, Defendants discriminated against the physically disabled public – including Moore – by denying them full and equal access to the Restaurant.   Defendants also violated Moore's rights under the ADA, and therefore, infringed upon or violated (or both) Moore's rights under the Disabled Persons Act.

38.     For each offense of the Disabled Persons Act, Moore seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

MLF056455

EX. 17-17

39. He also seeks to enjoin Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## VIII.  THIRD CLAIM

### Unruh Civil Rights Act

40. Moore incorporates the allegations contained in paragraphs 1 through 30 for this claim.

41. California Civil Code § 51 states, in part, that; All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

42. California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

43. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

44. Defendants aforementioned acts and omissions denied the physically disabled public – including Moore – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

45. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Moore by violating the Unruh Act.

46. Moore was damaged by Defendants wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

MLF056456

EX. 17-18

47. Moore also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## IX. FOURTH CLAIM

### Denial of Full and Equal Access to Public Facilities

48. Moore incorporates the allegations contained in paragraphs 1 through 13 of this claim.

49. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (build with private funds) shall adhere to the provisions of Government Code §4450.

50. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

51. Moore alleges the Restaurant is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Restaurant was not exempt under Health and Safety Code § 19956.

52. Defendants' non-compliance with these requirements at the Restaurant aggrieved (or potentially aggrieved) Moore and other persons with physical disabilities. Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## X. PRAYER FOR RELIEF

WHEREFORE, Moore prays judgment against Defendants for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.

2. Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

*Moore v. B & S Fresh Investment, et al.*

Plaintiff's Complaint

EX. 17-19

MLF056457

3. Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4. Attorneys' fees, litigation expense, and costs of suit.[4]

5. Interest at the legal rate from the date of the filing of this action.

Dated: August 30, 2010

/s/ Tanya Moore
Tanay Moore
Attorney for Plaintiff

---

[4] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. B & S Fresh Investment, et al.*

Plaintiff's Complaint

MLF056458

EX. 17-20

# Exhibit 18

A 1 LIQUORS
3147 N MAROA AVE
FRESNO, CA 93704

02/18/2014                       19:42:38
MID: 000000003471838       TID: 05270481
372254195889

CREDIT CARD

VISA SALE

CARD #                   XXXXXXXXXXXX4008
INVOICE                              0022
Batch #:                           000086
Approval Code:                     07191B
Entry Method:                      Swiped
Mode:                              Online

SALE AMOUNT                         $6.30

CUSTOMER COPY

A—1 SAVE
LIQUOR & I
3147 N MA

DATE 02/19/2014 WED
 1  LOTTERY
    TOTAL     $
    CASH      $
    CHANGE    $
EMPLOYEE1   NO.00009
    THANK YO
    GRACIAS

MLF0038117

EX. 18-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No. 1917

(Facility)

1. What is the name of the Facility? A 1 Liquors

2. When did you visit the Facility? 2/18/14 (Date) 7:40 (Time)

3. What is the address of the Facility? 3147 N. Maroa Ave. Fresno CA.

4. Was this your first visit to the Facility? NO

5. How many times have you visited the Facility? 2/18/14 If more than one visit, please list the date and time if you know it. 2+ More

6. What was the purpose of your visit? lotto tickets

7. Who accompanied you to the Facility? Grandson Ronny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself of did you get a ride from someone else? I Drive

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In front of store

11. Was it difficult for you to park there? Yes

12. Why? No signs or parking or route of travel

13. How did you unload from your vehicle? Rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? Grandson Ronny

16. What problems did you encounter transferring onto your wheelchair?

Road uneven and cracked

17. Which way did you go from the parking to the entrance of the Facility? Up curb to door

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

No ramp grandson helped Me up curb

19. Did you encounter any problems opening the door? Describe why. Not Much

20. Did you have any problems inside the Facility? Describe. Yes, fountain drinks to high

MLF0038118

EX. 18-3

all Isles way to small.

21. What did you purchase (or what meal did you have there). Describe: lotto tickets and drinks

22. Have you used the restroom at the Facility? N/A

23. Why did you need to use the restroom? N/A

24. Did you use the sink? N/A

25. Any problems? N/A

26. Did you use the urinal? N/A

27. Did you use the toilet? N/A

28. Did you use the toilet paper? N/A

29. Did you use paper towels? N/A

30. Did you use the soap dispenser? N/A

31. Did you have any problem maneuvering inside the restroom? N/A

32. Where did you sit? N/A

33. Was there any seating provided inside the Facility? N/A

34. Was it wheelchair accessible? No

35. Where you comfortable at the table? N/A

36. Did you use the counter to pay for purchase? Yes

37. Which counter did you use? only one

38. Was the counter accessible? No really high grandson had to sign receipt

39. Which way did you go after you left the Facility? Outdoor down curb to car

40. Any problems getting back to your vehicle? No ramp. Street cracked

41. Any problems transferring from your wheelchair to your vehicle? Not Much grandson helped me to my door

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0038119

EX. 18-4



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
Attorney at Law

Marejka Siks
Paralegal

March 6, 2014

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

RE:  ADAI No. 1917
     A-1 Liquors (3147 North Maroa Avenue, Fresno, CA
     93704)

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0038177

EX. 18-5

## BARRIER MEMO

**ADAI No. :**    **01917**

**Case Name:**    **Moore v. A-1 Liquors**

**Address:**    **3147 N. Maroa Avenue, Fresno**

| Barrier | Description | Is it a valid barrier? Y / N |
|---------|-------------|------------------------------|
| No accessible parking; pavement at standard stall uneven and cracked | On both visits, Plaintiff was unable to locate a designated accessible parking space at the Facility. He was forced to park in a standard parking stall near the entrance to the Facility, where it was difficult for him to transfer between his vehicle and his wheelchair because the surface of the pavement was uneven and cracked. | There a parking space all the way at the other end of the shopping center; but it is bad, sloped, etc. and far. Possible that Ron did not see it. |
| No ramp to sidewalk | On both visits, Plaintiff was unable to locate an accessible route from his parking space to the entrance of the Facility and could not find a ramp to access the sidewalk leading to the entrance. He was forced to have his grandson help him to back his wheelchair up over the curb, and to wheel him down over the curb when returning to his vehicle. | Yes, no ramp. There is however a built up ramp all the way on the other side but bad, built up with warped surface and high slope. |
| Aisles narrow | The aisles within the Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver around inside the store. | Yes, very!! narrow |
| Fountain sodas too high | The self-serve fountain soda controls were positioned too high for Plaintiff to reach and he had to ask his grandson for assistance. | Yes, high. |
| Counter too high | The cashier counter at the Facility was too high for Plaintiff to reach up to sign his receipt. He was forced to have his grandson sign the receipt for him. | |

1

MLF0038131

EX. 18-6



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

May 9, 2014

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE: **ADAI No.     01917**
**Bhangu (A-1 Liquors)**
*3147 North Maroa Avenue, Fresno, CA 93704*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure: Fee Agreement

MLF0056325

EX. 18-7

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

332 N. Second Street
San Jose, CA 95112
(408) 298-2000

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Bhangu (A-1 Liquors).**

DATE: _____

_____
CLIENT'S SIGNATURE- RONALD MOORE

_____
ADDRESS

_____
CITY

_____
TELEPHONE

DATE: _____

MOORE LAW FIRM, PC
ATTORNEY FOR RONALD MOORE

MLF0056317

EX. 18-8

# *CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

## MOORE LAW FIRM, PROFESSIONAL CORPORATION
332 N. Second Street
San Jose, CA 95112
(408) 298-2000

THIS AGREEMENT, made this _____ at **San Jose, CA**, by and between <u>Ronald</u>

<u>Moore</u>, hereinafter designated as "Client," and **the Moore Law Firm, PC**, hereinafter designated as

"Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to

represent him/her as his/her attorney at law in the case against _**Bhangu (A-1 Liquors)**_ and whosoever

may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1.  ATTORNEY TAKES ALL STEPS NECESSARY:  Client empowers

Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and

resolve Client's claims.

PARAGRAPH 2.  COOPERATION: Client agrees to cooperate fully throughout litigation and

immediately notify Attorney of any changes in address, phone number, or employment.  If Client fails to

cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## <u>FEE ARRANGEMENTS</u>

PARAGRAPH 3(a).  CONTINGENCY FEE ARRANGEMENTS:  If the Client doesn't recover,

or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee

agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is

subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where

the fee which in contingent upon court approval.)  In any event, any fee that requires court approval will

be the fee that controls this agreement.

MLF0056318

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0056319

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

### FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)      Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)     Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)    In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)    In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0056320

PARAGRAPH 3(f). BILLING RATE:  Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour.  Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES:  Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages.  These damages are awarded in a sufficient amount to punish or make an example of the defendant(s).  Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY:  Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement.  If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE:  As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u>        .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY:  For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable.  If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs.  Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT:  Client agrees to reimburse Attorney for all costs if there is no recovery.  Costs include, but not limited to, the following: filing fees, service

MLF0056321

EX. 18-12

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0056322

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial                _____Initial

MLF0056323

DATE:_____

CLIENT'S SIGNATURE

DATE:_____

CLIENT'S NAME

ADDRESS

CITY

TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____

MOORE LAW FIRM, PC

ATTORNEY FOR RONALD MOORE

MLF0056324

EX. 18-15

1   Tanya E. Moore, SBN 206683
    MOORE LAW FIRM, P.C.
2   332 North Second Street
    San Jose, California 95112
3   Telephone (408) 298-2000
    Facsimile (408) 298-6046
4   E-mail: tanya@moorelawfirm.com

5   Attorneys for Plaintiff
    Ronald Moore

6

7

8                  UNITED STATES DISTRICT COURT

9                EASTERN DISTRICT OF CALIFORNIA

10

11  RONALD MOORE,                        ) No.
                                         )
12            Plaintiff,                  )  COMPLAINT ASSERTING DENIAL OF
                                         )  RIGHT OF ACCESS UNDER
13      vs.                               )  AMERICANS WITH DISABILITIES ACT
                                         )  FOR INJUNCTIVE RELIEF,
14  JASVINDER SINGH BHANGU dba A-1        )  DECLARATORY RELIEF, DAMAGES,
    LIQUOR; BARINDER KAUR dba A-1         )  ATTORNEYS' FEES AND COSTS (ADA)
15  LIQUOR; AVNINDER S. MANN dba A-1      )
    LIQUOR; HARDEEP SINGH TATLA dba A-   )
16  1 LIQUOR; RAVINDER B. TATLA dba A-1   )
    LIQUOR; SHIELDS-MAROA LAND            )
17  COMPANY, LLC;                         )
                                         )
18                                       )
              Defendants.                 )
19                                       )
                                         )
20  _____)

21                       I. SUMMARY

22      1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

23  discrimination at the building, structure, facility, complex, property, land, development,

24  and/or surrounding business complex known as:

25          A-1 Liquor
            3147 North Maroa Avenue
26          Fresno, CA 93704
            (hereafter "the Facility")
27

28      2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

*Moore v. Bhangu, et al.*
Complaint                          Page 1

MLF0038167

EX. 18-16

1  costs, against JASVINDER SINGH BHANGU dba A-1 LIQUOR; BARINDER KAUR dba
2  A-1 LIQUOR; AVNINDER S. MANN dba A-1 LIQUOR; HARDEEP SINGH TATLA dba
3  A-1 LIQUOR; RAVINDER B. TATLA dba A-1 LIQUOR; and SHIELDS-MAROA LAND
4  COMPANY, LLC (hereinafter collectively referred to as "Defendants"), pursuant to the
5  Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related
6  California statutes.

## II.   JURISDICTION

8      3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for
9  ADA claims.

10     4.   Supplemental jurisdiction for claims brought under parallel California law –
11  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

12     5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

14     6.   All actions complained of herein take place within the jurisdiction of the
15  United States District Court, Eastern District of California, and venue is invoked pursuant to
16  28 U.S.C. § 1391(b), (c).

## IV.   PARTIES

18     7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or
19  persons), firm, and/or corporation.

20     8.   Plaintiff requires the use of a wheelchair when traveling about in public.
21  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and
22  United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

24     9.   The Facility is a public accommodation facility, open to the public, which is
25  intended for nonresidential use and whose operation affects commerce.

26     10.   Plaintiff visited the Facility and encountered barriers (both physical and
27  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the
28  goods, services, privileges and accommodations offered at the Facility.  Plaintiff personally

*Moore v. Bhangu, et al.*
Complaint

MLF0038168

EX. 18-17

encountered the following barriers at the Facility during Plaintiff's visits to the Facility on or about February 18, 2014 and February 19, 2014:

a) On both visits, Plaintiff was unable to locate a designated accessible parking space at the Facility. He was forced to park in a standard parking stall near the entrance to the Facility, where it was difficult for him to transfer between his vehicle and his wheelchair because the surface of the parking lot was uneven and cracked.

b) On both visits, Plaintiff was unable to locate an accessible route from his parking space to the entrance of the Facility and could not find a ramp to access the sidewalk leading to the entrance. He was forced to have his grandson help him to back his wheelchair up over the curb, and to wheel him down off the curb when returning to his vehicle.

c) On both visits, the aisles within the Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver around the store.

d) During Plaintiff's February 18, 2014 visit to the Facility, he wanted to buy a soda but the self-serve fountain soda controls were positioned too high for Plaintiff to reach. He had to ask his grandson for assistance to fill his soda.

e) On both visits, the cashier counter at the Facility was improperly configured, preventing Plaintiff from reaching the counter to sign his receipt. He was forced to ask his grandson to sign the receipt for him.

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered.  Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities.  Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

MLF0038169

EX. 18-18

12.    Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.    Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14.    At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 2010 Standards for Accessible Design and the California Code of Regulations Title 24. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants' discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

*Moore v. Bhangu, et al.*
Complaint

MLF0038170

EX. 18-19

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

#### Failure to Remove Architectural Barriers in an Existing Facility

19.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv).

20.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable.  Id. § 12182(b)(2)(A)(v).

21.   Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.   In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

#### Failure to Design and Construct an Accessible Facility

23.   Plaintiff alleges on information and belief that the Facility was designed and

MLF0038171

EX. 18-20

1  constructed (or both) after January 26, 1992 – independently triggering access requirements
2  under Title III of the ADA.

3      24.    The ADA also prohibits designing and constructing facilities for first
4  occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals
5  with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

6      25.    Here, Defendants violated the ADA by designing and constructing (or both)
7  the Facility in a manner that was not readily accessible to the physically disabled public –
8  including Plaintiff – when it was structurally practical to do so.[1]

9                    Failure to Make an Altered Facility Accessible

10     26.    Plaintiff alleges on information and belief that the Facility was modified after
11  January 26, 1992, independently triggering access requirements under the ADA.

12     27.    The ADA also requires that facilities altered in a manner that affects (or could
13  affect) its usability must be made readily accessible to individuals with disabilities to the
14  maximum extent feasible.  42 U.S.C. § 12183(a)(2).   Altering an area that contains a
15  facility's primary function also requires making the paths of travel, bathrooms, telephones,
16  and drinking fountains serving that area accessible to the maximum extent feasible. Id.

17     28.    Here, Defendants altered the Facility in a manner that violated the ADA and
18  was not readily accessible to the physically disabled public – including Plaintiff – to the
19  maximum extent feasible.

20                    Failure to Modify Existing Policies and Procedures

21     29.    The ADA also requires reasonable modifications in policies, practices, or
22  procedures, when necessary to afford such goods, services, facilities, or accommodations to
23  individuals with disabilities, unless the entity can demonstrate that making such
24  modifications would fundamentally alter their nature.  42 U.S.C. § 12182(b)(2)(A)(ii).

25     30.    Here, Defendants violated the ADA by failing to make reasonable
26  modifications in policies, practices, or procedures at the Facility, when these modifications

27

28
_____
[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a
private attorney general under either state or federal statutes.

*Moore v. Bhangu, et al.*
Complaint
                            Page 6

1   were necessary to afford (and would not fundamentally alter the nature of) these goods,

2   services, facilities, or accommodations.

3        31.   Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

4   attorney fees, costs, legal expense) for these aforementioned violations.  42 U.S.C. § 12205.

5        32.   Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

6   Defendants violated the ADA in order to pursue damages under California's Unruh Civil

7   Rights Act.

8             **VII.    SECOND CLAIM**

9             **Unruh Act**

10       33.   Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

11  this claim.

12       34.   California Civil Code § 51 states, in part, that:  All persons within the

13  jurisdiction of this state are entitled to the full and equal accommodations, advantages,

14  facilities, privileges, or services in all business establishments of every kind whatsoever.

15       35.   California Civil Code § 51.5 also states, in part that:  No business

16  establishment of any kind whatsoever shall discriminate against any person in this state

17  because of the disability of the person.

18       36.   California Civil Code § 51(f) specifically incorporates (by reference) an

19  individual's rights under the ADA into the Unruh Act.

20       37.   Defendants' aforementioned acts and omissions denied the physically

21  disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

22  privileges and services in a business establishment (because of their physical disability).

23       38.   These acts and omissions (including the ones that violate the ADA) denied,

24  aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

25       39.   Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

26  minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

27       40.   Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

28  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

*Moore v. Bhangu, et al.*
Complaint
                         Page 7

MLF0038173

1 | § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that:  California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that:  Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.     Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.     Attorneys' fees, litigation expense, and costs of suit.[2]

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Bhangu, et al.*
Complaint

Page 8

MLF0038174

EX. 18-23

1  5.  Interest at the legal rate from the date of the filing of this action.

2  6.  For such other and further relief as the Court deems proper.

3

Dated: April 28, 2014                    MOORE LAW FIRM, P.C.

4

5                                         /s/ Tanya E. Moore
6                                         Tanya E. Moore
                                          Attorneys for Plaintiff
7                                         Ronald Moore

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Moore v. Bhangu, et al.*
Complaint
                              Page 9

MLF0038175

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:____April 28, 2014_____          _/s/ Ronald Moore_____
                                        Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                        _/s/ Tanya E. Moore_____
                                        Tanya E. Moore, Attorney for
                                        Plaintiff, Ronald Moore

*Moore v. Bhangu, et al.*
*Verification*

MLF0038176

EX. 18-25

# Exhibit 19

JOHNNY QUIK 117
6840 N GOLDEN STATE
FRESNO

JOHNNY QUIK 117
6840 N GOLDEN ST. FRESNO          CA
STN# 00205528

CARD NOT CHARGED UNTIL SALE COMPLETE
FINAL RECEIPT PRINTS AT DISPENSER

xxxxxxxxxxxx4370          E/MASTERCARD
TAXABLE                        2.50T
Singlecrv                      0.05
Singlecrv                      0.05
1 Unleaded/Self
Pump6 Prepa 12.0000@$4.139/G $ 50.00

Items:  4      Subtotal        52.60
Sales Tax                      0.20
Total                          52.80

Credit Card(USD$)             $52.80

Auth#:      R8893Z

*** Customer Copy ***

                 Learn how to
                 EARN REWARDS
                 with a Chevron
                 or Texaco
                 Credit Card
                 See application
                 for details

1360101e19s2140t1 03/27/13 15:15:52

             Thank You
             Call  Again

---

JOHNNY QUIK 117
6840 N GOLDEN STATE
FRESNO

JOHNNY QUIK 117
6840 N GOLDEN ST. FRESNO          CA
STN# 00205528

         Credit Card Receipt

xxxxxxxxxxxx4370          E/MASTERCARD
wave light                     3.99T

Items:  1      Subtotal        3.99
Sales Tax                      0.32
Total                          4.31

Credit Card(USD$)             $4.31

Invoice#:   2857311
Auth#:      R9460Z

*** Customer Copy ***

                 Learn how to
                 EARN REWARDS
                 with a Chevron
                 or Texaco
                 Credit Card
                 See application
                 for details

1360102e19s2140t1 03/27/13 15:16:39

             Thank You
             Call  Again

MLF0029297

EX. 19-2

new case
Ron
open

JOHNNY QUIK 117
6840 N GOLDEN STATE
FRESNO

JOHNNY QUIK 117                     CA
6840 N GOLDEN ST.  FRESNO
STN# 00205528

                 Cash Receipt

                              1.00

NON TAX

Items:  1      Subtotal        1.00
                               0.00
Tax                            ..00
Total

                              $1.00
Cash                           0.00
        CHANGE DUE

   1089587s19s:s05t1 04/21/12 14:27:09

           Th...  You
        Call  Again

-TM  subd...

MLF0029298

EX. 19-3

```
          JOHNNY QUIK 117
        6840 N GOLDEN STATE
             FRESNO

     JOHNNY QUIK 117
     6840 N GOLDEN ST. FRESNO        CA
     STN# 00205528

              Cash Receipt

     TAXABLE          2 @  3.00    6.00T
     Largesingl       4 @  0.10    0.40

     Items:  6      Subtotal       6.40
     Sales Tax                     0.48
     Total                         6.88

     Cash                        $20.00
        CHANGE DUE                13.12

     1089586e19s1805t1 04/21/12 14:26:48

             Thank You
           Call  Again
```

MLF0029299

EX. 19-4



new case
Bob's receipt

JOHNNY QUIK 117
6840 N GOLDEN STATE
FRESNO

JOHNNY QUIK 117
6840 N GOLDEN ST. FRESNO          CA
STN# 00205528

Cash Receipt

Pump6 Prepay                      20.00

Items:  1      Subtotal           20.00
Tax                                0.00
Total                             20.00

Cash                             $20.00
CHANGE DUE                         0.00

1302119e19s2074t1 01/12/13 09:26:12

Thank You
Call Again

MLF0029300

EX. 19-5

## PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _Johnny Quick #117_

2. When did you visit the Facility? _3/27/13_ (Date) _330 pm_ (Time)

3. What is the address of the Facility? _6840 N Golden St. Fresno Ca_

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _few_ If more than one visit, please list the date and time if you know it. _2_

6. What was the purpose of your visit? _Gas  Drink  Eat_

7. Who accompanied you to the Facility? _myself_

8. What car did you drive to the Facility? _My car_

9. Did you drive yourself or did you get a ride from someone else? _I drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _@ Gas pump #3_

11. Was it difficult for you to park there? _yes_

12. Why? _had to cross street to get to Ramp_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _No_

16. What problems did you encounter transferring onto your wheelchair?
_Car pulled in Behind me had to move my car up so I could get my chair out_

17. Which way did you go from the parking to the entrance of the Facility? _Across street to Ramp_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
_Back Access no Route of Travel Access Issle to smith Ramp go's into street at the End of Ramp at sidewalk Big crack_

19. Did you encounter any problems opening the door? Describe why. _Door Heavey and Closed fast_

20. Did you have any problems inside the Facility? Describe. _The Rest Issle's to narrow_

MLF0029301

EX. 19-6

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADA| No.

(Facility)

To Get Down Hot Dog's And Rolls To High on counter

21. What did you purchase (or what meal did you have there). Describe: _GAS Drinks_
Could not get some to eat to High

22. Have you used the restroom at the Facility? _Yes_

23. Why did you need to use the restroom? _Had to go_

24. Did you use the sink? _Yes_

25. Any problems? _To high    pipes not wraped._

26. Did you use the urinal? _NO_

27. Did you use the toilet? _Yes_

28. Did you use the toilet paper? _NO_

29. Did you use paper towels? _Yes_

30. Did you use the soap dispenser? _Yes  to high_

31. Did you have any problem maneuvering inside the restroom? _NO_

32. Where did you sit? _could not get Down Fise to seat Down_

33. Was there any seating provided inside the Facility? _Yes_

34. Was it wheelchair accessible? _NO_

35. Where you comfortable at the table? _Could not get to Then Teble to sit_

36. Did you use the counter to pay for purchase? _YES_

37. Which counter did you use? _one close to Front Door_

38. Was the counter accessible? _There was stuff to side of Register so coud_
_not get close to sign Reipt_

39. Which way did you go after you left the Facility? _To Left to Ramp_

40. Any problems getting back to your vehicle? _Had to wait for cars to get_
_Access Road_

41. Any problems transferring from your wheelchair to your vehicle? _NO_

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0029302

EX. 19-7

| | |
|---|---|
| **From:** | Whitney Law |
| **Sent:** | Tuesday, March 26, 2013 10:02 AM |
| **To:** | ronmoore441@gmail.com |
| **Subject:** | Johnny Quik 117 |
| **Attachments:** | Johnny Quik 117.pdf |

Dear Mr. Moore:

Attached please find copies of your receipts from Johnny Quik 117. Please give me a call to discuss within one week if you still wish to pursue these claims.

Thank you,

Whitney Law
Paralegal
Moore Law Firm, P.C.
332 North Second Street
San Jose, California 95112
(408) 298-2000 Extension 238
(408) 298-6046 Facsimile
whitney@moorelawfirm.com

1

MLF0029328

EX. 19-8

<u>BARRIER MEMO</u>

ADAI No. :      01337

Case Name:      Moore v. Johnny Quick #117

Address:      6840 North Golden State, Fresno, CA

| Barrier | Description | Is it a valid barrier?<br>Y / N |
|---|---|---|
| No accessible route from gas pumps to entrance | Plaintiff was unable to locate an accessible route from the gas pumps to the entrance of the Facility's store. Plaintiff was forced to travel across the driveway, which lacked a designated crossing area, and over uneven and cracked surfaces to reach the designated access aisle leading to the ramp to the sidewalk. | |
| Access aisle narrow | To reach the ramp to the sidewalk, Plaintiff was forced to travel down the designated access aisle between two parked cars. The access aisle was extremely narrow, making it difficult for Plaintiff to maneuver his wheelchair between the parked cars to reach the ramp. | |
| Ramp extends into access aisle with no protected edges; surface cracked and uneven | The ramp to the sidewalk extended down into the access aisle and lacked protected edges, and the surface of the ramp was cracked and uneven, making it difficult for Plaintiff to maneuver his wheelchair up and down the ramp safely. | |
| Door heavy and closes quickly | The entrance door to the Facility's store was extremely heavy and closed quickly, making it difficult for Plaintiff to enter the store. | |
| Aisles too narrow | Many of the aisles within the Facility's store lacked necessary wheelchair clearances, preventing Plaintiff from navigating down them in his wheelchair. Plaintiff was forced to select merchandise from those areas of the store he was able to access.  Plaintiff was not able to access the seating area because his wheelchair did not fit down the aisle and was forced to take his food to go. | |
| Food self-serve counter too high | The hot food self-serve counter was extremely high, such that Plaintiff was unable to reach the merchandise located there. Plaintiff was forced to | |

1

MLF0029343

EX. 19-9

| | | |
|---|---|---|
| | select food from another display which he was able to reach. | |
| No accessible seating | While Plaintiff was unable to make his way over to the seating area, he could see that there were no accessible tables there. | |
| Cashier counter cluttered/narrow | The cashier counter was obstructed by merchandise displays and other items such that the area for payment lacked necessary wheelchair clearances, making it difficult for Plaintiff to approach the counter to pay. | |
| Restroom door closed quickly | The restroom door closed quickly, making it difficult for Plaintiff to maneuver his wheelchair into the restroom while holding the door open. | |
| Restroom sink/soap too high | The sink inside the restroom was extremely high, making it difficult for Plaintiff to use the sink to wash his hands. Plaintiff was forced to reach up high from his wheelchair to reach the faucet. | |
| Pipes under sink exposed | The pipes underneath the sink in the restroom were exposed, causing Plaintiff to fear that his legs would be burned by the pipes. Plaintiff was forced to sit back away from the sink so that his legs would not touch the pipes, which was both difficult and uncomfortable. | |
| Pumps too close together (?) | When Plaintiff returned to his vehicle parked at the gas pump, another vehicle had pulled into the gas pump behind Plaintiff's vehicle such that Plaintiff was unable to unload from his wheelchair at the rear of his vehicle. Plaintiff was forced to transfer into his vehicle, pull forward, and transfer back out of his vehicle in order to create enough space behind him to access the rear of his vehicle. | |

MLF0029344

EX. 19-10

**BARRIER MEMO**

ADAI No. :     01337

Case Name:     Moore v. Johnny Quick #117

Address:       6840 North Golden State, Fresno, CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No accessible route from gas pumps to entrance | Plaintiff was unable to locate an accessible route from the gas pumps to the entrance of the Facility's store. Plaintiff was forced to travel across the driveway, which lacked a designated crossing area, and over uneven and cracked surfaces to reach the designated access aisle leading to the ramp to the sidewalk. | Yes, but not really required in this location. Do not use this one in the complaint. |
| Access aisle narrow | To reach the ramp to the sidewalk, Plaintiff was forced to travel down the designated access aisle between two parked cars. The access aisle was extremely narrow, making it difficult for Plaintiff to maneuver his wheelchair between the parked cars to reach the ramp. | I would not say extremely narrow, it was a built up ramp that has unprotected edges and is dangerous, so use the next one in the complaint, not this one. |
| Ramp extends into access aisle with no protected edges; surface cracked and uneven | The ramp to the sidewalk extended down into the access aisle and lacked protected edges, and the surface of the ramp was cracked and uneven, making it difficult for Plaintiff to maneuver his wheelchair up and down the ramp safely. | Yes |
| Door heavy and closes quickly | The entrance door to the Facility's store was extremely heavy and closed quickly, making it difficult for Plaintiff to enter the store. | Yes |
| Aisles too narrow | Many of the aisles within the Facility's store lacked necessary wheelchair clearances, preventing Plaintiff from navigating down them in his wheelchair. Plaintiff was forced to select merchandise from those areas of the store he was able to access. Plaintiff was not able to access the seating area because his wheelchair did not fit down the aisle and was forced to take his food to go. | Yes |

1

MLF0050241

EX. 19-11

| | | |
|---|---|---|
| Food self-serve counter too high | The hot food self-serve counter was extremely high, such that Plaintiff was unable to reach the merchandise located there. Plaintiff was forced to select food from another display which he was able to reach. | **Yes** |
| No accessible seating | While Plaintiff was unable to make his way over to the seating area, he could see that there were no accessible tables there. | Yes |
| Cashier counter cluttered/narrow | The cashier counter was obstructed by merchandise displays and other items such that the area for payment lacked necessary wheelchair clearances, making it difficult for Plaintiff to approach the counter to pay. | Yes |
| Restroom door closed quickly | The restroom door closed quickly, making it difficult for Plaintiff to maneuver his wheelchair into the restroom while holding the door open. | Yes |
| Restroom sink/soap too high | The sink inside the restroom was extremely high, making it difficult for Plaintiff to use the sink to wash his hands. Plaintiff was forced to reach up high from his wheelchair to reach the faucet. | Yes |
| Pipes under sink exposed | The pipes underneath the sink in the restroom were exposed, causing Plaintiff to fear that his legs would be burned by the pipes. Plaintiff was forced to sit back away from the sink so that his legs would not touch the pipes, which was both difficult and uncomfortable. | Yes |
| Pumps too close together (?) | When Plaintiff returned to his vehicle parked at the gas pump, another vehicle had pulled into the gas pump behind Plaintiff's vehicle such that Plaintiff was unable to unload from his wheelchair at the rear of his vehicle. Plaintiff was forced to transfer into his vehicle, pull forward, and transfer back out of his vehicle in order to create enough space behind him to access the rear of his vehicle. | No |

2

MLF0050242

EX. 19-12



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

May 24, 2012

**K. RANDOLPH MOORE**
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

Re: Johnny Quik #117.

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facilities. If you visit the facilities again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for these matters. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

Tanya Moore

Tanya Moore
Attorney at Law

MLF0029329

EX. 19-13

## Whitney Law

**From:** Whitney Law
**Sent:** Tuesday, April 23, 2013 4:53 PM
**To:** ronmoore441@gmail.com
**Subject:** Johnny Quik 117
**Attachments:** ADA Complaint.pdf

Dear Mr. Moore:

Attached please find a draft complaint against Johnny Quik 117 for your review. If accurate, please call me so I can fax you the verification form.

Thank you,

Whitney Law
Paralegal
**Moore Law Firm, P.C.**
332 North Second Street
San Jose, California 95112
(408) 298-2000 Extension 238
(408) 298-6046 Facsimile
whitney@moorelawfirm.com

MLF0029307

EX. 19-14

1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: tanya@moorelawfirm.com

5  Attorneys for Plaintiff
   RONALD MOORE

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   RONALD MOORE,                          )  No.
                                            )
12              Plaintiff,                   )  COMPLAINT ASSERTING DENIAL OF
                                            )  RIGHT OF ACCESS UNDER
13        vs.                                )  AMERICANS WITH DISABILITIES ACT
                                            )  FOR INJUNCTIVE RELIEF,
14   BEAL PROPERTIES, INC., a California     )  DECLARATORY RELIEF, DAMAGES,
     corporation; NAVJEET SINGH CHAHAL,      )  ATTORNEYS' FEES AND COSTS (ADA)
15   dba JOHNNY QUIK #117;                   )
                                            )
16              Defendants.                  )
                                            )
17                                           )
                                            )
18   _____)

19                             I. SUMMARY

20        1.      This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

21   discrimination at the building, structure, facility, complex, property, land, development,

22   and/or surrounding business complex known as:

23             Johnny Quik #117
               6840 North Golden State Boulevard
24             Fresno, CA 93722
               (hereafter "the Facility")
25

26        2.      Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

27   costs, against BEAL PROPERTIES, INC., a California corporation; NAVJEET SINGH

28   CHAHAL, dba JOHNNY QUIK #117 (hereinafter collectively referred to as "Defendants"),

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0029308

EX. 19-15

1  pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.)
2  ("ADA") and related California statutes.

## II.  JURISDICTION

3.  This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.  Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.  Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.  VENUE

6.  All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.  PARTIES

7.  Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.  Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.  FACTS

9.  The Facility is a public accommodation facility, open to the public, which is intended for nonresidential use and whose operation affects commerce.

10.  Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visits to the Facility on or about March 21, 2012, January 13, 2013, and March 27, 2013:

    a)  The ramp to the sidewalk extended down into the access aisle and lacked protected edges, and the surface of the ramp was cracked and uneven,

MLF0029309

EX. 19-16

1    making it difficult for Plaintiff to maneuver his wheelchair up and down

2    the ramp safely.

3    b)    The entrance door to the Facility's store was extremely heavy and closed

4    quickly, making it difficult for Plaintiff to enter the store.

5    c)    Many of the aisles within the Facility's store lacked necessary

6    wheelchair clearances, preventing Plaintiff from navigating down them

7    in his wheelchair. Plaintiff was forced to select merchandise from those

8    areas of the store he was able to access. Plaintiff was not able to access

9    the seating area because his wheelchair did not fit down the aisle and

10   was forced to take his food to go.

11   d)    The hot food self-serve counter was extremely high, such that Plaintiff

12   was unable to reach the merchandise located there. Plaintiff was forced

13   to select food from another display which he was able to reach.

14   e)    While Plaintiff was unable to make his way over to the seating area, he

15   could see that there were no accessible tables there.

16   f)    The cashier counter was obstructed by merchandise displays and other

17   items such that the area for payment lacked necessary wheelchair

18   clearances, making it difficult for Plaintiff to approach the counter to

19   pay.

20   g)    The restroom door closed quickly, making it difficult for Plaintiff to

21   maneuver his wheelchair into the restroom while holding the door open.

22   h)    The sink inside the restroom was extremely high, making it difficult for

23   Plaintiff to use the sink to wash his hands. Plaintiff was forced to reach

24   up high from his wheelchair to reach the faucet.

25   i)    The pipes underneath the sink in the restroom were exposed, causing

26   Plaintiff to fear that his legs would be burned by the pipes. Plaintiff was

27   forced to sit back away from the sink so that his legs would not touch

28   the pipes, which was both difficult and uncomfortable.

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0029310

EX. 19-17

1    11.    The barriers identified in paragraph 10 herein are only those that Plaintiff

2    personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist

3    at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once

4    such additional barriers are identified as it is Plaintiff's intention to have all barriers which

5    exist at the Facility and relate to his disabilities removed to afford him full and equal access.

6    12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

7    Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

8    accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

9    Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

10   once the barriers are removed.

11   13.    Defendants knew, or should have known, that these elements and areas of the

12   Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

13   the physically disabled. Moreover, Defendants have the financial resources to remove these

14   barriers from the Facility (without much difficulty or expense), and make the Facility

15   accessible to the physically disabled. To date, however, Defendants refuse to either remove

16   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

17   14.    At all relevant times, Defendants have possessed and enjoyed sufficient

18   control and authority to modify the Facility to remove impediments to wheelchair access and

19   to comply with the 2010 Standards for Accessible Design and the California Code of

20   Regulations Title 24. Defendants have not removed such impediments and have not

21   modified the Facility to conform to accessibility standards. Defendants have intentionally

22   maintained the Facility in its current condition and have intentionally refrained from altering

23   the Facility so that it complies with the accessibility standards.

24   15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility

25   is so obvious as to establish Defendants discriminatory intent. On information and belief,

26   Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to

27   adhere to relevant building standards; disregard for the building plans and permits issued for

28   the Facility; conscientious decision to maintain the architectural layout (as it currently exists)

*Moore v. Beal Properties, Inc., et al.*
Complaint

Page 4

MLF0029311

EX. 19-18

1  at the Facility; decision not to remove barriers from the Facility; and allowance that
2  Defendants' property continues to exist in its non-compliance state.  Plaintiff further alleges,
3  on information and belief, that the Facility is not in the midst of a remodel, and that the
4  barriers present at the Facility are not isolated (or temporary) interruptions in access due to
5  maintenance or repairs.

6  ## VI.   FIRST CLAIM

7  ### Americans with Disabilities Act of 1990

8  ### Denial of "Full and Equal" Enjoyment and Use

9      16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for
10  this claim.

11     17.   Title III of the ADA holds as a "general rule" that no individual shall be
12  discriminated against on the basis of disability in the full and equal enjoyment (or use) of
13  goods, services, facilities, privileges, and accommodations offered by any person who owns,
14  operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

15     18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal
16  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the
17  Facility during each visit and each incident of deterrence.

18  ### Failure to Remove Architectural Barriers in an Existing Facility

19     19.   The ADA specifically prohibits failing to remove architectural barriers, which
20  are structural in nature, in existing facilities where such removal is readily achievable.  42
21  U.S.C. § 12182(b)(2)(A)(iv).

22     20.   When an entity can demonstrate that removal of a barrier is not readily
23  achievable, a failure to make goods, services, facilities, or accommodations available through
24  alternative methods is also specifically prohibited if these methods are readily achievable.
25  Id. § 12182(b)(2)(A)(v).

26     21.   Here, Plaintiff alleges that Defendants can easily remove the architectural
27  barriers at the Facility without much difficulty or expense, and that Defendants violated the
28  ADA by failing to remove those barriers, when it was readily achievable to do so.

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0029312

EX. 19-19

22.     In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.     Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.     The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.     Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to

---

[1] General under either state or federal statutes

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0029313

EX. 19-20

1  individuals with disabilities, unless the entity can demonstrate that making such

2  modifications would fundamentally alter their nature.  42 U.S.C. § 12182(b)(2)(A)(ii).

3      30.   Here, Defendants violated the ADA by failing to make reasonable

4  modifications in policies, practices, or procedures at the Facility, when these modifications

5  were necessary to afford (and would not fundamentally alter the nature of) these goods,

6  services, facilities, or accommodations.

7      31.   Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

8  attorney fees, costs, legal expense) for these aforementioned violations.  42 U.S.C. § 12205.

9      32.   Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

10  Defendants violated the ADA in order to pursue damages under California's Unruh Civil

11  Rights Act or Disabled Persons Act.

**VII.   SECOND CLAIM**

**Unruh Act**

14      33.   Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

15  this claim.

16      34.   California Civil Code § 51 states, in part, that:  All persons within the

17  jurisdiction of this state are entitled to the full and equal accommodations, advantages,

18  facilities, privileges, or services in all business establishments of every kind whatsoever.

19      35.   California Civil Code § 51.5 also states, in part that:  No business

20  establishment of any kind whatsoever shall discriminate against any person in this state

21  because of the disability of the person.

22      36.   California Civil Code § 51(f) specifically incorporates (by reference) an

23  individual's rights under the ADA into the Unruh Act.

24      37.   Defendants' aforementioned acts and omissions denied the physically

25  disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

26  privileges and services in a business establishment (because of their physical disability).

27      38.   These acts and omissions (including the ones that violate the ADA) denied,

28  aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0029314

EX. 19-21

1     39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

2 minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

3     40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

4 ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

5 § 52(a).

6 **VIII. THIRD CLAIM**

7 **Denial of Full and Equal Access to Public Facilities**

8     41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

9 this claim.

10     42.    Health and Safety Code § 19955(a) states, in part, that: California public

11 accommodations or facilities (built with private funds) shall adhere to the provisions of

12 Government Code § 4450.

13     43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-

14 exempt) public accommodation constructed prior to July 1, 1970, which is altered or

15 structurally repaired, is required to comply with this chapter.

16     44.    Plaintiff alleges the Facility is a public accommodation constructed, altered,

17 or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

18 Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code

19 § 19956.

20     45.    Defendants' non-compliance with these requirements at the Facility aggrieved

21 (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

22 Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code

23 § 19953.

24 **IX.    PRAYER FOR RELIEF**

25     WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

26     1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

27     2.    Declaratory relief that Defendants violated the ADA for the purposes of

28 Unruh Act damages.

*Moore v. Beal Properties, Inc., et al.*
Complaint

Page 8

MLF0029315

1    3.    Statutory minimum damages under section 52(a) of the California Civil Code

2 according to proof.

3    4.    Attorneys' fees, litigation expense, and costs of suit.[2]

4    5.    Interest at the legal rate from the date of the filing of this action.

5    6.    For such other and further relief as the Court deems proper.

6 Dated: April 23, 2013                    MOORE LAW FIRM, P.C.

7

8                                          /s/ Tanya E. Moore
                                           Tanya E. Moore
9                                          Attorneys for Plaintiff,
10                                         Ronald Moore

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0029316

EX. 19-23

**Whitney Law**

| | |
|---|---|
| **From:** | Whitney Law |
| **Sent:** | Friday, April 26, 2013 4:24 PM |
| **To:** | Ronmoore441.rm@gmail.com |
| **Subject:** | COPY OF FILED COMPLAINT |
| **Attachments:** | Filed Complaint.pdf |

Dear Mr. Moore:

Attached is a copy of the filed Complaint against Johnny Quik #117 for your records. No response is necessary.

Thank you,

Whitney Law
Paralegal
**Moore Law Firm, P.C.**
332 North Second Street
San Jose, California 95112
(408) 298-2000 Extension 238
(408) 298-6046 Facsimile
whitney@moorelawfirm.com

1

MLF0029317

EX. 19-24

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail:  tanya@moorelawfirm.com

Attorneys for Plaintiff
RONALD MOORE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>          Plaintiff,<br><br>     vs.<br><br>BEAL PROPERTIES, INC., a California corporation; NAVJEET SINGH CHAHAL, dba JOHNNY QUIK #117;<br><br>          Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Johnny Quik #117
> 6840 North Golden State Boulevard
> Fresno, CA 93722
> (hereafter "the Facility")

2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against BEAL PROPERTIES, INC., a California corporation; NAVJEET SINGH CHAHAL, dba JOHNNY QUIK #117 (hereinafter collectively referred to as "Defendants"),

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0029318

EX. 19-25

1  pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.)
2  ("ADA") and related California statutes.

**II.    JURISDICTION**

3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for
ADA claims.

4.    Supplemental jurisdiction for claims brought under parallel California law –
arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

**III.    VENUE**

6.    All actions complained of herein take place within the jurisdiction of the
United States District Court, Eastern District of California, and venue is invoked pursuant to
28 U.S.C. § 1391(b), (c).

**IV.    PARTIES**

7.    Defendants own, operate, and/or lease the Facility, and consist of a person (or
persons), firm, and/or corporation.

8.    Plaintiff requires the use of a wheelchair when traveling about in public.
Consequently, Plaintiff is "physically disabled," as defined by all applicable California and
United States laws, and a member of the public whose rights are protected by these laws.

**V.    FACTS**

9.    The Facility is a public accommodation facility, open to the public, which is
intended for nonresidential use and whose operation affects commerce.

10.    Plaintiff visited the Facility and encountered barriers (both physical and
intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the
goods, services, privileges and accommodations offered at the Facility.   Plaintiff personally
encountered the following barriers at the Facility during Plaintiff's visits to the Facility on or
about March 21, 2012, January 13, 2013, and March 27, 2013:

   a)    The ramp to the sidewalk extended down into the access aisle and lacked
     protected edges, and the surface of the ramp was cracked and uneven,

*Moore v. Beal Properties, Inc., et al.*
Complaint

Page 2

MLF0029319

EX. 19-26

1       making it difficult for Plaintiff to maneuver his wheelchair up and down

2       the ramp safely.

3       b)   The entrance door to the Facility's store was extremely heavy and closed

4       quickly, making it difficult for Plaintiff to enter the store.

5       c)   Many of the aisles within the Facility's store lacked necessary

6       wheelchair clearances, preventing Plaintiff from navigating down them

7       in his wheelchair. Plaintiff was forced to select merchandise from those

8       areas of the store he was able to access.  Plaintiff was not able to access

9       the seating area because his wheelchair did not fit down the aisle and

10      was forced to take his food to go.

11      d)   The hot food self-serve counter was extremely high, such that Plaintiff

12      was unable to reach the merchandise located there. Plaintiff was forced

13      to select food from another display which he was able to reach.

14      e)   While Plaintiff was unable to make his way over to the seating area, he

15      could see that there were no accessible tables there.

16      f)   The cashier counter was obstructed by merchandise displays and other

17      items such that the area for payment lacked necessary wheelchair

18      clearances, making it difficult for Plaintiff to approach the counter to

19      pay.

20      g)   The restroom door closed quickly, making it difficult for Plaintiff to

21      maneuver his wheelchair into the restroom while holding the door open.

22      h)   The sink inside the restroom was extremely high, making it difficult for

23      Plaintiff to use the sink to wash his hands. Plaintiff was forced to reach

24      up high from his wheelchair to reach the faucet.

25      i)   The pipes underneath the sink in the restroom were exposed, causing

26      Plaintiff to fear that his legs would be burned by the pipes. Plaintiff was

27      forced to sit back away from the sink so that his legs would not touch

28      the pipes, which was both difficult and uncomfortable.

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0029320

EX. 19-27

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.    Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.    Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14.    At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 2010 Standards for Accessible Design and the California Code of Regulations Title 24. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists)

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0029321

EX. 19-28

1    at the Facility; decision not to remove barriers from the Facility; and allowance that

2    Defendants' property continues to exist in its non-compliance state.  Plaintiff further alleges,

3    on information and belief, that the Facility is not in the midst of a remodel, and that the

4    barriers present at the Facility are not isolated (or temporary) interruptions in access due to

5    maintenance or repairs.

6                          **VI.    FIRST CLAIM**

7                  **Americans with Disabilities Act of 1990**

8                  <u>Denial of "Full and Equal" Enjoyment and Use</u>

9         16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

10   this claim.

11        17.    Title III of the ADA holds as a "general rule" that no individual shall be

12   discriminated against on the basis of disability in the full and equal enjoyment (or use) of

13   goods, services, facilities, privileges, and accommodations offered by any person who owns,

14   operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

15        18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

16   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

17   Facility during each visit and each incident of deterrence.

18                  <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19        19.    The ADA specifically prohibits failing to remove architectural barriers, which

20   are structural in nature, in existing facilities where such removal is readily achievable.  42

21   U.S.C. § 12182(b)(2)(A)(iv).

22        20.    When an entity can demonstrate that removal of a barrier is not readily

23   achievable, a failure to make goods, services, facilities, or accommodations available through

24   alternative methods is also specifically prohibited if these methods are readily achievable.

25   <u>Id</u>. § 12182(b)(2)(A)(v).

26        21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

27   barriers at the Facility without much difficulty or expense, and that Defendants violated the

28   ADA by failing to remove those barriers, when it was readily achievable to do so.

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0029322

EX. 19-29

22.　In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### Failure to Design and Construct an Accessible Facility

23.　Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.　The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.　Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

26.　Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.　The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.　Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

29.　The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to

---

[1] General under either state or federal statutes

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0029323

EX. 19-30

1    individuals with disabilities, unless the entity can demonstrate that making such

2    modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

3       30.    Here, Defendants violated the ADA by failing to make reasonable

4    modifications in policies, practices, or procedures at the Facility, when these modifications

5    were necessary to afford (and would not fundamentally alter the nature of) these goods,

6    services, facilities, or accommodations.

7       31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

8    attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

9       32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

10    Defendants violated the ADA in order to pursue damages under California's Unruh Civil

11    Rights Act or Disabled Persons Act.

**VII.    SECOND CLAIM**

**Unruh Act**

14       33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

15    this claim.

16       34.    California Civil Code § 51 states, in part, that: All persons within the

17    jurisdiction of this state are entitled to the full and equal accommodations, advantages,

18    facilities, privileges, or services in all business establishments of every kind whatsoever.

19       35.    California Civil Code § 51.5 also states, in part that: No business

20    establishment of any kind whatsoever shall discriminate against any person in this state

21    because of the disability of the person.

22       36.    California Civil Code § 51(f) specifically incorporates (by reference) an

23    individual's rights under the ADA into the Unruh Act.

24       37.    Defendants' aforementioned acts and omissions denied the physically

25    disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

26    privileges and services in a business establishment (because of their physical disability).

27       38.    These acts and omissions (including the ones that violate the ADA) denied,

28    aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0029324

EX. 19-31

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that:  California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that:  Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0029325

EX. 19-32

1    3.    Statutory minimum damages under section 52(a) of the California Civil Code

2    according to proof.

3    4.    Attorneys' fees, litigation expense, and costs of suit.[2]

4    5.    Interest at the legal rate from the date of the filing of this action.

5    6.    For such other and further relief as the Court deems proper.

6

7    Dated: April 25, 2013                    MOORE LAW FIRM, P.C.

8                                             /s/ Tanya E. Moore
                                             Tanya E. Moore
9                                            Attorneys for Plaintiff,
10                                           Ronald Moore

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Beal Properties, Inc., et al.*
Complaint

Page 9

MLF0029326

EX. 19-33

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated: April 25, 2013                 /s/ Ronald Moore
                                      Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                      /s/ Tanya E. Moore
                                      Tanya E. Moore, Attorney for
                                      Plaintiff, Ronald Moore

*Moore v. Beal Properties, Inc., et al.*

MLF0029327

EX. 19-34

# Exhibit 20

```
              JOHNNY QUIK 155
              4385 W. CLINTON
                FRESNO. CA.

         JOHNNY QUIK 155
         4385W. CLINTON    FRESNO        CA
         STH# 00205434


                  Credit Card Receipt


         MOORE/RONALD

         xxxxxxxxxxxxx4008          E/VISA
         Arizfruitp                      0.99
         Singlecrv                       0.05
         Arizfruitp                      0.99
         Singlecrv                       0.05
         Arizfruitp                      0.99
         Singlecrv                       0.05
         *VOID Singlecrv  *            - 0.05
         *VOID Arizfruitp*            - 0.99
         Uavelt100                       4.09T

         Items:  5        Subtotal       6.17
         Sales Tax                       0.34
         Total                           6.51

         Credit Card(USD$)             $6.51

         Invoice#:   3426300
         Auth#:      05976B


         *** Customer Copy ***

              Learn how to
              EARN REWARDS
             with a Chevron
               or Texaco
              Credit Card
             See application
              for details


         2562139e9s3151tl 07/30/13 15:05:41


              Thank You
             Call .Again
```

MLF0032427

EX. 20-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _Johnny Quick_

2. When did you visit the Facility? _7/30/13_ (Date) _~~____~~ ?? m_ (Time)

3. What is the address of the Facility? _~~____~~ 4385 W Clinton Ave_

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _Four_ If more than one visit, please list the date and time if you
   know it. _2_

6. What was the purpose of your visit? _Drinks and chew_

7. Who accompanied you to the Facility? _wife and Grand Kid  Ronny Barnes_

8. What car did you drive to the Facility? _Mine_

9. Did you drive yourself of did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your
    vehicle. _In D/P spot_

11. Was it difficult for you to park there? _Yes_

12. Why? _Not enough Room cars park to close so its hard
    to get out of car_

13. How did you unload from your vehicle? _~~Stairs~~ Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _Grandson Ronny_

16. What problems did you encounter transferring onto your wheelchair?

_Not enough Room to get Down side of my car to
get to my chair car to close_

17. Which way did you go from the parking to the entrance of the Facility? _To the Access Issle_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

_Ramp Steep And go into Access Issle_

19. Did you encounter any problems opening the door? Describe why. _Yes had to have girl
Inside hold door open for me_

20. Did you have any problems inside the Facility? Describe. _Yes_

MLF0032384

EX. 20-3

*Rack in Front of Cashier*

21. What did you purchase (or what meal did you have there). Describe: _Drinks And snocks_

22. Have you used the restroom at the Facility? _Yes_

23. Why did you need to use the restroom? _had to pee_

24. Did you use the sink? _Yes_

25. Any problems? _No mirro Soap to High could not Reach Lockon Door to High_

26. Did you use the urinal? _Yes_

27. Did you use the toilet? _no_

28. Did you use the toilet paper? _No_

29. Did you use paper towels? _Yes_

30. Did you use the soap dispenser? _Yes_

31. Did you have any problem maneuvering inside the restroom? _No_

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _Yes_

34. Was it wheelchair accessible? _Yes_

35. Where you comfortable at the table? _Did not Use_

36. Did you use the counter to pay for purchase? _Yes_

37. Which counter did you use? _The one By Front Door_

38. Was the counter accessible? _No could not get close to it Racks in Front could not get close They Rung my card then Rung time to sign it could not_

39. Which way did you go after you left the Facility? _Reach it to Far AWAY_

40. Any problems getting back to your vehicle? _Guy in Store Came from Behind counter and opened Door for me Because he saw It was hard for me to get in._

41. Any problems transferring from your wheelchair to your vehicle? _Steep Ramp and car's Driving By_

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0032385

EX. 20-4

**BARRIER MEMO**

ADAI No. :     01717

Case Name:     Moore v. Johnny Quick #155

Address:       4385 W. Clinton Ave., Fresno CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Small designated parking spot | The provided parking spot was small for Plaintiff's van. He struggled to get out of his van and into the wheelchair due to how close he was to the other vehicles. Instead of loading from the side he unloaded from the rear. | |
| Ramp not compliant | The provided ramp was steep and was located in the middle of the access aisle | |
| Entrance door | The door to the entrance was heavy, an employee from inside had to open it for him. On the way out, another employee held it open for him. | |
| Counter not accessible | Plaintiff couldn't get to the counter to sign his receipt due to the racks that were located in front of the counter. Plaintiff had to have his accompanying family member sign the receipt for him. | |
| Restroom accessories too high | Plaintiff could not reach the soap dispenser or the lock on the door due to the height. | |

1

MLF0032412

EX. 20-5

**BARRIER MEMO**

ADAI No. :     01717

Case Name:     Moore v. Johnny Quick #155

Address:     4385 W. Clinton Ave., Fresno CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Small designated parking spot | The provided parking spot was small for Plaintiff's van. He struggled to get out of his van and into the wheelchair due to how close he was to the other vehicles. Instead of loading from the side he unloaded from the rear. | |
| Ramp not compliant | The provided ramp was steep and was located in the middle of the access aisle | Yes, elevated ramp in access aisle. |
| Entrance door | The door to the entrance was heavy, an employee from inside had to open it for him. On the way out, another employee held it open for him. | Doors Left in open position. |
| Counter not accessible | Plaintiff couldn't get to the counter to sign his receipt due to the racks that were located in front of the counter. Plaintiff had to have his accompanying family member sign the receipt for him. | Yes, counter height acceptable but racks and items limit access. |
| Restroom accessories too high | Plaintiff could not reach the soap dispenser or the lock on the door due to the height. | Yes, the position of sink to dispenser and height would make difficult to access.<br><br>Lock was removed from door. |

1

MLF0032386

EX. 20-6



# MOORE
## LAW FIRM, P.C.

January 21, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

Re: ADAI No.    01717
    Johnny Quik #155 (4385 W. Clinton, Fresno CA)

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above
referenced facility. If you visit the facility again prior to this lawsuit settling, it is very
important that you continue to send the receipts to my office. Make sure that you reference
that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents
and keep a copy for your records.  Please sign the signature pages where indicated and
return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who
accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do
not hesitate to contact me.


Sincerely,

Tanya Moore

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0032402

EX. 20-7

# MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
408.298.2000

January 21, 2015

## CIVIL RIGHTS LAWSUIT FEE AGREEMENT

MOORE LAW FIRM ("Attorney"), and RONALD MOORE ("Client"), hereby agree that Attorney will provide legal services to "Client" on the terms set forth below.

**1.      CONDITIONS.** This Agreement will not take effect, and Attorney will have no obligation to provide legal services, until Client returns a signed copy of this Agreement.

**2.      SCOPE OF SERVICES.** Client is hiring Attorney to represent Client in the matter of Client's claims arising out of the denial of full and equal access to Client on account of Client's disabilities to the facility known as JOHNNY QUIK #155 and located at 4385 West Clinton Avenue in Fresno, California ("the Facility"). Specifically, Attorney will provide services towards obtaining an injunction under federal and California civil rights laws requiring the removal of barriers to Client's full and equal access to the Facility, and will seek statutory damages as permitted and appropriate under California law.

Attorney will represent Client until a settlement or judgment is reached. Attorney will oppose any motion for a new trial or any other post-trial motions filed by an opposing party, or will make any appropriate post-trial motions on Client's behalf. After judgment, Attorney will not represent Client on any appeal, or in any proceeding to execute on the judgment, unless Client and Attorney agree that Attorney will provide such services and also agree upon additional fees, if any, to be paid to Attorney for such services. Services in any matter not described above will require a separate written agreement.

Client understands and acknowledges that in civil rights actions such as this, the action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. Civil rights actions alleging discrimination seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated. Client acknowledges that Attorney will focus her efforts on obtaining injunctive relief, and that any damages which may be available will be secondary to the injunctive relief sought, and that any damages recovered may be minimal.

**3.      LIMITATION OF REPRESENTATION.** Attorney is representing Client only on the matters described in Paragraph 2. Attorney's representation does not include independent or related matters that may arise, including, among other things, claims for property damage, workers' compensation, disputes with a health care provider about the amount owed for their

Moore v. Beal Properties, Inc. (Johnny Quik #155)

1

MLF0032428

services, or claims for reimbursement (subrogation) by any insurance company for benefits paid under an insurance policy, any claim made against Client by any defendant(s). Attorney will require a separate fee agreement, and additional fees, in order to represent Client in any additional matter not described in Paragraph 2.

4.     **RESPONSIBILITIES OF THE PARTIES.** Attorney will provide those legal services reasonably required to represent Client in prosecuting the claims described in Paragraph 2 and will take reasonable steps to keep Client informed of progress and developments, and to respond promptly to inquiries and communications. Client agrees to be truthful with Attorney, to cooperate, to keep Attorney informed of any information and developments which may come to Client's attention, to abide by this Agreement, and to keep Attorney advised of Client's address, telephone number and whereabouts. Client agrees to appear at all legal proceedings when Attorney deems it necessary, and generally to cooperate fully with Attorney in all matters related to the preparation and presentation of Client's claims.

5.     **CLIENT AND ATTORNEY CONFLICT OF INTEREST CONSENT.** It is often possible in civil rights cases, like yours, for the attorney to make a separate application to be paid attorney fees to the court. Also, quite often, the attorney negotiates attorney fees as a separate component of a client's overall settlement. Attorney fee negotiations in this context create a potential conflict of interest between the attorney and client, namely, a conflict between the duty of the attorney to promote the client's interest in obtaining the highest settlement amount, as opposed to the interest of the attorney in obtaining satisfactory compensation for work done.

Client consents to this potential conflict, and specifically authorizes Attorney to make any application for attorney fees or separately negotiate for payment of attorney fees from the defendant(s), at Attorney's discretion. Attorney fees obtained in this context are the sole property of Attorney.

_____ (Client initials here) _____ (Attorney initials here)

6.     **RECEIPT OF PROCEEDS.** All monetary proceeds recovered in Client's case shall be deposited into Attorney's trust account.

7.     **COSTS AND LITIGATION EXPENSES.** Client will incur various costs and expenses in performing legal services under this Agreement. Payment of these costs is the Client's sole responsibility. Attorney, in his or her discretion, may advance these costs on Client's behalf. Client agrees to pay for all costs, disbursements and expenses paid or owed by Client in connection with this matter, or which have been advanced by Attorney on Client's behalf and which have not been previously paid or reimbursed to Attorney.

Costs, disbursements and litigation expenses commonly include court fees, jury fees, service of process charges, court and deposition reporters' fees, photocopying and reproduction costs, notary fees, long distance telephone charges, messenger and other delivery fees, postage, deposition costs, travel costs including parking, mileage, transportation, meals and hotel costs, investigation expenses, consultant, expert witness, professional mediator, arbitrator and/or special master fees and other similar items. Except for the items listed below, costs and expenses will be charged at Attorney's cost.

Moore v. Beal Properties, Inc. (Johnny Quik #155)
2

MLF0032429

| In-office photocopying | .15/page |
| Facsimile charges | .15/page |
| Mileage | .60/mile |

To aid in the preparation or presentation of Client's case, it may become necessary to hire expert witnesses, consultants or investigators. Attorney will select any expert witnesses, consultants or investigators to be hired, and Client will be informed of persons chosen and their charges. Client authorizes Attorney to incur all reasonable costs and to hire any investigators, consultants or expert witnesses reasonably necessary in Attorney's judgment.

**8.    FEES.** Attorney will only be compensated for legal services rendered if a monetary recovery is obtained for Client, OR if a court makes an award of attorney fees, OR if Attorney negotiates the separate payment of attorney fees as a component of a settlement. "Monetary recovery" means any money recovered for Client, including damages of any sort, whether general, special, economic, non-economic or punitive damages. "Monetary recovery" also includes penalties and fines payable to Client from any source. "Monetary recovery" does not include injunctive or equitable relief.

**8.a.    Separate Attorney Fee Award.** If a court makes an award of attorney fees, or if Attorney negotiates the separate payment of attorney fees as a component of a settlement, then that payment of attorney fees shall comprise the only fee that Attorney is entitled to obtain under this Agreement. Client agrees that any court award of attorney fees is the sole property of the Attorney, regardless of whether the award is ordered separately payable to Attorney. Client agrees that any separate payment of attorney fees obtained as a component of a settlement is the sole property of the Attorney. Client is still obligated to reimburse Attorney for all outstanding costs advanced by Attorney.

**8.b.    Maximum Fee If No Separate Fee Award.** If there is no separate payment of attorney fees as stated in the preceding paragraph, then Attorney's fee is the GREATER of either (a) one-third (33.33%) of the total monetary recovery obtained for Client, OR (b) Attorney's hourly rate multiplied by the hours worked. These amounts are calculated after reimbursement to the Attorney for outstanding costs advanced.

Attorney's billing rates are from $350 per hour to $685 per hour. Paralegals are billed at $95 to $200 per hour. Client is encouraged to periodically request a summary of Attorney time expended and costs incurred.

**8.c.    Attorney Fee May Exceed Client's Ultimate Monetary Recovery.** In any event, Client understands that Attorney's total fee might substantially exceed the amount of money Client ultimately obtains from any monetary recovery.

**9.    NEGOTIABILITY OF FEES.** The rates set forth above are not set by law, but are negotiable between an attorney and client.

MLF0032430

EX. 20-10

**10.     LIEN.** Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Agreement. Attorney's lien will be for any sums owing to Attorney for any unpaid costs, and attorneys' fees, at the conclusion of Attorney's services. The lien will attach to any monetary recovery that Client obtains, whether by arbitration award, judgment, settlement, or otherwise.

The effect of such a lien is that Attorney may be able to compel payment of fees and costs from any such funds recovered on behalf of Client, even if Attorney has been discharged before the end of the case. Because a lien may affect Client's property rights, Client may seek the advice of an independent lawyer of Client's own choice before agreeing to such a lien. By initialing this paragraph, Client represents and agrees that Client has had a reasonable opportunity to consult such an independent lawyer and Client agrees that Attorney will have a lien as specified above.

_____ (Client initials here)   _____ (Attorney initials here)

**11.     APPROVAL NECESSARY FOR SETTLEMENT.** Attorney will not make any settlement or compromise of any nature of any of Client's claims without Client's prior approval. Client retains the absolute right to accept or reject any settlement. Client agrees to consider seriously any settlement offer Attorney recommends before making a decision to accept or reject such offer. Client agrees not to make any settlement or compromise of any nature of any of Client's claims without prior notice to Attorney.

**12.     POWER OF ATTORNEY.** Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further gives Attorney permission to sign any kind of settlement agreement in connection with this matter once Client's approval to the settlement has been given.

**13.     DISCHARGE AND WITHDRAWAL.** Client may discharge Attorney at any time, for any reason, upon written notice to Attorney. Attorney may withdraw from representation of Client on adequate advance written notice to Client.

**14.     DISCLAIMER OF GUARANTEE.** Nothing in this Agreement and nothing in Attorney's statements to Client will be construed as a promise or guarantee about the outcome of this matter. Attorney makes no such promises or guarantees.

**15.     USE OF CLOUD COMPUTING FOR CLIENT INFORMATION.** Rather than store data exclusively on a local drive, Attorney uses cloud storage providers to store Client information in one of their remote data centers. Such information includes, but is not limited to, court documents, expert communications and reports, discovery, investigation reports, internal memoranda, client documents, and client communications, including email. The information so stored is confidential client information. Attorney has taken reasonable precautions to ensure that the use of cloud technology does not subject confidential client information to an undue risk of unauthorized disclosure. However, no security system is foolproof, and a breach of security could subject Client's information to disclosure. By Client's signature below, Client authorizes Attorney to utilize such cloud storage providers.

Moore v. Beal Properties, Inc. (Johnny Quik #155)
4

MLF0032431

**16.     DOCUMENT RETENTION POLICIES.** At the conclusion of the matter, Attorney will return to Client all original documents provided by the Client to the Attorney. Attorney will scan all documents in the file into digital format, and will retain a digital copy of Client's file for seven (7) years. Paper copies of all documents will be destroyed immediately, with the exception of any settlement agreement and this fee agreement. After seven (7) years, the entire file will be destroyed.

**17.     ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties. No other agreement, statement or promise made on or before the effective date of this Agreement will be binding on the parties.

**18.     SEVERABILITY IN EVENT OF PARTIAL INVALIDITY.** If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

**19.     MODIFICATION BY SUBSEQUENT AGREEMENT.** This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them.

**20.     CHOICE OF LAW.** This Agreement shall be governed by the laws of the State of California.

THE PARTIES HAVE READ AND UNDERSTAND THE FOREGOING TERMS AND AGREE TO THEM. IF MORE THAN ONE CLIENT SIGNS BELOW, EACH AGREES TO BE JOINTLY AND SEVERALLY LIABLE FOR ALL OBLIGATIONS UNDER THIS AGREEMENT. CLIENT ACKNOWLEDGES RECEIPT OF A DUPLICATE COPY OF THIS AGREEMENT SIGNED BY BOTH THE ATTORNEY AND THE CLIENT.

Dated: _1/23/15_____          _Ronald Moore_____
                                Ronald Moore

                                Address: _80 N Hughes_____

                                _Clovis CA 93612_____
                                Telephone: _559 255 3228_____

Dated: _____      MOORE LAW FIRM, P.C.

                                By:_____
                                Tanya E. Moore, President

MLF0032432

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>          Plaintiff,<br><br>     vs.<br><br>BEAL PROPERTIES, INC.; GURMEJ<br>SINGH dba JOHNNY QUIK #155;<br><br>          Defendants.<br>_____ | No.<br><br>**COMPLAINT ASSERTING DENIAL OF<br>RIGHT OF ACCESS UNDER<br>AMERICANS WITH DISABILITIES ACT<br>FOR INJUNCTIVE RELIEF,<br>DECLARATORY RELIEF, DAMAGES,<br>ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Johnny Quik #155
> 4385 West Clinton Avenue
> Fresno, CA 93722
> (hereafter "the Facility")

2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against BEAL PROPERTIES, INC.; and GURMEJ SINGH dba JOHNNY QUIK #155 (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0032403

EX. 20-13

1   Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

2   **II.   JURISDICTION**

3   3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

4   claims.

5   4.   Supplemental jurisdiction for claims brought under parallel California law –

6   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

7   5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

8   **III.   VENUE**

9   6.   All actions complained of herein take place within the jurisdiction of the United

10   States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

11   § 1391(b), (c).

12   **IV.   PARTIES**

13   7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or

14   persons), firm, and/or corporation.

15   8.   Plaintiff is substantially limited in his ability to walk, and must use a wheelchair

16   for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable

17   California and United States laws, and a member of the public whose rights are protected by

18   these laws.

19   **V.   FACTS**

20   9.   The Facility is open to the public, intended for non-residential use, and its

21   operation affects commerce. The Facility is therefore a public accommodation as defined by

22   applicable state and federal laws.

23   10.   Plaintiff visited the Facility and encountered barriers (both physical and

24   intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

25   goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

26   encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

27   about July 30, 2013:

28   a)   Plaintiff parked in a designated accessible parking stall at the Facility,

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0032404

EX. 20-14

which was improperly configured and narrow, while the access aisle
contained a built-up curb ramp. This made it difficult for Plaintiff to
unload from his vehicle and transfer to his wheelchair because there was
not enough space between the ramp and the vehicle parked in the
adjacent space.

    b)   The ramp from the parking lot to the sidewalk, in addition to being an
improperly configured built-up curb ramp, was excessively sloped. It
was difficult for Plaintiff to maneuver up and down the ramp due to the
slope and the ramp's location next to his parked vehicle.

    c)   Due to merchandise racks obstructing the approach, Plaintiff was unable
to maneuver close to the transaction counter. He could not reach to sign
his receipt on the counter and had to ask his grandson to sign for him.

    d)   Plaintiff was unable to reach the soap dispenser in the restroom as it was
positioned high on the wall behind the lavatory.

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.    Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.    Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility

MLF0032405

EX. 20-15

1  accessible to the physically disabled. To date, however, Defendants refuse to either remove

2  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

3      14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

4  and authority to modify the Facility to remove impediments to wheelchair access and to

5  comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

6  Design. Defendants have not removed such impediments and have not modified the Facility to

7  conform to accessibility standards. Defendants have intentionally maintained the Facility in its

8  current condition and have intentionally refrained from altering the Facility so that it complies

9  with the accessibility standards.

10      15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

11  so obvious as to establish Defendants' discriminatory intent. On information and belief,

12  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

13  to relevant building standards; disregard for the building plans and permits issued for the

14  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

15  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

16  property continues to exist in its non-compliant state. Plaintiff further alleges, on information

17  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

18  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

19             **VI.    FIRST CLAIM**

20             **Americans with Disabilities Act of 1990**

21             Denial of "Full and Equal" Enjoyment and Use

22      16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

23  this claim.

24      17.    Title III of the ADA holds as a "general rule" that no individual shall be

25  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

26  goods, services, facilities, privileges, and accommodations offered by any person who owns,

27  operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

28      18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

MLF0032406

EX. 20-16

1   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

2   Facility during each visit and each incident of deterrence.

3   <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

4   19.   The ADA specifically prohibits failing to remove architectural barriers, which

5   are structural in nature, in existing facilities where such removal is readily achievable. 42

6   U.S.C. § 12182(b)(2)(A)(iv).

7   20.   When an entity can demonstrate that removal of a barrier is not readily

8   achievable, a failure to make goods, services, facilities, or accommodations available through

9   alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>.

10   § 12182(b)(2)(A)(v).

11   21.   Here, Plaintiff alleges that Defendants can easily remove the architectural

12   barriers at the Facility without much difficulty or expense, and that Defendants violated the

13   ADA by failing to remove those barriers, when it was readily achievable to do so.

14   22.   In the alternative, if it was not "readily achievable" for Defendants to remove

15   the Facility's barriers, then Defendants violated the ADA by failing to make the required

16   services available through alternative methods, which are readily achievable.

17   <u>Failure to Design and Construct an Accessible Facility</u>

18   23.   Plaintiff alleges on information and belief that the Facility was designed and

19   constructed (or both) after January 26, 1992 – independently triggering access requirements

20   under Title III of the ADA.

21   24.   The ADA also prohibits designing and constructing facilities for first occupancy

22   after January 16, 1993, that aren't readily accessible to, and usable by, individuals with

23   disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

24   25.   Here, Defendants violated the ADA by designing and constructing (or both) the

25   Facility in a manner that was not readily accessible to the physically disabled public –

26   including Plaintiff – when it was structurally practical to do so.[1]

27

28
_____

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a
private attorney general under either state or federal statutes.

*Moore v. Beal Properties, Inc., et al.*
Complaint

Page 5

MLF0032407

EX. 20-17

<u>Failure to Make an Altered Facility Accessible</u>

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

**VII.    SECOND CLAIM**

**Unruh Act**

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

MLF0032408

EX. 20-18

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

MLF0032409

EX. 20-19

44.   Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.   Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.   Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.   Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.   Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.   Attorneys' fees, litigation expense, and costs of suit.[2]

5.   Interest at the legal rate from the date of the filing of this action.

6.   For such other and further relief as the Court deems proper.

Dated: January 20, 2015                    MOORE LAW FIRM, P.C.


                                           /s/ Tanya E. Moore
                                           Tanya E. Moore
                                           Attorneys for Plaintiff
                                           Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Beal Properties, Inc., et al.*
Complaint

MLF0032410

EX. 20-20

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:   January 20, 2015         /s/ Ronald Moore
                                  Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                  /s/ Tanya E. Moore
                                  Tanya E. Moore, Attorney for
                                  Plaintiff, Ronald Moore

*Moore v. Beal Properties, Inc., et al.*
*Verification*

MLF0032411

EX. 20-21

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 1/20/15                    _Ronald Moore_
                                  Ronald Moore

*Moore v. Beal Properties, Inc. (Johnny Quik #135)*

MLF0032433

EX. 20-22