# Exhibit 27

# CORNER STORE
Corner$tore4U.com

DELIGHT MORE CUSTOMERS
EVERY DAY

TP06648       3784
16981 ROAD 26
MADERA

| Descr | qty | amount |
| --- | --- | --- |

<CUSTOMER COPY>
| CIBOLO REG COFF/SIN | 1 | 1.39 |
| MRS FRESH GEMS C/CI | 1 | 1.39 |
| BTRFNGR BIG BAR/2 | 1 | 3.00 |
| MRS FRESH SNOWBA/ST | 1 | 1.39 |

|  | Subtotal | 7.17 |
|  | Tax | 0.00 |
| **TOTAL** |  | **7.17** |
|  | CREDIT $ | 7.17 |

CARD TYPE: MASTERCARD
CARD NAME: RONALD D MOORE
ACCT NUMBER: XXXXXXXXXXXX7245
TRANS TYPE: SALE
APPROVAL: 77621Z
INVOICE: 243832
AMOUNT: 7.17

APPROVED 77621Z
*****************************************

Corner Store 3784
16981 Road 26
Madera, CA
STR  3784  TILL XXXX LAN 1 TRAN# 1024257
CSH: 10              05/31/14 20:29:41

MLF0044313

EX. 27-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? Valero Corner Store

2. What is the address of the Facility? 16981 Road 26 Madera, CA

3. When did you visit the Facility? 5/31/14 (Date) 8:30 (Time)

4. Was this your first visit to the Facility? No

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. ?

6. What was the purpose of your visit? Coffee and snacks.

7. Who accompanied you to the Facility? Grandson Ronny and Jhonny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself or did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. Parked at gas pump. Didn't see any d/p parking

11. Was it difficult for you to park there? If so, why? No

12. How did you unload from your vehicle? Rear

13. What side of the vehicle did you unload from? Driver or passenger? Driver

14. Did anyone help you to transfer onto your wheelchair? Who? Jhonny

15. Did you encounter any problems transferring onto your wheelchair? Describe. No Jhonny helped Me

16. Which way did you go from the parking to the entrance of the Facility? Up ramp to door

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. Ramp steep Car in way of ramp, no route of travel from pumps to ramp

18. Did you encounter any problems opening the door? Describe. No people held door open for me.

19. What did you purchase (or what meal did you have there)? Coffee, and snacks

20. Did you need to use the restroom while you were at the Facility? Why? No

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0044310

EX. 27-3

Sink: _N/A_

Toilet: _N/A_

Urinal: _N/A_

Toilet paper: _N/A_

Toilet seat covers: _N/A_

Paper towels/hand dryer: _N/A_

Soap dispenser: _N/A_

Other: _N/A_

22. Did you have any problem maneuvering inside the restroom? _N/A_

23. Was there any seating provided inside the Facility? _NO_

24. Were you able to sit comfortably at the table? If not, why? _N/A_

25. Did you use the counter to pay for purchase? Which one? _Yes only one._

26. Did you pay with cash or credit card? _Credit_

27. Was the counter accessible? If not, describe: _No canter too wide Grandson had to sign reciept and swipe card_

28. Did you have any other problems inside the Facility? Describe: _Allmost knocked over display rack full of chips. Couldn't reach Coffee. Couldn't reach Microwave so I didn't get a burrito_

29. Which way did you go after you left the Facility? _Out door down ramp to car_

30. Any problems getting back to your vehicle? _ramp Steep. No route of travel_

31. Any problems transferring from your wheelchair to your vehicle? _No Jhonny braght Meto car door and put chair in car_

32. Any additional information you believe would assist us in evaluating this inquiry?

MLF0044311



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

**K. RANDOLPH MOORE**
ESQUIRE
AND FOUNDER

*Tanya E. Moore*
*Attorney at Law*

*Marejka Sacks*
*Paralegal*

July 2, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:    **ADAI No.    02057**
          **Valero Corner Store *(16981 Road 26, Madera, CA)***

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0044312

EX. 27-5

# BARRIER MEMO

**ADAI No. :**    02057

**Case Name:**   Moore v. Valero Corner Store

**Address:**     16981 Road 26, Madera, CA

| Barrier | Description | Is it a valid barrier?<br>Y / N | Complaint allegations | Confirm barrier |
|---|---|---|---|---|
| No Handicap Parking | There were no handicap parking spots associated with the facility so the plaintiff was forced to park at a gas pump instead. | No, but it is hidden off to the side, freshly painted, maybe not when he was there | | |
| Steep Ramp | The ramp leading to the entrance of the facility was steep which caused the plaintiff's chair to pop up a few times but he managed to control his chair by himself. In addition, a parked car was obstructing the ramp which made it difficult to access. | Y | The ramp from the parking lot to the sidewalk leading to the entrance of the Facility was excessively sloped and improperly configured, which made it difficult for Plaintiff to wheel himself up and down the ramp. In addition, a parked car was partially obstructing the bottom landing of the ramp which made it difficult for Plaintiff to access the ramp. | |
| No Route of Travel | There was no route of travel from the gas pumps to the entrance of the facility, which jeopardized the plaintiff's safety as he wheeled himself through the busy lot to reach the entrance. | N | | |
| Wide counter | The counter was too wide for the plaintiff to | Not a barrier | | |

1

MLF0044297

EX. 27-6

| | | | | |
|---|---|---|---|---|
| | wheel himself up to so his grandson made the transaction for him. | | | |
| Coffee too High | The plaintiff wanted to get himself some coffee but it was out of his reach so he just gave up. | Y | Plaintiff wanted to purchase coffee, but the self-service dispenser controls were out of his reach. Plaintiff was therefore forced to seek assistance from his grandson. | |
| Microwave too High | The plaintiff wanted to buy a burrito and use the microwave in the facility to heat it up. However, the microwave was too high for the plaintiff to reach so he just gave up and did not buy the burrito. | Y | Plaintiff wanted to buy a burrito and use the microwave in the Facility to heat it up. However, the microwave was too high for Plaintiff to reach so he decided not to buy the burrito since he could not warm it up himself and was embarrassed to ask for assistance. | |
| No Clearance near Entrance | As the plaintiff was leaving, he had to keep maneuvering himself because it was so narrow and crowded near the entrance. In result, the plaintiff backed up into a rack with chips which was embarrassing. | Y | The aisle near the exit door lacked necessary wheelchair clearances, making it difficult for Plaintiff to reach the exit. He had to maneuver back and forth several times to fit between the obstructions and almost knocked over a display rack in the process, which was embarrassing. | |

2

MLF0044298

EX. 27-7

**BARRIER MEMO**

ADAI No. :    02057

Case Name:    Moore v. Valero Corner Store

Address:    16981 Road 26, Madera, CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No Handicap Parking | There were no handicap parking spots associated with the facility so the plaintiff was forced to park at a gas pump instead. | No, but it is hidden off to the side, freshly painted, maybe not when he was there |
| Steep Ramp | The ramp leading to the entrance of the facility was steep which caused the plaintiff's chair to pop up a few times but he managed to control his chair by himself. In addition, a parked car was obstructing the ramp which made it difficult to access. | Y |
| No Route of Travel | There was no route of travel from the gas pumps to the entrance of the facility, which jeopardized the plaintiff's safety as he wheeled himself through the busy lot to reach the entrance. | N |
| Wide counter | The counter was too wide for the plaintiff to wheel himself up to so his grandson made the transaction for him. | Not a barrier |
| Coffee too High | The plaintiff wanted to get himself some coffee but it was out of his reach so he just gave up. | Y |
| Microwave too High | The plaintiff wanted to buy a burrito and use the microwave in the facility to heat it up. However, the microwave was too high for the plaintiff to reach so he just gave up and did not buy the burrito. | Y |
| No Clearance near Entrance | As the plaintiff was leaving, he had to keep maneuvering himself because it was so narrow and crowded near the entrance. In result, the plaintiff backed up into a rack with chips which was embarrassing. | Y |

1

MLF0044299

EX. 27-8



## MOORE
### LAW FIRM, P.C.

November 17, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

Re:   ADAI No.   02057
CST California Stations, Inc. (Valero Corner Store #3784)
16981 Road 26, Madera, CA

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records.  Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0044300

EX. 27-9

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | No. |
| Plaintiff, | COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA) |
| vs. | |
| CST CALIFORNIA STATIONS, INC., dba VALERO CORNER STORE #3784; VALERO CALIFORNIA RETAIL COMPANY, | |
| Defendants. | |

## I. SUMMARY

1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Valero Corner Store #3784
> 16981 Road 26
> Madera, CA 93638
> (hereafter "the Facility")

2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against CST CALIFORNIA STATIONS, INC., dba VALERO CORNER STORE #3784; and VALERO CALIFORNIA RETAIL COMPANY (hereinafter collectively referred

*Moore v. CST California Stations, Inc., et al.*
Complaint

MLF0044301

EX. 27-10

1  to as "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C.

2  §§ 12101 et seq.) ("ADA") and related California statutes.

## II.   JURISDICTION

3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.   Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

6.   All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.   PARTIES

7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.   Plaintiff is substantially limited in his ability to walk, and must use a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

9.   The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

10.   Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or about May 31, 2014:

*Moore v. CST California Stations, Inc., et al.*
Complaint

MLF0044302

EX. 27-11

a)      The ramp from the parking lot to the sidewalk leading to the entrance of the Facility was excessively sloped and improperly configured, which made it difficult for Plaintiff to wheel himself up and down the ramp. In addition, a parked car was partially obstructing the bottom landing of the ramp which made it difficult for Plaintiff to access the ramp.

b)      Plaintiff wanted to purchase coffee, but the self-service dispenser controls were out of his reach. Plaintiff was therefore forced to seek assistance from his grandson.

c)      Plaintiff wanted to buy a burrito and use the microwave in the Facility to heat it up. However, the microwave was too high for Plaintiff to reach so he decided not to buy the burrito since he could not warm it up himself and was embarrassed to ask for assistance.

d)      The aisle near the exit door lacked necessary wheelchair clearances, making it difficult for Plaintiff to reach the exit. He had to maneuver back and forth several times to fit between the obstructions and almost knocked over a display rack in the process, which was embarrassing.

11.      The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.      Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.      Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

*Moore v. CST California Stations, Inc., et al.*
Complaint

MLF0044303

EX. 27-12

1   the physically disabled. Moreover, Defendants have the financial resources to remove these

2   barriers from the Facility (without much difficulty or expense), and make the Facility

3   accessible to the physically disabled. To date, however, Defendants refuse to either remove

4   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

5       14.   At all relevant times, Defendants have possessed and enjoyed sufficient control

6   and authority to modify the Facility to remove impediments to wheelchair access and to

7   comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

8   Design. Defendants have not removed such impediments and have not modified the Facility to

9   conform to accessibility standards. Defendants have intentionally maintained the Facility in its

10   current condition and have intentionally refrained from altering the Facility so that it complies

11   with the accessibility standards.

12       15.   Plaintiff further alleges that the (continued) presence of barriers at the Facility is

13   so obvious as to establish Defendants' discriminatory intent. On information and belief,

14   Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

15   to relevant building standards; disregard for the building plans and permits issued for the

16   Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

17   the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

18   property continues to exist in its non-compliant state. Plaintiff further alleges, on information

19   and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

20   Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

21            **VI.    FIRST CLAIM**

22            **Americans with Disabilities Act of 1990**

23           <u>Denial of "Full and Equal" Enjoyment and Use</u>

24       16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

25   this claim.

26       17.   Title III of the ADA holds as a "general rule" that no individual shall be

27   discriminated against on the basis of disability in the full and equal enjoyment (or use) of

28   goods, services, facilities, privileges, and accommodations offered by any person who owns,

*Moore v. CST California Stations, Inc., et al.*
Complaint

Page 4

MLF0044304

EX. 27-13

1   operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

2       18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

3   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

4   Facility during each visit and each incident of deterrence.

5                   Failure to Remove Architectural Barriers in an Existing Facility

6       19.   The ADA specifically prohibits failing to remove architectural barriers, which

7   are structural in nature, in existing facilities where such removal is readily achievable. 42

8   U.S.C. § 12182(b)(2)(A)(iv).

9       20.   When an entity can demonstrate that removal of a barrier is not readily

10  achievable, a failure to make goods, services, facilities, or accommodations available through

11  alternative methods is also specifically prohibited if these methods are readily achievable. Id.

12  § 12182(b)(2)(A)(v).

13      21.   Here, Plaintiff alleges that Defendants can easily remove the architectural

14  barriers at the Facility without much difficulty or expense, and that Defendants violated the

15  ADA by failing to remove those barriers, when it was readily achievable to do so.

16      22.   In the alternative, if it was not "readily achievable" for Defendants to remove

17  the Facility's barriers, then Defendants violated the ADA by failing to make the required

18  services available through alternative methods, which are readily achievable.

19                   Failure to Design and Construct an Accessible Facility

20      23.   Plaintiff alleges on information and belief that the Facility was designed and

21  constructed (or both) after January 26, 1992 – independently triggering access requirements

22  under Title III of the ADA.

23      24.   The ADA also prohibits designing and constructing facilities for first occupancy

24  after January 16, 1993, that aren't readily accessible to, and usable by, individuals with

25  disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

26      25.   Here, Defendants violated the ADA by designing and constructing (or both) the

27  Facility in a manner that was not readily accessible to the physically disabled public –

28

*Moore v. CST California Stations, Inc., et al.*
Complaint

MLF0044305

EX. 27-14

including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

26.　Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.　The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.　Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

29.　The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.　Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.　Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.　Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. CST California Stations, Inc., et al.*
Complaint

MLF0044306

EX. 27-15

## VII.   SECOND CLAIM

### Unruh Act

33.   Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.   California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.   Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.   Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.   Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.   Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of

*Moore v. CST California Stations, Inc., et al.*
Complaint

MLF0044307

EX. 27-16

1   Government Code § 4450.

2       43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-

3   exempt) public accommodation constructed prior to July 1, 1970, which is altered or

4   structurally repaired, is required to comply with this chapter.

5       44.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or

6   repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

7   § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

8       45.    Defendants' non-compliance with these requirements at the Facility aggrieved

9   (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

10  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

11                **IX.    PRAYER FOR RELIEF**

12      WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

13      1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

14      2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh

15            Act damages.

16      3.    Statutory minimum damages under section 52(a) of the California Civil Code

17            according to proof.

18      4.    Attorneys' fees, litigation expense, and costs of suit.[2]

19      5.    Interest at the legal rate from the date of the filing of this action.

20      6.    For such other and further relief as the Court deems proper.

21

22  Dated: November 13, 2014            MOORE LAW FIRM, P.C.

23                                  */s/ Tanya E. Moore*

24                                  Tanya E. Moore
                                    Attorneys for Plaintiff

25                                  Ronald Moore

26

27

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. CST California Stations, Inc., et al.*
Complaint

Page 8

MLF0044308

EX. 27-17

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:   November 13, 2014          */s/ Ronald Moore*
                                    Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                    */s/ Tanya E. Moore*
                                    Tanya E. Moore, Attorney for
                                    Plaintiff, Ronald Moore

*Ronald Moore v. CST California Stations, Inc., et al)*

MLF0044309

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 11/13/14                              _Ronald Moore_
                                             Ronald Moore

*Ronald Moore v. CST California Stations, Inc. (Valero Corner Store #3784)*

MLF0044314

EX. 27-19

**Exhibit 28**



| Name: | AMOUNT |
|---|---|
| Shampoo | 3 |
| Hair Cut | |
| Blow Dry | |
| Comb Out Only | |
| Perm | |
| Bleach | |
| Tint | |
| Eyebrow Arch | |
| Special Treatment | |
| Facial | |
| Manicure | |
| Retail Products | |

1578 N WEST
FRESNO, GA. 93728

**M-N-M**
SHEAR & CLIPPER CUTS
1578 N WEST
FRESNO, CA 93728

SQUIRE L'IMAGE
1568 NORTH WEST AVE
FRESNO, CA 93728

TERMINAL I.D.:                    75355715

MERCHANT #1              000016421107

VISA
##############4080
SALE  INV: 000493
DATE: SEP 21, 13
RRN: 326411285574

INVOICE: 000006
        TIME:  14:35
AUTH NO: 065701B

TOTAL              $8.57

RONALD MOORE

CUSTOMER COPY

MLF0034541

EX. 28-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No. _____

M HM

(Facility)

1. What is the name of the Facility? _Shear & Clipper Cuts_

2. When did you visit the Facility? _5/21/13_ (Date) _2 - 3pm_ (Time)

3. What is the address of the Facility? _1578 N West Fresno Ca_

4. Was this your first visit to the Facility? _yes_

5. How many times have you visited the Facility? _____ If more than one visit, please list the date and time if you

know it. _____

6. What was the purpose of your visit? _Get our Hair cut_

7. Who accompanied you to the Facility? _Grandson Ronny And Jhon_

8. What car did you drive to the Facility? _mine_

9. Did you drive yourself of did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your

vehicle. _In D/P Spot_

11. Was it difficult for you to park there? _yes Sign Hidden By tree_

12. Why? _Spot not clearly marked_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _yes Jhon_

16. What problems did you encounter transferring onto your wheelchair?

_payment ewes_

17. Which way did you go from the parking to the entrance of the Facility? _to Acces Issle_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

_yes payment All Cracked Up in Access Issle And Ramp_

19. Did you encounter any problems opening the door? Describe why. _yes treshold And_
_Door Closed On me while trying to get In_

20. Did you have any problems inside the Facility? Describe. _yes_

MLF0034537

EX. 28-3

could not get into the Rest Room
At All to small And All kinds of
Stuff in way

21. What did you purchase (or what meal did you have there). Describe: Hair cuts

22. Have you used the restroom at the Facility? coull not get in

23. Why did you need to use the restroom? Jhon + Ronny did But

24. Did you use the sink? I could not I Had to wait

25. Any problems? Tell we Left

26. Did you use the urinal?

27. Did you use the toilet?

28. Did you use the toilet paper?

29. Did you use paper towels?

30. Did you use the soap dispenser?

31. Did you have any problem maneuvering inside the restroom?

32. Where did you sit? Had to Move chair's so I could
Fud place to sit

33. Was there any seating provided inside the Facility? NO

34. Was it wheelchair accessible? no

35. Where you comfortable at the table? N/A

36. Did you use the counter to pay for purchase? Had My grand son Pay

37. Which counter did you use? no in conner hard for me to get to

38. Was the counter accessible? not Really

39. Which way did you go after you left the Facility? out to Ronny ACCross street

40. Any problems getting back to your vehicle? Ramp payment

41. Any problems transferring from your wheelchair to your vehicle? one going By.

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0034538

EX. 28-4

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADAI No.
(Facility)

1. What is the name of the Facility? *Squire Liquor*

2. When did you visit the Facility? *9/21/13* (Date) *2 30 pm* (Time)

3. What is the address of the Facility? *1568 N West Ave Fresno Ca*

4. Was this your first visit to the Facility? *No*

5. How many times have you visited the Facility? *?* If more than one visit, please list the date and time if you know it. *?*

6. What was the purpose of your visit? *Smokes chew Drink*

7. Who accompanied you to the Facility? *Show And Ronny*

8. What car did you drive to the Facility? *mine*

9. Did you drive yourself of did you get a ride from someone else? *I Drove*

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. *In d/p spot*

11. Was it difficult for you to park there? *yes Sign Behind Tee*

12. Why? *And payment cracked*

13. How did you unload from your vehicle? *Door*

14. What side of the vehicle did you unload from? Driver or passenger? *Driver*

15. Did anyone help you to transfer onto your wheelchair? *yes Show*

16. What problems did you encounter transferring onto your wheelchair?
*payment All cracked*

17. Which way did you go from the parking to the entrance of the Facility? *Across Street*

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
*Ramp Gos into Street And uneven And cracked*

19. Did you encounter any problems opening the door? Describe why. *yes Door Heavy Teshold*

20. Did you have any problems inside the Facility? Describe. *yes*

MLF0034539

EX. 28-5

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADAI No.
(Facility)

_Issles in store to small_
_Grandson had to get my Drink to high_

21. What did you purchase (or what meal did you have there). Describe: _Smoke chew Drink,_

22. Have you used the restroom at the Facility? _No_

23. Why did you need to use the restroom? _No_

24. Did you use the sink?

25. Any problems?

26. Did you use the urinal?

27. Did you use the toilet?

28. Did you use the toilet paper?

29. Did you use paper towels?

30. Did you use the soap dispenser?

31. Did you have any problem maneuvering inside the restroom?

32. Where did you sit?

33. Was there any seating provided inside the Facility?

34. Was it wheelchair accessible? _No_

35. Where you comfortable at the table?

36. Did you use the counter to pay for purchase? _Yes_

37. Which counter did you use? _Only one_

38. Was the counter accessible? _No_

39. Which way did you go after you left the Facility? _Went out Door to Ramp_

40. Any problems getting back to your vehicle? _Ramp street_

41. Any problems transferring from your wheelchair to your vehicle? _had to have Help._

If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0034540

EX. 28-6

February 11, 2014

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

> **RE:** **ADAI No. 1871**
> **De Santis (Squire Liquor, MNM Shear & Clipper Cuts)**
> **1568/1578 N. West Avenue, Fresno, CA 93728**

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0034542

**BARRIER MEMO**

ADAI No. :     01871

Case Name:     Moore v. De Santis

Address:     MNM Shear & Clipper Cuts, 1578 N. West Ave., Fresno
             Squire Liquor, 1568 N. West Ave., Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Common areas – Parking space not clearly marked | Plaintiff had difficulty locating a designated accessible parking space at the Facility because the space was not clearly marked and the sign was hidden behind a tree.  There was a parking space, it is marked, there is an access aisle, but pavement is all cracked. | Possibly, if there was another car there and sign obscured by the palm tree. However, don't include it.  There is also one more parking space at the very end of the building which is hidden from the view. |
| Common areas – Pavement at parking space uneven | The surface of the pavement at Plaintiff's parking space and access aisle was uneven, making it difficult for him to transfer between his vehicle and his wheelchair. He required assistance from his friend. | Yes. |
| Common areas – Parking stall too short | Plaintiff's parking space was too short, such that when unloading his wheelchair from the back of his vehicle and transferring into it he was located within the path of vehicular traffic travelling down the Facility's driveway. | Could be but do not include that in the complaint allegations. |
| Common areas – Route to ramp uneven | Plaintiff made his way from his parking space along the designated accessible route to the curb ramp. The surface of the accessible route and the ramp were cracked and uneven, making it difficult for Plaintiff to maneuver his wheelchair. | Yes |
| MNM – Threshold too high, door heavy/sweep speed too quick? | The threshold at the entrance to the MNM Facility was raised, making it difficult for Plaintiff to enter. While Plaintiff was attempting to overcome the raised threshold, the door closed on him.  Says raised a bit but not too bad.  The door closed on him again. | Do not include raised threshold but include the door closed on him. |

1

MLF0034502

EX. 28-8

| | | |
|---|---|---|
| MNM – Restroom lacked clearances | Plaintiff needed to use the restroom at the MNM Facility but was unable to enter because the restroom lacked necessary wheelchair clearances inside. Plaintiff again tried to use the restroom but could not get his wc in it. | **Yes** |
| MNM – no waiting area for wheelchair | Plaintiff was unable to find a clear space in the waiting area at the MNM Facility large enough for his wheelchair and he was forced to move chairs out of the way to create space.  No place to sit still. | Yes |
| MNM – Lack of approach clearance at counter | The transaction counter at the MNM Facility was located in the corner and lacked necessary approach clearances. It was difficult for Plaintiff to maneuver his wheelchair up to the counter to pay.  He had his grandson pay to the lady in the corner because he could not get there. | Yes |
| Squire – Threshold too high, door heavy/sweep speed too quick? | The threshold at the entrance to the Squire Facility was raised, making it difficult for Plaintiff to enter. While Plaintiff was attempting to overcome the raised threshold, the door closed on him. Same thing. | Include only that the door closed on him quickly. |
| Squire – Aisles narrow | The aisles inside the Squire Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver his wheelchair around inside the store. Plaintiff was looking for a drink and cigarettes. | Yes |
| Squire – Drinks too high | The drinks were located too high, and Plaintiff had to ask his grandson to reach it for him. (not sure if self-serve fountain or refrigerator) | Yes, self-serve fountain |
| Squire – counter not accessible | Counter was too high. | Yes |

2

MLF0034503

EX. 28-9

1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: tanya@moorelawfirm.com

5  Attorneys for Plaintiff
   Ronald Moore
6

7

8              UNITED STATES DISTRICT COURT

9             EASTERN DISTRICT OF CALIFORNIA

10

11 RONALD MOORE,                    ) No.
                                    )
12           Plaintiff,             ) COMPLAINT ASSERTING DENIAL OF
                                    ) RIGHT OF ACCESS UNDER
13      vs.                         ) AMERICANS WITH DISABILITIES ACT
                                    ) FOR INJUNCTIVE RELIEF,
14 PASQUALE DeSANTIS, Trustee of the) DECLARATORY RELIEF, DAMAGES,
   DeSANTIS FAMILY TRUST dated August) ATTORNEYS' FEES AND COSTS (ADA)
15 13, 2003; CARMELA DeSANTIS, Trustee of)
   the DeSANTIS FAMILY TRUST dated )
16 August 13, 2003; MARIA AVONCE dba M-)
   N-M SHEAR & CLIPPER CUTS; NORMA )
17 SANCHEZ dba M-N-M SHEAR & CLIPPER)
   CUTS; KARAMJIT SINGH dba SQUIRE )
18 LIQUOR; RASHID THIND dba SQUIRE )
   LIQUOR;                          )
19                                  )
20                                  )
             Defendants.            )
21 _____ )

22

23                    I. SUMMARY

24      1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

25 discrimination at the building, structure, facility, complex, property, land, development,

26 and/or surrounding business complex known as:

27           a)    M-N-M Shear & Clipper Cuts
                   1578 North West Avenue
28                 Fresno, CA 93728
                   (hereafter "the M-N-M Facility")

*Moore v. DeSantis, et al.*
Complaint

                        Page 1

MLF0034515

EX. 28-10

b)   Squire Liquor
1568 North West Avenue
Fresno, CA 93728
(hereafter "the Squire Facility")

Each of the facilities identified above shall be collectively hereafter referred to as "the Facilities."

2.   Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes, against:

a)   PASQUALE DeSANTIS, Trustee of the DeSANTIS FAMILY TRUST dated August 13, 2003; and CARMELA DeSANTIS, Trustee of the DeSANTIS FAMILY TRUST dated August 13, 2003 (hereinafter collectively "the Landlord Defendants");

b)   MARIA AVONCE dba M-N-M SHEAR & CLIPPER CUTS and NORMA SANCHEZ dba M-N-M SHEAR & CLIPPER CUTS (hereinafter collectively "the M-N-M Defendants"); and

c)   KARAMJIT SINGH dba SQUIRE LIQUOR and RASHID THIND dba SQUIRE LIQUOR (hereinafter collectively "the Squire Defendants").

The M-N-M Defendants and the Squire Defendants are collectively referred to herein as "the Tenant Defendants," and together with the Landlord Defendants, collectively the "Defendants."

## II.   JURISDICTION

3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.   Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

*Moore v. DeSantis, et al.*
Complaint

Page 2

MLF0034516

EX. 28-11

6.   All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.   PARTIES

7.   Plaintiff believes, and thereon alleges, that the Landlord Defendants own, operate, and/or lease the real property consisting of the real property and common areas of the Facilities as well as the physical structures thereon (including the buildings in which each of the individual Tenant Defendants' Facilities is located), and consist of a person (or persons), firm, or corporation. Plaintiff further believes, and thereon alleges, that the Landlord Defendants lease the respective Facilities to the Tenant Defendants as follows:

> a)   The M-N-M Defendants own, operate, and/or lease the M-N-M Facility, and lease the M-N-M Facility from the Landlord Defendants; and

> b)   The Squire Defendants own, operate, and/or lease the Squire Facility, and lease the Squire Facility from the Landlord Defendants.

8.   Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and is a member of the public whose rights are protected by these laws.

## V.   FACTS

9.   The Facilities are public accommodations, open to the public, which are intended for nonresidential use and whose operation affects commerce.

10.   Plaintiff visited the Facilities on or about September 21, 2013 and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facilities.   Plaintiff personally encountered the following barriers at the Facilities during Plaintiff's visits to the Facilities:

> a)   Plaintiff parked in a designated accessible parking space at the Facilities. The surface of the pavement at Plaintiff's parking space and

*Moore v. DeSantis, et al.*
Complaint

MLF0034517

EX. 28-12

the adjacent access aisle was cracked and uneven, making it difficult for Plaintiff to transfer between his vehicle and wheelchair and causing him to require assistance from his friend.

b) Plaintiff made his way from his parking space along the designated accessible route of travel to the curb ramp. The surface of the accessible route and the ramp were cracked and uneven, making it difficult for Plaintiff to maneuver his wheelchair.

c) It was difficult for Plaintiff to hold the door of the M-N-M Facility open while manueving his wheelchair through the entrance. The door closed quickly on him while he was attempting to enter.

d) Plaintiff needed to use the restroom at the M-N-M Facility but was unable to enter the restroom because the restroom lacked necessary wheelchair clearances inside.

e) Plaintiff was unable to find a clear space in the waiting area at the M-N-M Facility large enough for his wheelchair. He was forced to move chairs out of the way to create space and felt embarrassed that he was in the way of other customers.

f) The transaction counter at the M-N-M Facility was located in the corner and lacked necessary approach clearances. Plaintiff was unable to make his way to the counter and was forced to send his grandson to pay for him.

g) The threshold at the entrance to the Squire Facility was raised, making it difficult for Plaintiff to enter. While Plaintiff was attempting to overcome the raised threshold, the door closed quickly on him.

h) The aisles inside the Squire Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver his wheelchair around inside the store.

i) The self-serve soda fountain at the Squire Facility was positioned too

*Moore v. DeSantis, et al.*
Complaint

MLF0034518

EX. 28-13

1   high for Plaintiff to reach. He was forced to ask his grandson to get a

2   drink for him.

3   11.   The barriers identified in paragraph 10 herein are only those that Plaintiff

4   personally encountered.  Plaintiff is presently unaware of other barriers which may in fact

5   exist at the Facilities and relate to his disabilities.  Plaintiff will seek to amend this Complaint

6   once such additional barriers are identified as it is Plaintiff's intention to have all barriers

7   which exist at the Facilities and relate to his disabilities removed to afford him full and equal

8   access.

9   12.   Plaintiff was, and continues to be, deterred from visiting the Facilities because

10   Plaintiff knows that the Facilities' goods, services, facilities, privileges, advantages, and

11   accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

12   Plaintiff enjoys the goods and services offered at the Facilities, and will return to the

13   Facilities once the barriers are removed.

14   13.   Defendants knew, or should have known, that these elements and areas of the

15   Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access

16   to the physically disabled.  Moreover, Defendants have the financial resources to remove

17   these barriers from the Facilities (without much difficulty or expense), and make the

18   Facilities accessible to the physically disabled.  To date, however, Defendants refuse to either

19   remove those barriers or seek an unreasonable hardship exemption to excuse non-

20   compliance.

21   14.   At all relevant times, Defendants have possessed and enjoyed sufficient

22   control and authority to modify the Facilities to remove impediments to wheelchair access

23   and to comply with the 2010 Standards for Accessible Design and the California Code of

24   Regulations Title 24.  Defendants have not removed such impediments and have not

25   modified the Facilities to conform to accessibility standards.  Defendants have intentionally

26   maintained the Facilities in their current condition and have intentionally refrained from

27   altering the Facilities so that they comply with the accessibility standards.

28   15.   Plaintiff further alleges that the (continued) presence of barriers at the

*Moore v. DeSantis, et al.*
Complaint

Page 5

MLF0034519

EX. 28-14

1  Facilities is so obvious as to establish Defendants discriminatory intent.  On information and

2  belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal

3  to adhere to relevant building standards; disregard for the building plans and permits issued

4  for the Facilities; conscientious decision to maintain the architectural layout (as it currently

5  exists) at the Facilities; decision not to remove barriers from the Facilities; and allowance

6  that Defendants' property continues to exist in its non-compliance state.  Plaintiff further

7  alleges, on information and belief, that the Facilities are not in the midst of a remodel, and

8  that the barriers present at the Facilities are not isolated (or temporary) interruptions in access

9  due to maintenance or repairs.

## VI.    FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

13  16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

14  this claim.

15  17.    Title III of the ADA holds as a "general rule" that no individual shall be

16  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

17  goods, services, facilities, privileges, and accommodations offered by any person who owns,

18  operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

19  18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

20  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

21  Facilities during each visit and each incident of deterrence.

#### Failure to Remove Architectural Barriers in an Existing Facility

23  19.    The ADA specifically prohibits failing to remove architectural barriers, which

24  are structural in nature, in existing facilities where such removal is readily achievable.  42

25  U.S.C. § 12182(b)(2)(A)(iv).

26  20.    When an entity can demonstrate that removal of a barrier is not readily

27  achievable, a failure to make goods, services, facilities, or accommodations available through

28  alternative methods is also specifically prohibited if these methods are readily achievable.

*Moore v. DeSantis, et al.*
Complaint

MLF0034520

EX. 28-15

Id. § 12182(b)(2)(A)(v).

21.   Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facilities without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.   In the alternative, if it was not "readily achievable" for Defendants to remove the Facilities' barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.   Plaintiff alleges on information and belief that the Facilities were designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.   The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.   Here, Defendants violated the ADA by designing and constructing (or both) the Facilities in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

26.   Plaintiff alleges on information and belief that the Facilities were modified after January 26, 1992, independently triggering access requirements under the ADA.

27.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.   Here, Defendants altered the Facilities in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the

*Moore v. DeSantis, et al.*
Complaint

Page 7

MLF0034521

EX. 28-16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---
[1] Nothing within this complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. DeSantis, et al.*
Complaint

MLF0034522

EX. 28-17

1   maximum extent feasible.

2   <u>Failure to Modify Existing Policies and Procedures</u>

3       29.   The ADA also requires reasonable modifications in policies, practices, or

4   procedures, when necessary to afford such goods, services, facilities, or accommodations to

5   individuals with disabilities, unless the entity can demonstrate that making such

6   modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

7       30.   Here, Defendants violated the ADA by failing to make reasonable

8   modifications in policies, practices, or procedures at the Facilities, when these modifications

9   were necessary to afford (and would not fundamentally alter the nature of) these goods,

10  services, facilities, or accommodations.

11      31.   Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

12  attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

13      32.   Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

14  Defendants violated the ADA in order to pursue damages under California's Unruh Civil

15  Rights Act.

16      **VII.   SECOND CLAIM**

17      **Unruh Act**

18      33.   Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

19  this claim.

20      34.   California Civil Code § 51 states, in part, that:  All persons within the

21  jurisdiction of this state are entitled to the full and equal accommodations, advantages,

22  facilities, privileges, or services in all business establishments of every kind whatsoever.

23      35.   California Civil Code § 51.5 also states, in part that:  No business

24  establishment of any kind whatsoever shall discriminate against any person in this state

25  because of the disability of the person.

26      36.   California Civil Code § 51(f) specifically incorporates (by reference) an

27  individual's rights under the ADA into the Unruh Act.

28      37.   Defendants' aforementioned acts and omissions denied the physically

*Moore v. DeSantis, et al.*
Complaint

MLF0034523

EX. 28-18

1  disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

2  privileges and services in a business establishment (because of their physical disability).

3      38.    These acts and omissions (including the ones that violate the ADA) denied,

4  aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

5      39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

6  minimum damages of four thousand dollars ($4,000) for each offense.

7      40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

8  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

9  § 52(a).

10              **VIII. THIRD CLAIM**

11      **Denial of Full and Equal Access to Public Facilities**

12      41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

13  this claim.

14      42.    Health and Safety Code § 19955(a) states, in part, that:  California public

15  accommodations or facilities (built with private funds) shall adhere to the provisions of

16  Government Code § 4450.

17      43.    Health and Safety Code § 19959 states, in part, that:  Every existing (non-

18  exempt) public accommodation constructed prior to July 1, 1970, which is altered or

19  structurally repaired, is required to comply with this chapter.

20      44.    Plaintiff alleges the Facilities are public accommodations constructed, altered,

21  or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

22  Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code

23  § 19956.

24      45.    Defendants' non-compliance with these requirements at the Facilities

25  aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities.

26  Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety

27  Code § 19953.

28  //

*Moore v. DeSantis, et al.*
Complaint

MLF0034524

EX. 28-19

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.   Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.   Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.   Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.   Attorneys' fees, litigation expense, and costs of suit.[2]

5.   Interest at the legal rate from the date of the filing of this action.

6.   For such other and further relief as the Court deems proper.

Dated: April 17, 2014                    MOORE LAW FIRM, P.C.

                                         /s/ Tanya E. Moore
                                         Tanya E. Moore
                                         Attorneys for Plaintiff
                                         Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. DeSantis, et al.*
Complaint

MLF0034525

EX. 28-20

# Exhibit 29

FRESNO GAS LIQUOR
3110 W SHIELDS AVE
FRESNO, CA 93722

06/15/2014                          14:30:19
MID: 000000003004965      TID: 04475775
345424931888

CREDIT CARD

VISA SALE

CARD #              XXXXXXXXXXX4008
INVOICE                         0046
Batch #:                      000521
Approval Code:               00586B
Entry Method:                 Swiped
Mode:                         Online

SALE AMOUNT                   $6.76

CUSTOMER COPY

MLF0043465

EX. 29-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? Fresno Gas Liquor

2. What is the address of the Facility? 3110 West Shields Ave

3. When did you visit the Facility? 6/15/14 (Date) 2:30 p.m (Time)

4. Was this your first visit to the Facility? No

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. 7

6. What was the purpose of your visit? Drink ~~~~ and cigarettes

7. Who accompanied you to the Facility? Grandson Ronny and Jhonny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself or did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. No parking spot

11. Was it difficult for you to park there? If so, why? No

12. How did you unload from your vehicle? Rear

13. What side of the vehicle did you unload from? Driver or passenger? Driver

14. Did anyone help you to transfer onto your wheelchair? Who? Yes, Jhonny

15. Did you encounter any problems transferring onto your wheelchair? Describe. No, because Jhonny helped me with my chair

16. Which way did you go from the parking to the entrance of the Facility? To sidewalk to door

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. There was no access isle or ramp the street was cracked.

18. Did you encounter any problems opening the door? Describe. Yes, the closed me Ronny had to open it for.

19. What did you purchase (or what meal did you have there)? Drink and cigarettes

20. Did you need to use the restroom while you were at the Facility? Why? No

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems")

MLF0043462

EX. 29-3

Sink: N|A

Toilet: N|A

Urinal: N|A

Toilet paper: N|A

Toilet seat covers: N|A

Paper towels/hand dryer: N|A

Soap dispenser: N|A

Other: _____

22. Did you have any problem maneuvering inside the restroom? N|A

23. Was there any seating provided inside the Facility? N|A

24. Were you able to sit comfortably at the table? If not, why? N|A

25. Did you use the counter to pay for purchase? Which one? Yes, only one

26. Did you pay with cash or credit card? credit card

27. Was the counter accessible? If not, describe: No, counter too high and wide grandson Ronny had to give card and sign receipt.

28. Did you have any other problems inside the Facility? Describe. Yes, fountain drinks too high ronny had to get me one.

29. Which way did you go after you left the Facility? Out door to sidewalk to car

30. Any problems getting back to your vehicle? Yes, no ramp or access isle and street was cracked

31. Any problems transferring from your wheelchair to your vehicle? No, Jhonny helped me with my chair.

32. Any additional information you believe would assist us in evaluating this inquiry? Yes, when Jhonny helped me with unloading my chair I sat down there was a gas pump that created a hill I started going backwards in my chair, Jhonny had to bring me to the side of the car because of it.

MLF0043463

EX. 29-4



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

July 2, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

      **RE:   ADAI No.    02047**
      **Fresno Gas Liquor *(3110 West Shields Ave, Fresno, CA)***

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0043464

EX. 29-5

<u>BARRIER MEMO</u>

**ADAI No. :**   **02047**

**Case Name:**   **Moore v. Fresno Gas Liquor**

**Address:**   **3110 West Shields Ave, Fresno, CA**

| Barrier | Description | Is it a valid barrier?<br>Y / N |
|---|---|---|
| No Access Aisle/ Gas Pump created a High Mound | The plaintiff parked in the designated handicap parking spot but the lack of an access aisle made the process of getting out of his vehicle challenging because there was no room. | |
| Mound behind parking space | Plaintiff unloaded his wheelchair out of the back of his vehicle onto a gas pump that formed a high mound. Due to this, the plaintiff began to roll backwards but was caught in time by his grandson who then brought him around to the side of their vehicle where the ground was more leveled. | |
| No Ramp | The facility did not have a ramp so the plaintiff was forced to pop his chair up onto the curb which was dangerous because he could have fallen over or injured his hands. | |
| Cracked Pavement | The pavement leading from the plaintiff's vehicle to the facility was cracked which made the plaintiff's chair teeter as he wheeled himself along. | |
| Heavy Door | The door to the facility was heavy, causing it to close on the plaintiff as he tried to hold it open and wheel himself inside. Fortunately, the plaintiff's grandson helped him by holding the door open. | |
| High and Wide Counter | The counter was too high and too wide for the plaintiff to wheel himself up to, so his grandson made the transaction for him. | |
| High Soda Dispenser | The soda dispenser was too high for the plaintiff to reach, so his grandson got it for him. | |

1

MLF0056340

EX. 29-6

**ADAI No. :**     02047

**Case Name:**     Moore v. Fresno Gas Liquor

**Address:**        3110 West Shields Ave, Fresno, CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No Access Aisle/ Gas Pump created a High Mound | The plaintiff parked in the designated handicap parking spot but the lack of an access aisle made the process of getting out of his vehicle challenging because there was no room. | Yes, no access aisle, the mound is actually the ramp placed in poor spot. |
| Mound behind parking space | Plaintiff unloaded his wheelchair out of the back of his vehicle onto a gas pump that formed a high mound. Due to this, the plaintiff began to roll backwards but was caught in time by his grandson who then brought him around to the side of their vehicle where the ground was more leveled. | Yes, assuming backed into spot as ramp is located were front curb would be. |
| No Ramp | The facility did not have a ramp so the plaintiff was forced to pop his chair up onto the curb which was dangerous because he could have fallen over or injured his hands. | No, ramp runs perpendicular to access spot in front of. |
| Cracked Pavement | The pavement leading from the plaintiff's vehicle to the facility was cracked which made the plaintiff's chair teeter as he wheeled himself along. | YEs |
| Heavy Door | The door to the facility was heavy, causing it to close on the plaintiff as he tried to hold it open and wheel himself inside. Fortunately, the plaintiff's grandson helped him by holding the door open. | Doors left open. |
| High and Wide Counter | The counter was too high and too wide for the plaintiff to wheel himself up to, so his grandson made the transaction for him. | Yes counter is high, deep, with overhang. |
| High Soda Dispenser | The soda dispenser was too high for the plaintiff to reach, so his grandson got it for him. | Yes, dispenser buttons are about 1" over max height. |

Note: Smallest bathroom EVER! 2 ½' wide, was hard to walk in and close door much less accessable.

1

MLF0056339

EX. 29-7



**MOORE**
**LAW FIRM, P.C.**

February 26, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

     Re:     ADAI No.    02047
             Fresno Gas Liquor (3110 West Shields Ave, Fresno, CA)

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

Tanya Moore

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

---

**MLF0043446**

EX. 29-8

1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: tanya@moorelawfirm.com

5  Attorneys for Plaintiff
   Ronald Moore

6

7

8              **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

11 RONALD MOORE,                        )  No.
                                        )
12        Plaintiff,                    )  **COMPLAINT ASSERTING DENIAL OF**
                                        )  **RIGHT OF ACCESS UNDER**
13    vs.                               )  **AMERICANS WITH DISABILITIES ACT**
                                        )  **FOR INJUNCTIVE RELIEF,**
14 PARAMJIT SINGH DHALIWAL,             )  **DECLARATORY RELIEF, DAMAGES,**
   individually and dba FRESNO GAS &    )  **ATTORNEYS' FEES AND COSTS (ADA)**
15 LIQUOR; PARMINDER KAUR DHALIWAL      )
   dba FRESNO GAS & LIQUOR;             )
16                                      )
                                        )
17        Defendants.                   )
                                        )
18 _____     )

19                     **I. SUMMARY**

20        1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

21 discrimination at the building, structure, facility, complex, property, land, development, and/or

22 surrounding business complex known as:

23              Fresno Gas & Liquor
                3110 West Shields Avenue
24              Fresno, CA 93722
                (hereafter "the Facility")
25

26        2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

27 costs, against PARAMJIT SINGH DHALIWAL, individually and dba FRESNO GAS &

28 LIQUOR; and PARMINDER KAUR DHALIWAL dba FRESNO GAS & LIQUOR

*Moore v. Dhaliwal, et al.*
Complaint
                        Page 1

MLF0043447

EX. 29-9

1  (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with

2  Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

**II.  JURISDICTION**

3      3.  This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

4  claims.

5      4.  Supplemental jurisdiction for claims brought under parallel California law –

6  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

7      5.  Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

**III.  VENUE**

8      6.  All actions complained of herein take place within the jurisdiction of the United

9  States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

10  § 1391(b), (c).

**IV.  PARTIES**

11      7.  Defendants own, operate, and/or lease the Facility, and consist of a person (or

12  persons), firm, and/or corporation.

13      8.  Plaintiff is substantially limited in his ability to walk, and must use a wheelchair

14  for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable

15  California and United States laws, and a member of the public whose rights are protected by

16  these laws.

**V.  FACTS**

17      9.  The Facility is open to the public, intended for non-residential use, and its

18  operation affects commerce. The Facility is therefore a public accommodation as defined by

19  applicable state and federal laws.

20      10.  Plaintiff visited the Facility and encountered barriers (both physical and

21  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

22  goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

23  encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

24  about June 15, 2014:

*Moore v. Dhaliwal, et al.*
Complaint
               Page 2

MLF0043448

EX. 29-10

    a)    Plaintiff parked in a designated accessible parking stall at the Facility, which lacked an adjacent access aisle and was excessively sloped, making it difficult for Plaintiff to transfer between his vehicle and his wheelchair. When Plaintiff tried to unload from his vehicle into his wheelchair, the wheelchair started rolling away due to the slope and Plaintiff's grandson had to hold it steady and help Plaintiff to maneuver toward the sidewalk.

    b)    The surface of the route of travel from Plaintiff's vehicle to the building entrance was cracked and uneven, making it difficult for Plaintiff to maneuver his wheelchair.

    c)    Plaintiff was unable to reach the controls on the self-service soda fountain, and required his grandson's assistance to fill his cup, which was embarrassing.

    d)    The transaction counter was too high and was obstructed by merchandise and a cooler, such that Plaintiff was unable to reach the counter to conduct his transaction. Plaintiff's grandson had to hand Plaintiff's payment to the cashier and sign the credit card receipt for him.

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.    Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

MLF0043449

EX. 29-11

13.    Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14.    At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants' discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

## VI.    FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.    Title III of the ADA holds as a "general rule" that no individual shall be

MLF0043450

EX. 29-12

1   discriminated against on the basis of disability in the full and equal enjoyment (or use) of

2   goods, services, facilities, privileges, and accommodations offered by any person who owns,

3   operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

4        18.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

5   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

6   Facility during each visit and each incident of deterrence.

7                  <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

8        19.     The ADA specifically prohibits failing to remove architectural barriers, which

9   are structural in nature, in existing facilities where such removal is readily achievable. 42

10   U.S.C. § 12182(b)(2)(A)(iv).

11       20.     When an entity can demonstrate that removal of a barrier is not readily

12   achievable, a failure to make goods, services, facilities, or accommodations available through

13   alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>.

14   § 12182(b)(2)(A)(v).

15       21.     Here, Plaintiff alleges that Defendants can easily remove the architectural

16   barriers at the Facility without much difficulty or expense, and that Defendants violated the

17   ADA by failing to remove those barriers, when it was readily achievable to do so.

18       22.     In the alternative, if it was not "readily achievable" for Defendants to remove

19   the Facility's barriers, then Defendants violated the ADA by failing to make the required

20   services available through alternative methods, which are readily achievable.

21                  <u>Failure to Design and Construct an Accessible Facility</u>

22       23.     Plaintiff alleges on information and belief that the Facility was designed and

23   constructed (or both) after January 26, 1992 – independently triggering access requirements

24   under Title III of the ADA.

25       24.     The ADA also prohibits designing and constructing facilities for first occupancy

26   after January 16, 1993, that aren't readily accessible to, and usable by, individuals with

27   disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

28       25.     Here, Defendants violated the ADA by designing and constructing (or both) the

*Moore v. Dhaliwal, et al.*
Complaint

MLF0043451

1   Facility in a manner that was not readily accessible to the physically disabled public –

2   including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

4   26.     Plaintiff alleges on information and belief that the Facility was modified after

5   January 26, 1992, independently triggering access requirements under the ADA.

6   27.     The ADA also requires that facilities altered in a manner that affects (or could

7   affect) its usability must be made readily accessible to individuals with disabilities to the

8   maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

9   primary function also requires making the paths of travel, bathrooms, telephones, and drinking

10  fountains serving that area accessible to the maximum extent feasible. Id.

11  28.     Here, Defendants altered the Facility in a manner that violated the ADA and

12  was not readily accessible to the physically disabled public – including Plaintiff – to the

13  maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

15  29.     The ADA also requires reasonable modifications in policies, practices, or

16  procedures, when necessary to afford such goods, services, facilities, or accommodations to

17  individuals with disabilities, unless the entity can demonstrate that making such modifications

18  would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

19  30.     Here, Defendants violated the ADA by failing to make reasonable modifications

20  in policies, practices, or procedures at the Facility, when these modifications were necessary to

21  afford (and would not fundamentally alter the nature of) these goods, services, facilities, or

22  accommodations.

23  31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney

24  fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

25  32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants

26  violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a
private attorney general under either state or federal statutes.

*Moore v. Dhaliwal, et al.*
Complaint

MLF0043452

## VII.   SECOND CLAIM

### Unruh Act

33.   Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.   California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.   Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.   Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.   Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.   Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of

*Moore v. Dhaliwal, et al.*
Complaint

MLF0043453

EX. 29-15

1   Government Code § 4450.

2       43.   Health and Safety Code § 19959 states, in part, that: Every existing (non-

3   exempt) public accommodation constructed prior to July 1, 1970, which is altered or

4   structurally repaired, is required to comply with this chapter.

5       44.   Plaintiff alleges the Facility is a public accommodation constructed, altered, or

6   repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

7   § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

8       45.   Defendants' non-compliance with these requirements at the Facility aggrieved

9   (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

10  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

11                          IX.    **PRAYER FOR RELIEF**

12      WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

13      1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

14      2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh

15            Act damages.

16      3.    Statutory minimum damages under section 52(a) of the California Civil Code

17            according to proof.

18      4.    Attorneys' fees, litigation expense, and costs of suit.[2]

19      5.    Interest at the legal rate from the date of the filing of this action.

20      6.    For such other and further relief as the Court deems proper.

21
22  Dated: February 26, 2015              MOORE LAW FIRM, P.C.

23                                        */s/ Tanya E. Moore*
24                                        Tanya E. Moore
                                          Attorneys for Plaintiff
25                                        Ronald Moore

26
27

28  ――――――――――――――――
    [2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

    *Moore v. Dhaliwal, et al.*
    Complaint
                                 Page 8

MLF0043454

EX. 29-16

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:  February 26, 2015          */s/ Ronald Moore*
                                       Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                   */s/ Tanya E. Moore*
                                   Tanya E. Moore, Attorney for
                                   Plaintiff, Ronald Moore

*Moore v. Dhaliwal, et al.*
*Verification*

MLF0043455

EX. 29-17

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 2/26/15                    _Ronald Moore_
                                  Ronald Moore

*Moore v. Dhaliwal (Fresno Gas & Liquor)*

MLF0043467

# Exhibit 30

```
          Baskin-Robbins
           PC # 361073
      1731 w bullard ave suite 136
          fresno, ca, 93711


            Table Q#1
   Trans#: 67043      Serv: TILL AM
   03/02/2014 06:37 PM      # Cust:1
   ===================================
   Quan  Description           Cost
   ===================================

    2 Double Scoop          $8.58
    1 Single Scoop          $2.79
   ===================================
            Net Total:      $11.37
            ======================
     TOTAL: $11.37
   ===================================
   Visa                  ·   $11.37

            Visa
         Payment Approved
   Card Num: XXXXXXXXXXXX4008
   REF: 71548
   Response: 26971
   Amount   $11.37
   TOTAL:$11.37
          ** Customer Copy **


     WANT $1 OFF YOUR
     NEXT PURCHASE
     OF $4 OR MORE?
    Go to www.tellbaskinrobbins.com
          within 3 days
  Bring receipt with code to redeem offer
   at the above Baskin-Robbins location
  Enter Validation Code: _____
  Offer not valid on Dunkin' K-Cup Packs,
   Keurig Brewers, or any gift cards
    Visit Baskin-Robbins.com for
     offer redemption restrictions
    Te invitamos a participar en
          nuestra encuesta

  Survey Code: 04302-61073-1803-0247
```

MLF0038335

EX. 30-2

FIG TREE LIQUOR
1731 W BULLARD AVE n102
FRESNO CA 93711
559-439-4580

Term ID: 01131000                    Ref #: 111

Sale

xxxxxxxxxxxx4008

VISA                    Entry Method: Swiped

Total:              $       25.61

03/02/14                          18:23:41
Inv #: 111              Appr Code: 002808B
Approvd: OnLine            Batch#: 0000074

MLF0038339

EX. 30-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? Baskin-Robins

2. When did you visit the Facility? 3/2/14 (Date) 6:37 (Time)

3. What is the address of the Facility? 1731 W. Bullard Ave Fresno CA

4. Was this your first visit to the Facility? No

5. How many times have you visited the Facility? ? If more than one visit, please list the date and time if you know it. ?

6. What was the purpose of your visit? Ice Cream

7. Who accompanied you to the Facility? Grandson Ronny and Wife Lynn

8. What car did you drive to the Facility? Mine

9. Did you drive yourself of did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. At the end of Shopping Center

11. Was it difficult for you to park there? Yes

12. Why? No signs Because the Access Issle was very small and also sloped.

13. How did you unload from your vehicle? Rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? Grandson Ronny

16. What problems did you encounter transferring onto your wheelchair?

~~~~~ Grandson helped me but space so small it was hard to get to Rear of my car

17. Which way did you go from the parking to the entrance of the Facility? All the way Across Shopping Center

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. Yes sloped And very narrow also Ramp went into Street and Access Issle

19. Did you encounter any problems opening the door? Describe why. Slope by door and door was really heavy

20. Did you have any problems inside the Facility? Describe. Yes

MLF0038333

EX. 30-4

Couldn't See ice Cream. There was table in the way of
Seeing Some of the ice cream and when I Tried to turn
around I got Stuck and had to get help to turn Around

21. What did you purchase (or what meal did you have there). Describe: 3 Cones
got stuck on table

22. Have you used the restroom at the Facility? N/A

23. Why did you need to use the restroom? N/A

24. Did you use the sink? N/A

25. Any problems? N/A

26. Did you use the urinal? N/A

27. Did you use the toilet? N/A

28. Did you use the toilet paper? N/A

29. Did you use paper towels? N/A

30. Did you use the soap dispenser? N/A

31. Did you have any problem maneuvering inside the restroom? N/A

32. Where did you sit? N/A

33. Was there any seating provided inside the Facility? Yes

34. Was it wheelchair accessible? NO

35. Where you comfortable at the table? didn't Sit there Because no way we
Could eat our Ice cream there without Being in the way

36. Did you use the counter to pay for purchase? Yes
So we had to eat our Ice cream in the car

37. Which counter did you use? Only one

38. Was the counter accessible? NO Couldn't reach it

39. Which way did you go after you left the Facility? Out door left towards car when
Leaving people opened and Held door open for me.

40. Any problems getting back to your vehicle? Had to go across Shopping center then my
Grandson made Sure I did not

41. Any problems transferring from your wheelchair to your vehicle? No Because
Fell over going Down Ramp Because of Slop and Room. Grandson helped Me

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0038334

EX. 30-5

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADAI No.
(Facility)

1. What is the name of the Facility? Fig Tree Liquor

2. When did you visit the Facility? 3/2/14 (Date) 6:20 (Time)

3. What is the address of the Facility? 1731 W. Bulard Ave. Fresno, CA.

4. Was this your first visit to the Facility? No

5. How many times have you visited the Facility? 7 If more than one visit, please list the date and time if you know it. 7

6. What was the purpose of your visit? drinks

7. Who accompanied you to the Facility? Grandson Ronny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself of did you get a ride from someone else? I Drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. A cuple stores down in dp parking

11. Was it difficult for you to park there? Yes

12. Why? far from store.

13. How did you unload from your vehicle? Rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? Grandson Ronny

16. What problems did you encounter transferring onto your wheelchair?

Pavement really cricked

17. Which way did you go from the parking to the entrance of the Facility? Up ramp right towards store

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
Ramp goes into access isle street also has cracks

19. Did you encounter any problems opening the door? Describe why. door closed on me

alsp high threshold

20. Did you have any problems inside the Facility? Describe. Yes

MLF0038336

EX. 30-6

fountain drinks and coffee are out of reach they are to high. Isles to small

21. What did you purchase (or what meal did you have there). Describe: Drink and incense and lotto tickets

22. Have you used the restroom at the Facility? N/A

23. Why did you need to use the restroom? N/A

24. Did you use the sink? N/A

25. Any problems? N/A

26. Did you use the urinal? N/A

27. Did you use the toilet? N/A

28. Did you use the toilet paper? N/A

29. Did you use paper towels? N/A

30. Did you use the soap dispenser? N/A

31. Did you have any problem maneuvering inside the restroom? N/A

32. Where did you sit? N/A

33. Was there any seating provided inside the Facility? N/A

34. Was it wheelchair accessible? NO

35. Where you comfortable at the table? N/A

36. Did you use the counter to pay for purchase? yes

37. Which counter did you use? only one

38. Was the counter accessible? No couldn't reach had grandson sign receipt Because stuff infront and on sides of counter so I couldn't sign receipt

39. Which way did you go after you left the Facility? Out door right towards car

40. Any problems getting back to your vehicle? Not Much

41. Any problems transferring from your wheelchair to your vehicle? Not really grandson helped me

42. If you have any additional information you believe would assist us in evaluating this inquiry.
Had to back away from counter so my grandson could sign receipt. When I backed up I ran into the isle behind me. Had to ask people to move so I could get out. on back

When I backed up I had to go up and back and up and back to be able to go out the door because of all the stuff packed around to cashiers checkout.

MLF0038338

**BARRIER MEMO**

ADAI No. :    01923

Case Name:    **Moore v. Dhillon (Fig Tree Liquor, Baskin-Robbins)**

Address:    **1731 W Bullard Ave, Fresno**

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Common areas – No signs at parking | Plaintiff had difficulty locating a designated accessible parking space at the Facility. He ultimately found one that did not have proper identifying signage. | **Yes, poorly marked most have no signs, just outline on the ground. There are 3 total.** |
| Common areas – Designated accessible parking is far away | Plaintiff parked in the only designated accessible parking space that he could find, which was located a couple of storefronts away from the Fig Tree Facility and far from the entrance of the Baskin-Robbins Facility, causing Plaintiff to have to travel a long distance to reach the entrances to both businesses. | **Ok, but not exactly a violation.** |
| Common areas – Parking space/access aisle narrow | Plaintiff's parking space was narrow and the access aisle contained a built-up curb ramp, which prevented Plaintiff from parking over the access aisle in order to leave enough space to unload from the driver's side of his vehicle. It was difficult for Plaintiff to unload and to travel down the narrow space between his vehicle and the adjacent vehicle to reach the access aisle. | **Yes to built up curb ramp only.** |
| Common areas – Access aisle sloped | The access aisle was sloped, which made it difficult for Plaintiff to maneuver along the access aisle. | **Yes** |
| Common areas – Pavement at parking space and access aisle cracked | The pavement at Plaintiff's parking space and the adjacent access aisle was cracked, creating an uneven surface which made it difficult for Plaintiff to transfer between his vehicle and his wheelchair and to maneuver along the access aisle. | **Yes** |
| Common areas – Built up curb ramp | Plaintiff had difficulty maneuvering up and down the built up curb ramp located within the access aisle because it was narrow and he feared that his wheelchair would roll off the edge of the ramp. | **Yes** |
| Fig Tree – Door heavy | The entry door to the Fig Tree Facility was heavy, | **Yes, very** |

MLF0038340

EX. 30-9

| | | |
|---|---|---|
| | which made it difficult for Plaintiff to hold the door open while wheeling himself through. The door closed on Plaintiff while he was attempting to enter. | |
| Fig Tree – High threshold | Plaintiff's struggle to enter through the doorway of the Fig Tree Facility was exacerbated by the raised threshold of the doorway, which was difficult for him to wheel over. | somewhat |
| Fig Tree – Fountain drinks and coffee are out of reach | Plaintiff wanted to purchase a drink at the Fig Tree Facility; however, the self-serve fountain drinks and coffee were positioned out of his reach. He was forced to buy a can drink. | yes |
| Fig Tree – Counter lacks clear space | Plaintiff could not reach the counter to sign his receipt because there was insufficient approach clearance, with items in front of and to the sides of the counter. Plaintiff was forced to back away from the counter so that his grandson could sign his receipt for him; when backing up Plaintiff ran into the shelving which was located in front of the counter. Plaintiff had to ask other patrons to move out of the way so that he had enough space to move away from the counter and exit the Fig Tree Facility. | Not sure, probably high but the major problem with approach, the counter is flanked on both sides by merchandize making it impossible to maneuver wc to and from the counter |
| Baskin-Robbins – Slope at exterior landing | The sidewalk at the entrance to the Baskin-Robbins Facility was sloped down towards the street, which made it difficult for Plaintiff to enter. | Huge! |
| Baskin-Robbins – Door heavy | The entry door at the Baskin-Robbins Facility was heavy, which compounded Plaintiff's difficulty in entering as it was difficult to open the heavy door while trying not to roll down the sloped sidewalk. | Yes |
| Baskin-Robbins – Side of ice cream case too high | It was difficult for Plaintiff to see the ice cream flavors because the sides of the ice cream case were too high, blocking his view. | Yes |
| Baskin-Robbins – Not enough clearance in front of ice cream case | The ice cream case lacked proper clearance in front of it, which was obstructed by a table. Plaintiff was attempting to wheel along the side of the ice cream case to see the different flavors, but became stuck due to the lack of clearance and was unable to turn around, requiring assistance from his family to do so. | Yes |
| Baskin-Robbins – No tables | Plaintiff was unable to locate a table at which to sit | Yes |

MLF0038341

EX. 30-10

| with proper clearance | where his wheelchair would not obstruct the aisles. He was forced to take his ice cream to go and eat it in his vehicle. | |
|---|---|---|
| Baskin-Robbins – Counter not accessible | The cashier counter was improperly configured and it was difficult for Plaintiff to reach over the counter to hand payment to the cashier. | Not sure of this one |

MLF0038342

EX. 30-11



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 14, 2014

E. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:     ADAI No.     01923
        **Dhillon (Fig Tree Liquor, Baskin-Robbins)**
        *1731 W. Bullard Avenue, Fresno, CA 93711*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure:  Fee Agreement

MLF0038343

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail:  tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>              Plaintiff,<br><br>       vs.<br><br>AMRITA KAUR DHILLON; JAYPAL SINGH DHILLON; SABREEN KAUR DHILLON; SONIA KAUR DHILLON; JASONEET SINGH DHILLON; SATWANT SINGH DHILLON; DAVINDER SINGH DHILLON; HARKIRAN KAUR DHILLON; GURSHEEL SINGH DHILLON; KAWALDEEP KAUR DHILLON; HARPREET KAUR TOOR dba FIG TREE LIQUOR; KHALID JAVED dba BASKIN-ROBBINS; PRISCILLA JAVED dba BASKIN-ROBBINS;<br><br>              Defendants.<br>_____ | ) No. <br>) <br>) **COMPLAINT ASSERTING DENIAL OF** <br>) **RIGHT OF ACCESS UNDER** <br>) **AMERICANS WITH DISABILITIES ACT** <br>) **FOR INJUNCTIVE RELIEF,** <br>) **DECLARATORY RELIEF, DAMAGES,** <br>) **ATTORNEYS' FEES AND COSTS (ADA)** <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) |

///

///

///

///

///

*Moore v. Dhillon, et al.*
Complaint

MLF0038344

EX. 30-13

## I. SUMMARY

1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

>    a)    Fig Tree Liquor
>           1731 W. Bullard Avenue
>           Fresno, CA 93711
>           (hereafter "the Fig Tree Facility")
>
>    b)    Baskin-Robbins
>           1731 W. Bullard Ave
>           Fresno, CA 93711
>           (hereafter "the Baskin-Robbins Facility")

Each of the facilities identified above shall be collectively hereafter referred to as "the Facilities."

2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes, against:

>    a)    AMRITA KAUR DHILLON; JAYPAL SINGH DHILLON; SABREEN KAUR DHILLON; SONIA KAUR DHILLON; JASONEET SINGH DHILLON; SATWANT SINGH DHILLON; DAVINDER SINGH DHILLON; HARKIRAN KAUR DHILLON; GURSHEEL SINGH DHILLON; KAWALDEEP KAUR DHILLON (hereinafter collectively "the Landlord Defendants");
>
>    b)    HARPREET KAUR TOOR dba FIG TREE LIQUOR (hereinafter "the Fig Tree Defendant); and
>
>    c)    KHALID JAVED dba BASKIN-ROBBINS and PRISCILLA JAVED dba BASKIN-ROBBINS (hereinafter collectively "the Baskin-Robbins Defendants").

The Fig Tree Liquor Defendant and the Baskin-Robbins Defendants are collectively referred to herein as "the Tenant Defendants," and together with the Landlord Defendants,

*Moore v. Dhillon, et al.*
Complaint

MLF0038345

EX. 30-14

1 collectively the "Defendants."

## II.    JURISDICTION

3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.      Supplemental jurisdiction for claims brought under parallel California law — arising from the same nucleus of operative facts — is predicated on 28 U.S.C. § 1367.

5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.    VENUE

6.      All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.    PARTIES

7.      Plaintiff believes, and thereon alleges, that the Landlord Defendants own, operate, and/or lease the real property consisting of the real property and common areas of the Facilities as well as the physical structures thereon (including the buildings in which each of the individual Tenant Defendants' Facilities is located), and consist of a person (or persons), firm, or corporation. Plaintiff further believes, and thereon alleges, that the Landlord Defendants lease the respective Facilities to the Tenant Defendants as follows:

        a)      The Fig Tree Defendant owns, operates, and/or leases the Fig Tree Facility, and leases the Fig Tree Facility from the Landlord Defendants; and

        b)      The Baskin-Robbins Defendants own, operate, and/or lease the Baskin-Robbins Facility, and lease the Baskin-Robbins Facility from the Landlord Defendants.

8.      Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and is a member of the public whose rights are protected by these laws.

///

*Moore v. Dhillon, et al.*
Complaint

MLF0038346

EX. 30-15

## V.   FACTS

9.   The Facilities are public accommodations, open to the public, which are intended for nonresidential use and whose operation affects commerce.

10.   Plaintiff visited the Facilities and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facilities.  Plaintiff personally encountered the following barriers at the Facilities **during Plaintiff's visits** to the Facilities on or about March 2, 2014:

      a)    Plaintiff had difficulty locating a designated accessible parking space at the Facilities because of the lack of proper signage identifying the space.

      b)    The pavement in **Plaintiff's parking space and in the adjacent access** aisle was cracked, creating an uneven surface that made it difficult for Plaintiff to both transfer between his vehicle and his wheelchair, and maneuver along the access aisle.

      c)    **The access aisle next to Plaintiff's parking spot was sloped and** contained a built-up curb ramp, which further made it difficult for Plaintiff to maneuver along the access aisle.

      d)    Plaintiff had difficulty maneuvering up and down the built-up curb ramp located within the access aisle because it was too narrow and he feared that his wheelchair would roll off the edge of the ramp.

      e)    The entry door to the Fig Tree Facility was extremely heavy, which made it difficult for Plaintiff to hold the door open while wheeling himself through. The door closed on Plaintiff while he was attempting to enter.

      f)    **Plaintiff's struggle to enter the Fig Tree Facility** was exacerbated by the raised threshold of the doorway, which was difficult for him to wheel over.

*Moore v. Dhillon. et al.*
Complaint

MLF0038347

EX. 30-16

g)   Plaintiff wanted to purchase a drink at the Fig Tree Facility; however, the self-serve fountain drinks and coffee were positioned out of his reach. He was forced to buy a canned beverage instead.

h)   Plaintiff could not reach the main counter of the Fig Tree Facility because there was insufficient approach clearance, with merchandise flanking both sides of the counter making it impossible to maneuver to and from the counter. Plaintiff required the assistance of his grandson to conduct his transaction and sign the receipt.

i)   The sidewalk at the entrance to the Baskin-Robbins Facility was sloped down towards the street, and the door of the entrance to the Baskin-Robbins Facility was heavy. It was difficult for Plaintiff to open the heavy door while trying to not roll down the sloped sidewalk when entering the Baskin-Robbins Facility.

j)   Plaintiff was unable to view the selection of ice cream flavors at the Baskin-Robbins Facility because the sides of the ice cream case were too high. Because he could not see the variety offered, Plaintiff was forced to ask for a flavor he remembered having tried before.

k)   The ice cream case at the Baskin-Robbins Facility lacked proper clearance in front of it, which was obstructed by a table. Plaintiff attempted to wheel along the side of the ice cream case to try to view the different flavors, but in doing so became stuck due to the lack of clearance and was unable to turn around unassisted.

l)   At the Baskin-Robbins Facility, Plaintiff was unable to locate a table to sit at where his wheelchair would not obstruct the aisles. He was forced to take his ice cream to go and eat it in his vehicle.

11.   The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered.  Plaintiff is presently unaware of other barriers which may in fact exist at the Facilities and relate to his disabilities.  Plaintiff will seek to amend this Complaint

*Moore v. Dhillon, et al.*
Complaint

MLF0038348

EX. 30-17

1  once such additional barriers are identified as it is Plaintiff's intention to have all barriers

2  which exist at the Facilities and relate to his disabilities removed to afford him full and equal

3  access.

4      12.   Plaintiff was, and continues to be, deterred from visiting the Facilities because

5  Plaintiff knows that the Facilities' goods, services, facilities, privileges, advantages, and

6  accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

7  Plaintiff enjoys the goods and services offered at the Facilities, and will return to the

8  Facilities once the barriers are removed.

9      13.   .Defendants knew, or should have known, that these elements and areas of the

10  Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access

11  to the physically disabled.  Moreover, Defendants have the financial resources to remove

12  these barriers from the Facilities (without much difficulty or expense), and make the

13  Facilities accessible to the physically disabled.  To date, however, Defendants refuse to either

14  remove those barriers or seek an unreasonable hardship exemption to excuse non-

15  compliance.

16      14.   At all relevant times, Defendants have possessed and enjoyed sufficient

17  control and authority to modify the Facilities to remove impediments to wheelchair access

18  and to comply with the 2010 Standards for Accessible Design and the California Code of

19  Regulations Title 24.  Defendants have not removed such impediments and have not

20  modified the Facilities to conform to accessibility standards.  Defendants have intentionally

21  maintained the Facilities in their current condition and have intentionally refrained from

22  altering the Facilities so that they comply with the accessibility standards.

23      15.   Plaintiff further alleges that the (continued) presence of barriers at the

24  Facilities is so obvious as to establish Defendants discriminatory intent.  On information and

25  belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal

26  to adhere to relevant building standards; disregard for the building plans and permits issued

27  for the Facilities; conscientious decision to maintain the architectural layout (as it currently

28  exists) at the Facilities; decision not to remove barriers from the Facilities; and allowance

*Moore v. Dhillon, et al.*
Complaint

Page 6

MLF0038349

EX. 30-18

that Defendants' property continues to exist in its non-compliance state.  Plaintiff further alleges, on information and belief, that the Facilities are not in the midst of a remodel, and that the barriers present at the Facilities are not isolated (or temporary) interruptions in access due to maintenance or repairs.

## VI.    FIRST CLAIM

### Americans with Disabilities Act of 1990

### Denial of "Full and Equal" Enjoyment and Use

16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facilities during each visit and each incident of deterrence.

### Failure to Remove Architectural Barriers in an Existing Facility

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable.  Id. § 12182(b)(2)(A)(v).

21.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facilities without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.    In the alternative, if it was not "readily achievable" for Defendants to remove

*Moore v. Dhillon, et al.*
Complaint

MLF0038350

EX. 30-19

the Facilities' barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### Failure to Design and Construct an Accessible Facility

23.   Plaintiff alleges on information and belief that the Facilities were designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.   The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.   Here, Defendants violated the ADA by designing and constructing (or both) the Facilities in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

26.   Plaintiff alleges on information and belief that the Facilities were modified after January 26, 1992, independently triggering access requirements under the ADA.

27.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible.   42 U.S.C. § 12183(a)(2).   Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.   Here, Defendants altered the Facilities in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

29.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to

---

[1] Nothing within this complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Dhillon, et al.*
Complaint

MLF0038351

EX. 30-20

individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.    Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facilities, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.    SECOND CLAIM

### Unruh Act

33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.    California Civil Code § 51 states, in part, that:  All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.    California Civil Code § 51.5 also states, in part that:  No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.    California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.    Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.    These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

*Moore v. Dhillon, et al.*
Complaint

MLF0038352

EX. 30-21

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

### VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42. .   Health and Safety Code § 19955(a) states, in part, that:   California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that:   Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.     Plaintiff alleges the Facilities are public accommodations constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facilities aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

*Moore v. Dhillon, et al.*
Complaint

MLF0038353

EX. 30-22

3.      Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.      Attorneys' fees, litigation expense, and costs of suit.[2]

5.      Interest at the legal rate from the date of the filing of this action.

6.      For such other and further relief as the Court deems proper.


Dated: July 8, 2014                               MOORE LAW FIRM, P.C.


                                                  /s/ Tanya E. Moore
                                                  Tanya E. Moore
                                                  Attorneys for Plaintiff
                                                  Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Dhillon, et al.*
Complaint

MLF0038354

EX. 30-23

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:   July 8, 2014            /s/  Ronald Moore
                                 Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                 /s/ Tanya E. Moore
                                 Tanya E. Moore, Attorney for
                                 Plaintiff, Ronald Moore

*Moore v. Dhillon. et al.*
*Verification*

MLF0038355

EX. 30-24

# Exhibit 31

```
        BAMBOO GARDEN RESTAURANT
          2020 W. BULLARD AVE
            FRESNO CA 93711
             559-431-7142

     Merchant ID: 490107604
     Term ID: 0001

            Sale

   VISA
   XXXXXXXXXXXX4008
   Entry Method: Swiped
   Apprvd: Online    Batch#: 000007
   03/02/14                18:57:18

   Inv#: 00000005 Appr Code: 01547B

   Amount:          $        16.23
   Tip:
                    ----------------
   Total:
                    ================

        Customer Copy

          THANK YOU
```

MLF0038292

EX. 31-2

THE GREEN MILE SMOKE SHOP
2014 W BULLARD AVE STE 101
FRESNO, CA 93711
559-446-0500

Merchant ID: 230070252
Term ID: 0002

## Sale

VISA
XXXXXXXXXXXX4008
Entry Method: Swiped
Apprvd: Online    Batch#: 000006
03/02/14                 16:17:42

Inv#: 00000017 Appr Code: 075028

Total:         $      12.98

Customer Copy
THANK YOU!

MLF0038295

EX. 31-3



# SAVE MART SUPERMARKETS

2066 W. Bullard
559-435-6083

Save Mart

Cashier: Jeremiah          Clerk#  74661

04/06/14                              18:07:34

PRODUCE-GARDEN
2.82 lb @  1 lb /  .69
BANANAS                               1.95 F
MEAT
MANUAL  7.40 lb @  3.99 / lb
BF TRIP UNTRM MP                     29.49 F
Regular Price          40.57
BAKERY
DONUTS VAR                             .79 F
            SUBTOTAL          32.23
            TOTAL TAX           .00

TOTAL                      32.23

CREDIT CARDS    TENDER       32.23
Acct:***********4008
APPRVL CODE ·H215U
CASH       CHANGE             .00

        NUMBER OF ITEMS          3

Total Savings on Sale Items        11.08

YOU SAVED A TOTAL OF               11.08
THAT IS A SAVINGS OF                26%

Trx:331    Term:6   Store:054   18:08:07

Our Customer Support Team looks
forward to hearing from you
8-7 Mon-Fri and 8-4 Sat-Sun
(800) 692-5710

- - - - - - - - - - - - - - - - - - - -
We want to hear from you!
Tell us how we are doing and
receive 10% off your next purchase
as a token of our thanks.
*********************************
To take our quick survey and
view terms and conditions
enter the unique code numbers below at:
www.savemart.com/survey

0540960060331
-invitation code-

Code EXPIRES in 3 days on 04/09/14.
Upon completion of the survey write the
11-digit confirmation number below

Your 10% offer is valid up to 7 days
from receipt of your confirmation number.
Keep the original receipt and give it
to the cashier with your next transaction.

Limit one 10% discount per customer.
Exclusions apply.
For a full list of exclusions
and survey details visit:
www.savemart.com/survey

MLF0038296

EX. 31-4

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? Bamboo Garden Restaurant

2. When did you visit the Facility? 3/2/14 (Date) 7:00 (Time)

3. What is the address of the Facility? 2020 W. Bullard Fresno, CA

4. Was this your first visit to the Facility? No

5. How many times have you visited the Facility? ? If more than one visit, please list the date and time if you know it. ?

6. What was the purpose of your visit? to eat

7. Who accompanied you to the Facility? Grandson and wife

8. What car did you drive to the Facility? Mine

9. Did you drive yourself of did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. in the parking

11. Was it difficult for you to park there? Yes

12. Why? Street and ramp really cracked

13. How did you unload from your vehicle? Rear

14. What side of the vehicle did you unload from? Driver or passenger? driver

15. Did anyone help you to transfer onto your wheelchair? Grandson

16. What problems did you encounter transferring onto your wheelchair?

Street really cracked

17. Which way did you go from the parking to the entrance of the Facility? to the ramp then to the door

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

Ramp goes into street. No access isle. Ramp high and steep, cracked, and broken

19. Did you encounter any problems opening the door? Describe why. Yes door closed on me going in grandson held door so I could get in

20. Did you have any problems inside the Facility? Describe. Yes

MLF0038290

EX. 31-5

tables to close had to ask Man to Move to other side of his table So I could face Mytable and not sit sideways

21. What did you purchase (or what meal did you have there). Describe: 2 Meals and appatizers

22. Have you used the restroom at the Facility? They said it was closed not open to public.

23. Why did you need to use the restroom? N/A There me and my

24. Did you use the sink? N/A Grandson left and looked

25. Any problems? N/A To see where my wife was

26. Did you use the urinal? N/A And she was using the Restroom

27. Did you use the toilet? N/A

28. Did you use the toilet paper? N/A

29. Did you use paper towels? N/A

30. Did you use the soap dispenser? N/A

31. Did you have any problem maneuvering inside the restroom? N/A

32. Where did you sit? in back corner of restaurant

33. Was there any seating provided inside the Facility? Yes

34. Was it wheelchair accessible? NO

35. Where you comfortable at the table? NO

36. Did you use the counter to pay for purchase? Yes

37. Which counter did you use? Only one

38. Was the counter accessible? NO Way to high my grandson had to sign Because there was A Way for me to Reach very high

39. Which way did you go after you left the Facility? Out door towards car

40. Any problems getting back to your vehicle? ramp cracked And going Down Ramp Shot me into street

41. Any problems transferring from your wheelchair to your vehicle? no because grandson helped Me

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0038291

EX. 31-6

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _The Green Mile Smoke Shop_

2. When did you visit the Facility? _3/2/14_ (Date) _4:15_ (Time)

3. What is the address of the Facility? _2014 W. Bullard Ave. Fresno, CA_

4. Was this your first visit to the Facility? _?_

5. How many times have you visited the Facility? _7_ If more than one visit, please list the date and time if you know it. _?_

6. What was the purpose of your visit? _To Get E cigerette_

7. Who accompanied you to the Facility? _my wife And Grandson_

8. What car did you drive to the Facility? _mine_

9. Did you drive yourself of did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In dp parking_

11. Was it difficult for you to park there? _Yes_

12. Why? _Street and ramp Very Cracked_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _Grandson_

16. What problems did you encounter transferring onto your wheelchair?

_Street was very Cracked_

17. Which way did you go from the parking to the entrance of the Facility? _Up ramp to the door_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
_Ramp goes into street. No access isle. Ramp high, steep, cracked and broken up._

19. Did you encounter any problems opening the door? Describe why. _Door closed on me trying to get in_

20. Did you have any problems inside the Facility? Describe. _Yes_

MLF0038293

EX. 31-7

The door to the Cigar room was hard to open, there was no room to move in there, and couldn't reach the Cigars. On way out of Cigar room wheels got stuck on threshold and grandson had to pull me out

21. What did you purchase (or what meal did you have there). Describe: Juice for My E-cigarette

22. Have you used the restroom at the Facility? N/A

23. Why did you need to use the restroom? N/A

24. Did you use the sink? N/A

25. Any problems? Couldn't see stuff on the shelves

26. Did you use the urinal? N/A

27. Did you use the toilet? N/A

28. Did you use the toilet paper? N/A

29. Did you use paper towels? N/A

30. Did you use the soap dispenser? N/A

31. Did you have any problem maneuvering inside the restroom? N/A

32. Where did you sit? N/A

33. Was there any seating provided inside the Facility? N/A

34. Was it wheelchair accessible? NO

35. Where you comfortable at the table? N/A

36. Did you use the counter to pay for purchase? Yes

37. Which counter did you use? Only one

38. Was the counter accessible? No it was high and wide I believe My grandson signed the receipt

39. Which way did you go after you left the Facility? Out door down ramp

40. Any problems getting back to your vehicle? Ramp shot Me into Street it was so steep

41. Any problems transferring from your wheelchair to your vehicle? No because grandson helped Me

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0038294

EX. 31-8

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _Save mart_

2. When did you visit the Facility? _4/6/14_ (Date) _6 pm_ (Time)

3. What is the address of the Facility? _2066 W Bullard_

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _2_ If more than one visit, please list the date and time if you know it. _?_

6. What was the purpose of your visit? _Food for BBQ_

7. Who accompanied you to the Facility? _Grandson_

8. What car did you drive to the Facility? _mine_

9. Did you drive yourself of did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In O/p spot on Right side of Store_

11. Was it difficult for you to park there? _yes_

12. Why? _Street cracked_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _Grandson_

16. What problems did you encounter transferring onto your wheelchair?

_None_

17. Which way did you go from the parking to the entrance of the Facility? _To Access Issle_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
_Ramp go's into street Also cracks in it_

19. Did you encounter any problems opening the door? Describe why. _No_

20. Did you have any problems inside the Facility? Describe. _yep_

MLF0038323

EX. 31-9

I could not Reach Food that I wanted the meat the Doughnuts cooked chicken oct of Reech Cakes

21. What did you purchase (or what meal did you have there). Describe: *meats Doughnut Bannas*

22. Have you used the restroom at the Facility? *NO*

23. Why did you need to use the restroom? _____

24. Did you use the sink? _____

25. Any problems? _____

26. Did you use the urinal? _____

27. Did you use the toilet? _____

28. Did you use the toilet paper? _____

29. Did you use paper towels? _____

30. Did you use the soap dispenser? _____

31. Did you have any problem maneuvering inside the restroom? _____

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _____

34. Was it wheelchair accessible? _____

35. Where you comfortable at the table? _____

36. Did you use the counter to pay for purchase? *yes*

37. Which counter did you use? *the open one at End*

38. Was the counter accessible? *No to high my Grandson Helld to Sign Reciept for me*

39. Which way did you go after you left the Facility? *out Door to Car*

40. Any problems getting back to your vehicle? *Car next to me parked Real close hard to get Buy*

41. Any problems transferring from your wheelchair to your vehicle? *No Grandson did it*

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0038324

EX. 31-10



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
· AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

April 21, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, CA 93612

> **RE:** **ADAI No.    01922**
> **Dhillon Brothers No. 1, LLC (Save Mart Supermarkets)**
> *2014/2020 W Bullard Avenue, Fresno, CA 93711*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0038322

**ADAI No. :**   01922

**Case Name:**   Moore v. Dhillon Brothers No. 1, LLC

**Address:**   The Green Mile Smoke Shop, 2014 W. Bullard Ave, Fresno
Bamboo Garden Restaurant, 2020 W. Bullard Ave, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Common areas – Parking space (the one on the right) cracked and no designated access aisle | Plaintiff parked in a designated accessible parking space between the entrances to the Green Mile Facility and the Bamboo Garden Facility. The surface of the parking space was cracked and it lacked a designated access aisle, making it difficult for Plaintiff to transfer between his vehicle and wheelchair as the surface adjacent to the driver's side of his vehicle was sloped and uneven. | Yes as to cracks, but there is an access aisle. Not sure why he has not seen it. Maybe someone was parked over it. Yes as to sloped and uneven |
| Common areas – Built up curb ramp; high, steep, and cracked/broken | The ramp from the parking area to the sidewalk in front of the Facilities was an improperly configured built-up curb ramp and was steep, cracked and broken, making it difficult for Plaintiff to maneuver up and down the ramp. When Plaintiff was returning to his vehicle after leaving the Facilities, he was unable to control his speed down the steep ramp and was propelled toward the path of vehicular traffic. | Yes, looks dangerous. |
| Green Mile – Door closed quickly | While Plaintiff was attempting to enter the Green Mile Facility, the door swung quickly closed on him. | Yes, very heavy door |
| Green Mile – Door to cigar room hard to open | The cigar room at the Green Mile Facility had a sliding glass entry door which was heavy and difficult for Plaintiff to open. | Yes |
| Green Mile – Not enough clearance inside cigar room | The cigar room at the Green Mile Facility lacked necessary wheelchair clearances inside, making it difficult for Plaintiff to maneuver around. | Yes |
| Green Mile – Raised | The entrance to the cigar room at the | Yes, very high threshold |

MLF0038297

EX. 31-12

| | | |
|---|---|---|
| threshold at cigar room | Green Mile Facility had a raised threshold which was difficult for Plaintiff to wheel over. He required help from his grandson to back over the threshold in order to exit the room. | |
| Green Mile – Shelves too high | Merchandise at the Green Mile Facility was displayed on shelves which were too high for Plaintiff to see. | So what, no on this one |
| Green Mile – Counter high | The transaction counter at the Green Mile Facility was too high for Plaintiff to reach up to sign his credit card receipt. Plaintiff's grandson had to sign the receipt for him. | disagree |
| Bamboo Garden – Door heavy | The entry door at the Bamboo Garden Facility was too heavy for Plaintiff to open. His grandson had to hold the door open while Plaintiff entered. | Yes |
| Bamboo Garden – Not enough clearance at table | There was not enough clearance between the tables at the Bamboo Garden Facility, and Plaintiff had to ask another diner who was seated at the adjacent table to move to a different chair so that there was barely enough clearance for Plaintiff to pull his wheelchair up to his own table; despite this, there remained a lack of sufficient clearance and Plaintiff was uncomfortable during his meal. | Yes |
| Bamboo Garden – Would not let him use the restroom | Plaintiff needed to use the restroom at the Bamboo Garden Facility but was told by staff that the restroom was closed to the public. However, Plaintiff's wife was able to use the unisex restroom, which was not actually closed to the public. She reported that the restroom lacked sufficient clearances inside and Plaintiff would have been unable to use it. | Yes, they let both of us use it. The way to the restroom is cluttered and insufficient clearnaces.  Yes, restroom does not have a way for him to maneuver |
| Bamboo Garden – Counter high | The transaction counter at the Bamboo Garden restaurant was too high and Plaintiff was unable to reach up to sign his receipt. Plaintiff's grandson had to sign the receipt for him. | Yes, very high |

2

MLF0038298

EX. 31-13

| | | |
|---|---|---|
| Save Mart – Parking space cracked, narrow | Plaintiff parked in a designated accessible parking space on the right side of the Save Mart Facility. The surface of the parking space was cracked, creating an uneven surface which made it difficult for him to transfer between his vehicle and his wheelchair. The parking space was also narrow, and when Plaintiff returned to his vehicle another car had parked next to his and it was difficult for him to maneuver between the cars. | Wow, depends. (parking spaces look relatively new). Does not look narrow to me. Not sure why he says that, maybe redone parking spaces since. |
| Save Mart – Built up curb ramp is cracked | The ramp from the parking lot to the sidewalk leading to the entrance of the Save Mart Facility was an improperly configured built-up curb ramp, and its surface was cracked. It was difficult for Plaintiff to maneuver up and down the uneven surface of the ramp and he feared that his wheelchair would roll off the sloped edges of the ramp. | Yes, both entrances have improperly configured designated parking: the left entrance has a new ramp that is almost level with the entrance landing but the two designated parking spaces next to it are sloped toward the access aisle. Making it very difficult for loading and unloading. The one he used on the right has a built up ramp that slopes down toward the parking spaces. Both parking spaces appear to be sloped, not sure cracked. Yes, the edges are sloping off dangerously |
| Save Mart – Meat, donuts, cooked chicken, deli, cakes out of reach | The meat, donuts, cooked chicken, and cakes were all out of reach. Deli counter and all service counters were too high for Plaintiff's reach. | Yes, all deli and service counters are way high and out of reach. |
| Save Mart – checkout not accessible | Plaintiff could not locate an open accessible checkout aisle at the Save Mart Facility. He was forced to use a checkout aisle which had a counter that was too high, and Plaintiff could not reach up to sign his receipt. He had to ask his grandson to sign the receipt for him. | I could not locate an accessible checkout when I went there because there is no designation that is visible above the counters. I then saw a tiny wc sign on the side of the counter, proceeded to checkout, and it was too high. The pull out shelf was there for check signing but was blocked by a large pole. |

3

MLF0038299

EX. 31-14



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 7, 2014

**K. RANDOLPH MOORE**
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:  ADAI No.   01922
**Dhillon Brothers No. 1, LLC (Green Mile Smoke Shop,
Bamboo Garden Restaurant, Save Mart Supermarkets)
*2014/2020 W Bullard Avenue, Fresno, CA 93711***

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records.  Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure:  Fee Agreement

MLF0038301

EX. 31-15

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
332 N. Second Street
San Jose, CA 95112
(408) 298-2000

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Dhillon Brothers No. 1, LLC (Green Mile Smoke Shop, Bamboo Garden Restaurant, Save Mart Supermarkets).**

DATE: _____    _____
                             CLIENT'S SIGNATURE- RONALD MOORE

                             _____
                             ADDRESS

                             _____
                             CITY

                             _____
                             TELEPHONE

DATE:_____     MOORE LAW FIRM, PC
                             ATTORNEY FOR RONALD MOORE

MLF0038302

EX. 31-16

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

---

## MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA  95112**
**(408) 298-2000**

THIS AGREEMENT, made this _____ at **San Jose, CA**, by and between <u>Ronald Moore</u>, hereinafter designated as "Client," and **the Moore Law Firm, PC**, hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case against ***<u>Dhillon Brothers No. 1, LLC (Green Mile Smoke Shop, Bamboo Garden Restaurant, Save Mart Supermarkets)</u>*** and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1.  ATTORNEY TAKES ALL STEPS NECESSARY:  Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2.  COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment.  If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

### FEE ARRANGEMENTS

PARAGRAPH 3(a).  CONTINGENCY FEE ARRANGEMENTS:  If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.)  In any event, any fee that requires court approval will be the fee that controls this agreement.

MLF0038303

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0038304

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

## FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e).  FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)     Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)    Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)   In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)    In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages.  This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0038305

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u> .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0038306

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0038307

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial                    _____Initial

MLF0038308

DATE:_____          _____
                               CLIENT'S SIGNATURE


DATE:_____          _____
                               CLIENT'S NAME

                               _____
                               ADDRESS


                               _____
                               CITY


                               _____
                               TELEPHONE


MY WITNESS(S) ARE _____
(if none please indicate so)



DATE:_____          MOORE LAW FIRM, PC


                               _____
                               ATTORNEY FOR RONALD MOORE

MLF0038309

1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail:  tanya@moorelawfirm.com

5  Attorneys for Plaintiff
   Ronald Moore
6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  RONALD MOORE,                          )  No.
                                           )
12              Plaintiff,                  )  COMPLAINT ASSERTING DENIAL OF
                                           )  RIGHT OF ACCESS UNDER
13       vs.                               )  AMERICANS WITH DISABILITIES ACT
                                           )  FOR INJUNCTIVE RELIEF,
14  DHILLON BROS. NO. 1, LLC; KALWANT      )  DECLARATORY RELIEF, DAMAGES,
    S. DHILLON; BIR SINGH DHILLON;         )  ATTORNEYS' FEES AND COSTS (ADA)
15  DALJIT SINGH DHILLON; HARBHAJAN        )
    S. DHILLON; ROBERT ANTHONY             )
16  RASCON dba THE GREEN MILE SMOKE        )
    SHOP; JOHN WONG dba BAMBOO             )
17  GARDEN RESTAURANT; SAVE MART           )
    SUPERMARKETS dba SAVE MART             )
18  STORE #54;                             )
                                           )
19                                         )
                Defendants.                )
20                                         )
                                           )
21  _____   )

22                    I. SUMMARY

23       1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

24  discrimination at the building, structure, facility, complex, property, land, development, and/or

25  surrounding business complex known as:

26            a)    The Green Mile Smoke Shop
                    2014 West Bullard Avenue
27                  Fresno, CA 93711
                    (hereafter "the Green Mile Facility")
28

*Moore v. Dhillon Bros. No. 1, LLC, et al.*
Complaint

                          Page 1

MLF0038310

b)   Bamboo Garden Restaurant
     2020 West Bullard Avenue
     Fresno, CA 93711
     (hereafter "the Bamboo Garden Facility")

c)   Save Mart Store #54
     2066 West Bullard Avenue
     Fresno, CA 93711
     (hereafter "the Save Mart Facility")

Each of the facilities identified above shall be collectively hereafter referred to as "the Facilities."

2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes, against:

a)   DHILLON BROS. NO. 1, LLC; KALWANT S. DHILLON; BIR SINGH DHILLON; DALJIT SINGH DHILLON; and HARBHAJAN S. DHILLON (hereinafter collectively "the Landlord Defendants");

b)   ROBERT ANTHONY RASCON dba THE GREEN MILE SMOKE SHOP (hereinafter "the Green Mile Defendant");

c)   JOHN WONG dba BAMBOO GARDEN RESTAURANT (hereinafter "the Bamboo Garden Defendant"); and

d)   SAVE MART SUPERMARKETS dba SAVE MART STORE #54 (hereinafter "the Save Mart Defendant").

The Green Mile Defendant, Bamboo Garden Defendant, and Save Mart Defendant are collectively referred to herein as "the Tenant Defendants," and together with the Landlord Defendants, collectively the "Defendants."

## II.   JURISDICTION

3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.    Supplemental jurisdiction for claims brought under parallel California law –

*Moore v. Dhillon Bros. No. 1, LLC, et al.*
Complaint

Page 2

MLF0038311

EX. 31-25

1  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

2      5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

3                          **III.    VENUE**

4      6.      All actions complained of herein take place within the jurisdiction of the United

5  States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

6  § 1391(b), (c).

7                          **IV.    PARTIES**

8      7.      Plaintiff believes, and thereon alleges, that the Landlord Defendants own,

9  operate, and/or lease the real property consisting of the real property and common areas of the

10 Facilities as well as the physical structures thereon (including the buildings in which each of

11 the individual Tenant Defendants' Facilities is located), and consist of a person (or persons),

12 firm, or corporation. Plaintiff further believes, and thereon alleges, that the Landlord

13 Defendants lease the respective Facilities to the Tenant Defendants as follows:

14          a)      The Green Mile Defendant owns, operates, and/or leases the Green Mile

15                  Facility, and leases the Green Mile Facility from the Landlord

16                  Defendants;

17          b)      The Bamboo Garden Defendant owns, operates, and/or leases the

18                  Bamboo Garden Facility, and leases the Bamboo Garden Facility from

19                  the Landlord Defendants; and

20          c)      The Save Mart Defendant owns, operates, and/or leases the Save Mart

21                  Facility, and leases the Save Mart Facility from the Landlord

22                  Defendants.

23     8.      Plaintiff requires the use of a wheelchair when traveling about in public.

24 Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

25 United States laws, and is a member of the public whose rights are protected by these laws.

26                          **V.    FACTS**

27     9.      The Facilities are public accommodations, open to the public, which are

28 intended for nonresidential use and whose operation affects commerce.

*Moore v. Dhillon Bros. No. 1, LLC, et al.*
Complaint

MLF0038312

EX. 31-26

10.     Plaintiff visited the Facilities and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facilities.   Plaintiff personally encountered the following barriers at the Facilities during Plaintiff's visits to the Facilities:

a)   During Plaintiff's visits to the Green Mile Facility and Bamboo Garden Facility on or about March 2, 2014, Plaintiff encountered the following barriers:

1)   Plaintiff parked in a designated accessible parking space located between the entrances to the Green Mile Facility and the Bamboo Garden Facility. The parking space was excessively sloped and the surface was cracked and uneven, making it difficult for Plaintiff to transfer between his vehicle and his wheelchair.

2)   The ramp from the parking space to the sidewalk in front of the store entrances was an improperly configured built-up curb ramp, and was steep, cracked and uneven. This made it difficult for Plaintiff to maneuver up and down the ramp. When Plaintiff went down the ramp on his way back to his vehicle, he was unable to control his speed down the steep ramp and was propelled toward the path of vehicular traffic.

3)   The entrance door at the Green Mile Facility swung closed too quickly, and Plaintiff was unable to enter before it shut on him.

4)   The cigar room at the Green Mile Facility had a sliding glass entry door which was heavy and difficult for Plaintiff to open.

5)   The cigar room at the Green Mile Facility lacked necessary wheelchair clearances inside, making it difficult for Plaintiff to maneuver around.

*Moore v. Dhillon Bros. No. 1, LLC, et al.*
Complaint

MLF0038313

EX. 31-27

6) The doorway to the cigar room at the Green Mile Facility had a high raised threshold, which was difficult for Plaintiff to maneuver over. He needed help from his grandson to back over the threshold in order to exit the room.

7) The entrance door at the Bamboo Garden Facility was too heavy for Plaintiff to open. His grandson had to hold the door open while Plaintiff entered.

8) There was not enough clearance between the tables at the Bamboo Garden Facility. Plaintiff had to ask another diner who was seated at the adjacent table to move to a different chair so that there was barely enough clearance for Plaintiff to pull his wheelchair up to his own table; despite this, there remained a lack of sufficient clear space and Plaintiff was uncomfortable during his meal.

9) Plaintiff needed to use the restroom at the Bamboo Garden Facility but was told by staff that the restroom was closed to the public. To the contrary, Plaintiff's wife was separately allowed to use the unisex restroom, evidencing that it was not actually closed to the public. She reported, however, that the restroom lacked sufficient clearances inside and Plaintiff would have been unable to use it.

10) The transaction counter at the Bamboo Garden Facility was too high and Plaintiff was unable to reach up to sign his receipt. His grandson had to sign the receipt for him.

b) During Plaintiff's visit to the Save Mart Facility on or about April 6, 2014, Plaintiff encountered the following barriers:

1) Plaintiff parked in a designated accessible parking space near the entrance to the Save Mart Facility. The ramp from the parking lot

*Moore v. Dhillon Bros. No. 1, LLC, et al.*
Complaint

MLF0038314

EX. 31-28

to the sidewalk leading to the entrance of the Save Mart Facility was an improperly configured built-up curb ramp. It was difficult for Plaintiff to maneuver up and down the ramp and he feared that his wheelchair would roll off the sloped edges of the ramp.

2) Many of the food items that Plaintiff wanted to purchase at the Save Mart Facility were positioned out of his reach.

3) The deli and service counters at the Save Mart Facility were too high, making it difficult for Plaintiff to request and receive items at the counters.

4) Plaintiff could not locate an open accessible checkout aisle at the Save Mart Facility. He was forced to use a checkout aisle which had a high counter, and Plaintiff could not reach up to sign his receipt. He had to ask his grandson to sign the receipt for him.

11. The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facilities and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facilities and relate to his disabilities removed to afford him full and equal access.

12. Plaintiff was, and continues to be, deterred from visiting the Facilities because Plaintiff knows that the Facilities' goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facilities, and will return to the Facilities once the barriers are removed.

13. Defendants knew, or should have known, that these elements and areas of the Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facilities (without much difficulty or expense), and make the Facilities accessible to the physically disabled. To date, however, Defendants refuse to either remove

*Moore v. Dhillon Bros. No. 1, LLC, et al.*
Complaint

MLF0038315

1  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

2      14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

3  and authority to modify the Facilities to remove impediments to wheelchair access and to

4  comply with the 2010 Standards for Accessible Design and the California Code of Regulations

5  Title 24. Defendants have not removed such impediments and have not modified the Facilities

6  to conform to accessibility standards.  Defendants have intentionally maintained the Facilities

7  in their current condition and have intentionally refrained from altering the Facilities so that

8  they comply with the accessibility standards.

9      15.    Plaintiff further alleges that the (continued) presence of barriers at the Facilities

10  is so obvious as to establish Defendants discriminatory intent.  On information and belief,

11  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

12  to relevant building standards; disregard for the building plans and permits issued for the

13  Facilities; conscientious decision to maintain the architectural layout (as it currently exists) at

14  the Facilities; decision not to remove barriers from the Facilities; and allowance that

15  Defendants' property continues to exist in its non-compliance state.  Plaintiff further alleges,

16  on information and belief, that the Facilities are not in the midst of a remodel, and that the

17  barriers present at the Facilities are not isolated (or temporary) interruptions in access due to

18  maintenance or repairs.

19      **VI.    FIRST CLAIM**

20      **Americans with Disabilities Act of 1990**

21      Denial of "Full and Equal" Enjoyment and Use

22      16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

23  this claim.

24      17.    Title III of the ADA holds as a "general rule" that no individual shall be

25  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

26  goods, services, facilities, privileges, and accommodations offered by any person who owns,

27  operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

28      18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

*Moore v. Dhillon Bros. No. 1, LLC, et al.*
Complaint

MLF0038316

EX. 31-30

1   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

2   Facilities during each visit and each incident of deterrence.

3   <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

4   19.   · The ADA specifically prohibits failing to remove architectural barriers, which

5   are structural in nature, in existing facilities where such removal is readily achievable.  42

6   U.S.C. § 12182(b)(2)(A)(iv).

7   20.   When an entity can demonstrate that removal of a barrier is not readily

8   achievable, a failure to make goods, services, facilities, or accommodations available through

9   alternative methods is also specifically prohibited if these methods are readily achievable.  Id.

10   § 12182(b)(2)(A)(v).

11   21.   Here, Plaintiff alleges that Defendants can easily remove the architectural

12   barriers at the Facilities without much difficulty or expense, and that Defendants violated the

13   ADA by failing to remove those barriers, when it was readily achievable to do so.

14   22.   In the alternative, if it was not "readily achievable" for Defendants to remove

15   the Facilities' barriers, then Defendants violated the ADA by failing to make the required

16   services available through alternative methods, which are readily achievable.

17   <u>Failure to Design and Construct an Accessible Facility</u>

18   23.   Plaintiff alleges on information and belief that the Facilities were designed and

19   constructed (or both) after January 26, 1992 – independently triggering access requirements

20   under Title III of the ADA.

21   24.   The ADA also prohibits designing and constructing facilities for first occupancy

22   after January 16, 1993, that aren't readily accessible to, and usable by, individuals with

23   disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

24   25.   Here, Defendants violated the ADA by designing and constructing (or both) the

25   Facilities in a manner that was not readily accessible to the physically disabled public –

26   including Plaintiff – when it was structurally practical to do so.[1]

27

28

---

[1] Nothing within this complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Dhillon Bros. No. 1, LLC, et al.*
Complaint

Page 8

MLF0038317

### Failure to Make an Altered Facility Accessible

26.     Plaintiff alleges on information and belief that the Facilities were modified after January 26, 1992, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.     Here, Defendants altered the Facilities in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facilities, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.     SECOND CLAIM

### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

*Moore v. Dhillon Bros. No. 1, LLC, et al.*
Complaint

MLF0038318

EX. 31-32

34.    California Civil Code § 51 states, in part, that:   All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.    California Civil Code § 51.5 also states, in part that:  No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.    California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.    Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.    These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.    Health and Safety Code § 19955(a) states, in part, that:  California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.    Health and Safety Code § 19959 states, in part, that:  Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

*Moore v. Dhillon Bros. No. 1, LLC, et al.*
Complaint

MLF0038319

EX. 31-33

44.     Plaintiff alleges the Facilities are public accommodations constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facilities aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.     Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.     Attorneys' fees, litigation expense, and costs of suit.[2]

5.     Interest at the legal rate from the date of the filing of this action.

6.     For such other and further relief as the Court deems proper.

Dated: July 1, 2014                          MOORE LAW FIRM, P.C.

                                             /s/ Tanya E. Moore
                                             Tanya E. Moore
                                             Attorneys for Plaintiff
                                             Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Dhillon Bros. No. 1, LLC, et al.*
Complaint

Page 11

MLF0038320

EX. 31-34

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated: July 1, 2014                          /s/ Ronald Moore
                                             Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                             /s/ Tanya E. Moore
                                             Tanya E. Moore, Attorney for
                                             Plaintiff, Ronald Moore


*Moore v. Dhillon Bros. No. 1, LLC, et al.*
*Verification*

MLF0038321

EX. 31-35

**Exhibit 32**



# Dollar Tree Stores, Inc.

Store# 2093
3780 W Shields Ave          (559) 275-8733
Fresno CA 93722-6702

| DESCRIPTION | QTY | PRICE | TOTAL |
|---|---|---|---|
| MANGO NECTAR 3PK | 1 | 1.00 | 1.00N |
| MANGO NECTAR 3PK | 1 | 1.00 | 1.00N |
| STRAWBANANA NECTAR | 1 | 1.00 | 1.00N |
| PEACH NECTAR | 1 | 1.00 | 1.00N |
| STRAWBANANA NECTAR | 1 | 1.00 | 1.00N |

| | |
|---|---|
| Sub Total | $5.00 |
| GENERAL EXEM | $0.00 |
| Total | $5.00 |
| Cash | $5.00 |

Thank You for Shopping at Dollar Tree
Where Everything's $1.00
Now Shop On-Line at Dollartree.com

9662 02093 04 004 55239          1/11/13 20:23
Sales Associate:APRIL

MLF0031581

EX. 32-2



# Dollar Tree Stores, Inc.®

Store# 2093                           (559) 275-8733
3780 W Shields Ave
Fresno CA 93722-6702
=========================================
DESCRIPTION          QTY   PRICE      TOTAL
-----------------------------------------
WYLER'S ENHANCER       1    1.00      1.00N
WYLER'S ENHANCER       1    1.00      1.00N
WYLER'S ENHANCER       1    1.00      1.00N
WYLER'S ENHANCER       1    1.00      1.00N
WYLER'S ENHANCER       1    1.00      1.00N
WYLER'S ENHANCER       1    1.00      1.00N
WYLER'S ENHANCER       1    1.00      1.00N
WYLER'S ENHANCER       1    1.00      1.00N
WYLER'S ENHANCER       1    1.00      1.00N
WYLER'S ENHANCER       1    1.00      1.00N
WYLER'S ENHANCER       1    1.00      1.00N
WYLER'S ENHANCER       1    1.00      1.00N

         Sub Total          $12.00
         GENERAL EXEM         $0.00
         Total              $12.00
         MasterCard         $12.00
         ************7245         S
         Auth. Code: 89272Z


=========================================
   Thank You for Shopping at Dollar Tree
        Where Everything's $1.00
     Now Shop On-Line at Dollartree.com
=========================================

4688 02093 06 022 60360      5/09/14 15:13
Sales Associate:ANGELINA

**MLF0031559**

## PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
### ADAI No.
#### (Facility)

1.  What is the name of the Facility? _Dollar tree_

2.  When did you visit the Facility? _1/11/13_ (Date) _8:20 far_ (Time)

3.  What is the address of the Facility? _3780 W Shields Ave Fresno 93722_ _CA_

4.  Was this your first visit to the Facility? _NO_

5.  How many times have you visited the Facility? _Few_ If more than one visit, please list the date and time if you know it. _____

6.  What was the purpose of your visit? _get some mio Drops and some otheres Drinks_

7.  Who accompanied you to the Facility? _my self_

8.  What car did you drive to the Facility? _mini_

9.  Did you drive yourself or did you get a ride from someone else? _I drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In Front_

11. Was it difficult for you to park there? _NO_

12. Why? _____

13. How did you unload from your vehicle? _Been_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _No_

16. What problems did you encounter transferring onto your wheelchair?
    _Nt Payment un even_

17. Which way did you go from the parking to the entrance of the Facility? _to the Ramp_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
    _Ramp gos out into the street and rs Steep_

19. Did you encounter any problems opening the door? Describe why. _Plush hold Hard Doois Shut to Fast_

20. Did you have any problems inside the Facility? Describe. _yes There were_

MLF0031579

EX. 32-4

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADA! No.
(Facility)

_Isshe I could not get Dew stuff in way_
_and Issher to small._

21. What did you purchase (or what meal did you have there). Describe: _Deinker_

_____

22. Have you used the restroom at the Facility? _NO_

23. Why did you need to use the restroom? _____

24. Did you use the sink? _____

25. Any problems? _____

26. Did you use the urinal? _____

27. Did you use the toilet? _____

28. Did you use the toilet paper? _____

29. Did you use paper towels? _____

30. Did you use the soap dispenser? _____

31. Did you have any problem maneuvering inside the restroom? _____

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _____

34. Was it wheelchair accessible? _____

35. Where you comfortable at the table? _____

36. Did you use the counter to pay for purchase? _YES_

37. Which counter did you use? _the one that was open_

38. Was the counter accessible? _High Had loc st staff once paid for_

39. Which way did you go after you left the Facility? _out door to ramps_

40. Any problems getting back to your vehicle? _ramp steep_

41. Any problems transferring from your wheelchair to your vehicle? _Uneven ground._

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0031580

EX. 32-5

**BARRIER MEMO**

**ADAI No. :**     01665

**Case Name:**     Moore v. Dollar Tree

**Address:**     3780 W. Shields Ave, Fresno CA 9372

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| The designated parking provided is not accessible because it contains a built up ramp in the access aisle. | Plaintiff experienced transferring onto his wheelchair because of the built up ramp located in the transfer area/access aisle.<br><br>Bad issue in the restroom no way to wash hands, no seating at the bar, the entrance moved to the side and no parking for the side entrance,aim aisle in the middle limited clearance between chairs when customers seated, sidewalk slopes on the side of the building | Yes |
| There were insufficient w/c clearances provided inside the facility | Plaintiff complained that there were insufficient clearances provided inside the store. | No, did not see any significant issues with clearances |
| Plaintiff could not use the public restroom | Plaintiff was unable to get to the restroom because the access route to it was blocked with boxes | Yes, both myself and investigator were allowed to use the men's restroom in the back. There was no way to get there in a wheelchair because the boxes were stacked up to the ceiling. |
| No open accessible counter provided | Plaintiff was uncomfortable because the counter provided was too high for his reach. | Yes, the accessible counter was closed and blocked by |

1

MLF0031555

EX. 32-6

| | | merchandize during the inspection. Had to use a standard counter and it was not accessible. |
|---|---|---|

MLF0031556

EX. 32-7

<u>BARRIER MEMO</u>

**ADAI No. :**   01665

**Case Name:**   Moore v. Dollar Tree

**Address:**   3780 W. Shields Ave, Fresno CA 9372

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| The designated parking provided is not accessible because it contains a built up ramp in the access aisle. | Plaintiff experienced transferring onto his wheelchair because of the built up ramp located in the transfer area/access aisle. | Yes |
| There were insufficient w/c clearances provided inside the facility | Plaintiff complained that there were insufficient clearances provided inside the store. | **No, did not see any significant issues with clearances** |
| Plaintiff could not use the public restroom | Plaintiff was unable to get to the restroom because the access route to it was blocked with boxes | **Yes, both myself and investigator were allowed to use the men's restroom in the back. There was no way to get there in a wheelchair because the boxes were stacked up to the ceiling.** |
| No open accessible counter provided | Plaintiff was uncomfortable because the counter provided was too high for his reach. | **Yes, the accessible counter was closed and blocked by merchandize during the inspection. Had to use a standard counter and it was not** |

1

MLF0031557

EX. 32-8

| | | accessible. |
|---|---|---|

MLF0031558

EX. 32-9

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorney for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>        Plaintiff,<br><br>vs.<br><br>DOLLAR TREE STORES, INC., dba DOLLAR TREE; PARAMJIT SINGH; RAVINDER SINGH,<br><br>        Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Dollar Tree
> 3780 W. Shields Avenue,
> Fresno CA 93722
> (hereafter "the Facility")

2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against DOLLAR TREE STORES, INC., dba DOLLAR TREE; PARAMJIT SINGH;

*Moore v. Dollar Tree Stores, Inc., et al.*
Complaint

MLF0031560

EX. 32-10

1   RAVINDER SINGH, (hereinafter collectively referred to as "Defendants"), pursuant to the

2   Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related

3   California statutes.

**II.   JURISDICTION**

5   3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

6   ADA claims.

7   4.   Supplemental jurisdiction for claims brought under parallel California law –

8   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

9   5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

**III.   VENUE**

11   6.   All actions complained of herein take place within the jurisdiction of the

12   United States District Court, Eastern District of California, and venue is invoked pursuant to

13   28 U.S.C. § 1391(b), (c).

**IV.   PARTIES**

15   7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or

16   persons), firm, and/or corporation.

17   8.   Plaintiff requires the use of a wheelchair when traveling about in public.

18   Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

19   United States laws, and a member of the public whose rights are protected by these laws.

**V.   FACTS**

21   9.   The Facility is a public accommodation facility, open to the public, which is

22   intended for nonresidential use and whose operation affects commerce.

23   10.   Plaintiff visited the Facility and encountered barriers (both physical and

24   intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

25   goods, services, privileges and accommodations offered at the Facility.   Plaintiff personally

26   encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

27   about January 11, 2013:

28   a)   When Plaintiff parked at the Facility, he experienced difficulty

*Moore v. Dollar Tree Stores, Inc., et al.*
Complaint

MLF0031561

EX. 32-11

transferring onto his wheelchair due to the steep built up ramp located in the access aisle.

b)  While inside the Facility, Plaintiff had to use the public restroom but found that he was unable. The access route to the restroom was blocked with boxes stacked to the ceiling, leaving a narrow pathway not suitable for a wheelchair.

c)  After Plaintiff had found everything he needed in the Facility, he went to look for a counter to pay. Plaintiff could not find an open accessible counter and instead had to use a standard counter. This was uncomfortable for Plaintiff, as the standard counter was too high for his reach.

11.   The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered.  Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities.  Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.   Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.   Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled.  To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

*Moore v. Dollar Tree Stores, Inc., et al.*
Complaint

MLF0031562

EX. 32-12

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:___April 17, 2014_____          _/s/  Ronald Moore_____
                                       Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                       _/s/ Tanya E. Moore_____
                                       Tanya E. Moore, Attorney for
                                       Plaintiff, Ronald Moore

*Moore v. DeSantis, et al.*
*Verification*

MLF0034526

EX. 32-13

1    14.   At all relevant times, Defendants have possessed and enjoyed sufficient
2    control and authority to modify the Facility to remove impediments to wheelchair access and
3    to comply with the 2010 Standards for Accessible Design and the California Code of
4    Regulations Title 24.   Defendants have not removed such impediments and have not
5    modified the Facility to conform to accessibility standards.   Defendants have intentionally
6    maintained the Facility in its current condition and have intentionally refrained from altering
7    the Facility so that it complies with the accessibility standards.

8    15.   Plaintiff further alleges that the (continued) presence of barriers at the Facility
9    is so obvious as to establish Defendants discriminatory intent.   On information and belief,
10   Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to
11   adhere to relevant building standards; disregard for the building plans and permits issued for
12   the Facility; conscientious decision to maintain the architectural layout (as it currently exists)
13   at the Facility; decision not to remove barriers from the Facility; and allowance that
14   Defendants' property continues to exist in its non-compliance state.   Plaintiff further alleges,
15   on information and belief, that the Facility is not in the midst of a remodel, and that the
16   barriers present at the Facility are not isolated (or temporary) interruptions in access due to
17   maintenance or repairs.

18                          **VI.    FIRST CLAIM**
19                  **Americans with Disabilities Act of 1990**
20                  Denial of "Full and Equal" Enjoyment and Use
21   16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for
22   this claim.
23   17.   Title III of the ADA holds as a "general rule" that no individual shall be
24   discriminated against on the basis of disability in the full and equal enjoyment (or use) of
25   goods, services, facilities, privileges, and accommodations offered by any person who owns,
26   operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).
27   18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal
28   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

*Moore v. Dollar Tree Stores, Inc., et al.*
Complaint

MLF0031563

EX. 32-14

1    Facility during each visit and each incident of deterrence.

2                    Failure to Remove Architectural Barriers in an Existing Facility

3             19.    The ADA specifically prohibits failing to remove architectural barriers, which

4    are structural in nature, in existing facilities where such removal is readily achievable.  42

5    U.S.C. § 12182(b)(2)(A)(iv).

6             20.    When an entity can demonstrate that removal of a barrier is not readily

7    achievable, a failure to make goods, services, facilities, or accommodations available through

8    alternative methods is also specifically prohibited if these methods are readily achievable.

9    Id. § 12182(b)(2)(A)(v).

10            21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

11   barriers at the Facility without much difficulty or expense, and that Defendants violated the

12   ADA by failing to remove those barriers, when it was readily achievable to do so.

13            22.    In the alternative, if it was not "readily achievable" for Defendants to remove

14   the Facility's barriers, then Defendants violated the ADA by failing to make the required

15   services available through alternative methods, which are readily achievable.

16                    Failure to Design and Construct an Accessible Facility

17            23.    Plaintiff alleges on information and belief that the Facility was designed and

18   constructed (or both) after January 26, 1992 – independently triggering access requirements

19   under Title III of the ADA.

20            24.    The ADA also prohibits designing and constructing facilities for first

21   occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

22   with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

23            25.    Here, Defendants violated the ADA by designing and constructing (or both)

24   the Facility in a manner that was not readily accessible to the physically disabled public –

25   including Plaintiff – when it was structurally practical to do so.[1]

26                        Failure to Make an Altered Facility Accessible

27   _____

28   [1] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private
     attorney general under either state or federal statutes.

     *Moore v. Dollar Tree Stores, Inc., et al.*
     Complaint

                                              Page 5

MLF0031564

EX. 32-15

26.    Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.    The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.    Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.    The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.    Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## VII.   SECOND CLAIM

### Unruh Act

33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

MLF0031565

EX. 32-16

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

*Moore v. Dollar Tree Stores, Inc., et al.*
Complaint

MLF0031566

EX. 32-17

1    44.    Plaintiff alleges the Facility is a public accommodation constructed, altered,

2  or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

3  Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code

4  § 19956.

5    45.    Defendants' non-compliance with these requirements at the Facility aggrieved

6  (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

7  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code

8  § 19953.

## IX.    PRAYER FOR RELIEF

10    WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

11    1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

12    2.    Declaratory relief that Defendants violated the ADA for the purposes of

13  Unruh Act damages.

14    3.    Statutory minimum damages under section 52(a) of the California Civil Code

15  according to proof.

16    4.    Attorneys' fees, litigation expense, and costs of suit.[2]

17    5.    Interest at the legal rate from the date of the filing of this action.

18    6.    For such other and further relief as the Court deems proper.

19

20  Dated: August 11, 2013                          MOORE LAW FIRM, P.C.

21                                                  /s/ Tanya E. Moore
                                                    Tanya E. Moore
22                                                  Attorneys for Plaintiff,
23                                                  Ronald Moore

24

25

26

27

28
_____
[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Dollar Tree Stores, Inc., et ql.*
Complaint

Page 8

MLF0031567

EX. 32-18

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:    8/11/2013                      /s/  Ronald Moore
                                         Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                         /s/ Tanya E. Moore
                                         Tanya E. Moore, Attorney for
                                         Plaintiff, Ronald Moore


*Ronald Moore v. Dollar Tree Stores, Inc., et al.*

MLF0031568

EX. 32-19

# Exhibit 33


YOUR RECEIPT
THANK YOU
CALL AGAIN

REG  05-15-2014  18:30
                000079

1 HOUSEWARE  T1      $1.00
1 HOUSEWARE  T1       $1.00
1 CARD       T1       $0.50
1 CHEMICAL   T1       $1.00
1 CHEMICAL   T1
    TA1             $4.00
    .TX1            $0.30
    TL          $    4.86
    REDIT           $4.86

DOLLAR PLACE
3257 W SHAW AVE
FRESNO, CA 93711
05/15/2014                19:32:19
MID: 000-000-03660794   TID: 05575348

CREDIT CARD
MC SALE

                  XXXXXXXXXXXX7245
Chip Card:            MasterCard
Chip Card AID     A0000000041010
ATC:                      0005
TC:           09F3AEF7BCA44578
INVOICE:                  0010
SEQ #:                    0010
Batch #:                000076
Approval Code:          876842
Entry Method:        Chip Read
Mode:                   Issuer

SALE AMOUNT            $4.86

CUSTOMER COPY

MLF0044880

EX. 33-2

## PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? Dollar Place

2. What is the address of the Facility? 3257 West Shaw Ave

3. When did you visit the Facility? 5/15/2014 (Date) 7:30pm. (Time)

4. Was this your first visit to the Facility? No

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. ?,

6. What was the purpose of your visit? Laundry detergent and fly spray

7. Who accompanied you to the Facility? Grandson Ronny and Jhonny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself or did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In the parking spot

11. Was it difficult for you to park there? If so, why? Yes, because street was cracked.

12. How did you unload from your vehicle? Rear

13. What side of the vehicle did you unload from? Driver or passenger? Driver

14. Did anyone help you to transfer onto your wheelchair? Who? Yes, Jhonny

15. Did you encounter any problems transferring onto your wheelchair? Describe. No, because Jhonny helped me.

16. Which way did you go from the parking to the entrance of the Facility? To access isle

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. Yes, because ramp went into street also access isle very steep pavement cracked and ramp was cracked no

18. Did you encounter any problems opening the door? Describe. Yes, door was heavy and got stuck inward and closed on me before I got through!

19. What did you purchase (or what meal did you have there)? Laundry detergent and fly swatter and graduation cups

20. Did you need to use the restroom while you were at the Facility? Why? No restroom

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0044877

EX. 33-3

Sink: _N/A_

Toilet: _N/A_

Urinal: _N/A_

Toilet paper: _N/A_

Toilet seat covers: _N/A_

Paper towels/hand dryer: _N/A_

Soap dispenser: _N/A_

Other: _N/A_

22. Did you have any problem maneuvering inside the restroom? _N/A_

23. Was there any seating provided inside the Facility? _N/A_

24. Were you able to sit comfortably at the table? If not, why? _N/A_

25. Did you use the counter to pay for purchase? Which one? _Yes only one available_

26. Did you pay with cash or credit card? _Credit ~~car~~ card_

27. Was the counter accessible? If not, describe. _No because counter was to high grandson Ronny had to give card and sign recipt._

28. Did you have any other problems inside the Facility? Describe. _Yes, isles to small and could not go through ~~aint~~ several isles because boxes were all over the floor._

29. Which way did you go after you left the Facility? _Out door to access isle to car._

30. Any problems getting back to your vehicle? _Yes, because pavement was cracked._

31. Any problems transferring from your wheelchair to your vehicle? _No, because Jhonny helped me._

32. Any additional information you believe would assist us in evaluating this inquiry?

_Grad-Cards were too high and out of reach._

MLF0044878

EX. 33-4



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

July 7, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

     **RE:   ADAI No.    02065**
            **Dollar Place** *(3257 W Shaw, Fresno, CA)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0044879

EX. 33-5

**BARRIER MEMO**

ADAI No. :     02065

Case Name:     Moore v. Dollar Place

Address:     3257 W Shaw Ave, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Parking lot cracked | Plaintiff parked in a designated accessible parking space. The surface of the pavement around his parking space and in the access aisle was cracked, creating an uneven surface that made it difficult for him to transfer between his vehicle and his wheelchair and maneuver toward the ramp. | |
| Built-up curb ramp was steep, cracked | The ramp from the parking lot to the sidewalk leading to the Facility entrance was an improperly configured built-up curb ramp, with a steep, cracked surface. It was difficult for Plaintiff to maneuver up and down the ramp and he feared that his wheelchair would roll off the sloped edges of the ramp. | |
| Door heavy | The entrance door was heavy and opened outward, which made it difficult for Plaintiff to hold the door open while he maneuvered through. The door closed on Plaintiff before he could get inside and he became stuck. | |
| Aisles narrow | The aisles inside the Facility lacked necessary wheelchair clearances, and Plaintiff could not get through several aisles due to boxes stored on the floor. | |
| Graduation cards too high | Plaintiff could not reach the graduation cards because they were positioned too high, out of his reach. | |
| Counter high | The transaction counter was too high for Plaintiff to reach up to hand payment to the cashier and sign his receipt. His grandson had to conduct the transaction and sign the receipt. | |

1

MLF0044821

EX. 33-6

**BARRIER MEMO**

ADAI No. :        02065

Case Name:    **Moore v. Dollar Place**

Address:        3257 W Shaw Ave, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---------|-------------|------------------------------|
| Parking lot cracked | Plaintiff parked in a designated accessible parking space. The surface of the pavement around his parking space and in the access aisle was cracked, creating an uneven surface that made it difficult for him to transfer between his vehicle and his wheelchair and maneuver toward the ramp. | Yes |
| Built-up curb ramp was steep, cracked | The ramp from the parking lot to the sidewalk leading to the Facility entrance was an improperly configured built-up curb ramp, with a steep, cracked surface. It was difficult for Plaintiff to maneuver up and down the ramp and he feared that his wheelchair would roll off the sloped edges of the ramp. | Yes, elevated ramp extended into access aisle. |
| Door heavy | The entrance door was heavy and opened outward, which made it difficult for Plaintiff to hold the door open while he maneuvered through. The door closed on Plaintiff before he could get inside and he became stuck. | No, heavy door had do not use sign, double doors on other side did open outward but were not heavy to open. |
| Aisles narrow | The aisles inside the Facility lacked necessary wheelchair clearances, and Plaintiff could not get through several aisles due to boxes stored on the floor. | Yes, a few choke points located around store. |
| Graduation cards too high | Plaintiff could not reach the graduation cards because they were positioned too high, out of his reach. | Yes, The top rack of cards exceeded 48 inches of height. |
| Counter high | The transaction counter was too high for Plaintiff to reach up to hand payment to the cashier and sign his receipt. His grandson had to conduct the transaction and sign the receipt. | No, counter height right around 38" |

1

MLF0044820

EX. 33-7



# MOORE
## LAW FIRM, P.C.

February 26, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

Re:    ADAI No.    02065
       Dollar Place (3257 W Shaw, Fresno, CA)

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records.  Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0044839

EX. 33-8

1   Tanya E. Moore, SBN 206683
    MOORE LAW FIRM, P.C.
2   332 North Second Street
    San Jose, California 95112
3   Telephone (408) 298-2000
    Facsimile (408) 298-6046
4   E-mail: tanya@moorelawfirm.com

5   Attorneys for Plaintiff
    Ronald Moore
6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  RONALD MOORE,                    ) No.
                                     )
12          Plaintiff,               ) COMPLAINT ASSERTING DENIAL OF
                                     ) RIGHT OF ACCESS UNDER
13  vs.                              ) AMERICANS WITH DISABILITIES ACT
                                     ) FOR INJUNCTIVE RELIEF,
14  LEVON KARAKASHIAN; SHAKEH        ) DECLARATORY RELIEF, DAMAGES,
    KARAKASHIAN; STEVEN MICHAEL      ) ATTORNEYS' FEES AND COSTS (ADA)
15  HAYHURST II, dba DOLLAR PLACE;   )
                                     )
16                                   )
            Defendants.              )
17                                   )
                                     )
18  _____)

19                          I. SUMMARY

20          1.      This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

21  discrimination at the building, structure, facility, complex, property, land, development, and/or

22  surrounding business complex known as:

23                  Dollar Place
                    3257 West Shaw Avenue
24                  Fresno, CA 93711
                    (hereafter "the Facility")
25

26          2.      Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

27  costs, against LEVON KARAKASHIAN; SHAKEH KARAKASHIAN; and STEVEN

28  MICHAEL HAYHURST II, dba DOLLAR PLACE (hereinafter collectively referred to as

_Moore v. Karakashian, et al._
Complaint
                              Page 1

MLF0O44840

EX. 33-9

1    "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et

2    seq.) ("ADA") and related California statutes.

3                       **II.   JURISDICTION**

4       3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

5    claims.

6       4.      Supplemental jurisdiction for claims brought under parallel California law –

7    arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

8       5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

9                       **III.   VENUE**

10      6.      All actions complained of herein take place within the jurisdiction of the United

11    States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

12    § 1391(b), (c).

13                       **IV.   PARTIES**

14      7.      Defendants own, operate, and/or lease the Facility, and consist of a person (or

15    persons), firm, and/or corporation.

16      8.      Plaintiff is substantially limited in his ability to walk, and must use a wheelchair

17    for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable

18    California and United States laws, and a member of the public whose rights are protected by

19    these laws.

20                       **V.   FACTS**

21      9.      The Facility is open to the public, intended for non-residential use, and its

22    operation affects commerce. The Facility is therefore a public accommodation as defined by

23    applicable state and federal laws.

24      10.      Plaintiff visited the Facility and encountered barriers (both physical and

25    intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

26    goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

27    encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

28    about May 15, 2014:

*Moore v. Karakashian, et al.*
Complaint

MLF0044841

EX. 33-10

a)   Plaintiff parked in a designated accessible parking space at the Facility. The surface of the pavement at his parking space and in the adjacent access aisle was cracked, creating an uneven surface that made it difficult for him to transfer between his vehicle and his wheelchair and to maneuver toward the building entrance.

b)   The ramp from the parking lot to the sidewalk leading to the Facility entrance was an improperly configured, built-up curb ramp, with a steep, cracked surface. It was difficult for Plaintiff to maneuver up and down the ramp and he feared that his wheelchair would roll off the sloped edges of the ramp.

c)   There were boxes and merchandise displays located in several aisles inside the Facility which obstructed the clear width of the route of travel, preventing Plaintiff from maneuvering freely around inside the store.

11.   The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.   Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.   Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove

MLF0044842

EX. 33-11

1   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

2       14.   At all relevant times, Defendants have possessed and enjoyed sufficient control

3   and authority to modify the Facility to remove impediments to wheelchair access and to

4   comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

5   Design. Defendants have not removed such impediments and have not modified the Facility to

6   conform to accessibility standards. Defendants have intentionally maintained the Facility in its

7   current condition and have intentionally refrained from altering the Facility so that it complies

8   with the accessibility standards.

9       15.   Plaintiff further alleges that the (continued) presence of barriers at the Facility is

10  so obvious as to establish Defendants' discriminatory intent. On information and belief,

11  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

12  to relevant building standards; disregard for the building plans and permits issued for the

13  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

14  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

15  property continues to exist in its non-compliant state. Plaintiff further alleges, on information

16  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

17  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

18          **VI.   FIRST CLAIM**

19      **Americans with Disabilities Act of 1990**

20      Denial of "Full and Equal" Enjoyment and Use

21      16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

22  this claim.

23      17.   Title III of the ADA holds as a "general rule" that no individual shall be

24  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

25  goods, services, facilities, privileges, and accommodations offered by any person who owns,

26  operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

27      18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

28  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

MLF0044843

EX. 33-12

1   Facility during each visit and each incident of deterrence.

2   <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

3       19.    The ADA specifically prohibits failing to remove architectural barriers, which

4   are structural in nature, in existing facilities where such removal is readily achievable. 42

5   U.S.C. § 12182(b)(2)(A)(iv).

6       20.    When an entity can demonstrate that removal of a barrier is not readily

7   achievable, a failure to make goods, services, facilities, or accommodations available through

8   alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>.

9   § 12182(b)(2)(A)(v).

10       21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

11   barriers at the Facility without much difficulty or expense, and that Defendants violated the

12   ADA by failing to remove those barriers, when it was readily achievable to do so.

13       22.    In the alternative, if it was not "readily achievable" for Defendants to remove

14   the Facility's barriers, then Defendants violated the ADA by failing to make the required

15   services available through alternative methods, which are readily achievable.

16   <u>Failure to Design and Construct an Accessible Facility</u>

17       23.    Plaintiff alleges on information and belief that the Facility was designed and

18   constructed (or both) after January 26, 1992 – independently triggering access requirements

19   under Title III of the ADA.

20       24.    The ADA also prohibits designing and constructing facilities for first occupancy

21   after January 16, 1993, that aren't readily accessible to, and usable by, individuals with

22   disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

23       25.    Here, Defendants violated the ADA by designing and constructing (or both) the

24   Facility in a manner that was not readily accessible to the physically disabled public –

25   including Plaintiff – when it was structurally practical to do so.[1]

26

27

28
_____

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Karakashian, et al.*
Complaint

MLF0044844

EX. 33-13

<u>Failure to Make an Altered Facility Accessible</u>

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

**VII.     SECOND CLAIM**

**Unruh Act**

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

*Moore v. Karakashian, et al.*
Complaint

MLF0044845

EX. 33-14

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

### VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

MLF0044846

EX. 33-15

44.   Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.   Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.   Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.   Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.   Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.   Attorneys' fees, litigation expense, and costs of suit.[2]

5.   Interest at the legal rate from the date of the filing of this action.

6.   For such other and further relief as the Court deems proper.

Dated: February 26, 2015                          MOORE LAW FIRM, P.C.

                                        /s/ Tanya E. Moore
                                        Tanya E. Moore
                                        Attorneys for Plaintiff
                                        Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Karakashian, et al.*
Complaint

Page 8

MLF0044847

EX. 33-16

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: February 26, 2015          /s/ Ronald Moore
                                  Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                  /s/ Tanya E. Moore
                                  Tanya E. Moore, Attorney for
                                  Plaintiff, Ronald Moore

MLF0044848

EX. 33-17

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 2/26/15

_Ronald Moore_
Ronald Moore

_Moore v. Karakashian (Dollar Place)_

MLF0044881

EX. 33-18