# Exhibit 34

EL TORO CAFE
3404 N CEDAR AVE
FRESNO CA 93726
559-225-7724

Terminal ID: 00798052          0001
4/24/14                       7:54 PM
SERVER #: 1

MASTERCARD
ACCT #: ..........-7845
CREDIT SALE
UID: 41143.213054    REF #: 2559
BATCH #: 55        AUTH #: 31741

AMOUNT                    $41.07

TIP         $_____

TOTAL       $47.00

APPROVED

CUSTOMER COPY

MLF0040286

EX. 34-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

~~ACCIDENT~~

~~6928 E Dunne Ave (Facility) Morgan Hill, CA~~

1. What is the name of the Facility? El Toro Cafe

2. When did you visit the Facility? 4/24/14 (Date) 7:50 (Time)

3. What is the address of the Facility? 3404 N. Cedar Ave. Fresno CA

4. Was this your first visit to the Facility? NO

5. How many times have you visited the Facility? ? If more than one visit, please list the date and time if you know it. ?

6. What was the purpose of your visit? Dinner

7. Who accompanied you to the Facility? Grandson Ronny And Wife Lynn

8. What car did you drive to the Facility? Mine

9. Did you drive yourself of did you get a ride from someone else? I Drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In D/P parking

11. Was it difficult for you to park there? Yes getting out of vehicle I'm in ditch

12. Why? Cracks in access isle and sidewalk

13. How did you unload from your vehicle? Rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? Grandson Ronny

16. What problems did you encounter transferring onto your wheelchair?

Ditch in pavement and road all cracked

17. Which way did you go from the parking to the entrance of the Facility? Straight to door

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

Yes brick wall to building, door opened outward had to wait for people to pass to get to other side and enter building

19. Did you encounter any problems opening the door? Describe why. Yes

MLF0040282

20. Did you have any problems inside the Facility? Describe. Yes had to go all the way around restaurant to go in restroom. Crack in floor were threshold should be. door to restrooms heavy and restroom door heavy

21. What did you purchase (or what meal did you have there). Describe: 2 plates of nachos and a dinner plate

22. Have you used the restroom at the Facility? Yes

23. Why did you need to use the restroom? had to go

24. Did you use the sink? Yes

25. Any problems? first door to restroom had to open with my cane

26. Did you use the urinal? No

27. Did you use the toilet? Yes

28. Did you use the toilet paper? Yes

29. Did you use paper towels? Yes

30. Did you use the soap dispenser? Yes

31. Did you have any problem maneuvering inside the restroom? Yes Small

32. Where did you sit? in table in corner

33. Was there any seating provided inside the Facility? Yes

34. Was it wheelchair accessible? no

35. Where you comfortable at the table? no couldn't scoot all the way up because of table legs

36. Did you use the counter to pay for purchase? Yes

37. Which counter did you use? Only one

38. Was the counter accessible? No to high grandson signed

39. Which way did you go after you left the Facility? out door to car

40. Any problems getting back to your vehicle? Yes road & rocked and ditch

MLF0040283

EX. 34-4

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

41. Any problems transferring from your wheelchair to your vehicle? *No Grandson brought Me to door and put chair in car*

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0040284

EX. 34-5



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

May 30, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE: ADAI No.   01998
. El Toro Café *(3404 N. Cedar Ave, Fresno, 93726)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0040285

**BARRIER MEMO**

**ADAI No. :**    01998

**Case Name:**    Moore v. El Toro Cafe

**Address:**    3404 N. Cedar Ave, Fresno, 93726

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Cracks in Pavement | On the way to the entrance of the facility, the parking lot pavement was littered with cracks which caused the client great difficulty trying to maneuver his wheelchair over them safely. | Yes |
| Ditch and Cracks in Access Aisle | The access aisle for the designated handicapped parking spot was severely cracked and had a small ditch. These two elements combined made it quite difficult for the client to transfer into his chair safely, and to also move his chair along easily once in his wheelchair. | Yes |
| Small Door Frame | The entrance to the facility was very small and the client had to move out of the way for people to exit before he could enter. | Yes, narrow brick entrance and sidewall with the outward opening heavy door. |
| Large Crack instead of Threshold at Bathroom Door | The metal threshold at the entrance of the restroom was missing and in its place was a very large crack. This created a huge challenge for the client because he could not safely and easily move his chair over it. | No, now there is continuous tile and no threshold. |
| Heavy Restroom Door | The door to the restroom was so heavy that the client had to use his cane to push it open. | No, the door did not seem to heavy. |
| Small Restroom | The restroom was small and therefore was difficult to maneuver in easily. | No, the room was over 6' by 8' although the trashcan by the door could be an inconvenience. |
| Uncomfortable Table | The table in the corner of the facility at which the client dined was inaccessible. Because the legs of the table were placed in such a way, the client was not able to wheel himself up to the table. Due to this, the client spent the majority of his meal feeling uncomfortable. | The corner booths are not accessible compliant tables. |

1

MLF0040141

EX. 34-7

| High Counter | The client could not reach the counter to pay for his meal, so his grandson made the transaction with the client's credit card and signed the receipt. | Yes, The register counter is too high. Sidenote, waitresses do offer to handle bill at table. |
| --- | --- | --- |
|  |  |  |

MLF0040142

EX. 34-8



**MOORE**
**LAW FIRM, P.C.**

February 4, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

     Re:    ADAI No.    01998
             El Toro Café (3404 N. Cedar Ave, Fresno, 93726)

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

Tanya Moore

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0040271

EX. 34-9

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>    Plaintiff,<br><br>vs.<br><br>EL TORO PARTNERS, INC. dba EL TORO CAFE; KEARNEYS' RENTALS, LLC;<br><br>    Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.    This is a civil rights action by plaintiff Ronald Moore ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

El Toro Cafe
3404 North Cedar Avenue
Fresno, CA 93726
(hereafter "the Facility")

2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against EL TORO PARTNERS, INC. dba EL TORO CAFE; and KEARNEYS' RENTALS, LLC (hereinafter collectively referred to as "Defendants"), pursuant to the

MLF0040272

EX. 34-10

1   Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related

2   California statutes.

## II.   JURISDICTION

3

4       3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

5   claims.

6       4.      Supplemental jurisdiction for claims brought under parallel California law –

7   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

8       5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

9

10      6.      All actions complained of herein take place within the jurisdiction of the United

11  States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

12  § 1391(b), (c).

## IV.   PARTIES

13

14      7.      Defendants own, operate, and/or lease the Facility, and consist of a person (or

15  persons), firm, and/or corporation.

16      8.      Plaintiff is substantially limited in his ability to walk, and must use a wheelchair

17  for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable

18  California and United States laws, and a member of the public whose rights are protected by

19  these laws.

## V.   FACTS

20

21      9.      The Facility is open to the public, intended for non-residential use, and its

22  operation affects commerce. The Facility is therefore a public accommodation as defined by

23  applicable state and federal laws.

24      10.     Plaintiff visited the Facility and encountered barriers (both physical and

25  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

26  goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

27  encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

28  about April 24, 2014:

*Moore v. El Toro Partners, Inc., et al.*
Complaint

MLF0040273

EX. 34-11

a)    Plaintiff parked in a designated accessible parking stall at the Facility. The surface of the adjacent access aisle was cracked and excessively sloped, which made it difficult for Plaintiff to transfer from his vehicle to his wheelchair and maneuver along the access aisle toward the sidewalk.

b)    The building entrance was improperly configured and lacked proper maneuvering clearances, which made it difficult for Plaintiff to enter the restaurant. Other customers were walking through the entrance portico and Plaintiff had to move out of the way to create enough room for them to get by, which was embarrassing.

c)    Plaintiff could not locate an accessible table and was seated at a table that was improperly configured, with legs underneath that prevented him from pulling his wheelchair close to the table. As a result, he had to sit at an uncomfortable distance from the table for the duration of his meal.

d)    The doorway from the dining room to the hallway leading to the restrooms was obstructed by a booth divider, which made it difficult for Plaintiff to get close enough to open the door. He had to push the door open with his cane and then maneuver around the tight turn into the hallway.

e)    Staff did not offer to take Plaintiff's payment at his table, and he had to go to the transaction counter to pay for his meal. The counter was too high for him to reach, so his grandson had to hand the credit card to the cashier and sign the receipt.

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

MLF0040274

EX. 34-12

12.     Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.     Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14.     At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

15.     Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants' discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

//

*Moore v. El Toro Partners, Inc., et al.*
Complaint

MLF0040275

EX. 34-13

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>. § 12182(b)(2)(A)(v).

21.   Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.   In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.   Plaintiff alleges on information and belief that the Facility was designed and

*Moore v. El Toro Partners, Inc., et al.*
Complaint

MLF0040276

EX. 34-14

1  constructed (or both) after January 26, 1992 – independently triggering access requirements
2  under Title III of the ADA.

3      24.    The ADA also prohibits designing and constructing facilities for first occupancy
4  after January 16, 1993, that aren't readily accessible to, and usable by, individuals with
5  disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

6      25.    Here, Defendants violated the ADA by designing and constructing (or both) the
7  Facility in a manner that was not readily accessible to the physically disabled public –
8  including Plaintiff – when it was structurally practical to do so.[1]

Failure to Make an Altered Facility Accessible

10      26.    Plaintiff alleges on information and belief that the Facility was modified after
11  January 26, 1992, independently triggering access requirements under the ADA.

12      27.    The ADA also requires that facilities altered in a manner that affects (or could
13  affect) its usability must be made readily accessible to individuals with disabilities to the
14  maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's
15  primary function also requires making the paths of travel, bathrooms, telephones, and drinking
16  fountains serving that area accessible to the maximum extent feasible. Id.

17      28.    Here, Defendants altered the Facility in a manner that violated the ADA and
18  was not readily accessible to the physically disabled public – including Plaintiff – to the
19  maximum extent feasible.

Failure to Modify Existing Policies and Procedures

21      29.    The ADA also requires reasonable modifications in policies, practices, or
22  procedures, when necessary to afford such goods, services, facilities, or accommodations to
23  individuals with disabilities, unless the entity can demonstrate that making such modifications
24  would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

25
26
27
28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. El Toro Partners, Inc., et al.*
Complaint

MLF0040277

30.    Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.    SECOND CLAIM

### Unruh Act

33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.    California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.    California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.    California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.    Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.    These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

MLF0040278

EX. 34-16

1    ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

2    § 52(a).

### VIII. THIRD CLAIM

**Denial of Full and Equal Access to Public Facilities**

5    41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

6    this claim.

7    42.    Health and Safety Code § 19955(a) states, in part, that: California public

8    accommodations or facilities (built with private funds) shall adhere to the provisions of

9    Government Code § 4450.

10    43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-

11    exempt) public accommodation constructed prior to July 1, 1970, which is altered or

12    structurally repaired, is required to comply with this chapter.

13    44.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or

14    repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

15    § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

16    45.    Defendants' non-compliance with these requirements at the Facility aggrieved

17    (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

18    Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.    PRAYER FOR RELIEF

20    WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

21    1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

22    2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh

23          Act damages.

24    3.    Statutory minimum damages under section 52(a) of the California Civil Code

25          according to proof.

26    4.    Attorneys' fees, litigation expense, and costs of suit.[2]

27    5.    Interest at the legal rate from the date of the filing of this action.

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. El Toro Partners, Inc., et al.*
Complaint

MLF0040279

EX. 34-17

6.      For such other and further relief as the Court deems proper.

Dated: February 4, 2015                          MOORE LAW FIRM, P.C.

                                                 /s/ Tanya E. Moore
                                                 Tanya E. Moore
                                                 Attorneys for Plaintiff
                                                 Ronald Moore

MLF0040280

EX. 34-18

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:   February 4, 2015                    */s/  Ronald Moore*
                                             Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                             */s/ Tanya E. Moore*
                                             Tanya E. Moore, Attorney for
                                             Plaintiff, Ronald Moore

*Moore v. El Toro Partners, Inc., et al.*
*Verification*

MLF0040281

EX. 34-19

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 2/4/15                        _Ronald Moore_
                                     Ronald Moore

*Moore v. El Toro Partners, Inc. (El Toro Café)*

MLF0040287

**Exhibit 35**

389+ 420 to
99 + Fax + conv to
99+ Fax + conv to

---

8

1 — 589 — 800 -1284

Singles

MLF0032630

EX. 35-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADAI No.
(Facility)

1. What is the name of the Facility? _Shop and save_

2. When did you visit the Facility? _7/30/13_ (Date) _1:15 pm_ (Time)

3. What is the address of the Facility? _3052 E Belmont Ave_

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _two_ If more than one visit, please list the date and time if you know it. _?_

6. What was the purpose of your visit? _Drinks and smokes_

7. Who accompanied you to the Facility? _Grandson_

8. What car did you drive to the Facility? _mine_

9. Did you drive yourself of did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _IN D/P spot_

11. Was it difficult for you to park there? _yes No sign's_ _Did not want to give me Recipte thord him_

12. Why? _writin me one and put Name and # on it_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _Grandson Ronny_

16. What problems did you encounter transferring onto your wheelchair?

_Pavement cracked up_

17. Which way did you go from the parking to the entrance of the Facility? _To Access Issle to Ramp to Left_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

_Ramp steep and came out into street and Access Issle_

19. Did you encounter any problems opening the door? Describe why. _No_

20. Did you have any problems inside the Facility? Describe. _yes_

MLF0032615

EX. 35-3

_Issue were to small to get Down._
_Slush And Fountain Drinks out of Reach_

21. What did you purchase (or what meal did you have there). Describe: _Smokes and Drinks_

_____

22. Have you used the restroom at the Facility? _No_

23. Why did you need to use the restroom? _____

24. Did you use the sink? _____

25. Any problems? _____

26. Did you use the urinal? _____

27. Did you use the toilet? _____

28. Did you use the toilet paper? _____

29. Did you use paper towels? _____

30. Did you use the soap dispenser? _____

31. Did you have any problem maneuvering inside the restroom? _____

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _____

34. Was it wheelchair accessible? _____

35. Where you comfortable at the table? _____

36. Did you use the counter to pay for purchase? _Yes_

37. Which counter did you use? _only one_

38. Was the counter accessible? _No to High And Far Away_

39. Which way did you go after you left the Facility? _Back out to Ramp And to my car_

40. Any problems getting back to your vehicle? _yes Some Body put there Bike in way on polls they had out side_

41. Any problems transferring from your wheelchair to your vehicle? _Just pavement_

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0032616

EX. 35-4

ADAI No. :     01720

Case Name:     Moore v. Shop & Save

Address:     3052 E. Belmont Ave, Fresno CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Designated parking space not clearly defined | Plaintiff had trouble finding the designated accessible parking space due to the absence of a sign to mark the spot. | Yes, very poorly designated (faded blue on the ground only). |
| Pavement cracked | The pavement at the designated accessible space was cracked and uneven. | Yes, very cracked and very uneven. |
| Built-up ramp | The provided ramp next to the accessible parking spot was too steep. It is a built-up curb ramp. | Correct, and very narrow |
| Aisles narrow | Plaintiff could not go down the aisles and browse the shelves due to how narrow they were. | Yes and also no way to make a uturn at the end of the aisles. |
| Couldn't reach slushies and fountain drinks | The slushies and fountain drinks were too high for Plaintiff to reach. | Yes, and slushies are also in the corner not accessible to wc bc narrow and cul-de-sac. |
| Counter high and far away | The transaction counter was high and lacked proper approach clearances so it was hard for Plaintiff to reach over to conduct his transaction. | Yes. |
| Exterior route obstructed by bike stored at bike rack | When Plaintiff was returning to his vehicle, there was a bicycle stored at the bike rack, which obstructed the route of travel. | I guess. Everything possible. |

MLF0032617

EX. 35-5

**BARRIER MEMO**

ADAI No. :     01720

Case Name:     Moore v. Shop & Save

Address:     3052 E. Belmont Ave, Fresno CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Designated parking space not clearly defined | Plaintiff had trouble finding the designated accessible parking space due to the absence of a sign to mark the spot. | Yes, very poorly designated (faded blue on the ground only). |
| Pavement cracked | The pavement at the designated accessible space was cracked and uneven. | Yes, very cracked and very uneven. |
| Built-up ramp | The provided ramp next to the accessible parking spot was too steep. It is a built-up curb ramp. | Correct, and very narrow |
| Aisles narrow | Plaintiff could not go down the aisles and browse the shelves due to how narrow they were. | Yes and also no way to make a uturn at the end of the aisles. |
| Couldn't reach slushies and fountain drinks | The slushies and fountain drinks were too high for Plaintiff to reach. | Yes, and slushies are also in the corner not accessible to wc bc narrow and cul-de-sac. |
| Counter high and far away | The transaction counter was high and lacked proper approach clearances so it was hard for Plaintiff to reach over to conduct his transaction. | Yes. |
| Exterior route obstructed by bike stored at bike rack | When Plaintiff was returning to his vehicle, there was a bicycle stored at the bike rack, which obstructed the route of travel. | I guess. Everything possible. |

1

MLF0032618

EX. 35-6



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

May 16, 2014

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

> RE:   ADAI No.    01720
>     **Elia (Shop N Save Liquor)**
>     *3052 E. Belmont Ave, Fresno CA*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure: Fee Agreement

MLF0056276

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

     I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Elia (Shop N Save Liquor).**

DATE: _____

                _____
                CLIENT'S SIGNATURE- RONALD MOORE

                _____
                ADDRESS

                _____
                CITY

                _____
                TELEPHONE

DATE:_____

                MOORE LAW FIRM, PC
                ATTORNEY FOR RONALD MOORE

MLF0056277

EX. 35-8

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

---

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

THIS AGREEMENT, made this _____ at **San Jose, CA,** by and between <u>Ronald Moore</u>, hereinafter designated as "Client," and **the Moore Law Firm, PC,** hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case against ***Elia (Shop N Save Liquor)*** and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

MLF0056278

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0056279

EX. 35-10

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)     Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)     Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)     In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)     In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0056280

EX. 35-11

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u> .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0056281

EX. 35-12

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0056282

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial          _____Initial

MLF0056283

DATE:_____                     _____
                                           CLIENT'S SIGNATURE

DATE:_____                     _____
                                           CLIENT'S NAME

                                           _____
                                           ADDRESS

                                           _____
                                           CITY

                                           _____
                                           TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____                     MOORE LAW FIRM, PC

                                           _____
                                           ATTORNEY FOR RONALD MOORE

MLF0056284

EX. 35-15

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>        Plaintiff,<br><br>    vs.<br><br>ALLEN ELIA, Trustee of the ALLEN ELIA DECLARATION OF TRUST established March 18, 2002; UPDESH SINGH GILL dba SHOP N SAVE LIQUOR;<br><br>        Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Shop N Save Liquor
> 3052 East Belmont Avenue
> Fresno, CA 93701
> (hereafter "the Facility")

2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against ALLEN ELIA, Trustee of the ALLEN ELIA DECLARATION OF TRUST established March 18, 2002; and UPDESH SINGH GILL dba SHOP N SAVE LIQUOR

*Moore v. Elia, et al.*
Complaint

MLF0032621

1   (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with

2   Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.   JURISDICTION

4        3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

5   claims.

6        4.    Supplemental jurisdiction for claims brought under parallel California law –

7   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

8        5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

10        6.    All actions complained of herein take place within the jurisdiction of the United

11   States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

12   § 1391(b), (c).

## IV.   PARTIES

14        7.    Defendants own, operate, and/or lease the Facility, and consist of a person (or

15   persons), firm, and/or corporation.

16        8.    Plaintiff requires the use of a wheelchair when traveling about in public.

17   Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

18   United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

20        9.    The Facility is a public accommodation facility, open to the public, which is

21   intended for nonresidential use and whose operation affects commerce.

22        10.    Plaintiff visited the Facility and encountered barriers (both physical and

23   intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

24   goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

25   encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

26   about July 30, 2013:

27             a)    Plaintiff had difficulty locating the designated accessible parking space

28                  because it lacked proper signage and the pavement markings were faded.

MLF0032622

EX. 35-17

b)   The pavement at the designated accessible parking space was cracked and uneven, which made it difficult for Plaintiff to transfer between his vehicle and his wheelchair.

c)   The ramp from the parking lot to the sidewalk in front of the entrance to the Facility was an improperly configured built-up curb ramp, and was excessively sloped. Plaintiff had difficulty maneuvering up and down the ramp and feared that his wheelchair would roll off the edges of the ramp.

d)   The aisles inside the Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver around the store.

e)   Plaintiff wanted to purchase a drink at the Facility, but the self-serve soda fountain and slushy machine controls were positioned out of Plaintiff's reach. Plaintiff had to ask his grandson for help to get a drink.

f)   The transaction counter was high and lacked proper approach clearances, making it difficult for Plaintiff to reach the counter to conduct his transaction.

g)   When Plaintiff was returning to his vehicle, someone had stored a bicycle against the bollards adjacent to the ramp, which obstructed the ramp and made it difficult for Plaintiff to use.

11.   The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.   Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

MLF0032623

EX. 35-18

1   once the barriers are removed.

2       13.    Defendants knew, or should have known, that these elements and areas of the
3   Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to
4   the physically disabled. Moreover, Defendants have the financial resources to remove these
5   barriers from the Facility (without much difficulty or expense), and make the Facility
6   accessible to the physically disabled. To date, however, Defendants refuse to either remove
7   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

8       14.    At all relevant times, Defendants have possessed and enjoyed sufficient control
9   and authority to modify the Facility to remove impediments to wheelchair access and to
10  comply with the 2010 Standards for Accessible Design and the California Code of Regulations
11  Title 24. Defendants have not removed such impediments and have not modified the Facility to
12  conform to accessibility standards. Defendants have intentionally maintained the Facility in its
13  current condition and have intentionally refrained from altering the Facility so that it complies
14  with the accessibility standards.

15      15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is
16  so obvious as to establish Defendants' discriminatory intent. On information and belief,
17  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere
18  to relevant building standards; disregard for the building plans and permits issued for the
19  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at
20  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'
21  property continues to exist in its non-compliant state. Plaintiff further alleges, on information
22  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the
23  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

24              **VI.    FIRST CLAIM**

25          **Americans with Disabilities Act of 1990**

26          <u>Denial of "Full and Equal" Enjoyment and Use</u>

27      16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for
28  this claim.

*Moore v. Elia, et al.*
Complaint

MLF0032624

EX. 35-19

17.     Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19.     The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.     When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>. § 12182(b)(2)(A)(v).

21.     Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.     In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.     Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.     The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

MLF0032625

EX. 35-20

25.   Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

26.   Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.   Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

29.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.   Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.   Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.   Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Elia, et al.*
Complaint

MLF0032626

EX. 35-21

1  violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.   SECOND CLAIM

### Unruh Act

33.   Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.   California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.   Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.   Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.   Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.   Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.   Health and Safety Code § 19955(a) states, in part, that: California public

*Moore v. Elia, et al.*
Complaint

MLF0032627

EX. 35-22

1   accommodations or facilities (built with private funds) shall adhere to the provisions of

2   Government Code § 4450.

3       43.   Health and Safety Code § 19959 states, in part, that: Every existing (non-

4   exempt) public accommodation constructed prior to July 1, 1970, which is altered or

5   structurally repaired, is required to comply with this chapter.

6       44.   Plaintiff alleges the Facility is a public accommodation constructed, altered, or

7   repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

8   § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

9       45.   Defendants' non-compliance with these requirements at the Facility aggrieved

10  (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

11  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

12  **IX.    PRAYER FOR RELIEF**

13      WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

14      1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

15      2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh

16          Act damages.

17      3.    Statutory minimum damages under section 52(a) of the California Civil Code

18          according to proof.

19      4.    Attorneys' fees, litigation expense, and costs of suit.[2]

20      5.    Interest at the legal rate from the date of the filing of this action.

21      6.    For such other and further relief as the Court deems proper.

22

23  Dated: May 13, 2014          MOORE LAW FIRM, P.C.

24                          */s/ Tanya E. Moore*

25                          Tanya E. Moore

26                          Attorneys for Plaintiff
                            Ronald Moore

27

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Elia, et al.*
Complaint

MLF0032628

EX. 35-23

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated: May 13, 2014          /s/ Ronald Moore
                             Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                             /s/ Tanya E. Moore
                             Tanya E. Moore, Attorney for
                             Plaintiff, Ronald Moore

*Moore v. Elia, et al.*
*Verification*

MLF0032629

EX. 35-24

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 5/13/14

Ronald Moore

*Moore v. Elia, et al.*
*Verification*

MLF0032639

EX. 35-25

# Exhibit 36

```
            ELITE VAPOR SHOP
            5771 N PALM AVE
            FRESNO, CA 93704
05/22/2014                      18:24 17
MID: 000000003801992        TID: 05787515

              CREDIT CARD
                MC SALE

CARD #              XXXXXXXXXXXX7245
Chip Card:          MasterCard
Chip Card AID:      A0000000041010
ATC:                0006
TC:                 DDFBACBAFE7FD992
INVOICE             0016
SEQ #:              0016
Batch #:            000010
Approval Code:      65588Z
Entry Method:       Chip Read
Mode:               Issuer

SALE AMOUNT             $24.00


        Thank you for your business!

             CUSTOMER COPY
```

MLF0044063

EX. 36-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? Elite Vape Shop

2. What is the address of the Facility? 5771 N. Palm Ave. Fresno CA

3. When did you visit the Facility? 5/22/14 (Date) 6:20 (Time)

4. Was this your first visit to the Facility? Yes

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. _____

6. What was the purpose of your visit? Vape juice

7. Who accompanied you to the Facility? Grandson Ronney and Jhonny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself or did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In d/p parking two stores down fron shop

11. Was it difficult for you to park there? If so, why? Yes, no signs

12. How did you unload from your vehicle? Rear

13. What side of the vehicle did you unload from? Driver or passenger? driver

14. Did anyone help you to transfer onto your wheelchair? Who? Jhonny

15. Did you encounter any problems transferring onto your wheelchair? Describe. Cracks in stree also street uneven

16. Which way did you go from the parking to the entrance of the Facility? two stores down fron shop

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. ramp does not line up with sidewalk. Crack between sidewalk and ramp

18. Did you encounter any problems opening the door? Describe. bricks in way used cane to get to door. was very heavy. Guy in place tried to hold open door while it was shut on me

19. What did you purchase (or what meal did you have there)? Vape juice

20. Did you need to use the restroom while you were at the Facility? Why? No restroom

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0044060

EX. 36-3

## PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: N/A

Toilet: N/A

Urinal: N/A

Toilet paper: N/A

Toilet seat covers: N/A

Paper towels/hand dryer: N/A

Soap dispenser: N/A

Other: N/A

22. Did you have any problem maneuvering inside the restroom? N/A

23. Was there any seating provided inside the Facility? No

24. Were you able to sit comfortably at the table? If not, why? No tables

25. Did you use the counter to pay for purchase? Which one? Yes only one

26. Did you pay with cash or credit card? Credit

27. Was the counter accessible? If not, describe: No way to high

28. Did you have any other problems inside the Facility? Describe. Could not see juices on the higher shelves

29. Which way did you go after you left the Facility? Out door to ramp

30. Any problems getting back to your vehicle? ramp steep

31. Any problems transferring from your wheelchair to your vehicle? No Jhonny brought Me to the door and put chair in car

32. Any additional information you believe would assist us in evaluating this inquiry?

hard to get threw door, Canter way to high

MLF0044061

EX. 36-4



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

July 2, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

> **RE:** **ADAI No.** **02054**
> **Elite Vapor Shop** *(5771 N Palm Ave, Fresno, CA)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0044062

EX. 36-5

**BARRIER MEMO**

**ADAI No. :**   02054

**Case Name:**   Moore v. Elite Vapor Shop

**Address:**   5771 N Palm Ave, Fresno, CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No Signs for Handicap Parking | The plaintiff parked in the designated handicap parking spot two stores down from the facility in question. It was difficult to locate, however, because there were no signs indicating its whereabouts. | |
| Cracked and Uneven Pavement | The pavement from the parking space to the entrance of the facility was severely cracked, making it difficult for the plaintiff to wheel himself along safely. | |
| Off-Centered and Steep Ramp | The ramp leading to the facility was off-centered from the sidewalk, which forced the plaintiff to maneuver himself awkwardly in order to get up onto the sidewalk. In addition, the ramp was steep which made it even harder for the plaintiff to wheel himself up. | |
| Crack between Sidewalk and Ramp | The transition between the sidewalk and the ramp created a large crack which caused the plaintiff's wheel chair to teeter slightly. | |
| Door Recessed into Bricks on Building | The outside of the building was covered with bricks which made the entrance to the facility seem as though it was recessed deep into the building. This made it difficult for the plaintiff to wheel himself up to the entrance and open the door. So the plaintiff hooked the door with his cane and pulled it open. | |
| Heavy Door | The door to the entrance of the facility was very heavy for the plaintiff to hold open as he wheeled himself inside, but luckily, another individual saw him struggling and held the door open for him. If he was not there to help, then the door would have shut on the plaintiff. | |
| High Counter | The counter in the facility was too high for the plaintiff to reach so the plaintiff's grandson made the transaction. | |
| High Shelves – Difficult to See Merchandise | The plaintiff wanted to see the merchandise on the higher shelves but was unable to because the items were placed too high. So, the plaintiff asked his grandson to tell him what was on those shelves. | |

1

MLF0044048

EX. 36-6

ADAI No. :      02054

Case Name:      Moore v. Elite Vapor Shop

Address:       5771 N Palm Ave, Fresno, CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No Signs for Handicap Parking | The plaintiff parked in the designated handicap parking spot two stores down from the facility in question. It was difficult to locate, however, because there were no signs indicating its whereabouts. | |
| Cracked and Uneven Pavement | The pavement from the parking space to the entrance of the facility was severely cracked, making it difficult for the plaintiff to wheel himself along safely. | |
| Off-Centered and Steep Ramp | The ramp leading to the facility was off-centered from the sidewalk, which forced the plaintiff to maneuver himself awkwardly in order to get up onto the sidewalk. In addition, the ramp was steep which made it even harder for the plaintiff to wheel himself up. | |
| Crack between Sidewalk and Ramp | The transition between the sidewalk and the ramp created a large crack which caused the plaintiff's wheel chair to teeter slightly. | |
| Door Recessed into Bricks on Building | The outside of the building was covered with bricks which made the entrance to the facility seem as though it was recessed deep into the building. This made it difficult for the plaintiff to wheel himself up to the entrance and open the door. So the plaintiff hooked the door with his cane and pulled it open. | |
| Heavy Door | The door to the entrance of the facility was very heavy for the plaintiff to hold open as he wheeled himself inside, but luckily, another individual saw him struggling and held the door open for him. If he was not there to help, then the door would have shut on the plaintiff. | |
| High Counter | The counter in the facility was too high for the plaintiff to reach so the plaintiff's grandson made the transaction. | |
| High Shelves – Difficult to See Merchandise | The plaintiff wanted to see the merchandise on the higher shelves but was unable to because the items were placed too high. So, the plaintiff asked his grandson to tell him what was on those shelves. | |

1

MLF0044049



# MOORE
## LAW FIRM, P.C.

March 2, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

Re:  ADAI No.    02054
     Elite Vapor Shop (5771 N Palm Ave, Fresno, CA)

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0044050

EX. 36-8

1 │ Tanya E. Moore, SBN 206683
2 │ MOORE LAW FIRM, P.C.
  │ 332 North Second Street
3 │ San Jose, California 95112
  │ Telephone (408) 298-2000
4 │ Facsimile (408) 298-6046
  │ E-mail: tanya@moorelawfirm.com
5 │ Attorneys for Plaintiff
  │ Ronald Moore
6 │
7 │
8 │              **UNITED STATES DISTRICT COURT**
9 │              **EASTERN DISTRICT OF CALIFORNIA**
10 │
11 │ RONALD MOORE,                              )  No.
12 │              Plaintiff,                     )  **COMPLAINT ASSERTING DENIAL OF**
   │                                            )  **RIGHT OF ACCESS UNDER**
13 │        vs.                                  )  **AMERICANS WITH DISABILITIES ACT**
14 │ ELITE VAPOR SHOP, INC., a California         )  **FOR INJUNCTIVE RELIEF,**
   │ corporation; BULLARD PALM INVESTORS,         )  **DECLARATORY RELIEF, DAMAGES,**
15 │ a California limited partnership;            )  **ATTORNEYS' FEES AND COSTS (ADA)**
16 │                                            )
   │              Defendants.                    )
17 │                                            )
18 │                                            )
19 │ _____)
20 │                      **I. SUMMARY**
21 │        1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for
22 │ discrimination at the building, structure, facility, complex, property, land, development, and/or
23 │ surrounding business complex known as:
24 │              Elite Vapor Shop
25 │              5771 North Palm Avenue
   │              Fresno, CA 93704
26 │              (hereafter "the Facility")
27 │        2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and
28 │ costs, against ELITE VAPOR SHOP, INC., a California corporation; and BULLARD PALM

*Moore v. Elite Vapor Shop, Inc., et al.*
Complaint
                              Page 1

MLF0044051

INVESTORS, a California limited partnership (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.   JURISDICTION

3.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.     Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.     Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

6.     All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.   PARTIES

7.     Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.     Plaintiff is substantially limited in his ability to walk, and must use a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

9.     The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

10.     Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

*Moore v. Elite Vapor Shop, Inc., et al.*
Complaint
                                    Page 2

MLF0044052

about May 22, 2014:

      a)    It was difficult for Plaintiff to locate the designated accessible parking stall closest to the entrance of the Facility because the stall lacked proper identifying signage.

      b)    The Facility entrance was improperly configured, with a heavy door recessed into a brick wall that obstructed the maneuvering clearance. It was hard for Plaintiff to approach the door to open it, and to hold it open while wheeling himself through the doorway. Plaintiff had to hook the door with his cane in order to pull it open, and it began to close on him while he was trying to maneuver through. Another individual who was inside the store saw Plaintiff struggling and came over to hold the door open, which was embarrassing.

      c)    Plaintiff was unable to see the merchandise that was displayed on high shelves in the Facility, and had to ask his grandson to describe the items to him so that he could make his selection.

      d)    The transaction counter was too high for Plaintiff to be able to make his purchase, so Plaintiff's grandson had to conduct the transaction for him.

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.    Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.    Defendants knew, or should have known, that these elements and areas of the

MLF0044053

EX. 36-11

1  Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to
2  the physically disabled. Moreover, Defendants have the financial resources to remove these
3  barriers from the Facility (without much difficulty or expense), and make the Facility
4  accessible to the physically disabled. To date, however, Defendants refuse to either remove
5  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

6      14.  At all relevant times, Defendants have possessed and enjoyed sufficient control
7  and authority to modify the Facility to remove impediments to wheelchair access and to
8  comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible
9  Design. Defendants have not removed such impediments and have not modified the Facility to
10  conform to accessibility standards. Defendants have intentionally maintained the Facility in its
11  current condition and have intentionally refrained from altering the Facility so that it complies
12  with the accessibility standards.

13      15.  Plaintiff further alleges that the (continued) presence of barriers at the Facility is
14  so obvious as to establish Defendants' discriminatory intent. On information and belief,
15  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere
16  to relevant building standards; disregard for the building plans and permits issued for the
17  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at
18  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'
19  property continues to exist in its non-compliant state. Plaintiff further alleges, on information
20  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the
21  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

22             **VI.   FIRST CLAIM**
23         **Americans with Disabilities Act of 1990**
24         <u>Denial of "Full and Equal" Enjoyment and Use</u>

25      16.  Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for
26  this claim.

27      17.  Title III of the ADA holds as a "general rule" that no individual shall be
28  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

1   goods, services, facilities, privileges, and accommodations offered by any person who owns,

2   operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

3       18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

4   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

5   Facility during each visit and each incident of deterrence.

6                  Failure to Remove Architectural Barriers in an Existing Facility

7       19.    The ADA specifically prohibits failing to remove architectural barriers, which

8   are structural in nature, in existing facilities where such removal is readily achievable. 42

9   U.S.C. § 12182(b)(2)(A)(iv).

10      20.    When an entity can demonstrate that removal of a barrier is not readily

11  achievable, a failure to make goods, services, facilities, or accommodations available through

12  alternative methods is also specifically prohibited if these methods are readily achievable. Id.

13  § 12182(b)(2)(A)(v).

14      21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

15  barriers at the Facility without much difficulty or expense, and that Defendants violated the

16  ADA by failing to remove those barriers, when it was readily achievable to do so.

17      22.    In the alternative, if it was not "readily achievable" for Defendants to remove

18  the Facility's barriers, then Defendants violated the ADA by failing to make the required

19  services available through alternative methods, which are readily achievable.

20                  Failure to Design and Construct an Accessible Facility

21      23.    Plaintiff alleges on information and belief that the Facility was designed and

22  constructed (or both) after January 26, 1992 – independently triggering access requirements

23  under Title III of the ADA.

24      24.    The ADA also prohibits designing and constructing facilities for first occupancy

25  after January 16, 1993, that aren't readily accessible to, and usable by, individuals with

26  disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

27      25.    Here, Defendants violated the ADA by designing and constructing (or both) the

28  Facility in a manner that was not readily accessible to the physically disabled public –

MLF0044055

EX. 36-13

1  including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Elite Vapor Shop, Inc., et al.*
Complaint

Page 6

MLF0044056

EX. 36-14

1

### VII.   SECOND CLAIM

2

### Unruh Act

3      33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

4    this claim.

5      34.    California Civil Code § 51 states, in part, that: All persons within the

6    jurisdiction of this state are entitled to the full and equal accommodations, advantages,

7    facilities, privileges, or services in all business establishments of every kind whatsoever.

8      35.    California Civil Code § 51.5 also states, in part that: No business establishment

9    of any kind whatsoever shall discriminate against any person in this state because of the

10   disability of the person.

11      36.    California Civil Code § 51(f) specifically incorporates (by reference) an

12   individual's rights under the ADA into the Unruh Act.

13      37.    Defendants' aforementioned acts and omissions denied the physically disabled

14   public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges

15   and services in a business establishment (because of their physical disability).

16      38.    These acts and omissions (including the ones that violate the ADA) denied,

17   aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

18      39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

19   minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

20      40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

21   ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

22   § 52(a).

23

### VIII. THIRD CLAIM

24

### Denial of Full and Equal Access to Public Facilities

25      41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

26   this claim.

27      42.    Health and Safety Code § 19955(a) states, in part, that: California public

28   accommodations or facilities (built with private funds) shall adhere to the provisions of

MLF0044057

EX. 36-15

1   Government Code § 4450.

2       43.     Health and Safety Code § 19959 states, in part, that: Every existing (non-

3   exempt) public accommodation constructed prior to July 1, 1970, which is altered or

4   structurally repaired, is required to comply with this chapter.

5       44.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or

6   repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

7   § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

8       45.     Defendants' non-compliance with these requirements at the Facility aggrieved

9   (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

10  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.   PRAYER FOR RELIEF

12      WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

13      1.   Injunctive relief, preventive relief, or any other relief the Court deems proper.

14      2.   Declaratory relief that Defendants violated the ADA for the purposes of Unruh

15           Act damages.

16      3.   Statutory minimum damages under section 52(a) of the California Civil Code

17           according to proof.

18      4.   Attorneys' fees, litigation expense, and costs of suit.[2]

19      5.   Interest at the legal rate from the date of the filing of this action.

20      6.   For such other and further relief as the Court deems proper.

Dated: March 2, 2015              MOORE LAW FIRM, P.C.


                                  /s/ Tanya E. Moore
                                  Tanya E. Moore
                                  Attorneys for Plaintiff
                                  Ronald Moore


---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.


*Moore v. Elite Vapor Shop, Inc., et al.*
Complaint                          Page 8

MLF0044058

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:  March 2, 2015                    /s/ Ronald Moore
                                         Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                         /s/ Tanya E. Moore
                                         Tanya E. Moore, Attorney for
                                         Plaintiff, Ronald Moore

*Moore v. Elite Vapor Shop, Inc., et al.*
*Verification*

MLF0044059

EX. 36-17

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 3/2/15 _____        _Ronald Moore_

                                      Ronald Moore

*Moore v. Elite Vapor Shop, Inc.*

MLF0044064

# Exhibit 37

more

```
EZ N QUICK,  299
3649 BLACKSTONE
FRESNO, CA  93726

        02/27/2012 3:29:44 PM
    Register: 1 Trans #: 1356 Op ID: 1
        Your cashier: IMA

GRIZZLY              $2.99    1
NOTAX               $2.50    99
CRV                 $0.10    1
                    ----------
        Subtotal =   $5.59
            Tax =    $0.28
                    ----------
          Total =   $5.87

      Change Due =   $0.00

Cash                 $5.87
```

Signs
Ramp go's int st
Ramp go's int Access
Front Door

MLF0053610

EZ N QUICK, 299
3649 BLACKSTONE
FRESNO, CA 93726

02/27/2012 3:29:44 PM
Register: 1 Trans #: 1356 Op ID: 1
Your cashier: IMA

```
GRIZZLY                          $2.99    .1
NOTAX                            $2.50   99
CRV                              $0.10    1
                              ----------
                   Subtotal =    $5.59
                      Tax =      $0.28
                              --------
                     Total =     $5.87

                  Change Due =   $0.00

Cash
                                 $5.87
```



#1287

MLF0051715

Signs
Ramp go's out st
Ramp gos int Access
Front Door

#1287

MLF0051714

EX. 37-4

**BARRIER MEMO**

**ADAI No. :**     01278-Moore

**Case Name:**     Moore v. EZ N Quick

**Address:**     3649 Blackstone Ave, Fresno, CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Built-up curb ramp | Plaintiff had trouble getting up the ramp and it had very steep sides | Yes |
| Front door too heavy | Plaintiff had trouble opening the entrance door because the pressure was great | Door open upon inspection |
| | | Site is "CASp inspected" |

1

MLF0028936

EX. 37-5

June 6, 2013


Mr. Ron Moore
80 N. Hughes Ave.
Clovis, CA 93612

**RE:    ADAI No. 01287**
**EZ N Quick (Facility) 3649 Blackstone Ave, Fresno CA**

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,



Tanya Moore
Attorney at Law

TM/ms

Enclosure:  Fee Agreement

MLF0056250

EX. 37-6

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorney for Plaintiff
Ronald Moore

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | No. |
| Plaintiff, | **COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |
| vs. | |
| E-Z-N QUICK, a California General Partnership dba EZ N QUICK, | |
| Defendants. | |

### I. SUMMARY

1. This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> EZ N Quick
> 3649 N. Blackstone Ave.
> Fresno, CA 93726
> (hereafter "the Facility")

2. Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against E-Z-N QUICK, a California General Partnership dba EZ N QUICK (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with

*Moore v. E-Z-N Quick*
Complaint

MLF0028949

EX. 37-7

1 Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California

2 statutes.

### II.   JURISDICTION

3.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

ADA claims.

4.     Supplemental jurisdiction for claims brought under parallel California law –

arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.     Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

### III.   VENUE

6.     All actions complained of herein take place within the jurisdiction of the

United States District Court, Eastern District of California, and venue is invoked pursuant to

28 U.S.C. § 1391(b), (c).

### IV.   PARTIES

7.     Defendants own, operate, and/or lease the Facility, and consist of a person (or

persons), firm, and/or corporation.

8.     Plaintiff requires the use of a wheelchair when traveling about in public.

Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

United States laws, and a member of the public whose rights are protected by these laws.

### V.   FACTS

9.     The Facility is a public accommodation facility, open to the public, which is

intended for nonresidential use and whose operation affects commerce.

10.     Plaintiff visited the Facility and encountered barriers (both physical and

intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

goods, services, privileges and accommodations offered at the Facility.  Plaintiff personally

encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

about February 27, 2012:

a)     Plaintiff had difficulty maneuvering forward on the curb ramp because it

had a steep slope and very steep sides.  This required Plaintiff to exert

*Moore v. E-Z-N Quick*
Complaint

MLF0028950

EX. 37-8

1        more energy to ascend the curb ramp.

2           b)    Plaintiff had difficulty opening the entrance door to the Facility because

3               the door was too heavy.  The excess strain caused discomfort to

4               Plaintiff's back.

5        11.    The barriers identified in paragraph 10 herein are only those that Plaintiff

6 personally encountered.  Plaintiff is presently unaware of other barriers which may in fact

7 exist at the Facility and relate to his disabilities.  Plaintiff will seek to amend this Complaint

8 once such additional barriers are identified as it is Plaintiff's intention to have all barriers

9 which exist at the Facility and relate to his disabilities removed to afford him full and equal

10 access.

11        12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

12 Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

13 accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

14 Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

15 once the barriers are removed.

16        13.    Defendants knew, or should have known, that these elements and areas of the

17 Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

18 the physically disabled.  Moreover, Defendants have the financial resources to remove these

19 barriers from the Facility (without much difficulty or expense), and make the Facility

20 accessible to the physically disabled.  To date, however, Defendants refuse to either remove

21 those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

22        14.    At all relevant times, Defendants have possessed and enjoyed sufficient

23 control and authority to modify the Facility to remove impediments to wheelchair access and

24 to comply with the 2010 Standards for Accessible Design and the California Code of

25 Regulations Title 24.  Defendants have not removed such impediments and have not

26 modified the Facility to conform to accessibility standards.  Defendants have intentionally

27 maintained the Facility in its current condition and have intentionally refrained from altering

28 the Facility so that it complies with the accessibility standards.

*Moore v. E-Z-N Quick*
Complaint

MLF0028951

EX. 37-9

15.     Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants discriminatory intent.  On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliance state.  Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

## VI.     FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

16.     Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.     Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

18.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19.     The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv).

20.     When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through

*Moore v. E-Z-N Quick*
Complaint

Page 4

MLF0028952

EX. 37-10

1  alternative methods is also specifically prohibited if these methods are readily achievable.

2  Id. § 12182(b)(2)(A)(v).

3      21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

4  barriers at the Facility without much difficulty or expense, and that Defendants violated the

5  ADA by failing to remove those barriers, when it was readily achievable to do so.

6      22.    In the alternative, if it was not "readily achievable" for Defendants to remove

7  the Facility's barriers, then Defendants violated the ADA by failing to make the required

8  services available through alternative methods, which are readily achievable.

9                   Failure to Design and Construct an Accessible Facility

10     23.    Plaintiff alleges on information and belief that the Facility was designed and

11  constructed (or both) after January 26, 1992 – independently triggering access requirements

12  under Title III of the ADA.

13     24.    The ADA also prohibits designing and constructing facilities for first

14  occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

15  with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

16     25.    Here, Defendants violated the ADA by designing and constructing (or both)

17  the Facility in a manner that was not readily accessible to the physically disabled public –

18  including Plaintiff – when it was structurally practical to do so.[1]

19                   Failure to Make an Altered Facility Accessible

20     26.    Plaintiff alleges on information and belief that the Facility was modified after

21  January 26, 1992, independently triggering access requirements under the ADA.

22     27.    The ADA also requires that facilities altered in a manner that affects (or could

23  affect) its usability must be made readily accessible to individuals with disabilities to the

24  maximum extent feasible.  42 U.S.C. § 12183(a)(2).  Altering an area that contains a

25  facility's primary function also requires making the paths of travel, bathrooms, telephones,

26  and drinking fountains serving that area accessible to the maximum extent feasible.  Id.

27

28  _____

[1] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. E-Z-N Quick*
Complaint

MLF0028953

EX. 37-11

1   28.   Here, Defendants altered the Facility in a manner that violated the ADA and

2   was not readily accessible to the physically disabled public – including Plaintiff – to the

3   maximum extent feasible.

4   Failure to Modify Existing Policies and Procedures

5   29.   The ADA also requires reasonable modifications in policies, practices, or

6   procedures, when necessary to afford such goods, services, facilities, or accommodations to

7   individuals with disabilities, unless the entity can demonstrate that making such

8   modifications would fundamentally alter their nature.  42 U.S.C. § 12182(b)(2)(A)(ii).

9   30.   Here, Defendants violated the ADA by failing to make reasonable

10  modifications in policies, practices, or procedures at the Facility, when these modifications

11  were necessary to afford (and would not fundamentally alter the nature of) these goods,

12  services, facilities, or accommodations.

13  31.   Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

14  attorney fees, costs, legal expense) for these aforementioned violations.  42 U.S.C. § 12205.

15  32.   Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

16  Defendants violated the ADA in order to pursue damages under California's Unruh Civil

17  Rights Act or Disabled Persons Act.

18  **VII.   SECOND CLAIM**

19  **Unruh Act**

20  33.   Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

21  this claim.

22  34.   California Civil Code § 51 states, in part, that:  All persons within the

23  jurisdiction of this state are entitled to the full and equal accommodations, advantages,

24  facilities, privileges, or services in all business establishments of every kind whatsoever.

25  35.   California Civil Code § 51.5 also states, in part that:  No business

26  establishment of any kind whatsoever shall discriminate against any person in this state

27  because of the disability of the person.

28  36.   California Civil Code § 51(f) specifically incorporates (by reference) an

*Moore v. E-Z-N Quick*
Complaint

MLF0028954

EX. 37-12

1   individual's rights under the ADA into the Unruh Act.

2       37.   Defendants' aforementioned acts and omissions denied the physically

3   disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

4   privileges and services in a business establishment (because of their physical disability).

5       38.   These acts and omissions (including the ones that violate the ADA) denied,

6   aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

7       39.   Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

8   minimum damages of four thousand dollars ($4,000) for each offense.

9       40.   Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

10   ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

11   § 52(a).

12                    **VIII. THIRD CLAIM**

13            **Denial of Full and Equal Access to Public Facilities**

14       41.   Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

15   this claim.

16       42.   Health and Safety Code § 19955(a) states, in part, that:  California public

17   accommodations or facilities (built with private funds) shall adhere to the provisions of

18   Government Code § 4450.

19       43.   Health and Safety Code § 19959 states, in part, that:  Every existing (non-

20   exempt) public accommodation constructed prior to July 1, 1970, which is altered or

21   structurally repaired, is required to comply with this chapter.

22       44.   Plaintiff alleges the Facility is a public accommodation constructed, altered,

23   or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

24   Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code

25   § 19956.

26       45.   Defendants' non-compliance with these requirements at the Facility aggrieved

27   (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

28   Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code

*Moore v. E-Z-N Quick*
Complaint

MLF0028955

EX. 37-13

§ 19953.

### IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.    Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.    Attorneys' fees, litigation expense, and costs of suit.[2]

5.    Interest at the legal rate from the date of the filing of this action.

6.    For such other and further relief as the Court deems proper.

Dated:  September 18, 2013                    MOORE LAW FIRM, P.C.

/s/ Tanya E. Moore
Tanya E. Moore
Attorneys for Plaintiff,
Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. E-Z-N Quick*
Complaint

Page 8

MLF0028956

EX. 37-14

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:____9/18/2013_____          /s/  Ronald Moore_____
                                     Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                     /s/ Tanya E. Moore_____
                                     Tanya E. Moore, Attorney for
                                     Plaintiff, Ronald Moore

*Ronald Moore v. E-Z-N Quick*

MLF0028957

EX. 37-15

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief; and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 9/18/13                               _Ronald Moore_
                                             Ronald Moore

*Ronald Moore v. E-Z-N Quick*

MLF0028960

EX. 37-16

# Exhibit 38



#10-873

```
                Fajita Fiesta
                 1713 E Shaw
Server: Julius              07/18/2010
Table 15/1                      2:51 PM
Guests: 2                         70008

Coke
Pico Carta                          2.39
Burr Verde Fest                     1.00
SPECIAL                             9.95
                                    4.95

Sub Total                          20.29
Tax                                 1.81

Total                              22.10

Balance Due                        22.10

        Thank You for visiting!
          Please visit us at
    www.myspace.com/fajitafiesta
```

MLF0054977

EX. 38-2

Ron "Fijita Fiesta" 1713 E Shaw
(No crosswalk to cross driveway) (Shaw & cedar.)
H/k Parking signs & Space are not correct.
There is a Ramp to get up to
door that is steep. Doors are Bad
Ron Cannot get up to the Bar,
all steps. Didn't See any area where
he could Sit anyway.
Went to Bathroom and mostly
ok But paper towels are high & trying to
Reach them cut my knee under Counter
By a Screw sticking out. There is
a Built in Can Blocking the
way to get close to
towels.

MLF0054978

EX. 38-3

faxed Seen 7-18-10

KAPLAN
COLLEGE

44 Shaw Avenue
Clovis, CA 93612

- Day & evening classes available
- Financial aid available for those who qualify
- Career placement assistance
- High school diploma or GED required

BUSINESS REPLY MAIL
FIRST-CLASS MAIL    PERMIT NO. R-6650    SPOKANE WA

POSTAGE WILL BE PAID BY ADDRESSEE

KAPLAN COLLEGE
PMB 122
7115 N DIVISION ST STE B
SPOKANE WA 99208-9913

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

MLF0054979

EX. 38-4

MLF0054980

Corner of Van Ness
& Divisadero
Fresno

Have (HC)
spot. No Sign
front door
too heavy.

Bathroom door
Womens Slams
shut & mens
shuts slower But
have to Back up
& go forward Several
times to get in
Because Urinal is
in the way.
Also cant get up to
the Bar no where
to set.

(On our Way Back from Dentist

**Guest Receipt**

857208

5.75

Precios han cambiado

Prices have changed



| Date | Amount | Guests | 857208 |
|------|--------|--------|--------|

15.75

Guest Receipt

Precios han cambiado

MLF0054981

EX. 38-6



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

January 6, 2012

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

Re: ***Mike's Pizzeria, KFC (Fresno), Fajita Fiesta Mexican Restaurant, Kijima Restaurant***

Dear Mr. Moore:

This letter is to inform you that we have received your request to file a lawsuit on your behalf against the above-referenced facility along with the receipt of purchase you provided. Please be advised that we will investigate the barriers to access encountered by you and advise you within three weeks if we decide to accept this case.

Thank you for sending us this information. If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Sent in Mrs. Moore's absence to avoid delay*

Tanya Moore
Attorney at Law

TM/kp

MLF0046275

EX. 38-7



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
Attorney at Law

Martha H. Alvizo
Paralegal

September 10, 2010

Mr. Ronald Moore
80 N. Hughes Ave
Clovis, CA 93612

Re: *El Pueblito Restaurant, BJ'S Kountry Kitchen, Burger King, Chapala Mexican Restaurant, Chile My Corona, Clovis 8, El Gran Rodeo, Donut Shop, Mateos, Donut Nation, DQ Cakes, Los Banos Donuts, Fajita Fiesta, Fresh & Easy, Fosters Freeze, Ihop, Handi Stop, Joes Steakhouse, Kwik Serve Mkt, La Nobleza, My Slice Pizza, K & C, McDonalds, Rite Aid, Robertitos, Ryan's Place, SaveMart, Susie's Deals, Subway, Shushi and Sake Bar, Smokehouse, Supercuts, Royal Palace, Tahoe's Joe's, The Original, Valli Gas, Yogurt.*

Dear Mr. Moore:

This letter is to inform you that we have received your request to file a lawsuit on your behalf against the above-referenced facility along with the receipt of purchase you provided. Please be advised that we will investigate the barriers to access encountered by you and advise you within three weeks if we decide to accept this case.

Thank you for sending us this information. If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya Moore
Attorney at Law

TM/ma

MLF0046737

EX. 38-8



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER October 28, 2010

Tanya E. Moore
*Attorney at Law*

Martha H. Alvizo
*Paralegal*

Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

Re: <u>Fajita Fiesta Mexican Grill & Cantina, Fresno, CA, 93710</u>

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review this document and keep it for your records. Please sign the signature page where indicated and return to our office in the enclosed envelope. **In addition to your signature page, please send the return receipts from the letters sent via certified mail to the defendants in this case, if any.**

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Tanya Moore*

Tanya Moore
Attorney at Law

MLF0046745

EX. 38-9

# Exhibit 39

(Ron)

No H/c parking & no Ramp
to get up on Sidewalk. Ron got
Back in the car & I went in
for him.

Fosters
Donut shop
(3886 N cedar)
(shopping Center)

555 L
YOUR RE
THANK YOU
CALL AGAIN

REG  07-17-2010 20:36
            000022
DEPT 05          $0.80
DEPT 0          $0.70
DEPT 13          $0.85
CASH           $2  93

MLF0053788

EX. 39-2

faxed S-t
7-18-0

MLF0053789

EX. 39-3

(Ron)

Los Cenas Donuts

No (P/C) Parking
at all Bathroom
is around Back
does Stamp

1225 E.
Pacheco
Los Banos Blvd

MLF0053790

EX. 39-4

LOS BANOS
COINTS
THANK YOU
COME AGAIN

No HC working or Sign

Bathroom door opens out & stays open so you have to go Back to to Shut.

Sonja + 15 @ in Oto Bonoa

MLF0053791

Ron

Donut Nation (Los Banos)
"Stopped for Coffee"
Bathroom Doers are
about half the size as
a Hc doer Bathroom all
wrong no Hc parking

Pac Chau

Called Records
office
Chau Tony
property & business
part-owner

1255 E. Pachico
Blvd
Los Banos
Salinas

legal 500

YOUR RECEIPT

THANK YOU

06-06-10
*1.30
*.000
000-5964
* 2-26




# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

November 24, 2010

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
Attorney at Law

Martha H. Alvizo
Paralegal

Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

*0018*

Re: Star One Mart 1506 2nd St., Selma CA and Donut Nation 1255 W. Pacheco Blvd. Los Banos CA

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review this document and keep it for your records. Please sign the signature page where indicated and return to our office in the enclosed envelope. **In addition to your signature page, please send the return receipts from the letters sent via certified mail to the defendants in this case, if any.**

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read to avoid delay in Mrs. Moore's absence*

Tanya Moore
Attorney at Law

MLF0053810

EX. 39-7



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Martha H. Alvizo
*Paralegal*

September 10, 2010

Mr. Ronald Moore
80 N. Hughes Ave
Clovis, CA 93612

Re: *El Pueblito Restaurant, BJ'S Kountry Kitchen, Burger King, Chapala Mexican Restaurant, Chile My Corona, Clovis 8, El Gran Rodeo, Donut Shop, Mateos, Donut Nation, DQ Cakes, Los Banos Donuts, Fajita Fiesta, Fresh & Easy, Fosters Freeze, Ihop, Handi Stop, Joes Steakhouse, Kwik Serve Mkt, La Nobleza, My Slice Pizza, K & C, McDonalds, Rite Aid, Robertitos, Ryan's Place, SaveMart, Susie's Deals, Subway, Shushi and Sake Bar, Smokehouse, Supercuts, Royal Palace, Tahoe's Joe's, The Original, Valli Gas, Yogurt.*

Dear Mr. Moore:

This letter is to inform you that we have received your request to file a lawsuit on your behalf against the above-referenced facility along with the receipt of purchase you provided. Please be advised that we will investigate the barriers to access encountered by you and advise you within three weeks if we decide to accept this case.

Thank you for sending us this information. If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya Moore
Attorney at Law

TM/ma

MLF0046737

EX. 39-8

**Exhibit 40**

PAPA MURPHYS
5054 N BLACKSTONE AVE
FRESNO, CA 93710

02/29/2012                16:18:28
Merchant ID:          000000000879510
Terminal ID:              03633919
3232295669993

CREDIT CARD

VISA SALE

CARD #              XXXXXXXXXXXX8374
0012
INVOICE                      000063
Batch #:                     029463
Approval Code:               Swiped
Entry Method:                Online
Mode:

PRE-TIP AMT               $12.00

TIP                     _____

TOTAL AMOUNT            _____

CUSTOMER COPY

---

BASHA MEDITERRANEAN GRILL
N BLACKSTONE AVE STE 106
FRESNO, CA 93710
(559) 222-1322

Sale

Merchant ID: 542929804588119

Term ID: LK914135

03/02/12              15:17:32
Batch: 000001    In. #: 000002

VISA        Entr Method: S
XXXXXXXXXXX

Seq.#: 0002      : 002396

Amount:              15.20

Tip:            _____

Total:          _____

APPROVED

Cus

---

El Basha
5048 N Blackstone Ave
Fresno, CA  93710
h 559-222-3322

ph 559-709-4444

TABLE: DINE IN 14 - 1 Guest
Server: Brenda
2/25/2013 7:02:51 PM
Sequence #: 0000012
ID #: 006241B

| ITEM | QTY PRICE |
|---|---|
| Combo Kabab | (3@$16.95) $50.85 |
| Bottle Water | (2@$1.50) $3.00 |
| Gold Peak Tea | 1 $2.50 |
| Subtotal | $56.35 |
| Total Taxes | $5.06 |
| Grand Total | $61.41 |
| Amount Due: | $61.41 |

Credit Purchase
Name           :MOURE/RONALD D
CC Type        :MasterCard
CC Num         :xxxx xxxx xxxx 1890
Reference      :231006
Approval       :61208B
Server         :Brenda
Ticket Name    :DINE IN 14

Payment Amount:        $61.41

Tip: _____    _____

Total          _____

X _____
CUSTOMER COPY
I agree to pay the amount shown above.

thank you for visiting!
Come back soon!

---

PAPA MURPHY'S
5054 N BLACKSTONE AVE
FRESNO CA 93710
559 222-7272

05:16    02-25-2013
MC NO.0000        8619
ENERGY DRINK      $2.49T1

SUBTOTAL          $2.49
TAX1              $0.20
TOTAL-TAX         $0.20

TOTAL             $2.69
CASH             $20.00
CHANGE           $17.31
THANK YOU
PLEASE TAKE A SURVEY
AT PAPAMURPHYS.COM
STORE# 05228

---

PAPA MURPHY'S
5054 N BLACKSTONE AVE
FRESNO CA 93710
559 222-7272

05:17    02-25-2013
MC NO.0000        8620
P             $15.00
COOKIE        $-3.00

SUBTOTAL         $12.00

TOTAL            $12.00
CASH             $12.00
CHANGE           $0.00
THANK YOU
PLEASE TAKE A SURVEY
AT PAPAMURPHYS.COM



US Furniture
5054 N BLACKSTONE
FRESNO CA 93710
WE HAVE EVERYTHING FOR YOUR HOME NEEDS
FINANCING & LAYAWAY AVAILABLE
559-228-3335
BLACKSTONE & SHAW

RAMOS FURNITURE
www.ramosfurniture.com
Jonathan
Sales Executive

Sign's
Ramp go's into street
Ramp go's into Access
Access not Big Enough
could not get Down
Isle to see mattress
without manger moveing
Allmost every mattress
could not get AROUND
some Isles

Signs
Ramp go's into street
Ramp go's into
Acces Isle
Front Doors
Isle's to small cun't
get around in store

No Signs
Ramp into store
Ramp and Access
Front Door
Sope to High in Bath
Room
table has poll in
conter can't get up
To table to eat

**MLF0051675**

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No. 1523

**Cherry Valero (Facility) 14518 Valley Blvd., Fontana, CA 92335**

1. What is the name of the Facility? _PAPA Murphys_

2. When did you visit the Facility? _2/29_ (Date) _4.18_ (Time)

3. What is the address of the Facility? _5054 Shaw Ave corner Shaw and Blackstone_

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _2 Few_ If more than one visit, please list the date and time if you know it. _____

6. What was the purpose of your visit? _To Get pizza_

7. Who accompanied you to the Facility? _By myself_

8. What car did you drive to the Facility? _mine_

9. Did you drive yourself of did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In H/c parking to the Right of the store_

11. Was it difficult for you to park there? _yes had to go By Furniture on sidewalk_

12. Why? _Because No parking In Front of papa murphys_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _No_

16. What problems did you encounter transferring onto your wheelchair?

_None_

17. Which way did you go from the parking to the entrance of the Facility? _Up Ramp to the Left_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. _Ramp go's into street payment All Broke up at sidewalk_

19. Did you encounter any problems opening the door? Describe why. _Trash All_

20. Did you have any problems inside the Facility? Describe. _Buildin chairs had to sit in middle of walk way to wait for pizza_

MLF0051667

EX. 40-4

~~ADA No. 1573~~
~~Chevy Chase (Facility) 14536 Valley Blvd., Fontana, CA 92335~~

they had to Bring my pizza out to car
for me Because they have No Ramp in
H/C parking in Front of Store

21. What did you purchase (or what meal did you have there). Describe: _Pizza_

_____

22. Have you used the restroom at the Facility? _NO_

23. Why did you need to use the restroom? _____

24. Did you use the sink? _____

25. Any problems? _____

26. Did you use the urinal? _____

27. Did you use the toilet? _____

28. Did you use the toilet paper? _____

29. Did you use paper towels? _____

30. Did you use the soap dispenser? _____

31. Did you have any problem maneuvering inside the restroom? _____

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _____

34. Was it wheelchair accessible? _____

35. Where you comfortable at the table? _____

36. Did you use the counter to pay for purchase? _Yes_

37. Which counter did you use? _The one ~~next~~ to the Right in A corner_

38. Was the counter accessible? _NO not Really_

39. Which way did you go after you left the Facility? _to the Left ~~~~_

40. Any problems getting back to your vehicle? _Furniture and cars pulled in_
_hard to get By_

41. Any problems transferring from your wheelchair to your vehicle? _NO_

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0051668

EX. 40-5

1. What is the name of the Facility? _Ramos Furniture_

2. When did you visit the Facility? _4/7/12_ (Date) _2pm_ (Time)

3. What is the address of the Facility? _5066 conner shaw & Blackstone_

4. Was this your first visit to the Facility? _yes_

5. How many times have you visited the Facility? _____ If more than one visit, please list the date and time if you know it. _____

6. What was the purpose of your visit? _Looking for Bed_

7. Who accompanied you to the Facility? _Lynn my wife_

8. What car did you drive to the Facility? _Minvie_

9. Did you drive yourself of did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _Right to the Left of the Door in the parking space_

11. Was it difficult for you to park there? _yes_

12. Why? _Because Ramp came into parking space_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _wife_

16. What problems did you encounter transferring onto your wheelchair?

_NONE_ ~~Right to the left~~

17. Which way did you go from the parking to the entrance of the Facility? _to Right to Ramp_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
_Ramp steep and goes into parking space_

19. Did you encounter any problems opening the door? Describe why. _Door open out Shut to Fast Treshold_

20. Did you have any problems inside the Facility? Describe. _yes NARROW ASlles_

MLF0051669

EX. 40-6

*And they had to move a Bunch of Bed so I could try to see them and there WAS No way to get into see them*

21. What did you purchase (or what meal did you have there). Describe: *Nothing got price on Bed*

22. Have you used the restroom at the Facility? *Yes*

23. Why did you need to use the restroom? *had to go*

24. Did you use the sink? *Yes*

25. Any problems? *Sink Thrank cerg out to far from soap*

26. Did you use the urinal? *No*

27. Did you use the toilet? *Yes*

*Bathroom very hard to get IN very Narrow there Door opens out there have to turn Right could*

28. Did you use the toilet paper? *No* *not Do it someBody came over and hold Door open for me to get IN*

29. Did you use paper towels? *Yes* *very hard to get out hit walls*

30. Did you use the soap dispenser? *Yes had to go UP and Back to get out*

31. Did you have any problem maneuvering inside the restroom? *Bathroom Stall Door did not shut Right*

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _____

34. Was it wheelchair accessible? _____

35. Where you comfortable at the table? _____

36. Did you use the counter to pay for purchase? *Just getting price for Bed Mattress*

37. Which counter did you use? _____

38. Was the counter accessible? _____

39. Which way did you go after you left the Facility? *to the Right to my car*

40. Any problems getting back to your vehicle? *Ramp stoop*

41. Any problems transferring from your wheelchair to your vehicle? *No*

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0051670

EX. 40-7

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _WS FuRNiture_

2. When did you visit the Facility? _4/1/12_ (Date) _1:15 pm_ (Time)

3. What is the address of the Facility? _5056 corner of Blackstone an Shaw_

4. Was this your first visit to the Facility? _~~yes~~ No_

5. How many times have you visited the Facility? _10x2_ If more than one visit, please list the date and time if you know it. _____

6. What was the purpose of your visit? _Dresser And Buke Beds for grand kids_

7. Who accompanied you to the Facility? _my wife Lynn_

8. What car did you drive to the Facility? _minie_

9. Did you drive yourself of did you get a ride from someone else? _I drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _I parked in the parking space to the Right of Door_

11. Was it difficult for you to park there? _yes_

12. Why? _Because cars pull into sidewalk and they have Dressers on side walk hard to get By_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _wife_

16. What problems did you encounter transferring onto your wheelchair?

_Nowe_

17. Which way did you go from the parking to the entrance of the Facility? _Up Ramp to Left_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

_Ramp gos into street Dresser on side walk_

19. Did you encounter any problems opening the door? Describe why. _____

20. Did you have any problems inside the Facility? Describe. _yes had to go to Rest_

MLF0051671

EX. 40-8

Room And there WAS All kinds of stuff in the Way they had to move it All Before I could Go

21. What did you purchase (or what meal did you have there). Describe: got price on Bunkbeds for grandkids

22. Have you used the restroom at the Facility? ~~yes~~ They Blocked off Restroom

23. Why did you need to use the restroom? had to go

24. Did you use the sink? _____

25. Any problems? _____

26. Did you use the urinal? _____

27. Did you use the toilet? _____

28. Did you use the toilet paper? _____

29. Did you use paper towels? _____

30. Did you use the soap dispenser? _____

31. Did you have any problem maneuvering inside the ~~restroom~~ Store? All Kinds of table Chair And furiture in Way All over store

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _____

34. Was it wheelchair accessible? _____

35. Where you comfortable at the table? _____

36. Did you use the counter to pay for purchase? No had Them write

37. Which counter did you use? me a paper to tell me how

38. Was the counter accessible? much Bedroom set and Bunkbeds were

39. Which way did you go after you left the Facility? to Left to Ramp

40. Any problems getting back to your vehicle? the Hole in the Ramp

41. Any problems transferring from your wheelchair to your vehicle? No

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0051672

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _EL BASHA_

2. When did you visit the Facility? _4/7/12_ (Date) _3 oz 2_ (Time)
   _2/28/13_

3. What is the address of the Facility? _____

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _A few_ If more than one visit, please list the date and time if you know it. _____

6. What was the purpose of your visit? _to eat_

7. Who accompanied you to the Facility? _By my SIDE_

8. What car did you drive to the Facility? _mine_

9. Did you drive yourself of did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _IN H/c parking to the Right of Grill_

11. Was it difficult for you to park there? _yes_

12. Why? _Because Ramp_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _No_

16. What problems did you encounter transferring onto your wheelchair?
    _None_

17. Which way did you go from the parking to the entrance of the Facility? _Up Ramp Then to the Left_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
    _Ramp gos into street_

19. Did you encounter any problems opening the door? Describe why. _____

20. Did you have any problems inside the Facility? Describe. _____

MLF0051673

EX. 40-10

_____

_____

21. What did you purchase (or what meal did you have there).  Describe: _____

_____

22. Have you used the restroom at the Facility?_____

23. Why did you need to use the restroom? _____

24. Did you use the sink? _____

25. Any problems? _____

26. Did you use the urinal? _____

27. Did you use the toilet? _____

28. Did you use the toilet paper?_____

29. Did you use paper towels?_____

30. Did you use the soap dispenser?_____

31. Did you have any problem maneuvering inside the restroom? _____

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _____

34. Was it wheelchair accessible? _____

35. Where you comfortable at the table?_____

36. Did you use the counter to pay for purchase? _____

37. Which counter did you use? _____

38. Was the counter accessible? _____

39. Which way did you go after you left the Facility? _____

40. Any problems getting back to your vehicle? _____

41. Any problems transferring from your wheelchair to your vehicle? _____

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0051674

EX. 40-11

**BARRIER MEMO**

ADAI No. :     01274

Case Name:     Moore v. Fresno Shaw Blackstone LLC

Address:     Elbasha, 5048 North Blackstone Avenue, Suite 108, Fresno, CA 93710

| Barrier | Description | Is it a valid barrier? |
|---|---|---|
| Ramp located within the access aisle, unevenly sloped, steep, narrow, not clearly marked, and lacked protected edges | Plaintiff parked in a space designated as accessible to the right of the entrance to the Elbasha Facility, which had an access aisle to the right of it. The ramp from the access aisle to the sidewalk was located within the access aisle, unevenly sloped, steep, narrow, not clearly marked, and lacked protected edges, making it difficult and dangerous for Plaintiff to travel up and down the ramp in his wheelchair. | Y / N |
| Door heavy | The door to the Elbasha Facility was extremely heavy and closed on Plaintiff as he attempted to exit. Plaintiff required assistance from Elbasha Facility staff to hold the door open while Plaintiff rolled his wheelchair out the door. | Y / N |
| No accessible tables | Plaintiff was unable to locate an accessible table and had to sit at a table that was not accessible, such that he could not pull his wheelchair all the way up to the table. Plaintiff was forced to sit far away from the table for the duration of his meal, which was uncomfortable. | Y / N |
| No route from table to restroom | Plaintiff was unable to locate an accessible route from his table to the men's restroom or to the cashier counter. The aisles between the tables lacked necessary wheelchair clearances, forcing Plaintiff to move tables out of his way in order to maneuver through the restaurant. | Y / N |
| Sink improperly configured | The sink in the restroom was improperly configured and lacked necessary wheelchair clearances, making it difficult for Plaintiff to pull up to the sink in his wheelchair. Plaintiff was forced to go to the side of the sink to wash his hands, and had difficulty reaching the soap dispenser. | Y / N |
| Door to restroom does not | The door to the restroom did not close automatically | Y / N |

1

MLF0050571

EX. 40-12

| | | |
|---|---|---|
| close automatically | behind Plaintiff, forcing Plaintiff to have to struggle to maneuver his wheelchair inside the restroom so that he could close the door behind him. | |
| Cashier counter too high | The cashier counter at the Elbasha Facility was extremely high, which made it difficult for Plaintiff to see his credit card receipt on the counter while he was signing the receipt. | Y / N |

MLF0050572

EX. 40-13

**BARRIER MEMO**

ADAI No. :     **01274**

Case Name:    **Moore v. Fresno Shaw Blackstone LLC**

Address:       **Papa Murphy's, 5054 North Blackstone Avenue, Suite 101, Fresno, CA 93710**

| Barrier | Description | Is it a valid barrier? |
|---|---|---|
| No accessible parking in front of store | During Plaintiff's visits on or about February 29, 2012 and February 25, 2013, Plaintiff was unable to locate an accessible parking space close to the entrance of the Papa Murphy's Facility. Plaintiff was forced to park in a standard space near the entrance to the Papa Murphy's Facility. Because there was no ramp nearby, Plaintiff required assistance from Facility staff to carry his pizza out to his car for him, which was embarrassing. | Y / N |
| Ramp far away, uneven, and goes out into street | During Plaintiff's visits on or about February 29, 2012 and February 25, 2013, Plaintiff was required to travel through the parking lot, behind parked cars and in the path of traffic, to a ramp located at the far right end of the row of parking spaces, because there was no ramp near the entrance to the Papa Murphy's Facility. The surface of the ramp was uneven, making it difficult for Plaintiff to roll his wheelchair safely up and down. The ramp extended out into the parking lot, such that when Plaintiff traveled down the ramp in his wheelchair, he was forced to go into the path of traffic within the parking lot. | Y / N |
| Sidewalk blocked by parked cars and furniture | During Plaintiff's visits on or about February 29, 2012 and February 25, 2013, the sidewalk leading from the ramp to the entrance of the Papa Murphy's Facility was partially blocked by parked cars overlapping the curb and by furniture displayed on the sidewalk. Plaintiff had difficulty maneuvering his wheelchair around these obstacles in order to make his way to and from the Papa Murphy's Facility. | Y / N |
| Raised threshold at entrance and door shuts too quickly | During Plaintiff's visits on or about February 29, 2012 and February 25, 2013, Plaintiff had difficulty maneuvering his wheelchair through the entrance because there was a raised threshold at the entrance and the door closed very quickly. Plaintiff was forced | Y / N |

1

MLF0050573

EX. 40-14

| | | |
|---|---|---|
| | to use his cane to hold the door open while he rolled his wheelchair over the raised threshold and through the entrance. | |
| Can't see pizza toppings | During Plaintiff's visits on or about February 29, 2012 and February 25, 2013, Plaintiff was unable to see the available pizza toppings from his wheelchair because the service counter was too high. Plaintiff was forced to order only the pizza toppings offered to him by the staff. | Y / N |
| No accessible seats in waiting area | During Plaintiff's visits on or about February 29, 2012 and February 25, 2013, Plaintiff was unable to locate an accessible waiting area at which to wait for his order. Plaintiff was forced to wait in the middle of the walkway, which was embarrassing. | Y / N |
| Cashier counter improperly configured | During Plaintiff's visit on or about February 29, 2012, Plaintiff had difficulty signing the credit card receipt because the cashier counter was improperly configured. | Y / N |

2

MLF0050574

EX. 40-15

# BARRIER MEMO

**ADAI No. :** 01274

**Case Name:** Moore v. Fresno Shaw Blackstone LLC

**Address:** Ramos Furniture, 5060 North Blackstone Avenue, Fresno, CA 93710

| Barrier | Description | Is it a valid barrier? |
|---|---|---|
| Ramp extends into parking space | Plaintiff parked in a space designated as accessible near the entrance to the Facility. There was a ramp to the right of the parking space which extended into the parking space and made it difficult for Plaintiff to park. | Y / N |
| Ramp is steep | The ramp from the parking lot to the sidewalk leading to the entrance to the Facility was extremely steep and extended into the parking space, making it difficult for Plaintiff to travel up and down the ramp in his wheelchair. | Y / N |
| Raised threshold/entrance door closes quickly | There was a raised threshold at the entrance to the Facility and the door closed very quickly, making it difficult for Plaintiff to maneuver his wheelchair over the threshold before the door closed on him. | Y / N |
| Aisles too narrow | Some of the aisles within the Facility lacked necessary wheelchair clearances and were blocked by furniture and other merchandise, preventing Plaintiff from traveling down the aisles in his wheelchair. Plaintiff required assistance from Facility staff to move furniture out of the way so that Plaintiff could maneuver through the store. | Y / N |
| Entrance to men's restroom narrow/improperly configured | The entrance to the men's restroom lacked necessary wheelchair clearances and was improperly configured, making it difficult for Plaintiff to maneuver his wheelchair in and out. Plaintiff required assistance to hold the door open for him while he struggled to get into the restroom. | Y / N |
| Door to restroom stall does not close automatically | The door to the designated accessible stall in the men's restroom did not close automatically behind Plaintiff, forcing Plaintiff to have to struggle to maneuver his wheelchair inside the stall so that he could close the door behind him. | Y / N |

1

MLF0050575

EX. 40-16

**BARRIER MEMO**

ADAI No. :    **01274**

Case Name:    **Moore v. Fresno Shaw Blackstone LLC**

Address:    **US Furniture, 5056 North Blackstone Avenue, Fresno, CA 93710**

| Barrier | Description | Is it a valid barrier? |
|---|---|---|
| Ramp uneven and extends into parking lot | The surface of the ramp from the parking lot to the sidewalk in front of the Facility was uneven, making it difficult for Plaintiff to roll his wheelchair safely up and down. The ramp extended out into the parking lot, such that when Plaintiff traveled down the ramp in his wheelchair, he was forced to go into the path of traffic within the parking lot. | Y / N |
| Sidewalk blocked by parked cars and furniture | The sidewalk leading from the ramp to the entrance of the Facility was partially blocked by parked cars overlapping the curb and by furniture displayed on the sidewalk. Plaintiff had difficulty maneuvering his wheelchair around these obstacles in order to make his way to and from the entrance to the Facility. | Y / N |
| Entrance to restroom blocked | The entrance to the restroom at the Facility was blocked by furniture and other merchandise, preventing Plaintiff from entering the restroom in his wheelchair. Plaintiff required assistance from Facility staff to move items out of the way so that he could enter the restroom. | Y / N |
| Aisles too narrow | The aisles within the Facility lacked necessary wheelchair clearances and were partially blocked by furniture and other merchandise, making it difficult for Plaintiff to maneuver his wheelchair around the store. | Y / N |

1

MLF0050576

EX. 40-17

April 10, 2013

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:   **ADAI No. 01274**
      **Fresno Shaw Blackstone LLC (US Furniture)**

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records.  Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent in the absence of Tanya Moore to avoid delay.*

Tanya Moore
Attorney at Law

TM/wl

Enclosure:  Fee Agreement

MLF0056241

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Fresno Shaw Blackstone LLC (US Furniture).**

DATE: _____

_____
CLIENT'S SIGNATURE- RONALD MOORE

_____
ADDRESS

_____
CITY

_____
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR RONALD MOORE

MLF0056242

EX. 40-19

## *CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

---

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

THIS AGREEMENT, made this _____ at **San Jose, CA,** by and between <u>Ronald Moore</u>, hereinafter designated as "Client," and **the Moore Law Firm, PC,** hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case against *Fresno Shaw Blackstone LLC (US Furniture)* and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

### FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

EX. 40-20

MLF0056243

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0056244

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

## FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)    Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)    Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)    In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)    In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)    The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

EX. 40-22

MLF0056245

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u> .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0056246

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0056247

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial            _____Initial

MLF0056248

EX. 40-25

DATE:_____          _____
                               CLIENT'S SIGNATURE


DATE:_____          _____
                               CLIENT'S NAME

                               _____
                               ADDRESS


                               _____
                               CITY


                               _____
                               TELEPHONE


MY WITNESS(S) ARE _____
(if none please indicate so)



DATE:_____          MOORE LAW FIRM, PC


                               _____
                               ATTORNEY FOR RONALD MOORE


MLF0056249

EX. 40-26

1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail:  tanya@moorelawfirm.com

5  Attorneys for Plaintiff
   RONALD MOORE
6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 RONALD MOORE,                          ) No.
                                          )
12            Plaintiff,                   ) COMPLAINT ASSERTING DENIAL OF
                                          ) RIGHT OF ACCESS UNDER
13     vs.                                 ) AMERICANS WITH DISABILITIES ACT
                                          ) FOR INJUNCTIVE RELIEF,
14 FRESNO SHAW BLACKSTONE, LLC, a          ) DECLARATORY RELIEF, DAMAGES,
   California limited liability company;   ) ATTORNEYS' FEES AND COSTS (ADA)
15 BERTAO FAMILY INDUSTRIES, INC., a       )
   California corporation, dba PAPA        )
16 MURPHY'S; AL BAWADI, INC., a            )
   California corporation, dba ELBASHA     )
17 MEDITERRANEAN GRILL & HOOKAH;           )
   DIMAS MANUEL INC., a California          )
18 corporation, dba RAMOS FURNITURE        )
   HOME STORE; FOUR BROTHERS, INC., a      )
19 California corporation, dba RAMOS       )
   FURNITURE HOME STORE; ALI               )
20 ABDULLAH, dba US FURNITURE;             )
                                          )
21                                         )
                                          )
22            Defendants.                  )
                                          )
23                                         )
                                          )
24 _____ )

25                    I. SUMMARY

26     1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

27 discrimination at the building, structure, facility, complex, property, land, development,

28 and/or surrounding business complex known as:

*Moore v. Fresno Shaw Blackstone, LLC, et al.*
Complaint

                        Page 1

MLF0050577

a)   Papa Murphy's
     5054 North Blackstone Avenue, Suite 101
     Fresno, CA 93710
     (hereafter "the Papa Murphy's Facility")

b)   Elbasha Mediterranean Grill & Hookah
     5048 North Blackstone Avenue, Suite 108
     Fresno, CA 93710
     (hereafter "the Elbasha Facility")

c)   Ramos Furniture
     5060 North Blackstone Avenue
     Fresno, CA 93710
     (hereafter "the Ramos Furniture Facility")

d)   US Furniture
     5056 North Blackstone Avenue
     Fresno, CA 93710
     (hereafter "the US Furniture Facility")

Each of the facilities identified above shall be collectively hereafter referred to as "the Facilities."

2.   Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes, against:

a)   FRESNO SHAW BLACKSTONE, LLC, a California limited liability company (hereinafter "the Landlord Defendant");

b)   BERTAO FAMILY INDUSTRIES, INC., a California corporation, dba PAPA MURPHY'S (hereinafter "the Papa Murphy's Defendant");

c)   AL BAWADI, INC., a California corporation, dba ELBASHA MEDITERRANEAN GRILL & HOOKAH (hereinafter "the Elbasha Defendant");

d)   DIMAS MANUEL INC., a California corporation, dba RAMOS FURNITURE HOME STORE; FOUR BROTHERS, INC., a California corporation, dba RAMOS FURNITURE HOME STORE (hereinafter collectively "the Ramos Furniture Defendants"); and

*Moore v. Fresno Shaw Blackstone, LLC, et al.*
Complaint

MLF0050578

EX. 40-28

1        e)    ALI ABDULLAH, dba US FURNITURE (hereinafter "the US

2             Furniture Defendant").

3       The Papa Murphy's Defendant, the Elbasha Defendant, the Ramos Furniture

4   Defendants, and the US Furniture Defendant are collectively referred to herein as "the

5   Tenant Defendants," and together with the Landlord Defendant, collectively the

6   "Defendants."

7                   **II.    JURISDICTION**

8       3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

9   ADA claims.

10       4.    Supplemental jurisdiction for claims brought under parallel California law –

11   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

12       5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

13                   **III.    VENUE**

14       6.    All actions complained of herein take place within the jurisdiction of the

15   United States District Court, Eastern District of California, and venue is invoked pursuant to

16   28 U.S.C. § 1391(b), (c).

17                   **IV.    PARTIES**

18       7.    Plaintiff believes, and thereon alleges, that the Landlord Defendant owns,

19   operates, and/or leases the real property consisting of the real property and common areas of

20   the Facilities as well as the physical structures thereon (including the buildings in which each

21   of the individual Tenant Defendants' Facilities is located), and consists of a person (or

22   persons), firm, or corporation. Plaintiff further believes, and thereon alleges, that the

23   Landlord Defendant leases the respective Facilities to the Tenant Defendants as follows:

24             a)    The Papa Murphy's Defendant owns, operates, and/or leases the Papa

25                   Murphy's Facility, and leases the Papa Murphy's Facility from the

26                   Landlord Defendant;

27             b)    The Elbasha Defendant owns, operates, and/or leases the Elbasha

28                   Facility, and leases the Elbasha Facility from the Landlord Defendant;

*Moore v. Fresno Shaw Blackstone, LLC, et al.*
Complaint

MLF0050579

EX. 40-29

    c)     The Ramos Furniture Defendants own, operate, and/or lease the Ramos Furniture Facility, and lease the Ramos Furniture Facility from the Landlord Defendant; and

    d)     The US Furniture Defendant owns, operates, and/or leases the US Furniture Facility, and leases the US Furniture Facility from the Landlord Defendant.

8.     Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and is a member of the public whose rights are protected by these laws.

## V.   FACTS

9.     The Facilities are public accommodation facilities, open to the public, which are intended for nonresidential use and whose operation affects commerce.

10.     Plaintiff visited the Facilities and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facilities. Plaintiff personally encountered the following barriers at the Facilities during Plaintiff's visits to the Facilities:

    a)     During Plaintiff's visits to the Papa Murphy's Facility, Plaintiff encountered the following barriers:

        1)     During Plaintiff's visit to the Papa Murphy's Facility on or about February 29, 2012, Plaintiff parked in a designated accessible parking space near the entrance of the Papa Murphy's Facility; however, Plaintiff was unable to locate a ramp from the parking space to the sidewalk leading to the Papa Murphy's Facility. Plaintiff required assistance from his grandson to help wheel him over the curb to access the sidewalk.

        2)     During Plaintiff's visit to the Papa Murphy's Facility on or about February 25, 2013, Plaintiff parked in a designated accessible parking space near US Furniture because he knew there was no

MLF0050580

EX. 40-30

route from the closer designated accessible parking space to the

entrance of the Papa Murphy's Facility. Plaintiff was then forced

to travel a long distance to reach the entrance of the Papa

Murphy's Facility. Because of the long distance he was forced to

travel back to his vehicle, Plaintiff required assistance from Papa

Murphy's Facility staff to carry his pizza out to his vehicle for

him, which was embarrassing.

3) During Plaintiff's visit to the Papa Murphy's Facility on or about

February 25, 2013, the sidewalk leading from the ramp to the

entrance of the Papa Murphy's Facility was partially blocked by

parked cars overlapping the curb and by furniture displayed on

the sidewalk in front of the US Furniture Facility. Plaintiff had

difficulty maneuvering his wheelchair around these obstacles in

order to make his way to and from the Papa Murphy's Facility.

4) During Plaintiff's visit to the Papa Murphy's Facility on or about

February 25, 2013, the surface of the ramp from the parking lot

to the sidewalk in front of the US Furniture Facility was uneven,

making it difficult for Plaintiff to roll his wheelchair safely up

and down.

5) During Plaintiff's visits to the Papa Murphy's Facility on or

about February 29, 2012 and February 25, 2013, Plaintiff had

difficulty maneuvering his wheelchair through the entrance

because there was a raised threshold at the entrance and the door

closed very quickly. Plaintiff was forced to use his cane to hold

the door open while he rolled his wheelchair over the raised

threshold and through the entrance.

6) During Plaintiff's visits to the Papa Murphy's Facility on or

about February 29, 2012 and February 25, 2013, Plaintiff was

*Moore v. Fresno Shaw Blackstone, LLC, et al.*
Complaint

Page 5

MLF0050581

unable to see the available pizza toppings from his wheelchair because the service counter was too high. Plaintiff was forced to order only the pizza toppings offered to him by the staff.

7)   During Plaintiff's visits to the Papa Murphy's Facility on or about February 29, 2012 and February 25, 2013, Plaintiff was unable to locate an accessible waiting area at which to wait for his order. Plaintiff was forced to wait in the middle of the walkway, which was embarrassing.

8)   During Plaintiff's visit to the Papa Murphy's Facility on or about February 29, 2012, Plaintiff had difficulty signing the credit card receipt because the cashier counter was improperly configured.

b)   During Plaintiff's visits to the Elbasha Facility, Plaintiff encountered the following barriers:

1)   During Plaintiff's visit to the Elbasha Facility on or about March 2, 2012, Plaintiff was unable to locate an available designated accessible parking space near the Elbasha Facility and was forced to park in a standard parking space near the entrance to the Elbasha Facility. Plaintiff was then forced to travel through the parking lot, behind parked cars and over uneven surfaces, to reach the ramp to the sidewalk located to the right of the entrance to the Elbasha Facility.

2)   During Plaintiff's visits to the Elbasha Facility on or about March 2, 2012 and February 25, 2013, the ramp from the parking lot to the sidewalk lacked protected edges, extended into the access aisle, and was unevenly sloped, steep, narrow, and not clearly marked, making it difficult and dangerous for Plaintiff to travel up and down the ramp in his wheelchair. When Plaintiff traveled down the ramp he was unable to control the speed of his

MLF0050582

EX. 40-32

1    wheelchair down the ramp and came down quickly into the path

2    of traffic within the parking lot.

3    3)    During Plaintiff's visits to the Elbasha Facility on or about

4    March 2, 2012 and February 25, 2013, the door to the Elbasha

5    Facility was extremely heavy and closed on Plaintiff as he

6    attempted to exit. Plaintiff required assistance from Elbasha

7    Facility staff to hold the door open while Plaintiff rolled his

8    wheelchair out the door.

9    4)    During Plaintiff's visits to the Elbasha Facility on or about

10   March 2, 2012 and February 25, 2013, Plaintiff was unable to

11   locate an accessible table at the Elbasha Facility and had to sit at

12   a table that was not accessible, such that he could not pull his

13   wheelchair all the way up to the table. Plaintiff was forced to sit

14   far away from the table for the duration of his meal, which was

15   uncomfortable.

16   5)    During Plaintiff's visits to the Elbasha Facility on or about

17   March 2, 2012 and February 25, 2013, Plaintiff was unable to

18   locate an accessible route from his table to the men's restroom or

19   to the cashier counter at the Elbasha Facility. The aisles between

20   the tables lacked necessary wheelchair clearances, forcing

21   Plaintiff to move tables out of his way in order to maneuver

22   through the restaurant.

23   6)    During Plaintiff's visits to the Elbasha Facility on or about

24   March 2, 2012 and February 25, 2013, the sink in the restroom at

25   the Elbasha Facility was improperly configured and lacked

26   necessary wheelchair clearances, making it difficult for Plaintiff

27   to pull up to the sink in his wheelchair. Plaintiff was forced to go

28   to the side of the sink to wash his hands, and had difficulty

*Moore v. Fresno Shaw Blackstone, LLC, et al.*
Complaint

MLF0050583

EX. 40-33

reaching the soap dispenser.

7)   During Plaintiff's visits to the Elbasha Facility on or about March 2, 2012 and February 25, 2013, the door to the restroom at the Elbasha Facility did not close automatically behind Plaintiff, forcing Plaintiff to have to struggle to maneuver his wheelchair inside the restroom so that he could close the door behind him.

8)   During Plaintiff's visits to the Elbasha Facility on or about March 2, 2012 and February 25, 2013, the cashier counter at the Elbasha Facility was high, making it difficult for Plaintiff to see his credit card receipt on the counter while he was signing the receipt.

c)   During Plaintiff's visit to the Ramos Furniture Facility on or about April 1, 2012, Plaintiff encountered the following barriers:

1)   The ramp from the parking lot to the sidewalk leading to the entrance to the Ramos Furniture Facility lacked protected edges, making it difficult for Plaintiff to travel up and down the ramp in his wheelchair.

2)   Some of the aisles within the Ramos Furniture Facility lacked necessary wheelchair clearances and were blocked by furniture and other merchandise, preventing Plaintiff from traveling down the aisles in his wheelchair. Plaintiff required assistance from Ramos Furniture Facility staff to move furniture out of the way so that Plaintiff could maneuver through the store.

3)   The entrance to the men's restroom at the Ramos Furniture Facility lacked necessary wheelchair clearances and was improperly configured, making it difficult for Plaintiff to maneuver his wheelchair in and out. Plaintiff required assistance

*Moore v. Fresno Shaw Blackstone, LLC, et al.*
Complaint

MLF0050584

EX. 40-34

1      to hold the door open for him while he struggled to get into the

2      restroom.

3          4)      The door to the designated accessible stall in the men's restroom

4      at the Ramos Furniture Facility did not close automatically

5      behind Plaintiff, forcing Plaintiff to have to struggle to maneuver

6      his wheelchair inside the stall so that he could close the door

7      behind him.

8      d)   During Plaintiff's visit to the US Furniture Facility on or about April 1,

9      2012, Plaintiff encountered the following barriers:

10         1)      The surface of the ramp from the parking lot to the sidewalk in

11     front of the US Furniture Facility was uneven, making it difficult

12     for Plaintiff to roll his wheelchair safely up and down.

13         2)      The sidewalk leading from the ramp to the entrance of the US

14     Furniture Facility was partially blocked by parked cars

15     overlapping the curb and by furniture displayed on the sidewalk.

16     Plaintiff had difficulty maneuvering his wheelchair around these

17     obstacles in order to make his way to and from the entrance to

18     the US Furniture Facility.

19         3)      The entrance to the restroom at the US Furniture Facility was

20     blocked by furniture and other merchandise, preventing Plaintiff

21     from entering the restroom in his wheelchair. Plaintiff required

22     assistance from US Furniture Facility staff to move items out of

23     the way so that he could enter the restroom.

24         4)      The aisles within the US Furniture Facility lacked necessary

25     wheelchair clearances and were partially blocked by furniture

26     and other merchandise, making it difficult for Plaintiff to

27     maneuver his wheelchair around the store.

28     11.   The barriers identified in paragraph 10 herein are only those that Plaintiff

*Moore v. Fresno Shaw Blackstone, LLC, et al.*
Complaint

MLF0050585

EX. 40-35

1  personally encountered.  Plaintiff is presently unaware of other barriers which may in fact

2  exist at the Facilities and relate to his disabilities.  Plaintiff will seek to amend this Complaint

3  once such additional barriers are identified as it is Plaintiff's intention to have all barriers

4  which exist at the Facilities and relate to his disabilities removed to afford him full and equal

5  access.

6      12.    Plaintiff was, and continues to be, deterred from visiting the Facilities because

7  Plaintiff knows that the Facilities' goods, services, facilities, privileges, advantages, and

8  accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

9  Plaintiff enjoys the goods and services offered at the Facilities, and will return to the

10  Facilities once the barriers are removed.

11     13.    Defendants knew, or should have known, that these elements and areas of the

12  Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access

13  to the physically disabled.  Moreover, Defendants have the financial resources to remove

14  these barriers from the Facilities (without much difficulty or expense), and make the

15  Facilities accessible to the physically disabled.  To date, however, Defendants refuse to either

16  remove those barriers or seek an unreasonable hardship exemption to excuse non-

17  compliance.

18     14.    At all relevant times, Defendants have possessed and enjoyed sufficient

19  control and authority to modify the Facilities to remove impediments to wheelchair access

20  and to comply with the 2010 Standards for Accessible Design and the California Code of

21  Regulations Title 24.  Defendants have not removed such impediments and have not

22  modified the Facilities to conform to accessibility standards.  Defendants have intentionally

23  maintained the Facilities in their current condition and have intentionally refrained from

24  altering the Facilities so that they comply with the accessibility standards.

25     15.    Plaintiff further alleges that the (continued) presence of barriers at the

26  Facilities is so obvious as to establish Defendants discriminatory intent.  On information and

27  belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal

28  to adhere to relevant building standards; disregard for the building plans and permits issued

*Moore v. Fresno Shaw Blackstone, LLC, et al.*
Complaint

MLF0050586

EX. 40-36

1  for the Facilities; conscientious decision to maintain the architectural layout (as it currently

2  exists) at the Facilities; decision not to remove barriers from the Facilities; and allowance

3  that Defendants' property continues to exist in its non-compliance state. Plaintiff further

4  alleges, on information and belief, that the Facilities are not in the midst of a remodel, and

5  that the barriers present at the Facilities are not isolated (or temporary) interruptions in access

6  due to maintenance or repairs.

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

10  16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

11  this claim.

12  17.   Title III of the ADA holds as a "general rule" that no individual shall be

13  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

14  goods, services, facilities, privileges, and accommodations offered by any person who owns,

15  operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

16  18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

17  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

18  Facilities during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

20  19.   The ADA specifically prohibits failing to remove architectural barriers, which

21  are structural in nature, in existing facilities where such removal is readily achievable. 42

22  U.S.C. § 12182(b)(2)(A)(iv).

23  20.   When an entity can demonstrate that removal of a barrier is not readily

24  achievable, a failure to make goods, services, facilities, or accommodations available through

25  alternative methods is also specifically prohibited if these methods are readily achievable.

26  <u>Id</u>. § 12182(b)(2)(A)(v).

27  21.   Here, Plaintiff alleges that Defendants can easily remove the architectural

28  barriers at the Facilities without much difficulty or expense, and that Defendants violated the

*Moore v. Fresno Shaw Blackstone, LLC, et al.*
Complaint

MLF0050587

EX. 40-37

1  ADA by failing to remove those barriers, when it was readily achievable to do so.

2      22.    In the alternative, if it was not "readily achievable" for Defendants to remove

3  the Facilities' barriers, then Defendants violated the ADA by failing to make the required

4  services available through alternative methods, which are readily achievable.

5                  Failure to Design and Construct an Accessible Facility

6      23.    Plaintiff alleges on information and belief that the Facilities were designed

7  and constructed (or both) after January 26, 1992 – independently triggering access

8  requirements under Title III of the ADA.

9      24.    The ADA also prohibits designing and constructing facilities for first

10  occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

11  with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

12      25.    Here, Defendants violated the ADA by designing and constructing (or both)

13  the Facilities in a manner that was not readily accessible to the physically disabled public –

14  including Plaintiff – when it was structurally practical to do so.[1]

15                  Failure to Make an Altered Facility Accessible

16      26.    Plaintiff alleges on information and belief that the Facilities were modified

17  after January 26, 1992, independently triggering access requirements under the ADA.

18      27.    The ADA also requires that facilities altered in a manner that affects (or could

19  affect) its usability must be made readily accessible to individuals with disabilities to the

20  maximum extent feasible.  42 U.S.C. § 12183(a)(2).  Altering an area that contains a

21  facility's primary function also requires making the paths of travel, bathrooms, telephones,

22  and drinking fountains serving that area accessible to the maximum extent feasible. Id.

23      28.    Here, Defendants altered the Facilities in a manner that violated the ADA and

24  was not readily accessible to the physically disabled public – including Plaintiff – to the

25  maximum extent feasible.

26                  Failure to Modify Existing Policies and Procedures

27      29.    The ADA also requires reasonable modifications in policies, practices, or

28

---

[1] General under either state or federal statutes

*Moore v. Fresno Shaw Blackstone, LLC, et al.*
Complaint

Page 12

MLF0050588

EX. 40-38

1  procedures, when necessary to afford such goods, services, facilities, or accommodations to

2  individuals with disabilities, unless the entity can demonstrate that making such

3  modifications would fundamentally alter their nature.  42 U.S.C. § 12182(b)(2)(A)(ii).

4      30.     Here, Defendants violated the ADA by failing to make reasonable

5  modifications in policies, practices, or procedures at the Facilities, when these modifications

6  were necessary to afford (and would not fundamentally alter the nature of) these goods,

7  services, facilities, or accommodations.

8      31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

9  attorney fees, costs, legal expense) for these aforementioned violations.  42 U.S.C. § 12205.

10      32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

11  Defendants violated the ADA in order to pursue damages under California's Unruh Civil

12  Rights Act or Disabled Persons Act.

13               **VII.**   **SECOND CLAIM**

14                    **Unruh Act**

15      33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

16  this claim.

17      34.     California Civil Code § 51 states, in part, that:  All persons within the

18  jurisdiction of this state are entitled to the full and equal accommodations, advantages,

19  facilities, privileges, or services in all business establishments of every kind whatsoever.

20      35.     California Civil Code § 51.5 also states, in part that:  No business

21  establishment of any kind whatsoever shall discriminate against any person in this state

22  because of the disability of the person.

23      36.     California Civil Code § 51(f) specifically incorporates (by reference) an

24  individual's rights under the ADA into the Unruh Act.

25      37.     Defendants' aforementioned acts and omissions denied the physically

26  disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

27  privileges and services in a business establishment (because of their physical disability).

28      38.     These acts and omissions (including the ones that violate the ADA) denied,

MLF0050589

EX. 40-39

1   aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

2       39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

3   minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

4       40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

5   ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

6   § 52(a).

7   ### VIII. THIRD CLAIM

8   ### Denial of Full and Equal Access to Public Facilities

9       41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

10   this claim.

11       42.    Health and Safety Code § 19955(a) states, in part, that:  California public

12   accommodations or facilities (built with private funds) shall adhere to the provisions of

13   Government Code § 4450.

14       43.    Health and Safety Code § 19959 states, in part, that:  Every existing (non-

15   exempt) public accommodation constructed prior to July 1, 1970, which is altered or

16   structurally repaired, is required to comply with this chapter.

17       44.    Plaintiff alleges the Facilities are public accommodations constructed, altered,

18   or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

19   Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code

20   § 19956.

21       45.    Defendants' non-compliance with these requirements at the Facilities

22   aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities.

23   Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety

24   Code § 19953.

25   ### IX.    PRAYER FOR RELIEF

26       WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

27       1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

28       2.    Declaratory relief that Defendants violated the ADA for the purposes of

*Moore v. Fresno Shaw Blackstone, LLC, et al.*
Complaint

MLF0050590

EX. 40-40

1    Unruh Act damages.

2       3.    Statutory minimum damages under section 52(a) of the California Civil Code

3    according to proof.

4       4.    Attorneys' fees, litigation expense, and costs of suit.[2]

5       5.    Interest at the legal rate from the date of the filing of this action.

6       6.    For such other and further relief as the Court deems proper.

7

8    Dated: April 12, 2013                    MOORE LAW FIRM, P.C.

9                                             /s/ Tanya E. Moore
10                                            Tanya E. Moore
                                              Attorneys for Plaintiff,
11                                            Ronald Moore

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____
[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Fresno Shaw Blackstone, LLC, et al.*
Complaint

MLF0050591

EX. 40-41

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: _4/12/13_

_Ronald Moore_
Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

_/s/ Tanya E. Moore_
Tanya E. Moore, Attorney for
Plaintiff, Ronald Moore

_Moore v. Fresno Shaw Blackstone, LLC, et al._

MLF0050592

EX. 40-42

March 1, 2013

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:     ADA No: 01274
        **Casual Male XL; Furniture One**

Dear Mr. Moore:

Thank you for contacting our office with your inquiry regarding potentially filing a lawsuit on your behalf against the above–referenced facilities. This letter is to inform you that although there may be ADA violations involved in the above–referenced facilities, we have rejected the option of filing a civil rights action. Our initial site inspection found the facilities to be closed.

This letter of rejection should not be interpreted by you, or anyone, that you do not have a legitimate case. As you know, these civil rights actions usually involve considerable costs and attorney's fees and we are usually only able to pursue cases which involve the most egregious violations of the ADA law.

Thank you for sending us information regarding the above referenced facilities. Please be advised that the current statute of limitations is one year from the date of incident.  We will be doing nothing further in this matter and will not be monitoring any statute.

If you have any questions or would like to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Dictated but not read.*
*Sent in the absence of Tanya Moore to avoid delay.*

Tanya Moore
Attorney at Law

TM/wl

MLF0050594

EX. 40-43