# Exhibit 48

SHELL
1130 S COUNTRY CLUB DR
MADERA      CA  93638
62683220583

05/31/2014 7:31:15 PM
Register: 1 Trans #: 4096 Op ID: 1
Your cashier: Chon

| | | |
|---|---|---|
| CORONA | $2.99 | 101 |
| .10 CRV | $0.10 | 101 |
| 32OZ COCA-COLA | $1.38 | 101 |

```
                  Subtotal =   $4.47
                       Tax =   $0.40
                  ----------
                     Total =   $4.87

                Change Due =   $0.00

Credit                        $4.87
```
------------------------------------------
XXXX XXXX XXXX 7245, MASTERCARD
INVOICE 694950
AUTH 48378Z
Buyer agrees to pay the total, according
To the agreement with the card issuer
------------------------------------------

Footer

MLF0042180

EX. 48-2



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

June 20, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

      RE:    ADAI No.    02029
                Shell (1130 Country Club Drive, Madera CA 93638)

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? Shell Gas Station

2. What is the address of the Facility? 1130 South Country Club Drive Mada CF

3. When did you visit the Facility? 5/31/14 (Date) 7:30pm (Time)

4. Was this your first visit to the Facility? No

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. 7

6. What was the purpose of your visit? Drinks

7. Who accompanied you to the Facility? Grandson Ronny and Jhonny.

8. What car did you drive to the Facility? Mine

9. Did you drive yourself or did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In the parking spot

11. Was it difficult for you to park there? If so, why? Yes, because no signs

12. How did you unload from your vehicle? Rear

13. What side of the vehicle did you unload from? Driver or passenger? Driver

14. Did anyone help you to transfer onto your wheelchair? Who? Yes, Jhonny

15. Did you encounter any problems transferring onto your wheelchair? Describe. No, because Jhonny helped me with chair.

16. Which way did you go from the parking to the entrance of the Facility? To access wh

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. Yes, ramp goes out into street, access cracked.

18. Did you encounter any problems opening the door? Describe. No door was open.

19. What did you purchase (or what meal did you have there)? Drinks

20. Did you need to use the restroom while you were at the Facility? Why? No

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems":

MLF0042177

EX. 48-4

Sink: _NIA_

Toilet: _NIA_

Urinal: _NIA_

Toilet paper: _NIA_

Toilet seat covers: _NIA_

Paper towels/hand dryer: _NIA_

Soap dispenser: _NIA_

Other: _NIA_

22. Did you have any problem maneuvering inside the restroom? _NIA_

23. Was there any seating provided inside the Facility? _NIA_

24. Were you able to sit comfortably at the table? If not, why? _NIA_

25. Did you use the counter to pay for purchase? Which one? _Yes only one_

26. Did you pay with cash or credit card? _Credit card_

27. Was the counter accessible? If not, describe: _No, counter too high_
_grandson gave card and signed reciept._

28. Did you have any other problems inside the Facility? Describe. _No, just fountain_
_drinks too high._

29. Which way did you go after you left the Facility? _Out door to access isle to_
_car._

30. Any problems getting back to your vehicle? _Yes, ramps go out into street_
_and pavement cracked._

31. Any problems transferring from your wheelchair to your vehicle? _No, because_
_Johnny helped me with my chair._

32. Any additional information you believe would assist us in evaluating this inquiry?
_There was no handicap signs in the_
_parking lot._

MLF0042178

EX. 48-5

**BARRIER MEMO**

**ADAI No. :**      02029

**Case Name:**   Moore v. Shell

**Address:**       1130 Country Club Drive, Madera CA 93638

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No Signs for Designated Handicap Parking Spot | The plaintiff had a difficult time locating the designated handicap parking spot because there were no signs indicating its whereabouts. | YES |
| Extended Ramp | The ramp leading to the entrance of the facility extended very far into the street which compromised the plaintiff's safety due to the amount of cars that passed by. This created an intense hurdle for the client to overcome safely and easily. | YES |
| Cracked Access Aisle | The plaintiff parked in the designated handicap parking spot but experienced some difficulty unloading from his vehicle due to the cracked pavement in the access aisle. | YES |
| High Counter | The transaction counter in the facility was too high for the plaintiff to reach, therefore he had to have his grandson hand the cashier his credit card and sign the receipt. | YES |
| High Soda Dispenser | The soda dispenser in the facility was too high for the plaintiff to reach so his grandson assisted him. | YES |
|  |  |  |
|  |  |  |

1

MLF0042167

EX. 48-6

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 11/24/14

_Ronald Moore_
Ronald Moore

_Ronald Moore v. Maria Guadalupe Helm, et al. (Shell)_

MLF0042181

EX. 48-7

# Exhibit 49



MLF0035009



MLF0035010

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _Leonor's BARBer Shop_

2. When did you visit the Facility? _2/2/18/_ (Date) _23° pm 3:00 pm_ (Time)

3. What is the address of the Facility? _524 N First st Fresno CA_

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _2_ If more than one visit, please list the date and time if you know it. _2_

6. What was the purpose of your visit? _Hair cut_

7. Who accompanied you to the Facility? _Grandson Ronny_

8. What car did you drive to the Facility? _mine_

9. Did you drive yourself of did you get a ride from someone else? _I drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _on side of store_

11. Was it difficult for you to park there? _yes_

12. Why? _No parking no sign_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _My Grandson_

16. What problems did you encounter transferring onto your wheelchair?

_Yes there was a big Ditch In Back of my car full of water_

17. Which way did you go from the parking to the entrance of the Facility? _oto Left to Ramp_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

_yes pavement very bad_

19. Did you encounter any problems opening the door? Describe why. _Yes there was a Chair in Front of it Grandson had to move it so I would get_

20. Did you have any problems inside the Facility? Describe. _yes Into Door_

MLF0035032

EX. 49-4

21. What did you purchase (or what meal did you have there). Describe: _____

22. Have you used the restroom at the Facility? _NO_

23. Why did you need to use the restroom? _HAd to go CRAp Real BAd_

24. Did you use the sink? _No_

25. Any problems? _Yes could not get into the Door of Restroom_
26. Did you use the urinal? _so we left_

27. Did you use the toilet? _1 No_

28. Did you use the toilet paper? _No_

29. Did you use paper towels? _No_

30. Did you use the soap dispenser? _No_

31. Did you have any problem maneuvering inside the restroom? _N/A_

32. Where did you sit? _There was No place to sit EXcept_
_IN middle of the room_
33. Was there any seating provided inside the Facility? _yes_

34. Was it wheelchair accessible? _NO_

35. Where you comfortable at the table? _N/A_

36. Did you use the counter to pay for purchase? _N/A_

37. Which counter did you use? _N/A_

38. Was the counter accessible? _N/A_

39. Which way did you go after you left the Facility? _to the Left to Ramp_

40. Any problems getting back to your vehicle? _Yes payment Ass Holes everywhere_

41. Any problems transferring from your wheelchair to your vehicle? _No Because my grandson_
_loaded me up to my Door them he loaded my Chair into_
42. If you have any additional information you believe would assist us in evaluating this inquiry.
_un Because No WAy in Hell Icould hAe i_

MLF0035033

EX. 49-5

February 14, 2014

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

> **RE:**   **ADAI No. 1877**
> **Leonor's Barber Shop**
> **524 N. First Street, Fresno, CA 93702**

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0035034

**BARRIER MEMO**

ADAI No. :     01877

Case Name:     Moore v. Leonor's Barber Shop

Address:       524 N First Street, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No accessible parking | Plaintiff could not locate any accessible parking and was forced to park in a standard parking space along the side of the store. There was a large ditch behind his vehicle that was full of water, which made it difficult to get his wheelchair out of the back of his vehicle and transfer into it. | Yes |
| Pavement cracked | The pavement between Plaintiff's parking space and the entrance was cracked, making it difficult for him to maneuver. | Yes, were also potholes in spaces that could be dangerous. |
| Door obstructed | The entrance door was obstructed by a chair, which Plaintiff's grandson had to move out of the way so that Plaintiff could enter. | No, chair was replaced by a red pole that wasn't obstructing passage. |
| Could not enter restroom | Plaintiff needed to use the restroom but was unable to enter because the doorway lacked necessary wheelchair clearances. He was forced to leave and look for a restroom elsewhere. | Yes, doorway was only 24". |
| No space in waiting area | Plaintiff could not find a place in the waiting area with clear space for his wheelchair. He had to wait in the middle of the room, which was embarrassing. | Yes |

Note: No bars on toilet, paper towels too high, no maneuverability.

1

MLF0035008

EX. 49-7



# MOORE
## LAW FIRM, P.C.

January 21, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

> Re:    ADAI No.    01877
> Leonor's Barber Shop (524 N. First Street, Fresno, CA 93702)

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0035011

EX. 49-8

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>LEONOR HERNANDEZ, individually and dba LEONOR'S BARBER SHOP;<br><br>　　　　Defendant. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Leonor's Barber Shop
> 524 North First Street
> Fresno, CA 93702
> (hereafter "the Facility")

2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against LEONOR HERNANDEZ, individually and dba LEONOR'S BARBER SHOP (hereinafter referred to as "Defendant"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

*Moore v. Hernandez, et al.*
Complaint

MLF0035012

EX. 49-9

## II.   JURISDICTION

3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.   Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

6.   All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.   PARTIES

7.   Defendant owns, operates, and/or leases the Facility, and consists of a person (or persons), firm, and/or corporation.

8.   Plaintiff is substantially limited in his ability to walk, and must use a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

9.   The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

10.   Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or about February 2, 2014:

a)      Plaintiff could not locate any accessible parking at the Facility and was forced to park in a standard parking space along the side of the building.

*Moore v. Hernandez, et al.*
Complaint

MLF0035013

EX. 49-10

    The parking space contained a sloped, depressed area that was full of water, which made it difficult for Plaintiff to transfer between his vehicle and his wheelchair.

  b)  The pavement along the route from Plaintiff's parking space to the building entrance was cracked and uneven, making it difficult for Plaintiff to maneuver his wheelchair.

  c)  The entrance door was obstructed by a chair, which Plaintiff's grandson had to move out of the way so that Plaintiff could enter.

  d)  Plaintiff could not find a clear space in the waiting area for his wheelchair and was forced to sit in the middle of the room, which was embarrassing.

  e)  Plaintiff needed to use the restroom while at the Facility but was unable to enter the restroom because the doorway lacked necessary wheelchair clearances. He was forced to leave and look for a restroom elsewhere.

  11.  The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

  12.  Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

  13.  Defendant knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendant has the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility

*Moore v. Hernandez, et al.*
Complaint

MLF0035014

EX. 49-11

1  accessible to the physically disabled. To date, however, Defendant refuses to either remove

2  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

3      14.   At all relevant times, Defendant has possessed and enjoyed sufficient control

4  and authority to modify the Facility to remove impediments to wheelchair access and to

5  comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

6  Design. Defendant has not removed such impediments and has not modified the Facility to

7  conform to accessibility standards. Defendant has intentionally maintained the Facility in its

8  current condition and has intentionally refrained from altering the Facility so that it complies

9  with the accessibility standards.

10     15.   Plaintiff further alleges that the (continued) presence of barriers at the Facility is

11  so obvious as to establish Defendant's discriminatory intent. On information and belief,

12  Plaintiff avers that evidence of this discriminatory intent includes Defendant's refusal to adhere

13  to relevant building standards; disregard for the building plans and permits issued for the

14  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

15  the Facility; decision not to remove barriers from the Facility; and allowance that Defendant's

16  property continues to exist in its non-compliant state. Plaintiff further alleges, on information

17  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

18  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

22     16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

23  this claim.

24     17.   Title III of the ADA holds as a "general rule" that no individual shall be

25  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

26  goods, services, facilities, privileges, and accommodations offered by any person who owns,

27  operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

28     18.   Defendant discriminated against Plaintiff by denying Plaintiff "full and equal

*Moore v. Hernandez, et al.*
Complaint

MLF0035015

EX. 49-12

1  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the
2  Facility during each visit and each incident of deterrence.

### Failure to Remove Architectural Barriers in an Existing Facility

4  19.    The ADA specifically prohibits failing to remove architectural barriers, which
5  are structural in nature, in existing facilities where such removal is readily achievable. 42
6  U.S.C. § 12182(b)(2)(A)(iv).

7  20.    When an entity can demonstrate that removal of a barrier is not readily
8  achievable, a failure to make goods, services, facilities, or accommodations available through
9  alternative methods is also specifically prohibited if these methods are readily achievable. Id.
10  § 12182(b)(2)(A)(v).

11  21.    Here, Plaintiff alleges that Defendant can easily remove the architectural
12  barriers at the Facility without much difficulty or expense, and that Defendant violated the
13  ADA by failing to remove those barriers, when it was readily achievable to do so.

14  22.    In the alternative, if it was not "readily achievable" for Defendant to remove the
15  Facility's barriers, then Defendant violated the ADA by failing to make the required services
16  available through alternative methods, which are readily achievable.

### Failure to Design and Construct an Accessible Facility

18  23.    Plaintiff alleges on information and belief that the Facility was designed and
19  constructed (or both) after January 26, 1992 – independently triggering access requirements
20  under Title III of the ADA.

21  24.    The ADA also prohibits designing and constructing facilities for first occupancy
22  after January 16, 1993, that aren't readily accessible to, and usable by, individuals with
23  disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

24  25.    Here, Defendant violated the ADA by designing and constructing (or both) the
25  Facility in a manner that was not readily accessible to the physically disabled public –
26  including Plaintiff – when it was structurally practical to do so.[1]

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a
private attorney general under either state or federal statutes.

*Moore v. Hernandez, et al.*
Complaint

MLF0035016

EX. 49-13

MLF0035017

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Failure to Make an Altered Facility Accessible</u>

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

28.     Here, Defendant altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendant violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendant violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

**VII.    SECOND CLAIM**

**Unruh Act**

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

*Moore v. Hernandez, et al.*
Complaint

EX. 49-14

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendant's aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendant's wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendant from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

### VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

MLF0035018

EX. 49-15

44.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.     Defendant's non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendant for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendant violated the ADA for the purposes of Unruh Act damages.

3.     Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.     Attorneys' fees, litigation expense, and costs of suit.[2]

5.     Interest at the legal rate from the date of the filing of this action.

6.     For such other and further relief as the Court deems proper.

Dated: January 20, 2015                    MOORE LAW FIRM, P.C.


*/s/ Tanya E. Moore*
Tanya E. Moore
Attorneys for Plaintiff
Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Hernandez, et al.*
Complaint

MLF0035019

EX. 49-16

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:   January 20, 2015            /s/  Ronald Moore
                                     Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                     /s/ Tanya E. Moore
                                     Tanya E. Moore, Attorney for
                                     Plaintiff, Ronald Moore

MLF0035020

EX. 49-17

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 1/20/15                              *Ronald Moore*
                                            Ronald Moore

*Moore v. Hernandez (Lennor's Barber Shop)*

MLF0035036

EX. 49-18

# Exhibit 50

Instagram
Menu

BIG 5 SPORTING GOODS #191
480 E Shaw Ave
Clovis  CA
559-297-8201

1805994           884      101      002

4547787  FROGG BEACH
              29.99       1          29.99
FOUND  OUTDOOR TWILL CAP
              7.99       1           7.99T

          SubTotal              37.98
          Sales Tax             $3.03
          TOTAL                 $41.01

          Cash                   41.01

          TAX    100101  7.9750%   3.03

4/13/12        6:36PM

THANK YOU FOR SHOPPING AT BIG 5

JOIN OUR E-TEAM TODAY &
    off your next purchase
www.big5sporting goods.com

          Join
www.Facebook.com/big5sportinggoods
    www.Twitter.com/big5sports

MLF0028361

EX. 50-2

*Walk in*
*6850*
*Office Visit*
*Rabies*

**Banfield**
PET HOSPITAL
Together for the life of your pet™

Sara Gravens, DVM
Associate Veterinarian

Mashawn Orth, DVM
Associate Veterinarian

470 Shaw Avenue   Clovis, CA  93612
PHONE: 559-297-9350   FAX: 559-297-4953   banfield.com

MLF0051624

EX. 50-3

IW pet mart VeB
office counters
way to high to reach
Go high cow ld Barely
talked to them.

MyYP.com    Valley Yellow Pages.

pets mart
Bathroom Door
Very very hard to
Open
Saw Access wrong
Ramp Bad

MyYP.com    Valley Yellow Pages.

MLF0051625

R Moore

# Leslie's Pool Supplies
## CLOVIS 166
490 SHAW AVE
CLOVIS, CA 93612-3807
(559)322-9945

Date 01/31/2012 Time 04:24pm

| Reg | Session# | Cashier | Trans# | Store |
|-----|----------|---------|--------|-------|
| 2 | 10785 | 11657 | 314327 | 166 |

SOLD TO:

Salesperson:
P. Gillio                              11657

| Item | Qty | Price | Amount |
|------|-----|-------|--------|
| 76949 | 1 | | |
| (D)AMERICAN NOODLE | | .99 | .99 |
| 76949 | 1 | | |
| (D)AMERICAN NOODLE | | .99 | .99 |
| 76949 | 1 | | |
| (D)AMERICAN NOODLE | | .99 | .99 |

SubTOTAL
Sales Tax                    2.97
Total                         .24
                             3.21

****** Sale ******

(10.00)

MLF0028057

EX. 50-5

01160



MLF0028058

No signs
No spots
Have to go ~~Down~~ Down
street to get onto
side walk Ramp
conter where you
pay is to High
~~door~~ Front Doors

KFC Kings Canyon
Sent 10-24-11.

↑

This note on
back of
this note

EX. 50-6



**CVS/pharmacy**

634 SHAW AVE
CLOVIS, CA 93612
559.299.01`5

REG#02 TRN#4652 CSHR#838581 STR#9801

ExtraCare Card #: ××××××#1006

| | |
|---|---|
| 1 CVS WET MOP C 15CT | 4.69T |
| 1 PLEDGE LEMON 12.5 | 5 79T |
| 1 PLEDGE LEMON 12.5 | 5 79T |
| 1 SE SHAPER Q J 1PK | 3.99T |
| 1 SE SHAPER Q N 1PK | 3.99T |

5 ITEMS

| | |
|---|---|
| SUBTOTAL | 24.25 |
| CA 7.975% TAX | 1.93 |
| TOTAL | 26.18 |
| CASH | 27 00 |
| CHANGE | .82 |

2509 8012 1084 6528 25
RETURNS WITH RECEIP THRU 06/16/2012

APRIL 17, 201`        7:28 PM

EARN 2% BACK ON ALMOS PERYTHING IN
THE STORE AND ON CVS COR WHEN YOU USE
YOUR EXTRACARE CARD

THANK YOU  SHOP 24 HOURS AT CVS.COM

MLF0028059

EX. 50-7

R. Moore

(removed from wallet-
me notes

still after all NDA lost.)

# CVS/pharmacy

634 SHAW AVE
CLOVIS, CA 93612
559.299.0115

REG#02 TRN#1333 CSHR#0842011 STR#9801

ExtraCare c. : #: ********8978

1 Digital Press Dak     -1.99T SAVED    5.00
1 CVS SLP AID R ...      8.89T

1 BSC HANUKKAH .         .49T SAVED     1.50
1 BSC HANUKKAH L ...     .49T SAVED     1.50
1 FIXODENT W/SC 22       5.29T
1 SALLY H IR RE 2040     8.99T

6 ITEMS
    SUBTOTAL            29.14
    CA 7.975% TAX        2.32
    TOTAL               31.46
    CASH                31.46
    CHANGE                .00



    2509 8012 0151 3330 27
RETURNS WITH RECEIPT THRU 03/15/2012

JANUARY 15, 2012          4:37 PM

TRIP SUMMARY:
    Today You Saved               8.00

F=FLEXIBLE SPENDING ACCT SUMMARY (FSA
    Health Care Eligible Total    5.71

**************************************

Levang go's into
Street
Ashe to pay
to small.
Digis
Bath Room Door

# CVS/pharmacy

634 SHAW AVE
CLOVIS, CA 93612
559.299.0115

REG#02 TRN#1335 CSHR#0842011 STR#9801

ExtraCare Card #: ********8978

1 EDY RAINBOW S 482     5.49F

    TOTAL               5.49
    CASH                5.49
    CHANGE               .00



    .9 8012 0151 3350 21
RETURNS WITH RECEIPT THRU 03/15/2012

JANUARY 15, 2012          4:42 PM

Earn 2% back on most everything
    in the store and on cvs.com
when you use your ExtraCare card.

THANK YOU. SHOP 24 HOURS AT CVS.COM

ExtraCare Card balance as of 01/10

MLF0028060

EX. 50-8



# CVS/pharmacy®

434 SHAW AVE
CLOVIS, CA  93612
569.299.0115

REG#02 TRN#6969 CSHR#0836410 STR#9801

ExtraCare Card #: ********8978

1 VIV Digital DVR          19.99T SAVED      20.00

   SUBTOTAL            19.99
   CA 7.975% TAX        1.59
   TOTAL               21.58
   CASH               100.00
   CHANGE              78.42

2509 8012 0316 9590 24
RETURNS WITH RECEIPT THRU 03/31/2012

JANUARY 31, 2012              4:06 PM

TRIP SUMMARY:
  Today You Saved             20.00

Earn 2% back on almost everything
  in the store and on cvs.com
when you use your ExtraCare card.

THANK YOU. SHOP 24 HOURS AT CVS.COM

ExtraCare Card balances as of 01/18

Winter 2012 Spending:          101:06

MLF0028061

EX. 50-9

R. Moore

**Smart&Final.**
*The Smaller Faster Warehouse Store*

*** Welcome To Our Clovis Store ***
Store # 412
**************************************
See Us On The WEB www.smartandfinal.com

Cashier: Landon

DATE 01/31/12          TIME 17:23:13

ORANGE 5# B 033383110059      1.95 F
  Was $3.99 / YOU SAVED -> $2.04
BBQ RIBS   078929100422      16.99 F
FSCALBLEND 041512081934       3.69 F
  Was $3.99 / YOU SAVED -> $.30

          SUBTOTAL         22.63
          SALES TAX          .00
          TOTAL            22.63

CASH          TENDER        25.00
CASH          CHANGE         2.37

TOTAL NUMBER OF ITEMS THIS VISIT--> 3

17:24:01   OP# 120610      01/31/12
Term:4   Trans # 203     Store # 412

THANK YOU FOR SHOPPING
YOUR CLOVIS SMART&FINAL
STORE MANAGER: ALLISON KAY RUIZ
1 (559) 298-4057

We want to know your thoughts
so we can serve you better.

Complete our customer survey
and be entered to win a

## $200 SmartCash Card

Please visit
http://www.smartandfinal.com/survey
Enter code 748291
within 5 days of this shop!

*No parkers
No Signs
No Rings
Front Door
Islec to small*

---

**Smart&Final.**
*The Smaller Faster Warehouse Store*

*** Welcome To Our Clovis Store ***
Store # 412
**************************************
See Us On The WEB www.smartandfinal.com

Cashier: Seth

DATE 01/15/12          TIME 16:07:25

FS STMBLE C 041512082238      .99 F
  Was $1.95 / YOU SAVED -> $.96
FS STMBLE B 041512082177      .99 F
  Was $1.95 / YOU SAVED -> $.96
PNCH COOLER 025000005619     1.99 F
Gatorade G1 052000320169     1.09 F
+CRV          10222           .10
Gatrade Fie 052000326734     1.09 F
+CRV          10222           .10
Mio Mango P 043000000762     3.99 F
Mio Sweet T 043000000854     3.99 F

          SUBTOTAL         14.33
          SALES TAX          .00
          TOTAL            14.33

CA            TENDER        20.00
CA                          5.67

---

**Smart&Final.**
*The Smaller Faster Warehouse Store*

*** Welcome To Our Clovis Store ***
Store # 412
**************************************
See Us On The WEB www.smartandfinal.com

Cashier: Nick

DATE 08/27/11          TIME 19:18:27

FS 24Pk Hot 041512012976     2.49 F
FS Mand Ora 041512085369     1.95 F
SPRING MIX  077745205243     3.99 F
FS Easy Sqz 041512082832      .99 F
  Was $1.25 / YOU SAVED -> $.26
NV Trail Mi 016000441404     6.99 F
FS Germicid 041512093838     1.49 F
  0.24 lb @ $ 1.29 / lb
TOMATO ROMA       4087        .31 F
BEEF FRANK  073183006596     7.99 F
BAKED BEANS 039400016175     3.19 F

          SUBTOTAL         30.99
          SALES TAX          .12
          TOTAL            31.11

MLF0028062

EX. 50-10

*Ron's new receipt
(2nd receipt)*

# Smart&Final.

### The Smaller Faster Warehouse Store

```
***  Welcome To Our Clovis Store  ***
            Store # 412
**********************************
    See Us On The WEB www.smartandfinal.com

Cashier: Kyle

DATE 04/17/12
                            TIME 18:52:22

   WNDR WW WID 045000111769
   PAP LEMN PE 009485000086         3.59 F
   LR Rstd Gar 728920131191         5.99 F
   FS HO 8.75  041512080586         2.49 F
   FS 16 Oz Re 041512089329         9.99 T
   Bounty Huge 037000817604        10.99 T
     Was $16.49/ YOU SAVED -> $3.50 12.99 T
   BULGA BUTTE 072935051600
   SMPLY APPL  025000055737         1.69 F
   CUP PORTION 074506101004         3.79 F
   CUP PORTION 074506101004         3.79 T
   CUP PORTION 074506101004         3.79 T
   CUP PORTION 074506101004         3.79 T
   Dole Pine/O 048500021156         3.79 T
     Was $3.19 / YOU SAVED -> $.20   2.99 F
   SMPLY APPL  025000055737
   O.J/W/CAL   025000026195         3.79 F
   BULGA BUTTE 072935051600         5.79 F
   Horizon Org 742365264955         1.69 F
                                    3.99 F

            SUBTOTAL               84.93
            SALES TAX               3.92
            TOTAL                  88.85
   CASH
   CASH          TENDER            100.00
                 CHANGE             11.15

TOTAL NUMBER OF ITEMS THIS VISIT--> 17

18:53:32    OP# 8119360            04/17/12
Term:1      Trans # 105      Store # 41.

        THANK YOU FOR SHOPPING
        YOUR CLOVIS SMART&FINAL
     STORE MANAGER: ALLISON KAY RUIZ
            (559) 298-4057
```

MLF0028063

EX. 50-11

# Smart&Final.

### The Smaller Faster Warehouse Store

***********************************************
See Us On The WEB www.smartandfinal.com

Cashier: Bibler

DATE 05/06/12                    TIME 17:53:38

| | |
|---|---|
| Steak & Cheese Bar | 9.99 F |
| Was $10.99/ YOU SAVED -> $1.00 | |
| Cornd Bf Brskt | 5.43 F |
| Was $10.07/ YOU SAVED -> $4.64 | |
| FJ Pork Back Ribs | 11.65 F |
| FF Chkn Tgh | 6.52 F |

| | |
|---|---|
| SUBTOTAL | 33.59 |
| SALES TAX | .00 |
| TOTAL | 33.59 |

| | | |
|---|---|---|
| CASH | TENDER | 34.00 |
| CASH | CHANGE | .41 |

TOTAL NUMBER OF ITEMS THIS VISIT--->   4

| | | |
|---|---|---|
| 17:54:31 | OP# 124499 | 05/06/12 |
| Term:3 | Trans # 132 | Store # 412 |

THANK YOU FOR SHOPPING
YOUR CLOVIS SMART&FINAL
STORE MANAGER: ALLISON KAY RUIZ
1 (559) 298-4057

***********************************************
We want to know your thoughts
so we can serve you better.

Complete our customer survey
and be entered to win a

## $200 SmartCash Card

Please visit
http://www.smartandfinal.com/survey
Enter code 112251
within 5 days of this shop!

MLF0028064

EX. 50-12



# Smart&Final.

### The Smaller Faster Warehouse Store

```
***  Welcome To Our Clovis Store  ***
            Store # 412
*********************************
See Us On The WEB www.smartandfinal.com

Cashier: Kyle

DATE 02/18/12              TIME 20:03:53

  MINI MFN VA 041512108587        3.99 F
  SNSHN CHZIT 024100440689        3.99 F
  grapes medl 654830000756        4.49 F
  Coff-Mate F 050000127665        3.59 F

             SUBTOTAL             16.06
             SALES TAX              .00
             TOTAL                16.06

CASH         TENDER              100.00
CASH         CHANGE               83.94

TOTAL NUMBER OF ITEMS THIS VISIT-->   4

20:04:40    OP# 8119360          02/18/12
Term:1      Trans # 111       Store # 412

       THANK YOU FOR SHOPPING
      YOUR CLOVIS SMART&FINAL
  STORE MANAGER: ALLISON KAY RUIZ
          1 (559) 298-4057


    We want to know your thoughts
     so we can serve you better.

    Complete our customer survey
     and be entered to win a
```

## $200 SmartCash Card

```
             Please visit
http://www.smartandfinal.com/survey
        Enter code 748291
    within 5 days of this shop!
```

MLF0028065

EX. 50-13



# PETSMART

**PETSMART** #0083
470 SHAW AVE
CLOVIS, CA 93612
559-297-9514
Visit us at PetSmart.com

SALE   T-1211 C-101101 0083/101
COMMUNITY CASHIER-433689

0073725724906 DOG TREAT          2.49
  PetPerks   (REG    4.99 )
  YOU SAVED 2.50  EA
0073725724906 DOG TREAT          2.49
  PetPerks   (REG    4.99 )
  YOU SAVED 2.50  EA
SUBTOTAL                         4.98
TAX 7.97%                        0.40
**TOTAL**                        **5.38**
MASTERCARD        (MSR)          5.38
  XXXXXXXXXXXX4370
R0981Z / Primary / 54464
TOTAL ITEMS SOLD:
TOTAL ITEMS RETURNED:0
CHANGE DUE                       0.00



1 2 1 1 0 0 8 3 1 0 1

02        05 : 1 : :

P.          TINGS      5.00
  Need        ion Information?
Call 1-          t (1-877-473-8762)
Get mor.         PetPerks membership
Update yo         . @ www.petperks.com

PetSmart Charities is a 501 (c) (3)
Non-Profit Org. If you donated today
keep this receipt for your tax record.

MLF0028066

EX. 50-14



**PETSMART #0083**
470 SHAW AVE
CLOVIS, CA 93612
559-297-9514
Visit us at PetSmart.com

SALE   T-3367 C-103103 0083/103
COMMUNITY CASHIER-420304

0001780013469 HLTH RAD 31      25.00
   PetPerks   (REG   28.99 )
   YOU SAVED 3.99  EA
0001780013469 HLTH RAD 31      25.00
   PetPerks   (REG   28.99 )
   YOU SAVED 3.99  EA
0073725724092 36X48 BED 0      71.99
   PetPerks   (REG   89.99 )
   YOU SAVED 18.00  EA

SUBTOTAL                      121.99
TAX 7.975%                      9.73
TOTAL                         131.72
CASH                          200.00
TOTAL ITEMS SOLD:3
TOTAL ITEMS RETURNED:0
CHANGE DUE                     68.28

RECEIPT VALID THROUGH 06/16/2012

3 3 6 7 0 0 3 3 1 0 3

04/17/2012      06:21 PM

PETPERKS SAVINGS              25.98
   Need Store Location Information?
Call 1-877-4PetSmart (1-877-473-8762)
Get more from your PetPerks membership
Update your email @ www.petperks.com

Phone Number: XXX-XXX-0798

PetSmart Charities is a 501 (c) (3)
Non-Profit Org. If you donated today
keep this receipt for your tax record.

Pet L
Appl

MLF0028067

EX. 50-15

N. Moore

## Left Receipt

**PETSMART**

PETSMART #0083
470 SHAW AVE
CLOVIS, CA 93612
559-297-9514
Visit us at PetSmart.com

SALE  T-9404 C-102102 0083/102
COMMUNITY CASHIER-143746

| 0073725721863 MEATY MAMMOT | 11.99 |
|---|---|
| 0073725721863 MEATY MAMMOT | 11.99 |

SUBTOTAL              23.98
TAX 7.97%             1.91
**TOTAL            25.89**
CASH                 2C.
TOTAL ITEMS SOLD:2
TOTAL ITEMS RETURNED:0
CHANGE DUE           0.1.

‖‖‖‖‖‖‖‖‖‖‖‖‖
9 4 0 4 0 0 8 3 1 0 2

01/20/2012    03:15 PM

Thanks for using your PetPerks card
Need Store Location Information?
Call 1-877-4PetSmart (1-877-473-8762)
Get more from your PetPerks membership
Update your email @ www.petperks.com

Phone Number: XXX-XXX- 

PetSmart Charities is   (3)
Non-Profit Org. If yo        day
keep this receipt fo         record.

Pet Lo
Apply a

## Right Receipt

**PETSMART**

PETSMART #0083
470 SHAW AVE
CLOVIS, CA 93612
559-297-9514
Visit us at PetSmart.com

SALE  T-9401 C-102102 0083/102
COMMUNITY CASHIER-143746

| 0003558577526 SQUEAKR DUMB | 9.49 |
|---|---|
| 0003558577526 SQUEAKR DUMB | 9.49 |
| 0007309182284 MINI PB BNS | 2.99 |

SUBTOTAL              21.97
TAX .97%              1.75
**TOTAL            23.72**
CASH                 25.0
TOTAL ITEMS SOLD:3
TOTAL ITEMS RETURNED:0
CHANGE DUE           1.28

‖‖‖‖‖‖‖‖‖‖‖‖‖
9 4 0 1 0 0 8 3

01/20/2012    0

Thanks for using          ard
Need Store Locati          ion?
Call 1-877-4PetSmart      473-8762)
Get more from your PetPerks membership
Update your email @ www.petperks.com

Phone  m    XXX-XXX-32  

PetSmart Charities is a 501 (c) (3)
Non-Profit Org. If you donated today
keep this receipt for your tax record.

Pet L               ed!
Appl              m

Pmys go's into
Stmat
credit card men
to High

MLF0028068

EX. 50-16

R. Moore

## Marshalls

540 Shaw Avenue
Clovis, CA  93612-3807
(559) 298-1296

01 - MISSY        015607463        29.99 T

SUBTOTAL                          $29.99
CA 7.975% Sales Tax                $2.39
TOTAL                             $32.38
CASH                              $40.00
CHANGE                             $7.62

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
MARSHALLS VALUES YOUR FEEDBACK!
Tell us what you think about
your visit today and
enter a monthly drawing to win a
$500 Marshalls Gift Card!

Visit www.MARSHALLSFEEDBACK.com

Respond by 02/14/12
You will need to reference
your receipt
Survey number: 0436014222
SEE WEBSITE FOR COMPLETE RULES
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*



9 0436 0142 2215 3703

ITEMS 1
0661
0436 01  4222 01/31/12  16:59:48        1061

THANK YOU FOR SHOPPING AT MARSHALLS
SEE YOU TOMORROW!
Refunds within 30 Days with Receipt
Store Credit Only With Gift Receipt
Other restrictions may apply

MLF0028069

EX. 50-17



# Marshalls.

540 Shaw Avenue
Clovis, CA 93612-3807
(559) 298-1296

01 - MISSY        015660631        29.99 T

SUBTOTAL                          $29.99
CA 7.975% Sales Tax                $2.39
TOTAL                             $32.38
CASH                              $40.00
CHANGE                             $7.62

* * * * * * * * * * * * * * * *
MARSHALLS VALUES YOUR FEEDBACK!
Tell us what you think about
your store visit today and
enter a monthly drawing to win a
$500 Marshalls Gift Card!

Visit www.MARSHALLSFEEDBACK.com

Respond by 03/03/12
You will need to reference
your receipt
Survey number: 0436041188
SEE WEBSITE FOR COMPLETE RULES
* * * * * * * * * * * * * * * *

9 0436 04 1188 1538 83

ITEMS 1
0414
0436 04  1188 02/18/12  19:54:16    1036

THANK YOU FOR SHOPPING AT MARSHALLS
SEE YOU TOMORROW!
Refunds within 30 Days with Receipt
Store Credit Only With Gift Receipt
Other restrictions may apply

MLF0028070

EX. 50-18

# Marshalls

540 Shaw Avenue
Clovis, CA  93612-3807
(559) 298-1296

| | | | |
|---|---|---|---|
| 28 - KIDS FTWR | 011536833 | 5.00 | T |
| 70 - GIRLS | 026315821 | 12.99 | T |
| 70 - GIRLS | 003915848 | 12.99 | T |
| 42 - KIDS BASICS | 017470621 | 7.99 | T |
| 70 - GIRLS | 026150664 | 9.99 | T |
| 70 - GIRLS | 003542877 | 5.99 | T |

| | |
|---|---|
| SUBTOTAL | $54.95 |
| CA 7.975% Sales Tax | $4.38 |
| TOTAL | $59.33 |
| CASH | $100.00 |
| CHANGE | $40.67 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
MARSHALLS VALUES YOUR FEEDBACK!
Tell us what you think about
your store visit today and
enter a monthly drawing to win a
$500 Marshalls Gift Card!

Visit www.MARSHALLSFEEDBACK.com

Respond by 03/03/12
You will need to reference
your receipt
Survey number: 0436041187
SEE WEBSITE FOR COMPLETE RULES
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

9 0 4 3 6 0 4 1 1 8 7 1 5 3 8 8 3

ITEMS 6
0414
0436 04  1187 02/18/12  19:53:14      1036

THANK YOU FOR SHOPPING AT MARSHALLS
SEE YOU TOMORROW!
Refunds within 30 Days with Receipt
Store Credit Only With Gift Receipt
Other restrictions may apply

MLF0028071

EX. 50-19

```
BIG 5 SPORTING GOODS - #101
480 E. Shaw Ave.
Clovis, CA 93612
559-297-8201

1729864      1  6878    101    002

2276442  NIKE SP TECH 1000 OFFCIAL
          20.00      1        20.00T

         Subtotal            20.00
         Sales Tax            $1.60
         TOTAL              $21.60

         Cash
         CHANGE (Amex)        5.40

   %       100101            1.60

1/20/12

========================================
    THANK YOU FOR SHOPPING AT BIG 5!
========================================

    JOIN OUR E-TEAM TODAY & SAVE
         off your next purchase!
    www.big5sportinggoods.com/eteam

            Join us on:
    www.Facebook.com/big5sportinggoods
      www.Twitter.com/big5since55
```

These are all in the same parking lot you talk to me about sign. Ramp going most no parking poors

cluttered aisles

MLF0028072

EX. 50-20



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

January 5, 2012

Mr. Ronald Moore
80 No. Hughes Ave.
Clovis, CA 93612

Re: O'Rielly Auto Parts

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facilities. If you visit the facilities again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for these matters. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Sent without signature to avoid delay*

Tanya Moore
Attorney at Law

MLF0028371

EX. 50-21

*Kee (notes - Hinds)*

**Notes for 01237-Moore**

**t/c with Ron - 08/17/2012**

He went to vet hospital inside the Petsmart and their counters are too high no lowered area, restroom door hard to open. Van accesible wrong.
Marshall's the dressroom door does not close all the way does not shut all by itself. when you are trying to get it out it keeps slamming on you as you are trying to get out. sign van accessible is wrong, have to get behind other cars to get to the ramp, ramp is steep, no marked path of travel. Exit door of Marshall's is very small going through the aisle and was in number 5 check out everybody from 1 to 5 going out the door the door smashed knuckle tried to move over and thewheel got stuck. the are in front of the counters is not wide enough to pass other paying customers. the door is very narrow. The bench is attached. Leslie's the front door, the bathroom door they have to keep it open for him to get in. The mirror too high, piepes under sink not wrapped and they had to open the door b/c he could not so he could leave, ramp goes down to the street. Bathroom door they had it open for him then he had to turn around and shut it. Sink not wrapped. Smart and Final - signs no ramp got a heavy dog food and the guy put it on his lap and he rolled out down the sink. bathroom door did not shut all the way. There is a faded handicapp spot in front ofit and there is no sign in front of Smart and Final. Check the vet hospital it is a separate business.

**Conference with Ron - 04/18/2012**

Ron could not find an accessible parking because the only available designated parking spaces were taken. Most of them taken by vehicles not displaying necessary tags. He goes to this shopping center very often because it is very close to his house and he shops there for food, including dog food. He says it is very difficult to find a parking space there every time he shops there. The parking spaces in existence don't display signs, are not properly identified and/or configured which makes most of them unusable to a wheelchair user. there is no connection with the sidewalk and buildings located within the same site.

5350870

MLF0028073

EX. 50-22



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

April 20, 2012

Ronald Moore
80 N. Hughes Avenue
Clovis, CA 93612

*Re:*    Petsmart, CVS, Big 5, Smart & Final and Marhsalls

Dear Mr. Morales,

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facilities. If you visit the facilities again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases".

I am enclosing a copy of the Fee Agreement for these matters. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact our office.

Sincerely,

*Sent without signature to avoid delay*

Tanya Moore
Attorney at Law

Encl.
TM:kp

MLF0028403

EX. 50-23

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
332 N. Second Street
San Jose, CA 95112
(408) 298-2000


I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against _____ O'Rielly Auto Parts _____

SIGN HERE

DATE: _____

_____
CLIENT'S SIGNATURE – Ronald Moore

_____
ADDRESS

_____
CITY

_____
TELEPHONE

DATE: _____

MOORE LAW FIRM, PC
ATTORNEY FOR

MLF0028372

EX. 50-24

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
332 N. Second Street
San Jose, CA 95112
(408) 298-2000

THIS AGREEMENT, made this January 5, 2012 at **San Jose, CA**, by and between <u>RONALD MOORE</u> hereinafter designated as "Client," and **the Moore Law Firm, PC**, hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case against <u>**O'Reilly Auto Parts**</u> and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

MLF0028373

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0028374

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

## FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)    Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)   Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)  In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)  In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)   The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0028375

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u>      .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0028376

EX. 50-28

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0028377

incurred or advanced.  Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour.  In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e).  Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s).  Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs.  If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7.  SETTLEMENT:  Client acknowledges that no settlement shall be made without the consent of both Client and Attorney.  Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income.  Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8.  Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement.  If more than one Client, this agreement may be signed in counterparts.  Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial                    _____Initial

MLF0028378

EX. 50-30

DATE:_____

CLIENT'S SIGNATURE

SIGN HERE

DATE:_____

_____
CLIENT'S SIGNATURE

_____
ADDRESS

_____
CITY

_____
TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____

MOORE LAW FIRM, PC

_____
ATTORNEY FOR

MLF0028379

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

332 N. Second Street
San Jose, CA  95112
(408) 298-2000


I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against ___ O'Rielly Auto Parts _____

DATE: _1/17/12_

_Ronald Moore_
CLIENT'S SIGNATURE – Ronald Moore

_80 N Hughes_
ADDRESS

_Clovis CA 93612_
CITY

_559 298 3228_
TELEPHONE


DATE: _____

MOORE LAW FIRM, PC
ATTORNEY FOR

MLF0028380

DATE: _1/17/12_

_Ronald Moore_
CLIENT'S SIGNATURE

DATE: _1/17/12_

_Ronell Moore_
CLIENT'S SIGNATURE

_80 n Hughes_
ADDRESS

_Clovis Ca 93612_
CITY

_____
TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____          MOORE LAW FIRM, PC

                              _____
                              ATTORNEY FOR

MLF0028381

EX. 50-33



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

April 20, 2012

Ronald Moore
80 N. Hughes Avenue
Clovis, CA 93612

*Re:*  Petsmart, CVS, Big 5, Smart & Final and Marhsalls

Dear Mr. Morales,

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facilities.  If you visit the facilities again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office.  Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases".

I am enclosing a copy of the Fee Agreement for these matters.  Please review these documents and keep a copy for your records.  Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact our office.

Sincerely,

*Sent without signature to avoid delay*

Tanya Moore
Attorney at Law

Encl.
TM:kp

MLF0028382

EX. 50-34

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

      I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against __CVS__

DATE: 4/__/12

                 _____

                 CLIENT'S SIGNATURE – Ronald Moore

                 _____

                 ADDRESS

                 _____

                 CITY

                 _____

                 TELEPHONE

DATE:_____

                 MOORE LAW FIRM, PC
                 ATTORNEY FOR

MLF0028383

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
### 332 N. Second Street
### San Jose, CA 95112
### (408) 298-2000

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against  Petsmart, 470 Shaw Avenue.

DATE: 4/25/12

_Ronald Moore_
CLIENT'S SIGNATURE – Ronald Moore

_Ronald Moore_
ADDRESS

_Clovis_
CITY

_55 29 83 228_
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR

MLF0028384

EX. 50-36

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____ Initial          _____ Initial

MLF0028385

DATE: 4/25/12    _Ronald Moore_
                 CLIENT'S SIGNATURE

DATE: 4/25/12    _Ronald Moore_
                 CLIENT'S NAME

                 _80 n Hughs_
                 ADDRESS

                 _Clovis CA 93612_
                 CITY

                 _559 228 3228_
                 TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)


DATE:_____    MOORE LAW FIRM, PC


                        _____
                        ATTORNEY FOR RONALD MOORE

MLF0028386

EX. 50-38

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
### 332 N. Second Street
### San Jose, CA 95112
### (408) 298-2000

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against _Marshalls, 540 Shaw Avenue._

DATE: 4/25/12

_Ronald Moore_
CLIENT'S SIGNATURE – Ronald Moore

_86 n Hughes_
ADDRESS

_Clovis CA 93612_
CITY

_559 288 3228_
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR

MLF0028387

EX. 50-39

.incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial          _____Initial

MLF0028388

DATE: _4/28/12_          _Ronald Moore_
                         CLIENT'S SIGNATURE

DATE: _4/28/12_          _Ronald Moore_
                         CLIENT'S NAME

                         _80 N Hughs_
                         ADDRESS

                         _Clovis CA 93612_
                         CITY

                         _55 9283228_
                         TELEPHONE


MY WITNESS(S) ARE _____
(if none please indicate so)



DATE:_____      MOORE LAW FIRM, PC


                          _____
                          ATTORNEY FOR RONALD MOORE

MLF0028389

EX. 50-41

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
### 332 N. Second Street
### San Jose, CA 95112
### (408) 298-2000


I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against   Smart and Final.


DATE: 4/25/12

_Ronald Moore_
CLIENT'S SIGNATURE – Ronald Moore

_80 N Hughes_
ADDRESS

_Clovis CA 93612_
CITY

_559 288 3220_
TELEPHONE


DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR

MLF0028390

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial          _____Initial

MLFO0028391

DATE: *4/25/12*

*Ronald Moore* ‾
CLIENT'S SIGNATURE

DATE: *4/25/12*

*Ronald Moore*
CLIENT'S NAME

*80 N Hughs*
ADDRESS

*Clovis CA 93612*
CITY

*559 298 3228*
TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____

MOORE LAW FIRM, PC


_____
ATTORNEY FOR RONALD MOORE

MLF0028392

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

        I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against _Big 5, 480 Shaw Avenue._

DATE: 4/25/12

        _Ronald Moore_
CLIENT'S SIGNATURE – Ronald Moore

ADDRESS

CITY

TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR

MLF0028393

EX. 50-45

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial          _____Initial

MLF0028394

DATE: 4/25/12      _Ronald Moore_
                                CLIENT'S SIGNATURE

DATE: 4/25/12      _Ronald Moore_
                                CLIENT'S NAME

                           _80 N Hughes_
                                  ADDRESS

                           _Clovis CA 93612_
                                  CITY

                           _559 2983228_
                                  TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____        MOORE LAW FIRM, PC

                           _____
                           ATTORNEY FOR RONALD MOORE

MLF0028395

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA  95112**
**(408) 298-2000**

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against  CVS

DATE: 4/2/12

*Ronald Moore*
CLIENT'S SIGNATURE – Ronald Moore

*80 N Hughes*
ADDRESS

*Clovis CA 93612*
CITY

*559 298 3228*
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR

MLF0028396

EX. 50-48

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial        _____Initial

MLF0028397

DATE: 4/25/12        _Ronald Moore_
                     CLIENT'S SIGNATURE

DATE: 4/25/12        _Ronald Moore_
                     CLIENT'S NAME

                     _80 N Hughs_
                     ADDRESS

                     _Clovis CA 93612_
                     CITY

                     _559 2983228_
                     TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)


DATE: _____        MOORE LAW FIRM, PC


                              _____
                              ATTORNEY FOR RONALD MOORE


MLF0028398



# MOORE LAW FIRM
## P R O F E S S I O N A L   C O R P O R A T I O N

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

April 20, 2012

Ronald Moore
80 N. Hughes Avenue
Clovis, CA 93612

*Re:* Petsmart, CVS, Big 5, Smart & Final and Marhsalls

Dear Mr. Morales,

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facilities. If you visit the facilities again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases".

I am enclosing a copy of the Fee Agreement for these matters. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact our office.

Sincerely,

*Sent without signature to avoid delay*

Tanya Moore
Attorney at Law

Encl.
TM:kp

MLF0028399

EX. 50-51

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
### 332 N. Second Street
### San Jose, CA  95112
### (408) 298-2000


     I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against  Petsmart, 470 Shaw Avenue.


DATE:  4/__/12

                            _____
                            CLIENT'S SIGNATURE ~ Ronald Moore

                            _____
                            ADDRESS

                            _____
                            CITY

                            _____
                            TELEPHONE


DATE:_____

                            MOORE LAW FIRM, PC
                            ATTORNEY FOR

**MLF0028400**



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

April 20, 2012

Ronald Moore
80 N. Hughes Avenue
Clovis, CA 93612

*Re:* Petsmart, CVS, Big 5, Smart & Final and Marhsalls

Dear Mr. Morales,

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facilities. If you visit the facilities again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases".

I am enclosing a copy of the Fee Agreement for these matters. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact our office.

Sincerely,

*Sent without signature to avoid delay*

Tanya Moore
Attorney at Law

Encl.
TM:kp

MLF0028401

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
332 N. Second Street
San Jose, CA 95112
(408) 298-2000

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against Smart and Final.

DATE: 4/__/12

_____
CLIENT'S SIGNATURE – Ronald Moore

_____
ADDRESS

_____
CITY

_____
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR

MLF0028402

EX. 50-54



# MOORE LAW FIRM
## P R O F E S S I O N A L    C O R P O R A T I O N

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

April 20, 2012

Ronald Moore
80 N. Hughes Avenue
Clovis, CA 93612

    *Re:*   Petsmart, CVS, Big 5, Smart & Final and Marhsalls

Dear Mr. Morales,

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facilities. If you visit the facilities again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases".

I am enclosing a copy of the Fee Agreement for these matters. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact our office.

Sincerely,

*Sent without signature to avoid delay*

Tanya Moore
Attorney at Law

Encl.
TM:kp

MLF0028403

EX. 50-55

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
### 332 N. Second Street
### San Jose, CA 95112
### (408) 298-2000


   I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against  Big 5, 480 Shaw Avenue.


DATE:  4/__/12

_____
CLIENT'S SIGNATURE – Ronald Moore

_____
ADDRESS

_____
CITY

_____
TELEPHONE


DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR


MLF0028404

EX. 50-56

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

332 N. Second Street
San Jose, CA 95112
(408) 298-2000

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against  CVS

DATE: 4/__/12

_____
CLIENT'S SIGNATURE – Ronald Moore

_____
ADDRESS

_____
CITY

_____
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR

MLF0028405

EX. 50-57



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
Attorney at Law

Marejka Sacks
Paralegal

April 20, 2012

Ronald Moore
80 N. Hughes Avenue
Clovis, CA 93612

  *Re:*   Petsmart, CVS, Big 5, Smart & Final and Marhsalls

Dear Mr. Morales,

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facilities. If you visit the facilities again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases".

I am enclosing a copy of the Fee Agreement for these matters. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact our office.

Sincerely,

*Sent without signature to avoid delay*

Tanya Moore
Attorney at Law

Encl.
TM:kp

MLF0028406

EX. 50-58

332 N. Second Street, San Jose, CA  95112
Tel: (408) 271-6600
Fax: (408) 298-6046

**Moore Law Firm**

# Fax



| **To:** | Ronald Moore | **From:** | Mary Gray |
|---|---|---|---|
| **Fax:** | (559) 298-3228 | **Pages:** | 10 |
| **Phone:** | (559) 298-3228 | **Date:** | August 10, 2012 |
| **Re:** | Hinds Investments, LP, et al. | | |

Please find attached Pages 4 through 12 of the Complaint.

Thank you and have a great weekend.

Mary

**CONFIDENTIAL:** This fax is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any use, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please call the sender at the indicated phone number.

MLF0028076

EX. 50-59

**Notes for 01237-Moore**

**t/c with Ron - 08/17/2012**

He went to vet hospital inside the Petsmart and their counters are too high no lowered area, restroom door hard to open. Van accessible wrong. Marshall's the dressroom door does not close all the way does not shut all by itself. when you are trying to get out it keeps slamming on you as you are trying to get out. sign van accessible is wrong, have to get behind other cars to get to the ramp, ramp is steep, no marked path of travel. Exit door of Marshall's is very small going through the aisle and was in number 5 check out everybody from 1 to 5 going out the door the door smashed knuckle tried to move over and thewheel got stuck. the are in front of the counters is not wide enough for him to pass other paying customers. the door is very narrow. The bench is attached. Leslie's the front door, the bathroom door they have to keep it open for him to get in. The mirror too high, piepes under sink not wrapped and they had to open the door b/c he could not so he could leave, ramp goes down to the street. Bathroom door they had it open for him then he had to turn around and shut it. Sink not wrapped. Smart and Final - signs no ramp got a heavy dog food and the guy put it on his lap and he rolled out down the sink. bathroom door did not shut all the way. There is a faded handicapp spot in front ofit and there is no sign in front of Smart and Final. Check the vet hospital it is a separate business.

**Conference with Ron - 04/18/2012**

Ron could not find an accessible parking because the only available designated parking spaces were taken. Most of them taken by vehicles not displaying necessary tags. He goes to this shopping center very often because it is very close to his house and he shops there for food, including dog food. He says it is very difficult to find a parking space there every time he shops there. The parking spaces in existence don't display signs, are not properly identified and/or configured which makes most of them unusable to a wheelchair user. there is no connection with the sidewalk and buildings located within the same site.

MLF0028074

EX. 50-60

1    12.    The Big 5 Defendant owns, operates, manages and/or leases the Big 5

2  Facility, and consists of a person (persons), firm, and/or corporation.

3    13.    Plaintiff requires the use of a wheelchair when traveling about in public.

4  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

5  United States laws, and a member of the public whose rights are protected by these laws.

6              **V.    FACTS**

7    14.    470 – 634 E. Shaw Avenue Common Areas Facility is a public accommodation

8  facility, open to the public, which is intended for nonresidential use and whose operation

9  affects commerce.

10    15.    CVS Pharmacy Facility is a public accommodation facility, open to the

11  public, which is intended for nonresidential use and whose operation affects commerce.

12    16.    Smart & Final Facility is a public accommodation facility, open to the public,

13  which is intended for nonresidential use and whose operation affects commerce.

14    17.    Petsmart Facility is a public accommodation facility, open to the public,

15  which is intended for nonresidential use and whose operation affects commerce.

16    18.    Marshalls Facility is a public accommodation facility, open to the public,

17  which is intended for nonresidential use and whose operation affects commerce.

18    19.    Big Five Sporting Goods Facility is a public accommodation facility, open to

19  the public, which is intended for nonresidential use and whose operation affects commerce.

20    20.    Plaintiff visited the Facilities and encountered barriers (both physical and

21  intangible) that interfered with, if not outright denied, his ability to use and enjoy the goods,

22  services, privileges and accommodations offered at the Facilities.

23  **470 – 634 E. SHAW AVENUE COMMON AREAS FACILITY**

24    21.    While visiting 470 – 634 E. Shaw Avenue Common Areas Facility, Plaintiff

25  personally encountered the following barriers:

26    a) Plaintiff was not able to find an accessible parking available to him and had to wait

27  until another vehicle which was not displaying any required license plates or placards left the

28  designated parking space;

*Moore v. Hinds Investments LP, et al.*                 Complaint

MLF0028077

EX. 50-61

1        b)     After parking in the designated parking space Plaintiff discovered that the

2 parking space was improperly configured and Plaintiff experienced difficulty when transferring

3 onto his wheelchair;

4        c)     Plaintiff then attempted to ascend the ramp adjacent to the parking space only

5 to find out that it was very steep and had an uneven and warped surface making his ascent very

6 difficult;

7        d)     Plaintiff encountered multiple obstacles in the way of his wheelchair as he

8 attempted to use the sidewalk connecting the Facilities;

9        e)     After exiting the store Plaintiff in his wheelchair used the illegal built up ramp

10 to descend from the curb and was propelled forward into the lane of traffic where he was

11 almost hit by a car;

12        f)     Plaintiff could not locate any safe accessible route to traverse the parking lot on

13 his way to a public sidewalk.

14        22.     Plaintiff was, and continues to be, deterred from visiting 470 – 634 E. Shaw

15 Avenue Common Areas Facility because Plaintiff knows that the Facility's goods, services,

16 facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff

17 due to his physical disabilities. Plaintiff enjoys the goods and services offered at 470 – 634 E.

18 Shaw Avenue Common Areas Facility, lives nearby, and will return to 470 – 634 E. Shaw

19 Avenue Common Areas Facility once the barriers are removed.

20        23.     470 – 634 E. Shaw Avenue Common Areas Defendant knew, or should

21 have known, that these elements and areas of the Facility were inaccessible, violate state and

22 federal law, and interfere with (or deny) access to the physically disabled.  Moreover, 470 –

23 634 E. Shaw Avenue Common Areas Defendant has the financial resources to remove these

24 barriers from the Facility (without much difficulty or expense), and make the Facility

25 accessible to the physically disabled.  To date, however, Defendant refuses to either remove

26 those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

27        24.     At all relevant times, 470 – 634 E. Shaw Avenue Common Areas Defendant

28 has possessed and enjoyed sufficient control and authority to modify 470 – 634 E. Shaw

Avenue Common Areas Facility to remove impediments to wheelchair access and to comply

*Moore v. Hinds Investments LP, et al.*                      Complaint

MLF0028078

EX. 50-62

1    with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.

2    Defendant has not removed such impediments and has not modified the Facility to conform

3    to accessibility standards. Defendant has intentionally maintained 470 – 634 E. Shaw

4    Avenue Common Areas Facility in its current condition and has intentionally refrained from

5    altering 470 – 634 E. Shaw Avenue Common Areas Facility so that it complies with the

6    accessibility standards.

7    **CVS PHARMACY FACILITY**

8        25.    While visiting CVS Pharmacy Facility, Plaintiff personally encountered the

9    following barriers:

10          a)    Plaintiff had difficulty controlling his transfer from his vehicle onto his

11             wheelchair because of the surface of the loading and unloading aisle was

12             warped and sloped;

13          b)    Plaintiff then had to ascend the illegal built up ramp which was very

14             steep and contained uneven surface in order to get to the entrance of the

15             CVS Pharmacy Facility;

16          c)    Once inside Plaintiff looked for an accessible restroom but could not

17             find any signs indicating its location and had to traverse the Facility in

18             his wheelchair as he was looking for the restroom;

19          d)    Plaintiff was not able to use toilet seat because the dispenser was located

20             outside of his reach.

21        26.    Plaintiff was, and continues to be, deterred from visiting CVS Pharmacy

22    Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges,

23    advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's

24    physical Disabilities. Plaintiff enjoys the goods and services offered at CVS Pharmacy

25    Facility, lives nearby, and will return to CVS Pharmacy Facility once the barriers are

26    removed.

27        27.    Defendant CVS Pharmacy knew, or should have known, that these elements

28    and areas of CVS Pharmacy Facility were inaccessible, violate state and federal law, and

       interfere with (or deny) access to the physically disabled. Moreover, Defendant CVS

*Moore v. Hinds Investments LP, et al.*             Complaint

MLF0028079

EX. 50-63

1 Pharmacy has the financial resources to remove these barriers from the Facility (without
2 much difficulty or expense), and make CVS Pharmacy Facility accessible to the physically
3 disabled.   To date, however, CVS Pharmacy Defendant refuses to either remove those
4 barriers or seek an unreasonable hardship exemption to excuse non-compliance.

5     28.    At all relevant times, Defendant CVS Pharmacy has possessed and enjoyed
6 sufficient control and authority to modify CVS Pharmacy Facility to remove impediments to
7 wheelchair access and to comply with the Americans with Disabilities Act Accessibility
8 Guidelines and Title 24 regulations.  Defendant CVS Pharmacy has not removed such
9 impediments and has not modified CVS Pharmacy Facility to conform to accessibility
10 standards. Defendant CVS Pharmacy has intentionally maintained CVS Pharmacy Facility
11 in its current condition and have intentionally refrained from altering CVS Pharmacy Facility
12 so that it complies with the accessibility standards.

13 **SMART & FINAL FACILITY**

14     29.    While visiting Smart & Final Facility, Plaintiff personally encountered the
15 following barriers:

16     a)    While transferring to a wheelchair from his vehicle parked in front of the
17 entrance to the Smart & Final Facility Plaintiff  lost control of his wheelchair and
18 almost fell to the ground because of the uneven and sloped surface of the access aisle;

19     b)    Plaintiff attempted to get help to get merchandise from the shelf but could not
20 do it without assistance, requested assistance however none was provided to him by
21 employees;

22     c)    In order to pay for his groceries Plaintiff attempted to use a cashier register
23 which was marked accessible only to find that the register was closed and he had to
24 seek assistance from his family member to pay for his groceries.

25     30.    Plaintiff was, and continues to be, deterred from visiting Smart & Final
26 Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges,
27 advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's
28 physical disabilities. Plaintiff enjoys the goods and services offered at Smart & Final

MLF0028080

EX. 50-64

1  Facility, lives nearby, and will return to Smart & Final Facility once the barriers are
2  removed.

3      31.    Defendant Smart & Final knew, or should have known, that these elements
4  and areas of the Facility were inaccessible, violate state and federal law, and interfere with
5  (or deny) access to the physically disabled.  Moreover, Defendant Smart & Final has the
6  financial resources to remove these barriers from Smart & Final Facility (without much
7  difficulty or expense), and make Smart & Final Facility accessible to the physically disabled.
8  To date, however, Defendant Smart & Final refuses to either remove those barriers or seek
9  an unreasonable hardship exemption to excuse non-compliance.

10     32.    At all relevant times, Defendant Smart & Final has possessed and enjoyed
11 sufficient control and authority to modify Smart & Final Facility to remove impediments to
12 wheelchair access and to comply with the Americans with Disabilities Act Accessibility
13 Guidelines and Title 24 regulations.  Defendant Smart & Final has not removed such
14 impediments and has not modified  Smart & Final Facility to conform to accessibility
15 standards.  Defendant Smart & Final has intentionally maintained Smart & Final Facility in
16 its current condition and have intentionally refrained from altering Smart & Final Facility so
17 that it complies with the accessibility standards.

18 **PETSMART FACILITY**

19     33.    While visiting Petsmart Facility, Plaintiff personally encountered the
20 following barriers:

21     a)     On more than one occasion during his visits to the Petsmart Facility Plaintiff
22 was not able to find an accessible parking next to the entrance of the Petsmart and had to wait
23 until other vehicles not displaying required license plates or placards left the designated
24 parking space;

25     b)     After parking in the designated parking space Plaintiff discovered that the
26 parking space was improperly configured and Plaintiff experienced difficulty when transferring
27 onto his wheelchair;

28

*Moore v. Hinds Investments LP, et al.*                    Complaint

Page 8

MLF0028081

EX. 50-65

c)      Plaintiff then attempted to ascend the ramp adjacent to the parking space only to find out that it was very steep and had an uneven and warped surface making his ascent very difficult;

d)      After exiting the store Plaintiff in his wheelchair used the illegal built up ramp to descend from the curb and was propelled forward into the lane of traffic where he was almost hit by a car;

e)      Once inside the Facility Plaintiff found that many of the merchandise on display is located out of his reach;

f)      Although most service counters in the Petsmart Facility contained a lowered portion Plaintiff was still required to use the service counters that were out of his reach;

g)      When paying for the goods purchased Plaintiff discovered that the credit card machine was installed too high for his reach and was not able to see its display;

h)      Plaintiff looked for an accessible restroom but could not find any signs indicating its location and had to traverse the Facility in his wheelchair as he was looking for the restroom;

i)      Once inside the restroom Plaintiff discovered that the restroom stall was not equipped with an automatic closer and Plaintiff had to turn his wheelchair around, exit the stall and pull the door toward him as he was backing into the stall in his wheelchair in order to close the door;

j)      Plaintiff was not able to use the toilet seat dispenser because it was out of reach and had to use toilet paper to cover the seat;

k)      Plaintiff was not able to use soap or paper towels provided in the restroom because these accessories were placed out of his reach.

34.      Plaintiff was, and continues to be, deterred from visiting Petsmart Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at Facility, lives nearby, and will return to Petsmart Facility once the barriers are removed.

*Moore v. Hinds Investments LP, et al.*                        Complaint

MLF0028082

EX. 50-66

1  35.  Petsmart Defendant knew, or should have known, that these elements and
2  areas of the Facility were inaccessible, violate state and federal law, and interfere with (or
3  deny) access to the physically disabled.  Moreover, Defendant Petsmart has the financial
4  resources to remove these barriers from Petsmart Facility (without much difficulty or
5  expense), and make the Facility accessible to the physically disabled.  To date, however,
6  Defendant Petsmart Facility refuses to either remove those barriers or seek an unreasonable
7  hardship exemption to excuse non-compliance.

8  36.  At all relevant times, Defendant Petsmart has possessed and enjoyed
9  sufficient control and authority to modify the Facility to remove impediments to wheelchair
10  access and to comply with the Americans with Disabilities Act Accessibility Guidelines and
11  Title 24 regulations.  Defendant Petsmart has not removed such impediments and has not
12  modified Petsmart Facility to conform to accessibility standards.  Defendant has intentionally
13  maintained Petsmart Facility in its current condition and have intentionally refrained from
14  altering the Facility so that it complies with the accessibility standards.

15  **MARSHALLS FACILITY**

16  37.  While visiting Marshalls Facility, Plaintiff personally encountered the
17  following barriers:

18  a)  Plaintiff could not find accessible parking next to the entrance of the
19  Marshalls Facility and the designated parking provided contained no access aisle and
20  Plaintiff had to park far away from the entrance to the facility;

21  b)  Plaintiff then attempted to use the sidewalk only to find out that it was
22  blocked and he had to go around and travel in his wheelchair behind other parked
23  vehicles to get to the entrance of the facility;

24  c)  Once inside ???

25
26
27
28

*Moore v. Hinds Investments LP, et al.*                                    Complaint

Page 10

MLF0028083

EX. 50-67

1       38.    Plaintiff was, and continues to be, deterred from visiting Marshalls Facility

2 because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages,

3 and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical

4 disabilities. Plaintiff enjoys the goods and services offered at Marshalls Facility, lives

5 nearby, and will return to Marshalls Facility once the barriers are removed.

6       39.    Defendant Marshalls knew, or should have known, that these elements and

7 areas of Marshalls Facility were inaccessible, violate state and federal law, and interfere with

8 (or deny) access to the physically disabled. Moreover, Defendant Marshalls has the financial

9 resources to remove these barriers from Marshalls Facility (without much difficulty or

10 expense), and make Marshalls Facility accessible to the physically disabled.  To date,

11 however, Defendant Marshalls refuses to either remove those barriers or seek an

12 unreasonable hardship exemption to excuse non-compliance.

13       40.    At all relevant times, Defendant Marshalls has possessed and enjoyed

14 sufficient control and authority to modify Marshalls Facility to remove impediments to

15 wheelchair access and to comply with the Americans with Disabilities Act Accessibility

16 Guidelines and Title 24 regulations.  Defendant Marshalls has not removed such

17 impediments and has not modified Marshalls Facility to conform to accessibility standards.

18 Defendant Marshalls has intentionally maintained Marshalls Facility in its current condition

19 and has intentionally refrained from altering Marshalls Facility so that it complies with the

20 accessibility standards.

21 **BIG 5 SPORTING GOODS FACILITY**

22       41.    While visiting Big 5 Sporting Goods Facility, Plaintiff personally encountered

23 the following barriers:

24       a)    Plaintiff was not able to locate any accessible parking spaces located next to

25 the entrance of the Big 5 Facility and had to park away from the entrance to the Big 5

26 Facility;

27       b)    On his way to the Big 5 Facility Plaintiff encountered multiple obstacles

28 obstructing the path of travel and had to move shopping carts in order to get to the entrance;

*Moore v. Hinds Investments LP, et al.*                          Complaint

MLF0028084

EX. 50-68

1     c)     Once inside the Big 5 Facility Plaintiff encountered more obstructions on the
2  sales floor and had to maneuver his wheelchair around such obstructions through cluttered
3  aisles in order to view the merchandise on the display in the facility and could not view most
4  of it because of the obstructions;

5     d)     Plaintiff also discovered that the accessible route to the public restroom
6  leading through the storage area was also obstructed and had to move items and boxes out of
7  his way in order to reach the restroom;

8     e)     Plaintiff was hesitant to enter the restroom because it was not clearly
9  identified as accessible and because the door was obstructed and lacked necessary wheelchair
10  clearance;

11     f)     Plaintiff sought assistance to enter the restroom only to encounter more
12  obstructions of the clear floor space around the toilet, including various cleaning equipment,
13  boxes and stored merchandise;

14     g)     Plaintiff then experienced problems getting back to the sales floor due to the
15  lack of wheelchair clearance;

16     h)     Plaintiff could not locate an accessible cashier counter and experienced
17  difficulty when paying for his purchases because the counter was cluttered and blocked by
18  merchandise.

19     42.    Plaintiff was, and continues to be, deterred from visiting Big 5 Sporting
20  Goods Facility because Plaintiff knows that the Facility's goods, services, facilities,
21  privileges, advantages, and accommodations were and are unavailable to Plaintiff due to
22  Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at Big 5
23  Sporting Goods Facility, lives nearby, and will return to Big 5 Sporting Goods Facility once
24  the barriers are removed.

25     43.    Defendant Big 5 Sporting Goods knew, or should have known, that these
26  elements and areas of Big 5 Sporting Goods Facility were inaccessible, violate state and
27  federal law, and interfere with (or deny) access to the physically disabled. Moreover,
28  Defendant Big 5 Sporting Goods has the financial resources to remove these barriers from
Big 5 Sporting Goods Facility (without much difficulty or expense), and make Big 5

*Moore v. Hinds Investments LP, et al.*                    Complaint

MLF0028085

EX. 50-69

1   Tanya E. Moore, SBN 206683
    MOORE LAW FIRM, P.C.
2   332 North Second Street
    San Jose, California 95112
3   Telephone (408) 298-2000
    Facsimile (408) 298-6046
4   E-mail:  tanya@moorelawfirm.com

5   Attorneys for Plaintiff
    RONALD MOORE
6

7

8                 UNITED STATES DISTRICT COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10

11  RONALD MOORE,                      )   No.
                                       )
12         Plaintiff,                   )   COMPLAINT ASSERTING DENIAL OF
                                       )   RIGHT OF ACCESS UNDER
13     vs.                             )   AMERICANS WITH DISABILITIES ACT
                                       )   FOR INJUNCTIVE RELIEF,
14  HINDS INVESTMENTS, L.P.; LONGS     )   DECLARATORY RELIEF, DAMAGES,
    DRUG STORES CALIFORNIA, L.L.C. dba )   ATTORNEYS' FEES AND COSTS (ADA)
15  CVS PHARMACY; SMART & FINAL        )
    STORES, LLC dba SMART & FINAL #412;)
16  PETSMART, INC. dba PETSMART #0083; )
    LESLIE'S POOLMART, INC.; BIG FIVE  )
17  CORPORATION dba BIG FIVE SPORTING  )
    GOODS #101,                        )
18                                     )
           Defendants.                 )
19                                     )
                                       )
20  _____)

21

22                     I.  SUMMARY

23         1.    This is a civil rights action by plaintiff Ronald Moore ("Plaintiff") for

24  discrimination at the building, structure, facility, complex, property, land, development,

25  and/or surrounding business complex known as:

26         a)    CVS Pharmacy
                 634 Shaw Avenue
27               Clovis, CA 93612
                 (hereinafter "CVS Pharmacy Facility")
28

*Moore v. Hinds Investments L.P., et al.*                          Complaint

Page 1

MLF0028473

EX. 50-70

1      b)    Smart & Final #412
2             534 Shaw Avenue
             Clovis, CA 93612
3             (hereinafter "Smart & Final Facility")

4      c)    PetSmart #0083
5             470 Shaw Avenue
             Clovis, CA 93612
6             (hereinafter "PetSmart Facility")

7      d)    Leslie's Pool Supplies
8             490 Shaw Avenue
             Clovis, CA 93612
9             (hereinafter "Leslie's Facility")

10     e)    Big 5 Sporting Goods #101
11            480 E. Shaw Avenue
            Clovis, CA 93612
12            (hereinafter "Big 5 Facility")

13    The above-named facilities are collectively hereinafter referred to as "Facilities."

14        2.      Pursuant to the Americans with Disabilities Act of 1990, (42 U.S.C. §§ 12101 et

15 seq. "ADA"), and related California statutes, Plaintiff seeks damages, injunctive and

16 declaratory relief, attorney fees and costs, against:

17            a)     HINDS INVESTMENTS, L.P.  (hereafter the "470 – 634 E. Shaw

18                  Avenue Shopping Center Common Areas Defendant").

19            b)     LONGS DRUG STORES CALIFORNIA, L.L.C. dba CVS Pharmacy

20                  (hereafter the "CVS Pharmacy Defendant").

21            c)     SMART & FINAL STORES, LLC dba Smart & Final  (hereafter the

22                  "Smart & Final Defendant").

23            d)     PETSMART, INC. dba PetSmart  (hereafter the "PetSmart Defendant").

24            e)     LESLIE'S POOLMART, INC. dba Leslie's (hereafter the "Leslie's

25                  Defendant").

26            f)      BIG 5 CORPORATION dba Big 5 Sporting Goods (hereafter the "Big 5

27                  Defendant").

28    The above-named defendants are collectively referred to herein as "Defendants."

*Moore v. Hinds Investments L.P., et al.*                          Complaint

MLF0028474

EX. 50-71

1

## II.    JURISDICTION

2      3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

3   ADA claims.

4      4.      Supplemental jurisdiction for claims brought under parallel California law –

5   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

6      5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

7

## III.    VENUE

8      6.      All actions complained of herein take place within the jurisdiction of the

9   United States District Court, Eastern District of California, and venue is invoked pursuant to

10   28 U.S.C. § 1391(b), (c).

11

## IV.    PARTIES

12      7.      The 470 - 634 E. Shaw Avenue Shopping Center Common Areas Defendant

13   owns, operates, manages, and/or leases the shopping center located at 470-634 E. Shaw

14   Avenue, Clovis, California, and consists of a person (or persons), firm, and/or corporation.

15      8.   The CVS Pharmacy Defendant owns, operates, manages and/or leases

16   the CVS Pharmacy Facility, and consists of a person (persons), firm, and/or corporation.

17      9.      The Smart & Final Defendant owns, operates, manages and/or leases the Smart

18   & Final Facility, and consists of a person (persons), firm, and/or corporation.

19      10.      The PetSmart Defendant owns, operates, manages and/or leases the PetSmart

20   Facility, and consists of a person (persons), firm, and/or corporation.

21      11.      The Leslie's Defendant owns, operates, manages and/or leases the Leslie's

22   Facility, and consists of a person (persons), firm, and/or corporation.

23      12.      The Big 5 Defendant owns, operates, manages and/or leases the Big 5

24   Facility, and consists of a person (persons), firm, and/or corporation.

25      13.      Plaintiff requires the use of a wheelchair when traveling about in public.

26   Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

27   United States laws, and is a member of the public whose rights are protected by these laws.

28

*Moore v. Hinds Investments L.P., et al.*                                        Complaint

MLF0028475

EX. 50-72

## V.    FACTS

14.    The Facilities are a public accommodation, open to the public, which are intended for nonresidential use and whose operation affects commerce.

15.    Plaintiff visited the Facilities and encountered barriers (both physical and intangible) that interfered with, if not outright denied his ability to use and enjoy the goods, services, privileges and accommodations offered at the Facilities.

### CVS PHARMACY FACILITY

16.    Plaintiff personally encountered the following barriers at the CVS Pharmacy Facility:

      a)    During his visit to the CVS Pharmacy Facility on January 15, 2012, Plaintiff parked in the parking space designated as accessible in front of the entrance to the Facility and closest to the corner of the building. The access aisle provided to the left of the parking space contained a built-up ramp with an uneven and sloped surface making Plaintiff's transfer onto his wheelchair very difficult and dangerous.

      b)    Plaintiff then had to ascend the built-up ramp which was very steep and contained an uneven surface in order to get to the entrance of the CVS Pharmacy Facility.

      c)    After selecting items for purchase, Plaintiff proceeded to a cashier counter but, to his dismay, discovered that all cashier counters he was able to locate designated as accessible were closed and he proceeded to the only cashier counter open which required him to lean out of his wheelchair over the displayed merchandise in order to pay for his purchase.

### SMART & FINAL FACILITY

17.    Plaintiff personally encountered the following barriers at the Smart & Final Facility:

*Moore v. Hinds Investments L.P., et al.*                                                    Complaint

MLF0028476

EX. 50-73

a)   During his visit to the Smart & Final Facility on May 6, 2012, Plaintiff had to wait to park near the entrance because there was a vehicle without required placards parked in the improperly marked parking space. After waiting for some time, Plaintiff decided to look for another accessible parking space along the front of the building.

b)   Plaintiff found a parking space designated as accessible to the left of the Marshall's store entrance located next to the Smart & Final Facility. Plaintiff then experienced difficulty and discomfort when unloading from his vehicle onto his wheelchair because the parking space he found lacked an access aisle and there was insufficient room for him to comfortably transfer onto his wheelchair.

c)   While shopping inside the Smart & Final Facility Plaintiff encountered a "clearance items display" which was located outside of his reach and he was not able to look through the clearance items without assistance. He requested assistance but none was provided to him by employees and Plaintiff left without being able to look through the clearance items.

d)   In order to pay for his groceries, Plaintiff attempted to use a cashier register marked as accessible located on his way to the exit, only to find out that the designated register was closed and the only open register all the way to the right did not contain necessary wheelchair clearances, forcing Plaintiff to seek assistance from others to pay for his groceries.

## PETSMART FACILITY

18.   Plaintiff personally encountered the following barriers at the PetSmart Facility:

a)   During his visit to the Big 5 and PetSmart Facilities on January 20, 2012, Plaintiff located a parking space in front of the PetSmart Facility and to the right of the entrance designated as accessible. The access aisle provided to the left of

*Moore v. Hinds Investments L.P., et al.*                                                    Complaint

MLF0028477

EX. 50-74

the parking space contained a built-up ramp with an uneven and sloped surface which made Plaintiff's transfer onto his wheelchair very difficult.

b)  Plaintiff then pushed his wheelchair up the ramp toward the entrance of the Facility only to find out that it was very steep and had an uneven and warped surface making his ascent very difficult.

c)  Once inside the PetSmart Facility, Plaintiff found that much of the merchandise on display was located out of his reach.

d)  Although most service counters in the PetSmart Facility contained a lowered counter, Plaintiff was still required to use the service counters that were out of his reach because there was no assistance provided at the lowered counters which were being used as display counters instead.

e)  On January 20, 2012, when paying for the goods purchased, Plaintiff discovered that the credit card machine was installed too high for his reach and proceeded to pay with cash instead.  During his subsequent visits to the PetSmart Facility Plaintiff used his credit card but had to hand it over to the cashier and have the cashier read the numbers to him and enter the information for him because he could not see the display of the card reader.

f)  After exiting the Facility, Plaintiff went back to his vehicle and once again had to use the steep ramp to descend from the curb and was propelled forward into the lane of traffic where he was almost hit by a car.

### LESLIE'S FACILITY

19.  Plaintiff personally encountered the following barriers at the Leslie's Facility:

a)  During his visit to the Leslie's Facility on January 31, 2012, Plaintiff could not find any accessible parking next to the entrance of the Leslie's Facility and had to park next to the PetSmart Facility entrance.

b)  Plaintiff then ascended the steep built up ramp located in front of the PetSmart Facility and traveled in his wheelchair down the sidewalk to reach the entrance of the Leslie's Facility only to find out that the sidewalk was blocked

*Moore v. Hinds Investments L.P., et al.*                                    Complaint

MLF0028478

EX. 50-75

1    by shopping carts.  Plaintiff had to move the shopping carts out of the way in
2    order to get to the Leslie's Facility.

3    c)    While shopping at the Leslie's Facility, Plaintiff went to use the public
4          restroom provided and experienced difficulty in opening the restroom door.
5          Plaintiff had to seek help in order to keep the door open as he entered the
6          restroom in his wheelchair.

7    d)    The toilet provided was too low which made Plaintiff's transfer from his
8          wheelchair difficult.

9    e)    Lack of wheelchair clearance in front of the sink prevented Plaintiff from
10         washing his hands.

11   ## BIG 5 SPORTING GOODS FACILITY

12   20.   Plaintiff personally encountered the following barriers at the Big 5 Facility:

13   a)    On January 20, 2012, on his way to the Big 5 Facility from the ramp located
14         in front of the PetSmart Facility, Plaintiff encountered multiple obstacles
15         obstructing the path of travel and had to move shopping carts in order to get to
16         the entrance.

17   b)    Once inside the Big 5 Facility, Plaintiff encountered more obstructions on the
18         sales floor and had to maneuver his wheelchair around such obstructions
19         through cluttered aisles in order to view the merchandise on the display in the
20         Facility. He still could not view most of it because of the obstructions.

21   c)    Plaintiff also discovered that the route to the public restroom leading through
22         the storage area was blocked and he had to remove items and boxes out of his
23         way in order to reach the restroom.

24   d)    Plaintiff was hesitant to enter the restroom because it was not clearly
25         identified as accessible and because it appeared to be too small for a
26         wheelchair clearance.

27   e)    There were boxes of merchandise stacked in front of the restroom making it
28         difficult for Plaintiff to open the door.

*Moore v. Hinds Investments L.P., et al.*                                    Complaint

MLF0028479

EX. 50-76

1     f)     Plaintiff then sought assistance to enter the restroom from his grandson only
2            to encounter more obstructions in front of the toilet, including various
3            cleaning equipment, boxes and stored merchandise.

4     g)     Plaintiff also experienced problems getting back to the sales floor from the
5            restroom due to the lack of wheelchair clearance on the pull side of the door
6            leading back to the sales floor.

7     h)     Plaintiff had difficulty paying for his purchases because the counter was
8            cluttered and blocked by merchandise.

9     21.     Plaintiff was, and continues to be, deterred from visiting the Facilities because
10 he knows that the Facilities goods, services, facilities, privileges, advantages, and
11 accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.
12 Plaintiff enjoys the goods and services offered at the Facilities, lives nearby, and will return
13 to Facilities once the barriers are removed.

14     22.     Defendants knew, or should have known, that these elements and areas of the
15 Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access
16 to the physically disabled.  Moreover, Defendants have the financial resources to remove
17 these barriers from the Facilities, and make the Facilities accessible to the physically
18 disabled.  To date, however, Defendants refuse to either remove those barriers or seek an
19 unreasonable hardship exemption to excuse non-compliance.

20     23.     At all relevant times, Defendants have possessed and enjoyed sufficient
21 control and authority to modify the Facilities to remove impediments to wheelchair access
22 and to comply with the 2010 Americans Disabilities Act Standards for Accessible Design
23 and California Code of Regulations Title 24.  Defendants have not removed such
24 impediments and have not modified the Facilities to conform to accessibility standards.
25 Defendants have intentionally maintained the Facilities in their current condition and have
26 intentionally refrained from altering the Facilities so that they comply with the accessibility
27 standards.

28

*Moore v. Hinds Investments L.P., et al.*                    Complaint

MLF0028480

EX. 50-77

## VI.  FIRST CLAIM

### Americans with Disabilities Act of 1990
### Denial of "Full and Equal" Enjoyment and Use

24.     Plaintiff incorporates the allegations contained in paragraphs 1 through 23 for this claim.

25.     Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

26.     Defendants discriminated against Plaintiff by denying him "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facilities during each visit and each incident of deterrence.

### Failure to Remove Architectural Barriers in an Existing Facility

27.     The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv).

28.     When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

29.     Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facilities without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

30.     In the alternative, if it was not "readily achievable" for Defendants to remove the Facilities' barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

*Moore v. Hinds Investments L.P., et al.*                               Complaint

MLF0028481

EX. 50-78

1

### Failure to Design and Construct an Accessible Facility

2    31.    Plaintiff alleges on information and belief that the Facilities were designed

3  and constructed (or both) after January 26, 1992 – independently triggering access

4  requirements under Title III of the ADA.

5    32.    The ADA also prohibits designing and constructing facilities for first

6  occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

7  with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

8    33.    Here, Defendants violated the ADA by designing and constructing (or both)

9  the Facilities in a manner that was not readily accessible to the physically disabled public –

10  including Plaintiff – when it was structurally practical to do so.[1]

11

### Failure to Make an Altered Facility Accessible

12    34.    Plaintiff alleges on information and belief that the Facilities was modified

13  after January 26, 1992, independently triggering access requirements under the ADA.

14    35.    The ADA also requires that facilities altered in a manner that affects (or could

15  affect) its usability must be made readily accessible to individuals with disabilities to the

16  maximum extent feasible.  42 U.S.C. § 12183(a)(2).  Altering an area that contains a

17  facility's primary function also requires making the paths of travel, bathrooms, telephones,

18  and drinking fountains serving that area accessible to the maximum extent feasible.  Id.

19    36.    Here, Defendants altered the Facilities in a manner that violated the ADA and

20  was not readily accessible to the physically disabled public – including Plaintiff – to the

21  maximum extent feasible.

22

### Failure to Modify Existing Policies and Procedures

23    37.    The ADA also requires reasonable modifications in policies, practices, or

24  procedures, when necessary to afford such goods, services, facilities, or accommodations to

25  individuals with disabilities, unless the entity can demonstrate that making such

26  modifications would fundamentally alter their nature.  42 U.S.C. § 12182(b)(2)(A)(ii).

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Hinds Investments L.P., et al.*                                        Complaint

MLF0028482

EX. 50-79

1    38.    Here, Defendants violated the ADA by failing to make reasonable

2  modifications in policies, practices, or procedures at the Facilities, when these modifications

3  were necessary to afford (and would not fundamentally alter the nature of) these goods,

4  services, facilities, or accommodations.

5    39.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

6  attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

7    40.    Plaintiff also seeks a finding from this Court (i.e., declaratory relief) that

8  Defendants violated the ADA in order to pursue damages under California's Unruh Civil

9  Rights Act or Disabled Persons Act.

10    **VII.    SECOND CLAIM**

11    **Disabled Persons Act**

12

13    41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

   this claim.

14

15    42.    California Civil Code § 54 states, in part, that:  Individuals with disabilities

   have the same right as the general public to the full and free use of the streets, sidewalks,

16
   walkways, public buildings and facilities, and other public places.

17

18    43.    California Civil Code § 54.1 also states, in part, that:  Individuals with

   disabilities shall be entitled to full and equal access to accommodations, facilities, telephone

19
   facilities, places of public accommodation, and other places to which the general public is

20    invited.

21

22    44.    Both sections specifically incorporate (by reference) an individual's rights

   under the ADA.  *See* Civil Code §§ 54(c) and 54.1(d).

23

24    45.    Here, Defendants discriminated against the physically disabled public –

   including Plaintiff – by denying them full and equal access to the Facilities.  Defendants also

25
   violated Plaintiff's rights under the ADA, and therefore, infringed upon or violated (or both)

26
   his rights under the Disabled Persons Act.

27

28

*Moore v. Hinds Investments L.P., et al.*                                    Complaint

Page 11

MLF0028483

EX. 50-80

1     46.    For each offense of the Disabled Persons Act, Plaintiff seeks statutory

2  minimum damages according to proof, declaratory relief, and any other remedy available

3  under California Civil Code § 54.3.

4     47.    Plaintiff also seeks to enjoin Defendants from violating the Disabled Persons

5  Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees

6  and costs incurred under California Civil Code §§ 54.3 and 55.

7              **VIII.   THIRD CLAIM**

8              **<u>Unruh Civil Rights Act</u>**

9     48.    Plaintiff incorporates the allegations contained in paragraphs 1 through 47 for

10  this claim.

11     49.    California Civil Code § 51 states, in part, that:  All persons within the

12  jurisdiction of this state are entitled to the full and equal accommodations, advantages,

13  facilities, privileges, or services in all business establishments of every kind whatsoever.

14     50.    California Civil Code § 51.5 also states, in part that:  No business

15  establishment of any kind whatsoever shall discriminate against any person in this state

16  because of the disability of the person.

17     51.    California Civil Code § 51(f) specifically incorporates (by reference) an

18  individual's rights under the ADA into the Unruh Act.

19     52.    Defendants' aforementioned acts and omissions denied the physically

20  disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

21  privileges and services in a business establishment (because of their physical disability).

22     53.    These acts and omissions (including the ones that violate the ADA) denied,

23  aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

24     54.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

25  minimum damages according to proof for each occasion Plaintiff was discriminated against.

26     55.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

27  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

28  § 52(a).

*Moore v. Hinds Investments L.P., et al.*                          Complaint

MLF0028484

EX. 50-81

1

## IX. FOURTH CLAIM

2

### Denial of Full and Equal Access to Public Facilities

3       56.     Plaintiff incorporates the allegations contained in paragraphs 1 through 55 for

4   this claim.

5       57.     Health and Safety Code § 19955(a) states, in part, that:  California public

6   accommodations or facilities (built with private funds) shall adhere to the provisions of

7   Government Code § 4450.

8       58.     Health and Safety Code § 19959 states, in part, that:  Every existing (non-

9   exempt) public accommodation constructed prior to July 1, 1970, which is altered or

10  structurally repaired, is required to comply with this chapter.

11      59.     Plaintiff alleges the Facilities is a public accommodation constructed, altered,

12  or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

13  Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code

14  § 19956.

15      60.     Defendants' non-compliance with these requirements at the Facilities

16  aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities.

17  Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety

18  Code § 19953.

19

## X.     PRAYER FOR RELIEF

20      WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

21      1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

22      2.     Declaratory relief that Defendants violated the ADA for the purposes of

23  Unruh Act or Disabled Persons Act damages.

24      3.     Statutory minimum damages under either sections 52(a) or 54.3(a) of the

25  California Civil Code (but not both) according to proof.

26      4.     Attorneys' fees, litigation expense, and costs of suit.[2]

27      5.     Interest at the legal rate from the date of the filing of this action.

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Hinds Investments L.P., et al.*                                    Complaint

MLF0028485

EX. 50-82

1     6.     For such other and further relief as the Court deems proper.

2   Dated: September 19, 2012                    MOORE LAW FIRM, P.C.

3

4                                               /s/ Tanya E. Moore
                                                Tanya E. Moore
5                                               Attorneys for Plaintiff,
                                                RONALD MOORE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Moore v. Hinds Investments L.P., et al.*                    Complaint

Page 14

MLF0028486

EX. 50-83

# Exhibit 51

# DINERS CHECK



| Date | Table | Guests | Server | |
|------|-------|--------|--------|--------|
| | B6 | 2 | 2 | 028171 |

APPT – SOUP/SAL – ENTREE – VEG/POT – DESSERT – BEV

DC
W

2 DF          15 05

1 DC          1 63

              16 68

| | |
|---|---|
| Tax | |
| Total | |

Thank You   Please Come Again

BF6000                    www.thebestfoodservices.us

MLF0052675

EX. 51-2

# OfficeMax

OfficeMax #453
2044 WEST SHAW
FRESNO, CA 93711
(559) 449-2550

0453 02 8695 05/27/14 02:56:31 PM

---

## SALE

| | |
|---|---|
| 011491992163 | $4.79 |
| Standard Staples-3pk | |
| | |
| SubTotal | $4.79 |
| Tax 8.225% | $0.39 |
| TOTAL | $5.18 |
| | |
| MasterCard | $5.18 |
| Card number: XXXXXXXXXXXX7245 | |
| Authorization 30915Z | |

---

04600-60864-43011-04950-10002-72058



Tell us about your shopping experience
and get $5 off your next $25 purchase.
Visit officemaxfeedback.com and enter
the following Survey Code:
0453-02-8695-8

MLFO0030867

EX. 51-3

TANG
DYNASTY

moore
# 01580

..... the Facility? _TANG Density_

2. When did you visit the Facility? _3/14/13_ (Date) _2 pm_ (Time) _north west corner_
_& west_

3. What is the address of the Facility? _Shaw AVE   FRESNO_

4. Was this your first visit to the Facility? _Yes_

5. How many times have you visited the Facility? _____ If more than one visit, please list the date and time if you

   know it. _____

6. What was the purpose of your visit? _To eat_

7. Who accompanied you to the Facility? _JR my Friend_

8. What car did you drive to the Facility? _MINE_

9. Did you drive yourself of did you get a ride from someone else? _I DRIVE_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your

    vehicle. _IN H/C spot Right in FRont of Door_

11. Was it difficult for you to park there? _yes_

12. Why? _Because it was on A Slope_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _driver_

15. Did anyone help you to transfer onto your wheelchair? _NO_

16. What problems did you encounter transferring onto your wheelchair?

    _my wheelchair Keep Rolling Away Because of slope_

17. Which way did you go from the parking to the entrance of the Facility? _To The Right to Ramp_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

_yes I had to go Behind cars parked to get to Ramp →ON BACK →_

19. Did you encounter any problems opening the door? Describe why. _Big Door open out_

20. Did you have any problems inside the Facility? Describe. _yes Sat Down at Table Then they
put people in table Behind us and No Room to get in and out
of table had to move table Forward so I could get into my_

The Ramp went into street and it is very speed very
hard to get up

MLF0052652

EX. 51-5

table so I could eat Also Beside's Buffet They have Food
That you can have cooked for you up to high and out of Reach to high to see
what was there and could not Reach pork chips in Back Row

**21. What did you purchase (or what meal did you have there). Describe:** _____

Buffet

**22. Have you used the restroom at the Facility?** yes

**23. Why did you need to use the restroom?** I had to go

**24. Did you use the sink?** yes

**25. Any problems?** Sink pipes not wraped

**26. Did you use the urinal?** No

**27. Did you use the toilet?** yes toilet was Lose Almost Fell off

**28. Did you use the toilet paper?** yes

**29. Did you use paper towels?** yes

**30. Did you use the soap dispenser?** yes

**31. Did you have any problem maneuvering inside the restroom?** Inside stall Door didn't close

**32. Where did you sit?** at Table

**33. Was there any seating provided inside the Facility?** yes

**34. Was it wheelchair accessible?** No

**35. Where you comfortable at the table?** No Issle to close together

**36. Did you use the counter to pay for purchase?** yes

**37. Which counter did you use?** only one on way out very high

**38. Was the counter accessible?** No

**39. Which way did you go after you left the Facility?** Left to Ramp Ramp so steep it Burned My hands trying to slow chair Door put me in middle of Road

**40. Any problems getting back to your vehicle?** Then had to go Behind parked cars

**41. Any problems transferring from your wheelchair to your vehicle?** yes Because of slope

**42. If you have any addition information you believe would assist us in evaluating this inquiry.**

MLF0052653

EX. 51-6

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? OfficeMax

2. What is the address of the Facility? 2044 West Shaw Fresno, CA

3. When did you visit the Facility? 5/27/14 (Date) 3:00pm (Time)

4. Was this your first visit to the Facility? No

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. ?

6. What was the purpose of your visit? Staples

7. Who accompanied you to the Facility? Grandson Ronny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself or did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In do parking spot

11. Was it difficult for you to park there? If so, why? Yes, ramp slopes down into parking spot.

12. How did you unload from your vehicle? Rear

13. What side of the vehicle did you unload from? Driver or passenger? Driver

14. Did anyone help you to transfer onto your wheelchair? Who? Yes, Ronny

No, because Ronny helped me with chair

16. Which way did you go from the parking to the entrance of the Facility? To access isle

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. Yes, ramp was steep goes out into street.

18. Did you encounter any problems opening the door? Describe. No, they're automatic

19. What did you purchase (or what meal did you have there)? Staples

20. Did you need to use the restroom while you were at the Facility? Why? No

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0030865

EX. 51-7

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: N/A

Toilet: N/A

Urinal: N/A

Toilet paper: N/A

Toilet seat covers: N/A

Paper towels/hand dryer: N/A

Soap dispenser: N/A

Other: N/A

22. Did you have any problem maneuvering inside the restroom? N/A

23. Was there any seating provided inside the Facility? N/A

24. Were you able to sit comfortably at the table? If not, why? N/A

25. Did you use the counter to pay for purchase? Which one? Yes the one by emergency exit

26. Did you pay with cash or credit card? Credit

27. Was the counter accessible? If not, describe: No, counter too high grandson had to give card and sign reciept

28. Did you have any other problems inside the Facility? Describe. Yes, some stuff on the shelves were too hard to reach because too high.

29. Which way did you go after you left the Facility? Outdoor to access isle to car

30. Any problems getting back to your vehicle? Yes, ramp was steep and went out to street had to lock chair or I would've went into the street.

31. Any problems transferring from your wheelchair to your vehicle? No, because Ronny helped me with chair.

32. Any additional information you believe would assist us in evaluating this inquiry? Ramp has no safety edge when I got out of my car I was on the sloped part of the ramp.

MLF0030866

EX. 51-8

March 25, 2013

Mr. Ronald Moore
80 N . Hughes Avenue
Clovis, California 93612

RE: ADAI No. 01580
**Tang Dynasty**

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/wl

MLF0052674

EX. 51-9

April 26, 2013

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

      **RE:   ADAI No. 01580**
               **Tang Dynasty (Facility) 2066 W. Shaw Ave, Fresno, CA 93711**

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/dg

Enclosure: Fee Agreement

MLF0052654



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 8, 2014

**K. RANDOLPH MOORE**
ESQUIRE
AND FOUNDER

*Tanya E. Moore*
*Attorney at Law*

*Marejka Sacks*
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, CA 93612

     Re:    ADA No:    01580
             Hinds Investments, L.P. (Office Max <u>ONLY</u>)
             *2066 W. Shaw Ave, Fresno, CA 93711*

Dear Mr. Moore:

Thank you for contacting our office regarding your claim that the above-referenced facility has barriers which impeded your full and equal access. This letter is to inform you that although there may exist violations of the Americans with Disabilities Act and related California law at the facility, and you may have claims that constitute a legal cause of action against the facility, we have evaluated the claims and decided not to take action on your behalf. As you know, these civil rights actions usually involve considerable costs and attorneys' fees, and we are generally only able to pursue cases which involve the most egregious violations.

<u>Please be advised that there is a statute of limitations that applies to your claims, and you are encouraged to seek legal counsel immediately if you wish to pursue such claims.</u> Failure to bring your claims within the time allowed can bar you from any recovery, and thus your immediate attention to this issue is required. Nothing in this letter should be construed as suggesting that you do not have a legitimate claim, only that we will not be representing you in pursuing such claim.

We will be doing nothing further in this matter and will not be monitoring any statute. As such, we are also returning herewith all documents you provided us and are not maintaining any copies of same.

If you have any questions, please do not hesitate to contact me.

Sincerely,

*/s/ Tanya E. Moore*

Tanya E. Moore

TEM/ed
Enclosures

MLF0030868

EX. 51-11

**ADAI No. :**    **01580**

**Case Name:**    **Moore v. Tang Dynasty**

**Address:**    **2066 W Shaw Ave., Fresno, CA 93711**

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Designated parking space sloped | The parking space was sloped away from the curb, causing the Plaintiff difficulty in unloading his wheelchair from the vehicle. The wheelchair started to roll away from Plaintiff when he turned to close the door of his vehicle. | Yes, the slope is very steep |
| Accessible route from designated parking not located | Plaintiff was unable to locate an accessible curb ramp from the designated parking space in front of the Facility. Plaintiff found a curb ramp located away from the entrance of the Facility, which required Plaintiff to travel through the parking lot in his wheelchair, on uneven and sloped surfaces and behind parked cars, to reach the curb ramp. This compromised Plaintiff's safety and caused him great difficulty. Plaintiff also was required to travel this route to return, and be exposed to those dangers and difficulties again, after visiting the Facility. | Yes |
| Curb ramp had steep slope | Plaintiff had difficulty rolling his wheelchair up the accessible ramp, which was long and had a steep slope. | Yes, illegal built-up curb ramp with no wheel protection |
| Accessible seating not available | Plaintiff was seated by the Facility staff. Plaintiff's wheelchair was bumped several times by a customer who was seated behind Plaintiff. Due to the inadequate clear seating space Plaintiff was inconvenienced and embarrassed that his friend had to physically move the table away from Plaintiff. | Don't know where he was seated, but yes, they seat customers – no choice given as to where to sit. A lot of tables, not sure if there is one that was accessible |
| Accessible space to toilet was hampered by door swinging in | Plaintiff had difficulty in maneuvering his wheelchair inside the toilet area. The clear access space inside the toilet area was inadequate due to the inward swinging door. | Need to ask Josh – I could not inspect it |
| Toilet fixture inadequate | The toilet fixture was unstable and moved when used by the Plaintiff, causing Plaintiff uncertainty as to his | Same as above |

1

EX. 51-12

MLF0052677

| | safety while using the fixture. | |
|---|---|---|
| Counter at register too high, no designated auxiliary counter | Plaintiff was uncomfortable paying at the counter due to the excessive height of the counter without a lower auxiliary counter. | yes |
| Door to Facility heavy | Plaintiff had difficulty exiting the Facility due to the weight of the big, solid, wooden door. | yes |

2

MLF0052678