# Exhibit 52



Clinton Street Liquor

1843 W. Clinton
Fresno, Ca. 93705

Mari Zermeño
(559) 496-0364

MLF0051556

EX. 52-2

2 Hair cuts $12.— x 2

$24.—

MLF0051557

EX. 52-3

```
       ^PIZZA HUT
    ****CARRY_OUT****

     Ticket # 00016

ENTERED BY
 JARED
 027391      05/31/14      01:21PM

MOR
(559)566-8525

01 1   Large              11.00
       Pan
       Cheese
       Pepperoni
       ItSaus
       Mushrm

          Subtotal        11.00
          SALES TAX        0.90
        Balance Due       11.90

Amt Tendered             11.90
Credit Card
Change                    0.00


       Taken at 01:21PM
       Pick Up at 01:36PM



     SECURITY CHECKS
  DEBIT $\25FEE 877-892-4325


CHANCE to WIN! $1000
     Store No. 027391
    (see back for details)
```

```
    ^PIZZA HUT #027391
      1839 W Clinton
          Fresno
         233-4400
         SALE

 Server: JARED           Ticket #16
 05/31/14                01:22PM
 MC
 ************7245
 APPR CODE: 60935Z       Invoice #3


 AMOUNT:                    11.90

 TIP:

 Total:

I agree to pay above total amount
according to card issuer agreement.

 Signature_____  _____
        MOOPEY/DONALD D

     Customer Copy

       SECURITY CHECKS
   DEBIT $\25FEE 877-892-4325
```

EX. 52-4

MLF0051558

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? _Clinton Street Clippers_

2. What is the address of the Facility? _1843 West Clinton Fresno, CA_

3. When did you visit the Facility? _5/31/14_ (Date) _1:30 pm_ (Time)

4. Was this your first visit to the Facility? _No_

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. _7_

6. What was the purpose of your visit? _Haircuts_

7. Who accompanied you to the Facility? _Grandson Ronny and Jhonny_

8. What car did you drive to the Facility? _Mine_

9. Did you drive yourself or did you get a ride from someone else? _I drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In do parking spot on the right_

11. Was it difficult for you to park there? If so, why? _No_

12. How did you unload from your vehicle? _Rear_

13. What side of the vehicle did you unload from? Driver or passenger? _Driver_

14. Did anyone help you to transfer onto your wheelchair? Who? _Yes, Jhonny_

15. Did you encounter any problems transferring onto your wheelchair? Describe. _No, because Jhonny helped me with my chair._

16. Which way did you go from the parking to the entrance of the Facility? _To access isle_

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. _Yes, ramp was short and steep and uneven._

18. Did you encounter any problems opening the door? Describe. _Yes, door heavy and threshold._

19. What did you purchase (or what meal did you have there)? _2 haircuts_

20. Did you need to use the restroom while you were at the Facility? Why? _No, because of the benches in the barbershop's chairs blocked me and door restroom is too small._

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

EX. 52-5

MLF0049811

Sink: _N/A_

Toilet: _N/A_

Urinal: _N/A_

Toilet paper: _N/A_

Toilet seat covers: _N/A_

Paper towels/hand dryer: _N/A_

Soap dispenser: _N/A_

Other: _N/A_

22. Did you have any problem maneuvering inside the restroom? _N/A_

23. Was there any seating provided inside the Facility? _Yes, but not handicapped accessible, I had to sit in the middle of room and aisle_

24. Were you able to sit comfortably at the table? If not, why? _There was no tables_

25. Did you use the counter to pay for purchase? Which one? _Didn't use a counter._

26. Did you pay with cash or credit card? _Cash_

27. Was the counter accessible? If not, describe: _N/A_

28. Did you have any other problems inside the Facility? Describe. _Yes, I couldn't get to the restroom and it looked like I did but door too small to get in the bathroom_

29. Which way did you go after you left the Facility? _Outdoor right too ramp too car._

30. Any problems getting back to your vehicle? _Yes, ramp uneven, short, and steep put me out into the street._

31. Any problems transferring from your wheelchair to your vehicle? _No, because Jhonny helped me with my chair_

32. Any additional information you believe would assist us in evaluating this inquiry? _Yes, I had to sit in the middle of the room because no place to sit._

MLF0049812

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? *Pizza Hut*

2. What is the address of the Facility? *1839 West Clinton Fresno, CA*

3. When did you visit the Facility? *5/31/14* (Date) *1:20 pm* (Time)

4. Was this your first visit to the Facility? *No*

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. *7*

6. What was the purpose of your visit? *Lunch*

7. Who accompanied you to the Facility? *Grandson Ronny and Jhonny*

8. What car did you drive to the Facility? *Mine*

9. Did you drive yourself or did you get a ride from someone else? *I drove*

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. *In second dp parking spot on the right*

11. Was it difficult for you to park there? If so, why? *No*

12. How did you unload from your vehicle? *Rear*

13. What side of the vehicle did you unload from? Driver or passenger? *Driver*

14. Did anyone help you to transfer onto your wheelchair? Who? *Yes, Jhonny*

15. Did you encounter any problems transferring onto your wheelchair? Describe. *No because Jhonny helped me with my chair.*

16. Which way did you go from the parking to the entrance of the Facility? *Too accessible*

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. *Yes, ramp is short and very steep, cracks in street all over.*

18. Did you encounter any problems opening the door? Describe. *Yes, door heavy, threshold*

19. What did you purchase (or what meal did you have there)? *Pizza*

20. Did you need to use the restroom while you were at the Facility? Why? *No*

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0049825

EX. 52-7

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: _NIA_

Toilet: _NIA_

Urinal: _NIA_

Toilet paper: _NIA_

Toilet seat covers: _NIA_

Paper towels/hand dryer: _NIA_

Soap dispenser: _NIA_

Other: _NIA_

22. Did you have any problem maneuvering inside the restroom? _NIA_

23. Was there any seating provided inside the Facility? _Yes, but not accessible benches got in the way of the seating in the facili_

24. Were you able to sit comfortably at the table? If not, why? _There was no tables in the facility._

25. Did you use the counter to pay for purchase? Which one? _Yes, only one_

26. Did you pay with cash or credit card? _Credit Card_

27. Was the counter accessible? If not, describe: _No, because counter too wide._

28. Did you have any other problems inside the Facility? Describe. _Yes, counter was wide._

29. Which way did you go after you left the Facility? _Outdoor too ramp to car_

30. Any problems getting back to your vehicle? _Yes, ramp was short and steep_

31. Any problems transferring from your wheelchair to your vehicle? _No, because Jhonny helped me with my chair._

32. Any additional information you believe would assist us in evaluating this inquiry? _Yes, I had to go behind another car that was parked in the other dp spot and ramp was uneven and steep._

MLF0049826

EX. 52-8



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

June 11, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

> **RE:** **ADAI No.     02014**
> **Horanian (Clinton Street Clippers, Pizza Hut)**
> *1839-1843 W. Clinton Ave, Fresno*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0049827

**BARRIER MEMO**

**ADAI No. :**  02014

**Case Name:**  Moore v. Horanian

**Address:**  Clinton Street Clippers – 1843 W. Clinton Ave, Fresno
Pizza Hut – 1839 W. Clinton Ave, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Common areas – Required to travel behind other cars | Plaintiff parked in a designated accessible parking space at the Facility; however, the route from his parking space to the ramp required him to travel behind a parked vehicle other than his own. | Yes |
| Common areas – Ramp short, steep, uneven | The ramp from the designated accessible parking to the sidewalk in front of the entrances was an improperly configured built-up curb ramp which was steep and had an uneven surface, making it difficult for Plaintiff to maneuver up and down the ramp. | Yes |
| Clippers – Door heavy/raised threshold | The Clippers Facility entrance door was heavy and the entrance had a raised threshold. It was difficult for Plaintiff to hold the door open while attempting to overcome the raised threshold. | Yes |
| Clippers – no route to restroom | Plaintiff needed to use the restroom while at the Clippers Facility; however, the route to the restroom was obstructed by benches and barber's chairs, while the doorway itself was too narrow for Plaintiff to enter. | Yes |
| Clippers – no space in waiting area | Plaintiff could not find a clear space in the waiting area at the Clippers Facility that was large enough for his wheelchair, and was forced to sit in the middle of the room which was embarrassing. | Yes |
| Pizza Hut - Door heavy/raised threshold | The Pizza Hut Facility entrance door was heavy and the entrance had a raised threshold. It was difficult for Plaintiff to hold the door open while attempting to overcome the raised threshold. | Yes |
| Pizza Hut – no space in waiting area | Plaintiff could not find a clear space in the waiting area at the Pizza Hut Facility that was large enough for his wheelchair, and was forced to sit in the middle of the room which was embarrassing. | Yes |

EX. 52-10

MLF0049809

| | | |
|---|---|---|
| Pizza Hut – counter too deep | The transaction counter at the Pizza Hut Facility was too deep making it difficult for Plaintiff to reach over the counter to pay for his purchase. | No, don't use |

2

MLF0049810



# MOORE
## LAW FIRM, P.C.

August 15, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

Re:    ADAI No.    02014
Horanian (Clinton Street Clippers, Pizza Hut)
1839-1843 W. Clinton Ave, Fresno, CA

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records.  Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.


Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

EX. 52-12

MLF0049813

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | No. |
|        Plaintiff, | **COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |
|        vs. | |
| JEANETTE HORANIAN; NICK HORANIAN; CALPAC PIZZA II, LLC, dba PIZZA HUT; JALOMO ARMANDO dba CLINTON STREET CLIPPERS; | |
|        Defendants. | |

## I. SUMMARY

1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

      a)    Pizza Hut
              1839 W. Clinton Avenue
              Fresno, CA 93705
              (hereafter "the Pizza Hut Facility")

EX. 52-13

MLF0049814

b)    Clinton Street Clippers
1843 W. Clinton Ave
Fresno, CA 93705
(hereafter "the Clippers Facility")

Each of the facilities identified above shall be collectively hereafter referred to as "the Facilities."

2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes, against:

a)    JEANETTE HORANIAN and NICK HORANIAN (hereinafter collectively "the Landlord Defendants");

b)    CALPAC PIZZA II, LLC, dba PIZZA HUT (hereinafter "the Pizza Hut Defendant"); and

c)    JALOMO ARMANDO dba CLINTON STREET CLIPPERS (hereinafter "the Clippers Defendant").

The Pizza Hut Defendant and the Clippers Defendant are collectively referred to herein as "the Tenant Defendants," and together with the Landlord Defendants, collectively the "Defendants."

## II.    JURISDICTION

3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.    Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.    VENUE

6.    All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.    PARTIES

7.    Plaintiff believes, and thereon alleges, that the Landlord Defendants own,

*Moore v. Horanian, et al.*
Complaint

EX. 52-14

MLF0049815

1 operate, and/or lease the real property consisting of the real property and common areas of

2 the Facilities as well as the physical structures thereon (including the buildings in which each

3 of the individual Tenant Defendants' Facilities is located), and consist of a person (or

4 persons), firm, or corporation. Plaintiff further believes, and thereon alleges, that the

5 Landlord Defendants lease the respective Facilities to the Tenant Defendants as follows:

6         a)     The Pizza Hut Defendant owns, operates, and/or leases the Pizza Hut

7               Facility, and leases the Pizza Hut Facility from the Landlord

8               Defendants; and

9         b)     The Clippers Defendant owns, operates, and/or leases the Clippers

10               Facility, and leases the Clippers Facility from the Landlord

11               Defendants.

12     8.     Plaintiff requires the use of a wheelchair when traveling about in public.

13 Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

14 United States laws, and is a member of the public whose rights are protected by these laws.

15                   **V.     FACTS**

16     9.     The Facilities are public accommodations, open to the public, which are

17 intended for nonresidential use and whose operation affects commerce.

18     10.     Plaintiff visited the Facilities and encountered barriers (both physical and

19 intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

20 goods, services, privileges and accommodations offered at the Facilities. Plaintiff personally

21 encountered the following barriers at the Facilities during Plaintiff's visits to the Facilities on

22 or about May 31, 2014:

23         a)     Plaintiff parked in a designated accessible parking space at the

24               Facilities; however, the route from his parking space to the ramp from

25               the parking lot to the sidewalk leading to the entrances of the Facilities

26               required him to travel behind a parked vehicle other than his own, in

27               the path of vehicular traffic.

28         b)     The ramp from the parking lot to the sidewalk was an improperly

*Moore v. Horanian, et al.*
Complaint

MLF0049816

EX. 52-15

configured built-up curb ramp which was steep and had an uneven surface. This made it difficult for Plaintiff to maneuver up and down the ramp.

    c)    The Clippers Facility entrance door was heavy and the entrance had a raised threshold. It was difficult for Plaintiff to hold the door open while attempting to overcome the raised threshold.

    d)    Plaintiff needed to use the restroom while visiting the Clippers Facility; however, the route to the restroom was obstructed by benches and barber's chairs. Additionally, Plaintiff could see that the doorway to the restroom itself was too narrow for Plaintiff to enter. He was unable to use the restroom and had to wait until he could find one elsewhere, which was uncomfortable.

    e)    Plaintiff could not find a clear space in the waiting area at the Clippers Facility that was large enough for his wheelchair, and was forced to sit in the middle of the room, which was embarrassing.

    f)    The Pizza Hut Facility entrance door was heavy and the entrance had a raised threshold. It was difficult for Plaintiff to hold the door open while attempting to overcome the raised threshold.

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facilities and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facilities and relate to his disabilities removed to afford him full and equal access.

12.    Plaintiff was, and continues to be, deterred from visiting the Facilities because Plaintiff knows that the Facilities' goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facilities, and will return to the

*Moore v. Horanian, et al.*
Complaint

Page 4

EX. 52-16                                                         MLF0049817

1    Facilities once the barriers are removed.

2          13.    Defendants knew, or should have known, that these elements and areas of the

3    Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access

4    to the physically disabled.  Moreover, Defendants have the financial resources to remove

5    these barriers from the Facilities (without much difficulty or expense), and make the

6    Facilities accessible to the physically disabled.  To date, however, Defendants refuse to either

7    remove those barriers or seek an unreasonable hardship exemption to excuse non-

8    compliance.

9          14.    At all relevant times, Defendants have possessed and enjoyed sufficient

10   control and authority to modify the Facilities to remove impediments to wheelchair access

11   and to comply with the 2010 Standards for Accessible Design and the California Code of

12   Regulations Title 24.  Defendants have not removed such impediments and have not

13   modified the Facilities to conform to accessibility standards.  Defendants have intentionally

14   maintained the Facilities in their current condition and have intentionally refrained from

15   altering the Facilities so that they comply with the accessibility standards.

16         15.    Plaintiff further alleges that the (continued) presence of barriers at the

17   Facilities is so obvious as to establish Defendants discriminatory intent.  On information and

18   belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal

19   to adhere to relevant building standards; disregard for the building plans and permits issued

20   for the Facilities; conscientious decision to maintain the architectural layout (as it currently

21   exists) at the Facilities; decision not to remove barriers from the Facilities; and allowance

22   that Defendants' property continues to exist in its non-compliance state.  Plaintiff further

23   alleges, on information and belief, that the Facilities are not in the midst of a remodel, and

24   that the barriers present at the Facilities are not isolated (or temporary) interruptions in access

25   due to maintenance or repairs.

26   //

27   //

28   //

*Moore v. Horanian, et al.*
Complaint

Page 5

EX. 52-17

MLF0049818

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facilities during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facilities without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facilities' barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.    Plaintiff alleges on information and belief that the Facilities were designed

*Moore v. Horanian, et al.*
Complaint

EX. 52-18

MLF0049819

1   and constructed (or both) after January 26, 1992 – independently triggering access
2   requirements under Title III of the ADA.

3       24.    The ADA also prohibits designing and constructing facilities for first
4   occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals
5   with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

6       25.    Here, Defendants violated the ADA by designing and constructing (or both)
7   the Facilities in a manner that was not readily accessible to the physically disabled public –
8   including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

10       26.    Plaintiff alleges on information and belief that the Facilities were modified
11   after January 26, 1992, independently triggering access requirements under the ADA.

12       27.    The ADA also requires that facilities altered in a manner that affects (or could
13   affect) its usability must be made readily accessible to individuals with disabilities to the
14   maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a
15   facility's primary function also requires making the paths of travel, bathrooms, telephones,
16   and drinking fountains serving that area accessible to the maximum extent feasible. Id.

17       28.    Here, Defendants altered the Facilities in a manner that violated the ADA and
18   was not readily accessible to the physically disabled public – including Plaintiff – to the
19   maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

21       29.    The ADA also requires reasonable modifications in policies, practices, or
22   procedures, when necessary to afford such goods, services, facilities, or accommodations to
23   individuals with disabilities, unless the entity can demonstrate that making such
24   modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

25
26
27
28

---

[1] Nothing within this complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Horanian, et al.*
Complaint

MLF0049820

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facilities, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations.  42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.     SECOND CLAIM

### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that:   All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that:   No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

*Moore v. Horanian, et al.*
Complaint

MLF0049821

EX. 52-20

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

### VIII. THIRD CLAIM

#### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that:   California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that:  Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.     Plaintiff alleges the Facilities are public accommodations constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facilities aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.     Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

*Moore v. Horanian, et al.*
Complaint

MLF0049822

EX. 52-21

1      4.      Attorneys' fees, litigation expense, and costs of suit.[2]

2      5.      Interest at the legal rate from the date of the filing of this action.

3      6.      For such other and further relief as the Court deems proper.

4

Dated: August 6, 2014                    MOORE LAW FIRM, P.C.

5

6                                        /s/ Tanya E. Moore
                                         Tanya E. Moore
7                                        Attorneys for Plaintiff
                                         Ronald Moore
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Horanian, et al.*
Complaint

Page 10

MLF0049823

EX. 52-22

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:  August 6, 2014          /s/ Ronald Moore
                                Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

/s/ Tanya E. Moore
Tanya E. Moore, Attorney for
Plaintiff, Ronald Moore

*Moore v. Horanian, et al.*
*Verification*

MLF0049824

EX. 52-23

# Exhibit 53

```
          S MART SNACK
        E PLANNING AVE
       I  , CA 93648
    P   46-1101

          C  P  Y
       2013  16:03:11

Transaction #        13
Card Type:    MasterCard
Acc:  xx-xxxxxxxxxx1370
Entry:           Swiped
Invoice #         14610
Total:            4.68

Device ID:         6956
Reference No.:
        MPLGDNH860322

Auth.Code:        22382
Respon. AUTH/ACKT F22382
Merchant number  xxx74226


       CUSTOMER COPY
```

MLF0030870

EX. 53-2

GEORGE'S DARI-SNACK
14575 E MANNING AVE
PARLIER, CA 93648
(559)646-1101

C O P Y
03/22/2013  18:03:11
S a l e :

Transaction #                    13
Card Type:        MasterCard
Acc:        *************4370
Entry:                Swiped
Invoice #              14810
Total:            4.68

Device ID:                6956
Reference No.:
          MPL6DN#860322

Auth.Code:              22382
Respon. AUTH/TKT  F22382
Merchant number ***74226

CUSTOMER COPY

MLF0030874

EX. 53-3

#01601

Moore v.
George's Dari-Snack

## PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

George's
ADAI No.
(Facility)

1. What is the name of the Facility? **DARI SNACK**

2. When did you visit the Facility? **3/22/13** (Date) **5 30 pm** (Time)

3. What is the address of the Facility? **14575 MANNING AVE parlier 93648**

4. Was this your first visit to the Facility? **yes**

5. How many times have you visited the Facility? _____ If more than one visit, please list the date and time if you know it. _____

6. What was the purpose of your visit? **torta**

7. Who accompanied you to the Facility? **Myself**

8. What car did you drive to the Facility? **M white**

9. Did you drive yourself of did you get a ride from someone else? **I Drove**

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. **parked Right in Frot next to sidewalk**

11. Was it difficult for you to park there? **yes they have A CURB Running**

12. Why? **Down the side of street**

13. How did you unload from your vehicle? **Rear**

14. What side of the vehicle did you unload from? Driver or passenger? **Driver**

15. Did anyone help you to transfer onto your wheelchair? **NO**

16. What problems did you encounter transferring onto your wheelchair?
**Had to pick my wheel chair out of car And put it up on Sidewalk**

17. Which way did you go from the parking to the entrance of the Facility? **to Right of Rear of my Car**

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
**No Ramp No Signs No parking nothing**

19. Did you encounter any problems opening the door? Describe why. **Doors were heavy And closed on me as I went thru**

20. Did you have any problems inside the Facility? Describe. **Yes Hot Sauce And onions on cart Need to Reach into All the way**

MLF0030871

EX. 53-4

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

*to the Back and get condaments*

21. What did you purchase (or what meal did you have there). Describe: *touta and water*

22. Have you used the restroom at the Facility? *NO I Asked to go told me Around Back I went Back There Then guy came out Back*

23. Why did you need to use the restroom? *Had to go*

24. Did you use the sink? *No They had hnard santier on counter next to casher*

25. Any problems? *no*

26. Did you use the urinal?

27. Did you use the toilet?

28. Did you use the toilet paper?

29. Did you use paper towels?

30. Did you use the soap dispenser?

31. Did you have any problem maneuvering inside the restroom?

32. Where did you sit? *In the middle of Room at the End of table*

33. Was there any seating provided inside the Facility? *Yes*

34. Was it wheelchair accessible? *No*

35. Where you comfortable at the table? *No*

36. Did you use the counter to pay for purchase? *Yes*

37. Which counter did you use? *Only One*

38. Was the counter accessible? *They give me a ticket pad to sign Recipt for credit car*

39. Which way did you go after you left the Facility? *out Door to Left to Rec. et my car had to pick up Chair off Sidewalk into car*

40. Any problems getting back to your vehicle? *yes no Ramp CRUB to Highto go off*

41. Any problems transferring from your wheelchair to your vehicle? *yes had to hold wheel Chair while I opened Back of my car*

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0030872

EX. 53-5

22) continued
Said If I really had to go he would come out run
Help me off Side into street Then Back up on Side
walk Then Same to get Back I Said Forget it
I could Hold it Bathroom Door on this Side way
to small to get into

MLF0030873

EX. 53-6

On 3/28/13 I spoke with Mr. Moore regarding his visit on 3/22/13 at approximately 5:30 pm at the business, George's Dari-Snack, located at 14575 E. Manning Ave, in Parlier, CA.

Client said this was his first time visiting this location. He was driving his Chevrolet Suburban, by himself, going to the store to buy a torta. Client was unable to locate an Handicap accessible parking space; he ① did not see any signage for the designated space, forcing him to park in front of the business, in a location that was most convenient and accessible. The place he parked was located between the sidewalk and a curb, what appeared to may have been at one time a drive-thru, but none was there now. Getting out of his vehicle he did not have room to walk between his vehicle and the curb, forcing him to walk on the other side of the curb from his vehicle. Client had to walk with his cane and reaching over to his vehicle to balance himself. When he arrived to the back of his vehicle he opened the rear door and removed his wheelchair without any difficulty.

After removing the wheelchair, client was not able to locate, nor did he see any signage for an accessible ② ramp to access the sidewalk from the parking lot. Client was forced to lift his wheelchair, with great difficulty, while balancing himself with his cane, up onto the sidewalk. Client then maneuvered toward the entrance to the business, George's Dari-Snack.

Client did not see any signage indicating an accessible entrance to the business, nor did he see any other ③ entrance beside the one he chose. As client opened the door he had difficulty, as the door was heavy, described by client as being old, made of metal and glass. As client entered the door quickly closed on his wheelchair, hitting his left hand as it closed.

Client ordered at the counter, which client said was too high to reach to sign the receipt. This was the ④ only counter and he could not find, nor was he shown any accessible ledge. He was provided a pad, which he had to hold with difficulty, to sign the receipt for the credit card purchase. Client then sat at a table, and the food was brought to his table. Client then went to use the condiments, located on a rolling table. The condiments on top shelf were not accessible to him when he tried to reach them. ⑤ Client also had difficulty reaching the condiments on the lower shelf, forcing him to reach up and stretch to grab them.

Client did not see any signage nor was he able to access any wheelchair accessible seating. Client said it ⑥ was very slow at the business when he was there so he sat at the first table as you enter the dining area. He thought it would be the best location for him to eat, but was embarrassed that his wheelchair was blocking the area where other customers would walk by. He was not able to pull up to the table as he should be able to, causing him in his wheelchair to stick out in the aisle, which made him feel uncomfortable. He was not sure what was preventing him from pulling further in; it may have been an obstacle under the table or food on the floor. Additionally, client had asked for a sink to wash his hands, was provided with hand sanitizer to complete this request. Client used the hand sanitizer.

MLF0030901

Client needed to use the restroom but was not able to access the closest restroom, which was located directly outside the door of the restaurant. He was not able to access because the door was too narrow. Client asked an employee if there was another restroom, and was told how to get to it. Client was told that he would need to go out the door and down the sidewalk. He would then have to get off of the sidewalk without a ramp, go around the building, get back up onto the sidewalk without a ramp, and access the restroom there. Client said he was told this was the only restroom that had a door wide enough for client to access. The employee then offered to help client. Client felt very uncomfortable and extremely embarrassed. Client decided he would not use the restroom and try to make home.

Client exited out the same door he entered. At the edge of the sidewalk with the parking lot he got off of his wheelchair with the use of his cane. He opened the door to his vehicle after stepping down off the high curb. He leaned on his vehicle while reaching for his wheelchair; picked up his wheelchair to move it from the sidewalk down to the back of his vehicle, and then lifted his wheelchair up into his vehicle, all the while balancing himself by leaning on his vehicle. Client described this as being very difficult to do. Client then walked back to the driver's door, having to walk on the opposite side of the curb from his vehicle, with the use of his cane and reaching and leaning on his vehicle as he walked.

MLF0030902

## BARRIER MEMO

ADAI No. :    01601

Case Name:    Moore. V. George's Dari-Snack

Address:    14575 E. Manning Ave, Parlier, CA  93648

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Unable to locate an accessible designated parking space | Upon arrival at the Facility, Plaintiff was unable to locate a parking space designated as accessible, forcing him to park in the parking lot, between the sidewalk and a curb, directly in front of the Facility, in a space that was not designated as accessible. Plaintiff discovered that this parking space had limited space between his vehicle and the curb, making it difficult for him to walk to the back of his vehicle to retrieve his wheelchair. | Yes |
| Unable to locate an accessible route to the Facility | When attempting to enter the Facility, Plaintiff was not able to locate an identifiable route from the parking lot, where he parked, to the entrance to the Facility nor could Plaintiff locate a ramp to get up onto the sidewalk to access the entrance of the Facility.  Plaintiff had difficulty lifting his wheelchair up onto the raised sidewalk. | Yes |
| Unable to locate an accessible entrance to the Facility | Plaintiff was unable to locate any signage to indicate an accessible entrance.  Plaintiff entered the Facility at the only visible entry, through a door that was difficult to open because of its weight.  While Plaintiff was attempting to push his wheelchair into the Facility the door slammed shut onto him. | Yes |
| Cashier counter not accessible | The service counter within the Facility was too high for Plaintiff to reach the register counter and sign his receipt. Plaintiff could not locate, nor was he shown an alternate shelf.  Plaintiff was provided a pad, which he had difficulty holding, to sign the receipt for the credit card purchase. | Yes |
| Condiment counter not accessible | The condiment counter within the Facility was too high for Plaintiff to be able to see and reach the food items on the top shelf and had difficulty, having to reach up and stretch, to access those condiments on the bottom shelf. | Yes |
| No wheelchair accessible seating | Plaintiff was unable to locate an accessible table within the Facility and was forced to sit at a table that lacked necessary wheelchair clearances, causing Plaintiff to block the walking path of other patrons, | Yes |

1

MLF0030892

EX. 53-9

| | | |
|---|---|---|
| | which was embarrassing to Plaintiff. Plaintiff also had difficulty in pulling his wheelchair all the way up to the table, due to an obstacle under the table. Plaintiff was forced to site far away from the table for the duration of his meal, which was uncomfortable. | |
| No accessible restroom | Plaintiff was not able to access the restrooms at the Facility. One restroom, located closes to the dining area, lacked necessary wheelchair clearances, as the door was too narrow. This prevented Plaintiff from moving his wheelchair inside the restroom. The alternate restroom did not have an accessible route from the inside of the Facility to the restroom door. The route explained by Facility staff was extremely difficult, requiring Plaintiff to maneuver his wheelchair down a sidewalk, off of the raised sidewalk without a ramp, around the building, accessing another raised walkway without a ramp, to enter the restroom door. | yes. |

MLF0030893

EX. 53-10



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

May 6, 2013

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

      RE:   **ADAI No.   01601**
                **George's Dari-Snack (Facility) 14575 E. Manning, Parlier, CA**

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/dg

Enclosure: Fee Agreement

MLF0030891

EX. 53-11

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 5/6/13                            _Ronald Moore_
                                          Ronald Moore

_Ronald Moore v. Jose Jimenez, et al._

MLF0030900

# Exhibit 54

California Chevron
4100 California Av Bakersfield    CA
STN# 00210253

CARD NOT CHARGED UNTIL SALE COMPLETE
FINAL RECEIPT PRINTS AT DISPENSER


XXXXXXXXXXXX4000 E/VISA

WAVE 100s            1          4.19T
Tobacco            2 @  3.94    7.88T
1 Unleaded @/Self
Pump10Prepay20.166@@$3.719/G $  75.00

Items:   4      Subtotal       87.07
Sales Tax                       0.88
**Total**                      $87.95

Credit Card(USD$)             $87.95
       CHANGE DUE               0.00



Invoice#: 5320469
Auth#: 07083B

*** CUSTOMER COPY ***



           Learn how to
           EARN REWARDS
           with a Chevron
            or Texaco
            Credit Card
          See application
            for details



89979e9s68t2 02/05/14 21:08:42
        **Thank You**
        **Call  Again**

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? Samco Food Store chevron Gas

2. When did you visit the Facility? 2/5/14 (Date) 9pm (Time)

3. What is the address of the Facility? 4100 california Ave. Bakersfield CA

4. Was this your first visit to the Facility? yes

5. How many times have you visited the Facility? ? If more than one visit, please list the date and time if you know it. ?

6. What was the purpose of your visit? Gas oil smokes

7. Who accompanied you to the Facility? No one

8. What car did you drive to the Facility? mine

9. Did you drive yourself of did you get a ride from someone else? I Drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. @ Gas pump

11. Was it difficult for you to park there? yes

12. Why? No Root of travel

13. How did you unload from your vehicle? Rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? No

16. What problems did you encounter transferring onto your wheelchair?

not much

17. Which way did you go from the parking to the entrance of the Facility? To the Door

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

yes no Ramp had to go over curbs some guy helped me up on the curb

19. Did you encounter any problems opening the door? Describe why. the guy opened Door for me I could not get in Because stuff in way had to open other Door so I

20. Did you have any problems inside the Facility? Describe. yes had to back up open Door passed me so I could get Buy

MLF0037808

EX. 54-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

Issle for small Knocking things Down trying to get to oil
Bathroom Door opened outward Barley got into Restroom

21. What did you purchase (or what meal did you have there). Describe: _Gas oil Smokes_
_Lotto tickets_

22. Have you used the restroom at the Facility? _Yes_

23. Why did you need to use the restroom? _had to go_

24. Did you use the sink? _yes_

25. Any problems? _toilet cover to High soap to High toilet paper High_

26. Did you use the urinal? _NO_

27. Did you use the toilet? _Yes_

28. Did you use the toilet paper? _yes High_

29. Did you use paper towels? _yes High_

30. Did you use the soap dispenser? _out of Reach_

31. Did you have any problem maneuvering inside the restroom? _yes I Almost did not get out Had to get in corner and open door Behind me had to Back out_

32. Where did you sit? _N/A_

33. Was there any seating provided inside the Facility? _N/A_

34. Was it wheelchair accessible? _NO_

35. Where you comfortable at the table? _N/A_

36. Did you use the counter to pay for purchase? _yes_

37. Which counter did you use? _only one_

38. Was the counter accessible? _No guy had to run my card out of any Reach had to sign Recipt that Hart at the stuff in any_

39. Which way did you go after you left the Facility? _guy opened Door for me and that I Jumped off the curb_

40. Any problems getting back to your vehicle? _No Ramp_

41. Any problems transferring from your wheelchair to your vehicle? _not Really_

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0037809

EX. 54-4

February 24, 2014

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

>            **RE:    ADAI No. 01909**
>                   **California Chevron (4100 California Avenue,**
>                   **Bakersfield, CA)**

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0056316

**BARRIER MEMO**

ADAI No. :    01909

Case Name:    **Moore v. California Chevron**

Address:    **4100 California Blvd, Bakersfield**

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No ramp to curb | Plaintiff parked at the gas pump and made his way toward the building entrance, but was unable to locate a ramp to the sidewalk in front of the entrance. Plaintiff had to ask a passerby to assist him in wheeling up over the curb. When leaving, he was forced to roll directly over the curb without assistance, which was dangerous. | **Yes, the ramp is on the side, unmarked and not visible from the pumps in the front. It is also built up and dangerous** |
| One doorway obstructed, had to open both. | The building entrance lacked proper maneuvering space on both the exterior and interior. The person who helped Plaintiff onto the curb opened one of the doors for him, but Plaintiff was unable to enter because the interior was obstructed, requiring that both doors be open to allow enough clearance for Plaintiff to enter. Plaintiff was forced to back his wheelchair up to make room for the second door to open. | **Yes, it is a double door: one door was locked during the site inspection and the other one obstructed by a rack containing magazines.** |
| Aisles narrow | The aisles within the Facility's store lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver around inside the store. He needed to buy motor oil and knocked over items on his way to that area of the store. | **Yes** |
| Lack of maneuvering clearance at restroom entrance | Plaintiff had difficulty entering the restroom because the door opened outwards and lacked proper maneuvering clearances. It was difficult for him to open the door and maneuver around it into the restroom. | **Yes** |
| Toilet covers, soap, toilet paper, paper towels too high | The accessories (toilet seat covers, soap, and toilet paper, paper towels) in the restroom were positioned too high, making them difficult for Plaintiff to reach. He could not reach the soap. | **Yes** |
| Difficult to exit restroom | The restroom lacked proper wheelchair clearances inside and Plaintiff almost became trapped. He had | **Yes** |

1

MLF0037806

EX. 54-6

| | | |
|---|---|---|
| | difficulty maneuvering himself around to open the door to exit. He was forced to go into a corner and open the door behind him, then back his wheelchair out. | |
| Counter high/cluttered | The transaction counter and credit card reader were too high and cluttered with items. Plaintiff had to give his card to the store attendant to swipe for him. It was difficult to sign the receipt. | Yes |

2

MLF0037807

EX. 54-7



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 2, 2014

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE: **ADAI No.    01909**
**Jouda (California Chevron)**
*4100 California Avenue, Bakersfield, CA*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure: Fee Agreement

MLF0037876

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

    I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Jouda (California Chevron).**

DATE: _____

                                      _____
                                        CLIENT'S SIGNATURE- RONALD MOORE

                                        _____
                                        ADDRESS

                                        _____
                                        CITY

                                        _____
                                        TELEPHONE

DATE:_____

                                        MOORE LAW FIRM, PC
                                        ATTORNEY FOR RONALD MOORE

MLFO037877

## *CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

THIS AGREEMENT, made this _____ at **San Jose, CA,** by and between <u>Ronald Moore</u>, hereinafter designated as "Client," and **the Moore Law Firm, PC**, hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case against ***Jouda (California Chevron)*** and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

### FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

MLF0037878

EX. 54-10

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0037879

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)     Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)     Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)     In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)     In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0037880

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u> .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0037881

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0037882

EX. 54-14

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial                    _____Initial

MLF0037883

DATE:_____          _____
                                 CLIENT'S SIGNATURE


DATE:_____          _____
                                 CLIENT'S NAME

                                 _____
                                 ADDRESS


                                 _____
                                 CITY


                                 _____
                                 TELEPHONE


MY WITNESS(S) ARE _____
(if none please indicate so)



DATE:_____          MOORE LAW FIRM, PC



                                 _____
                                 ATTORNEY FOR RONALD MOORE

MLF0037884

1    Tanya E. Moore, SBN 206683
     MOORE LAW FIRM, P.C.
2    332 North Second Street
     San Jose, California 95112
3    Telephone (408) 298-2000
     Facsimile (408) 298-6046
4    E-mail: tanya@moorelawfirm.com

5    Attorneys for Plaintiff
     Ronald Moore

6

7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11    RONALD MOORE,              )   No.
                                  )
12            Plaintiff,       )   **COMPLAINT ASSERTING DENIAL OF**
                                  )   **RIGHT OF ACCESS UNDER**
13        vs.                 )   **AMERICANS WITH DISABILITIES ACT**
                                  )   **FOR INJUNCTIVE RELIEF,**
14    GHALEB JOUDA, Trustee of the JOUDA   )   **DECLARATORY RELIEF, DAMAGES,**
     FAMILY TRUST; NAJAT MAKHOUL     )   **ATTORNEYS' FEES AND COSTS (ADA)**
15    JOUDA, Trustee of the JOUDA FAMILY    )
     TRUST; HWJ ENTERPRIZES, INC., dba    )
16    CALIFORNIA CHEVRON;          )
                                  )
17           Defendants.      )
                                  )
18                                   )
     _____ )
19

20                         **I. SUMMARY**

21        1.      This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

22    discrimination at the building, structure, facility, complex, property, land, development, and/or

23    surrounding business complex known as:

24             California Chevron
            4100 California Boulevard
25             Bakersfield, CA 93309
            (hereafter "the Facility")
26

27        2.      Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

28    costs, against GHALEB JOUDA, Trustee of the JOUDA FAMILY TRUST; NAJAT

*Moore v. Jouda, et al.*
Complaint
                            Page 1

MLF0037885

1  MAKHOUL JOUDA, Trustee of the JOUDA FAMILY TRUST; and HWJ ENTERPRIZES,

2  INC., dba CALIFORNIA CHEVRON (hereinafter collectively referred to as "Defendants"),

3  pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA")

4  and related California statutes.

## II.   JURISDICTION

6  3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

7  claims.

8  4.   Supplemental jurisdiction for claims brought under parallel California law –

9  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

10  5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

12  6.   All actions complained of herein take place within the jurisdiction of the United

13  States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

14  § 1391(b), (c).

## IV.   PARTIES

16  7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or

17  persons), firm, and/or corporation.

18  8.   Plaintiff requires the use of a wheelchair when traveling about in public.

19  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

20  United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

22  9.   The Facility is a public accommodation facility, open to the public, which is

23  intended for nonresidential use and whose operation affects commerce.

24  10.   Plaintiff visited the Facility and encountered barriers (both physical and

25  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

26  goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

27  encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

28  about February 5, 2014:

*Moore v. Jouda, et al.*
Complaint

MLF0037886

EX. 54-18

a)   Plaintiff parked at the gas pump and made his way toward the building entrance to pay for his gas, but was unable to locate a ramp to access the sidewalk in front of the entrance. Plaintiff had to ask a passerby to assist him in wheeling over the curb, which was embarrassing. When he left the building, he was forced to roll his wheelchair off the curb without assistance, which was both difficult and dangerous.

b)   The building entrance lacked proper maneuvering clearance at both the interior and exterior landings. The person who had helped Plaintiff wheel up onto the curb opened one of the double doors for him to enter, but Plaintiff's wheelchair did not fit through because the interior was obstructed. Both doors needed to be opened to allow enough clearance for Plaintiff to enter, and Plaintiff was forced to back his wheelchair up to make room for the second door to open which was difficult due to the small exterior landing.

c)   The aisles inside the Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver around inside the store and causing him to knock over items on his way down the aisles.

d)   Plaintiff had difficulty entering the restroom because the entrance lacked proper maneuvering clearances and was located in a narrow hallway. It was hard for Plaintiff to open the door and maneuver into the restroom.

e)   The toilet paper, seat covers, and soap dispenser within the restroom were positioned too high, making them difficult or impossible for Plaintiff to reach.

f)   The restroom lacked proper wheelchair clearances inside and Plaintiff almost became trapped. He had difficulty maneuvering himself around to open the door to exit. He was forced to wheel into a corner and open the door behind him, then back his wheelchair out.

g)   The transaction counter and credit card reader were too high, and the

*Moore v. Jouda, et al.*
Complaint

Page 3

MLF0037887

EX. 54-19

1          counter was cluttered with items. Plaintiff could not reach to swipe his

2          credit card and it was difficult for him to sign the receipt on the counter.

3          11.    The barriers identified in paragraph 10 herein are only those that Plaintiff

4     personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist

5     at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once

6     such additional barriers are identified as it is Plaintiff's intention to have all barriers which

7     exist at the Facility and relate to his disabilities removed to afford him full and equal access.

8          12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

9     Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

10    accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

11    Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

12    once the barriers are removed.

13         13.    Defendants knew, or should have known, that these elements and areas of the

14    Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

15    the physically disabled. Moreover, Defendants have the financial resources to remove these

16    barriers from the Facility (without much difficulty or expense), and make the Facility

17    accessible to the physically disabled. To date, however, Defendants refuse to either remove

18    those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

19         14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

20    and authority to modify the Facility to remove impediments to wheelchair access and to

21    comply with the 2010 Standards for Accessible Design and the California Code of Regulations

22    Title 24. Defendants have not removed such impediments and have not modified the Facility to

23    conform to accessibility standards. Defendants have intentionally maintained the Facility in its

24    current condition and have intentionally refrained from altering the Facility so that it complies

25    with the accessibility standards.

26         15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

27    so obvious as to establish Defendants' discriminatory intent. On information and belief,

28    Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

*Moore v. Jouda, et al.*
Complaint
                                        Page 4

MLF0037888

EX. 54-20

to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

#### Failure to Remove Architectural Barriers in an Existing Facility

19.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.   Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the

MLF0037889

EX. 54-21

1   ADA by failing to remove those barriers, when it was readily achievable to do so.

2        22.    In the alternative, if it was not "readily achievable" for Defendants to remove

3   the Facility's barriers, then Defendants violated the ADA by failing to make the required

4   services available through alternative methods, which are readily achievable.

5                    <u>Failure to Design and Construct an Accessible Facility</u>

6        23.    Plaintiff alleges on information and belief that the Facility was designed and

7   constructed (or both) after January 26, 1992 – independently triggering access requirements

8   under Title III of the ADA.

9        24.    The ADA also prohibits designing and constructing facilities for first occupancy

10  after January 16, 1993, that aren't readily accessible to, and usable by, individuals with

11  disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

12       25.    Here, Defendants violated the ADA by designing and constructing (or both) the

13  Facility in a manner that was not readily accessible to the physically disabled public –

14  including Plaintiff – when it was structurally practical to do so.[1]

15                       <u>Failure to Make an Altered Facility Accessible</u>

16       26.    Plaintiff alleges on information and belief that the Facility was modified after

17  January 26, 1992, independently triggering access requirements under the ADA.

18       27.    The ADA also requires that facilities altered in a manner that affects (or could

19  affect) its usability must be made readily accessible to individuals with disabilities to the

20  maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

21  primary function also requires making the paths of travel, bathrooms, telephones, and drinking

22  fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

23       28.    Here, Defendants altered the Facility in a manner that violated the ADA and

24  was not readily accessible to the physically disabled public – including Plaintiff – to the

25  maximum extent feasible.

26

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Jouda, et al.*
Complaint

MLF0037890

EX. 54-22

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.   SECOND CLAIM

### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

*Moore v. Jouda, et al.*
Complaint

Page 7

MLF0037891

EX. 54-23

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

MLF0037892

EX. 54-24

3.  Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.  Attorneys' fees, litigation expense, and costs of suit.[2]

5.  Interest at the legal rate from the date of the filing of this action.

6.  For such other and further relief as the Court deems proper.

Dated: June 27, 2014                    MOORE LAW FIRM, P.C.

                                        /s/ Tanya E. Moore
                                        Tanya E. Moore
                                        Attorneys for Plaintiff
                                        Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Jouda, et al.*
Complaint
                                Page 9

MLF0037893

EX. 54-25

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:___June 27, 2014_____       _/s/ Ronald Moore_____
                                   Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                   _/s/ Tanya E. Moore_____
                                   Tanya E. Moore, Attorney for
                                   Plaintiff, Ronald Moore

*Moore v. Jouda, et al.*
*Verification*

MLF0037894

EX. 54-26

# Exhibit 55

HARRYS LIQUOR AND GA
500 N GATEWAY DR
MADERA CA 93637
559-675-1966

Terminal ID : 00467963
---------------------------------
05/31/14                    9:18 PM

MASTERCARD
************7245
SALE                    REF#:653
BATCH #: 118            AUTH #: 795972

AMOUNT                  $27.34

APPROVED

CUSTOMER COPY

MLF0043279

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? Harry's Liquor and Gas

2. What is the address of the Facility? 500 N. Gateway DR. Madera, CA

3. When did you visit the Facility? 5/31/14 (Date) 7:00 (Time)

4. Was this your first visit to the Facility? NO

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. ?

6. What was the purpose of your visit? Gas and drinks

7. Who accompanied you to the Facility? Grandson Ronny and Jhonny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself or did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. I think PUMP #4

11. Was it difficult for you to park there? If so, why? No we were at the pump

12. How did you unload from your vehicle? Rear

13. What side of the vehicle did you unload from? Driver or passenger? Driver

14. Did anyone help you to transfer onto your wheelchair? Who? Jhonny

15. Did you encounter any problems transferring onto your wheelchair? Describe. No Jhonny brought it up to my door

16. Which way did you go from the parking to the entrance of the Facility? ~~~~~ to Store

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. No ramp, no access isle, no route of travel, poles and newstands in way hard to get by because of car in way.

18. Did you encounter any problems opening the door? Describe. Door narrow hard to get through

19. What did you purchase (or what meal did you have there)? fountain drink, drinks, & gas

20. Did you need to use the restroom while you were at the Facility? Why? Yes, but couldn't get bathroom. there was no way for me to get back there

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0043277

EX. 55-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: _N/A_

Toilet: _N/A_

Urinal: _N/A_

Toilet paper: _N/A_

Toilet seat covers: _N/A_

Paper towels/hand dryer: _N/A_

Soap dispenser: _N/A_

Other: _N/A_

22. Did you have any problem maneuvering inside the restroom? _N/A_

23. Was there any seating provided inside the Facility? _NO_

24. Were you able to sit comfortably at the table? If not, why? _N/A_

25. Did you use the counter to pay for purchase? Which one? _Yes only one_

26. Did you pay with cash or credit card? _Credit_

27. Was the counter accessible? If not, describe: _Yes, it was fine_

28. Did you have any other problems inside the Facility? Describe. _every isle is to narrow for Me to go down. fountain drinks to high. No way for Me to get to bathroom_

29. Which way did you go after you left the Facility? _out door towards car_

30. Any problems getting back to your vehicle? _____

31. Any problems transferring from your wheelchair to your vehicle? _No Jhonny brought Me to My door and put chair in car_

32. Any additional information you believe would assist us in evaluating this inquiry?

_Ronny was able to go use restroom but there was no way for Me to get to it._

MLF0043278

EX. 55-4



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

**K. RANDOLPH MOORE**
ESQUIRE
AND FOUNDER

*Tanya E. Moore*
*Attorney at Law*

*Marejka Sacks*
*Paralegal*

July 1, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE: ADAI No. 02042
**Harry's Liquor & Gas** *(500 N Gateway Drive, Madera, CA 93637)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0043280

**BARRIER MEMO**

ADAI No.:      02042

Case Name:    Moore v. Harry's Liquor & Gas

Address:      500 N Gateway Drive, Madera, CA 93637

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No Ramp | There was no ramp leading to the entrance of the Facility which forced the plaintiff to pop his chair up onto the curb, thereby risking tipping over and falling out of his chair. | |
| No Access Aisle | The plaintiff parked his vehicle in gas pump #4, but there was not sufficient wheelchair clearances around his vehicle. This made it difficult for the plaintiff to unload safely and easily. | |
| No Route of Travel; Poles and News Stand Obstructing Access | There was no route of travel from the plaintiff's vehicle to the entrance of the facility which compromised the plaintiff's safety because he was forced to wheel himself through the route of traffic between the pumps and the facility. Plaintiff had difficulty reaching the entrance due to poles, news stands, and a parked vehicle obstructing his route. | |
| Entrance door narrow | The building entrance door lacked sufficient wheelchair clearances, making it difficult for the plaintiff to wheel himself through. | |
| Aisles too Narrow | Every aisle in the facility was too narrow for the plaintiff to fit through and he therefore could not shop around and look at various items he might've wanted to purchase. | |
| No route to restroom | Plaintiff needed to use the restroom but was unable to travel to the restroom entrance due to the lack of clearances in the aisle, and therefore had to wait and look for a restroom elsewhere. | |
| High Soda Dispenser | The soda dispenser was too high for the plaintiff to reach so his grandson helped him. | |

1

MLF0043254

EX. 55-6



**MOORE**
**LAW FIRM, P.C.**

January 5, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

> Re:   ADAI No.    02042
>        Harry's Liquor & Gas (500 N Gateway Drive, Madera, CA 93637

Dear Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records.  Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed
Enclosure: Fee Agreement

---

**MLF0043267**

EX. 55-7

1 | Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
2 | 332 North Second Street
San Jose, California 95112
3 | Telephone (408) 298-2000
Facsimile (408) 298-6046
4 | E-mail: tanya@moorelawfirm.com

5 | Attorneys for Plaintiff
Ronald Moore

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **EASTERN DISTRICT OF CALIFORNIA**

10

11 | RONALD MOORE,                                    )  No.
                                                    )
12 |              Plaintiff,                         )  **COMPLAINT ASSERTING DENIAL OF**
                                                    )  **RIGHT OF ACCESS UNDER**
13 |     vs.                                         )  **AMERICANS WITH DISABILITIES ACT**
                                                    )  **FOR INJUNCTIVE RELIEF,**
14 | RAVINDER KAUR dba HARRY'S                       )  **DECLARATORY RELIEF, DAMAGES,**
       LIQUOR & GAS; DALER SINGH,                    )  **ATTORNEYS' FEES AND COSTS (ADA)**
15 | individually and dba HARRY'S LIQUOR &           )
       GAS;                                          )
16 |                                                 )
                                                    )
17 |              Defendants.                        )
                                                    )
18 | _____)

19 |                         **I. SUMMARY**

20 |     1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

21 | discrimination at the building, structure, facility, complex, property, land, development, and/or

22 | surrounding business complex known as:

23 |              Harry's Liquor & Gas
               500 North Gateway Drive
24 |              Madera, CA 93637
               (hereafter "the Facility")
25 |

26 |     2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

27 | costs, against RAVINDER KAUR dba HARRY'S LIQUOR & GAS; and DALER SINGH,

28 | individually and dba HARRY'S LIQUOR & GAS (hereinafter collectively referred to as

*Moore v. Kaur, et al.*
Complaint
                              Page 1

MLF0043268

EX. 55-8

"Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.   JURISDICTION

3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.      Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

6.      All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.   PARTIES

7.      Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.      Plaintiff is substantially limited in his ability to walk, and must use a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

9.      The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

10.     Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or about May 31, 2014:

MLF0043269

EX. 55-9

a)   The route of travel from Plaintiff's vehicle, parked at the gas pump, to the building entrance lacked necessary wheelchair clearances, and was obstructed by poles, a news stand, and a vehicle parked at another gas pump. It was hard for Plaintiff to maneuver his wheelchair between the obstacles to reach the entrance.

b)   The building entrance was improperly configured and lacked necessary wheelchair clearances, making it difficult for Plaintiff to wheel himself through the doorway.

c)   The aisles inside the Facility store lacked necessary wheelchair clearances, and Plaintiff was unable to maneuver around the store to get to the merchandise he wanted to purchase.

d)   The self-serve soda fountain was positioned too high, and Plaintiff was unable to reach the controls to fill his own cup. He had to ask his grandson for help to get a drink.

11.   The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.   Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.   Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility

*Moore v. Kaur, et al.*
Complaint

MLF0043270

EX. 55-10

1  accessible to the physically disabled. To date, however, Defendants refuse to either remove

2  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

3       14.     At all relevant times, Defendants have possessed and enjoyed sufficient control

4  and authority to modify the Facility to remove impediments to wheelchair access and to

5  comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

6  Design. Defendants have not removed such impediments and have not modified the Facility to

7  conform to accessibility standards. Defendants have intentionally maintained the Facility in its

8  current condition and have intentionally refrained from altering the Facility so that it complies

9  with the accessibility standards.

10      15.     Plaintiff further alleges that the (continued) presence of barriers at the Facility is

11  so obvious as to establish Defendants' discriminatory intent. On information and belief,

12  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

13  to relevant building standards; disregard for the building plans and permits issued for the

14  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

15  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

16  property continues to exist in its non-compliant state. Plaintiff further alleges, on information

17  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

18  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

19                            **VI.    FIRST CLAIM**

20                   **Americans with Disabilities Act of 1990**

21                   Denial of "Full and Equal" Enjoyment and Use

22      16.     Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

23  this claim.

24      17.     Title III of the ADA holds as a "general rule" that no individual shall be

25  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

26  goods, services, facilities, privileges, and accommodations offered by any person who owns,

27  operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

28      18.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

*Moore v. Kaur, et al.*
Complaint
                                Page 4

MLF0043271

EX. 55-11

1  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the
2  Facility during each visit and each incident of deterrence.

3  ### Failure to Remove Architectural Barriers in an Existing Facility

4  19.   The ADA specifically prohibits failing to remove architectural barriers, which
5  are structural in nature, in existing facilities where such removal is readily achievable. 42
6  U.S.C. § 12182(b)(2)(A)(iv).

7  20.   When an entity can demonstrate that removal of a barrier is not readily
8  achievable, a failure to make goods, services, facilities, or accommodations available through
9  alternative methods is also specifically prohibited if these methods are readily achievable. Id.
10  § 12182(b)(2)(A)(v).

11  21.   Here, Plaintiff alleges that Defendants can easily remove the architectural
12  barriers at the Facility without much difficulty or expense, and that Defendants violated the
13  ADA by failing to remove those barriers, when it was readily achievable to do so.

14  22.   In the alternative, if it was not "readily achievable" for Defendants to remove
15  the Facility's barriers, then Defendants violated the ADA by failing to make the required
16  services available through alternative methods, which are readily achievable.

17  ### Failure to Design and Construct an Accessible Facility

18  23.   Plaintiff alleges on information and belief that the Facility was designed and
19  constructed (or both) after January 26, 1992 – independently triggering access requirements
20  under Title III of the ADA.

21  24.   The ADA also prohibits designing and constructing facilities for first occupancy
22  after January 16, 1993, that aren't readily accessible to, and usable by, individuals with
23  disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

24  25.   Here, Defendants violated the ADA by designing and constructing (or both) the
25  Facility in a manner that was not readily accessible to the physically disabled public –
26  including Plaintiff – when it was structurally practical to do so.[1]

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a
private attorney general under either state or federal statutes.

*Moore v. Kaur, et al.*
Complaint

MLF0043272

EX. 55-12

<u>Failure to Make an Altered Facility Accessible</u>

26.    Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.    The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.    Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.    The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.    Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

**VII.    SECOND CLAIM**

**Unruh Act**

33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

*Moore v. Kaur, et al.*
Complaint

Page 6

MLF0043273

EX. 55-13

1    34.    California Civil Code § 51 states, in part, that: All persons within the

2  jurisdiction of this state are entitled to the full and equal accommodations, advantages,

3  facilities, privileges, or services in all business establishments of every kind whatsoever.

4    35.    California Civil Code § 51.5 also states, in part that: No business establishment

5  of any kind whatsoever shall discriminate against any person in this state because of the

6  disability of the person.

7    36.    California Civil Code § 51(f) specifically incorporates (by reference) an

8  individual's rights under the ADA into the Unruh Act.

9    37.    Defendants' aforementioned acts and omissions denied the physically disabled

10  public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges

11  and services in a business establishment (because of their physical disability).

12    38.    These acts and omissions (including the ones that violate the ADA) denied,

13  aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

14    39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

15  minimum damages of four thousand dollars ($4,000) for each offense.

16    40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

17  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

18  § 52(a).

19  **VIII. THIRD CLAIM**

20  **Denial of Full and Equal Access to Public Facilities**

21    41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

22  this claim.

23    42.    Health and Safety Code § 19955(a) states, in part, that: California public

24  accommodations or facilities (built with private funds) shall adhere to the provisions of

25  Government Code § 4450.

26    43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-

27  exempt) public accommodation constructed prior to July 1, 1970, which is altered or

28  structurally repaired, is required to comply with this chapter.

*Moore v. Kaur, et al.*
Complaint
                                          Page 7

MLF0043274

EX. 55-14

44.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.    Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.    Attorneys' fees, litigation expense, and costs of suit.[2]

5.    Interest at the legal rate from the date of the filing of this action.

6.    For such other and further relief as the Court deems proper.

Dated: December 19, 2014                    MOORE LAW FIRM, P.C.

                                            /s/ Tanya E. Moore
                                            Tanya E. Moore
                                            Attorneys for Plaintiff
                                            Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Kaur, et al.*
Complaint
                                            Page 8

MLF0043275

EX. 55-15

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:  December 19, 2014          /s/ Ronald Moore
                                   Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                   /s/ Tanya E. Moore
                                   Tanya E. Moore, Attorney for
                                   Plaintiff, Ronald Moore

*Moore v. Kaur, et al.*
*Verification*

MLF0043276

EX. 55-16

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 12/19/14                    _Ronald Moore_
                                   Ronald Moore

*Ronald Moore v. Ravinder Kaur, et al.*

MLF0043281

# Exhibit 56

MLF0035691

```
        PARKWAY  MINI  MART
        5510  W  SHAW  AVE
        FRESNO  CA  93722
          559 275 4994
181868471-001  PARKWAY MINI MART
5510 W SHAW AVE
FRESNO     CA 93722


Descr.              qty        amount

UNLD CA #03       25.7226       90.00
                @ 3.499/ G

        Prepay Fuel               -100.00
F WAVE LIGHTS 100      1           3.93
T WAVE LIGHTS 100      1           3.93
                               --------
            Sub Total            -2.14
                  Tax             0.65

        TOTAL   $        -1.49
              CASH $       -1.49
    THANKS.COME  AGAIN
REG# 0001 CSH# 001 DR# 01  TRAN# 13774
08/31/13  19:05:19          ST# AB123#
```

PARKWAY MINI MART
5510 W SHAW AVE
FRESNO CA 93722
(559) 275-4994
T00000547-001 PARKWAY MINI MART
5510 W SHAW AVE
FRESNO        CA 93722

| Description | qty | amount |
|---|---|---|
| K-pay card | | 10.00 |

Sub Total        10.00
Tax               0.00

TOTAL  CASH $  10.00
CASH           10.00

THANKS, COME AGAIN
REG# 0001 Cshr 001 DR# 01 Tran# 19001
02/23/14  15:55:39            ST# AB123

MLF0035688

EX. 56-3

```
           PARKWAY MINI MART
             5510 W SHAW AVE
            FRESNO CA 93722
              559 275 4994
         TO06695471-001 PARKWAY MINI MART
         5510 W SHAW AVE
         FRESNO      CA 93722


         Descr.          qty        amount
         ------          ---        ------

         Prepay CA#03                50.00
                                    -------
                       Sub Total     50.00
                            Tax       0.00
                          Total      50.00
                        CASH  $     100.00
                      Change  $     -50.00
         THANKS.COME AGAIN
         REG# 0001 CSH# 001 DR# 01 TRAN# 10186
         06/13/14  15:42:03          ST# AB123
```

MLF0035689

EX. 56-4

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _Parkway Mini Mart_

2. When did you visit the Facility? _8/31/13_ (Date) _7:00 PM_ (Time)

3. What is the address of the Facility? _5510 W. Shaw Ave._

4. Was this your first visit to the Facility? _NO_

5. How many times have you visited the Facility? _a few_ If more than one visit, please list the date and time if you know it. _?_

6. What was the purpose of your visit? _to get gas_

7. Who accompanied you to the Facility? _Grandson (Ronny)_

8. What car did you drive to the Facility? _Mine_

9. Did you drive yourself of did you get a ride from someone else? _I drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _At the front pump_

11. Was it difficult for you to park there? _Yes_

12. Why? _the road is uneven, cracked, and no route of travel_

13. How did you unload from your vehicle? _from the ~~road~~ rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _Yes my Grandson Ronny_

16. What problems did you encounter transferring onto your wheelchair?
_the road because it was uneven_

17. Which way did you go from the parking to the entrance of the Facility? _to the right towards the door_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
_Raised asphalt to high threshold_

19. Did you encounter any problems opening the door? Describe why. _heavy my grandson had to hold open for me_

20. Did you have any problems inside the Facility? Describe. _isles are to small_

MLF0035665

EX. 56-5

had to have grandson pay due to stuff in front of counter. No room. Counter to high.

21. What did you purchase (or what meal did you have there). Describe: gas and smokes

22. Have you used the restroom at the Facility? No, couldn't if I wanted to

23. Why did you need to use the restroom? _____

24. Did you use the sink? _____

25. Any problems? _____

26. Did you use the urinal? _____

27. Did you use the toilet? _____

28. Did you use the toilet paper? _____

29. Did you use paper towels? _____

30. Did you use the soap dispenser? _____

31. Did you have any problem maneuvering inside the restroom? _____

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _____

34. Was it wheelchair accessible? _____

35. Where you comfortable at the table? _____

36. Did you use the counter to pay for purchase? Yes

37. Which counter did you use? front

38. Was the counter accessible? No, there was stuff in front of it

39. Which way did you go after you left the Facility? towards car

40. Any problems getting back to your vehicle? Yes grandson had to ask car behind us to back up so he could get the wheel chair in car

41. Any problems transferring from your wheelchair to your vehicle? Yes grandson had to help be because road was uneven

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0035666

February 18, 2014

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

      **RE:**  ·  **ADAI No. 1886**
                **Parkway Mini Mart**
                **5510 W. Shaw Avenue, Fresno, CA 93722**

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0035690

EX. 56-7

**BARRIER MEMO**

ADAI No. :     01886

Case Name:     Moore v. Parkway Mini Mart

Address:     5510 W. Shaw Ave, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Pavement at gas pump closest to entrance is cracked and uneven | Plaintiff parked at the gas pump closest to the entrance of the Facility. The surface of the parking lot at the pump was cracked and uneven, making it difficult for Plaintiff to transfer between his vehicle and his wheelchair. | At the pump pavement seems ok. But there is a transition between a cement pad next to the pump and asphalt leading to the door. Asphalt leading to the door is cracked and uneven. Most likely he had to transfer outside of the cement pad, then statement is true |
| No accessible route to entrance | Plaintiff was unable to locate an accessible route from the gas pump to the entrance of the Facility. He was forced to travel over the cracked and uneven surface of the parking lot, and the route to the entrance door was obstructed by metal poles and another customer's vehicle which was parked in the parking space directly in front of the entrance. It was difficult for Plaintiff to maneuver his wheelchair between the poles and the vehicle in order to reach the entrance. | Yes, metal poles, yes, cars park all over. However, they are in the process of making changes. There was a contractor of some sort there when I was doing the inspection. Make sure you save Google photos of its condition also before they change |
| Ramp in front of entrance steep | The ramp from the parking lot to the landing directly in front of the entrance door was excessively sloped, | It's not a ramp per se, but a |

1

MLF0035654

EX. 56-8

| | which compounded Plaintiff's difficulty in maneuvering to the entrance door. | **sloped asphalt with many cracks and uneven.** |
|---|---|---|
| High threshold; heavy entrance door | The entrance door was heavy and had a high threshold, which made it difficult for Plaintiff to enter while attempting to hold the door open. Plaintiff needed help from his grandson, who held the door open while Plaintiff struggled to overcome the raised threshold. | **Yes, and double door was very heavy and hard to open** |
| Aisles narrow | The aisles within the Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver around the store. | **Some, not all** |
| Counter too high and lacks accessible route/clear space | The cashier counter was too high and had items displayed in front of it, which prevented Plaintiff from approaching and using the counter to pay. Plaintiff's grandson had to complete the transaction. | **Did not observe this condition.** |
| Pumps too close together? | When Plaintiff returned to his vehicle, there was another vehicle parked at the adjacent pump, which was located very close to the pump Plaintiff was parked at. Due to the lack of clearance, Plaintiff was forced to ask the other driver to move the vehicle so that Plaintiff had enough space to load his wheelchair into the back of his vehicle. | Pumps are not the issue. The issue is the cars when parked at the pumps are very close to the door and may block the entrance depending on where they park. |

2

MLF0035655



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street ·
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

April 11, 2014

**K. RANDOLPH MOORE**
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE: **ADAI No. 01886**
**Parkway Mini Mart, 5510 West Shaw Ave., Fresno**

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/dg

Enclosure: Fee Agreement

MLF0056313

EX. 56-10

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | No. |
| Plaintiff, | **COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |
| vs. | |
| HARDIP KAUR, individually and dba PARKWAY MINI MART; KULDIP SINGH, individually and dba PARKWAY MINI MART; | |
| Defendants. | |

## I. SUMMARY

1. This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Parkway Mini Mart
> 5510 West Shaw Avenue
> Fresno, CA 93722
> (hereafter "the Facility")

2. Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against HARDIP KAUR, individually and dba PARKWAY MINI MART; and KULDIP SINGH, individually and dba PARKWAY MINI MART (hereinafter collectively

MLF0035656

EX. 56-11

1  referred to as "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42

2  U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.  JURISDICTION

3.  This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.  Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.  Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.  VENUE

6.  All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.  PARTIES

7.  Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.  Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.  FACTS

9.  The Facility is a public accommodation facility, open to the public, which is intended for nonresidential use and whose operation affects commerce.

10.  Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or about August 31, 2013:

a)  Plaintiff parked at the gas pump closest to the entrance of the Facility. The pavement near Plaintiff's vehicle was cracked and uneven,

*Moore v. Kaur, et al.*
Complaint

MLF0035657

EX. 56-12

1            making it difficult for Plaintiff to transfer into his wheelchair.

2        b)     Plaintiff was unable to locate an accessible route from his vehicle to
3                 the entrance of the Facility. The route to the entrance was uneven,
4                 excessively sloped up to the landing at the entrance, and obstructed by
5                 metal poles and another vehicle which was parked in the parking space
6                 directly in front of the entrance. It was difficult for Plaintiff to
7                 maneuver his wheelchair across the uneven parking lot, between the
8                 poles and the vehicle, and up the slope, in order to reach the entrance.

9        c)     The entrance door was heavy and had a high threshold, which made it
10                difficult for Plaintiff to enter while holding the door open. Plaintiff
11                needed help from his grandson, who held the door open while Plaintiff
12                struggled to overcome the threshold.

13        d)     Some of the aisles within the Facility lacked necessary wheelchair
14                clearances, making it difficult for Plaintiff to maneuver around inside
15                the store.

16      11.     The barriers identified in paragraph 10 herein are only those that Plaintiff
17 personally encountered. Plaintiff is presently unaware of other barriers which may in fact
18 exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint
19 once such additional barriers are identified as it is Plaintiff's intention to have all barriers
20 which exist at the Facility and relate to his disabilities removed to afford him full and equal
21 access.

22      12.     Plaintiff was, and continues to be, deterred from visiting the Facility because
23 Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and
24 accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.
25 Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility
26 once the barriers are removed.

27      13.     Defendants knew, or should have known, that these elements and areas of the
28 Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

*Moore v. Kaur, et al.*
Complaint

MLF0035658

EX. 56-13

1   the physically disabled.  Moreover, Defendants have the financial resources to remove these

2   barriers from the Facility (without much difficulty or expense), and make the Facility

3   accessible to the physically disabled.  To date, however, Defendants refuse to either remove

4   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

5       14.    At all relevant times, Defendants have possessed and enjoyed sufficient

6   control and authority to modify the Facility to remove impediments to wheelchair access and

7   to comply with the 2010 Standards for Accessible Design and the California Code of

8   Regulations Title 24.  Defendants have not removed such impediments and have not

9   modified the Facility to conform to accessibility standards.  Defendants have intentionally

10   maintained the Facility in its current condition and have intentionally refrained from altering

11   the Facility so that it complies with the accessibility standards.

12       15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility

13   is so obvious as to establish Defendants' discriminatory intent.  On information and belief,

14   Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to

15   adhere to relevant building standards; disregard for the building plans and permits issued for

16   the Facility; conscientious decision to maintain the architectural layout (as it currently exists)

17   at the Facility; decision not to remove barriers from the Facility; and allowance that

18   Defendants' property continues to exist in its non-compliant state.  Plaintiff further alleges,

19   on information and belief, that the Facility is not in the midst of a remodel, and that the

20   barriers present at the Facility are not isolated (or temporary) interruptions in access due to

21   maintenance or repairs.

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

25       16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

26   this claim.

27       17.    Title III of the ADA holds as a "general rule" that no individual shall be

28   discriminated against on the basis of disability in the full and equal enjoyment (or use) of

MLF0035659

EX. 56-14

1  goods, services, facilities, privileges, and accommodations offered by any person who owns,

2  operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

3       18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

4  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

5  Facility during each visit and each incident of deterrence.

6  <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

7       19.    The ADA specifically prohibits failing to remove architectural barriers, which

8  are structural in nature, in existing facilities where such removal is readily achievable.  42

9  U.S.C. § 12182(b)(2)(A)(iv).

10       20.    When an entity can demonstrate that removal of a barrier is not readily

11  achievable, a failure to make goods, services, facilities, or accommodations available through

12  alternative methods is also specifically prohibited if these methods are readily achievable.

13  <u>Id</u>. § 12182(b)(2)(A)(v).

14       21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

15  barriers at the Facility without much difficulty or expense, and that Defendants violated the

16  ADA by failing to remove those barriers, when it was readily achievable to do so.

17       22.    In the alternative, if it was not "readily achievable" for Defendants to remove

18  the Facility's barriers, then Defendants violated the ADA by failing to make the required

19  services available through alternative methods, which are readily achievable.

20  <u>Failure to Design and Construct an Accessible Facility</u>

21       23.    Plaintiff alleges on information and belief that the Facility was designed and

22  constructed (or both) after January 26, 1992 – independently triggering access requirements

23  under Title III of the ADA.

24       24.    The ADA also prohibits designing and constructing facilities for first

25  occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

26  with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

27       25.    Here, Defendants violated the ADA by designing and constructing (or both)

28  the Facility in a manner that was not readily accessible to the physically disabled public –

*Moore v. Kaur, et al.*
Complaint
               Page 5

MLF0035660

1   including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

3      26.    Plaintiff alleges on information and belief that the Facility was modified after

4   January 26, 1992, independently triggering access requirements under the ADA.

5      27.    The ADA also requires that facilities altered in a manner that affects (or could

6   affect) its usability must be made readily accessible to individuals with disabilities to the

7   maximum extent feasible.  42 U.S.C. § 12183(a)(2).  Altering an area that contains a

8   facility's primary function also requires making the paths of travel, bathrooms, telephones,

9   and drinking fountains serving that area accessible to the maximum extent feasible. Id.

10      28.    Here, Defendants altered the Facility in a manner that violated the ADA and

11   was not readily accessible to the physically disabled public – including Plaintiff – to the

12   maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

14      29.    The ADA also requires reasonable modifications in policies, practices, or

15   procedures, when necessary to afford such goods, services, facilities, or accommodations to

16   individuals with disabilities, unless the entity can demonstrate that making such

17   modifications would fundamentally alter their nature.  42 U.S.C. § 12182(b)(2)(A)(ii).

18      30.    Here, Defendants violated the ADA by failing to make reasonable

19   modifications in policies, practices, or procedures at the Facility, when these modifications

20   were necessary to afford (and would not fundamentally alter the nature of) these goods,

21   services, facilities, or accommodations.

22      31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

23   attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

24      32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

25   Defendants violated the ADA in order to pursue damages under California's Unruh Civil

26   Rights Act.

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Kaur, et al.*
Complaint

Page 6

MLF0035661

EX. 56-16

## VII.   SECOND CLAIM

### Unruh Act

33.   Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.   California Civil Code § 51 states, in part, that:   All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.   California Civil Code § 51.5 also states, in part that:   No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.   Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.   Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.   Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.   Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.   Health and Safety Code § 19955(a) states, in part, that:   California public accommodations or facilities (built with private funds) shall adhere to the provisions of

*Moore v. Kaur, et al.*
Complaint

MLF0035662

EX. 56-17

1  Government Code § 4450.

2  43.   Health and Safety Code § 19959 states, in part, that:  Every existing (non-

3  exempt) public accommodation constructed prior to July 1, 1970, which is altered or

4  structurally repaired, is required to comply with this chapter.

5  44.   Plaintiff alleges the Facility is a public accommodation constructed, altered,

6  or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

7  Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code

8  § 19956.

9  45.   Defendants' non-compliance with these requirements at the Facility aggrieved

10  (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

11  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code

12  § 19953.

13  **IX.    PRAYER FOR RELIEF**

14  WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

15  1.   Injunctive relief, preventive relief, or any other relief the Court deems proper.

16  2.   Declaratory relief that Defendants violated the ADA for the purposes of

17  Unruh Act damages.

18  3.   Statutory minimum damages under section 52(a) of the California Civil Code

19  according to proof.

20  4.   Attorneys' fees, litigation expense, and costs of suit.[2]

21  5.   Interest at the legal rate from the date of the filing of this action.

22  6.   For such other and further relief as the Court deems proper.

23  Dated: April 10, 2014            MOORE LAW FIRM, P.C.

24

25  /s/ Tanya E. Moore
Tanya E. Moore

26  Attorneys for Plaintiff
Ronald Moore

27

28  _____
[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Kaur, et al.*
Complaint                         Page 8

MLF0035663

EX. 56-18

**VERIFICATION**

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:___April 10, 2014___          /s/ Ronald Moore_____
                                    Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                    /s/ Tanya E. Moore_____
                                    Tanya E. Moore, Attorney for
                                    Plaintiff, Ronald Moore

*Moore v. Kaur, et al.*
*Verification*

MLF0035664

EX. 56-19

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 4/10/14

Ronald Moore

*Moore v. Kaur, et al.*
*Verification*

MLF0035692

EX. 56-20

# Exhibit 57

Kijima Rest/doors parking, Ramp comes out into the street, Door is heavy, cant get to Restrooms if there are customers

Ron

KIJIMA RESTAURANT
300 W SHAW AVE
CLOVIS  CA 93612

TERMINAL I.D. :                    8909
MERCHANT # :

10/06/11        6:58 PM

VISA                         SRV: 2
************8374
SWIPED

SALE
BATCH: 000638
INV:000012

AUTH: 006437

BASE              $36.17

TIP          $_____

                      $14.00
TOTAL        $_____

TIP GUIDE
15% = $5.42  18% = $6.51  20% = $7.23

RONALD MOORE

        559-298-1011

        CUSTOMER COPY

MLF0031961

EX. 57-2



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046



January 6, 2012

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

Re:  *Mike's Pizzeria, KFC (Fresno), Fajita Fiesta Mexican Restaurant, Kijima Restaurant*

Dear Mr. Moore:

This letter is to inform you that we have received your request to file a lawsuit on your behalf against the above-referenced facility along with the receipt of purchase you provided. Please be advised that we will investigate the barriers to access encountered by you and advise you within three weeks if we decide to accept this case.

Thank you for sending us this information. If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Sent in Mrs. Moore's absence to avoid delay*

Tanya Moore
Attorney at Law

TM/kp

MLF0046275

EX. 57-3

**BARRIER MEMO**

| ADAI No. : | 01673-Moore | |
|---|---|---|
| Case Name: | Moore v Kijima Japanese Kitchen | |
| Address: | 300 W Shaw Ave, Clovis, CA | |
| Barrier | Description | Is it a valid barrier? Y / N |
| Built up curb ramp in aisle | Plaintiff had trouble getting up the ramp because it was in the aisle and uneven | Yes |
| Toilet seat too low | Plaintiff had trouble transferring back from the toilet to wheelchair | Yes |
| Flush handle on wrong side | Plaintiff could not reach handle and was embarrassed that he did not flush | Yes |
| Toilet is far from side wall | Plaintiff had trouble reaching toilet paper and side grab bar | Yes |
| Seat cover dispenser too high | Plaintiff could not reach seat cover to use toilet sanitarily? | Yes |
| Sink too low | Plaintiff could not use the sink correctly because his knees did not fit underneath | Yes |
| Sink too close to sidewall | Plaintiff could not use ..same as above | Yes |
| | | |

1

MLF0031927

EX. 57-4

1 Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
2 332 North Second Street
San Jose, California 95112
3 Telephone (408) 298-2000
Facsimile (408) 298-6046
4 E-mail: tanya@moorelawfirm.com

5 Attorney for Plaintiff
Ronald Moore

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11 RONALD MOORE,                    ) No.
                                    )
12          Plaintiff,              ) COMPLAINT ASSERTING DENIAL OF
                                    ) RIGHT OF ACCESS UNDER
13     vs.                          ) AMERICANS WITH DISABILITIES ACT
                                    ) FOR INJUNCTIVE RELIEF,
14 IN HEE KIJIMA dba KIJIMA JAPANESE ) DECLARATORY RELIEF, DAMAGES,
RESTAURANT; YUKIO KIJIMA dba        ) ATTORNEYS' FEES AND COSTS (ADA)
15 KIJIMA JAPANESE RESTAURANT;      )
STEVENS CREEK-DEANZA FAMILY         )
16 PARTNERSHIP, a California limited )
partnership;                        )
17          Defendants.             )
                                    )
18                                  )
                                    )
19 ─────────────────────────────────)

20                          I. SUMMARY

21     1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

22 discrimination at the building, structure, facility, complex, property, land, development,

23 and/or surrounding business complex known as:

24          Kijima Japanese Restaurant
           300 W. Shaw Avenue
25          Clovis California, 93612
           (hereafter "the Facility")
26

27     2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

28 costs, against STEVENS CREEK-DEANZA FAMILY PARTNERSHIP, a California limited

*Moore v. Kijima, et al.*
Complaint

                              Page 1

MLF0031944

EX. 57-5

partnership; IN HEE KIJIMA dba KIJIMA JAPANESE RESTAURANT; YUKIO KIJIMA dba KIJIMA JAPANESE RESTAURANT (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.   JURISDICTION

3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.   Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

6.   All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.   PARTIES

7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.   Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

9.   The Facility is a public accommodation facility, open to the public, which is intended for nonresidential use and whose operation affects commerce.

10.   Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility.  Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or about October 6, 2011:

*Moore v. Kijima, et al.*
Complaint

MLF0031945

EX. 57-6

a) When Plaintiff arrived at the Facility, he had trouble getting from his car to the entrance due to the built-up ramp. The ramp was in the access aisle and unevenly sloped.

b) During his trip to the Facility, Plaintiff went to use the restroom. When Plaintiff reached for toilet paper, he had trouble due to the distance between the toilet and the side wall. Plaintiff could not reach the seat covers because they were mounted too high on the wall, forcing Plaintiff to use the toilet in an unsanitary manner. The toilet seat was too low for Plaintiff, and he struggled to get back into his wheelchair from the toilet.

c) The handle on the toilet was on the wrong side and Plaintiff could not reach it. This caused Plaintiff embarrassment, as he could not flush.

d) After Plaintiff used the toilet he went to wash his hands, only to find that he could not use the sink correctly because his knees couldn't fit underneath it.

11. The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12. Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13. Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these

*Moore v. Kijima, et al.*
Complaint

Page 3

MLF0031946

EX. 57-7

1  barriers from the Facility (without much difficulty or expense), and make the Facility

2  accessible to the physically disabled.  To date, however, Defendants refuse to either remove

3  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

4      14.  At all relevant times, Defendants have possessed and enjoyed sufficient

5  control and authority to modify the Facility to remove impediments to wheelchair access and

6  to comply with the 2010 Standards for Accessible Design and the California Code of

7  Regulations Title 24.  Defendants have not removed such impediments and have not

8  modified the Facility to conform to accessibility standards.  Defendants have intentionally

9  maintained the Facility in its current condition and have intentionally refrained from altering

10 the Facility so that it complies with the accessibility standards.

11     15.  Plaintiff further alleges that the (continued) presence of barriers at the Facility

12 is so obvious as to establish Defendants discriminatory intent.  On information and belief,

13 Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to

14 adhere to relevant building standards; disregard for the building plans and permits issued for

15 the Facility; conscientious decision to maintain the architectural layout (as it currently exists)

16 at the Facility; decision not to remove barriers from the Facility; and allowance that

17 Defendants' property continues to exist in its non-compliance state.  Plaintiff further alleges,

18 on information and belief, that the Facility is not in the midst of a remodel, and that the

19 barriers present at the Facility are not isolated (or temporary) interruptions in access due to

20 maintenance or repairs.

21         **VI.**    **FIRST CLAIM**

22         **Americans with Disabilities Act of 1990**

23         <u>Denial of "Full and Equal" Enjoyment and Use</u>

24     16.  Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

25 this claim.

26     17.  Title III of the ADA holds as a "general rule" that no individual shall be

27 discriminated against on the basis of disability in the full and equal enjoyment (or use) of

28 goods, services, facilities, privileges, and accommodations offered by any person who owns,

*Moore v. Kijima, et al.*
Complaint

MLF0031947

EX. 57-8

1   operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

2       18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

3   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

4   Facility during each visit and each incident of deterrence.

5   <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

6       19.   The ADA specifically prohibits failing to remove architectural barriers, which

7   are structural in nature, in existing facilities where such removal is readily achievable.  42

8   U.S.C. § 12182(b)(2)(A)(iv).

9       20.   When an entity can demonstrate that removal of a barrier is not readily

10  achievable, a failure to make goods, services, facilities, or accommodations available through

11  alternative methods is also specifically prohibited if these methods are readily achievable.

12  <u>Id</u>. § 12182(b)(2)(A)(v).

13      21.   Here, Plaintiff alleges that Defendants can easily remove the architectural

14  barriers at the Facility without much difficulty or expense, and that Defendants violated the

15  ADA by failing to remove those barriers, when it was readily achievable to do so.

16      22.   In the alternative, if it was not "readily achievable" for Defendants to remove

17  the Facility's barriers, then Defendants violated the ADA by failing to make the required

18  services available through alternative methods, which are readily achievable.

19  <u>Failure to Design and Construct an Accessible Facility</u>

20      23.   Plaintiff alleges on information and belief that the Facility was designed and

21  constructed (or both) after January 26, 1992 -- independently triggering access requirements

22  under Title III of the ADA.

23      24.   The ADA also prohibits designing and constructing facilities for first

24  occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

25  with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

26      25.   Here, Defendants violated the ADA by designing and constructing (or both)

27  the Facility in a manner that was not readily accessible to the physically disabled public –

28

MLF0031948

EX. 57-9

1    including Plaintiff – when it was structurally practical to do so.[1]

2                     <u>Failure to Make an Altered Facility Accessible</u>

3         26.     Plaintiff alleges on information and belief that the Facility was modified after

4    January 26, 1992, independently triggering access requirements under the ADA.

5         27.     The ADA also requires that facilities altered in a manner that affects (or could

6    affect) its usability must be made readily accessible to individuals with disabilities to the

7    maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a

8    facility's primary function also requires making the paths of travel, bathrooms, telephones,

9    and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

10        28.     Here, Defendants altered the Facility in a manner that violated the ADA and

11    was not readily accessible to the physically disabled public – including Plaintiff – to the

12    maximum extent feasible.

13               <u>Failure to Modify Existing Policies and Procedures</u>

14        29.     The ADA also requires reasonable modifications in policies, practices, or

15    procedures, when necessary to afford such goods, services, facilities, or accommodations to

16    individuals with disabilities, unless the entity can demonstrate that making such

17    modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

18        30.     Here, Defendants violated the ADA by failing to make reasonable

19    modifications in policies, practices, or procedures at the Facility, when these modifications

20    were necessary to afford (and would not fundamentally alter the nature of) these goods,

21    services, facilities, or accommodations.

22        31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

23    attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

24        32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

25    Defendants violated the ADA in order to pursue damages under California's Unruh Civil

26    Rights Act or Disabled Persons Act.

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Kijima, et al.*
Complaint

MLF0031949

EX. 57-10

## VII.   SECOND CLAIM

### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that:  All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that:  No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that:  California public accommodations or facilities (built with private funds) shall adhere to the provisions of

*Moore v. Kijima, et al.*
Complaint

MLF0031950

EX. 57-11

1   Government Code § 4450.

2   43.   Health and Safety Code § 19959 states, in part, that:  Every existing (non-

3   exempt) public accommodation constructed prior to July 1, 1970, which is altered or

4   structurally repaired, is required to comply with this chapter.

5   44.   Plaintiff alleges the Facility is a public accommodation constructed, altered,

6   or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

7   Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code

8   § 19956.

9   45.   Defendants' non-compliance with these requirements at the Facility aggrieved

10  (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

11  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code

12  § 19953.

13  **IX.   PRAYER FOR RELIEF**

14  WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

15  1.   Injunctive relief, preventive relief, or any other relief the Court deems proper.

16  2.   Declaratory relief that Defendants violated the ADA for the purposes of

17  Unruh Act damages.

18  3.   Statutory minimum damages under section 52(a) of the California Civil Code

19  according to proof.

20  4.   Attorneys' fees, litigation expense, and costs of suit.[2]

21  5.   Interest at the legal rate from the date of the filing of this action.

22  6.   For such other and further relief as the Court deems proper.

23  Dated: August 16, 2013                    MOORE LAW FIRM, P.C.

24

25                                                          /s/ Tanya E. Moore
                                                              Tanya E. Moore
26                                                          Attorneys for Plaintiff,
27                                                          Ronald Moore

28  _____

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Kijima, et al.*
Complaint

MLF0031951

EX. 57-12

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:___8/16/2013_____          _/s/ Ronald Moore_____
                                  Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                  _/s/ Tanya E. Moore_____
                                  Tanya E. Moore, Attorney for
                                  Plaintiff, Ronald Moore

*Ronald Moore v. In Hee Kijima, et al.*

MLF0031952

EX. 57-13

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 8/16/13

Ronald Moore

*Ronald Moore v. Kijima, et al.*

MLF056463

EX. 57-14

# Exhibit 58



```
    DOUGHNUTS TO GO
       1145 11th ST
       REEDLEY, CALIF
      TEL 559.698.3292
      FAX 559.698.3384
DATE 06/20/2010 SUN . TIME 08:50

2X            $0.99
MISC                   $1.98
DONUT                  $1.25
20oz COFFEE            $1.39
TOTAL                  $4.62
CASH                   $5.00
CHANGE                 $0.38
CLERK 1                00001
```

MLF0054435

EX. 58-2



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER September 28, 2010

Tanya E. Moore
*Attorney at Law*

Martha H. Alvizo
*Paralegal*

Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

Re:     *Foster Freeze in Reedley, Ernie's Liquor, Bobby Salazar's and*
        *Doughnuts to Go*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review this document and keep it for your records. Please sign the signature page where indicated and return to our office in the enclosed envelope. **In addition to your signature page, please send the return receipts from the letters sent via certified mail to the defendants in this case, if any.**

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated, not read.*
*Sent in Mrs. Moore's absence*
*to avoid delay.*

Tanya Moore
Attorney at Law

MLF0054436

EX. 58-3

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

332 N. Second Street
San Jose, CA 95112
(408) 298-2000

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against *Doughnuts to Go*

DATE: 10/6/10

*Ronald Moore*
CLIENT'S SIGNATURE

*80 N Hughes*
ADDRESS

*Clovis CA 93612*
CITY

*559 298 3228*
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR

MLF056459

EX. 58-4

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
332 N. Second Street
San Jose, CA 95112
(408) 298-2000

THIS AGREEMENT, made this       at **San Jose, CA,** by and between **Ronald Moore** hereinafter designated as "Client," and **the Moore Law Firm, PC,** hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case again_____and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

MLF056460

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_RM_ Initial          _LM_ Initial

MLF056461

DATE: _10/6/10_

_Ronald Moore_
CLIENT'S SIGNATURE

DATE: _10/6/10_

_Ronald Moore_
CLIENT'S SIGNATURE

_80 N Hughes_
ADDRESS

_Clovis CA 93612_
CITY

_559 298 3228_
TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE: _____    MOORE LAW FIRM, PC

_____
ATTORNEY FOR

MLF056462

# Exhibit 59

```
        LA HACIENDA MKT.
         3131 E McKINLEY
          559 497-6919

DATE 07/06/2012 FRI   TIME 12:49

WOMAN F              $2.50
CRV F                $0.05
CRV F                $0.05
2X          @1.49
HOT FOOD T1          $2.98
HOT FOOD T1          $1.50
HOT FOOD T1          $1.49
HOT FOOD T1          $1.49
TAX1                 $0.60
TOTAL               $10.66
CASH                $11.00
CHANGE               $0.34
       THANK YOU!
        GRACIAS!
CLERK 1      000011  00000
```

MLF0051663

had to go out
the BACK DOOR
and go around
the Block to get
BACK to THE FRONT

MLF0051664

**BARRIER MEMO**

| ADAI No. : | 01674-Moore | |
|---|---|---|
| **Case Name:** | **Moore v Carneceria La Hacienda** | |
| **Address:** | **3131 E McKinley,  Fresno** | |
| **Barrier** | **Description** | **Is it a valid barrier? Y / N** |
| There is no properly identified accessible parking space next to the Facility. | The designated parking space provided next to the Facility was not properly marked or identified and Plaintiff had to drive around the parking lot looking for a place to park. | Y |
| The ramp provided is built up and contains unprotected edges. | Plaintiff experienced difficulty using the built up ramp next to the Facility which contained unprotected edges and excessive slopes making his ascent and descent very difficult. | Y |
| Insufficient wheelchair clearances provided inside the Facility | Aisles throughout the Facility are too narrow and Plaintiff had difficulty maneuvering his wheelchair and was stuck by the coke machine inside the store. | Yes |
| Register counter very high | | Maybe, but No for the purpose of the complaint. Could not measure |
| Food Service Counter very high | The food service counter is too high and Plaintiff experience difficulty ordering his food and collecting it.  There was insufficient space provided for a wheelchair to access the counter and Plaintiff had to back his wheelchair out after he collected food. | Yes |

1

EX. 59-4

MLF0052864

June 3, 2013


Ron Moore
80 N. Hughes Ave.
Clovis, CA 93612

        RE:    **ADAI No. 1674**
              **La Hacienda Market (Facility) 3131 E. McKinley Ave, Fresno CA**

Dear Mr. Moore

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,


Tanya Moore
Attorney at Law

TM/ms

Enclosure:  Fee Agreement

MLF0056274

# Exhibit 60

PHO 2006 VIETNAMESE RESTAURANT
468 CLOVIS AVE
CLOVIS, CA 93612
(559) 322-8922

Sale

Merchant ID: 5428298020885705
Term ID: LN520257
02/03/14            21:03:28
Batch#: 000284  Inv #: 000032

VISA        Entry Method: $
XXXXXXXXXXXX4008
Seq.#: 0032  Appr Code: 003758
Amount:     $    17.86
Tip:

Total:        $ /9 06

APPROVED

Customer Copy

PHO 2006
1468 clovis ave
Clovis Ca 93612
559 322 8922

REG  02-03-2014 21:03
                000080

DEPT14     T1T2    $8.25
DEPT14     T1T2    $8.25
TAX-AMT 1          $16.50
TAX 1              $1.36
CASH             $17.86

MLF0034966

EX. 60-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _PHO 2006_

2. When did you visit the Facility? _2/3/14_ (Date) _8oo - 9 pm_ (Time)

3. What is the address of the Facility? _1468 Clovis Ave   Clovis Ca 93612_

4. Was this your first visit to the Facility? _NO_

5. How many times have you visited the Facility? _?_ If more than one visit, please list the date and time if you know it. _?_

6. What was the purpose of your visit? _To eat_

7. Who accompanied you to the Facility? _My Grandson Ronny_

8. What car did you drive to the Facility? _mine_

9. Did you drive yourself of did you get a ride from someone else? _I drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In D/P spot to left of Restaurant_

11. Was it difficult for you to park there? _Yes_

12. Why? _Down At End of shopping center_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _my Grandson_

16. What problems did you encounter transferring onto your wheelchair?
_Grandson Brought Chair to me At my Door_
_Left to Access Issle_

17. Which way did you go from the parking to the entrance of the Facility? _to Access Issle_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
_Yes Ramp went into street Also cracks in payment And Ramp_

19. Did you encounter any problems opening the door? Describe why. _yes Door and Trashold_
_Door shut on me_

20. Did you have any problems inside the Facility? Describe. _Yes_

MLF0034963

EX. 60-3

had to move chair so I could sit
Door Issue small

21. What did you purchase (or what meal did you have there). Describe: 2 meals

22. Have you used the restroom at the Facility? Yes

23. Why did you need to use the restroom? had to go

24. Did you use the sink? Yes

25. Any problems? No mirror

26. Did you use the urinal? No

27. Did you use the toilet? Yes Could not get into toilet had to Leave my chair in Door way Because chair would not go in

28. Did you use the toilet paper? Yes

29. Did you use paper towels? Yes

30. Did you use the soap dispenser? Yes

31. Did you have any problem maneuvering inside the restroom? Yes Someone came into Rest-Room while I was going And the Door was open with

32. Where did you sit? my chair Anit Because very Embarassing

33. Was there any seating provided inside the Facility? Yes

34. Was it wheelchair accessible? No

35. Where you comfortable at the table? No

36. Did you use the counter to pay for purchase? Yes

37. Which counter did you use? only one

38. Was the counter accessible? No the Guy had to Bring Receipt out for the table so I could sign it Because would not let my

39. Which way did you go after you left the Facility? Grandson sign for me to the Right to Ramp

40. Any problems getting back to your vehicle? Yes when I got to Ramp Bad curb Did not line up with Ramp It was Dark And Also fell over

41. Any problems transferring from your wheelchair to your vehicle? But my Grand son grabed me Real Fast or I would have fell

42. If you have any additional information you believe would assist us in evaluating this inquiry. No my Grand Pat chair in for me

February 18, 2014

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

      **RE:**    **ADAI No. 1876**
              **Pho 2006**
              **1468 Clovis Avenue, Clovis, CA 93612**

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0034965

EX. 60-5

**BARRIER MEMO**

ADAI No. :     **01876**

Case Name:    **Moore v. Pho 2006**

Address:     **1468 Clovis Ave, Clovis**

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Designated parking is far away | Plaintiff parked in the closest designated accessible parking space he could find, which was far away from the entrance to the Facility. He was then forced to travel a long distance, over uneven and cracked pavement, to reach the entrance. | **Yes** |
| Built-up curb ramp | The ramp from the parking lot to the sidewalk leading to the entrance of the Facility was an improperly configured built-up curb ramp, which made it difficult for Plaintiff to maneuver up and down the ramp. Additionally, the blue painted curb did not line up with the ramp, which made it difficult for Plaintiff to see where the edges of the ramp were. When Plaintiff was returning to his vehicle after leaving the Facility it was dark and he rolled off the edge of the curb, almost falling out of his wheelchair. | **Yes** |
| Door closed quickly/raised threshold | The entrance to the Facility had a raised threshold which was difficult for Plaintiff to wheel over, and the door swung closed on Plaintiff while he was attempting to overcome the threshold. | **Yes** |
| Aisles narrow | The aisles between tables lacked necessary wheelchair clearances, and Plaintiff had to move chairs from the adjacent tables out of the way so that he could pull his wheelchair up to his table. | **Not confirmed but possible depending on where he was seated, ok to include** |
| Restroom stall not big enough for wheelchair | The stall within the restroom was not large enough for Plaintiff's wheelchair to enter. Plaintiff was forced to leave his wheelchair partly in the stall doorway, preventing him from closing the stall. A stranger entered the restroom while Plaintiff was using the toilet with the stall door open, which was very embarrassing to Plaintiff. | **Yes** |
| Table not accessible | Plaintiff was unable to locate an accessible table at the Facility and was forced to sit at a table that was | **Yes** |

1

MLF0034942

EX. 60-6

| | improperly configured, which was uncomfortable. | |
|---|---|---|
| Counter too high | The transaction counter was too high for Plaintiff to reach up to sign his receipt. He was forced to ask staff to bring his receipt to his table for him to sign. | No, it was not. Do not include |

MLF0034943

EX. 60-7



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 2, 2014

**K. RANDOLPH MOORE**
ESQUIRE
AND FOUNDER

*Tanya E. Moore*
*Attorney at Law*

*Marejka Sacks*
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:  **ADAI No.    01876**
**Lambetecchio (Pho 2006)**
*1468 Clovis Avenue, Clovis, CA 93612*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure:  Fee Agreement

**MLF0034944**

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Lambetecchio (Pho 2006).**

DATE:_____

_____
CLIENT'S SIGNATURE- RONALD MOORE

_____
ADDRESS

_____
CITY

_____
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR RONALD MOORE

MLF0034945

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

THIS AGREEMENT, made this _____ at **San Jose, CA,** by and between <u>Ronald</u>

<u>Moore</u>, hereinafter designated as "Client," and **the Moore Law Firm, PC,** hereinafter designated as

"Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to

represent him/her as his/her attorney at law in the case against ***Lambetecchio (Pho 2006)*** and whosoever

may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1.  ATTORNEY TAKES ALL STEPS NECESSARY:  Client empowers

Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and

resolve Client's claims.

PARAGRAPH 2.  COOPERATION: Client agrees to cooperate fully throughout litigation and

immediately notify Attorney of any changes in address, phone number, or employment.  If Client fails to

cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

### FEE ARRANGEMENTS

PARAGRAPH 3(a).  CONTINGENCY FEE ARRANGEMENTS:  If the Client doesn't recover,

or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee

agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is

subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where

the fee which in contingent upon court approval.)  In any event, any fee that requires court approval will

be the fee that controls this agreement.

MLF0034946

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0034947

EX. 60-11

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)     Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)    Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)   In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)    In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0034948

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u>        .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0034949

EX. 60-13

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0034950

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial            _____Initial

MLF0034951

DATE:_____          _____
                               CLIENT'S SIGNATURE

DATE:_____          _____
                               CLIENT'S NAME

                               _____
                               ADDRESS

                               _____
                               CITY

                               _____
                               TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____          MOORE LAW FIRM, PC

                               _____
                               ATTORNEY FOR RONALD MOORE

MLF0034952

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>            Plaintiff,<br><br>vs.<br><br>ANTHONY LAMBETECCHIO, aka<br>ANTHONY LAMBE; DUNG DINH<br>NGUYEN dba PHO 2006;<br><br>            Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF<br>RIGHT OF ACCESS UNDER<br>AMERICANS WITH DISABILITIES ACT<br>FOR INJUNCTIVE RELIEF,<br>DECLARATORY RELIEF, DAMAGES,<br>ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.      This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Pho 2006
> 1468 Clovis Avenue
> Clovis, CA 93612
> (hereafter "the Facility")

2.      Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against ANTHONY LAMBETECCHIO, aka ANTHONY LAMBE; and DUNG DINH NGUYEN dba PHO 2006 (hereinafter collectively referred to as "Defendants"), pursuant to

MLF0034953

EX. 60-17

the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.   JURISDICTION

3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.   Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

6.   All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.   PARTIES

7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.   Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

9.   The Facility is a public accommodation facility, open to the public, which is intended for nonresidential use and whose operation affects commerce.

10.   Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or about February 3, 2014:

a)   Plaintiff parked in the closest designated accessible parking space he could find, which was far away from the entrance to the Facility. He was

MLF0034954

EX. 60-18

1          then forced to travel a long distance, over uneven and cracked pavement,

2          to reach the entrance.

3      b)     The ramp from the parking lot to the sidewalk leading to the entrance of

4          the Facility was an improperly configured built-up curb ramp, which

5          made it difficult for Plaintiff to maneuver up and down the ramp.

6          Additionally, the blue painted curb did not line up with the ramp, which

7          made it difficult for Plaintiff to see where the edges of the ramp were.

8          When Plaintiff was returning to his vehicle after leaving the Facility it

9          was dark and he rolled off the edge of the curb, almost falling out of his

10         wheelchair.

11     c)     The entrance to the Facility had a raised threshold which was difficult

12         for Plaintiff to wheel over, and the door swung closed on Plaintiff while

13         he was attempting to overcome the threshold.

14     d)     The aisles between tables lacked necessary wheelchair clearances, and

15         Plaintiff had to move chairs from the adjacent tables out of the way so

16         that he could pull his wheelchair up to his table.

17     e)     The stall within the restroom was not large enough for Plaintiff's

18         wheelchair to enter. Plaintiff was forced to leave his wheelchair partly in

19         the stall doorway, preventing him from closing the stall. A stranger

20         entered the restroom while Plaintiff was using the toilet with the stall

21         door open, which was very embarrassing to Plaintiff.

22     f)     Plaintiff was unable to locate an accessible table at the Facility and was

23         forced to sit at a table that was improperly configured, which was

24         uncomfortable.

25    11.    The barriers identified in paragraph 10 herein are only those that Plaintiff

26 personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist

27 at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once

28 such additional barriers are identified as it is Plaintiff's intention to have all barriers which

*Moore v. Lambetecchio, et al.*
Complaint

Page 3

MLF0034955

EX. 60-19

1  exist at the Facility and relate to his disabilities removed to afford him full and equal access.

2        12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

3  Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

4  accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

5  Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

6  once the barriers are removed.

7        13.    Defendants knew, or should have known, that these elements and areas of the

8  Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

9  the physically disabled. Moreover, Defendants have the financial resources to remove these

10  barriers from the Facility (without much difficulty or expense), and make the Facility

11  accessible to the physically disabled. To date, however, Defendants refuse to either remove

12  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

13        14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

14  and authority to modify the Facility to remove impediments to wheelchair access and to

15  comply with the 2010 Standards for Accessible Design and the California Code of Regulations

16  Title 24. Defendants have not removed such impediments and have not modified the Facility to

17  conform to accessibility standards. Defendants have intentionally maintained the Facility in its

18  current condition and have intentionally refrained from altering the Facility so that it complies

19  with the accessibility standards.

20        15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

21  so obvious as to establish Defendants' discriminatory intent. On information and belief,

22  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

23  to relevant building standards; disregard for the building plans and permits issued for the

24  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

25  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

26  property continues to exist in its non-compliant state. Plaintiff further alleges, on information

27  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

28  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

MLF0034956

EX. 60-20

## VI.    FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

#### Failure to Remove Architectural Barriers in an Existing Facility

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

#### Failure to Design and Construct an Accessible Facility

23.    Plaintiff alleges on information and belief that the Facility was designed and

MLF0034957

EX. 60-21

1  constructed (or both) after January 26, 1992 – independently triggering access requirements
2  under Title III of the ADA.

3       24.    The ADA also prohibits designing and constructing facilities for first occupancy
4  after January 16, 1993, that aren't readily accessible to, and usable by, individuals with
5  disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

6       25.    Here, Defendants violated the ADA by designing and constructing (or both) the
7  Facility in a manner that was not readily accessible to the physically disabled public –
8  including Plaintiff – when it was structurally practical to do so.[1]

9                    <u>Failure to Make an Altered Facility Accessible</u>

10      26.    Plaintiff alleges on information and belief that the Facility was modified after
11  January 26, 1992, independently triggering access requirements under the ADA.

12      27.    The ADA also requires that facilities altered in a manner that affects (or could
13  affect) its usability must be made readily accessible to individuals with disabilities to the
14  maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's
15  primary function also requires making the paths of travel, bathrooms, telephones, and drinking
16  fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

17      28.    Here, Defendants altered the Facility in a manner that violated the ADA and
18  was not readily accessible to the physically disabled public – including Plaintiff – to the
19  maximum extent feasible.

20                    <u>Failure to Modify Existing Policies and Procedures</u>

21      29.    The ADA also requires reasonable modifications in policies, practices, or
22  procedures, when necessary to afford such goods, services, facilities, or accommodations to
23  individuals with disabilities, unless the entity can demonstrate that making such modifications
24  would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

25      30.    Here, Defendants violated the ADA by failing to make reasonable modifications
26  in policies, practices, or procedures at the Facility, when these modifications were necessary to

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Lambetecchio, et al.*
Complaint
                              Page 6

MLF0034958

1   afford (and would not fundamentally alter the nature of) these goods, services, facilities, or
2   accommodations.

3       31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney
4   fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

5       32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants
6   violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

7                           VII.    SECOND CLAIM

8                                   Unruh Act

9       33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for
10  this claim.

11      34.    California Civil Code § 51 states, in part, that: All persons within the
12  jurisdiction of this state are entitled to the full and equal accommodations, advantages,
13  facilities, privileges, or services in all business establishments of every kind whatsoever.

14      35.    California Civil Code § 51.5 also states, in part that: No business establishment
15  of any kind whatsoever shall discriminate against any person in this state because of the
16  disability of the person.

17      36.    California Civil Code § 51(f) specifically incorporates (by reference) an
18  individual's rights under the ADA into the Unruh Act.

19      37.    Defendants' aforementioned acts and omissions denied the physically disabled
20  public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges
21  and services in a business establishment (because of their physical disability).

22      38.    These acts and omissions (including the ones that violate the ADA) denied,
23  aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

24      39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory
25  minimum damages of four thousand dollars ($4,000) for each offense.

26      40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and
27  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code
28  § 52(a).

*Moore v. Lambetecchio, et al.*
Complaint

MLF0034959

EX. 60-23

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.    Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.    Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.    Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.    Attorneys' fees, litigation expense, and costs of suit.[2]

5.    Interest at the legal rate from the date of the filing of this action.

6.    For such other and further relief as the Court deems proper.

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

MLF0034960

EX. 60-24

1   Dated: June 18, 2014                    MOORE LAW FIRM, P.C.

2
                                            /s/ Tanya E. Moore
3                                           Tanya E. Moore
                                            Attorneys for Plaintiff
4                                           Ronald Moore

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MLF0034961

EX. 60-25

**VERIFICATION**

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 6/18/14                    _Ronald Moore_
                                  Ronald Moore

*Ronald Moore v. Lambelecchio (Pho 2006)*

MLF0034962

EX. 60-26