# Exhibit 61

Mariscos Las Islitas
4555 E. Kings Canyon Rd.
Fresno, CA 93702
(559) 252-2703

Fecha/Hora:     2014-02-17 09:19 PM
Numero de orden:51618
Account Type:   CREDIT
EDC Tran ID:    404844279
Mesero:         Jenny
Mesa:           ms12

PURCHASE
APPROVAL

Entry Mode:            Swiped
Card Number:           XXXXXXXXXXXXX4008
Card Expire:           XX/XX
Card Type:             Visa
Cardholder Name:       RONALD MOORE
Cúdigo de aprobaciûn:078128
Nûmero de referencia:
Acq TranID:            3040491655022
Acq ValCode:           XH3N

COMPRA:                        $39.18

Propina:            _____

Total:              _____

Cardmember acknowledges receipt of
goods and/or services in the amount
of the total shown heron and agrees
to perform the obligations set forth
by cardmember's agreement with issuer


Firma: _____

MLF0037398

EX. 61-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _Manscos LAS Pshitas_

2. When did you visit the Facility? _2/17/14_ (Date) _9 pm_ (Time)

3. What is the address of the Facility? _4555 E King Canyon Rd_ _Fresno CA_

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _?_ If more than one visit, please list the date and time if you know it. _?_

6. What was the purpose of your visit? _to eat_

7. Who accompanied you to the Facility? _my Grandson Rowny_

8. What car did you drive to the Facility? _mine_

9. Did you drive yourself of did you get a ride from someone else? _I drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _in parking space_

11. Was it difficult for you to park there? _yes_

12. Why? _No signs No parking_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _Grandson_

16. What problems did you encounter transferring onto your wheelchair?
_CRACKed pavment_

17. Which way did you go from the parking to the entrance of the Facility? _ACROSS Street And Drainage Ditch_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
_HAd to go All the WAy to End Street to Ramp Ramp goes into Stree And Payment Raised Big Bump_

19. Did you encounter any problems opening the door? Describe why. _One on WAy out had to open them Close Door to get Buy/or I would have gone off_

20. Did you have any problems inside the Facility? Describe. _yes_
_Side WALK_

MLF0037385

EX. 61-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

*table Leg in way could not get All the
why up to table Issle small*

21. What did you purchase (or what meal did you have there). Describe: *B meals*

22. Have you used the restroom at the Facility? *Yes*

23. Why did you need to use the restroom? *Had to go*

24. Did you use the sink? *Yes*

25. Any problems? *I had to Be half way in and half way out
of Rest Room Because poll in way to get to sink*

26. Did you use the urinal?

27. Did you use the toilet? *Yes*

28. Did you use the toilet paper? *Yes*

29. Did you use paper towels? *Yes*

30. Did you use the soap dispenser? *Yes*

31. Did you have any problem maneuvering inside the restroom? *Yes got stuck trying
to leave out of Rest Room had to call my Grandson to come hold*

32. Where did you sit? *Door open so I could get out had to BACK out
et stuck thats why I had to call him   yes*

33. Was there any seating provided inside the Facility? *yes*

34. Was it wheelchair accessible? *NO*

35. Where you comfortable at the table? *NO*

36. Did you use the counter to pay for purchase? *Yes very high had to sign
on my Lap*

37. Which counter did you use? *only one*

38. Was the counter accessible? *NO*

39. Which way did you go after you left the Facility? *Out Door Back up shot Door
to get Buy to End of walkway to Ramp*

40. Any problems getting back to your vehicle? *Yes Had to cross Road And Orange
hich All Broken and cracked up*

41. Any problems transferring from your wheelchair to your vehicle? *payment*

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0037386

EX. 61-4

February 21, 2014

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

> RE:    **ADAI No. 01906**
> **Mariscos Las Islitas (4555 E Kings Canyon Road,**
> **Fresno, CA 93702)**

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0037397

**BARRIER MEMO**

**ADAI No.:**     01906

**Case Name:**     Moore v. Mariscos Las Islitas

**Address:**     4555 E. Kings Canyon Road, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No accessible parking | Plaintiff was unable to locate a designated accessible parking space at the Facility and was forced to park in a standard parking stall. | Yes, there is none |
| Pavement cracked at parking space | The surface of the asphalt at Plaintiff's parking space was cracked and uneven, making it difficult for him to transfer between his vehicle and his wheelchair. | Yes, very |
| No accessible route from parking to entrance | In order to reach the building entrance from his parking space, Plaintiff was required to travel across the driveway, in the path of vehicular traffic, and over uneven surfaces including a drainage gutter, which were difficult to traverse in his wheelchair. He was forced to travel a long distance to reach the ramp from the driveway to the sidewalk leading to the entrance, which was located at the far end of the sidewalk. | Yes |
| Ramp goes into driveway and has uneven surface at ramp landing | The bottom landing of the ramp from the driveway to the sidewalk was located within the path of vehicular traffic, and contained a large raised bump which was difficult for Plaintiff to maneuver over. | Yes |
| Door landing too small | The landing outside the Facility entrance/exit door was too small, such that when Plaintiff was leaving the Facility, he was unable to maneuver around the open door without falling off the sidewalk. He was forced to close the door so that he could pass. | Yes |
| Aisles narrow | The aisles within the Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver through the restaurant. | No |
| No accessible table | Plaintiff was unable to locate an accessible table and was forced to sit at a table which was improperly configured, where the table leg prevented him from pulling his wheelchair all the way up to the table. He | They may have some accessible but none are designated and |

MLF0037383

EX. 61-6

| | | |
|---|---|---|
| | was forced to sit at an uncomfortable distance from the table for the duration of his meal, which was uncomfortable, and his wheelchair blocked the aisle, which was embarrassing. | they let you sit yourself |
| Lack of maneuvering space in restroom | The restroom lacked necessary wheelchair clearances and the urinal partition obstructed the lavatory, making it difficult for Plaintiff to turn his wheelchair towards the lavatory in order to wash his hands. Plaintiff was required to open the restroom door to create sufficient turning space so that he could turn towards the lavatory. | Yes!!! |
| No maneuvering space to exit restroom | Plaintiff became trapped in the restroom because there was insufficient maneuvering space for him to turn his wheelchair around and he was unable to back out of the restroom while holding the door open himself. He was forced to call his grandson over to hold the door open so that he could back out of the restroom. | Yes |
| Counter high | The transaction counter at the Facility was too high and Plaintiff was unable to use the counter to sign his receipt, forcing him to use his lap instead. | Yes |

2

MLF0037384

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>       Plaintiff,<br><br>    vs.<br><br>LAS ISLITAS RESTAURANT, INC., a California corporation, dba MARISCOS LAS ISLITAS; JOSE LUIS MORENO dba MARISCOS LAS ISLITAS; PATRICIA GUADALUPE VALDERRAMA dba MARISCOS LAS ISLITAS; MARISCOS LAS ISLITAS, LLC, a California limited liability company, dba MARISCOS LAS ISLITAS; JOAN GASKINS, aka JOAN FRANCES DESMOND;<br><br>       Defendants. | No.<br><br>COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA) |

## I. SUMMARY

1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Mariscos Las Islitas
> 4555 East Kings Canyon Road
> Fresno, CA 93702
> (hereafter "the Facility")

MLF0037387

EX. 61-8

1    2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

2 costs, against LAS ISLITAS RESTAURANT, INC., a California corporation, dba

3 MARISCOS LAS ISLITAS; JOSE LUIS MORENO dba MARISCOS LAS ISLITAS;

4 PATRICIA GUADALUPE VALDERRAMA dba MARISCOS LAS ISLITAS; MARISCOS

5 LAS ISLITAS, LLC, a California limited liability company, dba MARISCOS LAS

6 ISLITAS; and JOAN GASKINS, aka JOAN FRANCES DESMOND (hereinafter

7 collectively referred to as "Defendants"), pursuant to the Americans with Disabilities Act of

8 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

**II.    JURISDICTION**

10    3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

11 ADA claims.

12    4.    Supplemental jurisdiction for claims brought under parallel California law –

13 arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

14    5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

**III.    VENUE**

16    6.    All actions complained of herein take place within the jurisdiction of the

17 United States District Court, Eastern District of California, and venue is invoked pursuant to

18 28 U.S.C. § 1391(b), (c).

**IV.    PARTIES**

20    7.    Defendants own, operate, and/or lease the Facility, and consist of a person (or

21 persons), firm, and/or corporation.

22    8.    Plaintiff requires the use of a wheelchair when traveling about in public.

23 Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

24 United States laws, and a member of the public whose rights are protected by these laws.

**V.    FACTS**

26    9.    The Facility is a public accommodation facility, open to the public, which is

27 intended for nonresidential use and whose operation affects commerce.

28    10.    Plaintiff visited the Facility and encountered barriers (both physical and

*Moore v. Las Islitas Restaurant, Inc., et al.*
Complaint

MLF0037388

EX. 61-9

1  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

2  goods, services, privileges and accommodations offered at the Facility.  Plaintiff personally

3  encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

4  about February 17, 2014:

5        a)  Plaintiff was unable to locate a designated accessible parking space at

6            the Facility and was forced to park in a standard parking stall, which

7            was improperly configured and had a cracked, uneven surface, making

8            it difficult for Plaintiff to transfer between his vehicle and wheelchair.

9        b)  In order to reach the building entrance from his parking space, Plaintiff

10           was required to travel across the driveway, in the path of vehicular

11           traffic, and over uneven surfaces including a drainage gutter, which

12           were difficult to traverse in his wheelchair. He was forced to travel a

13           long distance to reach the ramp from the driveway to the sidewalk

14           leading to the entrance, which was located at the far end of the

15           sidewalk.

16       c)  The bottom landing of the ramp from the driveway to the sidewalk was

17           located within the path of vehicular traffic, and contained a large bump

18           which was difficult for Plaintiff to maneuver over.

19       d)  The landing outside the Facility entrance was too small, such that

20           when Plaintiff was leaving the Facility, he was unable to maneuver

21           around the open door without falling off the sidewalk. He was forced

22           to close the door so that he could pass.

23       e)  Plaintiff was unable to locate an accessible table and was forced to sit

24           at a table which was improperly configured, where the table leg

25           prevented him from pulling his wheelchair all the way up to the table.

26           He was forced to sit at an uncomfortable distance from the table for

27           the duration of his meal and his wheelchair blocked the aisle, which

28           was embarrassing.

*Moore v. Las Islitas Restaurant, Inc., et al.*
Complaint

MLF0037389

EX. 61-10

f)     The restroom lacked necessary wheelchair clearances and the urinal partition obstructed the lavatory, making it difficult for Plaintiff to turn his wheelchair toward the lavatory to wash his hands. Plaintiff was required to open the restroom door to create sufficient turning space so that he could turn towards the lavatory.

g)     Plaintiff became trapped in the restroom because there was insufficient maneuvering space for him to turn his wheelchair around and he was unable to back out of the restroom while holding the door open himself. He was forced to call his grandson over to hold the door open so that he could back out of the restroom.

h)     The transaction counter at the Facility was too high and Plaintiff was unable to use the counter to sign his receipt, forcing him to use his lap instead.

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered.  Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities.  Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.    Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.    Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility

MLF0037390

EX. 61-11

1   accessible to the physically disabled.  To date, however, Defendants refuse to either remove

2   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

3       14.    At all relevant times, Defendants have possessed and enjoyed sufficient

4   control and authority to modify the Facility to remove impediments to wheelchair access and

5   to comply with the 2010 Standards for Accessible Design and the California Code of

6   Regulations Title 24.   Defendants have not removed such impediments and have not

7   modified the Facility to conform to accessibility standards.  Defendants have intentionally

8   maintained the Facility in its current condition and have intentionally refrained from altering

9   the Facility so that it complies with the accessibility standards.

10      15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility

11  is so obvious as to establish Defendants' discriminatory intent.  On information and belief,

12  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to

13  adhere to relevant building standards; disregard for the building plans and permits issued for

14  the Facility; conscientious decision to maintain the architectural layout (as it currently exists)

15  at the Facility; decision not to remove barriers from the Facility; and allowance that

16  Defendants' property continues to exist in its non-compliant state.  Plaintiff further alleges,

17  on information and belief, that the Facility is not in the midst of a remodel, and that the

18  barriers present at the Facility are not isolated (or temporary) interruptions in access due to

19  maintenance or repairs.

20                  **VI.    FIRST CLAIM**

21              **Americans with Disabilities Act of 1990**

22              Denial of "Full and Equal" Enjoyment and Use

23      16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

24  this claim.

25      17.    Title III of the ADA holds as a "general rule" that no individual shall be

26  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

27  goods, services, facilities, privileges, and accommodations offered by any person who owns,

28  operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

MLF0037391

EX. 61-12

18. Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21. Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22. In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23. Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24. The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25. Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public –

MLF0037392

EX. 61-13

1  including Plaintiff – when it was structurally practical to do so.[1]

2  <u>Failure to Make an Altered Facility Accessible</u>

3      26.    Plaintiff alleges on information and belief that the Facility was modified after

4  January 26, 1992, independently triggering access requirements under the ADA.

5      27.    The ADA also requires that facilities altered in a manner that affects (or could

6  affect) its usability must be made readily accessible to individuals with disabilities to the

7  maximum extent feasible. 42 U.S.C. § 12183(a)(2).   Altering an area that contains a

8  facility's primary function also requires making the paths of travel, bathrooms, telephones,

9  and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

10      28.    Here, Defendants altered the Facility in a manner that violated the ADA and

11  was not readily accessible to the physically disabled public – including Plaintiff – to the

12  maximum extent feasible.

13  <u>Failure to Modify Existing Policies and Procedures</u>

14      29.    The ADA also requires reasonable modifications in policies, practices, or

15  procedures, when necessary to afford such goods, services, facilities, or accommodations to

16  individuals with disabilities, unless the entity can demonstrate that making such

17  modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

18      30.    Here, Defendants violated the ADA by failing to make reasonable

19  modifications in policies, practices, or procedures at the Facility, when these modifications

20  were necessary to afford (and would not fundamentally alter the nature of) these goods,

21  services, facilities, or accommodations.

22      31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

23  attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

24      32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

25  Defendants violated the ADA in order to pursue damages under California's Unruh Civil

26  Rights Act.

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a
private attorney general under either state or federal statutes.

*Moore v. Las Islitas Restaurant, Inc., et al.*
Complaint

MLF0037393

EX. 61-14

## VII.   SECOND CLAIM

### Unruh Act

33.   Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.   California Civil Code § 51 states, in part, that:   All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.   California Civil Code § 51.5 also states, in part that:   No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.   Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.   Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.   Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.   Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.   Health and Safety Code § 19955(a) states, in part, that:   California public accommodations or facilities (built with private funds) shall adhere to the provisions of

MLF0037394

EX. 61-15

1  Government Code § 4450.

2      43.    Health and Safety Code § 19959 states, in part, that:  Every existing (non-

3  exempt) public accommodation constructed prior to July 1, 1970, which is altered or

4  structurally repaired, is required to comply with this chapter.

5      44.    Plaintiff alleges the Facility is a public accommodation constructed, altered,

6  or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

7  Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code

8  § 19956.

9      45.    Defendants' non-compliance with these requirements at the Facility aggrieved

10  (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

11  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code

12  § 19953.

### IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.    Declaratory relief that Defendants violated the ADA for the purposes of
      Unruh Act damages.

3.    Statutory minimum damages under section 52(a) of the California Civil Code
      according to proof.

4.    Attorneys' fees, litigation expense, and costs of suit.[2]

5.    Interest at the legal rate from the date of the filing of this action.

6.    For such other and further relief as the Court deems proper.

Dated: April 24, 2014                    MOORE LAW FIRM, P.C.

                                         /s/ Tanya E. Moore
                                         Tanya E. Moore
                                         Attorneys for Plaintiff
                                         Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Las Islitas Restaurant, Inc., et al.*
Complaint
                          Page 9

**MLF0037395**

EX. 61-16

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:____April 24, 2014____          _/s/ Ronald Moore_____
                                      Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                      _/s/ Tanya E. Moore_____
                                      Tanya E. Moore, Attorney for
                                      Plaintiff, Ronald Moore


*Moore v. Las Islitas Restaurant, Inc., et al.*
*Verification*

MLF0037396

EX. 61-17

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: _4/24/14_                    _Ronald Moore_
                                    Ronald Moore

*Moore v. Las Islitas Restaurant, Inc., et al.*
*Verification*

MLF0037399

# Exhibit 62



KFC

STORE #L004002

864 West Manning
Reedley
(559)638-1041

Ticket #4021
2009-02-01                    12:57 PM
L004002 4 26 4021

Cashier: Jackie

9P ML OR DRK                        14.70
5  Leg
4  Thigh
 + Lg CSlaw
 + Lg MacChs
4    Biscuit
9P ML OR DRK                         9.00
5  Leg

                                     2.00
                                   $26.34

                                   $26.34
                                    $0.00

        Thank you

        Come Again Soon

MLF0052600

EX. 62-2



**KFC**

STORE #L004002

864 West Manning
Reedley
(559)638-1041

## Ticket #4200

2009-12-30                          4:33 PM
     L004002 4 25 4200

Cashier: Anthony

| | | |
|---|---|---:|
| 12PC ML MX COM | | 25.79 |
| 3 | Breast | |
| 3 | Leg | |
| 3 | Thigh | |
| 3 | Wing | |
| 6 | + Ec | |
| 6 | + Grl | |
| | + Lg CSlaw | |
| 2 | + Lg Msh/Grvy | |
| 6 | + Biscuit | |
| | 12PC ML 19.99  54785 | -5.80 |
| | SND TWISTER | 3.29 |
| 2 | Strips OR | 1.99 |
| | SND HBBQ | |

| | |
|---|---:|
| Tax | 2.39 |
| CARRY OUT | $27.66 |
| CASH PRE-KEYED | $40.00 |
| Change | $12.34 |

### COUPON

### Thank You

Please Come Again Soon

| $1,000 GIVEAWAY ON BACK! | $1,000 GI

EX. 62-3

MLF0052601



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION



August 31, 2010

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
·Attorney at Law

Martha H. Alvizo
Paralegal

Re:     Kentucky Fried Chicken (KFC) 864 W. Manning Ave., Reedley, CA

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review this document and keep it for your records. Please sign the signature page where indicated and return to our office in the enclosed envelope. **In addition to your signature page, please send the return receipts from the letters sent via certified mail to the defendants in this case, if any.**

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Tanya Moore*

Tanya Moore
Attorney at Law

MLF0052603

EX. 62-4

# Exhibit 63

THAI CHILI
75 BULLARD AVE STE 105
CLOVIS, CA 93612

06/17/2014                    18:53:20
MID: 000000003138503    TID: 04677014

CREDIT CARD

VISA SALE

CARD #              XXXXXXXXXXXX4006
INVOICE                         0010
SEQ #:                          0010
Batch #:                      000381
Approval Code:                09630B
Entry Method:                 Swiped
Mode:                         Online

PRE-TIP AMT              $15.04

TIP                _____

TOTAL AMOUNT       _____


CUSTOMER COPY

MLF0043510

EX. 63-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? Thai Chili

2. What is the address of the Facility? 75 Bullard Ave Suite 105 Clovis

3. When did you visit the Facility? 6/17/14 (Date) 6:50 pm (Time)

4. Was this your first visit to the Facility? No

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. ?

6. What was the purpose of your visit? Dinner

7. Who accompanied you to the Facility? Grandson Ronny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself or did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In the parking spot

11. Was it difficult for you to park there? If so, why? No

12. How did you unload from your vehicle? Rear

13. What side of the vehicle did you unload from? Driver or passenger? Driver

14. Did anyone help you to transfer onto your wheelchair? Who? Yes, Ronny

15. Did you encounter any problems transferring onto your wheelchair? Describe. No, because Ronny helped me with my chair.

16. Which way did you go from the parking to the entrance of the Facility? To access isle

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. Yes, ramp goes into street pavement and accessisle cracked.

18. Did you encounter any problems opening the door? Describe. Yes, door closed on me and threshold.

19. What did you purchase (or what meal did you have there)? Dinner.

20. Did you need to use the restroom while you were at the Facility? Why? No, because I couldn't get in the bathroom

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems")

MLF0043507

EX. 63-3

Sink: _N/A_

Toilet: _N/A_

Urinal: _N/A_

Toilet paper: _N/A_

Toilet seat covers: _N/A_

Paper towels/hand dryer: _N/A_

Soap dispenser: _N/A_

Other: _____

22. Did you have any problem maneuvering inside the restroom? _N/A_

23. Was there any seating provided inside the Facility? _Yes_

24. Were you able to sit comfortably at the table? If not, why? _No, I had to sit at the end of the table because table leg in the way_

25. Did you use the counter to pay for purchase? Which one? _No, Ronny did_

26. Did you pay with cash or credit card? _Credit Card_

27. Was the counter accessible? If not, describe: _No, counter too high Ronny had to sign reciept and give card._

28. Did you have any other problems inside the Facility? Describe. _I couldn't get into the restroom I had to ask waitress for something to wash my hands with_

29. Which way did you go after you left the Facility? _Outdoor too access isle to car._

30. Any problems getting back to your vehicle? _Yes, Ramp goesout to street and pavement cracked._

31. Any problems transferring from your wheelchair to your vehicle? _No because Ronny_

32. Any additional information you believe would assist us in evaluating this inquiry?

_____

_____

MLF0043508



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

July 2, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

     **RE:   ADAI No.   02048**
              *Thai Chili (75 Bullard Ave, Suite 105, Clovis, CA 93612)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0043509

EX. 63-5

**BARRIER MEMO**

**ADAI No. :**    02048

**Case Name:**    Moore v. Thai Chili

**Address:**    75 Bullard Ave, Clovis

| Barrier | Description | Is it a valid barrier?<br>Y / N |
|---|---|---|
| Pavement and access aisle cracked | Plaintiff parked in a designated accessible parking space. The pavement along the route from Plaintiff's parking space to the ramp was cracked, making it difficult for him to maneuver. | |
| Built-up ramp | The ramp was an improperly configured built-up curb ramp which was difficult to ascend. | |
| Door closed quickly/raised threshold | The entrance had a raised threshold and the door closed on Plaintiff while he was trying to wheel over the threshold. | |
| Could not enter restroom | Plaintiff could not enter the restroom because the route lacked sufficient wheelchair clearances. He had to ask the waitress for a damp towel so that he could wash his hands prior to eating. | |
| No accessible table | The table at which Plaintiff was seated was improperly configured. He had to sit at the end of the table because the table leg was in the way, which was uncomfortable. | |
| Counter high | The transaction counter was too high for Plaintiff to conduct his transaction and sign the receipt, and his grandson had to help. | |

1

MLF0043495

EX. 63-6

**BARRIER MEMO**

ADAI No. :     02048

Case Name:     Moore v. Thai Chili

Address:     75 Bullard Ave, Clovis

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Pavement and access aisle cracked | Plaintiff parked in a designated accessible parking space. The pavement along the route from Plaintiff's parking space to the ramp was cracked, making it difficult for him to maneuver. | Yes |
| Built-up ramp | The ramp was an improperly configured built-up curb ramp which was difficult to ascend because it was steep and uneven with a change in level at the top (a lip) | Yes |
| Door closed quickly/raised threshold | The entrance had a raised threshold and the door closed on Plaintiff while he was trying to wheel over the threshold. | Not sure, probably yes but do not include |
| Could not enter restroom | Plaintiff could not enter the restroom because the route lacked sufficient wheelchair clearances. He had to ask the waitress for a damp towel so that he could wash his hands prior to eating. | Yes, they had all sorts of stuff in the way |
| No accessible table | The table at which Plaintiff was seated was improperly configured. He had to sit at the end of the table because the table leg was in the way, which was uncomfortable. | Yes |
| Counter high | The transaction counter was too high for Plaintiff to conduct his transaction and sign the receipt, and his grandson had to help. | Yes |

1

MLF0043494

EX. 63-7



**MOORE**
LAW FIRM, P.C.

February 25, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

Re:     ADAI No.     02048
          Thai Chili (75 Bullard Ave, Suite 105, Clovis, CA 93612)

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

Tanya Moore

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0043496

EX. 63-8

1    Tanya E. Moore, SBN 206683
     MOORE LAW FIRM, P.C.
2    332 North Second Street
     San Jose, California 95112
3    Telephone (408) 298-2000
     Facsimile (408) 298-6046
4    E-mail: tanya@moorelawfirm.com

5    Attorneys for Plaintiff
     Ronald Moore

6

7

8               **UNITED STATES DISTRICT COURT**

9               **EASTERN DISTRICT OF CALIFORNIA**

10

11    RONALD MOORE,                 )   No.
                                    )
12            Plaintiff,        )   **COMPLAINT ASSERTING DENIAL OF**
                                    )   **RIGHT OF ACCESS UNDER**
13       vs.                     )   **AMERICANS WITH DISABILITIES ACT**
                                    )   **FOR INJUNCTIVE RELIEF,**
14    GRACE A. LUCIDO, Trustee of the GRACE   )   **DECLARATORY RELIEF, DAMAGES,**
      A. LUCIDO LIVING TRUST, under       )   **ATTORNEYS' FEES AND COSTS (ADA)**
15    declaration of trust dated March 21, 2006;   )
      NATALIE A. SONEPHADY dba THAI    )
16    CHILI,                                   )
                                    )
17                                     )
            Defendants.       )
18                                     )

19

20                      **I. SUMMARY**

21        1.      This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

22 discrimination at the building, structure, facility, complex, property, land, development, and/or

23 surrounding business complex known as:

24           Thai Chili
25           75 Bullard Avenue, Suite 105
           Clovis, CA 93612
26           (hereafter "the Facility")

27        2.      Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

28 costs, against GRACE A. LUCIDO, Trustee of the GRACE A. LUCIDO LIVING TRUST,

*Moore v. Lucido, et al.*
Complaint
                     Page 1

MLF0043497

EX. 63-9

1  under declaration of trust dated March 21, 2006; and NATALIE A. SONEPHADY dba THAI

2  CHILI (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with

3  Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.   JURISDICTION

5  3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

6  claims.

7  4.      Supplemental jurisdiction for claims brought under parallel California law –

8  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

9  5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

11  6.      All actions complained of herein take place within the jurisdiction of the United

12  States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

13  § 1391(b), (c).

## IV.   PARTIES

15  7.      Defendants own, operate, and/or lease the Facility, and consist of a person (or

16  persons), firm, and/or corporation.

17  8.      Plaintiff is substantially limited in his ability to walk, and must use a wheelchair

18  for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable

19  California and United States laws, and a member of the public whose rights are protected by

20  these laws.

## V.   FACTS

22  9.      The Facility is open to the public, intended for non-residential use, and its

23  operation affects commerce. The Facility is therefore a public accommodation as defined by

24  applicable state and federal laws.

25  10.     Plaintiff visited the Facility and encountered barriers (both physical and

26  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

27  goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

28  encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

MLF0043498

EX. 63-10

about June 17, 2014:

a) Plaintiff parked in a designated accessible parking stall at the Facility. The surface of the pavement along the route from Plaintiff's parking space to the ramp leading to the Facility entrance was cracked and uneven, making it difficult for Plaintiff to maneuver his wheelchair.

b) The ramp from the parking lot to the sidewalk leading toward the Facility entrance was an improperly configured built-up curb ramp, and there was a large vertical height change at the top of the ramp. It was difficult for Plaintiff to maneuver his wheelchair up ramp and onto the sidewalk.

c) Plaintiff could not locate an accessible table at the Facility and was forced to sit at a table that was improperly configured, with a table leg underneath that prevented him from pulling his wheelchair into the table. He had to sit at the end of the table and eat his meal while sitting at a distance from the table, which was uncomfortable.

d) Plaintiff needed to use the restroom while at the Facility, but could not because the route to the restroom lacked sufficient wheelchair clearances and was obstructed by stored items. He was unable to use the toilet, and had to ask the waitress for a damp towel with which to wash his hands prior to eating.

e) The transaction counter was too high for Plaintiff to conduct his transaction and sign his receipt, and his grandson had to help.

11. The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12. Plaintiff was, and continues to be, deterred from visiting the Facility because

MLF0043499

EX. 63-11

1   Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

2   accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

3   Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

4   once the barriers are removed.

5         13.    Defendants knew, or should have known, that these elements and areas of the

6   Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

7   the physically disabled. Moreover, Defendants have the financial resources to remove these

8   barriers from the Facility (without much difficulty or expense), and make the Facility

9   accessible to the physically disabled. To date, however, Defendants refuse to either remove

10  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

11        14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

12  and authority to modify the Facility to remove impediments to wheelchair access and to

13  comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

14  Design. Defendants have not removed such impediments and have not modified the Facility to

15  conform to accessibility standards. Defendants have intentionally maintained the Facility in its

16  current condition and have intentionally refrained from altering the Facility so that it complies

17  with the accessibility standards.

18        15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

19  so obvious as to establish Defendants' discriminatory intent. On information and belief,

20  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

21  to relevant building standards; disregard for the building plans and permits issued for the

22  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

23  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

24  property continues to exist in its non-compliant state. Plaintiff further alleges, on information

25  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

26  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

27  ///

28  ///

*Moore v. Lucido, et al.*
Complaint

MLF0043500

EX. 63-12

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

16.     Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.     Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

#### Failure to Remove Architectural Barriers in an Existing Facility

19.     The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.     When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.     Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.     In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

///

///

MLF0043501

EX. 63-13

1

<u>Failure to Design and Construct an Accessible Facility</u>

2       23.     Plaintiff alleges on information and belief that the Facility was designed and

3 constructed (or both) after January 26, 1992 – independently triggering access requirements

4 under Title III of the ADA.

5       24.     The ADA also prohibits designing and constructing facilities for first occupancy

6 after January 16, 1993, that aren't readily accessible to, and usable by, individuals with

7 disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

8       25.     Here, Defendants violated the ADA by designing and constructing (or both) the

9 Facility in a manner that was not readily accessible to the physically disabled public –

10 including Plaintiff – when it was structurally practical to do so.[1]

11

<u>Failure to Make an Altered Facility Accessible</u>

12       26.     Plaintiff alleges on information and belief that the Facility was modified after

13 January 26, 1992, independently triggering access requirements under the ADA.

14       27.     The ADA also requires that facilities altered in a manner that affects (or could

15 affect) its usability must be made readily accessible to individuals with disabilities to the

16 maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

17 primary function also requires making the paths of travel, bathrooms, telephones, and drinking

18 fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

19       28.     Here, Defendants altered the Facility in a manner that violated the ADA and

20 was not readily accessible to the physically disabled public – including Plaintiff – to the

21 maximum extent feasible.

22

<u>Failure to Modify Existing Policies and Procedures</u>

23       29.     The ADA also requires reasonable modifications in policies, practices, or

24 procedures, when necessary to afford such goods, services, facilities, or accommodations to

25 individuals with disabilities, unless the entity can demonstrate that making such modifications

26 would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Lucido, et al.*
Complaint

MLF0043502

EX. 63-14

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.   SECOND CLAIM

### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

*Moore v. Lucido, et al.*
Complaint

MLF0043503

EX. 63-15

1  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

2  § 52(a).

### VIII. THIRD CLAIM

#### Denial of Full and Equal Access to Public Facilities

5      41.      Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

6  this claim.

7      42.      Health and Safety Code § 19955(a) states, in part, that: California public

8  accommodations or facilities (built with private funds) shall adhere to the provisions of

9  Government Code § 4450.

10     43.      Health and Safety Code § 19959 states, in part, that: Every existing (non-

11  exempt) public accommodation constructed prior to July 1, 1970, which is altered or

12  structurally repaired, is required to comply with this chapter.

13     44.      Plaintiff alleges the Facility is a public accommodation constructed, altered, or

14  repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

15  § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

16     45.      Defendants' non-compliance with these requirements at the Facility aggrieved

17  (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

18  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.      PRAYER FOR RELIEF

20      WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

21     1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

22     2.      Declaratory relief that Defendants violated the ADA for the purposes of Unruh

23          Act damages.

24     3.      Statutory minimum damages under section 52(a) of the California Civil Code

25          according to proof.

26     4.      Attorneys' fees, litigation expense, and costs of suit.[2]

27     5.      Interest at the legal rate from the date of the filing of this action.

28  ─────────────────────────────

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Lucido, et al.*
Complaint

MLF0043504

EX. 63-16

1

6.      For such other and further relief as the Court deems proper.

2

Dated: February 24, 2015                          MOORE LAW FIRM, P.C.

3

4                                                  /s/ Tanya E. Moore
                                                   Tanya E. Moore
5                                                  Attorneys for Plaintiff
                                                   Ronald Moore
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Moore v. Lucido, et al.*
Complaint
                                        Page 9

MLF0043505

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:  February 24, 2015              /s/  Ronald Moore
                                       Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                       /s/ Tanya E. Moore
                                       Tanya E. Moore, Attorney for
                                       Plaintiff, Ronald Moore


*Moore v. Lucido, et al.*
*Verification*

MLF0043506

EX. 63-18

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 2/24/15                          _Ronald Moore_
                                        Ronald Moore

*Moore v. Lucido (Thai Chili)*

MLF0043511

EX. 63-19

# Exhibit 64

```
              A-QUALITY FOOD LIQUOR
                2707 4 BLACKSTONE AVE
                 FF  NO, CA 93703

TERMINAL ID:                   005721972
MERCHANT #:               329219397992

VISA
#xxxxxxxxxxxx4008

SALE
BATCH: 081096          INVOICE: 096937
DATE: FEB 11, 14           TIME: 19:49
SQ: 014                AUTH NO: 072458


TOTAL          $34.65

      CUSTOMER COPY
```

MLF0034046

EX. 64-2

LAS CAZUELAS MEXICAN RESTAURANTE
2755 N. BLACKSTONE AVENUE
FRESNO, CA 93703
(559) 237-8448

Merchant ID: 8788148014994
Server ID: 1

## Sale

XXXXXXXXXXXX4008
VISA                    Entry Method: Swiped

Amount:                 $       39.50
Tip:

Total:                  $   45

08/16/13                        20:44:36
Inv#: 000030           Appr Code: 03129B
Apprvd: Online          Batch#: 001632

Customer Copy
THANK YOU
PLEASE COME AGAIN!

MLF0034111

EX. 64-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _LAS CazUeLas_

2. When did you visit the Facility? _9/06/13_ (Date) _8:30 pm_ (Time)

3. What is the address of the Facility? _2755 N Blackstone Fresno._

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _couple_ If more than one visit, please list the date and time if you know it. _?_

6. What was the purpose of your visit? _To eat_

7. Who accompanied you to the Facility? _my wife and Grand kids_ _Ronny Tyler Lauren_

8. What car did you drive to the Facility? _min_

9. Did you drive yourself of did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _IN O/P IN Front_

11. Was it difficult for you to park there? _No_

12. Why? _____

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _Ronny_

16. What problems did you encounter transferring onto your wheelchair?

_pavement cracked_

17. Which way did you go from the parking to the entrance of the Facility? _to Access Issle_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

_Ramp went into Access Issle was small and uneven_

19. Did you encounter any problems opening the door? Describe why. _Door heavy And had Trashold Rised Door closed on me_

20. Did you have any problems inside the Facility? Describe. _Yes_

MLF0034109

EX. 64-4

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

_____

_____

21. What did you purchase (or what meal did you have there). Describe: _5 meals_

22. Have you used the restroom at the Facility? _Yes_

23. Why did you need to use the restroom? _had to go_

24. Did you use the sink? _yes_

25. Any problems? _____

26. Did you use the urinal? _____

27. Did you use the toilet? _yes_

28. Did you use the toilet paper? _yes_

29. Did you use paper towels? _yes_

30. Did you use the soap dispenser? _yes_

31. Did you have any problem maneuvering inside the restroom? _yes still was to small and Door Did not Close   Floor uneven_

32. Where did you sit? _at table_

33. Was there any seating provided inside the Facility? _yes_

34. Was it wheelchair accessible? _No_

35. Where you comfortable at the table? _No They even turned tables for us and I still could not sit up to table because of table legs_

36. Did you use the counter to pay for purchase? _yes_

37. Which counter did you use? _only one_

38. Was the counter accessible? _Not Real Bad kind of hard to sign Recipt_

39. Which way did you go after you left the Facility? _out Door to Ramp to my car_

40. Any problems getting back to your vehicle? _Ramp uneven and pavment All crack_

41. Any problems transferring from your wheelchair to your vehicle? _grandson put it in car_

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0034110

EX. 64-5

1. What is the name of the Facility? A Quality Food Liquor

2. When did you visit the Facility? 2/11/14 (Date) 7:50 (Time)

3. What is the address of the Facility? 2707 N. Blackstone Ave. Fresno, Cali.

4. Was this your first visit to the Facility? No

5. How many times have you visited the Facility? 7 If more than one visit, please list the date and time if you know it. 7

6. What was the purpose of your visit? Smokes and oil for car

7. Who accompanied you to the Facility? Grandson Ronny

8. What car did you drive to the Facility? Hino.

9. Did you drive yourself of did you get a ride from someone else? I drove.

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. in front of store

11. Was it difficult for you to park there? Yes

12. Why? No signs or Dp Parking

13. How did you unload from your vehicle? Rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? Grandson Ronny

16. What problems did you encounter transferring onto your wheelchair?

Cracked road

17. Which way did you go from the parking to the entrance of the Facility? Up curb to door

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

there

19. Did you encounter any problems opening the door? Describe why. door heavy

20. Did you have any problems inside the Facility? Describe. Yes

MLF0034044

No ramp had to go up curbs, drinks to high, isle to ~~big~~ small couldn't get oil

21. What did you purchase (or what meal did you have there). Describe: fountain drink, Brisk tea, lottery tickets

22. Have you used the restroom at the Facility? NO

23. Why did you need to use the restroom? N/A

24. Did you use the sink? N/A

25. Any problems? N/A

26. Did you use the urinal? N/A

27. Did you use the toilet? N/A

28. Did you use the toilet paper? N/A

29. Did you use paper towels? N/A

30. Did you use the soap dispenser? N/A

31. Did you have any problem maneuvering inside the restroom? N/A

32. Where did you sit? N/A

33. Was there any seating provided inside the Facility? N/A

34. Was it wheelchair accessible? NO

35. Where you comfortable at the table? N/A

36. Did you use the counter to pay for purchase? Yes

37. Which counter did you use? only one

38. Was the counter accessible? NO to high couldn't reach

39. Which way did you go after you left the Facility? Out door off curb towards car

40. Any problems getting back to your vehicle? No ramp road cracked

41. Any problems transferring from your wheelchair to your vehicle? not much grandson brought me to my door

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0034045

February 18, 2014

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

       **RE:    ADAI No. 1749**
             **Madanat Investments LLC (Las Cazuelas, A Quality**
             **Food Liquor)**
             **2755 N. Blackstone, Fresno CA**

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0056312

**BARRIER MEMO**

ADAI No. :    01749

Case Name:   Moore v. Madanat Investments LLC

Address:     Las Cazuelas, 2755 North Blackstone Ave, Fresno
             A Quality Food & Liquor, 2707 North Blackstone Ave, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Las Cazuelas – pavement cracked at parking | Plaintiff parked in a designated accessible parking space near the entrance of the Las Cazuelas Facility. The surface of Plaintiff's parking space was cracked, making it difficult to transfer between his vehicle and his wheelchair. | Yes, parking space barely designated, yes surface cracked of both parking space and aisle. Also appears sloped and built up ramp located within the access aisle. |
| Las Cazuelas – Built up curb ramp is narrow, uneven | The ramp from the parking lot to the sidewalk leading to the entrance of the Las Cazuelas Facility was an improperly configured built-up curb ramp, which was narrow and unevenly sloped, making it difficult for Plaintiff to maneuver up and down. | Yes, built up, narrow and unevenly sloped |
| Las Cazuelas - Door heavy/high threshold | The Las Cazuelas Facility's entry door was heavy and had a raised threshold. It was difficult for Plaintiff to hold the door open while attempting to maneuver over the raised threshold, and the door closed on him while he was entering. | Yes, very heavy and very high threshold. |
| Las Cazuelas – Restroom stall too small | The stall within the men's restroom at the Las Cazuelas Facility lacked proper clearances, and Plaintiff was unable to close the stall door once he wheeled into the stall because his wheelchair was in the way. He was forced to use the toilet with the stall door open, which was embarrassing. | Yes |
| Las Cazuelas – Restroom floor uneven | The floor inside the men's restroom at the Las Cazuelas Facility was uneven, making it difficult for Plaintiff to maneuver and to use the toilet. | No |
| Las Cazuelas - Table not accessible | Plaintiff was seated at a table that was improperly configured and the legs of the table prevented him | Ok, but they have plenty of |

1

MLF0034058

EX. 64-9

| | | |
|---|---|---|
| | from pulling his wheelchair all the way up to the table. He was forced to sit at an uncomfortable distance from the table for the duration of his meal. | accessible tables but no accessible booths. Don't use it unless he wanted to sit in a booth |
| Las Cazuelas – Counter high | The transaction counter at the Las Cazuelas Facility was too high, making it difficult for Plaintiff to sign his receipt on the counter. | No. |
| A Quality – No accessible parking/ parking space cracked | Plaintiff was unable to locate a designated accessible parking space near the A Quality Facility and was forced to park in a standard parking space, which was improperly configured and had a cracked surface, making it difficult for him to transfer between his vehicle and his wheelchair. | Yes, there is one to the left but no ramp or connection between the access aisle and the walkway to the facility. |
| A Quality – no ramp to sidewalk | Plaintiff was unable to locate a ramp from the parking lot to the sidewalk near the A Quality Facility. His grandson had to help him wheel over the curb in order to get onto the sidewalk, and off the curb to the parking lot when returning to his vehicle. | Yes, no ramp, very high curb, dangerous stuff they are doing. Should go around instead. |
| A Quality – Door heavy | The A Quality Facility's entry door was heavy, making it difficult for Plaintiff to open the door. | Not sure, it was open |
| A Quality – Fountain drinks too high | The self-serve soda fountain at the A Quality Facility was too high and Plaintiff could not reach it to serve himself a soda. His grandson had to pour the soda for him. | Yes, very high. |
| A Quality – aisles narrow | Some of the aisles within the A Quality Facility lacked necessary wheelchair clearances, preventing Plaintiff from maneuvering freely around the store. He wanted to purchase motor oil but was unable to access that area of the store due to the lack of clearances. | Yes, aisles leading from the entrance to the area of motor oil, etc. is very narrow |
| A Quality – counter high | The transaction counter at the A Quality Facility was too high for Plaintiff to reach. | Yes, kind of high. |

2

MLF0034059

EX. 64-10

1   Tanya E. Moore, SBN 206683
    MOORE LAW FIRM, P.C.
2   332 North Second Street
    San Jose, California 95112
3   Telephone (408) 298-2000
    Facsimile (408) 298-6046
4   E-mail: tanya@moorelawfirm.com

5   Attorneys for Plaintiff
    Ronald Moore

6

7

8                    UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11  RONALD MOORE,                         )   No.
                                          )
12            Plaintiff,                   )   COMPLAINT ASSERTING DENIAL OF
                                          )   RIGHT OF ACCESS UNDER
13      vs.                                )   AMERICANS WITH DISABILITIES ACT
                                          )   FOR INJUNCTIVE RELIEF,
14  MADANAT INVESTMENTS, LLC, a            )   DECLARATORY RELIEF, DAMAGES,
    California limited liability company;  )   ATTORNEYS' FEES AND COSTS (ADA)
15  MIGUEL LOPEZ dba LAS CAZUELAS          )
    MEXICAN RESTAURANT; CRISTINA           )
16  LOPEZ dba LAS CAZUELAS MEXICAN         )
    RESTAURANT; IKWINDER KAUR dba A        )
17  QUALITY FOOD & LIQUOR; SARABJIT        )
    SINGH dba A QUALITY FOOD & LIQUOR;     )
18                                         )
19                                         )
              Defendants.                  )
20                                         )
                                          )
21  _____)

22                           I. SUMMARY

23      1.      This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

24  discrimination at the building, structure, facility, complex, property, land, development,

25  and/or surrounding business complex known as:

26          a)    Las Cazuelas Mexican Restaurant
                  2755 North Blackstone Avenue
27                Fresno, CA 93703
                  (hereafter "the Las Cazuelas Facility")
28

*Moore v. Madanat Investments, LLC, et al.*
Complaint

                              Page 1

MLF0034060

1         b)     A Quality Food & Liquor
2                    2707 North Blackstone Avenue
                              Fresno, CA 93703
3                    (hereafter "the A Quality Facility")

4        Each of the facilities identified above shall be collectively hereafter referred to as

5    "the Facilities."

6        2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

7    costs, pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.)

8    ("ADA") and related California statutes, against:

9             a)    MADANAT INVESTMENTS, LLC, a California limited liability

10                 company (hereinafter "the Landlord Defendant");

11            b)    MIGUEL LOPEZ dba LAS CAZUELAS MEXICAN

12                 RESTAURANT; CRISTINA LOPEZ dba LAS CAZUELAS

13                 MEXICAN RESTAURANT (hereinafter collectively "the Las

14                 Cazuelas Defendants"); and

15            c)    IKWINDER KAUR dba A QUALITY FOOD & LIQUOR;

16                 SARABJIT SINGH dba A QUALITY FOOD & LIQUOR (hereinafter

17                 collectively "the A Quality Defendants").

18       The Las Cazuelas Defendants and the A Quality Defendants are collectively referred

19   to herein as "the Tenant Defendants," and together with the Landlord Defendant, collectively

20   the "Defendants."

21                 **II.    JURISDICTION**

22       3.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

23   ADA claims.

24       4.     Supplemental jurisdiction for claims brought under parallel California law –

25   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

26       5.     Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

27                 **III.    VENUE**

28       6.     All actions complained of herein take place within the jurisdiction of the

*Moore v. Madanat Investments, LLC, et al.*
Complaint

MLF0034061

EX. 64-12

1  United States District Court, Eastern District of California, and venue is invoked pursuant to

2  28 U.S.C. § 1391(b), (c).

3                              **IV.   PARTIES**

4         7.      Plaintiff believes, and thereon alleges, that the Landlord Defendant owns,

5  operates, and/or leases the real property consisting of the real property and common areas of

6  the Facilities as well as the physical structures thereon (including the buildings in which each

7  of the individual Tenant Defendants' Facilities is located), and consists of a person (or

8  persons), firm, or corporation. Plaintiff further believes, and thereon alleges, that the

9  Landlord Defendant leases the respective Facilities to the Tenant Defendants as follows:

10                 a)      The Las Cazuelas Defendants own, operate, and/or lease the Las

11                         Cazuelas Facility, and lease the Las Cazuelas Facility from the

12                         Landlord Defendant; and

13                 b)      The A Quality Defendants own, operate, and/or lease the A Quality

14                         Facility, and lease the A Quality Facility from the Landlord

15                         Defendant.

16         8.      Plaintiff requires the use of a wheelchair when traveling about in public.

17  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

18  United States laws, and is a member of the public whose rights are protected by these laws.

19                              **V.   FACTS**

20         9.      The Facilities are public accommodations, open to the public, which are

21  intended for nonresidential use and whose operation affects commerce.

22         10.     Plaintiff visited the Facilities and encountered barriers (both physical

23  and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy

24  the goods, services, privileges and accommodations offered at the Facilities.   Plaintiff

25  personally encountered the following barriers at the Facilities during Plaintiff's visits to the

26  Facilities:

27                 a)      During Plaintiff's visit to the Las Cazuelas Facility on or about August

28                         16, 2013, Plaintiff encountered the following barriers:

*Moore v. Madanat Investments, LLC, et al.*
Complaint

MLF0034062

EX. 64-13

1       1)   Plaintiff parked in a designated accessible parking space near
2   the entrance of the Las Cazuelas Facility. The surface of
3   Plaintiff's parking space and the adjacent access aisle was
4   uneven and cracked, making it difficult for Plaintiff to transfer
5   between his vehicle and wheelchair.

6       2)   The ramp from the parking lot to the sidewalk leading to the
7   entrance of the Las Cazuelas Facility was an improperly
8   configured built-up curb ramp, which was narrow and
9   unevenly sloped, making it difficult for Plaintiff to ascend and
10   descend the ramp.

11       3)   The Las Cazuelas Facility's entrance door was heavy and had a
12   raised threshold. It was difficult for Plaintiff to hold the door
13   open while attempting to maneuver over the raised threshold,
14   and the door closed on him while he was entering.

15       4)   The stall within the men's restroom at the Las Cazuelas
16   Facility lacked proper clearances, and Plaintiff was unable to
17   close the stall door once he wheeled into the stall because his
18   wheelchair was in the way. He was forced to use the toilet with
19   the stall door open, which was embarrassing.

20   b)   During Plaintiff's visit to the A Quality Facility on or about February
21   11, 2014, Plaintiff encountered the following barriers:

22       1)   Plaintiff was unable to locate a designated accessible parking
23   space near the entrance of the A Quality Facility. There was a
24   designated accessible parking space located at the end of the
25   row of parking spaces, but it did not appear to be connected to
26   an accessible route to the sidewalk. Plaintiff was forced to park
27   in a standard parking stall near the entrance to the A Quality
28   Facility, which was improperly configured, making it difficult

*Moore v. Madanat Investments, LLC, et al.*
Complaint

MLF0034063

EX. 64-14

1          for him to transfer between his vehicle and wheelchair.

2     2)    Plaintiff was unable to locate a ramp to access the sidewalk

3          leading to the entrance of the A Quality Facility. His grandson

4          had to help him wheel over the curb in order to get onto the

5          sidewalk, and off the curb to the parking lot when returning to

6          his vehicle.

7     3)    The self-serve soda fountain at the A Quality Facility was too

8          high and Plaintiff could not reach it to serve himself a soda.

9          His grandson had to pour the soda for him.

10    4)    Some of the aisles within the A Quality Facility lacked

11         necessary wheelchair clearances, preventing Plaintiff from

12         maneuvering freely around the store. He wanted to purchase

13         motor oil but was unable to access that area of the store due to

14         the lack of clearances.

15    5)    The transaction counter at the A Quality Facility was

16         improperly configured and lacked clear space in front of it,

17         making it difficult for Plaintiff to reach to pay for his purchase.

18    11.    The barriers identified in paragraph 10 herein are only those that Plaintiff

19 personally encountered.  Plaintiff is presently unaware of other barriers which may in fact

20 exist at the Facilities and relate to his disabilities.  Plaintiff will seek to amend this Complaint

21 once such additional barriers are identified as it is Plaintiff's intention to have all barriers

22 which exist at the Facilities and relate to his disabilities removed to afford him full and equal

23 access.

24    12.    Plaintiff was, and continues to be, deterred from visiting the Facilities because

25 Plaintiff knows that the Facilities' goods, services, facilities, privileges, advantages, and

26 accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

27 Plaintiff enjoys the goods and services offered at the Facilities, and will return to the

28 Facilities once the barriers are removed.

*Moore v. Madanat Investments, LLC, et al.*
Complaint

Page 5

MLF0034064

EX. 64-15

13.     Defendants knew, or should have known, that these elements and areas of the Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, Defendants have the financial resources to remove these barriers from the Facilities (without much difficulty or expense), and make the Facilities accessible to the physically disabled.  To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14.     At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facilities to remove impediments to wheelchair access and to comply with the 2010 Standards for Accessible Design and the California Code of Regulations Title 24.  Defendants have not removed such impediments and have not modified the Facilities to conform to accessibility standards.  Defendants have intentionally maintained the Facilities in their current condition and have intentionally refrained from altering the Facilities so that they comply with the accessibility standards.

15.     Plaintiff further alleges that the (continued) presence of barriers at the Facilities is so obvious as to establish Defendants discriminatory intent.  On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facilities; conscientious decision to maintain the architectural layout (as it currently exists) at the Facilities; decision not to remove barriers from the Facilities; and allowance that Defendants' property continues to exist in its non-compliance state.  Plaintiff further alleges, on information and belief, that the Facilities are not in the midst of a remodel, and that the barriers present at the Facilities are not isolated (or temporary) interruptions in access due to maintenance or repairs.

## VI.     FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

16.     Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

*Moore v. Madanat Investments, LLC, et al.*
Complaint

MLF0034065

EX. 64-16

1   this claim.

2       17.    Title III of the ADA holds as a "general rule" that no individual shall be

3   discriminated against on the basis of disability in the full and equal enjoyment (or use) of

4   goods, services, facilities, privileges, and accommodations offered by any person who owns,

5   operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

6       18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

7   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

8   Facilities during each visit and each incident of deterrence.

9       <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

10      19.    The ADA specifically prohibits failing to remove architectural barriers, which

11  are structural in nature, in existing facilities where such removal is readily achievable. 42

12      U.S.C. § 12182(b)(2)(A)(iv).

13      20.    When an entity can demonstrate that removal of a barrier is not readily

14  achievable, a failure to make goods, services, facilities, or accommodations available through

15  alternative methods is also specifically prohibited if these methods are readily achievable.

16  Id. § 12182(b)(2)(A)(v).

17      21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

18  barriers at the Facilities without much difficulty or expense, and that Defendants violated the

19  ADA by failing to remove those barriers, when it was readily achievable to do so.

20      22.    In the alternative, if it was not "readily achievable" for Defendants to remove

21  the Facilities' barriers, then Defendants violated the ADA by failing to make the required

22  services available through alternative methods, which are readily achievable.

23      <u>Failure to Design and Construct an Accessible Facility</u>

24      23.    Plaintiff alleges on information and belief that the Facilities were designed

25  and constructed (or both) after January 26, 1992 – independently triggering access

26  requirements under Title III of the ADA.

27      24.    The ADA also prohibits designing and constructing facilities for first

28  occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

*Moore v. Madanat Investments, LLC, et al.*
Complaint

MLF0034066

EX. 64-17

1  with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

2          25.    Here, Defendants violated the ADA by designing and constructing (or both)

3  the Facilities in a manner that was not readily accessible to the physically disabled public –

4  including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

6          26.    Plaintiff alleges on information and belief that the Facilities were modified

7  after January 26, 1992, independently triggering access requirements under the ADA.

8          27.    The ADA also requires that facilities altered in a manner that affects (or could

9  affect) its usability must be made readily accessible to individuals with disabilities to the

10  maximum extent feasible.  42 U.S.C. § 12183(a)(2).   Altering an area that contains a

11  facility's primary function also requires making the paths of travel, bathrooms, telephones,

12  and drinking fountains serving that area accessible to the maximum extent feasible. Id.

13          28.    Here, Defendants altered the Facilities in a manner that violated the ADA and

14  was not readily accessible to the physically disabled public – including Plaintiff – to the

15  maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

17          29.    The ADA also requires reasonable modifications in policies, practices, or

18  procedures, when necessary to afford such goods, services, facilities, or accommodations to

19  individuals with disabilities, unless the entity can demonstrate that making such

20  modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

21          30.    Here, Defendants violated the ADA by failing to make reasonable

22  modifications in policies, practices, or procedures at the Facilities, when these modifications

23  were necessary to afford (and would not fundamentally alter the nature of) these goods,

24  services, facilities, or accommodations.

25          31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

26  attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

27

28

---

[1] Nothing within this complaint should be construed as an allegation that Plaintiff is bringing this action as a
private attorney general under either state or federal statutes.

*Moore v. Madanat Investments, LLC, et al.*
Complaint

MLF0034067

EX. 64-18

1       32.   Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

2   Defendants violated the ADA in order to pursue damages under California's Unruh Civil

3   Rights Act.

4              **VII.    SECOND CLAIM**

5                **Unruh Act**

6       33.   Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

7   this claim.

8       34.   California Civil Code § 51 states, in part, that:   All persons within the

9   jurisdiction of this state are entitled to the full and equal accommodations, advantages,

10  facilities, privileges, or services in all business establishments of every kind whatsoever.

11      35.   California Civil Code § 51.5 also states, in part that:   No business

12  establishment of any kind whatsoever shall discriminate against any person in this state

13  because of the disability of the person.

14      36.   California Civil Code § 51(f) specifically incorporates (by reference) an

15  individual's rights under the ADA into the Unruh Act.

16      37.   Defendants' aforementioned acts and omissions denied the physically

17  disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

18  privileges and services in a business establishment (because of their physical disability).

19      38.   These acts and omissions (including the ones that violate the ADA) denied,

20  aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

21      39.   Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

22  minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

23      40.   Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

24  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

25  § 52(a).

26  //

27  //

28  //

*Moore v. Madanat Investments, LLC, et al.*
Complaint

MLF0034068

EX. 64-19

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that:  California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that:  Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.     Plaintiff alleges the Facilities are public accommodations constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facilities aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.      PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.     Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.     Attorneys' fees, litigation expense, and costs of suit.[2]

5.     Interest at the legal rate from the date of the filing of this action.

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Madanat Investments, LLC, et al.*
Complaint

MLF0034069

EX. 64-20

1    6.    For such other and further relief as the Court deems proper.

2    Dated: April 24, 2014                    MOORE LAW FIRM, P.C.

3

4                                            /s/ Tanya E. Moore
                                             Tanya E. Moore
5                                            Attorneys for Plaintiff
                                             Ronald Moore
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Moore v. Madanat Investments, LLC, et al.*
Complaint

MLF0034070

EX. 64-21

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:  April 24, 2014                    /s/  Ronald Moore                    
                                          Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

/s/ Tanya E. Moore                    
Tanya E. Moore, Attorney for
Plaintiff, Ronald Moore

*Moore v. Madanat Investment, LLC, et al.*
*Verification*

MLF0034071

EX. 64-22

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 4/24/14

Ronald Moore

*Moore v. Madanat Investment, LLC, et al.*
*Verification*

MLF0034112

EX. 64-23

# Exhibit 65

```
CENTRAL FOOD MART
2990 E CENTRAL AVE
FRESNO          CA
10009082


         07/27/2013 11:16:23 AM
     Register: 1 Trans #: 7107 Op ID: 1111
          Your cashier: mohinder

MALBORO                    $5.97    1
MALBORO                    $5.97    1
TAXABLE                    $4.00    1
TAXABLE                    $0.10    1
                          ----------
              Subtotal =  $16.04
                   Tax =   $1.32
                          ----------
                 Total =  $17.36

             Change Due =   $0.00

Credit                     $17.36
----------------------------------------
XXXX XXXX XXXX 4008, VISA
INVOICE 111623
AUTH 00-02654B REF 350280727131116
SALE
Batch: 35 Seq Num: 28
Term ID: 1
Workstation ID: 1
WANT FREE GAS?
REGISTER TO WIN AT WWW.GASVISIT.COM
----------------------------------------


             WWW.GASVISIT.COM
```

MLF0032868

EX. 65-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _Central Food Mart_

2. When did you visit the Facility? _7/27/13_ (Date) _1:15 pm_ (Time)

3. What is the address of the Facility? _2990 E Central Ave_

4. Was this your first visit to the Facility? _?_

5. How many times have you visited the Facility? _?_ If more than one visit, please list the date and time if you know it. _?_

6. What was the purpose of your visit? _Smokes_

7. Who accompanied you to the Facility? _JR And Grandson_

8. What car did you drive to the Facility? _mine_

9. Did you drive yourself of did you get a ride from someone else? _I drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In D/p spot_

11. Was it difficult for you to park there? _Yes it was on an angle my Door keep wanting to close on me_

12. Why? _Ramp gos int Access Issle_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _My Grandson_

16. What problems did you encounter transferring onto your wheelchair?
_Just Being close to Road_

17. Which way did you go from the parking to the entrance of the Facility? _to Left to Ramp_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
_Ramp Very steep_

19. Did you encounter any problems opening the door? Describe why. _Trash bold and Door Heavy_

20. Did you have any problems inside the Facility? Describe. _Yes_

MLF0032846

EX. 65-3

got Stuck in Issle Between tables to eat and
Racks on the Left had to get my grandson to help
me get out I really got stuck

**21. What did you purchase (or what meal did you have there). Describe:** _Smokes_
could not get that Boss they were to high-

**22. Have you used the restroom at the Facility?** _yes_

**23. Why did you need to use the restroom?** _Had to pee_

**24. Did you use the sink?** _yes_

**25. Any problems?** _____

**26. Did you use the urinal?** _yes_

**27. Did you use the toilet?** _no_

**28. Did you use the toilet paper?** _No_

**29. Did you use paper towels?** _hand Dryer to high_

**30. Did you use the soap dispenser?** _yes High_

**31. Did you have any problem maneuvering inside the restroom?** _____

**32. Where did you sit?** _no_

**33. Was there any seating provided inside the Facility?** _yes_

**34. Was it wheelchair accessible?** _No that where I got stuck_
trying to get down the Issle

**35. Where you comfortable at the table?** _Another Reason I did not get that Boss_

**36. Did you use the counter to pay for purchase?** _yes_

**37. Which counter did you use?** _the One next to Door_

**38. Was the counter accessible?** _not Really they have Racks infront_
which makes it Hard to sign credit card Recipts

**39. Which way did you go after you left the Facility?** _to the Right._

**40. Any problems getting back to your vehicle?** _Yes when I went Down Ramp Almost_
got Hit Bal i nissan truck Because Ramp so steep goes so

**41. Any problems transferring from your wheelchair to your vehicle?** _no_
fast went into Road a little bit.

**42. If you have any additional information you believe would assist us in evaluating this inquiry.**

MLF0032847

EX. 65-4

# BARRIER MEMO

**ADAI No. :**     01723

**Case Name:**     Moore v. Central Food

**Address:**     2990 E Central Ave, Fresno CA 93725

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Designated parking space was sloped | The designated accessible parking space was sloped and Plaintiff's driver side door kept shutting on him which made his transfer into his wc difficult. | Y |
| Ramp not compliant | When Plaintiff unloaded from his car and made his way to the entrance, he struggled with the ramp due to how steep it was and its location in the access aisle. When Plaintiff was returning to his vehicle after his visit, he picked up too much speed going down the steep ramp and was shot into the parking lot; almost getting hit by a truck. | Y |
| Trash can obstructed path of travel | The sidewalk from the ramp to the entrance of the Facility was obstructed by a trash can. | Y |
| Heaviness of the door | Plaintiff struggled to open the heavy facility door on his own. | Y |
| Hot dogs too high | When Plaintiff went to get a hot dog, he found that they were too high for him to reach.  And? | y |
| Narrow aisles | While inside the Facility, Plaintiff found himself stuck in an aisle between tables and item racks. His grandson had to come and help him get out. He was unable to get to the table to eat because of the lack of clearance, so he decided not to buy a hot dog. | Y |
| Accessories in restroom too high | Plaintiff had trouble using the soap dispenser and the hand dryer in the restroom due to their height. | No |
| Counter not accessible | Plaintiff had a difficult time accessing the counter to sign his receipt for his credit card purchase due to the racks that sat in front of the counter. | Yes |

1

MLF0032848



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 24, 2014

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

**RE:** **ADAI No. 01723**
**Manjal (Central Food)**
*2990 E Central Ave, Fresno CA 93725*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure: Fee Agreement

MLF0032849

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

     I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Manjal (Central Food).**

DATE: _____

        _____
        CLIENT'S SIGNATURE- RONALD MOORE

        _____
        ADDRESS

        _____
        CITY

        _____
        TELEPHONE

DATE:_____

        MOORE LAW FIRM, PC
        ATTORNEY FOR RONALD MOORE

MLF0032850

EX. 65-7

## *CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

THIS AGREEMENT, made this _____ at **San Jose, CA,** by and between <u>Ronald Moore</u>, hereinafter designated as "Client," and **the Moore Law Firm, PC,** hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case against ***Manjal (Central Food)*** and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

### FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

MLF0032851

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0032852

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)     Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)    Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)   In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)    In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0032853

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, no fees will be charged to Client .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0032854

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0032855

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial            _____Initial

MLF0032856

DATE:_____            _____
                                 CLIENT'S SIGNATURE


DATE:_____            _____
                                 CLIENT'S NAME

                                 _____
                                 ADDRESS


                                 _____
                                 CITY


                                 _____
                                 TELEPHONE


MY WITNESS(S) ARE _____
(if none please indicate so)


DATE:_____            MOORE LAW FIRM, PC


                                 _____
                                 ATTORNEY FOR RONALD MOORE

MLF0032857

1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: tanya@moorelawfirm.com

5  Attorneys for Plaintiff
   Ronald Moore

6

7

8              UNITED STATES DISTRICT COURT

9             EASTERN DISTRICT OF CALIFORNIA

10

11 RONALD MOORE,                          )  No.
                                          )
12           Plaintiff,                    )  **COMPLAINT ASSERTING DENIAL OF**
                                          )  **RIGHT OF ACCESS UNDER**
13     vs.                                 )  **AMERICANS WITH DISABILITIES ACT**
                                          )  **FOR INJUNCTIVE RELIEF,**
14 AVTAR S. MANJAL dba CENTRAL FOOD       )  **DECLARATORY RELIEF, DAMAGES,**
   MART; GIAN S. RAKKAR dba CENTRAL       )  **ATTORNEYS' FEES AND COSTS (ADA)**
15 FOOD MART; RAKKAR & MANJAL, DBA        )
   JOHNNY QUIK #125, a general partnership; )
16                                         )
17           Defendants.                   )
                                          )
18                                         )
                                          )
19                                         )
                                          )
20                                         )
                                          )
21 ─────────────────────────────────────  )

22                    **I. SUMMARY**

23     1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

24 discrimination at the building, structure, facility, complex, property, land, development, and/or

25 surrounding business complex known as:

26         Central Food Mart
           2990 East Central Avenue
27         Fresno, CA 93725
           (hereafter "the Facility")
28

*Moore v. Manjal, et al.*
Complaint
                        Page 1

MLF0032858

EX. 65-15

2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against AVTAR S. MANJAL dba CENTRAL FOOD MART; GIAN S. RAKKAR dba CENTRAL FOOD MART; RAKKAR & MANJAL, DBA JOHNNY QUIK #125, a general partnership (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.    JURISDICTION

3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.    Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.    VENUE

6.    All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.    PARTIES

7.    Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.    Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.    FACTS

9.    The Facility is a public accommodation facility, open to the public, which is intended for nonresidential use and whose operation affects commerce.

10.    Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

*Moore v. Manjal, et al.*
Complaint

MLF0032859

EX. 65-16

encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or about July 27, 2013:

      a)    Plaintiff parked in a designated accessible parking space at the Facility. The parking space and adjacent access aisle were sloped, which made it difficult for Plaintiff to unload from his vehicle and transfer into his wheelchair, and caused his driver's side door to keep swinging closed on him while he tried to unload from his vehicle.

      b)    The ramp from the parking lot to the sidewalk was an improperly configured built-up curb ramp, which was steep and extended into the access aisle, making it difficult for Plaintiff to maneuver up and down the ramp. When Plaintiff was returning to his vehicle, he was unable to control the speed of his wheelchair down the steep ramp and was propelled down into the path of vehicular traffic, almost colliding with a passing truck.

      c)    The entrance door was heavy and Plaintiff had to struggle to hold the door open while he maneuvered through it.

      d)    Plaintiff wanted to buy a hot dog at the Facility, but the self-serve hot dog display was positioned too high for him to reach.

      e)    Some of the aisles within the Facility lacked necessary wheelchair clearances, preventing Plaintiff from maneuvering freely around inside the store. He became stuck in one aisle between tables and merchandise racks, and his grandson had to help him to get out. He was unable to reach the dining area and therefore decided not to buy food to eat there.

      f)    The transaction counter was obstructed by racks of merchandise, and it was difficult for Plaintiff to reach over to sign his receipt on the counter.

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once

*Moore v. Manjal, et al.*
Complaint

MLF0032860

EX. 65-17

1   such additional barriers are identified as it is Plaintiff's intention to have all barriers which

2   exist at the Facility and relate to his disabilities removed to afford him full and equal access.

3          12.     Plaintiff was, and continues to be, deterred from visiting the Facility because

4   Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

5   accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

6   Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

7   once the barriers are removed.

8          13.     Defendants knew, or should have known, that these elements and areas of the

9   Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

10   the physically disabled. Moreover, Defendants have the financial resources to remove these

11   barriers from the Facility (without much difficulty or expense), and make the Facility

12   accessible to the physically disabled. To date, however, Defendants refuse to either remove

13   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14          14.     At all relevant times, Defendants have possessed and enjoyed sufficient control

15   and authority to modify the Facility to remove impediments to wheelchair access and to

16   comply with the 2010 Standards for Accessible Design and the California Code of Regulations

17   Title 24. Defendants have not removed such impediments and have not modified the Facility to

18   conform to accessibility standards. Defendants have intentionally maintained the Facility in its

19   current condition and have intentionally refrained from altering the Facility so that it complies

20   with the accessibility standards.

21          15.     Plaintiff further alleges that the (continued) presence of barriers at the Facility is

22   so obvious as to establish Defendants' discriminatory intent. On information and belief,

23   Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

24   to relevant building standards; disregard for the building plans and permits issued for the

25   Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

26   the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

27   property continues to exist in its non-compliant state. Plaintiff further alleges, on information

28   and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

*Moore v. Manjal, et al.*
Complaint

MLF0032861

EX. 65-18

1    Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

2                                     **VI.    FIRST CLAIM**

3                          **Americans with Disabilities Act of 1990**

4                          Denial of "Full and Equal" Enjoyment and Use

5            16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

6    this claim.

7            17.    Title III of the ADA holds as a "general rule" that no individual shall be

8    discriminated against on the basis of disability in the full and equal enjoyment (or use) of

9    goods, services, facilities, privileges, and accommodations offered by any person who owns,

10   operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

11           18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

12   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

13   Facility during each visit and each incident of deterrence.

14                 Failure to Remove Architectural Barriers in an Existing Facility

15           19.    The ADA specifically prohibits failing to remove architectural barriers, which

16   are structural in nature, in existing facilities where such removal is readily achievable. 42

17   U.S.C. § 12182(b)(2)(A)(iv).

18           20.    When an entity can demonstrate that removal of a barrier is not readily

19   achievable, a failure to make goods, services, facilities, or accommodations available through

20   alternative methods is also specifically prohibited if these methods are readily achievable. Id.

21   § 12182(b)(2)(A)(v).

22           21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

23   barriers at the Facility without much difficulty or expense, and that Defendants violated the

24   ADA by failing to remove those barriers, when it was readily achievable to do so.

25           22.    In the alternative, if it was not "readily achievable" for Defendants to remove

26   the Facility's barriers, then Defendants violated the ADA by failing to make the required

27   services available through alternative methods, which are readily achievable.

28   //

*Moore v. Manjal, et al.*
Complaint

MLF0032862

EX. 65-19

Failure to Design and Construct an Accessible Facility

23.     Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.     The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.     Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

Failure to Make an Altered Facility Accessible

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

Failure to Modify Existing Policies and Procedures

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Manjal, et al.*
Complaint

Page 6

MLF0032863

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.     SECOND CLAIM

### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

*Moore v. Manjal, et al.*
Complaint

MLF0032864

EX. 65-21

1  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

2  § 52(a).

### VIII. THIRD CLAIM

#### Denial of Full and Equal Access to Public Facilities

5      41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

6  this claim.

7      42.    Health and Safety Code § 19955(a) states, in part, that: California public

8  accommodations or facilities (built with private funds) shall adhere to the provisions of

9  Government Code § 4450.

10      43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-

11  exempt) public accommodation constructed prior to July 1, 1970, which is altered or

12  structurally repaired, is required to comply with this chapter.

13      44.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or

14  repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

15  § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

16      45.    Defendants' non-compliance with these requirements at the Facility aggrieved

17  (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

18  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.    PRAYER FOR RELIEF

20      WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

21      1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

22      2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh

23          Act damages.

24      3.    Statutory minimum damages under section 52(a) of the California Civil Code

25          according to proof.

26      4.    Attorneys' fees, litigation expense, and costs of suit.[2]

27      5.    Interest at the legal rate from the date of the filing of this action.

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Manjal, et al.*
Complaint

MLF0032865

EX. 65-22

6.      For such other and further relief as the Court deems proper.

Dated: July 22, 2014                          MOORE LAW FIRM, P.C.


                                              /s/ Tanya E. Moore
                                              Tanya E. Moore
                                              Attorneys for Plaintiff
                                              Ronald Moore

*Moore v. Manjal, et al.*
Complaint

MLF0032866

EX. 65-23

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:  July 22, 2014 _____          /s/ Ronald Moore _____
                                       Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                       /s/ Tanya E. Moore _____
                                       Tanya E. Moore, Attorney for
                                       Plaintiff, Ronald Moore

*Moore v. Manjal, et al.*
*Verification*

MLF0032867

EX. 65-24

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 7/22/14

Ronald Moore

*Ronald Moore v. Avtar S. Manjal, et al. (Central Food Mart)*

MLF0032869

EX. 65-25

# Exhibit 66

```
          CHEVRON/J.Q. #109
          3018 W CLINTON AVE.
              FRESNO, CA.

     CHEVRON/J.Q. #109
     3018 W CLINTON AVE FRESNO      CA
     STN# 00205527


              Credit Card Receipt


     MOORE/RONALD

     xxxxxxxxxxxx4008        E/VISA
     NONTAX                      1.19
     NONTAX                      1.19
     TAXABLE                     3.49T

     Items:  3      Subtotal     5.87
     Sales Tax                   0.29
     Total                       6.16

     Credit Card(USD$)          $6.16

     Invoice#:   2741330
     Auth#:      028768


     *** Customer Copy ***

              Learn how to
              EARN REWARDS
              with a Chevron
              or Texaco
              Credit Card
              See application
              for details


     1019214e2s3734t2 07/30/13 14:54:36


              THANK YOU
              CALL AGAIN
```

MLF0049628

EX. 66-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _Johnny Quick_

2. When did you visit the Facility? _7/30/13_ (Date) _3 pm_ (Time)
   _30 18_

3. What is the address of the Facility? _~~W~~ Clinton_

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _few_ If more than one visit, please list the date and time if you know it. _?_

6. What was the purpose of your visit? _Drinks Smokes_

7. Who accompanied you to the Facility? _Wife And Grand son's Ronny Daniel_

8. What car did you drive to the Facility? _Mine_

9. Did you drive yourself of did you get a ride from someone else? _I drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In D/P space_

11. Was it difficult for you to park there? _Yes    No Sign_

12. Why? _____

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _Grandson Ronny_

16. What problems did you encounter transferring onto your wheelchair?



17. Which way did you go from the parking to the entrance of the Facility? _____

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
    _Ramp gos into street steep Also gos into Access Issue And had propane storage in front of ramp @ top on walkway no Room_

19. Did you encounter any problems opening the door? Describe why. _yes_

20. Did you have any problems inside the Facility? Describe. _yes some Issle to small_

MLF0049568

EX. 66-3

On

21. What did you purchase (or what meal did you have there). Describe: _____

22. Have you used the restroom at the Facility? _Yes_

23. Why did you need to use the restroom? _To go_

24. Did you use the sink? _Yes_    _No mirro_    _Hand_    _Door did not close_

25. Any problems? _Sink not warpul    Rails to High_

26. Did you use the urinal? _No_

27. Did you use the toilet? _Yes_

28. Did you use the toilet paper? _Yes_

29. Did you use paper towels? _Yes_

30. Did you use the soap dispenser? _Yes_

31. Did you have any problem maneuvering inside the restroom? _No_

32. Where did you sit? _Could not sitten Area Issle to Small_

33. Was there any seating provided inside the Facility? _Yes_

34. Was it wheelchair accessible? _No_

35. Where you comfortable at the table? _x_

36. Did you use the counter to pay for purchase? _Yes_

37. Which counter did you use? _one next to Door_

38. Was the counter accessible? _No to Far Away All kinds of Stuffen Front My Grandson had to sign credit card Recipts could not Reach._

39. Which way did you go after you left the Facility? _out to the left Down Ramp cracked_

40. Any problems getting back to your vehicle? _pavment And Ramp Step_

41. Any problems transferring from your wheelchair to your vehicle? _No_

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0049569

**BARRIER MEMO**

**ADAI No. :**    01718

**Case Name:**    Moore v. Johnny Quik #109

**Address:**    3018 W. Clinton Ave, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No signage at designated accessible parking | Plaintiff had difficulty locating a designated accessible parking space at the Facility because the space provided lacked proper signage. | Maybe, but not too difficult. Do not include. |
| Built-up curb ramp | The ramp from the parking lot to the sidewalk was an improperly configured built-up curb ramp, which was steep and extended into the access aisle. Plaintiff had difficulty maneuvering up and down the ramp and feared that he would roll off the sloped edges of the ramp. | Yes, steep, correct |
| Ramp top landing obstructed | The top landing of the ramp was obstructed by propane storage, which was difficult for Plaintiff to maneuver around. | Yes |
| Problems opening door | | Not verified, but handle was round |
| Some aisles narrow | Some of the aisles inside the Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver around the store. | Yes |
| No route to dining area | Plaintiff wanted to drink his beverage at the Facility but was unable to access the dining area because the aisle lacked necessary wheelchair clearances. | Yes |
| Lavatory plumbing not wrapped | The plumbing below the lavatory in the restroom was not insulated and Plaintiff feared that he would burn his legs on the pipes. | Yes |
| Stall door not self-closing | The stall door in the restroom was not self-closing and it was difficult for Plaintiff to turn around to close the door behind him. | No |
| Grab bars too high | The grab bars at the toilet in the restroom were too high, making it difficult for Plaintiff to transfer to and from the toilet. | Yes, and only one bar |

1

MLF0049570

EX. 66-5

| Counter obstructed | The transaction counter was obstructed by items displayed in front of the counter, preventing Plaintiff from reaching it to sign his credit card receipt. Plaintiff had to ask his grandson to sign the receipt for him. | Yes |
| --- | --- | --- |

MLF0049571

EX. 66-6



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 2, 2014

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:   ADAI No.    01718
**Mann (Johnny Quik #109)**
*3018 W. Clinton Ave, Fresno CA*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure:  Fee Agreement

MLF0049610

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
332 N. Second Street
San Jose, CA 95112
(408) 298-2000


I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Mann (Johnny Quik #109).**


DATE: _____

_____
CLIENT'S SIGNATURE- RONALD MOORE

_____
ADDRESS

_____
CITY

_____
TELEPHONE


DATE: _____

MOORE LAW FIRM, PC
ATTORNEY FOR RONALD MOORE


MLF0049611

EX. 66-8

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
332 N. Second Street
San Jose, CA 95112
(408) 298-2000

THIS AGREEMENT, made this _____ at **San Jose, CA**, by and between <u>Ronald Moore</u>, hereinafter designated as "Client," and **the Moore Law Firm, PC**, hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case against ***Mann (Johnny Quik #109)*** and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1.  ATTORNEY TAKES ALL STEPS NECESSARY:  Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2.  COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment.  If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## FEE ARRANGEMENTS

PARAGRAPH 3(a).  CONTINGENCY FEE ARRANGEMENTS:  If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.)  In any event, any fee that requires court approval will be the fee that controls this agreement.

MLF0049612

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0049613

EX. 66-10

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

## FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e).  FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)      Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)     Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)    In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)    In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages.  This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0049614

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u>.

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0049615

EX. 66-12

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0049616

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial                    _____Initial

MLF0049617

DATE:_____

CLIENT'S SIGNATURE _____

DATE:_____

CLIENT'S NAME _____

ADDRESS _____

CITY _____

TELEPHONE _____

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____

MOORE LAW FIRM, PC

ATTORNEY FOR RONALD MOORE

MLF0049618

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>DARSHAN SINGH MANN dba JOHNNY QUIK #109; LACHMAN DHILLON; GURJEET KAUR;<br><br>　　　　Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.　　This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

　　　　Johnny Quik #109
　　　　3018 West Clinton Avenue
　　　　Fresno, CA 93722
　　　　(hereafter "the Facility")

2.　　Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against DARSHAN SINGH MANN dba JOHNNY QUIK #109; LACHMAN DHILLON; and GURJEET KAUR (hereinafter collectively referred to as "Defendants"),

MLF0049619

EX. 66-16

1  pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA")

2  and related California statutes.

## II.   JURISDICTION

4    3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

5  claims.

6    4.   Supplemental jurisdiction for claims brought under parallel California law –

7  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

8    5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

10    6.   All actions complained of herein take place within the jurisdiction of the United

11  States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

12  § 1391(b), (c).

## IV.   PARTIES

14    7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or

15  persons), firm, and/or corporation.

16    8.   Plaintiff requires the use of a wheelchair when traveling about in public.

17  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

18  United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

20    9.   The Facility is a public accommodation facility, open to the public, which is

21  intended for nonresidential use and whose operation affects commerce.

22    10.   Plaintiff visited the Facility and encountered barriers (both physical and

23  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

24  goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

25  encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

26  about July 30, 2013:

27         a)   The ramp adjacent to the designated accessible parking space was an

28            improperly configured built-up curb ramp, which was steep and

*Moore v. Mann, et al.*
Complaint

Page 2

MLF0049620

EX. 66-17

extended into the access aisle. Plaintiff had difficulty maneuvering up and down the ramp and feared that his wheelchair would roll off the sloped sides.

b) The top landing of the ramp was obstructed by a propane storage box, which was difficult for Plaintiff to maneuver around.

c) Some of the aisles inside the Facility lacked necessary wheelchair clearances, preventing Plaintiff from maneuvering freely around the store.

d) Plaintiff wanted to sit at one of the provided tables to drink his beverage, but was unable to access the dining area because the aisle lacked necessary wheelchair clearances.

e) The plumbing below the lavatory in the men's restroom was not insulated, and Plaintiff was afraid that he would burn his legs on the pipes.

f) The toilet in the men's restroom did not have proper grab bars, making it difficult for Plaintiff to transfer to and from the toilet.

g) The transaction counter was obstructed by items displayed in front of the counter, preventing Plaintiff from reaching it to sign his credit card receipt. Plaintiff had to ask his grandson to sign the receipt for him.

11. The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12. Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

MLF0049621

EX. 66-18

1 once the barriers are removed.

2   13. Defendants knew, or should have known, that these elements and areas of the
3 Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to
4 the physically disabled. Moreover, Defendants have the financial resources to remove these
5 barriers from the Facility (without much difficulty or expense), and make the Facility
6 accessible to the physically disabled. To date, however, Defendants refuse to either remove
7 those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

8   14. At all relevant times, Defendants have possessed and enjoyed sufficient control
9 and authority to modify the Facility to remove impediments to wheelchair access and to
10 comply with the 2010 Standards for Accessible Design and the California Code of Regulations
11 Title 24. Defendants have not removed such impediments and have not modified the Facility to
12 conform to accessibility standards. Defendants have intentionally maintained the Facility in its
13 current condition and have intentionally refrained from altering the Facility so that it complies
14 with the accessibility standards.

15   15. Plaintiff further alleges that the (continued) presence of barriers at the Facility is
16 so obvious as to establish Defendants' discriminatory intent. On information and belief,
17 Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere
18 to relevant building standards; disregard for the building plans and permits issued for the
19 Facility; conscientious decision to maintain the architectural layout (as it currently exists) at
20 the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'
21 property continues to exist in its non-compliant state. Plaintiff further alleges, on information
22 and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the
23 Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

24        **VI. FIRST CLAIM**

25      **Americans with Disabilities Act of 1990**

26      <u>Denial of "Full and Equal" Enjoyment and Use</u>

27   16. Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for
28 this claim.

*Moore v. Mann, et al.*
Complaint

MLF0049622

EX. 66-19

17.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

#### Failure to Remove Architectural Barriers in an Existing Facility

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

#### Failure to Design and Construct an Accessible Facility

23.    Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.    The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

*Moore v. Mann, et al.*
Complaint

EX. 66-20

MLF0049623

25.     Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Mann, et al.*
Complaint

MLF0049624

EX. 66-21

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.   SECOND CLAIM

### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct; and seeks statutory minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

*Moore v. Mann, et al.*
Complaint

MLF0049625

EX. 66-22

42.     Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.      Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.      Attorneys' fees, litigation expense, and costs of suit.[2]

5.      Interest at the legal rate from the date of the filing of this action.

6.      For such other and further relief as the Court deems proper.

Dated: June 12, 2014                    MOORE LAW FIRM, P.C.


                                        /s/ Tanya E. Moore
                                        Tanya E. Moore
                                        Attorneys for Plaintiff
                                        Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Mann, et al.*
Complaint
                                Page 8

MLF0049626

EX. 66-23

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:   June 12, 2014                           */s/ Ronald Moore*
                                                  Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                                  */s/ Tanya E. Moore*
                                                  Tanya E. Moore, Attorney for
                                                  Plaintiff, Ronald Moore

*Ronald Moore v. Mann (Johnny Quick #109)*

MLF0049627

EX. 66-24

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 6/12/14                          _Ronald Moore_
                                        Ronald Moore

*Ronald Moore v. Mann (Johnny Quick #109)*

MLF0049629

# Exhibit 67



ARCO am/pm B3176
6725 N Golden State Blvd
Fresno
CA 93725
Tel : 5592762100
Site Number  11909155

| Qty Name | Price | Total |
|---|---|---|
| 1 HOT DOG BEEF REGULAR | 0.99 | 0.99 T |
| 1 COFFEE 12OZ | 1.39 | 1.39 T |
| 1 FOUNTAIN DRINK 32OZ | 1.19 | 1.19 T |
| SubTotal | | 3.57 |
| SALES TAX    @ 8.22% on  3.57 | | 0.29 |
| Total | | 3.86 |

Cash                        $    5.00
Change due customer             -1.14

Receipt 2447262         ORIGINAL
2 FABIOLA G             04/06/2014 18:38
        Thank you for choosing AMPM

MLF0036081

EX. 67-2

```
ARCO am/pm 6311C
6725 N Golden State Blvd
Fresno
CA 93725
Tel : 5592762100
Site Number  11909155

Qty Name              Price    Total
 1 PrePay Fuel                 100.00
Pump: 7    0.000 Gallon  $0.000/Gallon
SubTotal                      100.00
Total                         100.00

Cash                      $    100.00

Receipt 2007745           ORIGINAL
2 CARMEN              07/16/2013 13:37
*PREPAY*
          Thank you for choosing AMPM
```

MLF0036082

EX. 67-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? Arco AM/PM

2. When did you visit the Facility? 4/6/14 (Date) 6:40 (Time)

3. What is the address of the Facility? 6725 N. Golden State Blvd. Fresno

4. Was this your first visit to the Facility? NO

5. How many times have you visited the Facility? ? If more than one visit, please list the date and time if you know it. ?

6. What was the purpose of your visit? To get drinks and a snack

7. Who accompanied you to the Facility? My Grandson Ronny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself of did you get a ride from someone else? I Drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. To the left of door in dp parking

11. Was it difficult for you to park there? No

12. Why?

13. How did you unload from your vehicle? from rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? Grandson Ronny

16. What problems did you encounter transferring onto your wheelchair?

None

17. Which way did you go from the parking to the entrance of the Facility? Up ramp to door

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
Yes ramp has ditch at beggining they filled with cement

19. Did you encounter any problems opening the door? Describe why. Door was heavy

20. Did you have any problems inside the Facility? Describe. Yes fountain drinks,

MLF0036083

EX. 67-4

Cups, hot foods, condiments, sauces, coffee, and coffee, flavorings out of reach

**21. What did you purchase (or what meal did you have there). Describe:** a fountain drink cup of coffee, and a hot dog

**22. Have you used the restroom at the Facility?** Yes door was heavy

**23. Why did you need to use the restroom?** had to go

**24. Did you use the sink?** Yes

**25. Any problems?** hard to reach soap

**26. Did you use the urinal?** ~~●●●●~~ NO

**27. Did you use the toilet?** Yes stall door didn't shut all the way

**28. Did you use the toilet paper?** Yes

**29. Did you use paper towels?** Yes

**30. Did you use the soap dispenser?** divider by sink made it hard to get to soap

**31. Did you have any problem maneuvering inside the restroom?** Yes couldn't get to sink and soap because of divider

**32. Where did you sit?** out side in seating area

**33. Was there any seating provided inside the Facility?** NO

**34. Was it wheelchair accessible?** NO

**35. Where you comfortable at the table?** NO

**36. Did you use the counter to pay for purchase?** Yes

**37. Which counter did you use?** Only one

**38. Was the counter accessible?** NO, Chips and candy bars in front of counter couldn't reach grandson made transaction

**39. Which way did you go after you left the Facility?** to seating area to eat hot dog and drink coffee

**40. Any problems getting back to your vehicle?** Ramp cracked and broken

**41. Any problems transferring from your wheelchair to your vehicle?** NO because grandson helped me

**42. If you have any additional information you believe would assist us in evaluating this inquiry.**

MLF0036084

ADAI No. :    **01888**

Case Name:    **Moore v. Arco am/pm #83176**

Address:    **6725 N Golden State Blvd, Fresno**

| Barrier | Description | Is it a valid barrier?<br>Y / N |
|---------|-------------|--------------------------------|
| Ramp cracked, broken, uneven at bottom landing | The ramp from the parking lot to the sidewalk leading to the entrance was cracked and broken and the bottom landing was uneven, with a ditch that had been filled with cement. It was difficult for Plaintiff to maneuver over this uneven surface. | Yes |
| Door heavy | The entrance door was heavy, making it difficult for Plaintiff to open the door. | Yes |
| Fountain drinks, cups, hot foods, condiments, sauces, coffee, and coffee flavorings out of reach | Plaintiff wanted to purchase food at the Facility, but found that he could not reach many of the items. The fountain drinks, cups, hot foods, condiments, sauces, coffee, and coffee flavorings were all positioned out of his reach. He was forced to ask his grandson for assistance to get the drink and food he wanted. | Yes |
| Restroom door heavy | The door to the restroom was heavy and difficult for Plaintiff to open. | Yes |
| Sink and soap obstructed/hard to reach | The lavatory in the restroom was obstructed by a partition and it was difficult for Plaintiff to reach the lavatory and the soap dispenser. | Yes |
| Stall too small | The stall in the restroom lacked necessary clearance for Plaintiff's wheelchair to be fully within the stall, and he was not able to close the stall door all the way. | Yes |
| No accessible table | Plaintiff was unable to find an accessible table at the Facility's outdoor seating area and was forced to sit at a table that was improperly configured, which was uncomfortable. | Yes |
| Counter obstructed | The transaction counter was obstructed by chips and candy bars displayed in front of it, and Plaintiff was unable to maneuver to the counter to pay. He was forced to have his grandson go to the counter to pay. | Yes |

MLF0036085

EX. 67-6

2

MLF0036086

EX. 67-7

1   Tanya E. Moore, SBN 206683
    MOORE LAW FIRM, P.C.
2   332 North Second Street
    San Jose, California 95112
3   Telephone (408) 298-2000
    Facsimile (408) 298-6046
4   E-mail: tanya@moorelawfirm.com

5   Attorneys for Plaintiff
    Ronald Moore

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11  RONALD MOORE,                           )  No.
                                            )
12              Plaintiff,                   )  **COMPLAINT ASSERTING DENIAL OF**
                                            )  **RIGHT OF ACCESS UNDER**
13       vs.                                 )  **AMERICANS WITH DISABILITIES ACT**
                                            )  **FOR INJUNCTIVE RELIEF,**
14  MILLENNIUM ACQUISITIONS, LLC;           )  **DECLARATORY RELIEF, DAMAGES,**
    TIMELESS INVESTMENTS, INC., dba         )  **ATTORNEYS' FEES AND COSTS (ADA)**
15  ARCO AM/PM #83176;                      )
                                            )
16              Defendants.                  )
                                            )
17                                           )
                                            )
18                                           )
                                            )
19                                           )
                                            )
20                                           )
                                            )
21  _____     )

22                          **I. SUMMARY**

23       1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

24  discrimination at the building, structure, facility, complex, property, land, development, and/or

25  surrounding business complex known as:

26              Arco am/pm #83176
                6725 North Golden State Boulevard
27              Fresno, CA 93722
                (hereafter "the Facility")
28

*Moore v. Millennium Acquisitions, LLC, et al.*
Complaint
                            Page 1

MLF0036096

EX. 67-8

2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against MILLENNIUM ACQUISITIONS, LLC; and TIMELESS INVESTMENTS, INC., dba ARCO AM/PM #83176 (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.    JURISDICTION

3.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.     Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.     Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.    VENUE

6.     All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.    PARTIES

7.     Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.     Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.    FACTS

9.     The Facility is a public accommodation facility, open to the public, which is intended for nonresidential use and whose operation affects commerce.

10.     Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

*Moore v. Millennium Acquisitions, LLC, et al.*
Complaint

Page 2

MLF0036097

EX. 67-9

1  about April 6, 2014:

2      a)   The bottom portion of the ramp from the parking lot to the sidewalk
3               leading to the entrance of the Facility was cracked and uneven, with a
4               ditch that had been filled with cement. It was difficult for Plaintiff to
5               maneuver over this uneven surface.

6      b)   The building entrance door was heavy, making it difficult for Plaintiff to
7               open the door to the Facility.

8      c)   Plaintiff wanted to purchase food at the Facility, but found that he could
9               not reach many of the food items, condiments, and beverages because
10              they were positioned out of his reach. He was forced to ask his grandson
11              for assistance to get the drink and food he wanted.

12     d)   The door to the men's restroom in the Facility was heavy and difficult
13              for Plaintiff to open.

14     e)   Plaintiff's approach to the lavatory in the men's restroom was obstructed
15              by a partition, which made it difficult for Plaintiff to reach the faucet and
16              the soap dispenser.

17     f)   The stall in the men's restroom lacked sufficient clearance for Plaintiff's
18              wheelchair to fully enter the stall, and he was therefore not able to close
19              the stall door all the way.

20     g)   Plaintiff was unable to find an accessible table at the Facility's outdoor
21              seating area and was forced to sit at a table that was improperly
22              configured, which was uncomfortable.

23     h)   The transaction counter was obstructed by chips and candy bars
24              displayed in front of it, and Plaintiff was unable to maneuver to the
25              counter to pay. He was forced to have his grandson go to the counter and
26              pay for him.

27     11.   The barriers identified in paragraph 10 herein are only those that Plaintiff

28 personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist

MLF0036098

EX. 67-10

1  at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once

2  such additional barriers are identified as it is Plaintiff's intention to have all barriers which

3  exist at the Facility and relate to his disabilities removed to afford him full and equal access.

4      12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

5  Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

6  accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

7  Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

8  once the barriers are removed.

9      13.    Defendants knew, or should have known, that these elements and areas of the

10  Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

11  the physically disabled. Moreover, Defendants have the financial resources to remove these

12  barriers from the Facility (without much difficulty or expense), and make the Facility

13  accessible to the physically disabled. To date, however, Defendants refuse to either remove

14  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

15      14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

16  and authority to modify the Facility to remove impediments to wheelchair access and to

17  comply with the 2010 Standards for Accessible Design and the California Code of Regulations

18  Title 24. Defendants have not removed such impediments and have not modified the Facility to

19  conform to accessibility standards. Defendants have intentionally maintained the Facility in its

20  current condition and have intentionally refrained from altering the Facility so that it complies

21  with the accessibility standards.

22      15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

23  so obvious as to establish Defendants' discriminatory intent. On information and belief,

24  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

25  to relevant building standards; disregard for the building plans and permits issued for the

26  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

27  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

28  property continues to exist in its non-compliant state. Plaintiff further alleges, on information

MLF0036099

EX. 67-11

1  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

2  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

### VI.   FIRST CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

6      16.  Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

7  this claim.

8      17.  Title III of the ADA holds as a "general rule" that no individual shall be

9  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

10  goods, services, facilities, privileges, and accommodations offered by any person who owns,

11  operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

12      18.  Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

13  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

14  Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

16      19.  The ADA specifically prohibits failing to remove architectural barriers, which

17  are structural in nature, in existing facilities where such removal is readily achievable. 42

18  U.S.C. § 12182(b)(2)(A)(iv).

19      20.  When an entity can demonstrate that removal of a barrier is not readily

20  achievable, a failure to make goods, services, facilities, or accommodations available through

21  alternative methods is also specifically prohibited if these methods are readily achievable. Id.

22  § 12182(b)(2)(A)(v).

23      21.  Here, Plaintiff alleges that Defendants can easily remove the architectural

24  barriers at the Facility without much difficulty or expense, and that Defendants violated the

25  ADA by failing to remove those barriers, when it was readily achievable to do so.

26      22.  In the alternative, if it was not "readily achievable" for Defendants to remove

27  the Facility's barriers, then Defendants violated the ADA by failing to make the required

28  services available through alternative methods, which are readily achievable.

MLF0036100

EX. 67-12

#### Failure to Design and Construct an Accessible Facility

23.     Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.     The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.     Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

#### Failure to Make an Altered Facility Accessible

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

#### Failure to Modify Existing Policies and Procedures

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Millennium Acquisitions, LLC, et al.*
Complaint

MLF0036101

EX. 67-13

30.    Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.    SECOND CLAIM

### Unruh Act

33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.    California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.    California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.    California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.    Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.    These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

MLF0036102

EX. 67-14

1  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

2  § 52(a).

### VIII. THIRD CLAIM

#### Denial of Full and Equal Access to Public Facilities

5      41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

6  this claim.

7      42.    Health and Safety Code § 19955(a) states, in part, that: California public

8  accommodations or facilities (built with private funds) shall adhere to the provisions of

9  Government Code § 4450.

10     43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-

11 exempt) public accommodation constructed prior to July 1, 1970, which is altered or

12 structurally repaired, is required to comply with this chapter.

13     44.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or

14 repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

15 § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

16     45.    Defendants' non-compliance with these requirements at the Facility aggrieved

17 (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

18 Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.    PRAYER FOR RELIEF

20     WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

21     1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

22     2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh

23           Act damages.

24     3.    Statutory minimum damages under section 52(a) of the California Civil Code

25           according to proof.

26     4.    Attorneys' fees, litigation expense, and costs of suit.[2]

27     5.    Interest at the legal rate from the date of the filing of this action.

28  ———————————————

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Millennium Acquisitions, LLC, et al.*
Complaint

MLF0036103

EX. 67-15

6.     For such other and further relief as the Court deems proper.

Dated: August 26, 2014                               MOORE LAW FIRM, P.C.


                                                     /s/ Tanya E. Moore
                                                     Tanya E. Moore
                                                     Attorneys for Plaintiff
                                                     Ronald Moore

MLF0036104

EX. 67-16

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: August 26, 2014        */s/ Ronald Moore*
                                    Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                 */s/ Tanya E. Moore*
                                 Tanya E. Moore, Attorney for
                                 Plaintiff, Ronald Moore

MLF0036105

EX. 67-17

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing First Amended Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 3/24/15                              *Ronald Moore*
                                            Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

/s/ Tanya E. Moore
Tanya E. Moore, Attorney for
Plaintiff, Ronald Moore

*Moore v. Millennium Acquisitions, LLC, et al.*
*Verification*

MLF0036118

EX. 67-18

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: _8/26/14_                    _Ronald Moore_
                                    Ronald Moore

*Ronald Moore v. Millennium Acquisitions, LLC, et al (Arco AM/PM #83176)*

MLF0036119

**Exhibit 68**



Bad parking
Ramp comes out
into street
whole center is
Bad

MLF0051658

EX. 68-2



**LA PRINCESA**
**MARKET**

1010 N.Alta ave
Dinuba, Ca 93618
Ph (559) 591-1061

Purchase    $    7.26

Master Card    #SXXXXXXXXXXXX4370
Auth # R4645Z
Lane # 03        Cashier # 94
03/22/13 18:07   Ref/Seq # 033535
Mrch=149388 Term=001 IC=CC
EPS Sequence     # 033536


GROCERY TAXABLE
   GROCERY TAXABLE                 6.69 T

8.75% Tax
TAX              6.69           0.57

   BALANCE DUE                    7.26
   Master Card                    7.26
      Auth Code = R4645Z

   CHANGE                         0.00

   Total number of items sold = 1

------------------------------------------

CASHIER NAME: SUZY
   STORE:00001 REGISTER:003 CASHIER:0094
   TICKET#:9253   22MAR2013  18:07:54

Free  Soda with Every $50.00 purchase

Free Ride Home with $100.00 purchase
      (City of Dinuba only)
Thank you for shopping at La Princesa!

MLF0051659

EX. 68-3

Purchase $ 5.66

Master Card      #SXXXXXXXXXXX4370
Auth # R23692
Lane # 04      Cashier # 87
03/22/13 18:02 Ref/Seq # 046272
Mrch=149388 Term=001 IC-CC
EPS Sequence    # 046272

BEER CRV
  CRV BEER SINGLE           0.05 T

GROCERY
  LA COSTENA JALAPENO        0.99  F
  LA PIEDAD TORTILLA F       2.99  F

GROCERY TAXABLE
  ROCKSTAR E D               1.50 T

8.75% Tax           1.55
TAX                               0.13

BALANCE DUE                  5.66
Master Card                  5.66
  Auth Code = R23692

CHANGE                       0.00

Total number of items sold = 4

---



LA PRINCESA
MARKET

1010 N.Alta ave
Dinuba, Ca 93618
Ph (559) 591-1061

Purchase $ 9.00

Master Card      #SXXXXXXXXXXX4370
Auth # R29292
Lane # 04      Cashier # 87
03/22/13 18:04 Ref/Seq # 046273
Mrch=149388 Term=001 IC-CC
EPS Sequence    # 046273

GROCERY
  2 @    4.50               9.00

BALANCE DUE                  9.00
Master Card                  9.00
  Auth Code = R29292

CHANGE                       0.00

Total number of items sold = 2

---

CASHIER NAME: Amarisela
 STORE:00001 REGISTER:004 CASHIER:0087
 TICKET#:0038      22MAR2013  18:03:00

 Free Soda with Every $50.00 purchase

 Free Ride Home with $100.00 purchase
         (City of Dinuba only)
 Thank you for shopping at La Princesa!

CASHIER NAME: Amarisela
 STORE:00001 REGISTER:004 CASHIER:0087
 TICKET#:0039      22MAR2013  18:04:43

 Free Soda with Every $50.00 purchase

 Free Ride Home with $100.00 purchase
         (City of Dinuba only)
 Thank you for shopping at La Princesa!

EX. 68-4

MLF0051660

Bad parking
Ramp comes out
into street
Whole center is
Bad

Mycom.    Valley Yellow Pages.

MLF0051661

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _LA Princesa Market_

2. When did you visit the Facility? _3/22/13_ (Date) _7:10 pm_ (Time)

3. What is the address of the Facility? _1010 N Alta Ave Dinuba Cry 3618_

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _A few_ If more than one visit, please list the date and time if you
   know it. _?_

6. What was the purpose of your visit? _Food + Smokes / tortilla + Salapeños_

7. Who accompanied you to the Facility? _By myself_

8. What car did you drive to the Facility? _Mine_

9. Did you drive yourself of did you get a ride from someone else? _I drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your
    vehicle. _In H/A parking spot on Right Side of Store_

11. Was it difficult for you to park there? _No Sign_

12. Why? _No Signs Need to be painted Better_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _No_

16. What problems did you encounter transferring onto your wheelchair?
    _Kind of in Road way_

17. Which way did you go from the parking to the entrance of the Facility? _to the Right_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. _At Top
    Ramp goes into street Also Acers Issle Also
    all of this Ramp does not go to side walk And can fall off_

19. Did you encounter any problems opening the door? Describe why. _Ramp was very Steep_

20. Did you have any problems inside the Facility? Describe. _At Counter to get smokes_

**MLF0051656**

EX. 68-6

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

*and pepto Bismol couter was very high and could not see what to get*

21. What did you purchase (or what meal did you have there). Describe: *Tortills Jalapinos pepto and Smokies Rock star*

22. Have you used the restroom at the Facility? *no*

23. Why did you need to use the restroom? _____

24. Did you use the sink? _____

25. Any problems? _____

26. Did you use the urinal? _____

27. Did you use the toilet? _____

28. Did you use the toilet paper? _____

29. Did you use paper towels? _____

30. Did you use the soap dispenser? _____

31. Did you have any problem maneuvering inside the restroom? _____

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _____

34. Was it wheelchair accessible? _____

35. Where you comfortable at the table? _____

36. Did you use the counter to pay for purchase? _____

37. Which counter did you use? *Checkout counter for Food And Re: Tail counter for pepto*

38. Was the counter accessible? *No why Hgl*

39. Which way did you go after you left the Facility? *Straint out Door's*

40. Any problems getting back to your vehicle? *West Real Fast Door Ramp and Burns Hands So I did not go into cars going By*

41. Any problems transferring from your wheelchair to your vehicle? *No*

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0051657

EX. 68-7



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

December 14, 2012

**K. RANDOLPH MOORE**
ESQUIRE
AND FOUNDER

*Tanya E. Moore*
*Attorney at Law*

*Marejka Sacks*
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE: **ADAI No. 1525**
*La Princesa Market* (Facility) 1010 N. Alta Ave, Dinuba CA 93618

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt of purchase you provided.

In order for us to evaluate the inquiry and determine if you have a cause of action under the ADA and applicable California statutes we must first obtain information from you regarding the barriers you encountered at the time of your visit to the Facility. Please complete the questionnaire provided with this letter. Please provide specific details. This information will assist us in documenting the existence of the barriers at the Facility.

Your complete and prompt response to this questionnaire is crucial. Please be advised that we will not be able to proceed with this case until we receive the completely filled out questionnaire.

Kindest regards,

*Dictated but not read,*
*Sent in my absence to avoid delay*

Tanya Moore
Attorney at Law

TM/mb

Enclosure:    Public Accommodation Visit Questionnaire

MLF0046293

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
**ADAI No. 1525**
*La Princesa Market (Facility) 1010 N. Alta Ave, Dinuba CA 93618*

_____

_____

21. What did you purchase (or what meal did you have there). Describe: _____

_____

22. Have you used the restroom at the Facility?_____

23. Why did you need to use the restroom? _____

24. Did you use the sink? _____

25. Any problems? _____

26. Did you use the urinal? _____

27. Did you use the toilet? _____

28. Did you use the toilet paper?_____

29. Did you use paper towels?_____

30. Did you use the soap dispenser?_____

31. Did you have any problem maneuvering inside the restroom? _____

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _____

34. Was it wheelchair accessible? _____

35. Where you comfortable at the table?_____

36. Did you use the counter to pay for purchase? _____

37. Which counter did you use? _____

38. Was the counter accessible? _____

39. Which way did you go after you left the Facility? _____

40. Any problems getting back to your vehicle? _____

41. Any problems transferring from your wheelchair to your vehicle? _____

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0053191

EX. 68-9

# PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

## ADAI No. 1525
### La Princesa Market (Facility) 1010 N. Alta Ave, Dinuba CA 93618

1. What is the name of the Facility? _____

2. When did you visit the Facility? _____(Date) _____(Time)

3. What is the address of the Facility?_____

4. Was this your first visit to the Facility? _____

5. How many times have you visited the Facility? _____ If more than one visit, please list the date and time if you

    know it. _____

6. What was the purpose of your visit? _____

7. Who accompanied you to the Facility? _____

8. What car did you drive to the Facility?_____

9. Did you drive yourself of did you get a ride from someone else? _____

10. Where did you park when you arrived at the Facility?  Describe a specific location where you parked your

    vehicle. _____

11. Was it difficult for you to park there? _____

12. Why? _____

13. How did you unload from your vehicle? _____

14. What side of the vehicle did you unload from? Driver or passenger? _____

15. Did anyone help you to transfer onto your wheelchair? _____

16. What problems did you encounter transferring onto your wheelchair?

    _____

17. Which way did you go from the parking to the entrance of the Facility? _____

18. Did you encounter any problems on your way to the entrance, for example a ramp?  Describe.

    _____

19. Did you encounter any problems opening the door? Describe why. _____

20. Did you have any problems inside the Facility? Describe. _____

MLF0053190

EX. 68-10

**BARRIER MEMO**

**ADAI No. :**    **01525**

**Case Name:**    **Moore v. La Princesa Market**

**Address:**    **1010 N. Alta Ave, Dinuba, CA**

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Difficulty locating accessible designated parking space | Upon arriving at the Facility, Plaintiff had difficulty locating a parking space designated as accessible due to the lack of signage and poorly marked spaces. | |
| Difficulty transferring to wheelchair | The designated accessible parking space in front of the Facility was extremely short, such that when Plaintiff transferred to and from his wheelchair at the rear of his vehicle he was positioned in the path of traffic within the parking lot. | |
| Ramp extends into the parking lot | The ramp from the parking lot to the sidewalk in front of the Facility extends down into the access aisle; is steep, lacks protected edges, and is poorly maintained with cracks and crevices, making it difficult for Plaintiff to maneuver his wheelchair up and down the ramp. When Plaintiff traveled down the ramp towards his vehicle he could not control the speed of his wheelchair down the ramp, causing discomfort to his hands, and narrowly avoiding being struck by a vehicle passing at the end of the ramp. | |
| Service counter and display cases too high | The service counter and display cases within the Facility were too high for Plaintiff to be able to see the items on display and to reach the register counter.  Plaintiff required the assistance of an employee with the purchase at the cigarette display. Plaintiff was not able to access the service counter. The employee reached over and handed Plaintiff the receipt without a signature required. | |

1

MLF0050986

EX. 68-11

**BARRIER MEMO**

ADAI No. :      01525

Case Name:    Moore v. La Princesa Market

Address:        1010 N. Alta Ave, Dinuba, CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Difficulty locating accessible designated parking space | Upon arriving at the Facility, Plaintiff had difficulty locating a parking space designated as accessible due to the lack of signage and poorly marked spaces. | yes |
| Defective configuration of the accessible parking space caused plaintiff difficulty in transferring to wheelchair | The designated accessible parking space in front of the Facility was extremely short, such that when Plaintiff transferred to and from his wheelchair at the rear of his vehicle he was positioned in the path of traffic within the parking lot. | yes |
| Ramp extends into the parking lot | The ramp from the parking lot to the sidewalk in front of the Facility extends down into the access aisle; is steep, lacks protected edges, and is poorly maintained with cracks and crevices, making it difficult for Plaintiff to maneuver his wheelchair up and down the ramp. When Plaintiff traveled down the ramp towards his vehicle he could not control the speed of his wheelchair down the ramp, causing discomfort to his hands, and narrowly avoiding being struck by a vehicle passing at the end of the ramp. | yes |
| Service counter and display cases too high | The service counter and display cases within the Facility were too high for Plaintiff to be able to see the items on display and to reach the register counter.  Plaintiff required the assistance of an employee with the purchase at the cigarette display. Plaintiff was not able to access the service counter. The employee reached over and handed Plaintiff the receipt without a signature required. | Yes |

1

MLF0050985

EX. 68-12

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail:  tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | No. |
| Plaintiff, | **COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |
| vs. | |
| LA PRINCESA MARKET #15 DINUBA, INC., dba LA PRINCESA MARKET; RAOUL J. FREEMAN, Trustee of the RAOUL and ELLEN FREEMAN FAMILY TRUST dated Nov. 3, 1983; ELLEN A. FREEMAN, Trustee of the RAOUL and ELLEN FREEMAN FAMILY TRUST dated Nov. 3, 1983, | |
| Defendants. | |

### I. SUMMARY

1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

La Princesa Market
1010 N. Alta Avenue
Dinuba, CA 93618
(hereafter "the Facility")

2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

MLF0051002

EX. 68-13

1  costs, against LA PRINCESA MARKET #15 DINUBA, INC., dba LA PRINCESA

2  MARKET; RAOUL J. FREEMAN, Trustee of the RAOUL and ELLEN FREEMAN

3  FAMILY TRUST dated Nov. 3, 1983; ELLEN A. FREEMAN, Trustee of the RAOUL and

4  ELLEN FREEMAN FAMILY TRUST dated Nov. 3, 1983 (hereinafter collectively referred

5  to as "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§

6  12101 et seq.) ("ADA") and related California statutes.

7  **II.  JURISDICTION**

8  3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

9  ADA claims.

10  4.    Supplemental jurisdiction for claims brought under parallel California law –

11  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

12  5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

13  **III.  VENUE**

14  6.    All actions complained of herein take place within the jurisdiction of the

15  United States District Court, Eastern District of California, and venue is invoked pursuant to

16  28 U.S.C. § 1391(b), (c).

17  **IV.  PARTIES**

18  7.    Defendants own, operate, and/or lease the Facility, and consist of a person (or

19  persons), firm, and/or corporation.

20  8.    Plaintiff requires the use of a wheelchair when traveling about in public.

21  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

22  United States laws, and a member of the public whose rights are protected by these laws.

23  **V.  FACTS**

24  9.    The Facility is a public accommodation facility, open to the public, which is

25  intended for nonresidential use and whose operation affects commerce.

26  10.    Plaintiff visited the Facility and encountered barriers (both physical and

27  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

28  goods, services, privileges and accommodations offered at the Facility.  Plaintiff personally

*Moore v. La Princesa Market #15 Dinuba, Inc., et al.*
Complaint

MLF0051003

1   encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or
2   about March 22, 2013:

3       a)   Upon arriving at the Facility, Plaintiff had difficulty locating an
4            accessible parking space due to the lack of proper signage, poor
5            markings and configuration of parking spaces.

6       b)   Once parked in one of the designated parking spaces in front of the
7            Facility Plaintiff discovered it was short, such that when Plaintiff
8            transferred to and from his wheelchair at the rear of his vehicle he was
9            positioned in the path of traffic within the parking lot.

10      c)   The ramp from the sidewalk to the access aisle lacked protected edges to
11           prevent the wheelchair from going off, was steep and poorly maintained,
12           making it difficult for Plaintiff to maneuver his wheelchair up and down
13           the ramp.  When Plaintiff traveled down the ramp towards his vehicle he
14           could not control the speed of his wheelchair, which caused discomfort
15           to his hands.  Plaintiff narrowly missed being struck by a passing
16           vehicle.

17      d)   The display cases and service counters for the cigarettes and other
18           special items were too high for Plaintiff to be able to see all the items on
19           display and to reach the register counter.  Plaintiff required the
20           assistance of an employee with the purchase at the cigarette display and
21           a separate purchase of a specialty product.

22      11.    The barriers identified in paragraph 10 herein are only those that Plaintiff
23   personally encountered.  Plaintiff is presently unaware of other barriers which may in fact
24   exist at the Facility and relate to his disabilities.  Plaintiff will seek to amend this Complaint
25   once such additional barriers are identified as it is Plaintiff's intention to have all barriers
26   which exist at the Facility and relate to his disabilities removed to afford him full and equal
27   access.

28      12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

*Moore v. La Princesa Market #15 Dinuba, Inc., et al.*
Complaint

Page 3

MLF0051004

EX. 68-15

1  Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

2  accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

3  Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

4  once the barriers are removed.

5        13.   Defendants knew, or should have known, that these elements and areas of the

6  Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

7  the physically disabled. Moreover, Defendants have the financial resources to remove these

8  barriers from the Facility (without much difficulty or expense), and make the Facility

9  accessible to the physically disabled. To date, however, Defendants refuse to either remove

10  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

11        14.   At all relevant times, Defendants have possessed and enjoyed sufficient

12  control and authority to modify the Facility to remove impediments to wheelchair access and

13  to comply with the 2010 Standards for Accessible Design and the California Code of

14  Regulations Title 24. Defendants have not removed such impediments and have not

15  modified the Facility to conform to accessibility standards. Defendants have intentionally

16  maintained the Facility in its current condition and have intentionally refrained from altering

17  the Facility so that it complies with the accessibility standards.

18        15.   Plaintiff further alleges that the (continued) presence of barriers at the Facility

19  is so obvious as to establish Defendants discriminatory intent. On information and belief,

20  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to

21  adhere to relevant building standards; disregard for the building plans and permits issued for

22  the Facility; conscientious decision to maintain the architectural layout (as it currently exists)

23  at the Facility; decision not to remove barriers from the Facility; and allowance that

24  Defendants' property continues to exist in its non-compliance state. Plaintiff further alleges,

25  on information and belief, that the Facility is not in the midst of a remodel, and that the

26  barriers present at the Facility are not isolated (or temporary) interruptions in access due to

27  maintenance or repairs.

28  ///

*Moore v. La Princesa Market #15 Dinuba, Inc., et al.*
Complaint

MLF0051005

## VI.   FIRST CLAIM

**Americans with Disabilities Act of 1990**

<u>Denial of "Full and Equal" Enjoyment and Use</u>

16.     Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.     Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

18.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19.     The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv).

20.     When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable.  <u>Id</u>. § 12182(b)(2)(A)(v).

21.     Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.     In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.     Plaintiff alleges on information and belief that the Facility was designed and

MLF0051006

EX. 68-17

1   constructed (or both) after January 26, 1992 – independently triggering access requirements

2   under Title III of the ADA.

3       24.    The ADA also prohibits designing and constructing facilities for first

4   occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

5   with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

6       25.    Here, Defendants violated the ADA by designing and constructing (or both)

7   the Facility in a manner that was not readily accessible to the physically disabled public –

8   including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

10      26.    Plaintiff alleges on information and belief that the Facility was modified after

11  January 26, 1992, independently triggering access requirements under the ADA.

12      27.    The ADA also requires that facilities altered in a manner that affects (or could

13  affect) its usability must be made readily accessible to individuals with disabilities to the

14  maximum extent feasible.  42 U.S.C. § 12183(a)(2).  Altering an area that contains a

15  facility's primary function also requires making the paths of travel, bathrooms, telephones,

16  and drinking fountains serving that area accessible to the maximum extent feasible.  Id.

17      28.    Here, Defendants altered the Facility in a manner that violated the ADA and

18  was not readily accessible to the physically disabled public – including Plaintiff – to the

19  maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

21      29.    The ADA also requires reasonable modifications in policies, practices, or

22  procedures, when necessary to afford such goods, services, facilities, or accommodations to

23  individuals with disabilities, unless the entity can demonstrate that making such

24  modifications would fundamentally alter their nature.  42 U.S.C. § 12182(b)(2)(A)(ii).

25      30.    Here, Defendants violated the ADA by failing to make reasonable

26  modifications in policies, practices, or procedures at the Facility, when these modifications

27  were necessary to afford (and would not fundamentally alter the nature of) these goods,

28

---

[1] General under either state or federal statutes

*Moore v. La Princesa Market #15 Dinuba, Inc., et al.*
Complaint

MLF0051007

EX. 68-18

1   services, facilities, or accommodations.

2       31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

3   attorney fees, costs, legal expense) for these aforementioned violations.  42 U.S.C. § 12205.

4       32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

5   Defendants violated the ADA in order to pursue damages under California's Unruh Civil

6   Rights Act or Disabled Persons Act.

7                 **VII.    SECOND CLAIM**

8                      **Unruh Act**

9       33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

10   this claim.

11       34.    California Civil Code § 51 states, in part, that:  All persons within the

12   jurisdiction of this state are entitled to the full and equal accommodations, advantages,

13   facilities, privileges, or services in all business establishments of every kind whatsoever.

14       35.    California Civil Code § 51.5 also states, in part that:  No business

15   establishment of any kind whatsoever shall discriminate against any person in this state

16   because of the disability of the person.

17       36.    California Civil Code § 51(f) specifically incorporates (by reference) an

18   individual's rights under the ADA into the Unruh Act.

19       37.    Defendants' aforementioned acts and omissions denied the physically

20   disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

21   privileges and services in a business establishment (because of their physical disability).

22       38.    These acts and omissions (including the ones that violate the ADA) denied,

23   aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

24       39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

25   minimum damages of four thousand dollars ($4,000) for each offense.

26       40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

27   ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

28   § 52(a).

*Moore v. La Princesa Market #15 Dinuba, Inc., et al.*
Complaint

Page 7

MLF0051008

EX. 68-19

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that:  California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that:  Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.     Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.     Attorneys' fees, litigation expense, and costs of suit.[2]

5.     Interest at the legal rate from the date of the filing of this action.

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. La Princesa Market #15 Dinuba, Inc., et al.*
Complaint

Page 8

MLF0051009

EX. 68-20

1    6.    For such other and further relief as the Court deems proper.

2

Dated: May 15, 2013                    MOORE LAW FIRM, P.C.

3

4                                      /s/ Tanya E. Moore
                                       Tanya E. Moore
5                                      Attorneys for Plaintiff,
                                       Ronald Moore
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Moore v. La Princesa Market #15 Dinuba, Inc., et al.*
Complaint

MLF0051010

EX. 68-21

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: __May 15, 2013__     __/s/  Ronald Moore_____
                                  Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                               */s/ Tanya E. Moore*_____
                                Tanya E. Moore, Attorney for
                                Plaintiff, Ronald Moore

*Ronald Moore v. La Princesa Market #15 Dinuba, Inc., et al.*

MLF0051011

EX. 68-22