**Exhibit 69**

345.47 10K

14K   485.09

5/22



**Money Mart®**   **CHECKS CASHED**
**PAYDAY LOANS**

**Sandra Diaz**
Store Manager

3249 W. Shaw Ave. # A
Fresno, CA 93711
Office: (559) 225-9382



**DOLLAR**
FINANCIAL GROUP, INC.

MLF0044590

EX. 69-2

# Leslie's Pool Supplies

FRESNO 310
3249 N SHAW AVE STE 101
FRESNO, CA 93711-3235
(559)222-5388

Date 05/22/2014 Time 04:50pm

| Reg | Session# | Cashier | Trans# | Store |
|-----|----------|---------|--------|-------|
| 2 | 13297 | 29473 | 383848 | 310 |

SOLD TO:                    Salesperson:
                           V. Ramirez        29473

| Item | Qty | Price | Amount |
|------|-----|-------|--------|
| 20137 | 1 | 14.99 | 14.99 |

*STND 18IN BRUSH
MEMORIAL DAY VERSION                    (1.50)

```
            SUBTOTAL           13.49
            Sales Tax           1.11
            Total              14.60

            ***** Sale ******
            MASTERCARD        (14.60)


            Change               .00

XXXXXXXXXXXXX7245 S           (14.60)
   Apprl: 937712
```

I AGREE TO PAY THE ABOVE CHARGES IN
ACCORDANCE WITH THE CARDMEMBER AGREEMENT.
A RECEIPT DATED WITHIN 14 DAYS IS
REQUIRED FOR ALL RETURNS & EXCHANGES.
CHEMICALS ARE NON-REFUNDABLE.

## CUSTOMER COPY

You Saved $1.50
Of $14.99

THANK YOU FOR SHOPPING AT LESLIE'S!
VISIT US AT WWW.LESLIESPOOL.COM

--------------------------------------
YOUR OPINION COUNTS!
COMPLETE OUR BRIEF SURVEY
WWW.LESLIESPOOL.COM/OPINION
LET US KNOW HOW WE ARE DOING.
WE APPRECIATE YOUR FEEDBACK.

0 0031038384814142 0



MLF0044587

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? _Leslie's Pool Supplies_

2. What is the address of the Facility? _3249 West Shaw Ave STE 107 Fresno_

3. When did you visit the Facility? _5/22/14_ (Date) _4:45pm_ (Time)

4. Was this your first visit to the Facility? _No_

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. _?_

6. What was the purpose of your visit? _To eat_

7. Who accompanied you to the Facility? _Grandson Ronny and Jhonny_

8. What car did you drive to the Facility? _Mine_

9. Did you drive yourself or did you get a ride from someone else? _I drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In dp parking spot._

11. Was it difficult for you to park there? If so, why? _No_

12. How did you unload from your vehicle? _Rear_

13. What side of the vehicle did you unload from? Driver or passenger? _Driver_

14. Did anyone help you to transfer onto your wheelchair? Who? _Jhonny_

15. Did you encounter any problems transferring onto your wheelchair? Describe. _No, because it brought to me._

16. Which way did you go from the parking to the entrance of the Facility? _To access isle_

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. _Yes, the ramp was steep, street deed cracks, ramp was short._

18. Did you encounter any problems opening the door? Describe. _Yes, very heavy, door closed on me and opened outward._

19. What did you purchase (or what meal did you have there)? _Pool brush_

20. Did you need to use the restroom while you were at the Facility? Why? _No restroom_

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0044585

EX. 69-4

# PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: _N/A_

Toilet: _N/A_

Urinal: _N/A_

Toilet paper: _N/A_

Toilet seat covers: _N/A_

Paper towels/hand dryer: _N/A_

Soap dispenser: _N/A_

Other: _N/A_

22. Did you have any problem maneuvering inside the restroom? _N/A_

23. Was there any seating provided inside the Facility? _N/A_

24. Were you able to sit comfortably at the table? If not, why? _N/A_

25. Did you use the counter to pay for purchase? Which one? _Yes only one_

26. Did you pay with cash or credit card? _Credit card_

27. Was the counter accessible? If not, describe. _No, counter was way too high, display racks in front of counter hit me in the leg._

28. Did you have any other problems inside the Facility? Describe. _Yes, brushes way too high grandson had to help me and then the worker had grab the brush because price tags were in the way. Isles too narrow could not get by without trouble and the chairs and table was hard to get in and boxes made it_

29. Which way did you go after you left the Facility? _out door to access isle to car._

30. Any problems getting back to your vehicle? _Yes ramp was steep and had a crack between ramp and street got flying into street._

31. Any problems transferring from your wheelchair to your vehicle? _No, because Jhonny helped me with chair._

32. Any additional information you believe would assist us in evaluating this inquiry?

_Yes, ramp steep and had a crack between ramp and pavement._

MLF0044586

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? *Money Mart*

2. What is the address of the Facility? *3249 W Shaw Ave #A*

3. When did you visit the Facility? *5/22/14* (Date) *5:30 pm* (Time)

4. Was this your first visit to the Facility? *Yes*

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. *N/A*

6. What was the purpose of your visit? *n/m*

7. Who accompanied you to the Facility? *Grandson and Jhonny*

8. What car did you drive to the Facility? *Mine*

9. Did you drive yourself or did you get a ride from someone else? *I drove*

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. *in H/p spot*

11. Was it difficult for you to park there? If so, why? *Not Really*

12. How did you unload from your vehicle? *Rear*

13. What side of the vehicle did you unload from? Driver or passenger? *Driver*

14. Did anyone help you to transfer onto your wheelchair? Who? *Jhonny*

15. Did you encounter any problems transferring onto your wheelchair? Describe. *No Because it was Brought to me*

16. Which way did you go from the parking to the entrance of the Facility? *To Access Isle*

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. *Yes The street had cracks and the Ramp was shot and steep And there was a crack in Between, go from sidewalk to street*

18. Did you encounter any problems opening the door? Describe. *Door Heavy and closes on me*

19. What did you purchase (or what meal did you have there)? *Nothing. got Estimate on could chairs*

20. Did you need to use the restroom while you were at the Facility? Why? *NO*

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0044588

EX. 69-6

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: _N/A_

Toilet: _N/A_

Urinal: _N/A_

Toilet paper: _N/A_

Toilet seat covers: _N/A_

Paper towels/hand dryer: _N/A_

Soap dispenser: _N/A_

Other: _____

22. Did you have any problem maneuvering inside the restroom? _N/A_

23. Was there any seating provided inside the Facility? _N/A_

24. Were you able to sit comfortably at the table? If not, why? _N/A_

25. Did you use the counter to pay for purchase? Which one? _Yes   the one on the left_

26. Did you pay with cash or credit card? _Did not Buy anything they Just took my D.L. from me_

27. Was the counter accessible? If not, describe: _No  I had to throw it up into Slot then grandson had to get it Back for me could not Reach it to High_

28. Did you have any other problems inside the Facility? Describe. _~~____~~_

_____

29. Which way did you go after you left the Facility? _out Door to left to Ramp and to my car_

30. Any problems getting back to your vehicle? _Ramp steep and crack Between Sidewalk and payment_

31. Any problems transferring from your wheelchair to your vehicle? _No I hang put it in my car_

32. Any additional information you believe would assist us in evaluating this inquiry?
_The sticky note is the writing of the girl Behind the counter_

MLF0044589

EX. 69-7



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

July 3, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

      **RE:    ADAI No.    02061**
            **Leslie's Poolmart, Inc. (Leslie's, Money Mart)**
            *3249 West Shaw Ave, Fresno, CA*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0044591

EX. 69-8

ADAI No. :       02061             LESLIES POOL SUPPLY UNDER CONSTRUCTION/RENOVATION !!

Case Name:     Moore v. Leslie's Poolmart, Inc.

Address:        Leslie's Poolmart, 3249 W Shaw Ave, Suite 101, Fresno
                Money Mart, 3249 W Shaw Ave, #A, Fresno

| Barrier | Description | Is it a valid barrier?<br>Y / N |
|---------|-------------|-------------------------------|
| Parking space/access aisle cracked, uneven | Plaintiff parked in the designated accessible parking space near the Money Mart Facility. The surface of the parking space and the adjacent access aisle was cracked and uneven, which made it difficult for Plaintiff to transfer between his vehicle and his wheelchair and maneuver to the ramp. There was a large crack at the base of the ramp which was particularly difficult to maneuver over. | Yes |
| Ramp steep | The ramp from the parking lot to the sidewalk was steep and difficult for Plaintiff to maneuver up and down. When Plaintiff went down the ramp, he could not control the speed of his wheelchair and was propelled down quickly into the path of vehicular traffic. | Yes |
| Money Mart - Door heavy | The door to the Money Mart Facility was heavy and it closed on Plaintiff as he was entering. | Door was set open. |
| Money Mart – counter high | The left-hand side transaction counter at the Money Mart Facility was too high and Plaintiff could not reach to put his driver's license into the slot. He had to throw his license up into the slot and his grandson had to hand it back to him when the employee returned it. | Yes |
| Leslie's – door heavy | The door to the Leslie's Facility was heavy and it closed on Plaintiff as he was entering. | Door was open.<br>n/a |
| Leslie's – door opened outward over narrow landing | Additionally, the door to the Leslie's Facility opened outward over a narrow landing which made it difficult for Plaintiff to open the door and maneuver through without rolling off the curb. | n/a |
| Leslie's – aisles narrow | The aisles inside the Leslie's Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver around the store. The route was further obstructed by chairs, a table, and boxes. | n/a |
| Leslie's – Brushes too high | The pool brushes at the Leslie's Facility were displayed too high and Plaintiff could not reach them. Additionally, the price tags obstructed his reach. His grandson had to help him reach the items he wanted. | n/a |

MLF0044573

EX. 69-9

| | | |
|---|---|---|
| Leslie's – counter high, obstructed | The transaction counter at the Leslie's Facility was too high for Plaintiff to reach and it was obstructed by display racks, which bumped Plaintiff's legs as he tried to approach the counter. | n/a |

NOTE: Leslies pool supply was under complete renovation, picture in file .. whole store looked like was being remodeled.

MLF0044574

EX. 69-10



**MOORE**
LAW FIRM, P.C.

March 11, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

     Re:    ADAI No.    02061
             Monetary Management of California, Inc. (Money Mart)

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0044575

EX. 69-11

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | No. |
| Plaintiff, | **COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |
| vs. | |
| MONETARY MANAGEMENT OF CALIFORNIA, INC., dba MONEY MART; LESLIE'S POOLMART, INC.; | |
| Defendants. | |

## I. SUMMARY

1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Money Mart
> 3249 West Shaw Avenue, Suite A
> Fresno, CA 93711
> (hereafter "the Facility")

2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against MONETARY MANAGEMENT OF CALIFORNIA, INC., dba MONEY MART; and LESLIE'S POOLMART, INC. (hereinafter collectively referred to as

*Moore v. Monetary Management of California, Inc., et al.*
Complaint

MLF0044576

EX. 69-12

1    "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et

2    seq.) ("ADA") and related California statutes.

## II.   JURISDICTION

4       3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

5    claims.

6       4.      Supplemental jurisdiction for claims brought under parallel California law –

7    arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

8       5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

10      6.      All actions complained of herein take place within the jurisdiction of the United

11    States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

12    § 1391(b), (c).

## IV.   PARTIES

14      7.      Defendants own, operate, and/or lease the Facility, and consist of a person (or

15    persons), firm, and/or corporation.

16      8.      Plaintiff is substantially limited in his ability to walk, and must use a wheelchair

17    for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable

18    California and United States laws, and a member of the public whose rights are protected by

19    these laws.

## V.   FACTS

21      9.      The Facility is open to the public, intended for non-residential use, and its

22    operation affects commerce. The Facility is therefore a public accommodation as defined by

23    applicable state and federal laws.

24      10.      Plaintiff visited the Facility and encountered barriers (both physical and

25    intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

26    goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

27    encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

28    about May 22, 2014:

*Moore v. Monetary Management of California, Inc., et al.*
Complaint
           Page 2

MLF0044577

EX. 69-13

a)    Plaintiff parked in a designated accessible parking stall near the entrance of the Facility. The surface of the parking space and the adjacent access aisle was cracked and uneven, which made it difficult for Plaintiff to transfer between his vehicle and his wheelchair and to maneuver to the curb ramp. There was a large crack at the base of the curb ramp which was particularly difficult to maneuver over.

b)    The curb ramp from the parking lot to the sidewalk leading toward the Facility entrance was an improperly configured built-up ramp, which was steep and difficult for Plaintiff to maneuver up and down. When Plaintiff went down the ramp, he could not control the speed of his wheelchair and rolled quickly down into the path of vehicular traffic. Additionally, since it was hard for Plaintiff to control his wheelchair on the ramp, he was afraid that his wheels would roll off the sloped, unprotected side.

c)    Plaintiff was required to hand his driver's license to the cashier through a pass-through slot located on the transaction counter; however, he could not reach to place his license into the slot because the counter was too high. Plaintiff had to toss his license up into the pass-through slot and his grandson had to hand it back to him when the employee returned it.

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.    Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

*Moore v. Monetary Management of California, Inc., et al.*
Complaint

MLF0044578

EX. 69-14

1   once the barriers are removed.

2   13.   Defendants knew, or should have known, that these elements and areas of the

3   Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

4   the physically disabled. Moreover, Defendants have the financial resources to remove these

5   barriers from the Facility (without much difficulty or expense), and make the Facility

6   accessible to the physically disabled. To date, however, Defendants refuse to either remove

7   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

8   14.   At all relevant times, Defendants have possessed and enjoyed sufficient control

9   and authority to modify the Facility to remove impediments to wheelchair access and to

10   comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

11   Design. Defendants have not removed such impediments and have not modified the Facility to

12   conform to accessibility standards. Defendants have intentionally maintained the Facility in its

13   current condition and have intentionally refrained from altering the Facility so that it complies

14   with the accessibility standards.

15   15.   Plaintiff further alleges that the (continued) presence of barriers at the Facility is

16   so obvious as to establish Defendants' discriminatory intent. On information and belief,

17   Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

18   to relevant building standards; disregard for the building plans and permits issued for the

19   Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

20   the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

21   property continues to exist in its non-compliant state. Plaintiff further alleges, on information

22   and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

23   Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

24   **VI.   FIRST CLAIM**

25   **Americans with Disabilities Act of 1990**

26   Denial of "Full and Equal" Enjoyment and Use

27   16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

28   this claim.

*Moore v. Monetary Management of California, Inc., et al.*
Complaint

MLF0044579

EX. 69-15

17.     Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19.     The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.     When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.     Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.     In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.     Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.     The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

MLF0044580

EX. 69-16

25. Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

26. Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28. Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

29. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30. Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31. Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Monetary Management of California, Inc., et al.*
Complaint

MLF0044581

EX. 69-17

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

### VII.   SECOND CLAIM

### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

### VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

*Moore v. Monetary Management of California, Inc., et al.*
Complaint

MLF0044582

EX. 69-18

1   42.   Health and Safety Code § 19955(a) states, in part, that: California public

2   accommodations or facilities (built with private funds) shall adhere to the provisions of

3   Government Code § 4450.

4   43.   Health and Safety Code § 19959 states, in part, that: Every existing (non-

5   exempt) public accommodation constructed prior to July 1, 1970, which is altered or

6   structurally repaired, is required to comply with this chapter.

7   44.   Plaintiff alleges the Facility is a public accommodation constructed, altered, or

8   repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

9   § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

10   45.   Defendants' non-compliance with these requirements at the Facility aggrieved

11   (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

12   Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.   PRAYER FOR RELIEF

14   WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

15   1.   Injunctive relief, preventive relief, or any other relief the Court deems proper.

16   2.   Declaratory relief that Defendants violated the ADA for the purposes of Unruh

17   Act damages.

18   3.   Statutory minimum damages under section 52(a) of the California Civil Code

19   according to proof.

20   4.   Attorneys' fees, litigation expense, and costs of suit.[2]

21   5.   Interest at the legal rate from the date of the filing of this action.

22   6.   For such other and further relief as the Court deems proper.

Dated: March 12, 2015                    MOORE LAW FIRM, P.C.

/s/ Tanya E. Moore
Tanya E. Moore
Attorneys for Plaintiff
Ronald Moore

28   _____

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

MLF0044583

EX. 69-19

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:  March 12, 2015          /s/ Ronald Moore
                                Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                /s/ Tanya E. Moore
                                Tanya E. Moore, Attorney for
                                Plaintiff, Ronald Moore



*Moore v. Monetary Management of California, Inc., et al.*
*Verification*

MLF0044584

EX. 69-20

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: _3/12/15_                           _Ronald Moore_
                                           Ronald Moore

*Moore v. Monetary Management of California, Inc. (Money Mart)*

MLF0044593



# MOORE
## LAW FIRM, P.C.

March 10, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, CA 93612

     Re:  ·ADA No:    02061
            Leslie's (3249 West Shaw Ave, Fresno, CA)

Dear Mr. Moore:

Thank you for contacting our office regarding your claim that the above-referenced facility has barriers which impeded your full and equal access. This letter is to inform you that although there may exist violations of the Americans with Disabilities Act and related California law at the facility, and you may have claims that constitute a legal cause of action against the facility, we have evaluated the claims and decided not to take action on your behalf. As you know, these civil rights actions usually involve considerable costs and attorneys' fees, and we are generally only able to pursue cases which involve the most egregious violations.

<u>Please be advised that there is a statute of limitations that applies to your claims, and you are encouraged to seek legal counsel immediately if you wish to pursue such claims.</u> Failure to bring your claims within the time allowed can bar you from any recovery, and thus your immediate attention to this issue is required. Nothing in this letter should be construed as suggesting that you do not have a legitimate claim, only that we will not be representing you in pursuing such claim.

We will be doing nothing further in this matter and will not be monitoring any statute. As such, we are also returning herewith all documents you provided us and are not maintaining any copies of same.

If you have any questions, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM/ed
Enclosures

MLF0044592

EX. 69-22

# Exhibit 70

LA BUENA
MARKET
637-9303
DATE 09/07/2012 FRI.  TIME 11:36

NON TAX
CANCEL ***********************        $1.99
CLERK: 1              774749     00000

MLF0030452

EX. 70-2



Me__ _t No: 8004545454b-00

### Sale

LA BURGER MARKET
221 E HELEN AVE
REEDLEY CA 93654
559-637-9303

XXXXXXXXXXXX5649  Exp: 0
MASTERCARD         Entry Method: Swiped

Total          $    12.00

06/22/11                20:18:43
Inv#: 000006    Appr Code: PR5862
Approvd: Online    Batch#: 000057

Customer Copy
Thank You
Cash Assist

MLF0030453

EX. 70-3

LA BUENA MARKET
221 E NELSON AVE
REEDLEY CA 93654
559-637-5303

Merchant ID: 8801403416701

## Sale

XXXXXXXXXXXX4370                    Exp: 0
MASTERCARD              Entry Method: Swiped

Total:                        $        12.00

03/22/13                              20:18:43
Inv#: 000016              Appr Code: R7836Z
Apprvd: Online                   Batch#: 000037

Customer Copy
THANK YOU!
COME AGAIN!!

MLF0030454

EX. 70-4

December 17, 2012

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

    **RE:**    **ADAI No. 1527**
              *La Buena Market* **(Facility) 100 Helen Ave., Reedley, CA**

Dear Mr. Moore:

Thank you for contacting our office with your inquiry regarding potentially filing a lawsuit on your behalf against the above–referenced facility. This letter is to inform you that although there may be ADA violations involved in the above–referenced facility, we have rejected the option of filing a civil rights action. This letter of rejection should not be interpreted by you, or anyone, that you do not have a legitimate case. As you know, these civil rights actions usually involve considerable costs and attorney's fees and we are usually only able to pursue cases which involve the most egregious violations of the ADA law.

Thank you for sending us information regarding the above referenced facility. Please be advised that the current statute of limitations is one year from the date of incident. We will be doing nothing further in this matter and will not be monitoring any statute.

If you have any questions or would like to discuss something specific about this matter, please do not hesitate to contact me.
Sincerely,

Tanya Moore
Attorney at Law

TM/mb

EX. 70-5

MLF0056251

**BARRIER MEMO**

ADAI No. :        01527

Case Name:     Moore v. La Buena Market

Address:         221 E. Helen Avenue, Reedley

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| There is no accessible route between the parking space and the entrance. | Plaintiff was unable to locate an accessible parking space near the entrance to the Facility and was forced to park in the closest designated accessible parking space he could find, which was at the rear of the building. Plaintiff was then forced to travel a long distance, across uneven and cracked pavement, to reach the entrance of the Facility at the front of the building. Additionally, there were no lights along the back of the building, making it difficult for Plaintiff to see where he was going. | Yes |
| There is no directional signage provided to guide Plaintiff to the accessible route to the entrance | The designated accessible route from the accessible parking at the rear of the building to the entrance at the front of the building led directly into a dirt patch, with no directional signage to guide Plaintiff around the dirt patch. In the dim light, Plaintiff almost rolled into the dirt where he would have gotten stuck. Plaintiff was forced to maneuver his wheelchair around the dirt patch so he could continue on the sidewalk. | Yes |
| Front doors heavy/narrow | The entrance doors to the Facility consisted of a set of double doors, of which one door was propped open when Plaintiff arrived.  The open door lacked necessary wheelchair clearances, preventing Plaintiff's wheelchair from fitting through the entrance. Plaintiff was forced to open the second door, which was heavy and difficult to open. | Yes |
| Aisles too narrow | The aisles within the Facility lacked necessary wheelchair clearances and were obstructed by merchandise placed within the aisles, making it difficult for Plaintiff to maneuver his wheelchair down the aisles. | Yes |
| Soda fountain and cups too high | Plaintiff wanted to buy a soda from the self-serve fountain; however, both the soda fountain and the | Yes |

1

MLF0030399

EX. 70-6

| | | |
|---|---|---|
| | cups were located extremely high and Plaintiff could not reach them from his wheelchair. Plaintiff was forced to select a bottled drink from the refrigerator case instead. | |
| Cold bottled drinks were out of reach | Plaintiff attempted to get a bottled drink out of the refrigerator case; however, the bottles in the front of the case which were within his reach were warm. Plaintiff required assistance from Facility staff to reach a cold bottle at the back of the case, which was embarrassing. | **Yes** |
| Counter too high | The cashier counter was extremely high, making it hard for Plaintiff to sign his credit card receipt on the counter. | Yes |

2

MLF0030400

EX. 70-7

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**


I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **La Buena Market**


DATE: 6/24/13

_____
CLIENT'S SIGNATURE – Ronald Moore

_____
ADDRESS

_____
CITY

_____
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR

MLF0030391

EX. 70-8

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

---

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

THIS AGREEMENT, made this 06/24/13 at **San Jose, CA**, by and between <u>RONALD MOORE</u>

hereinafter designated as "Client," and **the Moore Law Firm, PC**, hereinafter designated as "Attorney,"

witnesses:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to

represent him/her as his/her attorney at law in the case against ___*La Buena Market*___ and whosoever may be

liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers

Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and

resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and

immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to

cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover,

or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee

agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is

subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where

the fee which in contingent upon court approval.) In any event, any fee that requires court approval will

be the fee that controls this agreement.

MLF0030392

EX. 70-9

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0030393

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)     Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)    Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)    In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)    In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)    The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0030394

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u>           .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service of

MLF0030395

EX. 70-12

process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0030396

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial          _____Initial

MLF0030397

DATE:_____          _____
                               CLIENT'S SIGNATURE


DATE:_____          _____
                               CLIENT'S NAME

                               _____
                               ADDRESS


                               _____
                               CITY


                               _____
                               TELEPHONE


MY WITNESS(S) ARE _____
(if none please indicate so)



DATE:_____          MOORE LAW FIRM, PC


                               _____
                               ATTORNEY FOR


MLF0030398

EX. 70-15

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail:  tanya@moorelawfirm.com

Attorney for Plaintiff
Ronald Moore

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>    Plaintiff,<br><br>vs.<br><br>MOHAMED M. NAGI, Individually and dba<br>LA BUENA MARKET,<br><br>    Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

### I. SUMMARY

1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

    La Buena Market
    221 E. Helen Avenue
    Reedley, CA
    (hereafter "the Facility")

2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against MOHAMED M. NAGI, Individually and dba LA BUENA MARKET (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with

*Moore v. Nagi*
Complaint

Page 1

MLF0030421

EX. 70-16

1  Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California

2  statutes.

3  ## II.   JURISDICTION

4   3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

5  ADA claims.

6   4.   Supplemental jurisdiction for claims brought under parallel California law –

7  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

8   5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

9  ## III.   VENUE

10   6.   All actions complained of herein take place within the jurisdiction of the

11  United States District Court, Eastern District of California, and venue is invoked pursuant to

12  28 U.S.C. § 1391(b), (c).

13  ## IV.   PARTIES

14   7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or

15  persons), firm, and/or corporation.

16   8.   Plaintiff requires the use of a wheelchair when traveling about in public.

17  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

18  United States laws, and a member of the public whose rights are protected by these laws.

19  ## V.   FACTS

20   9.   The Facility is a public accommodation facility, open to the public, which is

21  intended for nonresidential use and whose operation affects commerce.

22   10.   Plaintiff visited the Facility and encountered barriers (both physical and

23  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

24  goods, services, privileges and accommodations offered at the Facility.   Plaintiff personally

25  encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

26  about September 7, 2012 and March 22, 2013:

27   a)   On both occasions Plaintiff was unable to locate an accessible parking

28    space near the entrance to the Facility and was forced to park in the

*Moore v. Nagi*
Complaint

Page 2

MLF0030422

EX. 70-17

1                closest designated accessible parking space he could find, which was

2                located at the rear of the building.

3     b)    On both occasions Plaintiff was unable to locate any directional signage

4                to direct him to a safe and accessible route of travel from the designated

5                parking space to the entrance of the Facility.  Plaintiff chose the most

6                direct route to the Facility entrance, forcing him to travel along an unlit

7                path, across uneven and cracked pavement that led to a dirt patch.

8                Plaintiff had to maneuver his wheelchair around the dirt patch to avoid

9                being stuck or injured if he had continued forward.

10    c)    On both occasions Plaintiff had difficulty entering the Facility doorway.

11               The entrance doors to the Facility consisted of a set of double doors, of

12               which one door was propped open when Plaintiff attempted to enter the

13               Facility.  This open door lacked necessary wheelchair clearance,

14               preventing Plaintiff's wheelchair from fitting through the entrance.

15               Plaintiff was forced to open the second door, which was heavy and

16               difficulty to open.

17    d)    On both occasions Plaintiff had difficulty maneuvering his wheelchair

18               within the Facility because several of the aisles lacked necessary

19               wheelchair clearance and were obstructed by merchandise placed within

20               the aisles.  Plaintiff was prevented from completing his shopping and

21               had to forego purchasing items that he was not able to access.

22    e)    On March 22, 2013, Plaintiff had difficulty purchasing soda from the

23               self-serve soda fountain because the soda fountain and cups were too

24               high for him to reach in his wheelchair.  Plaintiff was forced to select a

25               bottled drink from the refrigerator case instead.

26    f)    On both occasions Plaintiff had difficulty completing his purchase at the

27               register counter because it was too high for him in his wheelchair.

28               Plaintiff had to lift himself up from the wheelchair seat and extend his

*Moore v. Nagi*
Complaint

MLF0030423

EX. 70-18

1    body up to reach the counter to sign the credit card receipt.

2        11.    The barriers identified in paragraph 10 herein are only those that Plaintiff

3    personally encountered.  Plaintiff is presently unaware of other barriers which may in fact

4    exist at the Facility and relate to his disabilities.  Plaintiff will seek to amend this Complaint

5    once such additional barriers are identified as it is Plaintiff's intention to have all barriers

6    which exist at the Facility and relate to his disabilities removed to afford him full and equal

7    access.

8        12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

9    Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

10   accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

11   Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

12   once the barriers are removed.

13       13.    Defendants knew, or should have known, that these elements and areas of the

14   Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

15   the physically disabled.  Moreover, Defendants have the financial resources to remove these

16   barriers from the Facility (without much difficulty or expense), and make the Facility

17   accessible to the physically disabled.  To date, however, Defendants refuse to either remove

18   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

19       14.    At all relevant times, Defendants have possessed and enjoyed sufficient

20   control and authority to modify the Facility to remove impediments to wheelchair access and

21   to comply with the 2010 Standards for Accessible Design and the California Code of

22   Regulations Title 24.  Defendants have not removed such impediments and have not

23   modified the Facility to conform to accessibility standards.  Defendants have intentionally

24   maintained the Facility in its current condition and have intentionally refrained from altering

25   the Facility so that it complies with the accessibility standards.

26       15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility

27   is so obvious as to establish Defendants discriminatory intent.  On information and belief,

28   Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to

*Moore v. Nagi*
Complaint

Page 4

MLF0030424

EX. 70-19

1   adhere to relevant building standards; disregard for the building plans and permits issued for

2   the Facility; conscientious decision to maintain the architectural layout (as it currently exists)

3   at the Facility; decision not to remove barriers from the Facility; and allowance that

4   Defendants' property continues to exist in its non-compliance state. Plaintiff further alleges,

5   on information and belief, that the Facility is not in the midst of a remodel, and that the

6   barriers present at the Facility are not isolated (or temporary) interruptions in access due to

7   maintenance or repairs.

### VI.    FIRST CLAIM

### Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

11      16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

12  this claim.

13      17.    Title III of the ADA holds as a "general rule" that no individual shall be

14  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

15  goods, services, facilities, privileges, and accommodations offered by any person who owns,

16  operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

17      18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

18  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

19  Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

21      19.    The ADA specifically prohibits failing to remove architectural barriers, which

22  are structural in nature, in existing facilities where such removal is readily achievable. 42

23  U.S.C. § 12182(b)(2)(A)(iv).

24      20.    When an entity can demonstrate that removal of a barrier is not readily

25  achievable, a failure to make goods, services, facilities, or accommodations available through

26  alternative methods is also specifically prohibited if these methods are readily achievable.

27  Id. § 12182(b)(2)(A)(v).

28      21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

*Moore v. Nagi*
Complaint

Page 5

MLF0030425

EX. 70-20

1  barriers at the Facility without much difficulty or expense, and that Defendants violated the

2  ADA by failing to remove those barriers, when it was readily achievable to do so.

3          22.     In the alternative, if it was not "readily achievable" for Defendants to remove

4  the Facility's barriers, then Defendants violated the ADA by failing to make the required

5  services available through alternative methods, which are readily achievable.

6                    Failure to Design and Construct an Accessible Facility

7          23.     Plaintiff alleges on information and belief that the Facility was designed and

8  constructed (or both) after January 26, 1992 – independently triggering access requirements

9  under Title III of the ADA.

10         24.     The ADA also prohibits designing and constructing facilities for first

11  occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

12  with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

13         25.     Here, Defendants violated the ADA by designing and constructing (or both)

14  the Facility in a manner that was not readily accessible to the physically disabled public –

15  including Plaintiff – when it was structurally practical to do so.[1]

16                    Failure to Make an Altered Facility Accessible

17         26.     Plaintiff alleges on information and belief that the Facility was modified after

18  January 26, 1992, independently triggering access requirements under the ADA.

19         27.     The ADA also requires that facilities altered in a manner that affects (or could

20  affect) its usability must be made readily accessible to individuals with disabilities to the

21  maximum extent feasible.  42 U.S.C. § 12183(a)(2).  Altering an area that contains a

22  facility's primary function also requires making the paths of travel, bathrooms, telephones,

23  and drinking fountains serving that area accessible to the maximum extent feasible.  Id.

24         28.     Here, Defendants altered the Facility in a manner that violated the ADA and

25  was not readily accessible to the physically disabled public – including Plaintiff – to the

26  maximum extent feasible.

27

28
_____
[1] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private
attorney general under either state or federal statutes.

*Moore v. Nagi*
Complaint

Page 6

MLF0030426

EX. 70-21

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature.  42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations.  42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## VII.     SECOND CLAIM

### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that:  All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that:  No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

*Moore v. Nagi*
Complaint

MLF0030427

EX. 70-22

1   privileges and services in a business establishment (because of their physical disability).

2       38.    These acts and omissions (including the ones that violate the ADA) denied,

3   aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

4       39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

5   minimum damages of four thousand dollars ($4,000) for each offense.

6       40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

7   ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

8   § 52(a).

9   **VIII. THIRD CLAIM**

10   **Denial of Full and Equal Access to Public Facilities**

11       41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

12   this claim.

13       42.    Health and Safety Code § 19955(a) states, in part, that: California public

14   accommodations or facilities (built with private funds) shall adhere to the provisions of

15   Government Code § 4450.

16       43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-

17   exempt) public accommodation constructed prior to July 1, 1970, which is altered or

18   structurally repaired, is required to comply with this chapter.

19       44.    Plaintiff alleges the Facility is a public accommodation constructed, altered,

20   or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

21   Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code

22   § 19956.

23       45.    Defendants' non-compliance with these requirements at the Facility aggrieved

24   (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

25   Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code

26   § 19953.

27   **IX.    PRAYER FOR RELIEF**

28       WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

*Moore v. Nagi*
Complaint

Page 8

MLF0030428

EX. 70-23

1.   Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.   Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.   Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.   Attorneys' fees, litigation expense, and costs of suit.[2]

5.   Interest at the legal rate from the date of the filing of this action.

6.   For such other and further relief as the Court deems proper.

Dated: July 23, 2013                    MOORE LAW FIRM, P.C.


                                        /s/ Tanya E. Moore
                                        Tanya E. Moore
                                        Attorneys for Plaintiff,
                                        Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Nagi*
Complaint

MLF0030429

EX. 70-24

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:   7/23/2013              /s/  Ronald Moore
                               Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                               /s/ Tanya E. Moore
                               Tanya E. Moore, Attorney for
                               Plaintiff, Ronald Moore


*Ronald Moore v. Mohamed M. Nagi*

MLF0030430

EX. 70-25

# Exhibit 71

```
ARCO 62044
4149 North Clovis Ave
Fresno
CA 93727
Tel : 5593461010
Site Number  12082044

Qty Name              Price    Total
  1 Grocery Dump       1.00     1.00
  1 PrePay Fuel                19.00
Pump: 1    0.000 Gallon  $0.000/Gallon
SubTotal                      20.00
Total                         20.00

Cash                    $     20.00

Receipt 3797743           ORIGINAL
2 PREET             05/05/2014 16:03
*PREPAY*
       Thank you for shopping with us
```

MLF0039947

EX. 71-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADAI No.
(Facility)

1. What is the name of the Facility? Arco

2. When did you visit the Facility? 5/5/14 (Date) 4:00 (Time)

3. What is the address of the Facility? 4149 N. Clovis Ave Fresno CA

4. Was this your first visit to the Facility? No

5. How many times have you visited the Facility? ? If more than one visit, please list the date and time if you know it. ?

6. What was the purpose of your visit? Gas

7. Who accompanied you to the Facility? Grandson Ronny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself of did you get a ride from someone else? I Drive

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. At gas pump

11. Was it difficult for you to park there? Yes

12. Why? No rate of travel

13. How did you unload from your vehicle? Rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? Grandson Ronny

16. What problems did you encounter transferring onto your wheelchair?
None grandson helped me

17. Which way did you go from the parking to the entrance of the Facility? Up ramp to door

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
Ramp short and steep side walk narrow

19. Did you encounter any problems opening the door? Describe why. Yes opened outward and closed on me twice

20. Did you have any problems inside the Facility? Describe. Yes

MLF0039882

EX. 71-3

_Fountain drinks to high. Had boxes and cand racks in front of coolers. Isles to small couldn't get threw them_

21. What did you purchase (or what meal did you have there). Describe: Gas and a soba

22. Have you used the restroom at the Facility? N/A

23. Why did you need to use the restroom? N/A

24. Did you use the sink? N/A

25. Any problems? N/A

26. Did you use the urinal? N/A

27. Did you use the toilet? N/A

28. Did you use the toilet paper? N/A

29. Did you use paper towels? N/A

30. Did you use the soap dispenser? N/A

31. Did you have any problem maneuvering inside the restroom? N/A

32. Where did you sit? N/A

33. Was there any seating provided inside the Facility? N/A

34. Was it wheelchair accessible? NO

35. Where you comfortable at the table? N/A

36. Did you use the counter to pay for purchase? Yes

37. Which counter did you use? Only one

38. Was the counter accessible? No had cand racks in front of counter

39. Which way did you go after you left the Facility? Own to up grandson had to grable me because I flew out into street

40. Any problems getting back to your vehicle? almost got hit by car and no access isle would have got hit if grandson didnt grable

41. Any problems transferring from your wheelchair to your vehicle? No grandson braught me to door and put chair in back

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0039883



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

May 30, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

> **RE:** **ADAI No.    01994**
> **Arco #82044 *(4149 N. Clovis Ave, Fresno, CA 93727)***

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0039946

**BARRIER MEMO**

ADAI No. :    01994

Case Name:    Moore v. Arco #82044

Address:    4149 N. Clovis Ave, Fresno, CA 93727

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No Accessible Parking space to park | The client felt extremely unsafe when traveling from his car at the gas pump to the facility because there was no designated route of travel. In fact, on his way back from the facility, the client almost got hit by a vehicle that did not see him. Luckily, the client's grandson was able to grab the client's chair and pull him back in time. | Facility has regular parking. Yes, he could not park elsewhere because the barely visible parking space identified with a fade symbol is the farthest one from the entrance, also without any accessible route. He was better off parking at the gas pump |
| No Access Aisle | Plaintiff parked at the gas pump. He could not unload from his car safely or comfortably because there was no access aisle. Although the client's grandson helped him into his wheelchair from his vehicle, the client was still at risk of getting hit by a car. | There is no access aisle required at the gas pump. But the only "accessible" parking space provided did not have an access aisle. |
| Short and Steep Ramp | The ramp to the facility was both short and steep. The client experienced great difficulty attempting to wheel up on to it. On his way down the ramp, the client gained so much momentum because of the steepness of the ramp that he flew out into the street and his grandson had to grab his chair to stop him. | Yes |
| Narrow Sidewalk | Once up on the ramp, the client had to maneuver his chair awkwardly to get inside the facility because the sidewalk between the curb and the entrance was | Yes |

1

MLF0039841

EX. 71-6

| | narrow. This was a challenge because the client had to make sure he did not fall off of the curb while turning his chair. | |
|---|---|---|
| Difficult Door | The door to the facility opened outward which added yet another challenge of getting inside because of the narrow sidewalk. Instead of having easy access to the facility, the client was forced to figure out, yet again, how best to maneuver his chair to get inside safely. In addition, the door closed on the client twice while he attempted to move his wheelchair through the door way. | **Yes** |
| Inaccessible Fountain Drinks | The client could not access the fountain soda dispenser in the facility because it was too high for him to reach. | **Yes** |
| Blocked Passage to Coolers | The client wanted to access some items in the coolers but was unable to wheel himself up to them because there were boxes and candy racks in front of them. | **Yes** |
| Narrow Aisles | The aisles in the facility were very narrow and the client could not go through them without knocking items off of the shelves. | Yes |
| Inaccessible Counter | The client could not use the counter in the facility to make his transaction because there were various racks full of items blocking the client's access. So, the client's grandson helped him pay. | Yes |

2

MLF0039842

EX. 71-7



# MOORE LAW FIRM
### P R O F E S S I O N A L  C O R P O R A T I O N

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 23, 2014

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
Attorney at Law

Marejka Sacks
Paralegal

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

**RE:   ADAI No.     01994**
**Nimatex Co., Inc. (Arco #82044)**
*4149 N. Clovis Ave, Fresno, CA 93727*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure:  Fee Agreement

MLF0039863

EX. 71-8

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
### 332 N. Second Street
### San Jose, CA 95112
### (408) 298-2000


    I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Nimatex Co., Inc. (Arco #82044).**


DATE: _____

              _____

              CLIENT'S SIGNATURE- RONALD MOORE

              _____

              ADDRESS

              _____

              CITY

              _____

              TELEPHONE


DATE:_____

              MOORE LAW FIRM, PC
              ATTORNEY FOR RONALD MOORE

MLF0039864

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

THIS AGREEMENT, made this _____ at **San Jose, CA,** by and between <u>Ronald</u>

<u>Moore</u>, hereinafter designated as "Client," and **the Moore Law Firm, PC,** hereinafter designated as

"Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to

represent him/her as his/her attorney at law in the case against ***Nimatex Co., Inc. (Arco #82044)*** and

whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers

Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and

resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and

immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to

cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover,

or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee

agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is

subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where

the fee which in contingent upon court approval.) In any event, any fee that requires court approval will

be the fee that controls this agreement.

MLF0039865

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0039866

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)     Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)    Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)   In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)    In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0039867

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, no fees will be charged to Client.

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0039868

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying.  A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage.  A minimum charge of $500.00 will be charged for on-line computer research.  Facsimile charge is $1.00 per page sending/receiving.  Photocopying charge is 45¢ per page.  When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs.  It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL:  Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m).  POWER OF ATTORNEY:  Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney.  Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4.  APPEALS:  Client acknowledges that no Appeals need to be taken without both parties' consent.  The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5.  ERRORS AND OMISSIONS INSURANCE:  Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement.  Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6.  LIEN.  FIRING/DISCHARGING ATTORNEY:  In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0039869

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial                    _____Initial

MLF0039870

DATE:_____        _____
                              CLIENT'S SIGNATURE


DATE:_____        _____
                              CLIENT'S NAME

                              _____
                              ADDRESS


                              _____
                              CITY


                              _____
                              TELEPHONE


MY WITNESS(S) ARE _____
(if none please indicate so)



DATE:_____        MOORE LAW FIRM, PC


                              _____
                              ATTORNEY FOR RONALD MOORE

MLF0039871

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>        Plaintiff,<br><br>    vs.<br><br>NIMATEX CO., INC., aka NIMATEX, INC.;<br>AMANDEEP SINGH dba STOP N SAVE<br>GASOLINE aka ARCO #82044;<br><br>        Defendants.<br>_____ | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.　This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Stop N Save Gasoline aka Arco #82044
> 4149 North Clovis Avenue
> Fresno, CA 93727
> (hereafter "the Facility")

2.　Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against NIMATEX CO., INC., aka NIMATEX, INC.; and AMANDEEP SINGH dba STOP N SAVE GASOLINE aka ARCO #82044 (hereinafter collectively referred to as

MLF0039872

EX. 71-17

1  "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et

2  seq.) ("ADA") and related California statutes.

### II.    JURISDICTION

4       3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

5  claims.

6       4.    Supplemental jurisdiction for claims brought under parallel California law –

7  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

8       5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

### III.    VENUE

10      6.    All actions complained of herein take place within the jurisdiction of the United

11  States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

12  § 1391(b), (c).

### IV.    PARTIES

14      7.    Defendants own, operate, and/or lease the Facility, and consist of a person (or

15  persons), firm, and/or corporation.

16      8.    Plaintiff requires the use of a wheelchair when traveling about in public.

17  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

18  United States laws, and a member of the public whose rights are protected by these laws.

### V.    FACTS

20      9.    The Facility is a public accommodation facility, open to the public, which is

21  intended for nonresidential use and whose operation affects commerce.

22      10.   Plaintiff visited the Facility and encountered barriers (both physical and

23  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

24  goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

25  encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

26  about May 5, 2014:

27          a)    Plaintiff was unable to locate an accessible parking space near the

28                Facility entrance and therefore was forced to travel to the building

*Moore v. Nimatex Co., Inc., et al.*
Complaint
                              Page 2

MLF0039873

EX. 71-18

entrance from his vehicle parked at the gas pump. In doing so, he had to travel through the path of vehicular traffic, and felt extremely vulnerable due to cars passing through the driveway. In fact, on his way back to his vehicle after paying for his gas inside the building, Plaintiff was almost struck by a vehicle whose driver could not see him. Plaintiff's grandson luckily was able to grab Plaintiff's wheelchair and pull him out of the way in time.

b)    The ramp leading to the entrance of the building was excessively sloped, and it was difficult for Plaintiff to maneuver up and down. On his way down the ramp, Plaintiff was unable to control the speed of his wheelchair and rolled quickly down into the path of traffic.

c)    The walkway between the ramp and building entrance lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver to the entrance.

d)    The entrance landing was too small, and it was difficult for Plaintiff to maneuver through the door, which opened outward over the narrow landing, without falling off the landing. In the process, the door closed on him.

e)    Plaintiff could not reach the self-serve soda fountain because it was positioned too high.

f)    Some of the aisles inside the Facility lacked necessary wheelchair clearances, preventing Plaintiff from maneuvering freely around the store without knocking items off the shelves, which was embarrassing. In particular, the aisle where the drink refrigerators were located lacked sufficient clearance and Plaintiff was unable to open the refrigerator doors by himself.

g)    Plaintiff was not able to wheel up to the counter to pay for his purchase because it was obstructed by racks of merchandise positioned in front of

MLF0039874

EX. 71-19

1                the counter. Plaintiff had to ask his grandson to conduct the transaction

2                instead.

3        11.    The barriers identified in paragraph 10 herein are only those that Plaintiff

4 personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist

5 at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once

6 such additional barriers are identified as it is Plaintiff's intention to have all barriers which

7 exist at the Facility and relate to his disabilities removed to afford him full and equal access.

8        12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

9 Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

10 accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

11 Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

12 once the barriers are removed.

13        13.    Defendants knew, or should have known, that these elements and areas of the

14 Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

15 the physically disabled. Moreover, Defendants have the financial resources to remove these

16 barriers from the Facility (without much difficulty or expense), and make the Facility

17 accessible to the physically disabled. To date, however, Defendants refuse to either remove

18 those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

19        14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

20 and authority to modify the Facility to remove impediments to wheelchair access and to

21 comply with the 2010 Standards for Accessible Design and the California Code of Regulations

22 Title 24. Defendants have not removed such impediments and have not modified the Facility to

23 conform to accessibility standards. Defendants have intentionally maintained the Facility in its

24 current condition and have intentionally refrained from altering the Facility so that it complies

25 with the accessibility standards.

26        15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

27 so obvious as to establish Defendants' discriminatory intent. On information and belief,

28 Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

*Moore v. Nimatex Co., Inc., et al.*
Complaint

MLF0039875

EX. 71-20

1  to relevant building standards; disregard for the building plans and permits issued for the

2  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

3  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

4  property continues to exist in its non-compliant state. Plaintiff further alleges, on information

5  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

6  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

## VI.    FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

10      16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

11  this claim.

12      17.    Title III of the ADA holds as a "general rule" that no individual shall be

13  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

14  goods, services, facilities, privileges, and accommodations offered by any person who owns,

15  operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

16      18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

17  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

18  Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

20      19.    The ADA specifically prohibits failing to remove architectural barriers, which

21  are structural in nature, in existing facilities where such removal is readily achievable. 42

22  U.S.C. § 12182(b)(2)(A)(iv).

23      20.    When an entity can demonstrate that removal of a barrier is not readily

24  achievable, a failure to make goods, services, facilities, or accommodations available through

25  alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>.

26  § 12182(b)(2)(A)(v).

27      21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

28  barriers at the Facility without much difficulty or expense, and that Defendants violated the

*Moore v. Nimatex Co., Inc., et al.*
Complaint

MLF0039876

EX. 71-21

1   ADA by failing to remove those barriers, when it was readily achievable to do so.

2       22.    In the alternative, if it was not "readily achievable" for Defendants to remove

3   the Facility's barriers, then Defendants violated the ADA by failing to make the required

4   services available through alternative methods, which are readily achievable.

5   <u>Failure to Design and Construct an Accessible Facility</u>

6       23.    Plaintiff alleges on information and belief that the Facility was designed and

7   constructed (or both) after January 26, 1992 – independently triggering access requirements

8   under Title III of the ADA.

9       24.    The ADA also prohibits designing and constructing facilities for first occupancy

10  after January 16, 1993, that aren't readily accessible to, and usable by, individuals with

11  disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

12      25.    Here, Defendants violated the ADA by designing and constructing (or both) the

13  Facility in a manner that was not readily accessible to the physically disabled public –

14  including Plaintiff – when it was structurally practical to do so.[1]

15  <u>Failure to Make an Altered Facility Accessible</u>

16      26.    Plaintiff alleges on information and belief that the Facility was modified after

17  January 26, 1992, independently triggering access requirements under the ADA.

18      27.    The ADA also requires that facilities altered in a manner that affects (or could

19  affect) its usability must be made readily accessible to individuals with disabilities to the

20  maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

21  primary function also requires making the paths of travel, bathrooms, telephones, and drinking

22  fountains serving that area accessible to the maximum extent feasible. <u>Id.</u>

23      28.    Here, Defendants altered the Facility in a manner that violated the ADA and

24  was not readily accessible to the physically disabled public – including Plaintiff – to the

25  maximum extent feasible.

26

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Nimatex Co., Inc., et al.*
Complaint

MLF0039877

EX. 71-22

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.   SECOND CLAIM

### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

*Moore v. Nimatex Co., Inc., et al.*
Complaint

Page 7

MLF0039878

EX. 71-23

38.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.   Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.   Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

### VIII. THIRD CLAIM

#### Denial of Full and Equal Access to Public Facilities

41.   Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.   Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.   Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.   Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.   Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

*Moore v. Nimatex Co., Inc., et al.*
Complaint

MLF0039879

EX. 71-24

3.  Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.  Attorneys' fees, litigation expense, and costs of suit.[2]

5.  Interest at the legal rate from the date of the filing of this action.

6.  For such other and further relief as the Court deems proper.

Dated: July 22, 2014                    MOORE LAW FIRM, P.C.


                                        /s/ Tanya E. Moore
                                        Tanya E. Moore
                                        Attorneys for Plaintiff
                                        Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.


*Moore v. Nimatex Co., Inc., et al.*
Complaint
                            Page 9

MLF0039880

EX. 71-25

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated: July 22, 2014                         /s/ Ronald Moore
                                              Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                              /s/ Tanya E. Moore
                                              Tanya E. Moore, Attorney for
                                              Plaintiff, Ronald Moore


*Moore v. Nimatex Co., Inc., et al.*
*Verification*

MLF0039881

EX. 71-26

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 7/22/14                              _Ronald Moore_
                                           Ronald Moore

*Ronald Moore v. Nimatex Co., Inc. (Arco 82044)*

MLF0039948

EX. 71-27

# Exhibit 72

SALE

BIG STOP FOOD MART
1198 N CHESTNUT AVE
FRESNO, CA 93702
(559) 455-0941
Thank You

MERCHANT ID: 267606392889
DEVICE ID: HKGB
Item 001 VISA SALE / SWIPED
Acct: XXXXXXXXXXXX4008
INVOICE: 8001

SALE      $   12.57
TOTAL     $   12.57

I AGREE TO PAY ABOVE TOTAL AMOUNT
ACCORDING TO CARD ISSUER AGREEMENT
(MERCHANT AGREEMENT IF CREDIT VOUCHER)

DATE: 02/01/14          TIME: 19:49
RESP: AUTH/TKT   077808    E
TID: 08403312178145    ACI: E

BOTTOM COPY-CUSTOMER

MLF0035211

EX. 72-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _Big Stop Food Mart_

2. When did you visit the Facility? _2/1/14_ (Date) _8pm_ (Time)

3. What is the address of the Facility? _1198 N Chestnut Ave Fresno CA 93702_

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _?_ If more than one visit, please list the date and time if you know it. _?_

6. What was the purpose of your visit? _Smokes And Drink_

7. Who accompanied you to the Facility? _Grandson Ronny_

8. What car did you drive to the Facility? _I Drive_

9. Did you drive yourself of did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In Dip parking space_

11. Was it difficult for you to park there? _Yes_

12. Why? _Because there was no Room to get my wheel Chair up to my Door Because car next to us to close_

13. How did you unload from your vehicle? _Front_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _Grandson got chair ect an Brought it to me_

16. What problems did you encounter transferring onto your wheelchair?

_Not enough Room Space not Big enough_

17. Which way did you go from the parking to the entrance of the Facility? _Back then to Access Issue_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. _When I got to Back of my Car Rolled into Rain Ditch in Road Ramp went into Road Antia to Dip parking spot_

19. Did you encounter any problems opening the door? Describe why. _Trash hold_

20. Did you have any problems inside the Facility? Describe. _Yes I could not get my_

MLF0035209

EX. 72-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

Clise up to Fountain Drink than they were
to high And cups out of Reach Grandson
had to get it for me

21. What did you purchase (or what meal did you have there). Describe: Fountain Drink
Smokies Slim Jims Beef sticks

22. Have you used the restroom at the Facility? N/A

23. Why did you need to use the restroom? N/A

24. Did you use the sink? N/A

25. Any problems? N/A

26. Did you use the urinal? N/A

27. Did you use the toilet? N/A

28. Did you use the toilet paper? N/A

29. Did you use paper towels? N/A

30. Did you use the soap dispenser? N/A

31. Did you have any problem maneuvering inside the restroom? N/A

32. Where did you sit? N/A

33. Was there any seating provided inside the Facility? N/A

34. Was it wheelchair accessible? NO

35. Where you comfortable at the table? N/A

36. Did you use the counter to pay for purchase? Yes

37. Which counter did you use? Only one for liquor Store

38. Was the counter accessible? No to high Couldn't reach grandson had to
Sign for Me

39. Which way did you go after you left the Facility? Out the door to the ramp towards
cur

40. Any problems getting back to your vehicle? Yes going down ramp grandson had to make
sure i didn't roll into drainage ditch due to Steep ramp and cracked road

41. Any problems transferring from your wheelchair to your vehicle? Yes car parked to close to N
Not enough space to get chair to driver door

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0035210

EX. 72-4

February 13, 2014

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

RE:    **ADAI No. 1880**
        **Big Stop Food Mart**
        **1198 North Chestnut Avenue, Fresno, CA 93702**

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0035212

EX. 72-5

**BARRIER MEMO**

ADAI No. :     01880

Case Name:     Moore v. Big Stop Food Mart

Address:     1198 North Chestnut Ave, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Parking space too narrow | Plaintiff parked in a designated accessible parking space at the Facility which was too narrow, making it difficult for him to transfer between his vehicle and his wheelchair because there was another car parked adjacent to the driver's side of Plaintiff's vehicle. | Not sure if narrow but is very sloped and uneven, so yes problems with configuration |
| Rain gutter | Plaintiff travelled from the driver's side of his vehicle, behind his vehicle and around the other side to reach the ramp leading up to the sidewalk in front of the Facility entrance. Behind his vehicle, he encountered a sloped rain gutter which his wheelchair rolled into. Additionally, the surface of the parking lot was cracked, creating an uneven surface which made it even harder for Plaintiff to maneuver. | Yes |
| Built-up curb ramp | The ramp from the parking lot to the sidewalk in front of the Facility entrance was an improperly configured built-up curb ramp, which extended into the access aisle and into Plaintiff's parking space. Because his vehicle was parked in the parking space, it partially obstructed the ramp which made it difficult for him to maneuver up and down the ramp. He also feared that his wheelchair would roll down the sloped sides of the ramp or be propelled down the ramp into the path of vehicular traffic. | Yes |
| Threshold high | The entrance to the Facility had a raised threshold which was difficult for Plaintiff to maneuver over in his wheelchair. | Yes |
| Lack of clearance at fountain drinks | Plaintiff had difficulty approaching the self-serve fountain drink machine because the route to the machine lacked necessary wheelchair clearances. | Yes |
| Cups and soda dispenser out of reach | Once he was able to reach the self-serve fountain drinks, he was unable to serve himself because the dispenser and cups were positioned out of his reach. | Yes |

MLF0035166

EX. 72-6

| | He had to ask his grandson to get a cup and fill it for him. | |
| --- | --- | --- |
| Counter too high | The transaction counter was too high, and Plaintiff was unable to reach up to sign his receipt. His grandson had to sign the receipt for him. | Yes |

MLF0035167

EX. 72-7



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

June 13, 2014

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

**RE:  ADAI No.    01880**
**Park (Big Stop Food Mart)**
*1198 North Chestnut Avenue, Fresno, CA 93702*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure:  Fee Agreement

MLF0035190

EX. 72-8

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Park (Big Stop Food Mart).**

DATE: _____

_____
CLIENT'S SIGNATURE- RONALD MOORE

_____
ADDRESS

_____
CITY

_____
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR RONALD MOORE

MLF0035191

EX. 72-9

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

THIS AGREEMENT, made this _____ at **San Jose, CA**, by and between <u>Ronald Moore</u>, hereinafter designated as "Client," and **the Moore Law Firm, PC**, hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case against ***Park (Big Stop Food Mart)*** and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

**MLF0035192**

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0035193

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

## FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)     Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)     Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)     In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)     In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0035194

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u> .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0035195

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0035196

EX. 72-14

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial                    _____Initial

MLF0035197

DATE:_____          _____
                                CLIENT'S SIGNATURE


DATE:_____          _____
                                CLIENT'S NAME

                                _____
                                ADDRESS


                                _____
                                CITY


                                _____
                                TELEPHONE


MY WITNESS(S) ARE _____
(if none please indicate so)


DATE:_____          MOORE LAW FIRM, PC


                                _____
                                ATTORNEY FOR RONALD MOORE


MLF0035198

1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: tanya@moorelawfirm.com

5  Attorneys for Plaintiff
   Ronald Moore
6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 RONALD MOORE,                    ) No.
                                    )
12        Plaintiff,                ) COMPLAINT ASSERTING DENIAL OF
                                    ) RIGHT OF ACCESS UNDER
13    vs.                           ) AMERICANS WITH DISABILITIES ACT
                                    ) FOR INJUNCTIVE RELIEF,
14 JAE BUM PARK dba BIG STOP FOOD   ) DECLARATORY RELIEF, DAMAGES,
   MART; ASHOK WADHWA, Trustee of the) ATTORNEYS' FEES AND COSTS (ADA)
15 ASHOK AND NEELAM WADHWA          )
   LIVING TRUST DATED JANUARY 10,   )
16 2007; NEELEM WADHWA, Trustee of the)
   ASHOK AND NEELAM WADHWA          )
17 LIVING TRUST DATED JANUARY 10,   )
   2007;                            )
18                                  )
19        Defendants.               )
                                    )
20                                  )
                                    )
21 _____ )

22              I. SUMMARY

23      1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

24 discrimination at the building, structure, facility, complex, property, land, development, and/or

25 surrounding business complex known as:

26        Big Stop Food Mart
          1198 North Chestnut Avenue
27        Fresno, CA 93702
          (hereafter "the Facility")
28

*Moore v. Park, et al.*
Complaint
                          Page 1

MLF0035199

EX. 72-17

1       2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

2   costs, against JAE BUM PARK dba BIG STOP FOOD MART; ASHOK WADHWA, Trustee

3   of the ASHOK AND NEELAM WADHWA LIVING TRUST DATED JANUARY 10, 2007;

4   and NEELEM WADHWA, Trustee of the ASHOK AND NEELAM WADHWA LIVING

5   TRUST DATED JANUARY 10, 2007 (hereinafter collectively referred to as "Defendants"),

6   pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA")

7   and related California statutes.

8       **II.    JURISDICTION**

9       3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

10  claims.

11      4.    Supplemental jurisdiction for claims brought under parallel California law –

12  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

13      5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

14      **III.    VENUE**

15      6.    All actions complained of herein take place within the jurisdiction of the United

16  States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

17  § 1391(b), (c).

18      **IV.    PARTIES**

19      7.    Defendants own, operate, and/or lease the Facility, and consist of a person (or

20  persons), firm, and/or corporation.

21      8.    Plaintiff requires the use of a wheelchair when traveling about in public.

22  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

23  United States laws, and a member of the public whose rights are protected by these laws.

24      **V.    FACTS**

25      9.    The Facility is a public accommodation facility, open to the public, which is

26  intended for nonresidential use and whose operation affects commerce.

27      10.    Plaintiff visited the Facility and encountered barriers (both physical and

28  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

MLF0035200

EX. 72-18

1  goods, services, privileges and accommodations offered at the Facility. Plaintiff personally
2  encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or
3  about February 1, 2014:

4      a)    Plaintiff parked in a designated accessible parking space at the Facility
5            which was improperly configured, making it difficult for Plaintiff to
6            transfer between his vehicle and his wheelchair.

7      b)    Plaintiff travelled from the driver's side of his vehicle, behind his
8            vehicle and around the other side to reach the ramp leading up to the
9            sidewalk in front of the Facility entrance. Behind his vehicle, Plaintiff
10            encountered a sloped rain gutter which his wheelchair rolled into.
11            Additionally, the surface of the parking lot was cracked, creating an
12            uneven surface which made it even harder for Plaintiff to maneuver.

13      c)    The ramp from the parking lot to the sidewalk in front of the Facility
14            entrance was an improperly configured built-up curb ramp, which
15            extended into the access aisle and into Plaintiff's parking space. Because
16            his vehicle was parked in the parking space, it partially obstructed the
17            ramp which made it difficult for him to maneuver up and down the
18            ramp. He also feared that his wheelchair would roll down the sloped
19            sides of the ramp or be propelled down the ramp into the path of
20            vehicular traffic.

21      d)    The entrance to the Facility had a raised threshold which was difficult
22            for Plaintiff to maneuver over in his wheelchair.

23      e)    Plaintiff had difficulty approaching the self-serve soda fountain because
24            the route to the machine lacked necessary wheelchair clearances.

25      f)    Once he was able to reach the self-serve fountain drinks, he was unable
26            to serve himself because the dispenser and cups were positioned out of
27            his reach. He had to ask his grandson to get a cup and fill it for him.

28      g)    The transaction counter was too high, and Plaintiff was unable to reach

MLF0035201

EX. 72-19

1    up to sign his receipt. His grandson had to sign the receipt for him.

2        11.    The barriers identified in paragraph 10 herein are only those that Plaintiff

3    personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist

4    at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once

5    such additional barriers are identified as it is Plaintiff's intention to have all barriers which

6    exist at the Facility and relate to his disabilities removed to afford him full and equal access.

7        12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

8    Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

9    accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

10   Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

11   once the barriers are removed.

12       13.    Defendants knew, or should have known, that these elements and areas of the

13   Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

14   the physically disabled. Moreover, Defendants have the financial resources to remove these

15   barriers from the Facility (without much difficulty or expense), and make the Facility

16   accessible to the physically disabled. To date, however, Defendants refuse to either remove

17   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

18       14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

19   and authority to modify the Facility to remove impediments to wheelchair access and to

20   comply with the 2010 Standards for Accessible Design and the California Code of Regulations

21   Title 24. Defendants have not removed such impediments and have not modified the Facility to

22   conform to accessibility standards. Defendants have intentionally maintained the Facility in its

23   current condition and have intentionally refrained from altering the Facility so that it complies

24   with the accessibility standards.

25       15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

26   so obvious as to establish Defendants' discriminatory intent. On information and belief,

27   Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

28   to relevant building standards; disregard for the building plans and permits issued for the

*Moore v. Park, et al.*
Complaint
                            Page 4

MLF0035202

Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

## VI.    FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>. § 12182(b)(2)(A)(v).

21.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

*Moore v. Park, et al.*
Complaint

MLF0035203

EX. 72-21

22.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.    Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.    The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.    Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

26.    Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.    The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id.</u>

28.    Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Park, et al.*
Complaint

MLF0035204

EX. 72-22

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.   SECOND CLAIM

### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

*Moore v. Park, et al.*
Complaint

MLF0035205

EX. 72-23

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

### VIII. THIRD CLAIM

**Denial of Full and Equal Access to Public Facilities**

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

*Moore v. Park, et al.*
Complaint

MLF0035206

EX. 72-24

3.   Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.   Attorneys' fees, litigation expense, and costs of suit.[2]

5.   Interest at the legal rate from the date of the filing of this action.

6.   For such other and further relief as the Court deems proper.

Dated: June 10, 2014                    MOORE LAW FIRM, P.C.


                                        /s/ Tanya E. Moore
                                        Tanya E. Moore
                                        Attorneys for Plaintiff
                                        Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.


*Moore v. Park, et al.*
Complaint                            Page 9

MLF0035207

EX. 72-25

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:  June 10, 2014          /s/  Ronald Moore
                              Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

/s/ Tanya E. Moore
Tanya E. Moore, Attorney for
Plaintiff, Ronald Moore

*Moore v. Park, et al.*
*Verification*

MLF0035208

EX. 72-26

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: __6/10/14__               _Ronald Moore_
                                           Ronald Moore

*Moore v. Park, et al.*
*Verification*

MLF0035213

EX. 72-27

# Exhibit 73



(209) 827-7000 X118

Jenell
Curshyna

*Piccolospizza-pizzeria*
*for*

**Property owner**

Strathland Corporation

Owner
Piccolo-Pizza

```
***  PAPA MURPHY'S  ****
      GM PACHECO BLVD
    LOS BANOS CA 93635
       209-826-2400
*************************
17:02      04-30-2010
MC NO.0000        2876
20 OZ          $0.92T1
H C BL         $1.89T1

SUBTOTAL       $2.81
TAX1           $0.25
TOTAL-TAX      $0.25

TOTAL          $3.06
CASH           $3.06
CHANGE         $0.00

  /    THANK YOU    /
  / PLEASE COME AGAIN & /
  /  ENJOY YOUR PIZZA!  /
```

MLF0053839

EX. 73-2

**Exhibit 74**

Johnny Quick (willow x alluvial)
Fresno

Signs are Bad, parking spot is Bad
no Van acess, Ramp goes out into
the Street. Bathroom is Bad, paper
towels are Behind you So you have
to wash then get your hands dirty
again before you can even dry
Your hands off. Door to Bathroom
is Very Heavy & stall door doesn't
Shut all the way.

This a Johnny Quick with Subway
inside.

Subway

Already
Did

SALE 44c
Store #21438
Subway Sandwiches & Salad.
7505 N. Willow
Fresno
(559)323-4622
Trans# 46 Clerk
Receipt # 00068...
File     QTY
Pastrami  1 1              1037

        TOTAL $      8.00
          Tx  $      0.00

TAKE OUT SUBTOTAL $      8.00
        AMT TEND $      8.00

        CHG DUE  $      0.00

Best of luck!

Johnny Quik #101
7505 N Willow Ave  Fresno      CA
S/N# 00205439

            Cash Receipt

Subtotal
No Tax

Item   2      Subtotal      9.10
Tax                         0.00
Total                       9.10

Cash                     $100.00
  CHANGE DUE               90.90

Thank You

MLF0026408

EX. 74-2

1-10-10

Johnny Quik #1161 Willow
Bathroom door wasn't closing, clerk out
front came in the way because van
came in + going my someone else
+ he tried to close the door

Johnny Quik #161
7505 N Willow Ave Fresno          CA
STR# 00205439

Cash Receipt

ScratcherPP                    -10.00
ROMTAX                           1.00

Items:          Subtotal
Tax                              0.00
Total                           -9.00

Cash                            -9.00

REFUND                          9.00

700301e29s444011 01/10/10 19:44:02

Thank You
Call Again


Johnny Quik #161
7505 N Willow Ave Fresno          CA
STR# 00205439

Cash Receipt

22zfountai                      0.99f

Items:  1       Subtotal        0.99
Sales Tax                       0.07
Total                           1.06

Cash                            $5.00
CHANGE DUE                      3.92

700312e29s444011 01/10/10 19:50:19

Thank You
Call Again

MLF0026409

EX. 74-3



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

December 20, 2011

**K. RANDOLPH MOORE**
ESQUIRE
AND FOUNDER

**Tanya E. Moore**
*Attorney at Law*

**Marejka Sacks**
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

Re: *Original Pizza, Chapala Mexican Pizza, Johnny Quik, Country Waffles, Casa Quintero Mexican.*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facilities. If you visit the facilities again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for these matters. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

Tanya Moore

Tanya Moore
Attorney at Law

MLF0026413

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
332 N. Second Street
San Jose, CA 95112
(408) 298-2000

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against *Johnny Quik*

DATE:

_____
CLIENT'S SIGNATURE – Ronald Moore

_____
ADDRESS

_____
CITY

_____
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR

MLF0026414

EX. 74-5

## *CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

THIS AGREEMENT, made this **12-20-2011** at **San Jose, CA,** by and between <u>RONALD</u> <u>MOORE</u> hereinafter designated as "Client," and **the Moore Law Firm, PC,** hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case again *Johnny Quik* and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

### FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

MLF0026415

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0026416

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)     Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)     Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)     In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)     In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0026417

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u> .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0026418

EX. 74-9

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0026419

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial                    _____Initial

MLF0026420

DATE:_____

_____
CLIENT'S SIGNATURE

DATE:_____

_____
CLIENT'S SIGNATURE

_____
ADDRESS

_____
CITY

_____
TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____

MOORE LAW FIRM, PC

_____
ATTORNEY FOR

MLF0026421

Tanya E. Moore, SBN 206683
K. Randolph Moore, SBN 106933
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>   Plaintiff,<br><br>  vs.<br><br>NARAYANAN PONDICHERRY, SEKAR BALAKRISHNAN, JOHNNY QUIK #161, A CALIFORNIA GENERAL PARTNERSHIP dba JOHNNY QUIK #161,<br><br>   Defendants. | No.<br><br>**PLAINTIFF'S COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I.   SUMMARY

1. This is a civil rights action by plaintiff RONALD MOORE ("Moore") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

Johnny Quik #161
7505 N Willow Ave.
Fresno, CA 93720
(hereinafter "the Facility")

2. Moore seeks damages, injunctive and declaratory relief, attorney fees and costs, against NARAYANAN PONDICHERRY, SEKAR BALAKRISHNAN, JOHNNY QUIK #161, A CALIFORNIA GENERAL PARTNERSHIP dba JOHNNY QUIK #161 (referred to hereinafter as "Defendants"), pursuant to the Americans with Disabilities Act of

---

*Moore v. Pondicherry, et al.*             Plaintiff's Complaint

Page 1

MLF0051146

EX. 74-13

1  1990, (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.   JURISDICTION

3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.   Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.   Moore's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

6.   All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.   PARTIES

7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.   Moore requires use of a wheelchair when traveling about in public. Consequently, Moore is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

9.   The Facility is a public accommodation facility, open to the public, which is intended for nonresidential use and whose operation affects commerce.

10.   Moore visited the Facility and encountered barriers (both physical and intangible) that interfered with – if not outright denied – his ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility.  Moore personally encountered the following barriers at the Facility:

1) While visiting the facility Moore could not find any accessible seating and had to eat his sandwich outside of the Facility;

2) It was very difficult for Moore to open the restroom door by himself because it was heavy.  Before he cleared the doorway, the door slammed shut hitting the back of his wheelchair;

*Moore v. Pondicherry, et al.*                                                                 Plaintiff's Complaint

MLF0051147

EX. 74-14

3) Moore could not close the stall door behind his wheelchair because of the improper hardware and closing mechanism;

4) Moore could not find any route of access to the sidewalk when he attempted to cross the street.

11.    Moore was, and continues to be, deterred from visiting the Facility because he knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to him due to his physical disabilities. Moore continues to be deterred from visiting the Facility because of the future threats of injury created by these barriers due to his physical disabilities including, but not limited to:

1) Missing and/or incorrect warning signage is installed at the parking facilities;

2) Accessible parking spaces and access aisles are not properly configured and/or exceed the maximum slope allowed;

3) Parking spaces and/or access aisles reserved for persons with disabilities are improperly marked and/or identified;

4) There is no properly configured and/or identified accessible route provided within the boundary of the site;

5) There are insufficient clearances and access provided for a wheelchair inside the Facility;

6) There are no accessible restrooms provided.

Moore enjoys the goods and services offered at the Facility, lives nearby, and will return to the Facility once the barriers are removed.

12.    Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

*Moore v. Pondicherry, et al.*                                     Plaintiff's Complaint

MLF0051148

EX. 74-15

1    13.    At all relevant times, Defendants have possessed and enjoyed sufficient

2 control and authority to modify the Facility to remove impediments to wheelchair access and

3 to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24

4 regulations.   Defendants have not removed such impediments and have not modified the

5 Facility to conform to accessibility standards.   Defendants have intentionally maintained the

6 Facility in its current condition and have intentionally refrained from altering the Facility so

7 that it complies with the accessibility standards.

8                                   VI.    FIRST CLAIM

9                           **Americans with Disabilities Act of 1990**

10                       Denial of "Full and Equal" Enjoyment and Use

11    14.    Moore incorporates the allegations contained in paragraphs 1 through 13 for

12 this claim.

13    15.    Title III of the ADA holds as a "general rule" that no individual shall be

14 discriminated against on the basis of disability in the full and equal enjoyment (or use) of

15 goods, services, facilities, privileges, and accommodations offered by any person who owns,

16 operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

17    16.    Defendants discriminated against Moore by denying him "full and equal

18 enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

19 Facility during each visit and each incident of deterrence.

20                  Failure to Remove Architectural Barriers in an Existing Facility

21    17.    The ADA specifically prohibits failing to remove architectural barriers, which

22 are structural in nature, in existing facilities where such removal is readily achievable.   42

23 U.S.C. § 12182(b)(2)(A)(iv).  The term "readily achievable" is defined as "easily

24 accomplishable and able to be carried out without much difficulty or expense."  Id. §

25 12181(9).

26    18.    When an entity can demonstrate that removal of a barrier is not readily

27 achievable, a failure to make goods, services, facilities, or accommodations available through

28 alternative methods is also specifically prohibited if these methods are readily achievable.

Id. § 12182(b)(2)(A)(v).

*Moore v. Pondicherry, et al.*                                    Plaintiff's Complaint

Page 4

MLF0051149

EX. 74-16

1       19.    Here, Moore alleges that Defendants can easily remove the architectural

2   barriers at the Facility without much difficulty or expense, and that Defendants violated the

3   ADA by failing to remove those barriers, when it was readily achievable to do so.

4       20.    In the alternative, if it was not "readily achievable" for Defendants to remove

5   the Facility's barriers, then Defendants violated the ADA by failing to make the required

6   services available through alternative methods, which are readily achievable.

7               Failure to Design and Construct an Accessible Facility

8       21.    Plaintiff alleges on information and belief, that the Facility was designed and

9   constructed (or both) after January 26, 1992 – independently triggering access requirements

10  under Title III or the ADA.

11      22.    The ADA also prohibits designing and constructing facilities or first

12  occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

13  with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

14      23.    Here, Defendants violated the ADA by designing and constructing (or both)

15  the Facility in a manner that was not readily accessible to the physically disabled public –

16  including Moore– when it was structurally practical to do so.[1]

17              Failure to Make an Altered Facility Accessible

18      24.    Plaintiff alleges on information and belief, that the Facility was modified after

19  January 26, 1992, independently triggering access requirements under the ADA.

20      25.    The ADA also requires that facilities altered in a manner that affects (or could

21  affect) its usability must be made readily accessible to individuals with disabilities to the

22  maximum extent feasible.   42 U.S.C. § 12183(a)(2).   Altering an area that contains a

23  facility's primary function also requires making the paths of travel, bathrooms, telephones,

24  and drinking fountains serving that area accessible to the maximum extent feasible. Id.

25      26.    Here, Defendants altered the Facility in a manner that violated the ADA and

26  was not readily accessible to the physically disabled public – including Moore– to the

27  maximum extent feasible.

28

---

[1] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Pondicherry, et al.*                                      Plaintiff's Complaint

MLF0051150

EX. 74-17

Failure to Modify Existing Policies and Procedures

27.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

28.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

29.     Moore seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

30.     Moore also seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## VII.    SECOND CLAIM

### Disabled Persons Act

31.     Moore incorporates the allegations contained in paragraphs 1 through 30 for this claim.

32.     California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

33.     California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

34.     Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

35.     Here, Defendants discriminated against the physically disabled public – including Moore– by denying them full and equal access to the Facility. Defendants also

*Moore v. Pondicherry, et al.*                                    Plaintiff's Complaint

Page 6

MLF0051151

EX. 74-18

1  violated Moore's rights under the ADA, and therefore, infringed upon or violated (or both)
2  Moore's rights under the Disabled Persons Act.

3      36.    For each offense of the Disabled Persons Act, Moore seeks actual damages
4  (both general and special damages), statutory minimum damages of one thousand dollars
5  ($1,000), declaratory relief, and any other remedy available under California Civil Code §
6  54.3.

7      37.    Plaintiff also seeks to enjoin Defendants from violating the Disabled Persons
8  Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees
9  and costs incurred under California Civil Code §§ 54.3 and 55.

10                          VIII.   THIRD CLAIM
11                          **Unruh Civil Rights Act**

12      38.    Moore incorporates the allegations contained in paragraphs 1 through 37 for
13  this claim.

14      39.    California Civil Code § 51 states, in part, that: All persons within the
15  jurisdiction of this state are entitled to the full and equal accommodations, advantages,
16  facilities, privileges, or services in all business establishments of every kind whatsoever.

17      40.    California Civil Code § 51.5 also states, in part that: No business
18  establishment of any kind whatsoever shall discriminate against any person in this state
19  because of the disability of the person.

20      41.    California Civil Code § 51(f) specifically incorporates (by reference) an
21  individual's rights under the ADA into the Unruh Act.

22      42.    Defendants' aforementioned acts and omissions denied the physically
23  disabled public – including Moore – full and equal accommodations, advantages, facilities,
24  privileges and services in a business establishment (because of their physical disability).

25      43.    These acts and omissions (including the ones that violate the ADA) denied,
26  aided or incited a denial, or discriminated against Moore by violating the Unruh Act.

27      44.    Moore was damaged by Defendants' wrongful conduct, and seeks statutory
28  minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

*Moore v. Pondicherry, et al.*                                    Plaintiff's Complaint

MLF0051152

EX. 74-19

45. Moore also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## IX. FOURTH CLAIM

### Denial of Full and Equal Access to Public Facilities

46. Moore incorporates the allegations contained in paragraphs 1 through 45 for this claim.

47. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (build with private funds) shall adhere to the provisions of Government Code § 4450.

48. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

49. Moore alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

50. Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Moore and other persons with physical disabilities. Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## X.    PRAYER FOR RELIEF

WHEREFORE, Moore prays judgment against Defendants for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.

2. Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3. Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both), according to proof.

4. Attorneys' fees, litigation expense, and costs of suit.[2]

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Pondicherry, et al.*                                               Plaintiff's Complaint

Page 8

MLF0051153

5.  Interest at the legal rate from the date of the filing of this action.

6.  For such other and further relief as the Court deems proper.

Dated: December 28, 2011                                    MOORE LAW FIRM


                                                            /s/Tanya Moore
                                                            Tanya E. Moore
                                                            Attorney for Plaintiff,
                                                            Ronald Moore

*Moore v. Pondicherry, et al.*                              Plaintiff's Complaint

MLF0051154

EX. 74-21

# Exhibit 75

```
REPRINT
                        1234

MGA
342 N. CLOVIS
CLOVIS CA 93612

07/20/14      20:04
NONTAX       $0.50
TOTAL        $0.50
CASH         $5.00

TL/NOTAX     $0.50
TAX PD       $0.00
CHANGE       $4.50
RECEIPT NO. 1-8050

THANK YOU FOR
SHOPPING.
```

MLF0043708

EX. 75-2

```
                  HIGH LIQUOR
              342 N CLOVIS AVE STE C
                 CLOVIS CA 93612
                  559-213-0462

Terminal ID: 08728478                    0081
------------------------------
  6/18/14                             8:58 PM

VISA
ACCT #: ************4008
CREDIT SALE
                                    REF #: 004
BATCH #: 065                       AUTH #: 054748

AMOUNT                                 $18.60

              APPROVED

            CUSTOMER COPY
```

MLF0043710

EX. 75-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? _MGA liquor_

2. What is the address of the Facility? _342 N. Clovis Ave. Clovis, CA_

3. When did you visit the Facility? _7/20/14_ (Date) _8:00_ (Time)

4. Was this your first visit to the Facility? _NO_

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. _?_

6. What was the purpose of your visit? _Get drinks_

7. Who accompanied you to the Facility? _Grandson Ronny_

8. What car did you drive to the Facility? _Limo_

9. Did you drive yourself or did you get a ride from someone else? _I drove._

10. Describe a specific location where you parked your vehicle.
    _in d/p parking in front of store_

11. Was it difficult for you to park there?  No ☑    Yes ☐

    If you marked yes, please describe **HOW** it was difficult:

    _____

12. How did you unload from your vehicle? _Rear_

13. What side of the vehicle did you unload from? Driver or passenger? _driver_

14. Did anyone help you to transfer onto your wheelchair? Who? _Grandson Ronny_

15. Did you encounter any problems transferring onto your wheelchair?  No ☑    Yes ☐

    If you marked yes, please describe these problems and **HOW** they prevented you from accessing your wheelchair:

    a) _____
    b) _____
    c) _____

16. Which way did you go from the parking to the entrance of the Facility? _Up ramp to door_

17. Did you encounter any problems on your way to the entrance?  No ☑    Yes ☐

MLF0043702

EX. 75-4

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

If you marked yes, list each problem and *HOW/WHY* it made it difficult for you to get to the facility:

a) _____

b) _____

c) _____

18. Did you encounter any problems opening the door?    No ☐        Yes ☑

If you marked yes, list each problem and **HOW/WHY** it made it difficult for you to get inside the facility:

a) door heavy

b) very Narrow

c) _____

19. What did you purchase (or what meal did you have there)? Schleabeers

20. Did you need to use the restroom while you were at the Facility? Why? No restroom

21. List any problems you encountered and *HOW* they prevented you from accessing any of the following (or write "Did not need to use" or "No problems"):

Sink: N/A

Toilet: N/A

Urinal: N/A

Toilet paper: N/A

Toilet seat covers: N/A

Paper towels: N/A

Hand dryer: N/A

Soap dispenser: N/A

Other: N/A

22. Did you have any problem maneuvering inside the restroom?    No ☐        Yes ☐

If you marked yes, list each problem and *HOW/WHY* it prevented or made it hard to move around the restroom:

a) _____

b) _____

MLF0043703

EX. 75-5

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

23. Did you want to sit down in the facility?        No ☑        Yes ☐

24. If you answered yes to the question above, please describe a specific location of where you sat:

_____

25. Were you able to sit comfortably in the seating provided?        No ☐        Yes ☐

If you marked no, list each reason **WHY** you were not able to sit comfortably in the seating provided:

a) _____

b) _____

c) _____

26. Did you use the counter to pay for purchase? Which one? *only one*

27. Did you pay with cash or credit card? ~~credit~~ *Cash*

28. Was the counter accessible?        No ☑        Yes ☐

If you marked no, list each reason **WHY and HOW** the counter was not accessible:

a) *to wide*

b) _____

c) _____

29. Did you have any other problems inside the Facility?        No ☐        Yes ☑

If you marked yes, list each problem and **HOW and WHY** they caused you to feel uncomfortable in the facility:

a) *Couldn't get down any isles.*

b) *grandson had to get drinks and take them to counter for me*

c) _____

30. Which way did you go after you left the Facility? *out door to car*

31. Any problems getting back to your vehicle?        No ☑        Yes ☐

If you marked yes, list each problem and **HOW** it was a barrier for you to get back to your vehicle:

a) _____

b) _____

MLF0043704

EX. 75-6

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

c) _____

32. Any problems transferring from your wheelchair to your vehicle? *NO grandson helped Me.*

33. Any additional information you believe would assist us in evaluating this inquiry?

_____

_____

MLF0043705

EX. 75-7

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? MGA Liquor

2. What is the address of the Facility? 342 North Clovis Ave Suite C

3. When did you visit the Facility? 6/18/14 (Date) 8:50 p.m. (Time)

4. Was this your first visit to the Facility? No

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. 1

6. What was the purpose of your visit? Drinks

7. Who accompanied you to the Facility? Grandson Ronny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself or did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In the parking

11. Was it difficult for you to park there? If so, why? No

12. How did you unload from your vehicle? Rear

13. What side of the vehicle did you unload from? Driver or passenger? Driver

14. Did anyone help you to transfer onto your wheelchair? Who? Grandson Ronny

15. Did you encounter any problems transferring onto your wheelchair? Describe. No, because Ronny helped me with my chair

16. Which way did you go from the parking to the entrance of the Facility? To accessible

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. Yes, ramp starts in street

18. Did you encounter any problems opening the door? Describe. No

19. What did you purchase (or what meal did you have there)? Drinks

20. Did you need to use the restroom while you were at the Facility? Why? No

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problem"):

MLF0043706

EX. 75-8

Sink: NIA

Toilet: NIA

Urinal: NIA

Toilet paper: NIA

Toilet seat covers: NIA

Paper towels/hand dryer: NIA

Soap dispenser: NIA

Other:

22. Did you have any problem maneuvering inside the restroom? NIA

23. Was there any seating provided inside the Facility? NIA

24. Were you able to sit comfortably at the table? If not, why? NIA

25. Did you use the counter to pay for purchase? Which one? Yes, only one

26. Did you pay with cash or credit card? Credit card

27. Was the counter accessible? If not, describe: No, counter high grandson had to give card and sign reciept

28. Did you have any other problems inside the Facility? Describe. Yes, couldn't get down isles because isles to small.

29. Which way did you go after you left the Facility? Out door too access isle

30. Any problems getting back to your vehicle? Yes, ramp goes into street

31. Any problems transferring from your wheelchair to your vehicle? No, because Bonny helped me.

32. Any additional information you believe would assist us in evaluating this inquiry?

MLF0043707

EX. 75-9



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

July 2, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:    ADAI No.    02050
       MGA Liquor *(342 N Clovis, Clovis, CA)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

**MLF0043709**

**BARRIER MEMO**

ADAI No. :     02050

Case Name:     Moore v. MGA Liquor

Address:     342 N Clovis Ave, Clovis

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Built-up curb ramp | During Plaintiff's first visit (6/18/14) it was difficult for him to ascend the ramp because it extended out into the parking lot.<br><br>(Note: he did not mention this on second visit 7/20/14) | Yes, it is a built up ramp and slope projected into the access aisle. |
| Counter high –NOT HIGH BUT VERY POORLY CONFIGURED AND OSBTRUCTED BY MERCHANISE | During both visits, Plaintiff was unable to reach over to make his purchase at the counter because it was too wide. His grandson had to help. | The counter has lots of merchandise in front of it and lacks clear space so he probably could not face the counter or reach over the merchandise in front of the counter |
| Aisles narrow | During both visits, Plaintiff could not maneuver down the aisles because they lacked necessary wheelchair clearances. His grandson had to go get the items he wanted and bring them to the counter. | Yes, merchandise in the aisles no way for wc to get around the store |
| Door heavy | During Plaintiff's second visit, he had difficulty entering through the doorway because the door was heavy and the doorway was too narrow.<br><br>(Note: he did not mention this on first visit) | I don't think it was narrow but possibly was obstructed by merchandise. Do not include this one. |

1

MLF0043681

EX. 75-11



**MOORE**
**LAW FIRM, P.C.**

February 25, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

     Re:    ADAI No.    02050
              MGA Liquor (342 N. Clovis Ave., Clovis, CA)

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above
referenced facility. If you visit the facility again prior to this lawsuit settling, it is very
important that you continue to send the receipts to my office. Make sure that you reference
that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents
and keep a copy for your records.  Please sign the signature pages where indicated and
return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who
accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do
not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0043691

EX. 75-12

1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: tanya@moorelawfirm.com

5  Attorneys for Plaintiff
   Ronald Moore
6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  RONALD MOORE,                    ) No.
                                     )
12           Plaintiff,              ) **COMPLAINT ASSERTING DENIAL OF**
                                     ) **RIGHT OF ACCESS UNDER**
13      vs.                          ) **AMERICANS WITH DISABILITIES ACT**
                                     ) **FOR INJUNCTIVE RELIEF,**
14  PROLO FAMILY CLOVIS LLC; VINAY   ) **DECLARATORY RELIEF, DAMAGES,**
    VOHRA dba MGA LIQUOR;            ) **ATTORNEYS' FEES AND COSTS (ADA)**
15                                   )
             Defendants.             )
16                                   )
                                     )
17  _____ )

18                         **I. SUMMARY**

19      1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

20  discrimination at the building, structure, facility, complex, property, land, development, and/or

21  surrounding business complex known as:

22              MGA Liquor
                342 North Clovis Avenue, Suite C
23              Clovis, CA 93612
                (hereafter "the Facility")
24

25      2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

26  costs, against PROLO FAMILY CLOVIS LLC and VINAY VOHRA dba MGA LIQUOR

27  (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with

28  Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

MLF0043682

EX. 75-13

3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.      Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

### III.   VENUE

6.      All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

### IV.   PARTIES

7.      Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.      Plaintiff is substantially limited in his ability to walk, and must use a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

### V.   FACTS

9.      The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

10.     Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visits to the Facility on or about June 18, 2014 and July 20, 2014:

          a)      The ramp from the parking lot to the sidewalk leading to the Facility entrance was an improperly configured built-up curb ramp. It was

MLF0043683

EX. 75-14

1 | difficult for Plaintiff to maneuver up and down the ramp and he was
2 | afraid that his wheelchair would roll down the sloped edges.

3      b)    The aisles inside the Facility lacked necessary wheelchair clearances,
4 | preventing Plaintiff from maneuvering freely around the store. He was
5 | unable to go down the aisles that contained the merchandise he wanted
6 | and had to send his grandson to retrieve the items for him.

7      c)    The transaction counter lacked sufficient clear space in front of it, and
8 | Plaintiff was unable to get close enough to the counter to hand his
9 | payment to the cashier. His grandson had to help him conduct his
10 | transaction.

11. The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12. Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13. Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14. At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to

MLF0043684

EX. 75-15

1 comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible
2 Design. Defendants have not removed such impediments and have not modified the Facility to
3 conform to accessibility standards. Defendants have intentionally maintained the Facility in its
4 current condition and have intentionally refrained from altering the Facility so that it complies
5 with the accessibility standards.

6      15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is
7 so obvious as to establish Defendants' discriminatory intent. On information and belief,
8 Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere
9 to relevant building standards; disregard for the building plans and permits issued for the
10 Facility; conscientious decision to maintain the architectural layout (as it currently exists) at
11 the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'
12 property continues to exist in its non-compliant state. Plaintiff further alleges, on information
13 and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the
14 Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

15            **VI.**    **FIRST CLAIM**

16            **Americans with Disabilities Act of 1990**

17            <u>Denial of "Full and Equal" Enjoyment and Use</u>

18      16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for
19 this claim.

20      17.    Title III of the ADA holds as a "general rule" that no individual shall be
21 discriminated against on the basis of disability in the full and equal enjoyment (or use) of
22 goods, services, facilities, privileges, and accommodations offered by any person who owns,
23 operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

24      18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal
25 enjoyment" and use of the goods, services, facilities, privileges and accommodations of the
26 Facility during each visit and each incident of deterrence.

27         <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

28      19.    The ADA specifically prohibits failing to remove architectural barriers, which

MLF0043685

EX. 75-16

1  are structural in nature, in existing facilities where such removal is readily achievable. 42
2  U.S.C. § 12182(b)(2)(A)(iv).

3      20.    When an entity can demonstrate that removal of a barrier is not readily
4  achievable, a failure to make goods, services, facilities, or accommodations available through
5  alternative methods is also specifically prohibited if these methods are readily achievable. Id.
6  § 12182(b)(2)(A)(v).

7      21.    Here, Plaintiff alleges that Defendants can easily remove the architectural
8  barriers at the Facility without much difficulty or expense, and that Defendants violated the
9  ADA by failing to remove those barriers, when it was readily achievable to do so.

10     22.    In the alternative, if it was not "readily achievable" for Defendants to remove
11 the Facility's barriers, then Defendants violated the ADA by failing to make the required
12 services available through alternative methods, which are readily achievable.

13                 Failure to Design and Construct an Accessible Facility

14     23.    Plaintiff alleges on information and belief that the Facility was designed and
15 constructed (or both) after January 26, 1992 – independently triggering access requirements
16 under Title III of the ADA.

17     24.    The ADA also prohibits designing and constructing facilities for first occupancy
18 after January 16, 1993, that aren't readily accessible to, and usable by, individuals with
19 disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

20     25.    Here, Defendants violated the ADA by designing and constructing (or both) the
21 Facility in a manner that was not readily accessible to the physically disabled public –
22 including Plaintiff – when it was structurally practical to do so.[1]

23                 Failure to Make an Altered Facility Accessible

24     26.    Plaintiff alleges on information and belief that the Facility was modified after
25 January 26, 1992, independently triggering access requirements under the ADA.

26
27
28
_____
[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a
private attorney general under either state or federal statutes.

*Moore v. Prolo Family Clovis LLC, et al.*
Complaint
                              Page 5

MLF0043686

EX. 75-17

1   27.    The ADA also requires that facilities altered in a manner that affects (or could

2   affect) its usability must be made readily accessible to individuals with disabilities to the

3   maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

4   primary function also requires making the paths of travel, bathrooms, telephones, and drinking

5   fountains serving that area accessible to the maximum extent feasible. Id.

6   28.    Here, Defendants altered the Facility in a manner that violated the ADA and

7   was not readily accessible to the physically disabled public – including Plaintiff – to the

8   maximum extent feasible.

9                    Failure to Modify Existing Policies and Procedures

10  29.    The ADA also requires reasonable modifications in policies, practices, or

11  procedures, when necessary to afford such goods, services, facilities, or accommodations to

12  individuals with disabilities, unless the entity can demonstrate that making such modifications

13  would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

14  30.    Here, Defendants violated the ADA by failing to make reasonable modifications

15  in policies, practices, or procedures at the Facility, when these modifications were necessary to

16  afford (and would not fundamentally alter the nature of) these goods, services, facilities, or

17  accommodations.

18  31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney

19  fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

20  32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants

21  violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

22                    **VII.    SECOND CLAIM**

23                             **Unruh Act**

24  33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

25  this claim.

26  34.    California Civil Code § 51 states, in part, that: All persons within the

27  jurisdiction of this state are entitled to the full and equal accommodations, advantages,

28  facilities, privileges, or services in all business establishments of every kind whatsoever.

MLF0043687

EX. 75-18

35. California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37. Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39. Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40. Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM
### Denial of Full and Equal Access to Public Facilities

41. Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44. Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

*Moore v. Prolo Family Clovis LLC, et al.*
Complaint

MLF0043688

EX. 75-19

45. Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.

2. Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3. Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4. Attorneys' fees, litigation expense, and costs of suit.[2]

5. Interest at the legal rate from the date of the filing of this action.

6. For such other and further relief as the Court deems proper.

Dated: February 25, 2015             MOORE LAW FIRM, P.C.


                                     /s/ Tanya E. Moore
                                     Tanya E. Moore
                                     Attorneys for Plaintiff
                                     Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.


*Moore v. Prolo Family Clovis LLC, et al.*
Complaint

MLF0043689

EX. 75-20

**VERIFICATION**

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated: February 25, 2015            *Ronald Moore*
                                        Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                 */s/ Tanya E. Moore*
                                 Tanya E. Moore, Attorney for
                                 Plaintiff, Ronald Moore

MLF0043690

EX. 75-21

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 2/25/15

_Ronald Moore_
Ronald Moore

*Moore v. Prolo Family Clovis, LLC (MGA Liquor)*

MLF0043711

# Exhibit 76

WELCOME

SALES RECEIPT
93 004 111587
SHELL
3808 N BLACKSTONE
FRESNO    CA 93726

DATE 04/29/14  8:35PM
INVOICE# 667402
AUTH#   03099Z
  MASTERCARD
  ACCOUNT NUMBER
XXXX XXXX XXXX 7245

PUMP PRODUCT   $/G
  01  UNLD   $4.299

GALLONS   FUEL TOTAL
  4.694    $ 20.18

TOTAL SALE  $ 20.18

  · Choose Shell
  Nitrogen Enriched
  Gasolines. No other
  gasolines protect
      better.

  THANK YOU
COME BACK SOON

MLF0041655

EX. 76-2

```
WELCOME TO
QFS SHELL
SHELL                    93 004 111587
3808 N BLACKSTONE            S1R0206
FRESNO      CA  93726


  Descr.           qty        amount
  ------           ---        ------

      <CUSTOMER COPY>
T  44OZ              1          1.16
   CANDY             1          1.50
   BIG               1          1.99
T  HOT DOG           1          0.59
                              --------
             Sub Total         5.24
                   Tax         0.14
        TOTAL           5.38
             CREDIT  $         5.38


   XXXX XXXX XXXX 7245       MASTERCARD
   INVOICE: 667386       AUTH #: 19574Z

THANK YOU!
PLEASE COME AGAIN
   REG# 0002 CSH# 011 DR# 01  TRAN# 29702
   04/29/14  20:32:32         ST# AB123
```

MLF0041656

EX. 76-3

WELCOME

SALES RECEIPT
93 004 111587
SHELL
3808 N BLACKSTONE
FRESNO      CA 93726

DATE 04/29/14  8:49PM
INVOICE# 667444
AUTH#    54842Z
MASTERCARD
ACCOUNT NUMBER
XXXX XXXX XXXX 7245

PUMP PRODUCT   $/G
01   UNLD   $4.299

GALLONS    FUEL TOTAL
2.326      $ 10.00

TOTAL SALE  $ 10.00

Choose Shell
Nitrogen Enriched
Gasolines. No other
gasolines protect
better.

THANK YOU
COME BACK SOON

MLF0041657

EX. 76-4

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? Shell Gas Station

2. What is the address of the Facility? 3808 N. Blackstone Ave. Fresno CA

3. When did you visit the Facility? 4/09/14 (Date) 8:45 (Time)

4. Was this your first visit to the Facility? N

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. ?

6. What was the purpose of your visit? Gas and snacks

7. Who accompanied you to the Facility? Grandson Ronny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself or did you get a ride from someone else? I drive

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. Pump #1

11. Was it difficult for you to park there? If so, why? No route of travel

12. How did you unload from your vehicle? Rear

13. What side of the vehicle did you unload from? Driver or passenger? Driver

14. Did anyone help you to transfer onto your wheelchair? Who? Grandson Ronny

15. Did you encounter any problems transferring onto your wheelchair? Describe. Raised curb at gas pump had to walk to back of car to get my wheelchair

16. Which way did you go from the parking to the entrance of the Facility? across street to door

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. no ramp

18. Did you encounter any problems opening the door? Describe. Yes door heavy, threshold high, leaving door kept shutting on me

19. What did you purchase (or what meal did you have there)? candy, soda, hotdog

20. Did you need to use the restroom while you were at the Facility? Why? Yes, had to go

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0041653

EX. 76-5

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: N/P

Toilet: N/P

Urinal: N/P

Toilet paper: N/P

Toilet seat covers: N/P

Paper towels/hand dryer: N/P

Soap dispenser: N/P

Other: door extremly heavy, Ice Machine in way of getting to restroom had to go around

22. Did you have any problem maneuvering inside the restroom? N/P

23. Was there any seating provided inside the Facility? N/A

24. Were you able to sit comfortably at the table? If not, why? N/A

25. Did you use the counter to pay for purchase? Which one? Yes only one

26. Did you pay with cash or credit card? Credit

27. Was the counter accessible? If not, describe: No couldn't reach grandson had to sign

28. Did you have any other problems inside the Facility? Describe. fountain drinks to high Hotdogs to high grandson had to get Me both. Hard to Move around Store had to go up and back down another Isle, Couldn't reach Pump Bonny had to Push numbers

29. Which way did you go after you left the Facility? Out door to car

30. Any problems getting back to your vehicle? Dave Went lifted up by pumps

31. Any problems transferring from your wheelchair to your vehicle? No because grandson helped Me to door and put chair in car

32. Any additional information you believe would assist us in evaluating this inquiry?

hard to get threw store and reach soda and hot dogs

MLF0041654

EX. 76-6



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

June 11, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:　　**ADAI No.　02020**
　　　　**Shell** *(3808 N Blackstone)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0041652

EX. 76-7

## BARRIER MEMO

ADAI No. :     02020

Case Name:     Moore v. Shell

Address:       3808 N Blackstone, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Door heavy/raised threshold | The entrance door was heavy and had a raised threshold. It was difficult for Plaintiff to wheel over the threshold and the door closed on him in the process. | Yes |
| Route to restroom obstructed by ice machine | The route to the restroom was obstructed by an ice machine, which was difficult for Plaintiff to maneuver around. | Y |
| Restroom door heavy | The restroom door was extremely heavy and difficult for Plaintiff to open. | Y |
| Counter high | The transaction counter was too high for Plaintiff to sign his receipt on the counter. His grandson had to sign for him. | N |
| Fountain drinks, hot dogs too high | The fountain drinks and hot dogs were too high for Plaintiff to reach. His grandson had to get them for him. | N |
| Aisles lacked clearance | The aisles lacked necessary wheelchair clearances, making it hard for Plaintiff to maneuver around inside the store. He was unable to turn around within the aisle. | Y |
| Could not reach pump | Plaintiff was unable to reach the gas pump and had to have his grandson use the keypad. | N |
| Uneven pavement near gas pump | The pavement near the gas pump (pump #1) was lifted up, creating an even surface that made it difficult for Plaintiff to maneuver. | Y |

1

MLF0041641

EX. 76-8



**MOORE**
LAW FIRM, P.C.

August 20, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

      Re:    ADAI No.    02020
               QFS Incorporated (Shell - 3808 N Blackstone)
               3808 N Blackstone Ave, Fresno, CA

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records.  Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.


Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

**MLF0041642**

EX. 76-9

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RONALD MOORE,<br><br>                    Plaintiff,<br><br>          vs.<br><br>QFS INCORPORATED dba QFS SHELL;<br>P & R KORD, INC. dba QFS SHELL;<br>NICOLE S. LARSON, individually and dba<br>QFS SHELL;<br><br>                    Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> QFS Shell
> 3808 N Blackstone Avenue
> Fresno, CA 93726
> (hereafter "the Facility")

2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against QFS INCORPORATED dba QFS SHELL; P & R KORD, INC. dba QFS SHELL; and NICOLE S. LARSON, individually and dba QFS SHELL (hereinafter

MLF0041643

EX. 76-10

1   collectively referred to as "Defendants"), pursuant to the Americans with Disabilities Act of

2   1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

**II.   JURISDICTION**

3   3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

5   claims.

6   4.   Supplemental jurisdiction for claims brought under parallel California law –

7   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

8   5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

**III.   VENUE**

10   6.   All actions complained of herein take place within the jurisdiction of the United

11   States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

12   § 1391(b), (c).

**IV.   PARTIES**

14   7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or

15   persons), firm, and/or corporation.

16   8.   Plaintiff requires the use of a wheelchair when traveling about in public.

17   Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

18   United States laws, and a member of the public whose rights are protected by these laws.

**V.   FACTS**

20   9.   The Facility is a public accommodation facility, open to the public, which is

21   intended for nonresidential use and whose operation affects commerce.

22   10.   Plaintiff visited the Facility and encountered barriers (both physical and

23   intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

24   goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

25   encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

26   about April 29, 2014:

27   a)   Plaintiff parked at a gas pump at the Facility. The pavement near the gas

28        pump was raised, creating an uneven surface that made it difficult for

*Moore v. QFS Incorporated, et al.*
Complaint

Page 2

MLF0041644

1    Plaintiff to transfer between his vehicle and wheelchair and to maneuver

2    around the pump.

3    b)    The Facility entrance door was heavy and had a raised threshold. It was

4    difficult for Plaintiff to hold the door open long enough to wheel over

5    the threshold into the Facility, and the door closed on him in the process.

6    c)    The route to the restroom in the Facility lacked necessary wheelchair

7    clearances and was obstructed by an ice machine, which was difficult for

8    Plaintiff to maneuver around.

9    d)    The restroom door was extremely heavy and difficult for Plaintiff to

10    open.

11    e)    The aisles inside the Facility lacked necessary wheelchair clearances,

12    preventing Plaintiff from maneuvering around freely inside the store.

13    Plaintiff found himself unable to turn himself around within an aisle that

14    he travelled down.

15    11.    The barriers identified in paragraph 10 herein are only those that Plaintiff

16    personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist

17    at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once

18    such additional barriers are identified as it is Plaintiff's intention to have all barriers which

19    exist at the Facility and relate to his disabilities removed to afford him full and equal access.

20    12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

21    Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

22    accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

23    Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

24    once the barriers are removed.

25    13.    Defendants knew, or should have known, that these elements and areas of the

26    Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

27    the physically disabled. Moreover, Defendants have the financial resources to remove these

28    barriers from the Facility (without much difficulty or expense), and make the Facility

MLF0041645

EX. 76-12

1   accessible to the physically disabled. To date, however, Defendants refuse to either remove

2   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

3       14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

4   and authority to modify the Facility to remove impediments to wheelchair access and to

5   comply with the 2010 Standards for Accessible Design and the California Code of Regulations

6   Title 24. Defendants have not removed such impediments and have not modified the Facility to

7   conform to accessibility standards. Defendants have intentionally maintained the Facility in its

8   current condition and have intentionally refrained from altering the Facility so that it complies

9   with the accessibility standards.

10      15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

11  so obvious as to establish Defendants' discriminatory intent. On information and belief,

12  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

13  to relevant building standards; disregard for the building plans and permits issued for the

14  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

15  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

16  property continues to exist in its non-compliant state. Plaintiff further alleges, on information

17  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

18  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

19                  **VI.    FIRST CLAIM**

20              **Americans with Disabilities Act of 1990**

21              Denial of "Full and Equal" Enjoyment and Use

22      16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

23  this claim.

24      17.    Title III of the ADA holds as a "general rule" that no individual shall be

25  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

26  goods, services, facilities, privileges, and accommodations offered by any person who owns,

27  operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

28      18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

*Moore v. QFS Incorporated, et al.*
Complaint

MLF0041646

EX. 76-13

1   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

2   Facility during each visit and each incident of deterrence.

3   Failure to Remove Architectural Barriers in an Existing Facility

4   19.   The ADA specifically prohibits failing to remove architectural barriers, which

5   are structural in nature, in existing facilities where such removal is readily achievable. 42

6   U.S.C. § 12182(b)(2)(A)(iv).

7   20.   When an entity can demonstrate that removal of a barrier is not readily

8   achievable, a failure to make goods, services, facilities, or accommodations available through

9   alternative methods is also specifically prohibited if these methods are readily achievable. Id.

10   § 12182(b)(2)(A)(v).

11   21.   Here, Plaintiff alleges that Defendants can easily remove the architectural

12   barriers at the Facility without much difficulty or expense, and that Defendants violated the

13   ADA by failing to remove those barriers, when it was readily achievable to do so.

14   22.   In the alternative, if it was not "readily achievable" for Defendants to remove

15   the Facility's barriers, then Defendants violated the ADA by failing to make the required

16   services available through alternative methods, which are readily achievable.

17   Failure to Design and Construct an Accessible Facility

18   23.   Plaintiff alleges on information and belief that the Facility was designed and

19   constructed (or both) after January 26, 1992 – independently triggering access requirements

20   under Title III of the ADA.

21   24.   The ADA also prohibits designing and constructing facilities for first occupancy

22   after January 16, 1993, that aren't readily accessible to, and usable by, individuals with

23   disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

24   25.   Here, Defendants violated the ADA by designing and constructing (or both) the

25   Facility in a manner that was not readily accessible to the physically disabled public –

26   including Plaintiff – when it was structurally practical to do so.[1]

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. QFS Incorporated, et al.*
Complaint

MLF0041647

EX. 76-14

<u>Failure to Make an Altered Facility Accessible</u>

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.   SECOND CLAIM

### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

MLF0041648

EX. 76-15

34.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.   California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.   Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.   Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.   Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.   Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

MLF0041649

EX. 76-16

44.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.     Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.     Attorneys' fees, litigation expense, and costs of suit.[2]

5.     Interest at the legal rate from the date of the filing of this action.

6.     For such other and further relief as the Court deems proper.

Dated: July 28, 2014                         MOORE LAW FIRM, P.C.

                                             /s/ Tanya E. Moore
                                             Tanya E. Moore
                                             Attorneys for Plaintiff
                                             Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. QFS Incorporated, et al.*
Complaint
                                    Page 8

MLF0041650

EX. 76-17

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:  July 28, 2014            /s/  Ronald Moore
                                 Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

/s/ Tanya E. Moore
Tanya E. Moore, Attorney for
Plaintiff, Ronald Moore

MLF0041651

EX. 76-18

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 7/28/14                          _Ronald Moore_
                                        Ronald Moore

*Ronald Moore v. QFS Incorporated, et al. (QFS Shell)*

MLF0041658

EX. 76-19