# Exhibit 77

USA LIQUOR
1626 N. Cedar Ave.
Fresno, CA 93703
(559) 251-5285

**SALES RECEIPT**

Transaction #:      807101
Date:   5/21/2014      Time:  1:53:02 PM
Cashier:   04      Register #:   1

| Item | Description | Amount |
|------|-------------|--------|
| 402650 | SNICKERS KING | $1.69 |
| 344400 | REESES | $0.99 |
| 1 | MISS. TAX ITEM | $2.19 |
| 2 | MISS. NON-TAX | $0.05 |
| 1 | MISS. TAX ITEM | $1.00 |
| FEE | FEE | $0.50 |

Sub Total      $6.42
State Tax      $0.26
Total      $6.68

Credit Card Tendered      $6.68
Card: XXXXXXXXXXXXX7245
Auth: 755952
Change Due      $0.00



*807101*
Thank you for shopping
USA LIQUOR
We hope you'll come back soon!

**DUPLICATE RECEIPT**

MLF0040341

EX. 77-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? USA Liquors

2. When did you visit the Facility? 5/21/14 (Date) 1:45 pm (Time)

3. What is the address of the Facility? 1626 North Cedar Ave Fresno, CA

4. Was this your first visit to the Facility? No

5. How many times have you visited the Facility? 7 If more than one visit, please list the date and time if you know it. 7

6. What was the purpose of your visit? Something to drink and candy.

7. Who accompanied you to the Facility? Grandson Ronny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself of did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In dip parking spot in front of store

11. Was it difficult for you to park there? Yes, because no signs.

12. Why? No, route of travel, road cracked

13. How did you unload from your vehicle? Rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? Grandson Ronny

16. What problems did you encounter transferring onto your wheelchair?

Yes, because pavement cracked and uneven

17. Which way did you go from the parking to the entrance of the Facility? To straight to the door a little bit to the right.

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

Yes, threshold was built up like a ramp

19. Did you encounter any problems opening the door? Describe why. Yes, because threshold was cement all uneven and cracked.

20. Did you have any problems inside the Facility? Describe. Yes, because small

MLF0040338

EX. 77-3

fountain drinks too high and also could not get into isle to get candy, had to have grandson get it.

21. What did you purchase (or what meal did you have there). Describe: fountain drinks, candy

22. Have you used the restroom at the Facility? N/A

23. Why did you need to use the restroom? N/A

24. Did you use the sink? N/A

25. Any problems? N/A

26. Did you use the urinal? N/A

27. Did you use the toilet? N/A

28. Did you use the toilet paper? N/A

29. Did you use paper towels? N/A

30. Did you use the soap dispenser? N/A

31. Did you have any problem maneuvering inside the restroom? N/A

32. Where did you sit? N/A

33. Was there any seating provided inside the Facility? N/A

34. Was it wheelchair accessible? No

35. Where you comfortable at the table? N/A

36. Did you use the counter to pay for purchase? Yes

37. Which counter did you use? Only one

38. Was the counter accessible? No, counter too high, grandson Ronny had to give cashier card and had to sign reciept.

39. Which way did you go after you left the Facility? Out door to car

40. Any problems getting back to your vehicle? Yes, because threshold at door and door was narrow and pavement was cracked.

41. Any problems transferring from your wheelchair to your vehicle? No, grandson Ronny helped me put wheelchair in car.

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0040339



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

May 30, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

     **RE:**    **ADAI No. 02000**
               **USA Liquors *(1626 N. Cedar Ave, Fresno, 93703)***

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0040340

**BARRIER MEMO**

**ADAI No. :**     02000

**Case Name:**    Moore v. USA Liquors

**Address:**     1626 N. Cedar Ave., Fresno, CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No Designated Handicapped Parking Signs | The client had a difficult time trying to locate the handicapped parking spot because there were no signs indicating its whereabouts. | |
| No Route of Travel | There was no direct route of travel from the handicapped parking spot to the facility which was both dangerous and inconvenient. | |
| Cracked and Uneven Pavement | The pavement leading to the entrance of the facility was severely cracked and uneven. This was extremely uncomfortable for the client because his wheel chair could not travel along smoothly or safely. | |
| Cracked and Uneven Ramp | Instead of a threshold at the entrance to the facility, there was a slightly raised cement ramp. This too was cracked and uneven and made it difficult for the client's chair to wheel along easily. | |
| High Soda Dispenser | The client wished to access the soda dispenser but it was too high and he needed the help of his grandson. | |
| Narrow Aisles | The client also wanted to choose some candy to purchase, but the aisle was so tight that he could not travel through it. Once again, the client's grandson helped him. | |
| High Counter | The counter at the facility was too high for the client to access so instead, his grandson slid his credit card and signed the receipt. | |
| Narrow Entrance | The entry way at the facility was very narrow which made it quite uncomfortable and awkward for the client to maneuver his way inside. | |

1

MLF0040336

EX. 77-6

**BARRIER MEMO**

ADAI No. :     02000

Case Name:     Moore v. USA Liquors

Address:     1626 N. Cedar Ave., Fresno, CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No Designated Handicapped Parking Signs | The client had a difficult time trying to locate the handicapped parking spot because there were no signs indicating its whereabouts. | No, there is now a sign posted. |
| No Route of Travel | There was no direct route of travel from the handicapped parking spot to the facility which was both dangerous and inconvenient. | Yes, the sectioned off route is triangular and potentially too narrow if both disabled spots used. **Access aisle is improperly configured; route to sidewalk is not wide enough.** |
| Cracked and Uneven Pavement | The pavement leading to the entrance of the facility was severely cracked and uneven. This was extremely uncomfortable for the client because his wheel chair could not travel along smoothly or safely. | Yes |
| Cracked and Uneven Ramp | Instead of a threshold at the entrance to the facility, there was a slightly raised cement ramp. This too was cracked and uneven and made it difficult for the client's chair to wheel along easily. | Yes, and the ramp goes up to threshold of door without landing. |
| High Soda Dispenser | The client wished to access the soda dispenser but it was too high and he needed the help of his grandson. | **It looks like controls are too high** |
| Narrow Aisles | The client also wanted to choose some candy to purchase, but the aisle was so tight that he could not travel through it. Once again, the client's grandson helped him. | Yes Several chokepoints from stands and items. |
| High Counter | The counter at the facility was too high for the client to access so instead, his grandson slid his credit card and signed the receipt. | **Not sure** |
| Narrow Entrance | The entry way at the facility was very narrow which made it quite uncomfortable and awkward for the client to maneuver his way inside. | Yes Not sure about width but it lacks strike side clearances |

1

MLF0040334

EX. 77-7

WL comments in red

MLF0040335

EX. 77-8



**MOORE**
LAW FIRM, P.C.

March 2, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

     Re:   ADAI No.   02000
            USA Liquors (1626 N. Cedar Ave, Fresno, CA 93703)

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0056326

EX. 77-9

**Exhibit 78**

```
WL
ROTTEN ROBBIE #42
TP06186981-001  ROTTEN ROBBIE #42
455 EAST JULIAN ST
SAN JOSE    CA 95112


    Descr.             qty         amount
    ------             ---         ------
                        1           5.00
    LOTTO                          --------
                    Sub Total        5.00
                        Tax          0.00
         TOTAL                     5.00
                    CASH  $          5.00

Try our .99
16oz Coffee!!
   REG# 0002 CSH# 003 DR# 01  TRAN# 22096
   01/20/10  16:13:06            ST#   42
```

M000076

MLF056559

EX. 78-2

```
                    Welcome to
                 Rotten Robbie #42
        TP06186981-001  ROTTEN ROBBIE #42
        455 EAST JULIAN ST
        SAN JOSE     CA 95112


          Descr.           qty        amount
          -------          ---        ------
        2 DT COKE 12OZ       1          0.99
             .05TCRV                    0.05
          KR MOZZ STRING C   3          2.37
                                    ------------
                 Sub Total              3.41
                     Tax               0.10
        TOTAL                        3.51
                     CASH   $         10.00
                     Change $         -6.49
               R U a fan in real life?
             Become a fan on Facebook!
        REG# 0002 CSH# 006 DR# 01  TRAN# 23697
        03/09/10  09:05:59         ST#   42
```

M000077

EX. 78-3

MLF056560

```
                    Welcome to
               Rotten Robbie #42
     I 61869  001  ROTTEN ROBBIE #42
     405 EAS  MILAN  T
     SAN JOSE   CA 95112


     Descr.            qty         amount
     ------            ---         ------
     TRONT VP TROP TW    1          1.49
                                 ----------
                    Sub Total       1.49
                        Tax         0.00
            TOTAL               1.49
                    CASH  $       10.00
                    Change $      -8.51
                    Have an
                  awesome day!
     REG# 0003 CSH# 004 DR# 01  TRAN# 37385
     09/04/10  13:48:55          Si#   42
```

M000078

EX. 78-4

MLF056561

K. Randolph Moore, SBN 106933
Tanya E. Moore, Esq. SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone: (408) 298-2000
Facsimile: (408) 298-6046
Email: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

RONALD MOORE,

           Plaintiff,

    vs.

ROBINSON OIL CORPORATION, dba
ROTTEN ROBBIE #42,

         Defendant.

No. 5:10-cv-01014-HRL

**FIRST AMENDED COMPLAINT FOR
DAMAGES, DECLARATORY AND
INJUNCTIVE RELIEF, ATTORNEY
FEES AND COSTS (ADA Access)**

## I.    SUMMARY

1.    This is a civil rights action by plaintiff Ronald Moore ("Moore") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Rotten Robbie #42
> 455 East Julian St.
> San Jose, CA 95112
> **(hereinafter "Store and Gas Station")**

2.    Moore seeks damages, injunctive and declaratory relief, attorney fees and costs, against ROBINSON OIL CORPORATION dba, ROTTEN ROBBIE #42 ("Defendant"), owners and operators of Rotten Robbie ("Store and Gas Station"), pursuant to the Americans

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

EX. 78-5

MLF056464

DATE: _10/6/10_

_Ronald Moore_
CLIENT'S SIGNATURE

DATE: _10/6/10_

_Ronald Moore_
CLIENT'S SIGNATURE

_80 N Hughes_
ADDRESS

_clovis CA 93612_
CITY

_559 298 3228_
TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE: _____

MOORE LAW FIRM, PC

_____
ATTORNEY FOR

MLF056465

EX. 78-6

1   with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California

2   statutes.

3                              II.      JURISDICTION

4        3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

5   ADA claims.

6        4.      Supplemental jurisdiction for claims brought under parallel California law –

7   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

8        5.      Moore's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

9                              III.     VENUE

10       6.      All actions complained of herein take place within the jurisdiction of the

11  United States District Court, Northern District of California, and venue is invoked pursuant

12  to 28 U.S.C. § 1391(b),(c).

13                             IV.      PARTIES

14       7.      Defendant owns, operates, and/or leases the Store and Gas Station, and

15  consists of a person (or persons), firm, and/or corporation.

16       8.      Moore was diagnosed with hydrocephalus, degenerative disc disease of the

17  lower back, cervical radiculopathy, B knee arthritis and chronic pain syndrome since 2002

18  and requires the use of a wheelchair when traveling about in public.  Consequently, Moore is

19  physically disabled, as defined by all applicable California and United States law and the

20  member of the public whose rights are protected by these laws.

21                             V.       FACTS

22       9.      The Store and Gas Station is a public accommodation facility/retail store,

23  open to the public, which is intended for nonresidential use and whose operation affects

24  commerce.

25       10.     Moore visited the Store and Gas Station and encountered barriers (both

26  physical and intangible) that interfered with – if not outright denied – his ability to use and

27  enjoy the goods, services, privileges, and accommodations offered at the facility.  Moore

28  personally encountered the following barriers:

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056466

1        a)     When Moore arrived at the Store and Gas Station, he was unable to

2 park in the parking space which appeared to be designated as accessible because there was

3 another car parked there without distinguishing placards.  Therefore, Moore had to park at a

4 distance from the store, offload his wheelchair, and travel back to the store.

5        b)     Moore had to be pushed in his wheelchair to the entrance to the Store

6 and Gas Station because the excessive slope made it too difficult for him to independently

7 propel his wheelchair.

8        c)     Once inside the store, Moore could not travel down the aisles and

9 make turns in his wheelchair due to insufficient clearances.

10        d)     Moore attempted to use the service/cashier counter, but it was too high

11 for him to reach in his wheelchair.

12        e)     Moore attempted to use the restroom in his wheelchair, but was unable

13 to get inside the restroom because of the improper configuration.

14        f)     After being unable to use the restroom at the Gas Station and Store,

15 Moore tried to use the restroom located at the business next door but the route had excessive

16 slopes, and was uneven and dangerous.

17      11.     Moore was, and continues to be, deterred from visiting the Facility because he

18 knows that the Facility's goods, services, facilities, privileges, advantages, and

19 accommodations were and are unavailable to him due to his physical disabilities. Moore

20 continues to be deterred from visiting the Facility because of the future threats of injury

21 created by the barriers, of which he has been made aware, due to his physical disabilities

22 including, but not limited to:

23      <u>Parking</u>:

24      a)     Warning signs posted at the entrances to off-street parking facilities do not

25 include the address where towed vehicles may be reclaimed or the phone number to call to

26 have the vehicle reclaimed;

27      b)     The van accessible parking space does not have an access aisle on the

28 passenger side of the vehicle that is outlined in blue;

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056467

EX. 78-8

1        c)     A bumper or curb is not provided at the van accessible parking space to

2    prevent the encroachment of cars over the required width of the walkway;

3        d)     **The accessible parking space does not have a 36" x 36" profile view of a**

4    **wheelchair with occupant painted in white on blue background that is visible when a vehicle**

5    **is properly parked in the space;**

6        e)     The surface of the accessible parking space and access aisles exceeds 2%

7    maximum slope;

8        f)     An illegal built-up curb ramp encroaches upon parking space access aisle

9    located to the left of the nominally designated "van-accessible" parking space;

10       g)     Parking spaces nominally designated accessible is **less than 18' minimum**

11   **length;**

12       h)     Surface identification of the loading and unloading access aisle is improper

13   and the letters "NO PARKING" do not appear on the ground within each access aisle;

14   Exterior Accessible Routes:

15       i)     There is no accessible route within the boundary of the Store site provided to

16   an accessible building entrance from the gas station pumps; public streets and sidewalks; or

17   the accessible parking;

18       j)     There are no required signs posted along exterior route of travel displaying the

19   international symbol of accessibility directing persons with disabilities to the accessible

20   route;

21       k)     **The sidewalk or walking area is not 48" minimum width at all locations;**

22       l)     Slopes on the accessible paths are over 5% or 8.33% for ramps with a

23   maximum cross-slope of 2%;

24   Accessible Entrance:

25       m)    There is no signage containing the International Symbol of Accessibility

26   provided at the public entrance to the Store;

27       n)     There is no signage at the non-accessible entrances to the Store directing

28   persons with disabilities to the accessible entrance;

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056468

o)     The doormats at the entrance are not adequately anchored to prevent interference with wheelchair traffic;

p)     A 60" x 60" clear door landing is not provided with a minimum 24" strike side for the exterior and 18" for the interior;

<u>Sanitary Facilities:</u>

q)     There is no international symbol of accessibility provided on the accessible toilet facilities;

r)     There is not proper strike side clearance in front of the restroom door;

s)     There is not a clear, unobstructed path to the restroom door;

t)     The door of the toilet facility is not equipped with a door closer;

u)     The door of the toilet facility requires over 5 lbs of pressure to operate;

v)     The hardware installed on the toilet door has a shape that requires tight grasping, pinching and twisting of the wrist to operate;

w)     Door opening hardware is installed more than 44" above the floor;

x)     The operable part of the towel dispenser is located over 40" above the floor;

y)     The flush valve is not located on the wide side of the toilet area;

z)     Grab bars are not mounted 33" above the floor (or 36" for back of tank type toilets);

aa)     The edge of the side grab bar is not placed within 12" of the back wall;

bb)     The side grab bar is not a minimum of 42" long and extending 24" beyond the front of the water closet, 54" from the back wall, and the back grab bar is not 36" long and extending 24" on the wide side of the toilet's centerline;

cc)     There is not 32" of clear space on one side of the toilet;

dd)     There is no required 18" distance from the side-wall to the centerline of the water closet provided (it is obstructed by toilet paper dispenser which protrudes more than 5" into the required 18" space);

ee)     Tissue, soap dispensers and other items on an accessible route are over 40" above the floor and do not provide the necessary 30" x 48" clear floor space;

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

EX. 78-10

MLF056469

1       ff)     An 18" x 60" deep clear floor space is not provided on the pull side of the

2 door;

3       gg)    There is not 4' of clear space in front of the toilet;

4       hh)    The operable part of the toilet seat dispenser is located more than 40" above

5 the floor;

6       ii)     There is less than 28" between the toilet and other plumbing fixtures;

7       jj)     The lavatory is not properly configured for accessibility;

8       kk)    There is not a 30" x 48" clear floor space in front of the lavatory allowing a

9 forward approach by a wheelchair;

10     <u>Accessibility of Goods Services:</u>

11       ll)     The mats throughout the store are not adequately anchored to prevent

12 interference with wheelchair traffic;

13       mm)   Many aisles inside the store have clearance less than 36" in width for aisles

14 serving one side, and less than 44" clearance where aisles serve both sides;

15       nn)    Emergency devices are not located on an accessible route;

16       oo)    There is insufficient space provided to make a 180 degree turn around the

17 aisles;

18       pp)    There is no accessible check stand/service counter provided;

19       qq)    The cashier counter is not accessible;

20       rr)     There is not a clear, unobstructed accessible path and clear floor area at the

21 service counter area;

22       ss)     The water tab located in the soda dispensing machine exceeds 54" in height;

23       tt)     Condiments such as creamer are located out of wheelchair reach;

24       uu)    The Store has no signage stating that assistance is available to persons with

25 disabilities in reaching items;

26       vv)    The accessible ATM is not designated with the International Symbol of

27 Accessibility;

28

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

EX. 78-11

MLF056470

<u>Fueling Island:</u>

ww)   There is no properly located accessible card reading device provided at the gas dispensing facility;

xx)   There is no accessible route from the fueling island to the accessible entrance;

yy)   Proper signage is not located at the pumps;

zz)   There is no accessible pump;

aaa)   There is not 24" of unobstructed, clear space on the card reader side of the pump;

bbb)   There is not at least one window washer that is a maximum of 40" above the floor;

ccc)   There is not a 30" x 48" clear floor space at the window washing bucket;

ddd)   An emergency pump shut off is not located on an accessible route 48" maximum above floor and between 20' – 100' with a sign saying "EMERGENCY FUEL SHUT OFF";

eee)   The card reader, emergency shut off control and pump control buttons do not comply with side reach requirements;

fff)   There is not an emergency procedure sign located at the pumps on an accessible route;

These barriers prevented Moore from enjoying full and equal access.  Once the barriers are removed, Moore intends to return to the Store and Gas Station.

12.   Moore also encountered barriers at the Store and Gas Station which violate state and federal law, but were unrelated to his disability.  Nothing within this complaint, however, should be construed as an allegation that Moore is seeking to remove barriers unrelated to his disability.

13.   Defendant knew or should have known that these elements and areas of the Store and Gas Station were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, Defendant has the financial resources to remove these barriers from the Store and Gas Station (without much difficulty or expense),

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056471

EX. 78-12

1 │ and make the Store and Gas Station accessible to the physically disabled. To date, however,

2 │ Defendant refuses to either remove those barriers or seek an unreasonable hardship

3 │ exemption to excuse non-compliance.

4 │     14. At all relevant times, Defendant has possessed and enjoyed sufficient control

5 │ and authority to modify the Store and Gas Station to remove impediments to wheelchair

6 │ access and to comply with the Americans with Disabilities Act Accessibility Guidelines and

7 │ Title 24 regulations. Defendant has not removed such impediments and has not modified the

8 │ Store and Gas Station to conform to accessibility standards. Defendant has intentionally

9 │ maintained the Store and Gas Station in its current condition and has intentionally refrained

10 │ from altering the Store and Gas Station so that it complies with the accessibility standards.

11 │     15. Moore further alleges, on information and belief, that the Store and Gas

12 │ Station is not in the midst of a remodel, and that the barriers present at the Store and Gas

13 │ Station are not isolated (or temporary) interruptions in access due to maintenance or repairs.[1]

14 │ VI.    FIRST CLAIM

15 │ **Americans with Disabilities Act of 1990**

16 │ <u>Denial of "Full and Equal" Enjoyment and Use</u>

17 │     16. Moore incorporates the allegations contained in paragraphs 1 through 15 for

18 │ this claim.

19 │     17. Title III of the ADA holds as a "general rule" that no individual shall be

20 │ discriminated against on the basis of disability in the full and equal enjoyment (or use) of

21 │ goods, services, facilities, privileges, and accommodations offered by any person who owns,

22 │ operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

23 │     18. Defendant discriminated against Moore by denying him "full and equal

24 │ enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

25 │ Store and Gas Station during each visit and each incident of deterrence.

26 │ //

27 │                              //

28 │

---

[1] 28 C.F.R. § 36.211(b)

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

EX. 78-13

MLF056472

1      <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

2      19.     The ADA specifically prohibits failing to remove architectural barriers, which

3    are structural in nature, in existing facilities where such removal is readily achievable.  42

4    U.S.C.  §  12182(b)(2)(A)(iv).    The term "readily achievable" is defined as "easily

5    accomplishable and able to be carried out without much difficulty or expense." <u>Id</u>. §

6    12181(9).

7      20.     When an entity can demonstrate that removal of a barrier is not readily

8    achievable, a failure to make goods, services, facilities, or accommodations available through

9    alternative methods is also specifically prohibited if these methods are readily achievable.

10   <u>Id</u>. § 12182(b)(2)(A)(v).

11     21.     Here, Moore alleges that Defendant can easily remove the architectural

12   barriers at Store and Gas Station without much difficulty or expense, and that Defendant

13   violated the ADA by failing to remove those barriers, when it was readily achievable to do

14   so.

15     22.     In the alternative, if it was not "readily achievable" for Defendant to remove

16   the Store's barriers, then Defendant violated the ADA by failing to make the required

17   services available through alternative methods, which are readily achievable.

18     <u>Failure to Design and Construct and Accessible Facility</u>

19     23.     Moore alleges, on information and belief, that the Store and Gas Station was

20   designed and constructed (or both) after January 26, 1992 – independently triggering access

21   requirements under Title III or the ADA.

22     24.     The ADA also prohibits designing and constructing facilities for first

23   occupancy after January 16, 1993 that aren't readily accessible to, and usable by, individuals

24   with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

25   //

26   //

27   //

28   //

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

EX. 78-14

MLF056473

1    25.    Here, Defendant violated the ADA by designing and constructing (or both)

2  the Store and Gas Station in a manner that was not readily accessible to the physically

3  disabled public – including Moore – when it was structurally practical to do so.[2]

4                  Failure to Make an Altered Facility Accessible

5    26.    Moore alleges, on information and belief, that the Store and Gas Station was

6  modified after January 26, 1992, independently triggering access requirements under the

7  ADA.

8    27.    The ADA also requires that facilities altered in a manner that affects (or could

9  affect) its usability must be made readily accessible to individuals with disabilities to the

10  maximum extent feasible.  42 U.S.C. § 12183(a)(2).  Altering an area that contains a

11  facility's primary function also requires adding making the paths of travel, bathrooms,

12  telephones, and drinking fountains serving that area accessible to the maximum extent

13  feasible. Id.

14    28.    Here, Defendant altered the Store and Gas Station in a manner that violated

15  the ADA and was not readily accessible to the physically disabled public – including  Moore

16  – to the maximum extent feasible.

17                 Failure to Modify Existing Policies and Procedures

18    29.    The ADA also requires reasonable modifications in policies, practices, or

19  procedures, when necessary to afford such goods, services, facilities, or accommodations to

20  individuals with disabilities, unless the entity can demonstrate that making such

21  modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

22    30.    Here, Defendant violated the ADA by failing to make reasonable

23  modifications in policies, practices, or procedures at the Store and Gas Station, when these

24  modifications were necessary to afford (and would not fundamentally alter the nature of)

25  these goods, services, facilities, or accommodations.

26    31.    Moore seeks all relief available under the ADA (i.e., injunctive relief, attorney

27  fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

28
_____

[2] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney
*Moore v. Robinson Oil Corporation.*
First Amended Complaint

EX. 78-15

MLF056474

1    32.    Moore also seeks a finding from this Court (i.e., declaratory relief) that

2    Defendant violated the ADA in order to pursue damages under California's Unruh Civil

3    Rights Act or Disabled Persons Act.

4                          VII.    SECOND CLAIM

5                              **Disabled Persons Act**

6    33.    Moore incorporates the allegations contained in paragraphs 1 through 32 for

7    this claim.

8    34.    California Civil Code § 54 states, in part, that: Individuals with disabilities

9    have the same right as the general public to the full and free use of the streets, sidewalks,

10   walkways, public buildings and facilities, and other public places.

11   35.    California Civil Code § 54.1 also states, in part, that: Individuals with

12   disabilities shall be entitled to full and equal access to accommodations, facilities, telephone

13   facilities, places of public accommodation, and other places to which the general public is

14   invited.

15   36.    Both sections specifically incorporate (by reference) an individual's rights

16   under the ADA.  See Civil Code §§ 54(c) and 54.1(d).

17   37.    Here, Defendant discriminated against the physically disabled public –

18   including Moore – by denying them full and equal access to the Store and Gas Station.

19   Defendant also violated Moore's rights under the ADA, and therefore, infringed upon or

20   violated (or both) Moore's rights under the Disabled Persons Act.

21   38.    For each offense of the Disabled Persons Act, Moore seeks actual damages

22   (both general and special damages), statutory minimum damages of one thousand dollars

23   ($1,000), declaratory relief, and any other remedy available under California Civil Code §

24   54.3.

25   39.    He also seeks to enjoin Defendant from violating the Disabled Persons Act

26   (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and

27   incurred under California Civil Code §§ 54.3 and 55.

28

general under either state of federal statutes.
*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056475

EX. 78-16

VIII.   THIRD CLAIM

**Unruh Civil Rights Act**

40.   Moore incorporates the allegations contained in paragraphs 1 through 39 for this claim.

41.   California Civil Code § 51 states, in part, that;   All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

42.   California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

43.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

44.   Defendant's aforementioned acts and omissions denied the physically disabled public – including Moore – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

45.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Moore by violating the Unruh Act.

46.   Moore was damaged by Defendant's wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

47.   Moore also seeks to enjoin Defendant from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

IX. FOURTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

48.   Moore incorporates the allegations contained in paragraphs 1 through 47 of this claim.

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056476

EX. 78-17

49.     Health and Safety Code § 19955(a) states, in part, that:   California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

50.     Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

51.     Moore alleges the Store and Gas Station is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Store and Gas Station was not exempt under Health and Safety Code § 19956.

52.     **Defendant's** non-compliance with these requirements at the Store and Gas Station aggrieved (or potentially aggrieved) Moore and other persons with physical disabilities. Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## X.     PRAYER FOR RELIEF

WHEREFORE, Moore prays judgment against Defendant for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendant violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.     Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.     Attorneys' fees, litigation expense, and costs of suit.[3]

5.     Interest at the legal rate from the date of the filing of this action.

6.     For such other and further relief as the Court deems just and proper.

Dated: August 3, 2011                              MOORE LAW FIRM, P.C.

                                                   /s/Tanya E. Moore
                                                   Tanya E. Moore
                                                   Attorneys for Plaintiff Ronald Moore

_____

[3] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056477

EX. 78-18

1  K. Randolph Moore, SBN 106933
Tanya E. Moore, Esq. SBN 206683
2  MOORE LAW FIRM, P.C.
332 North Second Street
3  San Jose, California 95112
Telephone: (408) 298-2000
4  Facsimile: (408) 298-6046
Email: tanya@moorelawfirm.com

5

Attorneys for Plaintiff
6  Ronald Moore

7

8
                    **UNITED STATES DISTRICT COURT**
9
                   **NORTHERN DISTRICT OF CALIFORNIA**
10

11  RONALD MOORE,                          )  No.  5:10-cv-01014-HRL
                                            )
12             Plaintiff,                    )  **FIRST AMENDED COMPLAINT FOR**
                                            )  **DAMAGES, DECLARATORY AND**
13       vs.                                 )  **INJUNCTIVE RELIEF, ATTORNEY**
                                            )  **FEES AND COSTS (ADA Access)**
14  ROBINSON OIL CORPORATION, dba           )
    ROTTEN ROBBIE #42,                      )
15                                           )
                                            )
16             Defendant.                    )
                                            )
17  _____ )

18                         I.     SUMMARY

19       1.      This is a civil rights action by plaintiff Ronald Moore ("Moore") for

20  discrimination at the building, structure, facility, complex, property, land, development,

21  and/or surrounding business complex known as:

22             Rotten Robbie #42
               455 East Julian St.
23             San Jose, CA 95112
               **(hereinafter "Store and Gas Station")**
24

25       2.      Moore seeks damages, injunctive and declaratory relief, attorney fees and costs,

26  against ROBINSON OIL CORPORATION dba, ROTTEN ROBBIE #42 ("Defendant"),

27  owners and operators of Rotten Robbie ("Store and Gas Station"), pursuant to the Americans

28

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056478

EX. 78-19

1   with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California

2   statutes.

## II.   JURISDICTION

3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.      Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.      Moore's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

6.      All actions complained of herein take place within the jurisdiction of the United States District Court, Northern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b),(c).

## IV.   PARTIES

7.      Defendant owns, operates, and/or leases the Store and Gas Station, and consists of a person (or persons), firm, and/or corporation.

8.      Moore was diagnosed with hydrocephalus, degenerative disc disease of the lower back, cervical radiculopathy, B knee arthritis and chronic pain syndrome since 2002 and requires the use of a wheelchair when traveling about in public.  Consequently, Moore is physically disabled, as defined by all applicable California and United States law and the member of the public whose rights are protected by these laws.

## V.   FACTS

9.      The Store and Gas Station is a public accommodation facility/retail store, open to the public, which is intended for nonresidential use and whose operation affects commerce.

10.     Moore visited the Store and Gas Station and encountered barriers (both physical and intangible) that interfered with – if not outright denied – his ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility.  Moore personally encountered the following barriers:

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056479

EX. 78-20

a)      When Moore arrived at the Store and Gas Station, he was unable to park in the parking space which appeared to be designated as accessible because there was another car parked there without distinguishing placards. Therefore, Moore had to park at a distance from the store, offload his wheelchair, and travel back to the store.

b)      Moore had to be pushed in his wheelchair to the entrance to the Store and Gas Station because the excessive slope made it too difficult for him to independently propel his wheelchair.

c)      Once inside the store, Moore could not travel down the aisles and make turns in his wheelchair due to insufficient clearances.

d)      Moore attempted to use the service/cashier counter, but it was too high for him to reach in his wheelchair.

e)      Moore attempted to use the restroom in his wheelchair, but was unable to get inside the restroom because of the improper configuration.

f)      After being unable to use the restroom at the Gas Station and Store, Moore tried to use the restroom located at the business next door but the route had excessive slopes, and was uneven and dangerous.

11.      Moore was, and continues to be, deterred from visiting the Facility because he knows that the Facility's **goods, services,** facilities, privileges, advantages, and accommodations were and are unavailable to him due to his physical disabilities. Moore continues to be deterred from visiting the Facility because of the future threats of injury created by the barriers, of which he has been made aware, due to his physical disabilities including, but not limited to:

<u>Parking</u>:

a)      Warning signs posted at the entrances to off-street parking facilities do not include the address where towed vehicles may be reclaimed or the phone number to call to have the vehicle reclaimed;

b)      The van accessible parking space does not have an access aisle on the passenger side of the vehicle that is outlined in blue;

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

EX. 78-21

MLF056480

c)    A bumper or curb is not provided at the van accessible parking space to prevent the encroachment of cars over the required width of the walkway;

d)    The accessible parking space does not have a 36" x 36" profile view of a wheelchair with occupant painted in white on blue background that is visible when a vehicle is properly parked in the space;

e)    The surface of the accessible parking space and access aisles exceeds 2% maximum slope;

f)    An illegal built-up curb ramp encroaches upon parking space access aisle located to the left of the nominally designated "van-accessible" parking space;

g)    Parking spaces nominally designated accessible is less than 18' minimum length;

h)    Surface identification of the loading and unloading access aisle is improper and the letters "NO PARKING" do not appear on the ground within each access aisle;

Exterior Accessible Routes:

i)    There is no accessible route within the boundary of the Store site provided to an accessible building entrance from the gas station pumps; public streets and sidewalks; or the accessible parking;

j)    There are no required signs posted along exterior route of travel displaying the international symbol of accessibility directing persons with disabilities to the accessible route;

k)    The sidewalk or walking area is not 48" minimum width at all locations;

l)    Slopes on the accessible paths are over 5% or 8.33% for ramps with a maximum cross-slope of 2%;

Accessible Entrance:

m)    There is no signage containing the International Symbol of Accessibility provided at the public entrance to the Store;

n)    There is no signage at the non-accessible entrances to the Store directing persons with disabilities to the accessible entrance;

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056481

EX. 78-22

1       o)      The doormats at the entrance are not adequately anchored to prevent

2   interference with wheelchair traffic;

3       p)      A 60" x 60" clear door landing is not provided with a minimum 24" strike

4   side for the exterior and 18" for the interior;

5       <u>Sanitary Facilities:</u>

6       q)      There is no international symbol of accessibility provided on the accessible

7   toilet facilities;

8       r)      There is not proper strike side clearance in front of the restroom door;

9       s)      There is not a clear, unobstructed path to the restroom door;

10      t)      The door of the toilet facility is not equipped with a door closer;

11      u)      The door of the toilet facility requires over 5 lbs of pressure to operate;

12      v)      The hardware installed on the toilet door has a shape that requires tight

13  grasping, pinching and twisting of the wrist to operate;

14      w)      Door opening hardware is installed more than 44" above the floor;

15      x)      The operable part of the towel dispenser is located over 40" above the floor;

16      y)      The flush valve is not located on the wide side of the toilet area;

17      z)      Grab bars are not mounted 33" above the floor (or 36" for back of tank type

18  toilets);

19      aa)    The edge of the side grab bar is not placed within 12" of the back wall;

20      bb)    The side grab bar is not a minimum of 42" long and extending 24" beyond the

21  front of the water closet, 54" from the back wall, and the back grab bar is not 36" long and

22  extending 24" on the wide side of the toilet's centerline;

23      cc)    There is not 32" of clear space on one side of the toilet;

24      dd)    There is no required 18" distance from the side-wall to the centerline of the

25  water closet provided (it is obstructed by toilet paper dispenser which protrudes more than 5"

26  into the required 18" space);

27      ee)    Tissue, soap dispensers and other items on an accessible route are over 40"

28  above the floor and do not provide the necessary 30" x 48" clear floor space;

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056482

EX. 78-23

1    ff)     An 18" x 60" deep clear floor space is not provided on the pull side of the

2  door;

3        gg)    There is not 4' of clear space in front of the toilet;

4        hh)    The operable part of the toilet seat dispenser is located more than 40" above

5  the floor;

6        ii)     There is less than 28" between the toilet and other plumbing fixtures;

7        jj)     The lavatory is not properly configured for accessibility;

8        kk)    There is not a 30" x 48" clear floor space in front of the lavatory allowing a

9  forward approach by a wheelchair;

10    Accessibility of Goods Services:

11        ll)     The mats throughout the store are not adequately anchored to prevent

12  interference with wheelchair traffic;

13        mm)  Many aisles inside the store have clearance less than 36" in width for aisles

14  serving one side, and less than 44" clearance where aisles serve both sides;

15        nn)    Emergency devices are not located on an accessible route;

16        oo)    There is insufficient space provided to make a 180 degree turn around the

17  aisles;

18        pp)    There is no accessible check stand/service counter provided;

19        qq)    The cashier counter is not accessible;

20        rr)     There is not a clear, unobstructed accessible path and clear floor area at the

21  service counter area;

22        ss)     The water tab located in the soda dispensing machine exceeds 54" in height;

23        tt)     Condiments such as creamer are located out of wheelchair reach;

24        uu)    The Store has no signage stating that assistance is available to persons with

25  disabilities in reaching items;

26        vv)    The accessible ATM is not designated with the International Symbol of

27  Accessibility;

28

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

EX. 78-24

MLF056483

Fueling Island:

ww)    There is no properly located accessible card reading device provided at the gas dispensing facility;

xx)    There is no accessible route from the fueling island to the accessible entrance;

yy)    Proper signage is not located at the pumps;

zz)    There is no accessible pump;

aaa)   There is not 24" of unobstructed, clear space on the card reader side of the pump;

bbb)   There is not at least one window washer that is a maximum of 40" above the floor;

ccc)   There is not a 30" x 48" clear floor space at the window washing bucket;

ddd)   An emergency pump shut off is not located on an accessible route 48" maximum above floor and between 20' – 100' with a sign saying "EMERGENCY FUEL SHUT OFF";

eee)   The card reader, emergency shut off control and pump control buttons do not comply with side reach requirements;

fff)   There is not an emergency procedure sign located at the pumps on an accessible route;

These barriers prevented Moore from enjoying full and equal access.  Once the barriers are removed, Moore intends to return to the Store and Gas Station.

12.    Moore also encountered barriers at the Store and Gas Station which violate state and federal law, but were unrelated to his disability.  Nothing within this complaint, however, should be construed as an allegation that Moore is seeking to remove barriers unrelated to his disability.

13.    Defendant knew or should have known that these elements and areas of the Store and Gas Station were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, Defendant has the financial resources to remove these barriers from the Store and Gas Station (without much difficulty or expense),

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056484

EX. 78-25

1  and make the Store and Gas Station accessible to the physically disabled.  To date, however,

2  Defendant refuses to either remove those barriers or seek an unreasonable hardship

3  exemption to excuse non-compliance.

4        14.    At all relevant times, Defendant has possessed and enjoyed sufficient control

5  and authority to modify the Store and Gas Station to remove impediments to wheelchair

6  access and to comply with the Americans with Disabilities Act Accessibility Guidelines and

7  Title 24 regulations.  Defendant has not removed such impediments and has not modified the

8  Store and Gas Station to conform to accessibility standards.  Defendant has intentionally

9  maintained the Store and Gas Station in its current condition and has intentionally refrained

10  from altering the Store and Gas Station so that it complies with the accessibility standards.

11        15.    Moore further alleges, on information and belief, that the Store and Gas

12  Station is not in the midst of a remodel, and that the barriers present at the Store and Gas

13  Station are not isolated (or temporary) interruptions in access due to maintenance or repairs.[1]

14                    VI.    FIRST CLAIM

15             **Americans with Disabilities Act of 1990**

16             <u>Denial of "Full and Equal" Enjoyment and Use</u>

17        16.    Moore incorporates the allegations contained in paragraphs 1 through 15 for

18  this claim.

19        17.    Title III of the ADA holds as a "general rule" that no individual shall be

20  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

21  goods, services, facilities, privileges, and accommodations offered by any person who owns,

22  operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

23        18.    Defendant discriminated against Moore by denying him "full and equal

24  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

25  Store and Gas Station during each visit and each incident of deterrence.

26  //

27                        //

28

---

[1] 28 C.F.R. § 36.211(b)

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056485

EX. 78-26

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." <u>Id</u>. § 12181(9).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>. § 12182(b)(2)(A)(v).

21.    Here, Moore alleges that Defendant can easily remove the architectural barriers at Store and Gas Station without much difficulty or expense, and that Defendant violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.    In the alternative, if it was not "readily achievable" for Defendant to remove the Store's barriers, then Defendant violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct and Accessible Facility</u>

23.    Moore alleges, on information and belief, that the Store and Gas Station was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III or the ADA.

24.    The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993 that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

//
//
//
//

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056486

EX. 78-27

25.    Here, Defendant violated the ADA by designing and constructing (or both) the Store and Gas Station in a manner that was not readily accessible to the physically disabled public – including Moore – when it was structurally practical to do so.[2]

### Failure to Make an Altered Facility Accessible

26.    Moore alleges, on information and belief, that the Store and Gas Station was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.    The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible.    42 U.S.C. § 12183(a)(2).    Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.    Here, Defendant altered the Store and Gas Station in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Moore – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

29.    The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.    Here, Defendant violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Store and Gas Station, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.    Moore seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

---

[2] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney
*Moore v. Robinson Oil Corporation.*
First Amended Complaint

MLF056487

EX. 78-28

32.     Moore also seeks a finding from this Court (i.e., declaratory relief) that Defendant violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## VII.    SECOND CLAIM

### Disabled Persons Act

33.     Moore incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

35.     California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

36.     Both sections specifically incorporate (by reference) an individual's rights under the ADA.  See Civil Code §§ 54(c) and 54.1(d).

37.     Here, Defendant discriminated against the physically disabled public – including Moore – by denying them full and equal access to the Store and Gas Station. Defendant also violated Moore's rights under the ADA, and therefore, infringed upon or violated (or both) Moore's rights under the Disabled Persons Act.

38.     For each offense of the Disabled Persons Act, Moore seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

39.     He also seeks to enjoin Defendant from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

general under either state of federal statutes.
*Moore v. Robinson Oil Corporation.*
First Amended Complaint

EX. 78-29

MLF056488

VIII.   THIRD CLAIM

**Unruh Civil Rights Act**

40.   Moore incorporates the allegations contained in paragraphs 1 through 39 for this claim.

41.   California Civil Code § 51 states, in part, that;   All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

42.   California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

43.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

44.   Defendant's aforementioned acts and omissions denied the physically disabled public – including Moore – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

45.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Moore by violating the Unruh Act.

46.   Moore was damaged by Defendant's wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

47.   Moore also seeks to enjoin Defendant from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

IX. FOURTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

48.   Moore incorporates the allegations contained in paragraphs 1 through 47 of this claim.

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

EX. 78-30

MLF056489

49.     Health and Safety Code § 19955(a) states, in part, that:   California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

50.     Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

51.     Moore alleges the Store and Gas Station is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Store and Gas Station was not exempt under Health and Safety Code § 19956.

52.     Defendant's non-compliance with these requirements at the Store and Gas Station aggrieved (or potentially aggrieved) Moore and other persons with physical disabilities. Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

X.     PRAYER FOR RELIEF

WHEREFORE, Moore prays judgment against Defendant for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendant violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.     Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.     Attorneys' fees, litigation expense, and costs of suit.[3]

5.     Interest at the legal rate from the date of the filing of this action.

6.     For such other and further relief as the Court deems just and proper.

Dated: September 8, 2011                         MOORE LAW FIRM, P.C.

                                                /s/Tanya E. Moore
                                                Tanya E. Moore
                                                Attorneys for Plaintiff Ronald Moore

---

[3] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Robinson Oil Corporation.*
First Amended Complaint

Page 13

MLF056490

EX. 78-31

*Moore v. Robinson Oil Corporation*
List of Barriers Plaintiff Seeks to Have Removed
December 14, 2011
(Prepared as a result of December 9, 2011 site inspection)

1. Tow away warning signage must be properly positioned at each entrance to the off-street parking facilities so that they are visible from all directions of approach. Alternatively, the signs may be posted where they are visible from the accessible parking spaces.

2. The accessible parking space pavement symbol of the profile view of the individual in the **wheelchair shall be 36" x 36"**.

3. The slope of the accessible parking space is 2.4% and must not exceed 2.0%.

4. Wheel stops must be provided along the designated accessible route to prevent encroachment of vehicles over the required width of the walkway.

5. The bike rack which is located along the accessible route shall be relocated out of the accessible route. As currently located, should a bike park at the bike rack, it will obstruct the accessible route.

6. Provide directional signs from the public way directing to the accessible route and accessible entrance.

7. **Provide a minimum 60" wheelchair turning space at the dead end hall leading to the restroom** to create an accessible route to the restroom;

8. Provide one accessible unisex restroom which requires that the bathroom be enlarged as previously recommended. The following items do not comply and must be repaired:

   o **There is less than 32" door width at the entrance to the restroom**; this door can be sealed off and a new door installed once the wall is removed and the restroom enlarged;
   o There is not adequate strike side clearance on the pull side of the restroom door;
   o The restroom door is not self-closing;
   o The rear grab bar does not have a minimum 1-1/2 space between grab bar and the toilet tank;
   o Relocate paper towel dispenser to be out of the clear transfer area of the grab bar;
   o Relocate the trash can from under the lavatory to provide proper knee clearance, but keep the trash can out of the required clear floor space;
   o The proper clear floor space in front of the toilet is not provided;
   o **There is less than 28" between the toilet and other plumbing fixtures**;
   o There is not a 30" x 48" clear floor space in front of the lavatory allowing forward approach by a wheelchair.

1

MLF056491

9. Provide a customer service counter that is a maximum of 34" above finish floor x 36" long or equivalent facilitation;

10. Provide proper signage identifying the accessible counter;

11. Implement policies and procedures to ensure that the accessible counter remains open at all times;

12. Lower vending controls which are over 54";

13. Provide a tray slide for 50% of counter area in order to address lack of proper reach ranges;

14. Relocate merchandise displays to provide 36" minimum clear accessible route;

15. Provide signage with the accessible symbol visible at each entrance to the fuel pumps to "honk horn for assistance" or provide a minimum of one fully accessible and properly identified fuel pump;

16. Provide 30" x 48" clear floor area in front of emergency shut off button;

17. Air and water coin operated slots are obstructed by a post. Provide a 30" x 48" clear space in front of the air and water equipment.

MLF056492

EX. 78-33

## BARRIERS WHICH HAVE BEEN REMOVED

The Parties stipulate that the following barriers alleged in Plaintiff's First Amended Complaint have been removed. The alphabetic references preceding the barrier refer directly to the paragraph identification in paragraph 11 of the First Amended Complaint:

a) Warning signs posted at the entrances to off-street parking facilities do not include the address where towed vehicles may be reclaimed or the phone number to call to have the vehicle reclaimed;

b) The van accessible parking space does not have an access aisle on the passenger side of the vehicle that is outlined in blue;

c) A bumper or curb is not provided at the van accessible parking space to prevent the encroachment of cars over the required width of the walkway;

f) An illegal built-up curb ramp encroaches upon parking space access aisle located to the left of the nominally designated "van-accessible" parking space;

g) Parking space nominally designated accessible is less than 18' minimum length;

h) Surface identification of the loading and unloading access aisle is improper and the letters "NO PARKING" do not appear on the ground within each access aisle;

k) The sidewalk or walking area is not 48" minimum width at all locations;

m) There is no signage containing the International Symbol of Accessibility provided at the public entrance to the Store;

n) There is no signage at the non-accessible entrances to the Store directing persons with disabilities to the accessible entrance;

o) The doormats at the entrance are not adequately anchored to prevent

1

MLF056493

interference with wheelchair traffic;

p) A 60" x 60" clear door landing is not provided with a minimum 24" strike side for the exterior and 18" for the interior;

q) There is no international symbol of accessibility provided on the accessible toilet facilities;

u) The door of the toilet facility requires over 5 lbs of pressure to operate;

v) The hardware installed on the toilet door has a shape that requires tight grasping, pinching and twisting of the wrist to operate;

w) Door opening hardware is installed more than 44" above the floor;

x) The operable part of the towel dispenser is located over 40" above the floor;

y) The flush valve is not located on the wide side of the toilet area;

z) Grab bars are not mounted 33" above the floor (or 36" for back of tank type toilets);

ee) Tissue, soap dispensers and other items on an accessible route are over 40" above the floor and do not provide the necessary 30" x 48" clear floor space;

hh) The operable part of the toilet seat dispenser is located more than 40" above the floor;

ll) The mats throughout the store are not adequately anchored to prevent interference with wheelchair traffic;

oo) There is insufficient space provided to make a 180 degree turn around the aisles;

vv) The accessible ATM is not designated with the International Symbol of Accessibility;

ww) There is no properly located accessible card reading device provided at the gas dispensing facility;

aaa) There is not 24" of unobstructed, clear space on the card reader side of the

2

MLF056494

pump;

bbb) There is not at least one window washer that is a maximum of 40" above the floor;

ccc) There is not a 30" x 48" clear floor space at the window washing bucket;

fff) There is not an emergency procedure sign located at the pumps on an accessible route.

MLF056495

EX. 78-36

## BARRIERS WHICH REMAIN

Restroom:

The door to the restroom is not a minimum 32" wide;

There is not a clear, unobstructed path to the restroom door;

The edge of the side grab bar is not placed within 12" of the back wall;

The side grab bar is not a minimum of 42" long and extending 24" beyond the front of the water closet, 54" from the back wall, and the back grab bar is not 36" long and extending 24" on the wide side of the toilet's centerline;

There is no required 18" distance from the side-wall to the centerline of the water closet provided (it is obstructed by toilet paper dispenser which protrudes more than 5" into the required 18" space);

An 18" x 60" deep clear floor space is not provided on the pull side of the door;

There is not 4' of clear space in front of the toilet;

There is less than 28" between the toilet and other plumbing fixtures;

The lavatory is not properly configured for accessibility;

There is not a 30" x 48" clear floor space in front of the lavatory allowing a forward approach by a wheelchair;

Parking:

The accessible parking space does not have a 36" x 36" profile view of a wheelchair with occupant painted in white on blue background that is visible when a vehicle is properly parked in the space;

The surface of the accessible parking space and access aisles exceeds 2% maximum slope;

Exterior Accessible Routes:

There is no accessible route within the boundary of the Store site provided to an accessible building entrance from the public streets and sidewalks or the accessible parking;

There are no required signs posted along exterior route of travel displaying the international symbol of accessibility directing persons with disabilities to the accessible route;

Slopes on the accessible paths are over 5% or 8.33% for ramps with a maximum cross-slope of 2%;

EX. 78-37

MLF056496

Accessibility of Goods Services:

Emergency devices are not located on an accessible route;

There is no accessible check stand/service counter provided;

The cashier counter is not accessible;

There is not a clear, unobstructed accessible path and clear floor area at the service counter area;

The water tab located in the soda dispensing machine exceeds 54" in height;

Condiments such as creamer are located out of wheelchair reach;

Fueling Island:

Proper signage is not located at the pumps;

There is no accessible pump

MLF056497

EX. 78-38

Parking:

     d)     The accessible parking space does not have a 36" x 36" profile view of a wheelchair with occupant painted in white on blue background that is visible when a vehicle is properly parked in the space;

     e)     The surface of the accessible parking space and access aisles exceeds 2% maximum slope;

Exterior Accessible Routes:

     i)     There is no accessible route within the boundary of the Store site provided to an accessible building entrance from the gas station pumps; public streets and sidewalks; or the accessible parking;

     j)     There are no required signs posted along exterior route of travel displaying the international symbol of accessibility directing persons with disabilities to the accessible route;

     l)     Slopes on the accessible paths are over 5% or 8.33% for ramps with a maximum cross-slope of 2%;

Sanitary Facilities:

     r)     There is not proper strike side clearance in front of the restroom door;

     s)     There is not a clear, unobstructed path to the restroom door;

     t)     The door of the toilet facility is not equipped with a door closer;

     u)     The edge of the side grab bar is not placed within 12" of the back wall;

     v)     The side grab bar is not a minimum of 42" long and extending 24" beyond the front of the water closet, 54" from the back wall, and the back grab bar is not 36" long and extending 24" on the wide side of the toilet's centerline;

     w)     There is not 32" of clear space on one side of the toilet;

     x)     There is no required 18" distance from the side-wall to the centerline of the water closet provided (it is obstructed by toilet paper dispenser which protrudes more than 5" into the required 18" space);

     ff) An 18" x 60" deep clear floor space is not provided on the pull side of the door;

     gg)     There is not 4' of clear space in front of the toilet;

1

MLF056498

EX. 78-39

ii)    There is less than 28" between the toilet and other plumbing fixtures;

jj)    The lavatory is not properly configured for accessibility;

kk)    There is not a 30" x 48" clear floor space in front of the lavatory allowing a forward approach by a wheelchair;

<u>Accessibility of Goods Services:</u>

mm)    Many aisles inside the store have clearance less than 36" in width for aisles serving one side, and less than 44" clearance where aisles serve both sides;

nn)    Emergency devices are not located on an accessible route;

pp)    There is no accessible check stand/service counter provided;

qq)    The cashier counter is not accessible;

rr)    There is not a clear, unobstructed accessible path and clear floor area at the service counter area;

ss)    The water tab located in the soda dispensing machine exceeds 54" in height;

tt)    Condiments such as creamer are located out of wheelchair reach;

uu)    The Store has no signage stating that assistance is available to persons with disabilities in reaching items;

<u>Fueling Island:</u>

xx)    There is no accessible route from the fueling island to the accessible entrance;

yy)    Proper signage is not located at the pumps;

zz)    There is no accessible pump;

ddd) An emergency pump shut off is not located on an accessible route 48" maximum above floor and between 20' — 100' with a sign saying "EMERGENCY FUEL SHUT OFF";

eee) The card reader, emergency shut off control and pump control buttons do not comply with side reach requirements;

MLF056499

EX. 78-40

# Exhibit 79



DOLLAR FIFTY STOR
945 PACHECO BLVD
LOS BANOS, CA
PH:(209)527-8644
DATE 01/30/2016 SAT   TIME 17:03

ITEM 1 11            $5.00
TAX1                 $0.44
TOTAL                $5.44
CASH                 $5.50
CHANGE               $0.06
NO REFUND
NO EXCHANGE

West

business
Bright Ranjit K Singh
dba — Dollar City

Property
Frank Soloma Jr

MLF0053776

EX. 79-2

Ryans Place Los Banos

Has We marked spots & Ramp, But are not correct. We ate & Ron tried to go to the Bathroom. Could open door But could not turn to Be able to get in the Bathroom due to the narrow Entrance. Door was Blocking him from access.

Doors going in are hard to get in, there 2 sets of doors & the Both open outward So once you get in you are stuck between 2 sets of doors.

"Oh Yeah" they don't cook their pork chops throughly! "Beware" ha ha "I may get sick"!

RYAN'S PLACE
9?    . Pacheco
Los ?  os, ca 936?5
(?09) 826-2616

?e?: HOUSE (1)          DOC: ?  ?10
:25 PM                        ? ?010
.ble 51/1                      2/?0274

MC                              2097302
Card #XXXXXXXXXXXX4370
Magnetic card present: MC  E RONALD D
Approval: F7597Z

Amount:          $ 8.51

?io
? Total:  6.51

X

THANK YOU
WE HOPE TO SEE YOU AGAIN

MLF0053785

EX. 79-3

Ron,

Ryans Place Los Banos

Has the marked Spots & Ramps, But are not correct. We ate & Ron tried to go to the Bathroom. Could open door. But could not turn to Be able to get in the Bathroom due to the narrow Entrance. Door was Blocking him from access.

Doors going ~~out~~ are hard to get in, there 2 sets of doors & the Both open outward so once you get in you are stuck between 2 sets of doors.

"Oh Yeah" they dont cook their Pork chops throughly! Beware "haha I might get Sick"

Property Business Frank Solano Jr.

Business Roe + Yvonne Paskle



RYAN'S PLACE
955 W. Pacheco
Los Banos, Ca 93635
(209) 826-2810

Server: Sofia                        04/30/2010
Cashier: HOUSE (1)
Table 51/1                              4:23 PM
Serve Guests: 2
04:2                                   #20274
Table print #: 1

NC     PORK CHOP                          7.00
Card   8oz TOP & EGGS                     5.99
Magne
Appro  Complete Subtotal                 12.99

       PR Manager                        -7.00
       Subtotal                           5.99
                                          0.52

       Total                              6.51

       Balance Due              6.51

           THANK YOU
   WE HOPE TO SEE YOU AGAIN

MLF0053786

EX. 79-4

November 11, 2010


Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612


Re: *Total Fashion, Ryan' Place and Dollar Fifty Store in Los Banos, CA*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review this document and keep it for your records. Please sign the signature page where indicated and return to our office in the enclosed envelope. **In addition to your signature page, please send the return receipts from the letters sent via certified mail to the defendants in this case, if any.**

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated, not read.*
*Sent in Mrs. Moore's absence*
*to avoid delay.*

Tanya Moore
Attorney at Law

MLF0056221

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**


      I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Dollar Fifty Store located at 945 W. Pacheco Blvd., Los Banos Ca**


DATE:                    _____
                               CLIENT'S SIGNATURE

                               _____
                               ADDRESS

                               _____
                               CITY

                               _____
                               TELEPHONE

DATE:_____           MOORE LAW FIRM, PC
                               ATTORNEY FOR

EX. 79-6

MLF0056205

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

THIS AGREEMENT, made this        at **San Jose, CA,** by and between <u>RONALD</u> <u>MOORE</u> hereinafter designated as "Client," and **the Moore Law Firm, PC**, hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case again <u>***Dollar Fifty Store***</u> and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

MLF0056206

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. **The Client should consult with any other lawyer for legal advice before entering into this contract.**

MLF0056207

Client agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

## FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)     Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)     Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)     In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)     In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages.  This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

EX. 79-9

MLF0056208

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is $350.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $70.00 to $90.00 per hour. Administrative staff is billed at $20.00 to $30.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, no fees will be charged to Client .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0056209

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying.  A minimum charge of $100.00 will be assessed for opening the file, photocopying and postage.  A minimum charge of $500.00 will be charged for on-line computer research.  Facsimile charge is $1.00 per page sending/receiving.  Photocopying charge is 25¢ per page.  When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs.  It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l).  TRAVEL:  Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m).  POWER OF ATTORNEY:  Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney.  Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4.  APPEALS:  Client acknowledges that no Appeals need to be taken without both parties' consent.  The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5.  ERRORS AND OMISSIONS INSURANCE:  Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement.  Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6.  LIEN.  FIRING/DISCHARGING ATTORNEY:  In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

EX. 79-11

MLF0056210

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial                 _____Initial

EX. 79-12

MLF0056211

DATE:_____

_____
CLIENT'S SIGNATURE

DATE:_____

_____
CLIENT'S SIGNATURE

_____
ADDRESS

_____
CITY

_____
TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____

MOORE LAW FIRM, PC

_____
ATTORNEY FOR

MLF0056212

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**


     I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against Ryan's Place located at 955 W. Pacheco Blvd., Los Banos Ca


DATE:                                   _____

                                    CLIENT'S SIGNATURE

                                    _____

                                    ADDRESS

                                    _____

                                    CITY

                                    _____

                                    TELEPHONE


DATE:_____             MOORE LAW FIRM, PC
                                    ATTORNEY FOR

MLF0056213

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
### 332 N. Second Street
### San Jose, CA 95112
### (408) 298-2000

THIS AGREEMENT, made this                    at **San Jose, CA,** by and between <u>RONALD MOORE</u> hereinafter designated as "Client," and **the Moore Law Firm, PC**, hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case again  <u>***Ryan's Place***</u>  and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

MLF0056214

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. **The Client should consult with any other lawyer for legal advice before entering into this contract.**

MLF0056215

Client agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

## FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)     Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)    Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)   In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)    In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

EX. 79-17

MLF0056216

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is $350.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $70.00 to $90.00 per hour. Administrative staff is billed at $20.00 to $30.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u>.

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0056217

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying.  A minimum charge of $100.00 will be assessed for opening the file, photocopying and postage.  A minimum charge of $500.00 will be charged for on-line computer research.  Facsimile charge is $1.00 per page sending/receiving.  Photocopying charge is 25¢ per page.  When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs.  It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL:  Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m).  POWER OF ATTORNEY:  Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney.  Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4.  APPEALS:  Client acknowledges that no Appeals need to be taken without both parties' consent.  The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5.  ERRORS AND OMISSIONS INSURANCE:  Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement.  Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6.  LIEN.  FIRING/DISCHARGING ATTORNEY:  In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0056218

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial                    _____Initial

MLF0056219

DATE:_____      _____

                          CLIENT'S SIGNATURE


DATE:_____      _____

                          CLIENT'S SIGNATURE

                          _____

                          ADDRESS

                          _____

                          CITY

                          _____

                          TELEPHONE


MY WITNESS(S) ARE _____

(if none please indicate so)



DATE:_____      MOORE LAW FIRM, PC



                          _____

                          ATTORNEY FOR

MLF0056220

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against Ryan's Place located at 955 W. Pacheco Blvd., Los Banos Ca

DATE: _11/17/10_

_Ronald Moore_
CLIENT'S SIGNATURE

_80 N Hughes_
ADDRESS

_Clovis CA 93612_
CITY

_559 2983 228_
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR

EX. 79-22

MLF0056194

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial         _____Initial

EX. 79-23

MLF0056195

DATE: _11/17/08_  

_Ronald Moore_  
CLIENT'S SIGNATURE

DATE: _11/17/10_  

_Ronald Moore_  
CLIENT'S SIGNATURE

_80 N Hughes_  
ADDRESS

_Clovis CA 93612_  
CITY

_5592883228_  
TELEPHONE

MY WITNESS(S) ARE _____  
(if none please indicate so)

DATE: _____

MOORE LAW FIRM, PC

_____  
ATTORNEY FOR

EX. 79-24

MLF0056196

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Dollar Fifty Store located at 945 W. Pacheco Blvd., Los Banos Ca**

DATE: _11/17/10_

_Ronald Moore_
CLIENT'S SIGNATURE

_80 N Hughes_
ADDRESS

_Clovis CA 93612_
CITY

_559 298 3228_
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR

MLF0056197

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial          _____Initial

EX. 79-26

MLF0056198

DATE: _11/17/10_

_Ronald Moore_
CLIENT'S SIGNATURE

DATE: _11/17/10_

_Ronald Moore_
CLIENT'S SIGNATURE

_80 N Hughes_
ADDRESS

_Clovis  CA 93612_
CITY

_559 298 3228_
TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____

MOORE LAW FIRM, PC

_____
ATTORNEY FOR

EX. 79-27

MLF0056199

# Exhibit 80

```
              VINSO DONUTS
          xxxx xx xxxxxxxxx Ave.
           xxx xxx xxx xxxxx
            xxx xx xxxx

Merchant ID: 0xxxxxxx7
Term ID: xxxx

              Sale

VISA
XXXXXXXXXXXX4186
Entry Method: Swiped

Approved: Online          Batch#: 000001
07/18/14                       21:01:32

Trans#: A4             Appr Code: 01471B

Amount:        $         6.65
Tip:

Total:

                  xxx xxxxxxxxxxxx xx

           Customer Copy
           THANK YOU
```
MLF0043962

EX. 80-2

```
              GRILL
         STONE SHOE
      FRE.  # 93726

 TERMINAL I...:              26490001

 MERCHANT #:         00080900404140455

 MASTERCARD
 ************7245
 SALE
 BATCH: 000009         INVOICE: 000027
 DATE: MAY 28, 14        TIME: 14:07
 RRN: 000095671390     AUTH NO: 296472

 SALE                          $14.55
 TIP

 TOTAL                    _____

 RONALD D MOORE

           CUSTOMER COPY
```

MLF0043994

EX. 80-3

## PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? *Express Grill*

2. What is the address of the Facility? *4925 N Blackstone Ave*

3. When did you visit the Facility? *5/28/14* (Date) *2:00 pm* (Time)

4. Was this your first visit to the Facility? *Yes*

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. _____

6. What was the purpose of your visit? *To eat*

7. Who accompanied you to the Facility? *My wife Lynn*

8. What car did you drive to the Facility? *MINE*

9. Did you drive yourself or did you get a ride from someone else? *I DROVE*

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. *Parked in D/P spot Right in Front of Haircut place.*

11. Was it difficult for you to park there? If so, why? *YES not Enough Room when going Down the car*

12. How did you unload from your vehicle? *Rear*

13. What side of the vehicle did you unload from? Driver or passenger? *DRIVER*

14. Did anyone help you to transfer onto your wheelchair? Who? *Yes My wife*

15. Did you encounter any problems transferring onto your wheelchair? Describe. *NO*

16. Which way did you go from the parking to the entrance of the Facility? *To Accessible to Ramp*

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. *Ramp go into the street Also Isle + Access*

18. Did you encounter any problems opening the door? Describe. *yes Heavy Cobsol on me*

19. What did you purchase (or what meal did you have there)? *2 meals*

20. Did you need to use the restroom while you were at the Facility? Why? *yes*

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0043992

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: _Yes_

Toilet: _Yes_

Urinal: _No_

Toilet paper: _Yes_

Toilet seat covers: _Yes_

Paper towels/hand dryer: _Yes_

Soap dispenser: _Yes_

Other: _____

22. Did you have any problem maneuvering inside the restroom? _?_

23. Was there any seating provided inside the Facility? _Yes_

24. Were you able to sit comfortably at the table? If not, why? _No Table Leg in way to_ _sit up All the way to table._

25. Did you use the counter to pay for purchase? Which one? _Yes only one_

26. Did you pay with cash or credit card? _Credit card_

27. Was the counter accessible? If not, describe: _No it was so high the_ _Lady behind counter came out and Have me Sign on my legs._

28. Did you have any other problems inside the Facility? Describe. _Yes on the way to_ _the Rest Room theres a plant and a Ice/Box_ _and a Cabinit in the Hall way making it hard_ _to get By_

29. Which way did you go after you left the Facility? _out Door to the Right to find_ _to my car_

30. Any problems getting back to your vehicle? _No_

31. Any problems transferring from your wheelchair to your vehicle? _No_

32. Any additional information you believe would assist us in evaluating this inquiry? _the Door shut on me in and out._

_____

MLF0043993

EX. 80-5

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? *Dingo Donuts*

2. What is the address of the Facility? *4915 N. Blackstone Ave. Fresno CA*

3. When did you visit the Facility? *7/18/14* (Date) *9:40* (Time)

4. Was this your first visit to the Facility? *Yes*

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. *?*

6. What was the purpose of your visit? *Sale of doughnut's*

7. Who accompanied you to the Facility? *Grandson Ronny*

8. What car did you drive to the Facility? *Mine*

9. Did you drive yourself or did you get a ride from someone else? *I drove*

10. Describe a specific location where you parked your vehicle.

    *in front of store*

11. Was it difficult for you to park there?  No ☑   Yes ☐

    If you marked yes, please describe **HOW** it was difficult:


12. How did you unload from your vehicle? *Re car*

13. What side of the vehicle did you unload from? Driver or passenger? *Driver*

14. Did anyone help you to transfer onto your wheelchair? Who? *Grandson Ronny*

15. Did you encounter any problems transferring onto your wheelchair?  No ☑   Yes ☐

    If you marked yes, please describe these problems and **HOW** they prevented you from accessing your wheelchair:

    a) _____

    b) _____

    c) _____

16. Which way did you go from the parking to the entrance of the Facility? *Ramp to door*

17. Did you encounter any problems on your way to the entrance?  No ☐   Yes ☑

MLF0043958

EX. 80-6

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

If you marked yes, list each problem and *HOW/WHY* it made it difficult for you to get to the facility:

a) _Ramp goes into street_

b) _____

c) _____

18. Did you encounter any problems opening the door?        No ☐        Yes ☑

If you marked yes, list each problem and HOW/WHY it made it difficult for you to get inside the facility:

a) _heavy_

b) _____

c) _____

19. What did you purchase (or what meal did you have there)? _half-dozen doughnut's and milk_

20. Did you need to use the restroom while you were at the Facility? Why? _No restroom_

21. List any problems you encountered and *HOW* they prevented you from accessing any of the following (or write "Did not need to use" or "No problems"):

Sink: _N/A_

Toilet: _N/A_

Urinal: _N/A_

Toilet paper: _N/A_

Toilet seat covers: _N/A_

Paper towels: _N/A_

Hand dryer: _N/A_

Soap dispenser: _N/A_

Other: _N/A_

22. Did you have any problem maneuvering inside the restroom?        No ☐        Yes ☐

If you marked yes, list each problem and *HOW/WHY* it prevented or made it hard to move around the restroom:

a) _____

b) _____

MLF0043959

EX. 80-7

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

23. Did you want to sit down in the facility?        No ☐              Yes ☑

24. If you answered yes to the question above, please describe a specific location of where you sat:

by the counter

25. Were you able to sit comfortably in the seating provided?   No ☑          Yes ☐

If you marked no, list each reason **_WHY_** you were not able to sit comfortably in the seating provided:

a) table low

b) hard to sit up to it

c) _____

26. Did you use the counter to pay for purchase? Which one? Yes ~~no~~ only one

27. Did you pay with cash or credit card? Credit

28. Was the counter accessible?        No ☑              Yes ☐

If you marked no, list each reason **_WHY and HOW_** the counter was not accessible:

a) Counter high

b) _____

c) _____

29. Did you have any other problems inside the Facility?        No ☐              Yes ☑

If you marked yes, list each problem and **_HOW and WHY_** they caused you to feel uncomfortable in the facility:

a) hard to reach Milk in cooler

b) Couldn't see ice cream, so I didn't get any

c) _____

30. Which way did you go after you left the Facility? Out door to car

31. Any problems getting back to your vehicle?        No ☑              Yes ☐

If you marked yes, list each problem and **_HOW_** it was a barrier for you to get back to your vehicle:

a) _____

b) _____

MLF0043960

EX. 80-8

c) _____

32. Any problems transferring from your wheelchair to your vehicle? _NO Grandson helped Me._

33. Any additional information you believe would assist us in evaluating this inquiry?

_____

_____

MLF0043961



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

July 2, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:    ADAI No.    02053
       **Express Grill** *(4925 N Blackstone Ave, Fresno, CA)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0044007

EX. 80-10

## BARRIER MEMO

**ADAI No. :**     02053

**Case Name:**     Moore v. Express Grill

**Address:**     4925 N Blackstone Ave, Fresno, CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Narrow Handicap Parking Space | During his visit to the Express Grill, Plaintiff parked in the designated handicap parking space in front of a hair salon in the same plaza. The space, however, was very narrow because the access aisle was on the passenger's side and the plaintiff had to unload from the driver's side which was next to another vehicle.<br><br>(During his visit to Bingo Donuts he parked in front of Bingo Donuts but did not experience any issues with the parking space.) | |
| Built-up curb ramp | During both visits, the ramp was a built-up curb ramp that extended into the parking lot. It was difficult for Plaintiff to ascend the ramp and he was afraid his wheels would roll off the sloped edges. | |
| Express Grill: Heavy Door to Entrance | The door to the entrance of the Express Grill facility was heavy and it was difficult for the plaintiff to hold it open while wheeling himself inside. In fact, it was so heavy that the door closed on him. | |
| Express Grill: Inaccessible Seating | The table at which the plaintiff sat had a large leg underneath it which prevented him from wheeling himself up to it fully. In result, the plaintiff was uncomfortable throughout his entire meal. | |
| Express Grill: High Counter | The counter was too high for the plaintiff to access, so the cashier came out from behind the counter and gave the plaintiff his receipt to sign in his lap. | |
| Express Grill: Cluttered Hallway to Restroom making it Narrow | The plaintiff wanted to use the restroom but the hallway leading to it was lined with a plant, a cabinet and an ice machine which made it very narrow for the plaintiff to wheel through without getting stuck. | |
| Bingo Donuts: Door heavy | The door to Bingo Donuts was heavy and difficult for Plaintiff to open. | |

MLF0043936

EX. 80-11

| | | |
|---|---|---|
| Bingo Donuts: No accessible table | Plaintiff could not find an accessible table at the Bingo Donuts. He had to sit at a table near the counter that was too low, and it was hard to pull his wheelchair up to it comfortably. | |
| Bingo Donuts: Counter high | The counter at Bingo Donuts was too high for Plaintiff to reach, making it hard to conduct his transaction. | |
| Bingo Donuts: Milk in cooler hard to reach | It was hard for Plaintiff to reach the milk in the cooler because it was too high. | |
| Bingo Donuts: Couldn't see ice cream | Plaintiff could not see the ice cream flavors at the Bingo Donuts so he decided not to get any ice cream. | |

MLF0043937

EX. 80-12

# BARRIER MEMO

**ADAI No. :**     02053

**Case Name:**     Moore v. Express Grill

**Address:**     4925 N Blackstone Ave, Fresno, CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Narrow Handicap Parking Space | During his visit to the Express Grill, Plaintiff parked in the designated handicap parking space in front of a hair salon in the same plaza. The space, however, was very narrow because the access aisle was on the passenger's side and the plaintiff had to unload from the driver's side which was next to another vehicle.<br><br>(During his visit to Bingo Donuts he parked in front of Bingo Donuts but did not experience any issues with the parking space.) | No, seems wide and it is not a violation because the access aisle has to be on the right hand side (unless it is 2 accessible parking spaces side by side – then in between) Please mention it to Ron again if he again complains about it. |
| Built-up curb ramp | During both visits, the ramp was a built-up curb ramp that extended into the parking lot. It was difficult for Plaintiff to ascend the ramp and he was afraid his wheels would roll off the sloped edges. | Yes, it is a built up curb ramp but disagree extending into a vehicular path, plenty of room for landing. However, the sloped edges are indeed an issue. |
| Express Grill: Heavy Door to Entrance | The door to the entrance of the Express Grill facility was heavy and it was difficult for the plaintiff to hold it open while wheeling himself inside. In fact, it was so heavy that the door closed on him. | I was not able to measure it but okay to include in the complaint. |
| Express Grill: Inaccessible Seating | The table at which the plaintiff sat had a large leg underneath it which prevented him from wheeling himself up to it fully. In result, the plaintiff was uncomfortable throughout his entire meal. | Yes, no accessible seating |
| Express Grill: High Counter | The counter was too high for the plaintiff to access, so the cashier came out from behind the counter and | Yes, high counter and the lowered |

1

MLF0043934

EX. 80-13

| | | |
|---|---|---|
| | gave the plaintiff his receipt to sign in his lap. | **portion is blocked with some displays and impossible to use.** |
| Express Grill: Cluttered Hallway to Restroom making it Narrow | The plaintiff wanted to use the restroom but the hallway leading to it was lined with a plant, a cabinet and an ice machine which made it very narrow for the plaintiff to wheel through without getting stuck. | Yes |
| Bingo Donuts: Door heavy | The door to Bingo Donuts was heavy and difficult for Plaintiff to open. | Include in the complaint, but could not verify – it was wide open |
| Bingo Donuts: No accessible table | Plaintiff could not find an accessible table at the Bingo Donuts. He had to sit at a table near the counter that was too low, and it was hard to pull his wheelchair up to it comfortably. | Yes |
| Bingo Donuts: Counter high | The counter at Bingo Donuts was too high for Plaintiff to reach, making it hard to conduct his transaction. | Maybe but do not include in the complaint |
| Bingo Donuts: Milk in cooler hard to reach | It was hard for Plaintiff to reach the milk in the cooler because it was too high. | Not a violation |
| Bingo Donuts: Couldn't see ice cream | Plaintiff could not see the ice cream flavors at the Bingo Donuts so he decided not to get any ice cream. | Do not include in the complaint. |

2

MLF0043935

EX. 80-14



# MOORE
## LAW FIRM, P.C.

February 25, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

      Re:    ADAI No.    02053
              Express Grill, Bingo Donuts (4925 N Blackstone Ave, Fresno, CA)

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

---

MLF0043995

EX. 80-15

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | No. |
| Plaintiff, | **COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |
| vs. | |
| ROWELL FAMILY LLC; TODD A. BLUM; JOSE ROMANI dba EXPRESS GRILL; MARIA ROMANI dba EXPRESS GRILL; YAM NGO dba BINGO DONUTS; | |
| Defendants. | |

## I. SUMMARY

1. This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

    a)    Express Grill
            4925 North Blackstone Avenue
            Fresno, CA 93726
            (hereafter "the Express Grill Facility")

    b)    Bingo Donuts
            4915 North Blackstone Avenue
            Fresno, CA 93726
            (hereafter "the Bingo Donuts Facility")

MLF0043996

EX. 80-16

1  Each of the facilities identified above shall be collectively hereafter referred to as "the

2  Facilities."

3  2. Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

4  costs, pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.)

5  ("ADA") and related California statutes, against:

6         a)   ROWELL FAMILY LLC and TODD A. BLUM (hereinafter

7              collectively "the Landlord Defendants");

8         b)   JOSE ROMANI dba EXPRESS GRILL; MARIA ROMANI dba

9              EXPRESS GRILL (hereinafter collectively "the Express Grill

10              Defendants"); and

11         c)   YAM NGO dba BINGO DONUTS (hereinafter "the Bingo Donuts

12              Defendant").

13  The Express Grill Defendants and the Bingo Donuts Defendant are collectively referred

14  to herein as "the Tenant Defendants," and together with the Landlord Defendants, collectively

15  the "Defendants."

## II.   JURISDICTION

17  3. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

18  claims.

19  4. Supplemental jurisdiction for claims brought under parallel California law –

20  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

21  5. Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

23  6. All actions complained of herein take place within the jurisdiction of the United

24  States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

25  § 1391(b), (c).

## IV.   PARTIES

27  7. Plaintiff believes, and thereon alleges, that the Landlord Defendants own,

28  operate, and/or lease the real property consisting of the real property and common areas of the

*Moore v. Rowell Family LLC, et al.*
Complaint

Page 2

MLF0043997

EX. 80-17

1  Facilities as well as the physical structures thereon (including the buildings in which each of

2  the individual Tenant Defendants' Facilities is located), and consist of a person (or persons),

3  firm, or corporation. Plaintiff further believes, and thereon alleges, that the Landlord

4  Defendants lease the respective Facilities to the Tenant Defendants as follows:

5            a)    The Express Grill Defendants own, operate, and/or lease the Express

6                  Grill Facility, and lease the Express Grill Facility from the Landlord

7                  Defendants; and

8            b)    The Bingo Donuts Defendant owns, operates, and/or leases the Bingo

9                  Donuts Facility, and leases the Bingo Donuts Facility from the Landlord

10                 Defendants.

11       8.    Plaintiff is substantially limited in his ability to walk, and must use a wheelchair

12  for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable

13  California and United States laws, and is a member of the public whose rights are protected by

14  these laws.

**V.    FACTS**

16       9.    The Facilities are open to the public, intended for non-residential use, and their

17  operation affects commerce. The Facilities are therefore a public accommodation as defined by

18  applicable state and federal laws.

19       10.    Plaintiff visited the Facilities and encountered barriers (both physical and

20  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

21  goods, services, privileges and accommodations offered at the Facilities. Plaintiff personally

22  encountered the following barriers at the Facilities during Plaintiff's visits to the Express Grill

23  Facility on or about May 28, 2014 and the Bingo Donuts Facility on or about July 18, 2014:

24            a)    The ramp from the parking lot to the sidewalk was an improperly

25                  configured built-up curb ramp, which extended into the access aisle

26                  adjacent to the designated accessible parking stall. It was difficult for

27                  Plaintiff to ascend and descend the ramp, and he was afraid that his

28                  wheelchair would roll off the sloped sides of the ramp.

*Moore v. Rowell Family LLC, et al.*
Complaint

Page 3

MLF0043998

EX. 80-18

b)    The entrance to the Express Grill Facility had a heavy door, and it was hard for Plaintiff to hold the door open while maneuvering through the doorway. He was not able to get all the way through the entrance before the door swung closed on him.

c)    Plaintiff was unable to find any accessible seating at the Express Grill Facility, and was forced to sit at a table that was improperly configured, with a support that prevented him from pulling his wheelchair all the way up to the table. Plaintiff had to sit at an uncomfortable distance from the table for the duration of his meal.

d)    The transaction counter at the Express Grill Facility was too high for Plaintiff to reach in order to sign his receipt, and he was forced to sign it on his lap instead.

e)    Plaintiff needed to use the restroom while at the Express Grill Facility, but the route to the restroom was obstructed by a plant, cabinet, and ice machine. It was very difficult for Plaintiff to maneuver his wheelchair to and from the restroom due to the lack of clearances.

f)    The entrance to the Bingo Donuts Facility also had a heavy door, and it was again difficult for Plaintiff to hold the door open while wheeling himself into the store.

g)    Plaintiff could not find an accessible table at the Bingo Donuts Facility, and had to sit at a table that was too low, preventing him from pulling up comfortably to the table.

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facilities and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facilities and relate to his disabilities removed to afford him full and equal access.

12. Plaintiff was, and continues to be, deterred from visiting the Facilities because

*Moore v. Rowell Family LLC, et al.*
Complaint

MLF0043999

EX. 80-19

1   Plaintiff knows that the Facilities' goods, services, facilities, privileges, advantages, and

2   accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

3   Plaintiff enjoys the goods and services offered at the Facilities, and will return to the Facilities

4   once the barriers are removed.

5          13.     Defendants knew, or should have known, that these elements and areas of the

6   Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access to

7   the physically disabled. Moreover, Defendants have the financial resources to remove these

8   barriers from the Facilities (without much difficulty or expense), and make the Facilities

9   accessible to the physically disabled. To date, however, Defendants refuse to either remove

10  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

11         14.     At all relevant times, Defendants have possessed and enjoyed sufficient control

12  and authority to modify the Facilities to remove impediments to wheelchair access and to

13  comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

14  Design. Defendants have not removed such impediments and have not modified the Facilities

15  to conform to accessibility standards. Defendants have intentionally maintained the Facilities

16  in their current condition and have intentionally refrained from altering the Facilities so that

17  they comply with the accessibility standards.

18         15.     Plaintiff further alleges that the (continued) presence of barriers at the Facilities

19  is so obvious as to establish Defendants discriminatory intent. On information and belief,

20  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

21  to relevant building standards; disregard for the building plans and permits issued for the

22  Facilities; conscientious decision to maintain the architectural layout (as it currently exists) at

23  the Facilities; decision not to remove barriers from the Facilities; and allowance that

24  Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on

25  information and belief, that the Facilities are not in the midst of a remodel, and that the barriers

26  present at the Facilities are not isolated (or temporary) interruptions in access due to

27  maintenance or repairs.

28  //

*Moore v. Rowell Family LLC, et al.*
Complaint

MLF0044000

EX. 80-20

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

16.     Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.     Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facilities during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

19.     The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.     When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.     Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facilities without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.     In the alternative, if it was not "readily achievable" for Defendants to remove the Facilities' barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

Failure to Design and Construct an Accessible Facility

23.     Plaintiff alleges on information and belief that the Facilities were designed and

MLF0044001

EX. 80-21

1  constructed (or both) after January 26, 1992 – independently triggering access requirements

2  under Title III of the ADA.

3      24.    The ADA also prohibits designing and constructing facilities for first occupancy

4  after January 16, 1993, that aren't readily accessible to, and usable by, individuals with

5  disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

6      25.    Here, Defendants violated the ADA by designing and constructing (or both) the

7  Facilities in a manner that was not readily accessible to the physically disabled public –

8  including Plaintiff – when it was structurally practical to do so.[1]

9                        <u>Failure to Make an Altered Facility Accessible</u>

10     26.    Plaintiff alleges on information and belief that the Facilities were modified after

11  January 26, 1992, independently triggering access requirements under the ADA.

12     27.    The ADA also requires that facilities altered in a manner that affects (or could

13  affect) its usability must be made readily accessible to individuals with disabilities to the

14  maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

15  primary function also requires making the paths of travel, bathrooms, telephones, and drinking

16  fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

17     28.    Here, Defendants altered the Facilities in a manner that violated the ADA and

18  was not readily accessible to the physically disabled public – including Plaintiff – to the

19  maximum extent feasible.

20                        <u>Failure to Modify Existing Policies and Procedures</u>

21     29.    The ADA also requires reasonable modifications in policies, practices, or

22  procedures, when necessary to afford such goods, services, facilities, or accommodations to

23  individuals with disabilities, unless the entity can demonstrate that making such modifications

24  would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

25

26

27

28

---

[1] Nothing within this complaint should be construed as an allegation that Plaintiff is bringing this action as a
private attorney general under either state or federal statutes.

*Moore v. Rowell Family LLC, et al.*
Complaint

MLF0044002

EX. 80-22

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facilities, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

### VII.   SECOND CLAIM

#### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

*Moore v. Rowell Family LLC, et al.*
Complaint

MLF0044003

EX. 80-23

1  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

2  § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

5      41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

6  this claim.

7      42.    Health and Safety Code § 19955(a) states, in part, that: California public

8  accommodations or facilities (built with private funds) shall adhere to the provisions of

9  Government Code § 4450.

10      43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-

11  exempt) public accommodation constructed prior to July 1, 1970, which is altered or

12  structurally repaired, is required to comply with this chapter.

13      44.    Plaintiff alleges the Facilities are public accommodations constructed, altered,

14  or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

15  Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code

16  § 19956.

17      45.    Defendants' non-compliance with these requirements at the Facilities aggrieved

18  (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

19  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.    PRAYER FOR RELIEF

21      WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

22      1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

23      2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh

24          Act damages.

25      3.    Statutory minimum damages under section 52(a) of the California Civil Code

26          according to proof.

27      4.    Attorneys' fees, litigation expense, and costs of suit.[2]

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Rowell Family LLC, et al.*
Complaint

MLF0044004

EX. 80-24

5.      Interest at the legal rate from the date of the filing of this action.

6.      For such other and further relief as the Court deems proper.

Dated: February 24, 2015                    MOORE LAW FIRM, P.C.


                                            /s/ Tanya E. Moore
                                            Tanya E. Moore
                                            Attorneys for Plaintiff
                                            Ronald Moore

*Moore v. Rowell Family LLC, et al.*
Complaint

Page 10

MLF0044005

EX. 80-25

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated: February 24, 2015          /s/ Ronald Moore
                                  Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                  /s/ Tanya E. Moore
                                  Tanya E. Moore, Attorney for
                                  Plaintiff, Ronald Moore

MLF0044006

EX. 80-26

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 2/24/15                          _Ronald Moore_
                                         Ronald Moore

*Moore v. Rowell Family, LLC (Express Grill, Bingo Donuts)*

MLF0044008

EX. 80-27

# Exhibit 81

(Ron)

There is a marked & farthest from the door, But no Sign & no Ramp. Door opens outward so you cant get in without help. Ron could not even get into the Hallway to the Restroom.

Womens Restroom is narrow & also would not Be able to get a wheel chair into.

CHILE MY CORONA
3848 E BELMONT AVE
FRESNO, CA 93702
559-268-7659

Merchant ID: 240351247
Term ID: 0708

Sale

MASTERCARD
XXXXXXXXXXXX4370
Entry Method: Swiped
Apprvd: Online    Batch#: 000005
07/17/10            18:20:08

Inv#: 00000001 Appr Code: F5296E

Amount:        $      13.34
Tip:
Total:        $   1500

Customer Copy

THANK YOU

(Building)

→ This Restraunt has a high Turnover & Building is often empty, So this Should Be done Soon. most Businesses dont Stay there very longo

MLF0025602

EX. 81-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? *Chille My CORONA*

2. When did you visit the Facility? *2/1/14* (Date) *7pm* (Time)

3. What is the address of the Facility? *3848 E Belmont AVE* *Fresno CA*

4. Was this your first visit to the Facility? *No*

5. How many times have you visited the Facility? *?* If more than one visit, please list the date and time if you know it. *?*

6. What was the purpose of your visit? *To eat Dinner*

7. Who accompanied you to the Facility? *My Grandson Ronny*

8. What car did you drive to the Facility? *mine*

9. Did you drive yourself of did you get a ride from someone else? *I Drove*

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. *In D/P parking Spot*

11. Was it difficult for you to park there? *yes*

12. Why? *Side walk very Narrow could not get Down of ramp Body WAS eating outside.*

13. How did you unload from your vehicle? *Rear grandson brought chair to my Door Because parking Lot All cracked up —*

14. What side of the vehicle did you unload from? Driver or passenger? *Drive*

15. Did anyone help you to transfer onto your wheelchair? *Grandson Ronny*

16. What problems did you encounter transferring onto your wheelchair?

*Road cracked*

17. Which way did you go from the parking to the entrance of the Facility? *To Left in Road*

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
*Had to go in Road to Ramp Ramp went into Street very Steep*

19. Did you encounter any problems opening the door? Describe why. *Yes Opened out Heavy And treshold girl had to Help Keep Door open*

20. Did you have any problems inside the Facility? Describe. *yes*

MLF0051766

EX. 81-3

21. What did you purchase (or what meal did you have there). Describe: 3 meals
My grandson ate there Brought one home to my wife .

22. Have you used the restroom at the Facility? could not get in Door to small

23. Why did you need to use the restroom? WASH hands and go pee

24. Did you use the sink? NO

25. Any problems? HAd to have girl Bring me towel to wash My hands At the table

26. Did you use the urinal? NO

27. Did you use the toilet? NO   I had to BACK All the way

28. Did you use the toilet paper? NO   out Down the Issle Because

29. Did you use paper towels? NO   I could not turn ARound

30. Did you use the soap dispenser? NO

31. Did you have any problem maneuvering inside the restroom? could not get in

32. Where did you sit? table

33. Was there any seating provided inside the Facility? Yes

34. Was it wheelchair accessible? NO

35. Where you comfortable at the table? NO could not slide up to table Because of pole under table

36. Did you use the counter to pay for purchase? yes

37. Which counter did you use? only one

38. Was the counter accessible? NO My grandson had to sign Recipt Because I could not Reach it.

39. Which way did you go after you left the Facility? to the Rigt

40. Any problems getting back to your vehicle? yes Leaving Door shut on me got stuck girl had to help me out

41. Any problems transferring from your wheelchair to your vehicle? yes My grandson had to put Chair in Back Because my neck all cracked up

42. If you have any additional information you believe would assist us in evaluating this inquiry.
Also Going Down Ramp steep put me into parking lot

MLF0051767

EX. 81-4



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
Attorney at Law

Martha H. Alvizo
Paralegal

September 10, 2010

Mr. Ronald Moore
80 N. Hughes Ave
Clovis, CA 93612

Re: *El Pueblito Restaurant, BJ'S Kountry Kitchen, Burger King, Chapala Mexican Restaurant, Chile My Corona, Clovis 8, El Gran Rodeo, Donut Shop, Mateos, Donut Nation, DO Cakes, Los Banos Donuts, Fajita Fiesta, Fresh & Easy, Fosters Freeze, Ihop, Handi Stop, Joes Steakhouse, Kwik Serve Mkt, La Nobleza, My Slice Pizza, K & C, McDonalds, Rite Aid, Robertitos, Ryan's Place, SaveMart, Susie's Deals, Subway, Shushi and Sake Bar, Smokehouse, Supercuts, Royal Palace, Tahoe's Joe's, The Original, Valli Gas, Yogurt.*

Dear Mr. Moore:

This letter is to inform you that we have received your request to file a lawsuit on your behalf against the above-referenced facility along with the receipt of purchase you provided. Please be advised that we will investigate the barriers to access encountered by you and advise you within three weeks if we decide to accept this case.

Thank you for sending us this information. If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

Tanya Moore

Tanya Moore
Attorney at Law

TM/ma

MLF0046737



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

December 19, 2011

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

Re: <u>Chile My Corona.</u>

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facilities. If you visit the facilities again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for these matters. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

Tanya Moore

Tanya Moore
Attorney at Law

MLF0025603

Tanya E. Moore, SBN 206683
K. Randolph Moore, SBN 106933
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

RONALD MOORE,

        Plaintiff,

    vs.

THOMAS H. RUIZ, JOSE ENRIQUE
MALDONADO dba CHILE MY CORONA,
        Defendants.

No.

**PLAINTIFF'S COMPLAINT ASSERTING
DENIAL OF RIGHT OF ACCESS UNDER
AMERICANS WITH DISABILITIES ACT
FOR INJUNCTIVE RELIEF,
DECLARATORY RELIEF, DAMAGES,
ATTORNEYS' FEES AND COSTS (ADA)**

## I.  SUMMARY

1.    This is a civil rights action by plaintiff RONALD MOORE ("Moore") for

discrimination at the building, structure, facility, complex, property, land, development,

and/or surrounding business complex known as:

Chile My Corona
3848 E Belmont Ave.
Fresno, CA 93702
(hereinafter "the Facility")

2.    Moore seeks damages, injunctive and declaratory relief, attorney fees and

costs, against THOMAS H. RUIZ, JOSE ENRIQUE MALDONADO dba CHILE MY

CORONA (referred to hereinafter as "Defendants"), pursuant to the Americans with

Disabilities Act of 1990, (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California

*Moore v. Ruiz, et al.*                       Plaintiff's Complaint

MLF0025648

EX. 81-7

1  statutes.

2  II.   JURISDICTION

3      3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

4  ADA claims.

5      4.   Supplemental jurisdiction for claims brought under parallel California law --

6  arising from the same nucleus of operative facts -- is predicated on 28 U.S.C. § 1367.

7      5.   Moore's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

8  III.   VENUE

9      6.   All actions complained of herein take place within the jurisdiction of the

10  United States District Court, Eastern District of California, and venue is invoked pursuant to

11  28 U.S.C. § 1391(b), (c).

12  IV.   PARTIES

13      7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or

14  persons), firm, and/or corporation.

15      8.   Moore was diagnosed with hydrocephalus, degenerative disc disease of the

16  lower back, cervical radiculopathy, B knee arthritis and chronic pain syndrome since 2002

17  and requires the use of a wheelchair when traveling about in public.  Consequently, Moore is

18  "physically disabled", as defined by all applicable California and United States laws and a

19  member of the public whose rights are protected by these laws.

20  V.   FACTS

21      9.   The Facility is a public accommodation facility, open to the public, which is

22  intended for nonresidential use and whose operation affects commerce.

23      10.   Moore visited the Facility and encountered barriers (both physical and

24  intangible) that interfered with – if not outright denied – his ability to use and enjoy the goods,

25  services, privileges and accommodations offered at the Facility.  Moore personally encountered

26  the following barriers at the Facility:

27      1) Moore could not find any accessible route from the parking space to the entrance of

28          the Facility because of the abrupt change in level in front of the entrance;

MLF0025649

EX. 81-8

2) There was no clearance provided on the pull side of the entrance door and Moore had to seek assistance to hold the door open for him;

3) Moore could not even enter the hallway leading to the restroom due to insufficient wheelchair clearances provided and had to abstain from using the restroom.

11.    Moore was, and continues to be, deterred from visiting the Facility because he knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to him due to his physical disabilities.  Moore continues to be deterred from visiting the Facility because of the future threats of injury created by these barriers due to his physical disabilities including, but not limited to:

1) Missing and/or incorrect warning signage is installed at the parking facilities;

2) Accessible parking spaces and access aisles are not properly configured and/or exceed the maximum slope allowed;

3) Parking spaces and/or access aisles reserved for persons with disabilities are improperly marked and/or identified;

4) There is no properly configured and/or identified accessible route provided within the boundary of the site;

5) There are insufficient clearances and access provided for a wheelchair inside the Facility;

6) There are no accessible restrooms provided.

Moore enjoys the goods and services offered at the Facility, lives in Fresno, and will return to the Facility once the barriers are removed.

12.    Defendants knew or should have known that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled.  To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

*Moore v. Ruiz, et al.*                                      Plaintiff's Complaint

MLF0025650

EX. 81-9

13.    At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.  Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards.  Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

VI.    FIRST CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

14.    Moore incorporates the allegations contained in paragraphs 1 through 13 for this claim.

15.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

16.    Defendants discriminated against Moore by denying him "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

17.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv).  The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense."  Id. § 12181(9).

18.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable.  Id. § 12182(b)(2)(A)(v).

MLF0025651

EX. 81-10

19. Here, Moore alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

20. In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

21. Plaintiff alleges on information and belief, that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III or the ADA.

22. The ADA also prohibits designing and constructing facilities or first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

23. Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Moore– when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

24. Plaintiff alleges on information and belief, that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

25. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

26. Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Moore– to the maximum extent feasible.

---

[1] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Ruiz, et al.*                                           Plaintiff's Complaint

MLF0025652

EX. 81-11

1   <u>Failure to Modify Existing Policies and Procedures</u>

2   27.   The ADA also requires reasonable modifications in policies, practices, or

3   procedures, when necessary to afford such goods, services, facilities, or accommodations to

4   individuals with disabilities, unless the entity can demonstrate that making such

5   modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

6   28.   Here, Defendants violated the ADA by failing to make reasonable

7   modifications in policies, practices, or procedures at the Facility, when these modifications

8   were necessary to afford (and would not fundamentally alter the nature of) these goods,

9   services, facilities, or accommodations.

10   29.   Moore seeks all relief available under the ADA (i.e., injunctive relief, attorney

11   fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

12   30.   Moore also seeks a finding from this Court (i.e., declaratory relief) that

13   Defendants violated the ADA in order to pursue damages under California's Unruh Civil

14   Rights Act or Disabled Persons Act.

15   VII.   SECOND CLAIM

16   **Disabled Persons Act**

17   31.   Moore incorporates the allegations contained in paragraphs 1 through 30 for

18   this claim.

19   32.   California Civil Code § 54 states, in part, that:  Individuals with disabilities

20   have the same right as the general public to the full and free use of the streets, sidewalks,

21   walkways, public buildings and facilities, and other public places.

22   33.   California Civil Code § 54.1 also states, in part, that: Individuals with

23   disabilities shall be entitled to full and equal access to accommodations, facilities, telephone

24   facilities, places of public accommodation, and other places to which the general public is

25   invited.

26   34.   Both sections specifically incorporate (by reference) an individual's rights

27   under the ADA.  See Civil Code §§ 54(c) and 54.1(d).

28   35.   Here, Defendants discriminated against the physically disabled public –

including Moore– by denying them full and equal access to the Facility.  Defendants also

*Moore v. Ruiz, et al.*                              Plaintiff's Complaint

MLF0025653

EX. 81-12

1  violated Moore's rights under the ADA, and therefore, infringed upon or violated (or both)

2  Moore's rights under the Disabled Persons Act.

3      36.    For each offense of the Disabled Persons Act, Moore seeks actual damages

4  (both general and special damages), statutory minimum damages of one thousand dollars

5  ($1,000), declaratory relief, and any other remedy available under California Civil Code §

6  54.3.

7      37.    Plaintiff also seeks to enjoin Defendants from violating the Disabled Persons

8  Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees

9  and costs incurred under California Civil Code §§ 54.3 and 55.

10              VIII.   THIRD CLAIM

11              **Unruh Civil Rights Act**

12      38.    Moore incorporates the allegations contained in paragraphs 1 through 37 for

13  this claim.

14      39.    California Civil Code § 51 states, in part, that: All persons within the

15  jurisdiction of this state are entitled to the full and equal accommodations, advantages,

16  facilities, privileges, or services in all business establishments of every kind whatsoever.

17      40.    California Civil Code § 51.5 also states, in part that: No business

18  establishment of any kind whatsoever shall discriminate against any person in this state

19  because of the disability of the person.

20      41.    California Civil Code § 51(f) specifically incorporates (by reference) an

21  individual's rights under the ADA into the Unruh Act.

22      42.    Defendants' aforementioned acts and omissions denied the physically

23  disabled public – including Moore – full and equal accommodations, advantages, facilities,

24  privileges and services in a business establishment (because of their physical disability).

25      43.    These acts and omissions (including the ones that violate the ADA) denied,

26  aided or incited a denial, or discriminated against Moore by violating the Unruh Act.

27      44.    Moore was damaged by Defendants' wrongful conduct, and seeks statutory

28  minimum damages of four thousand dollars ($4,000) for each offense.

MLF0025654

EX. 81-13

1  45.   Moore also seeks to enjoin Defendants from violating the Unruh Act (and

2  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

3  § 52(a).

4  ### IX. FOURTH CLAIM

5  **Denial of Full and Equal Access to Public Facilities**

6  46.   Moore incorporates the allegations contained in paragraphs 1 through 45 for this

7  claim.

8  47.   Health and Safety Code § 19955(a) states, in part, that:  California public

9  accommodations or facilities (built with private funds) shall adhere to the provisions of

10 Government Code § 4450.

11 48.   Health and Safety Code § 19959 states, in part, that:  Every existing (non-

12 exempt) public accommodation constructed prior to July 1, 1970, which is altered or

13 structurally repaired, is required to comply with this chapter.

14 49.   Moore alleges the Facility is a public accommodation constructed, altered, or

15 repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code §

16 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

17 50.   Defendants' non-compliance with these requirements at the Facility aggrieved

18 (or potentially aggrieved) Moore and other persons with physical disabilities.  Accordingly, he

19 seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

20 ### X.     PRAYER FOR RELIEF

21 WHEREFORE, Moore prays judgment against Defendants for:

22   1. Injunctive relief, preventive relief, or any other relief the Court deems proper.

23   2. Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act

24      or Disabled Persons Act damages.

25   3. Statutory minimum damages under either sections 52(a) or 54.3(a) of the California

26      Civil Code (but not both), according to proof.

27   4. Attorneys' fees, litigation expense, and costs of suit.[2]

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Ruiz, et al.*                                    Plaintiff's Complaint

MLF0025655

EX. 81-14

1    5. Interest at the legal rate from the date of the filing of this action.

2    6. For such other and further relief as the Court deems proper.

3  Dated: December 28, 2011                          MOORE LAW FIRM

4

5                                                    /s/Tanya Moore
                                                     Tanya E. Moore
6                                                    Attorney for Plaintiff,
                                                     Ronald Moore
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Moore v. Ruiz, et al.*                             Plaintiff's Complaint

Page 9

MLF0025656

EX. 81-15

# Exhibit 82

MLF0037227

The 500 Club
500 Clovis Ave
Clovis, CA
559-299-2797

Server: Raine                    02/05/2014
Table 5/1                        4:01 PM
Guests: 3                        20024
Reprint #: 1

Double Den Burger                12.
Tuna Melt                        10.49
  Side Onion Rings               9.99
Tri-Tip Sandwich                 1.99
Sierra Mist

Complete Subtotal                35.46

Subtotal                         35.46
Tax                              2.75

Total                            38.21

VISA #XXXXXXXXXXX4008
  Auth:03839B
Balance Due                      0.00

Join us for Monday Night
Football. We will have happy
hour from 2pm-Midnight.
Please come again.

----- Check Closed -----

---

The 500 Club
500 Clovis Ave
Clovis, CA
559-299-2797

Server: Raine          DOB: 02/05/2014
04:01 PM                    02/05/2014
Table 5/1                    2/20024

               SALE

                        2097173

VISA
Card #XXXXXXXXXXX4008
Magnetic card present: MAGHE RONALD
Card Entry Method: S

Approval: 03839B

       Amount:          $ 38.21

       + Tip:  _____

       = Total _____

     I agree to pay the above
     total amount according to the
     card issuer agreement.

X_____

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _500 Club_

2. When did you visit the Facility? _2/5/1?_ (Date) _4pm_ (Time)

3. What is the address of the Facility? _500 Clovis Ave clovis ca_

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _?_ If more than one visit, please list the date and time if you know it. _?_

6. What was the purpose of your visit? _To eat_

7. Who accompanied you to the Facility? _my wife and Grandson_

8. What car did you drive to the Facility? ~~The parking spot~~ _I Drove_

9. Did you drive yourself of did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In parking space in Rear_

11. Was it difficult for you to park there? _yes_

12. Why? _No Signs   No parking spots_

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Driver_

15. Did anyone help you to transfer onto your wheelchair? _Grandson_

16. What problems did you encounter transferring onto your wheelchair?

_None Grandson got chair out for me_

17. Which way did you go from the parking to the entrance of the Facility? _Across Road to Door_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
_payment cracked And uneven   No Route of Travel_

19. Did you encounter any problems opening the door? Describe why. _Door Heavy_

20. Did you have any problems inside the Facility? Describe. _yes there is a Ramp_

MLF0037223

EX. 82-3

that goes down when you get inside There WAS
No Room from me to table Behind me my chair WAS touching
chair Behind me until it WAS pushed All the way into table.

21. What did you purchase (or what meal did you have there). Describe: 3 meals

22. Have you used the restroom at the Facility? Yes

23. Why did you need to use the restroom? Had to go

24. Did you use the sink? Yes to High

25. Any problems? Door Heavy

26. Did you use the urinal? No

27. Did you use the toilet? Yes

28. Did you use the toilet paper? Yes

29. Did you use paper towels? Yes

30. Did you use the soap dispenser? Yes Hard to get to High and Away

31. Did you have any problem maneuvering inside the restroom? No

32. Where did you sit? Table

33. Was there any seating provided inside the Facility? No

34. Was it wheelchair accessible? No

35. Where you comfortable at the table? No

36. Did you use the counter to pay for purchase? No

37. Which counter did you use? None

38. Was the counter accessible? They Brought check to me

39. Which way did you go after you left the Facility? Up Ramp to Door to my car outside

40. Any problems getting back to your vehicle? Door payment Ramp inside

41. Any problems transferring from your wheelchair to your vehicle? No Because
Mine grandson put chair in Car

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0037224

EX. 82-4

February 18, 2014

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

> **RE:** **ADAI No. 1901**
> **500 Club**
> **500 Clovis Ave, Clovis, CA**

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0037225

**BARRIER MEMO**

ADAI No. :     01901

Case Name:     Moore v. 500 Club

Address:       500 Clovis Ave, Clovis

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No accessible parking | Plaintiff parked in the parking lot behind the Facility, where he was unable to locate a designated accessible parking space. He was forced to park in a standard parking space, and required assistance to transfer between his vehicle and his wheelchair. | Yes, not a single accessible parking, all spaces designated by the tenant, there are quite a few that are designated 500 club |
| Pavement cracked | The surface of the pavement along the route from Plaintiff's parking space to the Facility entrance was cracked and uneven, making it difficult for him to maneuver. | Yes |
| Door heavy | The Facility entry door was heavy, making it difficult for Plaintiff to open. | Yes |
| Steep ramp inside entrance | There was a steep ramp located just inside the Facility entrance, which was difficult for Plaintiff to maneuver his wheelchair up and down. | Did not see it |
| No clearance at table | Plaintiff was seated at a table which lacked necessary clearance around his seating space, such that there was barely enough space for his wheelchair to fit at the table and his back was touching the chair at the table behind him even though the chair was pushed all the way into the table. Plaintiff was uncomfortable for the duration of his meal due to the lack of space. | Yes, but was not sure which table. I guess if he was seated makes no difference. |
| Restroom door heavy | The door to the men's restroom at the Facility was heavy, making it difficult for Plaintiff to open. | No |
| Restroom – sink too high | The lavatory in the men's restroom was too high, which made it difficult for Plaintiff to reach up to wash his hands. | NO |

1

MLF0037209

EX. 82-6

| Restroom — soap dispenser out of reach | The soap dispenser in the men's restroom was positioned out of Plaintiff's reach, making it difficult for him to get soap to wash his hands. | NO |
| --- | --- | --- |

MLF0037210

EX. 82-7

**BARRIER MEMO**

**ADAI No. :**    01901

**Case Name:**    Moore v. 500 Club

**Address:**    500 Clovis Ave, Clovis

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No accessible parking | Plaintiff parked in the parking lot behind the Facility, where he was unable to locate a designated accessible parking space. He was forced to park in a standard parking space, and required assistance to transfer between his vehicle and his wheelchair. | Yes, not a single accessible parking, all spaces designated by the tenant, there are quite a few that are designated 500 club |
| Pavement cracked | The surface of the pavement along the route from Plaintiff's parking space to the Facility entrance was cracked and uneven, making it difficult for him to maneuver. | Yes |
| Door heavy | The Facility entry door was heavy, making it difficult for Plaintiff to open. | Yes |
| Steep ramp inside entrance | There was a steep ramp located just inside the Facility entrance, which was difficult for Plaintiff to maneuver his wheelchair up and down. | Did not see it |
| No clearance at table | Plaintiff was seated at a table which lacked necessary clearance around his seating space, such that there was barely enough space for his wheelchair to fit at the table and his back was touching the chair at the table behind him even though the chair was pushed all the way into the table. Plaintiff was uncomfortable for the duration of his meal due to the lack of space. | Yes, but was not sure which table. I guess if he was seated makes no difference. |
| Restroom door heavy | The door to the men's restroom at the Facility was heavy, making it difficult for Plaintiff to open. | No |
| Restroom – sink too high | The lavatory in the men's restroom was too high, which made it difficult for Plaintiff to reach up to wash his hands. | NO |

1

MLF0037211

EX. 82-8

| | | |
|---|---|---|
| Restroom -- soap dispenser out of reach | The soap dispenser in the men's restroom was positioned out of Plaintiff's reach, making it difficult for him to get soap to wash his hands. | NO |

MLF0037212

EX. 82-9

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail:  tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>                Plaintiff,<br><br>        vs.<br><br>LOUIS G. SARANTOS, JR., dba CLOVIS 500 CLUB; GEORGE L. SARANTOS dba CLOVIS 500 CLUB; JAMES C. LaVIA, Trustee of the JAMES C. LaVIA TRUST dated December 9, 2009; MARCIA LaVIA, Trustee of the JAMES C. LaVIA TRUST dated December 9, 2009;<br><br>                Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

### I. SUMMARY

1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Clovis 500 Club
> 500 Clovis Avenue
> Clovis, CA 93612
> (hereafter "the Facility")

2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

*Moore v. Sarantos, et al.*
Complaint

MLF0037213

EX. 82-10

1  costs, against LOUIS G. SARANTOS, JR., dba CLOVIS 500 CLUB; GEORGE L.

2  SARANTOS dba CLOVIS 500 CLUB; JAMES C. LaVIA, Trustee of the JAMES C. LaVIA

3  TRUST dated December 9, 2009; and MARCIA LaVIA, Trustee of the JAMES C. LaVIA

4  TRUST dated December 9, 2009 (hereinafter collectively referred to as "Defendants"),

5  pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.)

6  ("ADA") and related California statutes.

**II.   JURISDICTION**

8  3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

9  ADA claims.

10  4.   Supplemental jurisdiction for claims brought under parallel California law –

11  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

12  5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

**III.   VENUE**

14  6.   All actions complained of herein take place within the jurisdiction of the

15  United States District Court, Eastern District of California, and venue is invoked pursuant to

16  28 U.S.C. § 1391(b), (c).

**IV.   PARTIES**

18  7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or

19  persons), firm, and/or corporation.

20  8.   Plaintiff requires the use of a wheelchair when traveling about in public.

21  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

22  United States laws, and a member of the public whose rights are protected by these laws.

**V.   FACTS**

24  9.   The Facility is a public accommodation facility, open to the public, which is

25  intended for nonresidential use and whose operation affects commerce.

26  10.   Plaintiff visited the Facility and encountered barriers (both physical and

27  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

28  goods, services, privileges and accommodations offered at the Facility.   Plaintiff personally

MLF0037214

EX. 82-11

1    encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or
2    about February 5, 2014:

3           a)    Plaintiff was unable to locate a designated accessible parking space in
4                 the parking lot behind the Facility. He was forced to park in a standard
5                 parking stall which was improperly configured, making it hard for him
6                 to transfer between his vehicle and wheelchair, and causing him to
7                 require assistance.

8           b)    The surface of the pavement along the route from Plaintiff's parking
9                 space to the entrance of the Facility was cracked and uneven, making
10                it difficult for Plaintiff to maneuver.

11          c)    The Facility entrance door was heavy, making it difficult for Plaintiff
12                to open the door.

13          d)    Plaintiff was seated at a table which lacked necessary clearance around
14                his seating space, such that there was barely enough space for his
15                wheelchair at the table. He was forced to sit with his back touching the
16                chair of the table behind him, even though that chair was pushed all
17                the way into the table. Plaintiff was uncomfortable throughout his
18                meal due to the lack of space.

19          11.   The barriers identified in paragraph 10 herein are only those that Plaintiff
20    personally encountered. Plaintiff is presently unaware of other barriers which may in fact
21    exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint
22    once such additional barriers are identified as it is Plaintiff's intention to have all barriers
23    which exist at the Facility and relate to his disabilities removed to afford him full and equal
24    access.

25          12.   Plaintiff was, and continues to be, deterred from visiting the Facility because
26    Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and
27    accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.
28    Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

MLF0037215

EX. 82-12

1    once the barriers are removed.

2        13.    Defendants knew, or should have known, that these elements and areas of the

3    Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

4    the physically disabled.  Moreover, Defendants have the financial resources to remove these

5    barriers from the Facility (without much difficulty or expense), and make the Facility

6    accessible to the physically disabled.  To date, however, Defendants refuse to either remove

7    those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

8        14.    At all relevant times, Defendants have possessed and enjoyed sufficient

9    control and authority to modify the Facility to remove impediments to wheelchair access and

10   to comply with the 2010 Standards for Accessible Design and the California Code of

11   Regulations Title 24.  Defendants have not removed such impediments and have not

12   modified the Facility to conform to accessibility standards.  Defendants have intentionally

13   maintained the Facility in its current condition and have intentionally refrained from altering

14   the Facility so that it complies with the accessibility standards.

15       15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility

16   is so obvious as to establish Defendants' discriminatory intent.  On information and belief,

17   Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to

18   adhere to relevant building standards; disregard for the building plans and permits issued for

19   the Facility; conscientious decision to maintain the architectural layout (as it currently exists)

20   at the Facility; decision not to remove barriers from the Facility; and allowance that

21   Defendants' property continues to exist in its non-compliant state.  Plaintiff further alleges,

22   on information and belief, that the Facility is not in the midst of a remodel, and that the

23   barriers present at the Facility are not isolated (or temporary) interruptions in access due to

24   maintenance or repairs.

25                 **VI.    FIRST CLAIM**

26                **Americans with Disabilities Act of 1990**

27             <u>Denial of "Full and Equal" Enjoyment and Use</u>

28       16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

MLF0037216

EX. 82-13

1  this claim.

2      17.    Title III of the ADA holds as a "general rule" that no individual shall be

3  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

4  goods, services, facilities, privileges, and accommodations offered by any person who owns,

5  operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

6      18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

7  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

8  Facility during each visit and each incident of deterrence.

9      <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

10      19.    The ADA specifically prohibits failing to remove architectural barriers, which

11  are structural in nature, in existing facilities where such removal is readily achievable.  42

12  U.S.C. § 12182(b)(2)(A)(iv).

13      20.    When an entity can demonstrate that removal of a barrier is not readily

14  achievable, a failure to make goods, services, facilities, or accommodations available through

15  alternative methods is also specifically prohibited if these methods are readily achievable.

16  <u>Id</u>. § 12182(b)(2)(A)(v).

17      21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

18  barriers at the Facility without much difficulty or expense, and that Defendants violated the

19  ADA by failing to remove those barriers, when it was readily achievable to do so.

20      22.    In the alternative, if it was not "readily achievable" for Defendants to remove

21  the Facility's barriers, then Defendants violated the ADA by failing to make the required

22  services available through alternative methods, which are readily achievable.

23      <u>Failure to Design and Construct an Accessible Facility</u>

24      23.    Plaintiff alleges on information and belief that the Facility was designed and

25  constructed (or both) after January 26, 1992 – independently triggering access requirements

26  under Title III of the ADA.

27      24.    The ADA also prohibits designing and constructing facilities for first

28  occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

MLF0037217

EX. 82-14

with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

25.    Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

26.    Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.    The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible.  42 U.S.C.  §  12183(a)(2).    Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible.  <u>Id</u>.

28.    Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.    The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature.  42 U.S.C. § 12182(b)(2)(A)(ii).

30.    Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations.  42 U.S.C. § 12205.

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Sarantos, et al.*
Complaint

MLF0037218

1       32.   Plaintiff seeks a finding from this Court (i.e., declaratory relief) that
2   Defendants violated the ADA in order to pursue damages under California's Unruh Civil
3   Rights Act.

### VII.   SECOND CLAIM

**Unruh Act**

6       33.   Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for
7   this claim.

8       34.   California Civil Code § 51 states, in part, that:   All persons within the
9   jurisdiction of this state are entitled to the full and equal accommodations, advantages,
10  facilities, privileges, or services in all business establishments of every kind whatsoever.

11      35.   California Civil Code § 51.5 also states, in part that:   No business
12  establishment of any kind whatsoever shall discriminate against any person in this state
13  because of the disability of the person.

14      36.   California Civil Code § 51(f) specifically incorporates (by reference) an
15  individual's rights under the ADA into the Unruh Act.

16      37.   Defendants' aforementioned acts and omissions denied the physically
17  disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,
18  privileges and services in a business establishment (because of their physical disability).

19      38.   These acts and omissions (including the ones that violate the ADA) denied,
20  aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

21      39.   Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory
22  minimum damages of four thousand dollars ($4,000) for each offense.

23      40.   Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and
24  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code
25  § 52(a).

26  //

27  //

28  //

*Moore v. Sarantos, et al.*
Complaint

MLF0037219

EX. 82-16

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that:  California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that:  Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.     Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.     Attorneys' fees, litigation expense, and costs of suit.[2]

5.     Interest at the legal rate from the date of the filing of this action.

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Sarantos, et al.*
Complaint

Page 8

MLF0037220

EX. 82-17

1        6.      For such other and further relief as the Court deems proper.

2
Dated: April 28, 2014                    MOORE LAW FIRM, P.C.
3

4                                        /s/ Tanya E. Moore
                                         Tanya E. Moore
5                                        Attorneys for Plaintiff
                                         Ronald Moore
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Moore v. Sarantos, et al.*
Complaint
                                    Page 9

**MLF0037221**

EX. 82-18

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:____May 28, 2014_____          _/s/  Ronald Moore_____
                                      Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                      _/s/ Tanya E. Moore_____
                                      Tanya E. Moore, Attorney for
                                      Plaintiff, Ronald Moore

*Moore v. Sarantos, et al.*
*Verification*

MLF0037222

EX. 82-19



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
· AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

May 22, 2014

Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE: ADA No: 01901
Clovis 500 Club, 500 Clovis Ave., Clovis 93612

Dear Mr. Moore:

Thank you for contacting our office with your inquiry regarding potentially filing a lawsuit on your behalf against the above–referenced facility. This letter is to inform you that although there may be violations of the Americans with Disability Act and related California law involved in the above–referenced facility, you have requested that we stop the filing of an action on your behalf. This letter should not be interpreted by you, or anyone, that you do not have a legitimate case.

Please be advised that there is a statute of limitations that applies to your claim, and you are encouraged to seek legal advice immediately if you wish to pursue such claims. We will be doing nothing further in this matter and will not be monitoring any statute.

If you have any questions or would like to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Dictated but not read.*
*Sent without signature to avoid delay*

Tanya E. Moore

TEM/dg

Enclosures

MLF0037226

EX. 82-20



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

May 22, 2014

Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:    ADA No:    01901
Clovis 500 Club, 500 Clovis Ave., Clovis 93612

Dear Mr. Moore:

Thank you for contacting our office with your inquiry regarding potentially filing a lawsuit on your behalf against the above–referenced facility. This letter is to inform you that although there may be violations of the Americans with Disability Act and related California law involved in the above–referenced facility, you have requested that we stop the filing of an action on your behalf. This letter should not be interpreted by you, or anyone, that you do not have a legitimate case.

Please be advised that there is a statute of limitations that applies to your claim, and you are encouraged to seek legal advice immediately if you wish to pursue such claims. We will be doing nothing further in this matter and will not be monitoring any statute.

If you have any questions or would like to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Dictated but not read.*
*Sent without signature to avoid delay*

Tanya E. Moore

TEM/dg

Enclosures

MLF0037228

EX. 82-21

# Exhibit 83

FROSTY QUEEN

1420 GATEWAY DR.
MADERA, CA. 63637
559 673-7678

ORDER #   0152

| | |
|---|---|
| 1 Md Cone | 1.49 |
| 1 1/2 | |
| 1 1/2 | |
| 1 Md Co.. | 1.49 |
| 1 VAN | |
| 1 VAN | |
| 1 Md Chov | 1.49 |
| 1 VAN | |
| 1 VAN | |

| | | |
|---|---|---|
| SUBTOTAL | $ | 4.47 |
| TAX 1 | $ | 0.32 |
| TOTAL | $ | 4.79 |
| CRD CARD | $ | 4.79 |

9820  REG 01  EMPLOYEE MAY.31.14 20:46

THANK YOU!
GIFT CARDS AVAILABLE

FROS / QUEEN
1420 N GATEWAY DR
MADERA, CA 93637
559-673-7678
Merchant ID: 210013272
Term ID: 0021

Sale

MASTERCARD
XXXXXXXXXXXX7245
Entry Method: Swiped
Apprvd: Online   Batch#: 000005
05/31/14              18:43:52

Inv#: 00006034 Appr Code: 63447Z

Amount:        $      4.79
Tip:

Total:        --------------
         ==============

Customer Copy
THANK YOU!

**MLF0043252**

EX. 83-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? _Frosty Queen_

2. What is the address of the Facility? _1120 Gateway Dr Madera CA_

3. When did you visit the Facility? _5/31/14_ (Date) _6:45 pm_ (Time)

4. Was this your first visit to the Facility? _NO_

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. _?_

6. What was the purpose of your visit? _Ice Cream_

7. Who accompanied you to the Facility? _Grandson Ronny and Jhonny_

8. What car did you drive to the Facility? _Mine_

9. Did you drive yourself or did you get a ride from someone else? _I drove._

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In d/p parking spot_

11. Was it difficult for you to park there? If so, why? _Yes, no signs_

12. How did you unload from your vehicle? _Rear_

13. What side of the vehicle did you unload from? Driver or passenger? _Driver_

14. Did anyone help you to transfer onto your wheelchair? Who? _Jhonny_

15. Did you encounter any problems transferring onto your wheelchair? Describe. _No Jhonny helped Me_

16. Which way did you go from the parking to the entrance of the Facility? _up ramp to door_

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe _Yes ramp Steep, goes into Street, and access isle_

18. Did you encounter any problems opening the door? Describe _door heavy_

19. What did you purchase (or what meal did you have there)? _3 ice cream cones_

20. Did you need to use the restroom while you were at the Facility? Why? _Yes had to go_

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0043250

EX. 83-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: ~~xxxxxxxxxxx~~ Yes, not wrapped

Toilet: ~~xxx~~ Yes

Urinal: didn't use

Toilet paper: ~~xxx~~ Yes

Toilet seat covers: ~~xxxxxx~~ Yes, to high

Paper towels/hand dryer: Yes to high

Soap dispenser: Yes

Other: N/A

22. Did you have any problem maneuvering inside the restroom? NO

23. Was there any seating provided inside the Facility? Yes

24. Were you able to sit comfortably at the table? If not, why? no were for me to sit table legs in way no way for me to sit all the way up to tables

25. Did you use the counter to pay for purchase? Which one? Yes only one

26. Did you pay with cash or credit card? Credit

27. Was the counter accessible? If not, describe: NO, to high grandson had to sign reciept

28. Did you have any other problems inside the Facility? Describe: Do we had to Leave And eat Ice cream in car going down Road.

29. Which way did you go after you left the Facility? down ramp to car

30. Any problems getting back to your vehicle? ramp steep shot Me into Street

31. Any problems transferring from your wheelchair to your vehicle? No I hanny brought me to door and put chair in car

32. Any additional information you believe would assist us in evaluating this inquiry?

MLF0043251

EX. 83-4



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

July 1, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

    **RE:**   **ADAI No.**   **02041**
           **Frosty Queen** *(1120 Gateway Drive, Madera, CA 93637)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0043222

EX. 83-5

**BARRIER MEMO**

ADAI No. :     02041

Case Name:     Moore v. Frosty Queen

Address:     1120 Gateway Drive, Madera, CA 93637

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No Signs for Designated Handicap Parking | The facility did not provide any signs indicating where their handicap parking was located, which made it difficult for the plaintiff to find where to park. | Y |
| Steep, built-up curb ramp | The ramp from the parking lot to the sidewalk was a built-up curb ramp which extended very far into the access aisle, making it difficult for Plaintiff to get out of his vehicle. The ramp was also steep and therefore made it difficult for the plaintiff to wheel himself up to the entrance. On his way down the ramp after his visit, the steepness caused the plaintiff's chair to gain momentum and propel him down towards the path of vehicular traffic. | Y |
| Access aisle cracked and uneven | The access aisle into which the plaintiff unloaded was cracked and uneven, thereby making the process of getting into his wheelchair difficult. The plaintiff was with his grandsons who had to help him transfer safely. | Y |
| Heavy Door | The door to the facility was heavy for the plaintiff to open while in his wheelchair, so his grandsons held it open for him as he wheeled himself inside. | Y |
| Sink in Restroom not Wrapped | The plaintiff was apprehensive about using the sink because the pipes underneath it were not wrapped and he was concerned that he would burn his legs. | Y |
| High Toilet Seat Covers | The toilet seat covers were placed too high which made it difficult for the plaintiff to reach them. | Y |
| High Paper Towel Dispenser/Hand dryer | The paper towel dispenser/hand dryer was placed high thereby making it challenging for the plaintiff to access it. | Y |
| No Accessible Seating | The tables in the facility had legs underneath them which made it impossible for the plaintiff to wheel himself up all the way and eat his meal comfortably. Therefore, the plaintiff and his grandsons ate their ice cream in their car. | Y |
| High Counter | The counter in the facility was too high for the plaintiff to reach up to sign his receipt, so his grandson had to sign for him. | Y |

1

MLF0043223

EX. 83-6



**MOORE**
LAW FIRM, P.C.

October 15, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

Re:    ADAI No.    02041
       Schiff (Frosty Queen)
       1120 Gateway Drive, Madera, CA 93637

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records.  Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.


Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0043239

EX. 83-7

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | No. |
| Plaintiff, | **COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |
| vs. | |
| WILLIAM M. SCHIFF; ROBERTA SCHIFF OSER; MAGIB BAABBAD dba FROSTY QUEEN; | |
| Defendants. | |

## I. SUMMARY

1.   This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Frosty Queen
> 1120 North Gateway Drive
> Madera, CA 93637
> (hereafter "the Facility")

*Moore v. Schiff, et al.*
Complaint

MLF0043240

EX. 83-8

2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against WILLIAM M. SCHIFF; ROBERTA SCHIFF OSER; and MAGIB BAABBAD dba FROSTY QUEEN (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.     JURISDICTION

3.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.     Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.     Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.     VENUE

6.     All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.     PARTIES

7.     Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.     Plaintiff is substantially limited in his ability to walk, and must use a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.     FACTS

9.     The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

10.     Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

*Moore v. Schiff, et al.*
Complaint

MLF0043241

EX. 83-9

1  goods, services, privileges and accommodations offered at the Facility. Plaintiff personally
2  encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or
3  about May 31, 2014:

4         a)    Plaintiff had difficulty locating the designated accessible parking space
5                because it lacked proper signage.

6         b)    The access aisle next to the designated accessible parking stall was
7                cracked, and had a built-up curb ramp extending into it, creating a
8                sloped, uneven surface that made it difficult for Plaintiff to unload from
9                his vehicle.

10        c)    The ramp from the designated accessible parking to the sidewalk leading
11               to the building entrance was steep, making it difficult for Plaintiff to
12               ascend. When Plaintiff was returning to his vehicle after leaving the
13               Facility, he was unable to control the speed of his wheelchair down the
14               steep ramp and was propelled down towards the path of vehicular traffic.

15        d)    The building entrance door was too heavy for Plaintiff to open and his
16               grandsons had to hold it open while he maneuvered through.

17        e)    The transaction counter was too high for Plaintiff to sign his receipt on
18               the counter, so his grandson had to sign it for him.

19        f)    Plaintiff was unable to locate an accessible table at the Facility, as all the
20               tables had legs underneath which prevented him from pulling his
21               wheelchair under the table to eat comfortably. He was forced to take his
22               ice cream to go and eat it in his vehicle.

23        g)    The toilet seat cover dispenser and paper towel dispenser in the men's
24               restroom were positioned too high, making it difficult for Plaintiff to
25               reach them.

26        h)    The plumbing beneath the lavatory in the men's restroom was not
27               properly insulated, causing Plaintiff to fear that he would burn his legs
28               on the pipes while washing his hands.

*Moore v. Schiff, et al.*
Complaint

MLF0043242

EX. 83-10

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.    Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.    Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14.    At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants' discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

*Moore v. Schiff, et al.*
Complaint

MLF0043243

EX. 83-11

1   the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

2   property continues to exist in its non-compliant state. Plaintiff further alleges, on information

3   and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

4   Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

### VI.   FIRST CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

8   16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

9   this claim.

10   17.   Title III of the ADA holds as a "general rule" that no individual shall be

11   discriminated against on the basis of disability in the full and equal enjoyment (or use) of

12   goods, services, facilities, privileges, and accommodations offered by any person who owns,

13   operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

14   18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

15   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

16   Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

18   19.   The ADA specifically prohibits failing to remove architectural barriers, which

19   are structural in nature, in existing facilities where such removal is readily achievable. 42

20   U.S.C. § 12182(b)(2)(A)(iv).

21   20.   When an entity can demonstrate that removal of a barrier is not readily

22   achievable, a failure to make goods, services, facilities, or accommodations available through

23   alternative methods is also specifically prohibited if these methods are readily achievable. Id.

24   § 12182(b)(2)(A)(v).

25   21.   Here, Plaintiff alleges that Defendants can easily remove the architectural

26   barriers at the Facility without much difficulty or expense, and that Defendants violated the

27   ADA by failing to remove those barriers, when it was readily achievable to do so.

28   22.   In the alternative, if it was not "readily achievable" for Defendants to remove

MLF0043244

EX. 83-12

the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### Failure to Design and Construct an Accessible Facility

23.    Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.    The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. §·12183(a)(1).

25.    Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

26.    Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.    The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.    Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

29.    The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Schiff, et al.*
Complaint

MLF0043245

EX. 83-13

1  individuals with disabilities, unless the entity can demonstrate that making such modifications

2  would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

3      30.    Here, Defendants violated the ADA by failing to make reasonable modifications

4  in policies, practices, or procedures at the Facility, when these modifications were necessary to

5  afford (and would not fundamentally alter the nature of) these goods, services, facilities, or

6  accommodations.

7      31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney

8  fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

9      32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants

10  violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

11  **VII.    SECOND CLAIM**

12  **Unruh Act**

13      33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

14  this claim.

15      34.    California Civil Code § 51 states, in part, that: All persons within the

16  jurisdiction of this state are entitled to the full and equal accommodations, advantages,

17  facilities, privileges, or services in all business establishments of every kind whatsoever.

18      35.    California Civil Code § 51.5 also states, in part that: No business establishment

19  of any kind whatsoever shall discriminate against any person in this state because of the

20  disability of the person.

21      36.    California Civil Code § 51(f) specifically incorporates (by reference) an

22  individual's rights under the ADA into the Unruh Act.

23      37.    Defendants' aforementioned acts and omissions denied the physically disabled

24  public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges

25  and services in a business establishment (because of their physical disability).

26      38.    These acts and omissions (including the ones that violate the ADA) denied,

27  aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

28      39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

MLF0043246

EX. 83-14

1   minimum damages of four thousand dollars ($4,000) <u>for each offense.</u>

2        40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

3   ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

4   § 52(a).

5                    **VIII. THIRD CLAIM**

6       **Denial of Full and Equal Access to Public Facilities**

7        41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

8   this claim.

9        42.    Health and Safety Code § 19955(a) states, in part, that: California public

10   accommodations or facilities (built with private funds) shall adhere to the provisions of

11   Government Code § 4450.

12        43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-

13   exempt) public accommodation constructed prior to July 1, 1970, which is altered or

14   structurally repaired, is required to comply with this chapter.

15        44.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or

16   repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

17   § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

18        45.    Defendants' non-compliance with these requirements at the Facility aggrieved

19   (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

20   Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

21              **IX.**     **PRAYER FOR RELIEF**

22       WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

23       1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

24       2.      Declaratory relief that Defendants violated the ADA for the purposes of Unruh

25             Act damages.

26       3.      Statutory minimum damages under section 52(a) of the California Civil Code

27             according to proof.

28

*Moore v. Schiff, et al.*
Complaint

Page 8

MLF0043247

EX. 83-15

4.  Attorneys' fees, litigation expense, and costs of suit.[2]

5.  Interest at the legal rate from the date of the filing of this action.

6.  For such other and further relief as the Court deems proper.

Dated: October 13, 2014                    MOORE LAW FIRM, P.C.


                                           /s/ Tanya E. Moore
                                           Tanya E. Moore
                                           Attorneys for Plaintiff
                                           Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Schiff, et al.*
Complaint

Page 9

MLF0043248

EX. 83-16

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated: October 13, 2014            /s/  Ronald Moore
                                   Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                   /s/ Tanya E. Moore
                                   Tanya E. Moore, Attorney for
                                   Plaintiff, Ronald Moore

*Moore v. Schiff, et al.*
*Verification*

MLF0043249

EX. 83-17

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: _10/13/14_                    _Ronald Moore_
                                     Ronald Moore

*Ronald Moore v. William M. Schiff (Frosty Queen)*

MLF0043253

EX. 83-18

v

# Exhibit 84

SEKHON CEDAR MARKET
3405 N CEDAR AVE
FRESNO, CA 93726

04/24/2014                    20:20:25
MID: 000000003416162    TID: 05173128
3722243247882

CREDIT CARD

MC SALE

CARD #              XXXXXXXXXXXX7245
INVOICE                         0011
Batch #:                      000220
Approval Code:                481122
Entry Method:                 Swiped
Mode:                         Online

SALE AMOUNT                    $3.54


CUSTOMER COPY

MLF0040311

EX. 84-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? _Sekhon Cedar Market_

2. What is the address of the Facility? _3405 N. Cedar Ave. Fresno CA_

3. When did you visit the Facility? _4/24/14_ (Date) _8:20_ (Time)

4. Was this your first visit to the Facility? _NO_

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. _?_

6. What was the purpose of your visit? _Chau_

7. Who accompanied you to the Facility? _Grandson Ronny_

8. What car did you drive to the Facility? _Mine_

9. Did you drive yourself or did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _On Side of Store_

11. Was it difficult for you to park there? If so, why? _Yes road really cracked No D/p Signs_

12. How did you unload from your vehicle? _Rear_

13. What side of the vehicle did you unload from? Driver or passenger? _Driver_

14. Did anyone help you to transfer onto your wheelchair? Who? _Grandson Ronny_

15. Did you encounter any problems transferring onto your wheelchair? Describe. _Yes road all cracked up and hard to wheel through_

16. Which way did you go from the parking to the entrance of the Facility? _towards the door_

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. _No ramp holes in pavement every were._

18. Did you encounter any problems opening the door? Describe. _Yes door small and threshold high_

19. What did you purchase (or what meal did you have there)? _Drinks_

20. Did you need to use the restroom while you were at the Facility? Why? _No restroom_

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0040308

EX. 84-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: _N/A_

Toilet: _N/A_

Urinal: _N/A_

Toilet paper: _N/A_

Toilet seat covers: _N/A_

Paper towels/hand dryer: _N/A_

Soap dispenser: _N/A_

Other: _N/A_

22. Did you have any problem maneuvering inside the restroom? _N/A_

23. Was there any seating provided inside the Facility? _N/A_

24. Were you able to sit comfortably at the table? If not, why? _N/A_

25. Did you use the counter to pay for purchase? Which one? _Yes only one_

26. Did you pay with cash or credit card? _Credit_

27. Was the counter accessible? If not, describe. _No Counter to high grandson had to Sign reciept_

28. Did you have any other problems inside the Facility? Describe. _Couldn't get to the back of store, Isles were too small_

29. Which way did you go after you left the Facility? _Out door towards car_

30. Any problems getting back to your vehicle? _road really cracked_

31. Any problems transferring from your wheelchair to your vehicle? _No grandson helped Me to My door and put chair in back of car_

32. Any additional information you believe would assist us in evaluating this inquiry?
_Road all cracked_



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya B. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

May 30, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

**RE:   ADAI No.      01999**
**Sekhon Cedar Market** *(3405 N. Cedar Ave, Fresno, CA)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0040310

EX. 84-5

**ADAI No. :**    **01999**

**Case Name: Moore v. Sekhon Cedar Market**

**Address:**    **3405 N. Cedar Ave., Fresno, CA**

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Cracked Pavement | From the client's vehicle all the way up to the entrance of the facility, the parking lot pavement was littered with cracks and holes. This made it very difficult for the client to move his wheel chair safely along. | Yes, the asphalt was extremely damaged all over parking area. |
| No Designated Handicapped Parking Signs | The client had a hard time locating the designated handicapped parking spot because there were no signs indicating where it was. | Yes, the only sign was a disabled icon painted onto concrete block. Easily blocked or covered. |
| No Ramp | There was no ramp near the facility for the client to access. | No, the asphalt from parking area is at same level as walkway to storefront. |
| Small Entrance | The door way at the entrance was small which made it difficult and awkward for the client to maneuver his way through it. | Yes |
| High Threshold | The threshold at the facility was very high and the client had to pop up his chair a few times to make it over, which often causes him to scrap his knuckles. | No, threshold looked to be recently removed. |
| High Counter | The client could not access the counter because it was too high for him to reach. Therefore, the client asked his grandson to slide his credit card and sign the receipt. | Yes, counter front wall had metal posts with items and counter cluttered making it very un-accessible. |
| Narrow Aisles | Because the aisles were so small and tight, the client was not able to travel to the back of the facility and access any of the products located there. | Yes, several violations due to both aisle structure and clutter. |

MLF0040295

EX. 84-6

**BARRIER MEMO**

ADAI No. :        01999

Case Name:      Moore v. Sekhon Cedar Market

Address:         3405 N. Cedar Ave., Fresno, CA

| Barrier | Description | Is it a valid barrier?<br>Y / N |
|---|---|---|
| Cracked Pavement | From the client's vehicle all the way up to the entrance of the facility, the parking lot pavement was littered with cracks and holes. This made it very difficult for the client to move his wheel chair safely along. | |
| No Designated Handicapped Parking Signs | The client had a hard time locating the designated handicapped parking spot because there were no signs indicating where it was. | |
| No Ramp | There was no ramp near the facility for the client to access. | |
| Small Entrance | The door way at the entrance was small which made it difficult and awkward for the client to maneuver his way through it. | |
| High Threshold | The threshold at the facility was very high and the client had to pop up his chair a few times to make it over, which often causes him to scrap his knuckles. | |
| High Counter | The client could not access the counter because it was too high for him to reach. Therefore, the client asked his grandson to slide his credit card and sign the receipt. | |
| Narrow Aisles | Because the aisles were so small and tight, the client was not able to travel to the back of the facility and access any of the products located there. | |

1

MLF0040296

EX. 84-7



# MOORE
## LAW FIRM, P.C.

February 25, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

Re:  ADAI No.   01999
     Cedar Market (3405 N. Cedar Ave, Fresno, CA)

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records.  Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0040298

EX. 84-8

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>        Plaintiff,<br><br>vs.<br><br>GURMUKH SINGH SEKHON dba CEDAR MARKET; AMRITPAL SINGH SANDHU dba CEDAR MARKET; WALID A. H. AYYAD; FATIMA S. AYYAD;<br><br>        Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1. This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

        Cedar Market
        3405 North Cedar Avenue
        Fresno, CA 93726
        (hereafter "the Facility")

2. Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against GURMUKH SINGH SEKHON dba CEDAR MARKET; AMRITPAL SINGH SANDHU dba CEDAR MARKET; WALID A. H. AYYAD; and FATIMA S. AYYAD

MLF0040299

EX. 84-9

1   (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with

2   Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

3                           **II.   JURISDICTION**

4        3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

5   claims.

6        4.      Supplemental jurisdiction for claims brought under parallel California law –

7   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

8        5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

9                             **III.   VENUE**

10       6.      All actions complained of herein take place within the jurisdiction of the United

11  States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

12  § 1391(b), (c).

13                           **IV.   PARTIES**

14       7.      Defendants own, operate, and/or lease the Facility, and consist of a person (or

15  persons), firm, and/or corporation.

16       8.      Plaintiff is substantially limited in his ability to walk, and must use a wheelchair

17  for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable

18  California and United States laws, and a member of the public whose rights are protected by

19  these laws.

20                             **V.   FACTS**

21       9.      The Facility is open to the public, intended for non-residential use, and its

22  operation affects commerce. The Facility is therefore a public accommodation as defined by

23  applicable state and federal laws.

24       10.     Plaintiff visited the Facility and encountered barriers (both physical and

25  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

26  goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

27  encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

28  about April 24, 2014:

*Moore v. Sekhon, et al.*
Complaint

MLF0040300

EX. 84-10

a)     Plaintiff had difficulty locating the designated accessible parking space at the Facility because it lacked proper signage and pavement markings.

b)     The route from Plaintiff's vehicle, parked in the designated accessible parking space, to the Facility entrance was littered with cracks and bumps, creating an uneven surface that was hard for Plaintiff to maneuver his wheelchair over.

c)     The Facility entrance lacked sufficient clear width, which made it difficult for Plaintiff to wheel himself through the doorway.

d)     The aisles inside the Facility lacked proper wheelchair clearances, preventing Plaintiff from maneuvering around freely inside the store. He was unable to reach the back portions of the store at all, and could not select from the merchandise that was offered there.

e)     The transaction counter was improperly configured and the approach to it was obstructed by merchandise displays. Plaintiff was unable to maneuver close enough to the counter to complete his purchase and required assistance from his grandson, who swiped Plaintiff's credit card and signed the receipt for him.

11.     The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.     Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.     Defendants knew, or should have known, that these elements and areas of the

*Moore v. Sekhon, et al.*
Complaint

Page 3

MLF0040301

EX. 84-11

1   Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

2   the physically disabled. Moreover, Defendants have the financial resources to remove these

3   barriers from the Facility (without much difficulty or expense), and make the Facility

4   accessible to the physically disabled. To date, however, Defendants refuse to either remove

5   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

6       14.   At all relevant times, Defendants have possessed and enjoyed sufficient control

7   and authority to modify the Facility to remove impediments to wheelchair access and to

8   comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

9   Design. Defendants have not removed such impediments and have not modified the Facility to

10  conform to accessibility standards. Defendants have intentionally maintained the Facility in its

11  current condition and have intentionally refrained from altering the Facility so that it complies

12  with the accessibility standards.

13      15.   Plaintiff further alleges that the (continued) presence of barriers at the Facility is

14  so obvious as to establish Defendants' discriminatory intent. On information and belief,

15  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

16  to relevant building standards; disregard for the building plans and permits issued for the

17  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

18  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

19  property continues to exist in its non-compliant state. Plaintiff further alleges, on information

20  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

21  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

22              **VI.   FIRST CLAIM**

23          **Americans with Disabilities Act of 1990**

24          <u>Denial of "Full and Equal" Enjoyment and Use</u>

25      16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

26  this claim.

27      17.   Title III of the ADA holds as a "general rule" that no individual shall be

28  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

MLF0040302

EX. 84-12

goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>. § 12182(b)(2)(A)(v).

21.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.    Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.    The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.    Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public –

*Moore v. Sekhon, et al.*
Complaint

MLF0040303

EX. 84-13

including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Sekhon, et al.*
Complaint

MLF0040304

EX. 84-14

## VII.   SECOND CLAIM

### Unruh Act

33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.    California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.    California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.    California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.    Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.    These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.    Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of

*Moore v. Sekhon, et al.*
Complaint

MLF0040305

EX. 84-15

1   Government Code § 4450.

2       43.     Health and Safety Code § 19959 states, in part, that: Every existing (non-

3   exempt) public accommodation constructed prior to July 1, 1970, which is altered or

4   structurally repaired, is required to comply with this chapter.

5       44.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or

6   repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

7   § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

8       45.     Defendants' non-compliance with these requirements at the Facility aggrieved

9   (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

10  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

11                          IX.    PRAYER FOR RELIEF

12      WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

13      1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

14      2.      Declaratory relief that Defendants violated the ADA for the purposes of Unruh

15              Act damages.

16      3.      Statutory minimum damages under section 52(a) of the California Civil Code

17              according to proof.

18      4.      Attorneys' fees, litigation expense, and costs of suit.[2]

19      5.      Interest at the legal rate from the date of the filing of this action.

20      6.      For such other and further relief as the Court deems proper.

21  Dated: February ___, 2015              MOORE LAW FIRM, P.C.

22

23                                          /s/ Tanya E. Moore
                                            Tanya E. Moore
24                                          Attorneys for Plaintiff
25                                          Ronald Moore

26

27

28
    ―――――――――――――――――
    [2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

    *Moore v. Sekhon, et al.*
    Complaint
                              Page 8

MLF0040306

EX. 84-16

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:   February 25, 2015            /s/ Ronald Moore
                                      Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                      /s/ Tanya E. Moore
                                      Tanya E. Moore, Attorney for
                                      Plaintiff, Ronald Moore

*Moore v. Sekhon (Cedar Market)*

MLF0040307

EX. 84-17

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 2/25/15                          _Ronald Moore_

                                        Ronald Moore

*Moore v. Sekhon (Cedar Market)*

MLF0040312

EX. 84-18