# Exhibit 85

PAPA MURPHYS
5054 N BLACKSTONE AVE
FRESNO, CA 93710

02/29/2012                16:18:28
Merchant ID:      000000000679910
Terminal ID:             03633919
323229566993

CREDIT CARD
VISA SALE

CARD #          XXXXXXXXXXXX8374
INVOICE                      0012
Batch #:                   000063
Approval Code:             029463
Entry Method:              Swiped
Mode:                      Online

PRE-TIP AMT              $12.00

TIP                     _____

TOTAL AMOUNT            _____

CUSTOMER COPY

---

BASHA MEDITERRANEAN GRILL
N BLACKSTONE AVE STE 106
FRESNO, CA 93710
(559) 222-3322

**Sale**

Merchant ID: 542929804588119
Term ID: LK914135
03/02/12              15:17:32
Batch#: 000001      Inv #: 000002

VISA          Entr. Method: S
XXXXXXXXXXXY

Seq.#: 0002          : 002396
Amount:                 15.20
Tip:                   _____

**Total:**             _____

**APPROVED**

Cus

---

PAPA MURPHY'S
5054 N BLACKSTONE AVE
FRESNO CA 93710
559 222-7272

05:16        02-25-2013
MC NO.0000          8619
ENERGY DRINK      $2.49T1

SUBTOTAL          $2.49
TAX1              $0.20
TOTAL-TAX         $0.20

**TOTAL**         $2.69
CASH             $20.00
CHANGE           $17.31
THANK YOU
PLEASE TAKE A SURVEY
AT PAPAMURPHYS.COM
STORE# 05228

---

El Basha
5048 N Blackstone Ave
Fresno, CA  93710
h 559-222-3322

ph 559-709-4444

TABLE: DINE IN 14 - 1 Guest
Server: Brenda
2/25/2013 7:02:51 PM
Sequence #: 0000012
ID #: 006241B

| ITEM | QTY PRICE |
|---|---|
| Combo Kabab | (3@$16.95) $50.85 |
| Bottle Water | (2@$1.50) $3.00 |
| Gold Peak Tea | 1 $2.50 |
| Subtotal | $56.35 |
| Total Taxes | $5.06 |
| Grand Total | $61.41 |
| Amount Due: | $61.41 |

Credit Purchase
Name         :NOURE/RONALD D
CC Type      :MasterCard
CC Num       :xxxx xxxx xxxx 1890
Reference    :231006
Approval     :61208B
Server       :Brenda
Ticket Name  :DINE IN 14

Payment Amount      $61.41

Tip:               _____

Total             _____

X _____
CUSTOMER COPY
I agree to pay the amount shown above.

Thank you for visiting!
Come back soon!

---

PAPA MURPHY'S
5054 N BLACKSTONE AVE
FRESNO CA 93710
559 222-7272

05:17        02-25-2013
MC NO.0000          8620
E-5...            $15.00
COOKIE           $-3.00

SUBTOTAL         $12.00

**TOTAL**        $12.00
CASH             $12.00
CHANGE           $0.00
THANK YOU
PLEASE TAKE A SURVEY
AT PAPAMURPHYS.COM

---



US Furniture
5054 N. BLACKSTONE AVE
FRESNO, CA 93710
WE HAVE EVERYTHING FOR YOUR HOME NEEDS
FINANCING & LAYAWAY AVAILABLE
559-221-5555
Blackstone & Shaw

RAMOS FURNITURE
www.ramosfurniture.com
Jonathan
Sales Executive

EX. 85-2

MLF0051666

PORT OF SUBS #102
88 EAST SHAW
FRESNO, CA 93710

12/05/2013          14:59:15
MID:     00000000214754 1
TID:     03206310

CARD:       XXXXXX8374
INVOICE     002
BATC        19416
APP C        ......
Entry Mode: Swiped
Mode:        Online

SALE AMT           $7.35

CUSTOMER COPY

PORT OF SUBS #102
88 EAST SHAW
FRESNO, CA 93710

03/04/2012          15:49:06
MID:     00000000021475604
TID:     03206310
2241187660994

CREDIT CARD
VISA SALE

CARD:    XXXXXXXXXXXXX8374
INVOICE      0006
Batch #:     000266
App Code:    004325
Entry Mode:  Swiped
Approved:    Online

SALE AMT            $8.84

CUSTOMER COPY

MLF0051677

EX. 85-3

Sign's
Ramp go's into steet
Ramp go's into Access
Access not Big enoufgh
Could not get Down
Isle to see mattress
without manger moving
All most evey mattress
could not get AROUND
some Isles

Signs
Ramp go's into stre
Ramp go's into
Acce's Isle
Front Doors
Isle's to small can't
get a round in stre

No signs
Ramp into stree / Ramp int Access
Front Door
some to High in Bath
room
table has poll in
conter can't get up
To table to eat

MLF0051675

EX. 85-4

**SKECHERS**

Skechers USA, Inc #091
86 E. Shaw Avenue
Fresno, CA 93710
(559) 221-0392

** SALES DRAFT - CUSTOMER COPY **

Sold To: CASH, CASH
03/04/2012 15:12:10          Invoice:442812
Register: 002               Slsprsn: 38831
Cashier: 38831
E-Code: 8BJ16MDTWZGO

| Item/Description | Qty | Price | Total |
|---|---|---|---|
| 62672GRY | 1.00@ | 24.95 | 19.95 |
| TANTRIC-PL NAR-GRAY | | | |
| Size:12 | | | |
| Disc:08-INCORRECT P $ 5.00 | | | |
| 37589BLK | 1.00@ | 19.95 | 19.95 |
| TONE UPS - GLAM PUNK-BLACK | | | |
| Size:6 | | | |

| | |
|---|---|
| Subtotal | 39.90 |
| TAX1 @ 7.975% | 3.18 |
| Total | 43.08 |
| Amount Tendered | 43.08 |
| Change Due | .00 |
| VISA | 43.08 |
| XXXXXXXXXXXX8374 | |
| Auth# 004823 | |
| Total # of Items: | 2 |
| Total Savings | 5.00 |

** SALES DRAFT - CUSTOMER COPY **

.THANK YOU FOR SHOPPING AT SKECHERS USA.
********************************************
MOORE/RONALD

---

**LAMPS PLUS**

LAMPS PLUS #36
84 E. SHAW
FRESNO, CA 93710
Telephone: (559)222-2776

SALE

*****************************************
CUSTOMER COPY
*****************************************

<Slsprsn: ROMEL C. No. 06445>
P1770 15.5 H ANT GOLD+AMBER BEA    49.99T

| | |
|---|---|
| Subtotal | $49.99 |
| Sales Tax 7.98% | 3.99 |
| Total | $53.98 |
| Visa | $53.98 |

Card No. XXXXXXXXXXXX8374 <S>
Auth. No. 004057

Cardholder: Please retain for your records
I agree to pay the above total amount
according to the card issuer agreement

Item(s) Sold: 1
Item(s) Returned: 0

ROMEL C. served you today.

Please retain your receipt
as proof of purchase.

Customer agrees that risk of loss and
title to goods sold herein shall not pass
to the customer for 60 days from the
date of this invoice. Please see store
for details.

Thank you for shopping at LAMPS PLUS #36

Please visit us at WWW.LAMPSPLUS.COM

Store: 0036    Res: 01    Tran: 109014
Date: 03/04/12 Time: 15:18    Assoc: 06445



MLF0051678

EX. 85-5

```
        PORT OF SUBS #102
          88 EAST SHAW,
        FRESNO, CA 93710

02/25/2013        14:35:05
MID:      000000002147504
TID:            04374176
224187660994

        CREDIT CARD
        MC SALE

CARD:    XXXXXXXXXXXX1890
INVOICE             0024
Batch #:          000014
APP Code:         19418B
Entry Mode:       Swiped
Mode:             Online

SALE AMT         $7.35


        CUSTOMER COPY
```

MLF0030693

EX. 85-6



MLF0030694

EX. 85-7



Moore

**SKECHERS**

Skechers USA, Inc #091
86 E. Shaw Avenue
Fresno, CA 93710
(559) 221-0399

** SALES DRAFT - CUSTOMER COPY **

Sold To: CASH, CASH
03/04/2012 15:12:10        Invoice:442812
Register: 002              Slsprsn: 38831
Cashier: 38831
E-Code: BBJ16MDTWZGO

| Item/Description | Qty | Price | Total |
| --- | --- | --- | --- |
| 62672GRY | 1.00@ | 24.95 | 19.95 |
| TANTRIC-PELDMAR-GRAY | | | |
| Size:12 | | | |
| Disc:08-INCORRECT P | | $ 5.00 | |
| 37589BLK | 1.00@ | 19.95 | 19.95 |
| TONE UPS - GLAM PUNK-BLACK | | | |
| Size:6 | | | |

| | | |
| --- | --- | --- |
| Subtotal | | 39.90 |
| TAX1 @ 7.975% | | 3.18 |
| Total | | 43.08 |
| Amount Tendered | | 43.08 |
| Change Due | | .00 |
| VISA | | 43.08 |
| XXXXXXXXXXXX8374 | | |
| Auth# 004623 | | |
| Total # of Items: | | 2 |
| Total Savings | | 5.00 |

** SALES DRAFT - CUSTOMER COPY **

THANK YOU FOR SHOPPING AT SKECHERS USA.
*********************************
MOORE/RONALD

Signs ole
Ramp 90's rmbo
Street
Ramp
Van Access not
Big Enough
Front Door
Racks in side walk
Bathroom Door
Very Bad
Had to Ask people
to move in cash
out Isle Because
to small not Enough
Room to get By

MLF0030695

EX. 85-8

**LAMPS PLUS**

LAMPS PLUS #36
84 E. SHAW
FRESNO, CA 93710
Telephone: (559)222-2776

SALE

```
**********************************
          CUSTOMER COPY
**********************************
```

```
        <Slsprsn: ROMEL C. No. 06445>
P1770 15.5 H ANT GOLD+AMBER BEA    49.99T
Subtotal                          $49.99
  Sales Tax 7.98%                    3.99
Total                             $53.98
Visa                              $53.98
  Card No. XXXXXXXXXXXX8374 <S>
  Auth. No. 004057
```

Cardholder: Please retain for your records
  I agree to pay the above total amount
  according to the card issuer agreement

Item(s) Sold: 1
Item(s) Returned: 0

ROMEL C. served you today.

Please retain your receipt
as proof of purchase.

Customer agrees that risk of loss and
title to goods sold herein shall not pass
to the customer for 60 days from the
date of this invoice. Please see store
for details.

Thank you for shopping at LAMPS PLUS #36

Please visit us at WWW.LAMPSPLUS.COM

Store: 0036    Reg: 01     Tran: 109014
Date: 03/04/12 Time: 15:18    Assoc: 06445

```
IIIIII IIII IIIII IIII IIIII IIII IIII
      003601109014030412
```

*meok*

Sans
Ramp goes into street
Front Doors
Bathroom Door
Candle Holder out
of Reach very
hard to reach.
Had to go to High
Counter to sign
credit card Reipt

MLF0030696

EX. 85-9

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? *Port of SUBS*

2. When did you visit the Facility? *2/25/13* (Date) *2.50 PM* (Time)

3. What is the address of the Facility? *Shaw & Blackstone 88 E. Shaw Fresno CA 93710*

4. Was this your first visit to the Facility? *NO*

5. How many times have you visited the Facility? *a Few* If more than one visit, please list the date and time if you know it. *You have Receipts*

6. What was the purpose of your visit? *To get something to eat*

7. Who accompanied you to the Facility? *By Myself*

8. What car did you drive to the Facility? *MINE*

9. Did you drive yourself of did you get a ride from someone else? *I Drive*

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. *Right in Front of the Door's to the Right*

11. Was it difficult for you to park there? *Yes*

12. Why? *No parking space No signs No path to go up to Door*

13. How did you unload from your vehicle? *Rear*

14. What side of the vehicle did you unload from? Driver or passenger? *Driver's*

15. Did anyone help you to transfer onto your wheelchair? *No*

16. What problems did you encounter transferring onto your wheelchair?

*Uneven pavement*

17. Which way did you go from the parking to the entrance of the Facility? *In Between my car And the car next to me*

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

*Treshold high got carpet inside had to get by and into Shop Door Closed*

19. Did you encounter any problems opening the door? Describe why. *Door opend outward*

20. Did you have any problems inside the Facility? Describe. *Could not get water Because to high out of Reach had to ask girl Bahind counter to help me Because I could not Reach it even with my cane.*

MLF0051679

EX. 85-10

*When I went to Restroom it was outside on the Back when coming Back inside TRash to high and Door shut hard on me and Hit my Elbow and ARM Because got stuck in door way*

**21. What did you purchase (or what meal did you have there). Describe:** *SUB sandwich And Glass of WAter*

**22. Have you used the restroom at the Facility?** *yes*

**23. Why did you need to use the restroom?** *had to go*

**24. Did you use the sink?** *yes*

**25. Any problems?** *Live under sink*

**26. Did you use the urinal?** *yes*

**27. Did you use the toilet?** *NO*

**28. Did you use the toilet paper?** *NO*

**29. Did you use paper towels?** *yes*

**30. Did you use the soap dispenser?** *yes*

**31. Did you have any problem maneuvering inside the restroom?** *Soap dispenser on wAll Behind sink had to Reach over sink*

**32. Where did you sit?** *At table*

**33. Was there any seating provided inside the Facility?** *yes*

**34. Was it wheelchair accessible?** *NO had to move chair tray was half on and half off table*

**35. Where you comfortable at the table?** *NO Because I had to sit at the corner of table so I could use tray Because poll under table in way.*

**36. Did you use the counter to pay for purchase?** *yes*

**37. Which counter did you use?** *Only one*

**38. Was the counter accessible?** *No had potatie chip Rack in front of it*

**39. Which way did you go after you left the Facility?** *Straight out Door to my car*

**40. Any problems getting back to your vehicle?** *Just that the Asphalt one even and holes*

**41. Any problems transferring from your wheelchair to your vehicle?** *NO*

**42. If you have any addition information you believe would assist us in evaluating this inquiry.**

MLF0051680

No signs
No parking
~~Cant get into is~~
Cant get into out
side eating Area
from outside.
Door to outsideAres
Very hARD to open
from inside.

Signs
Ramp goes into street
Front Doors
Both room Door
Candle Holder out
of Reach very
hard to Reach.
Had to go to High
counter to sign
credit card Reipt

Signs          old
Ramp goes ~~into~~ into
street
~~Ramp~~
VAN Access not
Big Enough
Front Door
Racks in side walk
Bathroom Door
very Bad
Had to Ask people
to move in cash
out Isle Because
to small not Enough
room to get By

MLF0051681

EX. 85-12

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? _Lamps Plus_

2. When did you visit the Facility? _3/4/12_ (Date) _3 18_ (Time)

3. What is the address of the Facility?_____

4. Was this your first visit to the Facility? _____

5. How many times have you visited the Facility? _____ If more than one visit, please list the date and time if you

   know it. _____

6. What was the purpose of your visit? _____

7. Who accompanied you to the Facility? _____

8. What car did you drive to the Facility?_____

9. Did you drive yourself of did you get a ride from someone else? _____

10. Where did you park when you arrived at the Facility?  Describe a specific location where you parked your

    vehicle. _____

11. Was it difficult for you to park there? _____

12. Why? _____

13. How did you unload from your vehicle? _____

14. What side of the vehicle did you unload from? Driver or passenger? _____

15. Did anyone help you to transfer onto your wheelchair? _____

16. What problems did you encounter transferring onto your wheelchair?

    _____

17. Which way did you go from the parking to the entrance of the Facility? _____

18. Did you encounter any problems on your way to the entrance, for example a ramp?  Describe.

    _____

19. Did you encounter any problems opening the door? Describe why. _____

20. Did you have any problems inside the Facility? Describe. _____

MLF0030767

EX. 85-13

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADAI No.
(Facility)

_____

_____

21. What did you purchase (or what meal did you have there).  Describe: _____

_____

22. Have you used the restroom at the Facility?_____

23. Why did you need to use the restroom? _____

24. Did you use the sink? _____

25. Any problems? _____

26. Did you use the urinal? _____

27. Did you use the toilet? _____

28. Did you use the toilet paper?_____

29. Did you use paper towels?_____

30. Did you use the soap dispenser?_____

31. Did you have any problem maneuvering inside the restroom? _____

32. Where did you sit? _____

33. Was there any seating provided inside the Facility? _____

34. Was it wheelchair accessible? _____

35. Where you comfortable at the table?_____

36. Did you use the counter to pay for purchase? _____

37. Which counter did you use? _____

38. Was the counter accessible? _____

39. Which way did you go after you left the Facility? _____

40. Any problems getting back to your vehicle? _____

41. Any problems transferring from your wheelchair to your vehicle? _____

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0030768

EX. 85-14

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? *Port of SUBS*

2. When did you visit the Facility? *2/25/13* (Date) *2.50 pm* (Time)

3. What is the address of the Facility? *Shaw + Blackstone 88 E Shaw Fresno CA 93710*

4. Was this your first visit to the Facility? *No*

5. How many times have you visited the Facility? *a Few* If more than one visit, please list the date and time if you know it. *you have Receipts*

6. What was the purpose of your visit? *To get something to eat*

7. Who accompanied you to the Facility? *By mySelf*

8. What car did you drive to the Facility? *mine*

9. Did you drive yourself of did you get a ride from someone else? *I Drive*

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. *Right in Front of the Door's to the Right*

11. Was it difficult for you to park there? *Yes*

12. Why? *No parking space No signs No path to go up to Door*

13. How did you unload from your vehicle? *Rear*

14. What side of the vehicle did you unload from? Driver or passenger? *Driver's*

15. Did anyone help you to transfer onto your wheelchair? *No*

16. What problems did you encounter transferring onto your wheelchair?

~~NONE~~ *UNeven pavement*

17. Which way did you go from the parking to the entrance of the Facility? *IN Between my car And the car next to me*

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. *Treshold high got carpet inside hAd to get By and into Shop Door closed*

19. Did you encounter any problems opening the door? Describe why. *Door opend outward*

20. Did you have any problems inside the Facility? Describe. *Could not get water Because to high out of Reach hAd to ask girl Bahin/conter to help me Because I could not Reach it even with my cane.*

MLF0030691

EX. 85-15

When I went to Restroom it was outside in the Back when coming Back inside TRASHold to high and Door shut hard on me and Hit my ELBOW and ARM Because got stuck in Door way

21. What did you purchase (or what meal did you have there). Describe: SUB sandwich And Glass of WATER

22. Have you used the restroom at the Facility? Yes

23. Why did you need to use the restroom? had to go

24. Did you use the sink? Yes

25. Any problems? Line under sink

26. Did you use the urinal? Yes

27. Did you use the toilet? NO

28. Did you use the toilet paper? NO

29. Did you use paper towels? Yes

30. Did you use the soap dispenser? Yes

31. Did you have any problem maneuvering inside the restroom? Soap dispenser on WALL Behind sink had to Reach over sink

32. Where did you sit? At table

33. Was there any seating provided inside the Facility? Yes

34. Was it wheelchair accessible? NO had to move chair tray was half on and half off table

35. Where you comfortable at the table? NO Because I had to sit at the corner of table so I could use tray Because poll under table in way.

36. Did you use the counter to pay for purchase? Yes

37. Which counter did you use? Only one

38. Was the counter accessible? No had potite chip Rack in front of it

39. Which way did you go after you left the Facility? Straight out Door to my car

40. Any problems getting back to your vehicle? Just that the ASSFalt on even and holes

41. Any problems transferring from your wheelchair to your vehicle? NO

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0030692

## BARRIER MEMO

**ADAI No. :**  01570

**Case Name:**  Moore v. Shaw Blackstone Center, LLC

**Address:**  Port of Subs, 88 E. Shaw Ave, Fresno, CA 93710

| Barrier | Description | Is it a valid barrier? |
|---|---|---|
| No accessible parking | Plaintiff was unable to locate an accessible parking space at the Port of Subs facility and was forced to park in a standard space which lacked an access aisle. | Y / (N) |
| Uneven asphalt surface in parking lot | The surface of the parking lot was uneven and cracked, making it difficult for Plaintiff to get into his wheelchair from his vehicle and to maneuver to and from the entrance. | no |
| No route from parking spot (just to right of door) to entrance | Plaintiff was unable to locate an accessible route from his parking space to the entrance of the Facility and was forced to travel between his vehicle and the vehicle next to his in order to reach the entrance. The narrow space between the vehicles was difficult for Plaintiff to maneuver in his wheelchair. | Y / (N) |
| High threshold at door and carpet inside | There was a raised threshold at the entrance door to the Facility, and the floor just inside the door was carpeted, making it difficult for Plaintiff to enter in his wheelchair. The door closed onto Plaintiff while he was attempting to overcome the raised threshold and carpeting, hitting his elbow and arm. | (Y) / N |
| Water dispenser too high | The self-serve water dispenser was located extremely high, such that Plaintiff could not reach it from his wheelchair to fill his cup. Plaintiff attempted to use his cane to reach the water dispenser, but still could not reach. Plaintiff was forced to ask Facility staff for assistance to fill his cup with water, which was embarrassing. | (Y) / N |
| Pipes under sink not wrapped | The pipes under the sink in the restroom were exposed, causing Plaintiff to fear that his legs would be burned by the pipes. Plaintiff was forced to sit far away from the sink while washing his hands so that his legs did not touch the pipes, which was uncomfortable. | yes |

1

MLF0030770

EX. 85-17

| | | |
|---|---|---|
| Soap dispenser too high | The soap dispenser was located high on the wall behind the sink, which was difficult for Plaintiff to reach from his wheelchair. | Y / (N) |
| No accessible table | Plaintiff was unable to locate an accessible table at the Facility, and was forced to sit at a standard table which had a pole underneath it preventing him from pulling his wheelchair all the way up to the table. Plaintiff was forced to sit far away from the table for the duration of his meal, which was uncomfortable. | (Y) / N |
| Counter has chips in front of it | The cashier counter had a display rack in front of it, which blocked Plaintiff from pulling his wheelchair up to the counter. Plaintiff was forced to reach over the display rack to hand payment to the cashier. | (Y) / N |
| No access to outside eating area | Plaintiff was unable to locate an accessible route to the outside eating area because there was a step down to the outside eating area from the inside of the Facility and there was no ramp. Plaintiff was unable to locate a way to access the outside eating area from outside the Facility as it was fenced off. | yes |

2

MLF0030771

**BARRIER MEMO**

ADAI No. :     01570

Case Name:     Moore v. Shaw Blackstone Center, LLC

Address:     Skechers, 86 E. Shaw Ave, Fresno, CA 93710

| Barrier | Description | Is it a valid barrier? |
|---|---|---|
| Parking space too narrow (left-most space in group in front of Lamps Plus) | Plaintiff was unable to locate a properly configured accessible parking space at the Facility and was forced to park in a designated accessible parking space in front of the Lamps Plus Facility entrance that was extremely narrow. | (Y) / N |
| Ramp is steep, uneven, goes into parking lot | The ramp from the parking lot to the sidewalk next to Plaintiff's parking space was extremely steep, had an uneven surface, extended into the access aisle, and had unprotected edges, making it difficult for Plaintiff to maneuver his wheelchair up and down the ramp. When Plaintiff traveled down the ramp back to the parking lot, he was unable to control the speed of his wheelchair down the ramp and came quickly down into the path of traffic within the parking lot. | (Y) / N |
| Route from parking space to entrance blocked by merchandise on sidewalk | The sidewalk from Plaintiff's parking space to the entrance of the Skechers Facility was partially blocked by merchandise and displays, preventing Plaintiff from being able to maneuver his wheelchair along the sidewalk. Plaintiff required assistance from his wife to help push his wheelchair partially on and partially off the sidewalk so that he could get by. | (Y) / N |
| Restroom door heavy | The restroom door was extremely heavy, making it difficult for Plaintiff to open. | (Y) / N |
| Space between cashier counter and line too narrow | After checking out, Plaintiff was forced to ask other customers to move out of his way so that he could exit because the space between the cashier counter and the customer line lacked necessary clearance for Plaintiff to pass by the other customers in his wheelchair. | (Y) / N |

1

MLF0030772

**BARRIER MEMO**

**ADAI No. :**     01570

**Case Name:**     Moore v. Shaw Blackstone Center, LLC

**Address:**     Lamps Plus, 84 E. Shaw Ave, Fresno, CA 93710

| Barrier | Description | Is it a valid barrier? |
|---|---|---|
| Parking space too narrow (left-most space in group in front of Lamps Plus) | Plaintiff was unable to locate a properly configured accessible parking space at the Facility and was forced to park in a designated accessible parking space in front of the Lamps Plus Facility entrance that was extremely narrow. | (Y) / N |
| Ramp is steep, uneven, goes into parking lot | The ramp from the parking lot to the sidewalk next to Plaintiff's parking space was extremely steep, had an uneven surface, extended into the access aisle, and had unprotected edges, making it difficult for Plaintiff to maneuver his wheelchair up and down the ramp. When Plaintiff traveled down the ramp back to the parking lot, he was unable to control the speed of his wheelchair down the ramp and came quickly down into the path of traffic within the parking lot. | (Y) / N |
| Merchandise (candle holder) out of reach behind some kind of island | The merchandise was located on a deep shelf and Plaintiff was unable to reach it from his wheelchair. Plaintiff was forced to ask Facility staff for assistance to retrieve the merchandise he wanted to buy. *only open* | (Y) / N |
| Cashier counter too high | The cashier counter was extremely high, making it difficult for Plaintiff to reach up from his wheelchair to sign his credit card receipt. | (Y) / N |

MLF0030773

EX. 85-20

| | |
|---|---|
| **From:** | Whitney Law |
| **Sent:** | Wednesday, March 06, 2013 2:36 PM |
| **To:** | glevinson@westcoastcasp.com |
| **Subject:** | Site inspections: 01570 Moore v. Shaw Blackstone Center |
| **Attachments:** | Barrier Memo Lamps Plus.docx; Barrier Memo Port of Subs.docx; Barrier Memo Skechers.docx |

Hi Josh,

Here is the final group of site inspections in the same location as the others I sent you earlier:

Lamps Plus, 84 E Shaw Ave, Fresno
Skechers, 86 E Shaw Ave, Fresno
Port of Subs, 88 E Shaw Ave, Fresno

Barrier memos are attached.

Thanks!

Whitney Law
Paralegal
**Moore Law Firm, P.C.**
332 North Second Street
San Jose, California 95112
(408) 298-2000 Extension 238
(408) 298-6046 Facsimile
whitney@moorelawfirm.com

MLF0030846

EX. 85-21

**BARRIER MEMO**

ADAI No. :     01570

Case Name:     Moore v. Shaw Blackstone Center, LLC

Address:     Port of Subs, 88 E. Shaw Ave, Fresno, CA 93710

| Barrier | Description | Is it a valid barrier? |
|---------|-------------|------------------------|
| No accessible parking | Plaintiff was unable to locate an accessible parking space at the Port of Subs facility and was forced to park in a standard space which lacked an access aisle. | Y / N |
| Uneven asphalt surface in parking lot | The surface of the parking lot was uneven and cracked, making it difficult for Plaintiff to get into his wheelchair from his vehicle and to maneuver to and from the entrance. | |
| No route from parking spot (just to right of door) to entrance | Plaintiff was unable to locate an accessible route from his parking space to the entrance of the Facility and was forced to travel between his vehicle and the vehicle next to his in order to reach the entrance. The narrow space between the vehicles was difficult for Plaintiff to maneuver in his wheelchair. | Y / N |
| High threshold at door and carpet inside | There was a raised threshold at the entrance door to the Facility, and the floor just inside the door was carpeted, making it difficult for Plaintiff to enter in his wheelchair. The door closed onto Plaintiff while he was attempting to overcome the raised threshold and carpeting, hitting his elbow and arm. | Y / N |
| Water dispenser too high | The self-serve water dispenser was located extremely high, such that Plaintiff could not reach it from his wheelchair to fill his cup. Plaintiff attempted to use his cane to reach the water dispenser, but still could not reach. Plaintiff was forced to ask Facility staff for assistance to fill his cup with water, which was embarrassing. | Y / N |
| Pipes under sink not wrapped | The pipes under the sink in the restroom were exposed, causing Plaintiff to fear that his legs would be burned by the pipes. Plaintiff was forced to sit far away from the sink while washing his hands so that his legs did not touch the pipes, which was uncomfortable. | |

1

MLF0030847

EX. 85-22

| | | |
|---|---|---|
| Soap dispenser too high | The soap dispenser was located high on the wall behind the sink, which was difficult for Plaintiff to reach from his wheelchair. | Y / N |
| No accessible table | Plaintiff was unable to locate an accessible table at the Facility, and was forced to sit at a standard table which had a pole underneath it preventing him from pulling his wheelchair all the way up to the table. Plaintiff was forced to sit far away from the table for the duration of his meal, which was uncomfortable. | Y / N |
| Counter has chips in front of it | The cashier counter had a display rack in front of it, which blocked Plaintiff from pulling his wheelchair up to the counter. Plaintiff was forced to reach over the display rack to hand payment to the cashier. | Y / N |
| No access to outside eating area | Plaintiff was unable to locate an accessible route to the outside eating area because there was a step down to the outside eating area from the inside of the Facility and there was no ramp. Plaintiff was unable to locate a way to access the outside eating area from outside the Facility as it was fenced off. | |

MLF0030848

EX. 85-23

**BARRIER MEMO**

ADAI No. :     01570

Case Name:     **Moore v. Shaw Blackstone Center, LLC**

Address:       **Lamps Plus, 84 E. Shaw Ave, Fresno, CA 93710**

| Barrier | Description | Is it a valid barrier? |
|---------|-------------|------------------------|
| Parking space too narrow (left-most space in group in front of Lamps Plus) | Plaintiff was unable to locate a properly configured accessible parking space at the Facility and was forced to park in a designated accessible parking space in front of the Lamps Plus Facility entrance that was extremely narrow. | Y· / N |
| Ramp is steep, uneven, goes into parking lot | The ramp from the parking lot to the sidewalk next to Plaintiff's parking space was extremely steep, had an uneven surface, extended into the access aisle, and had unprotected edges, making it difficult for Plaintiff to maneuver his wheelchair up and down the ramp. When Plaintiff traveled down the ramp back to the parking lot, he was unable to control the speed of his wheelchair down the ramp and came quickly down into the path of traffic within the parking lot. | Y / N |
| Merchandise (candle holder) out of reach behind some kind of island | The merchandise was located on a deep shelf and Plaintiff was unable to reach it from his wheelchair. Plaintiff was forced to ask Facility staff for assistance to retrieve the merchandise he wanted to buy. | Y / N |
| Cashier counter too high | The cashier counter was extremely high, making it difficult for Plaintiff to reach up from his wheelchair to sign his credit card receipt. | Y / N |

1

MLF0030849

EX. 85-24

**BARRIER MEMO**

ADAI No. :    01570

Case Name:    Moore v. Shaw Blackstone Center, LLC

Address:    Skechers, 86 E. Shaw Ave, Fresno, CA 93710

| Barrier | Description | Is it a valid barrier? |
|---|---|---|
| Parking space too narrow (left-most space in group in front of Lamps Plus) | Plaintiff was unable to locate a properly configured accessible parking space at the Facility and was forced to park in a designated accessible parking space in front of the Lamps Plus Facility entrance that was extremely narrow. | Y / N |
| Ramp is steep, uneven, goes into parking lot | The ramp from the parking lot to the sidewalk next to Plaintiff's parking space was extremely steep, had an uneven surface, extended into the access aisle, and had unprotected edges, making it difficult for Plaintiff to maneuver his wheelchair up and down the ramp. When Plaintiff traveled down the ramp back to the parking lot, he was unable to control the speed of his wheelchair down the ramp and came quickly down into the path of traffic within the parking lot. | Y / N |
| Route from parking space to entrance blocked by merchandise on sidewalk | The sidewalk from Plaintiff's parking space to the entrance of the Skechers Facility was partially blocked by merchandise and displays, preventing Plaintiff from being able to maneuver his wheelchair along the sidewalk. Plaintiff required assistance from his wife to help push his wheelchair partially on and partially off the sidewalk so that he could get by. | Y / N |
| Restroom door heavy | The restroom door was extremely heavy, making it difficult for Plaintiff to open. | Y / N |
| Space between cashier counter and line too narrow | After checking out, Plaintiff was forced to ask other customers to move out of his way so that he could exit because the space between the cashier counter and the customer line lacked necessary clearance for Plaintiff to pass by the other customers in his wheelchair. | Y / N |

MLF0030850

EX. 85-25

**BARRIER MEMO**

ADAI No. :     01274

Case Name:     Moore v. Fresno Shaw Blackstone LLC

Address:     Ramos Furniture, 5060 North Blackstone Avenue, Fresno, CA 93710

| Barrier | Description | Is it a valid barrier? |
|---|---|---|
| Ramp extends into parking space | Plaintiff parked in a space designated as accessible near the entrance to the Facility. There was a ramp to the right of the parking space which extended into the parking space and made it difficult for Plaintiff to park. | Yes |
| Ramp is steep | The ramp from the parking lot to the sidewalk leading to the entrance to the Facility was extremely steep and extended into the parking space, making it difficult for Plaintiff to travel up and down the ramp in his wheelchair. | Possible needs measurement, not possible at time of inspection |
| Raised threshold/entrance door closes quickly | There was a raised threshold at the entrance to the Facility and the door closed very quickly, making it difficult for Plaintiff to maneuver his wheelchair over the threshold before the door closed on him. | Possible, it looks standard but for the closer it is probably a YES |
| Aisles too narrow | Some of the aisles within the Facility lacked necessary wheelchair clearances and were blocked by furniture and other merchandise, preventing Plaintiff from traveling down the aisles in his wheelchair. Plaintiff required assistance from Facility staff to move furniture out of the way so that Plaintiff could maneuver through the store. | Yes |
| Entrance to men's restroom narrow/improperly configured | The entrance to the men's restroom lacked necessary wheelchair clearances and was improperly configured, making it difficult for Plaintiff to maneuver his wheelchair in and out. Plaintiff required assistance to hold the door open for him while he struggled to get into the restroom. | Yes |
| Door to restroom stall does not close automatically | The door to the designated accessible stall in the men's restroom did not close automatically behind Plaintiff, forcing Plaintiff to have to struggle to maneuver his wheelchair inside the stall so that he could close the door behind him. | Yes |

1

MLF0053641

EX. 85-26



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

April 10, 2013

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

**RE:   ADAI No. 01570**
**Port of Subs, 88 East Shaw Avenue, Fresno**
**Skechers, 86 East Shaw Avenue, Fresno**
**Lamps Plus, 84 East Shaw Avenue, Fresno**

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facilities. If you visit the facilities again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for these matters. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facilities and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/wl

Enclosure:  Fee Agreements

MLF0030725

| | |
|---|---|
| **From:** | Whitney Law |
| **Sent:** | Wednesday, April 10, 2013 4:11 PM |
| **To:** | ronmoore441@gmail.com |
| **Subject:** | Port of Subs, Skechers, Lamps Plus |
| **Attachments:** | ADA Complaint.pdf; Verification Moore.pdf |

Dear Mr. Moore:

Attached please find a draft complaint for your review. If accurate, please give me a call so I can fax you the verification form.

Thank you,

Whitney Law
Paralegal
**Moore Law Firm, P.C.**
332 North Second Street
San Jose, California 95112
(408) 298-2000 Extension 238
(408) 298-6046 Facsimile
whitney@moorelawfirm.com

1

MLF0030750

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
RONALD MOORE

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>SHAW BLACKSTONE CENTER LLC, a Delaware limited liability company; BBSN TIWANA LLC, a California limited liability company, dba PORT OF SUBS #102; SKECHERS U.S.A., INC., a Delaware corporation; LAMPS PLUS, INC., a California corporation, dba LAMPS PLUS #36;<br><br>　　　　　Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.　　This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

　　　　a)　　Port of Subs #102
　　　　　　　88 East Shaw Avenue
　　　　　　　Fresno, CA 93710
　　　　　　　(hereafter "the Port of Subs Facility")

　　　　b)　　Skechers USA, Inc.
　　　　　　　86 East Shaw Avenue

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030751

EX. 85-29

Fresno, CA 93710
(hereafter "the Skechers Facility")

c)   Lamps Plus #36
84 East Shaw Avenue
Fresno, CA 93710
(hereafter "the Lamps Plus Facility")

Each of the facilities identified above shall be collectively hereafter referred to as "the Facilities."

2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes, against:

a)    SHAW BLACKSTONE CENTER LLC, a Delaware limited liability company (hereinafter "the Landlord Defendant");

b)    BBSN TIWANA LLC, a California limited liability company, dba PORT OF SUBS #102 (hereinafter "the Port of Subs Defendant");

c)    SKECHERS U.S.A., INC., a Delaware corporation (hereinafter "the Skechers Defendant"); and

d)    LAMPS PLUS, INC., a California corporation, dba LAMPS PLUS #36 (hereinafter "the Lamps Plus Defendant").

The Port of Subs Defendant, the Skechers Defendant, and the Lamps Plus Defendant are collectively referred to herein as "the Tenant Defendants," and together with the Landlord Defendant, collectively the "Defendants."

## II.    JURISDICTION

3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.    Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

//

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

Page 2

MLF0030752

EX. 85-30

### III. VENUE

6. All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

### IV. PARTIES

7. Plaintiff believes, and thereon alleges, that the Landlord Defendant owns, operates, and/or leases the real property consisting of the real property and common areas of the Facilities as well as the physical structures thereon (including the buildings in which each of the individual Tenant Defendants' Facilities is located), and consists of a person (or persons), firm, or corporation. Plaintiff further believes, and thereon alleges, that the Landlord Defendant leases the respective Facilities to the Tenant Defendants as follows:

    a) The Port of Subs Defendant owns, operates, and/or leases the Port of Subs Facility, and leases the Port of Subs Facility from the Landlord Defendant;

    b) The Skechers Defendant owns, operates, and/or leases the Skechers Facility, and leases the Skechers Facility from the Landlord Defendant; and

    c) The Lamps Plus Defendant owns, operates, and/or leases the Lamps Plus Facility, and leases the Lamps Plus Facility from the Landlord Defendant.

8. Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and is a member of the public whose rights are protected by these laws.

### V. FACTS

9. The Facilities are public accommodation facilities, open to the public, which are intended for nonresidential use and whose operation affects commerce.

10. Plaintiff visited the Facilities and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030753

EX. 85-31

goods, services, privileges and accommodations offered at the Facilities.  Plaintiff personally
encountered the following barriers at the Facilities during Plaintiff's visits to the Facilities:

    a)    During Plaintiff's visits to the Port of Subs Facility on or about March 4, 2012 and February 25, 2013, Plaintiff encountered the following barriers:

        1)    There was a raised threshold at the entrance door to the Port of Subs Facility, and the floor just inside the door was carpeted, making it difficult for Plaintiff to enter in his wheelchair. The door closed onto Plaintiff while he was attempting to overcome the raised threshold and carpeting, hitting his elbow and arm.

        2)    The self-serve water dispenser at the Port of Subs Facility was located extremely high, such that Plaintiff could not reach it from his wheelchair to fill his cup. Plaintiff attempted to use his cane to reach the water dispenser, but still could not reach it. Plaintiff was forced to ask Port of Subs Facility staff for assistance to fill his cup with water, which was embarrassing.

        3)    The pipes under the sink in the restroom at the Port of Subs Facility were exposed, causing Plaintiff to fear that his legs would be burned by the pipes. Plaintiff was forced to sit far away from the sink while washing his hands so that his legs did not touch the pipes, which was uncomfortable.

        4)    Plaintiff wanted to sit outside; however, Plaintiff was unable to locate an accessible route to the outside eating area because there was a step down to the outside eating area from the inside of the Facility and there was no ramp. Plaintiff was unable to locate a way to access the outside eating area from outside the Facility as it was fenced off.

        5)    Plaintiff was unable to locate an accessible table at the Port of

MLF0030754

EX. 85-32

| | |
|---|---|
| 1 | Subs Facility, and was forced to sit at a standard table which had |
| 2 | a pole underneath it preventing him from pulling his wheelchair |
| 3 | all the way up to the table. Plaintiff was forced to sit far away |
| 4 | from the table for the duration of his meal, which was |
| 5 | uncomfortable. |

5) The cashier counter at the Port of Subs Facility had a display rack in front of it, which blocked Plaintiff from pulling his wheelchair up to the counter. Plaintiff was forced to reach over the display rack to hand payment to the cashier.

b) During Plaintiff's visit to the Skechers Facility on or about March 4, 2012, Plaintiff encountered the following barriers:

1) The sidewalk from Plaintiff's parking space to the entrance of the Skechers Facility was partially blocked by merchandise and displays, preventing Plaintiff from being able to maneuver his wheelchair along the sidewalk. Plaintiff required assistance from his wife to help push his wheelchair partially on and partially off the sidewalk so that he could get by.

2) The door to the restroom at the Skechers Facility was extremely heavy, making it difficult for Plaintiff to open.

3) After checking out, Plaintiff was forced to ask other customers to move out of his way so that he could exit because the space between the cashier counter and the customer line at the Skechers Facility lacked necessary clearance for Plaintiff to pass by the other customers in his wheelchair.

c) During Plaintiff's visit to the Lamps Plus Facility on or about March 4, 2012, Plaintiff encountered the following barriers:

1) The merchandise Plaintiff wanted to buy was located on a deep shelf and Plaintiff was unable to reach it from his wheelchair.

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030755

EX. 85-33

| | |
|---|---|
| 1 | Plaintiff was forced to ask Facility staff for assistance to retrieve |
| 2 | the merchandise for him, which was embarrassing. |
| 3 | 2) The only open cashier counter was extremely high, making it |
| 4 | difficult for Plaintiff to reach up from his wheelchair to sign his |
| 5 | credit card receipt. |
| 6 | d) During Plaintiff's visits to the Facilities on or about March 4, 2012 as |
| 7 | aforesaid, Plaintiff encountered the following barriers: |
| 8 | 1) Plaintiff was unable to locate a properly configured accessible |
| 9 | parking space and was forced to park in a designated accessible |
| 10 | parking space in front of the Lamps Plus Facility entrance that |
| 11 | was extremely narrow. |
| 12 | 2) The ramp from the parking lot to the sidewalk next to Plaintiff's |
| 13 | parking space was extremely steep, had an uneven surface, |
| 14 | extended into the access aisle, and had unprotected edges, |
| 15 | making it difficult for Plaintiff to maneuver his wheelchair up |
| 16 | and down the ramp. When Plaintiff traveled down the ramp back |
| 17 | to the parking lot, he was unable to control the speed of his |
| 18 | wheelchair down the ramp and came quickly down into the path |
| 19 | of traffic within the parking lot. |
| 20 | 11.     The barriers identified in paragraph 10 herein are only those that Plaintiff |
| 21 | personally encountered.  Plaintiff is presently unaware of other barriers which may in fact |
| 22 | exist at the Facilities and relate to his disabilities.  Plaintiff will seek to amend this Complaint |
| 23 | once such additional barriers are identified as it is Plaintiff's intention to have all barriers |
| 24 | which exist at the Facilities and relate to his disabilities removed to afford him full and equal |
| 25 | access. |
| 26 | 12.     Plaintiff was, and continues to be, deterred from visiting the Facilities because |
| 27 | Plaintiff knows that the Facilities' goods, services, facilities, privileges, advantages, and |
| 28 | accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. |

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030756

EX. 85-34

1  Plaintiff enjoys the goods and services offered at the Facilities, and will return to the
2  Facilities once the barriers are removed.

3      13.     Defendants knew, or should have known, that these elements and areas of the
4  Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access
5  to the physically disabled.  Moreover, Defendants have the financial resources to remove
6  these barriers from the Facilities (without much difficulty or expense), and make the
7  Facilities accessible to the physically disabled.  To date, however, Defendants refuse to either
8  remove those barriers or seek an unreasonable hardship exemption to excuse non-
9  compliance.

10     14.     At all relevant times, Defendants have possessed and enjoyed sufficient
11 control and authority to modify the Facilities to remove impediments to wheelchair access
12 and to comply with the 2010 Standards for Accessible Design and the California Code of
13 Regulations Title 24.  Defendants have not removed such impediments and have not
14 modified the Facilities to conform to accessibility standards.  Defendants have intentionally
15 maintained the Facilities in their current condition and have intentionally refrained from
16 altering the Facilities so that they comply with the accessibility standards.

17     15.     Plaintiff further alleges that the (continued) presence of barriers at the
18 Facilities is so obvious as to establish Defendants discriminatory intent.  On information and
19 belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal
20 to adhere to relevant building standards; disregard for the building plans and permits issued
21 for the Facilities; conscientious decision to maintain the architectural layout (as it currently
22 exists) at the Facilities; decision not to remove barriers from the Facilities; and allowance
23 that Defendants' property continues to exist in its non-compliance state.  Plaintiff further
24 alleges, on information and belief, that the Facilities are not in the midst of a remodel, and
25 that the barriers present at the Facilities are not isolated (or temporary) interruptions in access
26 due to maintenance or repairs.
27 //
28 //

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030757

EX. 85-35

## VI.    FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facilities during each visit and each incident of deterrence.

#### Failure to Remove Architectural Barriers in an Existing Facility

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facilities without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facilities' barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

#### Failure to Design and Construct an Accessible Facility

23.    Plaintiff alleges on information and belief that the Facilities were designed

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030758

EX. 85-36

1 and constructed (or both) after January 26, 1992 – independently triggering access

2 requirements under Title III of the ADA.

3     24.    The ADA also prohibits designing and constructing facilities for first

4 occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

5 with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

6     25.    Here, Defendants violated the ADA by designing and constructing (or both)

7 the Facilities in a manner that was not readily accessible to the physically disabled public –

8 including Plaintiff – when it was structurally practical to do so.[1]

9 <u>Failure to Make an Altered Facility Accessible</u>

10     26.    Plaintiff alleges on information and belief that the Facilities were modified

11 after January 26, 1992, independently triggering access requirements under the ADA.

12     27.    The ADA also requires that facilities altered in a manner that affects (or could

13 affect) its usability must be made readily accessible to individuals with disabilities to the

14 maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a

15 facility's primary function also requires making the paths of travel, bathrooms, telephones,

16 and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

17     28.    Here, Defendants altered the Facilities in a manner that violated the ADA and

18 was not readily accessible to the physically disabled public – including Plaintiff – to the

19 maximum extent feasible.

20 <u>Failure to Modify Existing Policies and Procedures</u>

21     29.    The ADA also requires reasonable modifications in policies, practices, or

22 procedures, when necessary to afford such goods, services, facilities, or accommodations to

23 individuals with disabilities, unless the entity can demonstrate that making such

24 modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

25     30.    Here, Defendants violated the ADA by failing to make reasonable

26 modifications in policies, practices, or procedures at the Facilities, when these modifications

27 were necessary to afford (and would not fundamentally alter the nature of) these goods,

28

---

[1] General under either state or federal statutes

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030759

EX. 85-37

1   services, facilities, or accommodations.

2       31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

3   attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

4       32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

5   Defendants violated the ADA in order to pursue damages under California's Unruh Civil

6   Rights Act or Disabled Persons Act.

7                          VII.    SECOND CLAIM

8                                Unruh Act

9       33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

10  this claim.

11      34.    California Civil Code § 51 states, in part, that: All persons within the

12  jurisdiction of this state are entitled to the full and equal accommodations, advantages,

13  facilities, privileges, or services in all business establishments of every kind whatsoever.

14      35.    California Civil Code § 51.5 also states, in part that: No business

15  establishment of any kind whatsoever shall discriminate against any person in this state

16  because of the disability of the person.

17      36.    California Civil Code § 51(f) specifically incorporates (by reference) an

18  individual's rights under the ADA into the Unruh Act.

19      37.    Defendants' aforementioned acts and omissions denied the physically

20  disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

21  privileges and services in a business establishment (because of their physical disability).

22      38.    These acts and omissions (including the ones that violate the ADA) denied,

23  aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

24      39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

25  minimum damages of four thousand dollars ($4,000) for each offense.

26      40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

27  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

28  § 52(a).

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030760

EX. 85-38

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41. Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450:

43. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44. Plaintiff alleges the Facilities are public accommodations constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code § 19956.

45. Defendants' non-compliance with these requirements at the Facilities aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.

2. Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3. Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4. Attorneys' fees, litigation expense, and costs of suit.[2]

5. Interest at the legal rate from the date of the filing of this action.

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030761

EX. 85-39

6. For such other and further relief as the Court deems proper.

Dated: April 10, 2013                    MOORE LAW FIRM, P.C.


                                         /s/ Tanya E. Moore
                                         Tanya E. Moore
                                         Attorneys for Plaintiff,
                                         Ronald Moore

MLF0030762

EX. 85-40

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:_____          _____
                                Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                */s/ Tanya E. Moore*_____
                                Tanya E. Moore, Attorney for
                                Plaintiff, Ronald Moore

*Moore v. Shaw Blackstone Center, LLC, et al.*

MLF0030763

**Whitney Law**

| | |
|---|---|
| **From:** | Whitney Law |
| **Sent:** | Friday, April 12, 2013 11:42 AM |
| **To:** | ronmoore441@gmail.com |
| **Subject:** | Revised complaint |
| **Attachments:** | ADA Complaint revised.pdf |

Dear Mr. Moore:

Attached please find a revised complaint against Port of Subs, Skechers, and Lamps Plus for your review. Please let me know if it is accurate.

Thank you,

Whitney Law
Paralegal
**Moore Law Firm, P.C.**
332 North Second Street
San Jose, California 95112
(408) 298-2000 Extension 238
(408) 298-6046 Facsimile
whitney@moorelawfirm.com

MLF0030712

EX. 85-42

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
RONALD MOORE

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>SHAW BLACKSTONE CENTER LLC, a Delaware limited liability company; BBSN TIWANA LLC, a California limited liability company, dba PORT OF SUBS #102; SKECHERS U.S.A., INC., a Delaware corporation; LAMPS PLUS, INC., a California corporation, dba LAMPS PLUS #36;<br><br>　　　　Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.　　This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

　　a)　　Port of Subs #102
　　　　88 East Shaw Avenue
　　　　Fresno, CA 93710
　　　　(hereafter "the Port of Subs Facility")

　　b)　　Skechers USA, Inc.
　　　　86 East Shaw Avenue

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030713

EX. 85-43

| | |
|---|---|
| 1 | Fresno, CA 93710 |
| 2 | (hereafter "the Skechers Facility") |
| 3 | c) Lamps Plus #36 |
| 4 | 84 East Shaw Avenue<br>Fresno, CA 93710 |
| 5 | (hereafter "the Lamps Plus Facility") |

6 Each of the facilities identified above shall be collectively hereafter referred to as "the

7 Facilities."

8 2. Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

9 costs, pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.)

10 ("ADA") and related California statutes, against:

11 a) SHAW BLACKSTONE CENTER LLC, a Delaware limited liability

12 company (hereinafter "the Landlord Defendant");

13 b) BBSN TIWANA LLC, a California limited liability company, dba

14 PORT OF SUBS #102 (hereinafter "the Port of Subs Defendant");

15 c) SKECHERS U.S.A., INC., a Delaware corporation (hereinafter "the

16 Skechers Defendant"); and

17 d) LAMPS PLUS, INC., a California corporation, dba LAMPS PLUS

18 #36 (hereinafter "the Lamps Plus Defendant").

19 The Port of Subs Defendant, the Skechers Defendant, and the Lamps Plus Defendant

20 are collectively referred to herein as "the Tenant Defendants," and together with the

21 Landlord Defendant, collectively the "Defendants."

22 **II.    JURISDICTION**

23 3. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

24 ADA claims.

25 4. Supplemental jurisdiction for claims brought under parallel California law –

26 arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

27 5. Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

28 //

MLF0030714

EX. 85-44

### III.   VENUE

6.    All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

### IV.   PARTIES

7.    Plaintiff believes, and thereon alleges, that the Landlord Defendant owns, operates, and/or leases the real property consisting of the real property and common areas of the Facilities as well as the physical structures thereon (including the buildings in which each of the individual Tenant Defendants' Facilities is located), and consists of a person (or persons), firm, or corporation. Plaintiff further believes, and thereon alleges, that the Landlord Defendant leases the respective Facilities to the Tenant Defendants as follows:

a)    The Port of Subs Defendant owns, operates, and/or leases the Port of Subs Facility, and leases the Port of Subs Facility from the Landlord Defendant;

b)    The Skechers Defendant owns, operates, and/or leases the Skechers Facility, and leases the Skechers Facility from the Landlord Defendant; and

c)    The Lamps Plus Defendant owns, operates, and/or leases the Lamps Plus Facility, and leases the Lamps Plus Facility from the Landlord Defendant.

8.    Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and is a member of the public whose rights are protected by these laws.

### V.   FACTS

9.    The Facilities are public accommodation facilities, open to the public, which are intended for nonresidential use and whose operation affects commerce.

10.    Plaintiff visited the Facilities and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030715

EX. 85-45

goods, services, privileges and accommodations offered at the Facilities. Plaintiff personally encountered the following barriers at the Facilities during Plaintiff's visits to the Facilities:

    a)    During Plaintiff's visits to the Port of Subs Facility on or about March 4, 2012 and February 25, 2013, Plaintiff encountered the following barriers:

        1)    There was a raised threshold at the entrance door to the Port of Subs Facility, and the floor just inside the door was carpeted, making it difficult for Plaintiff to enter in his wheelchair.

        2)    The self-serve water dispenser at the Port of Subs Facility was located extremely high, such that Plaintiff could not reach it from his wheelchair to fill his cup. Plaintiff attempted to use his cane to reach the water dispenser, but still could not reach it. Plaintiff was forced to ask Port of Subs Facility staff for assistance to fill his cup with water, which was embarrassing.

        3)    The door leading out of the Port of Subs Facility restaurant towards the restroom was heavy and closed quickly, making it difficult for Plaintiff to maneuver his wheelchair through the door while holding it open. The door closed onto Plaintiff while he was returning to the restaurant from the restroom, hitting his elbow and arm.

        4)    The pipes under the sink in the restroom at the Port of Subs Facility were exposed, causing Plaintiff to fear that his legs would be burned by the pipes. Plaintiff was forced to sit far away from the sink while washing his hands so that his legs did not touch the pipes, which was uncomfortable.

        5)    Plaintiff wanted to sit outside; however, Plaintiff was unable to locate an accessible route to the outside eating area because there was a step down to the outside eating area from the inside of the

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030716

EX. 85-46

1   Facility and there was no ramp. Plaintiff was unable to locate a
2   way to access the outside eating area from outside the Facility as
3   it was fenced off.

4   6)   Plaintiff was unable to locate an accessible table at the Port of
5   Subs Facility, and was forced to sit at a standard table which had
6   a pole underneath it preventing him from pulling his wheelchair
7   all the way up to the table. Plaintiff was forced to sit far away
8   from the table for the duration of his meal, which was
9   uncomfortable.

10  7)   The cashier counter at the Port of Subs Facility had a display
11  rack in front of it, which blocked Plaintiff from pulling his
12  wheelchair up to the counter. Plaintiff was forced to reach over
13  the display rack to hand payment to the cashier.

14  b)   During Plaintiff's visit to the Skechers Facility on or about March 4,
15  2012, Plaintiff encountered the following barriers:

16  1)   The sidewalk from Plaintiff's parking space to the entrance of
17  the Skechers Facility was partially blocked by merchandise and
18  displays, preventing Plaintiff from being able to maneuver his
19  wheelchair along the sidewalk. Plaintiff required assistance from
20  his wife to help push his wheelchair partially on and partially off
21  the sidewalk so that he could get by.

22  2)   The door to the restroom at the Skechers Facility was extremely
23  heavy, making it difficult for Plaintiff to open.

24  3)   After checking out, Plaintiff was forced to ask other customers to
25  move out of his way so that he could exit because the space
26  between the cashier counter and the customer line at the
27  Skechers Facility lacked necessary clearance for Plaintiff to pass
28  by the other customers in his wheelchair.

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030717

EX. 85-47

1    c)    During Plaintiff's visit to the Lamps Plus Facility on or about March 4,
2          2012, Plaintiff encountered the following barriers:
3          1)    The merchandise Plaintiff wanted to buy was located on a deep
4                shelf and Plaintiff was unable to reach it from his wheelchair.
5                Plaintiff was forced to ask Facility staff for assistance to retrieve
6                the merchandise for him, which was embarrassing.
7          2)    The only open cashier counter was extremely high, making it
8                difficult for Plaintiff to reach up from his wheelchair to sign his
9                credit card receipt.
10   d)    During Plaintiff's visits to the Facilities on or about March 4, 2012 as
11         aforesaid, Plaintiff encountered the following barriers:
12         1)    Plaintiff was unable to locate a properly configured accessible
13               parking space and was forced to park in a designated accessible
14               parking space in front of the Lamps Plus Facility entrance that
15               was extremely narrow.
16         2)    The ramp from the parking lot to the sidewalk next to Plaintiff's
17               parking space was extremely steep, had an uneven surface,
18               extended into the access aisle, and had unprotected edges,
19               making it difficult for Plaintiff to maneuver his wheelchair up
20               and down the ramp. When Plaintiff traveled down the ramp back
21               to the parking lot, he was unable to control the speed of his
22               wheelchair down the ramp and came quickly down into the path
23               of traffic within the parking lot.

24   11.   The barriers identified in paragraph 10 herein are only those that Plaintiff
25   personally encountered.  Plaintiff is presently unaware of other barriers which may in fact
26   exist at the Facilities and relate to his disabilities.  Plaintiff will seek to amend this Complaint
27   once such additional barriers are identified as it is Plaintiff's intention to have all barriers
28   which exist at the Facilities and relate to his disabilities removed to afford him full and equal

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030718

EX. 85-48

1 access.

2   12. Plaintiff was, and continues to be, deterred from visiting the Facilities because
3 Plaintiff knows that the Facilities' goods, services, facilities, privileges, advantages, and
4 accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.
5 Plaintiff enjoys the goods and services offered at the Facilities, and will return to the
6 Facilities once the barriers are removed.

7   13. Defendants knew, or should have known, that these elements and areas of the
8 Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access
9 to the physically disabled.  Moreover, Defendants have the financial resources to remove
10 these barriers from the Facilities (without much difficulty or expense), and make the
11 Facilities accessible to the physically disabled.  To date, however, Defendants refuse to either
12 remove those barriers or seek an unreasonable hardship exemption to excuse non-
13 compliance.

14   14. At all relevant times, Defendants have possessed and enjoyed sufficient
15 control and authority to modify the Facilities to remove impediments to wheelchair access
16 and to comply with the 2010 Standards for Accessible Design and the California Code of
17 Regulations Title 24.  Defendants have not removed such impediments and have not
18 modified the Facilities to conform to accessibility standards.  Defendants have intentionally
19 maintained the Facilities in their current condition and have intentionally refrained from
20 altering the Facilities so that they comply with the accessibility standards.

21   15. Plaintiff further alleges that the (continued) presence of barriers at the
22 Facilities is so obvious as to establish Defendants discriminatory intent.  On information and
23 belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal
24 to adhere to relevant building standards; disregard for the building plans and permits issued
25 for the Facilities; conscientious decision to maintain the architectural layout (as it currently
26 exists) at the Facilities; decision not to remove barriers from the Facilities; and allowance
27 that Defendants' property continues to exist in its non-compliance state.  Plaintiff further
28 alleges, on information and belief, that the Facilities are not in the midst of a remodel, and

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

Page 7

MLF0030719

EX. 85-49

1  that the barriers present at the Facilities are not isolated (or temporary) interruptions in access

2  due to maintenance or repairs.

3                              VI.    FIRST CLAIM

4                      Americans with Disabilities Act of 1990

5                      Denial of "Full and Equal" Enjoyment and Use

6        16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

7  this claim.

8        17.    Title III of the ADA holds as a "general rule" that no individual shall be

9  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

10  goods, services, facilities, privileges, and accommodations offered by any person who owns,

11  operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

12        18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

13  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

14  Facilities during each visit and each incident of deterrence.

15              Failure to Remove Architectural Barriers in an Existing Facility

16        19.    The ADA specifically prohibits failing to remove architectural barriers, which

17  are structural in nature, in existing facilities where such removal is readily achievable.  42

18  U.S.C. § 12182(b)(2)(A)(iv).

19        20.    When an entity can demonstrate that removal of a barrier is not readily

20  achievable, a failure to make goods, services, facilities, or accommodations available through

21  alternative methods is also specifically prohibited if these methods are readily achievable.

22  Id. § 12182(b)(2)(A)(v).

23        21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

24  barriers at the Facilities without much difficulty or expense, and that Defendants violated the

25  ADA by failing to remove those barriers, when it was readily achievable to do so.

26        22.    In the alternative, if it was not "readily achievable" for Defendants to remove

27  the Facilities' barriers, then Defendants violated the ADA by failing to make the required

28  services available through alternative methods, which are readily achievable.

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030720

EX. 85-50

<u>Failure to Design and Construct an Accessible Facility</u>

23.     Plaintiff alleges on information and belief that the Facilities were designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.     The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.     Here, Defendants violated the ADA by designing and constructing (or both) the Facilities in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

26.     Plaintiff alleges on information and belief that the Facilities were modified after January 26, 1992, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

28.     Here, Defendants altered the Facilities in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable

---

[1] General under either state or federal statutes

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030721

EX. 85-51

1  modifications in policies, practices, or procedures at the Facilities, when these modifications
2  were necessary to afford (and would not fundamentally alter the nature of) these goods,
3  services, facilities, or accommodations.

4      31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,
5  attorney fees, costs, legal expense) for these aforementioned violations.  42 U.S.C. § 12205.

6      32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that
7  Defendants violated the ADA in order to pursue damages under California's Unruh Civil
8  Rights Act or Disabled Persons Act.

9              **VII.    SECOND CLAIM**
10                 **Unruh Act**

11     33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for
12  this claim.

13     34.    California Civil Code § 51 states, in part, that:  All persons within the
14  jurisdiction of this state are entitled to the full and equal accommodations, advantages,
15  facilities, privileges, or services in all business establishments of every kind whatsoever.

16     35.    California Civil Code § 51.5 also states, in part that:  No business
17  establishment of any kind whatsoever shall discriminate against any person in this state
18  because of the disability of the person.

19     36.    California Civil Code § 51(f) specifically incorporates (by reference) an
20  individual's rights under the ADA into the Unruh Act.

21     37.    Defendants' aforementioned acts and omissions denied the physically
22  disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,
23  privileges and services in a business establishment (because of their physical disability).

24     38.    These acts and omissions (including the ones that violate the ADA) denied,
25  aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

26     39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory
27  minimum damages of four thousand dollars ($4,000) for each offense.

28     40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030722

EX. 85-52

1  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code
2  § 52(a).

3  **VIII. THIRD CLAIM**

4  **Denial of Full and Equal Access to Public Facilities**

5      41.   Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for
6  this claim.

7      42.   Health and Safety Code § 19955(a) states, in part, that:  California public
8  accommodations or facilities (built with private funds) shall adhere to the provisions of
9  Government Code § 4450.

10     43.   Health and Safety Code § 19959 states, in part, that:  Every existing (non-
11  exempt) public accommodation constructed prior to July 1, 1970, which is altered or
12  structurally repaired, is required to comply with this chapter.

13     44.   Plaintiff alleges the Facilities are public accommodations constructed, altered,
14  or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government
15  Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code
16  § 19956.

17     45.   Defendants' non-compliance with these requirements at the Facilities
18  aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities.
19  Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety
20  Code § 19953.

21  **IX.    PRAYER FOR RELIEF**

22     WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

23     1.   Injunctive relief, preventive relief, or any other relief the Court deems proper.

24     2.   Declaratory relief that Defendants violated the ADA for the purposes of
25  Unruh Act damages.

26     3.   Statutory minimum damages under section 52(a) of the California Civil Code
27  according to proof.

28  //

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030723

EX. 85-53

1      4.     Attorneys' fees, litigation expense, and costs of suit.[2]

2      5.     Interest at the legal rate from the date of the filing of this action.

3      6.     For such other and further relief as the Court deems proper.

4    Dated: April 12, 2013                    MOORE LAW FIRM, P.C.

5

6                                             /s/ Tanya E. Moore
                                              Tanya E. Moore
7                                             Attorneys for Plaintiff,
                                              Ronald Moore
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____
[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030724

**Whitney Law**

| | |
|---|---|
| **From:** | Whitney Law |
| **Sent:** | Wednesday, April 17, 2013 10:35 AM |
| **To:** | ronmoore441@gmail.com |
| **Subject:** | Moore v. Shaw Blackstone Center (Port of Subs, Skechers, Lamps Plus) |
| **Attachments:** | Filed Complaint.pdf |

Dear Mr. Moore:

Attached please find a copy of the filed Complaint in the above-captioned matter for your records.

Thank you,

Whitney Law
Paralegal
**Moore Law Firm, P.C.**
332 North Second Street
San Jose, California 95112
(408) 298-2000 Extension 238
(408) 298-6046 Facsimile
whitney@moorelawfirm.com

1

MLF0030697

EX. 85-55

1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: tanya@moorelawfirm.com

5  Attorneys for Plaintiff
   RONALD MOORE

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **EASTERN DISTRICT OF CALIFORNIA**

10

11  RONALD MOORE,                          )  No.
                                           )
12          Plaintiff,                     )  **COMPLAINT ASSERTING DENIAL OF**
                                           )  **RIGHT OF ACCESS UNDER**
13      vs.                                )  **AMERICANS WITH DISABILITIES ACT**
                                           )  **FOR INJUNCTIVE RELIEF,**
14  SHAW BLACKSTONE CENTER LLC, a          )  **DECLARATORY RELIEF, DAMAGES,**
    Delaware limited liability company; BBSN )  **ATTORNEYS' FEES AND COSTS (ADA)**
15  TIWANA LLC, a California limited liability )
    company, dba PORT OF SUBS #102;        )
16  SKECHERS U.S.A., INC., a Delaware       )
    corporation; LAMPS PLUS, INC., a California )
17  corporation, dba LAMPS PLUS #36;        )
                                           )
18                                          )
                                           )
19          Defendants.                     )
                                           )
20  _____  )

21                            **I. SUMMARY**

22          1.      This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

23  discrimination at the building, structure, facility, complex, property, land, development,

24  and/or surrounding business complex known as:

25              a)      Port of Subs #102
                        88 East Shaw Avenue
26                      Fresno, CA 93710
                        (hereafter "the Port of Subs Facility")
27

28              b)      Skechers USA, Inc.
                        86 East Shaw Avenue

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030698

EX. 85-56

1    Fresno, CA 93710
2    (hereafter "the Skechers Facility")

3    c)    Lamps Plus #36
4          84 East Shaw Avenue
          Fresno, CA 93710
5          (hereafter "the Lamps Plus Facility")

6    Each of the facilities identified above shall be collectively hereafter referred to as "the
7    Facilities."

8    2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and
9    costs, pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.)
10   ("ADA") and related California statutes, against:

11   a)    SHAW BLACKSTONE CENTER LLC, a Delaware limited liability
12         company (hereinafter "the Landlord Defendant");

13   b)    BBSN TIWANA LLC, a California limited liability company, dba
14         PORT OF SUBS #102 (hereinafter "the Port of Subs Defendant");

15   c)    SKECHERS U.S.A., INC., a Delaware corporation (hereinafter "the
16         Skechers Defendant"); and

17   d)    LAMPS PLUS, INC., a California corporation, dba LAMPS PLUS
18         #36 (hereinafter "the Lamps Plus Defendant").

19   The Port of Subs Defendant, the Skechers Defendant, and the Lamps Plus Defendant
20   are collectively referred to herein as "the Tenant Defendants," and together with the
21   Landlord Defendant, collectively the "Defendants."

22                          **II.    JURISDICTION**

23   3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for
24   ADA claims.

25   4.    Supplemental jurisdiction for claims brought under parallel California law –
26   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

27   5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

28   //

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030699

EX. 85-57

### III.   VENUE

6.   All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

### IV.   PARTIES

7.   Plaintiff believes, and thereon alleges, that the Landlord Defendant owns, operates, and/or leases the real property consisting of the real property and common areas of the Facilities as well as the physical structures thereon (including the buildings in which each of the individual Tenant Defendants' Facilities is located), and consists of a person (or persons), firm, or corporation. Plaintiff further believes, and thereon alleges, that the Landlord Defendant leases the respective Facilities to the Tenant Defendants as follows:

    a)    The Port of Subs Defendant owns, operates, and/or leases the Port of Subs Facility, and leases the Port of Subs Facility from the Landlord Defendant;

    b)    The Skechers Defendant owns, operates, and/or leases the Skechers Facility, and leases the Skechers Facility from the Landlord Defendant; and

    c)    The Lamps Plus Defendant owns, operates, and/or leases the Lamps Plus Facility, and leases the Lamps Plus Facility from the Landlord Defendant.

8.   Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and is a member of the public whose rights are protected by these laws.

### V.   FACTS

9.   The Facilities are public accommodation facilities, open to the public, which are intended for nonresidential use and whose operation affects commerce.

10.   Plaintiff visited the Facilities and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030700

EX. 85-58

goods, services, privileges and accommodations offered at the Facilities.  Plaintiff personally

encountered the following barriers at the Facilities during Plaintiff's visits to the Facilities:

a)    During Plaintiff's visits to the Port of Subs Facility on or about March 4,

2012 and February 25, 2013, Plaintiff encountered the following

barriers:

1)    There was a raised threshold at the entrance door to the Port of

Subs Facility, and the floor just inside the door was carpeted,

making it difficult for Plaintiff to enter in his wheelchair.

2)    The self-serve water dispenser at the Port of Subs Facility was

located extremely high, such that Plaintiff could not reach it from

his wheelchair to fill his cup. Plaintiff attempted to use his cane

to reach the water dispenser, but still could not reach it. Plaintiff

was forced to ask Port of Subs Facility staff for assistance to fill

his cup with water, which was embarrassing.

3)    The door leading out of the Port of Subs Facility restaurant

towards the restroom was heavy and closed quickly, making it

difficult for Plaintiff to maneuver his wheelchair through the

door while holding it open. The door closed onto Plaintiff while

he was returning to the restaurant from the restroom, hitting his

elbow and arm.

4)    The pipes under the sink in the restroom at the Port of Subs

Facility were exposed, causing Plaintiff to fear that his legs

would be burned by the pipes. Plaintiff was forced to sit far away

from the sink while washing his hands so that his legs did not

touch the pipes, which was uncomfortable.

5)    Plaintiff wanted to sit outside; however, Plaintiff was unable to

locate an accessible route to the outside eating area because there

was a step down to the outside eating area from the inside of the

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030701

EX. 85-59

Facility and there was no ramp. Plaintiff was unable to locate a way to access the outside eating area from outside the Facility as it was fenced off.

6)    Plaintiff was unable to locate an accessible table at the Port of Subs Facility, and was forced to sit at a standard table which had a pole underneath it preventing him from pulling his wheelchair all the way up to the table. Plaintiff was forced to sit far away from the table for the duration of his meal, which was uncomfortable.

7)    The cashier counter at the Port of Subs Facility had a display rack in front of it, which blocked Plaintiff from pulling his wheelchair up to the counter. Plaintiff was forced to reach over the display rack to hand payment to the cashier.

b)   During Plaintiff's visit to the Skechers Facility on or about March 4, 2012, Plaintiff encountered the following barriers:

1)    The sidewalk from Plaintiff's parking space to the entrance of the Skechers Facility was partially blocked by merchandise and displays, preventing Plaintiff from being able to maneuver his wheelchair along the sidewalk. Plaintiff required assistance from his wife to help push his wheelchair partially on and partially off the sidewalk so that he could get by.

2)    The door to the restroom at the Skechers Facility was extremely heavy, making it difficult for Plaintiff to open.

3)    After checking out, Plaintiff was forced to ask other customers to move out of his way so that he could exit because the space between the cashier counter and the customer line at the Skechers Facility lacked necessary clearance for Plaintiff to pass by the other customers in his wheelchair.

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030702

EX. 85-60

c)   During Plaintiff's visit to the Lamps Plus Facility on or about March 4, 2012, Plaintiff encountered the following barriers:

    1)   The merchandise Plaintiff wanted to buy was located on a deep shelf and Plaintiff was unable to reach it from his wheelchair. Plaintiff was forced to ask Facility staff for assistance to retrieve the merchandise for him, which was embarrassing.

    2)   The only open cashier counter was extremely high, making it difficult for Plaintiff to reach up from his wheelchair to sign his credit card receipt.

d)   During Plaintiff's visits to the Facilities on or about March 4, 2012 as aforesaid, Plaintiff encountered the following barriers:

    1)   Plaintiff was unable to locate a properly configured accessible parking space and was forced to park in a designated accessible parking space in front of the Lamps Plus Facility entrance that was extremely narrow.

    2)   The ramp from the parking lot to the sidewalk next to Plaintiff's parking space was extremely steep, had an uneven surface, extended into the access aisle, and had unprotected edges, making it difficult for Plaintiff to maneuver his wheelchair up and down the ramp. When Plaintiff traveled down the ramp back to the parking lot, he was unable to control the speed of his wheelchair down the ramp and came quickly down into the path of traffic within the parking lot.

11.   The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facilities and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facilities and relate to his disabilities removed to afford him full and equal

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030703

EX. 85-61

1   access.

2       12.     Plaintiff was, and continues to be, deterred from visiting the Facilities because

3   Plaintiff knows that the Facilities' goods, services, facilities, privileges, advantages, and

4   accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

5   Plaintiff enjoys the goods and services offered at the Facilities, and will return to the

6   Facilities once the barriers are removed.

7       13.     Defendants knew, or should have known, that these elements and areas of the

8   Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access

9   to the physically disabled.  Moreover, Defendants have the financial resources to remove

10  these barriers from the Facilities (without much difficulty or expense), and make the

11  Facilities accessible to the physically disabled.  To date, however, Defendants refuse to either

12  remove those barriers or seek an unreasonable hardship exemption to excuse non-

13  compliance.

14      14.     At all relevant times, Defendants have possessed and enjoyed sufficient

15  control and authority to modify the Facilities to remove impediments to wheelchair access

16  and to comply with the 2010 Standards for Accessible Design and the California Code of

17  Regulations Title 24.  Defendants have not removed such impediments and have not

18  modified the Facilities to conform to accessibility standards.  Defendants have intentionally

19  maintained the Facilities in their current condition and have intentionally refrained from

20  altering the Facilities so that they comply with the accessibility standards.

21      15.     Plaintiff further alleges that the (continued) presence of barriers at the

22  Facilities is so obvious as to establish Defendants discriminatory intent.  On information and

23  belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal

24  to adhere to relevant building standards; disregard for the building plans and permits issued

25  for the Facilities; conscientious decision to maintain the architectural layout (as it currently

26  exists) at the Facilities; decision not to remove barriers from the Facilities; and allowance

27  that Defendants' property continues to exist in its non-compliance state.  Plaintiff further

28  alleges, on information and belief, that the Facilities are not in the midst of a remodel, and

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030704

EX. 85-62

1   that the barriers present at the Facilities are not isolated (or temporary) interruptions in access

2   due to maintenance or repairs.

3   **VI.   FIRST CLAIM**

4   **Americans with Disabilities Act of 1990**

5   Denial of "Full and Equal" Enjoyment and Use

6   16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

7   this claim.

8   17.   Title III of the ADA holds as a "general rule" that no individual shall be

9   discriminated against on the basis of disability in the full and equal enjoyment (or use) of

10   goods, services, facilities, privileges, and accommodations offered by any person who owns,

11   operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

12   18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

13   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

14   Facilities during each visit and each incident of deterrence.

15   Failure to Remove Architectural Barriers in an Existing Facility

16   19.   The ADA specifically prohibits failing to remove architectural barriers, which

17   are structural in nature, in existing facilities where such removal is readily achievable. 42

18   U.S.C. § 12182(b)(2)(A)(iv).

19   20.   When an entity can demonstrate that removal of a barrier is not readily

20   achievable, a failure to make goods, services, facilities, or accommodations available through

21   alternative methods is also specifically prohibited if these methods are readily achievable.

22   Id. § 12182(b)(2)(A)(v).

23   21.   Here, Plaintiff alleges that Defendants can easily remove the architectural

24   barriers at the Facilities without much difficulty or expense, and that Defendants violated the

25   ADA by failing to remove those barriers, when it was readily achievable to do so.

26   22.   In the alternative, if it was not "readily achievable" for Defendants to remove

27   the Facilities' barriers, then Defendants violated the ADA by failing to make the required

28   services available through alternative methods, which are readily achievable.

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

Page 8

MLF0030705

<u>Failure to Design and Construct an Accessible Facility</u>

23.   Plaintiff alleges on information and belief that the Facilities were designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.   The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

25.   Here, Defendants violated the ADA by designing and constructing (or both) the Facilities in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

26.   Plaintiff alleges on information and belief that the Facilities were modified after January 26, 1992, independently triggering access requirements under the ADA.

27.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible.  42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible.  <u>Id</u>.

28.   Here, Defendants altered the Facilities in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature.  42 U.S.C. § 12182(b)(2)(A)(ii).

30.   Here, Defendants violated the ADA by failing to make reasonable

---

[1] General under either state or federal statutes

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030706

EX. 85-64

1   modifications in policies, practices, or procedures at the Facilities, when these modifications

2   were necessary to afford (and would not fundamentally alter the nature of) these goods,

3   services, facilities, or accommodations.

4        31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

5   attorney fees, costs, legal expense) for these aforementioned violations.  42 U.S.C. § 12205.

6        32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

7   Defendants violated the ADA in order to pursue damages under California's Unruh Civil

8   Rights Act or Disabled Persons Act.

9                   **VII.    SECOND CLAIM**

10                       **Unruh Act**

11        33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

12   this claim.

13        34.    California Civil Code § 51 states, in part, that:  All persons within the

14   jurisdiction of this state are entitled to the full and equal accommodations, advantages,

15   facilities, privileges, or services in all business establishments of every kind whatsoever.

16        35.    California Civil Code § 51.5 also states, in part that:  No business

17   establishment of any kind whatsoever shall discriminate against any person in this state

18   because of the disability of the person.

19        36.    California Civil Code § 51(f) specifically incorporates (by reference) an

20   individual's rights under the ADA into the Unruh Act.

21        37.    Defendants' aforementioned acts and omissions denied the physically

22   disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

23   privileges and services in a business establishment (because of their physical disability).

24        38.    These acts and omissions (including the ones that violate the ADA) denied,

25   aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

26        39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

27   minimum damages of four thousand dollars ($4,000) for each offense.

28        40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

MLF0030707

EX. 85-65

1  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

2  § 52(a).

### VIII. THIRD CLAIM

#### Denial of Full and Equal Access to Public Facilities

5  41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

6  this claim.

7  42.    Health and Safety Code § 19955(a) states, in part, that:  California public

8  accommodations or facilities (built with private funds) shall adhere to the provisions of

9  Government Code § 4450.

10  43.    Health and Safety Code § 19959 states, in part, that:  Every existing (non-

11  exempt) public accommodation constructed prior to July 1, 1970, which is altered or

12  structurally repaired, is required to comply with this chapter.

13  44.    Plaintiff alleges the Facilities are public accommodations constructed, altered,

14  or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

15  Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code

16  § 19956.

17  45.    Defendants' non-compliance with these requirements at the Facilities

18  aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities.

19  Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety

20  Code § 19953.

### IX.    PRAYER FOR RELIEF

22  WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

23  1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

24  2.    Declaratory relief that Defendants violated the ADA for the purposes of

25  Unruh Act damages.

26  3.    Statutory minimum damages under section 52(a) of the California Civil Code

27  according to proof.

28  //

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

Page 11

MLF0030708

EX. 85-66

1    4.    Attorneys' fees, litigation expense, and costs of suit.[2]

2    5.    Interest at the legal rate from the date of the filing of this action.

3    6.    For such other and further relief as the Court deems proper.

4
Dated: April 12, 2013                    MOORE LAW FIRM, P.C.
5

6                                         /s/ Tanya E. Moore
7                                         Tanya E. Moore
                                          Attorneys for Plaintiff,
8                                         Ronald Moore

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____
[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Shaw Blackstone Center, LLC, et al.*
Complaint

Page 12

MLF0030709

EX. 85-67

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 4/12/13

_Ronald Moore_
Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

/s/ Tanya E. Moore
Tanya E. Moore, Attorney for
Plaintiff, Ronald Moore

_Moore v. Shaw Blackstone Center, LLC, et al._

MLF0030710

EX. 85-68

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 8/12/13          _Ronald Moore_
                                   Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                     */s/ Tanya E. Moore*
                     Tanya E. Moore, Attorney for
                     Plaintiff, Ronald Moore

*Moore v. Shaw Blackstone Center, LLC, et al.*

MLF0030711

# Exhibit 86

```
MADERA FAMILY MART
1211 W OLIVE AVE
MADERA    CA 93637
L306053384001

        06/21/2014 7:54:31 PM
    Register: 1 Trans #: 3570 Op ID: 1234
        Your cashier: CASHIER

    *** PREPAID RECEIPT ***

REDLINE XTREME              $3.99 101
CRV 5 C                     $0.05 101
REGULAR CR    PUMP#6       $30.00  99
                          ----------
            Subtotal =     $34.04
                 Tax =      $0.31
                          ----------
               Total =     $34.35

          Change Due =      $0.00

Credit                     $34.35
-------------------------------------
XXXX XXXX XXXX 4008, Visa
MOORE/RONALD
INVOICE 079789
AUTH 082548
=====================================
Sequence Number 35784
APPROVED  082548
=====================================
I agree to pay the above total amount
according to the card issuer agreement.
-------------------------------------


        THANK YOU COME AGAIN
```

MLF0042896

EX. 86-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? *Madera Family Mart*

2. What is the address of the Facility? *1211 West Olive Ave Madera, CA*

3. When did you visit the Facility? *6/21/14* (Date) *7:45pm* (Time)

4. Was this your first visit to the Facility? *Yes?*

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. *?*

6. What was the purpose of your visit? *Drink and Gas*

7. Who accompanied you to the Facility? *Grandson Ronny*

8. What car did you drive to the Facility? *Mine*

9. Did you drive yourself or did you get a ride from someone else? *I drove*

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. *~~the parking lot~~ Parked at pump 6*

11. Was it difficult for you to park there? If so, why? *No*

12. How did you unload from your vehicle? *Rear*

13. What side of the vehicle did you unload from? Driver or passenger? *Driver*

14. Did anyone help you to transfer onto your wheelchair? Who? *Yes, Ronny*

15. Did you encounter any problems transferring onto your wheelchair? Describe. *No, because Ronny helped me*

16. Which way did you go from the parking to the entrance of the Facility? *To access isle*

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. *Yes, because there was pump caps and no route of travel and ramp went into street and pavement cracked*

18. Did you encounter any problems opening the door? Describe. *Yes, door heavy and ~~hit~~ hit my toe*

19. What did you purchase (or what meal did you have there)? *Drink and gas*

20. Did you need to use the restroom while you were at the Facility? Why? *Yes, because I had to go.*

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0042894

EX. 86-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: Yes

Toilet: Yes

Urinal: No

Toilet paper: Yes

Toilet seat covers: Yes

Paper towels/hand dryer: Yes

Soap dispenser: Yes

Other: Door didn't close on it's own.

22. Did you have any problem maneuvering inside the restroom? No

23. Was there any seating provided inside the Facility? N/A

24. Were you able to sit comfortably at the table? If not, why? N/A

25. Did you use the counter to pay for purchase? Which one? Yes, only one

26. Did you pay with cash or credit card? Credit Card

27. Was the counter accessible? If not, describe. No, counter too high and wide Ronny had to give card and sign reciept

28. Did you have any other problems inside the Facility? Describe. Yes, there was stuff infront of the counter both ways and isles I couldn't get down because too small.

29. Which way did you go after you left the Facility? Outdoor too Ramp too car.

30. Any problems getting back to your vehicle? Yes The gas caps and uneven ground.

31. Any problems transferring from your wheelchair to your vehicle? No, because Ronny helped me

32. Any additional information you believe would assist us in evaluating this inquiry? When leaving I hit my toe on the door that was locked

MLF0042895

EX. 86-4



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

July 1, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

**RE:** **ADAI No.    02038**
**Madera Family Mart** *(1211 W Olive Ave, Madera, CA)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0042897

EX. 86-5

**BARRIER MEMO**

ADAI No. :    02038

Case Name:    Moore v. Madera Family Mart

Address:    1211 West Olive Ave, Madera

| Barrier | Description | Is it a valid barrier? Y / N |
|---------|-------------|------------------------------|
| Route from pumps to entrance | Plaintiff parked at pump #6. The route from the pump to the building entrance required Plaintiff to travel through the parking lot/driveway. Also, the surface of the route was cracked, and uneven due to pump caps, which made it difficult for Plaintiff to navigate. | Y |
| Built-up ramp | The ramp from the parking lot to the sidewalk was an improperly configured built-up curb ramp and was difficult for Plaintiff to ascend. | Y |
| Door heavy | The door was heavy and hit Plaintiff's toe as he tried to enter. | Y |
| Door lacks clear width | One of the set of double doors was locked and Plaintiff hit his toe on it as he was exiting because the open doorway was not wide enough. | Y |
| Restroom (stall?) door did not close by itself | The door to the restroom did not close by itself and it was difficult for Plaintiff to maneuver around inside the restroom to close it behind him. | **Was not available for use due to "homeless mess"** |
| Aisles narrow | The aisles lacked necessary wheelchair clearances, making it difficult to maneuver around the store. | Y |
| Counter high and lacks clear space | The transaction counter was too high and it lacked proper clear space in front of it, so Plaintiff could not reach over the counter to hand payment to the cashier. His grandson had to do it. | Y |

1

MLF0042868

EX. 86-6



**MOORE**
LAW FIRM, P.C.

November 20, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

Re:  ADAI No.    02038
     Simone (Madera Family Mart)
     1211 W Olive Ave, Madera, CA

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records.  Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0042883

EX. 86-7

1 | Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
2 | 332 North Second Street
San Jose, California 95112
3 | Telephone (408) 298-2000
Facsimile (408) 298-6046
4 | E-mail: tanya@moorelawfirm.com

5 | Attorneys for Plaintiff
Ronald Moore

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **EASTERN DISTRICT OF CALIFORNIA**

10

11 | RONALD MOORE,                                  )  No.
                                                )
12 |             Plaintiff,                       )  **COMPLAINT ASSERTING DENIAL OF**
                                                )  **RIGHT OF ACCESS UNDER**
13 |    vs.                                        )  **AMERICANS WITH DISABILITIES ACT**
                                                )  **FOR INJUNCTIVE RELIEF,**
14 | MAURO SIMONE; BMC FARMERS, INC.              )  **DECLARATORY RELIEF, DAMAGES,**
   dba MADERA FAMILY MART aka                    )  **ATTORNEYS' FEES AND COSTS (ADA)**
15 | MADERA FAMILY FOOD MART,                     )
                                                )
16 |                                              )
             Defendants.                         )
17 |                                              )
                                                )
18 | _____ )

19 | **I. SUMMARY**

20 |         1.      This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

21 | discrimination at the building, structure, facility, complex, property, land, development, and/or

22 | surrounding business complex known as:

23 |                 Madera Family Mart
                    1211 W. Olive Avenue
24 |                 Madera, CA 93637
                    (hereafter "the Facility")
25 |

26 |         2.      Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

27 | costs, against MAURO SIMONE; and BMC FARMERS, INC. dba MADERA FAMILY

28 | MART aka MADERA FAMILY FOOD MART (hereinafter collectively referred to as

*Moore v. Simone, et al.*
Complaint
                                        Page 1

MLF0042884

EX. 86-8

1   "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et

2   seq.) ("ADA") and related California statutes.

### II.   JURISDICTION

3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.   Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

### III.   VENUE

6.   All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

### IV.   PARTIES

7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.   Plaintiff is substantially limited in his ability to walk, and must use a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

### V.   FACTS

9.   The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

10.   Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or about June 21, 2014:

*Moore v. Simone, et al.*
Complaint
Page 2

MLF0042885

EX. 86-9

a) Plaintiff was not able to locate an identified accessible route of travel from his vehicle parked at the gas pump to the Facility entrance. Plaintiff was required to travel through the path of vehicular traffic in the driveway to reach the ramp. The surface of the route was cracked and uneven due to the fuel tank caps, which made it difficult for Plaintiff to navigate.

b) The ramp from the parking lot to the sidewalk leading toward the Facility entrance was an improperly configured built-up ramp, extending into the vehicular way, which was difficult for Plaintiff to ascend.

c) The entrance door was difficult to open because it was heavy, causing Plaintiff to hit his toe on it when he tried to open the door.

d) One of the set of double doors was locked and Plaintiff hit his toe again as he was exiting because the open doorway lacked sufficient clearance.

e) Plaintiff had difficulty maneuvering within the aisles of the Facility because they lacked necessary wheelchair clearances. He required the help of his grandson to get the item he wanted as he could not fit down the aisle to get it himself.

f) The transaction counter was too high and it lacked proper clear space in front of it, preventing Plaintiff from being able to reach over the counter to hand his credit card to the cashier. Plaintiff required the help of his grandson to take the credit card and give it to the cashier. Plaintiff also needed his grandson to sign the receipt as he could not reach up to sign it on the counter.

11. The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

*Moore v. Simone, et al.*
Complaint

MLF0042886

EX. 86-10

1    12.    Plaintiff was, and continues to be, deterred from visiting the Facility because
2  Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and
3  accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.
4  Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility
5  once the barriers are removed.

6    13.    Defendants knew, or should have known, that these elements and areas of the
7  Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to
8  the physically disabled. Moreover, Defendants have the financial resources to remove these
9  barriers from the Facility (without much difficulty or expense), and make the Facility
10  accessible to the physically disabled. To date, however, Defendants refuse to either remove
11  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

12    14.    At all relevant times, Defendants have possessed and enjoyed sufficient control
13  and authority to modify the Facility to remove impediments to wheelchair access and to
14  comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible
15  Design. Defendants have not removed such impediments and have not modified the Facility to
16  conform to accessibility standards. Defendants have intentionally maintained the Facility in its
17  current condition and have intentionally refrained from altering the Facility so that it complies
18  with the accessibility standards.

19    15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is
20  so obvious as to establish Defendants' discriminatory intent. On information and belief,
21  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere
22  to relevant building standards; disregard for the building plans and permits issued for the
23  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at
24  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'
25  property continues to exist in its non-compliant state. Plaintiff further alleges, on information
26  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the
27  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.
28  ///

*Moore v. Simone, et al.*
Complaint

Page 4

MLF0042887

EX. 86-11

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>. § 12182(b)(2)(A)(v).

21.   Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.   In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

///

///

*Moore v. Simone, et al.*
Complaint

MLF0042888

EX. 86-12

1          <u>Failure to Design and Construct an Accessible Facility</u>

2          23.     Plaintiff alleges on information and belief that the Facility was designed and

3    constructed (or both) after January 26, 1992 – independently triggering access requirements

4    under Title III of the ADA.

5          24.     The ADA also prohibits designing and constructing facilities for first occupancy

6    after January 16, 1993, that aren't readily accessible to, and usable by, individuals with

7    disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

8          25.     Here, Defendants violated the ADA by designing and constructing (or both) the

9    Facility in a manner that was not readily accessible to the physically disabled public –

10   including Plaintiff – when it was structurally practical to do so.[1]

11         <u>Failure to Make an Altered Facility Accessible</u>

12         26.     Plaintiff alleges on information and belief that the Facility was modified after

13   January 26, 1992, independently triggering access requirements under the ADA.

14         27.     The ADA also requires that facilities altered in a manner that affects (or could

15   affect) its usability must be made readily accessible to individuals with disabilities to the

16   maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

17   primary function also requires making the paths of travel, bathrooms, telephones, and drinking

18   fountains serving that area accessible to the maximum extent feasible. <u>Id.</u>

19         28.     Here, Defendants altered the Facility in a manner that violated the ADA and

20   was not readily accessible to the physically disabled public – including Plaintiff – to the

21   maximum extent feasible.

22         <u>Failure to Modify Existing Policies and Procedures</u>

23         29.     The ADA also requires reasonable modifications in policies, practices, or

24   procedures, when necessary to afford such goods, services, facilities, or accommodations to

25   individuals with disabilities, unless the entity can demonstrate that making such modifications

26   would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Simone, et al.*
Complaint

MLF0042889

EX. 86-13

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.   SECOND CLAIM

### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

*Moore v. Simone, et al.*
Complaint

MLF0042890

EX. 86-14

1   ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code
2   § 52(a).

### VIII. THIRD CLAIM

#### Denial of Full and Equal Access to Public Facilities

5       41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for
6   this claim.

7       42.    Health and Safety Code § 19955(a) states, in part, that: California public
8   accommodations or facilities (built with private funds) shall adhere to the provisions of
9   Government Code § 4450.

10       43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-
11   exempt) public accommodation constructed prior to July 1, 1970, which is altered or
12   structurally repaired, is required to comply with this chapter.

13       44.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or
14   repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code
15   § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

16       45.    Defendants' non-compliance with these requirements at the Facility aggrieved
17   (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,
18   Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.    PRAYER FOR RELIEF

20   WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

21       1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

22       2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh
23           Act damages.

24       3.    Statutory minimum damages under section 52(a) of the California Civil Code
25           according to proof.

26       4.    Attorneys' fees, litigation expense, and costs of suit.[2]

27       5.    Interest at the legal rate from the date of the filing of this action.

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Simone, et al.*
Complaint

MLF0042891

EX. 86-15

1       6.    For such other and further relief as the Court deems proper.

2

3  Dated: November 19, 2014          MOORE LAW FIRM, P.C.

4                                  */s/ Tanya E. Moore*

5                                    Tanya E. Moore
                                  Attorneys for Plaintiff

6                                    Ronald Moore

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Moore v. Simone, et al.*
Complaint

MLF0042892

EX. 86-16

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: November 19, 2014          /s/ Ronald Moore
                                  Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                  /s/ Tanya E. Moore
                                  Tanya E. Moore, Attorney for
                                  Plaintiff, Ronald Moore

*Moore v. Simone, et al.*
*Verification*

MLF0042893

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 11/19/14                          _Ronald Moore_
                                         Ronald Moore

*Moore v. Simone, et al.*
*Verification*

MLF0042898

EX. 86-18

# Exhibit 87

## Receipt 1

El Bajio
3704 W Shields Ave
Fresno, CA 93722
559-277-3644

Date: 11/09/12    Time: 07:25 pm
**Order #: 175**

Server: Sara38
Guest: 2
Table #: 17
Name:
DINING
Cashier: cashier pm
Payment#: 45982
Auth Code: 003112/1

Card# : XXXXXXXXXXX8374  Swiped

```
Sub-total:         $17.74
Tax:                $1.42
Total:             $19.16
```

Visa $19.16

Tip :  $2.84

Total : $23.00

## Receipt 2

El Bajio
3704 W Shields Ave
Fresno, CA 93722
559-277-3644

Date: 12/15/12    Time: 01:17
**Order #: 123**

Server: Stephanie47
Guest: 2
Table #: 17
Name:
DINING

```
1  COFFE                                        $2.00
1  HUEVOS RANCHEROS                             $7.99
2  ****************************                 $0.00
1  LARGE COMBO DINNER                           $9.99
   SOFT TACO CARNE ASADA                        $0.50
   SOFT TACO CARNE ASADA                        $0.00
2  SOUP                                        $13.99
1  LOUI'S SPECIAL                               $1.00
   OPENFOOD

                            total:            $35.97
                                :              $2.87
                            Total:            $38.84
                    Pay This Amount:          $38.84
```

Recommended Gratuity:
15% = $5.40  18% = $6.47  20% = $7.19

Thank You...
Please Come Again

MLF0051605

_Thank You_

El Bajio
3704 N Shields Ave
Fresno, CA 93722
559-277-3644

Date: 11/03/12   Time: 07:22 pm
Order #: 175

Server: Sara38
Guest: 2
Table #: 17
Name:
DINING

| | | |
|---|---|---|
| 1 | CARMELITA'S PLATE | $6.25 |
| 2 | ****************** | $0.00 |
| 1 | SMALL COMBO DINNER | $8.99 |
| 1 | SOUP | $0.00 |
| 1 | S/JALAPENOS | $0.50 |
| 1 | COKE | $2.00 |

Sub-total:
Tax:                    $1.4,
Total:                 $19.16
**Pay This Amount:**   $19.16

Recommended Gratuity:
15% = $2.66 18% = $3.19 20% = $3.55

Thank You
Please Come Again

---

BUY RITE
5706 W. SHIELDS
(559) 275-7467

DATE 03/15/2012 THU   TIME 14:46

GROCERY          $1.69
CRV T1           $0.05
TOTAL            $1.74
CASH             $1.7

**BUY RITE**
**3706 W. SHIELDS**
(559) 275-467

DATE 01/11/2013 FRI    TIME 21:45

| | |
|---|---|
| WAVE T1 | $3.99 |
| WAVE T1 | $3.99 |
| TAX1 | $0.66 |
| TOTAL | $8.64 |
| CASH | $8.64 |
| CLERK 1    No.000409 | 00000 |

**BUY RITE**
**3706 W. SHIELDS**
(559) 275-7467

DATE 08/28/2012 TUE    TIME 19:02

| | |
|---|---|
| GEN MERCH T1 | $2.99 |
| TAX1 | $0.24 |
| TOTAL | $3.23 |
| CASH | $3.23 |
| CLERK 1    No.000316 | 00000 |

**BUY RITE**
**3706 W. SHIELDS**
(559) 275-7467

DATE 09/30/2012 SUN    TIME 17:53

| | |
|---|---|
| CIGARETTE T1 | $5.29 |
| CIGARETTE T1 | $5.29 |
| LOTTERY | $10.00 |
| TAX1 | $0.84 |
| TOTAL | $21.42 |
| CASH | $21.42 |
| CLERK 1    No.000317 | 00000 |

**BUY RITE**
**3706 W. SHIELDS**
(559) 275-7467

DATE 08/28/2012 TUE    TIME 23:11

| | |
|---|---|
| CIGARETTE T1 | $5.29 |
| CIGARETTE T1 | $5.29 |
| TAX1 | $0.84 |
| TOTAL | $11.42 |
| CASH | $11.42 |
| CLERK 1    No.000475 | 00000 |

3704 W. Shields Ave.
Fresno, CA 93722
(559) 277-3644

2320 N. Blackstone
Fresno, CA 93703
(559) 227-3101



EL BAJIO
"Traditional Mexican Cuisine
and Quality Seafood"

DATE 3/14/202
AMOUNT 3.78

**BUY RITE**
**3706 W. SHIELDS**
(559) 275-7467

DATE 03/15/2012 THU    TIME 14:46

| | |
|---|---|
| | $1.69 |
| | $0.05 |
| GROCERY | $1.74 |
| CRV T1 | $1.74 |
| TOTAL | |
| CASH | |
| CLERK 1 | |

MLF0051607

EX. 87-4

01399

BUY RITE
3706 W. SHIELDS
(559) 275-7407

DATE 01/11/2013 FRI    TIME 21:45

WAVE T1              $3.99
WAVE T1              $3.99
TAX1                $0.66
TOTAL               $8.64
CASH                $8.64
CLERK 1    No.000405   00000

MLF0029751

EX. 87-5

```
              BUY RITE
          3706 W. SHIELDS
           (559) 275-7467

DATE 03/15/2012 THU   TIME 14:46

GROCERY                  $1.69
CRV T1                   $0.05
TOTAL                    $1.74
CASH                     $1.74
CLERK 1      No.000170   00000
```

MLF0029752

EX. 87-6

Drive Upaur Store
next Door)
Sign s
pes is

my**R**com.

Valley **A** Yellow Pages.

MLF0029753

*Thank you*

El Bajio
3704 W Shields Ave
Fresno, CA 93722
559-277-3644

Date: 11/03/12   Time: 07:22 pm
Order #: 175

Server: Sara38
Guest: 2
Table #: 17
Name:
DINING

| | | |
|---|---|---|
| 1 | CARMELITA'S PLATE | $6.25 |
| 2 | *************** | $0.00 |
| 1 | SMALL COMBO DINNER | $8.99 |
| 1 | SOUP | $0.00 |
| 1 | S/JALAPENOS | $0.50 |
| 1 | COKE | $2.00 |

Sub-total:     $17.74
Tax:     $1.42
Total:     $19.16
Pay This Amount:     $19.16

Recommended Gratuity:
15% = $2.66  18% = $3.19  20% = $3.55

Thank You
Please Come Again

MLF0029747

EX. 87-8

3704 W. Shields Ave.
Fresno, CA 93722
(559) 277-3644

2320 N. Blackstone
Fresno, CA 93703
(559) 227-3101

"Traditional Mariscos Cuisine
and Quality Seafood"

DATE 3/14/2012

AMOUNT 3.78

'El Bajío — Bath
Room
Bad parking, Ramp
comes out into
Drive / Liquor Store
next Doos
S.15 n.s
Doos

my____.com.   Valley △ YellowPages.



MLF0029748

EX. 87-9



| January 2007 | February 2007 |
|---|---|
| S M T W T F S | S M T W T F S |
| 1 2 3 4 5 6 | 1 2 3 |
| 7 8 9 10 11 12 13 | 4 5 6 7 8 9 10 |
| 14 15 16 17 18 19 20 | 11 12 13 14 15 16 17 |
| 21 22 23 24 25 26 27 | 18 19 20 21 22 23 24 |
| 28 29 30 31 | 25 26 27 28 |

**5** Monday 36/329
Anniversary of the Constitution (JA)
week 6

El Bajio Restaurant
Same parking
as Bell Rite
Best Threshold on front

**6** Tuesday 37/328
Door has lip & Door
opens out & hard to
get in . Counter is
Very High to pay Bill

**7** Wednesday 38/327

---

Signs
Ramp into Street
~~to~~ Steep
~~Front~~ Front Doors
Ramp goes
into Accessble

MyYP.com    Valley Yellow Pages.

'El Bajio    Bath
Room
Bad parking, Ramp
comes out into
Drive / TipauStore
next Doors
Signs
Doors

MyYP.com    Valley Yellow Pages.

MLF0051610

EX. 87-10

| March | 2007 | | April | 2007 | | May | 2007 |
| S M T W T F S | | | S M T W T F S | | | S M T W T F S | |

March 2007
S M T W T F S
        1 2 3
4 5 6 7 8 9 10
11 12 13 14 15 16 17
18 19 20 21 22 23 24
25 26 27 28 29 30 31

April 2007
S M T W T F S
1 2 3 4 5 6 7
8 9 10 11 12 13 14
15 16 17 18 19 20 21
22 23 24 25 26 27 28
29 30

May 2007
S M T W T F S
    1 2 3 4 5
6 7 8 9 10 11 12
13 14 15 16 17 18 19
20 21 22 23 24 25 26
27 28 29 30 31


FEB 1-4
2007

Thursday 32/333  1

Friday 33/332  2

3  Saturday 34/331

Sunday 35/330  4

AT·A·GLANCE®

MLF0051611

EX. 87-11

...LIC ACCOMMODATION VISIT QUESTIO... ...E

ADAI No. .

(Facility)

1.  What is the name of the Facility? _____

2.  When did you visit the Facility? _____(Date) _____(Time)

3.  What is the address of the Facility?_____

4.  Was this your first visit to the Facility? _____

5.  How many times have you visited the Facility? _____ If more than one visit, please list the date and time if you know it. _____

6.  What was the purpose of your visit? _____

7.  Who accompanied you to the Facility? _____

8.  What car did you drive to the Facility?_____

9.  Did you drive yourself of did you get a ride from someone else? _____

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _____

11. Was it difficult for you to park there? _____

12. Why? _____

13. How did you unload from your vehicle? _____

14. What side of the vehicle did you unload from? Driver or passenger? _____

15. Did anyone help you to transfer onto your wheelchair? _____

16. What problems did you encounter transferring onto your wheelchair?

    _____

17. Which way did you go from the parking to the entrance of the Facility? _____

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

    _____

19. Did you encounter any problems opening the door? Describe why. _____

20. Did you have any problems inside the Facility? Describe. _____

MLF0029813

EX. 87-12

1. What is the name of the Facility? *Bay Rate,* ~~~~~~

2. When did you visit the Facility? _____ (Date) *3/15/12* (Time) *246 pm*

3. What is the address of the Facility? *3706 Shields Ave*

4. Was this your first visit to the Facility? *No*

5. How many times have you visited the Facility? *4 or 5* If more than one visit, please list the date and time if you
know it. *? 11/05/12*

6. What was the purpose of your visit? *Chew & smokes*

7. Who accompanied you to the Facility? *Lynn*

8. What car did you drive to the Facility? *mine*

9. Did you drive yourself of did you get a ride from someone else? *My self*

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your
vehicle. *H/D parking next to Ramp*

11. Was it difficult for you to park there? *No*

12. Why? _____

13. How did you unload from your vehicle? ~~~~~~ *Rear*

14. What side of the vehicle did you unload from? Driver or passenger? *Driver*

15. Did anyone help you to transfer onto your wheelchair? *N/D*

16. What problems did you encounter transferring onto your wheelchair?
*WAS in the Lane of Traffic No way to get chair
in without Being in car Lane.*

17. Which way did you go from the parking to the entrance of the Facility? *To Right of Ramp*

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
*Ramp goes into Street*

19. Did you encounter any problems opening the door? Describe why. *Treshold @ Doorway*

20. Did you have any problems inside the Facility? Describe. *Counter very High*

MLF0029754

EX. 87-13

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADAI No.
(Facility)

_____

21. What did you purchase (or what meal did you have there). Describe: *Chew + Smokes*

_____

22. Have you used the restroom at the Facility? *No*

23. Why did you need to use the restroom? *No*

24. Did you use the sink? *No*

25. Any problems? *N A*

26. Did you use the urinal? *No*

27. Did you use the toilet? *No*

28. Did you use the toilet paper? *No*

29. Did you use paper towels? *No*

30. Did you use the soap dispenser? *No*

31. Did you have any problem maneuvering inside the restroom? *N/A*

32. Where did you sit? *N/A*

33. Was there any seating provided inside the Facility? *N/A*

34. Was it wheelchair accessible? *No*

35. Where you comfortable at the table? *N/A*

36. Did you use the counter to pay for purchase? *yes*

37. Which counter did you use? *only one*

38. Was the counter accessible? *No very high*

39. Which way did you go after you left the Facility? *to left to Ramp*

40. Any problems getting back to your vehicle? *Ramp into Road No Room to Travel*

41. Any problems transferring from your wheelchair to your vehicle? *yes Ramp put you Right Into the Road in Lane of traffic*

42. If you have any addition information you believe would assist us in evaluating this inquiry.

EX. 87-14

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADAI No. 1399.
(Facility)

1. What is the name of the Facility? _El Bojio_

2. When did you visit the Facility? _3/4/12_ (Date) _____ (Time)

3. What is the address of the Facility? _3704 shields Ave_

4. Was this your first visit to the Facility? _No_

5. How many times have you visited the Facility? _____ If more than one visit, please list the date and time if you know it. _Been There 5 or 6 Times_

6. What was the purpose of your visit? _To Eat_

7. Who accompanied you to the Facility? _Lynn_

8. What car did you drive to the Facility? _mine_

9. Did you drive yourself of did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In Front_

11. Was it difficult for you to park there? _____

12. Why? _____

13. How did you unload from your vehicle? _Rear_

14. What side of the vehicle did you unload from? Driver or passenger? _Drivers_

15. Did anyone help you to transfer onto your wheelchair? _No_

16. What problems did you encounter transferring onto your wheelchair?
_In Street_

17. Which way did you go from the parking to the entrance of the Facility? _Up Ramp to The Right_

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
_Ramp go's into Street_

19. Did you encounter any problems opening the door? Describe why. _Yes opon's out_

20. Did you have any problems inside the Facility? Describe. _Isles small when there p in Rest Room_

MLF0029749

EX. 87-15

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADAI No.
(Facility)

_Bath room_

21. What did you purchase (or what meal did you have there). Describe: _____

22. Have you used the restroom at the Facility? _Yes_

23. Why did you need to use the restroom? _To Go to pee or crap_

24. Did you use the sink? _yes_

25. Any problems? _Sing  High_

26. Did you use the urinal? _No_

27. Did you use the toilet? _yes_

28. Did you use the toilet paper? _yes_

29. Did you use paper towels? _yes_

30. Did you use the soap dispenser? _____

31. Did you have any problem maneuvering inside the restroom? _____

32. Where did you sit? _Most of time Frist table unless it was Being used then I would have to ask to move so I could get by_

33. Was there any seating provided inside the Facility? _Frest Table only_

34. Was it wheelchair accessible? _Some what not Really_

35. Where you comfortable at the table? _Had to sit Bad because poll under table e_

36. Did you use the counter to pay for purchase? _yes why High_

37. Which counter did you use? _only one_

38. Was the counter accessible? _No_

39. Which way did you go after you left the Facility? _Right_

40. Any problems getting back to your vehicle? _Ramp goes into street_

41. Any problems transferring from your wheelchair to your vehicle? _Had to make sure no cars coming so I could put my chair in_

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0029750

EX. 87-16



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 30, 2012

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
Attorney at Law

Marejka Sacks
Paralegal

Ronald Moore
80 N. Hughes
Clovis, CA 93612

Re:    *Receipts*

Dear Mr. Moore:

This letter is to inform you that we have received your request to file lawsuits on your behalf and the receipts you provided for the following Facilities:

1. Kerman Carnitas;
2. Robertito's Taco Shop;
3. Radio Shack;
4. Bob's Liquor;
5. Supercuts;
6. Arco;
7. Smart & Final;
8. Arsenio's Mexican Food;
9. Six Star 76, 1;
10. El Realito De Oro;
11. El Bajio;
12. Buy Rite;
13. Firebaugh Mart, 1;
14. Las Canago Restaurant;
15. Super Burger;
16. City Hart #2;
17. Clovis Fair Deal Liquor Market;
18. Best Buy Liquor;
19. Big Lots;
20. Kings Market;
21. Dollar Tree Stores, Inc;
22. Burger King;
23. Big 5 Sporting Goods #376;
24. Dave's Liquor & Gas;
25. Wendy's Old Fashion Hamburgers Store #437;
26. Airport Liquor;
27. Ross Dress For Less;
28. Bobby Salazar's;
29. Cal-Fresno Oils Union  76 Twin Stations;
30. Das Palas.

MLF0046308

Please be advised that we will investigate the barriers to access encountered by you and advise you within three weeks if we decide to accept these cases.

Thank you for sending us this information. If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Dictated but not read.*
*Sent to avoid delay.*

Tanya Moore
Attorney at Law

TM/mg

MLF0046309





## MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

October 5, 2012

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Ave
Clovis, CA 93701

Re:   ADAI No. 1299
      Buy Rite  ( Facility ), 3706 W. Shields, Fresno CA 93722

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing lawsuit on your behalf against the above referenced facility along with the reciept of purchase you provied.

In order for us to evualuate the inquiry and derermine if you have a cause of action under the  ADA and applicable California statutes we must first obtain information from you regarding the barriers you encountered at the time of your visit to the Facility.  Please complete the quetionaire provided with this letter. Please provide specific details. This information will assist us in in documenting the existence of the barriers at the Facility.

Your complete a prompt response to this questionaire is crucial information that is necessarry. Please be advised that we will not be able to proceed  with this case until we receive the completely filled out questionnaire.

Kindest regarding.

*Tanya Moore*

Tanya Moore
Attorney at Law

TM/ms

Enclosure:    Public Accomodation Visit Questionnaire.

MLF0029812





## MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

November 9, 2012

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ron Moore
80 N. Hughes Ave.
Clovis, CA 93612

Re:   ADAI No. 1399
El Bajio ( Facility ), 3704 W. Shields Ave, Fresno CA 93722

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing lawsuit on your behalf against the above referenced facility along with the reciept of purchase you provied.

In order for us to evualuate the inquiry and derermine if you have a cause of action under the ADA and applicable California statutes we must first obtain information from you regarding the barriers you encountered at the time of your visit to the Facility. Please complete the quetionaire provided with this letter. Please provide specific details. This information will assist us in in documenting the existence of the barriers at the Facility.

Your complete a prompt response to this questionaire is crucial information that is necessarry. Please be advised that we will not be able to proceed with this case until we receive the completely filled out questionnaire.

Kindest regarding.

*Tanya Moore*

Tanya Moore
Attorney at Law

TM/ms

Enclosure:    Public Accomodation Visit Questionnaire.

MLF0029814



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

September 10, 2012

**K. RANDOLPH MOORE**
*ESQUIRE*
*AND FOUNDER*

**Tanya E. Moore**
*Attorney at Law*

**Marejka Sacks**
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

Re: Buy Rite

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facilities. If you visit the facilities again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for these matters. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

Tanya Moore

Tanya Moore
Attorney at Law

MLF0029817

EX. 87-21

**Whitney Law**

| | |
|---|---|
| **From:** | Whitney Law |
| **Sent:** | Friday, March 08, 2013 9:09 AM |
| **To:** | ronmoore441@gmail.com |
| **Subject:** | Buy Rite and El Bajio |
| **Attachments:** | ADA Complaint.pdf; Verification Moore.pdf |

Dear Mr. Moore:

Attached for your review is a Complaint in your claim against Buy Rite and El Bajio for your review prior to filing. Please specifically review Paragraph 10 for factual accuracy and give me a call if we need to make any changes.

As you know, you are required by law to now sign a verification that will be attached to every complaint we file on your behalf. If the Complaint is factually accurate, please **sign AND date** the attached Verification then scan or fax it back to us at your earliest convenience so that we may file your claim as soon as possible.

Thank you,

Whitney Law
Paralegal
**Moore Law Firm, P.C.**
332 North Second Street
San Jose, California 95112
(408) 298-2000 Extension 238
(408) 298-6046 Facsimile
whitney@moorelawfirm.com

MLF0029818

EX. 87-22

1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: tanya@moorelawfirm.com

5  Attorneys for Plaintiff
   RONALD MOORE
6

7

8                   UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11  RONALD MOORE,                        )  No.
                                         )
12              Plaintiff,               )  COMPLAINT ASSERTING DENIAL OF
                                         )  RIGHT OF ACCESS UNDER
13       vs.                             )  AMERICANS WITH DISABILITIES ACT
                                         )  FOR INJUNCTIVE RELIEF,
14  PARAMJIT SINGH, individually and dba )  DECLARATORY RELIEF, DAMAGES,
    BUY RITE LIQUORS; RAVINDER SINGH;    )  ATTORNEYS' FEES AND COSTS (ADA)
15  JOSE LUIS SERRANO, dba EL BAJIO      )
    RESTAURANT;                          )
16                                       )
                                         )
17              Defendants.              )
                                         )
18  _____)

19                        I. SUMMARY

20       1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

21  discrimination at the building, structure, facility, complex, property, land, development,

22  and/or surrounding business complex known as:

23              a)    Buy Rite Liquors
24                    3706 West Shields Avenue
                      Fresno, CA 93722
25                    (hereafter "the Buy Rite Facility")

26              b)    El Bajio Restaurant
27                    3704 West Shields Avenue
                      Fresno, CA 93722
28                    (hereafter "the El Bajio Facility")

*Ronald Moore v. Paramjit Singh, et al.*                    Complaint

                            Page 1

1 (hereafter collectively "the Facilities")

2     2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

3 costs, against PARAMJIT SINGH, individually and dba BUY RITE LIQUORS;

4 RAVINDER SINGH; JOSE LUIS SERRANO, dba EL BAJIO RESTAURANT (hereinafter

5 collectively referred to as "Defendants"), pursuant to the Americans with Disabilities Act of

6 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.   JURISDICTION

7

8     3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

9 ADA claims.

10     4.    Supplemental jurisdiction for claims brought under parallel California law –

11 arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

12     5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

13

14     6.    All actions complained of herein take place within the jurisdiction of the

15 United States District Court, Eastern District of California, and venue is invoked pursuant to

16 28 U.S.C. § 1391(b), (c).

## IV.   PARTIES

17

18     7.    Defendants own, operate, and/or lease the Facilities, and consist of a person

19 (or persons), firm, and/or corporation.

20     8.    Plaintiff requires the use of a wheelchair when traveling about in public.

21 Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

22 United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

23

24     9.    The Facilities are public accommodation facilities, open to the public, which

25 are intended for nonresidential use and whose operation affects commerce.

26     10.    Plaintiff visited the Facilities and encountered barriers (both physical and

27 intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

28 goods, services, privileges and accommodations offered at the Facilities. Plaintiff personally

_Ronald Moore v. Paramjit Singh, et al._                     Complaint

MLF0029820

EX. 87-24

encountered the following barriers at the Facilities during Plaintiff's visits to the Facilities:

a)    During Plaintiff's visits to the Buy Rite Facility on or about March 15, 2012, November 5, 2012, and January 11, 2013, Plaintiff encountered the following barriers:

    1)    There was a raised threshold at the entrance to the Buy Rite Facility which made it difficult for Plaintiff to maneuver his wheelchair through the doorway.

    2)    The cashier counter at the Buy Rite Facility was extremely high, making it difficult for Plaintiff to reach up from his wheelchair to hand payment to the cashier.

b)    During Plaintiff's visits to the El Bajio Facility on or about March 14, 2012 and November 3, 2012, Plaintiff encountered the following barriers:

    1)    The aisles within the El Bajio Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver his wheelchair through the restaurant to reach the counter and tables. Plaintiff was forced to ask other customers to move out of the way so that he could fit his wheelchair through the aisles.

    2)    Plaintiff was unable to locate an accessible table at the El Bajio Facility and was forced to sit at a table which had a pole underneath the table preventing Plaintiff from pulling his wheelchair all the way up to the table. Plaintiff was forced to sit far away from the table for the duration of his meal, which was uncomfortable.

    3)    The sink in the restroom at the El Bajio Facility was too high, making it difficult for Plaintiff to reach up from his wheelchair to wash his hands.

MLF0029821

EX. 87-25

1    4)  The cashier counter at the El Bajio Facility was extremely high,

2       making it difficult for Plaintiff to reach up from his wheelchair to

3       hand payment to the cashier.

4   c)  During each of Plaintiff's visits to the Facilities as aforesaid, Plaintiff

5     encountered the following barriers:

6    1)  The designated accessible space in front of the Facilities was

7       extremely short, such that when Plaintiff transferred to and from

8       his wheelchair at the rear of his vehicle he was positioned in the

9       path of traffic within the parking lot.

10    2)  The ramp from the parking lot to the sidewalk in front of the

11       Facilities extends down into the access aisle and lacks protected

12       edges, making it difficult for Plaintiff to maneuver his

13       wheelchair up and down the ramp. When Plaintiff traveled down

14       the ramp towards his vehicle, he could not control the speed of

15       his wheelchair down the ramp and came quickly down into the

16       path of traffic within the parking lot.

17   11.  The barriers identified in paragraph 10 herein are only those that Plaintiff

18 personally encountered.  Plaintiff is presently unaware of other barriers which may in fact

19 exist at the Facilities and relate to his disabilities.  Plaintiff will seek to amend this Complaint

20 once such additional barriers are identified as it is Plaintiff's intention to have all barriers

21 which exist at the Facilities and relate to his disabilities removed to afford him full and equal

22 access.

23   12.  Plaintiff was, and continues to be, deterred from visiting the Facilities because

24 Plaintiff knows that the Facilities' goods, services, facilities, privileges, advantages, and

25 accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

26 Plaintiff enjoys the goods and services offered at the Facilities, and will return to the

27 Facilities once the barriers are removed.

28   13.  Defendants knew, or should have known, that these elements and areas of the

*Ronald Moore v. Paramjit Singh, et al.*           Complaint

MLF0029822

EX. 87-26

Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facilities (without much difficulty or expense), and make the Facilities accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14. At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facilities to remove impediments to wheelchair access and to comply with the 2010 Standards for Accessible Design and the California Code of Regulations Title 24. Defendants have not removed such impediments and have not modified the Facilities to conform to accessibility standards. Defendants have intentionally maintained the Facilities in their current condition and have intentionally refrained from altering the Facilities so that they comply with the accessibility standards.

15. Plaintiff further alleges that the (continued) presence of barriers at the Facilities is so obvious as to establish Defendants discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facilities; conscientious decision to maintain the architectural layout (as it currently exists) at the Facilities; decision not to remove barriers from the Facilities; and allowance that Defendants' property continues to exist in its non-compliance state. Plaintiff further alleges, on information and belief, that the Facilities are not in the midst of a remodel, and that the barriers present at the Facilities are not isolated (or temporary) interruptions in access due to maintenance or repairs.

VI. FIRST CLAIM

Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

16. Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

*Ronald Moore v. Paramjit Singh, et al.*                                           Complaint

Page 5

MLF0029823

EX. 87-27

1      17.    Title III of the ADA holds as a "general rule" that no individual shall be

2 discriminated against on the basis of disability in the full and equal enjoyment (or use) of

3 goods, services, facilities, privileges, and accommodations offered by any person who owns,

4 operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

5      18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

6 enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

7 Facilities during each visit and each incident of deterrence.

8 <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

9      19.    The ADA specifically prohibits failing to remove architectural barriers, which

10 are structural in nature, in existing facilities where such removal is readily achievable. 42

11 U.S.C. § 12182(b)(2)(A)(iv).

12      20.    When an entity can demonstrate that removal of a barrier is not readily

13 achievable, a failure to make goods, services, facilities, or accommodations available through

14 alternative methods is also specifically prohibited if these methods are readily achievable.

15 <u>Id</u>. § 12182(b)(2)(A)(v).

16      21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

17 barriers at the Facilities without much difficulty or expense, and that Defendants violated the

18 ADA by failing to remove those barriers, when it was readily achievable to do so.

19      22.    In the alternative, if it was not "readily achievable" for Defendants to remove

20 the Facilities' barriers, then Defendants violated the ADA by failing to make the required

21 services available through alternative methods, which are readily achievable.

22 <u>Failure to Design and Construct an Accessible Facility</u>

23      23.    Plaintiff alleges on information and belief that the Facilities were designed

24 and constructed (or both) after January 26, 1992 – independently triggering access

25 requirements under Title III of the ADA.

26      24.    The ADA also prohibits designing and constructing facilities for first

27 occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

28 with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

MLF0029824

25. Here, Defendants violated the ADA by designing and constructing (or both) the Facilities in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

26. Plaintiff alleges on information and belief that the Facilities were modified after January 26, 1992, independently triggering access requirements under the ADA.

27. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28. Here, Defendants altered the Facilities in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

29. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30. Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facilities, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31. Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32. Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil

---

[1] General under either state or federal statues

*Ronald Moore v. Paranjit Singh, et al.*                                          Complaint

MLF0029825

EX. 87-29

1  Rights Act or Disabled Persons Act.

2  **VII.   SECOND CLAIM**

3  **Unruh Act**

4  33.   Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

5  this claim.

6  34.   California Civil Code § 51 states, in part, that:  All persons within the

7  jurisdiction of this state are entitled to the full and equal accommodations, advantages,

8  facilities, privileges, or services in all business establishments of every kind whatsoever.

9  35.   California Civil Code § 51.5 also states, in part that:  No business

10  establishment of any kind whatsoever shall discriminate against any person in this state

11  because of the disability of the person.

12  36.   California Civil Code § 51(f) specifically incorporates (by reference) an

13  individual's rights under the ADA into the Unruh Act.

14  37.   Defendants' aforementioned acts and omissions denied the physically

15  disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

16  privileges and services in a business establishment (because of their physical disability).

17  38.   These acts and omissions (including the ones that violate the ADA) denied,

18  aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

19  39.   Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

20  minimum damages of four thousand dollars ($4,000) for each offense.

21  40.   Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

22  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

23  § 52(a).

24  **VIII. THIRD CLAIM**

25  **Denial of Full and Equal Access to Public Facilities**

26  41.   Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

27  this claim.

28  42.   Health and Safety Code § 19955(a) states, in part, that:  California public

*Ronald Moore v. Paramjit Singh, et al.*                                    Complaint

MLF0029826

EX. 87-30

1  accommodations or facilities (built with private funds) shall adhere to the provisions of
2  Government Code § 4450.

3      43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-
4  exempt) public accommodation constructed prior to July 1, 1970, which is altered or
5  structurally repaired, is required to comply with this chapter.

6      44.    Plaintiff alleges the Facilities are public accommodations constructed, altered,
7  or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government
8  Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code
9  § 19956.

10      45.    Defendants' non-compliance with these requirements at the Facilities
11  aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities.
12  Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety
13  Code § 19953.

14      IX.    **PRAYER FOR RELIEF**

15      WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

16      1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

17      2.    Declaratory relief that Defendants violated the ADA for the purposes of
18  Unruh Act damages.

19      3.    Statutory minimum damages under section 52(a) of the California Civil Code
20  according to proof.

21      4.    Attorneys' fees, litigation expense, and costs of suit.[2]

22      5.    Interest at the legal rate from the date of the filing of this action.

23      6.    For such other and further relief as the Court deems proper.

24  //
25  //
26  //
27
28
_____
[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Ronald Moore v. Paramjit Singh, et al.*                          Complaint

MLF0029827

EX. 87-31

1  Dated: March 8, 2013                    MOORE LAW FIRM, P.C.

2                                          /s/ Tanya E. Moore

3                                          Tanya E. Moore

4                                          Attorneys for Plaintiff,
                                           Ronald Moore
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Ronald Moore v. Paramjit Singh, et al.*                    Complaint

MLF0029828

EX. 87-32

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:_____        _____
                                                    Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

/s/ Tanya E. Moore
Tanya E. Moore, Attorney for
Plaintiff, Ronald Moore

*Ronald Moore v. Paramjit Singh, et al.*

MLF0029829



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

March 12, 2013

Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

    **Re:**    **ADAI No. 01399**
            ***Ronald Moore v. Paramjit Singh, et al.***
            **Case No. 1:13-cv-00351-LJO-SMS**

Dear Mr. Moore:

Enclosed please find a copy of the filed Complaint in the above-captioned matter for your records.

Sincerely,

Whitney Law
Paralegal

Enclosures

MLF0029832

1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: tanya@moorelawfirm.com

5  Attorneys for Plaintiff
   RONALD MOORE

6

7

8                  UNITED STATES DISTRICT COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10

11  RONALD MOORE,                    ) No.
                                     )
12             Plaintiff,            ) COMPLAINT ASSERTING DENIAL OF
                                     ) RIGHT OF ACCESS UNDER
13     vs.                           ) AMERICANS WITH DISABILITIES ACT
                                     ) FOR INJUNCTIVE RELIEF,
14  PARAMJIT SINGH, individually and dba ) DECLARATORY RELIEF, DAMAGES,
    BUY RITE LIQUORS; RAVINDER SINGH; ) ATTORNEYS' FEES AND COSTS (ADA)
15  JOSE LUIS SERRANO, dba EL BAJIO   )
    RESTAURANT;                       )
16                                    )
                                      )
17             Defendants.            )
                                      )
18  _____ )

19                        I. SUMMARY

20      1.      This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

21  discrimination at the building, structure, facility, complex, property, land, development,

22  and/or surrounding business complex known as:

23          a)    Buy Rite Liquors
24                3706 West Shields Avenue
                  Fresno, CA 93722
25                (hereafter "the Buy Rite Facility")

26          b)    El Bajio Restaurant
27                3704 West Shields Avenue
                  Fresno, CA 93722
28                (hereafter "the El Bajio Facility")

_Ronald Moore v. Paramjit Singh, et al._                    Complaint

                            Page 1

MLF0029833

1   (hereafter collectively "the Facilities")

2       2.      Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

3   costs, against PARAMJIT SINGH, individually and dba BUY RITE LIQUORS;

4   RAVINDER SINGH; JOSE LUIS SERRANO, dba EL BAJIO RESTAURANT (hereinafter

5   collectively referred to as "Defendants"), pursuant to the Americans with Disabilities Act of

6   1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

7                          II.     JURISDICTION

8       3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

9   ADA claims.

10      4.      Supplemental jurisdiction for claims brought under parallel California law –

11  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

12      5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

13                          III.    VENUE

14      6.      All actions complained of herein take place within the jurisdiction of the

15  United States District Court, Eastern District of California, and venue is invoked pursuant to

16  28 U.S.C. § 1391(b), (c).

17                          IV.     PARTIES

18      7.      Defendants own, operate, and/or lease the Facilities, and consist of a person

19  (or persons), firm, and/or corporation.

20      8.      Plaintiff requires the use of a wheelchair when traveling about in public.

21  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

22  United States laws, and a member of the public whose rights are protected by these laws.

23                          V.      FACTS

24      9.      The Facilities are public accommodation facilities, open to the public, which

25  are intended for nonresidential use and whose operation affects commerce.

26      10.     Plaintiff visited the Facilities and encountered barriers (both physical and

27  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

28  goods, services, privileges and accommodations offered at the Facilities.  Plaintiff personally

*Ronald Moore v. Paramjit Singh, et al.*                                    Complaint

MLF0029834

EX. 87-36

1   encountered the following barriers at the Facilities during Plaintiff's visits to the Facilities:

2           a)      During Plaintiff's visits to the Buy Rite Facility on or about March 15,

3                     2012, November 5, 2012, and January 11, 2013, Plaintiff encountered

4                     the following barriers:

5                     1)     There was a raised threshold at the entrance to the Buy Rite

6                             Facility which made it difficult for Plaintiff to maneuver his

7                             wheelchair through the doorway.

8                     2)     The cashier counter at the Buy Rite Facility was extremely high,

9                             making it difficult for Plaintiff to reach up from his wheelchair to

10                            hand payment to the cashier.

11          b)      During Plaintiff's visits to the El Bajio Facility on or about March 14,

12                    2012 and November 3, 2012, Plaintiff encountered the following

13                    barriers:

14                    1)     The aisles within the El Bajio Facility lacked necessary

15                            wheelchair clearances, making it difficult for Plaintiff to

16                            maneuver his wheelchair through the restaurant to reach the

17                            counter and tables. Plaintiff was forced to ask other customers to

18                          move out of the way so that he could fit his wheelchair through

19                            the aisles.

20                    2)     Plaintiff was unable to locate an accessible table at the El Bajio

21                          Facility and was forced to sit at a table which had a pole

22                          underneath the table preventing Plaintiff from pulling his

23                          wheelchair all the way up to the table. Plaintiff was forced to sit

24                        far away from the table for the duration of his meal, which was

25                        uncomfortable.

26                    3)     The sink in the restroom at the El Bajio Facility was too high,

27                          making it difficult for Plaintiff to reach up from his wheelchair to

28                          wash his hands.

*Ronald Moore v. Paramjit Singh, et al.*                  Complaint

MLF0029835

EX. 87-37

       4)     The cashier counter at the El Bajio Facility was extremely high, making it difficult for Plaintiff to reach up from his wheelchair to hand payment to the cashier.

   c)   During each of Plaintiff's visits to the Facilities as aforesaid, Plaintiff encountered the following barriers:

       1)     The designated accessible space in front of the Facilities was extremely short, such that when Plaintiff transferred to and from his wheelchair at the rear of his vehicle he was positioned in the path of traffic within the parking lot.

       2)     The ramp from the parking lot to the sidewalk in front of the Facilities extends down into the access aisle and lacks protected edges, making it difficult for Plaintiff to maneuver his wheelchair up and down the ramp. When Plaintiff traveled down the ramp towards his vehicle, he could not control the speed of his wheelchair down the ramp and came quickly down into the path of traffic within the parking lot.

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered.  Plaintiff is presently unaware of other barriers which may in fact exist at the Facilities and relate to his disabilities.  Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facilities and relate to his disabilities removed to afford him full and equal access.

12.    Plaintiff was, and continues to be, deterred from visiting the Facilities because Plaintiff knows that the Facilities' goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facilities, and will return to the Facilities once the barriers are removed.

13.    Defendants knew, or should have known, that these elements and areas of the

*Ronald Moore v. Paramjit Singh, et al.*                                                   Complaint

MLF0029836

EX. 87-38

1  Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access
2  to the physically disabled.  Moreover, Defendants have the financial resources to remove
3  these barriers from the Facilities (without much difficulty or expense), and make the
4  Facilities accessible to the physically disabled.  To date, however, Defendants refuse to either
5  remove those barriers or seek an unreasonable hardship exemption to excuse non-
6  compliance.

7        14.    At all relevant times, Defendants have possessed and enjoyed sufficient
8  control and authority to modify the Facilities to remove impediments to wheelchair access
9  and to comply with the 2010 Standards for Accessible Design and the California Code of
10  Regulations Title 24.  Defendants have not removed such impediments and have not
11  modified the Facilities to conform to accessibility standards.  Defendants have intentionally
12  maintained the Facilities in their current condition and have intentionally refrained from
13  altering the Facilities so that they comply with the accessibility standards.

14        15.    Plaintiff further alleges that the (continued) presence of barriers at the
15  Facilities is so obvious as to establish Defendants discriminatory intent.  On information and
16  belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal
17  to adhere to relevant building standards; disregard for the building plans and permits issued
18  for the Facilities; conscientious decision to maintain the architectural layout (as it currently
19  exists) at the Facilities; decision not to remove barriers from the Facilities; and allowance
20  that Defendants' property continues to exist in its non-compliance state.  Plaintiff further
21  alleges, on information and belief, that the Facilities are not in the midst of a remodel, and
22  that the barriers present at the Facilities are not isolated (or temporary) interruptions in access
23  due to maintenance or repairs.

24                          VI.    FIRST CLAIM
25                   **Americans with Disabilities Act of 1990**
26                   <u>Denial of "Full and Equal" Enjoyment and Use</u>
27        16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for
28  this claim.

*Ronald Moore v. Paramjit Singh, et al.*                          Complaint

MLFO0029837

EX. 87-39

1       17.    Title III of the ADA holds as a "general rule" that no individual shall be

2 discriminated against on the basis of disability in the full and equal enjoyment (or use) of

3 goods, services, facilities, privileges, and accommodations offered by any person who owns,

4 operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

5       18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

6 enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

7 Facilities during each visit and each incident of deterrence.

8               Failure to Remove Architectural Barriers in an Existing Facility

9       19.    The ADA specifically prohibits failing to remove architectural barriers, which

10 are structural in nature, in existing facilities where such removal is readily achievable. 42

11 U.S.C. § 12182(b)(2)(A)(iv).

12       20.    When an entity can demonstrate that removal of a barrier is not readily

13 achievable, a failure to make goods, services, facilities, or accommodations available through

14 alternative methods is also specifically prohibited if these methods are readily achievable.

15 Id. § 12182(b)(2)(A)(v).

16       21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

17 barriers at the Facilities without much difficulty or expense, and that Defendants violated the

18 ADA by failing to remove those barriers, when it was readily achievable to do so.

19       22.    In the alternative, if it was not "readily achievable" for Defendants to remove

20 the Facilities' barriers, then Defendants violated the ADA by failing to make the required

21 services available through alternative methods, which are readily achievable.

22               Failure to Design and Construct an Accessible Facility

23       23.    Plaintiff alleges on information and belief that the Facilities were designed

24 and constructed (or both) after January 26, 1992 – independently triggering access

25 requirements under Title III of the ADA.

26       24.    The ADA also prohibits designing and constructing facilities for first

27 occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals

28 with disabilities when it was structurally practicable to do so.  42 U.S.C. § 12183(a)(1).

MLF0029838

EX. 87-40

25.   Here, Defendants violated the ADA by designing and constructing (or both) the Facilities in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

26.   Plaintiff alleges on information and belief that the Facilities were modified after January 26, 1992, independently triggering access requirements under the ADA.

27.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.   Here, Defendants altered the Facilities in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

29.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.   Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facilities, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.   Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.   Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil

---

[1] General under either state or federal statues

*Ronald Moore v. Paramjit Singh, et al.*                    Complaint

MLF0029839

EX. 87-41

1    Rights Act or Disabled Persons Act.

2                    **VII.    SECOND CLAIM**

3                         **Unruh Act**

4         33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

5    this claim.

6         34.    California Civil Code § 51 states, in part, that:  All persons within the

7    jurisdiction of this state are entitled to the full and equal accommodations, advantages,

8    facilities, privileges, or services in all business establishments of every kind whatsoever.

9         35.    California Civil Code § 51.5 also states, in part that:  No business

10    establishment of any kind whatsoever shall discriminate against any person in this state

11    because of the disability of the person.

12         36.    California Civil Code § 51(f) specifically incorporates (by reference) an

13    individual's rights under the ADA into the Unruh Act.

14         37.    Defendants' aforementioned acts and omissions denied the physically

15    disabled public – including Plaintiff -- full and equal accommodations, advantages, facilities,

16    privileges and services in a business establishment (because of their physical disability).

17         38.    These acts and omissions (including the ones that violate the ADA) denied,

18    aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

19         39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

20    minimum damages of four thousand dollars ($4,000) for each offense.

21         40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

22    ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

23    § 52(a).

24                    **VIII. THIRD CLAIM**

25            **Denial of Full and Equal Access to Public Facilities**

26         41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

27    this claim.

28         42.    Health and Safety Code § 19955(a) states, in part, that:  California public

*Ronald Moore v. Paramjit Singh, et al.*                                    Complaint

MLF0029840

EX. 87-42

1   accommodations or facilities (built with private funds) shall adhere to the provisions of

2   Government Code § 4450.

3       43.   Health and Safety Code § 19959 states, in part, that:  Every existing (non-

4   exempt) public accommodation constructed prior to July 1, 1970, which is altered or

5   structurally repaired, is required to comply with this chapter.

6       44.   Plaintiff alleges the Facilities are public accommodations constructed, altered,

7   or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

8   Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code

9   § 19956.

10      45.   Defendants' non-compliance with these requirements at the Facilities

11  aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities.

12  Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety

13  Code § 19953.

14          **IX.   PRAYER FOR RELIEF**

15      WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

16      1.   Injunctive relief, preventive relief, or any other relief the Court deems proper.

17      2.   Declaratory relief that Defendants violated the ADA for the purposes of

18  Unruh Act damages.

19      3.   Statutory minimum damages under section 52(a) of the California Civil Code

20  according to proof.

21      4.   Attorneys' fees, litigation expense, and costs of suit.[2]

22      5.   Interest at the legal rate from the date of the filing of this action.

23      6.   For such other and further relief as the Court deems proper.

24  //

25  //

26  //

27

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Ronald Moore v. Paramjit Singh, et al.*                                    Complaint

Page 9

MLF0029841

1  Dated: March 8, 2013                              MOORE LAW FIRM, P.C.

2
                                                     /s/ Tanya E. Moore
3                                                    Tanya E. Moore
                                                     Attorneys for Plaintiff,
4                                                    Ronald Moore

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_Ronald Moore v. Paramjit Singh, et al._                              Complaint

MLF0029842

EX. 87-44

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 3/8/13

Ronald Moore

Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

/s/ Tanya E. Moore
Tanya E. Moore, Attorney for
Plaintiff, Ronald Moore

*Ronald Moore v. Paramjit Singh, et al.*

MLF0029843

EX. 87-45

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: _3/8/13_                           _Ronald Moore_
                                          Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                          _/s/ Tanya E. Moore_
                                          Tanya E. Moore, Attorney for
                                          Plaintiff, Ronald Moore

*Ronald Moore v. Paramjit Singh, et al.*

MLF0029831

EX. 87-46

# Exhibit 88

ERNIE'S LIQUORS
559 B____RD AVE
559        2244

DATE 03/2_  FRI  TIME 16:31
  1  SODA 2 LITER BTL  4X1 $1.99
  1  CRV               4X1 $0.10
     TAX1 AMT               $0.18
     TOTAL             $2.27
     CASH              $5.00
     CHANGE                $2.73
EMPLOYEE1  NO.000242  REG 01

THANK YOU

MLF0054491

EX. 88-2

# ERNies Store

When in to store the door opened outward so hard to get in Askes were small I Ran into a Rack and knocked Down a Bag of chips And Ran over then there when I went to pay I guess I knocked down a Bag of seeds on Rack in the way Guy told Ronny to pick them up I ask him why did he have him pick those up he said you knocked them over I said If there was enough Room I would not have hit it he said Ruck Just leave I wanted to get Lottry said I have customers So I said Ok then tell your customer to move out of the way so I can get out of Here Because there No other way I can get out of Here So every Body moved and I was Leaving and I Run into the Rack again Running on the Bay of pig skins poping the Bag Then when I open ching the Door some guy opend it for me the I Just went Right out the Door Down the side wa lk then off the curb Face First into the street I could not get up then a corpe of guys and Ronny Helped me up And the guy said he was sorry

MLF0054492

EX. 88-3

I told him it was not his fault it
was the side wow gos streight down
I did not have a chance to stop or
even slow down all I know is that
I was face first in the street I
asked his name he asked way I said
they need to fix that then he showe
me his Nurse's card and said
your right thats why wrong and
got a name of another guy from
~~~~~~~~~ me Ed's pizza place
Name Fredly I think ph# 313 52 96
? John Nurse 307 2303

Ernies Discount Liquor & cigretts
in parking lot of minnnewawa &
Bullard

I hurt both of my shoulders
and the right side of my hip real
Bad and shoulder real Bad and wrist
and Banged up my right arm and
my right knee where I had surgery
and I H A face Also it was
not a very fun trip to the store

MLF0054493

EX. 88-4



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER
September 28, 2010

Tanya E. Moore
*Attorney at Law*

Martha H. Alvizo
*Paralegal*

Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

Re:  *Foster Freeze in Reedley, Ernie's Liquor, Bobby Salazar's and Doughnuts to Go*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review this document and keep it for your records. Please sign the signature page where indicated and return to our office in the enclosed envelope. **In addition to your signature page, please send the return receipts from the letters sent via certified mail to the defendants in this case, if any.**

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated, not read.*
*Sent in Mrs. Moore's absence*
*to avoid delay.*

Tanya Moore
Attorney at Law

MLF0054494

EX. 88-5

# Exhibit 89

```
HANDI STOP          05/20/14      17:44
2B006846103001       04570          008570
                       MC
                              AUTH  086662
MERCH     FUEL QTY  FUEL PRICE  FUEL TOT
    4.24  10.2338    3.909         40.00
PUMP 3   UNLD
MISC     CASHBACK      TAX       TOTAL
  0.00     0.00       0.25        44.49


SIGNATURE:_____

I WILL PAY THE TOTAL, ACCORDING TO THE
AGREEMENT WITH THE CARD ISSUER.
```

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? Handi Stop

2. When did you visit the Facility? 5/20/14 (Date) 5:40 (Time)

3. What is the address of the Facility? 1919 W. Clinton Ave. Fresno CA

4. Was this your first visit to the Facility? NO

5. How many times have you visited the Facility? ? If more than one visit, please list the date and time if you know it. ?

6. What was the purpose of your visit? Gas and drink

7. Who accompanied you to the Facility? Grandson Ronny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself of did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. At pump #3

11. Was it difficult for you to park there? Yes

12. Why? No parking, signs, or route of travel

13. How did you unload from your vehicle? Rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? Grandson Ronny

16. What problems did you encounter transferring onto your wheelchair?

Pavement is uneven and cracked

17. Which way did you go from the parking to the entrance of the Facility? CLC cross street up ramp to door

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

Yes gas lids sticking up in grand and ramp steep

19. Did you encounter any problems opening the door? Describe why. Yes door way was narra

20. Did you have any problems inside the Facility? Describe. Yes

EX. 89-3

fountain drinks were high and isles were too narrow to get down grandson had to get Me. drink

21. What did you purchase (or what meal did you have there). Describe: Gas and drink

22. Have you used the restroom at the Facility? N/A

23. Why did you need to use the restroom? N/A

24. Did you use the sink? N/A

25. Any problems? N/A

26. Did you use the urinal? N/A

27. Did you use the toilet? N/A

28. Did you use the toilet paper? N/A

29. Did you use paper towels? N/A

30. Did you use the soap dispenser? N/A

31. Did you have any problem maneuvering inside the restroom? N/A

32. Where did you sit? N/A

33. Was there any seating provided inside the Facility? N/A

34. Was it wheelchair accessible? NO

35. Where you comfortable at the table? N/A

36. Did you use the counter to pay for purchase? Yes

37. Which counter did you use? only one

38. Was the counter accessible? No too high grandson had to sign reciept

39. Which way did you go after you left the Facility? down ramp too car

40. Any problems getting back to your vehicle? Yes no route of travel, pavement was cracked and had gas lids in it

41. Any problems transferring from your wheelchair to your vehicle? no grandson brought Me to door and put chair in car

42. If you have any additional information you believe would assist us in evaluating this inquiry.

EX. 89-4



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Martha H. Alvizo
*Paralegal*

September 10, 2010

Mr. Ronald Moore
80 N. Hughes Ave
Clovis, CA 93612

Re: *El Pueblito Restaurant, BJ'S Kountry Kitchen, Burger King, Chapala Mexican Restaurant, Chile My Corona, Clovis 8, El Gran Rodeo, Donut Shop, Mateos, Donut Nation, DQ Cakes, Los Banos Donuts, Fajita Fiesta, Fresh & Easy, Fosters Freeze, Ihop, Handi Stop, Joes Steakhouse, Kwik Serve Mkt, La Nobleza, My Slice Pizza, K & C, McDonalds, Rite Aid, Robertitos, Ryan's Place, SaveMart, Susie's Deals, Subway, Shushi and Sake Bar, Smokehouse, Supercuts, Royal Palace, Tahoe's Joe's, The Original, Valli Gas, Yogurt.*

Dear Mr. Moore:

This letter is to inform you that we have received your request to file a lawsuit on your behalf against the above-referenced facility along with the receipt of purchase you provided. Please be advised that we will investigate the barriers to access encountered by you and advise you within three weeks if we decide to accept this case.

Thank you for sending us this information. If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya Moore
Attorney at Law

TM/ma

MLF0046737

EX. 89-5



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

June 11, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:   ADAI No.   02012
        *Handy Stop (1919 W. Clinton Ave, Fresno)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0056337

EX. 89-6

**BARRIER MEMO**

ADAI No. :     02012

Case Name:    Moore v. Handy Stop

Address:      1919 W. Clinton Ave, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---------|-------------|------------------------------|
| No accessible parking | Plaintiff was unable to locate a designated accessible parking space at the Facility and had to park at the pump instead. From there, he could not locate a designated accessible route of travel to reach the building entrance. | Yes |
| Route to entrance cracked, uneven | The route from Plaintiff's vehicle to the entrance was cracked, uneven, and had metal plates on the ground which made it difficult for him to maneuver. | Yes |
| Ramp steep | The ramp from the parking lot to the sidewalk leading to the building entrance was steep and difficult for Plaintiff to ascend. | Yes |
| Doorway narrow | The building entrance lacked necessary wheelchair clearance and it was difficult for Plaintiff to maneuver through the doorway. | Yes |
| Aisles narrow | The aisles inside the Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver around inside the store. Plaintiff was unable to travel down some of the aisles at all. | Yes |
| Fountain drinks too high | The self-serve soda dispenser was positioned too high for Plaintiff to reach. His grandson had to get a soda for him. | Yes |
| Counter high | The transaction counter was too high and Plaintiff could not reach up to sign his receipt. His grandson signed it for him. | Yes |

1

MLF0056327

EX. 89-7



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 2, 2014

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE: **ADAI No.     02012**
    **Singh (Handi Stop #9)**
    *1919 W. Clinton Ave, Fresno, CA*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure: Fee Agreement

MLF0056328

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
332 N. Second Street
San Jose, CA 95112
(408) 298-2000

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Singh (Handi Stop #9).**

DATE: _____

_____
CLIENT'S SIGNATURE- RONALD MOORE

_____
ADDRESS

_____
CITY

_____
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR RONALD MOORE

MLF0056329

EX. 89-9

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

THIS AGREEMENT, made this _____ at **San Jose, CA**, by and between <u>Ronald Moore</u>, hereinafter designated as "Client," and **the Moore Law Firm, PC**, hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case against ***Singh (Handi Stop #9)*** and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

MLF0056330

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0056331

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

## FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)     Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)     Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)     In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)     In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0056332

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, no fees will be charged to Client          .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0056333

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0056334

EX. 89-14

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial            _____Initial

MLF0056335

DATE:_____

CLIENT'S SIGNATURE
_____

DATE:_____

CLIENT'S NAME
_____

ADDRESS
_____

CITY
_____

TELEPHONE
_____

MY WITNESS(S) ARE_____
(if none please indicate so)


DATE:_____

MOORE LAW FIRM, PC


ATTORNEY FOR RONALD MOORE
_____

MLF0056336

EX. 89-16

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>        Plaintiff,<br><br>    vs.<br><br>BALWINDER SINGH dba HANDI STOP #9;<br>JASPINDER SINGH dba HANDI STOP #9;<br>MANJIT SINGH dba HANDI STOP #9;<br>AJIT SINGH GILL;<br><br>        Defendants.<br>_____ | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1. This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Handi Stop #9
> 1919 West Clinton Avenue
> Fresno, CA 93705
> (hereafter "the Facility")

2. Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against BALWINDER SINGH dba HANDI STOP #9; JASPINDER SINGH dba

HANDI STOP #9; MANJIT SINGH dba HANDI STOP #9; and AJIT SINGH GILL (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II. JURISDICTION

3.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.     Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.     Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III. VENUE

6.     All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV. PARTIES

7.     Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.     Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V. FACTS

9.     The Facility is a public accommodation facility, open to the public, which is intended for nonresidential use and whose operation affects commerce.

10.    Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or about May 20, 2014:

a)     Plaintiff was unable to locate a designated accessible parking space at

1     the Facility and was forced to park at the gas pump while he went into

2     the Facility store.

3         b)     The route from Plaintiff's vehicle to the building entrance was cracked,

4                 uneven, and had metal plates on the ground which made it difficult for

5                 him to maneuver.

6         c)     The ramp from the parking lot to the sidewalk leading to the building

7                 entrance was steep, which made it difficult for Plaintiff to ascend the

8                 ramp.

9         d)     The building entrance lacked necessary wheelchair clearances, making it

10                difficult for Plaintiff to maneuver through the doorway.

11         e)     The aisles inside the Facility lacked necessary wheelchair clearances,

12                preventing Plaintiff from maneuvering freely around the store. Plaintiff

13                was unable to travel down some of the aisles at all.

14         f)     The self-serve soda fountain was positioned too high for Plaintiff to

15                reach the controls. His grandson had to get a soda for him.

16         g)     The transaction counter was too high and Plaintiff could not reach up to

17                sign his receipt on the counter.

18     11.     The barriers identified in paragraph 10 herein are only those that Plaintiff

19 personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist

20 at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once

21 such additional barriers are identified as it is Plaintiff's intention to have all barriers which

22 exist at the Facility and relate to his disabilities removed to afford him full and equal access.

23     12.     Plaintiff was, and continues to be, deterred from visiting the Facility because

24 Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

25 accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

26 Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

27 once the barriers are removed.

28     13.     Defendants knew, or should have known, that these elements and areas of the

Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14. At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 2010 Standards for Accessible Design and the California Code of Regulations Title 24. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

15. Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants' discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

## VI. FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

16. Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of

goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<div align="center">Failure to Remove Architectural Barriers in an Existing Facility</div>

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<div align="center">Failure to Design and Construct an Accessible Facility</div>

23.    Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.    The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.    Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public –

1  including Plaintiff – when it was structurally practical to do so.[1]

2              Failure to Make an Altered Facility Accessible

3      26.    Plaintiff alleges on information and belief that the Facility was modified after

4  January 26, 1992, independently triggering access requirements under the ADA.

5      27.    The ADA also requires that facilities altered in a manner that affects (or could

6  affect) its usability must be made readily accessible to individuals with disabilities to the

7  maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

8  primary function also requires making the paths of travel, bathrooms, telephones, and drinking

9  fountains serving that area accessible to the maximum extent feasible. Id.

10     28.    Here, Defendants altered the Facility in a manner that violated the ADA and

11 was not readily accessible to the physically disabled public – including Plaintiff – to the

12 maximum extent feasible.

13           Failure to Modify Existing Policies and Procedures

14     29.    The ADA also requires reasonable modifications in policies, practices, or

15 procedures, when necessary to afford such goods, services, facilities, or accommodations to

16 individuals with disabilities, unless the entity can demonstrate that making such modifications

17 would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

18     30.    Here, Defendants violated the ADA by failing to make reasonable modifications

19 in policies, practices, or procedures at the Facility, when these modifications were necessary to

20 afford (and would not fundamentally alter the nature of) these goods, services, facilities, or

21 accommodations.

22     31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney

23 fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

24     32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants

25 violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

26

27

28
_____
[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a
private attorney general under either state or federal statutes.

# VII.  SECOND CLAIM

## Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

# VIII. THIRD CLAIM

## Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of

Government Code § 4450.

43. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44. Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

45. Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.

2. Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3. Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4. Attorneys' fees, litigation expense, and costs of suit.[2]

5. Interest at the legal rate from the date of the filing of this action.

6. For such other and further relief as the Court deems proper.

Dated: September 26, 2019                                  MOORE LAW FIRM, P.C.


                                                          /s/ Tanya E. Moore
                                                          Tanya E. Moore
                                                          Attorneys for Plaintiff
                                                          Ronald Moore

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 6/26/14                    _____
                                  Ronald Moore

*Moore v. Singh, et al.*
*Verification*

EX. 89-25

MLF056511