# Exhibit 99



meat

```
HORIZON WEST
6751 N. PALM AVE STE #104
FRESNO CA 93710
559-439-7280

Terminal ID: 00730302        0662

3/4/12                    6:32 PM

SERVER #: 1

VISA
ACCT #: ************6374
CREDIT SALE
                          REF #: 010
BATCH #: 348        AUTH #: 0042B9

AMOUNT                    $30.02

TIP              $_____

TOTAL            $_____

        APPROVED

        CUSTOMER COPY
```

Signs
Ramp go's into Street
Front Door
Bath Room Door gous
into chair Then have
to Back up Then get
Stuck Between Door
and wall



# MOORE LAW FIRM
### P R O F E S S I O N A L   C O R P O R A T I O N

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 30, 2012

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
Attorney at Law

Marejka Sacks
Paralegal

Ronald Moore
80 N. Hughes
Clovis, CA 93612

Re:     *Receipts*

Dear Mr. Moore:

This letter is to inform you that we have received your request to file lawsuits on your behalf and the receipts you provided for the following Facilities:

1.  Kerman Carnitas;
2.  Robertito's Taco Shop;
3.  Radio Shack;
4.  Bob's Liquor;
5.  Supercuts;
6.  Arco;
7.  Smart & Final;
8.  Arsenio's Mexican Food;
9.  Six Star 76, 1;
10. El Realito De Oro;
11. El Bajio;
12. Buy Rite;
13. Firebaugh Mart, 1;
14. Las Canago Restaurant;
15. Super Burger;
16. City Hart #2;
17. Clovis Fair Deal Liquor Market;
18. Best Buy Liquor;
19. Big Lots;
20. Kings Market;
21. Dollar Tree Stores, Inc;
22. Burger King;
23. Big 5 Sporting Goods #376;
24. Dave's Liquor & Gas;
25. Wendy's Old Fashion Hamburgers Store #437;
26. Airport Liquor;
27. Ross Dress For Less;
28. Bobby Salazar's;
29. Cal-Fresno Oils Union  76 Twin Stations;
30. Das Palas.

MLF0046308

Please be advised that we will investigate the barriers to access encountered by you and advise you within three weeks if we decide to accept these cases.

Thank you for sending us this information. If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Dictated but not read.*
*Sent to avoid delay.*

Tanya Moore
Attorney at Law

TM/mg

MLF0046309

MLF0028643





PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

May 14, 2012

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 No. Hughes Ave.
Clovis, CA 93612

Re: Arsenio's Mexican Food, Liquor King et al

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facilities. If you visit the facilities again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for these matters. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Sent without signature to avoid delay*

Tanya Moore
Attorney at Law

MLF0028644

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against __Arsenio's Mexican Food; Liquor King; 6751 N. Blackstone Ave. Fresno.__

DATE:

_____
CLIENT'S SIGNATURE – Ronald Moore

_____
ADDRESS

_____
CITY

_____
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR

EX. 99-7

MLF0028645

## *CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

---

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

THIS AGREEMENT, made this May ___, 2012 at **San Jose, CA,** by and between <u>RONALD</u> <u>MOORE</u> hereinafter designated as "Client," and **the Moore Law Firm, PC,** hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case against **<u>Arsenio's Mexican Food and Liquor</u>** **<u>King, 6751 N. Blackstone, Fresno</u>** and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

### <u>FEE ARRANGEMENTS</u>

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where

the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance

coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)    Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)    Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)    In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)    In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

EX. 99-10

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

PARAGRAPH 3(f). BILLING RATE:  Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour.  Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES:  Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages.  These damages are awarded in a sufficient amount to punish or make an example of the defendant(s).  Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h).  MINOR'S RECOVERY:  Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement.  If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i).  NO RECOVERY NO FEE:  As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, no fees will be charged to Client         .

PARAGRAPH 3(j).  DISBURSEMENT AFTER RECOVERY:  For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable.  If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

MLF0028649

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

MLF0028650

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the

extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial              _____Initial

DATE:_____

_____
CLIENT'S SIGNATURE

DATE:_____

_____
CLIENT'S SIGNATURE

_____
ADDRESS

_____
CITY

_____
TELEPHONE

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____              MOORE LAW FIRM, PC

_____
ATTORNEY FOR RONALD MOORE

EX. 99-14

MLF0028717

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
RONALD MOORE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RONALD MOORE, | ) | No. |
| Plaintiff, | ) | **PLAINTIFF'S COMPLAINT ASSERTING** |
| | ) | **DENIAL OF RIGHT OF ACCESS UNDER** |
| vs. | ) | **AMERICANS WITH DISABILITIES ACT** |
| | ) | **FOR INJUNCTIVE RELIEF,** |
| SUNRISE SQUARE SHOPPING CENTER; | ) | **DECLARATORY RELIEF, DAMAGES,** |
| MIGUEL LOPEZ CORTEZ dba ARSENIO'S | ) | **ATTORNEYS' FEES AND COSTS (ADA)** |
| MEXICAN FOOD; AVTAR SINGH dba | ) | |
| LIQUOR KING, | ) | |
| | ) | |
| Defendants. | ) | |

---

## I. SUMMARY

1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

discrimination at the building, structure, facility, complex, property, land, development,

and/or surrounding business complex known as:

6745 N. Blackstone Ave.
Fresno, CA 93710
(hereafter "the Sunrise Square Common Areas Facility")

Arsenio's Mexican Food
6745 N. Blackstone Ave.
Fresno, CA 93710
(hereafter "the Arsenio's Mexican Food Facility")

//

*Moore v. Sunrise Square Shopping Center, et al*
Complaint

EX. 99-15

MLF0028718

1   Liquor King
6745 N. Blackstone Ave. Ste. 105
2   Fresno, CA 93710
3   (hereafter "the Liquor King Facility")

4      2.   Pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101

5   et seq.) ("ADA") and related California statutes, Plaintiff seeks damages, injunctive and

6   declaratory relief, attorney fees and costs, against:

7      a)   Sunrise Square Shopping Center (hereinafter "the Sunrise Square

8   Defendant");

9      b)   Miguel Lopez Cortez dba Arsenio's Mexican Food (hereinafter "Arsenio's

10   Mexican Food Defendant");

11      c)   Avtar Singh dba Liquor King (hereinafter "Liquor King Defendant").

12   The above-named defendants are collectively referred to herein as "Defendants".

13            **II.   JURISDICTION**

14      3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for

15   ADA claims.

16      4.   Supplemental jurisdiction for claims brought under parallel California law –

17   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

18      5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

19            **III.   VENUE**

20      6.   All actions complained of herein take place within the jurisdiction of the

21   United States District Court, Eastern District of California, and venue is invoked pursuant to

22   28 U.S.C. § 1391(b), (c).

23            **IV.   PARTIES**

24      7.   Sunrise Square Shopping Center Defendant owns, operates, and/or leases the

25   Sunrise Square Common Areas Facility, and consists of a person (or persons), firm, and/or

26   corporation.

27      8.   Arsenio's Mexican Food Defendant owns, operates, and/or leases the

28   Arsenio's Mexican Food Facility, and consists of a person (or persons), firm, and/or

*Moore v. Sunrise Square Shopping Center, et al*
Complaint

Page 2

EX. 99-16

MLF00287l9

1  corporation.

2      9.    Liquor King Defendant owns, operates, and/or leases the Liquor King

3  Facility, and consists of a person (or persons), firm, and/or corporation.

4      10.   Plaintiff requires the use of a wheelchair when traveling about in public.

5  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

6  United States laws, and a member of the public whose rights are protected by these laws.

7              **V.    FACTS**

8      11.   The Sunrise Square Common Areas Facility is a public accommodation

9  facility, open to the public, which is intended for nonresidential use and whose operation

10  affects commerce.

11      12.   The Arsenio's Mexican Food Facility is a public accommodation facility,

12  open to the public, which is intended for nonresidential use and whose operation affects

13  commerce.

14      13.   The Liquor King Facility is a public accommodation facility, open to the

15  public, which is intended for nonresidential use and whose operation affects commerce.

16      14.   Plaintiff visited these Facilities and encountered barriers (both physical and

17  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

18  goods, services, privileges and accommodations offered at the Facility.

19              **Sunrise Square Common Areas Facility**

20      15.   While visiting the Sunrise Square Common Areas Facility, Plaintiff personally

21  encountered the following barriers:

22      a)    Plaintiff did not know where to park because the designated parking spaces did

23  not have the correct signage;

24      b)    Once Plaintiff found a parking space next to Arsenio's Mexican Food Facility

25  he discovered that the access aisle adjacent to the parking space he chose was encumbered by a

26  ramp encroaching from the sidewalk. This encroaching ramp made the parking lot surface

27  uneven, endangering Plaintiff as he dismounted from his vehicle onto the uneven ground;

28  ///

*Moore v. Sunrise Square Shopping Center, et al*
Complaint

Page 3

1    c)    Nevertheless, he managed to make his way out of the vehicle and pushed
2  himself up the steep ramp encroaching on the access aisle;

3    d)    After visiting Arsenio's Mexican Food Facility Plaintiff wanted to go to the
4  nearby Liquor King Facility but could not find any accessible route from Arsenio's Mexican
5  Food Facility to the Liquor King Facility, however since there was no apparent accessible
6  route provided Plaintiff instead left the Sunrise Square Shopping Center and went home.

7    16.    Plaintiff was, and continues to be, deterred from visiting the Sunrise Square
8  Common Areas Facility because he knows that the Sunrise Square Common Areas Facility's
9  goods, services, facilities, privileges, advantages, and accommodations were and are
10  unavailable to him due to Plaintiff's physical disabilities due to the existence of the following
11  architectural barriers:

12    a)    Missing and/or incorrect warning signage is installed at the parking facilities;

13    b)    Accessible parking spaces and access aisles are not properly configured
14    and/or exceed the maximum slope allowed;

15    c)    Parking spaces and/or access aisles reserved for persons with disabilities are
16    improperly marked and/or identified;

17    d)    There is no properly configured and/or identified accessible route provided
18    within the boundary of the site;

19    e)    There is no properly configured and/or identified accessible entrance
20    provided;

21    f)    There are no sufficient clearances provided for a wheelchair inside the
22    Facility;

23    g)    There is no accessible seating provided in the Facility;

24    h)    There is no accessible restroom provided;

25    i)    Defendants have failed to create, implement or provide policies and
26    procedures to ensure that the architectural barriers identified herein are removed and
27    that the Facility is maintained in a fully accessible condition.

28  ///

*Moore v. Sunrise Square Shopping Center, et al*
Complaint

Page 4

MLF0028721

1    Plaintiff enjoys the goods and services offered at the Facility, lives nearby, and will
2    return to the Facility once the barriers are removed.

3    17.    The Sunrise Square Defendant knew, or should have known, that these
4    elements and areas of the Sunrise Square Common Areas Facility were inaccessible, violate
5    state and federal law, and interfere with (or deny) access to the physically disabled.
6    Moreover, the Sunrise Square Defendant has the financial resources to remove these barriers
7    from the Sunrise Square Common Areas Facility (without much difficulty or expense), and
8    make the Sunrise Square Common Areas Facility accessible to the physically disabled.  To
9    date, however, the Sunrise Square Defendant refuses to either remove those barriers or seek
10   an unreasonable hardship exemption to excuse non-compliance.

11   18.    At all relevant times, the Sunrise Square Defendant has possessed and enjoyed
12   sufficient control and authority to modify the Sunrise Square Common Areas Facility to
13   remove impediments to wheelchair access and to comply with the Americans with
14   Disabilities Act Accessibility Guidelines and Title 24 regulations.  The Sunrise Square
15   Defendant has not removed such impediments and has not modified the Sunrise Square
16   Common Areas Facility to conform to accessibility standards.  the Sunrise Square Defendant
17   has intentionally maintained the Sunrise Square Common Areas Facility in its current
18   condition and has intentionally refrained from altering the Sunrise Square Common Areas
19   Facility so that it complies with the accessibility standards.

20   **ARSENIO'S MEXICAN FOOD FACILITY**

21   19.    While visiting Arsenio's Mexican Food Facility, Plaintiff personally
22   encountered the following barriers:

23   a)    Plaintiff did not know where to park because there was no signage provided
24   on the designated parking spaces;

25   b)    Once Plaintiff found a parking space next to Arsenio's Mexican Food Facility
26   he discovered that the access aisle adjacent to the parking space he chose was encumbered by
27   a ramp encroaching from the sidewalk. This encroaching ramp made the parking lot surface
28   uneven, endangering Plaintiff as he dismounted from his vehicle onto the uneven ground;

*Moore v. Sunrise Square Shopping Center, et al*
Complaint

Page 5

MLF0028722

1    c)    Nevertheless, he managed to make his way out of the vehicle and pushed
2  himself up the steep ramp encroaching on the access aisle;

3    d)    Once inside, Plaintiff attempted to get in line but could not get his wheelchair
4  through the queue in front of the counter and had to wait on the side of the counter for an
5  employee to assist him;

6    e)    Plaintiff was not able to get chips or condiments by himself and had to seek
7  assistance;

8    f)    Plaintiff was not able to maneuver his wheelchair inside the restroom due to
9  lack of necessary clearances and had to struggle to open the restroom door in order to get out
10  of the restroom;

11    g)    After visiting Arsenio's Mexican Food Facility Plaintiff wanted to go to the
12  nearby Liquor King Facility but could not find any accessible route from Arsenio's Mexican
13  Food Facility to the Liquor King Facility and instead left the Sunrise Square Shopping
14  Center.

15    20.    Plaintiff was, and continues to be, deterred from visiting Arsenio's Mexican
16  Food Facility because he knows that Arsenio's Mexican Food Facility's goods, services,
17  facilities, privileges, advantages, and accommodations were and are unavailable to him due
18  to Plaintiff's physical disabilities due to the existence of the following architectural barriers:

19    a)    Missing and/or incorrect warning signage is installed at the parking facilities;

20    b)    Accessible parking spaces and access aisles are not properly configured
21  and/or exceed the maximum slope allowed;

22    c)    Parking spaces and/or access aisles reserved for persons with disabilities are
23  improperly marked and/or identified;

24    d)    There is no properly configured and/or identified accessible route provided
25  within the boundary of the site;

26    e)    There is no properly configured and/or identified accessible entrance
27  provided;

28    f)    There are no sufficient clearances provided for a wheelchair inside the
Facility;

*Moore v. Sunrise Square Shopping Center, et al*
Complaint

Page 6

EX. 99-20

MLF0028723

1      g)     There is no accessible seating provided in the Facility;

2      h)     There is no accessible restroom provided;

3      i)     Defendant has failed to create, implement or provide policies and procedures

4 to ensure that the architectural barriers identified herein are removed and that the

5 Facility is maintained in a fully accessible condition.

6      Plaintiff enjoys the goods and services offered at Arsenio's Mexican Food Facility,

7 lives nearby, and will return to Arsenio's Mexican Food Facility once the barriers are

8 removed.

9      21.    Arsenio's Mexican Food Defendant knew, or should have known, that these

10 elements and areas of Arsenio's Mexican Food Facility were inaccessible, violate state and

11 federal law, and interfere with (or deny) access to the physically disabled.  Moreover,

12 Arsenio's Mexican Food Defendant has the financial resources to remove these barriers from

13 Arsenio's Mexican Food Facility (without much difficulty or expense), and make Arsenio's

14 Mexican Food Facility accessible to the physically disabled.  To date, however, Arsenio's

15 Mexican Food Defendant refused to either remove those barriers or seek an unreasonable

16 hardship exemption to excuse non-compliance.

17      22.    At all relevant times, Arsenio's Mexican Food Defendant has possessed and

18 enjoyed sufficient control and authority to modify Arsenio's Mexican Food Facility to

19 remove impediments to wheelchair access and to comply with the Americans with

20 Disabilities Act Accessibility Guidelines and Title 24 regulations.  Arsenio's Mexican Food

21 Defendant has not removed such impediments and has not modified Arsenio's Mexican Food

22 Facility to conform to accessibility standards.  Arsenio's Mexican Food Defendant has

23 intentionally maintained Arsenio's Mexican Food Facility in its current condition and has

24 intentionally refrained from altering Arsenio's Mexican Food Facility so that it complies

25 with the accessibility standards.

26 **LIQUOR KING FACILITY**

27      23.    While visiting Liquor King Facility, Plaintiff personally encountered the

28 following barriers:

*Moore v. Sunrise Square Shopping Center, et al*
Complaint

MLF0028724

1        a)      Plaintiff could not park in the designated parking spaces because due to the

2 lack of signage the parking spaces were occupied by vehicles not displaying designated

3 license plates or placards and Plaintiff waited for a considerable amount of time until one

4 space became available;

5        b)      Once Plaintiff found a parking space next to Liquor King Facility he

6 discovered that the access aisle adjacent to the parking space he chose was encumbered by a

7 ramp encroaching from the sidewalk. This encroaching ramp made the parking lot surface

8 uneven, endangering Plaintiff as he dismounted from his vehicle onto his wheelchair.

9        c)      Nevertheless, he managed to make his way out of the vehicle and pushed

10 himself up the steep ramp encroaching on the access aisle;

11        d)      On at least one occasion, after visiting Arsenio's Mexican Food Facility,

12 Plaintiff wanted to go to the nearby Liquor King Facility but could not find any accessible

13 route from Arsenio's Mexican Food Facility to the Liquor King Facility since there was no

14 apparent accessible route provided and Plaintiff instead left the Sunrise Square Shopping

15 Center.

16     24.     Plaintiff was, and continues to be, deterred from visiting Liquor King Facility

17 because he knows that Liquor King Facility's goods, services, facilities, privileges,

18 advantages, and accommodations were and are unavailable to him due to Plaintiff's physical

19 disabilities due to the existence of the following architectural barriers:

20        a)      Missing and/or incorrect warning signage is installed at the parking facilities;

21        b)      Accessible parking spaces and access aisles are not properly configured

22 and/or exceed the maximum slope allowed;

23        c)      Parking spaces and/or access aisles reserved for persons with disabilities are

24 improperly marked and/or identified;

25        d)      There is no properly configured and/or identified accessible route provided

26 within the boundary of the site;

27        e)      There is no properly configured and/or identified accessible entrance

28 provided;

*Moore v. Sunrise Square Shopping Center, et al*
Complaint

EX. 99-22

f)     There are no sufficient clearances provided for a wheelchair inside the Facility;

g)     There is no accessible seating provided in the Facility;

h)     There is no accessible restroom provided;

i)     Defendants have failed to create, implement or provide policies and procedures to ensure that the architectural barriers identified herein are removed and that the Facility is maintained in a fully accessible condition.

Plaintiff enjoys the goods and services offered at Liquor King Facility, lives nearby, and will return to Liquor King Facility once the barriers are removed.

25.     Liquor King Defendant knew, or should have known, that these elements and areas of Liquor King Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Liquor King Defendant has the financial resources to remove these barriers from Liquor King Facility (without much difficulty or expense), and make Liquor King Facility accessible to the physically disabled. To date, however, Liquor King Defendant refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

26.     At all relevant times, Liquor King Defendant has possessed and enjoyed sufficient control and authority to modify Liquor King Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. Liquor King Defendant has not removed such impediments and has not modified Liquor King Facility to conform to accessibility standards. Liquor King Defendant has intentionally maintained the Liquor King Facility in its current condition and has intentionally refrained from altering Liquor King Facility so that it complies with the accessibility standards.

## VI.    FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

27.     Plaintiff incorporates the allegations contained in paragraphs 1 through 26 for

*Moore v. Sunrise Square Shopping Center, et al*
Complaint

EX. 99-23

MLF0028726

1   this claim.

2       28.     Title III of the ADA holds as a "general rule" that no individual shall be

3   discriminated against on the basis of disability in the full and equal enjoyment (or use) of

4   goods, services, facilities, privileges, and accommodations offered by any person who owns,

5   operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

6       29.     Defendants discriminated against Plaintiff by denying him "full and equal

7   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

8   Facility during each visit and each incident of deterrence.

9                   Failure to Remove Architectural Barriers in an Existing Facility

10      30.     The ADA specifically prohibits failing to remove architectural barriers, which

11  are structural in nature, in existing facilities where such removal is readily achievable. 42

12  U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily

13  accomplishable and able to be carried out without much difficulty or expense." Id. §

14  12181(9).

15      31.     When an entity can demonstrate that removal of a barrier is not readily

16  achievable, a failure to make goods, services, facilities, or accommodations available through

17  alternative methods is also specifically prohibited if these methods are readily achievable.

18  Id. § 12182(b)(2)(A)(v).

19      32.     Here, Plaintiff alleges that Defendants can easily remove the architectural

20  barriers at the Facility without much difficulty or expense, and that Defendants violated the

21  ADA by failing to remove those barriers, when it was readily achievable to do so.

22      33.     In the alternative, if it was not "readily achievable" for Defendants to remove

23  the Facility's barriers, then Defendants violated the ADA by failing to make the required

24  services available through alternative methods, which are readily achievable.

25                  Failure to Design and Construct an Accessible Facility

26      34.     Plaintiff alleges on information and belief that the Facility was designed and

27  constructed (or both) after January 26, 1992 – independently triggering access requirements

28  under Title III of the ADA.

*Moore v. Sunrise Square Shopping Center, et al*
Complaint

Page 10

MLF0028727

35.     The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

36.     Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

37.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

38.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

39.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

40.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

41.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

_____

[1] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

_Langer v. Montclair Plaza Shopping Center, et al_
Complaint

Page 11

1     42.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

2    attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

3     43.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

4    Defendants violated the ADA in order to pursue damages under California's Unruh Civil

5    Rights Act or Disabled Persons Act.

6             **VII.   SECOND CLAIM**

7               **Disabled Persons Act**

8     44.    Plaintiff incorporates the allegations contained in paragraphs 1 through 43 for

9    this claim.

10     45.    California Civil Code § 54 states, in part, that: Individuals with disabilities

11    have the same right as the general public to the full and free use of the streets, sidewalks,

12    walkways, public buildings and facilities, and other public places.

13     46.    California Civil Code § 54.1 also states, in part, that: Individuals with

14    disabilities shall be entitled to full and equal access to accommodations, facilities, telephone

15    facilities, places of public accommodation, and other places to which the general public is

16    invited.

17     47.    Both sections specifically incorporate (by reference) an individual's rights

18    under the ADA. *See* Civil Code §§ 54(c) and 54.1(d).

19     48.    Here, Defendants discriminated against the physically disabled public –

20    including Plaintiff - by denying them full and equal access to the Facility. Defendants also

21    violated Plaintiff's rights under the ADA, and therefore, infringed upon or violated (or both)

22    Plaintiff's rights under the Disabled Persons Act.

23     49.    For each offense of the Disabled Persons Act, seeks statutory minimum

24    damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available

25    under California Civil Code § 54.3.

26     50.    Plaintiff also seeks to enjoin Defendants from violating the Disabled Persons

27    Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees

28    and costs incurred under California Civil Code §§ 54.3 and 55.

*Moore v. Sunrise Square Shopping Center, et al*
Complaint

## VIII.   THIRD CLAIM

### Unruh Civil Rights Act

51.     Plaintiff incorporates the allegations contained in paragraphs 1 through 50 for this claim.

52.     California Civil Code § 51 states, in part, that:  All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

53.     California Civil Code § 51.5 also states, in part that:  No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

54.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

55.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

56.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

57.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

58.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

### IX. FOURTH CLAIM

### Denial of Full and Equal Access to Public Facilities

59.     Plaintiff incorporates the allegations contained in paragraphs 1 through 58 for this claim.

60.     Health and Safety Code § 19955(a) states, in part, that:  California public accommodations or facilities (built with private funds) shall adhere to the provisions of

*Moore v. Sunrise Square Shopping Center, et al*
Complaint

EX. 99-27

1    Government Code § 4450.

2    61.    Health and Safety Code § 19959 states, in part, that: Every existing (non-

3    exempt) public accommodation constructed prior to July 1, 1970, which is altered or

4    structurally repaired, is required to comply with this chapter.

5    62.    Plaintiff alleges the Facility is a public accommodation constructed, altered,

6    or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government

7    Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code §

8    19956.

9    63.    Defendants' non-compliance with these requirements at the Facility aggrieved

10    (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

11    Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code §

12    19953.

13                 **X.    PRAYER FOR RELIEF**

14    WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

15    1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

16    2.    Declaratory relief that Defendants violated the ADA for the purposes of

17    Unruh Act or Disabled Persons Act damages.

18    3.    Statutory minimum damages under either sections 52(a) or 54.3(a) of the

19    California Civil Code (but not both) according to proof.

20    4.    Attorneys' fees, litigation expense, and costs of suit.[2]

21    5.    Interest at the legal rate from the date of the filing of this action.

22    6.    For such other and further relief as the Court deems proper.Dated: May 22,

23    2012             MOORE LAW FIRM, P.C.

24

25    /s/ Tanya E. Moore

26    Tanya E. Moore
        Attorneys for Plaintiff,

27    RONALD MOORE

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
*Moore v. Sunrise Square Shopping Center, et al*
Complaint

Page 14

MLF0028652



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

May 14, 2012

Ronald Moore
80 N. Hughes Avenue
Clovis, CA 93612

Re:     Tandoori Night, 6751 N. Blackstone, Fresno

Dear Mr. Moore:

This letter is to inform you that although there may be ADA violations involved in the above-referenced facility, we have rejected the option of filing a civil rights action.

As you know, these civil rights actions usually involve considerable costs and attorneys fees and we are only able to pursue cases which involve the most egregious violations of the ADA law.

Thank you for sending us information regarding the above-referenced facility. If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Very truly yours,

*Sent without signature to avoid delay*

Tanya Moore
Attorney at Law

TM:kp

EX. 99-29

# Exhibit 100

BOTTLE HOUSE LIQUOR
4190 E BELMONT
FRESNO, CA 93702

05/24/2014                    21:45:18
MID: 000000002000904    TID: 02982832
345200623881

CREDIT CARD
MC SALE

| CARD #        | XXXXXXXXXXXX7245 |
|---------------|------------------|
| INVOICE       | 0030             |
| Batch #:      | 001170           |
| Approval Code:| 712372           |
| Entry Method: | Swiped           |
| Mode:         | Online           |

SALE AMOUNT                    $5.54

MLF0040025

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? Bottle House Liquor

2. What is the address of the Facility? 4100 East Belmont Fresno, CA

3. When did you visit the Facility? 5/24/14 (Date) 9:45pm (Time)

4. Was this your first visit to the Facility? No

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. 7

6. What was the purpose of your visit? To buy a fountain drink and snacks.

7. Who accompanied you to the Facility? Grandsons Ronny, Jason, and Jhonny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself or did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In spot closest to dp because dp was taken.

11. Was it difficult for you to park there? If so, why? Yes, dp spot was taken, I had to go across behind car because no route of travel.

12. How did you unload from your vehicle? Rear

13. What side of the vehicle did you unload from? Driver or passenger? Driver

14. Did anyone help you to transfer onto your wheelchair? Who? Yes, Jhonny

15. Did you encounter any problems transferring onto your wheelchair? Describe. No, not really, Jhonny brought chair to me but pavement had severe cracks and was very bumpy.

16. Which way did you go from the parking to the entrance of the Facility? To access isle

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. Yes, there was severe cracks and extremely bumpy.

18. Did you encounter any problems opening the door? Describe. Yes, door heavy and closed on me.

19. What did you purchase (or what meal did you have there)? Drinks and insence.

20. Did you need to use the restroom while you were at the Facility? Why? No

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0040022

EX. 100-3

# PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: NIA

Toilet: NIA

Urinal: NIA

Toilet paper: NIA

Toilet seat covers: NIA

Paper towels/hand dryer: NIA

Soap dispenser: NIA

Other: NIA

22. Did you have any problem maneuvering inside the restroom? NIA

23. Was there any seating provided inside the Facility? NIA

24. Were you able to sit comfortably at the table? If not, why? NIA

25. Did you use the counter to pay for purchase? Which one? Yes, only one

26. Did you pay with cash or credit card? Credit card

27. Was the counter accessible? If not, describe: No, counter too high grandson had to sign the reciept I had to throw card up to counter.

28. Did you have any other problems inside the Facility? Describe. Yes, isles way too small couldn't even get to fountain drinks or get insense, energy drinks too high granason had to grab them.

29. Which way did you go after you left the Facility? Outdoor to access isle to car.

30. Any problems getting back to your vehicle? Yes, door shut on me and the sever cracked pavement.

31. Any problems transferring from your wheelchair to your vehicle? No, because Jhonny helped me with chair.

32. Any additional information you believe would assist us in evaluating this inquiry?

Yes, there was racks in front of the counter and there was no room I had to back out completely to get to counter.

MLF0040023

EX. 100-4



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION
332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

May 30, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:     ADAI No.     01995
        Bottle House Liquor *(4190 E Belmont, Fresno, CA 93702)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0040024

EX. 100-5

**BARRIER MEMO**

ADAI No. :      01995

Case Name:      **Moore v. Bottle House Liquor**

Address:        **4190 E Belmont, Fresno, CA 93702**

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Only One Designated Handicapped Parking Spot | Plaintiff parked in the spot right next to the designated handicapped spot because the latter was already taken. This caused great difficulty for Plaintiff because the parking space was cracked and bumpy, and he had to go behind the other car to reach the facility. | NOT A BARRIER |
| Cracked Pavement | On his way to the facility from his car, Plaintiff had a very difficult time trying to move his wheelchair safely because the pavement was severely cracked and bumpy. | YES |
| Heavy Door to Entrance | The door to the facility was heavy and it was extremely difficult for Plaintiff to hold open the door while at the same time wheeling himself inside. In result, the door closed on Plaintiff twice, once coming in and once coming out, causing not only pain but also embarrassment. | YES |
| Inaccessible Counter | There were various racks in front of the counter which made it challenging for Plaintiff to wheel himself up to it. He had to back up in order to get to the counter.  In addition, the counter was too high for Plaintiff to reach and he was forced to throw his credit card up onto the counter. Plaintiff also could not reach the receipt and so asked his grandson to sign it for him. | YES |
| Narrow Aisles | The aisles in the facility were extremely small and narrow which prevented Plaintiff from maneuvering to the soda dispenser and incense, among other items. | YES |
| Certain Items Placed too High | Plaintiff wanted to reach the energy drinks but they were too high for him. Luckily, Plaintiff's grandson was near him and able to help. | YES |

1

MLF0039997

EX. 100-6



## MOORE
### LAW FIRM, P.C.

October 6, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

Re:     ADAI No.   01995
         Talwandi & Son Inc. (Bottle House Liquor)
         4190 E Belmont, Fresno, CA 93702

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0040011

1   Tanya E. Moore, SBN 206683
    MOORE LAW FIRM, P.C.
2   332 North Second Street
    San Jose, California 95112
3   Telephone (408) 298-2000
    Facsimile (408) 298-6046
4   E-mail: tanya@moorelawfirm.com

5   Attorneys for Plaintiff
    Ronald Moore

6

7

8                  UNITED STATES DISTRICT COURT

9                EASTERN DISTRICT OF CALIFORNIA

10

11  RONALD MOORE,                      )  No.
                                       )
12          Plaintiff,                 )  COMPLAINT ASSERTING DENIAL OF
                                       )  RIGHT OF ACCESS UNDER
13      vs.                            )  AMERICANS WITH DISABILITIES ACT
                                       )  FOR INJUNCTIVE RELIEF,
14  TALWANDI & SON INC. dba BOTTLE     )  DECLARATORY RELIEF, DAMAGES,
    HOUSE LIQUOR; SHER SINGH,          )  ATTORNEYS' FEES AND COSTS (ADA)
15  individually and dba BOTTLE HOUSE  )
    LIQUOR;                            )
16                                     )
                                       )
17          Defendants.                )
                                       )
18                                     )
                                       )
19                                     )
                                       )
20                                     )
                                       )
21  _____)

22                       I. SUMMARY

23      1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

24  discrimination at the building, structure, facility, complex, property, land, development, and/or

25  surrounding business complex known as:

26          Bottle House Liquor
            4190 East Belmont Avenue
27          Fresno, CA 93702
            (hereafter "the Facility")
28

*Moore v. Talwandi & Son Inc., et al.*
Complaint
                              Page 1

MLF0040012

1       2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

2   costs, against TALWANDI & SON INC. dba BOTTLE HOUSE LIQUOR and SHER SINGH,

3   individually and dba BOTTLE HOUSE LIQUOR (hereinafter collectively referred to as

4   "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et

5   seq.) ("ADA") and related California statutes.

6                         **II.    JURISDICTION**

7       3.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

8   claims.

9       4.     Supplemental jurisdiction for claims brought under parallel California law –

10   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

11       5.     Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

12                         **III.    VENUE**

13       6.     All actions complained of herein take place within the jurisdiction of the United

14   States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

15   § 1391(b), (c).

16                         **IV.    PARTIES**

17       7.     Defendants own, operate, and/or lease the Facility, and consist of a person (or

18   persons), firm, and/or corporation.

19       8.     Plaintiff is substantially limited in his ability to walk, and must use a wheelchair

20   for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable

21   California and United States laws, and a member of the public whose rights are protected by

22   these laws.

23                         **V.    FACTS**

24       9.     The Facility is open to the public, intended for non-residential use, and its

25   operation affects commerce. The Facility is therefore a public accommodation as defined by

26   applicable state and federal laws.

27       10.    Plaintiff visited the Facility and encountered barriers (both physical and

28   intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

*Moore v. Talwandi & Son Inc., et al.*
Complaint
                      Page 2

MLF0040013

EX. 100-9

goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or about May 24, 2014:

    a)     The route from the parking lot to the building entrance was cracked and uneven, making it difficult for Plaintiff to maneuver his wheelchair.

    b)     The building entrance door was heavy and it was difficult for Plaintiff to hold the door open while he maneuvered his wheelchair through the doorway. The door swung closed on him while he was entering and exiting the Facility.

    c)     The aisles inside the Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to navigate the store and preventing him from reaching the merchandise that he wanted to purchase. He wanted to buy a soda but was unable to maneuver to the soda fountain due to the lack of clearances and decided to get a canned beverage instead.

    d)     Plaintiff was unable to reach the energy drinks in the refrigerator because they were positioned too high, and his grandson had to get one down for him.

    e)     The approach to the cashier counter was obstructed by racks of merchandise, which made it difficult for Plaintiff to wheel up to the counter. In addition, the counter was too high for him to reach and he was forced to toss his credit card up onto the counter to pay for his purchase. He could not reach to sign his receipt on the counter and had to ask his grandson to sign it for him.

    11.     The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

MLF0040014

EX. 100-10

1       12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

2    Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

3    accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

4    Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

5    once the barriers are removed.

6       13.    Defendants knew, or should have known, that these elements and areas of the

7    Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

8    the physically disabled. Moreover, Defendants have the financial resources to remove these

9    barriers from the Facility (without much difficulty or expense), and make the Facility

10    accessible to the physically disabled. To date, however, Defendants refuse to either remove

11    those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

12       14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

13    and authority to modify the Facility to remove impediments to wheelchair access and to

14    comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

15    Design. Defendants have not removed such impediments and have not modified the Facility to

16    conform to accessibility standards. Defendants have intentionally maintained the Facility in its

17    current condition and have intentionally refrained from altering the Facility so that it complies

18    with the accessibility standards.

19       15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

20    so obvious as to establish Defendants' discriminatory intent. On information and belief,

21    Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

22    to relevant building standards; disregard for the building plans and permits issued for the

23    Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

24    the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

25    property continues to exist in its non-compliant state. Plaintiff further alleges, on information

26    and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

27    Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

28    //

MLF0040015

EX. 100-11

## VI.    FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

#### Failure to Remove Architectural Barriers in an Existing Facility

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

#### Failure to Design and Construct an Accessible Facility

23.    Plaintiff alleges on information and belief that the Facility was designed and

MLF0040016

constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.     The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.     Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Talwandi & Son Inc., et al.*
Complaint

MLF0040017

30.   Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.   Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.   Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.   SECOND CLAIM

### Unruh Act

33.   Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.   California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.   Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.   Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

40.   Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

MLF0040018

EX. 100-14

1   ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

2   § 52(a).

3   **VIII. THIRD CLAIM**

4   **Denial of Full and Equal Access to Public Facilities**

5       41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

6   this claim.

7       42.    Health and Safety Code § 19955(a) states, in part, that: California public

8   accommodations or facilities (built with private funds) shall adhere to the provisions of

9   Government Code § 4450.

10      43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-

11  exempt) public accommodation constructed prior to July 1, 1970, which is altered or

12  structurally repaired, is required to comply with this chapter.

13      44.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or

14  repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

15  § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

16      45.    Defendants' non-compliance with these requirements at the Facility aggrieved

17  (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

18  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

19  **IX.    PRAYER FOR RELIEF**

20      WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

21      1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

22      2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh

23          Act damages.

24      3.    Statutory minimum damages under section 52(a) of the California Civil Code

25          according to proof.

26      4.    Attorneys' fees, litigation expense, and costs of suit.[2]

27      5.    Interest at the legal rate from the date of the filing of this action.

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Talwandi & Son Inc., et al.*
Complaint

MLF0040019

EX. 100-15

1   6.      For such other and further relief as the Court deems proper.

2

3   Dated: October 2, 2014                MOORE LAW FIRM, P.C.

4                                         /s/ Tanya E. Moore
5                                         Tanya E. Moore
                                          Attorneys for Plaintiff
6                                         Ronald Moore

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Moore v. Talwandi & Son Inc., et al.*
Complaint
                        Page 9

MLF0040020

EX. 100-16

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:  October 2. 2014                    /s/ Ronald Moore
                                            Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                    /s/ Tanya E. Moore
                                    Tanya E. Moore, Attorney for
                                    Plaintiff, Ronald Moore

*Moore v. Talwandi & Son Inc., et al.*
*Verification*

MLF0040021

EX. 100-17

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 10/2/14

Ronald Moore

*Ronald Moore v. Talwandi & Son, Inc. (Bottle House Liquor)*

MLF0040026

EX. 100-18

# Exhibit 101

Moore



## =PEPBOYS=

Pep Boys #639
3655 N Blackstone
Fresno, CA 93726
(559)225-8811
www.pepboys.com

02/27/2012          3:44:10 PM PST
Trans.: 110386          Store: 0639
Res.: 101          Till:harry
Cashier: 184803

SALE

063910111038620120227

QT 10W30 MOBIL HM          5.59 T
98KU55          1 @ 5.59
Sub-Total          5.59
Tax          0.45
Total          6.04
   Cash          6.04
Total Tender          6.04
Change Due          0.00

*****************************************
    *     For a chance to win          *
    *          $5,000                   *
    *  and INSTANTLY receive a          *
    *      10% OFF COUPON,              *
    *  visit www.pepboyssurvey.com,     *
    *   website for complete details.   *
    *                                   *
    *    oportunidad de ganar           *
    *          ,000                      *
    *        on cupon de                 *
    *  10% de descuento al INSTANTE,    *
    *  visite www.pepboyssurvey.com,    *
    *  Vea el website para detalles     *
    *       completos.                   *
*****************************************

Thank you for shopping at Pep Boys. Most
returns accepted within 90 days with the
   original receipt. For more details
please refer to return policy in store
     or on www.pepboys.com

          Customer Copy

SIGNS
No VAN ACCESS
Ramp goes into street
FRONT DOOR
TOO
OIL Isle to small
can't turn around
FRONT counter High
no access route to
the restroom



new fire

MLF0053636

EX. 101-2



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

May 22, 2012

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
Attorney at Law

Marejka Sacks
Paralegal

Mr. Ronald Moore
80 N. Hughes Ave.
Clovis, CA 93612

Re: Pep Boys.

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facilities. If you visit the facilities again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for these matters. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Tanya Moore*

Tanya Moore
Attorney at Law

MLF0053612

EX. 101-3

# Exhibit 102



### Pep Boys

Pep Boys #668
693 WEST SHAW AVENUE
CLOVIS, CA 93612
(559)298-2557
www.pepboys.com

05/25/2014                    4:09:06 PM PST
Trans.: 098510              Store: 0668
Reg.: 101                     Till:101
Cashier: 387751

SALE

||||||||||||||||||||||||||||||||||||
066810109851020140525

BLUB 9006 HAL 1PK              10.99 T
  9006B1                1 @ 10.99
Sub-Total                      10.99
Tax                             0.90
Total                          11.89
  Master Card (S)              11.89
    Account: XXXXXXXXXXXX7245
    Auth: 324572 (A)
Total Tender                   11.89
Change Due                      0.00


Customer Copy

MLF0039743

EX. 102-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? _Pep Boys_

2. What is the address of the Facility? _6093 W. Shaw Ave, Fresno, CA_

3. When did you visit the Facility? _5/25/14_ (Date) _4:10_ (Time)

4. Was this your first visit to the Facility? _No_

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. _?_

6. What was the purpose of your visit? _need light for My car_

7. Who accompanied you to the Facility? _Grandson Ronny, Jason, Jhonny_

8. What car did you drive to the Facility? _Mine_

9. Did you drive yourself or did you get a ride from someone else? _I drive_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In d/p parking spot_

11. Was it difficult for you to park there? If so, why? _No_

12. How did you unload from your vehicle? _Rear_

13. What side of the vehicle did you unload from? Driver or passenger? _Driver_

14. Did anyone help you to transfer onto your wheelchair? Who? _Jhonny_

15. Did you encounter any problems transferring onto your wheelchair? Describe. _d/p spot and street a cracked_

16. Which way did you go from the parking to the entrance of the Facility? _up ramp to door_

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. _ramp goes into street and accessisle_

18. Did you encounter any problems opening the door? Describe. _threshold high_

19. What did you purchase (or what meal did you have there)? _head light for car_

20. Did you need to use the restroom while you were at the Facility? Why? _No restroom_

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0039626

EX. 102-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: N/A

Toilet: N/A

Urinal: N/A

Toilet paper: N/A

Toilet seat covers: N/A

Paper towels/hand dryer: N/A

Soap dispenser: N/A

Other: N/A

22. Did you have any problem maneuvering inside the restroom? N/A

23. Was there any seating provided inside the Facility? NO

24. Were you able to sit comfortably at the table? If not, why? N/A

25. Did you use the counter to pay for purchase? Which one? Yes, front one

26. Did you pay with cash or credit card? Credit

27. Was the counter accessible? If not, describe: No to high

28. Did you have any other problems inside the Facility? Describe. Couldn't reach counter

29. Which way did you go after you left the Facility? Out door to car

30. Any problems getting back to your vehicle? yes ramp cracked and steep

31. Any problems transferring from your wheelchair to your vehicle? yes honney brought me to my car and put chair in car

32. Any additional information you believe would assist us in evaluating this inquiry?

MLF0039627

EX. 102-4



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

May 30, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

     RE:    **ADAI No.   01992**
                 **Pep Boys** *(693 W. Shaw Ave, Clovis, CA 93612)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0039742

EX. 102-5

**BARRIER MEMO**

ADAI No. :     01992

Case Name:    Moore v. Pep Boys

Address:       693 W. Shaw Ave, Clovis, CA 93612

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Cracked Pavement in Parking Spot and Ramp | The client parked in the designated handicapped parking spot, which had cracked pavement on it, around it and on the ramp. Moving his wheel chair over these cracks posed a huge obstacle for the client. | Yes |
| Ramp within Access Aisle | The ramp next to the designated parking spot was located within the access aisle. Getting out of the car and into his chair proved to be especially difficult because of the incline from the ramp. | Yes |
| High Threshold | The threshold at the facility was high and the client had to pop his chair up several times to make it over, which often causes him to hit his knuckles. | Yes |
| Inaccessible Counter | The client attempted to use the front counter but it proved to be too high for him to access. Luckily, his grandsons were with him and were able to help. | Yes |
| Steep Ramp When Returning to Car | Traveling down the ramp from the entrance of the facility was challenging because of the steep ramp. The client had to control his wheelchair well enough to not let it gain enough momentum to fly into the street. | Yes |

1

MLF0039607

EX. 102-6



# MOORE LAW FIRM
### P R O F E S S I O N A L   C O R P O R A T I O N

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 11, 2014

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:   ADAI No.   01992
The Pep Boys Manny Moe & Jack of California *(693 W. Shaw Ave, Clovis, CA 93612)*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure:  Fee Agreement

MLF0039608

EX. 102-7

# MOORE LAW FIRM, PROFESSIONAL CORPORATION

**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **The Pep Boys Manny Moe & Jack of California.**

DATE: _____

_____
CLIENT'S SIGNATURE- RONALD MOORE

_____
ADDRESS

_____
CITY

_____
TELEPHONE

DATE:_____

MOORE LAW FIRM, PC
ATTORNEY FOR RONALD MOORE

MLF0039609

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

---

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
### 332 N. Second Street
### San Jose, CA 95112
### (408) 298-2000

THIS AGREEMENT, made this _____ at **San Jose, CA,** by and between <u>Ronald</u> <u>Moore</u>, hereinafter designated as "Client," and **the Moore Law Firm, PC,** hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case against ***The Pep Boys Manny Moe & Jack of*** ***California*** and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## <u>FEE ARRANGEMENTS</u>

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

MLF0039610

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0039611

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)      Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)      Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)      In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)      In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)      The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0039612

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, no fees will be charged to Client .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0039613

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0039614

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial                    _____Initial

MLF0039615

DATE:_____          _____
                                CLIENT'S SIGNATURE


DATE:_____          _____
                                CLIENT'S NAME

                                _____
                                ADDRESS


                                _____
                                CITY


                                _____
                                TELEPHONE


MY WITNESS(S) ARE _____
(if none please indicate so)



DATE:_____          MOORE LAW FIRM, PC


                                _____
                                ATTORNEY FOR RONALD MOORE




MLF0039616

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | No. |
| Plaintiff, | **COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |
| vs. | |
| THE PEP BOYS MANNY MOE & JACK OF CALIFORNIA, A CALIFORNIA CORPORATION dba PEP BOYS, #668; | |
| Defendants. | |

## I. SUMMARY

1.  This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Pep Boys #668
> 693 W. Shaw Ave.
> Clovis, CA 93612
> (hereafter "the Facility")

2.  Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against THE PEP BOYS MANNY MOE & JACK OF CALIFORNIA, A CALIFORNIA CORPORATION dba PEP BOYS #668 (hereinafter referred to as "Defendants"), pursuant to

MLF0039617

1    the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related

2    California statutes.

**II.    JURISDICTION**

4    3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

5    claims.

6    4.    Supplemental jurisdiction for claims brought under parallel California law –

7    arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

8    5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

**III.    VENUE**

10    6.    All actions complained of herein take place within the jurisdiction of the United

11    States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

12    § 1391(b), (c).

**IV.    PARTIES**

14    7.    Defendants own, operate, and/or lease the Facility, and consist of a person (or

15    persons), firm, and/or corporation.

16    8.    Plaintiff requires the use of a wheelchair when traveling about in public.

17    Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

18    United States laws, and a member of the public whose rights are protected by these laws.

**V.    FACTS**

20    9.    The Facility is a public accommodation facility, open to the public, which is

21    intended for nonresidential use and whose operation affects commerce.

22    10.    Plaintiff visited the Facility and encountered barriers (both physical and

23    intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

24    goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

25    encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

26    about May 25, 2014:

27    a)    Plaintiff parked in the designated accessible parking spot, only to

28    discover cracked pavement in the parking spot and on the ramp leading

*Moore v. The Pep Boys Manny Moe & Jack of CA., et al.*
Complaint

Page 2

MLF0039618

EX. 102-17

from the parking lot to the sidewalk. It was difficult for Plaintiff to transfer between his vehicle and wheelchair and to maneuver towards the entrance due to the uneven pavement surface.

    b)    The ramp next to the designated accessible parking spot was located within the access aisle. It was especially difficult for Plaintiff to get out of his vehicle and into his wheelchair because of the incline of the ramp.

    c)    The threshold of the entryway to the Facility was high and Plaintiff had to attempt several times to maneuver his chair over it.

    d)    Plaintiff attempted to use the front counter of the Facility, but it was too high for him to conduct his transaction and he required the assistance of his grandsons.

    e)    Traveling down the ramp from the sidewalk to the parking lot proved to be difficult for Plaintiff due to the ramp's steep grade. Plaintiff had to employ caution and control in order to not roll too quickly down the ramp into the path of vehicular traffic.

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.    Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.    Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these

MLF0039619

1  barriers from the Facility (without much difficulty or expense), and make the Facility
2  accessible to the physically disabled. To date, however, Defendants refuse to either remove
3  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

4      14.    At all relevant times, Defendants have possessed and enjoyed sufficient control
5  and authority to modify the Facility to remove impediments to wheelchair access and to
6  comply with the 2010 Standards for Accessible Design and the California Code of Regulations
7  Title 24. Defendants have not removed such impediments and have not modified the Facility to
8  conform to accessibility standards. Defendants have intentionally maintained the Facility in its
9  current condition and have intentionally refrained from altering the Facility so that it complies
10  with the accessibility standards.

11      15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is
12  so obvious as to establish Defendants' discriminatory intent. On information and belief,
13  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere
14  to relevant building standards; disregard for the building plans and permits issued for the
15  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at
16  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'
17  property continues to exist in its non-compliant state. Plaintiff further alleges, on information
18  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the
19  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

20              **VI.    FIRST CLAIM**
21          **Americans with Disabilities Act of 1990**
22          Denial of "Full and Equal" Enjoyment and Use

23      16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for
24  this claim.

25      17.    Title III of the ADA holds as a "general rule" that no individual shall be
26  discriminated against on the basis of disability in the full and equal enjoyment (or use) of
27  goods, services, facilities, privileges, and accommodations offered by any person who owns,
28  operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

*Moore v. The Pep Boys Manny Moe & Jack of CA., et al.*
Complaint

MLF0039620

EX. 102-19

18.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

### Failure to Remove Architectural Barriers in an Existing Facility

19.     The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.     When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.     Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.     In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### Failure to Design and Construct an Accessible Facility

23.     Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.     The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.     Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public –

MLF0039621

EX. 102-20

1  including Plaintiff – when it was structurally practical to do so.[1]

2  <u>Failure to Make an Altered Facility Accessible</u>

3  26.    Plaintiff alleges on information and belief that the Facility was modified after

4  January 26, 1992, independently triggering access requirements under the ADA.

5  27.    The ADA also requires that facilities altered in a manner that affects (or could

6  affect) its usability must be made readily accessible to individuals with disabilities to the

7  maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

8  primary function also requires making the paths of travel, bathrooms, telephones, and drinking

9  fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

10  28.    Here, Defendants altered the Facility in a manner that violated the ADA and

11  was not readily accessible to the physically disabled public – including Plaintiff – to the

12  maximum extent feasible.

13  <u>Failure to Modify Existing Policies and Procedures</u>

14  29.    The ADA also requires reasonable modifications in policies, practices, or

15  procedures, when necessary to afford such goods, services, facilities, or accommodations to

16  individuals with disabilities, unless the entity can demonstrate that making such modifications

17  would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

18  30.    Here, Defendants violated the ADA by failing to make reasonable modifications

19  in policies, practices, or procedures at the Facility, when these modifications were necessary to

20  afford (and would not fundamentally alter the nature of) these goods, services, facilities, or

21  accommodations.

22  31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney

23  fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

24  32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants

25  violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

26

27

28
_____

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a
private attorney general under either state or federal statutes.

*Moore v. The Pep Boys Manny Moe & Jack of CA., et al.*
Complaint
Page 6

MLF0039622

EX. 102-21

## VII.  SECOND CLAIM

### Unruh Act

33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.    California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.    California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.    California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.    Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.    These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.    Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of

*Moore v. The Pep Boys Manny Moe & Jack of CA., et al.*
Complaint

MLF0039623

EX. 102-22

1   Government Code § 4450.

2         43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-
3   exempt) public accommodation constructed prior to July 1, 1970, which is altered or
4   structurally repaired, is required to comply with this chapter.

5         44.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or
6   repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code
7   § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

8         45.    Defendants' non-compliance with these requirements at the Facility aggrieved
9   (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,
10   Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

11                       **IX.    PRAYER FOR RELIEF**

12         WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

13     1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

14     2.      Declaratory relief that Defendants violated the ADA for the purposes of Unruh
15            Act damages.

16     3.      Statutory minimum damages under section 52(a) of the California Civil Code
17            according to proof.

18     4.      Attorneys' fees, litigation expense, and costs of suit.[2]

19     5.      Interest at the legal rate from the date of the filing of this action.

20     6.      For such other and further relief as the Court deems proper.

21
22   Dated: July 8, 2014                MOORE LAW FIRM, P.C.

23                         */s/ Tanya E. Moore*
24                         Tanya E. Moore
                            Attorneys for Plaintiff
25                         Ronald Moore

26
27
28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. The Pep Boys Manny Moe & Jack of CA., et al.*
Complaint

MLF0039624

EX. 102-23

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:  July 8, 2014             /s/ Ronald Moore
                                 Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                 /s/ Tanya E. Moore
                                 Tanya E. Moore, Attorney for
                                 Plaintiff, Ronald Moore


*Moore v. The Pep Boys Manny Moe & Jack of CA., et al.*
*Verification*

MLF0039625

EX. 102-24

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 7/8/14

_Ronald Moore_
Ronald Moore

*Ronald Moore v. The Pep Boys Manny Moe & Jack of California*

MLF0039744

EX. 102-25

# Exhibit 103

Ventana
_____ Avenue Ste 101
Fresno, CA  93710
(559) 228-8673
Jul14'14 08:25PM
d Type: H/C
ct #:      XXXXXXXXXXX4370
rd Ent... SWIPED
... Type: PURCHASE
... de: 05685B
32
41/1
...u3 Salvador

80.54

8054

total:

Signature

I Agree To Pay Above Total
According To My Card issuer
Agreement.

** Customer Copy **

Plaza Ventana
..3 W. Shaw Avenue Ste 101
Fresno, CA  93710
(559) 228-8673

Cst 5
...99
...S
YA
...
...

...54

...ank You For Joining us

MLF0038744

EX. 103-2

Plaza Ventana
3173 W. Shaw Avenue Ste 101
Fresno, CA 93710
(559)228-8073
Date:        May15'14 02:01 M
Card Type:   M/C
Acct #:      XXXXXXXXXXXXX
Card Entry:  SWIPED
Trans Type:  PURCHASE
Auth Code:   17570Z
Check:       291
Table:       51/1
Server:      144 Raymundo

Subtotal:              35.68
Tip:_____

Total:_____
                        42.00
_____
Signature

I Agree To Pay Above Total
According To My Card issuer
Agreement.

** Customer Copy **

Plaza Ventana
3173 W. Shaw Avenue Ste 101
Fresno, CA 93710
(559)228-8073

144 Raymundo

Tbl 51/1        Chk 291         Gst 2
          May15'14 01:49PM

1 Coctel de Camro           10.99
1 Torta                      9.99
1 Two Enchys Combo          11.99

  Subtotal                  32.97
  Tax                        2.71
  Total                     35.68


Thank You For Joining Us Today

MLF0038687

EX. 103-3

KAK WAH RESTAURANT
3025 W SHAW AVE STE
FRESNO, CA 93711
559-225-2993

Merchant ID: 882410763G
Term ID: 0002150000024107636001
Server ID: 1

## Sale

xxxxxxxxxxxx4008
VISA

Entry Method: Swiped

Amount:                    $      32.35
Tip:                       ---------------

Total:                     ===============

03/05/14                            21:16:47
Inv #: 000011            Appr Code: 094678
Apprvd: Online

Customer Copy
THANK YOU!

MLF0038677

EX. 103-4



**BIG LOTS!**

BIG LOTS STORES - #1942
TIMES SQUARE
3131 W SHAW AVE
FRESNO CA 93711-3210
559-222-9077

05/15/2014                    6:49:22 PM PDT
Trans.: 4774                   Store: 01942
Reg.: 001                      Till:maryl
Cashier: 1274858               Sales: 1274858

SALE

|||||||||||||||||||||||||||||||||||||
0194200147742014051500

KC CLOCK FORK SPN BLK              15.00 T
  810158916          1 @ 15.00
FX MAPLE BROWN SUGAR HAM            3.00 N
  110130978          1 @ 3.00
Sub-Total                          18.00
  CA 8.225% Taxable    15.00
  CA 8.225% Tax          1.23
Total Sales Tax                     1.23

Total                              19.23
  MasterCard (S)             19.23
    Account: 7245
    Expires: **/****
    Auth: 632192.89869663 (A)
Total Tender                       19.23
Change Due                          0.00

MLF0O038684

EX. 103-5

```
        JK CIGARETTES
        3025 W SHAW AVE
        FRESNO, CA 93711

03/05/2014        21:39:04
MID:       000000003332359
TID:           06029072
372229334886

        CREDIT CARD
      VISA SALE

CARD:    XXXXXXXXXXXX4008
INVOICE            0002
Batch #:         000234
App Code:        07164B
Entry Mode:      Swiped
```

MLF0038674

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADAI No.
(Facility)

1. What is the name of the Facility? JK Cigarettes

2. When did you visit the Facility? 3/5/14 (Date) 9:40 (Time)

3. What is the address of the Facility? 3025 W. Shaw Fresno, CA

4. Was this your first visit to the Facility? No

5. How many times have you visited the Facility? ? If more than one visit, please list the date and time if you know it. ?

6. What was the purpose of your visit? lotto tickets

7. Who accompanied you to the Facility? Grandson Ronny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself of did you get a ride from someone else? I Drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In dp parking

11. Was it difficult for you to park there? Not really

12. Why?

13. How did you unload from your vehicle? Rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? Grandson

16. What problems did you encounter transferring onto your wheelchair?

Not Much grandson helped Me

17. Which way did you go from the parking to the entrance of the Facility? Up ramp to door

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

Yes ramp goes into street. Street raised into ramp. Also ramp goes into access isle

19. Did you encounter any problems opening the door? Describe why. door was very small had to pull Myself threw door and almost knocked over lotto stand

20. Did you have any problems inside the Facility? Describe. Yes

MLF0038672

EX. 103-7

_fountain drinks and hot food were to high_

21. What did you purchase (or what meal did you have there).  Describe: lotto tix and E cigarette

22. Have you used the restroom at the Facility? N/A

23. Why did you need to use the restroom? N/A

24. Did you use the sink? N/A

25. Any problems? N/A

26. Did you use the urinal? N/A

27. Did you use the toilet? N/A

28. Did you use the toilet paper? N/A

29. Did you use paper towels? N/A

30. Did you use the soap dispenser? N/A

31. Did you have any problem maneuvering inside the restroom? N/A

32. Where did you sit? N/A

33. Was there any seating provided inside the Facility? N/A

34. Was it wheelchair accessible? No

35. Where you comfortable at the table? N/A

36. Did you use the counter to pay for purchase? yes

37. Which counter did you use? only one

38. Was the counter accessible? No couldn't reach grandson had to sign receipt Stuff in front of counter

39. Which way did you go after you left the Facility? right towards car

40. Any problems getting back to your vehicle? Not Much

41. Any problems transferring from your wheelchair to your vehicle? Not Much grandson helped me

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0038673

EX. 103-8

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADAI No.
(Facility)

1. What is the name of the Facility? Kar Wah Restaurant

2. When did you visit the Facility? 3/5/14 (Date) 9:15 (Time)

3. What is the address of the Facility? 3025 W. Show Ave. Fresno, CA

4. Was this your first visit to the Facility? NO

5. How many times have you visited the Facility? ? If more than one visit, please list the date and time if you know it. ?

6. What was the purpose of your visit? Dinner

7. Who accompanied you to the Facility? Grandson and JR

8. What car did you drive to the Facility? Mine

9. Did you drive yourself of did you get a ride from someone else? I Drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In dp parking spot

11. Was it difficult for you to park there? Not really

12. Why?

13. How did you unload from your vehicle? rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? Grandson

16. What problems did you encounter transferring onto your wheelchair?

Much grandson helped

17. Which way did you go from the parking to the entrance of the Facility? Up ramp towards door

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
Yes ramp goes into street. Street is raised up to ramp

19. Did you encounter any problems opening the door? Describe why. Yes Door Closed on me going in

20. Did you have any problems inside the Facility? Describe. Yes

MLF0038675

EX. 103-9

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADAI No.
(Facility)

wall in way of Me getting to table had to go around restaurant. Waiter also had to Move chairs so I could get to table it was embarrassing.

**21.** What did you purchase (or what meal did you have there). Describe: 3 Meals

**22.** Have you used the restroom at the Facility? No couldn't get into the door stuff in the way. couldn't get threw door anyway

**23.** Why did you need to use the restroom? to wash hands

**24.** Did you use the sink? N/A

**25.** Any problems? had waiter bring Me a wet rag. Was said if there was a fire

**26.** Did you use the urinal? N/A   I would have to go threw the fire to be able to

**27.** Did you use the toilet? N/A   get to the door and I would be screwed

**28.** Did you use the toilet paper? N/A

**29.** Did you use paper towels? N/A

**30.** Did you use the soap dispenser? N/A

**31.** Did you have any problem maneuvering inside the restroom? N/A

**32.** Where did you sit? On left side of restaurant because right side was all booths and I would be blocking the Isle if I sat at booth

**33.** Was there any seating provided inside the Facility? Yes

**34.** Was it wheelchair accessible? Some what

**35.** Where you comfortable at the table? Yes

**36.** Did you use the counter to pay for purchase? No

**37.** Which counter did you use? Payed at table

**38.** Was the counter accessible? I don't know

**39.** Which way did you go after you left the Facility? down ramp to car

**40.** Any problems getting back to your vehicle? Not Much

**41.** Any problems transferring from your wheelchair to your vehicle? Not really grandson helped Me

**42.** If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0038676

EX. 103-10

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? Big Lots

2. When did you visit the Facility? 5/15/14 (Date) 6:30 pm (Time)

3. What is the address of the Facility? 3131 West Shaw Ave Fresno, CA

4. Was this your first visit to the Facility? No

5. How many times have you visited the Facility? 7 If more than one visit, please list the date and time if you know it. 7

6. What was the purpose of your visit? Mattress and patio furniture

7. Who accompanied you to the Facility? Grandson and Jhonny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself of did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In dp parking spot

11. Was it difficult for you to park there? No

12. Why? N/A

13. How did you unload from your vehicle? Rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? Jhonny

16. What problems did you encounter transferring onto your wheelchair?

No

17. Which way did you go from the parking to the entrance of the Facility? To access isle

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

Ramp goes out to street, ~~though~~

19. Did you encounter any problems opening the door? Describe why. Doors heavy, threshold high

20. Did you have any problems inside the Facility? Describe. Yes, isles too small, no clearance to get to the beds.

MLF0038682

EX. 103-11

No clearance between the tables and chairs and I got stuck and Jhonny had to help me get out of there.

21. What did you purchase (or what meal did you have there). Describe: Beef jerky and a clock.

22. Have you used the restroom at the Facility? Yes

23. Why did you need to use the restroom? Had to go

24. Did you use the sink? Yes

25. Any problems? Bathroom door stall didnot close on its own bathroom door closes on you coming in and out

26. Did you use the urinal? No

27. Did you use the toilet? Yes

28. Did you use the toilet paper? Yes

29. Did you use paper towels? Yes

30. Did you use the soap dispenser? Yes

31. Did you have any problem maneuvering inside the restroom? Some

32. Where did you sit? N/A

33. Was there any seating provided inside the Facility? N/A

34. Was it wheelchair accessible? No

35. Where you comfortable at the table? N/A

36. Did you use the counter to pay for purchase? Yes

37. Which counter did you use? First register closest to door

38. Was the counter accessible? No, it was too high out of reach, grandson had to give card and sign reciept.

39. Which way did you go after you left the Facility? To access isle

40. Any problems getting back to your vehicle? No

41. Any problems transferring from your wheelchair to your vehicle? _____

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0038683

EX. 103-12

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? _Barbr Cantina Plaza Ventura_

2. What is the address of the Facility? _3173 W Shaw Ave Ste 101_

3. When did you visit the Facility? _5/15/14_ (Date) _130pm_ (Time)

4. Was this your first visit to the Facility? _No_

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. _3 w_

6. What was the purpose of your visit? _To eat_

7. Who accompanied you to the Facility? _My wife Lynn_

8. What car did you drive to the Facility? _Mine_

9. Did you drive yourself or did you get a ride from someone else? _I Drove_

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. _In Front of Restuarnt_

11. Was it difficult for you to park there? If so, why? _Yes There was No Ramp had to go over CURB._

12. How did you unload from your vehicle? _Rear_

13. What side of the vehicle did you unload from? Driver or passenger? _Driver_

14. Did anyone help you to transfer onto your wheelchair? Who? _wife_

15. Did you encounter any problems transferring onto your wheelchair? Describe. _Not Really_

16. Which way did you go from the parking to the entrance of the Facility? _Straight Ahead_

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. _No Ramp No signs Nothing had to go over curb wife had to Help me_

18. Did you encounter any problems opening the door? Describe. _Door Heavy_

19. What did you purchase (or what meal did you have there)? _Food 2 meal and herbs_

20. Did you need to use the restroom while you were at the Facility? Why? _Door opened out Hard to get out of Door when in Restroom_

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0038685

EX. 103-13

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: _____ Yes _____

Toilet: _____ Yes _____

Urinal: _____ No _____

Toilet paper: _____ Yes _____

Toilet seat covers: _____ Yes _____ High _____

Paper towels/hand dryer: _____ Yes _____

Soap dispenser: _____ Yes _____

Other: _____

22. Did you have any problem maneuvering inside the restroom? _____ Yes opening

23. Was there any seating provided inside the Facility? _____ Yes

24. Were you able to sit comfortably at the table? If not, why? _____ No table leg in way could not seat all the way up to table

25. Did you use the counter to pay for purchase? Which one? _____ NO

26. Did you pay with cash or credit card? _____ credit card

27. Was the counter accessible? If not, describe: _____ N/A

28. Did you have any other problems inside the Facility? Describe. _____ Isle were narrow

29. Which way did you go after you left the Facility? _____ out door off curb to my car

30. Any problems getting back to your vehicle? _____ Yes Had to jump the curb Almost fell over wife grabbed me.

31. Any problems transferring from your wheelchair to your vehicle? _____ my wife helped me

32. Any additional information you believe would assist us in evaluating this inquiry?
_____ yes on way to restroom had to get By people eating.

MLF0038686

EX. 103-14

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADAI No.
(Facility)

1. What is the name of the Facility? JK Cigarettes

2. When did you visit the Facility? 3/5/14 (Date) 9:40 (Time)

3. What is the address of the Facility? 3025 W. Shaw Fresno, CA

4. Was this your first visit to the Facility? No

5. How many times have you visited the Facility? ? If more than one visit, please list the date and time if you know it. ?

6. What was the purpose of your visit? lotto tickets

7. Who accompanied you to the Facility? Grandson Ronny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself of did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In dp parking

11. Was it difficult for you to park there? Not really

12. Why? _____

13. How did you unload from your vehicle? Rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? Grandson

16. What problems did you encounter transferring onto your wheelchair?

Not Much grandson helped me

17. Which way did you go from the parking to the entrance of the Facility? Up ramp to door

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

Yes ramp goes into street. Street raised into ramp.
Also ramp goes into access isle

19. Did you encounter any problems opening the door? Describe why door was very small
had to pull Myself threw door and almost knocked over lotto stand

20. Did you have any problems inside the Facility? Describe. Yes

MLF0038740

EX. 103-15

_fountain drinks and hot food were to high_

21. What did you purchase (or what meal did you have there). Describe: lotto tix and e cigarette

22. Have you used the restroom at the Facility? N/A

23. Why did you need to use the restroom? N/A

24. Did you use the sink? N/A

25. Any problems? N/A

26. Did you use the urinal? N/A

27. Did you use the toilet? N/A

28. Did you use the toilet paper? N/A

29. Did you use paper towels? N/A

30. Did you use the soap dispenser? N/A

31. Did you have any problem maneuvering inside the restroom? N/A

32. Where did you sit? N/A

33. Was there any seating provided inside the Facility? N/A

34. Was it wheelchair accessible? No

35. Where you comfortable at the table? N/A

36. Did you use the counter to pay for purchase? Yes

37. Which counter did you use? only one

38. Was the counter accessible? No couldn't reach grandson had to sign receipt
stuff in front of counter

39. Which way did you go after you left the Facility? right towards car

40. Any problems getting back to your vehicle? Not Much

41. Any problems transferring from your wheelchair to your vehicle? Not Much grandson helped me

42. If you have any additional information you believe would assist us in evaluating this inquiry.

MLF0038741

EX. 103-16

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

1. What is the name of the Facility? Kar Wah Restaurant

2. When did you visit the Facility? 3/5/14 (Date) 9:15 (Time)

3. What is the address of the Facility? 3025 W. Shaw Ave. Fresno, CA

4. Was this your first visit to the Facility? NO

5. How many times have you visited the Facility? ? If more than one visit, please list the date and time if you know it. ?

6. What was the purpose of your visit? Dinner

7. Who accompanied you to the Facility? Grandson and JR

8. What car did you drive to the Facility? Mine

9. Did you drive yourself of did you get a ride from someone else? I Drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In dp parking spot

11. Was it difficult for you to park there? Not really

12. Why? 

13. How did you unload from your vehicle? rear

14. What side of the vehicle did you unload from? Driver or passenger? Driver

15. Did anyone help you to transfer onto your wheelchair? Grandson

16. What problems did you encounter transferring onto your wheelchair?

Much grandson helped

17. Which way did you go from the parking to the entrance of the Facility? Up ramp towards door

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.

Yes ramp goes into street. Street is raised up to ramp

19. Did you encounter any problems opening the door? Describe why Yes Door

Closed on me going in

20. Did you have any problems inside the Facility? Describe. Yes

MLF0038742

EX. 103-17

wall in way of Me getting to table had to go around restaurant. Waiter also had to Move chairs so I could get to table it was embarrassing.

**21. What did you purchase (or what meal did you have there).** Describe: 3 Meals

**22. Have you used the restroom at the Facility?** No couldn't get into the door stuff in the way. couldn't get threw door anyway

**23. Why did you need to use the restroom?** try wash hands

**24. Did you use the sink?** N/A

**25. Any problems?** had waiter bring Me a wet rag. He said if there was a fire

**26. Did you use the urinal?** N/A    I would have to go threw the fire to be able to

**27. Did you use the toilet?** N/A    get to the door and I would be screwed

**28. Did you use the toilet paper?** N/A

**29. Did you use paper towels?** N/A

**30. Did you use the soap dispenser?** N/A

**31. Did you have any problem maneuvering inside the restroom?** N/A

**32. Where did you sit?** On left side of restaurant because right side was all booths and I would be blocking the Isle if I sat at booth

**33. Was there any seating provided inside the Facility?** Yes

**34. Was it wheelchair accessible?** Some what

**35. Where you comfortable at the table?** Yes

**36. Did you use the counter to pay for purchase?** No

**37. Which counter did you use?** payed at table

**38. Was the counter accessible?** I don't know

**39. Which way did you go after you left the Facility?** down ramp to car

**40. Any problems getting back to your vehicle?** Not Much

**41. Any problems transferring from your wheelchair to your vehicle?** Not really grandson helped Me

**42. If you have any additional information you believe would assist us in evaluating this inquiry.**

MLF0038743

EX. 103-18

# BARRIER MEMO

**ADAI No. :**    01924

**Case Name:**    Moore v. Times Square Holdings, LLC

**Address:**    Big Lots (3131 West Shaw Ave., Fresno, CA)
Border Cantina Plaza (3173 West Shaw Ave., Ste. 101, Fresno, CA)

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Big Lots – Ramp Extends Far into Street | The ramp leading to the entrance of the facility extended very far into the street which compromised the plaintiff's safety due to the amount of cars that passed by. This created an intense hurdle for the client to overcome safely and easily. | |
| Big Lots – Heavy Door | The door to the facility was heavy which made it hard for the plaintiff to hold it open while he tried to wheel himself inside. Luckily, the plaintiff's grandson was able to help him. | |
| Big Lots – High Threshold | The threshold at the entrance to the facility was high so the plaintiff was forced to try and pop up his chair a few times in order to make it over. Unfortunately, this often causes the plaintiff to hit his knuckles against the door frame which is both embarrassing and painful. | |
| Big Lots – Tight Aisles | The aisles in the facility were tight, especially around the area where they displayed beds and tables. The plaintiff actually got stuck in one of these aisles and his grandson had to help get him out. | |
| Big Lots – Bathroom Door | The restroom door closed on the plaintiff both on his way in and on his way out. | |
| Big Lots – Bathroom Stall Door | The stall door could not close on its own and the client was forced to hook it with his cane and then latch it. | |
| Big Lots – High Counter | The first counter closest to the entrance was too high for the plaintiff to access so, his wife made the transaction instead. | |
| Border Cantina – No Ramp | The facility did not have a ramp, so the plaintiff was forced to pop up his chair over the curb which was dangerous and embarrassing. | |
| Border Cantina – No Signs for Designated Handicap Parking | The plaintiff had a difficult time locating the designated handicap parking spot because there were no signs indicating its whereabouts. | |
| Border Cantina – Heavy Door | The door to the facility was heavy which made it hard for the plaintiff to hold it open while he tried to | |

1

MLF0038678

EX. 103-19

| | | |
|---|---|---|
| | wheel himself inside. Luckily, the plaintiff's wife was able to help him. | |
| Border Cantina – Outward Opening Restroom Door | Because the restroom door opened outward, the plaintiff struggled to hold it open while he wheeled himself out of the restroom. | |
| Border Cantina – High Toilet Seat Covers | The toilet seat covers were too high for the plaintiff to access. | |
| Border Cantina – Inaccessible Table | The table at which the plaintiff was seated had a bar underneath it that prevented him from sitting up close to the table. The caused the plaintiff to eat the rest of his meal uncomfortably and awkwardly. | |
| Border Cantina – No Direct/Accessible Route of Travel to Restroom | The entire facility was very tight for the plaintiff to wheel through, but this proved especially troublesome when the plaintiff wanted to reach the restroom. The plaintiff had no choice but to wheel in between tables full of people in order to reach the restroom which was embarrassing. | |

2

MLF0038679

EX. 103-20

ADAI No. :   01924

Case Name:   Moore v. Times Square Holdings, LLC

Address:   Kar Wah Restaurant/JK Cigarettes
           3025 W. Shaw, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Common areas - Built-up curb ramp | The ramp from the parking lot to the sidewalk in front of the Facility entrances was an improperly configured built-up curb ramp. Plaintiff feared that he would roll off the sloped edges of the ramp. | Yes |
| Kar Wah – Door closed on him | The entry door at the Kar Wah Restaurant closed too quickly and it closed on Plaintiff when he was trying to enter. | Yes, and very heavy |
| Kar Wah – Route to table lacks clearance | Plaintiff was seated by Kar Wah Facility staff at a table which required him to travel a roundabout path through the restaurant, as the direct route lacked necessary wheelchair clearances. The waiter had to nevertheless move chairs out of Plaintiff's way so that he could get to the table, which was embarrassing. | Yes |
| Kar Wah - No route to restroom | Plaintiff needed to use the restroom to wash his hands at the Kar Wah Facility but could not locate a route with sufficient clearance for his wheelchair to fit through. Plaintiff could see that even if he were able to make his way to the entrance of the restroom, the doorway was too narrow for his wheelchair to fit inside. Unable to wash his hands in the restroom, he was forced to have the waiter bring him a wet rag. | Yes, no way |
| JK – Entry door narrow | The entry door at the JK Facility was too narrow, and was obstructed on the inside by a lotto display. Plaintiff had to pull himself through the doorway by holding onto the door frame, because there was not enough space for his hands on either side of his wheelchair. He almost knocked over the lotto display on his way in. | Not sure if correct but may have been obstructed |
| JK – Fountain drinks and hot food too high | Plaintiff wanted to buy a fountain drink and hot food at the JK Facility, but the self-serve fountain drink | Yes |

1

MLF0038680

| | | |
|---|---|---|
| | machine and hot food displays were too high for him to reach. | |
| Counter too high, obstructed | The transaction counter at the JK Facility was too high and lacked sufficient clearance in front of it, preventing Plaintiff from signing his receipt on the counter. Plaintiff's grandson had to sign for him. | Yes |

2

MLF0038681

EX. 103-22



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 3, 2014

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:    **ADAI No.   01924**
**Times Square Holdings, LLC (Kar Wah Restaurant, JK Cigarettes)**
*3025 W Shaw Avenue, Fresno, CA*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records.  Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure:  Fee Agreement

MLF0O038688

EX. 103-23

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA 95112**
**(408) 298-2000**

      I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Times Square Holdings, LLC (Kar Wah Restaurant, JK Cigarettes).**

DATE: _____     _____
                                       CLIENT'S SIGNATURE- RONALD MOORE

                                       _____
                                       ADDRESS

                                       _____
                                       CITY

                                       _____
                                       TELEPHONE

DATE:_____     MOORE LAW FIRM, PC
                                       ATTORNEY FOR RONALD MOORE

MLF0038689

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
332 N. Second Street
San Jose, CA 95112
(408) 298-2000

THIS AGREEMENT, made this _____ at **San Jose, CA**, by and between Ronald Moore, hereinafter designated as "Client," and **the Moore Law Firm, PC**, hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case against *Times Square Holdings, LLC (Kar Wah Restaurant, JK Cigarettes)* and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

MLF0038690

EX. 103-25

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION:  Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief.  Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed.  Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim.  As noted, some claims may include personal injury and statutory violations.  Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ).  NO GUARANTEES:  Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i).  PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s).  The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees.  However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii).  CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict.  Client understands the Attorney may receive nothing for services rendered and costs advanced.  Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement.  The Client should consult with any other lawyer for legal advice before entering into this contract.  Client

MLF0038691

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

## FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e).  FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)      Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)     Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)    In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)    In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages.  This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0038692

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u>.

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0038693

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0038694

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial                    _____Initial

MLF0038695

DATE:_____

CLIENT'S SIGNATURE
_____

DATE:_____

CLIENT'S NAME
_____

ADDRESS
_____


CITY
_____


TELEPHONE
_____

MY WITNESS(S) ARE_____
(if none please indicate so)


DATE:_____          MOORE LAW FIRM, PC


ATTORNEY FOR RONALD MOORE
_____

MLF0038696



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 1, 2014

**K. RANDOLPH MOORE**
*ESQUIRE*
*AND FOUNDER*

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE: ADAI No.     01924
Times Square Holdings, LLC (Kar Wah Restaurant, JK Cigarettes)
*3025 W Shaw Avenue, Fresno, CA*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure:  Fee Agreement

MLF0038697

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
**332 N. Second Street**
**San Jose, CA  95112**
**(408) 298-2000**


     I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Times Square Holdings, LLC (Kar Wah Restaurant, JK Cigarettes).**


DATE: _____

                        _____
                        CLIENT'S SIGNATURE- RONALD MOORE

                        _____
                        ADDRESS

                        _____
                        CITY

                        _____
                        TELEPHONE

DATE:_____

                        MOORE LAW FIRM, PC
                        ATTORNEY FOR RONALD MOORE

MLF0038698

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

## MOORE LAW FIRM, PROFESSIONAL CORPORATION
332 N. Second Street
San Jose, CA 95112
(408) 298-2000

THIS AGREEMENT, made this _____ at **San Jose, CA**, by and between Ronald
Moore, hereinafter designated as "Client," and **the Moore Law Firm, PC**, hereinafter designated as
"Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to
represent him/her as his/her attorney at law in the case against *Times Square Holdings, LLC (Kar Wah*
*Restaurant, JK Cigarettes)* and whosoever may be liable. No tort action shall be filed for emotional
distress (unless otherwise agreed).

PARAGRAPH 1.  ATTORNEY TAKES ALL STEPS NECESSARY:  Client empowers
Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and
resolve Client's claims.

PARAGRAPH 2.  COOPERATION: Client agrees to cooperate fully throughout litigation and
immediately notify Attorney of any changes in address, phone number, or employment.  If Client fails to
cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

### FEE ARRANGEMENTS

PARAGRAPH 3(a).  CONTINGENCY FEE ARRANGEMENTS:  If the Client doesn't recover,
or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee
agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is
subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where
the fee which in contingent upon court approval.)  In any event, any fee that requires court approval will
be the fee that controls this agreement.

MLF0038699

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0038700

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

## FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)     Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)     Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)    In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)    In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)     The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0038701

EX. 103-36

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u>.

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0038702

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0038703

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial          _____Initial

MLF0038704

DATE:_____

CLIENT'S SIGNATURE
_____

DATE:_____

CLIENT'S NAME
_____

ADDRESS
_____

CITY
_____

TELEPHONE
_____

MY WITNESS(S) ARE _____
(if none please indicate so)

DATE:_____

MOORE LAW FIRM, PC

_____

ATTORNEY FOR RONALD MOORE

MLF0038705

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | No. |
| Plaintiff, | **COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |
| vs. | |
| TIMES SQUARE HOLDINGS, LLC; KWOK SUN LEE dba KAR WAH RESTAURANT; LAURIE ZIYUAN LEE dba KAR WAH RESTAURANT; JAGJIT SINGH dba JK CIGARETTES; KAMALJIT KAUR SINGH dba JK CIGARETTES; | |
| Defendants. | |

## I. SUMMARY

1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

   a)   Kar Wah Restaurant
        3025 West Shaw Avenue, Suite 101
        Fresno, CA 93711
        (hereafter "the Kar Wah Facility")

   b)   JK Cigarettes
        3025 West Shaw Avenue, Suite 104
        Fresno, CA 93711
        (hereafter "the JK Facility")

*Moore v. Times Square Holdings, LLC, et al.*
Complaint

MLF0038706

EX. 103-41

1    Each of the facilities identified above shall be collectively hereafter referred to as
2  "the Facilities."
3        2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and
4  costs, pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.)
5  ("ADA") and related California statutes, against:
6              a)    TIMES SQUARE HOLDINGS, LLC (hereinafter "the Landlord
7                    Defendant");
8              b)    KWOK SUN LEE dba KAR WAH RESTAURANT and LAURIE
9                    ZIYUAN LEE dba KAR WAH RESTAURANT (hereinafter
10                   collectively "the Kar Wah Defendants"); and
11             c)    JAGJIT SINGH dba JK CIGARETTES and KAMALJIT KAUR
12                   SINGH dba JK CIGARETTES (hereinafter collectively "the JK
13                   Defendants").
14     The Kar Wah Defendants and the JK Defendants are collectively referred to herein as
15  "the Tenant Defendants," and together with the Landlord Defendant, collectively the
16  "Defendants."
17                    **II.    JURISDICTION**
18        3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for
19  ADA claims.
20        4.    Supplemental jurisdiction for claims brought under parallel California law –
21  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.
22        5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.
23                    **III.    VENUE**
24        6.    All actions complained of herein take place within the jurisdiction of the
25  United States District Court, Eastern District of California, and venue is invoked pursuant to
26  28 U.S.C. § 1391(b), (c).
27                    **IV.    PARTIES**
28        7.    Plaintiff believes, and thereon alleges, that the Landlord Defendant owns,

*Moore v. Times Square Holdings, LLC, et al.*
Complaint

MLF0038707

EX. 103-42

1  operates, and/or leases the real property consisting of the real property and common areas of
2  the Facilities as well as the physical structures thereon (including the buildings in which each
3  of the individual Tenant Defendants' Facilities is located), and consists of a person (or
4  persons), firm, or corporation. Plaintiff further believes, and thereon alleges, that the
5  Landlord Defendant leases the respective Facilities to the Tenant Defendants as follows:

6    a)    The Kar Wah Defendants own, operate, and/or lease the Kar Wah
7          Facility, and lease the Kar Wah Facility from the Landlord Defendant;
8          and
9    b)    The JK Defendants own, operate, and/or lease the JK Facility, and
10         lease the JK Facility from the Landlord Defendant.

11   8.   Plaintiff requires the use of a wheelchair when traveling about in public.
12  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and
13  United States laws, and is a member of the public whose rights are protected by these laws.

14                              V.    FACTS

15   9.   The Facilities are public accommodations, open to the public, which are
16  intended for nonresidential use and whose operation affects commerce.

17   10.  Plaintiff visited the Facilities and encountered barriers (both physical and
18  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the
19  goods, services, privileges and accommodations offered at the Facilities.  Plaintiff personally
20  encountered the following barriers at the Facilities during Plaintiff's visits to the Facilities on
21  or about March 5, 2014:

22   a)    The ramp from the designated accessible parking to the sidewalk
23         leading to the entrances of the Facilities was an improperly configured
24         built-up curb ramp, which was difficult for Plaintiff to maneuver up
25         and down. He feared that his wheelchair would roll off the sloped
26         edges of the ramp.
27   b)    The entry door at the Kar Wah Facility was heavy and closed too
28         quickly, and Plaintiff was unable to hold the door open and maneuver

*Moore v. Times Square Holdings, LLC, et al.*
Complaint

Page 3

MLF0038708

EX. 103-43

1    through the entrance before the door closed on him.

2    c)    Plaintiff was seated by Kar Wah Facility staff at a table which required
3          him to travel a roundabout path through the restaurant to reach it, as
4          the direct route lacked necessary wheelchair clearances. The waiter
5          had to move chairs out of Plaintiff's way so that he could get to the
6          table, which was embarrassing.

7    d)    Plaintiff needed to use the restroom to wash his hands at the Kar Wah
8          Facility but could not locate a route to the restroom with sufficient
9          clearance for his wheelchair to fit through. Additionally, Plaintiff
10         could see that even if he were able to make his way to the entrance of
11         the restroom, the doorway was too narrow for his wheelchair to fit
12         inside. Unable to wash his hands in the restroom, Plaintiff was forced
13         to have the waiter bring him a wet rag to clean his hands.

14   e)    Plaintiff wanted to buy a fountain drink and hot food at the JK
15         Facility, but the self-serve soda fountain and hot food displays were
16         too high for him to reach.

17   f)    The transaction counter at the JK Facility was too high and lacked
18         sufficient clearance in front of it, preventing Plaintiff from signing his
19         receipt on the counter. Plaintiff's grandson had to sign the receipt for
20         him.

21   11.   The barriers identified in paragraph 10 herein are only those that Plaintiff
22   personally encountered. Plaintiff is presently unaware of other barriers which may in fact
23   exist at the Facilities and relate to his disabilities. Plaintiff will seek to amend this Complaint
24   once such additional barriers are identified as it is Plaintiff's intention to have all barriers
25   which exist at the Facilities and relate to his disabilities removed to afford him full and equal
26   access.

27   12.   Plaintiff was, and continues to be, deterred from visiting the Facilities because
28   Plaintiff knows that the Facilities' goods, services, facilities, privileges, advantages, and

*Moore v. Times Square Holdings, LLC, et al.*
Complaint

Page 4

MLF0038709

1  accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

2  Plaintiff enjoys the goods and services offered at the Facilities, and will return to the

3  Facilities once the barriers are removed.

4        13.    Defendants knew, or should have known, that these elements and areas of the

5  Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access

6  to the physically disabled.   Moreover, Defendants have the financial resources to remove

7  these barriers from the Facilities (without much difficulty or expense), and make the

8  Facilities accessible to the physically disabled.  To date, however, Defendants refuse to either

9  remove those barriers or seek an unreasonable hardship exemption to excuse non-

10  compliance.

11        14.    At all relevant times, Defendants have possessed and enjoyed sufficient

12  control and authority to modify the Facilities to remove impediments to wheelchair access

13  and to comply with the 2010 Standards for Accessible Design and the California Code of

14  Regulations Title 24.   Defendants have not removed such impediments and have not

15  modified the Facilities to conform to accessibility standards.  Defendants have intentionally

16  maintained the Facilities in their current condition and have intentionally refrained from

17  altering the Facilities so that they comply with the accessibility standards.

18        15.    Plaintiff further alleges that the (continued) presence of barriers at the

19  Facilities is so obvious as to establish Defendants discriminatory intent.  On information and

20  belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal

21  to adhere to relevant building standards; disregard for the building plans and permits issued

22  for the Facilities; conscientious decision to maintain the architectural layout (as it currently

23  exists) at the Facilities; decision not to remove barriers from the Facilities; and allowance

24  that Defendants' property continues to exist in its non-compliance state.  Plaintiff further

25  alleges, on information and belief, that the Facilities are not in the midst of a remodel, and

26  that the barriers present at the Facilities are not isolated (or temporary) interruptions in access

27  due to maintenance or repairs.

28  //

*Moore v. Times Square Holdings, LLC, et al.*
Complaint

MLF0038710

EX. 103-45

## VI.    FIRST CLAIM

### Americans with Disabilities Act of 1990

### Denial of "Full and Equal" Enjoyment and Use

16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facilities during each visit and each incident of deterrence.

### Failure to Remove Architectural Barriers in an Existing Facility

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facilities without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facilities' barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### Failure to Design and Construct an Accessible Facility

23.    Plaintiff alleges on information and belief that the Facilities were designed

*Moore v. Times Square Holdings, LLC, et al.*
Complaint

MLF0038711

EX. 103-46

and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.   The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.   Here, Defendants violated the ADA by designing and constructing (or both) the Facilities in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

26.   Plaintiff alleges on information and belief that the Facilities were modified after January 26, 1992, independently triggering access requirements under the ADA.

27.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible.  42 U.S.C. § 12183(a)(2).   Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.   Here, Defendants altered the Facilities in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

29.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.   Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facilities, when these modifications

---

[1] Nothing within this complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Times Square Holdings, LLC, et al.*
Complaint

MLF0038712

EX. 103-47

1   were necessary to afford (and would not fundamentally alter the nature of) these goods,

2   services, facilities, or accommodations.

3       31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief,

4   attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

5       32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that

6   Defendants violated the ADA in order to pursue damages under California's Unruh Civil

7   Rights Act.

8                  **VII.    SECOND CLAIM**

9                       **Unruh Act**

10       33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

11   this claim.

12       34.    California Civil Code § 51 states, in part, that:  All persons within the

13   jurisdiction of this state are entitled to the full and equal accommodations, advantages,

14   facilities, privileges, or services in all business establishments of every kind whatsoever.

15       35.    California Civil Code § 51.5 also states, in part that:  No business

16   establishment of any kind whatsoever shall discriminate against any person in this state

17   because of the disability of the person.

18       36.    California Civil Code § 51(f) specifically incorporates (by reference) an

19   individual's rights under the ADA into the Unruh Act.

20       37.    Defendants' aforementioned acts and omissions denied the physically

21   disabled public – including Plaintiff – full and equal accommodations, advantages, facilities,

22   privileges and services in a business establishment (because of their physical disability).

23       38.    These acts and omissions (including the ones that violate the ADA) denied,

24   aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

25       39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

26   minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

27       40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

28   ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

*Moore v. Times Square Holdings, LLC, et al.*
Complaint

MLF0038713

EX. 103-48

1 § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

42.     Health and Safety Code § 19955(a) states, in part, that:   California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

43.     Health and Safety Code § 19959 states, in part, that:  Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

44.     Plaintiff alleges the Facilities are public accommodations constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code § 19956.

45.     Defendants' non-compliance with these requirements at the Facilities aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.     Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.     Attorneys' fees, litigation expense, and costs of suit.[2]

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Times Square Holdings, LLC, et al.*
Complaint

Page 9

MLF0038714

EX. 103-49

5.   Interest at the legal rate from the date of the filing of this action.

6.   For such other and further relief as the Court deems proper.

Dated: July 1, 2014                          MOORE LAW FIRM, P.C.


                                             /s/ Tanya E. Moore
                                             Tanya E. Moore
                                             Attorneys for Plaintiff
                                             Ronald Moore

*Moore v. Times Square Holdings, LLC, et al.*
Complaint

MLF0038715

EX. 103-50

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:  July 1, 2014            /s/ Ronald Moore
                                Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                /s/ Tanya E. Moore
                                Tanya E. Moore, Attorney for
                                Plaintiff, Ronald Moore

*Moore v. Times Square Holdings, LLC, et al.*
*Verification*

MLF0038716

EX. 103-51

# Exhibit 104

**TOLEDITO'S**
**MEXICAN**
**RESTAURANT**
1704 VAN NESS AVE
FRESNO CA 93721
(559) 498-6507

08/07/2013 10:52AM    01
000000#7678      CLERK01

DEPT.01        T₁ $7.25
DEPT.01        T₁ $7.25
MDSE ST           $14.50
TAX1               $1.19

ITEMS          20
***TOTAL       $15. 69
CASH            $100.00
CHANGE           $84.31

MLF0033256

EX. 104-2

1733

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE
ADAI No.
(Facility)

1. What is the name of the Facility? *Toronto's mexican Restaurant*

2. When did you visit the Facility? *8/7/13* (Date) *10:30 am* (Time)

3. What is the address of the Facility? *1704 Van ness Ave*

4. Was this your first visit to the Facility? *No*

5. How many times have you visited the Facility? *Few* If more than one visit, please list the date and time if you know it. *?*

6. What was the purpose of your visit? *To Eat*

7. Who accompanied you to the Facility? *My wife Lynn*

8. What car did you drive to the Facility? *Mine*

9. Did you drive yourself of did you get a ride from someone else? *Drove*

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. *In D/P parking*

11. Was it difficult for you to park there? *Yes*

12. Why? *Because spot not Big Enough had to unload in street*

13. How did you unload from your vehicle? *Rear*

14. What side of the vehicle did you unload from? Driver or passenger? *Driver*

15. Did anyone help you to transfer onto your wheelchair? *Lynn*

16. What problems did you encounter transferring onto your wheelchair?
*pavement cracked up*

17. Which way did you go from the parking to the entrance of the Facility? *Straight Across Drive way*

18. Did you encounter any problems on your way to the entrance, for example a ramp? Describe.
*pavement and crack At side walk and pavement*

19. Did you encounter any problems opening the door? Describe why. *Yes Trashold Then door Closed on me*

20. Did you have any problems inside the Facility? Describe. *Yes*

MLF0033257

EX. 104-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

ADAI No.

(Facility)

_got my head stuck Between chair and wall on way to Rest Room_

21. What did you purchase (or what meal did you have there). Describe: _2 meals_

22. Have you used the restroom at the Facility? _tired  But Restroom could not get in too small inside Also_

23. Why did you need to use the restroom? _To go pee and wash hands_

24. Did you use the sink? _____

25. Any problems? _Yes had to ASK waitress for towel to wash my hands she saw I could not get into Rest Room_

26. Did you use the urinal? _____

27. Did you use the toilet? _____

28. Did you use the toilet paper? _____

29. Did you use paper towels? _____

30. Did you use the soap dispenser? _____

31. Did you have any problem maneuvering inside the restroom? _____

32. Where did you sit? _at Table_

33. Was there any seating provided inside the Facility? _No_

34. Was it wheelchair accessible? _No_

35. Where you comfortable at the table? _No_

36. Did you use the counter to pay for purchase? _NO_

37. Which counter did you use? _?_

38. Was the counter accessible? _?_

39. Which way did you go after you left the Facility? _Access Driving to my car_

40. Any problems getting back to your vehicle? _Threshold then crack Between sidewalk And pavement then cracks in pavement_

41. Any problems transferring from your wheelchair to your vehicle? _No Lynn helped_

42. If you have any addition information you believe would assist us in evaluating this inquiry.

MLF0033258

EX. 104-4

# BARRIER MEMO

**ADAI No. :**     01733

**Case Name:**     Moore v. Toledito's Mexican Restaurant

**Address:**     1704 Van Ness Ave., Fresno CA

| Barrier | Description | Is it a valid barrier? Y / N |
|---------|-------------|------------------------------|
| Disabled Parking too short | Plaintiff parked in the designated disabled parking spot but the parking space was too short. Plaintiff was forced to unload his wheelchair from the back of his vehicle and transfer into it while in the path of vehicular traffic coming in and out of the driveway. | **Yes, it is too short and improperly configured.** |
| Cracked Pavement | The pavement leading up to the entrance of the Facility from the disabled parking was cracked which made it difficult for Plaintiff to maneuver his wheelchair to the entrance. There was a large transition/crack between the sidewalk right in front of the restaurant and the parking lot pavement which was particularly difficult for Plaintiff to wheel over. | Yes |
| Threshold too high | The threshold at the entrance of the Facility was too high and Plaintiff had to wheel his chair up onto it several times in an attempt to make it over the threshold. Because of this, Plaintiff did not have enough time to make it through the entrance before the door closed on him. After this, his wife helped him wheel over the threshold. | **Not sure, don't include** |
| Lack of accessible route to the restroom | In order to reach the restroom in the Facility, Plaintiff had to maneuver between several obstacles. The door of the restroom was difficult to get through because there was insufficient landing provided in front of the door. | Yes |
| Inaccessible Restroom | Plaintiff wished to use the restroom and also wash his hands. Unfortunately, the restroom was too small for Plaintiff to maneuver his way inside. One of the waitresses saw that he was struggling and offered him a towel to wash his hands instead. In the end, Plaintiff was not able to actually use the restroom. | Yes |

1

MLF0033230

EX. 104-5



# MOORE LAW FIRM
## PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

July 1, 2014

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

**RE:    ADAI No.    01733**
**Toledo (Toledito's Mexican Restaurant)**
*1704 Van Ness Ave., Fresno CA*

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records. Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Kindest regards,

*Dictated but not read.*
*Sent without signature to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

Enclosure:  Fee Agreement

MLF0056294

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
### 332 N. Second Street
### San Jose, CA  95112
### (408) 298-2000

 

I hereby agree that the Moore Law Firm, PC has my permission to execute any kind of settlement agreement and/or endorse any settlement check or document in connection with my Americans with Disabilities Act Lawsuit against **Toledo (Toledito's Mexican Restaurant).**

 

DATE: _____

                _____
                CLIENT'S SIGNATURE- RONALD MOORE

                _____
                ADDRESS

                _____
                CITY

                _____
                TELEPHONE

DATE:_____

                MOORE LAW FIRM, PC
                ATTORNEY FOR RONALD MOORE

MLF0056295

EX. 104-7

*CIVIL RIGHTS LAWSUIT FEE AGREEMENT*

# MOORE LAW FIRM, PROFESSIONAL CORPORATION
### 332 N. Second Street
### San Jose, CA 95112
### (408) 298-2000

THIS AGREEMENT, made this _____ at **San Jose, CA**, by and between <u>Ronald Moore</u>, hereinafter designated as "Client," and **the Moore Law Firm, PC**, hereinafter designated as "Attorney," witnesseth:

In consideration of all services rendered by Attorney to Client, Client retains Attorney to represent him/her as his/her attorney at law in the case against <u>*Toledo (Toledito's Mexican Restaurant)*</u> and whosoever may be liable. No tort action shall be filed for emotional distress (unless otherwise agreed).

PARAGRAPH 1. ATTORNEY TAKES ALL STEPS NECESSARY: Client empowers Attorney to take all steps the Attorney deems advisable to institute appropriate legal proceedings and resolve Client's claims.

PARAGRAPH 2. COOPERATION: Client agrees to cooperate fully throughout litigation and immediately notify Attorney of any changes in address, phone number, or employment. If Client fails to cooperate and Attorney withdraws from the case, the lien provisions of Paragraph 6 will apply.

## FEE ARRANGEMENTS

PARAGRAPH 3(a). CONTINGENCY FEE ARRANGEMENTS: If the Client doesn't recover, or fees are not awarded to the Attorney, no fee will be charged to the Client. In any contingency fee agreement, the fee is not set by law, but is negotiable between Attorney and Client unless the claim is subject to Business and Professions Code Section 6146, (i.e. an action filed on behalf of a minor where the fee which in contingent upon court approval.) In any event, any fee that requires court approval will be the fee that controls this agreement.

MLF0056296

EX. 104-8

PARAGRAPH 3(b). PURPOSE OF THE CIVIL RIGHTS ACTION: Client understands and acknowledges that in civil rights actions, this action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. As noted, some claims may include personal injury and statutory violations. Civil rights actions alleging discrimination, *vis-à-vis*, emotional distress and personal injury, seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated.

PARAGRAPH 3( c ). NO GUARANTEES: Attorney cannot guarantee that the Client will receive a monetary recovery.

PARAGRAPH 3 (d)(i). PREVAILING PARTY: If the Client is prevailing party, (as defined by statute) their attorneys' fee may be paid by the defendant(s). The operative language of these statutes is the court "may" award reasonable attorneys' fees; there is no guarantee that the Attorney will receive any fees. However, considering the primary purpose of this civil rights action, the Client understands that Attorney will seek fees and costs for services rendered under Paragraph 3(e).

PARAGRAPH 3 (d)(ii). CLIENT AND ATTORNEY CONFLICT OF INTEREST: Notwithstanding the previous paragraph, Client understands that attorneys' fees in civil rights cases usually exceed monetary settlements from mediation, arbitration, or a trial verdict. Client understands the Attorney may receive nothing for services rendered and costs advanced. Client also understands there is a potential conflict of interest, if the Attorney is required to negotiate the Client's damages and the attorneys' fee with either the defendant or the Client. The Client understands that where insurance coverage exists, defendant will often attempt to offset attorneys' fees by paying more in compensatory damages to reduce the monetary amount paid with defendant's personal assets toward settlement. The Client should consult with any other lawyer for legal advice before entering into this contract. Client

MLF0056297

EX. 104-9

agrees that by entering into this contract he/she is waiving any objection to this potential conflict of interest, and authorizes the Attorney to negotiate any possible settlement as to both the Client's recovery and the attorneys' fees and costs.

## FEES

Hence, Client agrees to pay the fees herein described, duly noting the conflict that exists, at the option of Attorney, as set forth under Fee Determination, as follows:

PARAGRAPH 3(e). FEE DETERMINATION AT ATTORNEY'S OPTION:

(i)    Attorneys' fees based upon services rendered at the billing rate listed in paragraph 3(f) or negotiated with Client as part of the settlement;

OR

(ii)    Attorneys' fees negotiated with defendants as part of settlement, or the fee awarded by the court;

OR

(iii)    In the event the attorneys' fees awarded by the court arbitration, mediation, or settlement, are less than the amount sought, then the Client will pay the balance of fees;

OR

(iv)    In addition to the attorneys' fees based upon the Paragraph 3(f) billing rate or negotiated with Client as part of the settlement, a third of the total amount recovered by way of settlement, mediation, arbitration or trial for any claims of discrimination, emotional distress, personal injury, statute violation, loss of earnings or any other compensatory damages. This third constitutes a multiplier-bonus for the risk of litigation and costs advanced by Attorney on behalf of the Client;

OR

(v)    The fee of 40% of the total amounts recovered by way of settlement, mediation, arbitration or trial for any claims, plus any attorneys' fees awarded by the court or negotiated with defendant(s) as part of settlement. [40% X (Client recovery + Attorneys' fees)].

MLF0056298

PARAGRAPH 3(f). BILLING RATE: Attorney's billing rate is from $350.00 to $685.00 per hour. Outside associated attorneys hired are billed at $125.00 to $200.00 per hour, paralegals/legal assistants are billed at $115.00 per hour. Administrative staff is billed at $70.00 to $90.00 per hour.

PARAGRAPH 3(g). PUNITIVE DAMAGES: Punitive damages based upon defendants' despicable conduct may be sought in addition to the compensatory damages. These damages are awarded in a sufficient amount to punish or make an example of the defendant(s). Therefore, if any punitive damages are awarded, Client and Attorney agree to divide punitive damages equally.

PARAGRAPH 3(h). MINOR'S RECOVERY: Client acknowledges that if Client is a minor, the fee set by the Court shall prevail over this Agreement. If the minor reaches the age of majority, the fee set forth in Paragraphs 3(e)(l) of 3(e)(ii) shall prevail at the attorney's option.

PARAGRAPH 3(i). NO RECOVERY NO FEE: As to all attorneys' fees provisions and costs stated herein, if there is no recovery for the Client(s) or no fees awarded the Attorney, <u>no fees will be charged to Client</u> .

PARAGRAPH 3(j). DISBURSEMENT AFTER RECOVERY: For any previously described contingency agreement, hourly fee agreement, or combination thereof, the fee shall be taken from the total settlement and then costs shall be deducted. If Attorney is representing multiple claims in one case a consolidated action, or related actions arising out of the substantially same facts, costs will be allocated on a pro rata recovery for all Clients. If one Client settles before any other, the costs will be divided equally at that point in time or divided by Attorney, as Attorney deems equitable. If the Client and Attorney agree to outstanding liens, or they are statutory by nature, they will be paid.

The balance is Client's net recovery.

In the event of a partial recovery, Client agrees to apply Client's share of the partial recovery toward future costs. Said money will be held in Attorney's trust account.

PARAGRAPH 3(k). COST REIMBURSEMENT: Client agrees to reimburse Attorney for all costs if there is no recovery. Costs include, but not limited to, the following: filing fees, service

MLF0056299

of process, postage, messenger service, overnight delivery service, investigation, interpreter, experts, record procurement, reference material, computer time/research, medical illustrations, scale drawing, beeper, photography, deposition fees/charges, costs incurred for trial/arbitration/mediation, mileage, word processing, facsimile, and photocopying. A minimum charge of $115.00 will be assessed for opening the file, photocopying and postage. A minimum charge of $500.00 will be charged for on-line computer research. Facsimile charge is $1.00 per page sending/receiving. Photocopying charge is 45¢ per page. When Attorney travels, the mode of travel, travel classification and accommodation shall be determined by the Attorney and constitute costs. It is further acknowledged that the costs of medical care rendered to Client for personal injuries are the Client's responsibility, and do not constitute costs under this Agreement, or charges against Attorney.

PARAGRAPH 3(l). TRAVEL: Client acknowledges and agrees that for purposes of fee determination, time is charged from the time Attorney leaves Attorney's office until return to said office.

PARAGRAPH 3(m). POWER OF ATTORNEY: Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further instructs and directs Attorney to make all disbursements deemed appropriate by Attorney and to place Client's funds in an interest bearing trust account.

PARAGRAPH 4. APPEALS: Client acknowledges that no Appeals need to be taken without both parties' consent. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

PARAGRAPH 5. ERRORS AND OMISSIONS INSURANCE: Attorney does not maintain errors and omissions insurance applicable to the services to be rendered under this agreement. Disclosure is pursuant to Business and Professions Code §6148(a)(4).

PARAGRAPH 6. LIEN. FIRING/DISCHARGING ATTORNEY: In the event the Client fires/discharges Attorney, the Client hereby grants Attorney a lien upon the case, and upon any documents, records, or papers in connection therewith, and upon any sum received for fees and costs

MLF0056300

incurred or advanced. Said lien is based upon the reasonable value of Attorney's services valued at $350.00 per hour. In addition, Attorney may elect compensation based upon any offer to Client to settle the matter prior to Attorney's discharge, on the basis of *quantum meruit* for the overall value of the services provided, or under any option listed in paragraph 3(e). Client further agrees that any recovery obtained after attorney's discharge will contain Attorney's name on any draft/check and be deposited in any interest-bearing trust account bearing Attorney's name and the name of Client's new lawyer(s), and require Attorney to be signatory to said trust account together with Client's new lawyer(s). Client agrees that any recovery disagreement or fee dispute will be submitted to the California State Bar Association for resolution pursuant to said Bar's procedures, subject to whether the action was filed in Northern or Southern California. Actions filed outside the State of California will be subject to the procedures of the California State Bar Association. Each side will bear its own Arbitration costs. If the Client discharges the Attorney, the Attorney shall retain a copy of the file, and the cost of duplicating the file will be assessed the Client as a cost.

PARAGRAPH 7. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney. Client further acknowledges that settlement agreements and releases which contain language releasing claims for personal injury and emotional distress, etc. is for the purpose of giving defendant(s) a full release of all claims and to ensure, (to the extent possible) that Client's recovery will not be taxable as income. Attorney makes no guarantee as to any tax consequences for Client and is not advising Client as to same.

PARAGRAPH 8. Client acknowledges that Attorney has made no guarantees regarding the successful termination of this case, and all expressions relative thereto are matters of his opinion only.

The undersigned acknowledges and agrees to the foregoing terms and conditions of said Retainer Agreement. If more than one Client, this agreement may be signed in counterparts. Client acknowledges receipt of duplicate copy of this Agreement.

_____Initial                    _____Initial

MLF0056301

DATE:_____          _____
                                  CLIENT'S SIGNATURE


DATE:_____          _____
                                  CLIENT'S NAME

                                  _____
                                  ADDRESS


                                  _____
                                  CITY


                                  _____
                                  TELEPHONE


MY WITNESS(S) ARE _____
(if none please indicate so)


DATE:_____          MOORE LAW FIRM, PC


                                  _____
                                  ATTORNEY FOR RONALD MOORE

MLF0056302

EX. 104-14

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>            Plaintiff,<br><br>     vs.<br><br>MARISELA TOLEDO aka MARISELA TOLEDOGONZALEZ dba TOLEDITO'S MEXICAN RESTAURANT; DEAN MURPHY;<br><br>            Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.     This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

>     Toledito's Mexican Restaurant
>     1704 Van Ness Avenue
>     Fresno, CA 93721
>     (hereafter "the Facility")

2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against MARISELA TOLEDO aka MARISELA TOLEDOGONZALEZ dba TOLEDITO'S MEXICAN RESTAURANT; and DEAN MURPHY (hereinafter collectively

*Moore v. Toledo, et al.*
Complaint

MLF0033246

EX. 104-15

1  referred to as "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42

2  U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

3  **II.    JURISDICTION**

4      3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

5  claims.

6      4.      Supplemental jurisdiction for claims brought under parallel California law –

7  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

8      5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

9  **III.    VENUE**

10      6.      All actions complained of herein take place within the jurisdiction of the United

11  States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

12  § 1391(b), (c).

13  **IV.    PARTIES**

14      7.      Defendants own, operate, and/or lease the Facility, and consist of a person (or

15  persons), firm, and/or corporation.

16      8.      Plaintiff requires the use of a wheelchair when traveling about in public.

17  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and

18  United States laws, and a member of the public whose rights are protected by these laws.

19  **V.    FACTS**

20      9.      The Facility is a public accommodation facility, open to the public, which is

21  intended for nonresidential use and whose operation affects commerce.

22      10.     Plaintiff visited the Facility and encountered barriers (both physical and

23  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

24  goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

25  encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

26  about August 7, 2013:

27          a)      Plaintiff parked in a designated accessible parking space at the Facility,

28                     but the parking space was too short. When he went to unload his

*Moore v. Toledo, et al.*
Complaint

MLF0033247

EX. 104-16

wheelchair from the back of his vehicle and transfer into it, he found that he was in the path of vehicular traffic coming in and out of the driveway.

b)   The pavement leading up to the entrance of the Facility from the designated accessible parking was cracked, which made it difficult for Plaintiff to maneuver his wheelchair to the entrance. There was a particularly uneven section near the Facility entrance at the transition between the parking lot and the sidewalk, which was very difficult for Plaintiff to wheel over.

c)   The route to the restroom at the Facility lacked necessary wheelchair clearances and required Plaintiff to maneuver around several obstacles. Additionally, there was insufficient maneuvering clearance provided at the entrance to the restroom, making it difficult for Plaintiff to turn into the doorway.

d)   Upon reaching the restroom entrance, Plaintiff found that the interior lacked necessary wheelchair clearances and he was not able to make his way inside. He was unable to use the toilet at the Facility, and had to use a damp towel instead of the lavatory to wash his hands before eating his meal.

11.   The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.   Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

MLF0033248

EX. 104-17

1   once the barriers are removed.

2       13.    Defendants knew, or should have known, that these elements and areas of the
3   Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to
4   the physically disabled. Moreover, Defendants have the financial resources to remove these
5   barriers from the Facility (without much difficulty or expense), and make the Facility
6   accessible to the physically disabled. To date, however, Defendants refuse to either remove
7   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

8       14.    At all relevant times, Defendants have possessed and enjoyed sufficient control
9   and authority to modify the Facility to remove impediments to wheelchair access and to
10  comply with the 2010 Standards for Accessible Design and the California Code of Regulations
11  Title 24. Defendants have not removed such impediments and have not modified the Facility to
12  conform to accessibility standards. Defendants have intentionally maintained the Facility in its
13  current condition and have intentionally refrained from altering the Facility so that it complies
14  with the accessibility standards.

15      15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is
16  so obvious as to establish Defendants' discriminatory intent. On information and belief,
17  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere
18  to relevant building standards; disregard for the building plans and permits issued for the
19  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at
20  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'
21  property continues to exist in its non-compliant state. Plaintiff further alleges, on information
22  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the
23  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

24      **VI.    FIRST CLAIM**

25      **Americans with Disabilities Act of 1990**

26      Denial of "Full and Equal" Enjoyment and Use

27      16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for
28  this claim.

*Moore v. Toledo, et al.*
Complaint

MLF0033249

1      17.    Title III of the ADA holds as a "general rule" that no individual shall be

2 discriminated against on the basis of disability in the full and equal enjoyment (or use) of

3 goods, services, facilities, privileges, and accommodations offered by any person who owns,

4 operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

5      18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

6 enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

7 Facility during each visit and each incident of deterrence.

8            Failure to Remove Architectural Barriers in an Existing Facility

9      19.    The ADA specifically prohibits failing to remove architectural barriers, which

10 are structural in nature, in existing facilities where such removal is readily achievable. 42

11 U.S.C. § 12182(b)(2)(A)(iv).

12      20.    When an entity can demonstrate that removal of a barrier is not readily

13 achievable, a failure to make goods, services, facilities, or accommodations available through

14 alternative methods is also specifically prohibited if these methods are readily achievable. Id.

15 § 12182(b)(2)(A)(v).

16      21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

17 barriers at the Facility without much difficulty or expense, and that Defendants violated the

18 ADA by failing to remove those barriers, when it was readily achievable to do so.

19      22.    In the alternative, if it was not "readily achievable" for Defendants to remove

20 the Facility's barriers, then Defendants violated the ADA by failing to make the required

21 services available through alternative methods, which are readily achievable.

22            Failure to Design and Construct an Accessible Facility

23      23.    Plaintiff alleges on information and belief that the Facility was designed and

24 constructed (or both) after January 26, 1992 – independently triggering access requirements

25 under Title III of the ADA.

26      24.    The ADA also prohibits designing and constructing facilities for first occupancy

27 after January 16, 1993, that aren't readily accessible to, and usable by, individuals with

28 disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

*Moore v. Toledo, et al.*
Complaint

MLF0033250

1    25.    Here, Defendants violated the ADA by designing and constructing (or both) the

2 Facility in a manner that was not readily accessible to the physically disabled public –

3 including Plaintiff – when it was structurally practical to do so.[1]

4                    <u>Failure to Make an Altered Facility Accessible</u>

5    26.    Plaintiff alleges on information and belief that the Facility was modified after

6 January 26, 1992, independently triggering access requirements under the ADA.

7    27.    The ADA also requires that facilities altered in a manner that affects (or could

8 affect) its usability must be made readily accessible to individuals with disabilities to the

9 maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

10 primary function also requires making the paths of travel, bathrooms, telephones, and drinking

11 fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

12    28.    Here, Defendants altered the Facility in a manner that violated the ADA and

13 was not readily accessible to the physically disabled public – including Plaintiff – to the

14 maximum extent feasible.

15                 <u>Failure to Modify Existing Policies and Procedures</u>

16    29.    The ADA also requires reasonable modifications in policies, practices, or

17 procedures, when necessary to afford such goods, services, facilities, or accommodations to

18 individuals with disabilities, unless the entity can demonstrate that making such modifications

19 would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

20    30.    Here, Defendants violated the ADA by failing to make reasonable modifications

21 in policies, practices, or procedures at the Facility, when these modifications were necessary to

22 afford (and would not fundamentally alter the nature of) these goods, services, facilities, or

23 accommodations.

24    31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney

25 fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

26

27

28
─────────────────
[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a
private attorney general under either state or federal statutes.

*Moore v. Toledo, et al.*
Complaint
                                          Page 6

MLF0033251

EX. 104-20

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.    SECOND CLAIM

### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for this claim.

*Moore v. Toledo, et al.*
Complaint

MLF0033252

EX. 104-21

1   42.   Health and Safety Code § 19955(a) states, in part, that: California public

2   accommodations or facilities (built with private funds) shall adhere to the provisions of

3   Government Code § 4450.

4   43.   Health and Safety Code § 19959 states, in part, that: Every existing (non-

5   exempt) public accommodation constructed prior to July 1, 1970, which is altered or

6   structurally repaired, is required to comply with this chapter.

7   44.   Plaintiff alleges the Facility is a public accommodation constructed, altered, or

8   repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

9   § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

10   45.   Defendants' non-compliance with these requirements at the Facility aggrieved

11   (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

12   Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

13   **IX.   PRAYER FOR RELIEF**

14   WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

15   1.   Injunctive relief, preventive relief, or any other relief the Court deems proper.

16   2.   Declaratory relief that Defendants violated the ADA for the purposes of Unruh

17   Act damages.

18   3.   Statutory minimum damages under section 52(a) of the California Civil Code

19   according to proof.

20   4.   Attorneys' fees, litigation expense, and costs of suit.[2]

21   5.   Interest at the legal rate from the date of the filing of this action.

22   6.   For such other and further relief as the Court deems proper.

23   Dated: June 9, 2014                    MOORE LAW FIRM, P.C.

24

25                                        /s/ Tanya E. Moore
                                          Tanya E. Moore
26                                        Attorneys for Plaintiff
                                          Ronald Moore
27

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Toledo, et al.*
Complaint

Page 8

MLF0033253

EX. 104-22

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:   June 10, 2014                    /s/ Ronald Moore
                                          Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                          /s/ Tanya E. Moore
                                          Tanya E. Moore, Attorney for
                                          Plaintiff, Ronald Moore

*Moore v. Toledo, et al.*
*Verification*

MLF0033254

EX. 104-23