# Exhibit 113

TOBYS VAPES AND MORE
312 N GATEWAY DR
MADERA, CA 93637

05/31/2014                    11:56:40
Merchant ID:          0000...6640969
Terminal ID:              05631458
530051210030789

MC SALE

CARD #:          XXXXXXXXXXXX-5
INVOICE                    490002
Batch #:                   000049
Approval Code:             492882
Entry Method:              Swiped
Mode:                      Online

SALE AMOUNT                 $8.64


CUSTOMER COPY

MLF0043326

EX. 113-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? Tobys Vapes and More

2. What is the address of the Facility? 312 North Gateway Drive Madera, CA

3. When did you visit the Facility? 5/31/14                    (Date) 7:00 pm (Time)

4. Was this your first visit to the Facility? Yes

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. ?

6. What was the purpose of your visit? Juice and pipe

7. Who accompanied you to the Facility? Grandson Ronny and Jhanny

8. What car did you drive to the Facility? Mine

9. Did you drive yourself or did you get a ride from someone else? I drove

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. In dp parking spot

11. Was it difficult for you to park there? If so, why? No

12. How did you unload from your vehicle? Rear

13. What side of the vehicle did you unload from? Driver or passenger? Driver

14. Did anyone help you to transfer onto your wheelchair? Who? Yes, Jhanny

15. Did you encounter any problems transferring onto your wheelchair? Describe. No, because Jhanny helped me with my chair

16. Which way did you go from the parking to the entrance of the Facility? To door no ramp to access isle

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. Yes, there was no ramp and pavement cracked

18. Did you encounter any problems opening the door? Describe. Yes, threshold

19. What did you purchase (or what meal did you have there)? Pipe

20. Did you need to use the restroom while you were at the Facility? Why? No

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0043324

EX. 113-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: N/A

Toilet: N/A

Urinal: N/A

Toilet paper: N/A

Toilet seat covers: N/A

Paper towels/hand dryer: N/A

Soap dispenser: N/A

Other: N/A

22. Did you have any problem maneuvering inside the restroom? N/A

23. Was there any seating provided inside the Facility? N/A

24. Were you able to sit comfortably at the table? If not, why? N/A

25. Did you use the counter to pay for purchase? Which one? Yes, One by the pipes

26. Did you pay with cash or credit card? Credit card

27. Was the counter accessible? If not, describe: No, counter too high grandson Ronny had to give card and Jhonny signed the reciepts.

28. Did you have any other problems inside the Facility? Describe. No, just counters too high.

29. Which way did you go after you left the Facility?

30. Any problems getting back to your vehicle? No

31. Any problems transferring from your wheelchair to your vehicle? No, because Jhonny helped me with my chair.

32. Any additional information you believe would assist us in evaluating this inquiry? There was no bathroom in the facility only a outhouse across street.

MLF0043325

EX. 113-4



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

July 1, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

RE:     **ADAI No.**     02043

         **Toby's Vapes and More** *(312 N Gateway Drive, Madera, CA 93637)*

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0043327

EX. 113-5

## BARRIER MEMO

ADAI No. :     02043

Case Name:     Moore v. Toby's Vapes and More

Address:       312 N Gateway Drive, Madera, CA 93637

| Barrier | Description | Is it a valid barrier? Y / N |
|---------|-------------|------------------------------|
| No Ramp | There was no ramp and no safe way for the plaintiff to get to the facility. So, with help from his grandson, the plaintiff pushed his chair up onto the high curb. | ASK WHERE HE NEEDED RAMP? |
| Cracked Pavement | The pavement leading to the entrance of the facility was severely cracked which made it difficult for the plaintiff to wheel his chair along easily. | Y |
| High Threshold | The threshold to the facility was high but with help from his grandson, the plaintiff managed to push his chair over it and get inside. | Y |
| High Counter | The counter in the facility was too high for the plaintiff to reach so his grandson made the transaction for him. | Y |
| No route to restroom | Plaintiff needed to use the restroom but it was located in an outhouse across the street; there was no accessible route of travel to get there so Plaintiff could not use it. | Y |

1

MLF0043288

EX. 113-6

Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | No. |
| Plaintiff, | **COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |
| vs. | |
| JAMES CLAYTON WONG, as Trustee of THE JAMES CLAYTON WONG 1983 TRUST; PHILIP WONG, as Trustee of THE PHILIP WONG FAMILY REVOCABLE LIVING TRUST dated October 14, 1992; LAUREIN M. WONG, as Trustee of THE PHILIP WONG FAMILY REVOCABLE LIVING TRUST dated October 14, 1992; ALLMEY ENTERPRISES, INC. dba TOBY'S VAPES AND MORE, | |
| Defendants. | |

## I. SUMMARY

1.    This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Toby's Vapes and More
> 312 N. Gateway Drive
> Madera, CA  93637
> (hereafter "the Facility")

*Moore v. Wong, et al.*
Complaint

MLF0043314

1        2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

2    costs, against JAMES CLAYTON WONG, as Trustee of THE JAMES CLAYTON WONG

3    1983 TRUST; PHILIP WONG, as Trustee of THE PHILIP WONG FAMILY REVOCABLE

4    LIVING TRUST dated October 14, 1992; LAUREIN M. WONG, as Trustee of THE PHILIP

5    WONG FAMILY REVOCABLE LIVING TRUST dated October 14, 1992; and ALLMEY

6    ENTERPRISES, INC. dba TOBY'S VAPES AND MORE (hereinafter collectively referred to

7    as "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C.

8    §§ 12101 et seq.) ("ADA") and related California statutes.

9                      **II.    JURISDICTION**

10       3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

11   claims.

12       4.    Supplemental jurisdiction for claims brought under parallel California law –

13   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

14       5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

15                     **III.    VENUE**

16       6.    All actions complained of herein take place within the jurisdiction of the United

17   States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

18   § 1391(b), (c).

19                     **IV.    PARTIES**

20       7.    Defendants own, operate, and/or lease the Facility, and consist of a person (or

21   persons), firm, and/or corporation.

22       8.    Plaintiff is substantially limited in his ability to walk, and must use a wheelchair

23   for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable

24   California and United States laws, and a member of the public whose rights are protected by

25   these laws.

26                     **V.    FACTS**

27       9.    The Facility is open to the public, intended for non-residential use, and its

28   operation affects commerce. The Facility is therefore a public accommodation as defined by

*Moore v. Wong, et al.*
Complaint

            Page 2

MLF0043315

1 | applicable state and federal laws.

2 |       10.    Plaintiff visited the Facility and encountered barriers (both physical and
3 | intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the
4 | goods, services, privileges and accommodations offered at the Facility. Plaintiff personally
5 | encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or
6 | about May 31, 2014:

7 |              a)    The pavement of the parking lot along the route to the entrance of the
8 |                    Facility was severely cracked and uneven, which made it difficult for
9 |                    Plaintiff to wheel his chair along easily.

10 |             b)    The threshold of the Facility was high which made it difficult for
11 |                    Plaintiff to wheel his chair into the Facility.   Plaintiff required the
12 |                    assistance of his grandson to push the wheelchair over the threshold to
13 |                    get inside.

14 |             c)    The transaction counter was too high for Plaintiff to complete his
15 |                    purchase.   Plaintiff's grandson had to complete the credit card
16 |                    transaction for him.

17 |             d)    Plaintiff needed to use the restroom but was not able to locate an
18 |                    accessible route of travel from the Facility building to the restroom. The
19 |                    restroom was located in an outhouse across the parking lot from the
20 |                    Facility, a long distance away, through the path of vehicular traffic and
21 |                    across the uneven surface of the parking lot.  Plaintiff was not able to
22 |                    use the restroom at the Facility and had to wait until he could find a
23 |                    restroom at another location.

24 |      11.    The barriers identified in paragraph 10 herein are only those that Plaintiff
25 | personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist
26 | at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once
27 | such additional barriers are identified as it is Plaintiff's intention to have all barriers which
28 | exist at the Facility and relate to his disabilities removed to afford him full and equal access.

*Moore v. Wong, et al.*
Complaint

MLF0043316

1    12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

2    Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

3    accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

4    Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

5    once the barriers are removed.

6    13.    Defendants knew, or should have known, that these elements and areas of the

7    Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

8    the physically disabled. Moreover, Defendants have the financial resources to remove these

9    barriers from the Facility (without much difficulty or expense), and make the Facility

10   accessible to the physically disabled. To date, however, Defendants refuse to either remove

11   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

12   14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

13   and authority to modify the Facility to remove impediments to wheelchair access and to

14   comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

15   Design. Defendants have not removed such impediments and have not modified the Facility to

16   conform to accessibility standards. Defendants have intentionally maintained the Facility in its

17   current condition and have intentionally refrained from altering the Facility so that it complies

18   with the accessibility standards.

19   15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

20   so obvious as to establish Defendants' discriminatory intent. On information and belief,

21   Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

22   to relevant building standards; disregard for the building plans and permits issued for the

23   Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

24   the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

25   property continues to exist in its non-compliant state. Plaintiff further alleges, on information

26   and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

27   Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

28   ///

*Moore v. Wong, et al.*
Complaint

Page 4

MLF0043317

EX. 113-10

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

#### Failure to Remove Architectural Barriers in an Existing Facility

19.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.   Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.   In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

#### Failure to Design and Construct an Accessible Facility

23.   Plaintiff alleges on information and belief that the Facility was designed and

*Moore v. Wong, et al.*
Complaint

MLF0043318

EX. 113-11

1  constructed (or both) after January 26, 1992 – independently triggering access requirements
2  under Title III of the ADA.

3      24.    The ADA also prohibits designing and constructing facilities for first occupancy
4  after January 16, 1993, that aren't readily accessible to, and usable by, individuals with
5  disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

6      25.    Here, Defendants violated the ADA by designing and constructing (or both) the
7  Facility in a manner that was not readily accessible to the physically disabled public –
8  including Plaintiff – when it was structurally practical to do so.[1]

9                          Failure to Make an Altered Facility Accessible

10     26.    Plaintiff alleges on information and belief that the Facility was modified after
11 January 26, 1992, independently triggering access requirements under the ADA.

12     27.    The ADA also requires that facilities altered in a manner that affects (or could
13 affect) its usability must be made readily accessible to individuals with disabilities to the
14 maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's
15 primary function also requires making the paths of travel, bathrooms, telephones, and drinking
16 fountains serving that area accessible to the maximum extent feasible. Id.

17     28.    Here, Defendants altered the Facility in a manner that violated the ADA and
18 was not readily accessible to the physically disabled public – including Plaintiff – to the
19 maximum extent feasible.

20                          Failure to Modify Existing Policies and Procedures

21     29.    The ADA also requires reasonable modifications in policies, practices, or
22 procedures, when necessary to afford such goods, services, facilities, or accommodations to
23 individuals with disabilities, unless the entity can demonstrate that making such modifications
24 would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

25
26
27
28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Wong, et al.*
Complaint
                                Page 6

MLF0043319

1    30.    Here, Defendants violated the ADA by failing to make reasonable modifications

2    in policies, practices, or procedures at the Facility, when these modifications were necessary to

3    afford (and would not fundamentally alter the nature of) these goods, services, facilities, or

4    accommodations.

5    31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney

6    fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

7    32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants

8    violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

9                                    **VII.    SECOND CLAIM**

10                                       **Unruh Act**

11   33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

12   this claim.

13   34.    California Civil Code § 51 states, in part, that: All persons within the

14   jurisdiction of this state are entitled to the full and equal accommodations, advantages,

15   facilities, privileges, or services in all business establishments of every kind whatsoever.

16   35.    California Civil Code § 51.5 also states, in part that: No business establishment

17   of any kind whatsoever shall discriminate against any person in this state because of the

18   disability of the person.

19   36.    California Civil Code § 51(f) specifically incorporates (by reference) an

20   individual's rights under the ADA into the Unruh Act.

21   37.    Defendants' aforementioned acts and omissions denied the physically disabled

22   public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges

23   and services in a business establishment (because of their physical disability).

24   38.    These acts and omissions (including the ones that violate the ADA) denied,

25   aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

26   39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

27   minimum damages of four thousand dollars ($4,000) for each offense.

28   40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

*Moore v. Wong, et al.*
Complaint

MLF0043320

1  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

2  § 52(a).

### VIII. THIRD CLAIM

#### Denial of Full and Equal Access to Public Facilities

5      41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

6  this claim.

7      42.    Health and Safety Code § 19955(a) states, in part, that: California public

8  accommodations or facilities (built with private funds) shall adhere to the provisions of

9  Government Code § 4450.

10     43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-

11 exempt) public accommodation constructed prior to July 1, 1970, which is altered or

12 structurally repaired, is required to comply with this chapter.

13     44.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or

14 repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

15 § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

16     45.    Defendants' non-compliance with these requirements at the Facility aggrieved

17 (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

18 Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.    PRAYER FOR RELIEF

20 WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

21     1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

22     2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh

23          Act damages.

24     3.    Statutory minimum damages under section 52(a) of the California Civil Code

25          according to proof.

26     4.    Attorneys' fees, litigation expense, and costs of suit.[2]

27     5.    Interest at the legal rate from the date of the filing of this action.

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Wong, et al.*
Complaint

MLF0043321

EX. 113-14

1      6.    For such other and further relief as the Court deems proper.

2

3   Dated: December 5, 2014        MOORE LAW FIRM, P.C.

4                        */s/ Tanya E. Moore*

5                        Tanya E. Moore

6                        Attorneys for Plaintiff
                         Ronald Moore

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Moore v. Wong, et al.*
Complaint

MLF0043322

## VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: December 5, 2014     /s/ Ronald Moore
                            Ronald Moore

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

/s/ Tanya E. Moore
Tanya E. Moore, Attorney for
Plaintiff, Ronald Moore

*Moore v. Wong, et al.*
*Verification*

MLF0043323

EX. 113-16

# VERIFICATION

I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 12/5/14 _____                    _Ronald Moore_
                                                   Ronald Moore

*Moore v. Wong, et al.*
*Verification*

MLF0043328

EX. 113-17

# Exhibit 114

CITY WIDE MARKET
505 W. DAKOTA AVE
FRESNO, CA 93705

05/25/2014                        20:27:19
Merchant ID:              000000002499563
Terminal ID:                     03712436
345179620884

                     CREDIT CARD
                     MC SALE

CARD #                  XXXXXXXXXXXX7245
INVOICE                             0005
Batch #:                          001666
Approval Code:                    86165Z
Entry Method:                     Swiped
Mode:                             Online

SALE AMOUNT                       $13.87


                    CUSTOMER COPY

MLF0040131

EX. 114-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? *City Wide Market*

2. What is the address of the Facility? *505 W. Dakota Ave. Fresno, CA*

3. When did you visit the Facility? *5/25/14* (Date) *8:30* (Time)

4. Was this your first visit to the Facility? *NO*

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. *?*

6. What was the purpose of your visit? ~~food~~ *Milk eggs, and drinks*

7. Who accompanied you to the Facility? *Grandson Ronny, Jason, and Jhonny*

8. What car did you drive to the Facility? *Mine*

9. Did you drive yourself or did you get a ride from someone else? *I drove*

10. Where did you park when you arrived at the Facility? Describe a specific location where you parked your vehicle. *In d/p spot*

11. Was it difficult for you to park there? If so, why? *NO*

12. How did you unload from your vehicle? *Rear*

13. What side of the vehicle did you unload from? Driver or passenger? *driver*

14. Did anyone help you to transfer onto your wheelchair? Who? *Jhonny*

15. Did you encounter any problems transferring onto your wheelchair? Describe. *Street all cracked*

16. Which way did you go from the parking to the entrance of the Facility? *Up ~~curve~~ access isle to store*

17. Did you encounter any problems on your way to the entrance, for example a ramp? Describe. *Access isle had cracks and side walk had deep indentations*

18. Did you encounter any problems opening the door? Describe. *Door heavy and closed ~~on me~~ and threshold high*

19. What did you purchase (or what meal did you have there)? *Drinks, Milk eggs*

20. Did you need to use the restroom while you were at the Facility? Why? *No restroom*

21. Describe any problems you encountered with the following (or write "Did not need to use" or "No problems"):

MLF0040128

EX. 114-3

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

Sink: _N/A_

Toilet: _N/A_

Urinal: _N/A_

Toilet paper: _N/A_

Toilet seat covers: _N/A_

Paper towels/hand dryer: _N/A_

Soap dispenser: _N/A_

Other: _N/A_

22. Did you have any problem maneuvering inside the restroom? _N/A_

23. Was there any seating provided inside the Facility? _NO_

24. Were you able to sit comfortably at the table? If not, why? _N/A_

25. Did you use the counter to pay for purchase? Which one? _Yes, one by door_

26. Did you pay with cash or credit card? _Credit_

27. Was the counter accessible? If not, describe: _No to high grandson had to give him card and sign reciept_

28. Did you have any other problems inside the Facility? Describe. _fountain drinks to high. couldn't get to other isle, had to go back because stacks of water bott couldn't reach beverages in cooler grandson had to get them for_

29. Which way did you go after you left the Facility? _out door to car_

30. Any problems getting back to your vehicle? _access isle and street all cracked_

31. Any problems transferring from your wheelchair to your vehicle? _No Jhonny brought me to my door and put chair in car_

32. Any additional information you believe would assist us in evaluating this inquiry?

_Couldn't manuever very well in store. Soda fountain and drinks to high. Counter to high._



# MOORE LAW FIRM
### PROFESSIONAL CORPORATION

332 North Second Street
San Jose, CA 95112
Office (408) 298-2000 Fax (408) 298-6046

K. RANDOLPH MOORE
ESQUIRE
AND FOUNDER

Tanya E. Moore
*Attorney at Law*

Marejka Sacks
*Paralegal*

May 30, 2014

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

      RE:    **ADAI No.   01996**
             **City Wide Market *(505 W. Dakota Ave, Fresno, CA***
             ***93705)***

Dear Mr. Moore:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Kindest regards,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya Moore
Attorney at Law

TM/ed

MLF0040130

**BARRIER MEMO**

ADAI No. :     01996

Case Name:     Moore v. City Wide Market

Address:     505 W. Dakota Ave, Fresno, CA 93705

| Barrier | Description | Is it a valid barrier? Y / N |
|---------|-------------|------------------------------|
| Cracked Access Aisle | The access aisle was cracked which made it difficult for the client to wheel his chair over. | |
| Uneven Sidewalk Pavement | The sidewalk in front of the entrance to the facility was uneven because of various "indentations" in the cement. This posed another challenge for the client because wheeling over these grooves was very bumpy and caused the client discomfort. | |
| Heavy Door | The door to the facility was heavy and the client did not have enough time to wheel himself into the facility before the door swung shut and closed on him. | |
| High Threshold | The threshold at the entrance to the facility was very high and the client had to pop up his chair, without falling over, in order to make it over. | |
| Inaccessible Counter | The client attempted to use the counter by the door to purchase his items but discovered that the counter was too high for him to reach. Instead, the client had his grandson slide his credit card and sign the receipt. | |
| Inaccessible Items | The client wanted to use the soda dispenser to get a drink, but it was too high for him to reach. The client also could not reach the beverages in the refrigerators because they were too high up, but his grandson was able to help. | |
| Tight Aisles | The client could not maneuver himself comfortably inside the facility because the aisles were tight. One of the aisles in particular the client could not enter at all because it was lined with water bottles | |

1

MLF0040090

EX. 114-6



**MOORE**
LAW FIRM, P.C.

March 19, 2015

Mr. Ronald Moore
80 N. Hughes Avenue
Clovis, California 93612

Re:   ADAI No.    01996
      City Wide Market (505 W. Dakota Ave, Fresno, CA 93705)

Dear Mr. Moore:

This letter is to inform you that we are filing a lawsuit on your behalf against the above referenced facility. If you visit the facility again prior to this lawsuit settling, it is very important that you continue to send the receipts to my office. Make sure that you reference that the case has already been filed so that it does not get put with your "pending cases."

I am enclosing a copy of the Fee Agreement for this matter. Please review these documents and keep a copy for your records.  Please sign the signature pages where indicated and return to our office in the enclosed envelope.

Also, you are being asked to provide us with the name of your witness/any person who accompanied you to the facility and witnessed the violations.

If you have any questions, or want to discuss something specific about this matter, please do not hesitate to contact me.

Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

Enclosure: Fee Agreement

MLF0040118

EX. 114-7

1 | Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
2 | 332 North Second Street
San Jose, California 95112
3 | Telephone (408) 298-2000
Facsimile (408) 298-6046
4 | E-mail: tanya@moorelawfirm.com

5 | Attorneys for Plaintiff
Ronald Moore

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **EASTERN DISTRICT OF CALIFORNIA**

10

11 | RONALD MOORE,                          ) No.
                                          )
12 |         Plaintiff,                    ) **COMPLAINT ASSERTING DENIAL OF**
                                          ) **RIGHT OF ACCESS UNDER**
13 | vs.                                   ) **AMERICANS WITH DISABILITIES ACT**
                                          ) **FOR INJUNCTIVE RELIEF,**
14 | NAGI MOHSEN ZAMZAMI, individually     ) **DECLARATORY RELIEF, DAMAGES,**
    and dba CITY WIDE MARKET; KHADIGA     ) **ATTORNEYS' FEES AND COSTS (ADA)**
15 | M. ZAMZAMI; MOHAMED M.                )
    MUTHANA, individually and dba CITY    )
16 | WIDE MARKET; AMRIA M.                 )
    ALZAMZAMI,                            )
17 |                                       )
                                          )
18 |         Defendants.                   )
                                          )
19 | _____ )

20

21 | ## I. SUMMARY

22 |         1.      This is a civil rights action by plaintiff RONALD MOORE ("Plaintiff") for

23 | discrimination at the building, structure, facility, complex, property, land, development, and/or

24 | surrounding business complex known as:

25 |                 City Wide Market
                    505 West Dakota Avenue
26 |                 Fresno, CA 93705
                    (hereafter "the Facility")
27
                    2.      Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and
28 | costs, against NAGI MOHSEN ZAMZAMI, individually and dba CITY WIDE MARKET;

*Moore v. Zamzami, et al.*
Complaint

MLF0040119

EX. 114-8

1   KHADIGA M. ZAMZAMI; MOHAMED M. MUTHANA, individually and dba CITY WIDE

2   MARKET; and AMRIA M. ALZAMZAMI (hereinafter collectively referred to as

3   "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et

4   seq.) ("ADA") and related California statutes.

## II.   JURISDICTION

6       3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

7   claims.

8       4.      Supplemental jurisdiction for claims brought under parallel California law –

9   arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

10      5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

12      6.      All actions complained of herein take place within the jurisdiction of the United

13   States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

14   § 1391(b), (c).

## IV.   PARTIES

16      7.      Defendants own, operate, and/or lease the Facility, and consist of a person (or

17   persons), firm, and/or corporation.

18      8.      Plaintiff is substantially limited in his ability to walk, and must use a wheelchair

19   for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable

20   California and United States laws, and a member of the public whose rights are protected by

21   these laws.

## V.   FACTS

23      9.      The Facility is open to the public, intended for non-residential use, and its

24   operation affects commerce. The Facility is therefore a public accommodation as defined by

25   applicable state and federal laws.

26      10.     Plaintiff visited the Facility and encountered barriers (both physical and

27   intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

28   goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

*Moore v. Zamzami, et al.*
Complaint

MLF0040120

1  encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or
2  about May 25, 2014:

3      a)    Plaintiff parked in a designated accessible parking space near the
4  Facility entrance. The surface of the adjacent access aisle was cracked
5  and unevenly sloped, which made it difficult for Plaintiff to transfer
6  between his vehicle and wheelchair and to maneuver toward the
7  sidewalk.

8      b)    The sidewalk leading to the Facility entrance was uneven, with deep
9  indentations which caught Plaintiff's wheels and made it difficult and
10  uncomfortable for him to maneuver his wheelchair.

11      c)    The Facility entrance door was heavy and had a raised threshold. It was
12  difficult for Plaintiff to open the door and hold it open while
13  maneuvering over the raised threshold before the door closed on him.

14      d)    The aisles inside the store lacked sufficient wheelchair clearances and
15  were obstructed by stacks of stored merchandise, preventing Plaintiff
16  from maneuvering freely around the store. It was difficult for him to
17  navigate to the items he wanted to purchase, since he was unable to pass
18  through narrow sections and had trouble finding places wide enough to
19  turn around.

20      e)    Plaintiff wanted to purchase a soda, but the self-service soda fountain
21  and cups were positioned out of his reach so he was unable to buy a soda
22  from the fountain.

23      f)    The transaction counter was too high and Plaintiff was unable to slide
24  his credit card through the point-of-sale machine or sign his receipt on
25  the counter. His grandson had to complete the transaction and sign the
26  receipt instead, which was embarrassing.

27      11.    The barriers identified in paragraph 10 herein are only those that Plaintiff
28  personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist

*Moore v. Zamzami, et al.*
Complaint

MLF0040121

EX. 114-10

1   at the Facility and relate to his disabilities. Plaintiff will seek to amend this Complaint once

2   such additional barriers are identified as it is Plaintiff's intention to have all barriers which

3   exist at the Facility and relate to his disabilities removed to afford him full and equal access.

4         12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

5   Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

6   accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

7   Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

8   once the barriers are removed.

9         13.    Defendants knew, or should have known, that these elements and areas of the

10   Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

11   the physically disabled. Moreover, Defendants have the financial resources to remove these

12   barriers from the Facility (without much difficulty or expense), and make the Facility

13   accessible to the physically disabled. To date, however, Defendants refuse to either remove

14   those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

15         14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

16   and authority to modify the Facility to remove impediments to wheelchair access and to

17   comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

18   Design. Defendants have not removed such impediments and have not modified the Facility to

19   conform to accessibility standards. Defendants have intentionally maintained the Facility in its

20   current condition and have intentionally refrained from altering the Facility so that it complies

21   with the accessibility standards.

22         15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

23   so obvious as to establish Defendants' discriminatory intent. On information and belief,

24   Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

25   to relevant building standards; disregard for the building plans and permits issued for the

26   Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

27   the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

28   property continues to exist in its non-compliant state. Plaintiff further alleges, on information

MLF0040122

EX. 114-11

1  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

2  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

6  16.   Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

7  this claim.

8  17.   Title III of the ADA holds as a "general rule" that no individual shall be

9  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

10  goods, services, facilities, privileges, and accommodations offered by any person who owns,

11  operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

12  18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

13  enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

14  Facility during each visit and each incident of deterrence.

#### Failure to Remove Architectural Barriers in an Existing Facility

16  19.   The ADA specifically prohibits failing to remove architectural barriers, which

17  are structural in nature, in existing facilities where such removal is readily achievable. 42

18  U.S.C. § 12182(b)(2)(A)(iv).

19  20.   When an entity can demonstrate that removal of a barrier is not readily

20  achievable, a failure to make goods, services, facilities, or accommodations available through

21  alternative methods is also specifically prohibited if these methods are readily achievable. Id.

22  § 12182(b)(2)(A)(v).

23  21.   Here, Plaintiff alleges that Defendants can easily remove the architectural

24  barriers at the Facility without much difficulty or expense, and that Defendants violated the

25  ADA by failing to remove those barriers, when it was readily achievable to do so.

26  22.   In the alternative, if it was not "readily achievable" for Defendants to remove

27  the Facility's barriers, then Defendants violated the ADA by failing to make the required

28  services available through alternative methods, which are readily achievable.

MLF0040123

EX. 114-12

<u>Failure to Design and Construct an Accessible Facility</u>

23.     Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1993 – independently triggering access requirements under Title III of the ADA.

24.     The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.     Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moore v. Zamzami, et al.*
Complaint

Page 6

MLF0040124

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.    SECOND CLAIM
### Unruh Act

33.     Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

40.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

MLF0040125

EX. 114-14

1  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

2  § 52(a).

3  ### VIII. THIRD CLAIM

4  #### Denial of Full and Equal Access to Public Facilities

5  41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

6  this claim.

7  42.    Health and Safety Code § 19955(a) states, in part, that: California public

8  accommodations or facilities (built with private funds) shall adhere to the provisions of

9  Government Code § 4450.

10  43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-

11  exempt) public accommodation constructed prior to July 1, 1970, which is altered or

12  structurally repaired, is required to comply with this chapter.

13  44.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or

14  repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

15  § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

16  45.    Defendants' non-compliance with these requirements at the Facility aggrieved

17  (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

18  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

19  ### IX.    PRAYER FOR RELIEF

20  WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

21  1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

22  2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh

23  Act damages.

24  3.    Statutory minimum damages under section 52(a) of the California Civil Code

25  according to proof.

26  4.    Attorneys' fees, litigation expense, and costs of suit.[2]

27  5.    Interest at the legal rate from the date of the filing of this action.

28

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moore v. Zamzami, et al.*
Complaint

MLF0040126

EX. 114-15

1      6.      For such other and further relief as the Court deems proper.

2

3    Dated: March 19, 2015                    MOORE LAW FIRM, P.C.

4                                             _/s/ Tanya E. Moore_
                                             Tanya E. Moore
5                                            Attorneys for Plaintiff
6                                            Ronald Moore

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MLF0040127

EX. 114-16

## VERIFICATION

    I, RONALD MOORE, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

    I verify under penalty of perjury that the foregoing is true and correct.

Dated: 3/19/15

_Ronald Moore_

Ronald Moore

_Moore v. Zamzami (City Wide Market)_

MLF0040132

# Exhibit 115



Teazer World Tea Market -- Tower District

645 E. Olive Ave.

fresno, CA 93728

http://www.teazerworldteamarket.com

559-442-4207

Visa 8463
VISA

3/17/2015, 7:20 PM

#cpHs

Teazer World Tea Market --
Tower District

How was your experience?

$5.00

MLF0051411

Rachel Lobato

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? _Teazer World Tea Market - Tower Dist._

2. What is the address of the Facility? _645 E. Olive Ave Fresno, Ca 93728_

3. When did you visit the Facility? _3-17-2015_ (Date) _7:20 pm_ (Time)

4. Was this your first visit to the Facility? _YES_

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give

   an estimate of how often you go. _NO_

6. What was the purpose of your visit? _Tea_

7. Who accompanied you to the Facility? _my husband_

8. What car did you drive to the Facility? _my car_

9. Did you drive yourself or did you get a ride from someone else? _my husband_

10. Describe a specific location where you parked your vehicle.

    _in back of Teazer World Asphalt Parking lot_

11. Was it difficult for you to park there?      No ☐          Yes ☑

    If you marked yes, please describe _HOW_ it was difficult:

    _Lack of ADA Signage, i felt lost & Confused where to park_

12. How did you unload from your vehicle? _push myself up and out with Care_

13. What side of the vehicle did you unload from? Driver or passenger? _Passenger_

14. Did anyone help you to transfer onto your wheelchair? Who? _____

15. Did you encounter any problems transferring onto your wheelchair?   No ☐   _N/A_   Yes ☐

    If you marked yes, please describe these problems and _HOW_ they prevented you from accessing your

    wheelchair:

    a) _____

    b) _____

    c) _____

16. Which way did you go from the parking to the entrance of the Facility? _From Parking to back Door_

17. Did you encounter any problems on your way to the entrance?      No ☐          Yes ☑

_Rachel Lobato_

MLF0051397

If you marked yes, list each problem and *HOW/WHY* it made it difficult for you to get to the facility:

a) Uneven ground, potholes at the Asphalt — Painful to my feet

b) Lack of ADA Signage or Blue Green, i felt Confused

Knees

c) NO Path of Travel
on where to go.

18. Did you encounter any problems opening the door?    No ☐    Yes ☑

If you marked yes, list each problem and HOW/WHY it made it difficult for you to get inside the facility:

a) Yes - Mutiple Doors as i walked around

b) the facility, Narrow/Hard to open, high thresheds

c) Cause pain to my Knees/feet

19. What did you purchase (or what meal did you have there)?  Tea

20. Did you need to use the restroom while you were at the Facility? Why? Yes  to Urine

21. List any problems you encountered and *HOW* they prevented you from accessing any of the following  (or write "Did not need to use" or "No problems"):

Sink: opened up High - Hard to Reach handles to use

Toilet: Low/Round - No Grabbers - Hurt to sit or to get up

Door

Urinal: - Round Knob - Hurt my hand & Key's to unlock hurt my hand

Toilet paper: up High

Toilet seat covers: up High ← Hurt to Stretch to Reach for it

Painful to my Arms

Paper towels: up High

Mirror

Hand dryer: - up to high - Dificult to see myself - i was Sad

Soap dispenser: i Dont Remember

Other: _____

22. Did you have any problem maneuvering inside the restroom?    No ☑    Yes ☐

If you marked yes, list each problem and *HOW/WHY* it prevented or made it hard to move around the restroom:

a) _____

b) _____

Did not Load

MLF0051398

EX. 115-4

23. Did you want to sit down in the facility?    No ☐    Yes ☑

24. If you answered yes to the question above, please describe a specific location of where you sat:

Small Round Table

25. Were you able to sit comfortably in the seating provided?    No ☑    Yes ☐

If you marked no, list each reason **WHY** you were not able to sit comfortably in the seating provided:

a) at a small Round Table - uncomfortable

b) Hard Chair

c) _____

26. Did you use the counter to pay for purchase? Which one? Register Counter

27. Did you pay with cash or (credit card?)    C. Card

28. Was the counter accessible?    No ☑    Yes ☐

If you marked no, list each reason **WHY and HOW** the counter was not accessible:

a) up High - Painful to Stretch for Transaction

b) _____

c) _____

29. Did you have any other problems inside the Facility?    No ☐    Yes ☐

If you marked yes, list each problem and **HOW and WHY** they caused you to feel uncomfortable in the facility:

a) Narrow Doors - Slopes at Doors, Tall Thresholds

b) Painful to Step over to my Knees

c) Loss of balance at the slopes, i was scared

30. Which way did you go after you left the Facility? out the Front Doors

31. Any problems getting back to your vehicle?    No ☐    Yes ☑

If you marked yes, list each problem and **HOW** it was a barrier for you to get back to your vehicle:

a) Slopes - uneven ground - Hurt my Knees/Feet

b) _____

Dad 11 shots

MLF0051399

EX. 115-5

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

c) _____

32. Any problems transferring from your wheelchair to your vehicle? _____

33. Any additional information you believe would assist us in evaluating this inquiry?

_____

Park in the Rear of Tea Store facility. There was no ADA signage, i felt lost on where to park, I park in front of Back Door. in My Route to enter thru back Door i encountered uneven ground no path of Travel, i felt confused with Pain to my feet inside i ordered my Drinks, then i approach seating, chairs were very uncomfortable to sit there, i use the Restroom it required a Key and that hurt my hand alot. inside Rest Room there was No Grab bars With a small toilet, it Hurt My Knees and feet to sit or to get up. Toilet paper and seat coveres were very High, it Hurt alot to Reach for them. The sink was in a corner with handle that were dificult to Reach and the Door Knob was round that hurt my hand to turn it, and with a Key made it more dificult. i was so unhappy and Disapointed in the Restroom. Also i walk around the facility looking for out side seating during this Route i walked thru 3 Doors, Front, side, Back, i encountered Narrow Doors, uneven ground, and tall Thresholds. This cause me to sader Kneepain as i walked the Route. I was feeling Depressed and Neglected, I Did NOT enjoy this visit at all. Oh-Also the pay counter was up high and they only Tex me my reciept, So i have a pic of Reciept.

O.del Lobato

MLF0051400

EX. 115-6



MLF0051401

EX. 115-7



NO ADA Signage.
No Path of Travel unencumbered
in my Route to the back
Door as I walk around the
Building. It is so painful
to my knees.

Narrow Door

This facility had
1 rear door
1 side door
1 entry Front Door

As I walk around the facility, I encountered a step up, seating
area in the back, that had a 6" step up. I was unable to sit there
I continued to walk around for outside seating and encountered
Narrow Doors, an even ground, severe change of grades, and
tall Threshold~; so found Pain to my Knees, joints (cannot last); I was tired.

MLF0051402



NO ADA Grab bars
Cause pain to my Knees
and to my feet to sit-
or to get up.
i had alot of Pain and
Difficulty

Toilet paper up to High

Seat cover up High

No Grab Bars Difficult
To me sit Down get
up Pain to my knees

MLF0051403



Multiple Entry's to facility, had tall thresholds, uneven ground, Path to my knees - feet

MLF0051404



- Uneven ground
- Narrow Door
- Change of Grades
- As I walk around the facility I suffered pain to my knees

MLF0051405

EX. 115-11



MLF0051406



- Uneven ground
- Narrow Door
- Change of Grades

As I walk around the facility
I suffered Pain to my knees

MLF0051407



uneven ground

Steep Slope Entry

Steep Slope Entry

i walk around the facility and i encountered steep slopes, uneven ground, that Hurt my knees feet

MLF0051408

EX. 115-14



MLF0051409

EX. 115-15





# MOORE
## LAW FIRM, P.C.

April 29, 2015

Ms. Rachel Lobato
P.O. Box 202
Hanford, CA 93230

     Re:    ADAI No.    02392
             Teazer World Tea Market (645 E Olive Ave, Fresno, CA)

Dear Ms. Lobato:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Sincerely,

*Tanya Moore*

Tanya E. Moore

TEM:ed

MLF0051434

## BARRIER MEMO

**ADAI No. :**      02392

**Case Name:**     Lobato v. Teazer World Tea Market

**Address:**       645 E Olive, Fresno

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| No accessible parking | Plaintiff parked in the lot in back of the store. She could not find any accessible parking and had to park in a standard parking stall. | Y |
| Route cracked/uneven | The route of travel from Plaintiff's vehicle to the entrance was cracked and uneven, with potholes, which made it hard for her to walk. | Y |
| Narrow doors, raised thresholds | Plaintiff entered through the back door and after she ordered, walked around the Facility looking for outdoor seating, going through the front and side doors as well. Each of these doors were narrow and had raised thresholds, with slopes at the landings. | Y, very raised |
| Toilet lacked grab bars | The toilet in the (women's?) restroom lacked grab bars, which made it hard for Plaintiff to sit and stand. | Y |
| She also complained about these things but they do not relate to her disability | Lack of accessible seating | Y |
|  | Counter high | Y |
|  | Toilet paper, seat covers, paper towels, mirror high | Y |
|  | Sink high/faucet far away | Y |
|  | Restroom door required key (relates) | Y |

MLF056526

EX. 115-18

# MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
408.298.2000

June 9, 2015

## CIVIL RIGHTS LAWSUIT FEE AGREEMENT

MOORE LAW FIRM ("Attorney"), and RACHEL LOBATO ("Client"), hereby agree that Attorney will provide legal services to "Client" on the terms set forth below.

**1.      CONDITIONS.** This Agreement will not take effect, and Attorney will have no obligation to provide legal services, until Client returns a signed copy of this Agreement.

**2.      SCOPE OF SERVICES.** Client is hiring Attorney to represent Client in the matter of Client's claims arising out of the denial of full and equal access to Client on account of Client's disabilities to the facility known as Teazer World Tea Market and located at 645 East Olive Avenue, Fresno, CA ("the Facility"). Specifically, Attorney will provide services towards obtaining an injunction under federal and California civil rights laws requiring the removal of barriers to Client's full and equal access to the Facility, and will seek statutory damages as permitted and appropriate under California law.

Attorney will represent Client until a settlement or judgment is reached. Attorney will oppose any motion for a new trial or any other post-trial motions filed by an opposing party, or will make any appropriate post-trial motions on Client's behalf. After judgment, Attorney will not represent Client on any appeal, or in any proceeding to execute on the judgment, unless Client and Attorney agree that Attorney will provide such services and also agree upon additional fees, if any, to be paid to Attorney for such services. Services in any matter not described above will require a separate written agreement.

Client understands and acknowledges that in civil rights actions such as this, the action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. Civil rights actions alleging discrimination seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated. Client acknowledges that Attorney will focus her efforts on obtaining injunctive relief, and that any damages which may be available will be secondary to the injunctive relief sought, and that any damages recovered may be minimal.

**3.      LIMITATION OF REPRESENTATION.** Attorney is representing Client only on the matters described in Paragraph 2. Attorney's representation does not include independent or related matters that may arise, including, among other things, claims for property damage, workers' compensation, disputes with a health care provider about the amount owed for their

1

MLF056527

services, or claims for reimbursement (subrogation) by any insurance company for benefits paid under an insurance policy, any claim made against Client by any defendant(s). Attorney will require a separate fee agreement, and additional fees, in order to represent Client in any additional matter not described in Paragraph 2.

4. **RESPONSIBILITIES OF THE PARTIES.** Attorney will provide those legal services reasonably required to represent Client in prosecuting the claims described in Paragraph 2 and will take reasonable steps to keep Client informed of progress and developments, and to respond promptly to inquiries and communications. Client agrees to be truthful with Attorney, to cooperate, to keep Attorney informed of any information and developments which may come to Client's attention, to abide by this Agreement, and to keep Attorney advised of Client's address, telephone number and whereabouts. Client agrees to appear at all legal proceedings when Attorney deems it necessary, and generally to cooperate fully with Attorney in all matters related to the preparation and presentation of Client's claims.

5. **CLIENT AND ATTORNEY CONFLICT OF INTEREST CONSENT.** It is often possible in civil rights cases, like yours, for the attorney to make a separate application to be paid attorney fees to the court. Also, quite often, the attorney negotiates attorney fees as a separate component of a client's overall settlement. Attorney fee negotiations in this context create a potential conflict of interest between the attorney and client, namely, a conflict between the duty of the attorney to promote the client's interest in obtaining the highest settlement amount, as opposed to the interest of the attorney in obtaining satisfactory compensation for work done.

Client consents to this potential conflict, and specifically authorizes Attorney to make any application for attorney fees or separately negotiate for payment of attorney fees from the defendant(s), at Attorney's discretion. Attorney fees obtained in this context are the sole property of Attorney.

_____ (Client initials here) _____ (Attorney initials here)

6. **RECEIPT OF PROCEEDS.** All monetary proceeds recovered in Client's case shall be deposited into Attorney's trust account.

7. **COSTS AND LITIGATION EXPENSES.** Client will incur various costs and expenses in performing legal services under this Agreement. Payment of these costs is the Client's sole responsibility. Attorney, in his or her discretion, may advance these costs on Client's behalf. Client agrees to pay for all costs, disbursements and expenses paid or owed by Client in connection with this matter, or which have been advanced by Attorney on Client's behalf and which have not been previously paid or reimbursed to Attorney.

Costs, disbursements and litigation expenses commonly include court fees, jury fees, service of process charges, court and deposition reporters' fees, photocopying and reproduction costs, notary fees, long distance telephone charges, messenger and other delivery fees, postage, deposition costs, travel costs including parking, mileage, transportation, meals and hotel costs, investigation expenses, consultant, expert witness, professional mediator, arbitrator and/or special master fees and other similar items. Except for the items listed below, costs and expenses will be charged at Attorney's cost.

2

MLF056528

| | |
|---|---|
| In-office photocopying | .15/page |
| Facsimile charges | .15/page |
| Mileage | .60/mile |

To aid in the preparation or presentation of Client's case, it may become necessary to hire expert witnesses, consultants or investigators. Attorney will select any expert witnesses, consultants or investigators to be hired, and Client will be informed of persons chosen and their charges. Client authorizes Attorney to incur all reasonable costs and to hire any investigators, consultants or expert witnesses reasonably necessary in Attorney's judgment.

**8.** **FEES.** Attorney will only be compensated for legal services rendered if a monetary recovery is obtained for Client, OR if a court makes an award of attorney fees, OR if Attorney negotiates the separate payment of attorney fees as a component of a settlement. "Monetary recovery" means any money recovered for Client, including damages of any sort, whether general, special, economic, non-economic or punitive damages. "Monetary recovery" also includes penalties and fines payable to Client from any source. "Monetary recovery" does not include injunctive or equitable relief.

**8.a.** **Separate Attorney Fee Award.** If a court makes an award of attorney fees, or if Attorney negotiates the separate payment of attorney fees as a component of a settlement, then that payment of attorney fees shall comprise the only fee that Attorney is entitled to obtain under this Agreement. Client agrees that any court award of attorney fees is the sole property of the Attorney, regardless of whether the award is ordered separately payable to Attorney. Client agrees that any separate payment of attorney fees obtained as a component of a settlement is the sole property of the Attorney. Client is still obligated to reimburse Attorney for all outstanding costs advanced by Attorney.

**8.b.** **Maximum Fee If No Separate Fee Award.** If there is no separate payment of attorney fees as stated in the preceding paragraph, then Attorney's fee is the GREATER of either (a) one-third (33.33%) of the total monetary recovery obtained for Client, OR (b) Attorney's hourly rate multiplied by the hours worked. These amounts are calculated after reimbursement to the Attorney for outstanding costs advanced.

Attorney's billing rates are from $350 per hour to $685 per hour. Paralegals are billed at $95 to $200 per hour. Client is encouraged to periodically request a summary of Attorney time expended and costs incurred.

**8.c.** **Attorney Fee May Exceed Client's Ultimate Monetary Recovery.** In any event, Client understands that Attorney's total fee might substantially exceed the amount of money Client ultimately obtains from any monetary recovery.

**9.** **NEGOTIABILITY OF FEES.** The rates set forth above are not set by law, but are negotiable between an attorney and client.

3

MLF056529

**10.** **LIEN.** Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Agreement. Attorney's lien will be for any sums owing to Attorney for any unpaid costs, and attorneys' fees, at the conclusion of Attorney's services. The lien will attach to any monetary recovery that Client obtains, whether by arbitration award, judgment, settlement, or otherwise.

The effect of such a lien is that Attorney may be able to compel payment of fees and costs from any such funds recovered on behalf of Client, even if Attorney has been discharged before the end of the case. Because a lien may affect Client's property rights, Client may seek the advice of an independent lawyer of Client's own choice before agreeing to such a lien. By initialing this paragraph, Client represents and agrees that Client has had a reasonable opportunity to consult such an independent lawyer and Client agrees that Attorney will have a lien as specified above.

 (Client initials here) _____ (Attorney initials here)

**11.** **APPROVAL NECESSARY FOR SETTLEMENT.** Attorney will not make any settlement or compromise of any nature of any of Client's claims without Client's prior approval. Client retains the absolute right to accept or reject any settlement. Client agrees to consider seriously any settlement offer Attorney recommends before making a decision to accept or reject such offer. Client agrees not to make any settlement or compromise of any nature of any of Client's claims without prior notice to Attorney.

**12.** **POWER OF ATTORNEY.** Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further gives Attorney permission to sign any kind of settlement agreement in connection with this matter once Client's approval to the settlement has been given.

**13.** **DISCHARGE AND WITHDRAWAL.** Client may discharge Attorney at any time, for any reason, upon written notice to Attorney. Attorney may withdraw from representation of Client on adequate advance written notice to Client.

**14.** **DISCLAIMER OF GUARANTEE.** Nothing in this Agreement and nothing in Attorney's statements to Client will be construed as a promise or guarantee about the outcome of this matter. Attorney makes no such promises or guarantees.

**15.** **USE OF CLOUD COMPUTING FOR CLIENT INFORMATION.** Rather than store data exclusively on a local drive, Attorney uses cloud storage providers to store Client information in one of their remote data centers. Such information includes, but is not limited to, court documents, expert communications and reports, discovery, investigation reports, internal memoranda, client documents, and client communications, including email. The information so stored is confidential client information. Attorney has taken reasonable precautions to ensure that the use of cloud technology does not subject confidential client information to an undue risk of unauthorized disclosure. However, no security system is foolproof, and a breach of security could subject Client's information to disclosure. By Client's signature below, Client authorizes Attorney to utilize such cloud storage providers.

MLF056530

**16.    DOCUMENT RETENTION POLICIES.** At the conclusion of the matter, Attorney will return to Client all original documents provided by the Client to the Attorney. Attorney will scan all documents in the file into digital format, and will retain a digital copy of Client's file for seven (7) years. Paper copies of all documents will be destroyed immediately, with the exception of any settlement agreement and this fee agreement. After seven (7) years, the entire file will be destroyed.

**17.    ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties. No other agreement, statement or promise made on or before the effective date of this Agreement will be binding on the parties.

**18.    SEVERABILITY IN EVENT OF PARTIAL INVALIDITY.** If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

**19.    MODIFICATION BY SUBSEQUENT AGREEMENT.** This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them.

**20.    CHOICE OF LAW.** This Agreement shall be governed by the laws of the State of California.

THE PARTIES HAVE READ AND UNDERSTAND THE FOREGOING TERMS AND AGREE TO THEM. IF MORE THAN ONE CLIENT SIGNS BELOW, EACH AGREES TO BE JOINTLY AND SEVERALLY LIABLE FOR ALL OBLIGATIONS UNDER THIS AGREEMENT. CLIENT ACKNOWLEDGES RECEIPT OF A DUPLICATE COPY OF THIS AGREEMENT SIGNED BY BOTH THE ATTORNEY AND THE CLIENT.

Dated: _6-12-15_

_Rachel Lobato_ (signature)
Rachel Lobato
Address: _PO Box 202_
_Hanford CA 93230_
Telephone: _559 369 0998_

Dated: _____

MOORE LAW FIRM, P.C.

By: _____
Tanya E. Moore, President

5

MLF056531



# MOORE
## LAW FIRM, P.C.

July 1, 2015

Ms. Rachel Lobato
P.O. Box 202
Hanford, CA  93230

       **Re:**    **ADAI No. 02392**
               *Lobato v. Garcia, et al.*
               *Case No. 1:15:-cv-00995---SAB*

Dear Ms. Lobato:

Enclosed please find a copy of the filed Complaint in the above-captioned
matter for your records.  If you have any questions please do not hesitate to
call the office.

Sincerely,

Marsha Levinson
Legal Secretary

Enclosure

MLF056532

EX. 115-24

1 | Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
2 | 332 North Second Street
San Jose, California 95112
3 | Telephone (408) 298-2000
Facsimile (408) 298-6046
4 | E-mail: tanya@moorelawfirm.com

5 | Attorney for Plaintiff
Rachel Lobato

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **EASTERN DISTRICT OF CALIFORNIA**

10

11 | RACHEL LOBATO,                                    ) No.
                                                      )
12 |          Plaintiff,                              ) **COMPLAINT ASSERTING DENIAL OF**
                                                      ) **RIGHT OF ACCESS UNDER**
13 |     vs.                                          ) **AMERICANS WITH DISABILITIES ACT**
                                                      ) **FOR INJUNCTIVE RELIEF,**
14 | LESTER L. GARCIA, Trustee of the                 ) **DECLARATORY RELIEF, DAMAGES,**
    | GARCIA FAMILY REVOCABLE TRUST                   ) **ATTORNEYS' FEES AND COSTS (ADA)**
15 | dated April 19, 2005; DELPHINA GARCIA,           )
    | Trustee of the GARCIA FAMILY                     )
16 | REVOCABLE TRUST dated April 19, 2005;            )
17 | WEN-YI ANN McATEE dba TEAZER                     )
    | WORLD TEA MARKET; FERRY                          )
18 | SANTOSO dba TEAZER WORLD TEA                     )
    | MARKET;                                          )
19 |                                                   )
20 |          Defendants.                              )
                                                      )
21 | _____)

22 |                        **I. SUMMARY**

23 |     1.    This is a civil rights action by plaintiff RACHEL LOBATO ("Plaintiff") for

24 | discrimination at the building, structure, facility, complex, property, land, development, and/or

25 | surrounding business complex known as:

26 |         Teazer World Tea Market
          645 East Olive Avenue
27 |         Fresno, CA 93728
          (hereafter "the Facility")
28

*Lobato v. Garcia, et al.*
Complaint
                                Page 1

MLF0051425

1       2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

2 costs, against LESTER L. GARCIA, Trustee of the GARCIA FAMILY REVOCABLE

3 TRUST dated April 19, 2005; DELPHINA GARCIA, Trustee of the GARCIA FAMILY

4 REVOCABLE TRUST dated April 19, 2005; WEN-YI ANN McATEE dba TEAZER

5 WORLD TEA MARKET; and FERRY SANTOSO dba TEAZER WORLD TEA MARKET

6 (hereinafter collectively referred to as "Defendants"), pursuant to the Americans with

7 Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

8                  **II.    JURISDICTION**

9       3.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA

10 claims.

11       4.     Supplemental jurisdiction for claims brought under parallel California law –

12 arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

13       5.     Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

14                  **III.    VENUE**

15       6.     All actions complained of herein take place within the jurisdiction of the United

16 States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.

17 § 1391(b), (c).

18                  **IV.    PARTIES**

19       7.     Defendants own, operate, and/or lease the Facility, and consist of a person (or

20 persons), firm, and/or corporation.

21       8.     Plaintiff is substantially limited in her ability to walk, and must use a walker,

22 cane, or wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by

23 all applicable California and United States laws, and a member of the public whose rights are

24 protected by these laws.

25                  **V.    FACTS**

26       9.     The Facility is open to the public, intended for non-residential use, and its

27 operation affects commerce. The Facility is therefore a public accommodation as defined by

28 applicable state and federal laws.

*Lobato v. Garcia, et al.*
Complaint
                            Page 2

MLF0051426

1      10.    Plaintiff visited the Facility and encountered barriers (both physical and

2 intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the

3 goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

4 encountered the following barriers at the Facility during Plaintiff's visit to the Facility on or

5 about March 17, 2015:

6           a)    Plaintiff was unable to locate a designated accessible parking stall in the

7                 Facility's parking lot, and was forced to park in a standard stall. The

8                 route of travel from Plaintiff's parking stall to the rear Facility entrance

9                 had an uneven surface that made it difficult for her to walk across.

10          b)    The rear building entrance had a high threshold, which was difficult for

11                 Plaintiff to step over.

12          c)    The door to the restroom required a key, and it was difficult for Plaintiff

13                 to operate the key and doorknob using both hands while simultaneously

14                 supporting herself with her cane.

15          d)    The toilet in the restroom lacked grab bars, which made it difficult for

16                 Plaintiff to lower herself onto and stand up from the toilet.

17      11.    The barriers identified in paragraph 10 herein are only those that Plaintiff

18 personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist

19 at the Facility and relate to her disabilities. Plaintiff will seek to amend this Complaint once

20 such additional barriers are identified as it is Plaintiff's intention to have all barriers which

21 exist at the Facility and relate to her disabilities removed to afford her full and equal access.

22      12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

23 Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

24 accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

25 Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

26 once the barriers are removed.

27      13.    Defendants knew, or should have known, that these elements and areas of the

28 Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

*Lobato v. Garcia, et al.*
Complaint

MLF0051427

1  the physically disabled. Moreover, Defendants have the financial resources to remove these

2  barriers from the Facility (without much difficulty or expense), and make the Facility

3  accessible to the physically disabled. To date, however, Defendants refuse to either remove

4  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

5        14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

6  and authority to modify the Facility to remove impediments to wheelchair access and to

7  comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

8  Design. Defendants have not removed such impediments and have not modified the Facility to

9  conform to accessibility standards. Defendants have intentionally maintained the Facility in its

10  current condition and have intentionally refrained from altering the Facility so that it complies

11  with the accessibility standards.

12        15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

13  so obvious as to establish Defendants' discriminatory intent. On information and belief,

14  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

15  to relevant building standards; disregard for the building plans and permits issued for the

16  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

17  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

18  property continues to exist in its non-compliant state. Plaintiff further alleges, on information

19  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

20  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

21                              **VI.    FIRST CLAIM**

22                     **Americans with Disabilities Act of 1990**

23                     Denial of "Full and Equal" Enjoyment and Use

24        16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for

25  this claim.

26        17.    Title III of the ADA holds as a "general rule" that no individual shall be

27  discriminated against on the basis of disability in the full and equal enjoyment (or use) of

28  goods, services, facilities, privileges, and accommodations offered by any person who owns,

*Lobato v. Garcia, et al.*
Complaint

                              Page 4

MLF0051428

1   operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

2        18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

3   enjoyment" and use of the goods, services, facilities, privileges and accommodations of the

4   Facility during each visit and each incident of deterrence.

5               Failure to Remove Architectural Barriers in an Existing Facility

6        19.    The ADA specifically prohibits failing to remove architectural barriers, which

7   are structural in nature, in existing facilities where such removal is readily achievable. 42

8   U.S.C. § 12182(b)(2)(A)(iv).

9        20.    When an entity can demonstrate that removal of a barrier is not readily

10   achievable, a failure to make goods, services, facilities, or accommodations available through

11   alternative methods is also specifically prohibited if these methods are readily achievable. Id.

12   § 12182(b)(2)(A)(v).

13        21.    Here, Plaintiff alleges that Defendants can easily remove the architectural

14   barriers at the Facility without much difficulty or expense, and that Defendants violated the

15   ADA by failing to remove those barriers, when it was readily achievable to do so.

16        22.    In the alternative, if it was not "readily achievable" for Defendants to remove

17   the Facility's barriers, then Defendants violated the ADA by failing to make the required

18   services available through alternative methods, which are readily achievable.

19               Failure to Design and Construct an Accessible Facility

20        23.    Plaintiff alleges on information and belief that the Facility was designed and

21   constructed (or both) after January 26, 1993 – independently triggering access requirements

22   under Title III of the ADA.

23        24.    The ADA also prohibits designing and constructing facilities for first occupancy

24   after January 26, 1993, that aren't readily accessible to, and usable by, individuals with

25   disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

26   ///

27   ///

28   ///

*Lobato v. Garcia, et al.*
Complaint

MLF0051429

1    25.    Here, Defendants violated the ADA by designing and constructing (or both) the

2  Facility in a manner that was not readily accessible to the physically disabled public –

3  including Plaintiff – when it was structurally practical to do so.[1]

4                    Failure to Make an Altered Facility Accessible

5    26.    Plaintiff alleges on information and belief that the Facility was modified after

6  January 26, 1992, independently triggering access requirements under the ADA.

7    27.    The ADA also requires that facilities altered in a manner that affects (or could

8  affect) its usability must be made readily accessible to individuals with disabilities to the

9  maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

10  primary function also requires making the paths of travel, bathrooms, telephones, and drinking

11  fountains serving that area accessible to the maximum extent feasible. Id.

12    28.    Here, Defendants altered the Facility in a manner that violated the ADA and

13  was not readily accessible to the physically disabled public – including Plaintiff – to the

14  maximum extent feasible.

15                    Failure to Modify Existing Policies and Procedures

16    29.    The ADA also requires reasonable modifications in policies, practices, or

17  procedures, when necessary to afford such goods, services, facilities, or accommodations to

18  individuals with disabilities, unless the entity can demonstrate that making such modifications

19  would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

20    30.    Here, Defendants violated the ADA by failing to make reasonable modifications

21  in policies, practices, or procedures at the Facility, when these modifications were necessary to

22  afford (and would not fundamentally alter the nature of) these goods, services, facilities, or

23  accommodations.

24    31.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney

25  fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

26

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a
private attorney general under either state or federal statutes.

*Lobato v. Garcia, et al.*
Complaint

MLF0051430

1       32.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants

2   violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

3                   **VII.   SECOND CLAIM**

4                          **Unruh Act**

5       33.    Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for

6   this claim.

7       34.    California Civil Code § 51 states, in part, that: All persons within the

8   jurisdiction of this state are entitled to the full and equal accommodations, advantages,

9   facilities, privileges, or services in all business establishments of every kind whatsoever.

10      35.    California Civil Code § 51.5 also states, in part that: No business establishment

11  of any kind whatsoever shall discriminate against any person in this state because of the

12  disability of the person.

13      36.    California Civil Code § 51(f) specifically incorporates (by reference) an

14  individual's rights under the ADA into the Unruh Act.

15      37.    Defendants' aforementioned acts and omissions denied the physically disabled

16  public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges

17  and services in a business establishment (because of their physical disability).

18      38.    These acts and omissions (including the ones that violate the ADA) denied,

19  aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

20      39.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory

21  minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

22      40.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

23  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

24  § 52(a).

25                  **VIII. THIRD CLAIM**

26        **Denial of Full and Equal Access to Public Facilities**

27      41.    Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

28  this claim.

*Lobato v. Garcia, et al.*
Complaint
                          Page 7

EX. 115-31

MLF0051431

1    42.    Health and Safety Code § 19955(a) states, in part, that: California public

2 accommodations or facilities (built with private funds) shall adhere to the provisions of

3 Government Code § 4450.

4    43.    Health and Safety Code § 19959 states, in part, that: Every existing (non-

5 exempt) public accommodation constructed prior to July 1, 1970, which is altered or

6 structurally repaired, is required to comply with this chapter.

7    44.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or

8 repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

9 § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

10    45.    Defendants' non-compliance with these requirements at the Facility aggrieved

11 (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

12 Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

13                          **IX.    PRAYER FOR RELIEF**

14    WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

15    1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

16    2.    Declaratory relief that Defendants violated the ADA for the purposes of Unruh

17         Act damages.

18    3.    Statutory minimum damages under section 52(a) of the California Civil Code

19         according to proof.

20    4.    Attorneys' fees, litigation expense, and costs of suit.[2]

21    5.    Interest at the legal rate from the date of the filing of this action.

22    6.    For such other and further relief as the Court deems proper.

23 Dated: June 12, 2015                    MOORE LAW FIRM, P.C.

24

25                                /s/ Tanya E. Moore
                                 Tanya E. Moore
26                                Attorney for Plaintiff
                                 Rachel Lobato
27

28 _____

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Lobato v. Garcia, et al.*
Complaint

                          Page 8

MLF0051432

# VERIFICATION

I, RACHEL LOBATO, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated: _6-12-15_                                  */s/ Rachel Lobato*
                                                  Rachel Lobato

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                                  */s/ Tanya E. Moore*
                                                  Tanya E. Moore, Attorney for
                                                  Plaintiff, Rachel Lobato

*Lobato v. Garcia, et al.*
*Verification*

EX. 115-33

MLF0051433

# VERIFICATION

I, RACHEL LOBATO, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 6-12-15

Rachel Lobato

MLF056542

# Exhibit 116

MAY

YOUR RECEIPT
THANK YOU
CALL AGAIN

03-15-2015          14:56
REG                 4031

DEPT02      T1      $1.75
DEPT02      T1      $1.75
DEPT02      T1      $2.00
TA1                 $5.50
TAX1                $0.48
TOTAL
CASH               $5.98
CHANGE            $20.00
                  $14.02

MLF0051539

EX. 116-2

PUBLIC ACCOMMODATION VISIT QUESTIONNAIRE

1. What is the name of the Facility? *El Campesino Mexican Restaurant*

2. What is the address of the Facility? *1962 Whitson St. Selma, Ca, 93662*

3. When did you visit the Facility? *3-15-2015* (Date) *14:56* (Time)

4. Was this your first visit to the Facility? *Yes*

5. If you have been to the Facility before, please list the date and times of each visit if you can remember, or give an estimate of how often you go. _____

6. What was the purpose of your visit? *Eat*

7. Who accompanied you to the Facility? *my husband*

8. What car did you drive to the Facility? *our truck*

9. Did you drive yourself or did you get a ride from someone else? *my husband*

10. Describe a specific location where you parked your vehicle.
*In the back parking*

11. Was it difficult for you to park there?    No ☐        Yes ☑

    If you marked yes, please describe *HOW* it was difficult:
    *There was NO ADA Signage to lead me to a safe parking*

12. How did you unload from your vehicle? *myself & walker*

13. What side of the vehicle did you unload from? Driver or passenger? *Passenger*

14. Did anyone help you to transfer onto your wheelchair? Who? _____

15. Did you encounter any problems transferring onto your wheelchair?    No ☐  *n/a*  Yes ☐

    If you marked yes, please describe these problems and *HOW* they prevented you from accessing your wheelchair:

    a) _____
    b) _____
    c) _____

16. Which way did you go from the parking to the entrance of the Facility? *to the side and to Front Door*

17. Did you encounter any problems on your way to the entrance?    No ☐        Yes ☑

MLF0051535

EX. 116-3

If you marked yes, list each problem and _HOW/WHY_ it made it difficult for you to get to the facility:

a) Uneven Asphalt

b) Pot holes in Asphalt — it was Dificult to Push my walker

c) Step up Obsticals — & Painful to step up to get

to the Front Door entrance.

18. Did you encounter any problems opening the door?   No ☐   Yes ☒

If you marked yes, list each problem and HOW/WHY it made it difficult for you to get inside the facility:

a) Round Door Knobs - Painful to turn with my hand &

b) Hold on to walker, Very Dificult.

c) _____

19. What did you purchase (or what meal did you have there)?   Drinks, & snack

20. Did you need to use the restroom while you were at the Facility? Why?   Yes, i have to pee alot.

21. List any problems you encountered and _HOW_ they prevented you from accessing any of the following  (or write "Did not need to use" or "No problems"):

Sink: Round Knobs on faucet - Hurt my hands to turn them & Hold my walker

Toilet: NO grab bars; Painful to sit and to get up.

Urinal: NO 5' circle inside - Very Dificult to turn my walker, & Frustrated

Toilet paper: Uphigh - hurt & painful to Reach it

Toilet seat covers: Uphigh & far away from toilet - hurt & painful to Reach it,

Paper towels: Uphigh - hurt to reach so high & Hold my walker - i was scared

Hand dryer: Door - Very Narrow 24" - Dificult to get inside

Soap dispenser: Uphigh - hurt to reach so high & Hold my walker, i was scared

Other: Large Step up - i twas painful to Step up so high & Lose balance

22. Did you have any problem maneuvering inside the restroom?   No ☐   Yes ☒

If you marked yes, list each problem and _HOW/WHY_ it prevented or made it hard to move around the restroom:

a) NO 5Ft circle - Lack of Clearance, to Move &

b) turn properly

**MLF0051536**

EX. 116-4

23. Did you want to sit down in the facility?   No ☐   Yes ☒

24. If you answered yes to the question above, please describe a specific location of where you sat:

_at small table next to wall_

25. Were you able to sit comfortably in the seating provided?   No ☒   Yes ☐

    If you marked no, list each reason *WHY* you were not able to sit comfortably in the seating provided:

    a) _Lack of Clearance for my Walker & Turn around_

    b) _____

    c) _____

26. Did you use the counter to pay for purchase? Which one? _Register Counter_

27. Did you pay with cash or credit card? _Cash_

28. Was the counter accessible?   No ☒   Yes ☐

    If you marked no, list each reason *WHY and HOW* the counter was not accessible:

    a) _Up high & Clutters — Non Accessable_

    b) _____

    c) _____

29. Did you have any other problems inside the Facility?   No ☒   Yes ☐

    If you marked yes, list each problem and *HOW and WHY* they caused you to feel uncomfortable in the facility:

    a) _____

    b) _____

    c) _____

30. Which way did you go after you left the Facility? _Out front Door to back parking_

31. Any problems getting back to your vehicle?   No ☐   Yes ☒

    If you marked yes, list each problem and *HOW* it was a barrier for you to get back to your vehicle:

    a) _Uneven Ground 7 Dificult to Push my Walker_

    b) _Step Downs — Loss of Balance & I was scared_

MLF0051537

EX. 116-5

c) _____

32. Any problems transferring from your wheelchair to your vehicle? _____

33. Any additional information you believe would assist us in evaluating this inquiry?

_____ Yes _____

_____

i came to visit selma and i stop to eat here.
when i arrive @ parking i did not see any ADA
Signage, i felt so unhappy. We parked in a Regular
Stall. As i walked across parking with my walker, it
was very dificult to push on uneven ground. i even
encountered grades that i had to stepup with
my walker. it was scary & Painful. to get inside
the Dining i had to go up a Dangerous Ramp &
step over a threshold to get in. Siting area was
very small & not accomodating i was frustrated,
i went to use the Restroom & encountered step
ups of Diferent levels of grade to get myself
there with the walker trying to push it & lift it
this was very painful to my Arms & feet. i'nside
there was No Grabbars & the Accessories were
Missing or Very high, this caused me so much
pain to sit and to get up and to mauneuver
in a restricted small space. i felt pain to my feet
my knees and i was so unhappy. shorty after
my Meal i walked across uneven Dangerous parking
and left the establishment sad & in pain.

MLF0051538

EX. 116-6


**MOORE**
LAW FIRM, P.C.

April 10, 2015

Ms. Rachel Lobato
P.O. Box 202
Hanford, CA 93230

   Re:  ADAI No.  02362
       El Campesino Mexican Restaurant (1962 Whitson St, Selma, CA)

Dear Ms. Lobato:

This letter is to inform you that we have received your inquiry regarding potentially filing a lawsuit on your behalf against the above-referenced facility along with the receipt and notes you provided.

Our office will be evaluating the inquiry to determine if you have a cause of action under the ADA and applicable California statutes.

We will be following up with you regarding the status of this case.

If you have any questions, please feel free to contact our office.

Sincerely,

*Dictated but not read.*
*Sent in Tanya Moore's absence to avoid delay.*

Tanya E. Moore

TEM:ed

## BARRIER MEMO

**ADAI No. :**     02362

**Case Name:**     Lobato v. El Campesino Mexican Restaurant

**Address:**     1962 Whitson St, Selma

| Barrier | Description | Is it a valid barrier? Y / N |
|---|---|---|
| Accessible parking lacked proper signage | The designated accessible parking space lacked proper signage, making it hard for Plaintiff to locate. She did not think there was any accessible parking and parked in a standard parking stall. (note: she took a photo of a parking stall with no sign but faded ISA pavement marking) | |
| Route from parking to entrance uneven | The route from Plaintiff's vehicle to the building entrance was pitted with potholes, which made it difficult for her to push her walker. | |
| No ramp to entrance | Plaintiff could not find a ramp affording access to the building entrance, so she had to step up onto the curb, which was difficult. | |
| Raised threshold | The restaurant entrance had a raised threshold, which was difficult for Plaintiff to push her walker and step over. | |
| Built-up ramp in outdoor seating area | The outdoor seating area contained a built-up curb ramp, and it was difficult for Plaintiff to maintain her balance as she pushed her walker up and down it. | |
| No ramp to restroom | To get to the restroom Plaintiff had to go outside. There was no ramp up to the entrance of the restroom and it was difficult for Plaintiff to step up into the room. | |
| Restroom door narrow | The door to the restroom lacked proper clear width and it was difficult for Plaintiff to fit her walker through. | |
| Restroom lacked clearances inside | The interior of the restroom lacked sufficient clearances, which made it hard for Plaintiff to maneuver inside and turn her walker around. | |
| Toilet lacked grab bars | The toilet lacked grab bars, making it difficult for | |

1

MLF0051476

EX. 116-8

| | Plaintiff to lower herself onto it and stand up. | |
|---|---|---|

MLF0051477

EX. 116-9

# MOORE LAW FIRM, P.C.

332 North Second Street
San Jose, California 95112
408.298.2000

June 1, 2015

## CIVIL RIGHTS LAWSUIT FEE AGREEMENT

MOORE LAW FIRM ("Attorney"), and RACHEL LOBATO ("Client"), hereby agree that Attorney will provide legal services to "Client" on the terms set forth below.

1.    **CONDITIONS.** This Agreement will not take effect, and Attorney will have no obligation to provide legal services, until Client returns a signed copy of this Agreement.

2.    **SCOPE OF SERVICES.** Client is hiring Attorney to represent Client in the matter of Client's claims arising out of the denial of full and equal access to Client on account of Client's disabilities to the facility known as El Campesino and located at 1962 Whitson Street, Selma, CA ("the Facility"). Specifically, Attorney will provide services towards obtaining an injunction under federal and California civil rights laws requiring the removal of barriers to Client's full and equal access to the Facility, and will seek statutory damages as permitted and appropriate under California law.

Attorney will represent Client until a settlement or judgment is reached. Attorney will oppose any motion for a new trial or any other post-trial motions filed by an opposing party, or will make any appropriate post-trial motions on Client's behalf. After judgment, Attorney will not represent Client on any appeal, or in any proceeding to execute on the judgment, unless Client and Attorney agree that Attorney will provide such services and also agree upon additional fees, if any, to be paid to Attorney for such services. Services in any matter not described above will require a separate written agreement.

Client understands and acknowledges that in civil rights actions such as this, the action's primary purpose is to enforce Client's civil rights through injunctive relief. Injunctive relief does not entitle the claimant/client to any monetary recovery and separate claims for tort or personal injury actions will not be filed. Emotional distress and personal injury claims will be incorporated, wherein appropriate, in claims for discrimination, but not set forth as an independent and separate claim. Civil rights actions alleging discrimination seek compensatory damages (money) that may be significantly less than the hourly attorneys' fees generated. Client acknowledges that Attorney will focus her efforts on obtaining injunctive relief, and that any damages which may be available will be secondary to the injunctive relief sought, and that any damages recovered may be minimal.

3.    **LIMITATION OF REPRESENTATION.** Attorney is representing Client only on the matters described in Paragraph 2. Attorney's representation does not include independent or related matters that may arise, including, among other things, claims for property damage, workers' compensation, disputes with a health care provider about the amount owed for their

1

MLF056543

services, or claims for reimbursement (subrogation) by any insurance company for benefits paid under an insurance policy, any claim made against Client by any defendant(s). Attorney will require a separate fee agreement, and additional fees, in order to represent Client in any additional matter not described in Paragraph 2.

4. **RESPONSIBILITIES OF THE PARTIES.** Attorney will provide those legal services reasonably required to represent Client in prosecuting the claims described in Paragraph 2 and will take reasonable steps to keep Client informed of progress and developments, and to respond promptly to inquiries and communications. Client agrees to be truthful with Attorney, to cooperate, to keep Attorney informed of any information and developments which may come to Client's attention, to abide by this Agreement, and to keep Attorney advised of Client's address, telephone number and whereabouts. Client agrees to appear at all legal proceedings when Attorney deems it necessary, and generally to cooperate fully with Attorney in all matters related to the preparation and presentation of Client's claims.

5. **CLIENT AND ATTORNEY CONFLICT OF INTEREST CONSENT.** It is often possible in civil rights cases, like yours, for the attorney to make a separate application to be paid attorney fees to the court. Also, quite often, the attorney negotiates attorney fees as a separate component of a client's overall settlement. Attorney fee negotiations in this context create a potential conflict of interest between the attorney and client, namely, a conflict between the duty of the attorney to promote the client's interest in obtaining the highest settlement amount, as opposed to the interest of the attorney in obtaining satisfactory compensation for work done.

Client consents to this potential conflict, and specifically authorizes Attorney to make any application for attorney fees or separately negotiate for payment of attorney fees from the defendant(s), at Attorney's discretion. Attorney fees obtained in this context are the sole property of Attorney.

_____ (Client initials here) _____ (Attorney initials here)

6. **RECEIPT OF PROCEEDS.** All monetary proceeds recovered in Client's case shall be deposited into Attorney's trust account.

7. **COSTS AND LITIGATION EXPENSES.** Client will incur various costs and expenses in performing legal services under this Agreement. Payment of these costs is the Client's sole responsibility. Attorney, in his or her discretion, may advance these costs on Client's behalf. Client agrees to pay for all costs, disbursements and expenses paid or owed by Client in connection with this matter, or which have been advanced by Attorney on Client's behalf and which have not been previously paid or reimbursed to Attorney.

Costs, disbursements and litigation expenses commonly include court fees, jury fees, service of process charges, court and deposition reporters' fees, photocopying and reproduction costs, notary fees, long distance telephone charges, messenger and other delivery fees, postage, deposition costs, travel costs including parking, mileage, transportation, meals and hotel costs, investigation expenses, consultant, expert witness, professional mediator, arbitrator and/or special master fees and other similar items. Except for the items listed below, costs and expenses will be charged at Attorney's cost.

2

EX. 116-11

MLF056544

| In-office photocopying | .15/page |
| Facsimile charges | .15/page |
| Mileage | .60/mile |

To aid in the preparation or presentation of Client's case, it may become necessary to hire expert witnesses, consultants or investigators. Attorney will select any expert witnesses, consultants or investigators to be hired, and Client will be informed of persons chosen and their charges. Client authorizes Attorney to incur all reasonable costs and to hire any investigators, consultants or expert witnesses reasonably necessary in Attorney's judgment.

     **8.**     **FEES.** Attorney will only be compensated for legal services rendered if a monetary recovery is obtained for Client, OR if a court makes an award of attorney fees, OR if Attorney negotiates the separate payment of attorney fees as a component of a settlement. "Monetary recovery" means any money recovered for Client, including damages of any sort, whether general, special, economic, non-economic or punitive damages. "Monetary recovery" also includes penalties and fines payable to Client from any source. "Monetary recovery" does not include injunctive or equitable relief.

     **8.a.**     **Separate Attorney Fee Award.** If a court makes an award of attorney fees, or if Attorney negotiates the separate payment of attorney fees as a component of a settlement, then that payment of attorney fees shall comprise the only fee that Attorney is entitled to obtain under this Agreement. Client agrees that any court award of attorney fees is the sole property of the Attorney, regardless of whether the award is ordered separately payable to Attorney. Client agrees that any separate payment of attorney fees obtained as a component of a settlement is the sole property of the Attorney. Client is still obligated to reimburse Attorney for all outstanding costs advanced by Attorney.

     **8.b.**     **Maximum Fee If No Separate Fee Award.** If there is no separate payment of attorney fees as stated in the preceding paragraph, then Attorney's fee is the GREATER of either (a) one-third (33.33%) of the total monetary recovery obtained for Client, OR (b) Attorney's hourly rate multiplied by the hours worked. These amounts are calculated after reimbursement to the Attorney for outstanding costs advanced.

     Attorney's billing rates are from $350 per hour to $685 per hour. Paralegals are billed at $95 to $200 per hour. Client is encouraged to periodically request a summary of Attorney time expended and costs incurred.

     **8.c.**     **Attorney Fee May Exceed Client's Ultimate Monetary Recovery.** In any event, Client understands that Attorney's total fee might substantially exceed the amount of money Client ultimately obtains from any monetary recovery.

     **9.**     **NEGOTIABILITY OF FEES.** The rates set forth above are not set by law, but are negotiable between an attorney and client.

     **10.**     **LIEN.** Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Agreement. Attorney's lien will

3

EX. 116-12

MLF056545

be for any sums owing to Attorney for any unpaid costs, and attorneys' fees, at the conclusion of Attorney's services. The lien will attach to any monetary recovery that Client obtains, whether by arbitration award, judgment, settlement, or otherwise.

The effect of such a lien is that Attorney may be able to compel payment of fees and costs from any such funds recovered on behalf of Client, even if Attorney has been discharged before the end of the case. Because a lien may affect Client's property rights, Client may seek the advice of an independent lawyer of Client's own choice before agreeing to such a lien. By initialing this paragraph, Client represents and agrees that Client has had a reasonable opportunity to consult such an independent lawyer and Client agrees that Attorney will have a lien as specified above.

(Client initials here) _____ (Attorney initials here)

**11.     APPROVAL NECESSARY FOR SETTLEMENT.** Attorney will not make any settlement or compromise of any nature of any of Client's claims without Client's prior approval. Client retains the absolute right to accept or reject any settlement. Client agrees to consider seriously any settlement offer Attorney recommends before making a decision to accept or reject such offer. Client agrees not to make any settlement or compromise of any nature of any of Client's claims without prior notice to Attorney.

**12.     POWER OF ATTORNEY.** Client grants a Power of Attorney to Attorney to endorse and deposit, on behalf of Client, any negotiable instruments made payable to the Client and Attorney. Client further gives Attorney permission to sign any kind of settlement agreement in connection with this matter once Client's approval to the settlement has been given.

**13.     DISCHARGE AND WITHDRAWAL.** Client may discharge Attorney at any time, for any reason, upon written notice to Attorney. Attorney may withdraw from representation of Client on adequate advance written notice to Client.

**14.     DISCLAIMER OF GUARANTEE.** Nothing in this Agreement and nothing in Attorney's statements to Client will be construed as a promise or guarantee about the outcome of this matter. Attorney makes no such promises or guarantees.

**15.     USE OF CLOUD COMPUTING FOR CLIENT INFORMATION.** Rather than store data exclusively on a local drive, Attorney uses cloud storage providers to store Client information in one of their remote data centers. Such information includes, but is not limited to, court documents, expert communications and reports, discovery, investigation reports, internal memoranda, client documents, and client communications, including email. The information so stored is confidential client information. Attorney has taken reasonable precautions to ensure that the use of cloud technology does not subject confidential client information to an undue risk of unauthorized disclosure. However, no security system is foolproof, and a breach of security could subject Client's information to disclosure. By Client's signature below, Client authorizes Attorney to utilize such cloud storage providers.

**16.     DOCUMENT RETENTION POLICIES.** At the conclusion of the matter, Attorney will return to Client all original documents provided by the Client to the Attorney.

4

EX. 116-13

MLF056546

Attorney will scan all documents in the file into digital format, and will retain a digital copy of Client's file for seven (7) years. Paper copies of all documents will be destroyed immediately, with the exception of any settlement agreement and this fee agreement. After seven (7) years, the entire file will be destroyed.

17. **ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties. No other agreement, statement or promise made on or before the effective date of this Agreement will be binding on the parties.

18. **SEVERABILITY IN EVENT OF PARTIAL INVALIDITY.** If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

19. **MODIFICATION BY SUBSEQUENT AGREEMENT.** This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them.

20. **CHOICE OF LAW.** This Agreement shall be governed by the laws of the State of California.

THE PARTIES HAVE READ AND UNDERSTAND THE FOREGOING TERMS AND AGREE TO THEM. IF MORE THAN ONE CLIENT SIGNS BELOW, EACH AGREES TO BE JOINTLY AND SEVERALLY LIABLE FOR ALL OBLIGATIONS UNDER THIS AGREEMENT. CLIENT ACKNOWLEDGES RECEIPT OF A DUPLICATE COPY OF THIS AGREEMENT SIGNED BY BOTH THE ATTORNEY AND THE CLIENT.

Dated: 6-10-15

Rachel Lobato

Address: PO Box 202

Hanford, Ca 93230

Telephone: 559 639 9998

Dated: _____

MOORE LAW FIRM, P.C.

By: _____
Tanya E. Moore, President

5

EX. 116-14

MLF056547

1 | Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
2 | 332 North Second Street
San Jose, California 95112
3 | Telephone (408) 298-2000
Facsimile (408) 298-6046
4 | E-mail: tanya@moorelawfirm.com

5 | Attorney for Plaintiff
Rachel Lobato

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **EASTERN DISTRICT OF CALIFORNIA**

10

11 | RACHEL LOBATO,                              ) No.
                                            )
12 |              Plaintiff,                   ) **COMPLAINT ASSERTING DENIAL OF**
                                            ) **RIGHT OF ACCESS UNDER**
13 |      vs.                                  ) **AMERICANS WITH DISABILITIES ACT**
                                            ) **FOR INJUNCTIVE RELIEF,**
14 | JOSE SANTOS VILLALBAZO LOPEZ dba         ) **DECLARATORY RELIEF, DAMAGES,**
    EL CAMPESINO; PAMELA PRIETO,             ) **ATTORNEYS' FEES AND COSTS (ADA)**
15 | TRUSTEE OF THE RUBY ABAJIAN             )
    SURVIVOR'S TRUST DATED                   )
16 | SEPTEMBER 26, 2013,                      )
                                            )
17 |                                          )
              Defendants.                    )
18 |                                          )

19

20 |                          **I. SUMMARY**

21 |      1.      This is a civil rights action by plaintiff RACHEL LOBATO ("Plaintiff") for

22 | discrimination at the building, structure, facility, complex, property, land, development, and/or

23 | surrounding business complex known as:

24 |              El Campesino
               1962 Whitson St.
25 |              Selma, CA 93662
               (hereafter "the Facility")
26 |

27 |      2.      Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

28 | costs, against JOSE SANTOS VILLALBAZO LOPEZ dba EL CAMPESINO; and PAMELA

*Lobato v. Lopez, et al.*
Complaint                              Page 1

MLF0051525

1  PRIETO, TRUSTEE OF THE RUBY ABAJIAN SURVIVOR'S TRUST DATED
2  SEPTEMBER 26, 2013 (hereinafter collectively referred to as "Defendants"), pursuant to the
3  Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related
4  California statutes.

**II.    JURISDICTION**

6      3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA
7  claims.

8      4.    Supplemental jurisdiction for claims brought under parallel California law –
9  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

10     5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

**III.    VENUE**

12     6.    All actions complained of herein take place within the jurisdiction of the United
13  States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C.
14  § 1391(b), (c).

**IV.    PARTIES**

16     7.    Defendants own, operate, and/or lease the Facility, and consist of a person (or
17  persons), firm, and/or corporation.

18     8.    Plaintiff is substantially limited in her ability to walk, and must use a cane,
19  walker, or wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined
20  by all applicable California and United States laws, and a member of the public whose rights
21  are protected by these laws.

**V.    FACTS**

23     9.    The Facility is open to the public, intended for non-residential use, and its
24  operation affects commerce. The Facility is therefore a public accommodation as defined by
25  applicable state and federal laws.

26     10.   Plaintiff visited the Facility and encountered barriers (both physical and
27  intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the
28  goods, services, privileges and accommodations offered at the Facility. Plaintiff personally

*Lobato v. Lopez, et al.*
Complaint

MLF0051526

EX. 116-16

encountered the following barriers at the Facility during Plaintiff's visits to the Facility on or about March 15, 2015:

a)    The designated accessible parking space lacked proper signage and had faded pavement markings, making it hard for Plaintiff to locate.

b)    The route from Plaintiff's vehicle to the building entrance was pitted with potholes, creating an uneven surface which was difficult for her to push her walker across.

c)    Plaintiff could not find a ramp affording access to the building entrance, and had to step up onto the curb, which was difficult with her walker.

d)    The restaurant entrance had a raised threshold, which was difficult for Plaintiff to push her walker and step over.

e)    The outdoor seating area contained an improperly configured built-up curb ramp, and it was difficult for Plaintiff to maintain her balance as she pushed her walker up and down it.

f)    To get to the restroom Plaintiff had to go outside and around the building. There was no ramp up to the entrance to the restroom and it was difficult for Plaintiff to step up into the room.

g)    The door to the restroom lacked proper clear width and it was difficult for Plaintiff to fit her walker through.

h)    The interior of the restroom lacked sufficient clearances, which made it difficult for Plaintiff to maneuver inside and turn around using her walker.

i)    The toilet lacked grab bars, making it difficult for Plaintiff to lower herself onto and stand up from the toilet.

11.    The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers which may in fact exist at the Facility and relate to her disabilities. Plaintiff will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which

*Lobato v. Lopez, et al.*
Complaint

MLF0051527

EX. 116-17

1  exist at the Facility and relate to her disabilities removed to afford her full and equal access.

2        12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

3  Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

4  accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

5  Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

6  once the barriers are removed.

7        13.    Defendants knew, or should have known, that these elements and areas of the

8  Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

9  the physically disabled. Moreover, Defendants have the financial resources to remove these

10  barriers from the Facility (without much difficulty or expense), and make the Facility

11  accessible to the physically disabled. To date, however, Defendants refuse to either remove

12  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

13        14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

14  and authority to modify the Facility to remove impediments to wheelchair access and to

15  comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

16  Design. Defendants have not removed such impediments and have not modified the Facility to

17  conform to accessibility standards. Defendants have intentionally maintained the Facility in its

18  current condition and have intentionally refrained from altering the Facility so that it complies

19  with the accessibility standards.

20        15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

21  so obvious as to establish Defendants' discriminatory intent. On information and belief,

22  Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere

23  to relevant building standards; disregard for the building plans and permits issued for the

24  Facility; conscientious decision to maintain the architectural layout (as it currently exists) at

25  the Facility; decision not to remove barriers from the Facility; and allowance that Defendants'

26  property continues to exist in its non-compliant state. Plaintiff further alleges, on information

27  and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

28  Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

*Lobato v. Lopez, et al.*
Complaint

MLF0051528

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

16.     Plaintiff incorporates the allegations contained in paragraphs 1 through 15 for this claim.

17.     Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19.     The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.     When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>. § 12182(b)(2)(A)(v).

21.     Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.     In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

///

///

MLF0051529

EX. 116-19

<div align="center">Failure to Design and Construct an Accessible Facility</div>

23.    Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1993 – independently triggering access requirements under Title III of the ADA.

24.    The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.    Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

<div align="center">Failure to Make an Altered Facility Accessible</div>

26.    Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.    The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.    Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<div align="center">Failure to Modify Existing Policies and Procedures</div>

29.    The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Lobato v. Lopez, et al.*
Complaint

<div align="center">Page 6</div>

MLF0051530

<div align="center">EX. 116-20</div>

30. Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31. Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32. Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.   SECOND CLAIM

### Unruh Act

33. Plaintiff incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

35. California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

36. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

37. Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

38. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

39. Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

40. Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and

MLF0051531

EX. 116-21

1  ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code

2  § 52(a).

3                    **VIII. THIRD CLAIM**

4              **Denial of Full and Equal Access to Public Facilities**

5     41.   Plaintiff incorporates the allegations contained in paragraphs 1 through 40 for

6  this claim.

7     42.   Health and Safety Code § 19955(a) states, in part, that: California public

8  accommodations or facilities (built with private funds) shall adhere to the provisions of

9  Government Code § 4450.

10    43.   Health and Safety Code § 19959 states, in part, that: Every existing (non-

11  exempt) public accommodation constructed prior to July 1, 1970, which is altered or

12  structurally repaired, is required to comply with this chapter.

13    44.   Plaintiff alleges the Facility is a public accommodation constructed, altered, or

14  repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code

15  § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

16    45.   Defendants' non-compliance with these requirements at the Facility aggrieved

17  (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly,

18  Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

19         **IX.   PRAYER FOR RELIEF**

20    WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

21    1.   Injunctive relief, preventive relief, or any other relief the Court deems proper.

22    2.   Declaratory relief that Defendants violated the ADA for the purposes of Unruh

23         Act damages.

24    3.   Statutory minimum damages under section 52(a) of the California Civil Code

25         according to proof.

26    4.   Attorneys' fees, litigation expense, and costs of suit.[2]

27    5.   Interest at the legal rate from the date of the filing of this action.

28  ─────────────────

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Lobato v. Lopez, et al.*
Complaint

                    Page 8

MLF0051532

6. For such other and further relief as the Court deems proper.

Dated: June 10, 2015

MOORE LAW FIRM, P.C.

/s/ Tanya E. Moore
Tanya E. Moore
Attorney for Plaintiff
Rachel Lobato

## VERIFICATION

I, RACHEL LOBATO, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:  June 10, 2015          /s/ Rachel Lobato
                               Rachel Lobato

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

/s/ Tanya E. Moore
Tanya E. Moore, Attorney for
Plaintiff, Rachel Lobato

*Lobato v. Lopez, et al.*
*Verification*

MLF0051534

EX. 116-24

# VERIFICATION

I, RACHEL LOBATO, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 6-10-15

Rachel Lobato

MLF056558